UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, )<br><br>Plaintiff, )<br><br>v. )<br><br>BRITISH BROADCASTING CORP., et al., )<br><br>Defendants. ) | Case No. 1:25-cv-25894-RKA |

## DEFENDANTS' MOTION TO STAY DISCOVERY IN PART PENDING ADJUDICATION OF THEIR MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW

This defamation case arises out of a documentary that Defendants the British

Broadcasting Corporation ("the BBC"), BBC Studios Distribution Ltd., and BBC Studios

Productions Ltd. did not create in Florida, produce in Florida, or air in Florida. By their March

17, 2026 deadline,[1] Defendants will therefore move to dismiss the Complaint for lack of personal

jurisdiction under Federal Rule of Civil Procedure 12(b)(2) as well as for failure to state a claim

under Rule 12(b)(6).

The Eleventh Circuit has recognized, in the context of a defamation case, the "powerful

interest in ensuring that free speech is not unduly burdened by the necessity of defending against

expensive yet groundless litigation," including by "expensive discovery proceedings." *Michel v.*

*NYP Holdings*, 816 F.3d 686, 702 (11th Cir. 2016). As Defendants will set forth in their

dispositive Motion to Dismiss, this Court lacks personal jurisdiction over them and Plaintiff fails

---

[1] By agreement of counsel, Defendants accepted service by email in London under Rule
12(a)(1)(A)(ii) on December 17, 2025. *See* Dkt. Nos. 5-7. Under the Rule, Defendants' Motion
to Dismiss is due on March 17, 2026.

to state claims for defamation or violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"). Engaging in unbounded merits-based discovery while the Motion to Dismiss is pending will subject Defendants to considerable burdens and costs that will be unnecessary if the Motion is granted. The Court should therefore stay merits-based discovery until a reasonable period of limited jurisdictional discovery has concluded and the Court has resolved the threshold question of personal jurisdiction.

The Complaint suggests that the Plaintiff will seek broad, objectionable discovery on the merits, implicating the BBC's entire scope of coverage of Donald J. Trump over the past decade or more and claiming injury to his entire business and political profiles. Especially given Plaintiff's framing of his claim, Defendants' jurisdictional arguments should be resolved before the parties undertake any merits-related discovery and engage in the likely discovery disputes that will ensue. Defendants therefore move this Court, pursuant Rule 26(c), to permit a reasonable period of limited and appropriate jurisdictional discovery and to stay all other discovery and the scheduling of other discovery deadlines pending adjudication of their forthcoming Motion to Dismiss.

## BRIEF BACKGROUND AND PROCEDURAL HISTORY

This case arises out of a documentary broadcast by the BBC's *Panorama* program on October 28, 2024 titled, "*Trump: A Second Chance?*" ("the Documentary"). Compl. ¶ 2. The Documentary focused on President Trump's 2024 reelection campaign, aiming to explain to U.K. audiences the bases for his support. A brief segment depicted Plaintiff's speech on January 6, 2021 and the subsequent attack on the U.S. Capitol. Plaintiff alleges that the manner in which the Documentary edited this speech defamed him and violated FDUTPA. *Id.* ¶¶ 104-19. He additionally alleges that this segment "is part of the BBC's longstanding pattern of manipulating President Trump's speeches and presenting content in a misleading manner in order to defame

2

him," *id.* at ¶ 8, and caused "direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world," *id.* at ¶ 101.  The BBC apologized to President Trump and published a retraction for "unintentionally" giving "the mistaken impression that President Trump had made a direct call for violent action" through an "error of judgement" in the editing of his speech.  The BBC noted, however, that it "strongly disagree[s] that President Trump would have a basis for a viable defamation claim."  *Id.* Ex. B.

As Defendants will demonstrate in their forthcoming Motion to Dismiss, the Court lacks personal jurisdiction over them and the Complaint fails to state a claim on multiple independent grounds.

On January 7, 2026, the parties held a conference under Rule 26(f) and Local Rule 16.1, during which undersigned counsel proposed that the parties agree not to begin discovery on the merits of Plaintiff's claims—while permitting a limited period of narrow, reasonable jurisdictional discovery—before the Motion to Dismiss is resolved.  Plaintiff's counsel rejected that proposal.

## ARGUMENT

The Eleventh Circuit has long instructed that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins."  *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1308-09 (11th Cir. 2020) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)).  District courts thus have "broad discretion to stay discovery pending decision on a dispositive motion."  *Turner v. Costa Crociere*, 2020 WL 9071486, at *2 (S.D. Fla. Aug. 23, 2020) (Moore, C.J.).

