UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, <br><br> Defendants. | Case No. 25-CV-25894-RKA |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO STAY DISCOVERY**

Plaintiff President Donald J. Trump ("Plaintiff" or "President Trump"), by and through undersigned counsel, hereby files this Memorandum of Law in Opposition to the Motion to Stay Discovery in Part Pending Adjudication of their Motion to Dismiss [D.E. 18] ("Motion to Stay") filed by Defendants British Broadcasting Corporation a/k/a BBC ("BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited (collectively, "Defendants"). In support thereof, Plaintiff states as follows:

**INTRODUCTION**

This action arises out of a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump in a BBC *Panorama* documentary. In that program, the BBC wrongly and unlawfully spliced together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech"), and deliberately omitted another critical part of his Speech, in order to intentionally distort the meaning of what President Trump said, and to falsely

and deceptively portray President Trump as having called for violent action on January 6, 2021, which did not take place. Worse still, shocking concerns about the *Panorama* documentary were raised internally at the BBC *before* dissemination, yet the BBC ignored those concerns, causing President Trump significant damages. Only after the fact—after the damage had been done—did the BBC offer a hollow, weak "apology," characterizing its deliberate misconduct as a mere mistake or "error in judgment."

Defendants now seek an extraordinary and improper remedy: a blanket stay of "merits-based" discovery *before* they have even filed their motion to dismiss, which they promise to do on March 17, 2026. Their request is premature, contrary to the law, and unsupported by any particularized showing of prejudice or burden. This District's practice is clear (as is the law in this Circuit): a discovery stay pending a dispositive motion is the ***exception***, not the rule, and the movant bears a heavy burden to show necessity and reasonableness. Defendants have not met and cannot meet that burden because they (i) have not filed a motion to dismiss for the Court to consider, to take the required "preliminary peek" at, and the motion practice regarding the motion to dismiss is not fully briefed, which subjects the Motion to Stay to denial, (ii) rely on speculation about what discovery Plaintiff "will" seek, and (iii) the discovery they want to allow ("jurisdictional discovery") substantially overlaps with the discovery they want to forbid ("merits discovery"). Accordingly, this Court should deny Defendants' Motion to Stay.

## ARGUMENT

I. **Legal Standard for Staying Discovery.**

This Court has established a high burden for granting a motion to stay discovery pending the resolution of a motion to dismiss. As Chief Judge Altonaga explained:

> ***Th[e] skepticism of discovery stays is well-founded.*** Courts must construe the Federal Rules of Civil Procedure 'to secure the just, speedy, and inexpensive

determination of every action and proceeding.' Fed. R. Civ. P. 1. The rules governing discovery are no exception. '[W]hen discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.' *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) (alteration added; citations omitted). These problems include 'duplicat[ion] [of] costs because counsel must reacquaint themselves with the case once the stay is lifted[,]' leaving '[m]atters of importance . . . mislaid or avenues unexplored[,]' and the 'management problem[s]' that inevitably arise when the case 'leaves the normal trial track.' *Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 637 (M.D.N.C. 1988) (alterations added). For these reasons, ***federal law places a thumb on the scale against discovery stays*** while also permitting departure from that general rule when the circumstances warrant – and when the proponent of the stay sets forth sufficient justification for delay.

*Thompson v. Ryder System, Inc.*, 2022 WL 18776115, at *2 (Sept. 7, 2022) (emphasis added).

