UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:25-cv-25894-RKA ) |
| BRITISH BROADCASTING CORP., et al., | ) ) ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO STAY DISCOVERY IN PART PENDING ADJUDICATION OF THEIR MOTION TO DISMISS**

Plaintiff has not explained why he should be permitted to take the unusual step of beginning merits-based discovery *before* the Court has resolved these United Kingdom-based Defendants' strong challenge to personal jurisdiction. Nor could he, which is why Defendants should prevail on their motion for a temporary, partial stay of merits-based discovery. Such a stay is appropriate because, as their forthcoming Motion to Dismiss will make clear, Defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Ltd., and BBC Studios Productions Ltd. ("the Studios Defendants") simply did not create, produce, or air "Trump: A Second Chance?" (the "Documentary") in Florida, and there is no jurisdiction over them here. The Studios Defendants were not involved in the Documentary *at all*. Moreover, apart from the threshold issue of jurisdiction, Plaintiff has not persuasively demonstrated that his complaint states a claim for defamation or violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") such that discovery would even be warranted. The Court should stay merits-based discovery and the setting of discovery deadlines until it has resolved jurisdiction.

**ARGUMENT**

Requiring the BBC—a non-profit, public service broadcaster funded by the British public

1

(via payment of a licence fee)—and its foreign co-defendants to engage in broad merits-based discovery before the Court has determined they are subject to its jurisdiction would undercut the "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1324 (S.D. Fla. 2020) (quoting *Michel v. NYP Holdings*, 816 F.3d 686, 702 (11th Cir. 2016) and granting stay). Defendants have met each prong of the stay test by showing that "(1) they will be prejudiced, (2) the . . . motion is clearly meritorious and case dispositive, and (3) any prejudice to the non-moving party is outweighed by the possibility the motion will be dispositive." *Turner v. Costa Crociere*, 2020 WL 9071486, at *4 (S.D. Fla. Aug. 23, 2020) (Moore, C.J.); *see* Mot. (ECF 18).

## I.   DEFENDANTS TIMELY SEEK A TEMPORARY, PARTIAL STAY

Contrary to Plaintiff's claims, Defendants' requested stay is not "premature," "blanket," or "indefinite." *Cf.* Opp. (ECF 24) at 2-6. To start, it is timely. Courts assess jurisdiction "first," because those "not subject to the jurisdiction of the court [can]not be personally bound by its rulings." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Thus, merits "discovery should not commence until such" jurisdictional "challenges are resolved." *Lewis v. Mercedes-Benz USA*, 2020 WL 4923640, at *3 (S.D. Fla. Mar. 25, 2020) (Ruiz II, J.). Otherwise, "it is possible that the Court lacks the authority to mandate that the parties engage in discovery." *Seaway Two Corp. v. Deutsche Lufthansa Aktiengesellschaft*, 2006 WL 8433652, at *1 (S.D. Fla. Nov. 17, 2006) (Altonaga, J.). Requiring Defendants to wait to seek any stay until the Motion to Dismiss is fully briefed in April, and engage in broad merits-based discovery now, would undercut that precedent entirely. Indeed, Plaintiff cites to *no* court facing such strong

jurisdictional challenges that has ordered *all* discovery to proceed.  *Cf.* Opp. at 3-5, 15.[1]

To be sure, to assess a stay, the Court will "take a preliminary peek at the merits of the motion to dismiss to see if it appears to be clearly meritorious and truly case dispositive," *Turner*, 2020 WL 9071486, at *2, but the stay motion can provide that peek.  Plaintiff cites no rule barring a court from considering stays absent a fully briefed motion to dismiss.  Quite the contrary, it *is* appropriate to review Defendants' arguments now.  *See, e.g.*, *Lewis*, 2020 WL 4923640, at *1 & n.1 (staying merits-based discovery months before motion to dismiss briefing closed); *cf.* Opp. at 5 (citing, e.g., *MindbaseHQ v. Google*, 2021 WL 680887, at *2 (S.D. Fla. Feb. 22, 2021) ("review[ing]" dismissal arguments prior to close of briefing, but finding case would proceed "regardless of its ultimate ruling"); *Montoya v. PNC Bank*, 2014 WL 2807617, at *2-3 (S.D. Fla. June 20, 2014) (conducting "preliminary review" of dismissal arguments, but denying stay due to "practical considerations" of "tight" schedule, and fact that discovery had already been produced).  Plaintiff also misrepresents the requested stay as "indefinite."  Opp. at 4.  If the Court denies the Motion to Dismiss, merits-based discovery could begin promptly, well before summary judgment or trial.  Likewise, Defendants do not seek a "blanket stay," *id.*, instead asking merely to follow the "recognized and appropriate procedure" of "limit[ing] discovery proceedings at the outset to a determination of jurisdictional matters." *U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 79-80 (1988).  Overall, especially given

