UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| | ) |
| BRITISH BROADCASTING CORP., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MOTION TO DISMISS
## WITH INCORPORATED MEMORANDUM OF LAW

**BALLARD SPAHR LLP**
1909 K Street, NW
Washington, DC 20006-1157
Tel: (202) 661-2218
Fax: (202) 661-2299

Charles D. Tobin
Fla. Bar No.: 816345
tobinc@ballardspahr.com
Sasha Dudding (admitted *pro hac vice*)
duddings@ballardspahr.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND .................................................................................................2

A.   The Parties ..................................................................................................................2

B.   The Documentary........................................................................................................4

C.   The Complaint ............................................................................................................5

ARGUMENT .........................................................................................................................5

I.   THE CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL
     JURISDICTION OVER DEFENDANTS ...................................................................6

    A.   Defendants Are Not Subject to General Personal Jurisdiction in
          Florida ...................................................................................................................7

        1.   *No Defendant is "at home" in Florida, as none is*
               *incorporated or headquartered here* ...........................................................7

        2.   *As precedent uniformly holds, a BBC subsidiary's office in*
               *Florida, which had no involvement in the Documentary, does*
               *not confer general jurisdiction.*...................................................................8

        3.   *The allegations about BBC.com and BritBox in Florida are*
               *wrong and inapt* ..........................................................................................9

    B.   Defendants Are Not Subject to Specific Personal Jurisdiction in
          Florida ...................................................................................................................10

        1.   *The Court lacks "causing injury" jurisdiction under Fla. Stat.*
               *§ 48.193(1)(a)(6)*.......................................................................................10

        2.   *The Court lacks "arising from" jurisdiction under Fla. Stat. §*
               *48.193(1)(a)(1)*...........................................................................................10

        3.   *The Court lacks "committing a tortious act" jurisdiction*
               *under Fla. Stat. § 48.193(1)(a)(2) and as a matter of due*
               *process* ......................................................................................................11

            i.   *Plaintiff cannot show Defendants purposefully aimed*
                    *the Documentary at Florida*.........................................................12

        *ii.*     *Exercising jurisdiction would offend notions of fair play and substantial justice* ........................................................... 15

II.     THE COMPLAINT FAILS TO STATE A CLAIM ............................................................ 17

     A.     The Complaint Fails to State Any Claim Against the Studios Defendants ............................................................................................................... 17

     B.     The Complaint Fails to State a Claim for Defamation ........................................... 18

          *1.*     *Plaintiff has not plead, and will not be able to prove, actual harm* ............................................................................................... 18

          *2.*     *The Complaint fails to plausibly plead actual malice* .............................. 20

          *3.*     *The Documentary contains protected expressions of opinion* ................... 24

     C.     The Complaint Fails to State a Claim for Violations of FDUTPA ....................... 24

CONCLUSION ......................................................................................................................... 25

REQUEST FOR HEARING ...................................................................................................... 26

## **TABLE OF AUTHORITIES**

**Cases**          **Page(s)**

*Alternate Energy v. Redstone,*
   328 F. Supp. 2d 1379 (S.D. Fla. 2004) ................................................................................11

*Am. Dental Ass'n v. Cigna,*
   605 F.3d 1283 (11th Cir. 2010) ...........................................................................................2

*Anheuser-Busch v. Philpot,*
   317 F.3d 1264 (11th Cir. 2003) .........................................................................................19

*Asahi Metal Indus. v. Super. Ct.,*
   480 U.S. 102 (1987).............................................................................................................16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).............................................................................................................17

*Berisha v. Lawson,*
   973 F.3d 1304 (11th Cir. 2020) .........................................................................................21

*Bioheart v. Peschong,*
   2013 WL 1729278 (S.D. Fla. Apr. 22, 2013) ...............................................................15, 16

*Blassingame v. Trump,*
   87 F.4th 1 (D.C. Cir. 2023).................................................................................................20

*Block v. Matesic,*
   789 F. Supp. 3d 1131 (S.D. Fla. 2025) ..............................................................18, 20, 21, 24

*BNSF Ry. v. Tyrrell,*
   581 U.S. 402 (2017)..........................................................................................................9, 10

*Bongino v. Daily Beast,*
   477 F. Supp. 3d 1310 (S.D. Fla. 2020) ..........................................................................24, 25

*Brown v. Showtime Networks,*
   394 F. Supp. 3d 418 (S.D.N.Y. 2019).................................................................................8

*Burger King v. Rudzewicz,*
   471 U.S. 462 (1985)...........................................................................................................16

*Calder v. Jones,*
   465 U.S. 783 (1984)...........................................................................................................12

*Carmouche v. Tamborlee Mgmt.,*
   789 F.3d 1201 (11th Cir. 2015) ...............................................................................6, 7, 8, 9

iii

*Carroll v. Trump*,
  663 F. Supp. 3d 380 (S.D.N.Y. 2023)............................................................................20

*Carsey-Werner v. BBC*,
  2018 WL 1083550 (C.D. Cal. Feb. 23, 2018)..............................................................14

*Corsi v. Newsmax Media*,
  519 F. Supp. 3d 1110 (S.D. Fla. 2021) ........................................................................18

*Courboin v. Scott*,
  596 F. App'x 729 (11th Cir. 2014) ...............................................................................10

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..................................................................................................7, 9

*Doe (V.H.) v. Hyatt Hotels*,
  2024 WL 3859882 (11th Cir. Aug. 19, 2024)...............................................................11

*Don King Prods. v. Walt Disney*,
  40 So. 3d 40 (Fla. 4th DCA 2010) ..........................................................................21, 22

*Dunn v. Air Line Pilots Ass'n*,
  193 F.3d 1185 (11th Cir. 1999) ...................................................................................24

*Edelstein v. WFTV*,
  798 So. 2d 797 (Fla. 4th DCA 2001) ...........................................................................19

*Fraser v. Smith*,
  594 F.3d 842 (11th Cir. 2010) ....................................................................................7, 9

*Fridovich v. Fridovich*,
  598 So. 2d 65 (Fla. 1992)........................................................................................24, 25

*Harrington v. Veritext*,
  2025 WL 1591614 (S.D. Fla. May 1, 2025) .................................................................19

*Herederos De Roberto Gomez Cabrera v. Teck Res.*,
  43 F.4th 1303 (11th Cir. 2022) ...............................................................................12, 16

*Hit Bound Music v. BBC Films*,
  2017 WL 5640543 (C.D. Cal. June 28, 2017) .............................................................8, 14

*Hustler Mag. v. Falwell*,
  485 U.S. 46 (1988).......................................................................................................25

*Internet Sols. v. Marshall*,
  39 So. 3d 1201 (Fla. 2010)...........................................................................................12

*J. McIntyre Mach. v. Nicastro*,
 564 U.S. 873 (2011)...................................................................................6

*Jews for Jesus v. Rapp*,
 997 So. 2d 1098 (Fla. 2008)........................................................................18

*Karnas v. Cuban*,
 2025 WL 3759241 (S.D. Fla. Dec. 30, 2025) ................................................ *passim*

*Kendall v. Daily News Publ'g*,
 716 F.3d 82 (3d Cir. 2013)..........................................................................21

*Klayman v. City Pages*,
 650 F. App'x 744 (11th Cir. 2016) ...............................................................21

*Klayman v. Deluca*,
 2016 WL 1045851 (S.D. Fla. Mar. 16, 2016)..................................................10

*Klayman v. Jud. Watch*,
 22 F. Supp. 3d 1240 (S.D. Fla. 2014) ...........................................................25

*Louis Vuitton Malletier v. Mosseri*,
 736 F.3d 1339 (11th Cir. 2013) ..........................................................6, 12, 13