To warrant such a stay, the movant must show that "(1) they will be prejudiced, (2) the . . . motion is clearly meritorious and case dispositive, and (3) any prejudice to the non-moving party is outweighed by the possibility the motion will be dispositive." *Id.* at \*4.  Applying this test, courts in the Southern District of Florida have found that a stay is particularly appropriate where, as here, a motion to dismiss challenges personal jurisdiction. *See, e.g.*, *Lewis v. Mercedes-Benz USA*, 2020 WL 4923640, at \*3 (S.D. Fla. Mar. 25, 2020) (Ruiz II, J.) ("when faced with legitimate jurisdictional challenges. . . discovery should not commence until such challenges are resolved"); *Gillier v. Servicios Agecom*, 2017 WL 6994217, at \*1 (S.D. Fla. Nov. 27, 2017) (Scola, Jr., J.) (staying "general discovery" while permitting "limited jurisdictional discovery" because, if the "motions to dismiss based on a lack of personal jurisdiction [are] granted, proceeding in this forum . . . would be improper"); *Seaway Two Corp. v. Deutsche Lufthansa Aktiengesellschaft*, 2006 WL 8433652, at \*1 (S.D. Fla. Nov. 17, 2006) (Altonaga, J.) (because "the Motion to Dismiss" challenges "personal jurisdiction over [defendant], it is possible that the Court lacks the authority to mandate that the parties engage in discovery").

Staying discovery is also appropriate where, as here, the claims implicate defendants' First Amendment rights. *See, e.g.*, *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1324 (S.D. Fla. 2020) (Martinez, J.) (granting stay "pending the potential filing of Plaintiff's Amended Complaint" to protect defamation defendants' free speech).  For example, in *Borislow v. Canaccord Genuity Group*, 2014 WL 12580035 (S.D. Fla. June 24, 2014) (Ryskamp, J.), the court stayed discovery pending resolution of motion to dismiss in a defamation action, explaining that their "review of the complaint and the motion to dismiss leaves it with the concern that Plaintiff's defamation claim may be legally insufficient because the challenged statements may be expressions of opinion, and/or truthful and/or protected by the First

Amendment." *Id.* at *1.  "Absent a stay of discovery pending determination of these threshold

legal issues," the court noted, "Defendants will be forced to expend considerable resources to

respond to Plaintiff's discovery requests," and the "Eleventh Circuit instructs that this is

precisely when a stay of discovery is warranted."  *Id.*; *see also, e.g.*, *Horsley v. Feldt*, 304 F.3d

1125, 1131 n.2 (11th Cir. 2002) (affirming suspension of discovery in defamation action);

*Skuraskis v. NationsBenefits Holdings*, 2023 WL 8698324, at *2-5 (S.D. Fla. Dec. 15, 2023)

(Ruiz II, J.) (granting motion to stay discovery pending adjudication of motion to dismiss); *Dry

Tech 24/7 v. Clorox Co.*, 2022 WL 20834472, at *1 (S.D. Fla. Dec. 2, 2022) (Singhal, J.) (same).

Here, all three prongs of the test weigh in favor of staying discovery: (1) Defendants'

Motion to Dismiss will be meritorious and case-dispositive; (2) Defendants would be prejudiced

if forced to engage in unbounded cross-border merits-based discovery before their Motion is

resolved; and (3) staying merits-based discovery would not harm Plaintiff.

## I.      DEFENDANTS' MOTION TO DISMISS IS CLEARLY MERITORIOUS AND WOULD DISPOSE OF THE ENTIRE CASE

A court considering a motion to stay discovery should "take a preliminary peek at the

merits of the motion to dismiss to see if it appears to be clearly meritorious and truly case

dispositive."  *Turner*, 2020 WL 9071486, at *2 (cleaned up).  As the motion is not yet on file,

Defendants outline here the arguments they will present in the filing.

### A.      Defendants Are Not Subject to Personal Jurisdiction in Florida

As the Motion to Dismiss will show, exercising personal jurisdiction over Defendants

would violate Florida law and constitutional due process protections.

A federal court

> generally undertakes a two-step analysis to determine whether
> there is personal jurisdiction over a nonresident defendant.  *First*,
> we determine whether the plaintiff has alleged sufficient facts to
> subject the defendant to the forum state's long-arm statute.

> *Second*, we decide whether the exercise of jurisdiction comports
> with the Due Process Clause of the Fourteenth Amendment.

*Karnas v. Cuban*, 2025 WL 3759241, at \*5 (S.D. Fla. Dec. 30, 2025) (Altman, J.) (cleaned up).

Any doubts "must be resolved in favor of the defendant and against a conclusion that personal

jurisdiction exists." *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1140 (S.D.

Fla. 2019) (Moreno, J.).

A defendant can be subject to personal jurisdiction under Florida's "long-arm statute in

two ways: . . . *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or

relate to a defendant's contacts with Florida; and second, . . . *general* personal jurisdiction—that

is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's

activities in Florida." *Carmouche v. Tamborlee Mgmt.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015)

(cleaned up).  Plaintiff alleges that the Court has both specific and general personal jurisdiction

over Defendants, *see* Compl. ¶¶ 16, 22, but the Court in fact has neither.