Thus, despite Defendants' generalization that courts in this District have found that a stay is "particularly" appropriate where a motion to dismiss challenges personal jurisdiction or where the claims "implicate" Defendants' First Amendment rights, the reality is that "[a] stay of discovery pending the determination of a motion to dismiss . . . is the ***exception rather than the rule***." *Cabrera v. Progressive Behavioral Science, Inc.*, 331 F.R.D. 185, 186 (S.D. Fla. 2019) (emphasis added). "[A] motion to stay discovery . . . is rarely appropriate unless resolution of the motion [to dismiss] will dispose of the entire case." *Bienaime v. Fla. Dept. of Children and Families*, 2024 WL 2986929, at *1 (S.D. Fla. Nov. 15, 2024) (citation omitted); *see also Cabrera*, 331 F.R.D. at 186 ("Dismissal of the case with prejudice is not a foregone conclusion" that would warrant an "across-the-board stay of discovery right now."); *Carey v. Kirk*, 2021 WL 9347056, at *1 (S.D. Fla. Sept. 20, 2021) ("[M]otions to stay discovery are largely denied except in exceptional circumstances where a motion to dismiss would dispose of the entire case."); *Ray v. Spirit Airlines, Inc.,* 2012 WL 5471793, at *2 (S.D. Fla. Nov. 9, 2012) (declining to stay discovery because the motion to dismiss did not indicate that the case was "surely destined for dismissal").

Indeed, "defendants bear a tall burden in seeking discovery stays." *Thompson*, 2022 WL 18776115, at *2. "[A] defendant who requests a blanket stay of discovery must do more than simply point to the pendency of a dispositive motion: it must also make a 'specific showing of prejudice or burdensomeness[.]'" *Id.* (citing *Cuhaci v. Kouri Group, LP*, 540 F. Supp. 3d 1184, 1187 (S.D. Fla. 2021)). "Ultimately, the proponent of the stay bears the burden of demonstrating its necessity, appropriateness, and reasonableness." *Ray*, 2012 WL 5471793, at *1.

As is underscored herein, Defendants have not met their burden of showing that their unfiled motion to dismiss is "clearly meritorious and truly case dispositive," have not demonstrated that they face any unreasonable burden or prejudice by participating in discovery, or that their request for an indefinite stay of merits discovery will not prejudice Plaintiff.

**II.     Defendants' Motion to Stay is Premature.**

As a threshold matter, Defendants' Motion to Stay is premature and should be denied on that basis alone. A stay of discovery pending a dispositive motion is not automatic. It requires the Court to "take a preliminary peek" at the dispositive motion to determine whether it appears "clearly meritorious and truly case dispositive." *MindbaseHQ LLC v. Google LLC,* 2021 WL 680887, at *1 (S.D. Fla. Feb. 22, 2021) (denying stay; quoting *Feldman v. Flood,* 176 F.R.D. 651, 652 (M.D. Fla. 1997)). That essential predicate is missing here. Without a filed—and fully briefed—motion to dismiss, the Court cannot meaningfully take that "preliminary peek," and any stay decision would rest on nothing more than Defendants' assurances about what they intend to file later. Courts have repeatedly rejected that stay-by-default approach. *See id.* at *2 (collecting cases) ("*Chudasama* does not state a general rule that discovery should be stayed pending resolution of a dispositive motion.").

But that is precisely what Defendants improperly seek here: a blanket freeze on "merits-based" discovery now, based on a motion to dismiss they do not intend to file for another six weeks. A speculative, future motion cannot justify the extraordinary relief of halting discovery. Defendants' preview of potential arguments does not cure the defect. At most, Defendants offer denials and disputes about jurisdictional facts (in the absence of any affidavit or declaration) alleged in the Complaint—facts the Court must accept as true at this stage—along with facial attacks that fall far short of somehow rendering and proving now that Defendants' unfiled, hypothetical motion to dismiss will be "clearly meritorious and truly case dispositive." *MindbaseHQ LLC,* 2021 WL 680887, at *1. Defendants' confidence in their anticipated motion is not evidence and is not a substitute for a motion that the Court can actually evaluate.

As Magistrate Judge Goodman explained in denying a requested stay:

> As is typically the case where a defendant seeks a discovery stay, Defendants here contend their dismissal motions are well-taken. Because the dismissal motions are not even fully briefed, the Undersigned is not prepared to now assess the viability of the motions. Nevertheless, my admittedly incomplete and preliminary review suggests that the motions may not be the "slam-dunk" submissions Defendants describe them to be in their papers.

*Montoya v. PNC Bank, N.A.,* 2014 WL 2807617, at *2 (S.D. Fla. June 30, 2014).