---

[1] His cases are also inapposite for various other reasons.  *Id.* (citing, e.g., *Bienaime v. Fla. Dep't of Child. & Fams.*, 2024 WL 4986929, at *2 (S.D. Fla. Nov. 15, 2024) (granting stay given likelihood of federal court dismissing case due to pending state-court case); *Jackson v. Anheuser-Busch InBev*, 2021 WL 493959, at *1 (S.D. Fla. Feb. 10, 2021) (operative complaint not yet on file); *In re Mesa Power Grp.*, 878 F. Supp. 2d 1296, 1303-07 (S.D. Fla. 2012) (limiting discovery, in motion to quash subpoena under 28 U.S.C. § 1782); *S.K.Y. Mgmt. v. Greenshoe*, 2007 WL 201258, at *1-2 (S.D. Fla. Jan. 24, 2007) ("straightforward commercial case" where a "claim would remain which may result in the production of much of the same discovery")).

Defendants' strong arguments that exercising personal jurisdiction would violate Florida law and due process, Defendants' request for a partial, temporary stay is timely and should be granted.

## II. DEFENDANTS' MOTION TO DISMISS IS CLEARLY MERITORIOUS AND WOULD DISPOSE OF THE ENTIRE CASE

A peek at Defendants' forthcoming Motion to Dismiss shows a partial stay is warranted.

### A. Defendants Are Not Subject to Personal Jurisdiction in Florida

Plaintiff concedes that he "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (cited in Opp. at 6-7). He has failed to carry that burden given Defendants' utter lack of relevant connections with Florida.

#### 1. *Defendants Are Not Subject to <u>General</u> Personal Jurisdiction in Florida*

Plaintiff ignores Defendants' argument that this Court does not have general personal jurisdiction over them. *Cf.* Opp. at 6-10. He cannot dispute that Defendants are not "essentially at home" in Florida, since their "place of incorporation and principal place of business" is the United Kingdom. *See Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014); Compl. ¶¶ 12-14. Nor can Plaintiff base general jurisdiction on the claim that the BBC has a Coral Gables office, Compl. ¶ 17, or that BBC.com and BritBox (in both cases, where the Documentary was *never* available) have Florida subscribers, *id.* ¶¶ 18-20. *See Carmouche v. Tamborlee Mgmt.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015) (no general jurisdiction over foreign entity with Florida address); *Brown v. Showtime Networks*, 394 F. Supp. 3d 418, 434 (S.D.N.Y. 2019) (none based on "the mere facts that BBC airs [TV] programming in New York and has a subsidiary in New York"); *Hit Bound Music v. BBC Films*, 2017 WL 5640543, at *2 (C.D. Cal. June 28, 2017) (same).

#### 2. *Defendants Are Not Subject to <u>Specific</u> Personal Jurisdiction in Florida*

Plaintiff also does not show that Defendants are subject to *specific* personal jurisdiction

4

here.  Indeed, Plaintiff has abandoned one of the three long-arm provisions he previously cited, Fla. Stat. § 48.193(1)(a)(6), which covers actions "[c]ausing injury to persons or property within this state," and which was doomed to fail since "economic injury" "is insufficient" to invoke this provision.  *Karnas v. Cuban*, 2025 WL 3759241, at *5 (S.D. Fla. Dec. 30, 2025) (Altman, J.).