*Lovingood v. Discovery Commc'ns*,
 2015 WL 5719169 (N.D. Ala. Sept. 30, 2015) .................................................8

*Madara v. Hall*,
 916 F.2d 1510 (11th Cir. 1990) ................................................................2, 6

*McCall v. Zotos*,
 2023 WL 3946827 (11th Cir. June 12, 2023) ...........................................12, 13

*Michel v. NYP Holdings*,
 816 F.3d 686 (11th Cir. 2016) ...............................................................17, 23

*Mid-Fla. Television v. Boyles*,
 467 So. 2d 282 (Fla. 1985).....................................................................18, 19

*Moore v. Cecil*,
 109 F.4th 1352 (11th Cir. 2024) ...................................................................15

*N.Y. Times v. Sullivan*,
 376 U.S. 254 (1964)...................................................................17, 18, 20, 23

*Nelson Auto Ctr. v. Multimedia Holdings*,
 951 F.3d 952 (8th Cir. 2020) .......................................................................24

*Nunes v. CNN*,
   2023 WL 2468646 (M.D. Fla. Mar. 1, 2023) ........................................................15

*Ocala Star-Banner v. Damron*,
   401 U.S. 295 (1971)..............................................................................................20

*Parekh v. CBS*,
   820 F. App'x 827 (11th Cir. 2020) .........................................................................2

*Prunty v. Arnold & Itkin*,
   753 F. App'x 731 (11th Cir. 2018) .......................................................................11

*Raymond v. LSM Trading USA*,
   2026 WL 279102 (S.D. Fla. Feb. 3, 2026) ....................................................11, 12

*Smith v. Cuban Am. Nat'l Found.*,
   731 So. 2d 702 (Fla. 3d DCA 1999) .....................................................................21

*In re Takata Airbag Prods. Liab. Litig.*,
   396 F. Supp. 3d 1101 (S.D. Fla. 2019) ..................................................................6

*Tobinick v. Novella*,
   848 F.3d 935 (11th Cir. 2017) .............................................................................25

*Trump v. CNN*,
   2025 WL 3213203 (11th Cir. Nov. 18, 2025).................................................17, 24

*Trump v. United States*,
   603 U.S. 593 (2024)........................................................................................19, 20

*Turner v. Wells*,
   879 F.3d 1254 (11th Cir. 2018) ...........................................................17, 18, 23

*Universal Express v. SEC*,
   177 F. App'x 52 (11th Cir. 2006) .........................................................................23

*Vision Media TV Grp. v. Forte*,
   724 F. Supp. 2d 1260 (S.D. Fla 2010) ............................................................16, 17

*Walden v. Fiore*,
   571 U.S. 277 (2014)..............................................................................................12

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
   792 F.3d 1313 (11th Cir. 2015) ...........................................................................18

*Wolf v. Celebrity Cruises*,
   683 F. App'x 786 (11th Cir. 2017) .........................................................................7

*Wood v. Netflix,*
    2025 WL 918078 (M.D. Fla. Mar. 26, 2025) .......................................................................9

*Wyndham Vacation Ownership v. CLS,*
    2018 WL 9869799 (S.D. Fla. Nov. 5, 2018)..................................................................17, 18

*Zamora Radio v. Last.fm,*
    2011 WL 2580401 (S.D. Fla. June 28, 2011) ......................................................................16

*Zerangue v. TSP Newspapers,*
    814 F.2d 1066 (5th Cir. 1987) .............................................................................................24

*Zimmerman v. Allen,*
    2014 WL 3731999 (Fla. 18th Cir. Ct. June 30, 2014) ....................................................19, 20

**Statutes**

Commc'ns Act 2003, c. 21, § 363 ...............................................................................................14

Fla. Deceptive and Unfair Trade Practices Act ("FDUTPA")........................................2, 5, 18, 25

Fla. Stat. § 48.193 ..............................................................................................................7, 10, 11

Fla. Stat. § 501.204 ......................................................................................................................25

**Other Authorities**

Fed. R. Civ. P. 12 ....................................................................................................................1, 17

Fed. R. Evid. 201 ...................................................................................................................2, 23

U.S. Const. amend. I ............................................................................................................17, 25

U.S. Const. amend. XIV .........................................................................................................6, 7

Defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Ltd., and BBC Studios Productions Ltd. ("the Studios Defendants") hereby move to dismiss Plaintiff's Complaint with prejudice for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Rule 12(b)(6).

## PRELIMINARY STATEMENT

President Trump brings this lawsuit against United Kingdom-based BBC over a documentary that was produced in London, not Florida, and that it did not air in the United States. Because the Court lacks personal jurisdiction over Defendants – and the Complaint fails to plead valid claims – the Court should dismiss this case with prejudice.

On October 28, 2024, the BBC aired a documentary in its long-running current affairs program *Panorama* exploring for the U.K. audience the President's continued success with his loyal American voters. The BBC aired the program, titled "*Trump: A Second Chance?*" ("the Documentary"), on its U.K. TV channels and its U.K. streaming service, iPlayer. The BBC did *not* publish the Documentary in the U.S., including in Florida. The Documentary followed some of the President's most ardent supporters, known as the "Front Row Joes," and spoke with experts. Around three minutes of the hour-long Documentary depicted the events of January 6, 2021, including a 12-second cut of President Trump's speech, followed by the violent attacks on the Capitol. President Trump won re-election the week after the Documentary aired in the U.K.

More than a year later, even after being re-elected with the support of a sizable majority of Florida voters, the President alleged that the Documentary defamed him in Florida – where Defendants never aired it – by editing together parts of his January 6 speech. According to the President, the edit falsely portrayed him as directly urging the crowd to assault the Capitol. The BBC promptly published a retraction for "unintentionally" giving "the mistaken impression that

President Trump had made a direct call for violent action" through an "error of judgement" in the editing of his speech, and it promptly apologized through its Chair, as the President demanded. Nevertheless, on December 15, 2025, President Trump brought claims for defamation and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") against the BBC and, inexplicably, the Studios Defendants, which did *not* create the Documentary.

The Court should dismiss this lawsuit with prejudice at the outset for the following independent reasons. ***First***, this Court lacks general and specific personal jurisdiction over Defendants. ***Second***, Plaintiff fails to state a claim against the Studios Defendants, who are barely mentioned in the Complaint and had *no* role in creating or producing the Documentary, and did not broadcast it in the U.S. ***Third***, Plaintiff's defamation claim fails to plausibly plead he was harmed by the Documentary or that Defendants published it with actual malice, and the Documentary contains protected expressions of opinion. ***Fourth***, the FDUPTA claim fails because it is duplicative of the defamation claim, and because the Documentary is not "trade or commerce" under FDUTPA. Because Plaintiff cannot cure these deficiencies, the Court should dismiss the Complaint with prejudice.

## FACTUAL BACKGROUND[1]

### A. The Parties

The BBC is the U.K.'s main public service provider of news and entertainment media. *See* Decl. of Richard Burgess ("Burgess Decl.") ¶ 4. It broadcasts and publishes news and other content in the U.K. via TV, radio, and online services, and delivers multimedia news across the

---

[1] Defendants assume the Complaint's factual allegations are true solely for purposes of this motion, except where controverted by Defendants' jurisdictional affidavits. *See Am. Dental Ass'n v. Cigna*, 605 F.3d 1283, 1290 (11th Cir. 2010); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The Court can consider the Documentary as it is incorporated by reference. *See* Compl. ¶ 2 & n.1; *Parekh v. CBS*, 820 F. App'x 827, 830 n.1 (11th Cir. 2020) (per curiam). The public records cited herein are judicially noticeable. *See* Fed. R. Evid. 201(b)(2).

globe in more than 40 languages.  *Id.*  Among the BBC's programs is *Panorama*, the world's longest-running current affairs program, which focuses on wide-ranging topics of interest to British audiences.  *See* Decl. of Leo Telling ("Telling Decl.") ¶ 4.  The BBC has been described as "the most trusted news brand globally."  Compl. ¶ 23.  It is a non-profit, publicly funded entity.  Burgess Decl. ¶ 6.  The BBC was established in the U.K. through a Royal Charter and is headquartered in London, England, which is its principal place of business.  *See id.* ¶ 5; Compl. ¶ 12.  United States employees are employed by nonparty BBC News USA, Inc., a separate legal entity that is registered, and has its principal place of business in, Washington, D.C.  Burgess Decl. ¶ 9.  BBC News USA, Inc. did not create or distribute the Documentary.  *Id.* ¶ 10.