### 1.    *Defendants Are Not Subject to <u>General</u> Personal Jurisdiction in Florida*

Defendants are not subject to general personal jurisdiction in Florida because they do not

"engage[] in substantial and not isolated activity within this state."  Fla. Stat. § 48.193(2); *cf.*

Compl. ¶ 16.  The long-arm statute's general jurisdiction "'provision extends to the limits on

personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment' and,

therefore, to determine general jurisdiction," the Court "need only determine whether the district

court's exercise of jurisdiction over [Defendants] would exceed constitutional bounds."  *Wolf v.

Celebrity Cruises*, 683 F. App'x 786, 791 (11th Cir. 2017) (quoting *Fraser v. Smith*, 594 F.3d

842, 846 (11th Cir. 2010)).  For a corporation, its Florida contacts must be "so continuous and

systematic as to render them essentially at home in the forum State."  *Carmouche*, 789 F.3d at

1204 (cleaned up).  "[T]he place of incorporation and principal place of business are 'paradig[m]

. . . bases for general jurisdiction.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

No Defendant here is "essentially at home" in Florida.  "[A]ll Defendants are citizens of the United Kingdom . . . ."  Compl. ¶ 15.  The BBC has its "principal place of business in London, England," *id.* ¶ 12, as do BBC Studios Distribution Ltd. and BBC Studios Productions Ltd.[2] Each is incorporated in the U.K.  *Id.* ¶¶ 13-14.  None has its principal place of business in Florida or is incorporated—or even licensed to do business—in the state.

This is not the "exceptional case" where a foreign defendant could otherwise be subject to general jurisdiction in the United States.  *Carmouche*, 789 F.3d at 1204.  Even accepting for argument's sake the (incorrect) allegation that Defendants "maintain an office" in Coral Gables, *see* Compl. ¶ 17, such an office would not establish general jurisdiction.  *See Carmouche*, 789 F.3d at 1204 (court lacked general jurisdiction over foreign corporation alleged to have Florida address); *Hit Bound Music v. BBC Films*, 2017 WL 5640543, at *2 (C.D. Cal. June 28, 2017) (no general jurisdiction over BBC in California, despite subsidiary having Los Angeles office); *Lovingood v. Discovery Commc'ns*, 2015 WL 5719169, at *8 (N.D. Ala. Sept. 30, 2015) (same, where "BBC is not incorporated in Alabama, and it does not have its principal place of business in Alabama").  Moreover, the Motion to Dismiss will show the Coral Gables office is used by non-parties, and BBC.com and BritBox are run by non-parties.  Regardless, "maintain[ing] a website accessible from Florida" and selling subscriptions in Florida do not suffice.  *Carmouche*, 789 F.3d at 1204-05 (citing *Fraser*, 594 F.3d at 847; *Daimler*, 571 U.S. at 139); *cf.* Compl. ¶¶

---

[2] Defendants' Motion to Dismiss will be accompanied by declarations, but their citizenship information is also judicially noticeable under Rule 201.  *See BBC Studios Distribution Limited*, Companies House, https://find-and-update.company-infor-mation.service.gov.uk/company/01420028; *BBC Studios Productions Limited*, Companies House, https://find-and-update.company-information.service.gov.uk/company/09463829; *Royal Charter*, BBC, https://down-loads.bbc.co.uk/bbctrust/assets/files/pdf/about/how_we_govern/2016/charter.pdf.

16-21. Otherwise, jurisdiction "would presumably be available in every other State," which would be an "exorbitant exercise[] of all-purpose jurisdiction" violating due process. *Daimler*, 571 U.S. at 139. Defendants are therefore not subject to general personal jurisdiction in Florida.

      2.    *Defendants Are Not Subject to <u>Specific</u> Personal Jurisdiction in Florida*

This Court also lacks specific personal jurisdiction over Defendants. On the face of the Complaint, Plaintiff's allegations do not establish jurisdiction. As the Motion to Dismiss will show, moreover, Defendants did not create, produce, or broadcast the Documentary in Florida, contrary to the Complaint's allegations.