Courts in this District consistently deny stays in these circumstances—where the dispositive motion is not filed, not fully briefed, or merely is just anticipated. *See id.* (denying motion to stay discovery in the absence of a fully briefed motion to dismiss); *see also MindbaseHQ LLC,* 2021 WL 680887, at *2 (same); *Jackson v. Anheuser-Busch InBev SA/NV, LLC,* 2021 WL 493959, at *2 (S.D. Fla. Feb. 10, 2021) (denying motion to stay discovery pending the resolution of a defendant's anticipated motion to dismiss); *Miller's Ale House, Inc. v. DCCM Rest. Grp., LLC,* 2015 WL 6123984, at *2 (M.D. Fla. Oct. 16, 2015) (denying motion to stay in the absence of a fully briefed motion to dismiss).

Defendants' request fails at the starting line. Because no motion to dismiss has been filed—much less fully briefed—the Court cannot take the required "preliminary peek," and Defendants cannot carry their heavy burden to justify a blanket "merits" discovery stay. The Motion to Stay should be denied.

### III. Defendants Fail To Demonstrate a "Clear Indication" That The Action Will be Dismissed in Its Entirety.

Despite not having filed any motion to dismiss, Defendants offer a preview of purported grounds for dismissal, and wrongly insist that there is a "clear indication" the Complaint will be dismissed in its entirety with prejudice. That assertion is unsupported and self-serving, and it falls well short of the showing required to justify the extraordinary relief of a discovery stay. Defendants' arguments—untested, unbriefed, and premised on disputed characterizations of the pleadings—do not "tip the scales," and they certainly do not establish that dismissal is clearly inevitable.

#### A. Defendants' Personal Jurisdiction Challenge Does Not Justify a Discovery Stay.

Defendants contend that none of them are subject to personal jurisdiction in Florida. But Defendants' arguments are unavailing. Instead of engaging the Complaint's jurisdictional allegations on their own terms, Defendants largely (i) offer conclusory denials; (ii) dispute Plaintiff's factual allegations and promise to provide contrary evidence later; or (iii) cherry-pick allegations and invite the Court to consider them in isolation. *See* D.E. 18 at pp. 7-14. That is not a basis to stay discovery—particularly at the outset, where the Court must accept the Complaint's well-pled jurisdictional facts as true and draw reasonable inferences in Plaintiff's favor. *See Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1350 (11th Cir. 2013) (stating that allegations

in the complaint are accepted as true when reviewing whether the district court had personal jurisdiction over a nonresident defendant).

The Complaint pleads detailed jurisdictional facts establishing Florida jurisdiction under Fla. Stat. §§ 48.193(2), 48.193(1)(a)(1), and 48.193(1)(a)(2), including that:

- The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films, Ltd., and its international distribution partner, Blue Ant Media Corporation. D.E. 1 at ¶ 12.

- The BBC operates in the United States not as an abstract concept but in a constant manner, the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location. *Id.* at ¶ 17.

- The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web pages entitled "Florida – BBC News" and "Florida – BBC Weather," among others. The BBC also offers web pages specific to cities in Florida. *Id.* at ¶ 18.

- Additionally, the BBC offers subscriptions to individuals in Florida and as a result, has thousands of subscribers in Florida. Any individual in the United States, including Florida, can pay for a subscription to the BBC's content and services. *Id.* at ¶ 19.

- Individuals in the United States, including Florida, also have another option for consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform. *BritBox* is available in the United States, including in Florida, and has thousands of subscribers in Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount of the BBC's original content—including *Panorama*. *Id.* at ¶ 20.

- The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie stated in his recent resignation letter: 'Despite a hugely competitive market,

- I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*.' *Id.* at ¶ 23.

- The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC. *Id.* at ¶ 24.

- In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer. *Id.* at ¶ 25.

- Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer. *Id.* at ¶ 27.

- The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida. *Id.* at ¶ 33.

- Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary, including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025. *Id.* at ¶ 34.

- Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary. *Id.* at ¶ 37.

- The BBC explicitly instructed and ordered its producers to travel to Florida and utilize the forum for the purpose of creating the Documentary and defaming President Trump. *Id.* at ¶ 38.

- The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida. *Id.* at ¶ 40.

Defendants may dispute these allegations—but disputes of fact are not a "clear indication" that dismissal for lack of personal jurisdiction is inevitable, and they certainly do not justify freezing discovery. To the contrary, intentional tort and defamation cases routinely recognize jurisdiction where the defendant's conduct is aimed at the forum and the resulting harm is foreseeably suffered there. *See, e.g., Calder v. Jones,* 465 U.S. 783, 789 (1984) (finding a Florida reporter was subject to jurisdiction in California despite arguing that he was "not responsible for [his publisher's] circulation of the article in California"); *Gubarev v. Buzzfeed, Inc.,* 253 F. Supp. 3d 1149, 1159 (S.D. Fla. 2017) (finding personal jurisdiction over non-resident defendants for defamatory article posted online which contained a reference to a Florida resident); *Baronowsky v. Maiorano,* 326 So. 3d 85, 89 (Fla. 4th DCA 2021) (holding that due process was satisfied by non-resident defendant's posting of defamatory material on a website directed at the Florida plaintiff because "[i]n intentional tort cases, minimum contacts can be established based on a single tortious act, regardless of whether the defendant has any other contacts within the forum state, if the tortious act was aimed at the forum state and caused harm that the defendant should have anticipated would be suffered there.").

Defendants' own position underscores why their arguments cannot support a stay. Defendants effectively concede that personal jurisdiction will be contested and agree that jurisdictional discovery will be necessary to develop the record. That concession alone defeats any claim that dismissal for lack of personal jurisdiction is a foregone conclusion or that this case presents the rare circumstances where a stay is warranted. At most, Defendants offer bare-bones,

premature arguments that depend on factual disputes and a record that does not yet exist. That is not a "clear indication" of inevitable dismissal—and it cannot justify the extraordinary relief of halting merits discovery.

### B. Defendants' Facial Challenges Do Not Justify a Discovery Stay.

Equally fatal to their motion are Defendants' unpersuasive arguments directed to the merits of Plaintiff's claims. None of the Defendants' arguments evidence a serious showing that dismissal is inevitable. On the contrary, Defendants' Motion to Stay is nothing but a scant preview of their hypothetical motion to dismiss that broadly attempts to dispute or deny the Complaint's allegations, and offers only cursory, conclusory assertions in place of any meaningful legal analysis. That is nowhere near the "clear indication" required to justify the extraordinary remedy of a discovery stay—much less a showing that the Complaint must be dismissed, in its entirety, with prejudice.

For example, Defendants argue that Plaintiff's allegations that BBC Studios Distribution Limited and BBC Studios Productions Limited jointly co-produced and published the *Panorama* Documentary are insufficient to establish liability given that the conduct of each defendant is not particularized. Contrary to Defendants' contention, collective allegations do not render a complaint deficient where the pleading can "be fairly read to aver that all defendants are responsible for the alleged conduct." *Zimmerman v. Buttigieg,* 576 F. Supp. 3d 1082, 1091 (M.D. Fla. 2021). Here, the Complaint alleges such joint participation in the production and publication of the *Panorama* Documentary, which is more than enough at the pleading stage.

And even if the Court were to require additional specificity as to the respective roles of each of the BBC Studios entities, that would not remotely establish inevitable dismissal of the entire action with prejudice. At most, the result would be dismissal without prejudice with leave

to amend—exactly what the authority Defendants cite recognized. *See Wyndham Vacation Ownership v. CLS,* 2018 WL 9869799, at *2 (S.D. Fla. Nov. 5, 2018) (granting motion to dismiss without prejudice).