Plaintiff cites a second long-arm provision, Fla. Stat. § 48.193(1)(a)(1), Opp. at 7, for cases related to "carrying on a business or business venture in this state," *Karnas*, 2025 WL 3759241, at *5, in passing.  Plaintiff cannot rely on it, as he fails to show these U.K. Defendants have any Florida business with a "nexus" to his claims, or that the Studios Defendants have *any* Florida business at all.  *Id.* at *5-6.  Claims about BritBox or BBC.com (again, where the Documentary was *never* available), Opp. at 7-8, are immaterial, as "electronic communications from out-of-state offices into Florida do not establish conducting business" here,  *Karnas*, 2025 WL 3759241, at *6.  Nor does the alleged Coral Gables office have a "nexus" to the case.  *Id.*

Plaintiff is thus left with only Fla. Stat. § 48.193(1)(a)(2), for cases alleging tortious acts, and here, too, Plaintiff "still fail[s] to overcome the federal due-process standard," as he "cannot clear the purposeful-availment prong."  *Karnas*, 2025 WL 3759241, at *7.  To do so, he must either (1) show the defendant's conduct is "expressly aimed" at the forum, under the "effects test" from *Calder v. Jones*, 465 U.S. 783, 789 (1984) (cited in Opp. at 9); or (2) show that Defendants created "the traditional minimum contacts" with Florida by "purposefully avail[ing]" themselves of the forum, *McCall v. Zotos*, 2023 WL 3946827, at *4 (11th Cir. June 12, 2023).

As Defendants' Motion will show, and as jurisdictional discovery will prove, Defendants never purposefully aimed the Documentary at Florida.  The BBC aired it on their U.K.-only TV channels and streaming platform, and the Studios Defendants were not involved.  *See* Mot. at 11-12; *cf.* Opp. at 7-8; *see also Catalyst Pharms. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir.

5

2018) (requiring Florida access).  Defendants did not even have the rights to broadcast the Documentary in Florida or the United States; having no broadcast rights at all outside the United Kingdom.  Canadian company Blue Ant also never broadcast the Documentary in Florida or the United States, *cf.* Opp. at 8, and even if it had, that would not show Defendants "expressly aimed" it at "Florida specifically."  *See Hit Bound Music*, 2017 WL 5640543, at *3 (third-party distribution of BBC film in California insufficient).  And, while Plaintiff still has not named a Floridian who watched the Documentary via a virtual private network ("VPN"), *cf.* Compl. ¶ 29, even if he had, such "[u]nauthorized viewers outside of the United Kingdom do not provide a basis for personal jurisdiction."  *Carsey-Werner Co. v. BBC*, 2018 WL 1083550, at *6 (C.D. Cal. Feb. 23, 2018).  Finally, Plaintiff cannot establish jurisdiction by (incorrectly) alleging that the BBC filmed a short, unrelated segment of the Documentary at Mar-a-Lago, Opp. at 8-9, as "the mere filming of some portions of the Program in" Florida "does not demonstrate that [defendant] directed its conduct toward the state."  *Carsey-Werner*, 2018 WL 1083550, at *7.

      Overall, due process is not satisfied where, as here, Plaintiff has not shown "that the Defendants have *purposeful* contacts with Florida *from which his claims arise*."  *Raymond v. LSM Trading USA*, 2026 WL 279102, at *3 (S.D. Fla. Feb. 3, 2026) (Altman, J.) (emphasis in original).  The few cases Plaintiff cites finding jurisdiction where "the defendant's conduct is aimed at the forum" are inapposite, because the BBC *aimed to block* Florida viewers, and the Studios Defendants had no connection to the Documentary at all.  *Cf.* Opp. at 9 (citing *Calder*, 465 U.S. at 789-90 (California had jurisdiction where state "is the focal point" of article and magazine had "largest circulation" there); *Gubarev v. Buzzfeed*, 253 F. Supp. 3d 1149, 1156-57 (S.D. Fla. 2017) (Ungaro, J.) ("Defendants' connections to Florida are extensive"); *Baronowsky v. Maiorano*, 326 So. 3d 85, 90 (Fla. 4th DCA 2021) (defendant used "Florida police records"

and "targeted his statements to Florida residents and Florida residents read those statements")). This case is instead on all fours with those where courts found no jurisdiction because "there is no evidence that" each "defendant posted the allegedly defamatory information *hoping* to reach the forum state or an audience in the forum state specifically." *Moore v. Cecil*, 109 F.4th 1352, 1364 (11th Cir. 2024) (emphasis added); *see also, e.g.*, Mot. at 12-13 (collecting cases); *Karnas*, 2025 WL 3759241, at *10 (posts "were accessible to all social-media users" alike); *Toll v. North*, 644 F. Supp. 3d 1050, 1055 (S.D. Fla. 2022) (Cohn, J.) ("Defendant's conduct was partly directed at Florida, and partly directed at everywhere else in the world with internet access").[2]

Because Defendants' personal jurisdiction argument will be "clearly meritorious and truly case dispositive," *Turner*, 2020 WL 9071486, at *2, the Court should stay merits discovery until these threshold questions are adjudicated.