Consistent with the BBC's Royal Charter, commercialization of BBC media is largely the domain of nonparty subsidiary BBC Commercial Ltd., and that entity's subsidiaries.  *Id.* ¶ 7. Among those subsidiaries are the Studios Defendants: BBC Studios Productions Ltd. ("BBCSP") and BBC Studios Distribution Ltd. ("BBCSD").  *See* Decl. of Martyn Freeman ("Freeman Decl.") ¶¶ 6-8.  Both Studios Defendants are headquartered and incorporated in London.  *Id.* ¶¶ 7-8.  BBCSP produces content for the BBC as well as for other platforms, such as Netflix.  *Id.* ¶ 7.  BBCSD distributes certain programs produced by BBCSP globally, as well as programs produced by other entities.  *Id.* ¶ 8.  But here, neither of these Defendants had any role in the creation or production of this Documentary, and did not broadcast it in the U.S.  *Id.* ¶ 9.

Plaintiff is President Donald J. Trump.  Compl. ¶ 11.  He won re-election in 2024, eight days after the Documentary aired.  *Id.* ¶¶ 11, 36.  He carried Florida with 56.1% of the vote.[2]

---

[2] *See November 5, 2024 General Election*, Fla. Div. of Elections, https://results.elections.myflorida.com/Index.asp?ElectionDate=11/5/2024&DATAMODE=.

### B.  The Documentary

On October 28, 2024, the BBC aired the Documentary.  Compl. ¶ 2 & n.1.  The
Documentary focused on President Trump's 2024 reelection campaign, aiming to explain to
U.K. audiences the bases for his support.  *See generally* Documentary.  It followed some of his
most devoted supporters, the "Front Row Joes," as they traversed the country attending his
rallies.  *See id.*; Compl. ¶ 39.  These supporters explained that, while President Trump was facing
criminal charges at the time, they felt it was "criminal what they've done to Donald Trump."  *See*
Telling Decl. Ex. 3 ("Documentary") at 1:16-18.  The Documentary also featured interviews
with experts, including academics and political figures.  *See* Compl. ¶¶ 78-88.  Some voiced
support for the President, saying "many people want to get back to that strong leadership."
Documentary at 0:51-55.  Others voiced sharply critical opinions, including "I hate him," *id* at
0:16-18, and calling him a "cult leader," *id.* at 52:16; Compl. ¶ 83.

Those statements are not at issue.  Instead, over a year after the Documentary aired, and
after his re-election, President Trump now challenges a 12-second segment that showed excerpts
of his speech at the White House Ellipse on January 6, 2021.  *See* Documentary at 33:53-34:05;
Compl. ¶¶ 2, 42-44.  President Trump spoke for over 70 minutes that day, *see* Compl. ¶ 2 n.2,
and the attack on the Capitol lasted hours.  But in examining his appeal in the run-up to the 2024
election, the Documentary spent only three minutes on the topic.  The Complaint does not
contest that Plaintiff spoke the words shown; rather, it alleges that by editing together parts of his
speech occurring around 54 minutes apart, the Documentary defamed him by creating the "false
. . . impression that [he] fomented violence."  Compl. ¶ 105(c).  The clips included were, "we're
going to walk down to the Capitol," "and I'll be there with you," "and we fight, we fight like
hell, if you don't fight like hell, you're not gonna have a country anymore."  *Id.* ¶ 105(a).

The Documentary was not produced or broadcast in Florida.  *See* Decl. of Leo Telling ("Telling Decl.") ¶¶ 9-18, 24-26.  The Studios Defendants did not create or produce the Documentary, or air it in the U.S.  *Id.* ¶ 20.  The BBC aired it on its U.K. TV channels and its U.K. iPlayer streaming service.  *Id.* ¶¶ 16-17.  Despite the Complaint's false claims, the BBC never made the Documentary available in the U.S. on BritBox or BBC.com.  *Id.* ¶ 25.  Although third-party distributors acquired the international distribution rights from non-parties October Films and Blue Ant Media Corporation ("Blue Ant"), they never aired it in the U.S. – and their shorter international version did not even contain the edit of the January 6 speech.  *Id.* ¶¶ 21-25.

### C.  The Complaint

On November 9, 2025, President Trump, through counsel, wrote to the BBC, arguing that the Documentary's edit of his January 6 speech defamed him and threatening a $1 billion suit. Compl. ¶ 46, Ex. A.  On November 13, 2025, the BBC responded by publishing a retraction and apologizing to President Trump for "unintentionally" giving "the mistaken impression that President Trump had made a direct call for violent action" through an "error of judgement" in the editing of his speech.  The BBC added that it "strongly disagree[s] that President Trump would have a basis for a viable defamation claim."  *Id*. ¶¶ 47-49, Ex. B.  Despite receiving the retraction and apology he demanded, on December 15, 2025, Plaintiff filed this lawsuit , alleging that the manner in which the Documentary edited his January 6 speech defamed him and violated FDUTPA, causing "direct harm to his professional and occupational interests," and demanding $5 billion in damages in each count of the Complaint.  *Id.* ¶¶ 104-19, pp. 31-32.

### ARGUMENT

The Court lacks personal jurisdiction over Defendants, and the Complaint fails to state a claim for defamation or violations of FDUPTA on multiple independent grounds.

I.      **THE CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANTS**

The BBC and the Studios Defendants are not at home in Florida, nor did any create sufficient minimal contacts to satisfy Florida Statutes or constitutional due process.  The President has no basis at all to ask this Court to exercise jurisdiction over Defendants.

As this Court correctly has found, a federal court

> generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant.  *First*, we determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute.  *Second*, we decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.

*Karnas v. Cuban*, 2025 WL 3759241, at *5 (S.D. Fla. Dec. 30, 2025) (Altman, J.) (cleaned up).  Any doubts "must be resolved in favor of the defendant and against a conclusion that personal jurisdiction exists."  *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1140 (S.D. Fla. 2019) (Moreno, J.).  "[T]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter."  *J. McIntyre Mach. v. Nicastro*, 564 U.S. 873, 881 (2011) (finding no personal jurisdiction over U.K. company).  Courts assess jurisdiction "first," because those "not subject to the jurisdiction of the court . . . [can]not be personally bound by its rulings."  *Madara*, 916 F.2d at 1514.  Plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *Louis Vuitton Malletier v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).  A defendant may then challenge jurisdiction "by submitting affidavit evidence in support of its position," after which "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."  *Id.* (quoting *Madara*, 916 F.2d at 1514).

A defendant can be subject to personal jurisdiction under Florida's "long-arm statute in two ways: . . . *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or

relate to a defendant's contacts with Florida; and second, . . . *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida." *Carmouche v. Tamborlee Mgmt.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015) (cleaned up) (emphasis in original).  This Court lacks jurisdiction under either basis.