Plaintiff alleges specific jurisdiction under three provisions of Florida's long-arm statute: Fla. Stat. § 48.193(1)(a)(1), for "any cause of action arising from . . . carrying on a business or business venture in this state"; Fla. Stat. § 48.193(1)(a)(2), which encompasses "[c]ommitting a tortious act within this state"; and Fla. Stat. § 48.193(1)(a)(6), which covers "[c]ausing injury to persons or property within this state." *See* Compl. ¶ 22. None of these provisions applies here.

      a.    <u>The Court lacks jurisdiction under Fla. Stat. § 48.193(1)(a)(6).</u>

"[E]conomic injury, unaccompanied by physical injury or property damage, is insufficient" to invoke Fla. Stat. § 48.193(1)(a)(6). *Karnas*, 2025 WL 3759241, at *5 (quoting *Courboin v. Scott*, 596 F. App'x 729, 734 (11th Cir. 2014)). Plaintiff alleges only "reputational" and "economic harms." Compl. ¶¶ 10, 99-102. "So, Subsection (1)(a)(6) cannot confer personal jurisdiction here." *Karnas*, 2025 WL 3759241, at *5 (dismissing FDUTPA case); *see also Klayman v. Deluca*, 2016 WL 1045851, at *11 (S.D. Fla. Mar. 16, 2016), *aff'd*, 712 F. App'x 930 (11th Cir. 2017) (same, in case bringing defamation claim).

      b.    <u>The Court lacks jurisdiction under Fla. Stat .§ 48.193(1)(a)(1).</u>

Nor does the Court have specific jurisdiction under Fla. Stat. § 48.193(1)(a)(1), as

"Plaintiff[] fail[s] to demonstrate that the Defendants 'carry[ ] on a business or business venture in Florida' within the meaning of Subsection (1)(a)(1)." *Karnas*, 2025 WL 3759241, at *6. Defendants are incorporated and headquartered in the U.K. *See* Compl. ¶¶ 12-15. "And while the [Complaint] details connections between the Defendants and Florida," such as a Coral Gables office and BBC's news coverage of Florida, "it comes nowhere close to establishing 'a direct affiliation, nexus, or substantial connection . . . between the basis for the cause of action and the business activity.'" *Karnas*, 2025 WL 3759241, at *6 (quoting *Doe (V.H.) v. Hyatt Hotels Corp.*, 2024 WL 3859882, at *1 (11th Cir. Aug. 19, 2024)). Moreover, that Floridians access BritBox or BBC.com is immaterial, as "electronic communications from out-of-state offices into Florida do not establish conducting business in Florida." *Id.* (quoting *Prunty v. Arnold & Itkin*, 753 F. App'x 731, 735 (11th Cir. 2018)). As discussed below, the Motion to Dismiss will show that the Documentary was not created, produced, or broadcast in Florida. Plaintiff also never alleges that two Defendants—BBC Studios Distribution, Ltd. and BBC Studios Productions, Ltd.—conduct *any* business in Florida. The Court thus lacks jurisdiction under this provision.

> c.   The Court lacks jurisdiction under Fla. Stat. § 48.193(1)(a)(2) and as a matter of due process.

The remaining long-arm provision that Plaintiff cites is Fla. Stat. § 48.193(1)(a)(2), which applies to "any cause of action arising from . . . [c]ommitting a tortious act within this state"—in this case, allegations of defamation and FDUTPA violations. *See* Compl. ¶ 22. As Defendants' Motion to Dismiss will demonstrate, Plaintiff fails to state either claim on the face of the Complaint. But even if he had stated a claim, Plaintiff "still fail[s] to overcome the federal due-process standard" to establish personal jurisdiction. *Karnas*, 2025 WL 3759241, at *7.

To comport with due process,

> (1) the plaintiff's claim must "arise out of or relate to" one of the defendant's contacts in the forum, (2) the defendant must have

> "purposefully availed" itself of the privilege of conducting activities within the forum, and (3) jurisdiction must comport with "traditional notions of fair play and substantial justice."

*Herederos De Roberto Gomez Cabrera v. Teck Res.*, 43 F.4th 1303, 1310 (11th Cir. 2022) (quoting *Louis Vuitton Malletier v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)).  This constitutional inquiry is even "more restrictive" than the long-arm statute.  *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010).

This case fails at the outset, as "Plaintiff[] cannot clear the purposeful-availment prong." *Karnas*, 2025 WL 3759241, at *7.  To meet his burden, Plaintiff must either satisfy the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783, 787-89 (1984) or demonstrate that defendants have the traditional minimum contacts with the forum.  *McCall v. Zotos*, 2023 WL 3946827, at *4 (11th Cir. June 12, 2023).  Under the effects test, exercising specific jurisdiction comports with due process only "when the tort was intentional, *aimed* at the forum state, and caused harm that the defendant *should have anticipated* would be suffered in the forum state."  *Id.* (emphasis added).  Similarly, the minimum contacts test asks if defendants' contacts with the forum "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum."  *Louis Vuitton*, 736 F.3d at 1357.  "Each defendant's contacts with the forum State must be assessed individually."  *Keeton v. Hustler Mag.*, 465 U.S. 770, 781 n.13 (1984)*.*  Under either test, "[p]osting information on the internet is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed.  Otherwise, a person placing information on the Internet would be subject to personal jurisdiction in every State."  *McCall*, 2023 WL 3946827, at *4 (cleaned up).