Defendants' damages argument is even more misplaced. Defendants claim that Plaintiff "will not be able to prove" that the *Panorama* Documentary caused harm or actual damages. This argument misses the mark given that what Plaintiff will ultimately prove is a merits question for a developed record, not a basis to halt discovery at the outset. That is the whole point of discovery, to develop and complete the record. The cases that Defendants invoke do not support the notion that dismissal with prejudice is a foregone conclusion, and they turn on different doctrines or entirely different procedural postures.[1] Moreover, Defendants ignore what the Complaint actually alleges. President Trump pleads concrete reputational, financial, and brand-related harms flowing from the defamatory portrayal by Defendants, including damages to his reputation and personal brand. *See* D.E. 1 at ¶¶ 97-102. Those allegations are more than sufficient at this stage, and underscore why Defendants' speculative "you won't be able to prove it" argument cannot justify a discovery stay.

---

[1] In *Corsi v. Newsmax Media,* the dismissal with prejudice rested on the fair reporting privilege, and the Court indicated that the Complaint otherwise would have only been dismissed without prejudice to allow amendment to cure pleading deficiencies. 519 F. Supp. 3d 1110, 1127 (S.D. Fla. 2021). *Anheuser-Busch, Inc. v. Philpot* involved a post-default evidentiary hearing where the plaintiff failed to present evidence of actual damages and the Eleventh Circuit vacated the default judgment and directed entry of judgment for the defendant—hardly authority for a pre-motion discovery stay. 317 F.3d 1264, 1266-67 (11th Cir. 2003). *Zimmerman v. Allen* was decided at the summary judgment stage, not a motion to dismiss. 2014 WL 3731999, at *9 (Fla. 18th Cir. Ct. June 30, 2014). And *Harrington v. Veritext* was dismissed with prejudice only after the plaintiff had been given the opportunity to amend and the Court concluded amendment would be futile because the defendant was immune from civil liability. 2025 WL 3282698, at *9 (S.D. Fla. Oct. 24, 2025).

Defendants also wrongly contend that President Trump did not allege facts demonstrating actual malice. The opposite is true. The Complaint pleads extensive, detailed facts—spanning more than 45 allegations (*see* D.E. 1 at ¶¶ 51-96)—that plausibly support the inference that Defendants acted with knowledge of falsity or reckless disregard for the truth (*i.e.,* that they knew the challenged portrayal was false or, at a minimum, published it while entertaining serious doubts about its truth). By way of example, Plaintiff alleges:

- The Documentary's portrayal could not plausibly have resulted from an innocent editing mistake. Plaintiff alleges the BBC spliced together two distinct portions of the Speech separated by nearly 55 minutes and omitted a critical intervening portion—a distortion that, by its nature, required deliberate selection and sequencing rather than an accidental "glitch." *See* D.E. 1 at ¶ 52.

- Plaintiff further alleges a history and pattern of unfair and biased reporting by the BBC as to President Trump, supporting an inference that the challenged portrayal was not an isolated lapse but consistent with a broader course of conduct. *See id.* at ¶ 53.

- Plaintiff alleges that, "[i]n early Summer 2025, Michael Prescott, a nonpartisan journalist who until June 2025 was an independent advisor to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board describing serious bias in BBC reporting, including concerns relating to the BBC's handling of the Speech in the Documentary. *See id.* at ¶¶ 55-57.

- Plaintiff alleges that Michael Prescott's concerns were echoed by other senior BBC figures, including David Grossman (Senior Editorial Advisor to the EGSC) and Clive Coleman (former BBC legal affairs correspondent), further supporting the claim that the issues were known internally before dissemination. *See id.* at ¶¶ 59, 69.

- Plaintiff alleges that the BBC previously aired similarly doctored footage of the Speech on a 2022 episode of *BBC Newsnight*, supporting an inference of repetition—*i.e.*, that the BBC knew what it was doing when it edited the Speech in the Documentary. *See id.* at ¶¶ 61-68.

- Plaintiff alleges that the BBC has admitted misleading viewers in prior reporting relating to President Trump, including an incident reported by *The*

> *Telegraph,* which Plaintiff pleads as additional support for knowledge and recklessness. *See id.* at ¶ 70.