### B. Plaintiff Fails to State a Claim for Defamation or Violations of FDUTPA

Staying merits discovery is especially proper because the Complaint also fails to state a claim. **First**, Plaintiff fails to state *any* claim against the Studios Defendants. He makes only the (incorrect) allegation that they "co-produced and published" the Documentary *and makes no other allegation about them*. Compl. ¶¶ 13-14. The Opposition insists on reading Plaintiff's allegations "collective[ly]," Opp. at 10-11, but as he concedes, this is improper unless "it can be *fairly* read to aver that all defendants are responsible for the alleged conduct." *Zimmerman v. Buttigieg*, 576 F. Supp. 3d 1082, 1091 (M.D. Fla. 2021) (emphasis in original) (cited in Opp. at 10). Here, the other factual allegations are about "the BBC" only, not "Defendants" in concert. Repleading would be futile because, as the Motion to Dismiss will show, these U.K. entities did

---

[2] Plaintiff does not even address the further argument that exercising personal jurisdiction over Defendants would offend notions of fair play and substantial justice. *See* Mot. at 13-14.

7

not actually produce or publish the Documentary.  *See, e.g.*, *Melgarejo v. Pycsa Panama*, 2012 WL 12894733, at *4 (S.D. Fla. Aug. 15, 2012) (dismissing claims against foreign corporation with prejudice for lack of personal jurisdiction), *aff'd*, 537 F. App'x 852 (11th Cir. 2013).

**Second**, Plaintiff failed to plausibly allege that the Documentary has harmed him.  *Cf.* Opp. at 11.  He does not contest that he must plead and prove actual damages.  *See* Mot. at 15-16 (citing, e.g., *Corsi v. Newsmax Media*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (Ruiz II, J.)).  Yet he claims only vague "harm to his professional and occupational interests."  Compl. ¶ 101.  These bare-bones allegations are not sufficient, and repleading cannot help, as he was indicted on charges related to the 2020 election before the Documentary aired and reelected days after.  Mot. at 15-16.  It is inconceivable that he will be able to plausibly plead, or establish, actual harm.

**Third**, Plaintiff fails to plausibly allege, as he must, that Defendants published the Documentary with actual malice.  *Cf.* Opp. at 12-13.  His allegations that Defendants acted "intentionally, with actual malice," are conclusory.  *E.g.*, Compl. ¶ 105; *see Michel*, 816 F.3d at 701-04.  His claims about the BBC's "independent adviser," *Newsnight*, Liz Cheney, and politicians' critiques, *see* Compl. ¶¶ 55-75, are misplaced because actual malice "would have to be brought home to the persons in [the] organization having responsibility for the publication." *N.Y. Times v. Sullivan*, 376 U.S. 254, 287 (1964).  The claim that "the BBC has strayed from accepted standards," Compl. ¶ 56, is also legally insufficient.  *See Michel*, 816 F.3d at 701-04.  In opposition, Plaintiff relies only on *Dershowitz v. CNN*, in which the defendant *prevailed* on actual malice because "even if [CNN's] commentators did report incorrectly on Dershowitz's statements, he has offered no evidence that they did so intentionally."  153 F.4th 1189, 1195 (11th Cir. 2025); *cf.* Opp. at 13.  Moreover, as the trial court noted, it is "immaterial and impertinent" to make allegations about Defendants' "ill will," *Dershowitz v. CNN*, 541 F. Supp.

3d 1354, 1360, 1370 (S.D. Fla. 2021) (Singhal, J.), as Plaintiff does here, *see* Compl. ¶¶ 53, 102.

**Fourth**, Plaintiff ignores Defendants' argument that the lack of actual malice behind the 15-second clip is underscored by the context of the hour-long Documentary.  *See* Mot. at 17.