### A.  Defendants Are Not Subject to General Personal Jurisdiction in Florida

#### 1.  *No Defendant is "at home" in Florida, as none is incorporated or headquartered here.*

Defendants are not subject to general personal jurisdiction in Florida because they do not "engage[] in substantial and not isolated activity within this state."  Fla. Stat. § 48.193(2); *cf.* Compl. ¶ 16.  The long-arm statute's general jurisdiction provision "'extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment' and, therefore, to determine general jurisdiction," the Court "need only determine whether the district court's exercise of jurisdiction over [Defendants] would exceed constitutional bounds."  *Wolf v. Celebrity Cruises*, 683 F. App'x 786, 791 (11th Cir. 2017) (per curiam) (quoting *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010)).  For a corporation, its Florida contacts must be "so continuous and systematic as to render them essentially at home in the forum State."  *Carmouche*, 789 F.3d at 1204 (cleaned up).  "[T]he place of incorporation and principal place of business are paradigm bases for general jurisdiction."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up).  Here, no Defendant is "essentially at home" in Florida.  Plaintiff himself alleges that each Defendant "is a British corporation" and that the BBC has its "principal place of business in London, England."  Compl. ¶¶ 12-14.  He is right.  Each Defendant is incorporated in the U.K. and has a principal place of business in London.  *See* Burgess Decl. ¶ 5; Freeman Decl. ¶¶ 7-8.  None has its principal place of business in Florida or is incorporated, or is even licensed to do business, in the state.  *See* Burgess Decl. ¶ 11; Freeman Decl. ¶ 11.

**2. *As precedent uniformly holds, a BBC subsidiary's office in Florida, which had no involvement in the Documentary, does not confer general jurisdiction.***

Plaintiff cannot show that this is the "exceptional case" where a foreign defendant could otherwise be subject to general jurisdiction in Florida—the only other basis for general jurisdiction. *Carmouche*, 789 F.3d at 1204. Even accepting for argument's sake Plaintiff's allegation that the "BBC maintains an office" in Coral Gables, *see* Compl. ¶ 17, such an office would not establish general jurisdiction over Defendants. *See Carmouche*, 789 F.3d at 1204 (court lacked general jurisdiction over foreign corporation alleged to have Florida address). Indeed, U.S. courts consistently refuse to find general jurisdiction over the BBC simply on the basis that a related company has an office in the forum. *See, e.g.*, *Brown v. Showtime Networks*, 394 F. Supp. 3d 418, 434 (S.D.N.Y. 2019) (no general jurisdiction based on "the mere facts that BBC airs television programming in New York and has a subsidiary in New York"); *Hit Bound Music v. BBC Films*, 2017 WL 5640543, at *2 (C.D. Cal. June 28, 2017) (no general jurisdiction over BBC in California, despite subsidiary having Los Angeles office); *see also Lovingood v. Discovery Commc'ns*, 2015 WL 5719169, at *8 (N.D. Ala. Sept. 30, 2015) (same, where "BBC is not incorporated in Alabama, and it does not have its principal place of business in Alabama").

Moreover, the employees in the Coral Gables office are *not* employed by any Defendant, but by BBC News USA, Inc., a separate entity. *See* Burgess Decl. ¶¶ 9-10, 12. Most of the individuals in Coral Gables perform services for BBC Mundo, which is the Spanish language service of the BBC's World Service, and a few perform services for BBC Monitoring, BBC World Service business development, and BBC News' international operations. *Id.* ¶ 12. None of the people who work in the Coral Gables office had any connection to the Documentary. *Id.* Likewise, while Plaintiff alleges that Defendant "BBC Studios Americas Inc. ["BBCSA"], a BBC subsidiary, also operates out of" the Coral Gables office, Compl. ¶ 17, that is false, *see*

Freeman Decl. ¶ 17.  BBCSA does not have any office in Florida.  *Id.*  BBCSA is incorporated in Delaware and has its principal place of business in New York.  *Id.*  It is a separate legal entity from every Defendant, and it also had no connection to the Documentary.  *Id.* ¶¶ 17-18.  Nor were these entities involved in marketing or promotion of the Documentary.  *Id.*  ¶¶ 12, 17-18.

### 3.  *The allegations about BBC.com and BritBox in Florida are wrong and inapt.*

Plaintiff also cannot base general jurisdiction on the fact that BBC.com publishes news coverage of Florida or that BBC.com and BritBox have subscribers in Florida.  Compl. ¶¶ 16-21. As set forth below, the BBC did not distribute the Documentary on either platform.  *See* Telling Decl. ¶ 25.  Moreover, the simple facts that BBC.com "maintain[s] a website accessible from Florida" and that BritBox sells subscriptions in Florida do not suffice to confer jurisdiction over anyone, let alone Defendants in this case.  *Carmouche*, 789 F.3d at 1204-05 (citing *Fraser*, 594 F.3d at 847; *Daimler*, 571 U.S. at 139); *see also, e.g.*, *Wood v. Netflix*, 2025 WL 918078, at *11 (M.D. Fla. Mar. 26, 2025) (no general jurisdiction over Netflix, which is not incorporated or based in Florida, but has Florida subscribers).  Otherwise, jurisdiction "would presumably be available in every other State," which would be an "exorbitant exercise[] of all-purpose jurisdiction" violating due process.  *Daimler*, 571 U.S. at 139.  Indeed, BBC.com is "the BBC's international-facing website," Freeman Decl. ¶ 13, with news on every state and many countries.[3]

Likewise, while Floridians can subscribe to BritBox or BBC.com, so can residents of any state.  And BritBox is commercialized in the U.S. by BritBox LLC, a separate, non-party entity. *Id.* ¶ 15.  *Cf., e.g.*, *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 414 (2017) (Montana courts lacked general jurisdiction over Texas-based railway despite having 2,000 miles of track and 2,000 employees

---

[3] *See, e.g.*, *Nebraska*, BBC.com, https://www.bbc.com/news/topics/c77jz3mdq1jt; *Mongolia*, BBC.com, https://www.bbc.com/news/topics/cjnwl8q4qm2t.

in Montana).  Overall, Plaintiff cannot meet his burden to show any Defendant is "essentially at home" in Florida.  Defendants are not subject to general personal jurisdiction here.

**B.  Defendants Are Not Subject to Specific Personal Jurisdiction in Florida**

On the face of the Complaint, Plaintiff's allegations also do not establish specific jurisdiction.  And as Defendants' declarations conclusively demonstrate, Defendants did not create, produce, or broadcast the Documentary in Florida, so Plaintiff cannot satisfy due process.

Plaintiff alleges specific jurisdiction under three provisions of Florida's long-arm statute: Fla. Stat. § 48.193(1)(a)(6), which covers "[c]ausing injury to persons or property within this state"; § 48.193(1)(a)(1), for "any cause of action arising from . . . carrying on a business or business venture in this state"; and § 48.193(1)(a)(2), which encompasses "[c]ommitting a tortious act within this state."  *See* Compl. ¶ 22.  Plaintiff has not met his burden to show that *any* of these provisions applies here.

**1.  *The Court lacks "causing injury" jurisdiction under Fla. Stat. § 48.193(1)(a)(6)***

"[E]conomic injury, unaccompanied by physical injury or property damage" does not satisfy Fla. Stat. § 48.193(1)(a)(6).  *Karnas*, 2025 WL 3759241, at *5 (quoting *Courboin v. Scott*, 596 F. App'x 729, 734 (11th Cir. 2014)).  Because Plaintiff alleges only "reputational" and "economic harms," Compl. ¶¶ 10, 99-102, not physical or property injury, "Subsection (1)(a)(6) cannot confer personal jurisdiction here."  *Karnas*, 2025 WL 3759241, at *5 (dismissing FDUTPA case where "Plaintiffs claim to have sustained *monetary* damages" (emphasis in original)); *see also Klayman v. Deluca*, 2016 WL 1045851, at *11 (S.D. Fla. Mar. 16, 2016), *aff'd*, 712 F. App'x 930 (11th Cir. 2017) (same, in case bringing defamation claim).