Here, the Court lacks personal jurisdiction under either test, as Defendants did not purposefully avail themselves of the privilege of doing business in Florida.  As Defendants have explained, and the Motion to Dismiss will show, "[Defendants] did not have contractual rights to, and therefore did not, distribute the program on U.S. channels."  Compl. Ex. B at 2.  The Documentary aired in the U.K. on BBC television channels and online via iPlayer, the BBC's streaming service, but *not* in Florida.  Compl. ¶ 2 n.1 (citing *Trump: A Second Chance?*, BBC (Nov.13, 2025), https://www.bbc.co.uk/programmes/m0024h6r); *see Catalyst Pharms. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir. 2018) (plaintiff must show "that the purported defamatory statements were not merely accessible to, but also 'accessed by a third party in Florida'" (quoting *Internet Sols.*, 39 So. 3d at 1203) (emphasis in original)).

To evade the absence of any facts to warrant jurisdiction, Plaintiff alleges that the Documentary was available in the U.S. on the streaming service BritBox.  But simply clicking on the link that Plaintiff cites for this point shows it is *not* on BritBox.  Compl. ¶¶ 20 n.9, 24.  Nor was it *ever* available on BritBox.  Plaintiff's speculation that there is an "immense likelihood that citizens of Florida accessed the Documentary" on iPlayer using a virtual private network ("VPN") to mask their location, *see id.* ¶ 29, is also unavailing.  For one, Plaintiff never alleges that any Florida citizen actually watched it using a VPN.  For another, BBC's iPlayer is available only in the U.K., and U.K. residents must pay an annual license fee for access.[3]  The BBC

---

[3] *See Terms of Use for the BBC's Digital Services*, BBC, https://www.bbc.co.uk/us-ingthebbc/terms-of-use (terms include, "Don't stream or download iPlayer TV shows when you're outside the UK," "You need a TV Licence to download or watch BBC programmes on iPlayer," and a prohibition on "using a VPN service so you can watch BBC iPlayer when you're outside the UK"); *Why Does BBC iPlayer Think I'm Outside the UK?*, BBC, https://www.bbc.co.uk/iplayer/help/questions/playback-issues/outside-uk-message ("Programmes cannot be streamed outside the UK, even on holiday. . . . You cannot play a programme if we detect you might be using a VPN or proxy.").

prohibits the use of VPNs to watch iPlayer from outside the U.K.  *Id.*  In fact, it is a *crime* to watch iPlayer without paying the U.K. license fee.  *See* Communications Act 2003, c. 21, § 363 (U.K.); *How Much Is the BBC Licence Fee and How Could It Change?*, BBC (Dec. 16, 2025), https://www.bbc.com/news/articles/cz9k27yy839o.  In any event, as another federal court held in a lawsuit against the BBC, rejecting similar baseless allegations of jurisdiction, "[u]nauthorized viewers outside of the United Kingdom do not provide a basis for personal jurisdiction; rather, Defendants' relationship with [the forum] must arise out of contacts that they themselves created with the state."  *Carsey-Werner Co. v. BBC*, 2018 WL 1083550, at *6 (C.D. Cal. Feb. 23, 2018).

Although Plaintiff also alleges the Documentary was distributed in North America by non-party Blue Ant Media Corporation, *see* Compl. ¶ 33, these allegations miss the mark as well. Alleging that this "Canadian company" "advertised" the "international licensing rights" to the Documentary, including "in Cannes," France, and distributed it "in North America," *see id.* ¶¶ 33-35 & nn. 18-20, does not meet Plaintiff's burden to show the Documentary was "expressly aimed" at "Florida specifically."  *See Hit Bound Music*, 2017 WL 5640543, at *3 ("The mere fact that [a BBC film] was shown and distributed by a third party in California is not enough to establish that BBC's conduct was expressly aimed at California.").  Moreover, as Defendants will attest in the Motion to Dismiss, they never aired the Documentary in the United States.

Even if Plaintiff could show the Documentary was viewed in Florida against the BBC's contractual obligations and efforts, due process is still not satisfied where, as here, "there is no evidence that the defendant posted the allegedly defamatory information *hoping* to reach the forum state or an audience in the forum state specifically."  *Moore v. Cecil*, 109 F.4th 1352, 1364 (11th Cir. 2024) (emphasis added).  For example, in *Bioheart v. Peschong*, the court held due process was not satisfied where a California defendant posted allegedly defamatory statements

online about a Florida plaintiff absent "evidence that [the website] generally, or [defendant's] comments in particular, were purposefully directed at a Florida audience."  2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013).  In *Nunes v. CNN*, the court held it lacked jurisdiction absent "evidence that [defendants] *aimed* the Segment at Florida," as "[a] media defendant's nationwide circulation of a publication is insufficient to confer personal jurisdiction over that defendant in every forum."  2023 WL 2468646, at *4 (M.D. Fla. Mar. 1, 2023) (emphasis added).  The same is true of online statements alleged to violate FDUTPA.  *Karnas*, 2025 WL 3759241, at *8.  Here, too, even if the Documentary were accessed in Florida, Plaintiff fails to show Defendants *aimed* it at Florida viewers.