- Plaintiff further alleges that the Documentary's structure and content reflect an editorial design to present President Trump in an inflammatory light—citing, among other things, the imbalance of the commentators and time allotted to negative versus positive voices—making the manipulation of the Speech part of an overall narrative strategy rather than an inadvertent mistake. *See id.* at ¶¶ 77-81.

- Plaintiff also alleges that Defendants published the Documentary with the express intent of interfering with the 2024 Presidential Election, which demonstrates Defendants' bias and malicious intent behind the Documentary. *See id.* at ¶ 82.

- Plaintiff also alleges that public officials and other prominent figures have criticized the BBC's reporting practices and called for accountability, which Plaintiff pleads as further context supporting recklessness and motive. *See id.* at ¶¶ 90-95.

These allegations—taken together and accepted as true at this stage—more than plausibly plead actual malice. *See Dershowitz v. Cable News Network, Inc.,* 541 F. Supp. 3d 1354, 1368 (S.D. Fla. 2021) (denying motion to dismiss defamation claim where plaintiff plausibly alleged actual malice based on knowing omission of key portions of statements and use of a truncated clip that conveyed a false meaning).

Defendants further wrongly contend that the *Panorama* Documentary contains protected expressions of opinion. In a particularly strained theory, Defendants argue that "even if the Documentary is reasonably interpreted to report that Plaintiff encouraged the crowd to march to the Capitol on January 6, that is an opinion on a matter of public concern." D.E. 18 at p. 17. That is not "opinion"—it is a factual assertion about what the President said and did. And it is especially untenable where, as alleged here, Defendants achieved that portrayal by splicing, rearranging, and omitting portions of President Trump's own words to create the false impression that specific statements came out of his mouth in that form and context. Editing a speaker's words to change

their meaning and then presenting the resulting depiction as what the speaker said is not protected commentary; it is a falsifiable statement of fact.

That is precisely why the same "opinion" label failed in *Dershowitz*. There, CNN argued that its broadcasts were protected opinion, but the Court rejected that characterization and held the statements were not pure opinion; they were, at a minimum, mixed expressions of opinion that could reasonably be construed as defamatory because the broadcasts lacked an adequate factual foundation and mischaracterized what Dershowitz actually said. *Dershowitz,* 541 F. Supp. 3d at 1367 (denying motion to dismiss).

Lastly, Defendants' lone, conclusory assertion that Plaintiff's FDUTPA claim is barred by the single-action rule does nothing to show that the Complaint is headed for dismissal in its entirety with prejudice. At most, it is an argument aimed at a single cause of action. And even if the FDUTPA claim were ultimately dismissed, which it should not be, that would have no bearing whatsoever on Plaintiff's remaining claims.

In short, Defendants' merits arguments amount to just denials, disputes, and predictions about what Plaintiff will or will not prove later. That is not a "clear indication" that the Complaint must be dismissed in its entirety with prejudice, and provides no basis to impose the extraordinary remedy of a discovery stay.

## IV. Defendants' "Unbounded Discovery" Parade of Horribles is Speculative and Contrary to the Pleadings.

Defendants' attempt to show good cause and reasonableness is built entirely on speculation and conclusory rhetoric—not evidence. Defendants make no particularized showing of prejudice, no concrete estimate of cost, and no explanation of how ordinary discovery obligations would impose a burden on any specific defendant. Instead, they offer broad, abstract concerns (*e.g.,* cross-border discovery, privilege issues, and "decades" of coverage). That is not the required showing.

Courts in this District reject stays supported only by generalized assertions untethered to actual discovery requests, actual custodians, actual systems, or actual costs. *See, e.g., Jackson,* 2021 WL 493959, at *1 (denying stay of discovery where defendants failed to demonstrate that the requested discovery would be "unduly burdensome," much less make the required "specific showing" of prejudice or difficulty).