**Fifth**, the Documentary contains protected expressions of opinion, with contributors voicing ardent support for Plaintiff, and others taking a critical view of contested political events. Even if the Documentary could be seen to portray Plaintiff as urging the crowd to march to the Capitol on January 6, that is a protected opinion on a matter of public concern.  Plaintiff's reliance on *Dershowitz* is inapposite, as there plaintiff alleged commentators made "untrue, defamatory factual comments," but Plaintiff does not challenge commentators' remarks.  *See Dershowitz*, 541 F. Supp. 3d at 1366; *cf., e.g., Trump v. CNN*, 2025 WL 3213203, at *2 (11th Cir. Nov. 18, 2025) ("Big Lie" was "not readily capable of being proven true or false").

**Sixth**, in defense of his FDUPTA claim, Plaintiff argues merely that the Court could dismiss it without dismissing the entire case.  *See* Opp. at 14.  That truism applies to any case with multiple claims.  Here, the entire case should be dismissed. The FDUPTA claim is barred by the single-action rule and does not allege any "trade or commerce." *See* Mot. at 18.

### III. COMMENCING MERITS-BASED DISCOVERY WOULD SUBSTANTIALLY PREJUDICE DEFENDANTS

Plaintiff is incorrect in his assertion that Defendants have failed to show they will be prejudiced absent a partial stay.  *Cf.* Opp. at 14-16.  To start, Defendants' arguments are "particularized" to this Complaint.  *Id.* at 14.  For example, while the BBC would object to such broad discovery, the Complaint spans the "history and pattern" of the BBC's "prior reporting" on President Trump, the value of his businesses, his "reputation and personal brand," the 2020 and 2024 presidential elections, "public officials'" views of the BBC, January 6, 2021, and more.  *Id.* at 11-13.  Plaintiff does not disclaim an interest in any of these topics.  While Defendants cannot

9

yet itemize their costs, *cf. id.* at 14, the breadth and burden of discovery is plain. The BBC is a publicly-funded news organization, and costly cross-border discovery for unmeritorious claims will detract from its public mission. Moreover, engaging in piecemeal discovery disputes as Plaintiff suggests could risk Defendants' jurisdictional challenge. *Id.* at 16. By contrast, jurisdictional discovery would be targeted, focusing on Defendants' lack of ties to Florida. Plaintiff's argument that bifurcation would be untenable is baseless, and asks the Court to reward him, and punish Defendants, for his professed difficulty in separating jurisdiction from the merits, when there are clear dividing lines.

IV.  **DEFENDANTS REQUEST A FINITE, PARTIAL STAY THAT WILL NOT PREJUDICE PLAINTIFF**

Last, Plaintiff's argument that he will be prejudiced by a stay because it would be "indefinite" is unavailing. *Id*. at 16-17. The requested stay is finite and partial. *See* Mot. at 20. Plaintiff also cites no specific discovery a stay would hinder. Defendants are complying with their preservation obligations and presume Plaintiff is complying with his obligations as well. Instead, he argues that any "delay is itself prejudicial" "in a case involving reputational harm," Opp. at 16, seeking a blanket rule for defamation cases. Yet courts hold the opposite—that where, as here, discovery would burden First Amendment expression, a stay is *more* important. *See, e.g.*, *Bongino*, 477 F. Supp. 3d at 1324; *Borislow v. Canaccord Genuity Grp.*, 2014 WL 12580035, at *1 (S.D. Fla. June 24, 2014) (Ryskamp, J.).

## CONCLUSION

For each of the foregoing reasons, and those set forth in their opening motion, Defendants request that the Court grant a stay of all discovery except limited jurisdictional discovery, and stay the scheduling of discovery deadlines, pending adjudication of their forthcoming Motion to Dismiss, and grant all such other and further relief as the Court deems just and proper.

Dated: February 11, 2026                  Respectfully submitted,

**BALLARD SPAHR LLP**
1909 K Street, NW
Washington, DC 20006-1157
Tel: (202) 661-2218
Fax: (202) 661-2299

By: */s/ Charles D. Tobin*
Charles D. Tobin
Fla. Bar No.: 816345
tobinc@ballardspahr.com
Sasha Dudding (admitted *pro hac vice*)
duddings@ballardspahr.com

*Attorneys for Defendants*