**2.  *The Court lacks "arising from" jurisdiction under Fla. Stat. § 48.193(1)(a)(1)***

Nor does the Court have specific jurisdiction under Fla. Stat. § 48.193(1)(a)(1), as

"Plaintiff[] fail[s] to demonstrate that the Defendants 'carry[ ] on a business or business venture in Florida' . . . ." *Karnas*, 2025 WL 3759241, at *6.  He cannot establish that the Documentary "aris[es] from" any business in Florida, as this provision requires.  "And while the [Complaint] details [alleged] connections between the Defendants and Florida," "it comes nowhere close to establishing 'a direct affiliation, nexus, or substantial connection . . . between the basis for the cause of action and the business activity.'" *Id.* (quoting *Doe (V.H.) v. Hyatt Hotels*, 2024 WL 3859882, at *1 (11th Cir. Aug. 19, 2024)).  Defendants are incorporated and headquartered in the U.K.  *See* Compl. ¶¶ 12-15; Burgess Decl. ¶ 1; Freeman Decl. ¶¶ 7-8.  The BBC never made the Documentary available on BBC.com or BritBox, *see* Telling Decl. ¶ 25, nor did the BBC create, produce, or broadcast the Documentary in Florida or with any assistance from the Coral Gables office, *id.* ¶¶ 14-18; Burgess Decl. ¶ 12.  Floridians' access to BBC.com or BritBox is irrelevant, as, by themselves, "electronic communications from out-of-state offices into Florida do not establish conducting business in Florida."  *Karnas*, 2025 WL 3759241, at *6 (quoting *Prunty v. Arnold & Itkin*, 753 F. App'x 731, 735 (11th Cir. 2018)); *see also Alternate Energy v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004) (provision did not apply to Nevada-based website with Florida subscribers).  The Court therefore lacks jurisdiction under this provision as well.

### 3. The Court lacks "committing a tortious act" jurisdiction under Fla. Stat. § 48.193(1)(a)(2) and as a matter of due process

The remaining long-arm provision Plaintiff cites, Fla. Stat. § 48.193(1)(a)(2), applies to "any cause of action arising from . . . [c]ommitting a tortious act within this state."  *See* Compl. ¶ 22.  Even accepting *arguendo* Plaintiff's allegations, he "still fail[s] to overcome the federal due-process standard" to establish personal jurisdiction.  *Karnas*, 2025 WL 3759241, at *7.  Due process is not satisfied where, as here, Plaintiff has not shown that "Defendants have *purposeful* contacts with Florida *from which his claims arise*."  *Raymond v. LSM Trading USA*, 2026 WL

279102, at *3 (S.D. Fla. Feb. 3, 2026) (Altman, J.) (emphasis in original); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) (defendant's "relationship [with the forum state] must arise out of contacts that the defendant *himself* creates" (cleaned up) (emphasis in original)).  Because the BBC's alleged, relevant conduct took place outside Florida and the Documentary was produced for a U.K. audience, and because the Studios Defendants did *not* create or produce the Documentary, Plaintiff cannot meet his burden to show specific jurisdiction.

>    To comport with due process,

>    > (1) the plaintiff's claim must "arise out of or relate to" one of the defendant's contacts in the forum, (2) the defendant must have "purposefully availed" itself of the privilege of conducting activities within the forum, and (3) jurisdiction must comport with "traditional notions of fair play and substantial justice."

*Herederos De Roberto Gomez Cabrera v. Teck Res.*, 43 F.4th 1303, 1310 (11th Cir. 2022) (quoting *Louis Vuitton*, 736 F.3d at 1355).  This constitutional inquiry is even "more restrictive" than the long-arm statute.  *Internet Sols. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010).

### i. Plaintiff cannot show Defendants purposefully aimed the Documentary at Florida.

This case fails at the outset, as "Plaintiff[] cannot clear the purposeful-availment prong." *Karnas*, 2025 WL 3759241, at *7.  To meet his burden, Plaintiff must either satisfy the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783, 787-89 (1984) or demonstrate that defendants have the traditional minimum contacts with the forum.  *McCall v. Zotos*, 2023 WL 3946827, at *4 (11th Cir. June 12, 2023).  The effects test is satisfied only "when the tort was intentional, *aimed* at the forum state, and caused harm that the defendant *should have anticipated* would be suffered in the forum state." *Id.* (emphasis added).  Similarly, the minimum contacts test asks if defendants' contacts with the forum "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business

within the forum; and (3) are such that the defendant should reasonably anticipate being haled

into court in the forum." *Louis Vuitton*, 736 F.3d at 1357.  Under either test, "[p]osting

information on the internet is not sufficient by itself to subject that person to personal

jurisdiction" there.  *McCall*, 2023 WL 3946827, at *4 (cleaned up).

This Court lacks jurisdiction under either the effects or minimal-contacts tests, as

Defendants did not purposefully avail themselves of the privilege of doing business in Florida.

Quite the reverse, Defendants did not have contractual rights to broadcast or stream the

Documentary in the U.S. and they did not do so.  *See* Telling Decl. ¶ 18; Freeman Decl. ¶¶ 9-10.

The BBC aired the Documentary on its U.K. TV channels and online via its U.K. iPlayer

streaming service.  The BBC did *not* air the Documentary in Florida.  Telling Decl. ¶¶ 16-17.

To manufacture specific jurisdiction, Plaintiff wrongly alleges that the Documentary was

available in Florida on BritBox.  Compl. ¶¶ 20, 24.  The BBC has *never* made the Documentary

available on BritBox, BBC.com, or any other distribution platform available in the U.S.  Telling

Decl. ¶ 25.  Defendants did not advertise it in Florida.  *Id.* ¶ 27.  And while citing Federal

Communications Commission Chair Brendan Carr's letter to the BBC and U.S. broadcasters

PBS and NPR, Compl. ¶ 32, Plaintiff omits that the BBC told Chairman Carr, on November 26,

2025, that it did *not* air this Documentary through any U.S. partnerships.  Burgess Decl. Ex. 2.

Plaintiff's speculation that there is an "immense likelihood that citizens of Florida

accessed the Documentary" on iPlayer using a virtual private network ("VPN") to mask their

location, Compl. ¶ 29, is also unavailing.  BBC makes its iPlayer available in the U.K. and U.K.

residents must pay an annual license fee for access.  *See* Decl. of Richard Cooper ("Cooper

Decl.") ¶¶ 6-7.  The BBC prohibits the unauthorized use of VPNs to watch iPlayer from outside

the U.K. and takes active steps to enforce this ban, including by stating in its Terms of Use that

VPN access is barred and by using the GeoGuard service to block unauthorized users with IP addresses located outside the U.K.  *Id.* ¶¶ 7-11.[4]  These measures were in effect when the Documentary was on iPlayer.  *Id.* ¶ 11.  In fact, it is a crime in the U.K. to watch iPlayer without paying the U.K. license fee.  *See* Commc'ns Act 2003, c. 21, § 363 (U.K.).  As another federal court recognized in a lawsuit against the BBC, rejecting identical personal jurisdiction allegations based on claims about pirated VPN access: "Unauthorized viewers outside of the United Kingdom do not provide a basis for personal jurisdiction; rather, Defendants' relationship with [the forum] must arise out of contacts that they themselves created with the state."  *Carsey-Werner v. BBC*, 2018 WL 1083550, at *6 (C.D. Cal. Feb. 23, 2018).