Finally, Plaintiff fails to establish jurisdiction merely by alleging that the BBC filmed the Documentary at Mar-a-Lago.  Compl. ¶¶ 37-40.  This allegation is incorrect, as the Motion to Dismiss will conclusively demonstrate, but even if Defendants *had* filmed the Mar-a-Lago footage, this three-minute segment of an hour-long film—which is not even the segment at issue—would not establish jurisdiction.  *See Carsey-Werner*, 2018 WL 1083550, at *7 (granting dismissal of case against the BCC on personal jurisdiction grounds: "[T]he mere filming of some portions of the Program in California does not demonstrate that [defendant] directed its conduct toward the state."); *Lovingood*, 2015 WL 5719169, at *8 (same, where "BBC made two phone calls to individuals in Alabama during the production").

Requiring Defendants to litigate in Florida would also offend notions of fair play and substantial justice.  *See Oldfield v. Pueblo De Bahia Lora*, 558 F.3d 1210, 1221 (11th Cir. 2009) ("[C]ourts should consider the unique burdens placed upon one who must defend oneself in a foreign legal system."); *Vision Media TV Group v. Forte*, 724 F. Supp. 2d 1260, 1267 (S.D. Fla 2010) (Marra, J.) ("Plaintiff has failed to" show "that jurisdiction over Defendants would

comport with fair play and substantial justice"); *Bioheart*, 2013 WL 1729278, at *5 ("Even if [plaintiff] established that [defendant] had minimum contacts with Florida, the exercise of jurisdiction over him would not comport with traditional notions of fair play and substantial justice.").

For each of these reasons, Defendants' motion to dismiss for lack of personal jurisdiction will be "clearly meritorious and truly case dispositive." *Turner*, 2020 WL 9071486, at *2.  The Court should therefore permit jurisdictional discovery as necessary and appropriate but stay merits-based discovery until the threshold question of personal jurisdiction is answered.

**B.  Plaintiff Fails to State a Claim for Defamation or Violations of FDUTPA**

As the Motion to Dismiss will show, the Complaint fails to state a claim as a matter of law on multiple, independent grounds, further justifying a stay of merits-based discovery until the issue of personal jurisdiction is resolved.

**First**, Plaintiff fails to plead facts plausibly stating *any* claim against BBC Studios Distribution Limited or BBC Studios Productions Limited.  "The Eleventh Circuit has explained that 'asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions' is improper." *Wyndham Vacation Ownership v. CLS*, 2018 WL 9869799, at *2 (S.D. Fla. Nov. 5, 2018) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)).  Plaintiff alleges only, in conclusory fashion, that these two Defendants "co-produced and published the *Panorama* Documentary," without any other facts about either Defendant whatsoever.  Compl. ¶¶ 13-14. As the Motion to Dismiss will show, these U.K. entities did not produce or publish the Documentary.  But even on the pleadings, Plaintiff fails to plausibly allege that these Defendants published the Documentary with actual malice, or to allege any other requisite elements of the

claims of this Plaintiff, the President of the United States.  *See Block v. Matesic*, 789 F. Supp. 3d 1131, 1160 (S.D. Fla. 2025) (Altman, J.) (citing *N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80 (1964)).

**Second**, Plaintiff also failed to plead, and will not be able to prove, that the Program caused him any cognizable injury.  Plaintiffs suing media companies for defamation must plead and prove actual damages, including when the claim purports to be for defamation *per se*.  *Corsi v. Newsmax Media*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (Ruiz II, J.) (Florida "eliminate[d] presumed damages for defamation *per se* actions against media defendants" (citing *Mid-Fla. Television Corp. v. Boyles*, 467 So. 2d 282, 283 (Fla. 1985)); *see Edelstein v. WFTV*, 798 So. 2d 797, 798 (Fla. 4th DCA 2001) (per curiam) ("[A] plaintiff suing a media defendant must . . . plead and prove actual injury.").  As Plaintiff failed to plead actual damages, claiming only vague "harm to his professional and occupational interests," Compl. ¶ 101, his claim fails. *See Anheuser-Busch v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to show actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. 18th Cir. Ct. June 30, 2014) (noting that Florida requires a defamation plaintiff to "plead and prove" actual damages and holding that because "a litany of news media entities" other than defendant created "negative publicity" about plaintiff, "the challenged . . . statements . . . could not have been the required 'but for' cause of [plaintiff's] alleged injuries"), *aff'd*, 212 So. 3d 376 (Fla. 5th DCA 2015); *Harrington v. Veritext*, 2025 WL 1591614, at *21 (S.D. Fla. May 1, 2025) (Elfenbein, M.J.) (dismissal proper where plaintiff "fails to plausibly allege [] actual damages"), *R&R adopted*, 2025 WL 3282698 (Oct. 24, 2025), *appeal docketed*, No. 25-14063 (11th Cir. Nov. 17, 2025).