Defendants also cannot manufacture "undue burden" by predicting that discovery will be expensive or time-consuming before discovery has even begun and before the scope of requests is known. This Court has rejected precisely that sort of premature, speculative argument, emphasizing that "[t]hese arguments won't do" absent the "specific showing of prejudice or burdensomeness" required by this District's rules. *Ray,* 2012 WL 5471793, at *3; *see also Montoya,* 2014 WL 2807617, at *2 (denying motion to stay based on conclusory statements regarding burdensome discovery). And while discovery always involves some burden, that alone does not constitute "undue burden." *In re Application of Mesa Power Grp., LLC,* 878 F. Supp. 2d 1296, 1306 (S.D. Fla. 2012).

Unable to show any concrete burdens, Defendants pivot to a parade of hypothetical and unconvincing privilege and regulatory issues—reporter's privilege, attorney-client privilege, executive privilege, sealing orders, data privacy laws, and unspecified foreign regulations—as if the possibility of future discovery disputes justifies shutting discovery down altogether. It does not. The prospect of ordinary discovery-management issues is not an "unusual circumstance" warranting a stay. *See S.K.Y. Mgmt. LLC v. Greenshoe, Ltd.,* 2007 WL 201258, at *1 (S.D. Fla. Jan. 24, 2007) ("The motion's suggestion that expensive time-consuming discovery is at stake is simply not tenable."). And Defendants' argument is internally inconsistent: these same alleged complexities would apply equally to the jurisdictional discovery Defendants say should proceed.

If privilege, privacy, or foreign-issue law issues truly made discovery unworkable, Defendants would oppose jurisdictional discovery too. They do not—because the argument is a pretext for a one-sided pause.

Further, if Defendants believe Plaintiff will seek disproportionate discovery, the Federal Rules already provide the remedy: proportionality under Rule 26, targeted sequencing, narrowing through meet-and-confer efforts, ESI protocols, and protective orders. A categorical stay is unnecessary—and is exactly the kind of approach Courts in this District reject.

Finally, Defendants' proposal would likely increase—rather than reduce—burden and cost. Defendants want jurisdictional discovery now while freezing "merits" discovery, even though the two substantially overlap. Bifurcating discovery in that manner risks duplication, inefficiency, and serial disputes about what falls on which side of an artificial line.

## V.     Defendants' Proposal For an Indefinite Stay Will Prejudice Plaintiff.

Defendants characterize the requested pause as "brief." But their Motion to Stay seeks a stay until (i) they file their anticipated motion to dismiss; (ii) that motion is fully briefed and adjudicated; and (iii) jurisdictional discovery is completed in connection with that motion. That is not a short pause—it is an open-ended, timeless halt. And in a case involving reputational harm and time-sensitive proof, delay is itself prejudicial: evidence becomes harder to collect, witnesses' recollections fade, and relevant data and records become more difficult to preserve and retrieve. The resulting stagnation will create needless case-management problems and unfairly impede Plaintiff's ability to prosecute this action.

In sum, Defendants do not meet the burden of their Motion to Stay, as they only point to a not-yet filed, hypothetical motion to dismiss, unidentified and unspecified discovery they speculate may be sought, and generic predictions about routine discovery disputes that may arise in any case.

That is not good cause. A stay would prejudice Plaintiff by delaying time-sensitive discovery and impairing Plaintiff's ability to develop the record. Accordingly, Defendants' Motion to Stay should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Stay, direct the parties to proceed with all discovery under the Federal Rules and the Court's scheduling directives, and award any such further relief the Court deems just and proper.

Dated: February 4, 2026                                  Respectfully submitted,

/s/Alejandro Brito
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel:  305-614-4071
Fax:  305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

/s/Edward Andrew Paltzik
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice application forthcoming*)

/s/Daniel Zachary Epstein
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 4, 2026, the foregoing was served via the Court's CM/ECF System upon:

Charles D. Tobin, Esq.
Ballard Spahr, LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tobinc@ballardspahr.com

*Counsel for Defendants British Broadcasting Corporation, BBC Studios Productions Limited and BBC Studios Distribution Limited*

                                                                                    /s/Alejandro Brito