Although Plaintiff also alleges the Documentary was distributed in North America by non-party Blue Ant, *see* Compl. ¶ 33, this allegation misses the mark as well.  Alleging that this "Canadian company" "advertised" the "international licensing rights" to the Documentary, including "in Cannes," France, and distributed it "in North America," *see id.* ¶¶ 33-35 & nn. 18-20, does not meet Plaintiff's prima facie burden to show the Documentary was "expressly aimed" at Florida specifically.  *See Hit Bound Music*, 2017 WL 5640543, at *3.

In fact, *no third-party distributor aired the Documentary in the U.S.*  October Films prepared a 45-minute international version—cut down from the 60-minute U.K. version—but that version *did not contain the edit of Plaintiff's January 6, 2021 speech*.  *See* Telling Decl. ¶ 21.  The distribution-rights holder, October Films, licensed the international distribution rights to Blue Ant, which is incorporated and has its principal place of business in Toronto, Ontario.  *Id.* ¶

---

[4] *See also id.* Ex. 1 (iPlayer Terms of Use include, "Don't stream or download iPlayer TV shows when you're outside the UK," and a prohibition on "using a VPN service so you can watch BBC iPlayer when you're outside the UK"); *id.* Ex. 2 ("Programmes cannot be streamed outside the UK, even on holiday," or "if we detect you might be using a VPN or proxy.").

22.  Blue Ant sublicensed the U.S. distribution rights to Little Dot Studios, which is incorporated and has its principal place of business in London.  *Id.* ¶ 23.  And although Little Dot acquired the U.S. distribution rights to the international version that, again, did not contain the clip at issue, *it never published the Documentary in the U.S.  Id.* ¶ 24.  Due to Plaintiff's threat to sue the BBC, on November 10, 2025, Little Dot placed a restriction in its system preventing any future broadcast or distribution of the Documentary.  *Id*.  The BBC simply did not air the Documentary in Florida through a distributor or on its own platforms.[5]

Finally, Plaintiff fails to establish jurisdiction merely by alleging, falsely, that the BBC filmed part of the Documentary at Mar-a-Lago.  Compl. ¶¶ 37-40.  The undisputed jurisdictional evidence shows that the BBC did not film any of the images briefly depicting events at Mar-a-Lago.  Rather, each image or clip was licensed on a non-exclusive basis from third parties or obtained online.  Telling Decl. ¶¶ 12-13.  Indeed, production on the Documentary did not begin for months after the April 2023 Mar-a-Lago rally depicted in this brief section.  *Id.* ¶ 12.

### *ii.  Exercising jurisdiction would offend notions of fair play and substantial justice.*

Requiring Defendants to litigate in Florida would also offend notions of fair play and

---

[5] Even if Plaintiff could show the Documentary was viewed in Florida against the BBC's contractual obligations and efforts, due process is still not satisfied where, as here, "there is no evidence that the defendant posted the allegedly defamatory information *hoping* to reach the forum state or an audience in the forum state specifically."  *Moore v. Cecil*, 109 F.4th 1352, 1364 (11th Cir. 2024) (emphasis added).  For example, in *Bioheart v. Peschong*, the court held due process was not satisfied where a California defendant posted online allegedly defamatory statements about a Florida plaintiff absent "evidence that [the website] generally, or [defendant's] comments in particular, were purposefully directed at a Florida audience."  2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013) (Cohn, J.).  In *Nunes v. CNN*, the court lacked jurisdiction absent "evidence that [defendants] *aimed* the Segment at Florida," as "[a] media defendant's nationwide circulation of a publication is insufficient to confer personal jurisdiction over that defendant in every forum."  2023 WL 2468646, at *4 (M.D. Fla. Mar. 1, 2023) (emphasis added).  The same rule applies to FDUTPA claims.  *Karnas*, 2025 WL 3759241, at *8 (finding "no evidence that the Defendants took aim at a Florida audience *specifically*").

substantial justice. *Teck Res.*, 43 F.4th at 1310.  In this analysis, courts consider: "(1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief," *Zamora Radio v. Last.fm*, 2011 WL 2580401, at *10 (S.D. Fla. June 28, 2011) (Torres, M.J.) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)), and, with foreign defendants, (4) "the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction by the [U.S.] court." *Asahi Metal Indus. v. Super. Ct.*, 480 U.S. 102, 115 (1987).  "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at 114.

Here, these factors all favor Defendants, requiring dismissal.  It would be unduly burdensome for these U.K. Defendants to defend themselves in Florida.  Defendants and their relevant employees and documents are in the U.K.  *See* Burgess Decl. ¶ 5; Freeman Decl. ¶¶ 7-8. Nor would it be fair to require Defendants to litigate in Florida where the BBC took active measures to block Americans from viewing this Documentary.  *See* Cooper Decl. ¶¶ 9-11.  These burdens are not outweighed by Florida's minimal interests in overseeing a dispute about U.K. entities' role in a Documentary aimed at U.K. viewers, who fund the BBC by paying the U.K. license fee, and brought by a plaintiff challenging the portrayal of events in Washington, D.C. *See* Burgess Decl. ¶ 6; *Asahi*, 480 U.S. at 115; *Bioheart*, 2013 WL 1729278, at *5 ("Even if [plaintiff] established that [defendant] had minimum contacts with Florida, the exercise of jurisdiction over him would not comport with traditional notions of fair play and substantial justice[,]" where defendant's "alleged tortious actions took place" elsewhere "and there is no showing that any of the evidence in this case would be located in Florida"); *Vision Media TV*

*Grp. v. Forte*, 724 F. Supp. 2d 1260, 1267 (S.D. Fla 2010) (Marra, J.) (similar).

For each of these reasons, this case should be dismissed at the outset for lack of personal jurisdiction over these foreign Defendants.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM

If the Court agrees it lacks jurisdiction, it can and should proceed no further.  However, dismissal also is warranted as the Complaint fails to state a defamation or FDUTPA claim.

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Eleventh Circuit has further held that where, as here, First Amendment defenses are raised, early dismissal is favored given the "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation," which "would constrict" the "'breathing space' needed to ensure robust reporting on public figures and events."  *Michel v. NYP Holdings*, 816 F.3d 686, 702 (11th Cir. 2016) (quoting *N.Y. Times v. Sullivan*, 376 U.S. 254, 271-72 (1964)).  All the more so when Plaintiff is among the most powerful and high-profile individuals in the world, on whose activities the BBC reports every day.  The chilling effect is clear.  Federal courts in Florida therefore frequently dismiss defective defamation claims like this one at the pleading stage.  *See, e.g.*, *Trump v. CNN*, 2025 WL 3213203, at *2 (11th Cir. Nov. 18, 2025) (per curiam); *Turner v. Wells*, 879 F.3d 1254, 1259 (11th Cir. 2018); *Michel*, 816 F.3d at 706.

### A.  The Complaint Fails to State Any Claim Against the Studios Defendants

Plaintiff fails to plead facts plausibly stating *any* claim against the Studios Defendants. "The Eleventh Circuit has explained that 'asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions' is

improper." *Wyndham Vacation Ownership v. CLS*, 2018 WL 9869799, at *2 (S.D. Fla. Nov. 5, 2018) (Dimitrouleas, J.) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)).  Plaintiff alleges only, in conclusory fashion, that these two Defendants "co-produced and published the *Panorama* Documentary," with zero facts about what either Defendant actually did.  Compl. ¶¶ 13-14.  The other factual allegations all are about "the BBC" only, not the Studios Defendants, or describe all "Defendants" in an undifferentiated way.  Plaintiff therefore fails to plausibly allege that the Studios Defendants (or any Defendant) published the Documentary with actual malice or violated FDUTPA, and also fails to allege any other requisite elements of the claims.  *See Block v. Matesic*, 789 F. Supp. 3d 1131, 1160 (S.D. Fla. 2025) (Altman, J.) (citing *Sullivan*, 376 U.S. at 279-80), *appeal docketed*, No. 25-14517 (11th Cir. Dec. 30, 2025).  This failure alone warrants dismissal.