Nor could Plaintiff ultimately prove actual damages.  He won reelection on November 5,

2024, after the Documentary aired.  He carried Florida by a commanding 13-point margin, improving over his 2020 and 2016 performances.[4]  Moreover, when the Documentary aired, Plaintiff had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol.'"  *Trump v. United States*, 603 U.S. 593, 628 (2024).[5]  Given the extensive allegations prior to the Documentary's release regarding Plaintiff's January 6 speech—and that shortly after the Documentary, the President won the election and carried Florida by a wide margin—the Documentary could not plausibly have caused any harm to his existing reputation.  *See Zimmerman*, 2014 WL 3731999, at *9.

    **Third**, Plaintiff fails to plausibly allege, as he must, that the BBC published the Documentary with actual malice—that is, knowing the Documentary was false or while entertaining serious doubts as to its truth.  *See Sullivan*, 376 U.S. at 279-80.  Plaintiff's allegations that the Documentary was edited "intentionally, with actual malice," *e.g.*, Compl. ¶ 105, are "mere 'conclusory statements'" that are "insufficient to support a cause of action."  *Michel*, 816 F.3d at 704.  His claims regarding the BBC's "independent adviser," the creators of a 2022 BBC *Newsnight* episode, and various British politicians are also unavailing.  Compl. ¶¶

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *See also Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

55-75, 89-96.  He never alleges that these individuals produced the Documentary, or that anyone at the BBC said Defendants *intended* a defamatory depiction.  The allegation that "the BBC has strayed from accepted standards of journalistic integrity," *id.* ¶ 56, also does not suffice. "Actual malice requires more than a departure from reasonable journalistic standards."  *Michel*, 816 F.3d at 703.  Moreover, allegations of the BBC's "ill-will," *e.g.*, Compl. ¶ 102, speak to "express or 'ordinary' common-law malice—not *actual* malice."  *Block*, 789 F. Supp. 3d at 1171.

**Fourth**, the lack of actual malice is underscored by the fact that the brief clip, which shows less than 15 seconds of Plaintiff's speech on January 6, is part of an hour-long film containing extensive coverage of his supporters and balanced coverage of his path to reelection. His allegation that the Documentary is "overwhelmingly" "negative," Compl. ¶ 81, ignores the focus on Plaintiff's supporters, including "[s]upporters cheering for the President" and "lining the streets," and long interviews with "Rick Frazier, a supporter of President Trump," *id.* ¶ 39. Courts consider challenged statements in the context of the full publication.  Plaintiff cannot create an actionable statement or implication by citing one clip but ignoring the rest of the Documentary.  *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315-16 (11th Cir. 2020); *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

**Fifth**, the Documentary contains protected expressions of opinion, including many from President Trump's ardent supporters.  *Cf.* Compl. ¶¶ 39, 78-88.  It depicts hotly contested events related to Presidential elections, including January 6, 2021, which have been the subject of extensive controversy and litigation.  In this context, even if the Documentary is reasonably interpreted to report that Plaintiff encouraged the crowd to march to the Capitol on January 6, that is an opinion on a matter of public concern, heavily protected under defamation law.  *See, e.g.*, *Trump v. CNN*, 2025 WL 3213203, at *2 (11th Cir. Nov. 18, 2025) (affirming Judge

Sinhal's dismissal of President Trump's defamation case because network's description of his election challenges as the "Big Lie" "is not readily capable of being proven true or false").

**Sixth**, Plaintiff's FDUTPA claim is barred by the single-action rule.  The sole allegedly "deceptive" or "unfair" practice is the broadcasting of the Documentary.  Compl. ¶ 117.  Because "Plaintiff's tag-along claims stem from the same [publication] as his defamation claim," a "single publication sustains a single cause of action."  *Bongino*, 477 F. Supp. 3d at 1320-21.  Nor is the Documentary "trade or commerce" under FDUTPA.  *Id.* at 1321.

Because Defendants' Motion to Dismiss will be meritorious and dispositive on these additional and alternative grounds, the Court should grant the requested partial stay and allow merits-based discovery only after the issue of personal jurisdiction is resolved.