### B.  The Complaint Fails to State a Claim for Defamation

To state a defamation claim, Plaintiff must plausibly allege "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official . . .; (4) actual damages; and (5) the statement [was] defamatory." *Turner*, 879 F.3d at 1262 (quoting *Jews for Jesus v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). Plaintiff's defamation claim fails as a matter of law for several independent reasons.

#### 1.  *Plaintiff has not plead, and will not be able to prove, actual harm*

First, Plaintiff failed to plead, and will not be able to prove, that the Documentary caused him any cognizable injury.  Plaintiffs suing media companies for defamation must plead and prove actual damages, even where, as here, they purport to claim defamation *per se*.  *Corsi v. Newsmax Media*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (Ruiz II, J.) (Florida "eliminate[d] presumed damages for defamation *per se* actions against media defendants" (citing *Mid-Fla.*

*Television v. Boyles*, 467 So. 2d 282, 283 (Fla. 1985)); *see Edelstein v. WFTV*, 798 So. 2d 797, 798 (Fla. 4th DCA 2001) (per curiam) ("[A] plaintiff suing a media defendant must . . . plead and prove actual injury."). Here, because Plaintiff failed to plead actual damages, claiming only vague, conclusory "harm to his professional and occupational interests," Compl. ¶ 101, his claim fails as a matter of law. *See Anheuser-Busch v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to show actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. 18th Cir. Ct. June 30, 2014) (noting that Florida requires defamation plaintiffs to "plead and prove" actual damages and holding that because "a litany of news media entities" other than defendant created "negative publicity" about plaintiff, "the challenged . . . statements . . . could not have been the required 'but for' cause of [plaintiff's] alleged injuries"), *aff'd*, 212 So. 3d 376 (Fla. 5th DCA 2015); *Harrington v. Veritext*, 2025 WL 1591614, at *21 (S.D. Fla. May 1, 2025) (Elfenbein, M.J.) (dismissal proper where plaintiff "fails to plausibly allege . . . actual damages"), *R&R adopted*, 2025 WL 3282698 (Oct. 24, 2025), *appeal docketed*, No. 25-14063 (11th Cir. Nov. 17, 2025).

The outcome of the 2024 election also will not support a plausible allegation of damages here. President Trump won re-election on November 5, 2024, *after* the Documentary aired. He carried Florida by a commanding 13-point margin, improving over his 2020 and 2016 results.[6] Moreover, when the Documentary aired, Plaintiff had already been charged by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol,'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S.

---

[6] *See Fla. Div. of Elections*, *supra* n.2.

593, 628-29 (2024).  Similarly, in 2022 the U.S. House of Representatives January 6 Committee

found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take

back' their country."[7]  Given the many allegations prior to the Documentary's release regarding

Plaintiff's January 6 speech—and that shortly after its release, the President won reelection and

carried Florida by a wide margin—Plaintiff cannot plausibly claim that the Documentary harmed

his reputation.  Indeed, the Documentary was prescient in accurately describing the loyalty

Plaintiff enjoys among his supporters and that led to his return to the White House.  *See*

*Zimmerman*, 2014 WL 3731999, at *9.

### 2. *The Complaint fails to plausibly plead actual malice*

Plaintiff also fails to plausibly allege, as he must, that Defendants published the

Documentary with actual malice—that is, knowing the Documentary was false or while

entertaining serious doubts as to its truth.  *See Sullivan*, 376 U.S. at 279-80.  Fundamentally,

"[p]ublic discussion about the qualifications of a candidate for elective office presents what is

probably the strongest possible case for application of the *New York Times* [actual malice] rule."

*Ocala Star-Banner v. Damron*, 401 U.S. 295, 300-01 (1971).  Because Plaintiff claims the

Documentary carried a defamatory implication, "to show actual malice," he must plausibly

allege "*not only* that the Defendants knew the defamatory meaning was false, but *also* 'that the

---

[7] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 22, 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g.*, *Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump."); *infra* n.8 (collecting cases in which defendants facing January 6-related charges attributed their acts to President Trump).

[D]efendant[s] either intended to communicate the defamatory meaning or knew of the defamatory meaning and w[ere] reckless in regard to it.'" *Block*, 789 F. Supp. 3d at 1167-68 (quoting *Kendall v. Daily News Publ'g*, 716 F.3d 82, 90 (3d Cir. 2013) (emphasis in original)); *see also Klayman v. City Pages*, 650 F. App'x 744, 749-50 (11th Cir. 2016).  This requirement applies when a plaintiff alleges that "literally true statements are conveyed in such a way as to create a false impression," such as by "juxtapos[ing] a series of facts so as to imply a defamatory connection between them" or "creat[ing] a defamatory implication by omitting facts." *Block*, 789 F. Supp. 3d at 1155.  Plaintiff's theory of liability tracks a defamation-by-implication claim in charging that the BBC's editing of his words and "omitting" others created the "false . . . impression that President Trump fomented violence."  Compl. ¶¶ 105(b)-(c), 111.  Accordingly, he must plausibly allege both that Defendants *knew* the Documentary was false and that they *intended* to create that false impression.

Additionally, Plaintiff cannot, as the Complaint tries to, create an actionable statement or implication by citing one clip but ignoring the rest of the Documentary.  Courts consider challenged statements in the context of the full publication.  *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315-16 (11th Cir. 2020); *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).  The lack of actual malice is underscored by the fact that the brief clip, which shows 12 seconds of Plaintiff's speech on January 6, is part of an hour-long film with extensive coverage of his supporters and balanced coverage of his path to reelection.  His claim that the Documentary is "overwhelmingly" "negative," Compl. ¶ 81, is irrelevant as a matter of law, because even taking his allegations as true, "[a]n intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood."

21

*Don King Prods. v. Walt Disney*, 40 So. 3d 40, 44-46 (Fla. 4th DCA 2010). This is especially so in the case of this Plaintiff, the most public of figures.  In any case, it is wrong; ignoring the focus on Plaintiff's supporters, including "[s]upporters cheering for the President" and "lining the streets," and long interviews with "Rick Frazier, a supporter of President Trump," *id.* ¶ 39.

In all, Plaintiff falls well short of the high bar of actual malice.  He fails to plausibly allege facts showing that Defendants knowingly intended to create a false impression.  Rather, as the BBC Chair explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."  Compl. Ex. B at 3 & n.7.  Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements, and over 100 defendants charged with offenses related to January 6 told the courts that they interpreted President Trump's remarks as a call to action.[8]