## II. COMMENCING MERITS-BASED DISCOVERY WOULD SUBSTANTIALLY PREJUDICE DEFENDANTS

A stay of merits-based discovery is further justified because it would prejudice Defendants to allow such discovery before the threshold question of personal jurisdiction is resolved.  Unlike jurisdictional discovery, which will likely focus on Defendants' minimal ties to Florida and the lack of evidence that anyone in Florida actually viewed the Documentary, merits-based discovery will implicate, as the Complaint is framed, the entire scope of the BBC's coverage of Donald J. Trump potentially for decades, all of the businesses in which he has an interest, his entire political profile, and the other individuals involved in the events of January 6, 2021 and investigations into them, which Plaintiff has placed at issue.  That would no doubt include government witnesses, whose participation in discovery is especially burdensome.  *See Caraballo-Sandoval v. Honsted*, 35 F.3d 521, 524 (11th Cir. 1994) (permitting discovery stay "to protect government officials from the cost of trial and the burdens of broad reaching discovery").  Discovery will also involve inquiry into the Documentary's lack of effect on Plaintiff's victory in

the 2024 presidential election or on the value of Plaintiff's business interests and reputation, *see* Compl. ¶ 101, and the production of the Documentary.

Merits-based discovery may also require the Court and the parties to navigate complex questions over whether requested materials are protected by the reporter's privilege, the attorney-client privilege, executive privilege, sealing orders, U.K. data privacy laws, and other foreign regulations. Such discovery will present significant burdens for the parties and non-parties alike and likely require the Court's assistance in resolving potentially numbers of disputes, well beyond the burdens of jurisdictional discovery and even beyond the usual burdens of discovery in cases involving foreign parties or public officials. *See, e.g.*, *Lewis*, 2020 WL 4923640, at *4 (granting stay where "Defendants are foreign entities" and discovery will "require compliance with European data privacy laws and other foreign rules and regulations").

Additionally, the BBC is a United Kingdom taxpayer-funded nonprofit news organization, and complying with discovery demands will draw its resources away from its public mission. For example, while the BBC would object to such broad-reaching discovery requests, the Complaint questions "the BBC's longstanding pattern" of reporting on Plaintiff, Compl. ¶ 8, who has been a topic of frequent coverage since at least 2015. The Eleventh Circuit has recognized that "expensive discovery proceedings" limit the "breathing space" for speech that the First Amendment was designed to protect. *Michel*, 816 F.3d at 702; *see also Weyrich v. New Republic*, 235 F.3d 617, 628 (D.C. Cir. 2001) ("[T]rial courts are understandably wary of allowing unnecessary discovery where First Amendment values might be threatened."); *Bongino*, 477 F. Supp. 3d at 1324 (citing *Michel* as basis for staying discovery). Precedent thus supports staying merits-based discovery while the Court considers dismissing Plaintiff's claims.

Moreover, requiring Defendants' participation in merits-based discovery could create

"the dilemma of choosing between taking an active role in the litigation, thereby waiving [their] personal jurisdiction defense, or missing important case deadlines if [their] defense is rejected." *JPMCC 2006-CIBC15 FPG-STIP Portfolio v. ProEquity Asset Mgmt.*, 2023 WL 11885490, at *2 (S.D. Fla. Nov. 9, 2023) (Altonaga, J.) (extending deadlines).

## III.  A PARTIAL STAY OF DISCOVERY WILL NOT PREJUDICE PLAINTIFF

The final prong of the test also favors staying discovery because a brief pause of merits-based discovery, while the Court permits jurisdictional discovery and resolves Defendants' forthcoming Motion to Dismiss, will not prejudice Plaintiff.  The Court has not yet entered a scheduling order, and no trial date has been set.  The Motion to Dismiss will be filed soon, on March 17, 2026.  Staying discovery would have no effect on Defendants' continuing document preservation obligations and will not hamper President Trump from his duties of governance.  Even if the case were ultimately to survive Defendants' Motion to Dismiss, Plaintiff would still have ample time to conduct merits-based discovery and prepare for summary judgment and trial. *See, e.g.*, *Skuraskis*, 2023 WL 8698324, at *5 (no prejudice to plaintiff where same discovery would be available following stay); *Borislow*, 2014 WL 12580035, at *1 (same).

### CONCLUSION

For each and all of the foregoing reasons, Defendants request that the Court grant a stay of all discovery except a limited period of narrow, reasonable jurisdictional discovery, and stay the scheduling of discovery deadlines, pending adjudication of their forthcoming Motion to Dismiss, and grant all such other and further relief as the Court deems just and proper.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Counsel for Defendants certify that they conferred with counsel for Plaintiff by teleconference on January 7, 2026 in a good-faith effort to resolve by agreement the issues raised in this Motion.  They have been unable to do so, and Plaintiff opposes the Motion.

Dated: January 12, 2026                          Respectfully submitted,


**BALLARD SPAHR LLP**
1909 K Street, NW
Washington, DC 20006-1157
Tel: (202) 661-2218
Fax: (202) 661-2299


By: _/s/ Charles D. Tobin_____
Charles D. Tobin
Fla. Bar No.: 816345
tobinc@ballardspahr.com
Sasha Dudding (*pro hac vice*)
duddings@ballardspahr.com

*Attorneys for Defendants*