---

[8] *See, e.g.*, Def.'s Mot. for Modification of Bond at 13, *U.S. v. Pezzola*, No. 1:21-cr-52-TJK (D.D.C. Feb. 10, 2021), ECF No. 15 (Proud Boys member who breached barricades and smashed Capitol window said he "was responding to the entreaties of the then commander in chief, President Trump . . . to 'stop the steal'"); Def.'s Detention Mem. at 10-11, *U.S. v. Chrestman*, No. 2:21-mj-8023-JPO (D. Kan. Feb. 16, 2021), ECF No. 7 ("Trump told the assembled rabble what they must do; they followed his instructions."); Def.'s Mot. for Review and Revocation of Detention Order at 2-3, 6, *U.S. v. Jackson*, No. 1:21-cr-395, (D.D.C. Feb. 22, 2021), ECF No. 10 (stating that his "behavior at the Capitol is indicative of an individual incited by the President"); Def.'s Mot. for Pretrial Release at 10, *U.S. v. Chansley*, No. 1:21-cr-3-RCL (D.D.C. Feb. 23, 2021), ECF No. 12 ("[B]ut for the specific words of the then-President during his January 6, 2021 speech, the Defendant [the QAnon Shaman] would not have walked down Pennsylvania Avenue and would not have gone into the U.S. Capitol Building."); Def's Letter in Supp. of Sentencing Mem. at 4, *U.S. v. Mattice*, No. 1:21-cr-657-BAH (D.D.C. July 2, 2022), ECF No. 62-2 (defendant who pulled down barricades and sprayed chemical at police said he "hear[d] President Trump tell the crowd that everyone was going to march on Capitol Hill, to fight for our country"); Def.'s Reply to Gov't Opp. at 6-7, *U.S. v. Sheppard*, No. 1:21-cr-203-JDB (D.D.C. Nov. 22, 2022), ECF No. 51 (one of the first rioters in the Capitol, who overran police, said he "had no reason to believe that the President had not authorized them to be able to walk freely at the Capitol to confront Congress and influence them not to certify the vote"); Def.'s Resp. to

Plaintiff's allegations that the Documentary was edited "intentionally, with actual malice," *e.g.*, Compl. ¶ 105, are "mere 'conclusory statements' . . . insufficient to support a cause of action." *Michel*, 816 F.3d at 704; *Turner*, 879 F.3d at 1273 (allegations that defendants "knowingly and recklessly" ignored or deliberately avoided learning information are insufficient to plead actual malice when "the complaint [does] not set forth facts demonstrating that the [d]efendants acted in these ways").

Plaintiff's claims about the BBC's independent adviser, the creators of a 2022 BBC *Newsnight* episode, Liz Cheney, and various British politicians are also unavailing. Compl. ¶¶ 55-75, 89-96. Actual malice "ha[s] to be brought home to the persons in [the] organization having responsibility for the publication," *Sullivan*, 376 U.S. at 287, yet Plaintiff never claims that any of these individuals made the Documentary. Nor does he plausibly allege that anyone who *did* make the Documentary said Defendants *intended* a false and defamatory depiction. *See, e.g.*, Compl. ¶¶ 55-60 (describing former independent adviser Michael Prescott's criticism of the Documentary but not alleging that he created it or said its creators intended a false depiction).

Even considering Plaintiff's allegation that "the BBC has strayed from accepted standards of journalistic integrity," *id.* ¶ 56, that claim also does not suffice. "Actual malice requires more than a departure from reasonable journalistic standards." *Michel*, 816 F.3d at 703. The BBC also took corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," and issuing

---

Gov't Mot. at 4, 6-7, Def.'s Mot. for Variance/Downward Departure at 6, *U.S. v. Southard-Rumsey*, No. 1:21-cr-387-APM (D.D.C. July 7, 2023), ECF No. 59 (defendant who tried to rip riot shield from police officer, pushed officers down stairs, and grabbed officers' batons and a metal stanchion to threaten other officers stated that "she was following the directive [of] then President Trump, Commander in Chief"). These court records are judicially noticeable. *See* F.R.E. 201; *Universal Express v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (per curiam).

a retraction on its website and on iPlayer.  *See* Compl. ¶¶ 48-49 & Ex. B; *Nelson Auto Ctr. v. Multimedia Holdings*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

Further, allegations of the BBC's "ill-will," *e.g.*, Compl. ¶¶ 53, 102, speak to "express or 'ordinary' common-law malice—not *actual* malice," and therefore are misplaced.  *Block*, 789 F. Supp. 3d at 1171; *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999) ("Ill-will . . . plays no role in determining whether a defendant acted with 'actual malice.'").

### 3.   *The Documentary contains protected expressions of opinion*

The Documentary contains protected expressions of opinion, including from Plaintiff's ardent supporters.  *Cf.* Compl. ¶¶ 39, 78-88.  It depicts hotly contested events tied to Presidential elections, including January 6, 2021, which have been the subject of extensive controversy and litigation.  Even if the Documentary is reasonably interpreted to report that Plaintiff encouraged the crowd to violently storm the Capitol on January 6, that is an opinion on a matter of public concern, heavily protected under defamation law.  *See, e.g.*, *CNN*, 2025 WL 3213203, at *2 (affirming dismissal of President Trump's defamation case because network's description of his election challenges as the "Big Lie" "is not readily capable of being proven true or false").

### C.  The Complaint Fails to State a Claim for Violations of FDUTPA

Plaintiff's FDUTPA claim also should be dismissed under the single-action rule.  "'Under Florida law, a single publication sustains a single cause of action,'" so that plaintiffs cannot "elude the constitutional safeguards that are part and parcel of defamation law by 'simply renaming the cause of action and repleading the same facts.'"  *Bongino v. Daily Beast*, 477 F. Supp. 3d 1310, 1320 (S.D. Fla. 2020) (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 69-70 (Fla.

1992)).  Thus, "[i]f the defamation count fails, the other counts based on the same publication must fail as well."  *Id.*; *see also Klayman v. Jud. Watch*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014) (Altonaga, J.) (same).  Here, the sole allegedly "deceptive" or "unfair" practice is broadcasting the Documentary.  Compl. ¶ 117.  Because Plaintiff's FDUTPA claim arises from the same publication as his defamation claim, it must be dismissed.

Nor can Plaintiff show that FDUPTA even applies here.  FDUTPA covers acts "in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  In claims against publications, "the statute applies only to commercial speech—or, 'expression related solely to the economic interests of the speaker and its audience.'"  *Bongino*, 477 F. Supp. 3d at 1321 (quoting *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017)).  Here, Plaintiff contests the Documentary's editing.  Compl. ¶ 117.  He does not and cannot allege that it was purely commercial speech: as the Eleventh Circuit has held, "magazines and newspapers often have commercial purposes, but those purposes do not convert the individual articles within these editorial sources into commercial speech."  *Tobinick*, 848 F.3d at 952.  At bottom, Plaintiff cannot salvage his deficient defamation claim with a deficient FDUTPA claim.  *See Hustler Mag. v. Falwell*, 485 U.S. 46, 53 (1988) (First Amendment protections apply to non-defamation claims targeting speech on public figures); *Fridovich*, 598 So. 2d at 69 ("[A] plaintiff is not permitted to make an end-run around a successfully invoked defamation privilege" by bringing another type of claim).  The FDUTPA claim is plainly ancillary and the Court should not permit it to proceed.

## CONCLUSION

For each and all of the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice for lack of personal jurisdiction and failure to state a claim, and grant all such other and further relief as the Court deems just and proper.

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Defendants request that the Court set a hearing on this motion.  A hearing would permit the parties to address Defendants' arguments on the threshold issue for the Court of personal jurisdiction, including the flatly incorrect allegations of their complaint as reflected in the Defendants' evidentiary submissions, as well as Plaintiff's failure to state a claim for defamation or FDUTPA violations stemming from the Documentary. Defendants estimate that the time required for argument would be one hour.

Dated: March 16, 2026                         Respectfully submitted,

                                              **BALLARD SPAHR LLP**
                                              1909 K Street, NW
                                              Washington, DC 20006-1157
                                              Tel: (202) 661-2218
                                              Fax: (202) 661-2299

                                              By: */s/ Charles D. Tobin*
                                              Charles D. Tobin
                                              Fla. Bar No.: 816345
                                              towbinc@ballardspahr.com
                                              Sasha Dudding (admitted *pro hac vice*)
                                              duddings@ballardspahr.com

                                              *Attorneys for Defendants*