# Demonstrative Exhibit for Joint Discovery Hearing on Defendants' Forty-Seven Subpoenas

| Subpoenas to Family Members of President Trump | | |
|---|---|---|
| Donald Trump, Jr. | Ivanka Trump | Jared Kushner |

| Subpoenas Directed to Federal Government Agencies | | |
|---|---|---|
| United States National Security Agency | United States State Department (Office of the Secretariat) | United States Federal Bureau of Investigation |
| United States National Park Service | United States Department of the Interior | United States Department of Defense |
| Architect of the United States Capitol | Office of the Chief Postal Inspector | United States Government Accountability Office |
| United States Department of Homeland Security | United States National Archives and Records Administration | Office of the United States Attorney for the District of Columbia |
| Office of the United States Attorney for the Southern District of Florida | United States Department of Justice | United States Postal Service |

| Subpoenas to Other Third Parties | | |
|---|---|---|
| Stephen K. Bannon | Roger Stone | Sidney Powell |
| Republican National Committee | Boris Epshteyn | Stephen Miller |
| Jason Miller | Michael Flynn | Eric Herschmann |
| Greg Jacob | Mark Meadows | Cleta Mitchell |
| Matthew E. Morgan | WinRed | Kenneth Chesebro |
| Brad Raffensperger | Jeffrey A. Rosen | Marc Short |
| William Stepien | Richard P. Donoghue | Judd Deere |
| U.S. Rep. Katrina Pierson | John C. Eastman | Pat Cipollone |
| Vincent Haley | Jeffrey B. Clark | Cassidy Hutchinson |
| Sarah Matthews | John McEntee | |

**EXHIBIT**

**B**

# SUBPOENAS TO FAMILY MEMBERS OF PRESIDENT TRUMP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| | ) |
| BRITISH BROADCASTING CORP., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Donald J. Trump, Jr. and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
### LLP

---

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Donald J. Trump, Jr.
c/o The Trump Organization
c/o Corporation Service Company
Registered Agent
80 State Street
Albany, NY 12207

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Trump:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Donald J. Trump, Jr., produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

Civil Action No.   1:25-CV-25894-RKA

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:        Donald J. Trump, Jr., c/o The Trump Organization, c/o Corporation Service Company, Registered Agent, 80 State Street, Albany, NY 12207

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        05/04/2026

| CLERK OF COURT | OR | |
|---|---|---|
| _____ | | *Charles D. Tobin* (signature) |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) | |
| Defendants. | ) | |

**ATTACHMENT A TO SUBPOENA TO DONALD J. TRUMP, JR.
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

**<u>GENERAL INSTRUCTIONS</u>**

1.          In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.          If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.          If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

5

6.       Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

**REQUEST FOR DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP,     ) <br><br>      Plaintiff,     ) <br><br> v.     ) <br><br> BRITISH BROADCASTING CORP., et al.,     ) <br><br>      Defendants.     ) | Case No. 1:25-cv-25894-RKA |

### DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM*

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Ivanka Trump and is attached as Exhibit 1.

Dated: May 4, 2026                      Respectfully submitted,

                                        **BALLARD SPAHR LLP**

                                        */s/ Charles D. Tobin*
                                        Charles D. Tobin (FBN 816345)
                                        Maxwell S. Mishkin (*pro hac vice*)
                                        Sasha Dudding (*pro hac vice*)
                                        1909 K Street NW, 12th Floor
                                        Washington, DC 20006
                                        Tel: (202) 661-2218
                                        Fax: (202) 661-2299
                                        tobinc@ballardspahr.com
                                        mishkinm@ballardspahr.com
                                        duddings@ballardspahr.com

                                        *Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
###### LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Ivanka Trump
36 Indian Creek Island Rd.
Indian Creek Village, FL 33154

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Ms. Trump:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Ivanka Trump, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| President Donald J. Trump | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) ) ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           Ivanka Trump, 36 Indian Creek Island Rd., Indian Creek Village, FL 33154

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     05/04/2026

| CLERK OF COURT | OR | *Charles D. Tobin* |
|---|---|---|
| _____ Signature of Clerk or Deputy Clerk | | _____ Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited  , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP,<br><br>    Plaintiff,<br><br>v.<br><br>BRITISH BROADCASTING CORP., et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:25-cv-25894-RKA<br>)<br>)<br>)<br>)<br>)<br>) |

## ATTACHMENT A TO SUBPOENA TO IVANKA TRUMP TO PRODUCE DOUCMENTS IN A CIVIL ACTION

## DEFINITIONS

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.     "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.     "Including" shall be construed as "including but not limited to."

7.     "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.     "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.     "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

> (a) the type of privilege claimed;
>
> (b) the type of Document;
>
> (c) the general subject matter of the Document;
>
> (d) the date of the Document;
>
> (e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;
>
> (f) the Request(s) to which the Document is responsive; and
>
> (g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

**REQUEST FOR DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Jared Kushner and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Jared Kushner
36 Indian Creek Island Rd
Indian Creek Village, FL 33154

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Kushner:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Jared Kushner, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                        Jared Kushner
                    36 Indian Creek Island Rd, Indian Creek Village, FL 33154

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP <br> 1909 K Street NW, 12th Floor <br> Washington, DC 20006 | Date and Time: <br><br> 06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      05/04/2026

| *CLERK OF COURT* | OR | *Charles D. Tobin* |
|---|---|---|
| _____ <br> *Signature of Clerk or Deputy Clerk* | | _____ <br> *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
        **(i)** is a party or a party's officer; or
        **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
        **(i)** fails to allow a reasonable time to comply;
        **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
        **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
        **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

        **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        **(i)** expressly make the claim; and
        **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-25894-RKA |
| ) | |
| BRITISH BROADCASTING CORP., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ATTACHMENT A TO SUBPOENA TO JARED KUSHNER
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10. "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11. "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12. "The BBC" means Defendant the British Broadcasting Corporation.

13. "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14. "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15. "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16. "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17. "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18. "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19. "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

      (a)  the type of privilege claimed;

      (b)  the type of Document;

      (c)  the general subject matter of the Document;

      (d)  the date of the Document;

      (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

      (f)  the Request(s) to which the Document is responsive; and

      (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.     These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.     All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

# SUBPOENAS DIRECTED TO FEDERAL GOVERNMENT AGENCIES

# Ballard Spahr
### LLP

– – – – – – – – – – – – – – – – – – –

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 15, 2026


*Via Certified Mail*

Ariane E. Cerlenko
Principal Deputy General Counsel
National Security Agency
9800 Savage Road, Suite 6272
Fort George G. Meade, MD 20755-6000

Re:     *Touhy* Request for the Production of Documents in *Trump v. BBC*, Case No. 1:25-cv-
        25894-RKA (S.D. Fla.)

Dear Ms. Cerlenko:

     This law firm represents defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited in the above-referenced civil action pending in the United States District Court for the Southern District of Florida (the "Action").  We submit this request for information, identified below, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and 32 C.F.R. § 97.1, *et seq*.

## BACKGROUND

     On December 15, 2025, Plaintiff President Donald J. Trump filed a two-count lawsuit alleging defamation and violations of the Florida Deceptive and Unfair Trade Practices Act against Defendants, arising from the documentary titled "*Trump: A Second Chance?*" ("the Documentary").  For your reference, we have attached a copy of the complaint to this letter as Exhibit 1.  The Documentary explored for the BBC's U.K. audience the President's continued success with his loyal American voters, following some of his most ardent supporters, known as the "Front Row Joes," and speaking with experts in the run up to the November 2024 U.S. presidential election. Plaintiff alleges that the Documentary defamed him in its depiction of his speech on January 6, 2021 ("the Speech"), which he alleges falsely depicted him as inciting violence at the Capitol that day.

     The Action puts directly into issue the factual circumstances of the violence at the Capitol building on January 6, 2021, including whether there were plans of violence ahead of time, the communications about any planned violence, and whether individuals understood the Stop the Steal Rally or Trump's communications about January 6, 2021 as a

Ariane E. Cerlenko
May 15, 2026
Page 2

call to violence.  Accordingly, the requested documents and information identified below are paramount to the case that Plaintiff has brought against Defendants.

The parties in the Action are currently going through the discovery process with a pending motion to dismiss filed.  At the moment, Plaintiff has not provided any such relevant documents or information himself in response to Defendants' written discovery requests propounded on him.  Furthermore, the information possessed by the National Security Agency ("NSA") about the intelligence it gathered regarding the events of January 6, 2021 are in the agency's possession, and accordingly would only be obtainable through this Request.

Given that Plaintiff's allegations have placed these documents in the NSA's possession at the heart of the Action, and that Defendants need these documents to adequately defend themselves in court, the need for these documents outweighs any confidentiality of the information and any burden on the NSA to produce these records.  As detailed below, the requested records are confined by date and subject matter to limit the intensiveness of any search for responsive documents.  Additionally, there is a protective order in place that will limit the exposure of any confidential items beyond the parties involved.

No previous decisions, orders, or pending motions in the Action bear upon the relevance of the requested records or testimony at this point.

**DEFENDANTS' TOUHY REQUEST SHOULD BE GRANTED**

Under 32 C.F.R. § 97.8, the NSA considers several factors in evaluating a *Touhy* request.  The following factors favor providing the requested documents to Defendants:

- **Whether the request is overbroad, unduly burdensome or otherwise inappropriate under the applicable law or court rules.**  Because the scope of the requested information is limited to a confined period of days about a single subject matter, and because search terms can appropriately confine the NSA's search for the requested records, Defendants do not expect that the request is resource-heavy and will not impede the NSA's ability to conduct official business.  Compliance would likewise not be inappropriate under laws and court rules regarding discovery. We stand by for any discussions about search strings that would help ensure this is not unduly burdensome on the agency.

- **Whether disclosure is improper under the rules of procedure governing the litigation.**  As noted above, because the scope of the requested information is limited to a confined period of days about a single subject

Ariane E. Cerlenko
May 15, 2026
Page 3

matter, and because search terms can appropriately confine the NSA's search for the requested records, Defendants believe their request to comply with the Federal Rules of Civil Procedure and is not irrelevant, cumulative or disproportionate to the needs of the case.

- **Whether the information is privileged or otherwise protected from disclosure under the relevant substantive law concerning privilege or disclosure of information.**  Defendants do not believe that their requests would involve any privileged materials, such as trade secrets, commercial or financial information, attorney-client communications, attorney work product, documents that would fall under executive privilege, or documents that would impede any ongoing law enforcement investigations.  Similarly, Defendants do not believe their request to violate any statute, Executive order, regulation, or policy, or interfere with any ongoing enforcement proceedings, compromise any constitutional rights, or expose any sources or informants.

### LIST OF REQUESTED DOCUMENTS

In the interest of transparency and aiding the NSA's evaluation of this request, and as requested in 32 C.F.R. § 97.9, below is a description of documents Defendants seek, along with a description of how the information sought is relevant to the issues in the Action and why the information sought is unavailable by any other means.

- **Documents and communications produced, collected, or created in response to receiving the FBI New Orleans Field Office Intelligence Information Report from January 5, 2021, titled "Communication and Establishment of a Quick Reaction Force by USPERs Related to an Identified Protest in Washington, District of Columbia, on 6 January 2021":**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

Defendants seek this information in good faith and reasonably believe that the documents identified above are not available through other discovery or sources available in this Action.

Ariane E. Cerlenko
May 15, 2026
Page 4


      We respectfully ask that you act on this *Touhy* request as promptly as possible. Thank you in advance for your attention to this matter.



Sincerely,

BALLARD SPAHR LLP

Charles D. Tobin

Cc: Counsel for Plaintiff


Encl.: Subpoena, Exhibit 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

Civil Action No.   1:25-CV-25894-RKA

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Ariane E. Cerlenko, Principal Deputy General Counsel, National Security Agency
9800 Savage Road, Suite 6272, Fort George G. Meade, MD 20755-6000

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/15/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   05/15/2026

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited  , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:25-cv-25894-RKA ) |
| BRITISH BROADCASTING CORP., et al., | ) ) |
| Defendants. | ) ) ) |

**ATTACHMENT A TO SUBPOENA TO THE NATIONAL SECURITY AGENCY
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.	Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.	"And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.	"Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.	"Communications" means any manner of receiving or transmitting information, opinions or thoughts, whether orally, in writing, electronically, or otherwise.  The term

"Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

5. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

6. "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

2

7.      "Including" shall be construed as "including but not limited to."

8.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

9.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

10.      "Washington, D.C. area" means the Washington—Arlington—Alexandria Metropolitan Statistical Area.

11.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all components under the National Security Agency; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

3

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections) for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

4

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests is for Documents created or originating on or after January 5, 2021 to January 6, 2021.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**: All Communications and Documents Relating to the Your receipt of a Federal Bureau of Investigation New Orleans Field Office Intelligence Information Report from January 5, 2021, titled "Communication and Establishment of a Quick Reaction Force by USPERs Related to an Identified Protest in Washington, District of Columbia, on 6 January 2021."

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BRITISH BROADCASTING CORPORATION a/k/a/ BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, PRESIDENT DONALD J. TRUMP ("President Trump"), by and through his counsel, brings this action against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC (the "BBC"), BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED (collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1.    This action concerns a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump, which was published in a BBC *Panorama* documentary, that was fabricated and aired by the Defendants one week before the 2024 Presidential Election in a brazen attempt to interfere in and influence the Election's outcome to President Trump's detriment.

2.     In the BBC *Panorama* documentary titled "Trump: A Second Chance" (the "*Panorama* Documentary," or the "Documentary"),[1] which was first broadcast on October 28, 2024, the BBC intentionally and maliciously sought to fully mislead its viewers around the world by splicing together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech").[2] The *Panorama* Documentary deliberately omitted another critical part of the Speech in such a manner as to intentionally misrepresent the meaning of what President Trump said.

3.     The *Panorama* Documentary falsely depicted President Trump telling supporters: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary). President Trump never uttered this sequence of words.

4.     This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and then, much later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight*

---

[1]     First published by Defendants on October 28, 2024 with a runtime of 57:54. *See* "Trump: A Second Chance?", BBC (Oct. 28, 2024) (https://www.bbc.co.uk/programmes/m0024h6r) (last visited Dec. 15, 2025)

[2]     The Speech was 70:53 in length.

*like hell, and if you don't fight like hell, you're not going to have a country anymore*," (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

5.     Moreover, the BBC purposefully omitted President Trump stating, less than one minute after urging supporters to cheer for their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

6.     As set forth in a damning and recently leaked BBC internal whistleblower document, the BBC intentionally used the *Panorama* Documentary to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting, and that he "said something he did not,"[3] by splicing together footage from the start of the Speech with a separate quote that he said nearly 55 minutes later, while omitting his statement calling for peace, made less than one minute after his first statement urging supports to cheer their senators and congressmen at the Capitol. Such distortion of the President's speech by the BBC "materially misled viewers."[4]

7.     Moreover, concerns about the *Panorama* Documentary were raised internally before its dissemination, but the BBC ignored those concerns and did not take corrective action.

8.     This instance of doctoring—in the form of distortion of meaning and splicing of entirely unrelated word sequences—is part of the BBC's longstanding pattern of manipulating

---

[3]     Gordon Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*, THE TELEGRAPH (Nov. 6, 2025), https://www.telegraph.co.uk/news/2025/11/06/read-devastating-internal-bbc-memo-in-full/ (last visited Dec. 15, 2025).

[4]     *Id.*

President Trump's speeches and presenting content in a misleading manner in order to defame him, including fabricating calls for violence that he never made. *See e.g.* ¶¶ 55-87, *infra*.

9. The BBC, faced with overwhelming and justifiable outrage on both sides of the Atlantic, has publicly admitted its staggering breach of journalistic ethics, and apologized, but has made no showing of actual remorse for its wrongdoing nor meaningful institutional changes to prevent future journalistic abuses.

10. Accordingly, President Trump brings this action for compensatory and punitive damages for the extensive reputational harm inflicted upon him by the Defendants.

**PARTIES**

11. Plaintiff, President Trump, is a citizen of the United States and a citizen of the State of Florida. He served as the 45th President of the United States and currently serves as the 47th President of the United States.

12. Defendant, the BBC, is a British corporation established by royal charter and operating under an agreement with the United Kingdom's Secretary of State for Culture, Media, and Sport, with its principal place of business in London, England. The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films Ltd., and its international distribution partner, Blue Ant Media Corporation.

13. Defendant, BBC Studios Distribution Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

14. Defendant, BBC Studios Productions Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are completely diverse, as President Trump is a citizen of Florida, while all Defendants are citizens of the United Kingdom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     The Court possesses personal jurisdiction over Defendants pursuant to Florida Statute 48.193(2) because Defendants, during the operative period alleged in this Complaint, engaged in substantial and not isolated business activities in Florida, and more specifically in this District. Defendant BBC publishes online news reports, editorials, and other media content at https://www.bbc.com, which are regularly accessed by individuals in Florida.

17.     The BBC operates in the United States not as an abstract concept but in a constant manner; the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location.

18.     The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web

5

pages entitled "Florida – BBC News"[5] and "Florida – BBC Weather,"[6] among others. The BBC also offers web pages specific to cities in Florida.[7]

19.     Additionally, the BBC offers subscriptions to individuals in Florida and as a result, has thousands of subscribers in Florida. Any individual in the United States, including Florida, can pay for a subscription to the BBC's content and services.[8]

20.     Individuals in the United States, including Florida, also have another option for consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform.[9] *BritBox* is available in the United States, including in Florida, and has thousands of subscribers in Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount of the BBC's original content—including *Panorama*.

21.     Accordingly, BBC has engaged, and continues to engage in, substantial and not isolated activity in Florida.

---

[5]     *Florida – BBC News*, BBC, https://www.bbc.com/news/topics/c77jz3mdq1jt (last visited Dec. 15, 2025).

[6]     *Florida – BBC Weather*, BBC, https://www.bbc.com/weather/3442585 (last visited Dec. 15, 2025).

[7]     *See, e.g., Miami – BBC News*, BBC, https://www.bbc.com/news/topics/cp7dde75nmlt (last visited Dec. 15, 2025).

[8]     *Get even more from a BBC subscription*, BBC, https://www.bbc.com/subscribe (last visited Dec. 15, 2025).

[9]     *BritBox by BBC*, https://www.britbox.com/us/?gclsrc=aw.ds&&utm_source=google&utm_medium=paid-search&utm_campaign=17444044535-137684208899&utm_content=602709820305&utm_term=g&gad_source=1&gad_campaignid=17444044535&gbraid=0AAAAADMxMXrfBmo_s56m_ZA2aFpeyy6C_&gclid=CjwKCAiA0eTJBhBaEiwA-Pa-hbSItFwaYwfNGsO5WR1trkY2tlU0j8XCZ76_KY4_xRzkIl0Sr6pPBxoCTrkQAvD_BwE (last visited Dec. 15, 2025).

6

22. In addition, this Court possesses personal jurisdiction over Defendants pursuant to: (a) Florida Statute §48.193(1)(a)(1), because Defendants operate, conduct, engage in, or carry on a business in Florida or have an office or agency in Florida, (b) Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act in Florida (as stated herein), and (c) Florida Statute §48.193(1)(a)(6) because Defendants caused injury to President Trump within Florida arising out of an act or omission committed by Defendants in Florida, while at or about the time of the injury, products and services provided by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

23. The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie ("Davie") stated in his recent resignation letter: "Despite a hugely competitive market, I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*."[10]

24. The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC.

25. In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer.

---

[10] *Davie and Turness resignations in full*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c1k02vr1my2o (last visited Dec. 15, 2025). (Emphasis added).

7

26.     According to *vpnMentor*, a VPN research firm, VPN usage in Florida has skyrocketed since 2024, with a 51% increase in demand on December 19, 2024, and an over 1,000% increase in VPN usage at the beginning of 2025.[11]

27.     Florida streamers have opted to use VPNs to increase their "streaming freedom." Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer.[12]

28.     To that end, an article published by *Tom's Guide*, a reputable technology news outlet, revealed that a VPN usage survey showed that approximately 41% of VPN subscribers use the service to stream content, citing BBC iPlayer as an example of what a VPN subscriber could view using a VPN.[13]

29.     The *Panorama* Documentary's publicity, coupled with significant increases in VPN usage in Florida since its debut, establishes the immense likelihood that citizens of Florida accessed the Documentary before the BBC had it removed.

---

[11]     *Floridians Flock to VPNs As Age-Verification Law Takes Effect*, TAMPA FREE PRESS (Jan. 8, 2025) (https://www.tampafp.com/floridians-flock-to-vpns-as-age-verification-law/) (last visited Dec. 15, 2025).

[12]     *Florida VPN Surge: Why VPN Usage Skyrocketed 1,000% in Florida* (2025), TRUSTED TECHSPOT (https://trustedtechspot.com/florida-vpn-surge/) (last visited Dec. 15, 2025).

[13]     *More Than 40% of VPN Subscribers Use Them for Streaming – Here's Why*, TOM'S GUIDE (June 2, 2021) https://www.tomsguide.com/features/more-than-40-of-vpn-subscribers-use-them-for-streaming-heres-why) (last visited Dec. 15, 2025).

8

30.     Articles like those published by Tom's Guide[14] and PureVPN[15]—giving a summary of the *Panorama* Documentary's plot, telling users how to view the Documentary, and going as far as to provide links to VPNs that allow a user to view BBC iPlayer—make it overwhelmingly certain that Floridians accessed the Documentary using a VPN during the time the Documentary was available.

31.     Further supporting the fact that Floridians accessed the *Panorama* Documentary through a VPN, *The Guardian* reported that research showed that "65 million people from abroad watch the broadcaster's license-fee funded iPlayer service using proxy servers or virtual private networks."[16]

32.     As underscored by the Chairman of the FCC, Brendan Carr, "[t]he BBC has stated that it has a number of partnerships with U.S. broadcasters, including PBS and NPR, to distribute BBC programming here in America."[17]

---

[14]     *How to Watch 'Trump: A Second Chance?'*, TOM'S GUIDE (Oct. 28, 2024) (https://www.tomsguide.com/entertainment/streaming/how-to-watch-trump-a-second-chance-online-from-anywhere) (last visited Dec. 15, 2025).

[15]     *How to Watch 'Trump: A Second Chance in the US'*, PUREVPN https://www.purevpn.com/how-to-watch-trump-a-second-chance-in-the-us (last visited Dec. 15, 2025).

[16]     Paul Revoir, *BBC iPlayer 'Watched By More Than 60 Million People Outside the UK for Free'*, THE GUARDIAN (July 21, 2015) (https://www.theguardian.com/media/2015/jul/21/bbc-iplayer-uk-vpn-proxy-server) (last visited Dec. 15, 2025).

[17]     *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at* BCC (Nov. 19, 2025) (https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed) (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025) (https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/) (last visited Dec. 15, 2025).

33.     The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida.

34.     Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary,[18] including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025.[19]

35.     Blue Ant aggressively advertised its exclusive distribution of the *Panorama* Documentary outside of the United Kingdom, further evidencing the intent of the BBC and its strategic partners to disseminate the Documentary as widely and into as many streams of commerce and channels of distribution as possible, including Florida.[20]

---

[18]     Karolina Kaminska, *Blue Ant Studios to shop BBC's 'President Trump: A Second Chance?' In Cannes*, C21 MEDIA (Oct. 10, 2024), https://www.c21media.net/news/blue-ant-studios-takes-october-films-president-trump-a-second-chance-to-cannes/ (last visited Dec. 15, 2025).

[19]     Nicholas Sokic, *Blue Ant pulls BBC Trump doc from catalogue*, PLAYBACK (Nov. 12, 2025), https://playbackonline.ca/2025/11/12/blue-ant-pulls-controversial-bbc-trump-doc-from-catalogue/ (last visited Dec. 15, 2025) ("Blue Ant rights has confirmed that it has pulled the BBC *Panorama* documentary on U.S. President Donald Trump from its catalogue amid the controversy surrounding the film.").

[20]     *'President Trump: A Second Chance?' Launches at MIPCOM 2024*, BLUE ANT MEDIA CORPORATION (Oct. 10, 2024), https://web.archive.org/web/20250712071622/https://blueantmedia.com/2024/10/president-trump-a-second-chance-launches-at-mipcom-2024/ (last visited Dec. 15, 2025) ("Blue Ant Studios today confirms that the explosive Donald Trump documentary, produced by October Films, has just wrapped production with the working title, President Trump: A Second Chance? Commissioned by BBC's Panorama, and produced by October Films, this hotly anticipated and

10

36. Further, and as explained in greater detail below, the BBC elected to publish the *Panorama* Documentary just one week before the 2024 United States Presidential Election with the express intent of interfering with it and trying to undermine President Trump's odds of winning reelection.

37. Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago, in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary.

38. The BBC explicitly instructed and ordered its producers to travel to Florida and to utilize this forum for the purpose of creating the Documentary and defaming President Trump.

39. The *Panorama* Documentary contains extensive evidence and examples of the BBC's producers gathering original footage specifically for use in the Documentary—not using stock footage—at Mar-a-Lago and nearby in the Palm Beach area on April 4, 2023, as well as on other dates. These examples include, but are not limited to: (a) Between 2023 and 2024, the BBC, or its contractors, filmed (i) a wide angle aerial view of Mar-a-Lago taken from a vantage point in the Lake Worth Lagoon (3:57 into the Documentary), (ii) a wide angle aerial view of Mar-a-Lago from a vantage point just north facing the Atlantic Ocean (4:47), (iii) a wide angle shot of the Mar-a-Lago pool and exterior and added a graphic "Trump Residence, Mar-a-Lago Florida" (5:00); and (b) on April 4, 2023, BBC producers and BBC-contracted crew members filmed (i) supporters of

---

distinctive 1x60 documentary will make its official international debut at MPICOM, where attending buyers will have an exclusive previews.").

President Trump lining the streets as President Trump's motorcade proceeded with President Trump through Palm Beach on the way to Mar-a-Lago (4:03), (ii) Rick Frazier, a supporter of President Trump, in the passenger seat of a vehicle as it followed the motorcade on the approach to Mar-a-Lago (4:09), (iii) The vehicle carrying Frazier as it entered Mar-a-Lago (4:51), (iv) Frazier as he walked in to Mar-a-Lago (5:03), (v) President Trump as he walked in to Mar-a-Lago to deliver a speech (5:11), (vi) Supporters cheering for the President as he prepared to speak inside Mar-a-Lago (5:24), (vii) President Trump as he delivered a speech to supporters inside Mar-a-Lago (5:27), and (viii) Frazier as he interacted with other supporters of President Trump (6:15 and 6:55).

40. The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida.

41. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: President Trump is a citizen of Florida who was defamed by the BBC while in Florida, the BBC filmed the *Panorama* Documentary in significant part in Florida, and the BBC, in concert with its strategic partners including October Films Ltd. and Blue Ant Media Corporation, distributed the Documentary into Florida.

## FACTUAL ALLEGATIONS

### *The BBC's Defamatory and Deceptive Depiction of*
### *President Trump's Speech in the Panorama Documentary*

i.    <u>The BBC Splices and Distorts President Trump's Speech</u>

42.    The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary wrongly made it appear that he said: "*We're going to walk down to the Capitol, and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

43.    This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory, given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

44.    Moreover, to further the BBC's intended, false, malicious, and defamatory message that President Trump fomented violence, which he did not, the BBC intentionally omitted President Trump saying, less than one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building*

*to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

    ii.    *The BBC's Director General and Head of News Resign in Disgrace,
and the BBC, Under Fire, Reluctantly Admits Wrongdoing*

45.    On November 9, 2025, Davie and News CEO Deborah Turness resigned in disgrace over their leading roles in the *Panorama* Documentary.[21]

46.    Also on November 9, 2025, President Trump's counsel emailed a letter to Samir Shah (Chairman of the BBC) and Sarah Jones (General Counsel) entitled "Demand to Retract False and Defamatory Statements About The President of the United States of America" demanding retraction of the BBC's false depiction of President Trump, an apology for the false depiction of President Trump, and monetary compensation. *See* **Exhibit A**.

47.    By letter dated November 13, 2025, the BBC's counsel indicated that the BBC would apologize to President Trump but, somehow, ignoring the resignations of the BBC's leadership, admitting of wrongdoing, and apology, still attempted to deny intentional wrongdoing and declined to pay damages. *See* **Exhibit B**.

48.    Enclosed with the letter from counsel was a letter of apology from Chairman Shah, which stated, *inter alia*:

> Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. ***This gave the mistaken impression that you had made a direct call for violent action***. ***That was an editorial error and it should not have happened***. ***I have stated clearly and publicly that the BBC apologises for that error of judgement***. As it was your

---

[21]    Aleks Phillips and Helen Bushby, *BBC director general and News CEO resign over Trump documentary edit*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c3vn25d5dq7o (last visited Dec. 15, 2025) ("It is unprecedented for both the director general and the head of BBC News to resign on the same day."); *see also Davie and Turness resignations in full*, *supra*.

14

speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

*Id.* (emphasis added).

49.     The BBC then published the following apology on its "Corrections and Clarifications" page, which was also included in the November 13 letter:

**Panorama – Trump: A Second Chance?**

**28 October 2024**

This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.

During that sequence, we showed excerpts taken from different parts of the speech.

However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, *and **that this gave the mistaken impression that President Trump had made a direct call for violent action***.

The BBC would like to apologise to President Trump for that **error of judgment**.

This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.[22]

50.     Notably, the BBC did not broadcast a correction, apology, or retraction during a broadcast in a comparable manner as the *Panorama* Documentary, or with a comparable audience.

### *Substantial Evidence of The BBC's Actual Malice*

51.     Contrary to the BBC's claim that its splicing, manipulation, and distortion of the Speech was an unintentional "editorial error," substantial evidence suggests that this was an intentional and malicious effort to falsely and deceptively portray President Trump as having called for violent action on January 6, 2021.

---

[22]     *Corrections and Clarifications*, BBC (Nov. 13, 2025), https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/ (last visited Dec. 15, 2025) (emphasis added).

15

52.     As an initial matter of common sense, it would have been impossible for BBC's journalists and producers to splice together two distinct parts of the Speech from nearly 55 minutes apart *unless* they were acting intentionally. Such a dramatic distortion could never have occurred by accident. Two distinct parts of a speech from nearly 55 minutes apart do not inadvertently become spliced or linked together without effort, knowledge, and purpose. In parallel, by definition, an "an error of judgment," as admitted to by the BBC, is not inadvertent, it includes an intentional act.

53.     The BBC's actual malice is further compounded by its prior acts that unequivocally demonstrate that the organization has been anything but fair and impartial when it comes to reporting on President Trump. Substantial evidence demonstrates that before the publication of the *Panorama* Documentary, the BBC and its leadership bore President Trump ill will, wanted him to lose the 2024 Presidential Election, and were dishonest in their coverage of him.

54.     The BBC, its journalists, and its producers knew at and prior to the time they published the *Panorama* Documentary that the BBC's depiction of President Trump's Speech was false.

   i.     *The Prescott Memorandum*

55.     In the early Summer of 2025, Michael Prescott, a journalist who until June 2025 was an independent adviser to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board "expos[ing] a string of incidents that demonstrate serious bias in the corporation's reporting"; following the leak of the Memorandum, *The Telegraph* published the Memorandum in early November 2025.[23]

---

[23]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

16

56.     Prescott highlighted a litany of disturbing misconduct demonstrating how far the BBC has strayed from accepted standards of journalistic integrity, including, but not limited to, the BBC's tampering with President Trump's Speech in the Documentary.[24]

57.     Notably, Prescott is nonpartisan, as he wrote in the Memorandum:

> I think it is important to state that I have never been a member of any political party and do not hold any hard and fast views on matters such as American politics or disputes in the Middle East. My views on the BBC's treatment of the subjects covered below do not come with any political agenda. Rather, what motivated me to prepare this note is despair at inaction by the BBC Executive when issues come to light. On no other occasion in my professional life have I witnessed what I did at the BBC with regard to how management dealt with (or failed to deal with) serious recurrent problems.[25]

58.     Regarding the *Panorama* Documentary, Prescott wrote:

> I watched the programme and found it to be neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance. Critics of the Republican presidential candidate vastly outnumbered those who argued for him. What examination there was of reasons for Trump's popularity seemed to me insufficient given the overall balance of the programme. Given what I took to be the anti-Trump nature of the programme, I of course assumed there would be a similar, balancing Panorama programme about Democrat presidential candidate Kamala Harris the following week. I remain shocked that there was not.[26]

59.     Prescott was not alone in his assessment:

> I raised my concerns at the EGSC and David Grossman [Senior Editorial Adviser to the EGSC] was asked to review the programme. He concluded the main contributors to the documentary were heavily weighted against Trump, with just one supporter against ten who questioned his fitness for office. Worse still, David highlighted alarming concerns about how Panorama had edited Trump's speech to his supporters on January 6, 2021 . . . . Examining the charge that Trump had incited protesters to storm Capitol Hill, it turned out Panorama had spliced together two clips from separate parts of his speech. This created the impression that Trump said something he did not and, in doing so, materially misled viewers.[27]

---

[24]     *Id.*

[25]     *Id.*

[26]     *Id.*

[27]     *Id.*

17

60. Prescott concluded about the splicing of President Trump's Speech that:

This was one of the most shocking sets of issues uncovered during my time with the EGSC. If BBC journalists are allowed to edit video in order to make people "say" things they never actually said, then what value are the Corporation's guidelines, why should the BBC be trusted, and where will this all end?[28]

> ii. *The 2022 BBC Newsnight Distortion Demonstrating that the Panorama Documentary Splice is Part of a Defamatory Pattern by the BBC of Falsely Depicting President Trump Through Doctored Footage*

61. As further revealed by *The Telegraph*, the BBC also aired similarly doctored footage of President Trump's Speech on a 2022 episode of *BBC Newsnight*.[29]

62. In the doctored Speech clip aired by *BBC Newsnight*, President Trump is falsely, maliciously, and defamatorily depicted as saying: "*We're going to cheer on our brave senators and congressman and women, and we fight, we fight like hell*."[30]

63. What President Trump really said was: "*[A]nd we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them.*"[31] (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech).

---

[28] *Id*.

[29] Camilla Tominey, Tim Stanley, John Cadigan, Rob Crilly, *BBC Newsnight also doctored Trump speech*, THE TELEGRAPH (Nov. 13, 2025), https://www.telegraph.co.uk/news/2025/11/13/bbc-doctored-trump-speech-second-time-newsnight/ (last visited Dec. 15, 2025).

[30] *Id.*

[31] *Id.*

18

64.     As *The Telegraph* reported: "Spliced footage of the speech, which aired in an episode in 2022, made it appear that Mr. Trump was encouraging his supporters to riot. The edit was much like a version aired in a *Panorama* documentary broadcast last year."[32]

65.     As further reported by *The Telegraph*: "Like *Panorama*, the *Newsnight* edit made it look as if the US President had urged supporters to walk to the Capitol building with him to 'fight like hell' by linking statements made nearly an hour apart in his speech."[33]  The harm caused by this doctoring was exacerbated by the BBC intentionally omitting President Trump stating, only one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

66.     Immediately after the *BBC Newsnight* episode aired, Mick Mulvaney, former Acting White House Chief of Staff, and David Chaudoir, former award-nominated graphic designer for *BBC Newsnight* from 2022-24, both individually voiced their concerns regarding the misleading and malicious way *BBC Newsnight* edited the clip to distort reality.[34]

67.     Mr. Chaudoir specifically told *The Telegraph* that he was present for discussions about the *BBC Newsnight* clip the day after it was published, wherein *BBC Newsnight* production team members dismissed any ethical concerns about the *BBC Newsnight* clip.[35]

---

[32]     *Id.*

[33]     *Id.*

[34]     *Id*.

[35]     *Id*.

68.     Mr. Mulvaney expressed his concern on-air while being interviewed on *BBC Newsnight,* stating:

> Your video actually spliced together the presentation. He said: 'We're going to go down and we're going to cheer on our senators and our house members' and then it actually goes on to say 'And some of them we might not be able to' and that line about 'and we fight and fight like hell' is actually later in the speech yet your video makes it look like those two things came together. [36]

69.     The malicious nature of the spliced and edited clip is further underscored by former BBC legal affairs correspondent Clive Coleman's statements in response to the *Panorama* Documentary, stating:

> I really struggle to understand how we got to this place . . . The first lesson almost you're taught as a broadcast journalist is that you do not join two bits of footage together from different times in a way that will make the audience think that it is one piece of footage.[37]

iii.     *The 2024 BBC News Shooting Hoax Further Demonstrating that the Panorama Documentary Doctoring is Part of an Defamatory Pattern by the BBC of Falsely Depicting President Trump Calling for Violence*

70.     As also revealed by *The Telegraph*, the BBC "has admitted misleading viewers by claiming that Donald Trump called for one of his leading critics to be shot in the face."[38]

71.     This admission by the BBC, regarding three instances of false statements about

---

[36]     *Id*.

[37]     Faith Wardwell, *BBC Apologizes to Trump for Documentary Edits, but Pushes Back on Legal Threat*, POLITICO (Nov. 13, 2025) (https://www.politico.com/news/2025/11/13/bbc-trump-apology-documentary-00651451) (last visited Dec. 15, 2025).

[38]     Anita Singh, *BBC admits falsely claiming Trump wanted to shoot critic*, THE TELEGRAPH (Dec. 9, 2025), https://www.telegraph.co.uk/news/2025/12/09/bbc-admits-falsely-claiming-trump-wanted-to-shoot-critic/ (last visited Dec. 15, 2025).

20

President Trump supposedly calling for violence against a political opponent, none of which occurred, is contained in the now-public Memorandum, and yet the BBC has still failed to issue a public correction.[39]

72.    As described by *The Telegraph*:

> In the days before the US presidential election in November last year, a presenter on BBC World News America said that Mr. Trump "appeared to suggest Liz Cheney should face a firing squad for her stance on foreign policy."
>
> On the BBC News Channel, another presenter asked his guest: "He [President Trump] is out there on the campaign trail saying he wants people to shoot Liz Cheney in the face . . . Is that the sort of thing women react well to?"
>
> Speaking on the Six O'Clock News the same night, Sarah Smith, the BBC's North America editor, said Mr. Trump had been "ratcheting up the violent rhetoric."
>
> She added: "In the latest spat, Donald Trump has been accused of being petty, vindictive and a wannabe tyrant because he suggested that one of his political opponents should face guns, have them trained on her face."[40]

73.    All these statements by BBC presenters were false.

74.    "In fact, Mr. Trump had accused Ms. Cheney of being a 'radical war hawk' who wanted to send troops to war while she remained in the safety of Washington DC, saying: 'Let's put her with a rifle standing there with nine barrels shooting at her face. OK? Let's see how she feels about it.'"[41]

75.    This false, defamatory, and malicious coverage of President Trump, broadcast in the same time period as the release of the *Panorama* Documentary, was consistent with the BBC's *modus operandi*, defaming President Trump by fabricating calls for violence allegedly issued by him, that he never actually made.

---

[39]    *Id.*

[40]    Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

[41]    *Id.*

21

iv.    *The Panorama Documentary Was Intentionally One-Sided and Inflammatory, demonstrating that the Doctoring of President Trump's Speech Was Intentional and <u>Part of the BBC's Defamatory Pattern</u>*

76.    The lack of any effort by the BBC to publish content even remotely resembling objective journalism, or to maintain even a slight semblance of objectivity in the *Panorama* Documentary, demonstrates that the BBC had no regard for the truth about President Trump, and that the doctoring of his Speech was not inadvertent, but instead was an intentional component of the BBC's effort to craft as one-sided an impression and narrative against President Trump as possible.

77.    Indeed, by any measure, including the overwhelming ratio of anti-Trump versus pro-Trump commentators in the *Panorama* Documentary, the exceptionally high percentage of time granted to these negative voices in the Documentary versus the positive voices, and the inflammatory content of the negative remarks, all coupled with the BBC's historical unfairness to the President, it is apparent that the BBC fabricated the Documentary to damage President Trump. Doctoring his Speech was consistent with, and part of, the BBC's *modus operandi* of negatively covering President Trump without any pretense of objectivity.

78.    The BBC's aggressively anti-Trump stance is reflected straightaway in the opening scene of the *Panorama* Documentary's introduction, which runs for almost three minutes and begins with noted anti-Trump commentator Rick Wilson—who has written two books criticizing President Trump, *Everything Trump Touches Dies* (2018) and *Running Against the Devil: A Plot to Save America From Trump-and Democrats from Themselves* (2020), and has called the President "the devil" and a "cult leader"—declaring, to the backdrop of ominous cinematic music reaching a dramatic crescendo: "I'm the leading anthropologist of Donald Trump in the, in the

22

world, probably, I've thought about him and studied him more than probably anybody else, and I hate him. I hate what he is, and what he does."

79.     Seconds later, Wilson states of President Trump: "When you let the monster escape, it will come back, it is a rule of every damn horror movie in history."

80.     Former Clinton Secretary of Labor and current Berkeley Professor Robert Reich, another vocal critic of President Trump, then offers: "Once you've unleashed this anger, this hate, into the blood of America, well, it's very very difficult to stop it."

81.     A greater majority of the verbal commentary in the *Panorama* Documentary features negative assertions about President Trump by twelve individuals known to be hostile to the President, all of whom are presented as having some form of relevant expertise and authority about the subject matter presented. Moreover, an overwhelming majority of the overall Documentary, including the non-interview segments depicting political and historical events from recent years, presents President Trump in a negative light.

82.     Further demonstrating the BBC's malice and intent to interfere with the 2024 Presidential Election, the *Panorama* Documentary, after lingering at length on the events of January 6, 2021, cuts to a clip from the Democratic National Convention on August 22, 2024, showing Kamala Harris taking the stage with a news anchor breathlessly exclaiming in the background: "And here she is, Kamala Harris. It's hard to describe just how electric the mood is here right now."

83.     Toward the end of the *Panorama* Documentary, Reich shockingly compares President Trump to "Adolf Hitler," which rises to defamation itself, while Democrat Congressman Jared Huffman refers to the President as a "cult leader," also a defamatory statement.

23

84. Others then join Reich in delivering hyperbolic warnings about President Trump and the supposedly catastrophic consequences that would ensue if President Trump were to emerge victorious.

85. "The degree to which his pessimism and darkness has infected half this country terrifies me," adds Wilson. "There is no ideology in the Republican party except pain, they want vengeance," he continues.

86. Berkeley Political Science Professor Steven Fish asserts "There's a reason why Xi Jinping and Vladimir Putin and Kim Jong Un and all these despots all over the world are rooting so hard for Trump because what Trump does is he seems to discredit democracy in the land of its stronghold, in the strongest democracy in the world, Trump seems to be proof that democracy doesn't work."

87. Boston College History Professor Heather Cox Richardson offers, "this is the time when we either choose authoritarianism or democracy, and if we choose authoritarianism, there will be no turning back, so I think we better get this one right."

88. Reich delivers a closing remark to punctuate the BBC's parade of bias: "Wish us luck, by us, I mean the United States."

   v.   *Prominent Voices Condemn the BBC and Confirm the BBC's Longstanding Pattern of Actual Malice Against President Trump*

89. The BBC is so institutionally biased against President Trump and so devoid of self-awareness that, in response to the above letter from President Trump's counsel (**Exhibit A**), it

24

published a baseless and meritless article questioning the merits of any lawsuit that the President might bring against the BBC.[42]

90.     No less an authority than the United Kingdom's former Prime Minister, Liz Truss, discussed this bias, the need to hold the BBC accountable, and the BBC's pattern of actual malice.[43]

91.     Remarked Truss: "[The BBC] is a huge problem. They've lied, they've cheated, they've fiddled with footage, especially in the case of President Trump, but also covering up what's happening in Britain whether it's mass migration, whether it's our economic problems, they are always biased towards the left . . . ." She was also asked whether the BBC's tepid apology was sufficient, and responded: "No I don't, because they keep doing it again and again. They have painted a completely false picture of President Trump in Britain over a number of years, they've done the same thing about conservatives in our country . . . ." Lamenting the BBC's lost status as a "paragon" of journalism, she remarked that the BBC's "fake news" has caused immense harm to the public for a long time.[44]

92.     Caroline Dinenage, head of the House of Commons' Culture, Media, and Sport Committee said that Members of Parliament need assurances that the BBC was "taking decisive steps to uphold the corporation's reputation for integrity and public trust." She further remarked:

---

[42]     Kayla Epstein and Madeline Halpert, *Trump vs. the BBC: What hurdles might the President's legal argument face?*, BBC (Nov. 11, 2025), https://www.bbc.com/news/articles/c709y1yx1r0o (last visited Dec. 15, 2025).

[43]     *Former UK prime minister calls out BBC, encourages Trump to continue lawsuit*, FOX NEWS (Nov. 15, 2025), https://www.foxnews.com/video/6385140049112 (last visited Dec. 15, 2025).

[44]     *Id.*

"The Corporation must set the benchmark for accurate and fair reporting, especially in a media landscape where it is all too easy to find news presented in a less than impartial way."[45]

93.　Conservative Party leader and Member of Parliament Kemi Badenoch said that the distortion of the Speech by the *Panorama* Documentary was "absolutely shocking," adding: "That is fake news, actually putting different things together to make something look different from what it actually was." She continued: "And I do think heads should roll. Whoever it was who did that should be sacked, that's what Tim Davie should be doing, identifying who put out misinformation, and sacking them." Badenoch added: "The public need to be able to trust our public broadcaster . . . They should not be telling us things that are not true. This is a corporation that needs to hold itself to the highest standards, and that means that when we see people doing the wrong thing, they should be punished, they should be sacked."[46]

94.　Lisa Nandy, Secretary of State for Culture, Media and Sport of the United Kingdom, has similarly expressed concern, stating: "there is a real concern, which I share, that political appointments to the board of the BBC damaged confidence and trust in the BBC's impartiality."[47]

95.　FCC Chairman, Brendan Carr, in a letter addressed to Davie, Paula Kerger, (President and CEO of PBS), and Katherine Maher (CEO of NPR), strongly stated:

> As you know, the BBC was recently caught intentionally distorting a speech that President Trump gave in January of 2021. It did so by splicing together one portion of the speech with an entirely separate portion of the speech that came 54 minutes later. In doing so, the BBC program depicts President Trump voicing a sentence

---

[45]　　*BBC has questions to answer over edited Trump speech, MPs say*, BBC (Nov. 4, 2025), https://www.bbc.com/news/articles/ckgzkyk7knzo.amp (last visited Dec. 15, 2025).

[46]　　*Id*.

[47]　　*'Real Concern' About Political Appointees on BBC Board, Nandy Says*, BBC (Nov. 14, 2025), https://www.bbc.com/news/articles/cdeg0ngnj0yo (last visited Dec. 15, 2025).

26

that, in fact, he never uttered. That would appear to meet the very definition of publishing a materially false and damaging statement.[48]

96.     Carr continued, highlighting the findings of the Memorandum:

Indeed, there has now been widespread condemnation of the BBC's decision. A former independent external advisor to the BBC's Editorial Guidelines and Standards Committee, Michael Prescott, told the BBC that its decision "created the impression that Trump said something he did not and, in doing so, materially misled viewers." Likewise the Prescott Report states that the BBC program was "neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance.' In sum, it was a 'distortion of the day's events," the Prescott Report continued.[49]

### *Damages*

97.     Since its publication, the *Panorama* Documentary has gained substantial traction and republication across various media in the United States and elsewhere globally.

98.     Defendants used their false and defamatory publications to maliciously disparage and damage President Trump and impugn his reputation.

99.     Specific, extensive economic harms resulted from these defamatory statements. Defendants timed the publication of the *Panorama* Documentary to be close in time to the 2024 Presidential Election, releasing it only one week before the Election.

100.     The value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal

---

[48]     *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at BCC* (Nov. 19, 2025), https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025), https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/ (last visited Dec. 11, 2025).

[49]     *Id.*

27

reputation inflicted by these Defendants, and their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist, continue into the present, thereby causing massive economic damage to his brand value and significant damage and injury to his future financial prospects, in addition to continuing to harm his reputation as President of the United States of America.

101. President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

102. Exacerbating the damages, Defendants, at and prior to the time of their doctoring of the Speech, knowingly made their false, deceptive, malicious, and defamatory depiction of President Trump in bad faith, motivated by malice and ill-will against President Trump without any regard for the truth, and contrary to information Defendants possessed that showed their depiction to be false

103. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

## CLAIMS FOR RELIEF

## COUNT I – DEFAMATION *PER SE*

104. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

105. The following false, deceptive, malicious, and defamatory statements and depictions of and about President Trump, were, intentionally, with actual malice, and without privilege, published in the *Panorama* Documentary to millions of people in the State of Florida

28

and in this District, and elsewhere, by all Defendants, and were defamatory and false, and injured President Trump in his profession, occupation, and trade, thus constituting defamation *per se*:

(a) The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary made it seem that he stated: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

(b) This fabricated depiction of President Trump during the Speech was false and defamatory given that President Trump's actual and full remarks during the Speech were (i) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (ii) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021, 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

(c) Moreover, to further the BBC's intended, false, malicious, and defamatory message and impression that President Trump fomented violence, the BBC intentionally omitted President Trump stating, only one minute after urging supporters to cheer

29

on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

106.    Defendants possessed information and had access to information which showed that their statements about, and representation and depiction of President Trump were false.

107.    Defendants had no factual basis for this false depiction of President Trump.

108.    Defendants' deceptive and defamatory distortion, doctoring, manipulation, and splicing damaged President Trump in his occupation, damaged his professional reputation, and portrayed him as engaging in supposed calls for rioting and violence that he never actually made.

109.    The *Panorama* Documentary was not a continuation of a prior broadcast. Instead, it was the result of a separate and distinct decision by Defendants to maliciously disseminate false statements about President Trump in a new medium.

110.    As pled *supra*, Defendants knew that their portrayal of the Speech in the *Panorama* Documentary was false, malicious, and defamatory.

111.    Defendants' actual malice in publishing the *Panorama* Documentary is evidenced by their intentional splicing and distorting two entirely separate sentences made by President Trump during the Speech nearly 55 minutes apart, while omitting his statement calling for peace made less than one minute after his first statement urging supports to cheer on their senators and congressmen at the Capitol.

112.    As a proximate result of the maliciously false and defamatory *per se* publication of a statement and depiction to third parties by Defendants, President Trump has been damaged.

30

113.     Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards President Trump, he seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, and such other relief as this Court may deem just and proper.

<u>**COUNT II – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**</u>

114.     Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

115.     In addition, this action is brought for violation of the Florida Deceptive and Unfair Trade Practices Act as codified in Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

116.     Defendants are engaged in the conduct of trade and commerce in the State of Florida.

117.     Defendants have violated the FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia,* intentionally and maliciously seeking to completely mislead their viewers by splicing together two separate parts of President Trump's Speech, while omitting other critical parts of the Speech in such a manner as to intentionally, falsely, maliciously, and defamatorily change the meaning of what President Trump said.

118.     As a direct, proximate, and foreseeable result of Defendants' violation of FDUTPA, President Trump has suffered and continues to suffer substantial damages.

119.    Pursuant to Fla. Stat. §501.2105, President Trump is entitled to recover his attorneys' fees and costs from Defendants.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, President Trump, hereby demands a jury trial as to all issues so triable.

Dated:  December 15, 2025

Respectfully submitted,

*/s/Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel:  305-614-4071
Fax:  305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

*/s/Edward Andrew Paltzik*
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice application forthcoming*)

/s/Daniel Zachary Epstein
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*



**Alejandro Brito**

Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

November 9, 2025

<u>**Via Email**</u>

Mr. Samir Shah
Chairman
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**samir.shah@bbc.co.uk**

Ms. Sarah Jones
General Counsel
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**sarah.jones@bbc.co.uk**

> **Re:** **Demand to Retract False And Defamatory Statements**
> **About The President of the United States of America**

Dear All:

This law firm serves as litigation counsel for President Donald J. Trump (hereinafter referred to as "President Trump"). Please direct all future correspondence relating to this matter to my attention. This correspondence serves as a demand under Florida Statute § 770.01[1] that you immediately retract the false, defamatory, disparaging, and inflammatory statements made about President Trump, which were published in a *Panorama* documentary that was fabricated and aired by the BBC. Failure to comply will leave President Trump with no choice but to pursue any and all legal rights and remedies available to recover damages for the overwhelming financial and reputational harm that the BBC has caused him to suffer, with all rights and remedies being expressly reserved by President Trump.

In the *Panorama* documentary, titled "Trump: A Second Chance,"[2] which was first broadcast on October 28, 2024—a week before the 2024 United States presidential election—the BBC intentionally sought to completely mislead its viewers by splicing together three separate

---

[1] President Trump does not agree or admit that only Florida law applies to any claims he might have in connection with or arising out of the Article and expressly reserves all rights concerning applicable law.

[2] *See* https://www.bbc.co.uk/programmes/m0024h6r. According to the BBC's website, the defamatory documentary was broadcast three times on October 28, 2024, and a fourth time on November 2, 2024.

1

Alejandro Brito
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

parts of President Trump's speech to supporters on January 6, 2021. The documentary showed President Trump telling supporters: "We're gonna walk down to the Capitol and I'll be there with you and we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore." This fabricated depiction of President Trump was false and defamatory given that President Trump's actual and full remarks were: "We're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down any one of you but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women." Moreover, the BBC edited out President Trump saying, "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Thus, as set forth in an internal whistleblower memorandum, the BBC's segment maliciously made it appear that President Trump "[said] things [he] never actually said," by editing together footage from the start of the speech with a separate quote early an hour later.

Due to their salacious nature, the fabricated statements that were aired by the BBC have been widely disseminated throughout various digital mediums, which have reached tens of millions of people worldwide. Consequently, the BBC has caused President Trump to suffer overwhelming financial and reputational harm.

### A. Applicable law.

Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Statements are defamatory if "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *See Zambrano v. Devanesan*, 484 So. 2d 603, 607 (Fla. 4th DCA 1986).

Even if the BBC attempts to whitewash its conduct as simply an expression of its opinions, Florida law makes clear that such a defense will not absolve its liability. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. *Simply couching such statements in terms of opinion does not dispel these implications*.") (emphasis added); *see also Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983) ("*[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable*.") (emphasis added).

2

**Alejandro Brito**

Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

Consequently, the BBC lacks any viable defense to the overwhelming reputational and financial harm it has caused President Trump to suffer.

## B. Demand.

The above-referenced false, defamatory, malicious, disparaging, and inflammatory statements were published to deliberately denigrate President Trump. The timing of the fabricated documentary is evident. The BBC's reckless disregard for the truth underscores the actual malice behind the decision to publish the wrongful content, given the plain falsity of the statements. Accordingly, President Trump hereby demands that you: (1) immediately issue a full and fair retraction of the documentary and any and all other false, defamatory, disparaging, misleading, and inflammatory statements about President Trump in as conspicuous a manner as they were originally published; (2) immediately issue an apology for the false, defamatory, disparaging, misleading, and inflammatory statements about President Trump; and (3) appropriately compensate President Trump for the harm caused.

Moreover, please allow this letter to serve as notice to you, to your affiliated entities, subsidiaries, to all of their employees, and any other person acting on behalf of or in concert with the BBC, to preserve any and all evidence related in any way to the above-mentioned malicious, false, and defamatory statements the BBC published, and any other statements that the BBC has published regarding President Trump. By way of this letter, the BBC is hereby directed not to destroy, conceal, or alter any paper or electronic files, physical evidence, and/or other data relating in any way, no matter how remote, to your false claims regarding President Trump, and/or the circumstances leading to their dissemination, including, but not limited to: (1) all communications between you and any third party in any way related to your wrongful claims regarding President Trump; (2) all sources for your false claims regarding President Trump; (3) any and all documents and data referring to, reflecting, or relating to communications between you and any such third-parties or sources regarding your false claims regarding President Trump; and (4) any and all documents in any way related to your false claims regarding President Trump. This includes any information alleged to be protected by Florida Statute § 90.5015. *Monarch Air Group, LLC v. Journalism Dev. Network, Inc.,* No. 23-CV-61256, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (interpreting Fla. Stat. § 90.5015 and explaining that the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings.") (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)).

I understand that many records and files are maintained electronically. However, this letter specifically requests that all paper and hard copy originals be maintained and preserved in their original format. By the same token, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists and has been preserved, please preserve and maintain all electronically stored documents in their original native format, including all metadata. This preservation demand specifically encompasses any and all electronic documents,

3



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

including but not limited to, all word-processed files, emails, spreadsheets, all databases, log files, and any other electronically stored and/or generated documents or files.

If the BBC does not comply with the above by **November 14, 2025, at 5:00 p.m. EST**, President Trump will be left with no alternative but to enforce his legal and equitable rights, all of which are expressly reserved and are not waived, including by filing legal action for no less than $1,000,000,000 (One Billion Dollars) in damages. The BBC is on notice.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

4

# Ballard Spahr
### LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

November 13, 2025

*Via Email (abrito@britopllc.com) & Federal Express*

Alejandro Brito
Brito PLLC
2121 Ponce de Leon
Suite 650
Coral Gables, FL 33134

    Re: November 9, 2025 Letter regarding BBC *Panorama* Documentary

Dear Mr. Brito:

    Our office represents the British Broadcasting Corporation ("BBC"). We write regarding your letter to the BBC dated November 9, 2025, which you sent on behalf of President Donald J. Trump. You wrote with respect to the broadcast of the BBC's *Panorama* documentary titled "Trump: A Second Chance" ("the Program") on October 28 and November 2, 2024, depicting his supporters during President Trump's campaign for a second term in office. Please direct all further communication about your letter to my attention.

    Your letter, citing Florida law, alleges that in a short clip of excerpts of his speech on January 6, 2021, the BBC "intentionally sought to completely mislead its viewers." President Trump alleges that the Program constituted defamation. The President threatens to bring a $1 billion defamation suit against the BBC.

    Our client had no intention of misleading anyone. Indeed, the BBC has publicly expressed its contrition in statements to the Chair of Parliament's Culture, Media, and Sport Committee, on its website, and in the media. We also enclose with this letter a copy of the BBC's personal apology to President Trump, sent by email today to White House Chief of Staff Susie Wiles.

    Additionally, the BBC has posted or shortly will post the following retraction:[1]

---

[1] https://www.bbc.co.uk/programmes/m0024h6r and
    https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/

Alejandro Brito
November 13, 2025
Page 2

> *This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.*
>
> *During that sequence, we showed excerpts taken from different parts of the speech.*
>
> *However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and that this gave the mistaken impression that President Trump had made a direct call for violent action.*
>
> *The BBC would like to apologise to President Trump for that error of judgement.*
>
> *This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.*

While the BBC sincerely regrets the manner in which the video clip was edited, for the following reasons, we strongly disagree that President Trump would have a basis for a viable defamation claim.

**First**, President Trump has made no allegation that the Program was published in Florida, as he must in order to establish personal jurisdiction over the BBC and to meet the publication requirement for a defamation claim. The BBC did not have contractual rights to, and therefore did not, distribute the Program on U.S. channels. Moreover, the version on its website linked to in your letter was geographically restricted to U.K. viewers. In any event, it ceased to be available even in the U.K. from 12 months after the Program aired. The President therefore has not established that he would have any jurisdictional basis to bring a claim against the BBC in Florida or elsewhere in the United States.[2]

**Second**, President Trump will not be able to prove that the Program caused him any injury, let alone the unspecified "overwhelming reputational and financial harm" he alleges.[3] He won reelection on November 5, 2024, after the Program aired. He carried Florida by a

---

[2] *See, e.g., Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (to be actionable as defamation, "the material . . . must not only be *accessible* in Florida, but also be *accessed* in Florida") (emphasis in original).

[3] *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. Cir. Ct. 2014) (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1997)) (given "negative publicity" from "a litany of news media entities" other than defendant NBC, "the challenged excerpts from and characterization of Zimmerman's statements . . . could not have been the required 'but for' cause of Zimmerman's alleged injuries").

2

Alejandro Brito
November 13, 2025
Page 3

commanding 13-point margin, improving over his 2020 and 2016 performances in the state.[4]

Moreover, when the Program aired, the President had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee Report found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[5] Given the extensive allegations prior to the release of the Program regarding his January 6 speech, in criminal and civil cases and among the press and public, the Program could not have caused any incremental harm.

**Third**, President Trump has no basis to allege that the BBC published the Program with actual malice – that is, knowing the Program was false or while entertaining serious doubts as to its truth – as he must.[6] Rather, as the BBC Chair has explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."[7]

Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements. In the course of their prosecutions, numbers of people arrested at the Capitol on January 6 told the courts that they interpreted President Trump's remarks as a call to

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g., Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

[6] *See, e.g., N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020). Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971).

[7] Letter from BBC Chair Samir Shah to Dame Caroline Dinenage MP (Nov. 10, 2025), https://committees.parliament.uk/publications/50118/documents/270340/default.

3

Alejandro Brito
November 13, 2025
Page 4

action.[8]

Further, the BBC has taken prompt corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," issuing a retraction, and confirming that the Program was not scheduled to be re-broadcast and will not be rebroadcast in that form on any BBC platforms. This further negates any suggestion of actual malice.[9]

**Fourth**, the brief clip, which shows about 15 seconds of President Trump's speech on January 6, is part of an hour-long program containing extensive coverage of his supporters praising President Trump, and presenting balanced coverage of his path to reelection. Courts consider challenged statements in the context of the full publication in which they were made. Accordingly, President Trump cannot create an actionable statement or implication by citing a singular clip but ignoring the remaining, overall context of the Program.[10]

**Fifth**, the Program contains protected expressions of opinion, including many from President Trump's ardent supporters. It depicts hotly contested events related to Presidential elections, including the events of January 6, 2021, which have been the subject of extensive controversy and litigation. In this context, even if the Program is reasonably interpreted to report that President Trump encouraged the crowd to march to the Capitol on January 6, that is an

---

[8] *See, e.g.*, Ryan J. Reilly, *Jan. 6 Rioter Who Said He Wanted Trump's 'Approval' Found Guilty by Jury*, CNBC (Apr. 14, 2022), https://www.cnbc.com/2022/04/14/jan-6-rioter-who-said-he-wanted-trumps-approval-found-guilty-by-jury.html ("A Donald Trump supporter who told jurors that he was 'following presidential orders' when he stormed the U.S. Capitol on Jan. 6 was found guilty on Thursday after he admitted that he stole a coat rack and a bottle of liquor from the building."); Shawna Chen, *Judge: Jan. 6 Rioter Who Broke into Capitol Followed "Trump's Instructions,"* Axios (Jan. 17, 2023), https://www.axios.com/2023/01/18/jan6-capitol-riot-trump-instructions ("A federal judge said Tuesday that a California woman who breached the U.S. Capitol during the Jan. 6 insurrection 'followed then-President Trump's instructions' in breaking the law."); Kyle Cheney, *Jan. 6 Defendant Wants Jurors to Blame Trump, Not Him, for Decision to Breach Capitol*, Politico (Apr. 13, 2022), https://www.politico.com/news/2022/04/13/january-6-defendant-donald-trump-00025019 ("Though dozens of defendants have argued in court filings that they believed Trump had authorized the assault on the Capitol, judges have largely rejected that contention and said rioters should be held to account for their own actions. But whether a jury sees that argument differently will be an important test that could reverberate across hundreds of other cases.").

[9] *See, e.g.*, *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

[10] *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020); *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

4

Alejandro Brito
November 13, 2025
Page 5

opinion on a matter of public concern, heavily protected under defamation law in the United States.[11]

For these reasons, the BBC declines President Trump's claim that the Program constituted defamation and his request for compensation.

We sincerely hope that the BBC's public statements of contrition, and the direct apology that we have given to the President, will suffice to put this matter to rest.

The BBC reserves all further rights and remedies, including those available under Fla. Stats. § 57.105 and § 768.295(2)(a).

Sincerely,

BALLARD SPAHR LLP

By _Charles D. Tobin_

Charles D. Tobin

Enclosure

---

[11] *See, e.g., Trump v. CNN*, 684 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (dismissing defamation case because network's description of President Trump's election challenges as the "Big Lie" was non-actionable opinion, not a statement of fact).

5



British Broadcasting Corporation

Broadcasting House, London  W1A 1AA

From the Chairman

The President
The White House
1600 Pennsylvania Avenue NW
Washington
D.C. 20500
United States of America

13 November 2025

Dear Mr President,

As the Chair of the BBC I wanted to write to you personally. At the same time the BBC's lawyers have today responded to your legal team. The BBC's overall legal position is as set out in that letter. I should make clear at the outset that what follows is my view as the Chair of the BBC. The organisation is, by Royal Charter, independent of His Majesty's Government and nothing I write should imply approval or disapproval by the United Kingdom Government.

Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement. As it was your speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

- 2 -

The documentary followed a number of your supporters and campaigners, who told the BBC why they wanted you to be re-elected in the 2024 US Presidential Election. The BBC's intention was to reflect their contributions to the documentary fairly and accurately, including their support for you and your Presidency.

Whilst the documentary was not scheduled to be rebroadcast, the BBC has also made public today that it will not be broadcast again on any BBC platforms in a form that includes the misleading sequence.

That the BBC produces content of the highest editorial quality is of paramount importance to me. As Chair, I take responsibility for personally ensuring that the BBC retains the trust and confidence of our audiences.

I would be happy to discuss this matter, should this be of interest to you.

Yours sincerely,

**Samir Shah**

**BBC Chair**

# Ballard Spahr
### LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 15, 2026

*Via Certified Mail*

Jessica Bowron
Comptroller and Acting Director
U.S. National Park Service
U.S. Department of the Interior
1849 C Street NW
Washington, DC 20240

W. Noah Hoggatt
Deputy Solicitor, Parks and Wildlife
U.S. Department of the Interior
Immediate Office of the Solicitor
1849 C Street NW
Washington, DC 20240

Re:  *Touhy* Request for the Production of Documents in *Trump v. BBC*, Case No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Ms. Bowron and Mr. Hoggatt:

This law firm represents defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited in the above-referenced civil action pending in the United States District Court for the Southern District of Florida (the "Action").  We submit this request for information, identified below, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and 43 C.F.R. § 2.280, *et seq*.

### BACKGROUND

On December 15, 2025, Plaintiff President Donald J. Trump filed a two-count lawsuit alleging defamation and violations of the Florida Deceptive and Unfair Trade Practices Act against Defendants, arising from the documentary titled "*Trump: A Second Chance?*" ("the Documentary").  For your reference, we have attached a copy of the complaint to this letter as Exhibit 1.  The Documentary explored for the BBC's U.K. audience the President's continued success with his loyal American voters, following some of his most ardent supporters, known as the "Front Row Joes," and speaking with experts in

Jessica Bowron & W. Noah Hoggatt
May 15, 2026
Page 2

the run up to the November 2024 U.S. presidential election. Plaintiff alleges that the Documentary defamed him in its depiction of his speech on January 6, 2021 ("the Speech"), which he alleges falsely depicted him as inciting violence at the Capitol that day.

The Action puts directly into issue the factual circumstances of the violence at the Capitol building on January 6, 2021, including whether there were plans of violence ahead of time, the communications about any planned violence, and whether individuals understood the Stop the Steal Rally or Trump's communications about January 6, 2021 as a call to violence.  Accordingly, the requested documents and information identified below are paramount to the case that Plaintiff has brought against Defendants.

The parties in the Action are currently going through the discovery process with a pending motion to dismiss filed.  At the moment, Plaintiff has not provided any such relevant documents or information himself in response to Defendants' written discovery requests propounded on him.  Furthermore, the information possessed by the National Park Service ("NPS") and U.S. Park Police about the intelligence it gathered regarding the events of January 6, 2021 are in the agency's possession, and accordingly would only be obtainable through this Request.

Given that Plaintiff's allegations have placed these documents in the National Park Service and U.S. Park Police's possession at the heart of the Action, and that Defendants need these documents to adequately defend themselves in court, the need for these documents outweighs any confidentiality of the information and any burden on the National Park Service and U.S. Park Police to produce these records.  As detailed below, the requested records are confined by date and subject matter to limit the intensiveness of any search for responsive documents.  Additionally, there is a protective order in place that will limit the exposure of any confidential items beyond the parties involved.

No previous decisions, orders, or pending motions in the Action bear upon the relevance of the requested records or testimony at this point.  Per 43 C.F.R. § 2.284(c), as President of the United States, Plaintiff in his official capacity leads the executive departments, including the Department of the Interior and accordingly could be said to supervise the Department of Interior's mission and programs—however, this Action was brought by Plaintiff in his personal capacity. Per 43 C.F.R. § 2.282(a)(1), Defendants date that they will submit a check for costs to the Department of the Interior in accordance with 43 C.F.R. § 2.285, if their Touhy request is granted.

## DEFENDANTS' TOUHY REQUEST SHOULD BE GRANTED

Under 43 C.F.R. § 2.288, the National Park Service considers several factors in evaluating a *Touhy* request.  The following factors favor providing the requested documents to Defendants:

Jessica Bowron & W. Noah Hoggatt
May 15, 2026
Page 3

- **NPS and U.S. Park Police's ability to conduct official business unimpeded.**  Because the scope of the requested information is limited to a confined period of days about a single subject matter, and because search terms can appropriately confine the NPS or the U.S. Park Police's search for the requested records, Defendants do not expect that the request is resource-heavy and will not impede either the NPS or the U.S. Park Police's ability to conduct official business.

- **NPS and U.S. Park Police's ability to maintain impartiality in conducting business.**  Nothing about Defendants' request would threaten the impartiality of the NPS or the U.S. Park Police, as the relevant documents are equally important to the Plaintiff for his affirmative case and the Defendants for their defense.  Defendants' request is for the purpose of investigating the allegations that Plaintiff has made, which put into dispute communications with him and his knowledge surrounding January 6, 2021.  Accordingly, the documents that are relevant to this litigation are essential to both sides of this case.

- **NPS and U.S. Park Police's ability to minimize the possibility of involvement in issues unrelated to their mission or programs.**  Because Defendants request the production of a narrow set of documents, and do not expect to submit further requests to either the NPS or the U.S. Park Police, Defendants expect that the NPS and the U.S. Park Police's involvement in this matter will be limited to this request and minimal.

- **NPS and U.S. Park Police's ability to avoid spending public employee time on private purposes.**  Because the scope of the requested information is limited to a confined period of days about a single subject matter, and because search terms can appropriately confine the NPS or the U.S. Park Police's search for the requested records, Defendants do not expect that the request is resource-heavy for employees.  Additionally, while the Action concerns two private parties, because Plaintiff is the President of the United States and because the Action implicates the storming of the Capitol building of January 6, 2021—a historic, unprecedented event that played out on the public stage for the world to see.  The resolution of the factual disputes in this Action, accordingly, holds import beyond the two private parties, and serves a public interest as well.

- **NPS and U.S. Park Police's ability to avoid the negative cumulative effect of granting similar requests.**  Defendants expect that there are not, and will not be, many similar requests because of the unique dynamics leading to this

Jessica Bowron & W. Noah Hoggatt
May 15, 2026
Page 4

Action—namely a sitting President putting before a court questions about the factual circumstances of an event that NPS and the U.S. Park Police monitored and investigated.

- **NPS and U.S. Park Police's ability to ensure that privileged or protected matters remain confidential.** Defendants do not believe that their requests would involve any privileged materials, such as trade secrets, commercial or financial information, attorney-client communications, attorney work product, documents that would fall under executive privilege, or documents that would impede any ongoing law enforcement investigations. Additionally, a protective order is in place that would limit the exposure of any confidential items beyond the parties involved.

- **Whether the request is unduly burdensome.** For the reasons stated above, Defendants do not believe the request is overly burdensome because it is narrowly confined.

## LIST OF REQUESTED DOCUMENTS

In the interest of transparency and aiding the National Park Service and U.S. Park Police's evaluation of this request, and as requested in 43 C.F.R. § 2.284, below is a description of documents Defendants seek, along with a description of how the information sought is relevant to the issues in the Action and why the information sought is unavailable by any other means.

- **Documents and communications sent by the National Park Service regarding planned demonstrations, potential organized violence in the Washington, D.C. area on January 6, 2021:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally. The United States Senate Committee on Homeland Security and Governmental Affairs staff report, "Planned in Plain Sight: A Review of the Intelligence Failures in Advance of January 6th, 2021" identifies that the National Park Service possessed and sent such information.

Jessica Bowron & W. Noah Hoggatt
May 15, 2026
Page 5

- **Documents and communications sent by the U.S. Park Police regarding planned demonstrations, potential organized violence in the Washington, D.C. area on January 6, 2021:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally. The United States Senate Committee on Homeland Security and Governmental Affairs staff report, "Planned in Plain Sight: A Review of the Intelligence Failures in Advance of January 6th, 2021" identifies that the U.S. Park Police possessed and sent such information.

Defendants seek this information in good faith and reasonably believe that the documents identified above are not available through other discovery or sources available in this Action.

We respectfully ask that you act on this *Touhy* request as promptly as possible. Thank you in advance for your attention to this matter.

Sincerely,

BALLARD SPAHR LLP

Charles D. Tobin

Cc: Counsel for Plaintiff

Encl.: Subpoena, Exhibit 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

| | | |
|---|---|---|
| _____ *Plaintiff* | ) ) | |
| v. | ) ) | Civil Action No. |
| _____ *Defendant* | ) ) ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ *Signature of Clerk or Deputy Clerk* | | _____ *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-25894-RKA |
| ) | |
| BRITISH BROADCASTING CORP., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ATTACHMENT A TO SUBPOENA TO THE NATIONAL PARK SERVICE
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4. "Communications" means any manner of receiving or transmitting information, opinions or thoughts, whether orally, in writing, electronically, or otherwise. The term

"Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

5.     "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

6.     "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

2

7. "Including" shall be construed as "including but not limited to."

8. "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

9. "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

10. "Washington, D.C. area" means the Washington—Arlington—Alexandria Metropolitan Statistical Area.

11. "You" and "Your" shall refer to the recipient of these requests, and shall include all components under the National Park Service, including the United States Park Police; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

<div align="center"><strong><u>GENERAL INSTRUCTIONS</u></strong></div>

1. In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2. If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

<div align="center">3</div>

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.  If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections) for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

4

(f)  the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests is for Documents created or originating on or after November 3, 2020 to January 6, 2021.

### REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Communications and Documents created or sent by the National Park Service Related to the potential of planned demonstrations, potential organized violence, or protests in the Washington D.C. area on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 2**:  All Communications and Documents created or sent by the U.S. Park Police Related to the potential of planned demonstrations, potential organized violence, or protests in the Washington D.C. area on January 6, 2021.

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BRITISH BROADCASTING CORPORATION a/k/a/ BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, PRESIDENT DONALD J. TRUMP ("President Trump"), by and through his counsel, brings this action against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC (the "BBC"), BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED (collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1. This action concerns a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump, which was published in a BBC *Panorama* documentary, that was fabricated and aired by the Defendants one week before the 2024 Presidential Election in a brazen attempt to interfere in and influence the Election's outcome to President Trump's detriment.

2.      In the BBC *Panorama* documentary titled "Trump: A Second Chance" (the "*Panorama* Documentary," or the "Documentary"),[1] which was first broadcast on October 28, 2024, the BBC intentionally and maliciously sought to fully mislead its viewers around the world by splicing together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech").[2] The *Panorama* Documentary deliberately omitted another critical part of the Speech in such a manner as to intentionally misrepresent the meaning of what President Trump said.

3.      The *Panorama* Documentary falsely depicted President Trump telling supporters: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary). President Trump never uttered this sequence of words.

4.      This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and then, much later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight*

---

[1]      First published by Defendants on October 28, 2024 with a runtime of 57:54. *See* "Trump: A Second Chance?", BBC (Oct. 28, 2024) (https://www.bbc.co.uk/programmes/m0024h6r) (last visited Dec. 15, 2025)

[2]      The Speech was 70:53 in length.

*like hell, and if you don't fight like hell, you're not going to have a country anymore*," (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

5. Moreover, the BBC purposefully omitted President Trump stating, less than one minute after urging supporters to cheer for their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

6. As set forth in a damning and recently leaked BBC internal whistleblower document, the BBC intentionally used the *Panorama* Documentary to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting, and that he "said something he did not,"[3] by splicing together footage from the start of the Speech with a separate quote that he said nearly 55 minutes later, while omitting his statement calling for peace, made less than one minute after his first statement urging supports to cheer their senators and congressmen at the Capitol. Such distortion of the President's speech by the BBC "materially misled viewers."[4]

7. Moreover, concerns about the *Panorama* Documentary were raised internally before its dissemination, but the BBC ignored those concerns and did not take corrective action.

8. This instance of doctoring—in the form of distortion of meaning and splicing of entirely unrelated word sequences—is part of the BBC's longstanding pattern of manipulating

---

[3] Gordon Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*, THE TELEGRAPH (Nov. 6, 2025), https://www.telegraph.co.uk/news/2025/11/06/read-devastating-internal-bbc-memo-in-full/ (last visited Dec. 15, 2025).

[4] *Id*.

President Trump's speeches and presenting content in a misleading manner in order to defame him, including fabricating calls for violence that he never made. *See e.g.* ¶¶ 55-87, *infra*.

9. The BBC, faced with overwhelming and justifiable outrage on both sides of the Atlantic, has publicly admitted its staggering breach of journalistic ethics, and apologized, but has made no showing of actual remorse for its wrongdoing nor meaningful institutional changes to prevent future journalistic abuses.

10. Accordingly, President Trump brings this action for compensatory and punitive damages for the extensive reputational harm inflicted upon him by the Defendants.

## **PARTIES**

11. Plaintiff, President Trump, is a citizen of the United States and a citizen of the State of Florida. He served as the 45th President of the United States and currently serves as the 47th President of the United States.

12. Defendant, the BBC, is a British corporation established by royal charter and operating under an agreement with the United Kingdom's Secretary of State for Culture, Media, and Sport, with its principal place of business in London, England. The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films Ltd., and its international distribution partner, Blue Ant Media Corporation.

13. Defendant, BBC Studios Distribution Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

14. Defendant, BBC Studios Productions Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are completely diverse, as President Trump is a citizen of Florida, while all Defendants are citizens of the United Kingdom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     The Court possesses personal jurisdiction over Defendants pursuant to Florida Statute 48.193(2) because Defendants, during the operative period alleged in this Complaint, engaged in substantial and not isolated business activities in Florida, and more specifically in this District. Defendant BBC publishes online news reports, editorials, and other media content at https://www.bbc.com, which are regularly accessed by individuals in Florida.

17.     The BBC operates in the United States not as an abstract concept but in a constant manner; the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location.

18.     The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web

5

pages entitled "Florida – BBC News"[5] and "Florida – BBC Weather,"[6] among others. The BBC also offers web pages specific to cities in Florida.[7]

19.     Additionally, the BBC offers subscriptions to individuals in Florida and as a result, has thousands of subscribers in Florida. Any individual in the United States, including Florida, can pay for a subscription to the BBC's content and services.[8]

20.     Individuals in the United States, including Florida, also have another option for consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform.[9] *BritBox* is available in the United States, including in Florida, and has thousands of subscribers in Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount of the BBC's original content—including *Panorama*.

21.     Accordingly, BBC has engaged, and continues to engage in, substantial and not isolated activity in Florida.

---

[5]     *Florida – BBC News*, BBC, https://www.bbc.com/news/topics/c77jz3mdq1jt (last visited Dec. 15, 2025).

[6]     *Florida – BBC Weather*, BBC, https://www.bbc.com/weather/3442585 (last visited Dec. 15, 2025).

[7]     *See, e.g., Miami – BBC News*, BBC, https://www.bbc.com/news/topics/cp7dde75nmlt (last visited Dec. 15, 2025).

[8]     *Get even more from a BBC subscription*, BBC, https://www.bbc.com/subscribe (last visited Dec. 15, 2025).

[9]     *BritBox by BBC*, https://www.britbox.com/us/?gclsrc=aw.ds&&utm_source=google&utm_medium=paid-search&utm_campaign=17444044535-137684208899&utm_content=602709820305&utm_term=g&gad_source=1&gad_campaignid=17444044535&gbraid=0AAAAADMxMXrfBmo_s56m_ZA2aFpeyy6C_&gclid=CjwKCAiA0eTJBhBaEiwA-Pa-hbSItFwaYwfNGsO5WR1trkY2tlU0j8XCZ76_KY4_xRzkIl0Sr6pPBxoCTrkQAvD_BwE (last visited Dec. 15, 2025).

22.     In addition, this Court possesses personal jurisdiction over Defendants pursuant to: (a) Florida Statute §48.193(1)(a)(1), because Defendants operate, conduct, engage in, or carry on a business in Florida or have an office or agency in Florida, (b) Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act in Florida (as stated herein), and (c) Florida Statute §48.193(1)(a)(6) because Defendants caused injury to President Trump within Florida arising out of an act or omission committed by Defendants in Florida, while at or about the time of the injury, products and services provided by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

23.     The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie ("Davie") stated in his recent resignation letter: "Despite a hugely competitive market, I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*."[10]

24.     The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC.

25.     In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer.

---

[10] *Davie and Turness resignations in full*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c1k02vr1my2o (last visited Dec. 15, 2025). (Emphasis added).

7

26.     According to *vpnMentor*, a VPN research firm, VPN usage in Florida has skyrocketed since 2024, with a 51% increase in demand on December 19, 2024, and an over 1,000% increase in VPN usage at the beginning of 2025.[11]

27.     Florida streamers have opted to use VPNs to increase their "streaming freedom." Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer.[12]

28.     To that end, an article published by *Tom's Guide*, a reputable technology news outlet, revealed that a VPN usage survey showed that approximately 41% of VPN subscribers use the service to stream content, citing BBC iPlayer as an example of what a VPN subscriber could view using a VPN.[13]

29.     The *Panorama* Documentary's publicity, coupled with significant increases in VPN usage in Florida since its debut, establishes the immense likelihood that citizens of Florida accessed the Documentary before the BBC had it removed.

---

[11]     *Floridians Flock to VPNs As Age-Verification Law Takes Effect*, TAMPA FREE PRESS (Jan. 8, 2025) (https://www.tampafp.com/floridians-flock-to-vpns-as-age-verification-law/) (last visited Dec. 15, 2025).

[12]     *Florida VPN Surge: Why VPN Usage Skyrocketed 1,000% in Florida* (2025), TRUSTED TECHSPOT (https://trustedtechspot.com/florida-vpn-surge/) (last visited Dec. 15, 2025).

[13]     *More Than 40% of VPN Subscribers Use Them for Streaming – Here's Why*, TOM'S GUIDE (June 2, 2021) https://www.tomsguide.com/features/more-than-40-of-vpn-subscribers-use-them-for-streaming-heres-why) (last visited Dec. 15, 2025).

30.    Articles like those published by Tom's Guide[14] and PureVPN[15]—giving a summary of the *Panorama* Documentary's plot, telling users how to view the Documentary, and going as far as to provide links to VPNs that allow a user to view BBC iPlayer—make it overwhelmingly certain that Floridians accessed the Documentary using a VPN during the time the Documentary was available.

31.    Further supporting the fact that Floridians accessed the *Panorama* Documentary through a VPN, *The Guardian* reported that research showed that "65 million people from abroad watch the broadcaster's license-fee funded iPlayer service using proxy servers or virtual private networks."[16]

32.    As underscored by the Chairman of the FCC, Brendan Carr, "[t]he BBC has stated that it has a number of partnerships with U.S. broadcasters, including PBS and NPR, to distribute BBC programming here in America."[17]

---

[14]    *How to Watch 'Trump: A Second Chance?'*, TOM'S GUIDE (Oct. 28, 2024) (https://www.tomsguide.com/entertainment/streaming/how-to-watch-trump-a-second-chance-online-from-anywhere) (last visited Dec. 15, 2025).

[15]    *How to Watch 'Trump: A Second Chance in the US'*, PUREVPN https://www.purevpn.com/how-to-watch-trump-a-second-chance-in-the-us (last visited Dec. 15, 2025).

[16]    Paul Revoir, *BBC iPlayer 'Watched By More Than 60 Million People Outside the UK for Free'*, THE GUARDIAN (July 21, 2015) (https://www.theguardian.com/media/2015/jul/21/bbc-iplayer-uk-vpn-proxy-server) (last visited Dec. 15, 2025).

[17]    *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at* BCC (Nov. 19, 2025) (https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed) (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025) (https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/) (last visited Dec. 15, 2025).

33.     The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida.

34.     Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary,[18] including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025.[19]

35.     Blue Ant aggressively advertised its exclusive distribution of the *Panorama* Documentary outside of the United Kingdom, further evidencing the intent of the BBC and its strategic partners to disseminate the Documentary as widely and into as many streams of commerce and channels of distribution as possible, including Florida.[20]

---

[18]     Karolina Kaminska, *Blue Ant Studios to shop BBC's 'President Trump: A Second Chance?' In Cannes*, C21 MEDIA (Oct. 10, 2024), https://www.c21media.net/news/blue-ant-studios-takes-october-films-president-trump-a-second-chance-to-cannes/ (last visited Dec. 15, 2025).

[19]     Nicholas Sokic, *Blue Ant pulls BBC Trump doc from catalogue*, PLAYBACK (Nov. 12, 2025), https://playbackonline.ca/2025/11/12/blue-ant-pulls-controversial-bbc-trump-doc-from-catalogue/ (last visited Dec. 15, 2025) ("Blue Ant rights has confirmed that it has pulled the BBC *Panorama* documentary on U.S. President Donald Trump from its catalogue amid the controversy surrounding the film.").

[20]     '*President Trump: A Second Chance?' Launches at MIPCOM 2024*, BLUE ANT MEDIA CORPORATION (Oct. 10, 2024), https://web.archive.org/web/20250712071622/https://blueantmedia.com/2024/10/president-trump-a-second-chance-launches-at-mipcom-2024/ (last visited Dec. 15, 2025) ("Blue Ant Studios today confirms that the explosive Donald Trump documentary, produced by October Films, has just wrapped production with the working title, President Trump: A Second Chance? Commissioned by BBC's Panorama, and produced by October Films, this hotly anticipated and

10

36. Further, and as explained in greater detail below, the BBC elected to publish the *Panorama* Documentary just one week before the 2024 United States Presidential Election with the express intent of interfering with it and trying to undermine President Trump's odds of winning reelection.

37. Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago, in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary.

38. The BBC explicitly instructed and ordered its producers to travel to Florida and to utilize this forum for the purpose of creating the Documentary and defaming President Trump.

39. The *Panorama* Documentary contains extensive evidence and examples of the BBC's producers gathering original footage specifically for use in the Documentary—not using stock footage—at Mar-a-Lago and nearby in the Palm Beach area on April 4, 2023, as well as on other dates. These examples include, but are not limited to: (a) Between 2023 and 2024, the BBC, or its contractors, filmed (i) a wide angle aerial view of Mar-a-Lago taken from a vantage point in the Lake Worth Lagoon (3:57 into the Documentary), (ii) a wide angle aerial view of Mar-a-Lago from a vantage point just north facing the Atlantic Ocean (4:47), (iii) a wide angle shot of the Mar-a-Lago pool and exterior and added a graphic "Trump Residence, Mar-a-Lago Florida" (5:00); and (b) on April 4, 2023, BBC producers and BBC-contracted crew members filmed (i) supporters of

---

distinctive 1x60 documentary will make its official international debut at MPICOM, where attending buyers will have an exclusive previews.").

President Trump lining the streets as President Trump's motorcade proceeded with President Trump through Palm Beach on the way to Mar-a-Lago (4:03), (ii) Rick Frazier, a supporter of President Trump, in the passenger seat of a vehicle as it followed the motorcade on the approach to Mar-a-Lago (4:09), (iii) The vehicle carrying Frazier as it entered Mar-a-Lago (4:51), (iv) Frazier as he walked in to Mar-a-Lago (5:03), (v) President Trump as he walked in to Mar-a-Lago to deliver a speech (5:11), (vi) Supporters cheering for the President as he prepared to speak inside Mar-a-Lago (5:24), (vii) President Trump as he delivered a speech to supporters inside Mar-a-Lago (5:27), and (viii) Frazier as he interacted with other supporters of President Trump (6:15 and 6:55).

40. The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida.

41. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: President Trump is a citizen of Florida who was defamed by the BBC while in Florida, the BBC filmed the *Panorama* Documentary in significant part in Florida, and the BBC, in concert with its strategic partners including October Films Ltd. and Blue Ant Media Corporation, distributed the Documentary into Florida.

## FACTUAL ALLEGATIONS

### *The BBC's Defamatory and Deceptive Depiction of*
### *President Trump's Speech in the Panorama Documentary*

     *i.*        <u>*The BBC Splices and Distorts President Trump's Speech*</u>

42.      The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary wrongly made it appear that he said: "*We're going to walk down to the Capitol, and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

43.      This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory, given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

44.      Moreover, to further the BBC's intended, false, malicious, and defamatory message that President Trump fomented violence, which he did not, the BBC intentionally omitted President Trump saying, less than one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building*

13

*to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

      ii.      *The BBC's Director General and Head of News Resign in Disgrace, and the BBC, Under Fire, Reluctantly Admits Wrongdoing*

45.      On November 9, 2025, Davie and News CEO Deborah Turness resigned in disgrace over their leading roles in the *Panorama* Documentary.[21]

46.      Also on November 9, 2025, President Trump's counsel emailed a letter to Samir Shah (Chairman of the BBC) and Sarah Jones (General Counsel) entitled "Demand to Retract False and Defamatory Statements About The President of the United States of America" demanding retraction of the BBC's false depiction of President Trump, an apology for the false depiction of President Trump, and monetary compensation. **See Exhibit A**.

47.      By letter dated November 13, 2025, the BBC's counsel indicated that the BBC would apologize to President Trump but, somehow, ignoring the resignations of the BBC's leadership, admitting of wrongdoing, and apology, still attempted to deny intentional wrongdoing and declined to pay damages. **See Exhibit B**.

48.      Enclosed with the letter from counsel was a letter of apology from Chairman Shah, which stated, *inter alia*:

> Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. ***This gave the mistaken impression that you had made a direct call for violent action***. ***That was an editorial error and it should not have happened***. ***I have stated clearly and publicly that the BBC apologises for that error of judgement***. As it was your

---

[21]    Aleks Phillips and Helen Bushby, *BBC director general and News CEO resign over Trump documentary edit*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c3vn25d5dq7o (last visited Dec. 15, 2025) ("It is unprecedented for both the director general and the head of BBC News to resign on the same day."); *see also Davie and Turness resignations in full*, *supra*.

14

speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

*Id.* (emphasis added).

49.     The BBC then published the following apology on its "Corrections and Clarifications" page, which was also included in the November 13 letter:

**Panorama – Trump: A Second Chance?**

**28 October 2024**

This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.

During that sequence, we showed excerpts taken from different parts of the speech.

However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and *that this gave the mistaken impression that President Trump had made a direct call for violent action*.

The BBC would like to apologise to President Trump for that *error of judgment*.

This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.[22]

50.     Notably, the BBC did not broadcast a correction, apology, or retraction during a broadcast in a comparable manner as the *Panorama* Documentary, or with a comparable audience.

### *Substantial Evidence of The BBC's Actual Malice*

51.     Contrary to the BBC's claim that its splicing, manipulation, and distortion of the Speech was an unintentional "editorial error," substantial evidence suggests that this was an intentional and malicious effort to falsely and deceptively portray President Trump as having called for violent action on January 6, 2021.

---

[22]     *Corrections and Clarifications*, BBC (Nov. 13, 2025), https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/ (last visited Dec. 15, 2025) (emphasis added).

15

52.     As an initial matter of common sense, it would have been impossible for BBC's journalists and producers to splice together two distinct parts of the Speech from nearly 55 minutes apart *unless* they were acting intentionally. Such a dramatic distortion could never have occurred by accident. Two distinct parts of a speech from nearly 55 minutes apart do not inadvertently become spliced or linked together without effort, knowledge, and purpose. In parallel, by definition, an "an error of judgment," as admitted to by the BBC, is not inadvertent, it includes an intentional act.

53.     The BBC's actual malice is further compounded by its prior acts that unequivocally demonstrate that the organization has been anything but fair and impartial when it comes to reporting on President Trump. Substantial evidence demonstrates that before the publication of the *Panorama* Documentary, the BBC and its leadership bore President Trump ill will, wanted him to lose the 2024 Presidential Election, and were dishonest in their coverage of him.

54.     The BBC, its journalists, and its producers knew at and prior to the time they published the *Panorama* Documentary that the BBC's depiction of President Trump's Speech was false.

i.      *The Prescott Memorandum*

55.     In the early Summer of 2025, Michael Prescott, a journalist who until June 2025 was an independent adviser to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board "expos[ing] a string of incidents that demonstrate serious bias in the corporation's reporting"; following the leak of the Memorandum, *The Telegraph* published the Memorandum in early November 2025.[23]

---

[23]    Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

56.     Prescott highlighted a litany of disturbing misconduct demonstrating how far the BBC has strayed from accepted standards of journalistic integrity, including, but not limited to, the BBC's tampering with President Trump's Speech in the Documentary.[24]

57.     Notably, Prescott is nonpartisan, as he wrote in the Memorandum:

> I think it is important to state that I have never been a member of any political party and do not hold any hard and fast views on matters such as American politics or disputes in the Middle East. My views on the BBC's treatment of the subjects covered below do not come with any political agenda. Rather, what motivated me to prepare this note is despair at inaction by the BBC Executive when issues come to light. On no other occasion in my professional life have I witnessed what I did at the BBC with regard to how management dealt with (or failed to deal with) serious recurrent problems.[25]

58.     Regarding the *Panorama* Documentary, Prescott wrote:

> I watched the programme and found it to be neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance. Critics of the Republican presidential candidate vastly outnumbered those who argued for him. What examination there was of reasons for Trump's popularity seemed to me insufficient given the overall balance of the programme. Given what I took to be the anti-Trump nature of the programme, I of course assumed there would be a similar, balancing Panorama programme about Democrat presidential candidate Kamala Harris the following week. I remain shocked that there was not.[26]

59.     Prescott was not alone in his assessment:

> I raised my concerns at the EGSC and David Grossman [Senior Editorial Adviser to the EGSC] was asked to review the programme.  He concluded the main contributors to the documentary were heavily weighted against Trump, with just one supporter against ten who questioned his fitness for office. Worse still, David highlighted alarming concerns about how Panorama had edited Trump's speech to his supporters on January 6, 2021 . . . . Examining the charge that Trump had incited protesters to storm Capitol Hill, it turned out Panorama had spliced together two clips from separate parts of his speech. This created the impression that Trump said something he did not and, in doing so, materially misled viewers.[27]

---

[24]     *Id*.

[25]     *Id*.

[26]     *Id*.

[27]     *Id*.

60.     Prescott concluded about the splicing of President Trump's Speech that:

This was one of the most shocking sets of issues uncovered during my time with the EGSC. If BBC journalists are allowed to edit video in order to make people "say" things they never actually said, then what value are the Corporation's guidelines, why should the BBC be trusted, and where will this all end?[28]

ii.     *The 2022 BBC Newsnight Distortion Demonstrating that the Panorama Documentary Splice is Part of a Defamatory Pattern by the BBC of Falsely Depicting President Trump Through Doctored Footage*

61.     As further revealed by *The Telegraph*, the BBC also aired similarly doctored footage of President Trump's Speech on a 2022 episode of *BBC Newsnight*.[29]

62.     In the doctored Speech clip aired by *BBC Newsnight*, President Trump is falsely, maliciously, and defamatorily depicted as saying: "*We're going to cheer on our brave senators and congressman and women, and we fight, we fight like hell*."[30]

63.     What President Trump really said was: "*[A]nd we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*."[31] (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech).

---

[28]     *Id*.

[29]     Camilla Tominey, Tim Stanley, John Cadigan, Rob Crilly, *BBC Newsnight also doctored Trump speech*, THE TELEGRAPH (Nov. 13, 2025), https://www.telegraph.co.uk/news/2025/11/13/bbc-doctored-trump-speech-second-time-newsnight/ (last visited Dec. 15, 2025).

[30]     *Id.*

[31]     *Id.*

18

64.     As *The Telegraph* reported: "Spliced footage of the speech, which aired in an episode in 2022, made it appear that Mr. Trump was encouraging his supporters to riot. The edit was much like a version aired in a *Panorama* documentary broadcast last year."[32]

65.     As further reported by *The Telegraph*: "Like *Panorama*, the *Newsnight* edit made it look as if the US President had urged supporters to walk to the Capitol building with him to 'fight like hell' by linking statements made nearly an hour apart in his speech."[33]  The harm caused by this doctoring was exacerbated by the BBC intentionally omitting President Trump stating, only one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

66.     Immediately after the *BBC Newsnight* episode aired, Mick Mulvaney, former Acting White House Chief of Staff, and David Chaudoir, former award-nominated graphic designer for *BBC Newsnight* from 2022-24, both individually voiced their concerns regarding the misleading and malicious way *BBC Newsnight* edited the clip to distort reality.[34]

67.     Mr. Chaudoir specifically told *The Telegraph* that he was present for discussions about the *BBC Newsnight* clip the day after it was published, wherein *BBC Newsnight* production team members dismissed any ethical concerns about the *BBC Newsnight* clip.[35]

---

[32]     *Id.*

[33]     *Id.*

[34]     *Id*.

[35]     *Id*.

68. Mr. Mulvaney expressed his concern on-air while being interviewed on *BBC Newsnight,* stating:

> Your video actually spliced together the presentation. He said: 'We're going to go down and we're going to cheer on our senators and our house members' and then it actually goes on to say 'And some of them we might not be able to' and that line about 'and we fight and fight like hell' is actually later in the speech yet your video makes it look like those two things came together. [36]

69. The malicious nature of the spliced and edited clip is further underscored by former BBC legal affairs correspondent Clive Coleman's statements in response to the *Panorama* Documentary, stating:

> I really struggle to understand how we got to this place . . . The first lesson almost you're taught as a broadcast journalist is that you do not join two bits of footage together from different times in a way that will make the audience think that it is one piece of footage.[37]

iii. *The 2024 BBC News Shooting Hoax Further Demonstrating that the Panorama Documentary Doctoring is Part of an Defamatory Pattern by the BBC of Falsely Depicting President Trump Calling for Violence*

70. As also revealed by *The Telegraph*, the BBC "has admitted misleading viewers by claiming that Donald Trump called for one of his leading critics to be shot in the face."[38]

71. This admission by the BBC, regarding three instances of false statements about

---

[36]     *Id*.

[37]     Faith Wardwell, *BBC Apologizes to Trump for Documentary Edits, but Pushes Back on Legal Threat*,  POLITICO (Nov. 13, 2025) (https://www.politico.com/news/2025/11/13/bbc-trump-apology-documentary-00651451) (last visited Dec. 15, 2025).

[38]     Anita Singh, *BBC admits falsely claiming Trump wanted to shoot critic*, THE TELEGRAPH (Dec. 9, 2025), https://www.telegraph.co.uk/news/2025/12/09/bbc-admits-falsely-claiming-trump-wanted-to-shoot-critic/  (last visited Dec. 15, 2025).

President Trump supposedly calling for violence against a political opponent, none of which occurred, is contained in the now-public Memorandum, and yet the BBC has still failed to issue a public correction.[39]

72.     As described by *The Telegraph*:

> In the days before the US presidential election in November last year, a presenter on BBC World News America said that Mr. Trump "appeared to suggest Liz Cheney should face a firing squad for her stance on foreign policy."
>
> On the BBC News Channel, another presenter asked his guest: "He [President Trump] is out there on the campaign trail saying he wants people to shoot Liz Cheney in the face . . . Is that the sort of thing women react well to?
>
> Speaking on the Six O'Clock News the same night, Sarah Smith, the BBC's North America editor, said Mr. Trump had been "ratcheting up the violent rhetoric."
>
> She added: "In the latest spat, Donald Trump has been accused of being petty, vindictive and a wannabe tyrant because he suggested that one of his political opponents should face guns, have them trained on her face."[40]

73.     All these statements by BBC presenters were false.

74.     "In fact, Mr. Trump had accused Ms. Cheney of being a 'radical war hawk' who wanted to send troops to war while she remained in the safety of Washington DC, saying: 'Let's put her with a rifle standing there with nine barrels shooting at her face. OK? Let's see how she feels about it.'"[41]

75.     This false, defamatory, and malicious coverage of President Trump, broadcast in the same time period as the release of the *Panorama* Documentary, was consistent with the BBC's *modus operandi*, defaming President Trump by fabricating calls for violence allegedly issued by him, that he never actually made.

---

[39]     *Id.*

[40]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

[41]     *Id.*

iv.     *The Panorama Documentary Was Intentionally One-Sided and Inflammatory, demonstrating that the Doctoring of President Trump's Speech Was Intentional and Part of the BBC's Defamatory Pattern*

76.     The lack of any effort by the BBC to publish content even remotely resembling objective journalism, or to maintain even a slight semblance of objectivity in the *Panorama* Documentary, demonstrates that the BBC had no regard for the truth about President Trump, and that the doctoring of his Speech was not inadvertent, but instead was an intentional component of the BBC's effort to craft as one-sided an impression and narrative against President Trump as possible.

77.     Indeed, by any measure, including the overwhelming ratio of anti-Trump versus pro-Trump commentators in the *Panorama* Documentary, the exceptionally high percentage of time granted to these negative voices in the Documentary versus the positive voices, and the inflammatory content of the negative remarks, all coupled with the BBC's historical unfairness to the President, it is apparent that the BBC fabricated the Documentary to damage President Trump. Doctoring his Speech was consistent with, and part of, the BBC's *modus operandi* of negatively covering President Trump without any pretense of objectivity.

78.     The BBC's aggressively anti-Trump stance is reflected straightaway in the opening scene of the *Panorama* Documentary's introduction, which runs for almost three minutes and begins with noted anti-Trump commentator Rick Wilson—who has written two books criticizing President Trump, *Everything Trump Touches Dies* (2018) and *Running Against the Devil: A Plot to Save America From Trump-and Democrats from Themselves* (2020), and has called the President "the devil" and a "cult leader"—declaring, to the backdrop of ominous cinematic music reaching a dramatic crescendo: "I'm the leading anthropologist of Donald Trump in the, in the

22

world, probably, I've thought about him and studied him more than probably anybody else, and I hate him. I hate what he is, and what he does."

79.     Seconds later, Wilson states of President Trump: "When you let the monster escape, it will come back, it is a rule of every damn horror movie in history."

80.     Former Clinton Secretary of Labor and current Berkeley Professor Robert Reich, another vocal critic of President Trump, then offers: "Once you've unleashed this anger, this hate, into the blood of America, well, it's very very difficult to stop it."

81.     A greater majority of the verbal commentary in the *Panorama* Documentary features negative assertions about President Trump by twelve individuals known to be hostile to the President, all of whom are presented as having some form of relevant expertise and authority about the subject matter presented. Moreover, an overwhelming majority of the overall Documentary, including the non-interview segments depicting political and historical events from recent years, presents President Trump in a negative light.

82.     Further demonstrating the BBC's malice and intent to interfere with the 2024 Presidential Election, the *Panorama* Documentary, after lingering at length on the events of January 6, 2021, cuts to a clip from the Democratic National Convention on August 22, 2024, showing Kamala Harris taking the stage with a news anchor breathlessly exclaiming in the background: "And here she is, Kamala Harris. It's hard to describe just how electric the mood is here right now."

83.     Toward the end of the *Panorama* Documentary, Reich shockingly compares President Trump to "Adolf Hitler," which rises to defamation itself, while Democrat Congressman Jared Huffman refers to the President as a "cult leader," also a defamatory statement.

23

84.     Others then join Reich in delivering hyperbolic warnings about President Trump and the supposedly catastrophic consequences that would ensue if President Trump were to emerge victorious.

85.     "The degree to which his pessimism and darkness has infected half this country terrifies me," adds Wilson. "There is no ideology in the Republican party except pain, they want vengeance," he continues.

86.     Berkeley Political Science Professor Steven Fish asserts "There's a reason why Xi Jinping and Vladimir Putin and Kim Jong Un and all these despots all over the world are rooting so hard for Trump because what Trump does is he seems to discredit democracy in the land of its stronghold, in the strongest democracy in the world, Trump seems to be proof that democracy doesn't work."

87.     Boston College History Professor Heather Cox Richardson offers, "this is the time when we either choose authoritarianism or democracy, and if we choose authoritarianism, there will be no turning back, so I think we better get this one right."

88.     Reich delivers a closing remark to punctuate the BBC's parade of bias: "Wish us luck, by us, I mean the United States."

     *v.*     *Prominent Voices Condemn the BBC and Confirm the BBC's Longstanding Pattern of Actual Malice Against President Trump*

89.     The BBC is so institutionally biased against President Trump and so devoid of self-awareness that, in response to the above letter from President Trump's counsel (**Exhibit A**), it

24

published a baseless and meritless article questioning the merits of any lawsuit that the President might bring against the BBC.[42]

90. No less an authority than the United Kingdom's former Prime Minister, Liz Truss, discussed this bias, the need to hold the BBC accountable, and the BBC's pattern of actual malice.[43]

91. Remarked Truss: "[The BBC] is a huge problem. They've lied, they've cheated, they've fiddled with footage, especially in the case of President Trump, but also covering up what's happening in Britain whether it's mass migration, whether it's our economic problems, they are always biased towards the left . . . ." She was also asked whether the BBC's tepid apology was sufficient, and responded: "No I don't, because they keep doing it again and again. They have painted a completely false picture of President Trump in Britain over a number of years, they've done the same thing about conservatives in our country . . . ." Lamenting the BBC's lost status as a "paragon" of journalism, she remarked that the BBC's "fake news" has caused immense harm to the public for a long time.[44]

92. Caroline Dinenage, head of the House of Commons' Culture, Media, and Sport Committee said that Members of Parliament need assurances that the BBC was "taking decisive steps to uphold the corporation's reputation for integrity and public trust." She further remarked:

---

[42] Kayla Epstein and Madeline Halpert, *Trump vs. the BBC: What hurdles might the President's legal argument face?*, BBC (Nov. 11, 2025), https://www.bbc.com/news/articles/c709y1yx1r0o (last visited Dec. 15, 2025).

[43] *Former UK prime minister calls out BBC, encourages Trump to continue lawsuit*, FOX NEWS (Nov. 15, 2025), https://www.foxnews.com/video/6385140049112 (last visited Dec. 15, 2025).

[44] *Id*.

"The Corporation must set the benchmark for accurate and fair reporting, especially in a media landscape where it is all too easy to find news presented in a less than impartial way."[45]

93.     Conservative Party leader and Member of Parliament Kemi Badenoch said that the distortion of the Speech by the *Panorama* Documentary was "absolutely shocking," adding: "That is fake news, actually putting different things together to make something look different from what it actually was." She continued: "And I do think heads should roll. Whoever it was who did that should be sacked, that's what Tim Davie should be doing, identifying who put out misinformation, and sacking them." Badenoch added: "The public need to be able to trust our public broadcaster . . . They should not be telling us things that are not true. This is a corporation that needs to hold itself to the highest standards, and that means that when we see people doing the wrong thing, they should be punished, they should be sacked."[46]

94.     Lisa Nandy, Secretary of State for Culture, Media and Sport of the United Kingdom, has similarly expressed concern, stating: "there is a real concern, which I share, that political appointments to the board of the BBC damaged confidence and trust in the BBC's impartiality."[47]

95.     FCC Chairman, Brendan Carr, in a letter addressed to Davie, Paula Kerger, (President and CEO of PBS), and Katherine Maher (CEO of NPR), strongly stated:

> As you know, the BBC was recently caught intentionally distorting a speech that President Trump gave in January of 2021. It did so by splicing together one portion of the speech with an entirely separate portion of the speech that came 54 minutes later. In doing so, the BBC program depicts President Trump voicing a sentence

---

[45]     *BBC has questions to answer over edited Trump speech, MPs say*, BBC (Nov. 4, 2025), https://www.bbc.com/news/articles/ckgzkyk7knzo.amp (last visited Dec. 15, 2025).

[46]     *Id*.

[47]     *'Real Concern' About Political Appointees on BBC Board, Nandy Says*, BBC (Nov. 14, 2025), https://www.bbc.com/news/articles/cdeg0ngnj0yo (last visited Dec. 15, 2025).

that, in fact, he never uttered. That would appear to meet the very definition of publishing a materially false and damaging statement.[48]

96.     Carr continued, highlighting the findings of the Memorandum:

Indeed, there has now been widespread condemnation of the BBC's decision. A former independent external advisor to the BBC's Editorial Guidelines and Standards Committee, Michael Prescott, told the BBC that its decision "created the impression that Trump said something he did not and, in doing so, materially misled viewers." Likewise the Prescott Report states that the BBC program was "neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance.' In sum, it was a 'distortion of the day's events," the Prescott Report continued.[49]

### *Damages*

97.     Since its publication, the *Panorama* Documentary has gained substantial traction and republication across various media in the United States and elsewhere globally.

98.     Defendants used their false and defamatory publications to maliciously disparage and damage President Trump and impugn his reputation.

99.     Specific, extensive economic harms resulted from these defamatory statements. Defendants timed the publication of the *Panorama* Documentary to be close in time to the 2024 Presidential Election, releasing it only one week before the Election.

100.    The value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal

---

[48]     *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at BCC* (Nov. 19, 2025), https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025), https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/ (last visited Dec. 11, 2025).

[49]     *Id.*

reputation inflicted by these Defendants, and their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist, continue into the present, thereby causing massive economic damage to his brand value and significant damage and injury to his future financial prospects, in addition to continuing to harm his reputation as President of the United States of America.

101.    President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

102.    Exacerbating the damages, Defendants, at and prior to the time of their doctoring of the Speech, knowingly made their false, deceptive, malicious, and defamatory depiction of President Trump in bad faith, motivated by malice and ill-will against President Trump without any regard for the truth, and contrary to information Defendants possessed that showed their depiction to be false

103.    All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

## CLAIMS FOR RELIEF

## COUNT I – DEFAMATION *PER SE*

104.    Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

105.    The following false, deceptive, malicious, and defamatory statements and depictions of and about President Trump, were, intentionally, with actual malice, and without privilege, published in the *Panorama* Documentary to millions of people in the State of Florida

28

and in this District, and elsewhere, by all Defendants, and were defamatory and false, and injured President Trump in his profession, occupation, and trade, thus constituting defamation *per se*:

(a) The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary made it seem that he stated: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

(b) This fabricated depiction of President Trump during the Speech was false and defamatory given that President Trump's actual and full remarks during the Speech were (i) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (ii) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021, 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

(c) Moreover, to further the BBC's intended, false, malicious, and defamatory message and impression that President Trump fomented violence, the BBC intentionally omitted President Trump stating, only one minute after urging supporters to cheer

29

on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

106. Defendants possessed information and had access to information which showed that their statements about, and representation and depiction of President Trump were false.

107. Defendants had no factual basis for this false depiction of President Trump.

108. Defendants' deceptive and defamatory distortion, doctoring, manipulation, and splicing damaged President Trump in his occupation, damaged his professional reputation, and portrayed him as engaging in supposed calls for rioting and violence that he never actually made.

109. The *Panorama* Documentary was not a continuation of a prior broadcast. Instead, it was the result of a separate and distinct decision by Defendants to maliciously disseminate false statements about President Trump in a new medium.

110. As pled *supra*, Defendants knew that their portrayal of the Speech in the *Panorama* Documentary was false, malicious, and defamatory.

111. Defendants' actual malice in publishing the *Panorama* Documentary is evidenced by their intentional splicing and distorting two entirely separate sentences made by President Trump during the Speech nearly 55 minutes apart, while omitting his statement calling for peace made less than one minute after his first statement urging supports to cheer on their senators and congressmen at the Capitol.

112. As a proximate result of the maliciously false and defamatory *per se* publication of a statement and depiction to third parties by Defendants, President Trump has been damaged.

30

113. Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards President Trump, he seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, and such other relief as this Court may deem just and proper.

<u>**COUNT II – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**</u>

114. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

115. In addition, this action is brought for violation of the Florida Deceptive and Unfair Trade Practices Act as codified in Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

116. Defendants are engaged in the conduct of trade and commerce in the State of Florida.

117. Defendants have violated the FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia,* intentionally and maliciously seeking to completely mislead their viewers by splicing together two separate parts of President Trump's Speech, while omitting other critical parts of the Speech in such a manner as to intentionally, falsely, maliciously, and defamatorily change the meaning of what President Trump said.

118. As a direct, proximate, and foreseeable result of Defendants' violation of FDUTPA, President Trump has suffered and continues to suffer substantial damages.

31

119. Pursuant to Fla. Stat. §501.2105, President Trump is entitled to recover his attorneys' fees and costs from Defendants.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, President Trump, hereby demands a jury trial as to all issues so triable.

Dated: December 15, 2025

Respectfully submitted,

/s/Alejandro Brito
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel: 305-614-4071
Fax: 305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

/s/Edward Andrew Paltzik
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice application forthcoming*)

*/s/Daniel Zachary Epstein*
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*

33



Alejandro Brito

Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

November 9, 2025

**Via Email**

Mr. Samir Shah
Chairman
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**samir.shah@bbc.co.uk**

Ms. Sarah Jones
General Counsel
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**sarah.jones@bbc.co.uk**

> **Re:** **Demand to Retract False And Defamatory Statements**
> **About The President of the United States of America**

Dear All:

This law firm serves as litigation counsel for President Donald J. Trump (hereinafter referred to as "President Trump"). Please direct all future correspondence relating to this matter to my attention. This correspondence serves as a demand under Florida Statute § 770.01[1] that you immediately retract the false, defamatory, disparaging, and inflammatory statements made about President Trump, which were published in a *Panorama* documentary that was fabricated and aired by the BBC. Failure to comply will leave President Trump with no choice but to pursue any and all legal rights and remedies available to recover damages for the overwhelming financial and reputational harm that the BBC has caused him to suffer, with all rights and remedies being expressly reserved by President Trump.

In the *Panorama* documentary, titled "Trump: A Second Chance,"[2] which was first broadcast on October 28, 2024—a week before the 2024 United States presidential election—the BBC intentionally sought to completely mislead its viewers by splicing together three separate

---

[1] President Trump does not agree or admit that only Florida law applies to any claims he might have in connection with or arising out of the Article and expressly reserves all rights concerning applicable law.

[2] *See* https://www.bbc.co.uk/programmes/m0024h6r. According to the BBC's website, the defamatory documentary was broadcast three times on October 28, 2024, and a fourth time on November 2, 2024.

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

parts of President Trump's speech to supporters on January 6, 2021. The documentary showed President Trump telling supporters: "We're gonna walk down to the Capitol and I'll be there with you and we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore." This fabricated depiction of President Trump was false and defamatory given that President Trump's actual and full remarks were: "We're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down any one of you but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women." Moreover, the BBC edited out President Trump saying, "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Thus, as set forth in an internal whistleblower memorandum, the BBC's segment maliciously made it appear that President Trump "[said] things [he] never actually said," by editing together footage from the start of the speech with a separate quote early an hour later.

Due to their salacious nature, the fabricated statements that were aired by the BBC have been widely disseminated throughout various digital mediums, which have reached tens of millions of people worldwide. Consequently, the BBC has caused President Trump to suffer overwhelming financial and reputational harm.

## A. Applicable law.

Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Statements are defamatory if "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *See Zambrano v. Devanesan*, 484 So. 2d 603, 607 (Fla. 4th DCA 1986).

Even if the BBC attempts to whitewash its conduct as simply an expression of its opinions, Florida law makes clear that such a defense will not absolve its liability. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. ***Simply couching such statements in terms of opinion does not dispel these implications***.") (emphasis added); *see also Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983) ("***[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable***.") (emphasis added).

2

**BRITO**
P L L C

Alejandro Brito
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

Consequently, the BBC lacks any viable defense to the overwhelming reputational and financial harm it has caused President Trump to suffer.

## B. Demand.

The above-referenced false, defamatory, malicious, disparaging, and inflammatory statements were published to deliberately denigrate President Trump. The timing of the fabricated documentary is evident. The BBC's reckless disregard for the truth underscores the actual malice behind the decision to publish the wrongful content, given the plain falsity of the statements. Accordingly, President Trump hereby demands that you: (1) immediately issue a full and fair retraction of the documentary and any and all other false, defamatory, disparaging, misleading, and inflammatory statements about President Trump in as conspicuous a manner as they were originally published; (2) immediately issue an apology for the false, defamatory, disparaging, misleading, and inflammatory statements about President Trump; and (3) appropriately compensate President Trump for the harm caused.

Moreover, please allow this letter to serve as notice to you, to your affiliated entities, subsidiaries, to all of their employees, and any other person acting on behalf of or in concert with the BBC, to preserve any and all evidence related in any way to the above-mentioned malicious, false, and defamatory statements the BBC published, and any other statements that the BBC has published regarding President Trump. By way of this letter, the BBC is hereby directed not to destroy, conceal, or alter any paper or electronic files, physical evidence, and/or other data relating in any way, no matter how remote, to your false claims regarding President Trump, and/or the circumstances leading to their dissemination, including, but not limited to: (1) all communications between you and any third party in any way related to your wrongful claims regarding President Trump; (2) all sources for your false claims regarding President Trump; (3) any and all documents and data referring to, reflecting, or relating to communications between you and any such third-parties or sources regarding your false claims regarding President Trump; and (4) any and all documents in any way related to your false claims regarding President Trump. This includes any information alleged to be protected by Florida Statute § 90.5015. *Monarch Air Group, LLC v. Journalism Dev. Network, Inc.,* No. 23-CV-61256, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (interpreting Fla. Stat. § 90.5015 and explaining that the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings.") (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)).

I understand that many records and files are maintained electronically. However, this letter specifically requests that all paper and hard copy originals be maintained and preserved in their original format. By the same token, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists and has been preserved, please preserve and maintain all electronically stored documents in their original native format, including all metadata. This preservation demand specifically encompasses any and all electronic documents,

3



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

including but not limited to, all word-processed files, emails, spreadsheets, all databases, log files, and any other electronically stored and/or generated documents or files.

If the BBC does not comply with the above by **November 14, 2025, at 5:00 p.m. EST**, President Trump will be left with no alternative but to enforce his legal and equitable rights, all of which are expressly reserved and are not waived, including by filing legal action for no less than $1,000,000,000 (One Billion Dollars) in damages. The BBC is on notice.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

4

# Ballard Spahr
### LLP

– – – – – – – – – – – – – – – – – –
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

November 13, 2025

*Via Email (abrito@britopllc.com) & Federal Express*

Alejandro Brito
Brito PLLC
2121 Ponce de Leon
Suite 650
Coral Gables, FL 33134

      Re: November 9, 2025 Letter regarding BBC *Panorama* Documentary

Dear Mr. Brito:

      Our office represents the British Broadcasting Corporation ("BBC"). We write regarding your letter to the BBC dated November 9, 2025, which you sent on behalf of President Donald J. Trump. You wrote with respect to the broadcast of the BBC's *Panorama* documentary titled "Trump: A Second Chance" ("the Program") on October 28 and November 2, 2024, depicting his supporters during President Trump's campaign for a second term in office. Please direct all further communication about your letter to my attention.

      Your letter, citing Florida law, alleges that in a short clip of excerpts of his speech on January 6, 2021, the BBC "intentionally sought to completely mislead its viewers." President Trump alleges that the Program constituted defamation. The President threatens to bring a $1 billion defamation suit against the BBC.

      Our client had no intention of misleading anyone. Indeed, the BBC has publicly expressed its contrition in statements to the Chair of Parliament's Culture, Media, and Sport Committee, on its website, and in the media. We also enclose with this letter a copy of the BBC's personal apology to President Trump, sent by email today to White House Chief of Staff Susie Wiles.

      Additionally, the BBC has posted or shortly will post the following retraction:[1]

---

[1] https://www.bbc.co.uk/programmes/m0024h6r and
   https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/

Alejandro Brito
November 13, 2025
Page 2

> *This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.*
>
> *During that sequence, we showed excerpts taken from different parts of the speech.*
>
> *However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and that this gave the mistaken impression that President Trump had made a direct call for violent action.*
>
> *The BBC would like to apologise to President Trump for that error of judgement.*
>
> *This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.*

While the BBC sincerely regrets the manner in which the video clip was edited, for the following reasons, we strongly disagree that President Trump would have a basis for a viable defamation claim.

**First**, President Trump has made no allegation that the Program was published in Florida, as he must in order to establish personal jurisdiction over the BBC and to meet the publication requirement for a defamation claim. The BBC did not have contractual rights to, and therefore did not, distribute the Program on U.S. channels. Moreover, the version on its website linked to in your letter was geographically restricted to U.K. viewers. In any event, it ceased to be available even in the U.K. from 12 months after the Program aired. The President therefore has not established that he would have any jurisdictional basis to bring a claim against the BBC in Florida or elsewhere in the United States.[2]

**Second**, President Trump will not be able to prove that the Program caused him any injury, let alone the unspecified "overwhelming reputational and financial harm" he alleges.[3] He won reelection on November 5, 2024, after the Program aired. He carried Florida by a

---

[2] *See, e.g.*, *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (to be actionable as defamation, "the material . . . must not only be *accessible* in Florida, but also be *accessed* in Florida") (emphasis in original).

[3] *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. Cir. Ct. 2014) (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1997)) (given "negative publicity" from "a litany of news media entities" other than defendant NBC, "the challenged excerpts from and characterization of Zimmerman's statements . . . could not have been the required 'but for' cause of Zimmerman's alleged injuries").

2

Alejandro Brito
November 13, 2025
Page 3

commanding 13-point margin, improving over his 2020 and 2016 performances in the state.[4]

Moreover, when the Program aired, the President had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee Report found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[5] Given the extensive allegations prior to the release of the Program regarding his January 6 speech, in criminal and civil cases and among the press and public, the Program could not have caused any incremental harm.

**Third**, President Trump has no basis to allege that the BBC published the Program with actual malice – that is, knowing the Program was false or while entertaining serious doubts as to its truth – as he must.[6] Rather, as the BBC Chair has explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."[7]

Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements. In the course of their prosecutions, numbers of people arrested at the Capitol on January 6 told the courts that they interpreted President Trump's remarks as a call to

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g., Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

[6] *See, e.g., N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020). Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971).

[7] Letter from BBC Chair Samir Shah to Dame Caroline Dinenage MP (Nov. 10, 2025), https://committees.parliament.uk/publications/50118/documents/270340/default.

Alejandro Brito
November 13, 2025
Page 4

action.[8]

Further, the BBC has taken prompt corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," issuing a retraction, and confirming that the Program was not scheduled to be re-broadcast and will not be rebroadcast in that form on any BBC platforms. This further negates any suggestion of actual malice.[9]

**Fourth**, the brief clip, which shows about 15 seconds of President Trump's speech on January 6, is part of an hour-long program containing extensive coverage of his supporters praising President Trump, and presenting balanced coverage of his path to reelection. Courts consider challenged statements in the context of the full publication in which they were made. Accordingly, President Trump cannot create an actionable statement or implication by citing a singular clip but ignoring the remaining, overall context of the Program.[10]

**Fifth**, the Program contains protected expressions of opinion, including many from President Trump's ardent supporters. It depicts hotly contested events related to Presidential elections, including the events of January 6, 2021, which have been the subject of extensive controversy and litigation. In this context, even if the Program is reasonably interpreted to report that President Trump encouraged the crowd to march to the Capitol on January 6, that is an

---

[8] *See, e.g.*, Ryan J. Reilly, *Jan. 6 Rioter Who Said He Wanted Trump's 'Approval' Found Guilty by Jury*, CNBC (Apr. 14, 2022), https://www.cnbc.com/2022/04/14/jan-6-rioter-who-said-he-wanted-trumps-approval-found-guilty-by-jury.html ("A Donald Trump supporter who told jurors that he was 'following presidential orders' when he stormed the U.S. Capitol on Jan. 6 was found guilty on Thursday after he admitted that he stole a coat rack and a bottle of liquor from the building."); Shawna Chen, *Judge: Jan. 6 Rioter Who Broke into Capitol Followed "Trump's Instructions,"* Axios (Jan. 17, 2023), https://www.axios.com/2023/01/18/jan6-capitol-riot-trump-instructions ("A federal judge said Tuesday that a California woman who breached the U.S. Capitol during the Jan. 6 insurrection 'followed then-President Trump's instructions' in breaking the law."); Kyle Cheney, *Jan. 6 Defendant Wants Jurors to Blame Trump, Not Him, for Decision to Breach Capitol*, Politico (Apr. 13, 2022), https://www.politico.com/news/2022/04/13/january-6-defendant-donald-trump-00025019 ("Though dozens of defendants have argued in court filings that they believed Trump had authorized the assault on the Capitol, judges have largely rejected that contention and said rioters should be held to account for their own actions. But whether a jury sees that argument differently will be an important test that could reverberate across hundreds of other cases.").

[9] *See, e.g.*, *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

[10] *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020); *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

4

Alejandro Brito
November 13, 2025
Page 5

opinion on a matter of public concern, heavily protected under defamation law in the United States.[11]

     For these reasons, the BBC declines President Trump's claim that the Program constituted defamation and his request for compensation.

     We sincerely hope that the BBC's public statements of contrition, and the direct apology that we have given to the President, will suffice to put this matter to rest.

     The BBC reserves all further rights and remedies, including those available under Fla. Stats. § 57.105 and § 768.295(2)(a).

Sincerely,

BALLARD SPAHR LLP

By _____
Charles D. Tobin

Enclosure

---

[11] *See, e.g., Trump v. CNN*, 684 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (dismissing defamation case because network's description of President Trump's election challenges as the "Big Lie" was non-actionable opinion, not a statement of fact).



British Broadcasting Corporation

Broadcasting House, London  W1A 1AA

From the Chairman

The President
The White House
1600 Pennsylvania Avenue NW
Washington
D.C. 20500
United States of America

13 November 2025

Dear Mr President,

As the Chair of the BBC I wanted to write to you personally. At the same time the BBC's lawyers have today responded to your legal team. The BBC's overall legal position is as set out in that letter. I should make clear at the outset that what follows is my view as the Chair of the BBC. The organisation is, by Royal Charter, independent of His Majesty's Government and nothing I write should imply approval or disapproval by the United Kingdom Government.

Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement. As it was your speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

- 2 -

The documentary followed a number of your supporters and campaigners, who told the BBC why they wanted you to be re-elected in the 2024 US Presidential Election. The BBC's intention was to reflect their contributions to the documentary fairly and accurately, including their support for you and your Presidency.

Whilst the documentary was not scheduled to be rebroadcast, the BBC has also made public today that it will not be broadcast again on any BBC platforms in a form that includes the misleading sequence.

That the BBC produces content of the highest editorial quality is of paramount importance to me. As Chair, I take responsibility for personally ensuring that the BBC retains the trust and confidence of our audiences.

I would be happy to discuss this matter, should this be of interest to you.

Yours sincerely,

Samir Shah

BBC Chair

# Ballard Spahr
## LLP

———————————

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 15, 2026

*Via Certified Mail*

Architect of the Capitol
Office of General Counsel
Ford House Office Building, Room H2-265A
2nd & D Street, SW
Washington, DC 20515

Re:     *Touhy* Request for the Production of Documents in *Trump v. BBC*, Case No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Sir/Madam:

This law firm represents defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited in the above-referenced civil action pending in the United States District Court for the Southern District of Florida (the "Action").  We submit this request for information, identified below, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and AOC Order 38-2, dated August 14, 2015.

## BACKGROUND

On December 15, 2025, Plaintiff President Donald J. Trump filed a two-count lawsuit alleging defamation and violations of the Florida Deceptive and Unfair Trade Practices Act against Defendants, arising from the documentary titled "*Trump: A Second Chance?*" ("the Documentary").  For your reference, we have attached a copy of the complaint to this letter as Exhibit 1.  The Documentary explored for the BBC's U.K. audience the President's continued success with his loyal American voters, following some of his most ardent supporters, known as the "Front Row Joes," and speaking with experts in the run up to the November 2024 U.S. presidential election. Plaintiff alleges that the Documentary defamed him in its depiction of his speech on January 6, 2021 ("the Speech"), which he alleges falsely depicted him as inciting violence at the Capitol that day.

The Action puts directly into issue the factual circumstances of the violence at the Capitol building on January 6, 2021, including whether there were plans of violence ahead of time, the communications about any planned violence, and whether individuals understood the Stop the Steal Rally or Trump's communications about January 6, 2021 as a

Architect of the Capitol
May 15, 2026
Page 2

call to violence.  Accordingly, the requested documents and information identified below are paramount to the case that Plaintiff has brought against Defendants.

The parties in the Action are currently going through the discovery process with a pending motion to dismiss filed.  At the moment, Plaintiff has not provided any such relevant documents or information himself in response to Defendants' written discovery requests propounded on him.  Furthermore, the information possessed by the Architect of the Capitol about the intelligence it gathered regarding the events of January 6, 2021 are in the agency's possession, and accordingly would only be obtainable through this Request.

Given that Plaintiff's allegations have placed these documents in the Architect of the Capitol's possession at the heart of the Action, and that Defendants need these documents to adequately defend themselves in court, the need for these documents outweighs any confidentiality of the information and any burden on Architect of the Capitol to produce these records.  As detailed below, the requested records are confined by date and subject matter to limit the intensiveness of any search for responsive documents.  Additionally, there is a protective order in place that will limit the exposure of any confidential items beyond the parties involved.

No previous decisions, orders, or pending motions in the Action bear upon the relevance of the requested records or testimony at this point.

**DEFENDANTS' TOUHY REQUEST SHOULD BE GRANTED**

Under AOC Order 38-2, Section B, 10.3, the General Counsel considers several factors in evaluating a *Touhy* request sent to the Architect of the Capitol.  The following factors favor providing the requested documents to Defendants:

- **Conservation of employee time.**  Because the scope of the requested information is limited to a confined period of days about a single subject matter, and because search terms can appropriately confine the Architect of the Capitol's search for the requested records, Defendants do not expect that the request is resource-heavy for employees.

- **The need to avoid spending government time and money for private purposes.**  For the reasons stated above, Defendants believe that public time and money expended for this Action would be minimized.  Additionally, while the Action concerns two private parties, because Plaintiff is the President of the United States and because the Action implicates the storming of the Capitol building of January 6, 2021—a historic, unprecedented event that played out on the public stage for the world to see.  The resolution of the

Architect of the Capitol
May 15, 2026
Page 3

factual disputes in this Action, accordingly, holds import beyond the two private parties, and serves a public interest as well.

- **Whether disclosure would result in appearing to favor one litigant over another.** Nothing about Defendants' request would threaten the impartiality of the Architect of the Capitol, as the relevant documents are equally important to the Plaintiff for his affirmative case and the Defendants for their defense. Defendants' request is for the purpose of investigating the allegations that Plaintiff has made, which put into dispute communications with him and his knowledge surrounding January 6, 2021. Accordingly, the documents that are relevant to this litigation are essential to both sides of this case.

- **Whether the request is unduly burdensome or otherwise inappropriate under the applicable court rules.** For the reasons stated above, Defendants do not believe the request is overly burdensome because it is narrowly confined, and relevant to the Action such that it conforms with the Federal Rules of Civil Procedure.

- **Whether statutory restrictions, legal objections, exemptions, or privileges that may apply.** Defendants do not believe that their requests would involve any privileged materials, such as trade secrets, commercial or financial information, attorney-client communications, attorney work product, documents that would fall under executive privilege, or documents that would impede any ongoing law enforcement investigations.

### LIST OF REQUESTED DOCUMENTS

In the interest of transparency and aiding the Architect of the Capitol's evaluation of this request, and as requested in AOC Order 38-2, Section B, 9.1.6, below is a description of documents Defendants seek, along with a description of how the information sought is relevant to the issues in the Action and why the information sought is unavailable by any other means.

- **Documents and communications sent by the Architect of the Capitol regarding planned demonstrations, potential organized violence in the Washington, D.C. area on January 6, 2021:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events,

Architect of the Capitol
May 15, 2026
Page 4

including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.  The United States Senate Committee on Homeland Security and Governmental Affairs staff report, "Planned in Plain Sight: A Review of the Intelligence Failures in Advance of January 6th, 2021" identifies that the Architect of the Capitol possessed and sent such information.

Defendants seek this information in good faith and reasonably believe that the documents identified above are not available through other discovery or sources available in this Action.

Please contact us if you have any questions about this letter or the proposed subpoena.  As required by AOC Order 38-2, Section B, 9.1.2, the contact information of counsel to each party in the case is as follows:

- **For Defendants:** Charles D. Tobin, Ballard Spahr LLP, 1909 K Street NW, 12th Floor, Washington, DC 20006, (202) 661-2200

- **For Plaintiff:** Alejandro Brito, Brito, PLLC, 2121 Ponce de Leon Boulevard, Suite 650, Coral Gables, FL 33134, (305) 614-4071

As stated in the attached Subpoena, we respectfully ask that you act on this *Touhy* request by June 15, 2026 at 6:00 pm.  Thank you in advance for your attention to this matter.

Sincerely,

BALLARD SPAHR LLP

Charles D. Tobin

Cc: Counsel for Plaintiff

Encl.: Subpoena, Exhibit 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| President Donald J. Trump | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) ) ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Office of General Counsel, Ford House Office Building, Room H2-265A
2nd and D Street, SW, Washington, DC 20515

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/15/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     05/15/2026

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) | |
| Defendants. | ) | |

**ATTACHMENT A TO SUBPOENA TO THE ARCHITECT OF THE CAPITOL
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Communications" means any manner of receiving or transmitting information, opinions or thoughts, whether orally, in writing, electronically, or otherwise.  The term

"Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

5. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

6. "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

2

7.      "Including" shall be construed as "including but not limited to."

8.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

9.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

10.     "Washington, D.C. area" means the Washington—Arlington—Alexandria Metropolitan Statistical Area.

11.     "You"  and "Your" shall refer to the recipient of these requests, and shall include all components under the Architect of the Capitol; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

3

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.     If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections) for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests is for Documents created or originating on or after November 3, 2020 to January 6, 2021.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Communications and Documents created or sent by the Architect of the Capitol on Related to the potential of planned demonstrations, potential organized violence, or protests in the Washington D.C. area on January 6, 2021.

5

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BRITISH BROADCASTING CORPORATION a/k/a/ BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, PRESIDENT DONALD J. TRUMP ("President Trump"), by and through his counsel, brings this action against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC (the "BBC"), BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED (collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1. This action concerns a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump, which was published in a BBC *Panorama* documentary, that was fabricated and aired by the Defendants one week before the 2024 Presidential Election in a brazen attempt to interfere in and influence the Election's outcome to President Trump's detriment.

1

2. In the BBC *Panorama* documentary titled "Trump: A Second Chance" (the "*Panorama* Documentary," or the "Documentary"),[1] which was first broadcast on October 28, 2024, the BBC intentionally and maliciously sought to fully mislead its viewers around the world by splicing together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech").[2] The *Panorama* Documentary deliberately omitted another critical part of the Speech in such a manner as to intentionally misrepresent the meaning of what President Trump said.

3. The *Panorama* Documentary falsely depicted President Trump telling supporters: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary). President Trump never uttered this sequence of words.

4. This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and then, much later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight*

---

[1] First published by Defendants on October 28, 2024 with a runtime of 57:54. *See* "Trump: A Second Chance?", BBC (Oct. 28, 2024) (https://www.bbc.co.uk/programmes/m0024h6r) (last visited Dec. 15, 2025)

[2] The Speech was 70:53 in length.

*like hell, and if you don't fight like hell, you're not going to have a country anymore*," (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

5.     Moreover, the BBC purposefully omitted President Trump stating, less than one minute after urging supporters to cheer for their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

6.     As set forth in a damning and recently leaked BBC internal whistleblower document, the BBC intentionally used the *Panorama* Documentary to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting, and that he "said something he did not,"[3] by splicing together footage from the start of the Speech with a separate quote that he said nearly 55 minutes later, while omitting his statement calling for peace, made less than one minute after his first statement urging supports to cheer their senators and congressmen at the Capitol. Such distortion of the President's speech by the BBC "materially misled viewers."[4]

7.     Moreover, concerns about the *Panorama* Documentary were raised internally before its dissemination, but the BBC ignored those concerns and did not take corrective action.

8.     This instance of doctoring—in the form of distortion of meaning and splicing of entirely unrelated word sequences—is part of the BBC's longstanding pattern of manipulating

---

[3]     Gordon Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*, THE TELEGRAPH (Nov. 6, 2025), https://www.telegraph.co.uk/news/2025/11/06/read-devastating-internal-bbc-memo-in-full/ (last visited Dec. 15, 2025).

[4]     *Id.*

3

President Trump's speeches and presenting content in a misleading manner in order to defame him, including fabricating calls for violence that he never made. *See e.g.* ¶¶ 55-87, *infra*.

9. The BBC, faced with overwhelming and justifiable outrage on both sides of the Atlantic, has publicly admitted its staggering breach of journalistic ethics, and apologized, but has made no showing of actual remorse for its wrongdoing nor meaningful institutional changes to prevent future journalistic abuses.

10. Accordingly, President Trump brings this action for compensatory and punitive damages for the extensive reputational harm inflicted upon him by the Defendants.

## **PARTIES**

11. Plaintiff, President Trump, is a citizen of the United States and a citizen of the State of Florida. He served as the 45th President of the United States and currently serves as the 47th President of the United States.

12. Defendant, the BBC, is a British corporation established by royal charter and operating under an agreement with the United Kingdom's Secretary of State for Culture, Media, and Sport, with its principal place of business in London, England. The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films Ltd., and its international distribution partner, Blue Ant Media Corporation.

13. Defendant, BBC Studios Distribution Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

14. Defendant, BBC Studios Productions Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are completely diverse, as President Trump is a citizen of Florida, while all Defendants are citizens of the United Kingdom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     The Court possesses personal jurisdiction over Defendants pursuant to Florida Statute 48.193(2) because Defendants, during the operative period alleged in this Complaint, engaged in substantial and not isolated business activities in Florida, and more specifically in this District. Defendant BBC publishes online news reports, editorials, and other media content at https://www.bbc.com, which are regularly accessed by individuals in Florida.

17.     The BBC operates in the United States not as an abstract concept but in a constant manner; the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location.

18.     The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web

pages entitled "Florida – BBC News"[5] and "Florida – BBC Weather,"[6] among others. The BBC also offers web pages specific to cities in Florida.[7]

19. Additionally, the BBC offers subscriptions to individuals in Florida and as a result, has thousands of subscribers in Florida. Any individual in the United States, including Florida, can pay for a subscription to the BBC's content and services.[8]

20. Individuals in the United States, including Florida, also have another option for consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform.[9] *BritBox* is available in the United States, including in Florida, and has thousands of subscribers in Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount of the BBC's original content—including *Panorama*.

21. Accordingly, BBC has engaged, and continues to engage in, substantial and not isolated activity in Florida.

---

[5] *Florida – BBC News*, BBC, https://www.bbc.com/news/topics/c77jz3mdq1jt (last visited Dec. 15, 2025).

[6] *Florida – BBC Weather*, BBC, https://www.bbc.com/weather/3442585 (last visited Dec. 15, 2025).

[7] *See, e.g., Miami – BBC News*, BBC, https://www.bbc.com/news/topics/cp7dde75nmlt (last visited Dec. 15, 2025).

[8] *Get even more from a BBC subscription*, BBC, https://www.bbc.com/subscribe (last visited Dec. 15, 2025).

[9] *BritBox by BBC*, https://www.britbox.com/us/?gclsrc=aw.ds&&utm_source=google&utm_medium=paid-search&utm_campaign=17444044535-137684208899&utm_content=602709820305&utm_term=g&gad_source=1&gad_campaignid=17444044535&gbraid=0AAAAADMxMXrfBmo_s56m_ZA2aFpeyy6C_&gclid=CjwKCAiA0eTJBhBaEiwA-Pa-hbSItFwaYwfNGsO5WR1trkY2tlU0j8XCZ76_KY4_xRzkIl0Sr6pPBxoCTrkQAvD_BwE (last visited Dec. 15, 2025).

22. In addition, this Court possesses personal jurisdiction over Defendants pursuant to: (a) Florida Statute §48.193(1)(a)(1), because Defendants operate, conduct, engage in, or carry on a business in Florida or have an office or agency in Florida, (b) Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act in Florida (as stated herein), and (c) Florida Statute §48.193(1)(a)(6) because Defendants caused injury to President Trump within Florida arising out of an act or omission committed by Defendants in Florida, while at or about the time of the injury, products and services provided by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

23. The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie ("Davie") stated in his recent resignation letter: "Despite a hugely competitive market, I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*."[10]

24. The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC.

25. In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer.

---

[10] *Davie and Turness resignations in full*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c1k02vr1my2o (last visited Dec. 15, 2025). (Emphasis added).

7

26.     According to *vpnMentor*, a VPN research firm, VPN usage in Florida has skyrocketed since 2024, with a 51% increase in demand on December 19, 2024, and an over 1,000% increase in VPN usage at the beginning of 2025.[11]

27.     Florida streamers have opted to use VPNs to increase their "streaming freedom." Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer.[12]

28.     To that end, an article published by *Tom's Guide*, a reputable technology news outlet, revealed that a VPN usage survey showed that approximately 41% of VPN subscribers use the service to stream content, citing BBC iPlayer as an example of what a VPN subscriber could view using a VPN.[13]

29.     The *Panorama* Documentary's publicity, coupled with significant increases in VPN usage in Florida since its debut, establishes the immense likelihood that citizens of Florida accessed the Documentary before the BBC had it removed.

---

[11]     *Floridians Flock to VPNs As Age-Verification Law Takes Effect*, TAMPA FREE PRESS (Jan. 8, 2025) (https://www.tampafp.com/floridians-flock-to-vpns-as-age-verification-law/) (last visited Dec. 15, 2025).

[12]     *Florida VPN Surge: Why VPN Usage Skyrocketed 1,000% in Florida* (2025), TRUSTED TECHSPOT (https://trustedtechspot.com/florida-vpn-surge/) (last visited Dec. 15, 2025).

[13]     *More Than 40% of VPN Subscribers Use Them for Streaming – Here's Why*, TOM'S GUIDE (June 2, 2021) https://www.tomsguide.com/features/more-than-40-of-vpn-subscribers-use-them-for-streaming-heres-why) (last visited Dec. 15, 2025).

8

30.     Articles like those published by Tom's Guide[14] and PureVPN[15]—giving a summary of the *Panorama* Documentary's plot, telling users how to view the Documentary, and going as far as to provide links to VPNs that allow a user to view BBC iPlayer—make it overwhelmingly certain that Floridians accessed the Documentary using a VPN during the time the Documentary was available.

31.     Further supporting the fact that Floridians accessed the *Panorama* Documentary through a VPN, *The Guardian* reported that research showed that "65 million people from abroad watch the broadcaster's license-fee funded iPlayer service using proxy servers or virtual private networks."[16]

32.     As underscored by the Chairman of the FCC, Brendan Carr, "[t]he BBC has stated that it has a number of partnerships with U.S. broadcasters, including PBS and NPR, to distribute BBC programming here in America."[17]

---

[14]     *How to Watch 'Trump: A Second Chance?'*, TOM'S GUIDE (Oct. 28, 2024) (https://www.tomsguide.com/entertainment/streaming/how-to-watch-trump-a-second-chance-online-from-anywhere) (last visited Dec. 15, 2025).

[15]     *How to Watch 'Trump: A Second Chance in the US'*, PUREVPN https://www.purevpn.com/how-to-watch-trump-a-second-chance-in-the-us (last visited Dec. 15, 2025).

[16]     Paul Revoir, *BBC iPlayer 'Watched By More Than 60 Million People Outside the UK for Free'*, THE GUARDIAN (July 21, 2015) (https://www.theguardian.com/media/2015/jul/21/bbc-iplayer-uk-vpn-proxy-server) (last visited Dec. 15, 2025).

[17]     *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at* BCC (Nov. 19, 2025) (https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed) (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025) (https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/) (last visited Dec. 15, 2025).

33. The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida.

34. Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary,[18] including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025.[19]

35. Blue Ant aggressively advertised its exclusive distribution of the *Panorama* Documentary outside of the United Kingdom, further evidencing the intent of the BBC and its strategic partners to disseminate the Documentary as widely and into as many streams of commerce and channels of distribution as possible, including Florida.[20]

---

[18] Karolina Kaminska, *Blue Ant Studios to shop BBC's 'President Trump: A Second Chance?' In Cannes*, C21 MEDIA (Oct. 10, 2024), https://www.c21media.net/news/blue-ant-studios-takes-october-films-president-trump-a-second-chance-to-cannes/ (last visited Dec. 15, 2025).

[19] Nicholas Sokic, *Blue Ant pulls BBC Trump doc from catalogue*, PLAYBACK (Nov. 12, 2025), https://playbackonline.ca/2025/11/12/blue-ant-pulls-controversial-bbc-trump-doc-from-catalogue/ (last visited Dec. 15, 2025) ("Blue Ant rights has confirmed that it has pulled the BBC *Panorama* documentary on U.S. President Donald Trump from its catalogue amid the controversy surrounding the film.").

[20] *'President Trump: A Second Chance?' Launches at MIPCOM 2024*, BLUE ANT MEDIA CORPORATION (Oct. 10, 2024), https://web.archive.org/web/20250712071622/https://blueantmedia.com/2024/10/president-trump-a-second-chance-launches-at-mipcom-2024/ (last visited Dec. 15, 2025) ("Blue Ant Studios today confirms that the explosive Donald Trump documentary, produced by October Films, has just wrapped production with the working title, President Trump: A Second Chance? Commissioned by BBC's Panorama, and produced by October Films, this hotly anticipated and

36. Further, and as explained in greater detail below, the BBC elected to publish the *Panorama* Documentary just one week before the 2024 United States Presidential Election with the express intent of interfering with it and trying to undermine President Trump's odds of winning reelection.

37. Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago, in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary.

38. The BBC explicitly instructed and ordered its producers to travel to Florida and to utilize this forum for the purpose of creating the Documentary and defaming President Trump.

39. The *Panorama* Documentary contains extensive evidence and examples of the BBC's producers gathering original footage specifically for use in the Documentary—not using stock footage—at Mar-a-Lago and nearby in the Palm Beach area on April 4, 2023, as well as on other dates. These examples include, but are not limited to: (a) Between 2023 and 2024, the BBC, or its contractors, filmed (i) a wide angle aerial view of Mar-a-Lago taken from a vantage point in the Lake Worth Lagoon (3:57 into the Documentary), (ii) a wide angle aerial view of Mar-a-Lago from a vantage point just north facing the Atlantic Ocean (4:47), (iii) a wide angle shot of the Mar-a-Lago pool and exterior and added a graphic "Trump Residence, Mar-a-Lago Florida" (5:00); and (b) on April 4, 2023, BBC producers and BBC-contracted crew members filmed (i) supporters of

distinctive 1x60 documentary will make its official international debut at MPICOM, where attending buyers will have an exclusive previews.").

11

President Trump lining the streets as President Trump's motorcade proceeded with President Trump through Palm Beach on the way to Mar-a-Lago (4:03), (ii) Rick Frazier, a supporter of President Trump, in the passenger seat of a vehicle as it followed the motorcade on the approach to Mar-a-Lago (4:09), (iii) The vehicle carrying Frazier as it entered Mar-a-Lago (4:51), (iv) Frazier as he walked in to Mar-a-Lago (5:03), (v) President Trump as he walked in to Mar-a-Lago to deliver a speech (5:11), (vi) Supporters cheering for the President as he prepared to speak inside Mar-a-Lago (5:24), (vii) President Trump as he delivered a speech to supporters inside Mar-a-Lago (5:27), and (viii) Frazier as he interacted with other supporters of President Trump (6:15 and 6:55).

40. The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida.

41. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: President Trump is a citizen of Florida who was defamed by the BBC while in Florida, the BBC filmed the *Panorama* Documentary in significant part in Florida, and the BBC, in concert with its strategic partners including October Films Ltd. and Blue Ant Media Corporation, distributed the Documentary into Florida.

**FACTUAL ALLEGATIONS**

***The BBC's Defamatory and Deceptive Depiction of
President Trump's Speech in the Panorama Documentary***

    i.      <u>The BBC Splices and Distorts President Trump's Speech</u>

42.     The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary wrongly made it appear that he said: "*We're going to walk down to the Capitol, and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

43.     This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory, given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

44.     Moreover, to further the BBC's intended, false, malicious, and defamatory message that President Trump fomented violence, which he did not, the BBC intentionally omitted President Trump saying, less than one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building*

13

*to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

> ii. *The BBC's Director General and Head of News Resign in Disgrace,*
> *and the BBC, Under Fire, Reluctantly Admits Wrongdoing*

45. On November 9, 2025, Davie and News CEO Deborah Turness resigned in disgrace over their leading roles in the *Panorama* Documentary.[21]

46. Also on November 9, 2025, President Trump's counsel emailed a letter to Samir Shah (Chairman of the BBC) and Sarah Jones (General Counsel) entitled "Demand to Retract False and Defamatory Statements About The President of the United States of America" demanding retraction of the BBC's false depiction of President Trump, an apology for the false depiction of President Trump, and monetary compensation. ***See* Exhibit A**.

47. By letter dated November 13, 2025, the BBC's counsel indicated that the BBC would apologize to President Trump but, somehow, ignoring the resignations of the BBC's leadership, admitting of wrongdoing, and apology, still attempted to deny intentional wrongdoing and declined to pay damages. ***See* Exhibit B**.

48. Enclosed with the letter from counsel was a letter of apology from Chairman Shah, which stated, *inter alia*:

> Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. ***This gave the mistaken impression that you had made a direct call for violent action****. **That was an editorial error and it should not have happened****. **I have stated clearly and publicly that the BBC apologises for that error of judgement***. As it was your

---

[21] Aleks Phillips and Helen Bushby, *BBC director general and News CEO resign over Trump documentary edit*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c3vn25d5dq7o (last visited Dec. 15, 2025) ("It is unprecedented for both the director general and the head of BBC News to resign on the same day."); *see also Davie and Turness resignations in full*, *supra*.

speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

*Id.* (emphasis added).

49.     The BBC then published the following apology on its "Corrections and Clarifications" page, which was also included in the November 13 letter:

**Panorama – Trump: A Second Chance?**

**28 October 2024**

This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.

During that sequence, we showed excerpts taken from different parts of the speech.

However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, *and **that this gave the mistaken impression that President Trump had made a direct call for violent action***.

The BBC would like to apologise to President Trump for that **error of judgment**.

This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.[22]

50.     Notably, the BBC did not broadcast a correction, apology, or retraction during a broadcast in a comparable manner as the *Panorama* Documentary, or with a comparable audience.

### *Substantial Evidence of The BBC's Actual Malice*

51.     Contrary to the BBC's claim that its splicing, manipulation, and distortion of the Speech was an unintentional "editorial error," substantial evidence suggests that this was an intentional and malicious effort to falsely and deceptively portray President Trump as having called for violent action on January 6, 2021.

---

[22]     *Corrections and Clarifications*, BBC (Nov. 13, 2025), https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/ (last visited Dec. 15, 2025) (emphasis added).

52. As an initial matter of common sense, it would have been impossible for BBC's journalists and producers to splice together two distinct parts of the Speech from nearly 55 minutes apart *unless* they were acting intentionally. Such a dramatic distortion could never have occurred by accident. Two distinct parts of a speech from nearly 55 minutes apart do not inadvertently become spliced or linked together without effort, knowledge, and purpose. In parallel, by definition, an "an error of judgment," as admitted to by the BBC, is not inadvertent, it includes an intentional act.

53. The BBC's actual malice is further compounded by its prior acts that unequivocally demonstrate that the organization has been anything but fair and impartial when it comes to reporting on President Trump. Substantial evidence demonstrates that before the publication of the *Panorama* Documentary, the BBC and its leadership bore President Trump ill will, wanted him to lose the 2024 Presidential Election, and were dishonest in their coverage of him.

54. The BBC, its journalists, and its producers knew at and prior to the time they published the *Panorama* Documentary that the BBC's depiction of President Trump's Speech was false.

       i.     *The Prescott Memorandum*

55. In the early Summer of 2025, Michael Prescott, a journalist who until June 2025 was an independent adviser to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board "expos[ing] a string of incidents that demonstrate serious bias in the corporation's reporting"; following the leak of the Memorandum, *The Telegraph* published the Memorandum in early November 2025.[23]

---

[23]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

56. Prescott highlighted a litany of disturbing misconduct demonstrating how far the BBC has strayed from accepted standards of journalistic integrity, including, but not limited to, the BBC's tampering with President Trump's Speech in the Documentary.[24]

57. Notably, Prescott is nonpartisan, as he wrote in the Memorandum:

I think it is important to state that I have never been a member of any political party and do not hold any hard and fast views on matters such as American politics or disputes in the Middle East. My views on the BBC's treatment of the subjects covered below do not come with any political agenda. Rather, what motivated me to prepare this note is despair at inaction by the BBC Executive when issues come to light. On no other occasion in my professional life have I witnessed what I did at the BBC with regard to how management dealt with (or failed to deal with) serious recurrent problems.[25]

58. Regarding the *Panorama* Documentary, Prescott wrote:

I watched the programme and found it to be neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance. Critics of the Republican presidential candidate vastly outnumbered those who argued for him. What examination there was of reasons for Trump's popularity seemed to me insufficient given the overall balance of the programme. Given what I took to be the anti-Trump nature of the programme, I of course assumed there would be a similar, balancing Panorama programme about Democrat presidential candidate Kamala Harris the following week. I remain shocked that there was not.[26]

59. Prescott was not alone in his assessment:

I raised my concerns at the EGSC and David Grossman [Senior Editorial Adviser to the EGSC] was asked to review the programme. He concluded the main contributors to the documentary were heavily weighted against Trump, with just one supporter against ten who questioned his fitness for office. Worse still, David highlighted alarming concerns about how Panorama had edited Trump's speech to his supporters on January 6, 2021 . . . . Examining the charge that Trump had incited protesters to storm Capitol Hill, it turned out Panorama had spliced together two clips from separate parts of his speech. This created the impression that Trump said something he did not and, in doing so, materially misled viewers.[27]

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

60. Prescott concluded about the splicing of President Trump's Speech that:

This was one of the most shocking sets of issues uncovered during my time with the EGSC. If BBC journalists are allowed to edit video in order to make people "say" things they never actually said, then what value are the Corporation's guidelines, why should the BBC be trusted, and where will this all end?[28]

ii. *The 2022 BBC Newsnight Distortion Demonstrating that the Panorama Documentary Splice is Part of a Defamatory Pattern by the BBC of Falsely Depicting President Trump Through Doctored Footage*

61. As further revealed by *The Telegraph*, the BBC also aired similarly doctored footage of President Trump's Speech on a 2022 episode of *BBC Newsnight*.[29]

62. In the doctored Speech clip aired by *BBC Newsnight*, President Trump is falsely, maliciously, and defamatorily depicted as saying: "*We're going to cheer on our brave senators and congressman and women, and we fight, we fight like hell*."[30]

63. What President Trump really said was: "*[A]nd we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them.*"[31] (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech).

---

[28] *Id.*

[29] Camilla Tominey, Tim Stanley, John Cadigan, Rob Crilly, *BBC Newsnight also doctored Trump speech*, THE TELEGRAPH (Nov. 13, 2025), https://www.telegraph.co.uk/news/2025/11/13/bbc-doctored-trump-speech-second-time-newsnight/ (last visited Dec. 15, 2025).

[30] *Id.*

[31] *Id.*

18

64.     As *The Telegraph* reported: "Spliced footage of the speech, which aired in an episode in 2022, made it appear that Mr. Trump was encouraging his supporters to riot. The edit was much like a version aired in a *Panorama* documentary broadcast last year."[32]

65.     As further reported by *The Telegraph*: "Like *Panorama*, the *Newsnight* edit made it look as if the US President had urged supporters to walk to the Capitol building with him to 'fight like hell' by linking statements made nearly an hour apart in his speech."[33]  The harm caused by this doctoring was exacerbated by the BBC intentionally omitting President Trump stating, only one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

66.     Immediately after the *BBC Newsnight* episode aired, Mick Mulvaney, former Acting White House Chief of Staff, and David Chaudoir, former award-nominated graphic designer for *BBC Newsnight* from 2022-24, both individually voiced their concerns regarding the misleading and malicious way *BBC Newsnight* edited the clip to distort reality.[34]

67.     Mr. Chaudoir specifically told *The Telegraph* that he was present for discussions about the *BBC Newsnight* clip the day after it was published, wherein *BBC Newsnight* production team members dismissed any ethical concerns about the *BBC Newsnight* clip.[35]

---

[32]     *Id.*

[33]     *Id.*

[34]     *Id*.

[35]     *Id*.

68. Mr. Mulvaney expressed his concern on-air while being interviewed on *BBC Newsnight,* stating:

> Your video actually spliced together the presentation. He said: 'We're going to go down and we're going to cheer on our senators and our house members' and then it actually goes on to say 'And some of them we might not be able to' and that line about 'and we fight and fight like hell' is actually later in the speech yet your video makes it look like those two things came together. [36]

69. The malicious nature of the spliced and edited clip is further underscored by former BBC legal affairs correspondent Clive Coleman's statements in response to the *Panorama* Documentary, stating:

> I really struggle to understand how we got to this place . . . The first lesson almost you're taught as a broadcast journalist is that you do not join two bits of footage together from different times in a way that will make the audience think that it is one piece of footage. [37]

iii. *The 2024 BBC News Shooting Hoax Further Demonstrating that the Panorama Documentary Doctoring is Part of an Defamatory Pattern by the BBC of Falsely Depicting President Trump Calling for Violence*

70. As also revealed by *The Telegraph*, the BBC "has admitted misleading viewers by claiming that Donald Trump called for one of his leading critics to be shot in the face."[38]

71. This admission by the BBC, regarding three instances of false statements about

---

[36] *Id*.

[37] Faith Wardwell, *BBC Apologizes to Trump for Documentary Edits, but Pushes Back on Legal Threat*, POLITICO (Nov. 13, 2025) (https://www.politico.com/news/2025/11/13/bbc-trump-apology-documentary-00651451) (last visited Dec. 15, 2025).

[38] Anita Singh, *BBC admits falsely claiming Trump wanted to shoot critic*, THE TELEGRAPH (Dec. 9, 2025), https://www.telegraph.co.uk/news/2025/12/09/bbc-admits-falsely-claiming-trump-wanted-to-shoot-critic/ (last visited Dec. 15, 2025).

President Trump supposedly calling for violence against a political opponent, none of which occurred, is contained in the now-public Memorandum, and yet the BBC has still failed to issue a public correction.[39]

72.    As described by *The Telegraph*:

> In the days before the US presidential election in November last year, a presenter on BBC World News America said that Mr. Trump "appeared to suggest Liz Cheney should face a firing squad for her stance on foreign policy."
>
> On the BBC News Channel, another presenter asked his guest: "He [President Trump] is out there on the campaign trail saying he wants people to shoot Liz Cheney in the face . . . Is that the sort of thing women react well to?
>
> Speaking on the Six O'Clock News the same night, Sarah Smith, the BBC's North America editor, said Mr. Trump had been "ratcheting up the violent rhetoric."
>
> She added: "In the latest spat, Donald Trump has been accused of being petty, vindictive and a wannabe tyrant because he suggested that one of his political opponents should face guns, have them trained on her face."[40]

73.    All these statements by BBC presenters were false.

74.    "In fact, Mr. Trump had accused Ms. Cheney of being a 'radical war hawk' who wanted to send troops to war while she remained in the safety of Washington DC, saying: 'Let's put her with a rifle standing there with nine barrels shooting at her face. OK? Let's see how she feels about it.'"[41]

75.    This false, defamatory, and malicious coverage of President Trump, broadcast in the same time period as the release of the *Panorama* Documentary, was consistent with the BBC's *modus operandi*, defaming President Trump by fabricating calls for violence allegedly issued by him, that he never actually made.

---

[39]    *Id.*

[40]    Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

[41]    *Id.*

21

*iv.*  *The Panorama Documentary Was Intentionally One-Sided and Inflammatory, demonstrating that the Doctoring of President Trump's Speech Was Intentional and <u>Part of the BBC's Defamatory Pattern</u>*

76.     The lack of any effort by the BBC to publish content even remotely resembling objective journalism, or to maintain even a slight semblance of objectivity in the *Panorama* Documentary, demonstrates that the BBC had no regard for the truth about President Trump, and that the doctoring of his Speech was not inadvertent, but instead was an intentional component of the BBC's effort to craft as one-sided an impression and narrative against President Trump as possible.

77.     Indeed, by any measure, including the overwhelming ratio of anti-Trump versus pro-Trump commentators in the *Panorama* Documentary, the exceptionally high percentage of time granted to these negative voices in the Documentary versus the positive voices, and the inflammatory content of the negative remarks, all coupled with the BBC's historical unfairness to the President, it is apparent that the BBC fabricated the Documentary to damage President Trump. Doctoring his Speech was consistent with, and part of, the BBC's *modus operandi* of negatively covering President Trump without any pretense of objectivity.

78.     The BBC's aggressively anti-Trump stance is reflected straightaway in the opening scene of the *Panorama* Documentary's introduction, which runs for almost three minutes and begins with noted anti-Trump commentator Rick Wilson—who has written two books criticizing President Trump, *Everything Trump Touches Dies* (2018) and *Running Against the Devil: A Plot to Save America From Trump-and Democrats from Themselves* (2020), and has called the President "the devil" and a "cult leader"—declaring, to the backdrop of ominous cinematic music reaching a dramatic crescendo: "I'm the leading anthropologist of Donald Trump in the, in the

world, probably, I've thought about him and studied him more than probably anybody else, and I hate him. I hate what he is, and what he does."

79. Seconds later, Wilson states of President Trump: "When you let the monster escape, it will come back, it is a rule of every damn horror movie in history."

80. Former Clinton Secretary of Labor and current Berkeley Professor Robert Reich, another vocal critic of President Trump, then offers: "Once you've unleashed this anger, this hate, into the blood of America, well, it's very very difficult to stop it."

81. A greater majority of the verbal commentary in the *Panorama* Documentary features negative assertions about President Trump by twelve individuals known to be hostile to the President, all of whom are presented as having some form of relevant expertise and authority about the subject matter presented. Moreover, an overwhelming majority of the overall Documentary, including the non-interview segments depicting political and historical events from recent years, presents President Trump in a negative light.

82. Further demonstrating the BBC's malice and intent to interfere with the 2024 Presidential Election, the *Panorama* Documentary, after lingering at length on the events of January 6, 2021, cuts to a clip from the Democratic National Convention on August 22, 2024, showing Kamala Harris taking the stage with a news anchor breathlessly exclaiming in the background: "And here she is, Kamala Harris. It's hard to describe just how electric the mood is here right now."

83. Toward the end of the *Panorama* Documentary, Reich shockingly compares President Trump to "Adolf Hitler," which rises to defamation itself, while Democrat Congressman Jared Huffman refers to the President as a "cult leader," also a defamatory statement.

23

84. Others then join Reich in delivering hyperbolic warnings about President Trump and the supposedly catastrophic consequences that would ensue if President Trump were to emerge victorious.

85. "The degree to which his pessimism and darkness has infected half this country terrifies me," adds Wilson. "There is no ideology in the Republican party except pain, they want vengeance," he continues.

86. Berkeley Political Science Professor Steven Fish asserts "There's a reason why Xi Jinping and Vladimir Putin and Kim Jong Un and all these despots all over the world are rooting so hard for Trump because what Trump does is he seems to discredit democracy in the land of its stronghold, in the strongest democracy in the world, Trump seems to be proof that democracy doesn't work."

87. Boston College History Professor Heather Cox Richardson offers, "this is the time when we either choose authoritarianism or democracy, and if we choose authoritarianism, there will be no turning back, so I think we better get this one right."

88. Reich delivers a closing remark to punctuate the BBC's parade of bias: "Wish us luck, by us, I mean the United States."

> v. *Prominent Voices Condemn the BBC and Confirm the BBC's Longstanding Pattern of Actual Malice Against President Trump*

89. The BBC is so institutionally biased against President Trump and so devoid of self-awareness that, in response to the above letter from President Trump's counsel (**Exhibit A**), it

24

published a baseless and meritless article questioning the merits of any lawsuit that the President might bring against the BBC.[42]

90. No less an authority than the United Kingdom's former Prime Minister, Liz Truss, discussed this bias, the need to hold the BBC accountable, and the BBC's pattern of actual malice.[43]

91. Remarked Truss: "[The BBC] is a huge problem. They've lied, they've cheated, they've fiddled with footage, especially in the case of President Trump, but also covering up what's happening in Britain whether it's mass migration, whether it's our economic problems, they are always biased towards the left . . . ." She was also asked whether the BBC's tepid apology was sufficient, and responded: "No I don't, because they keep doing it again and again. They have painted a completely false picture of President Trump in Britain over a number of years, they've done the same thing about conservatives in our country . . . ." Lamenting the BBC's lost status as a "paragon" of journalism, she remarked that the BBC's "fake news" has caused immense harm to the public for a long time.[44]

92. Caroline Dinenage, head of the House of Commons' Culture, Media, and Sport Committee said that Members of Parliament need assurances that the BBC was "taking decisive steps to uphold the corporation's reputation for integrity and public trust." She further remarked:

---

[42] Kayla Epstein and Madeline Halpert, *Trump vs. the BBC: What hurdles might the President's legal argument face?*, BBC (Nov. 11, 2025), https://www.bbc.com/news/articles/c709y1yx1r0o (last visited Dec. 15, 2025).

[43] *Former UK prime minister calls out BBC, encourages Trump to continue lawsuit*, FOX NEWS (Nov. 15, 2025), https://www.foxnews.com/video/6385140049112 (last visited Dec. 15, 2025).

[44] *Id*.

"The Corporation must set the benchmark for accurate and fair reporting, especially in a media landscape where it is all too easy to find news presented in a less than impartial way."[45]

93.     Conservative Party leader and Member of Parliament Kemi Badenoch said that the distortion of the Speech by the *Panorama* Documentary was "absolutely shocking," adding: "That is fake news, actually putting different things together to make something look different from what it actually was." She continued: "And I do think heads should roll. Whoever it was who did that should be sacked, that's what Tim Davie should be doing, identifying who put out misinformation, and sacking them."  Badenoch added: "The public need to be able to trust our public broadcaster . . . They should not be telling us things that are not true. This is a corporation that needs to hold itself to the highest standards, and that means that when we see people doing the wrong thing, they should be punished, they should be sacked."[46]

94.     Lisa Nandy, Secretary of State for Culture, Media and Sport of the United Kingdom, has similarly expressed concern, stating: "there is a real concern, which I share, that political appointments to the board of the BBC damaged confidence and trust in the BBC's impartiality."[47]

95.     FCC Chairman, Brendan Carr, in a letter addressed to Davie, Paula Kerger, (President and CEO of PBS), and Katherine Maher (CEO of NPR), strongly stated:

> As you know, the BBC was recently caught intentionally distorting a speech that President Trump gave in January of 2021. It did so by splicing together one portion of the speech with an entirely separate portion of the speech that came 54 minutes later. In doing so, the BBC program depicts President Trump voicing a sentence

---

[45]     *BBC has questions to answer over edited Trump speech, MPs say*, BBC (Nov. 4, 2025), https://www.bbc.com/news/articles/ckgzkyk7knzo.amp (last visited Dec. 15, 2025).

[46]     *Id*.

[47]     *'Real Concern' About Political Appointees on BBC Board, Nandy Says*, BBC (Nov. 14, 2025), https://www.bbc.com/news/articles/cdeg0ngnj0yo (last visited Dec. 15, 2025).

that, in fact, he never uttered. That would appear to meet the very definition of publishing a materially false and damaging statement.[48]

96.    Carr continued, highlighting the findings of the Memorandum:

Indeed, there has now been widespread condemnation of the BBC's decision. A former independent external advisor to the BBC's Editorial Guidelines and Standards Committee, Michael Prescott, told the BBC that its decision "created the impression that Trump said something he did not and, in doing so, materially misled viewers." Likewise the Prescott Report states that the BBC program was "neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance.' In sum, it was a 'distortion of the day's events," the Prescott Report continued.[49]

### *Damages*

97.    Since its publication, the *Panorama* Documentary has gained substantial traction and republication across various media in the United States and elsewhere globally.

98.    Defendants used their false and defamatory publications to maliciously disparage and damage President Trump and impugn his reputation.

99.    Specific, extensive economic harms resulted from these defamatory statements. Defendants timed the publication of the *Panorama* Documentary to be close in time to the 2024 Presidential Election, releasing it only one week before the Election.

100.    The value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal

---

[48]    *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at BCC* (Nov. 19, 2025), https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025), https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/ (last visited Dec. 11, 2025).

[49]    *Id.*

27

reputation inflicted by these Defendants, and their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist, continue into the present, thereby causing massive economic damage to his brand value and significant damage and injury to his future financial prospects, in addition to continuing to harm his reputation as President of the United States of America.

101. President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

102. Exacerbating the damages, Defendants, at and prior to the time of their doctoring of the Speech, knowingly made their false, deceptive, malicious, and defamatory depiction of President Trump in bad faith, motivated by malice and ill-will against President Trump without any regard for the truth, and contrary to information Defendants possessed that showed their depiction to be false

103. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

## CLAIMS FOR RELIEF

## COUNT I – DEFAMATION *PER SE*

104. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

105. The following false, deceptive, malicious, and defamatory statements and depictions of and about President Trump, were, intentionally, with actual malice, and without privilege, published in the *Panorama* Documentary to millions of people in the State of Florida

28

and in this District, and elsewhere, by all Defendants, and were defamatory and false, and injured President Trump in his profession, occupation, and trade, thus constituting defamation *per se*:

(a) The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary made it seem that he stated: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

(b) This fabricated depiction of President Trump during the Speech was false and defamatory given that President Trump's actual and full remarks during the Speech were (i) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (ii) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021, 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

(c) Moreover, to further the BBC's intended, false, malicious, and defamatory message and impression that President Trump fomented violence, the BBC intentionally omitted President Trump stating, only one minute after urging supporters to cheer

29

on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

106. Defendants possessed information and had access to information which showed that their statements about, and representation and depiction of President Trump were false.

107. Defendants had no factual basis for this false depiction of President Trump.

108. Defendants' deceptive and defamatory distortion, doctoring, manipulation, and splicing damaged President Trump in his occupation, damaged his professional reputation, and portrayed him as engaging in supposed calls for rioting and violence that he never actually made.

109. The *Panorama* Documentary was not a continuation of a prior broadcast. Instead, it was the result of a separate and distinct decision by Defendants to maliciously disseminate false statements about President Trump in a new medium.

110. As pled *supra*, Defendants knew that their portrayal of the Speech in the *Panorama* Documentary was false, malicious, and defamatory.

111. Defendants' actual malice in publishing the *Panorama* Documentary is evidenced by their intentional splicing and distorting two entirely separate sentences made by President Trump during the Speech nearly 55 minutes apart, while omitting his statement calling for peace made less than one minute after his first statement urging supports to cheer on their senators and congressmen at the Capitol.

112. As a proximate result of the maliciously false and defamatory *per se* publication of a statement and depiction to third parties by Defendants, President Trump has been damaged.

113. Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards President Trump, he seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, and such other relief as this Court may deem just and proper.

### COUNT II – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

114. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

115. In addition, this action is brought for violation of the Florida Deceptive and Unfair Trade Practices Act as codified in Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

116. Defendants are engaged in the conduct of trade and commerce in the State of Florida.

117. Defendants have violated the FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia,* intentionally and maliciously seeking to completely mislead their viewers by splicing together two separate parts of President Trump's Speech, while omitting other critical parts of the Speech in such a manner as to intentionally, falsely, maliciously, and defamatorily change the meaning of what President Trump said.

118. As a direct, proximate, and foreseeable result of Defendants' violation of FDUTPA, President Trump has suffered and continues to suffer substantial damages.

119.     Pursuant to Fla. Stat. §501.2105, President Trump is entitled to recover his attorneys' fees and costs from Defendants.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, President Trump, hereby demands a jury trial as to all issues so triable.

Dated:  December 15, 2025                                  Respectfully submitted,

                                                          */s/Alejandro Brito*
                                                          Alejandro Brito
                                                          Florida Bar No. 098442
                                                          BRITO, PLLC
                                                          2121 Ponce de Leon Boulevard
                                                          Suite 650
                                                          Coral Gables, FL 33134
                                                          Tel:  305-614-4071
                                                          Fax:  305-440-4385
                                                          abrito@britopllc.com
                                                          apiriou@britopllc.com

                                                          */s/Edward Andrew Paltzik*
                                                          Edward Andrew Paltzik
                                                          Taylor Dykema PLLC
                                                          914 E. 25th Street
                                                          Houston, TX 77009
                                                          Tel: 516-526-0341
                                                          edward@taylordykema.com
                                                          (*pro hac vice application forthcoming*)

<div style="margin-left:50%">

_/s/Daniel Zachary Epstein_
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*

</div>



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

November 9, 2025

**Via Email**

Mr. Samir Shah
Chairman
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**samir.shah@bbc.co.uk**

Ms. Sarah Jones
General Counsel
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**sarah.jones@bbc.co.uk**

>    **Re:    Demand to Retract False And Defamatory Statements
>    About The President of the United States of America**

Dear All:

This law firm serves as litigation counsel for President Donald J. Trump (hereinafter referred to as "President Trump"). Please direct all future correspondence relating to this matter to my attention. This correspondence serves as a demand under Florida Statute § 770.01[1] that you immediately retract the false, defamatory, disparaging, and inflammatory statements made about President Trump, which were published in a *Panorama* documentary that was fabricated and aired by the BBC. Failure to comply will leave President Trump with no choice but to pursue any and all legal rights and remedies available to recover damages for the overwhelming financial and reputational harm that the BBC has caused him to suffer, with all rights and remedies being expressly reserved by President Trump.

In the *Panorama* documentary, titled "Trump: A Second Chance,"[2] which was first broadcast on October 28, 2024—a week before the 2024 United States presidential election—the BBC intentionally sought to completely mislead its viewers by splicing together three separate

---

[1] President Trump does not agree or admit that only Florida law applies to any claims he might have in connection with or arising out of the Article and expressly reserves all rights concerning applicable law.

[2] *See* https://www.bbc.co.uk/programmes/m0024h6r. According to the BBC's website, the defamatory documentary was broadcast three times on October 28, 2024, and a fourth time on November 2, 2024.

Alejandro Brito
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

parts of President Trump's speech to supporters on January 6, 2021. The documentary showed President Trump telling supporters: "We're gonna walk down to the Capitol and I'll be there with you and we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore." This fabricated depiction of President Trump was false and defamatory given that President Trump's actual and full remarks were: "We're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down any one of you but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women." Moreover, the BBC edited out President Trump saying, "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Thus, as set forth in an internal whistleblower memorandum, the BBC's segment maliciously made it appear that President Trump "[said] things [he] never actually said," by editing together footage from the start of the speech with a separate quote early an hour later.

Due to their salacious nature, the fabricated statements that were aired by the BBC have been widely disseminated throughout various digital mediums, which have reached tens of millions of people worldwide. Consequently, the BBC has caused President Trump to suffer overwhelming financial and reputational harm.

### A. Applicable law.

Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Statements are defamatory if "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *See Zambrano v. Devanesan*, 484 So. 2d 603, 607 (Fla. 4th DCA 1986).

Even if the BBC attempts to whitewash its conduct as simply an expression of its opinions, Florida law makes clear that such a defense will not absolve its liability. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. ***Simply couching such statements in terms of opinion does not dispel these implications***.") (emphasis added); *see also Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983) ("***[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable***.") (emphasis added).

Alejandro Brito
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

Consequently, the BBC lacks any viable defense to the overwhelming reputational and financial harm it has caused President Trump to suffer.

**B. Demand**.

The above-referenced false, defamatory, malicious, disparaging, and inflammatory statements were published to deliberately denigrate President Trump. The timing of the fabricated documentary is evident. The BBC's reckless disregard for the truth underscores the actual malice behind the decision to publish the wrongful content, given the plain falsity of the statements. Accordingly, President Trump hereby demands that you: (1) immediately issue a full and fair retraction of the documentary and any and all other false, defamatory, disparaging, misleading, and inflammatory statements about President Trump in as conspicuous a manner as they were originally published; (2) immediately issue an apology for the false, defamatory, disparaging, misleading, and inflammatory statements about President Trump; and (3) appropriately compensate President Trump for the harm caused.

Moreover, please allow this letter to serve as notice to you, to your affiliated entities, subsidiaries, to all of their employees, and any other person acting on behalf of or in concert with the BBC, to preserve any and all evidence related in any way to the above-mentioned malicious, false, and defamatory statements the BBC published, and any other statements that the BBC has published regarding President Trump. By way of this letter, the BBC is hereby directed not to destroy, conceal, or alter any paper or electronic files, physical evidence, and/or other data relating in any way, no matter how remote, to your false claims regarding President Trump, and/or the circumstances leading to their dissemination, including, but not limited to: (1) all communications between you and any third party in any way related to your wrongful claims regarding President Trump; (2) all sources for your false claims regarding President Trump; (3) any and all documents and data referring to, reflecting, or relating to communications between you and any such third-parties or sources regarding your false claims regarding President Trump; and (4) any and all documents in any way related to your false claims regarding President Trump. This includes any information alleged to be protected by Florida Statute § 90.5015. *Monarch Air Group, LLC v. Journalism Dev. Network, Inc.,* No. 23-CV-61256, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (interpreting Fla. Stat. § 90.5015 and explaining that the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings.") (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)).

I understand that many records and files are maintained electronically. However, this letter specifically requests that all paper and hard copy originals be maintained and preserved in their original format. By the same token, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists and has been preserved, please preserve and maintain all electronically stored documents in their original native format, including all metadata. This preservation demand specifically encompasses any and all electronic documents,

3



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

including but not limited to, all word-processed files, emails, spreadsheets, all databases, log files, and any other electronically stored and/or generated documents or files.

If the BBC does not comply with the above by **November 14, 2025, at 5:00 p.m. EST**, President Trump will be left with no alternative but to enforce his legal and equitable rights, all of which are expressly reserved and are not waived, including by filing legal action for no less than $1,000,000,000 (One Billion Dollars) in damages. The BBC is on notice.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

# Ballard Spahr
LLP

------------------

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

November 13, 2025

*Via Email (abrito@britopllc.com) & Federal Express*

Alejandro Brito
Brito PLLC
2121 Ponce de Leon
Suite 650
Coral Gables, FL 33134

Re: November 9, 2025 Letter regarding BBC *Panorama* Documentary

Dear Mr. Brito:

Our office represents the British Broadcasting Corporation ("BBC"). We write regarding your letter to the BBC dated November 9, 2025, which you sent on behalf of President Donald J. Trump. You wrote with respect to the broadcast of the BBC's *Panorama* documentary titled "Trump: A Second Chance" ("the Program") on October 28 and November 2, 2024, depicting his supporters during President Trump's campaign for a second term in office. Please direct all further communication about your letter to my attention.

Your letter, citing Florida law, alleges that in a short clip of excerpts of his speech on January 6, 2021, the BBC "intentionally sought to completely mislead its viewers." President Trump alleges that the Program constituted defamation. The President threatens to bring a $1 billion defamation suit against the BBC.

Our client had no intention of misleading anyone. Indeed, the BBC has publicly expressed its contrition in statements to the Chair of Parliament's Culture, Media, and Sport Committee, on its website, and in the media. We also enclose with this letter a copy of the BBC's personal apology to President Trump, sent by email today to White House Chief of Staff Susie Wiles.

Additionally, the BBC has posted or shortly will post the following retraction:[1]

-------------------

[1] https://www.bbc.co.uk/programmes/m0024h6r and
https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/

Alejandro Brito
November 13, 2025
Page 2

> *This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.*
>
> *During that sequence, we showed excerpts taken from different parts of the speech.*
>
> *However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and that this gave the mistaken impression that President Trump had made a direct call for violent action.*
>
> *The BBC would like to apologise to President Trump for that error of judgement.*
>
> *This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.*

While the BBC sincerely regrets the manner in which the video clip was edited, for the following reasons, we strongly disagree that President Trump would have a basis for a viable defamation claim.

**First**, President Trump has made no allegation that the Program was published in Florida, as he must in order to establish personal jurisdiction over the BBC and to meet the publication requirement for a defamation claim. The BBC did not have contractual rights to, and therefore did not, distribute the Program on U.S. channels. Moreover, the version on its website linked to in your letter was geographically restricted to U.K. viewers. In any event, it ceased to be available even in the U.K. from 12 months after the Program aired. The President therefore has not established that he would have any jurisdictional basis to bring a claim against the BBC in Florida or elsewhere in the United States.[2]

**Second**, President Trump will not be able to prove that the Program caused him any injury, let alone the unspecified "overwhelming reputational and financial harm" he alleges.[3] He won reelection on November 5, 2024, after the Program aired. He carried Florida by a

---

[2] *See, e.g., Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (to be actionable as defamation, "the material . . . must not only be *accessible* in Florida, but also be *accessed* in Florida") (emphasis in original).

[3] *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. Cir. Ct. 2014) (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1997)) (given "negative publicity" from "a litany of news media entities" other than defendant NBC, "the challenged excerpts from and characterization of Zimmerman's statements . . . could not have been the required 'but for' cause of Zimmerman's alleged injuries").

2

Alejandro Brito
November 13, 2025
Page 3

commanding 13-point margin, improving over his 2020 and 2016 performances in the state.[4]

Moreover, when the Program aired, the President had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee Report found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[5] Given the extensive allegations prior to the release of the Program regarding his January 6 speech, in criminal and civil cases and among the press and public, the Program could not have caused any incremental harm.

**Third**, President Trump has no basis to allege that the BBC published the Program with actual malice – that is, knowing the Program was false or while entertaining serious doubts as to its truth – as he must.[6] Rather, as the BBC Chair has explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."[7]

Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements. In the course of their prosecutions, numbers of people arrested at the Capitol on January 6 told the courts that they interpreted President Trump's remarks as a call to

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g., Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

[6] *See, e.g., N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020). Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971).

[7] Letter from BBC Chair Samir Shah to Dame Caroline Dinenage MP (Nov. 10, 2025), https://committees.parliament.uk/publications/50118/documents/270340/default.

3

Alejandro Brito
November 13, 2025
Page 4

action.[8]

Further, the BBC has taken prompt corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," issuing a retraction, and confirming that the Program was not scheduled to be re-broadcast and will not be rebroadcast in that form on any BBC platforms. This further negates any suggestion of actual malice.[9]

**Fourth**, the brief clip, which shows about 15 seconds of President Trump's speech on January 6, is part of an hour-long program containing extensive coverage of his supporters praising President Trump, and presenting balanced coverage of his path to reelection. Courts consider challenged statements in the context of the full publication in which they were made. Accordingly, President Trump cannot create an actionable statement or implication by citing a singular clip but ignoring the remaining, overall context of the Program.[10]

**Fifth**, the Program contains protected expressions of opinion, including many from President Trump's ardent supporters. It depicts hotly contested events related to Presidential elections, including the events of January 6, 2021, which have been the subject of extensive controversy and litigation. In this context, even if the Program is reasonably interpreted to report that President Trump encouraged the crowd to march to the Capitol on January 6, that is an

---

[8] *See, e.g.*, Ryan J. Reilly, *Jan. 6 Rioter Who Said He Wanted Trump's 'Approval' Found Guilty by Jury*, CNBC (Apr. 14, 2022), https://www.cnbc.com/2022/04/14/jan-6-rioter-who-said-he-wanted-trumps-approval-found-guilty-by-jury.html ("A Donald Trump supporter who told jurors that he was 'following presidential orders' when he stormed the U.S. Capitol on Jan. 6 was found guilty on Thursday after he admitted that he stole a coat rack and a bottle of liquor from the building."); Shawna Chen, *Judge: Jan. 6 Rioter Who Broke into Capitol Followed "Trump's Instructions,"* Axios (Jan. 17, 2023), https://www.axios.com/2023/01/18/jan6-capitol-riot-trump-instructions ("A federal judge said Tuesday that a California woman who breached the U.S. Capitol during the Jan. 6 insurrection 'followed then-President Trump's instructions' in breaking the law."); Kyle Cheney, *Jan. 6 Defendant Wants Jurors to Blame Trump, Not Him, for Decision to Breach Capitol*, Politico (Apr. 13, 2022), https://www.politico.com/news/2022/04/13/january-6-defendant-donald-trump-00025019 ("Though dozens of defendants have argued in court filings that they believed Trump had authorized the assault on the Capitol, judges have largely rejected that contention and said rioters should be held to account for their own actions. But whether a jury sees that argument differently will be an important test that could reverberate across hundreds of other cases.").

[9] *See, e.g.*, *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

[10] *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020); *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

4

Alejandro Brito
November 13, 2025
Page 5

opinion on a matter of public concern, heavily protected under defamation law in the United States.[11]

For these reasons, the BBC declines President Trump's claim that the Program constituted defamation and his request for compensation.

We sincerely hope that the BBC's public statements of contrition, and the direct apology that we have given to the President, will suffice to put this matter to rest.

The BBC reserves all further rights and remedies, including those available under Fla. Stats. § 57.105 and § 768.295(2)(a).

Sincerely,

BALLARD SPAHR LLP

By Charles D. Tobin

Charles D. Tobin

Enclosure

---

[11] *See, e.g., Trump v. CNN*, 684 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (dismissing defamation case because network's description of President Trump's election challenges as the "Big Lie" was non-actionable opinion, not a statement of fact).



British Broadcasting Corporation

From the Chairman

Broadcasting House, London  W1A 1AA

The President
The White House
1600 Pennsylvania Avenue NW
Washington
D.C. 20500
United States of America

13 November 2025

Dear Mr President,

As the Chair of the BBC I wanted to write to you personally. At the same time the BBC's lawyers have today responded to your legal team. The BBC's overall legal position is as set out in that letter. I should make clear at the outset that what follows is my view as the Chair of the BBC. The organisation is, by Royal Charter, independent of His Majesty's Government and nothing I write should imply approval or disapproval by the United Kingdom Government.

Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement. As it was your speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

- 2 -

The documentary followed a number of your supporters and campaigners, who told the BBC why they wanted you to be re-elected in the 2024 US Presidential Election. The BBC's intention was to reflect their contributions to the documentary fairly and accurately, including their support for you and your Presidency.

Whilst the documentary was not scheduled to be rebroadcast, the BBC has also made public today that it will not be broadcast again on any BBC platforms in a form that includes the misleading sequence.

That the BBC produces content of the highest editorial quality is of paramount importance to me. As Chair, I take responsibility for personally ensuring that the BBC retains the trust and confidence of our audiences.

I would be happy to discuss this matter, should this be of interest to you.

Yours sincerely,

**Samir Shah**

**BBC Chair**

# Ballard Spahr
### LLP

– – – – – – – – – – – – – – – – – –

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com


May 7, 2026


*Via Certified Mail and Email*

James H. Percival
General Counsel
Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

Re:     *Touhy* Request for the Production of Documents in *Trump v. BBC*, Case No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Percival:

This law firm represents defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited in the above-referenced civil action pending in the United States District Court for the Southern District of Florida (the "Action"). We submit this request for information, identified below, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and 6 C.F.R. § 5.41, *et seq*.

## BACKGROUND

On December 15, 2025, Plaintiff President Donald J. Trump filed a two-count lawsuit alleging defamation and violations of the Florida Deceptive and Unfair Trade Practices Act against Defendants, arising from the documentary titled "*Trump: A Second Chance?*" ("the Documentary"). For your reference, we have attached a copy of the complaint to this letter as Exhibit 1. The Documentary explored for the BBC's U.K. audience the President's continued success with his loyal American voters, following some of his most ardent supporters, known as the "Front Row Joes," and speaking with experts in the run up to the November 2024 U.S. presidential election. Plaintiff alleges that the Documentary defamed him in its depiction of his speech on January 6, 2021 ("the Speech"), which he alleges falsely depicted him as inciting violence at the Capitol that day.

The Action puts directly into issue the factual circumstances of the violence at the Capitol building on January 6, 2021, including whether there were plans of violence ahead

James H. Percival
May 7, 2026
Page 2

of time, the communications about any planned violence, and whether individuals understood the Stop the Steal Rally or Trump's communications about January 6, 2021 as a call to violence.  Accordingly, the requested documents and information identified below are paramount to the case that Plaintiff has brought against Defendants.

At the moment, Plaintiff has not provided any such relevant documents or information himself in response to Defendants' written discovery requests propounded on him.  Furthermore, the information possessed by DHS about the intelligence it gathered regarding the events of January 6, 2021 are in the agency's possession, and accordingly would only be obtainable through this Request.

Given that Plaintiff's allegations have placed these documents in DHS's possession at the heart of the Action, and that Defendants need these documents to adequately defend themselves in court, the need for these documents outweighs any confidentiality of the information and any burden on DHS to produce these records.  As detailed below, the requested records are confined by date and subject matter to limit the intensiveness of any search for responsive documents.  Additionally, there is a protective order in place that will limit the exposure of any confidential items beyond the parties involved.

No previous decisions, orders, or pending motions in the Action bear upon the relevance of the requested records or testimony at this point.

**DEFENDANTS' TOUHY REQUEST SHOULD BE GRANTED**

Under 6 C.F.R. § 5.48, DHS considers several factors in evaluating a *Touhy* request.  The following factors favor providing the requested documents to Defendants:

- **Whether the demand is unduly burdensome or otherwise inappropriate under the applicable rules of discovery or the rules of procedure governing the case.** Compliance with this request would not be unduly burdensome given that the information and documents sought fall under a narrow scope, relating to a narrow date range and specific subject matter.  Accordingly, Defendants expect that it will not be particularly burdensome for DHS to provide documents limited to those topics.  Additionally, because the inquiry is limited to the lead up to a specific event, Defendants expect that retrieving any relevant documents should be relatively simple, as the event, dates, and individuals involved would be the search terms to guide production.  Compliance would likewise not be inappropriate under discovery or procedural rules. We stand by for any discussions about search strings that would help ensure this is not unduly burdensome on the agency.

James H. Percival
May 7, 2026
Page 3

- **Whether disclosure is appropriate under the relevant substantive law concerning privilege or disclosure of information.** Defendants do not believe that their requests would involve any privileged materials, such as trade secrets, commercial or financial information, attorney-client communications, attorney work product, documents that would fall under executive privilege, or documents that would impede any ongoing law enforcement investigations.

- **The public interest.** Because the President of the United States of America is Plaintiff in this Action, it is in the public interest for the Action to be resolved with a full factual record to resolve the disputes at issue so that Plaintiff may conclude this private litigation and focus on fulfilling his public duties. Additionally, because the allegations in this Action concern a matter of great public significance, the storming of the Capitol building of January 6, 2021, the resolution of the factual disputes in this Action serves a public interest as well by providing more clarity to the public about the events that unfolded.

- **The need to conserve the time of Department employees for the conduct of official business.** Because the scope of the requested information is limited to a confined period of time about a single subject matter, and because search terms can appropriately confine DHS's search for the requested records, Defendants do not expect that the request is resource-heavy for DHS.

- **The need to avoid spending the time and money of the United States for private purposes.** For the reasons stated above, Defendants believe that public time and money expended for this Action would be minimized. Additionally, while the Action concerns two private parties, because Plaintiff is the President of the United States and because the Action implicates the storming of the Capitol building of January 6, 2021—a historic, unprecedented event that played out on the public stage for the world to see. The resolution of the factual disputes in this Action, accordingly, holds import beyond the two private parties, and serves a public interest as well.

- **The need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated.** Nothing about Defendants' request would threaten the impartiality of DHS as the relevant documents are equally important to the Plaintiff for his affirmative case and the Defendants for their defense. Defendants' request is for the purpose of investigating the allegations that Plaintiff has made, which put into dispute how individuals understood Plaintiff's speech on January 6, 2021.

James H. Percival
May 7, 2026
Page 4

Accordingly, the documents that are relevant to this litigation are essential to both sides of this case.

- **Whether compliance would have an adverse effect on performance by the Department of its missions and duties.** Because Defendants believe the time needed to respond to this Request is minimal as discussed above, Defendants do not believe that complying with this Request will detract from the Department being able to act in furtherance of its missions and duties. Additionally, because Defendants seek documents and communications about an event from over five years ago, Defendants believe that there is no adverse effect to national security by producing these documents.

- **The need to avoid involving the Department in controversial issues not related to its mission.** Defendants do not believe that their Request would involve DHS in controversial issues not related to its mission because Defendants believe that any involvement of DHS in this litigation would be limited to the minimal production of documents here, and not any of the other disputes at issue in the Action. Additionally, Defendants are not asking DHS to opine on any controversial issues, rather merely to provide the requested factual information.

## LIST OF REQUESTED DOCUMENTS

In the interest of transparency and aiding DHS's evaluation of this request, and in compliance with 6 C.F.R. § 5.45(b), below is a specific list of documents Defendants seek, along with a description of how the information sought is relevant to the issues in the Action.

- **Intelligence received by DHS from December 1, 2020 to January 6, 2021 regarding potential violence in the D.C. area on January 6, 2021:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

  o **Threat assessment products issued about the events of January 6, 2021 in advance of the date:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the

James H. Percival
May 7, 2026
Page 5

> Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Communications and documents related to DHS's receipt of a December 28, 2020 D.C. Homeland Security and Emergency Management Agency Fusion Center report regarding potential attacks on January 6, 2021:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Communications on January 3, 2021 between Director of DHS Office of Operations Coordination Rear Admiral Christoher Tomney and FBI Deputy Director David Bowdich regarding potential violence on January 6, 2021:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Documents from January 3, 2021, titled "Preparations for Civil Disturbances – Week of 3 January 2021" and from January 4, 2021, titled "Preparations for Civil Disturbances – Week of 4 January 2021":** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the

James H. Percival
May 7, 2026
Page 6

Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Communications and documents from January 5, 2021 to January 6, 2021 regarding the website, "Red State Secession":**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Intelligence, warnings, and other information collected, received, and analyzed by the DHS Office of Intelligence and Analysis from December 1, 2020 to January 6, 2021 regarding the monitoring of potential violence or attacks in the D.C. area on January 6, 2021:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Communications of DHS Office of Intelligence and Analysis personnel related to the planning and synchronization efforts of law enforcement in the D.C. area for January 6, 2021 for potential threats of violence:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

James H. Percival
May 7, 2026
Page 7


       Defendants seek this information in good faith and reasonably believe that the documents identified above are not available through other discovery or sources available in this Action.

       Please contact us if you have any questions about this letter or the proposed subpoena.  We respectfully ask that you act on this *Touhy* request as promptly as possible. Thank you in advance for your attention to this matter.



Sincerely,

BALLARD SPAHR LLP

Charles D. Tobin

Cc: Counsel for Plaintiff


Encl.: Subpoena, Exhibit 1 (Complaint)

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

_____ District of _____

|  |  |  |
|---|---|---|
| _Plaintiff_ | ) ) | |
| v. | ) ) ) | Civil Action No. |
| _Defendant_ | ) ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
|  |  |

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| CLERK OF COURT | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,  )
)
    Plaintiff,  )
)
v.  ) Case No. 1:25-cv-25894-RKA
)
BRITISH BROADCASTING CORP., et al.,  )
)
    Defendants.  )
)

## ATTACHMENT A TO SUBPOENA TO THE DEPARTMENT OF HOMELAND SECURITY TO PRODUCE DOCUMENTS IN A CIVIL ACTION

## DEFINITIONS

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4. "Business(es)" means any partnership, limited partnership, joint venture, unincorporated association, limited liability company, company, corporation, firm, estate, or trust.

5. "Communications" means any manner of receiving or transmitting information, opinions or thoughts, whether orally, in writing, electronically, or otherwise. The term "Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

6. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

7. "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced. The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in

2

your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

8.      "Donald J. Trump" refers to Donald J. Trump, the individual.

9.      "Including" shall be construed as "including but not limited to."

10.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

11.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

12.      "Threat Assessment Products" means any report produced or authored by the Department of Homeland Security ("DHS") with "Threat Assessment" included in the Title.

13.      "Washington, D.C. area" means the Washington—Arlington—Alexandria Metropolitan Statistical Area.

14.      "You" and "Your" shall refer to the recipient of these requests, and shall include all components and agencies under the Department of Homeland Security; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

## **GENERAL INSTRUCTIONS**

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting

3

on Your behalf. This includes Documents presently in the possession, custody, or control of

Your attorney(s) or their investigators and Documents presently in the possession, custody, or

control of any third party or parties to whom You have surrendered possession, custody, or

control; or who are acting on Your behalf; or who have otherwise obtained possession, custody,

or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or

control, produce a description of each such Document. The description shall include the

following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was

intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information

indicated above, state on whose instructions the Document was destroyed or

otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection

(including any deliberative process, work product, joint defense, or common interest protections)

for any Document, You shall provide the following information with respect to each such

Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena

*duces tecum*, including, where appropriate, the name and title of the author of the

document, the name and title of any recipient, and identification of anyone

providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable

electronic format and with sufficient specificity to enable the undersigned counsel and the Court

to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production

of all additional or different Documents or information responsive to these Requests, which You

discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or

these requests must be preserved. Any destruction involving such Documents or data must cease,

even if it is Your normal or routine course of business to delete or destroy such Documents or

data and even if You believe such Documents or data are privileged or otherwise need not be

produced.

6. Unless otherwise stated, the relevant time period for all requests is for Documents

created or originating on or after December 1, 2020 to January 6, 2021.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents received by You that Relating to potential violence in the Washington, D.C. area on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 2:**  All Threat Assessment Products produced by You on or before January 6, 2021 Relating to potential violence in the Washington, D.C. area on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 3:**  All Communications and Documents Relating to Your receipt of a December 28, 2020 D.C. Homeland Security and Emergency Management Agency Fusion Center report Relating to potential violence in the Washington, D.C. area on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 4:** All Communications on January 3, 2021 between Director of DHS Office of Operations Coordination Rear Admiral Christoher Tomney and FBI Deputy Director David Bowdich Relating to potential violence in the Washington, D.C. area on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 5:** Any Document from January 3, 2021, titled "Preparations for Civil Disturbances – Week of 3 January 2021."

**REQUEST FOR PRODUCTION NO. 6:**  Any Document from January 4, 2021, titled "Preparations for Civil Disturbances – Week of 4 January 2021."

**REQUEST FOR PRODUCTION NO. 7:**  All Communications and Documents from January 5, 2021 to January 6, 2021 Relating to the website, "Red State Secession."

**REQUEST FOR PRODUCTION NO. 8:** All Documents and Communications collected,

received, or analyzed by the DHS Office of Intelligence and Analysis Relating to the monitoring

of potential violence in the Washington, D.C. area on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 9:**  All Communications of DHS Office Intelligence and

Analysis personnel related to planning and synchronization efforts of law enforcement in the

D.C. area for January 6, 2021 due to potential threats of violence.

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| BRITISH BROADCASTING CORPORATION a/k/a/ BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, | |
| Defendants. | |

Plaintiff, PRESIDENT DONALD J. TRUMP ("President Trump"), by and through his counsel, brings this action against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC (the "BBC"), BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED (collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1. This action concerns a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump, which was published in a BBC *Panorama* documentary, that was fabricated and aired by the Defendants one week before the 2024 Presidential Election in a brazen attempt to interfere in and influence the Election's outcome to President Trump's detriment.

1

2. In the BBC *Panorama* documentary titled "Trump: A Second Chance" (the "*Panorama* Documentary," or the "Documentary"),[1] which was first broadcast on October 28, 2024, the BBC intentionally and maliciously sought to fully mislead its viewers around the world by splicing together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech").[2] The *Panorama* Documentary deliberately omitted another critical part of the Speech in such a manner as to intentionally misrepresent the meaning of what President Trump said.

3. The *Panorama* Documentary falsely depicted President Trump telling supporters: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary). President Trump never uttered this sequence of words.

4. This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and then, much later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight*

---

[1] First published by Defendants on October 28, 2024 with a runtime of 57:54. *See* "Trump: A Second Chance?", BBC (Oct. 28, 2024) (https://www.bbc.co.uk/programmes/m0024h6r) (last visited Dec. 15, 2025)

[2] The Speech was 70:53 in length.

*like hell, and if you don't fight like hell, you're not going to have a country anymore,*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

5.      Moreover, the BBC purposefully omitted President Trump stating, less than one minute after urging supporters to cheer for their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

6.      As set forth in a damning and recently leaked BBC internal whistleblower document, the BBC intentionally used the *Panorama* Documentary to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting, and that he "said something he did not,"[3] by splicing together footage from the start of the Speech with a separate quote that he said nearly 55 minutes later, while omitting his statement calling for peace, made less than one minute after his first statement urging supports to cheer their senators and congressmen at the Capitol. Such distortion of the President's speech by the BBC "materially misled viewers."[4]

7.      Moreover, concerns about the *Panorama* Documentary were raised internally before its dissemination, but the BBC ignored those concerns and did not take corrective action.

8.      This instance of doctoring—in the form of distortion of meaning and splicing of entirely unrelated word sequences—is part of the BBC's longstanding pattern of manipulating

---

[3]      Gordon Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*, THE TELEGRAPH (Nov. 6, 2025), https://www.telegraph.co.uk/news/2025/11/06/read-devastating-internal-bbc-memo-in-full/ (last visited Dec. 15, 2025).

[4]      *Id*.

3

President Trump's speeches and presenting content in a misleading manner in order to defame him, including fabricating calls for violence that he never made. *See e.g.* ¶¶ 55-87, *infra*.

9. The BBC, faced with overwhelming and justifiable outrage on both sides of the Atlantic, has publicly admitted its staggering breach of journalistic ethics, and apologized, but has made no showing of actual remorse for its wrongdoing nor meaningful institutional changes to prevent future journalistic abuses.

10. Accordingly, President Trump brings this action for compensatory and punitive damages for the extensive reputational harm inflicted upon him by the Defendants.

## **PARTIES**

11. Plaintiff, President Trump, is a citizen of the United States and a citizen of the State of Florida. He served as the 45th President of the United States and currently serves as the 47th President of the United States.

12. Defendant, the BBC, is a British corporation established by royal charter and operating under an agreement with the United Kingdom's Secretary of State for Culture, Media, and Sport, with its principal place of business in London, England. The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films Ltd., and its international distribution partner, Blue Ant Media Corporation.

13. Defendant, BBC Studios Distribution Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

14. Defendant, BBC Studios Productions Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are completely diverse, as President Trump is a citizen of Florida, while all Defendants are citizens of the United Kingdom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     The Court possesses personal jurisdiction over Defendants pursuant to Florida Statute 48.193(2) because Defendants, during the operative period alleged in this Complaint, engaged in substantial and not isolated business activities in Florida, and more specifically in this District. Defendant BBC publishes online news reports, editorials, and other media content at https://www.bbc.com, which are regularly accessed by individuals in Florida.

17.     The BBC operates in the United States not as an abstract concept but in a constant manner; the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location.

18.     The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web

pages entitled "Florida – BBC News"[5] and "Florida – BBC Weather,"[6] among others. The BBC

also offers web pages specific to cities in Florida.[7]

19.     Additionally, the BBC offers subscriptions to individuals in Florida and as a result,

has thousands of subscribers in Florida. Any individual in the United States, including Florida, can

pay for a subscription to the BBC's content and services.[8]

20.     Individuals in the United States, including Florida, also have another option for

consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform.[9]

*BritBox* is available in the United States, including in Florida, and has thousands of subscribers in

Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount

of the BBC's original content—including *Panorama*.

21.     Accordingly, BBC has engaged, and continues to engage in, substantial and not

isolated activity in Florida.

---

[5]     *Florida – BBC News*, BBC, https://www.bbc.com/news/topics/c77jz3mdq1jt (last visited
Dec. 15, 2025).

[6]     *Florida – BBC Weather*, BBC, https://www.bbc.com/weather/3442585 (last visited Dec.
15, 2025).

[7]     *See, e.g., Miami – BBC News*, BBC, https://www.bbc.com/news/topics/cp7dde75nmlt (last
visited Dec. 15, 2025).

[8]     *Get even more from a BBC subscription*, BBC, https://www.bbc.com/subscribe (last
visited Dec. 15, 2025).

[9]     *BritBox by BBC*,
https://www.britbox.com/us/?gclsrc=aw.ds&&utm_source=google&utm_medium=paid-
search&utm_campaign=17444044535-
137684208899&utm_content=602709820305&utm_term=g&gad_source=1&gad_campaignid=1
7444044535&gbraid=0AAAAADMxMXrfBmo_s56m_ZA2aFpeyy6C_&gclid=CjwKCAiA0eT
JBhBaEiwA-Pa-
hbSItFwaYwfNGsO5WR1trkY2tlU0j8XCZ76_KY4_xRzkIl0Sr6pPBxoCTrkQAvD_BwE   (last
visited Dec. 15, 2025).

22.     In addition, this Court possesses personal jurisdiction over Defendants pursuant to: (a) Florida Statute §48.193(1)(a)(1), because Defendants operate, conduct, engage in, or carry on a business in Florida or have an office or agency in Florida, (b) Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act in Florida (as stated herein), and (c) Florida Statute §48.193(1)(a)(6) because Defendants caused injury to President Trump within Florida arising out of an act or omission committed by Defendants in Florida, while at or about the time of the injury, products and services provided by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

23.     The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie ("Davie") stated in his recent resignation letter: "Despite a hugely competitive market, I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*."[10]

24.     The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC.

25.     In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer.

---

[10] *Davie and Turness resignations in full*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c1k02vr1my2o (last visited Dec. 15, 2025). (Emphasis added).

26.     According to *vpnMentor*, a VPN research firm, VPN usage in Florida has skyrocketed since 2024, with a 51% increase in demand on December 19, 2024, and an over 1,000% increase in VPN usage at the beginning of 2025.[11]

27.     Florida streamers have opted to use VPNs to increase their "streaming freedom." Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer.[12]

28.     To that end, an article published by *Tom's Guide*, a reputable technology news outlet, revealed that a VPN usage survey showed that approximately 41% of VPN subscribers use the service to stream content, citing BBC iPlayer as an example of what a VPN subscriber could view using a VPN.[13]

29.     The *Panorama* Documentary's publicity, coupled with significant increases in VPN usage in Florida since its debut, establishes the immense likelihood that citizens of Florida accessed the Documentary before the BBC had it removed.

---

[11]     *Floridians Flock to VPNs As Age-Verification Law Takes Effect*, TAMPA FREE PRESS (Jan. 8, 2025) (https://www.tampafp.com/floridians-flock-to-vpns-as-age-verification-law/) (last visited Dec. 15, 2025).

[12]     *Florida VPN Surge: Why VPN Usage Skyrocketed 1,000% in Florida* (2025), TRUSTED TECHSPOT (https://trustedtechspot.com/florida-vpn-surge/) (last visited Dec. 15, 2025).

[13]     *More Than 40% of VPN Subscribers Use Them for Streaming – Here's Why*, TOM'S GUIDE (June 2, 2021) https://www.tomsguide.com/features/more-than-40-of-vpn-subscribers-use-them-for-streaming-heres-why) (last visited Dec. 15, 2025).

30. Articles like those published by Tom's Guide[14] and PureVPN[15]—giving a summary of the *Panorama* Documentary's plot, telling users how to view the Documentary, and going as far as to provide links to VPNs that allow a user to view BBC iPlayer—make it overwhelmingly certain that Floridians accessed the Documentary using a VPN during the time the Documentary was available.

31. Further supporting the fact that Floridians accessed the *Panorama* Documentary through a VPN, *The Guardian* reported that research showed that "65 million people from abroad watch the broadcaster's license-fee funded iPlayer service using proxy servers or virtual private networks."[16]

32. As underscored by the Chairman of the FCC, Brendan Carr, "[t]he BBC has stated that it has a number of partnerships with U.S. broadcasters, including PBS and NPR, to distribute BBC programming here in America."[17]

---

[14] *How to Watch 'Trump: A Second Chance?'*, TOM'S GUIDE (Oct. 28, 2024) (https://www.tomsguide.com/entertainment/streaming/how-to-watch-trump-a-second-chance-online-from-anywhere) (last visited Dec. 15, 2025).

[15] *How to Watch 'Trump: A Second Chance in the US'*, PUREVPN https://www.purevpn.com/how-to-watch-trump-a-second-chance-in-the-us (last visited Dec. 15, 2025).

[16] Paul Revoir, *BBC iPlayer 'Watched By More Than 60 Million People Outside the UK for Free'*, THE GUARDIAN (July 21, 2015) (https://www.theguardian.com/media/2015/jul/21/bbc-iplayer-uk-vpn-proxy-server) (last visited Dec. 15, 2025).

[17] *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at* BCC (Nov. 19, 2025) (https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed) (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025) (https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/) (last visited Dec. 15, 2025).

33.     The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida.

34.     Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary,[18] including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025.[19]

35.     Blue Ant aggressively advertised its exclusive distribution of the *Panorama* Documentary outside of the United Kingdom, further evidencing the intent of the BBC and its strategic partners to disseminate the Documentary as widely and into as many streams of commerce and channels of distribution as possible, including Florida.[20]

---

[18]     Karolina Kaminska, *Blue Ant Studios to shop BBC's 'President Trump: A Second Chance?' In Cannes*, C21 MEDIA (Oct. 10, 2024), https://www.c21media.net/news/blue-ant-studios-takes-october-films-president-trump-a-second-chance-to-cannes/ (last visited Dec. 15, 2025).

[19]     Nicholas Sokic, *Blue Ant pulls BBC Trump doc from catalogue*, PLAYBACK (Nov. 12, 2025), https://playbackonline.ca/2025/11/12/blue-ant-pulls-controversial-bbc-trump-doc-from-catalogue/ (last visited Dec. 15, 2025) ("Blue Ant rights has confirmed that it has pulled the BBC *Panorama* documentary on U.S. President Donald Trump from its catalogue amid the controversy surrounding the film.").

[20]     *'President Trump: A Second Chance?' Launches at MIPCOM 2024*, BLUE ANT MEDIA CORPORATION (Oct. 10, 2024), https://web.archive.org/web/20250712071622/https://blueantmedia.com/2024/10/president-trump-a-second-chance-launches-at-mipcom-2024/ (last visited Dec. 15, 2025) ("Blue Ant Studios today confirms that the explosive Donald Trump documentary, produced by October Films, has just wrapped production with the working title, President Trump: A Second Chance? Commissioned by BBC's Panorama, and produced by October Films, this hotly anticipated and

10

36.     Further, and as explained in greater detail below, the BBC elected to publish the *Panorama* Documentary just one week before the 2024 United States Presidential Election with the express intent of interfering with it and trying to undermine President Trump's odds of winning reelection.

37.     Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago, in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary.

38.     The BBC explicitly instructed and ordered its producers to travel to Florida and to utilize this forum for the purpose of creating the Documentary and defaming President Trump.

39.     The *Panorama* Documentary contains extensive evidence and examples of the BBC's producers gathering original footage specifically for use in the Documentary—not using stock footage—at Mar-a-Lago and nearby in the Palm Beach area on April 4, 2023, as well as on other dates. These examples include, but are not limited to: (a) Between 2023 and 2024, the BBC, or its contractors, filmed (i) a wide angle aerial view of Mar-a-Lago taken from a vantage point in the Lake Worth Lagoon (3:57 into the Documentary), (ii) a wide angle aerial view of Mar-a-Lago from a vantage point just north facing the Atlantic Ocean (4:47), (iii) a wide angle shot of the Mar-a-Lago pool and exterior and added a graphic "Trump Residence, Mar-a-Lago Florida" (5:00); and (b) on April 4, 2023, BBC producers and BBC-contracted crew members filmed (i) supporters of

---

distinctive 1x60 documentary will make its official international debut at MPICOM, where attending buyers will have an exclusive previews.").

President Trump lining the streets as President Trump's motorcade proceeded with President Trump through Palm Beach on the way to Mar-a-Lago (4:03), (ii) Rick Frazier, a supporter of President Trump, in the passenger seat of a vehicle as it followed the motorcade on the approach to Mar-a-Lago (4:09), (iii) The vehicle carrying Frazier as it entered Mar-a-Lago (4:51), (iv) Frazier as he walked in to Mar-a-Lago (5:03), (v) President Trump as he walked in to Mar-a-Lago to deliver a speech (5:11), (vi) Supporters cheering for the President as he prepared to speak inside Mar-a-Lago (5:24), (vii) President Trump as he delivered a speech to supporters inside Mar-a-Lago (5:27), and (viii) Frazier as he interacted with other supporters of President Trump (6:15 and 6:55).

40.     The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida.

41.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: President Trump is a citizen of Florida who was defamed by the BBC while in Florida, the BBC filmed the *Panorama* Documentary in significant part in Florida, and the BBC, in concert with its strategic partners including October Films Ltd. and Blue Ant Media Corporation, distributed the Documentary into Florida.

12

**FACTUAL ALLEGATIONS**

***The BBC's Defamatory and Deceptive Depiction of
President Trump's Speech in the Panorama Documentary***

    i.       *The BBC Splices and Distorts President Trump's Speech*

42.    The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary wrongly made it appear that he said: "*We're going to walk down to the Capitol, and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

43.    This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory, given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

44.    Moreover, to further the BBC's intended, false, malicious, and defamatory message that President Trump fomented violence, which he did not, the BBC intentionally omitted President Trump saying, less than one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building*

13

*to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

>     ii.     *The BBC's Director General and Head of News Resign in Disgrace,*
>             *and the BBC, Under Fire, Reluctantly Admits Wrongdoing*

45.     On November 9, 2025, Davie and News CEO Deborah Turness resigned in disgrace over their leading roles in the *Panorama* Documentary.[21]

46.     Also on November 9, 2025, President Trump's counsel emailed a letter to Samir Shah (Chairman of the BBC) and Sarah Jones (General Counsel) entitled "Demand to Retract False and Defamatory Statements About The President of the United States of America" demanding retraction of the BBC's false depiction of President Trump, an apology for the false depiction of President Trump, and monetary compensation. ***See* Exhibit A**.

47.     By letter dated November 13, 2025, the BBC's counsel indicated that the BBC would apologize to President Trump but, somehow, ignoring the resignations of the BBC's leadership, admitting of wrongdoing, and apology, still attempted to deny intentional wrongdoing and declined to pay damages. ***See* Exhibit B**.

48.     Enclosed with the letter from counsel was a letter of apology from Chairman Shah, which stated, *inter alia*:

> Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. ***This gave the mistaken impression that you had made a direct call for violent action***. ***That was an editorial error and it should not have happened***. ***I have stated clearly and publicly that the BBC apologises for that error of judgement***. As it was your

---

[21]     Aleks Phillips and Helen Bushby, *BBC director general and News CEO resign over Trump documentary edit*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c3vn25d5dq7o (last visited Dec. 15, 2025) ("It is unprecedented for both the director general and the head of BBC News to resign on the same day."); *see also Davie and Turness resignations in full*, *supra*.

speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

*Id*. (emphasis added).

49.     The BBC then published the following apology on its "Corrections and Clarifications" page, which was also included in the November 13 letter:

**Panorama – Trump: A Second Chance?**

**28 October 2024**

This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.

During that sequence, we showed excerpts taken from different parts of the speech.

However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, *and **that this gave the mistaken impression that President Trump had made a direct call for violent action***.

The BBC would like to apologise to President Trump for that **error of judgment**.

This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.[22]

50.     Notably, the BBC did not broadcast a correction, apology, or retraction during a broadcast in a comparable manner as the *Panorama* Documentary, or with a comparable audience.

### *Substantial Evidence of The BBC's Actual Malice*

51.     Contrary to the BBC's claim that its splicing, manipulation, and distortion of the Speech was an unintentional "editorial error," substantial evidence suggests that this was an intentional and malicious effort to falsely and deceptively portray President Trump as having called for violent action on January 6, 2021.

---

[22]     *Corrections and Clarifications*, BBC (Nov. 13, 2025), https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/ (last visited Dec. 15, 2025) (emphasis added).

52.     As an initial matter of common sense, it would have been impossible for BBC's journalists and producers to splice together two distinct parts of the Speech from nearly 55 minutes apart *unless* they were acting intentionally. Such a dramatic distortion could never have occurred by accident. Two distinct parts of a speech from nearly 55 minutes apart do not inadvertently become spliced or linked together without effort, knowledge, and purpose. In parallel, by definition, an "an error of judgment," as admitted to by the BBC, is not inadvertent, it includes an intentional act.

53.     The BBC's actual malice is further compounded by its prior acts that unequivocally demonstrate that the organization has been anything but fair and impartial when it comes to reporting on President Trump. Substantial evidence demonstrates that before the publication of the *Panorama* Documentary, the BBC and its leadership bore President Trump ill will, wanted him to lose the 2024 Presidential Election, and were dishonest in their coverage of him.

54.     The BBC, its journalists, and its producers knew at and prior to the time they published the *Panorama* Documentary that the BBC's depiction of President Trump's Speech was false.

i.      *The Prescott Memorandum*

55.     In the early Summer of 2025, Michael Prescott, a journalist who until June 2025 was an independent adviser to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board "expos[ing] a string of incidents that demonstrate serious bias in the corporation's reporting"; following the leak of the Memorandum, *The Telegraph* published the Memorandum in early November 2025.[23]

---

[23]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

56. Prescott highlighted a litany of disturbing misconduct demonstrating how far the BBC has strayed from accepted standards of journalistic integrity, including, but not limited to, the BBC's tampering with President Trump's Speech in the Documentary.[24]

57. Notably, Prescott is nonpartisan, as he wrote in the Memorandum:

I think it is important to state that I have never been a member of any political party and do not hold any hard and fast views on matters such as American politics or disputes in the Middle East. My views on the BBC's treatment of the subjects covered below do not come with any political agenda. Rather, what motivated me to prepare this note is despair at inaction by the BBC Executive when issues come to light. On no other occasion in my professional life have I witnessed what I did at the BBC with regard to how management dealt with (or failed to deal with) serious recurrent problems.[25]

58. Regarding the *Panorama* Documentary, Prescott wrote:

I watched the programme and found it to be neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance. Critics of the Republican presidential candidate vastly outnumbered those who argued for him. What examination there was of reasons for Trump's popularity seemed to me insufficient given the overall balance of the programme. Given what I took to be the anti-Trump nature of the programme, I of course assumed there would be a similar, balancing Panorama programme about Democrat presidential candidate Kamala Harris the following week. I remain shocked that there was not.[26]

59. Prescott was not alone in his assessment:

I raised my concerns at the EGSC and David Grossman [Senior Editorial Adviser to the EGSC] was asked to review the programme. He concluded the main contributors to the documentary were heavily weighted against Trump, with just one supporter against ten who questioned his fitness for office. Worse still, David highlighted alarming concerns about how Panorama had edited Trump's speech to his supporters on January 6, 2021 . . . . Examining the charge that Trump had incited protesters to storm Capitol Hill, it turned out Panorama had spliced together two clips from separate parts of his speech. This created the impression that Trump said something he did not and, in doing so, materially misled viewers.[27]

---

[24] *Id*.

[25] *Id*.

[26] *Id*.

[27] *Id*.

17

60. Prescott concluded about the splicing of President Trump's Speech that:

This was one of the most shocking sets of issues uncovered during my time with the EGSC. If BBC journalists are allowed to edit video in order to make people "say" things they never actually said, then what value are the Corporation's guidelines, why should the BBC be trusted, and where will this all end?[28]

ii. *The 2022 BBC Newsnight Distortion Demonstrating that the Panorama Documentary Splice is Part of a Defamatory Pattern by the BBC of Falsely Depicting President Trump Through Doctored Footage*

61. As further revealed by *The Telegraph*, the BBC also aired similarly doctored footage of President Trump's Speech on a 2022 episode of *BBC Newsnight*.[29]

62. In the doctored Speech clip aired by *BBC Newsnight*, President Trump is falsely, maliciously, and defamatorily depicted as saying: "*We're going to cheer on our brave senators and congressman and women, and we fight, we fight like hell.*"[30]

63. What President Trump really said was: "*[A]nd we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them.*"[31] (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech).

---

[28] *Id.*

[29] Camilla Tominey, Tim Stanley, John Cadigan, Rob Crilly, *BBC Newsnight also doctored Trump speech*, THE TELEGRAPH (Nov. 13, 2025), https://www.telegraph.co.uk/news/2025/11/13/bbc-doctored-trump-speech-second-time-newsnight/ (last visited Dec. 15, 2025).

[30] *Id.*

[31] *Id.*

18

64.     As *The Telegraph* reported: "Spliced footage of the speech, which aired in an episode in 2022, made it appear that Mr. Trump was encouraging his supporters to riot. The edit was much like a version aired in a *Panorama* documentary broadcast last year."[32]

65.     As further reported by *The Telegraph*: "Like *Panorama*, the *Newsnight* edit made it look as if the US President had urged supporters to walk to the Capitol building with him to 'fight like hell' by linking statements made nearly an hour apart in his speech."[33]  The harm caused by this doctoring was exacerbated by the BBC intentionally omitting President Trump stating, only one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

66.     Immediately after the *BBC Newsnight* episode aired, Mick Mulvaney, former Acting White House Chief of Staff, and David Chaudoir, former award-nominated graphic designer for *BBC Newsnight* from 2022-24, both individually voiced their concerns regarding the misleading and malicious way *BBC Newsnight* edited the clip to distort reality.[34]

67.     Mr. Chaudoir specifically told *The Telegraph* that he was present for discussions about the *BBC Newsnight* clip the day after it was published, wherein *BBC Newsnight* production team members dismissed any ethical concerns about the *BBC Newsnight* clip.[35]

---

[32]     *Id.*

[33]     *Id.*

[34]     *Id*.

[35]     *Id*.

19

68. Mr. Mulvaney expressed his concern on-air while being interviewed on *BBC Newsnight,* stating:

> Your video actually spliced together the presentation. He said: 'We're going to go down and we're going to cheer on our senators and our house members' and then it actually goes on to say 'And some of them we might not be able to' and that line about 'and we fight and fight like hell' is actually later in the speech yet your video makes it look like those two things came together. [36]

69. The malicious nature of the spliced and edited clip is further underscored by former BBC legal affairs correspondent Clive Coleman's statements in response to the *Panorama* Documentary, stating:

> I really struggle to understand how we got to this place . . . The first lesson almost you're taught as a broadcast journalist is that you do not join two bits of footage together from different times in a way that will make the audience think that it is one piece of footage.[37]

iii. *The 2024 BBC News Shooting Hoax Further Demonstrating that the Panorama Documentary Doctoring is Part of an Defamatory Pattern by the BBC of Falsely Depicting President Trump Calling for Violence*

70. As also revealed by *The Telegraph*, the BBC "has admitted misleading viewers by claiming that Donald Trump called for one of his leading critics to be shot in the face."[38]

71. This admission by the BBC, regarding three instances of false statements about

---

[36] *Id.*

[37] Faith Wardwell, *BBC Apologizes to Trump for Documentary Edits, but Pushes Back on Legal Threat*, POLITICO (Nov. 13, 2025) (https://www.politico.com/news/2025/11/13/bbc-trump-apology-documentary-00651451) (last visited Dec. 15, 2025).

[38] Anita Singh, *BBC admits falsely claiming Trump wanted to shoot critic*, THE TELEGRAPH (Dec. 9, 2025), https://www.telegraph.co.uk/news/2025/12/09/bbc-admits-falsely-claiming-trump-wanted-to-shoot-critic/ (last visited Dec. 15, 2025).

20

President Trump supposedly calling for violence against a political opponent, none of which occurred, is contained in the now-public Memorandum, and yet the BBC has still failed to issue a public correction.[39]

72.     As described by *The Telegraph*:

> In the days before the US presidential election in November last year, a presenter on BBC World News America said that Mr. Trump "appeared to suggest Liz Cheney should face a firing squad for her stance on foreign policy."
>
> On the BBC News Channel, another presenter asked his guest: "He [President Trump] is out there on the campaign trail saying he wants people to shoot Liz Cheney in the face . . . Is that the sort of thing women react well to?
>
> Speaking on the Six O'Clock News the same night, Sarah Smith, the BBC's North America editor, said Mr. Trump had been "ratcheting up the violent rhetoric."
>
> She added: "In the latest spat, Donald Trump has been accused of being petty, vindictive and a wannabe tyrant because he suggested that one of his political opponents should face guns, have them trained on her face."[40]

73.     All these statements by BBC presenters were false.

74.     "In fact, Mr. Trump had accused Ms. Cheney of being a 'radical war hawk' who wanted to send troops to war while she remained in the safety of Washington DC, saying: 'Let's put her with a rifle standing there with nine barrels shooting at her face. OK? Let's see how she feels about it.'"[41]

75.     This false, defamatory, and malicious coverage of President Trump, broadcast in the same time period as the release of the *Panorama* Documentary, was consistent with the BBC's *modus operandi*, defaming President Trump by fabricating calls for violence allegedly issued by him, that he never actually made.

---

[39]     *Id*.

[40]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

[41]     *Id*.

21

*iv.      The Panorama Documentary Was Intentionally One-Sided and Inflammatory, demonstrating that the Doctoring of President Trump's Speech Was Intentional and <u>Part of the BBC's Defamatory Pattern</u>*

76.      The lack of any effort by the BBC to publish content even remotely resembling objective journalism, or to maintain even a slight semblance of objectivity in the *Panorama* Documentary, demonstrates that the BBC had no regard for the truth about President Trump, and that the doctoring of his Speech was not inadvertent, but instead was an intentional component of the BBC's effort to craft as one-sided an impression and narrative against President Trump as possible.

77.      Indeed, by any measure, including the overwhelming ratio of anti-Trump versus pro-Trump commentators in the *Panorama* Documentary, the exceptionally high percentage of time granted to these negative voices in the Documentary versus the positive voices, and the inflammatory content of the negative remarks, all coupled with the BBC's historical unfairness to the President, it is apparent that the BBC fabricated the Documentary to damage President Trump. Doctoring his Speech was consistent with, and part of, the BBC's *modus operandi* of negatively covering President Trump without any pretense of objectivity.

78.      The BBC's aggressively anti-Trump stance is reflected straightaway in the opening scene of the *Panorama* Documentary's introduction, which runs for almost three minutes and begins with noted anti-Trump commentator Rick Wilson—who has written two books criticizing President Trump, *Everything Trump Touches Dies* (2018) and *Running Against the Devil: A Plot to Save America From Trump-and Democrats from Themselves* (2020), and has called the President "the devil" and a "cult leader"—declaring, to the backdrop of ominous cinematic music reaching a dramatic crescendo: "I'm the leading anthropologist of Donald Trump in the, in the

22

world, probably, I've thought about him and studied him more than probably anybody else, and I hate him. I hate what he is, and what he does."

79. Seconds later, Wilson states of President Trump: "When you let the monster escape, it will come back, it is a rule of every damn horror movie in history."

80. Former Clinton Secretary of Labor and current Berkeley Professor Robert Reich, another vocal critic of President Trump, then offers: "Once you've unleashed this anger, this hate, into the blood of America, well, it's very very difficult to stop it."

81. A greater majority of the verbal commentary in the *Panorama* Documentary features negative assertions about President Trump by twelve individuals known to be hostile to the President, all of whom are presented as having some form of relevant expertise and authority about the subject matter presented. Moreover, an overwhelming majority of the overall Documentary, including the non-interview segments depicting political and historical events from recent years, presents President Trump in a negative light.

82. Further demonstrating the BBC's malice and intent to interfere with the 2024 Presidential Election, the *Panorama* Documentary, after lingering at length on the events of January 6, 2021, cuts to a clip from the Democratic National Convention on August 22, 2024, showing Kamala Harris taking the stage with a news anchor breathlessly exclaiming in the background: "And here she is, Kamala Harris. It's hard to describe just how electric the mood is here right now."

83. Toward the end of the *Panorama* Documentary, Reich shockingly compares President Trump to "Adolf Hitler," which rises to defamation itself, while Democrat Congressman Jared Huffman refers to the President as a "cult leader," also a defamatory statement.

23

84.     Others then join Reich in delivering hyperbolic warnings about President Trump and the supposedly catastrophic consequences that would ensue if President Trump were to emerge victorious.

85.     "The degree to which his pessimism and darkness has infected half this country terrifies me," adds Wilson. "There is no ideology in the Republican party except pain, they want vengeance," he continues.

86.     Berkeley Political Science Professor Steven Fish asserts "There's a reason why Xi Jinping and Vladimir Putin and Kim Jong Un and all these despots all over the world are rooting so hard for Trump because what Trump does is he seems to discredit democracy in the land of its stronghold, in the strongest democracy in the world, Trump seems to be proof that democracy doesn't work."

87.     Boston College History Professor Heather Cox Richardson offers, "this is the time when we either choose authoritarianism or democracy, and if we choose authoritarianism, there will be no turning back, so I think we better get this one right."

88.     Reich delivers a closing remark to punctuate the BBC's parade of bias: "Wish us luck, by us, I mean the United States."

    *v.*     *Prominent Voices Condemn the BBC and Confirm the BBC's Longstanding Pattern of Actual Malice Against President Trump*

89.     The BBC is so institutionally biased against President Trump and so devoid of self-awareness that, in response to the above letter from President Trump's counsel (**Exhibit A**), it

24

published a baseless and meritless article questioning the merits of any lawsuit that the President might bring against the BBC.[42]

90.     No less an authority than the United Kingdom's former Prime Minister, Liz Truss, discussed this bias, the need to hold the BBC accountable, and the BBC's pattern of actual malice.[43]

91.     Remarked Truss: "[The BBC] is a huge problem. They've lied, they've cheated, they've fiddled with footage, especially in the case of President Trump, but also covering up what's happening in Britain whether it's mass migration, whether it's our economic problems, they are always biased towards the left . . . ." She was also asked whether the BBC's tepid apology was sufficient, and responded: "No I don't, because they keep doing it again and again. They have painted a completely false picture of President Trump in Britain over a number of years, they've done the same thing about conservatives in our country . . . ." Lamenting the BBC's lost status as a "paragon" of journalism, she remarked that the BBC's "fake news" has caused immense harm to the public for a long time.[44]

92.     Caroline Dinenage, head of the House of Commons' Culture, Media, and Sport Committee said that Members of Parliament need assurances that the BBC was "taking decisive steps to uphold the corporation's reputation for integrity and public trust." She further remarked:

---

[42]     Kayla Epstein and Madeline Halpert, *Trump vs. the BBC: What hurdles might the President's legal argument face?*, BBC (Nov. 11, 2025), https://www.bbc.com/news/articles/c709y1yx1r0o (last visited Dec. 15, 2025).

[43]     *Former UK prime minister calls out BBC, encourages Trump to continue lawsuit*, FOX NEWS (Nov. 15, 2025), https://www.foxnews.com/video/6385140049112 (last visited Dec. 15, 2025).

[44]     *Id*.

"The Corporation must set the benchmark for accurate and fair reporting, especially in a media landscape where it is all too easy to find news presented in a less than impartial way."[45]

93.     Conservative Party leader and Member of Parliament Kemi Badenoch said that the distortion of the Speech by the *Panorama* Documentary was "absolutely shocking," adding: "That is fake news, actually putting different things together to make something look different from what it actually was." She continued: "And I do think heads should roll. Whoever it was who did that should be sacked, that's what Tim Davie should be doing, identifying who put out misinformation, and sacking them." Badenoch added: "The public need to be able to trust our public broadcaster . . . They should not be telling us things that are not true. This is a corporation that needs to hold itself to the highest standards, and that means that when we see people doing the wrong thing, they should be punished, they should be sacked."[46]

94.     Lisa Nandy, Secretary of State for Culture, Media and Sport of the United Kingdom, has similarly expressed concern, stating: "there is a real concern, which I share, that political appointments to the board of the BBC damaged confidence and trust in the BBC's impartiality."[47]

95.     FCC Chairman, Brendan Carr, in a letter addressed to Davie, Paula Kerger, (President and CEO of PBS), and Katherine Maher (CEO of NPR), strongly stated:

> As you know, the BBC was recently caught intentionally distorting a speech that President Trump gave in January of 2021. It did so by splicing together one portion of the speech with an entirely separate portion of the speech that came 54 minutes later. In doing so, the BBC program depicts President Trump voicing a sentence

---

[45]     *BBC has questions to answer over edited Trump speech, MPs say*, BBC (Nov. 4, 2025), https://www.bbc.com/news/articles/ckgzkyk7knzo.amp (last visited Dec. 15, 2025).

[46]     *Id*.

[47]     *'Real Concern' About Political Appointees on BBC Board, Nandy Says*, BBC (Nov. 14, 2025), https://www.bbc.com/news/articles/cdeg0ngnj0yo (last visited Dec. 15, 2025).

that, in fact, he never uttered. That would appear to meet the very definition of publishing a materially false and damaging statement.[48]

96.     Carr continued, highlighting the findings of the Memorandum:

Indeed, there has now been widespread condemnation of the BBC's decision. A former independent external advisor to the BBC's Editorial Guidelines and Standards Committee, Michael Prescott, told the BBC that its decision "created the impression that Trump said something he did not and, in doing so, materially misled viewers." Likewise the Prescott Report states that the BBC program was "neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance.' In sum, it was a 'distortion of the day's events," the Prescott Report continued.[49]

### *Damages*

97.     Since its publication, the *Panorama* Documentary has gained substantial traction and republication across various media in the United States and elsewhere globally.

98.     Defendants used their false and defamatory publications to maliciously disparage and damage President Trump and impugn his reputation.

99.     Specific, extensive economic harms resulted from these defamatory statements. Defendants timed the publication of the *Panorama* Documentary to be close in time to the 2024 Presidential Election, releasing it only one week before the Election.

100.    The value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal

---

[48]    *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at BCC* (Nov. 19, 2025), https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025), https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/ (last visited Dec. 11, 2025).

[49]    *Id.*

reputation inflicted by these Defendants, and their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist, continue into the present, thereby causing massive economic damage to his brand value and significant damage and injury to his future financial prospects, in addition to continuing to harm his reputation as President of the United States of America.

101. President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

102. Exacerbating the damages, Defendants, at and prior to the time of their doctoring of the Speech, knowingly made their false, deceptive, malicious, and defamatory depiction of President Trump in bad faith, motivated by malice and ill-will against President Trump without any regard for the truth, and contrary to information Defendants possessed that showed their depiction to be false

103. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

<div align="center">

**CLAIMS FOR RELIEF**

**COUNT I – DEFAMATION *PER SE***

</div>

104. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

105. The following false, deceptive, malicious, and defamatory statements and depictions of and about President Trump, were, intentionally, with actual malice, and without privilege, published in the *Panorama* Documentary to millions of people in the State of Florida

and in this District, and elsewhere, by all Defendants, and were defamatory and false, and injured President Trump in his profession, occupation, and trade, thus constituting defamation *per se*:

(a) The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary made it seem that he stated: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

(b) This fabricated depiction of President Trump during the Speech was false and defamatory given that President Trump's actual and full remarks during the Speech were (i) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (ii) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021, 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

(c) Moreover, to further the BBC's intended, false, malicious, and defamatory message and impression that President Trump fomented violence, the BBC intentionally omitted President Trump stating, only one minute after urging supporters to cheer

29

on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

106. Defendants possessed information and had access to information which showed that their statements about, and representation and depiction of President Trump were false.

107. Defendants had no factual basis for this false depiction of President Trump.

108. Defendants' deceptive and defamatory distortion, doctoring, manipulation, and splicing damaged President Trump in his occupation, damaged his professional reputation, and portrayed him as engaging in supposed calls for rioting and violence that he never actually made.

109. The *Panorama* Documentary was not a continuation of a prior broadcast. Instead, it was the result of a separate and distinct decision by Defendants to maliciously disseminate false statements about President Trump in a new medium.

110. As pled *supra*, Defendants knew that their portrayal of the Speech in the *Panorama* Documentary was false, malicious, and defamatory.

111. Defendants' actual malice in publishing the *Panorama* Documentary is evidenced by their intentional splicing and distorting two entirely separate sentences made by President Trump during the Speech nearly 55 minutes apart, while omitting his statement calling for peace made less than one minute after his first statement urging supports to cheer on their senators and congressmen at the Capitol.

112. As a proximate result of the maliciously false and defamatory *per se* publication of a statement and depiction to third parties by Defendants, President Trump has been damaged.

30

113.     Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards President Trump, he seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, and such other relief as this Court may deem just and proper.

<u>**COUNT II – VIOLATION OF FLORIDA DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT**</u>

114.     Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

115.     In addition, this action is brought for violation of the Florida Deceptive and Unfair Trade Practices Act as codified in Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

116.     Defendants are engaged in the conduct of trade and commerce in the State of Florida.

117.     Defendants have violated the FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia,* intentionally and maliciously seeking to completely mislead their viewers by splicing together two separate parts of President Trump's Speech, while omitting other critical parts of the Speech in such a manner as to intentionally, falsely, maliciously, and defamatorily change the meaning of what President Trump said.

118.     As a direct, proximate, and foreseeable result of Defendants' violation of FDUTPA, President Trump has suffered and continues to suffer substantial damages.

31

119.    Pursuant to Fla. Stat. §501.2105, President Trump is entitled to recover his attorneys' fees and costs from Defendants.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, President Trump, hereby demands a jury trial as to all issues so triable.

Dated:  December 15, 2025

Respectfully submitted,

*/s/Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel:  305-614-4071
Fax:  305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

*/s/Edward Andrew Paltzik*
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice application forthcoming*)

32

<div align="right">

*/s/Daniel Zachary Epstein*
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*

</div>



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

November 9, 2025

<u>**Via Email**</u>

Mr. Samir Shah
Chairman
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**samir.shah@bbc.co.uk**

Ms. Sarah Jones
General Counsel
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**sarah.jones@bbc.co.uk**

> **Re:** **Demand to Retract False And Defamatory Statements**
> **About The President of the United States of America**

Dear All:

This law firm serves as litigation counsel for President Donald J. Trump (hereinafter referred to as "President Trump"). Please direct all future correspondence relating to this matter to my attention. This correspondence serves as a demand under Florida Statute § 770.01[1] that you immediately retract the false, defamatory, disparaging, and inflammatory statements made about President Trump, which were published in a *Panorama* documentary that was fabricated and aired by the BBC. Failure to comply will leave President Trump with no choice but to pursue any and all legal rights and remedies available to recover damages for the overwhelming financial and reputational harm that the BBC has caused him to suffer, with all rights and remedies being expressly reserved by President Trump.

In the *Panorama* documentary, titled "Trump: A Second Chance,"[2] which was first broadcast on October 28, 2024—a week before the 2024 United States presidential election—the BBC intentionally sought to completely mislead its viewers by splicing together three separate

---

[1] President Trump does not agree or admit that only Florida law applies to any claims he might have in connection with or arising out of the Article and expressly reserves all rights concerning applicable law.

[2] *See* https://www.bbc.co.uk/programmes/m0024h6r. According to the BBC's website, the defamatory documentary was broadcast three times on October 28, 2024, and a fourth time on November 2, 2024.

1

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

parts of President Trump's speech to supporters on January 6, 2021. The documentary showed President Trump telling supporters: "We're gonna walk down to the Capitol and I'll be there with you and we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore." This fabricated depiction of President Trump was false and defamatory given that President Trump's actual and full remarks were: "We're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down any one of you but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women." Moreover, the BBC edited out President Trump saying, "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Thus, as set forth in an internal whistleblower memorandum, the BBC's segment maliciously made it appear that President Trump "[said] things [he] never actually said," by editing together footage from the start of the speech with a separate quote early an hour later.

Due to their salacious nature, the fabricated statements that were aired by the BBC have been widely disseminated throughout various digital mediums, which have reached tens of millions of people worldwide. Consequently, the BBC has caused President Trump to suffer overwhelming financial and reputational harm.

## A. Applicable law.

Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Statements are defamatory if "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *See Zambrano v. Devanesan*, 484 So. 2d 603, 607 (Fla. 4th DCA 1986).

Even if the BBC attempts to whitewash its conduct as simply an expression of its opinions, Florida law makes clear that such a defense will not absolve its liability. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. ***Simply couching such statements in terms of opinion does not dispel these implications***.") (emphasis added); *see also Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983) ("***[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable***.") (emphasis added).

2

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

Consequently, the BBC lacks any viable defense to the overwhelming reputational and financial harm it has caused President Trump to suffer.

**B. Demand**.

The above-referenced false, defamatory, malicious, disparaging, and inflammatory statements were published to deliberately denigrate President Trump. The timing of the fabricated documentary is evident. The BBC's reckless disregard for the truth underscores the actual malice behind the decision to publish the wrongful content, given the plain falsity of the statements. Accordingly, President Trump hereby demands that you: (1) immediately issue a full and fair retraction of the documentary and any and all other false, defamatory, disparaging, misleading, and inflammatory statements about President Trump in as conspicuous a manner as they were originally published; (2) immediately issue an apology for the false, defamatory, disparaging, misleading, and inflammatory statements about President Trump; and (3) appropriately compensate President Trump for the harm caused.

Moreover, please allow this letter to serve as notice to you, to your affiliated entities, subsidiaries, to all of their employees, and any other person acting on behalf of or in concert with the BBC, to preserve any and all evidence related in any way to the above-mentioned malicious, false, and defamatory statements the BBC published, and any other statements that the BBC has published regarding President Trump. By way of this letter, the BBC is hereby directed not to destroy, conceal, or alter any paper or electronic files, physical evidence, and/or other data relating in any way, no matter how remote, to your false claims regarding President Trump, and/or the circumstances leading to their dissemination, including, but not limited to: (1) all communications between you and any third party in any way related to your wrongful claims regarding President Trump; (2) all sources for your false claims regarding President Trump; (3) any and all documents and data referring to, reflecting, or relating to communications between you and any such third-parties or sources regarding your false claims regarding President Trump; and (4) any and all documents in any way related to your false claims regarding President Trump. This includes any information alleged to be protected by Florida Statute § 90.5015. *Monarch Air Group, LLC v. Journalism Dev. Network, Inc.,* No. 23-CV-61256, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (interpreting Fla. Stat. § 90.5015 and explaining that the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings.") (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)).

I understand that many records and files are maintained electronically. However, this letter specifically requests that all paper and hard copy originals be maintained and preserved in their original format. By the same token, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists and has been preserved, please preserve and maintain all electronically stored documents in their original native format, including all metadata. This preservation demand specifically encompasses any and all electronic documents,



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

including but not limited to, all word-processed files, emails, spreadsheets, all databases, log files, and any other electronically stored and/or generated documents or files.

If the BBC does not comply with the above by **November 14, 2025, at 5:00 p.m. EST**, President Trump will be left with no alternative but to enforce his legal and equitable rights, all of which are expressly reserved and are not waived, including by filing legal action for no less than $1,000,000,000 (One Billion Dollars) in damages. The BBC is on notice.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

# Ballard Spahr
LLP

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

November 13, 2025

*Via Email (abrito@britopllc.com) & Federal Express*

Alejandro Brito
Brito PLLC
2121 Ponce de Leon
Suite 650
Coral Gables, FL 33134

Re: November 9, 2025 Letter regarding BBC *Panorama* Documentary

Dear Mr. Brito:

Our office represents the British Broadcasting Corporation ("BBC"). We write regarding your letter to the BBC dated November 9, 2025, which you sent on behalf of President Donald J. Trump. You wrote with respect to the broadcast of the BBC's *Panorama* documentary titled "Trump: A Second Chance" ("the Program") on October 28 and November 2, 2024, depicting his supporters during President Trump's campaign for a second term in office. Please direct all further communication about your letter to my attention.

Your letter, citing Florida law, alleges that in a short clip of excerpts of his speech on January 6, 2021, the BBC "intentionally sought to completely mislead its viewers." President Trump alleges that the Program constituted defamation. The President threatens to bring a $1 billion defamation suit against the BBC.

Our client had no intention of misleading anyone. Indeed, the BBC has publicly expressed its contrition in statements to the Chair of Parliament's Culture, Media, and Sport Committee, on its website, and in the media. We also enclose with this letter a copy of the BBC's personal apology to President Trump, sent by email today to White House Chief of Staff Susie Wiles.

Additionally, the BBC has posted or shortly will post the following retraction:[1]

―――――――――――――――――――

[1] https://www.bbc.co.uk/programmes/m0024h6r and
https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/

Alejandro Brito
November 13, 2025
Page 2

> *This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.*
>
> *During that sequence, we showed excerpts taken from different parts of the speech.*
>
> *However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and that this gave the mistaken impression that President Trump had made a direct call for violent action.*
>
> *The BBC would like to apologise to President Trump for that error of judgement.*
>
> *This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.*

While the BBC sincerely regrets the manner in which the video clip was edited, for the following reasons, we strongly disagree that President Trump would have a basis for a viable defamation claim.

**First**, President Trump has made no allegation that the Program was published in Florida, as he must in order to establish personal jurisdiction over the BBC and to meet the publication requirement for a defamation claim. The BBC did not have contractual rights to, and therefore did not, distribute the Program on U.S. channels. Moreover, the version on its website linked to in your letter was geographically restricted to U.K. viewers. In any event, it ceased to be available even in the U.K. from 12 months after the Program aired. The President therefore has not established that he would have any jurisdictional basis to bring a claim against the BBC in Florida or elsewhere in the United States.[2]

**Second**, President Trump will not be able to prove that the Program caused him any injury, let alone the unspecified "overwhelming reputational and financial harm" he alleges.[3] He won reelection on November 5, 2024, after the Program aired. He carried Florida by a

---

[2] *See, e.g.*, *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (to be actionable as defamation, "the material . . . must not only be *accessible* in Florida, but also be *accessed* in Florida") (emphasis in original).

[3] *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. Cir. Ct. 2014) (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1997)) (given "negative publicity" from "a litany of news media entities" other than defendant NBC, "the challenged excerpts from and characterization of Zimmerman's statements . . . could not have been the required 'but for' cause of Zimmerman's alleged injuries").

2

Alejandro Brito
November 13, 2025
Page 3

commanding 13-point margin, improving over his 2020 and 2016 performances in the state.[4]

Moreover, when the Program aired, the President had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee Report found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[5] Given the extensive allegations prior to the release of the Program regarding his January 6 speech, in criminal and civil cases and among the press and public, the Program could not have caused any incremental harm.

**Third**, President Trump has no basis to allege that the BBC published the Program with actual malice – that is, knowing the Program was false or while entertaining serious doubts as to its truth – as he must.[6] Rather, as the BBC Chair has explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."[7]

Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements. In the course of their prosecutions, numbers of people arrested at the Capitol on January 6 told the courts that they interpreted President Trump's remarks as a call to

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g.*, *Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

[6] *See, e.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020). Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971).

[7] Letter from BBC Chair Samir Shah to Dame Caroline Dinenage MP (Nov. 10, 2025), https://committees.parliament.uk/publications/50118/documents/270340/default.

Alejandro Brito
November 13, 2025
Page 4

action.[8]

Further, the BBC has taken prompt corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," issuing a retraction, and confirming that the Program was not scheduled to be re-broadcast and will not be rebroadcast in that form on any BBC platforms. This further negates any suggestion of actual malice.[9]

**Fourth**, the brief clip, which shows about 15 seconds of President Trump's speech on January 6, is part of an hour-long program containing extensive coverage of his supporters praising President Trump, and presenting balanced coverage of his path to reelection. Courts consider challenged statements in the context of the full publication in which they were made. Accordingly, President Trump cannot create an actionable statement or implication by citing a singular clip but ignoring the remaining, overall context of the Program.[10]

**Fifth**, the Program contains protected expressions of opinion, including many from President Trump's ardent supporters. It depicts hotly contested events related to Presidential elections, including the events of January 6, 2021, which have been the subject of extensive controversy and litigation. In this context, even if the Program is reasonably interpreted to report that President Trump encouraged the crowd to march to the Capitol on January 6, that is an

---

[8] *See, e.g.*, Ryan J. Reilly, *Jan. 6 Rioter Who Said He Wanted Trump's 'Approval' Found Guilty by Jury*, CNBC (Apr. 14, 2022), https://www.cnbc.com/2022/04/14/jan-6-rioter-who-said-he-wanted-trumps-approval-found-guilty-by-jury.html ("A Donald Trump supporter who told jurors that he was 'following presidential orders' when he stormed the U.S. Capitol on Jan. 6 was found guilty on Thursday after he admitted that he stole a coat rack and a bottle of liquor from the building."); Shawna Chen, *Judge: Jan. 6 Rioter Who Broke into Capitol Followed "Trump's Instructions,"* Axios (Jan. 17, 2023), https://www.axios.com/2023/01/18/jan6-capitol-riot-trump-instructions ("A federal judge said Tuesday that a California woman who breached the U.S. Capitol during the Jan. 6 insurrection 'followed then-President Trump's instructions' in breaking the law."); Kyle Cheney, *Jan. 6 Defendant Wants Jurors to Blame Trump, Not Him, for Decision to Breach Capitol*, Politico (Apr. 13, 2022), https://www.politico.com/news/2022/04/13/january-6-defendant-donald-trump-00025019 ("Though dozens of defendants have argued in court filings that they believed Trump had authorized the assault on the Capitol, judges have largely rejected that contention and said rioters should be held to account for their own actions. But whether a jury sees that argument differently will be an important test that could reverberate across hundreds of other cases.").

[9] *See, e.g.*, *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

[10] *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020); *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

Alejandro Brito
November 13, 2025
Page 5

opinion on a matter of public concern, heavily protected under defamation law in the United States.[11]

For these reasons, the BBC declines President Trump's claim that the Program constituted defamation and his request for compensation.

We sincerely hope that the BBC's public statements of contrition, and the direct apology that we have given to the President, will suffice to put this matter to rest.

The BBC reserves all further rights and remedies, including those available under Fla. Stats. § 57.105 and § 768.295(2)(a).

Sincerely,

BALLARD SPAHR LLP

By _____
Charles D. Tobin

Enclosure

---

[11] *See, e.g., Trump v. CNN*, 684 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (dismissing defamation case because network's description of President Trump's election challenges as the "Big Lie" was non-actionable opinion, not a statement of fact).

5



British Broadcasting Corporation

From the Chairman

Broadcasting House, London  W1A 1AA

The President
The White House
1600 Pennsylvania Avenue NW
Washington
D.C. 20500
United States of America

13 November 2025

Dear Mr President,

As the Chair of the BBC I wanted to write to you personally. At the same time the BBC's lawyers have today responded to your legal team. The BBC's overall legal position is as set out in that letter. I should make clear at the outset that what follows is my view as the Chair of the BBC. The organisation is, by Royal Charter, independent of His Majesty's Government and nothing I write should imply approval or disapproval by the United Kingdom Government.

Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement. As it was your speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

- 2 -

The documentary followed a number of your supporters and campaigners, who told the BBC why they wanted you to be re-elected in the 2024 US Presidential Election. The BBC's intention was to reflect their contributions to the documentary fairly and accurately, including their support for you and your Presidency.

Whilst the documentary was not scheduled to be rebroadcast, the BBC has also made public today that it will not be broadcast again on any BBC platforms in a form that includes the misleading sequence.

That the BBC produces content of the highest editorial quality is of paramount importance to me. As Chair, I take responsibility for personally ensuring that the BBC retains the trust and confidence of our audiences.

I would be happy to discuss this matter, should this be of interest to you.

Yours sincerely,

**Samir Shah**

**BBC Chair**

# Ballard Spahr
**LLP**

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 8, 2026

*Via Certified Mail*

Mr. Jason A. Reding Quiñones
United States Attorney
Office of the United States Attorney for the Southern District of Florida
99 N.E. 4th Street
Miami, Florida 33132

Ms. Jeanine Ferris Pirro
United States Attorney
Office of the United States Attorney for the District of Columbia
601 D Street NW
Washington, DC 20579

Re:     *Touhy* Request for the Production of Documents in *Trump v. BBC*, Case No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Quiñones and Ms. Pirro:

   This law firm represents defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited in the above-referenced civil action pending in the United States District Court for the Southern District of Florida (the "Action").  Enclosed please find a subpoena for the production of documents from the Office of the United States Attorney for the District of Columbia, identified below, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), 28 C.F.R. § 16.21, *et seq.*, and the Justice Manual for the United States Department of Justice, Title 1, 1-6.100, *et seq.*

## BACKGROUND

   On December 15, 2025, Plaintiff President Donald J. Trump filed a two-count lawsuit alleging defamation and violations of the Florida Deceptive and Unfair Trade Practices Act against Defendants, arising from the documentary titled "*Trump: A Second Chance?*" ("the Documentary").  For your reference, we have attached a copy of the complaint to this letter as Exhibit 1.  The Documentary explored for the BBC's U.K. audience the President's continued success with his loyal American voters, following some

Mr. Jason A. Reding Quiñones & Ms. Jeanine Ferris Pirro
May 8, 2026
Page 2

of his most ardent supporters, known as the "Front Row Joes," and speaking with experts in the run up to the November 2024 U.S. presidential election. Plaintiff alleges that the Documentary defamed him in its depiction of his speech on January 6, 2021 ("the Speech"), which he alleges falsely depicted him as inciting violence at the Capitol that day.

The Action puts directly into issue the factual circumstances of the violence at the Capitol building on January 6, 2021, including whether there were plans of violence ahead of time, the communications about any planned violence, and whether individuals understood the Stop the Steal Rally or Trump's communications about January 6, 2021 as a call to violence.  Accordingly, the requested documents and information identified below are paramount to the case that Plaintiff has brought against Defendants.

At the moment, Plaintiff has not provided any such relevant documents or information himself in response to Defendants' written discovery requests propounded on him.  Furthermore, the information possessed by the Office of the United States Attorney for the District of Columbia about the intelligence it gathered regarding the events of January 6, 2021 are in the agency's possession, and accordingly would only be obtainable through this Request.

Given that Plaintiff's allegations have placed these documents in the Office of the United States Attorney for the District of Columbia's possession at the heart of the Action, and that Defendants need these documents to adequately defend themselves in court, the need for these documents outweigh any confidentiality of the information and any burden on Office of the United States Attorney for the District of Columbia to produce these records.  As detailed below, the requested records are confined by date and subject matter to limit the intensiveness of any search for responsive documents.  Additionally, there is a protective order in place that will limit the exposure of any confidential items beyond the parties involved.

No previous decisions, orders, or pending motions in the Action bear upon the relevance of the requested records or testimony at this point.  Production of the requested documents would also comport with the Department of Justice's general policy of "favor[ing] cooperation in state and federal cases in which . . . information obtained by the Department is sought."  Justice Manual 1-6.240.

### DEFENDANTS' TOUHY REQUEST SHOULD BE GRANTED

Under 28 C.F.R. § 16.26, the Office of the United States Attorney for the District of Columbia considers several factors in evaluating a *Touhy* request.  The following factors favor providing the requested documents to Defendants:

- **Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose.**  Compliance

Mr. Jason A. Reding Quiñones & Ms. Jeanine Ferris Pirro
May 8, 2026
Page 3

with this request is appropriate under the Federal Rules of Civil Procedure
and the local rules of the Southern District of Florida.  Both permit parties to
litigation to seek documents through subpoenas to non-parties where the
requested information is relevant to the litigation, the requesting party shows
need for the documents, and the breadth and time period of the request is not
unreasonable.  *See Great. Am. Ins. Co. v. Veteran's Support Org.*, 166 F.
Supp. 3d 1303, 1310 (S.D. Fla. 2015).  Here, Defendants' requests would not
be unduly burdensome because the information sought is limited to a specific
subject matter, falls within a narrow date range, and is relevant to the
proceedings and necessary to Defendants' ability to evaluate the merits of
Plaintiff's claims for the reasons discussed below.

- **Whether disclosure is appropriate under the relevant substantive law concerning privilege or disclosure of information.**  Defendants do not believe that their requests would involve any privileged materials, such as trade secrets, commercial or financial information, attorney-client communications, attorney work product, documents that would fall under executive privilege, or documents that would impede any ongoing law enforcement investigations.

## LIST OF REQUESTED DOCUMENTS

In the interest of transparency and aiding the Office of the United States Attorney for
the District of Columbia's evaluation of this request, and in compliance with 28 C.F.R.
§ 16.22(d), below is a summary of documents Defendants seek, along with a description of
how the information sought is relevant to the issues in the Action.

- **All communications and documents from November 3, 2020 to January 6, 2021 regarding planned protests and potential violence in the Washington D.C. area on January 5 and 6, 2021:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Intelligence collected regarding online posts related to planned protests and potential violence, use of weapons, and shows of force in the**

Mr. Jason A. Reding Quiñones & Ms. Jeanine Ferris Pirro
May 8, 2026
Page 4

> **Washington, D.C. area on January 6, including gathering at the U.S. Capitol building:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

Defendants seek this information in good faith and reasonably believe that the documents identified above are not available through other discovery or sources available in this Action.

Please contact us if you have any questions about this letter or the proposed subpoena.  We respectfully ask that you act on this *Touhy* request as promptly as possible. Thank you in advance for your attention to this matter.

Sincerely,

BALLARD SPAHR LLP

Charles D. Tobin

Cc: Counsel for Plaintiff

Encl.: Subpoena, Exhibit 1 (Complaint)

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

| | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:

_____
*(Name of person to whom this subpoena is directed)*

❒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

        *CLERK OF COURT*

                                                                OR

_____                    _____
    *Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) |
|  | ) |
|     Plaintiff, | ) |
|  | ) |
| v. | )   Case No. 1:25-cv-25894-RKA |
|  | ) |
| BRITISH BROADCASTING CORP., et al., | ) |
|  | ) |
|     Defendants. | ) |
|  | ) |

**ATTACHMENT A TO SUBPOENA TO THE OFFICE OF THE UNITED STATES ATTORNEY FOR THE DISTRICT OF COLUMBIA TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.    Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.    "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.    "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4. "Communications" means any manner of receiving or transmitting information, opinions or thoughts, whether orally, in writing, electronically, or otherwise. The term "Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

5. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

6. "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced. The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—

2

including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

7.      "Including" shall be construed as "including but not limited to."

8.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

9.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

10.      "Washington, D.C. area" means the Washington—Arlington—Alexandria Metropolitan Statistical Area.

11.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all components under the Office of the United States Attorney for the District of Columbia; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections) for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

4

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6. Unless otherwise stated, the relevant time period for all requests is for Documents created or originating on or after November 3, 2020 to January 6, 2021.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**: All Communications and Documents Related to potential violence or protests in the Washington D.C. area on January 5 and 6, 2021.

5

**REQUEST FOR PRODUCTION NO. 2:**  All Documents created, collected, or received by Office of the United States Attorney for the District of Columbia Related to potential violence, planned protests, the use of weapons, or shows of force in the Washington, D.C. area on January 6, 2021, including gathering at the United States Capitol building.

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BRITISH BROADCASTING CORPORATION a/k/a/ BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, PRESIDENT DONALD J. TRUMP ("President Trump"), by and through his counsel, brings this action against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC (the "BBC"), BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED (collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1.      This action concerns a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump, which was published in a BBC *Panorama* documentary, that was fabricated and aired by the Defendants one week before the 2024 Presidential Election in a brazen attempt to interfere in and influence the Election's outcome to President Trump's detriment.

1

2. In the BBC *Panorama* documentary titled "Trump: A Second Chance" (the "*Panorama* Documentary," or the "Documentary"),[1] which was first broadcast on October 28, 2024, the BBC intentionally and maliciously sought to fully mislead its viewers around the world by splicing together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech").[2] The *Panorama* Documentary deliberately omitted another critical part of the Speech in such a manner as to intentionally misrepresent the meaning of what President Trump said.

3. The *Panorama* Documentary falsely depicted President Trump telling supporters: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary). President Trump never uttered this sequence of words.

4. This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and then, much later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight*

---

[1] First published by Defendants on October 28, 2024 with a runtime of 57:54. *See* "Trump: A Second Chance?", BBC (Oct. 28, 2024) (https://www.bbc.co.uk/programmes/m0024h6r) (last visited Dec. 15, 2025)

[2] The Speech was 70:53 in length.

2

*like hell, and if you don't fight like hell, you're not going to have a country anymore*," (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

5.      Moreover, the BBC purposefully omitted President Trump stating, less than one minute after urging supporters to cheer for their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

6.      As set forth in a damning and recently leaked BBC internal whistleblower document, the BBC intentionally used the *Panorama* Documentary to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting, and that he "said something he did not,"[3] by splicing together footage from the start of the Speech with a separate quote that he said nearly 55 minutes later, while omitting his statement calling for peace, made less than one minute after his first statement urging supports to cheer their senators and congressmen at the Capitol. Such distortion of the President's speech by the BBC "materially misled viewers."[4]

7.      Moreover, concerns about the *Panorama* Documentary were raised internally before its dissemination, but the BBC ignored those concerns and did not take corrective action.

8.      This instance of doctoring—in the form of distortion of meaning and splicing of entirely unrelated word sequences—is part of the BBC's longstanding pattern of manipulating

---

[3]      Gordon Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*, THE TELEGRAPH (Nov. 6, 2025), https://www.telegraph.co.uk/news/2025/11/06/read-devastating-internal-bbc-memo-in-full/ (last visited Dec. 15, 2025).

[4]      *Id*.

President Trump's speeches and presenting content in a misleading manner in order to defame him, including fabricating calls for violence that he never made. *See e.g.* ¶¶ 55-87, *infra*.

9. The BBC, faced with overwhelming and justifiable outrage on both sides of the Atlantic, has publicly admitted its staggering breach of journalistic ethics, and apologized, but has made no showing of actual remorse for its wrongdoing nor meaningful institutional changes to prevent future journalistic abuses.

10. Accordingly, President Trump brings this action for compensatory and punitive damages for the extensive reputational harm inflicted upon him by the Defendants.

**PARTIES**

11. Plaintiff, President Trump, is a citizen of the United States and a citizen of the State of Florida. He served as the 45th President of the United States and currently serves as the 47th President of the United States.

12. Defendant, the BBC, is a British corporation established by royal charter and operating under an agreement with the United Kingdom's Secretary of State for Culture, Media, and Sport, with its principal place of business in London, England. The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films Ltd., and its international distribution partner, Blue Ant Media Corporation.

13. Defendant, BBC Studios Distribution Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

14. Defendant, BBC Studios Productions Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

4

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are completely diverse, as President Trump is a citizen of Florida, while all Defendants are citizens of the United Kingdom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     The Court possesses personal jurisdiction over Defendants pursuant to Florida Statute 48.193(2) because Defendants, during the operative period alleged in this Complaint, engaged in substantial and not isolated business activities in Florida, and more specifically in this District. Defendant BBC publishes online news reports, editorials, and other media content at https://www.bbc.com, which are regularly accessed by individuals in Florida.

17.     The BBC operates in the United States not as an abstract concept but in a constant manner; the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location.

18.     The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web

pages entitled "Florida – BBC News"[5] and "Florida – BBC Weather,"[6] among others. The BBC also offers web pages specific to cities in Florida.[7]

19. Additionally, the BBC offers subscriptions to individuals in Florida and as a result, has thousands of subscribers in Florida. Any individual in the United States, including Florida, can pay for a subscription to the BBC's content and services.[8]

20. Individuals in the United States, including Florida, also have another option for consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform.[9] *BritBox* is available in the United States, including in Florida, and has thousands of subscribers in Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount of the BBC's original content—including *Panorama*.

21. Accordingly, BBC has engaged, and continues to engage in, substantial and not isolated activity in Florida.

---

[5] *Florida – BBC News*, BBC, https://www.bbc.com/news/topics/c77jz3mdq1jt (last visited Dec. 15, 2025).

[6] *Florida – BBC Weather*, BBC, https://www.bbc.com/weather/3442585 (last visited Dec. 15, 2025).

[7] *See, e.g., Miami – BBC News*, BBC, https://www.bbc.com/news/topics/cp7dde75nmlt (last visited Dec. 15, 2025).

[8] *Get even more from a BBC subscription*, BBC, https://www.bbc.com/subscribe (last visited Dec. 15, 2025).

[9] *BritBox by BBC*, https://www.britbox.com/us/?gclsrc=aw.ds&&utm_source=google&utm_medium=paid-search&utm_campaign=17444044535-137684208899&utm_content=602709820305&utm_term=g&gad_source=1&gad_campaignid=17444044535&gbraid=0AAAAADMxMXrfBmo_s56m_ZA2aFpeyy6C_&gclid=CjwKCAiA0eTJBhBaEiwA-Pa-hbSItFwaYwfNGsO5WR1trkY2tlU0j8XCZ76_KY4_xRzkIl0Sr6pPBxoCTrkQAvD_BwE (last visited Dec. 15, 2025).

22.     In addition, this Court possesses personal jurisdiction over Defendants pursuant to: (a) Florida Statute §48.193(1)(a)(1), because Defendants operate, conduct, engage in, or carry on a business in Florida or have an office or agency in Florida, (b) Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act in Florida (as stated herein), and (c) Florida Statute §48.193(1)(a)(6) because Defendants caused injury to President Trump within Florida arising out of an act or omission committed by Defendants in Florida, while at or about the time of the injury, products and services provided by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

23.     The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie ("Davie") stated in his recent resignation letter: "Despite a hugely competitive market, I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*."[10]

24.     The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC.

25.     In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer.

---

[10]     *Davie and Turness resignations in full*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c1k02vr1my2o (last visited Dec. 15, 2025). (Emphasis added).

26.     According to *vpnMentor*, a VPN research firm, VPN usage in Florida has skyrocketed since 2024, with a 51% increase in demand on December 19, 2024, and an over 1,000% increase in VPN usage at the beginning of 2025.[11]

27.     Florida streamers have opted to use VPNs to increase their "streaming freedom." Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer.[12]

28.     To that end, an article published by *Tom's Guide*, a reputable technology news outlet, revealed that a VPN usage survey showed that approximately 41% of VPN subscribers use the service to stream content, citing BBC iPlayer as an example of what a VPN subscriber could view using a VPN.[13]

29.     The *Panorama* Documentary's publicity, coupled with significant increases in VPN usage in Florida since its debut, establishes the immense likelihood that citizens of Florida accessed the Documentary before the BBC had it removed.

---

[11]     *Floridians Flock to VPNs As Age-Verification Law Takes Effect*, TAMPA FREE PRESS (Jan. 8, 2025) (https://www.tampafp.com/floridians-flock-to-vpns-as-age-verification-law/) (last visited Dec. 15, 2025).

[12]     *Florida VPN Surge: Why VPN Usage Skyrocketed 1,000% in Florida* (2025), TRUSTED TECHSPOT (https://trustedtechspot.com/florida-vpn-surge/) (last visited Dec. 15, 2025).

[13]     *More Than 40% of VPN Subscribers Use Them for Streaming – Here's Why*, TOM'S GUIDE (June 2, 2021) https://www.tomsguide.com/features/more-than-40-of-vpn-subscribers-use-them-for-streaming-heres-why) (last visited Dec. 15, 2025).

8

30.    Articles like those published by Tom's Guide[14] and PureVPN[15]—giving a summary of the *Panorama* Documentary's plot, telling users how to view the Documentary, and going as far as to provide links to VPNs that allow a user to view BBC iPlayer—make it overwhelmingly certain that Floridians accessed the Documentary using a VPN during the time the Documentary was available.

31.    Further supporting the fact that Floridians accessed the *Panorama* Documentary through a VPN, *The Guardian* reported that research showed that "65 million people from abroad watch the broadcaster's license-fee funded iPlayer service using proxy servers or virtual private networks."[16]

32.    As underscored by the Chairman of the FCC, Brendan Carr, "[t]he BBC has stated that it has a number of partnerships with U.S. broadcasters, including PBS and NPR, to distribute BBC programming here in America."[17]

---

[14]    *How to Watch 'Trump: A Second Chance?'*, TOM'S GUIDE (Oct. 28, 2024) (https://www.tomsguide.com/entertainment/streaming/how-to-watch-trump-a-second-chance-online-from-anywhere) (last visited Dec. 15, 2025).

[15]    *How to Watch 'Trump: A Second Chance in the US'*, PUREVPN https://www.purevpn.com/how-to-watch-trump-a-second-chance-in-the-us (last visited Dec. 15, 2025).

[16]    Paul Revoir, *BBC iPlayer 'Watched By More Than 60 Million People Outside the UK for Free'*, THE GUARDIAN (July 21, 2015) (https://www.theguardian.com/media/2015/jul/21/bbc-iplayer-uk-vpn-proxy-server) (last visited Dec. 15, 2025).

[17]    *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at* BCC (Nov. 19, 2025) (https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed) (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025) (https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/) (last visited Dec. 15, 2025).

33. The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida.

34. Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary,[18] including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025.[19]

35. Blue Ant aggressively advertised its exclusive distribution of the *Panorama* Documentary outside of the United Kingdom, further evidencing the intent of the BBC and its strategic partners to disseminate the Documentary as widely and into as many streams of commerce and channels of distribution as possible, including Florida.[20]

---

[18] Karolina Kaminska, *Blue Ant Studios to shop BBC's 'President Trump: A Second Chance?' In Cannes*, C21 MEDIA (Oct. 10, 2024), https://www.c21media.net/news/blue-ant-studios-takes-october-films-president-trump-a-second-chance-to-cannes/ (last visited Dec. 15, 2025).

[19] Nicholas Sokic, *Blue Ant pulls BBC Trump doc from catalogue*, PLAYBACK (Nov. 12, 2025), https://playbackonline.ca/2025/11/12/blue-ant-pulls-controversial-bbc-trump-doc-from-catalogue/ (last visited Dec. 15, 2025) ("Blue Ant rights has confirmed that it has pulled the BBC *Panorama* documentary on U.S. President Donald Trump from its catalogue amid the controversy surrounding the film.").

[20] *'President Trump: A Second Chance?' Launches at MIPCOM 2024*, BLUE ANT MEDIA CORPORATION (Oct. 10, 2024), https://web.archive.org/web/20250712071622/https://blueantmedia.com/2024/10/president-trump-a-second-chance-launches-at-mipcom-2024/ (last visited Dec. 15, 2025) ("Blue Ant Studios today confirms that the explosive Donald Trump documentary, produced by October Films, has just wrapped production with the working title, President Trump: A Second Chance? Commissioned by BBC's Panorama, and produced by October Films, this hotly anticipated and

10

36. Further, and as explained in greater detail below, the BBC elected to publish the *Panorama* Documentary just one week before the 2024 United States Presidential Election with the express intent of interfering with it and trying to undermine President Trump's odds of winning reelection.

37. Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago, in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary.

38. The BBC explicitly instructed and ordered its producers to travel to Florida and to utilize this forum for the purpose of creating the Documentary and defaming President Trump.

39. The *Panorama* Documentary contains extensive evidence and examples of the BBC's producers gathering original footage specifically for use in the Documentary—not using stock footage—at Mar-a-Lago and nearby in the Palm Beach area on April 4, 2023, as well as on other dates. These examples include, but are not limited to: (a) Between 2023 and 2024, the BBC, or its contractors, filmed (i) a wide angle aerial view of Mar-a-Lago taken from a vantage point in the Lake Worth Lagoon (3:57 into the Documentary), (ii) a wide angle aerial view of Mar-a-Lago from a vantage point just north facing the Atlantic Ocean (4:47), (iii) a wide angle shot of the Mar-a-Lago pool and exterior and added a graphic "Trump Residence, Mar-a-Lago Florida" (5:00); and (b) on April 4, 2023, BBC producers and BBC-contracted crew members filmed (i) supporters of

---

distinctive 1x60 documentary will make its official international debut at MPICOM, where attending buyers will have an exclusive previews.").

President Trump lining the streets as President Trump's motorcade proceeded with President Trump through Palm Beach on the way to Mar-a-Lago (4:03), (ii) Rick Frazier, a supporter of President Trump, in the passenger seat of a vehicle as it followed the motorcade on the approach to Mar-a-Lago (4:09), (iii) The vehicle carrying Frazier as it entered Mar-a-Lago (4:51), (iv) Frazier as he walked in to Mar-a-Lago (5:03), (v) President Trump as he walked in to Mar-a-Lago to deliver a speech (5:11), (vi) Supporters cheering for the President as he prepared to speak inside Mar-a-Lago (5:24), (vii) President Trump as he delivered a speech to supporters inside Mar-a-Lago (5:27), and (viii) Frazier as he interacted with other supporters of President Trump (6:15 and 6:55).

40.     The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida.

41.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: President Trump is a citizen of Florida who was defamed by the BBC while in Florida, the BBC filmed the *Panorama* Documentary in significant part in Florida, and the BBC, in concert with its strategic partners including October Films Ltd. and Blue Ant Media Corporation, distributed the Documentary into Florida.

## FACTUAL ALLEGATIONS

### *The BBC's Defamatory and Deceptive Depiction of*
### *President Trump's Speech in the Panorama Documentary*

i.     *The BBC Splices and Distorts President Trump's Speech*

42.     The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary wrongly made it appear that he said: "*We're going to walk down to the Capitol, and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

43.     This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory, given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

44.     Moreover, to further the BBC's intended, false, malicious, and defamatory message that President Trump fomented violence, which he did not, the BBC intentionally omitted President Trump saying, less than one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building*

13

*to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

> ii.     *The BBC's Director General and Head of News Resign in Disgrace,*
> *and the BBC, Under Fire, Reluctantly Admits Wrongdoing*

45.     On November 9, 2025, Davie and News CEO Deborah Turness resigned in disgrace over their leading roles in the *Panorama* Documentary.[21]

46.     Also on November 9, 2025, President Trump's counsel emailed a letter to Samir Shah (Chairman of the BBC) and Sarah Jones (General Counsel) entitled "Demand to Retract False and Defamatory Statements About The President of the United States of America" demanding retraction of the BBC's false depiction of President Trump, an apology for the false depiction of President Trump, and monetary compensation.  ***See* Exhibit A**.

47.     By letter dated November 13, 2025, the BBC's counsel indicated that the BBC would apologize to President Trump but, somehow, ignoring the resignations of the BBC's leadership, admitting of wrongdoing, and apology, still attempted to deny intentional wrongdoing and declined to pay damages. ***See* Exhibit B**.

48.     Enclosed with the letter from counsel was a letter of apology from Chairman Shah, which stated, *inter alia*:

> Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. ***This gave the mistaken impression that you had made a direct call for violent action***. ***That was an editorial error and it should not have happened***. ***I have stated clearly and publicly that the BBC apologises for that error of judgement***. As it was your

---

[21]     Aleks Phillips and Helen Bushby, *BBC director general and News CEO resign over Trump documentary edit*, BBC (Nov. 9, 2025),  https://www.bbc.com/news/articles/c3vn25d5dq7o  (last visited Dec. 15, 2025) ("It is unprecedented for both the director general and the head of BBC News to resign on the same day."); *see also Davie and Turness resignations in full*, *supra*.

speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

*Id.* (emphasis added).

49.     The BBC then published the following apology on its "Corrections and Clarifications" page, which was also included in the November 13 letter:

**Panorama – Trump: A Second Chance?**

**28 October 2024**

This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.

During that sequence, we showed excerpts taken from different parts of the speech.

However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, *and **that this gave the mistaken impression that President Trump had made a direct call for violent action***.

The BBC would like to apologise to President Trump for that ***error of judgment***.

This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.[22]

50.     Notably, the BBC did not broadcast a correction, apology, or retraction during a broadcast in a comparable manner as the *Panorama* Documentary, or with a comparable audience.

### *Substantial Evidence of The BBC's Actual Malice*

51.     Contrary to the BBC's claim that its splicing, manipulation, and distortion of the Speech was an unintentional "editorial error," substantial evidence suggests that this was an intentional and malicious effort to falsely and deceptively portray President Trump as having called for violent action on January 6, 2021.

---

[22]     *Corrections and Clarifications*, BBC (Nov. 13, 2025), https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/ (last visited Dec. 15, 2025) (emphasis added).

15

52.     As an initial matter of common sense, it would have been impossible for BBC's journalists and producers to splice together two distinct parts of the Speech from nearly 55 minutes apart *unless* they were acting intentionally. Such a dramatic distortion could never have occurred by accident. Two distinct parts of a speech from nearly 55 minutes apart do not inadvertently become spliced or linked together without effort, knowledge, and purpose. In parallel, by definition, an "an error of judgment," as admitted to by the BBC, is not inadvertent, it includes an intentional act.

53.     The BBC's actual malice is further compounded by its prior acts that unequivocally demonstrate that the organization has been anything but fair and impartial when it comes to reporting on President Trump. Substantial evidence demonstrates that before the publication of the *Panorama* Documentary, the BBC and its leadership bore President Trump ill will, wanted him to lose the 2024 Presidential Election, and were dishonest in their coverage of him.

54.     The BBC, its journalists, and its producers knew at and prior to the time they published the *Panorama* Documentary that the BBC's depiction of President Trump's Speech was false.

i.      *The Prescott Memorandum*

55.     In the early Summer of 2025, Michael Prescott, a journalist who until June 2025 was an independent adviser to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board "expos[ing] a string of incidents that demonstrate serious bias in the corporation's reporting"; following the leak of the Memorandum, *The Telegraph* published the Memorandum in early November 2025.[23]

---

23      Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

56.     Prescott highlighted a litany of disturbing misconduct demonstrating how far the

BBC has strayed from accepted standards of journalistic integrity, including, but not limited to,

the BBC's tampering with President Trump's Speech in the Documentary.[24]

57.     Notably, Prescott is nonpartisan, as he wrote in the Memorandum:

> I think it is important to state that I have never been a member of any political party
> and do not hold any hard and fast views on matters such as American politics or
> disputes in the Middle East. My views on the BBC's treatment of the subjects
> covered below do not come with any political agenda. Rather, what motivated me
> to prepare this note is despair at inaction by the BBC Executive when issues come
> to light. On no other occasion in my professional life have I witnessed what I did
> at the BBC with regard to how management dealt with (or failed to deal with)
> serious recurrent problems.[25]

58.     Regarding the *Panorama* Documentary, Prescott wrote:

> I watched the programme and found it to be neither balanced nor impartial—it
> seemed to be taking a distinctly anti-Trump stance. Critics of the Republican
> presidential candidate vastly outnumbered those who argued for him. What
> examination there was of reasons for Trump's popularity seemed to me insufficient
> given the overall balance of the programme. Given what I took to be the anti-Trump
> nature of the programme, I of course assumed there would be a similar, balancing
> Panorama programme about Democrat presidential candidate Kamala Harris the
> following week. I remain shocked that there was not.[26]

59.     Prescott was not alone in his assessment:

> I raised my concerns at the EGSC and David Grossman [Senior Editorial Adviser
> to the EGSC] was asked to review the programme.  He concluded the main
> contributors to the documentary were heavily weighted against Trump, with just
> one supporter against ten who questioned his fitness for office. Worse still, David
> highlighted alarming concerns about how Panorama had edited Trump's speech to
> his supporters on January 6, 2021 . . . . Examining the charge that Trump had incited
> protesters to storm Capitol Hill, it turned out Panorama had spliced together two
> clips from separate parts of his speech. This created the impression that Trump said
> something he did not and, in doing so, materially misled viewers.[27]

---

[24]     *Id*.

[25]     *Id*.

[26]     *Id*.

[27]     *Id*.

17

60. Prescott concluded about the splicing of President Trump's Speech that:

This was one of the most shocking sets of issues uncovered during my time with the EGSC. If BBC journalists are allowed to edit video in order to make people "say" things they never actually said, then what value are the Corporation's guidelines, why should the BBC be trusted, and where will this all end?[28]

ii. *The 2022 BBC Newsnight Distortion Demonstrating that the Panorama Documentary Splice is Part of a Defamatory Pattern by the BBC of Falsely Depicting President Trump Through Doctored Footage*

61. As further revealed by *The Telegraph*, the BBC also aired similarly doctored footage of President Trump's Speech on a 2022 episode of *BBC Newsnight*.[29]

62. In the doctored Speech clip aired by *BBC Newsnight*, President Trump is falsely, maliciously, and defamatorily depicted as saying: "*We're going to cheer on our brave senators and congressman and women, and we fight, we fight like hell.*"[30]

63. What President Trump really said was: "*[A]nd we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them.*"[31] (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech).

---

[28] *Id.*

[29] Camilla Tominey, Tim Stanley, John Cadigan, Rob Crilly, *BBC Newsnight also doctored Trump speech*, THE TELEGRAPH (Nov. 13, 2025), https://www.telegraph.co.uk/news/2025/11/13/bbc-doctored-trump-speech-second-time-newsnight/ (last visited Dec. 15, 2025).

[30] *Id.*

[31] *Id.*

18

64.     As *The Telegraph* reported: "Spliced footage of the speech, which aired in an episode in 2022, made it appear that Mr. Trump was encouraging his supporters to riot. The edit was much like a version aired in a *Panorama* documentary broadcast last year."[32]

65.     As further reported by *The Telegraph*: "Like *Panorama*, the *Newsnight* edit made it look as if the US President had urged supporters to walk to the Capitol building with him to 'fight like hell' by linking statements made nearly an hour apart in his speech."[33] The harm caused by this doctoring was exacerbated by the BBC intentionally omitting President Trump stating, only one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

66.     Immediately after the *BBC Newsnight* episode aired, Mick Mulvaney, former Acting White House Chief of Staff, and David Chaudoir, former award-nominated graphic designer for *BBC Newsnight* from 2022-24, both individually voiced their concerns regarding the misleading and malicious way *BBC Newsnight* edited the clip to distort reality.[34]

67.     Mr. Chaudoir specifically told *The Telegraph* that he was present for discussions about the *BBC Newsnight* clip the day after it was published, wherein *BBC Newsnight* production team members dismissed any ethical concerns about the *BBC Newsnight* clip.[35]

---

[32]     *Id.*

[33]     *Id.*

[34]     *Id*.

[35]     *Id*.

68.     Mr. Mulvaney expressed his concern on-air while being interviewed on *BBC Newsnight,* stating:

> Your video actually spliced together the presentation. He said: 'We're going to go down and we're going to cheer on our senators and our house members' and then it actually goes on to say 'And some of them we might not be able to' and that line about 'and we fight and fight like hell' is actually later in the speech yet your video makes it look like those two things came together. [36]

69.     The malicious nature of the spliced and edited clip is further underscored by former BBC legal affairs correspondent Clive Coleman's statements in response to the *Panorama* Documentary, stating:

> I really struggle to understand how we got to this place . . . The first lesson almost you're taught as a broadcast journalist is that you do not join two bits of footage together from different times in a way that will make the audience think that it is one piece of footage.[37]

*iii.*     *The 2024 BBC News Shooting Hoax Further Demonstrating that the Panorama Documentary Doctoring is Part of an Defamatory Pattern by the BBC of Falsely Depicting President Trump Calling for Violence*

70.     As also revealed by *The Telegraph*, the BBC "has admitted misleading viewers by claiming that Donald Trump called for one of his leading critics to be shot in the face."[38]

71.     This admission by the BBC, regarding three instances of false statements about

---

[36]     *Id*.

[37]     Faith Wardwell, *BBC Apologizes to Trump for Documentary Edits, but Pushes Back on Legal Threat*, POLITICO (Nov. 13, 2025) (https://www.politico.com/news/2025/11/13/bbc-trump-apology-documentary-00651451) (last visited Dec. 15, 2025).

[38]     Anita Singh, *BBC admits falsely claiming Trump wanted to shoot critic*, THE TELEGRAPH (Dec. 9, 2025), https://www.telegraph.co.uk/news/2025/12/09/bbc-admits-falsely-claiming-trump-wanted-to-shoot-critic/ (last visited Dec. 15, 2025).

President Trump supposedly calling for violence against a political opponent, none of which occurred, is contained in the now-public Memorandum, and yet the BBC has still failed to issue a public correction.[39]

72.   As described by *The Telegraph*:

> In the days before the US presidential election in November last year, a presenter on BBC World News America said that Mr. Trump "appeared to suggest Liz Cheney should face a firing squad for her stance on foreign policy."
>
> On the BBC News Channel, another presenter asked his guest: "He [President Trump] is out there on the campaign trail saying he wants people to shoot Liz Cheney in the face . . . Is that the sort of thing women react well to?
>
> Speaking on the Six O'Clock News the same night, Sarah Smith, the BBC's North America editor, said Mr. Trump had been "ratcheting up the violent rhetoric."
>
> She added: "In the latest spat, Donald Trump has been accused of being petty, vindictive and a wannabe tyrant because he suggested that one of his political opponents should face guns, have them trained on her face."[40]

73.   All these statements by BBC presenters were false.

74.   "In fact, Mr. Trump had accused Ms. Cheney of being a 'radical war hawk' who wanted to send troops to war while she remained in the safety of Washington DC, saying: 'Let's put her with a rifle standing there with nine barrels shooting at her face. OK? Let's see how she feels about it.'"[41]

75.   This false, defamatory, and malicious coverage of President Trump, broadcast in the same time period as the release of the *Panorama* Documentary, was consistent with the BBC's *modus operandi*, defaming President Trump by fabricating calls for violence allegedly issued by him, that he never actually made.

---

[39]   *Id.*

[40]   Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

[41]   *Id.*

21

*iv.* *The Panorama Documentary Was Intentionally One-Sided and Inflammatory, demonstrating that the Doctoring of President Trump's Speech Was Intentional and Part of the BBC's Defamatory Pattern*

76.     The lack of any effort by the BBC to publish content even remotely resembling objective journalism, or to maintain even a slight semblance of objectivity in the *Panorama* Documentary, demonstrates that the BBC had no regard for the truth about President Trump, and that the doctoring of his Speech was not inadvertent, but instead was an intentional component of the BBC's effort to craft as one-sided an impression and narrative against President Trump as possible.

77.     Indeed, by any measure, including the overwhelming ratio of anti-Trump versus pro-Trump commentators in the *Panorama* Documentary, the exceptionally high percentage of time granted to these negative voices in the Documentary versus the positive voices, and the inflammatory content of the negative remarks, all coupled with the BBC's historical unfairness to the President, it is apparent that the BBC fabricated the Documentary to damage President Trump. Doctoring his Speech was consistent with, and part of, the BBC's *modus operandi* of negatively covering President Trump without any pretense of objectivity.

78.     The BBC's aggressively anti-Trump stance is reflected straightaway in the opening scene of the *Panorama* Documentary's introduction, which runs for almost three minutes and begins with noted anti-Trump commentator Rick Wilson—who has written two books criticizing President Trump, *Everything Trump Touches Dies* (2018) and *Running Against the Devil: A Plot to Save America From Trump-and Democrats from Themselves* (2020), and has called the President "the devil" and a "cult leader"—declaring, to the backdrop of ominous cinematic music reaching a dramatic crescendo: "I'm the leading anthropologist of Donald Trump in the, in the

22

world, probably, I've thought about him and studied him more than probably anybody else, and I hate him. I hate what he is, and what he does."

79.     Seconds later, Wilson states of President Trump: "When you let the monster escape, it will come back, it is a rule of every damn horror movie in history."

80.     Former Clinton Secretary of Labor and current Berkeley Professor Robert Reich, another vocal critic of President Trump, then offers: "Once you've unleashed this anger, this hate, into the blood of America, well, it's very very difficult to stop it."

81.     A greater majority of the verbal commentary in the *Panorama* Documentary features negative assertions about President Trump by twelve individuals known to be hostile to the President, all of whom are presented as having some form of relevant expertise and authority about the subject matter presented. Moreover, an overwhelming majority of the overall Documentary, including the non-interview segments depicting political and historical events from recent years, presents President Trump in a negative light.

82.     Further demonstrating the BBC's malice and intent to interfere with the 2024 Presidential Election, the *Panorama* Documentary, after lingering at length on the events of January 6, 2021, cuts to a clip from the Democratic National Convention on August 22, 2024, showing Kamala Harris taking the stage with a news anchor breathlessly exclaiming in the background: "And here she is, Kamala Harris. It's hard to describe just how electric the mood is here right now."

83.     Toward the end of the *Panorama* Documentary, Reich shockingly compares President Trump to "Adolf Hitler," which rises to defamation itself, while Democrat Congressman Jared Huffman refers to the President as a "cult leader," also a defamatory statement.

23

84.     Others then join Reich in delivering hyperbolic warnings about President Trump and the supposedly catastrophic consequences that would ensue if President Trump were to emerge victorious.

85.     "The degree to which his pessimism and darkness has infected half this country terrifies me," adds Wilson. "There is no ideology in the Republican party except pain, they want vengeance," he continues.

86.     Berkeley Political Science Professor Steven Fish asserts "There's a reason why Xi Jinping and Vladimir Putin and Kim Jong Un and all these despots all over the world are rooting so hard for Trump because what Trump does is he seems to discredit democracy in the land of its stronghold, in the strongest democracy in the world, Trump seems to be proof that democracy doesn't work."

87.     Boston College History Professor Heather Cox Richardson offers, "this is the time when we either choose authoritarianism or democracy, and if we choose authoritarianism, there will be no turning back, so I think we better get this one right."

88.     Reich delivers a closing remark to punctuate the BBC's parade of bias: "Wish us luck, by us, I mean the United States."

   v.     *Prominent Voices Condemn the BBC and Confirm the BBC's Longstanding Pattern of Actual Malice Against President Trump*

89.     The BBC is so institutionally biased against President Trump and so devoid of self-awareness that, in response to the above letter from President Trump's counsel (**Exhibit A**), it

24

published a baseless and meritless article questioning the merits of any lawsuit that the President might bring against the BBC.[42]

90.     No less an authority than the United Kingdom's former Prime Minister, Liz Truss, discussed this bias, the need to hold the BBC accountable, and the BBC's pattern of actual malice.[43]

91.     Remarked Truss: "[The BBC] is a huge problem. They've lied, they've cheated, they've fiddled with footage, especially in the case of President Trump, but also covering up what's happening in Britain whether it's mass migration, whether it's our economic problems, they are always biased towards the left . . . ." She was also asked whether the BBC's tepid apology was sufficient, and responded: "No I don't, because they keep doing it again and again. They have painted a completely false picture of President Trump in Britain over a number of years, they've done the same thing about conservatives in our country . . . ." Lamenting the BBC's lost status as a "paragon" of journalism, she remarked that the BBC's "fake news" has caused immense harm to the public for a long time.[44]

92.     Caroline Dinenage, head of the House of Commons' Culture, Media, and Sport Committee said that Members of Parliament need assurances that the BBC was "taking decisive steps to uphold the corporation's reputation for integrity and public trust." She further remarked:

---

[42]     Kayla Epstein and Madeline Halpert, *Trump vs. the BBC: What hurdles might the President's legal argument face?*, BBC (Nov. 11, 2025), https://www.bbc.com/news/articles/c709y1yx1r0o (last visited Dec. 15, 2025).

[43]     *Former UK prime minister calls out BBC, encourages Trump to continue lawsuit*, FOX NEWS (Nov. 15, 2025), https://www.foxnews.com/video/6385140049112 (last visited Dec. 15, 2025).

[44]     *Id*.

"The Corporation must set the benchmark for accurate and fair reporting, especially in a media landscape where it is all too easy to find news presented in a less than impartial way."[45]

93.     Conservative Party leader and Member of Parliament Kemi Badenoch said that the distortion of the Speech by the *Panorama* Documentary was "absolutely shocking," adding: "That is fake news, actually putting different things together to make something look different from what it actually was." She continued: "And I do think heads should roll. Whoever it was who did that should be sacked, that's what Tim Davie should be doing, identifying who put out misinformation, and sacking them." Badenoch added: "The public need to be able to trust our public broadcaster . . . They should not be telling us things that are not true. This is a corporation that needs to hold itself to the highest standards, and that means that when we see people doing the wrong thing, they should be punished, they should be sacked."[46]

94.     Lisa Nandy, Secretary of State for Culture, Media and Sport of the United Kingdom, has similarly expressed concern, stating: "there is a real concern, which I share, that political appointments to the board of the BBC damaged confidence and trust in the BBC's impartiality."[47]

95.     FCC Chairman, Brendan Carr, in a letter addressed to Davie, Paula Kerger, (President and CEO of PBS), and Katherine Maher (CEO of NPR), strongly stated:

> As you know, the BBC was recently caught intentionally distorting a speech that President Trump gave in January of 2021. It did so by splicing together one portion of the speech with an entirely separate portion of the speech that came 54 minutes later. In doing so, the BBC program depicts President Trump voicing a sentence

---

[45]     *BBC has questions to answer over edited Trump speech, MPs say*, BBC (Nov. 4, 2025), https://www.bbc.com/news/articles/ckgzkyk7knzo.amp (last visited Dec. 15, 2025).

[46]     *Id*.

[47]     *'Real Concern' About Political Appointees on BBC Board, Nandy Says*, BBC (Nov. 14, 2025), https://www.bbc.com/news/articles/cdeg0ngnj0yo (last visited Dec. 15, 2025).

that, in fact, he never uttered. That would appear to meet the very definition of publishing a materially false and damaging statement.[48]

96. Carr continued, highlighting the findings of the Memorandum:

Indeed, there has now been widespread condemnation of the BBC's decision. A former independent external advisor to the BBC's Editorial Guidelines and Standards Committee, Michael Prescott, told the BBC that its decision "created the impression that Trump said something he did not and, in doing so, materially misled viewers." Likewise the Prescott Report states that the BBC program was "neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance.' In sum, it was a 'distortion of the day's events," the Prescott Report continued.[49]

### *Damages*

97. Since its publication, the *Panorama* Documentary has gained substantial traction and republication across various media in the United States and elsewhere globally.

98. Defendants used their false and defamatory publications to maliciously disparage and damage President Trump and impugn his reputation.

99. Specific, extensive economic harms resulted from these defamatory statements. Defendants timed the publication of the *Panorama* Documentary to be close in time to the 2024 Presidential Election, releasing it only one week before the Election.

100. The value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal

---

[48] *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at BCC* (Nov. 19, 2025), https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025), https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/ (last visited Dec. 11, 2025).

[49] *Id.*

reputation inflicted by these Defendants, and their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist, continue into the present, thereby causing massive economic damage to his brand value and significant damage and injury to his future financial prospects, in addition to continuing to harm his reputation as President of the United States of America.

101. President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

102. Exacerbating the damages, Defendants, at and prior to the time of their doctoring of the Speech, knowingly made their false, deceptive, malicious, and defamatory depiction of President Trump in bad faith, motivated by malice and ill-will against President Trump without any regard for the truth, and contrary to information Defendants possessed that showed their depiction to be false

103. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

<div align="center">

**CLAIMS FOR RELIEF**

**COUNT I – DEFAMATION *PER SE***

</div>

104. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

105. The following false, deceptive, malicious, and defamatory statements and depictions of and about President Trump, were, intentionally, with actual malice, and without privilege, published in the *Panorama* Documentary to millions of people in the State of Florida

and in this District, and elsewhere, by all Defendants, and were defamatory and false, and injured President Trump in his profession, occupation, and trade, thus constituting defamation *per se*:

(a) The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary made it seem that he stated: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

(b) This fabricated depiction of President Trump during the Speech was false and defamatory given that President Trump's actual and full remarks during the Speech were (i) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (ii) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021, 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

(c) Moreover, to further the BBC's intended, false, malicious, and defamatory message and impression that President Trump fomented violence, the BBC intentionally omitted President Trump stating, only one minute after urging supporters to cheer

29

on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

106. Defendants possessed information and had access to information which showed that their statements about, and representation and depiction of President Trump were false.

107. Defendants had no factual basis for this false depiction of President Trump.

108. Defendants' deceptive and defamatory distortion, doctoring, manipulation, and splicing damaged President Trump in his occupation, damaged his professional reputation, and portrayed him as engaging in supposed calls for rioting and violence that he never actually made.

109. The *Panorama* Documentary was not a continuation of a prior broadcast. Instead, it was the result of a separate and distinct decision by Defendants to maliciously disseminate false statements about President Trump in a new medium.

110. As pled *supra*, Defendants knew that their portrayal of the Speech in the *Panorama* Documentary was false, malicious, and defamatory.

111. Defendants' actual malice in publishing the *Panorama* Documentary is evidenced by their intentional splicing and distorting two entirely separate sentences made by President Trump during the Speech nearly 55 minutes apart, while omitting his statement calling for peace made less than one minute after his first statement urging supports to cheer on their senators and congressmen at the Capitol.

112. As a proximate result of the maliciously false and defamatory *per se* publication of a statement and depiction to third parties by Defendants, President Trump has been damaged.

113. Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards President Trump, he seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT II – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

114. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

115. In addition, this action is brought for violation of the Florida Deceptive and Unfair Trade Practices Act as codified in Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

116. Defendants are engaged in the conduct of trade and commerce in the State of Florida.

117. Defendants have violated the FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia,* intentionally and maliciously seeking to completely mislead their viewers by splicing together two separate parts of President Trump's Speech, while omitting other critical parts of the Speech in such a manner as to intentionally, falsely, maliciously, and defamatorily change the meaning of what President Trump said.

118. As a direct, proximate, and foreseeable result of Defendants' violation of FDUTPA, President Trump has suffered and continues to suffer substantial damages.

31

119.    Pursuant to Fla. Stat. §501.2105, President Trump is entitled to recover his attorneys' fees and costs from Defendants.

WHEREFORE, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, President Trump, hereby demands a jury trial as to all issues so triable.

Dated:  December 15, 2025

Respectfully submitted,

*/s/Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel:  305-614-4071
Fax:  305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

*/s/Edward Andrew Paltzik*
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice application forthcoming*)

32

/s/Daniel Zachary Epstein
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*



**BRITO**
P L L C

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

November 9, 2025

**Via Email**

Mr. Samir Shah
Chairman
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
samir.shah@bbc.co.uk

Ms. Sarah Jones
General Counsel
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
sarah.jones@bbc.co.uk

> **Re:** **Demand to Retract False And Defamatory Statements
> About The President of the United States of America**

Dear All:

This law firm serves as litigation counsel for President Donald J. Trump (hereinafter referred to as "President Trump"). Please direct all future correspondence relating to this matter to my attention. This correspondence serves as a demand under Florida Statute § 770.01[1] that you immediately retract the false, defamatory, disparaging, and inflammatory statements made about President Trump, which were published in a *Panorama* documentary that was fabricated and aired by the BBC. Failure to comply will leave President Trump with no choice but to pursue any and all legal rights and remedies available to recover damages for the overwhelming financial and reputational harm that the BBC has caused him to suffer, with all rights and remedies being expressly reserved by President Trump.

In the *Panorama* documentary, titled "Trump: A Second Chance,"[2] which was first broadcast on October 28, 2024—a week before the 2024 United States presidential election—the BBC intentionally sought to completely mislead its viewers by splicing together three separate

---

[1] President Trump does not agree or admit that only Florida law applies to any claims he might have in connection with or arising out of the Article and expressly reserves all rights concerning applicable law.

[2] *See* https://www.bbc.co.uk/programmes/m0024h6r. According to the BBC's website, the defamatory documentary was broadcast three times on October 28, 2024, and a fourth time on November 2, 2024.

Alejandro Brito
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

parts of President Trump's speech to supporters on January 6, 2021. The documentary showed President Trump telling supporters: "We're gonna walk down to the Capitol and I'll be there with you and we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore." This fabricated depiction of President Trump was false and defamatory given that President Trump's actual and full remarks were: "We're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down any one of you but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women." Moreover, the BBC edited out President Trump saying, "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Thus, as set forth in an internal whistleblower memorandum, the BBC's segment maliciously made it appear that President Trump "[said] things [he] never actually said," by editing together footage from the start of the speech with a separate quote early an hour later.

Due to their salacious nature, the fabricated statements that were aired by the BBC have been widely disseminated throughout various digital mediums, which have reached tens of millions of people worldwide. Consequently, the BBC has caused President Trump to suffer overwhelming financial and reputational harm.

## A. Applicable law.

Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Statements are defamatory if "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *See Zambrano v. Devanesan*, 484 So. 2d 603, 607 (Fla. 4th DCA 1986).

Even if the BBC attempts to whitewash its conduct as simply an expression of its opinions, Florida law makes clear that such a defense will not absolve its liability. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. ***Simply couching such statements in terms of opinion does not dispel these implications***.") (emphasis added); *see also Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983) ("***[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable***.") (emphasis added).

2

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

Consequently, the BBC lacks any viable defense to the overwhelming reputational and financial harm it has caused President Trump to suffer.

### B. Demand.

The above-referenced false, defamatory, malicious, disparaging, and inflammatory statements were published to deliberately denigrate President Trump. The timing of the fabricated documentary is evident. The BBC's reckless disregard for the truth underscores the actual malice behind the decision to publish the wrongful content, given the plain falsity of the statements. Accordingly, President Trump hereby demands that you: (1) immediately issue a full and fair retraction of the documentary and any and all other false, defamatory, disparaging, misleading, and inflammatory statements about President Trump in as conspicuous a manner as they were originally published; (2) immediately issue an apology for the false, defamatory, disparaging, misleading, and inflammatory statements about President Trump; and (3) appropriately compensate President Trump for the harm caused.

Moreover, please allow this letter to serve as notice to you, to your affiliated entities, subsidiaries, to all of their employees, and any other person acting on behalf of or in concert with the BBC, to preserve any and all evidence related in any way to the above-mentioned malicious, false, and defamatory statements the BBC published, and any other statements that the BBC has published regarding President Trump. By way of this letter, the BBC is hereby directed not to destroy, conceal, or alter any paper or electronic files, physical evidence, and/or other data relating in any way, no matter how remote, to your false claims regarding President Trump, and/or the circumstances leading to their dissemination, including, but not limited to: (1) all communications between you and any third party in any way related to your wrongful claims regarding President Trump; (2) all sources for your false claims regarding President Trump; (3) any and all documents and data referring to, reflecting, or relating to communications between you and any such third-parties or sources regarding your false claims regarding President Trump; and (4) any and all documents in any way related to your false claims regarding President Trump. This includes any information alleged to be protected by Florida Statute § 90.5015. *Monarch Air Group, LLC v. Journalism Dev. Network, Inc.,* No. 23-CV-61256, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (interpreting Fla. Stat. § 90.5015 and explaining that the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings.") (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)).

I understand that many records and files are maintained electronically. However, this letter specifically requests that all paper and hard copy originals be maintained and preserved in their original format. By the same token, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists and has been preserved, please preserve and maintain all electronically stored documents in their original native format, including all metadata. This preservation demand specifically encompasses any and all electronic documents,



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

including but not limited to, all word-processed files, emails, spreadsheets, all databases, log files, and any other electronically stored and/or generated documents or files.

If the BBC does not comply with the above by **November 14, 2025, at 5:00 p.m. EST**, President Trump will be left with no alternative but to enforce his legal and equitable rights, all of which are expressly reserved and are not waived, including by filing legal action for no less than $1,000,000,000 (One Billion Dollars) in damages. The BBC is on notice.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

4

# Ballard Spahr
LLP

------------------

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

November 13, 2025

*Via Email (abrito@britopllc.com) & Federal Express*

Alejandro Brito
Brito PLLC
2121 Ponce de Leon
Suite 650
Coral Gables, FL 33134

Re: November 9, 2025 Letter regarding BBC *Panorama* Documentary

Dear Mr. Brito:

Our office represents the British Broadcasting Corporation ("BBC"). We write regarding your letter to the BBC dated November 9, 2025, which you sent on behalf of President Donald J. Trump. You wrote with respect to the broadcast of the BBC's *Panorama* documentary titled "Trump: A Second Chance" ("the Program") on October 28 and November 2, 2024, depicting his supporters during President Trump's campaign for a second term in office. Please direct all further communication about your letter to my attention.

Your letter, citing Florida law, alleges that in a short clip of excerpts of his speech on January 6, 2021, the BBC "intentionally sought to completely mislead its viewers." President Trump alleges that the Program constituted defamation. The President threatens to bring a $1 billion defamation suit against the BBC.

Our client had no intention of misleading anyone. Indeed, the BBC has publicly expressed its contrition in statements to the Chair of Parliament's Culture, Media, and Sport Committee, on its website, and in the media. We also enclose with this letter a copy of the BBC's personal apology to President Trump, sent by email today to White House Chief of Staff Susie Wiles.

Additionally, the BBC has posted or shortly will post the following retraction:[1]

---

[1] https://www.bbc.co.uk/programmes/m0024h6r and
https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/

Alejandro Brito
November 13, 2025
Page 2

> *This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.*
>
> *During that sequence, we showed excerpts taken from different parts of the speech.*
>
> *However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and that this gave the mistaken impression that President Trump had made a direct call for violent action.*
>
> *The BBC would like to apologise to President Trump for that error of judgement.*
>
> *This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.*

While the BBC sincerely regrets the manner in which the video clip was edited, for the following reasons, we strongly disagree that President Trump would have a basis for a viable defamation claim.

**First**, President Trump has made no allegation that the Program was published in Florida, as he must in order to establish personal jurisdiction over the BBC and to meet the publication requirement for a defamation claim. The BBC did not have contractual rights to, and therefore did not, distribute the Program on U.S. channels. Moreover, the version on its website linked to in your letter was geographically restricted to U.K. viewers. In any event, it ceased to be available even in the U.K. from 12 months after the Program aired. The President therefore has not established that he would have any jurisdictional basis to bring a claim against the BBC in Florida or elsewhere in the United States.[2]

**Second**, President Trump will not be able to prove that the Program caused him any injury, let alone the unspecified "overwhelming reputational and financial harm" he alleges.[3] He won reelection on November 5, 2024, after the Program aired. He carried Florida by a

---

[2] *See, e.g.*, *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (to be actionable as defamation, "the material . . . must not only be *accessible* in Florida, but also be *accessed* in Florida") (emphasis in original).

[3] *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. Cir. Ct. 2014) (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1997)) (given "negative publicity" from "a litany of news media entities" other than defendant NBC, "the challenged excerpts from and characterization of Zimmerman's statements . . . could not have been the required 'but for' cause of Zimmerman's alleged injuries").

2

Alejandro Brito
November 13, 2025
Page 3

commanding 13-point margin, improving over his 2020 and 2016 performances in the state.[4]

Moreover, when the Program aired, the President had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee Report found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[5] Given the extensive allegations prior to the release of the Program regarding his January 6 speech, in criminal and civil cases and among the press and public, the Program could not have caused any incremental harm.

**Third**, President Trump has no basis to allege that the BBC published the Program with actual malice – that is, knowing the Program was false or while entertaining serious doubts as to its truth – as he must.[6] Rather, as the BBC Chair has explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."[7]

Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements. In the course of their prosecutions, numbers of people arrested at the Capitol on January 6 told the courts that they interpreted President Trump's remarks as a call to

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g.*, *Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

[6] *See, e.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020). Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971).

[7] Letter from BBC Chair Samir Shah to Dame Caroline Dinenage MP (Nov. 10, 2025), https://committees.parliament.uk/publications/50118/documents/270340/default.

Alejandro Brito
November 13, 2025
Page 4

action.[8]

Further, the BBC has taken prompt corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," issuing a retraction, and confirming that the Program was not scheduled to be re-broadcast and will not be rebroadcast in that form on any BBC platforms. This further negates any suggestion of actual malice.[9]

**Fourth**, the brief clip, which shows about 15 seconds of President Trump's speech on January 6, is part of an hour-long program containing extensive coverage of his supporters praising President Trump, and presenting balanced coverage of his path to reelection. Courts consider challenged statements in the context of the full publication in which they were made. Accordingly, President Trump cannot create an actionable statement or implication by citing a singular clip but ignoring the remaining, overall context of the Program.[10]

**Fifth**, the Program contains protected expressions of opinion, including many from President Trump's ardent supporters. It depicts hotly contested events related to Presidential elections, including the events of January 6, 2021, which have been the subject of extensive controversy and litigation. In this context, even if the Program is reasonably interpreted to report that President Trump encouraged the crowd to march to the Capitol on January 6, that is an

---

[8] *See, e.g.*, Ryan J. Reilly, *Jan. 6 Rioter Who Said He Wanted Trump's 'Approval' Found Guilty by Jury*, CNBC (Apr. 14, 2022), https://www.cnbc.com/2022/04/14/jan-6-rioter-who-said-he-wanted-trumps-approval-found-guilty-by-jury.html ("A Donald Trump supporter who told jurors that he was 'following presidential orders' when he stormed the U.S. Capitol on Jan. 6 was found guilty on Thursday after he admitted that he stole a coat rack and a bottle of liquor from the building."); Shawna Chen, *Judge: Jan. 6 Rioter Who Broke into Capitol Followed "Trump's Instructions,"* Axios (Jan. 17, 2023), https://www.axios.com/2023/01/18/jan6-capitol-riot-trump-instructions ("A federal judge said Tuesday that a California woman who breached the U.S. Capitol during the Jan. 6 insurrection 'followed then-President Trump's instructions' in breaking the law."); Kyle Cheney, *Jan. 6 Defendant Wants Jurors to Blame Trump, Not Him, for Decision to Breach Capitol*, Politico (Apr. 13, 2022), https://www.politico.com/news/2022/04/13/january-6-defendant-donald-trump-00025019 ("Though dozens of defendants have argued in court filings that they believed Trump had authorized the assault on the Capitol, judges have largely rejected that contention and said rioters should be held to account for their own actions. But whether a jury sees that argument differently will be an important test that could reverberate across hundreds of other cases.").

[9] *See, e.g.*, *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

[10] *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020); *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

4

Alejandro Brito
November 13, 2025
Page 5

opinion on a matter of public concern, heavily protected under defamation law in the United States.[11]

For these reasons, the BBC declines President Trump's claim that the Program constituted defamation and his request for compensation.

We sincerely hope that the BBC's public statements of contrition, and the direct apology that we have given to the President, will suffice to put this matter to rest.

The BBC reserves all further rights and remedies, including those available under Fla. Stats. § 57.105 and § 768.295(2)(a).

Sincerely,

BALLARD SPAHR LLP

By Charles D. Tobin

Charles D. Tobin

Enclosure

---

[11] *See, e.g.*, *Trump v. CNN*, 684 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (dismissing defamation case because network's description of President Trump's election challenges as the "Big Lie" was non-actionable opinion, not a statement of fact).



British Broadcasting Corporation

Broadcasting House, London  W1A 1AA

From the Chairman

The President
The White House
1600 Pennsylvania Avenue NW
Washington
D.C. 20500
United States of America

13 November 2025

*Dear Mr President,*

As the Chair of the BBC I wanted to write to you personally. At the same time the BBC's lawyers have today responded to your legal team. The BBC's overall legal position is as set out in that letter. I should make clear at the outset that what follows is my view as the Chair of the BBC. The organisation is, by Royal Charter, independent of His Majesty's Government and nothing I write should imply approval or disapproval by the United Kingdom Government.

Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement. As it was your speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

- 2 -

The documentary followed a number of your supporters and campaigners, who told the BBC why they wanted you to be re-elected in the 2024 US Presidential Election. The BBC's intention was to reflect their contributions to the documentary fairly and accurately, including their support for you and your Presidency.

Whilst the documentary was not scheduled to be rebroadcast, the BBC has also made public today that it will not be broadcast again on any BBC platforms in a form that includes the misleading sequence.

That the BBC produces content of the highest editorial quality is of paramount importance to me. As Chair, I take responsibility for personally ensuring that the BBC retains the trust and confidence of our audiences.

I would be happy to discuss this matter, should this be of interest to you.

Yours sincerely,

**Samir Shah**

**BBC Chair**

# Ballard Spahr
LLP

—————————————————

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 15, 2026

*Via Certified Mail*

Congressional & Litigation Support Office
Office of the Executive Secretariat (S/ES-EX), Room 1464
2201 C Street NW
Washington, DC 20520

Re:     *Touhy* Request for the Production of Documents in *Trump v. BBC*, Case No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Sir/Madam:

This law firm represents defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited in the above-referenced civil action pending in the United States District Court for the Southern District of Florida (the "Action"). We submit this request for information, identified below, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and 22 C.F.R. § 172.1, *et seq*.

## BACKGROUND

On December 15, 2025, Plaintiff President Donald J. Trump filed a two-count lawsuit alleging defamation and violations of the Florida Deceptive and Unfair Trade Practices Act against Defendants, arising from the documentary titled "*Trump: A Second Chance?*" ("the Documentary"). For your reference, we have attached a copy of the complaint to this letter as Exhibit 1. The Documentary explored for the BBC's U.K. audience the President's continued success with his loyal American voters, following some of his most ardent supporters, known as the "Front Row Joes," and speaking with experts in the run up to the November 2024 U.S. presidential election. Plaintiff alleges that the Documentary defamed him in its depiction of his speech on January 6, 2021 ("the Speech"), which he alleges falsely depicted him as inciting violence at the Capitol that day.

The Action puts directly into issue the factual circumstances of the violence at the Capitol building on January 6, 2021, including whether there were plans of violence ahead of time, the communications about any planned violence, and whether individuals understood the Stop the Steal Rally or Trump's communications about January 6, 2021 as a

Congressional & Litigation Support Office
May 15, 2026
Page 2

call to violence.  Accordingly, the requested documents and information identified below are paramount to the case that Plaintiff has brought against Defendants.

The parties in the Action are currently going through the discovery process with a pending motion to dismiss filed.  At the moment, Plaintiff has not provided any such relevant documents or information himself in response to Defendants' written discovery requests propounded on him.  Furthermore, the information possessed by the Department of State about the intelligence it gathered regarding the events of January 6, 2021 are in the agency's possession, and accordingly would only be obtainable through this Request.

Given that Plaintiff's allegations have placed these documents in the Department of State's possession at the heart of the Action, and that Defendants need these documents to adequately defend themselves in court, the need for these documents outweighs any confidentiality of the information and any burden on the Department of State to produce these records.  As detailed below, the requested records are confined by date and subject matter to limit the intensiveness of any search for responsive documents.  Additionally, there is a protective order in place that will limit the exposure of any confidential items beyond the parties involved.

No previous decisions, orders, or pending motions in the Action bear upon the relevance of the requested records or testimony at this point.

## DEFENDANTS' TOUHY REQUEST SHOULD BE GRANTED

Under 22 C.F.R. § 172.8, the Department of State considers several factors in evaluating a *Touhy* request.  The following factors favor providing the requested documents to Defendants:

- **Whether compliance would be unduly burdensome or otherwise inappropriate under the applicable rules of discovery or the rules of procedure governing the case.**  Because the scope of the requested information is limited to a confined period of days about a single subject matter, and because search terms can appropriately confine the Department's search for the requested records, Defendants do not expect that the request is resource-heavy and will not impede the Department's ability to conduct official business.  Compliance would likewise not be inappropriate under discovery or procedural rules. We stand by for any discussions about search strings that would help ensure this is not unduly burdensome on the agency.

- **Whether disclosure is appropriate under the relevant substantive law concerning privilege or disclosure of information.**  Defendants do not believe that their requests would involve any privileged materials, such as

Congressional & Litigation Support Office
May 15, 2026
Page 3

trade secrets, commercial or financial information, attorney-client communications, attorney work product, documents that would fall under executive privilege, or documents that would impede any ongoing law enforcement investigations.

- **The public interest.**  Because the President of the United States of America is Plaintiff in this Action, it is in the public interest for the Action to be resolved with a full factual record to resolve the disputes at issue so that Plaintiff may conclude this private litigation and focus on fulfilling his public duties. Additionally, because the allegations in this Action concern a matter of great public significance, the storming of the Capitol building of January 6, 2021, the resolution of the factual disputes in this Action serves a public interest as well by providing more clarity to the public about the events that unfolded.

- **The need to conserve the time of employees.**  Because the scope of the requested information is limited to a confined period of days about a single subject matter, and because search terms can appropriately confine the Department's search for the requested records, Defendants do not expect that the request is resource-heavy for employees.

- **The need to avoid spending time and money of the United States for private purposes.**  As noted above, Defendants do not expect their narrow request to be costly in time or money.  Additionally, while the Action concerns two private parties, because Plaintiff is the President of the United States and because the Action implicates the storming of the Capitol building of January 6, 2021—a historic, unprecedented event that played out on the public stage for the world to see.  The resolution of the factual disputes in this Action, accordingly, holds import beyond the two private parties, and serves a public interest as well.

- **The need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated.**  Nothing about Defendants' request would threaten the impartiality of the Department, as the relevant documents are equally important to the Plaintiff for his affirmative case and the Defendants for their defense.  Defendants' request is for the purpose of investigating the allegations that Plaintiff has made, which put into dispute communications with him and his knowledge surrounding January 6, 2021.  Accordingly, the documents that are relevant to this litigation are essential to both sides of this case.

Congressional & Litigation Support Office
May 15, 2026
Page 4

- **Whether compliance would have an adverse effect on performance by the Department of its mission and duties.** Because Defendants request the production of a narrow set of documents, and do not expect to submit further requests to the Department, Defendants expect that the Department's involvement in this matter will be limited to this request and minimal such that it will not adversely affect its performance.

- **The need to avoid involving the Department in controversial issues not related to its mission.** Defendants do not believe that their request would involve the Department in controversial issues not related to its mission because Defendants believe that any involvement of the Department in this litigation would be limited to the minimal production of documents here, and not any of the other disputes at issue in the Action. Additionally, Defendants are not asking the Department to opine on any controversial issues, rather merely to provide the requested factual information.

### LIST OF REQUESTED DOCUMENTS

In the interest of transparency and aiding the Department of State's evaluation of this request, and as requested in 22 C.F.R. § 172.5, below is a description of documents Defendants seek, along with a description of how the information sought is relevant to the issues in the Action and why the information sought is unavailable by any other means.

- **Documents and communications produced, collected, or created in response to receiving the FBI New Orleans Field Office Intelligence Information Report from January 5, 2021, titled "Communication and Establishment of a Quick Reaction Force by USPERs Related to an Identified Protest in Washington, District of Columbia, on 6 January 2021":** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

Defendants seek this information in good faith and reasonably believe that the documents identified above are not available through other discovery or sources available in this Action.

Congressional & Litigation Support Office
May 15, 2026
Page 5


       We respectfully ask that you act on this *Touhy* request as promptly as possible. Thank you in advance for your attention to this matter.



Sincerely,

BALLARD SPAHR LLP

Charles D. Tobin

Cc: Counsel for Plaintiff


Encl.: Subpoena, Exhibit 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

| | |
|---|---|
| _____ *Plaintiff* | ) ) |
| v. | ) ) Civil Action No. |
| _____ *Defendant* | ) ) ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) | |
| Defendants. | ) | |

**ATTACHMENT A TO SUBPOENA TO THE DEPARTMENT OF STATE
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4. "Communications" means any manner of receiving or transmitting information, opinions or thoughts, whether orally, in writing, electronically, or otherwise. The term

"Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

5.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

6.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

2

7.  "Including" shall be construed as "including but not limited to."

8.  "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

9.  "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

10.  "Washington, D.C. area" means the Washington—Arlington—Alexandria Metropolitan Statistical Area.

11.  "You" and "Your" shall refer to the recipient of these requests, and shall include all components under the Department of State; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

## GENERAL INSTRUCTIONS

1.  In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.  If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

    (a) the name of each author, sender, creator, and initiator of such Document;

3

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3. If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections) for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

4

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests is for Documents created or originating on or after January 5, 2021 to January 6, 2021.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Communications and Documents Relating to the Your receipt of a Federal Bureau of Investigation New Orleans Field Office Intelligence Information Report from January 5, 2021, titled "Communication and Establishment of a Quick Reaction Force by USPERs Related to an Identified Protest in Washington, District of Columbia, on 6 January 2021."

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual,<br><br>      Plaintiff,<br><br>   v.<br><br>BRITISH BROADCASTING CORPORATION a/k/a/ BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED,<br><br>      Defendants. | Case No.<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, PRESIDENT DONALD J. TRUMP ("President Trump"), by and through his counsel, brings this action against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC (the "BBC"), BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED (collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.      This action concerns a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump, which was published in a BBC *Panorama* documentary, that was fabricated and aired by the Defendants one week before the 2024 Presidential Election in a brazen attempt to interfere in and influence the Election's outcome to President Trump's detriment.

1

2.      In the BBC *Panorama* documentary titled "Trump: A Second Chance" (the "*Panorama* Documentary," or the "Documentary"),[1] which was first broadcast on October 28, 2024, the BBC intentionally and maliciously sought to fully mislead its viewers around the world by splicing together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech").[2] The *Panorama* Documentary deliberately omitted another critical part of the Speech in such a manner as to intentionally misrepresent the meaning of what President Trump said.

3.      The *Panorama* Documentary falsely depicted President Trump telling supporters: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary). President Trump never uttered this sequence of words.

4.      This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and then, much later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight*

---

[1]      First published by Defendants on October 28, 2024 with a runtime of 57:54. *See* "Trump: A Second Chance?", BBC (Oct. 28, 2024) (https://www.bbc.co.uk/programmes/m0024h6r) (last visited Dec. 15, 2025)

[2]      The Speech was 70:53 in length.

*like hell, and if you don't fight like hell, you're not going to have a country anymore*," (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

5. Moreover, the BBC purposefully omitted President Trump stating, less than one minute after urging supporters to cheer for their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

6. As set forth in a damning and recently leaked BBC internal whistleblower document, the BBC intentionally used the *Panorama* Documentary to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting, and that he "said something he did not,"[3] by splicing together footage from the start of the Speech with a separate quote that he said nearly 55 minutes later, while omitting his statement calling for peace, made less than one minute after his first statement urging supports to cheer their senators and congressmen at the Capitol. Such distortion of the President's speech by the BBC "materially misled viewers."[4]

7. Moreover, concerns about the *Panorama* Documentary were raised internally before its dissemination, but the BBC ignored those concerns and did not take corrective action.

8. This instance of doctoring—in the form of distortion of meaning and splicing of entirely unrelated word sequences—is part of the BBC's longstanding pattern of manipulating

---

[3] Gordon Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*, THE TELEGRAPH (Nov. 6, 2025), https://www.telegraph.co.uk/news/2025/11/06/read-devastating-internal-bbc-memo-in-full/ (last visited Dec. 15, 2025).

[4] *Id*.

President Trump's speeches and presenting content in a misleading manner in order to defame him, including fabricating calls for violence that he never made. *See e.g.* ¶¶ 55-87, *infra*.

9. The BBC, faced with overwhelming and justifiable outrage on both sides of the Atlantic, has publicly admitted its staggering breach of journalistic ethics, and apologized, but has made no showing of actual remorse for its wrongdoing nor meaningful institutional changes to prevent future journalistic abuses.

10. Accordingly, President Trump brings this action for compensatory and punitive damages for the extensive reputational harm inflicted upon him by the Defendants.

**PARTIES**

11. Plaintiff, President Trump, is a citizen of the United States and a citizen of the State of Florida. He served as the 45th President of the United States and currently serves as the 47th President of the United States.

12. Defendant, the BBC, is a British corporation established by royal charter and operating under an agreement with the United Kingdom's Secretary of State for Culture, Media, and Sport, with its principal place of business in London, England. The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films Ltd., and its international distribution partner, Blue Ant Media Corporation.

13. Defendant, BBC Studios Distribution Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

14. Defendant, BBC Studios Productions Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are completely diverse, as President Trump is a citizen of Florida, while all Defendants are citizens of the United Kingdom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     The Court possesses personal jurisdiction over Defendants pursuant to Florida Statute 48.193(2) because Defendants, during the operative period alleged in this Complaint, engaged in substantial and not isolated business activities in Florida, and more specifically in this District. Defendant BBC publishes online news reports, editorials, and other media content at https://www.bbc.com, which are regularly accessed by individuals in Florida.

17.     The BBC operates in the United States not as an abstract concept but in a constant manner; the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location.

18.     The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web

pages entitled "Florida – BBC News"[5] and "Florida – BBC Weather,"[6] among others. The BBC also offers web pages specific to cities in Florida.[7]

19. Additionally, the BBC offers subscriptions to individuals in Florida and as a result, has thousands of subscribers in Florida. Any individual in the United States, including Florida, can pay for a subscription to the BBC's content and services.[8]

20. Individuals in the United States, including Florida, also have another option for consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform.[9] *BritBox* is available in the United States, including in Florida, and has thousands of subscribers in Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount of the BBC's original content—including *Panorama*.

21. Accordingly, BBC has engaged, and continues to engage in, substantial and not isolated activity in Florida.

---

[5] *Florida – BBC News*, BBC, https://www.bbc.com/news/topics/c77jz3mdq1jt (last visited Dec. 15, 2025).

[6] *Florida – BBC Weather*, BBC, https://www.bbc.com/weather/3442585 (last visited Dec. 15, 2025).

[7] *See, e.g., Miami – BBC News*, BBC, https://www.bbc.com/news/topics/cp7dde75nmlt (last visited Dec. 15, 2025).

[8] *Get even more from a BBC subscription*, BBC, https://www.bbc.com/subscribe (last visited Dec. 15, 2025).

[9] *BritBox by BBC*, https://www.britbox.com/us/?gclsrc=aw.ds&&utm_source=google&utm_medium=paid-search&utm_campaign=17444044535-137684208899&utm_content=602709820305&utm_term=g&gad_source=1&gad_campaignid=17444044535&gbraid=0AAAAADMxMXrfBmo_s56m_ZA2aFpeyy6C_&gclid=CjwKCAiA0eTJBhBaEiwA-Pa-hbSItFwaYwfNGsO5WR1trkY2tlU0j8XCZ76_KY4_xRzkIl0Sr6pPBxoCTrkQAvD_BwE (last visited Dec. 15, 2025).

22.     In addition, this Court possesses personal jurisdiction over Defendants pursuant to: (a) Florida Statute §48.193(1)(a)(1), because Defendants operate, conduct, engage in, or carry on a business in Florida or have an office or agency in Florida, (b) Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act in Florida (as stated herein), and (c) Florida Statute §48.193(1)(a)(6) because Defendants caused injury to President Trump within Florida arising out of an act or omission committed by Defendants in Florida, while at or about the time of the injury, products and services provided by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

23.     The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie ("Davie") stated in his recent resignation letter: "Despite a hugely competitive market, I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*."[10]

24.     The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC.

25.     In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer.

---

[10] *Davie and Turness resignations in full*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c1k02vr1my2o (last visited Dec. 15, 2025). (Emphasis added).

7

26. According to *vpnMentor*, a VPN research firm, VPN usage in Florida has skyrocketed since 2024, with a 51% increase in demand on December 19, 2024, and an over 1,000% increase in VPN usage at the beginning of 2025.[11]

27. Florida streamers have opted to use VPNs to increase their "streaming freedom." Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer.[12]

28. To that end, an article published by *Tom's Guide*, a reputable technology news outlet, revealed that a VPN usage survey showed that approximately 41% of VPN subscribers use the service to stream content, citing BBC iPlayer as an example of what a VPN subscriber could view using a VPN.[13]

29. The *Panorama* Documentary's publicity, coupled with significant increases in VPN usage in Florida since its debut, establishes the immense likelihood that citizens of Florida accessed the Documentary before the BBC had it removed.

---

[11] *Floridians Flock to VPNs As Age-Verification Law Takes Effect*, TAMPA FREE PRESS (Jan. 8, 2025) (https://www.tampafp.com/floridians-flock-to-vpns-as-age-verification-law/) (last visited Dec. 15, 2025).

[12] *Florida VPN Surge: Why VPN Usage Skyrocketed 1,000% in Florida* (2025), TRUSTED TECHSPOT (https://trustedtechspot.com/florida-vpn-surge/) (last visited Dec. 15, 2025).

[13] *More Than 40% of VPN Subscribers Use Them for Streaming – Here's Why*, TOM'S GUIDE (June 2, 2021) https://www.tomsguide.com/features/more-than-40-of-vpn-subscribers-use-them-for-streaming-heres-why) (last visited Dec. 15, 2025).

30. Articles like those published by Tom's Guide[14] and PureVPN[15]—giving a summary of the *Panorama* Documentary's plot, telling users how to view the Documentary, and going as far as to provide links to VPNs that allow a user to view BBC iPlayer—make it overwhelmingly certain that Floridians accessed the Documentary using a VPN during the time the Documentary was available.

31. Further supporting the fact that Floridians accessed the *Panorama* Documentary through a VPN, *The Guardian* reported that research showed that "65 million people from abroad watch the broadcaster's license-fee funded iPlayer service using proxy servers or virtual private networks."[16]

32. As underscored by the Chairman of the FCC, Brendan Carr, "[t]he BBC has stated that it has a number of partnerships with U.S. broadcasters, including PBS and NPR, to distribute BBC programming here in America."[17]

---

[14] *How to Watch 'Trump: A Second Chance?'*, TOM'S GUIDE (Oct. 28, 2024) (https://www.tomsguide.com/entertainment/streaming/how-to-watch-trump-a-second-chance-online-from-anywhere) (last visited Dec. 15, 2025).

[15] *How to Watch 'Trump: A Second Chance in the US'*, PUREVPN https://www.purevpn.com/how-to-watch-trump-a-second-chance-in-the-us (last visited Dec. 15, 2025).

[16] Paul Revoir, *BBC iPlayer 'Watched By More Than 60 Million People Outside the UK for Free'*, THE GUARDIAN (July 21, 2015) (https://www.theguardian.com/media/2015/jul/21/bbc-iplayer-uk-vpn-proxy-server) (last visited Dec. 15, 2025).

[17] *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at* BCC (Nov. 19, 2025) (https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed) (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025) (https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/) (last visited Dec. 15, 2025).

33. The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida.

34. Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary,[18] including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025.[19]

35. Blue Ant aggressively advertised its exclusive distribution of the *Panorama* Documentary outside of the United Kingdom, further evidencing the intent of the BBC and its strategic partners to disseminate the Documentary as widely and into as many streams of commerce and channels of distribution as possible, including Florida.[20]

---

[18] Karolina Kaminska, *Blue Ant Studios to shop BBC's 'President Trump: A Second Chance?' In Cannes*, C21 MEDIA (Oct. 10, 2024), https://www.c21media.net/news/blue-ant-studios-takes-october-films-president-trump-a-second-chance-to-cannes/ (last visited Dec. 15, 2025).

[19] Nicholas Sokic, *Blue Ant pulls BBC Trump doc from catalogue*, PLAYBACK (Nov. 12, 2025), https://playbackonline.ca/2025/11/12/blue-ant-pulls-controversial-bbc-trump-doc-from-catalogue/ (last visited Dec. 15, 2025) ("Blue Ant rights has confirmed that it has pulled the BBC *Panorama* documentary on U.S. President Donald Trump from its catalogue amid the controversy surrounding the film.").

[20] *'President Trump: A Second Chance?' Launches at MIPCOM 2024*, BLUE ANT MEDIA CORPORATION (Oct. 10, 2024), https://web.archive.org/web/20250712071622/https://blueantmedia.com/2024/10/president-trump-a-second-chance-launches-at-mipcom-2024/ (last visited Dec. 15, 2025) ("Blue Ant Studios today confirms that the explosive Donald Trump documentary, produced by October Films, has just wrapped production with the working title, President Trump: A Second Chance? Commissioned by BBC's Panorama, and produced by October Films, this hotly anticipated and

10

36.     Further, and as explained in greater detail below, the BBC elected to publish the *Panorama* Documentary just one week before the 2024 United States Presidential Election with the express intent of interfering with it and trying to undermine President Trump's odds of winning reelection.

37.     Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago, in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary.

38.     The BBC explicitly instructed and ordered its producers to travel to Florida and to utilize this forum for the purpose of creating the Documentary and defaming President Trump.

39.     The *Panorama* Documentary contains extensive evidence and examples of the BBC's producers gathering original footage specifically for use in the Documentary—not using stock footage—at Mar-a-Lago and nearby in the Palm Beach area on April 4, 2023, as well as on other dates. These examples include, but are not limited to: (a) Between 2023 and 2024, the BBC, or its contractors, filmed (i) a wide angle aerial view of Mar-a-Lago taken from a vantage point in the Lake Worth Lagoon (3:57 into the Documentary), (ii) a wide angle aerial view of Mar-a-Lago from a vantage point just north facing the Atlantic Ocean (4:47), (iii) a wide angle shot of the Mar-a-Lago pool and exterior and added a graphic "Trump Residence, Mar-a-Lago Florida" (5:00); and (b) on April 4, 2023, BBC producers and BBC-contracted crew members filmed (i) supporters of

---

distinctive 1x60 documentary will make its official international debut at MPICOM, where attending buyers will have an exclusive previews.").

President Trump lining the streets as President Trump's motorcade proceeded with President Trump through Palm Beach on the way to Mar-a-Lago (4:03), (ii) Rick Frazier, a supporter of President Trump, in the passenger seat of a vehicle as it followed the motorcade on the approach to Mar-a-Lago (4:09), (iii) The vehicle carrying Frazier as it entered Mar-a-Lago (4:51), (iv) Frazier as he walked in to Mar-a-Lago (5:03), (v) President Trump as he walked in to Mar-a-Lago to deliver a speech (5:11), (vi) Supporters cheering for the President as he prepared to speak inside Mar-a-Lago (5:24), (vii) President Trump as he delivered a speech to supporters inside Mar-a-Lago (5:27), and (viii) Frazier as he interacted with other supporters of President Trump (6:15 and 6:55).

40. The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida.

41. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: President Trump is a citizen of Florida who was defamed by the BBC while in Florida, the BBC filmed the *Panorama* Documentary in significant part in Florida, and the BBC, in concert with its strategic partners including October Films Ltd. and Blue Ant Media Corporation, distributed the Documentary into Florida.

12

## FACTUAL ALLEGATIONS

### *The BBC's Defamatory and Deceptive Depiction of*
### *President Trump's Speech in the Panorama Documentary*

i.      *The BBC Splices and Distorts President Trump's Speech*

42.     The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary wrongly made it appear that he said: "*We're going to walk down to the Capitol, and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

43.     This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory, given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

44.     Moreover, to further the BBC's intended, false, malicious, and defamatory message that President Trump fomented violence, which he did not, the BBC intentionally omitted President Trump saying, less than one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building*

13

*to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

ii. *The BBC's Director General and Head of News Resign in Disgrace, and the BBC, Under Fire, Reluctantly Admits Wrongdoing*

45. On November 9, 2025, Davie and News CEO Deborah Turness resigned in disgrace over their leading roles in the *Panorama* Documentary.[21]

46. Also on November 9, 2025, President Trump's counsel emailed a letter to Samir Shah (Chairman of the BBC) and Sarah Jones (General Counsel) entitled "Demand to Retract False and Defamatory Statements About The President of the United States of America" demanding retraction of the BBC's false depiction of President Trump, an apology for the false depiction of President Trump, and monetary compensation. *See* **Exhibit A**.

47. By letter dated November 13, 2025, the BBC's counsel indicated that the BBC would apologize to President Trump but, somehow, ignoring the resignations of the BBC's leadership, admitting of wrongdoing, and apology, still attempted to deny intentional wrongdoing and declined to pay damages. *See* **Exhibit B**.

48. Enclosed with the letter from counsel was a letter of apology from Chairman Shah, which stated, *inter alia*:

> Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. ***This gave the mistaken impression that you had made a direct call for violent action***. ***That was an editorial error and it should not have happened***. ***I have stated clearly and publicly that the BBC apologises for that error of judgement***. As it was your

---

[21] Aleks Phillips and Helen Bushby, *BBC director general and News CEO resign over Trump documentary edit*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c3vn25d5dq7o (last visited Dec. 15, 2025) ("It is unprecedented for both the director general and the head of BBC News to resign on the same day."); *see also Davie and Turness resignations in full*, *supra*.

speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

*Id.* (emphasis added).

49.     The BBC then published the following apology on its "Corrections and Clarifications" page, which was also included in the November 13 letter:

**Panorama – Trump: A Second Chance?**

**28 October 2024**

This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.

During that sequence, we showed excerpts taken from different parts of the speech.

However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, *and **that this gave the mistaken impression that President Trump had made a direct call for violent action***.

The BBC would like to apologise to President Trump for that ***error of judgment***.

This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.[22]

50.     Notably, the BBC did not broadcast a correction, apology, or retraction during a broadcast in a comparable manner as the *Panorama* Documentary, or with a comparable audience.

### *Substantial Evidence of The BBC's Actual Malice*

51.     Contrary to the BBC's claim that its splicing, manipulation, and distortion of the Speech was an unintentional "editorial error," substantial evidence suggests that this was an intentional and malicious effort to falsely and deceptively portray President Trump as having called for violent action on January 6, 2021.

---

[22]     *Corrections and Clarifications*, BBC (Nov. 13, 2025), https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/ (last visited Dec. 15, 2025) (emphasis added).

15

52.     As an initial matter of common sense, it would have been impossible for BBC's journalists and producers to splice together two distinct parts of the Speech from nearly 55 minutes apart *unless* they were acting intentionally. Such a dramatic distortion could never have occurred by accident. Two distinct parts of a speech from nearly 55 minutes apart do not inadvertently become spliced or linked together without effort, knowledge, and purpose. In parallel, by definition, an "an error of judgment," as admitted to by the BBC, is not inadvertent, it includes an intentional act.

53.     The BBC's actual malice is further compounded by its prior acts that unequivocally demonstrate that the organization has been anything but fair and impartial when it comes to reporting on President Trump. Substantial evidence demonstrates that before the publication of the *Panorama* Documentary, the BBC and its leadership bore President Trump ill will, wanted him to lose the 2024 Presidential Election, and were dishonest in their coverage of him.

54.     The BBC, its journalists, and its producers knew at and prior to the time they published the *Panorama* Documentary that the BBC's depiction of President Trump's Speech was false.

i.      *The Prescott Memorandum*

55.     In the early Summer of 2025, Michael Prescott, a journalist who until June 2025 was an independent adviser to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board "expos[ing] a string of incidents that demonstrate serious bias in the corporation's reporting"; following the leak of the Memorandum, *The Telegraph* published the Memorandum in early November 2025.[23]

---

[23]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

16

56. Prescott highlighted a litany of disturbing misconduct demonstrating how far the BBC has strayed from accepted standards of journalistic integrity, including, but not limited to, the BBC's tampering with President Trump's Speech in the Documentary.[24]

57. Notably, Prescott is nonpartisan, as he wrote in the Memorandum:

> I think it is important to state that I have never been a member of any political party and do not hold any hard and fast views on matters such as American politics or disputes in the Middle East. My views on the BBC's treatment of the subjects covered below do not come with any political agenda. Rather, what motivated me to prepare this note is despair at inaction by the BBC Executive when issues come to light. On no other occasion in my professional life have I witnessed what I did at the BBC with regard to how management dealt with (or failed to deal with) serious recurrent problems.[25]

58. Regarding the *Panorama* Documentary, Prescott wrote:

> I watched the programme and found it to be neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance. Critics of the Republican presidential candidate vastly outnumbered those who argued for him. What examination there was of reasons for Trump's popularity seemed to me insufficient given the overall balance of the programme. Given what I took to be the anti-Trump nature of the programme, I of course assumed there would be a similar, balancing Panorama programme about Democrat presidential candidate Kamala Harris the following week. I remain shocked that there was not.[26]

59. Prescott was not alone in his assessment:

> I raised my concerns at the EGSC and David Grossman [Senior Editorial Adviser to the EGSC] was asked to review the programme. He concluded the main contributors to the documentary were heavily weighted against Trump, with just one supporter against ten who questioned his fitness for office. Worse still, David highlighted alarming concerns about how Panorama had edited Trump's speech to his supporters on January 6, 2021 . . . . Examining the charge that Trump had incited protesters to storm Capitol Hill, it turned out Panorama had spliced together two clips from separate parts of his speech. This created the impression that Trump said something he did not and, in doing so, materially misled viewers.[27]

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

17

60.     Prescott concluded about the splicing of President Trump's Speech that:

This was one of the most shocking sets of issues uncovered during my time with the EGSC. If BBC journalists are allowed to edit video in order to make people "say" things they never actually said, then what value are the Corporation's guidelines, why should the BBC be trusted, and where will this all end?[28]

ii.     *The 2022 BBC Newsnight Distortion Demonstrating that the Panorama Documentary Splice is Part of a Defamatory Pattern by the BBC of Falsely Depicting President Trump Through Doctored Footage*

61.     As further revealed by *The Telegraph*, the BBC also aired similarly doctored footage of President Trump's Speech on a 2022 episode of *BBC Newsnight*.[29]

62.     In the doctored Speech clip aired by *BBC Newsnight*, President Trump is falsely, maliciously, and defamatorily depicted as saying: "*We're going to cheer on our brave senators and congressman and women, and we fight, we fight like hell*."[30]

63.     What President Trump really said was: "*[A]nd we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them.*"[31] (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech).

---

[28]     *Id*.

[29]     Camilla Tominey, Tim Stanley, John Cadigan, Rob Crilly, *BBC Newsnight also doctored Trump speech*, THE TELEGRAPH (Nov. 13, 2025), https://www.telegraph.co.uk/news/2025/11/13/bbc-doctored-trump-speech-second-time-newsnight/ (last visited Dec. 15, 2025).

[30]     *Id.*

[31]     *Id.*

18

64.    As *The Telegraph* reported: "Spliced footage of the speech, which aired in an episode in 2022, made it appear that Mr. Trump was encouraging his supporters to riot. The edit was much like a version aired in a *Panorama* documentary broadcast last year."[32]

65.    As further reported by *The Telegraph*: "Like *Panorama*, the *Newsnight* edit made it look as if the US President had urged supporters to walk to the Capitol building with him to 'fight like hell' by linking statements made nearly an hour apart in his speech."[33]  The harm caused by this doctoring was exacerbated by the BBC intentionally omitting President Trump stating, only one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

66.    Immediately after the *BBC Newsnight* episode aired, Mick Mulvaney, former Acting White House Chief of Staff, and David Chaudoir, former award-nominated graphic designer for *BBC Newsnight* from 2022-24, both individually voiced their concerns regarding the misleading and malicious way *BBC Newsnight* edited the clip to distort reality.[34]

67.    Mr. Chaudoir specifically told *The Telegraph* that he was present for discussions about the *BBC Newsnight* clip the day after it was published, wherein *BBC Newsnight* production team members dismissed any ethical concerns about the *BBC Newsnight* clip.[35]

---

[32]    *Id.*

[33]    *Id.*

[34]    *Id*.

[35]    *Id*.

19

68.     Mr. Mulvaney expressed his concern on-air while being interviewed on *BBC
Newsnight,* stating:

> Your video actually spliced together the presentation. He said:
> 'We're going to go down and we're going to cheer on our senators
> and our house members' and then it actually goes on to say 'And
> some of them we might not be able to' and that line about 'and we
> fight and fight like hell' is actually later in the speech yet your video
> makes it look like those two things came together. [36]

69.     The malicious nature of the spliced and edited clip is further underscored by former
BBC legal affairs correspondent Clive Coleman's statements in response to the *Panorama*
Documentary, stating:

> I really struggle to understand how we got to this place . . . The first
> lesson almost you're taught as a broadcast journalist is that you do
> not join two bits of footage together from different times in a way
> that will make the audience think that it is one piece of footage.[37]

*iii.     The 2024 BBC News Shooting Hoax Further Demonstrating that the Panorama
Documentary Doctoring is Part of an Defamatory Pattern by the BBC of Falsely
Depicting President Trump Calling for Violence*

70.     As also revealed by *The Telegraph*, the BBC "has admitted misleading viewers by
claiming that Donald Trump called for one of his leading critics to be shot in the face."[38]

71.     This admission by the BBC, regarding three instances of false statements about

---

[36]     *Id*.

[37]     Faith Wardwell, *BBC Apologizes to Trump for Documentary Edits, but Pushes Back on
Legal Threat*,  POLITICO (Nov. 13, 2025) (https://www.politico.com/news/2025/11/13/bbc-
trump-apology-documentary-00651451) (last visited Dec. 15, 2025).

[38]     Anita    Singh,    *BBC    admits    falsely    claiming    Trump    wanted    to    shoot
critic*, THE TELEGRAPH (Dec. 9, 2025), https://www.telegraph.co.uk/news/2025/12/09/bbc-
admits-falsely-claiming-trump-wanted-to-shoot-critic/  (last visited Dec. 15, 2025).

20

President Trump supposedly calling for violence against a political opponent, none of which occurred, is contained in the now-public Memorandum, and yet the BBC has still failed to issue a public correction.[39]

72. As described by *The Telegraph*:

In the days before the US presidential election in November last year, a presenter on BBC World News America said that Mr. Trump "appeared to suggest Liz Cheney should face a firing squad for her stance on foreign policy."

On the BBC News Channel, another presenter asked his guest: "He [President Trump] is out there on the campaign trail saying he wants people to shoot Liz Cheney in the face . . . Is that the sort of thing women react well to?

Speaking on the Six O'Clock News the same night, Sarah Smith, the BBC's North America editor, said Mr. Trump had been "ratcheting up the violent rhetoric."

She added: "In the latest spat, Donald Trump has been accused of being petty, vindictive and a wannabe tyrant because he suggested that one of his political opponents should face guns, have them trained on her face."[40]

73. All these statements by BBC presenters were false.

74. "In fact, Mr. Trump had accused Ms. Cheney of being a 'radical war hawk' who wanted to send troops to war while she remained in the safety of Washington DC, saying: 'Let's put her with a rifle standing there with nine barrels shooting at her face. OK? Let's see how she feels about it.'"[41]

75. This false, defamatory, and malicious coverage of President Trump, broadcast in the same time period as the release of the *Panorama* Documentary, was consistent with the BBC's *modus operandi*, defaming President Trump by fabricating calls for violence allegedly issued by him, that he never actually made.

---

[39]     *Id.*

[40]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

[41]     *Id.*

*iv.* *The Panorama Documentary Was Intentionally One-Sided and Inflammatory, demonstrating that the Doctoring of President Trump's Speech Was Intentional and Part of the BBC's Defamatory Pattern*

76. The lack of any effort by the BBC to publish content even remotely resembling objective journalism, or to maintain even a slight semblance of objectivity in the *Panorama* Documentary, demonstrates that the BBC had no regard for the truth about President Trump, and that the doctoring of his Speech was not inadvertent, but instead was an intentional component of the BBC's effort to craft as one-sided an impression and narrative against President Trump as possible.

77. Indeed, by any measure, including the overwhelming ratio of anti-Trump versus pro-Trump commentators in the *Panorama* Documentary, the exceptionally high percentage of time granted to these negative voices in the Documentary versus the positive voices, and the inflammatory content of the negative remarks, all coupled with the BBC's historical unfairness to the President, it is apparent that the BBC fabricated the Documentary to damage President Trump. Doctoring his Speech was consistent with, and part of, the BBC's *modus operandi* of negatively covering President Trump without any pretense of objectivity.

78. The BBC's aggressively anti-Trump stance is reflected straightaway in the opening scene of the *Panorama* Documentary's introduction, which runs for almost three minutes and begins with noted anti-Trump commentator Rick Wilson—who has written two books criticizing President Trump, *Everything Trump Touches Dies* (2018) and *Running Against the Devil: A Plot to Save America From Trump-and Democrats from Themselves* (2020), and has called the President "the devil" and a "cult leader"—declaring, to the backdrop of ominous cinematic music reaching a dramatic crescendo: "I'm the leading anthropologist of Donald Trump in the, in the

22

world, probably, I've thought about him and studied him more than probably anybody else, and I hate him. I hate what he is, and what he does."

79.    Seconds later, Wilson states of President Trump: "When you let the monster escape, it will come back, it is a rule of every damn horror movie in history."

80.    Former Clinton Secretary of Labor and current Berkeley Professor Robert Reich, another vocal critic of President Trump, then offers: "Once you've unleashed this anger, this hate, into the blood of America, well, it's very very difficult to stop it."

81.    A greater majority of the verbal commentary in the *Panorama* Documentary features negative assertions about President Trump by twelve individuals known to be hostile to the President, all of whom are presented as having some form of relevant expertise and authority about the subject matter presented. Moreover, an overwhelming majority of the overall Documentary, including the non-interview segments depicting political and historical events from recent years, presents President Trump in a negative light.

82.    Further demonstrating the BBC's malice and intent to interfere with the 2024 Presidential Election, the *Panorama* Documentary, after lingering at length on the events of January 6, 2021, cuts to a clip from the Democratic National Convention on August 22, 2024, showing Kamala Harris taking the stage with a news anchor breathlessly exclaiming in the background: "And here she is, Kamala Harris. It's hard to describe just how electric the mood is here right now."

83.    Toward the end of the *Panorama* Documentary, Reich shockingly compares President Trump to "Adolf Hitler," which rises to defamation itself, while Democrat Congressman Jared Huffman refers to the President as a "cult leader," also a defamatory statement.

23

84. Others then join Reich in delivering hyperbolic warnings about President Trump and the supposedly catastrophic consequences that would ensue if President Trump were to emerge victorious.

85. "The degree to which his pessimism and darkness has infected half this country terrifies me," adds Wilson. "There is no ideology in the Republican party except pain, they want vengeance," he continues.

86. Berkeley Political Science Professor Steven Fish asserts "There's a reason why Xi Jinping and Vladimir Putin and Kim Jong Un and all these despots all over the world are rooting so hard for Trump because what Trump does is he seems to discredit democracy in the land of its stronghold, in the strongest democracy in the world, Trump seems to be proof that democracy doesn't work."

87. Boston College History Professor Heather Cox Richardson offers, "this is the time when we either choose authoritarianism or democracy, and if we choose authoritarianism, there will be no turning back, so I think we better get this one right."

88. Reich delivers a closing remark to punctuate the BBC's parade of bias: "Wish us luck, by us, I mean the United States."

> v. *Prominent Voices Condemn the BBC and Confirm the BBC's Longstanding Pattern of Actual Malice Against President Trump*

89. The BBC is so institutionally biased against President Trump and so devoid of self-awareness that, in response to the above letter from President Trump's counsel (**Exhibit A**), it

24

published a baseless and meritless article questioning the merits of any lawsuit that the President might bring against the BBC.[42]

90. No less an authority than the United Kingdom's former Prime Minister, Liz Truss, discussed this bias, the need to hold the BBC accountable, and the BBC's pattern of actual malice.[43]

91. Remarked Truss: "[The BBC] is a huge problem. They've lied, they've cheated, they've fiddled with footage, especially in the case of President Trump, but also covering up what's happening in Britain whether it's mass migration, whether it's our economic problems, they are always biased towards the left . . . ." She was also asked whether the BBC's tepid apology was sufficient, and responded: "No I don't, because they keep doing it again and again. They have painted a completely false picture of President Trump in Britain over a number of years, they've done the same thing about conservatives in our country . . . ." Lamenting the BBC's lost status as a "paragon" of journalism, she remarked that the BBC's "fake news" has caused immense harm to the public for a long time.[44]

92. Caroline Dinenage, head of the House of Commons' Culture, Media, and Sport Committee said that Members of Parliament need assurances that the BBC was "taking decisive steps to uphold the corporation's reputation for integrity and public trust." She further remarked:

---

[42] Kayla Epstein and Madeline Halpert, *Trump vs. the BBC: What hurdles might the President's legal argument face?*, BBC (Nov. 11, 2025), https://www.bbc.com/news/articles/c709y1yx1r0o (last visited Dec. 15, 2025).

[43] *Former UK prime minister calls out BBC, encourages Trump to continue lawsuit*, FOX NEWS (Nov. 15, 2025), https://www.foxnews.com/video/6385140049112 (last visited Dec. 15, 2025).

[44] *Id.*

"The Corporation must set the benchmark for accurate and fair reporting, especially in a media landscape where it is all too easy to find news presented in a less than impartial way."[45]

93.     Conservative Party leader and Member of Parliament Kemi Badenoch said that the distortion of the Speech by the *Panorama* Documentary was "absolutely shocking," adding: "That is fake news, actually putting different things together to make something look different from what it actually was." She continued: "And I do think heads should roll. Whoever it was who did that should be sacked, that's what Tim Davie should be doing, identifying who put out misinformation, and sacking them."  Badenoch added: "The public need to be able to trust our public broadcaster . . . They should not be telling us things that are not true. This is a corporation that needs to hold itself to the highest standards, and that means that when we see people doing the wrong thing, they should be punished, they should be sacked."[46]

94.     Lisa Nandy, Secretary of State for Culture, Media and Sport of the United Kingdom, has similarly expressed concern, stating: "there is a real concern, which I share, that political appointments to the board of the BBC damaged confidence and trust in the BBC's impartiality."[47]

95.     FCC Chairman, Brendan Carr, in a letter addressed to Davie, Paula Kerger, (President and CEO of PBS), and Katherine Maher (CEO of NPR), strongly stated:

> As you know, the BBC was recently caught intentionally distorting a speech that President Trump gave in January of 2021. It did so by splicing together one portion of the speech with an entirely separate portion of the speech that came 54 minutes later. In doing so, the BBC program depicts President Trump voicing a sentence

---

[45]     *BBC has questions to answer over edited Trump speech, MPs say*, BBC (Nov. 4, 2025), https://www.bbc.com/news/articles/ckgzkyk7knzo.amp (last visited Dec. 15, 2025).

[46]     *Id*.

[47]     *'Real Concern' About Political Appointees on BBC Board, Nandy Says*, BBC (Nov. 14, 2025), https://www.bbc.com/news/articles/cdeg0ngnj0yo (last visited Dec. 15, 2025).

that, in fact, he never uttered. That would appear to meet the very definition of publishing a materially false and damaging statement.[48]

96.     Carr continued, highlighting the findings of the Memorandum:

Indeed, there has now been widespread condemnation of the BBC's decision. A former independent external advisor to the BBC's Editorial Guidelines and Standards Committee, Michael Prescott, told the BBC that its decision "created the impression that Trump said something he did not and, in doing so, materially misled viewers." Likewise the Prescott Report states that the BBC program was "neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance.' In sum, it was a 'distortion of the day's events," the Prescott Report continued.[49]

### *Damages*

97.     Since its publication, the *Panorama* Documentary has gained substantial traction and republication across various media in the United States and elsewhere globally.

98.     Defendants used their false and defamatory publications to maliciously disparage and damage President Trump and impugn his reputation.

99.     Specific, extensive economic harms resulted from these defamatory statements. Defendants timed the publication of the *Panorama* Documentary to be close in time to the 2024 Presidential Election, releasing it only one week before the Election.

100.    The value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal

---

[48]     *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at BCC* (Nov. 19, 2025), https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025), https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/ (last visited Dec. 11, 2025).

[49]     *Id.*

reputation inflicted by these Defendants, and their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist, continue into the present, thereby causing massive economic damage to his brand value and significant damage and injury to his future financial prospects, in addition to continuing to harm his reputation as President of the United States of America.

101. President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

102. Exacerbating the damages, Defendants, at and prior to the time of their doctoring of the Speech, knowingly made their false, deceptive, malicious, and defamatory depiction of President Trump in bad faith, motivated by malice and ill-will against President Trump without any regard for the truth, and contrary to information Defendants possessed that showed their depiction to be false

103. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

## CLAIMS FOR RELIEF

## COUNT I – DEFAMATION *PER SE*

104. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

105. The following false, deceptive, malicious, and defamatory statements and depictions of and about President Trump, were, intentionally, with actual malice, and without privilege, published in the *Panorama* Documentary to millions of people in the State of Florida

28

and in this District, and elsewhere, by all Defendants, and were defamatory and false, and injured President Trump in his profession, occupation, and trade, thus constituting defamation *per se*:

(a) The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary made it seem that he stated: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

(b) This fabricated depiction of President Trump during the Speech was false and defamatory given that President Trump's actual and full remarks during the Speech were (i) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (ii) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021, 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

(c) Moreover, to further the BBC's intended, false, malicious, and defamatory message and impression that President Trump fomented violence, the BBC intentionally omitted President Trump stating, only one minute after urging supporters to cheer

29

on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

106.    Defendants possessed information and had access to information which showed that their statements about, and representation and depiction of President Trump were false.

107.    Defendants had no factual basis for this false depiction of President Trump.

108.    Defendants' deceptive and defamatory distortion, doctoring, manipulation, and splicing damaged President Trump in his occupation, damaged his professional reputation, and portrayed him as engaging in supposed calls for rioting and violence that he never actually made.

109.    The *Panorama* Documentary was not a continuation of a prior broadcast. Instead, it was the result of a separate and distinct decision by Defendants to maliciously disseminate false statements about President Trump in a new medium.

110.    As pled *supra*, Defendants knew that their portrayal of the Speech in the *Panorama* Documentary was false, malicious, and defamatory.

111.    Defendants' actual malice in publishing the *Panorama* Documentary is evidenced by their intentional splicing and distorting two entirely separate sentences made by President Trump during the Speech nearly 55 minutes apart, while omitting his statement calling for peace made less than one minute after his first statement urging supports to cheer on their senators and congressmen at the Capitol.

112.    As a proximate result of the maliciously false and defamatory *per se* publication of a statement and depiction to third parties by Defendants, President Trump has been damaged.

30

113.     Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards President Trump, he seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT II – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

114.     Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

115.     In addition, this action is brought for violation of the Florida Deceptive and Unfair Trade Practices Act as codified in Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

116.     Defendants are engaged in the conduct of trade and commerce in the State of Florida.

117.     Defendants have violated the FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia,* intentionally and maliciously seeking to completely mislead their viewers by splicing together two separate parts of President Trump's Speech, while omitting other critical parts of the Speech in such a manner as to intentionally, falsely, maliciously, and defamatorily change the meaning of what President Trump said.

118.     As a direct, proximate, and foreseeable result of Defendants' violation of FDUTPA, President Trump has suffered and continues to suffer substantial damages.

119. Pursuant to Fla. Stat. §501.2105, President Trump is entitled to recover his attorneys' fees and costs from Defendants.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, President Trump, hereby demands a jury trial as to all issues so triable.

Dated:  December 15, 2025

Respectfully submitted,

*/s/Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel:  305-614-4071
Fax:  305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

*/s/Edward Andrew Paltzik*
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice application forthcoming*)

*/s/Daniel Zachary Epstein*
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

November 9, 2025

**Via Email**

Mr. Samir Shah
Chairman
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**samir.shah@bbc.co.uk**

Ms. Sarah Jones
General Counsel
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**sarah.jones@bbc.co.uk**

> **Re:** **Demand to Retract False And Defamatory Statements**
> **About The President of the United States of America**

Dear All:

This law firm serves as litigation counsel for President Donald J. Trump (hereinafter referred to as "President Trump"). Please direct all future correspondence relating to this matter to my attention. This correspondence serves as a demand under Florida Statute § 770.01[1] that you immediately retract the false, defamatory, disparaging, and inflammatory statements made about President Trump, which were published in a *Panorama* documentary that was fabricated and aired by the BBC. Failure to comply will leave President Trump with no choice but to pursue any and all legal rights and remedies available to recover damages for the overwhelming financial and reputational harm that the BBC has caused him to suffer, with all rights and remedies being expressly reserved by President Trump.

In the *Panorama* documentary, titled "Trump: A Second Chance,"[2] which was first broadcast on October 28, 2024—a week before the 2024 United States presidential election—the BBC intentionally sought to completely mislead its viewers by splicing together three separate

---

[1] President Trump does not agree or admit that only Florida law applies to any claims he might have in connection with or arising out of the Article and expressly reserves all rights concerning applicable law.

[2] *See* https://www.bbc.co.uk/programmes/m0024h6r. According to the BBC's website, the defamatory documentary was broadcast three times on October 28, 2024, and a fourth time on November 2, 2024.

1

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

parts of President Trump's speech to supporters on January 6, 2021. The documentary showed President Trump telling supporters: "We're gonna walk down to the Capitol and I'll be there with you and we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore." This fabricated depiction of President Trump was false and defamatory given that President Trump's actual and full remarks were: "We're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down any one of you but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women." Moreover, the BBC edited out President Trump saying, "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Thus, as set forth in an internal whistleblower memorandum, the BBC's segment maliciously made it appear that President Trump "[said] things [he] never actually said," by editing together footage from the start of the speech with a separate quote early an hour later.

Due to their salacious nature, the fabricated statements that were aired by the BBC have been widely disseminated throughout various digital mediums, which have reached tens of millions of people worldwide. Consequently, the BBC has caused President Trump to suffer overwhelming financial and reputational harm.

### A. Applicable law.

Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Statements are defamatory if "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *See Zambrano v. Devanesan*, 484 So. 2d 603, 607 (Fla. 4th DCA 1986).

Even if the BBC attempts to whitewash its conduct as simply an expression of its opinions, Florida law makes clear that such a defense will not absolve its liability. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. ***Simply couching such statements in terms of opinion does not dispel these implications***.") (emphasis added); *see also Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983) ("***[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable***.") (emphasis added).

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

Consequently, the BBC lacks any viable defense to the overwhelming reputational and financial harm it has caused President Trump to suffer.

### B. Demand.

The above-referenced false, defamatory, malicious, disparaging, and inflammatory statements were published to deliberately denigrate President Trump. The timing of the fabricated documentary is evident. The BBC's reckless disregard for the truth underscores the actual malice behind the decision to publish the wrongful content, given the plain falsity of the statements. Accordingly, President Trump hereby demands that you: (1) immediately issue a full and fair retraction of the documentary and any and all other false, defamatory, disparaging, misleading, and inflammatory statements about President Trump in as conspicuous a manner as they were originally published; (2) immediately issue an apology for the false, defamatory, disparaging, misleading, and inflammatory statements about President Trump; and (3) appropriately compensate President Trump for the harm caused.

Moreover, please allow this letter to serve as notice to you, to your affiliated entities, subsidiaries, to all of their employees, and any other person acting on behalf of or in concert with the BBC, to preserve any and all evidence related in any way to the above-mentioned malicious, false, and defamatory statements the BBC published, and any other statements that the BBC has published regarding President Trump. By way of this letter, the BBC is hereby directed not to destroy, conceal, or alter any paper or electronic files, physical evidence, and/or other data relating in any way, no matter how remote, to your false claims regarding President Trump, and/or the circumstances leading to their dissemination, including, but not limited to: (1) all communications between you and any third party in any way related to your wrongful claims regarding President Trump; (2) all sources for your false claims regarding President Trump; (3) any and all documents and data referring to, reflecting, or relating to communications between you and any such third-parties or sources regarding your false claims regarding President Trump; and (4) any and all documents in any way related to your false claims regarding President Trump. This includes any information alleged to be protected by Florida Statute § 90.5015. *Monarch Air Group, LLC v. Journalism Dev. Network, Inc.,* No. 23-CV-61256, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (interpreting Fla. Stat. § 90.5015 and explaining that the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings.") (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)).

I understand that many records and files are maintained electronically. However, this letter specifically requests that all paper and hard copy originals be maintained and preserved in their original format. By the same token, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists and has been preserved, please preserve and maintain all electronically stored documents in their original native format, including all metadata. This preservation demand specifically encompasses any and all electronic documents,

3



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

including but not limited to, all word-processed files, emails, spreadsheets, all databases, log files, and any other electronically stored and/or generated documents or files.

If the BBC does not comply with the above by **November 14, 2025, at 5:00 p.m. EST**, President Trump will be left with no alternative but to enforce his legal and equitable rights, all of which are expressly reserved and are not waived, including by filing legal action for no less than $1,000,000,000 (One Billion Dollars) in damages. The BBC is on notice.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

# Ballard Spahr
### LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

November 13, 2025

_Via Email (abrito@britopllc.com) & Federal Express_

Alejandro Brito
Brito PLLC
2121 Ponce de Leon
Suite 650
Coral Gables, FL 33134

Re: November 9, 2025 Letter regarding BBC _Panorama_ Documentary

Dear Mr. Brito:

Our office represents the British Broadcasting Corporation ("BBC"). We write regarding your letter to the BBC dated November 9, 2025, which you sent on behalf of President Donald J. Trump. You wrote with respect to the broadcast of the BBC's _Panorama_ documentary titled "Trump: A Second Chance" ("the Program") on October 28 and November 2, 2024, depicting his supporters during President Trump's campaign for a second term in office. Please direct all further communication about your letter to my attention.

Your letter, citing Florida law, alleges that in a short clip of excerpts of his speech on January 6, 2021, the BBC "intentionally sought to completely mislead its viewers." President Trump alleges that the Program constituted defamation. The President threatens to bring a $1 billion defamation suit against the BBC.

Our client had no intention of misleading anyone. Indeed, the BBC has publicly expressed its contrition in statements to the Chair of Parliament's Culture, Media, and Sport Committee, on its website, and in the media. We also enclose with this letter a copy of the BBC's personal apology to President Trump, sent by email today to White House Chief of Staff Susie Wiles.

Additionally, the BBC has posted or shortly will post the following retraction:[1]

---

[1] https://www.bbc.co.uk/programmes/m0024h6r and
https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/

Alejandro Brito
November 13, 2025
Page 2

> *This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.*
>
> *During that sequence, we showed excerpts taken from different parts of the speech.*
>
> *However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and that this gave the mistaken impression that President Trump had made a direct call for violent action.*
>
> *The BBC would like to apologise to President Trump for that error of judgement.*
>
> *This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.*

While the BBC sincerely regrets the manner in which the video clip was edited, for the following reasons, we strongly disagree that President Trump would have a basis for a viable defamation claim.

**First**, President Trump has made no allegation that the Program was published in Florida, as he must in order to establish personal jurisdiction over the BBC and to meet the publication requirement for a defamation claim. The BBC did not have contractual rights to, and therefore did not, distribute the Program on U.S. channels. Moreover, the version on its website linked to in your letter was geographically restricted to U.K. viewers. In any event, it ceased to be available even in the U.K. from 12 months after the Program aired. The President therefore has not established that he would have any jurisdictional basis to bring a claim against the BBC in Florida or elsewhere in the United States.[2]

**Second**, President Trump will not be able to prove that the Program caused him any injury, let alone the unspecified "overwhelming reputational and financial harm" he alleges.[3] He won reelection on November 5, 2024, after the Program aired. He carried Florida by a

---

[2] *See, e.g.*, *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (to be actionable as defamation, "the material . . . must not only be *accessible* in Florida, but also be *accessed* in Florida") (emphasis in original).

[3] *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. Cir. Ct. 2014) (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1997)) (given "negative publicity" from "a litany of news media entities" other than defendant NBC, "the challenged excerpts from and characterization of Zimmerman's statements . . . could not have been the required 'but for' cause of Zimmerman's alleged injuries").

2

Alejandro Brito
November 13, 2025
Page 3

commanding 13-point margin, improving over his 2020 and 2016 performances in the state.[4]

Moreover, when the Program aired, the President had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee Report found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[5] Given the extensive allegations prior to the release of the Program regarding his January 6 speech, in criminal and civil cases and among the press and public, the Program could not have caused any incremental harm.

**Third**, President Trump has no basis to allege that the BBC published the Program with actual malice – that is, knowing the Program was false or while entertaining serious doubts as to its truth – as he must.[6] Rather, as the BBC Chair has explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."[7]

Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements. In the course of their prosecutions, numbers of people arrested at the Capitol on January 6 told the courts that they interpreted President Trump's remarks as a call to

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g., Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

[6] *See, e.g., N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020). Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971).

[7] Letter from BBC Chair Samir Shah to Dame Caroline Dinenage MP (Nov. 10, 2025), https://committees.parliament.uk/publications/50118/documents/270340/default.

Alejandro Brito
November 13, 2025
Page 4

action.[8]

Further, the BBC has taken prompt corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," issuing a retraction, and confirming that the Program was not scheduled to be re-broadcast and will not be rebroadcast in that form on any BBC platforms. This further negates any suggestion of actual malice.[9]

**Fourth**, the brief clip, which shows about 15 seconds of President Trump's speech on January 6, is part of an hour-long program containing extensive coverage of his supporters praising President Trump, and presenting balanced coverage of his path to reelection. Courts consider challenged statements in the context of the full publication in which they were made. Accordingly, President Trump cannot create an actionable statement or implication by citing a singular clip but ignoring the remaining, overall context of the Program.[10]

**Fifth**, the Program contains protected expressions of opinion, including many from President Trump's ardent supporters. It depicts hotly contested events related to Presidential elections, including the events of January 6, 2021, which have been the subject of extensive controversy and litigation. In this context, even if the Program is reasonably interpreted to report that President Trump encouraged the crowd to march to the Capitol on January 6, that is an

---

[8] *See, e.g.*, Ryan J. Reilly, *Jan. 6 Rioter Who Said He Wanted Trump's 'Approval' Found Guilty by Jury*, CNBC (Apr. 14, 2022), https://www.cnbc.com/2022/04/14/jan-6-rioter-who-said-he-wanted-trumps-approval-found-guilty-by-jury.html ("A Donald Trump supporter who told jurors that he was 'following presidential orders' when he stormed the U.S. Capitol on Jan. 6 was found guilty on Thursday after he admitted that he stole a coat rack and a bottle of liquor from the building."); Shawna Chen, *Judge: Jan. 6 Rioter Who Broke into Capitol Followed "Trump's Instructions,"* Axios (Jan. 17, 2023), https://www.axios.com/2023/01/18/jan6-capitol-riot-trump-instructions ("A federal judge said Tuesday that a California woman who breached the U.S. Capitol during the Jan. 6 insurrection 'followed then-President Trump's instructions' in breaking the law."); Kyle Cheney, *Jan. 6 Defendant Wants Jurors to Blame Trump, Not Him, for Decision to Breach Capitol*, Politico (Apr. 13, 2022), https://www.politico.com/news/2022/04/13/january-6-defendant-donald-trump-00025019 ("Though dozens of defendants have argued in court filings that they believed Trump had authorized the assault on the Capitol, judges have largely rejected that contention and said rioters should be held to account for their own actions. But whether a jury sees that argument differently will be an important test that could reverberate across hundreds of other cases.").

[9] *See, e.g.*, *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

[10] *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020); *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

4

Alejandro Brito
November 13, 2025
Page 5

opinion on a matter of public concern, heavily protected under defamation law in the United States.[11]

For these reasons, the BBC declines President Trump's claim that the Program constituted defamation and his request for compensation.

We sincerely hope that the BBC's public statements of contrition, and the direct apology that we have given to the President, will suffice to put this matter to rest.

The BBC reserves all further rights and remedies, including those available under Fla. Stats. § 57.105 and § 768.295(2)(a).

Sincerely,

BALLARD SPAHR LLP

By _____
Charles D. Tobin

Enclosure

---

[11] *See, e.g.*, *Trump v. CNN*, 684 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (dismissing defamation case because network's description of President Trump's election challenges as the "Big Lie" was non-actionable opinion, not a statement of fact).



British Broadcasting Corporation

Broadcasting House, London  W1A 1AA

From the Chairman

The President
The White House
1600 Pennsylvania Avenue NW
Washington
D.C. 20500
United States of America

13 November 2025

Dear Mr President,

As the Chair of the BBC I wanted to write to you personally. At the same time the BBC's lawyers have today responded to your legal team. The BBC's overall legal position is as set out in that letter. I should make clear at the outset that what follows is my view as the Chair of the BBC. The organisation is, by Royal Charter, independent of His Majesty's Government and nothing I write should imply approval or disapproval by the United Kingdom Government.

Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement. As it was your speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

- 2 -

The documentary followed a number of your supporters and campaigners, who told the BBC why they wanted you to be re-elected in the 2024 US Presidential Election. The BBC's intention was to reflect their contributions to the documentary fairly and accurately, including their support for you and your Presidency.

Whilst the documentary was not scheduled to be rebroadcast, the BBC has also made public today that it will not be broadcast again on any BBC platforms in a form that includes the misleading sequence.

That the BBC produces content of the highest editorial quality is of paramount importance to me. As Chair, I take responsibility for personally ensuring that the BBC retains the trust and confidence of our audiences.

I would be happy to discuss this matter, should this be of interest to you.

Yours sincerely,

**Samir Shah**

**BBC Chair**

# Ballard Spahr
### LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 20, 2026

*Via Certified Mail*

Mr. Keith E. Weidner
General Counsel
United States Postal Service
475 L'Enfant Plaza SW
Washington, D.C. 20260-1100

Counsel
Office of the Chief Postal Inspector
475 L'Enfant Plaza SW
Washington, D.C. 20260-2101

Re:     *Touhy* Request for the Production of Documents in *Trump v. BBC*, Case No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Weidner:

This law firm represents defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited in the above-referenced civil action pending in the United States District Court for the Southern District of Florida (the "Action").  We submit this request for information, identified below, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and 39 C.F.R. § 265.11, *et seq.* In compliance with 39 C.F.R. § 265.13(g)(2), an affidavit is attached containing the requisite information as Exhibit 1.

## BACKGROUND

On December 15, 2025, Plaintiff President Donald J. Trump filed a two-count lawsuit alleging defamation and violations of the Florida Deceptive and Unfair Trade Practices Act against Defendants, arising from the documentary titled "*Trump: A Second Chance?*" ("the Documentary").  For your reference, we have attached a copy of the complaint to this letter as Exhibit B to the affidavit included as Exhibit 1.  The Documentary explored for the BBC's U.K. audience the President's continued success with his loyal American voters, following some of his most ardent supporters, known as the "Front Row

Mr. Keith E. Weidner
May 20, 2026
Page 2

Joes," and speaking with experts in the run up to the November 2024 U.S. presidential election. Plaintiff alleges that the Documentary defamed him in its depiction of his speech on January 6, 2021 ("the Speech"), which he alleges falsely depicted him as inciting violence at the Capitol that day.

The Action puts directly into issue the factual circumstances of the violence at the Capitol building on January 6, 2021, including whether there were plans of violence ahead of time, the communications about any planned violence, and whether individuals understood the Stop the Steal Rally or Trump's communications about January 6, 2021 as a call to violence. Accordingly, the requested documents and information identified below are paramount to the case that Plaintiff has brought against Defendants.

At the moment, Plaintiff has not provided any such relevant documents or information himself in response to Defendants' written discovery requests propounded on him. Furthermore, the information possessed by the United States Postal Inspection Service about the intelligence it gathered regarding the events of January 6, 2021 are in the agency's possession, and accordingly would only be obtainable through this Request.

Given that Plaintiff's allegations have placed these documents in the United States Postal Inspection Service's possession at the heart of the Action, and that Defendants need these documents to adequately defend themselves in court, the need for these documents outweighs any confidentiality of the information and any burden on United States Postal Inspection Service to produce these records. As detailed below, the requested records are confined by date and subject matter to limit the intensiveness of any search for responsive documents. Additionally, there is a protective order in place that will limit the exposure of any confidential items beyond the parties involved.

No previous decisions, orders, or pending motions in the Action bear upon the relevance of the requested records or testimony at this point.

### DEFENDANTS' TOUHY REQUEST SHOULD BE GRANTED

Under 39 C.F.R. § 265.13(h), the United States Postal Service considers several factors in evaluating a *Touhy* request. The following factors favor providing the requested documents to Defendants:

- **Statutory restrictions, legal objections, exemptions, or privileges that may apply.** Defendants do not believe that their requests would involve any privileged materials, such as trade secrets, commercial or financial information, attorney-client communications, attorney work product, documents that would fall under executive privilege, or documents that would impede any ongoing law enforcement investigations.

Mr. Keith E. Weidner
May 20, 2026
Page 3

- **Conservation of employee time.**  Because the scope of the requested information is limited to a confined period of days about a single subject matter, and because search terms can appropriately confine the United States Postal Services' search for the requested records, Defendants do not expect that the request is resource-heavy for employees.

- **The need to avoid spending government time and money for private purposes.**  For the reasons stated above, Defendants believe that public time and money expended for this Action would be minimized.  Additionally, while the Action concerns two private parties, because Plaintiff is the President of the United States and because the Action implicates the storming of the Capitol building of January 6, 2021—a historic, unprecedented event that played out on the public stage for the world to see.  The resolution of the factual disputes in this Action, accordingly, holds import beyond the two private parties, and serves a public interest as well.

### LIST OF REQUESTED DOCUMENTS

In the interest of transparency and aiding the United States Postal Service's evaluation of this request, and in consideration of the factors outlined in 39 C.F.R. § 265.13(h), below is a description of documents Defendants seek, along with a description of how the information sought is relevant to the issues in the Action and why the information sought is unavailable by any other means.

- **Documents and communications of the United States Postal Inspection Service created on December 23, 2020 regarding threat assessment of planned demonstrations on January 6, 2021 and associated potential violence, and supporting documents cited therein:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.  The United States Senate Committee on Homeland Security and Governmental Affairs staff report, "Planned in Plain Sight: A Review of the Intelligence Failures in Advance of January 6th, 2021" identifies that the United States Postal Inspection Service conducted such a threat assessment regarding January 6, 2021 demonstrations.  Because the materials originated from the United

Mr. Keith E. Weidner
May 20, 2026
Page 4

States Postal Inspection Service and are not publicly available, these materials are not available through any other means.

Defendants seek this information in good faith and reasonably believe that the documents identified above are not available through other discovery or sources available in this Action.

Please contact us if you have any questions about this letter or the proposed subpoena.  We respectfully ask that you act on this *Touhy* request as promptly as possible. Thank you in advance for your attention to this matter.

Sincerely,

BALLARD SPAHR LLP

Charles D. Tobin

Cc: Counsel for Plaintiff

Encl.: Subpoena, Exhibit 1 (Affidavit)

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
| *Plaintiff* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
| *Defendant* | ) |  |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:

_____
*(Name of person to whom this subpoena is directed)*

❏ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
|  |  |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

                                                                    OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

_____ , who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, )<br><br>    Plaintiff, )<br><br>v. )<br><br>BRITISH BROADCASTING CORP., et al., )<br><br>    Defendants. ) | Case No. 1:25-cv-25894-RKA |

**ATTACHMENT A TO SUBPOENA TO THE UNITED STATES POSTAL SERVICE TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.　Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.　"And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.　"Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.　"Communications" means any manner of receiving or transmitting information, opinions or thoughts, whether orally, in writing, electronically, or otherwise. The term

"Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

5.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

6.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

2

7.     "Including" shall be construed as "including but not limited to."

8.     "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

9.     "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

10.     "Washington, D.C. area" means the Washington—Arlington—Alexandria Metropolitan Statistical Area.

11.     "You"  and "Your" shall refer to the recipient of these requests, and shall include all components under the United States Postal Service; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

## GENERAL INSTRUCTIONS

1.     In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.     If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

3

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.     If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections) for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

4

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.     These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.     All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.     Unless otherwise stated, the relevant time period for all requests is for Documents created or originating on or after December 23, 2020 to January 6, 2021.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Communications and Documents created or sent by the United States Postal Inspection Service on December 23, 2020 Related to its threat assessment of planned demonstrations, potential violence, or protests in the Washington D.C. area on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 2:**  All underlying Communications and Documents cited or quoted in United States Postal Inspection Service's December 23, 2020 Communications and Documents Related to its threat assessment of planned demonstrations, potential violence, or protests in the Washington D.C. area on January 6, 2021.

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,       )
                                 )
        Plaintiff,               )
                                 )
v.                               )   Case No. 1:25-cv-25894-RKA
                                 )
BRITISH BROADCASTING CORP., et al., )
                                 )
        Defendants.              )
                                 )

**AFFIDAVIT OF CHARLES D. TOBIN, ESQ.**
**IN CONNECTION WITH SUBPOENA FOR THE PRODUCTION OF RECORDS**
**FROM THE UNITED STATES POSTAL SERVICE**

I, Charles D. Tobin, Esq., declare as follows:

1.      I am over the age of 18, have personal knowledge of the facts set forth herein, and if called as a witness, could testify competently thereto.

2.      I am a partner at the law firm Ballard Spahr LLP, a member in good standing of The Florida Bar, and admitted to practice in the United States District Court for the Southern District of Florida.   I represent Defendants the British Broadcasting Corporation (the "BBC"), BBC Studios Productions Limited, and BBC Studios Distribution Limited in the above-captioned matter, *Trump v. BBC* (the "Action"), pending in the United States District Court for the Southern District of Florida.

3.      I submit this Affidavit in support of the Subpoena attached hereto as Exhibit A (the "Subpoena") for the production of records from the United States Postal Service.  I make this Affidavit pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and the regulations

promulgated thereunder for submitting a request for the production of documents to the United States Post Office pursuant to 39 C.F.R. § 265.13(g)(2).

4.     In the Action, Plaintiff President Donald J. Trump is suing Defendants the BBC, BBC Studios Productions Limited, and BBC Studios Distribution Limited alleging defamation and a violation of the Florida Deceptive and Unfair Trade Practices Act, arising from the documentary titled "*Trump: A Second Chance?*" (the "Documentary"). Plaintiff claims that the Documentary is defamatory, alleging that it falsely depicts Plaintiff's January 6, 2021 speech (the "Speech"). Attached hereto as Exhibit B is a true and correct copy of the Complaint filed in the Action.

5.     The Documentary sought to explain, for its U.K. audience, Plaintiff's continued success and appeal with his American supporters throughout various notable events between his first presidential term and 2024 presidential election, covering a broad range of historical topics. The Documentary closely followed his most ardent supporters, known as the "Front Row Joes," for an in-depth depiction of Plaintiff through the eyes of his supporters, and also featured a number of experts from both sides of the political aisle to contextualize the depiction and provide professional analysis on Plaintiff's continued appeal. As part of the coverage, the Documentary included an abbreviated version of the events that occurred on January 6, 2021, including Plaintiff's Speech at his "Stop the Steal" rally and the ensuing violence that took place at the Capitol building that day. The Documentary, consistent with its overall aim, portrayed the events from the day from the perspective of supporters of Plaintiff who were present that day, many of whom went to the Capitol after the Speech.

6.     Plaintiff's allegations, as well as Defendants' defenses, thus implicate factual questions about the circumstances at work in Washington, D.C. on January 6, 2021—

particularly, what individuals who planned to attend the Speech and the "Stop the Steal" rally understood the Plaintiff's words to mean.

7.     Neither the United States nor the United States Postal Service is a party to the Action.

8.     The documents sought through this request are necessary for defending against the Action because they would serve as highly probative evidence about how Plaintiff's supporters perceived the Speech, and what impact it had on their actions following the Speech. Accordingly, the requested documents would be extremely relevant to both Plaintiff and Defendants' cases.

9.     Upon information and belief, the requested information is available by law to parties outside of the Postal Service. For one, this information has already been provided to the United States Senate Committee on Homeland Security & Governmental Affairs, as the documents are referenced in its report, "Planned in Plain Sight: A Review of the Intelligence Failures in Advance of January 6th, 2021." Additionally, the requested materials do not contain trade secrets, commercial or financial information that would be withheld under data exemptions, sensitive personal information, attorney-client communications, information that would impede any ongoing law enforcement investigations, or communications that would be withheld under the executive privilege.

_____

Charles D. Tobin, Esq.

Sworn to me this
19th day of May, 2026

*Isabella Mijailovic*

Notary Public

District of Columbia
Signed and sworn to (or affirmed) before me on
_____05/19/26_____, ____ by__ Charles D. Tobin
Date          Name(s) of Individual(s) making statement
_Isabella Mijailovic_
Signature of Notarial Officer

_____
Title of Office
My commission expires:___02/14/2029___



ISABF···
NOTARY PU···
My Commiss···

ISABELLA MIJAILOVIC
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 2029

# Exhibit A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Keith Weidner, General Counsel, United States Postal Service, 475 L'Enfant Plaza SW, Washington, DC 20260-1100

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br>06/22/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/20/2026

| CLERK OF COURT | |
|---|---|
| | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____  .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____  on *(date)* _____  ; or

❏ I returned the subpoena unexecuted because: _____

_____  .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____  .

My fees are $ _____  for travel and $ _____  for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,          )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )  Case No. 1:25-cv-25894-RKA
                                    )
BRITISH BROADCASTING CORP., et al., )
                                    )
        Defendants.                 )
                                    )

## ATTACHMENT A TO SUBPOENA TO THE UNITED STATES POSTAL SERVICE TO PRODUCE DOCUMENTS IN A CIVIL ACTION

### DEFINITIONS

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Communications" means any manner of receiving or transmitting information, opinions or thoughts, whether orally, in writing, electronically, or otherwise.  The term

"Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

5.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

6.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

2

7.      "Including" shall be construed as "including but not limited to."

8.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

9.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

10.      "Washington, D.C. area" means the Washington—Arlington—Alexandria Metropolitan Statistical Area.

11.      "You" and "Your" shall refer to the recipient of these requests, and shall include all components under the United States Postal Service; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

3

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections) for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

4

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests is for Documents created or originating on or after December 23, 2020 to January 6, 2021.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**  All Communications and Documents created or sent by the United States Postal Inspection Service on December 23, 2020 Related to its threat assessment of planned demonstrations, potential violence, or protests in the Washington D.C. area on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 2:**  All underlying Communications and Documents cited or quoted in United States Postal Inspection Service's December 23, 2020 Communications and Documents Related to its threat assessment of planned demonstrations, potential violence, or protests in the Washington D.C. area on January 6, 2021.

# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

PRESIDENT DONALD J. TRUMP,
an individual,

        Plaintiff,

    v.

BRITISH BROADCASTING CORPORATION
a/k/a/ BBC, BBC STUDIOS DISTRIBUTION
LIMITED, and BBC STUDIOS PRODUCTIONS
LIMITED,

        Defendants.

Case No.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, PRESIDENT DONALD J. TRUMP ("President Trump"), by and through his counsel, brings this action against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC (the "BBC"), BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED (collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.      This action concerns a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump, which was published in a BBC *Panorama* documentary, that was fabricated and aired by the Defendants one week before the 2024 Presidential Election in a brazen attempt to interfere in and influence the Election's outcome to President Trump's detriment.

2.      In the BBC *Panorama* documentary titled "Trump: A Second Chance" (the "*Panorama* Documentary," or the "Documentary"),[1] which was first broadcast on October 28, 2024, the BBC intentionally and maliciously sought to fully mislead its viewers around the world by splicing together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech").[2] The *Panorama* Documentary deliberately omitted another critical part of the Speech in such a manner as to intentionally misrepresent the meaning of what President Trump said.

3.      The *Panorama* Documentary falsely depicted President Trump telling supporters: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary). President Trump never uttered this sequence of words.

4.      This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and then, much later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight*

---

[1]    First published by Defendants on October 28, 2024 with a runtime of 57:54. *See* "Trump: A Second Chance?", BBC (Oct. 28, 2024) (https://www.bbc.co.uk/programmes/m0024h6r) (last visited Dec. 15, 2025)

[2]    The Speech was 70:53 in length.

2

*like hell, and if you don't fight like hell, you're not going to have a country anymore,*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

5.      Moreover, the BBC purposefully omitted President Trump stating, less than one minute after urging supporters to cheer for their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

6.      As set forth in a damning and recently leaked BBC internal whistleblower document, the BBC intentionally used the *Panorama* Documentary to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting, and that he "said something he did not,"[3] by splicing together footage from the start of the Speech with a separate quote that he said nearly 55 minutes later, while omitting his statement calling for peace, made less than one minute after his first statement urging supports to cheer their senators and congressmen at the Capitol. Such distortion of the President's speech by the BBC "materially misled viewers."[4]

7.      Moreover, concerns about the *Panorama* Documentary were raised internally before its dissemination, but the BBC ignored those concerns and did not take corrective action.

8.      This instance of doctoring—in the form of distortion of meaning and splicing of entirely unrelated word sequences—is part of the BBC's longstanding pattern of manipulating

---

[3]      Gordon Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*, THE TELEGRAPH (Nov. 6, 2025), https://www.telegraph.co.uk/news/2025/11/06/read-devastating-internal-bbc-memo-in-full/ (last visited Dec. 15, 2025).

[4]      *Id.*

3

President Trump's speeches and presenting content in a misleading manner in order to defame him, including fabricating calls for violence that he never made. *See e.g.* ¶¶ 55-87, *infra*.

9. The BBC, faced with overwhelming and justifiable outrage on both sides of the Atlantic, has publicly admitted its staggering breach of journalistic ethics, and apologized, but has made no showing of actual remorse for its wrongdoing nor meaningful institutional changes to prevent future journalistic abuses.

10. Accordingly, President Trump brings this action for compensatory and punitive damages for the extensive reputational harm inflicted upon him by the Defendants.

## PARTIES

11. Plaintiff, President Trump, is a citizen of the United States and a citizen of the State of Florida. He served as the 45th President of the United States and currently serves as the 47th President of the United States.

12. Defendant, the BBC, is a British corporation established by royal charter and operating under an agreement with the United Kingdom's Secretary of State for Culture, Media, and Sport, with its principal place of business in London, England. The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films Ltd., and its international distribution partner, Blue Ant Media Corporation.

13. Defendant, BBC Studios Distribution Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

14. Defendant, BBC Studios Productions Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

4

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are completely diverse, as President Trump is a citizen of Florida, while all Defendants are citizens of the United Kingdom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16. The Court possesses personal jurisdiction over Defendants pursuant to Florida Statute 48.193(2) because Defendants, during the operative period alleged in this Complaint, engaged in substantial and not isolated business activities in Florida, and more specifically in this District. Defendant BBC publishes online news reports, editorials, and other media content at https://www.bbc.com, which are regularly accessed by individuals in Florida.

17. The BBC operates in the United States not as an abstract concept but in a constant manner; the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location.

18. The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web

pages entitled "Florida – BBC News"[5] and "Florida – BBC Weather,"[6] among others. The BBC also offers web pages specific to cities in Florida.[7]

19. Additionally, the BBC offers subscriptions to individuals in Florida and as a result, has thousands of subscribers in Florida. Any individual in the United States, including Florida, can pay for a subscription to the BBC's content and services.[8]

20. Individuals in the United States, including Florida, also have another option for consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform.[9] *BritBox* is available in the United States, including in Florida, and has thousands of subscribers in Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount of the BBC's original content—including *Panorama*.

21. Accordingly, BBC has engaged, and continues to engage in, substantial and not isolated activity in Florida.

---

[5] *Florida – BBC News*, BBC, https://www.bbc.com/news/topics/c77jz3mdq1jt (last visited Dec. 15, 2025).

[6] *Florida – BBC Weather*, BBC, https://www.bbc.com/weather/3442585 (last visited Dec. 15, 2025).

[7] *See, e.g., Miami – BBC News*, BBC, https://www.bbc.com/news/topics/cp7dde75nmlt (last visited Dec. 15, 2025).

[8] *Get even more from a BBC subscription*, BBC, https://www.bbc.com/subscribe (last visited Dec. 15, 2025).

[9] *BritBox by BBC*,
https://www.britbox.com/us/?gclsrc=aw.ds&&utm_source=google&utm_medium=paid-search&utm_campaign=17444044535-137684208899&utm_content=602709820305&utm_term=g&gad_source=1&gad_campaignid=17444044535&gbraid=0AAAAADMxMXrfBmo_s56m_ZA2aFpeyy6C_&gclid=CjwKCAiA0eTJBhBaEiwA-Pa-hbSItFwaYwfNGsO5WR1trkY2tlU0j8XCZ76_KY4_xRzkIl0Sr6pPBxoCTrkQAvD_BwE (last visited Dec. 15, 2025).

6

Case 1:25-cv-25894-XXXX Document 1 Entered on FLSD Docket 12/15/2025 Page 7 of 33

22.     In addition, this Court possesses personal jurisdiction over Defendants pursuant to: (a) Florida Statute §48.193(1)(a)(1), because Defendants operate, conduct, engage in, or carry on a business in Florida or have an office or agency in Florida, (b) Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act in Florida (as stated herein), and (c) Florida Statute §48.193(1)(a)(6) because Defendants caused injury to President Trump within Florida arising out of an act or omission committed by Defendants in Florida, while at or about the time of the injury, products and services provided by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

23.     The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie ("Davie") stated in his recent resignation letter: "Despite a hugely competitive market, I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*."[10]

24.     The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC.

25.     In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer.

---

[10]     *Davie and Turness resignations in full*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c1k02vr1my2o (last visited Dec. 15, 2025). (Emphasis added).

26.     According to *vpnMentor*, a VPN research firm, VPN usage in Florida has skyrocketed since 2024, with a 51% increase in demand on December 19, 2024, and an over 1,000% increase in VPN usage at the beginning of 2025.[11]

27.     Florida streamers have opted to use VPNs to increase their "streaming freedom." Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer.[12]

28.     To that end, an article published by *Tom's Guide*, a reputable technology news outlet, revealed that a VPN usage survey showed that approximately 41% of VPN subscribers use the service to stream content, citing BBC iPlayer as an example of what a VPN subscriber could view using a VPN.[13]

29.     The *Panorama* Documentary's publicity, coupled with significant increases in VPN usage in Florida since its debut, establishes the immense likelihood that citizens of Florida accessed the Documentary before the BBC had it removed.

---

[11]     *Floridians Flock to VPNs As Age-Verification Law Takes Effect*, TAMPA FREE PRESS (Jan. 8, 2025) (https://www.tampafp.com/floridians-flock-to-vpns-as-age-verification-law/) (last visited Dec. 15, 2025).

[12]     *Florida VPN Surge: Why VPN Usage Skyrocketed 1,000% in Florida* (2025), TRUSTED TECHSPOT (https://trustedtechspot.com/florida-vpn-surge/) (last visited Dec. 15, 2025).

[13]     *More Than 40% of VPN Subscribers Use Them for Streaming – Here's Why*, TOM'S GUIDE (June 2, 2021) https://www.tomsguide.com/features/more-than-40-of-vpn-subscribers-use-them-for-streaming-heres-why) (last visited Dec. 15, 2025).

8

30.     Articles like those published by Tom's Guide[14] and PureVPN[15]—giving a summary of the *Panorama* Documentary's plot, telling users how to view the Documentary, and going as far as to provide links to VPNs that allow a user to view BBC iPlayer—make it overwhelmingly certain that Floridians accessed the Documentary using a VPN during the time the Documentary was available.

31.     Further supporting the fact that Floridians accessed the *Panorama* Documentary through a VPN, *The Guardian* reported that research showed that "65 million people from abroad watch the broadcaster's license-fee funded iPlayer service using proxy servers or virtual private networks."[16]

32.     As underscored by the Chairman of the FCC, Brendan Carr, "[t]he BBC has stated that it has a number of partnerships with U.S. broadcasters, including PBS and NPR, to distribute BBC programming here in America."[17]

---

[14]     *How to Watch 'Trump: A Second Chance?'*, TOM'S GUIDE (Oct. 28, 2024) (https://www.tomsguide.com/entertainment/streaming/how-to-watch-trump-a-second-chance-online-from-anywhere) (last visited Dec. 15, 2025).

[15]     *How to Watch 'Trump: A Second Chance in the US'*, PUREVPN https://www.purevpn.com/how-to-watch-trump-a-second-chance-in-the-us (last visited Dec. 15, 2025).

[16]     Paul Revoir, *BBC iPlayer 'Watched By More Than 60 Million People Outside the UK for Free'*, THE GUARDIAN (July 21, 2015) (https://www.theguardian.com/media/2015/jul/21/bbc-iplayer-uk-vpn-proxy-server) (last visited Dec. 15, 2025).

[17]     *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at* BCC (Nov. 19, 2025) (https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed) (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025) (https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/) (last visited Dec. 15, 2025).

33. The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida.

34. Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary,[18] including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025.[19]

35. Blue Ant aggressively advertised its exclusive distribution of the *Panorama* Documentary outside of the United Kingdom, further evidencing the intent of the BBC and its strategic partners to disseminate the Documentary as widely and into as many streams of commerce and channels of distribution as possible, including Florida.[20]

---

[18] Karolina Kaminska, *Blue Ant Studios to shop BBC's 'President Trump: A Second Chance?' In Cannes*, C21 MEDIA (Oct. 10, 2024), https://www.c21media.net/news/blue-ant-studios-takes-october-films-president-trump-a-second-chance-to-cannes/ (last visited Dec. 15, 2025).

[19] Nicholas Sokic, *Blue Ant pulls BBC Trump doc from catalogue*, PLAYBACK (Nov. 12, 2025), https://playbackonline.ca/2025/11/12/blue-ant-pulls-controversial-bbc-trump-doc-from-catalogue/ (last visited Dec. 15, 2025) ("Blue Ant rights has confirmed that it has pulled the BBC *Panorama* documentary on U.S. President Donald Trump from its catalogue amid the controversy surrounding the film.").

[20] *'President Trump: A Second Chance?' Launches at MIPCOM 2024*, BLUE ANT MEDIA CORPORATION (Oct. 10, 2024), https://web.archive.org/web/20250712071622/https://blueantmedia.com/2024/10/president-trump-a-second-chance-launches-at-mipcom-2024/ (last visited Dec. 15, 2025) ("Blue Ant Studios today confirms that the explosive Donald Trump documentary, produced by October Films, has just wrapped production with the working title, President Trump: A Second Chance? Commissioned by BBC's Panorama, and produced by October Films, this hotly anticipated and

36.     Further, and as explained in greater detail below, the BBC elected to publish the *Panorama* Documentary just one week before the 2024 United States Presidential Election with the express intent of interfering with it and trying to undermine President Trump's odds of winning reelection.

37.     Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago, in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary.

38.     The BBC explicitly instructed and ordered its producers to travel to Florida and to utilize this forum for the purpose of creating the Documentary and defaming President Trump.

39.     The *Panorama* Documentary contains extensive evidence and examples of the BBC's producers gathering original footage specifically for use in the Documentary—not using stock footage—at Mar-a-Lago and nearby in the Palm Beach area on April 4, 2023, as well as on other dates. These examples include, but are not limited to: (a) Between 2023 and 2024, the BBC, or its contractors, filmed (i) a wide angle aerial view of Mar-a-Lago taken from a vantage point in the Lake Worth Lagoon (3:57 into the Documentary), (ii) a wide angle aerial view of Mar-a-Lago from a vantage point just north facing the Atlantic Ocean (4:47), (iii) a wide angle shot of the Mar-a-Lago pool and exterior and added a graphic "Trump Residence, Mar-a-Lago Florida" (5:00); and (b) on April 4, 2023, BBC producers and BBC-contracted crew members filmed (i) supporters of

---

distinctive 1x60 documentary will make its official international debut at MPICOM, where attending buyers will have an exclusive previews.").

11

President Trump lining the streets as President Trump's motorcade proceeded with President Trump through Palm Beach on the way to Mar-a-Lago (4:03), (ii) Rick Frazier, a supporter of President Trump, in the passenger seat of a vehicle as it followed the motorcade on the approach to Mar-a-Lago (4:09), (iii) The vehicle carrying Frazier as it entered Mar-a-Lago (4:51), (iv) Frazier as he walked in to Mar-a-Lago (5:03), (v) President Trump as he walked in to Mar-a-Lago to deliver a speech (5:11), (vi) Supporters cheering for the President as he prepared to speak inside Mar-a-Lago (5:24), (vii) President Trump as he delivered a speech to supporters inside Mar-a-Lago (5:27), and (viii) Frazier as he interacted with other supporters of President Trump (6:15 and 6:55).

40.     The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida.

41.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: President Trump is a citizen of Florida who was defamed by the BBC while in Florida, the BBC filmed the *Panorama* Documentary in significant part in Florida, and the BBC, in concert with its strategic partners including October Films Ltd. and Blue Ant Media Corporation, distributed the Documentary into Florida.

12

## FACTUAL ALLEGATIONS

### The BBC's Defamatory and Deceptive Depiction of
### President Trump's Speech in the Panorama Documentary

i.      *The BBC Splices and Distorts President Trump's Speech*

42.     The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary wrongly made it appear that he said: "*We're going to walk down to the Capitol, and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

43.     This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory, given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

44.     Moreover, to further the BBC's intended, false, malicious, and defamatory message that President Trump fomented violence, which he did not, the BBC intentionally omitted President Trump saying, less than one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building*

13

*to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

ii.  *The BBC's Director General and Head of News Resign in Disgrace, and the BBC, Under Fire, Reluctantly Admits Wrongdoing*

45.  On November 9, 2025, Davie and News CEO Deborah Turness resigned in disgrace over their leading roles in the *Panorama* Documentary.[21]

46.  Also on November 9, 2025, President Trump's counsel emailed a letter to Samir Shah (Chairman of the BBC) and Sarah Jones (General Counsel) entitled "Demand to Retract False and Defamatory Statements About The President of the United States of America" demanding retraction of the BBC's false depiction of President Trump, an apology for the false depiction of President Trump, and monetary compensation. *See* **Exhibit A.**

47.  By letter dated November 13, 2025, the BBC's counsel indicated that the BBC would apologize to President Trump but, somehow, ignoring the resignations of the BBC's leadership, admitting of wrongdoing, and apology, still attempted to deny intentional wrongdoing and declined to pay damages. *See* **Exhibit B.**

48.  Enclosed with the letter from counsel was a letter of apology from Chairman Shah, which stated, *inter alia*:

> Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. ***This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement.*** As it was your

---

[21]  Aleks Phillips and Helen Bushby, *BBC director general and News CEO resign over Trump documentary edit*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c3vn25d5dq7o (last visited Dec. 15, 2025) ("It is unprecedented for both the director general and the head of BBC News to resign on the same day."); *see also Davie and Turness resignations in full*, *supra*.

14

speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

*Id.* (emphasis added).

49.     The BBC then published the following apology on its "Corrections and Clarifications" page, which was also included in the November 13 letter:

**Panorama – Trump: A Second Chance?**

**28 October 2024**

This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.

During that sequence, we showed excerpts taken from different parts of the speech.

However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, *and **that this gave the mistaken impression that President Trump had made a direct call for violent action***.

The BBC would like to apologise to President Trump for that ***error of judgment***.

This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.[22]

50.     Notably, the BBC did not broadcast a correction, apology, or retraction during a broadcast in a comparable manner as the *Panorama* Documentary, or with a comparable audience.

### *Substantial Evidence of The BBC's Actual Malice*

51.     Contrary to the BBC's claim that its splicing, manipulation, and distortion of the Speech was an unintentional "editorial error," substantial evidence suggests that this was an intentional and malicious effort to falsely and deceptively portray President Trump as having called for violent action on January 6, 2021.

---

[22]     *Corrections and Clarifications*, BBC (Nov. 13, 2025), https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/ (last visited Dec. 15, 2025) (emphasis added).

52.     As an initial matter of common sense, it would have been impossible for BBC's journalists and producers to splice together two distinct parts of the Speech from nearly 55 minutes apart *unless* they were acting intentionally. Such a dramatic distortion could never have occurred by accident. Two distinct parts of a speech from nearly 55 minutes apart do not inadvertently become spliced or linked together without effort, knowledge, and purpose. In parallel, by definition, an "an error of judgment," as admitted to by the BBC, is not inadvertent, it includes an intentional act.

53.     The BBC's actual malice is further compounded by its prior acts that unequivocally demonstrate that the organization has been anything but fair and impartial when it comes to reporting on President Trump. Substantial evidence demonstrates that before the publication of the *Panorama* Documentary, the BBC and its leadership bore President Trump ill will, wanted him to lose the 2024 Presidential Election, and were dishonest in their coverage of him.

54.     The BBC, its journalists, and its producers knew at and prior to the time they published the *Panorama* Documentary that the BBC's depiction of President Trump's Speech was false.

  *i.* *The Prescott Memorandum*

55.     In the early Summer of 2025, Michael Prescott, a journalist who until June 2025 was an independent adviser to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board "expos[ing] a string of incidents that demonstrate serious bias in the corporation's reporting"; following the leak of the Memorandum, *The Telegraph* published the Memorandum in early November 2025.[23]

---

[23] Rayner, *Revealed: the devastating memo that plunged the BBC into crisis.*

56.     Prescott highlighted a litany of disturbing misconduct demonstrating how far the BBC has strayed from accepted standards of journalistic integrity, including, but not limited to, the BBC's tampering with President Trump's Speech in the Documentary.[24]

57.     Notably, Prescott is nonpartisan, as he wrote in the Memorandum:

> I think it is important to state that I have never been a member of any political party and do not hold any hard and fast views on matters such as American politics or disputes in the Middle East. My views on the BBC's treatment of the subjects covered below do not come with any political agenda. Rather, what motivated me to prepare this note is despair at inaction by the BBC Executive when issues come to light. On no other occasion in my professional life have I witnessed what I did at the BBC with regard to how management dealt with (or failed to deal with) serious recurrent problems.[25]

58.     Regarding the *Panorama* Documentary, Prescott wrote:

> I watched the programme and found it to be neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance. Critics of the Republican presidential candidate vastly outnumbered those who argued for him. What examination there was of reasons for Trump's popularity seemed to me insufficient given the overall balance of the programme. Given what I took to be the anti-Trump nature of the programme, I of course assumed there would be a similar, balancing Panorama programme about Democrat presidential candidate Kamala Harris the following week. I remain shocked that there was not.[26]

59.     Prescott was not alone in his assessment:

> I raised my concerns at the EGSC and David Grossman [Senior Editorial Adviser to the EGSC] was asked to review the programme.  He concluded the main contributors to the documentary were heavily weighted against Trump, with just one supporter against ten who questioned his fitness for office. Worse still, David highlighted alarming concerns about how Panorama had edited Trump's speech to his supporters on January 6, 2021 . . . . Examining the charge that Trump had incited protesters to storm Capitol Hill, it turned out Panorama had spliced together two clips from separate parts of his speech. This created the impression that Trump said something he did not and, in doing so, materially misled viewers.[27]

---

[24]     *Id.*

[25]     *Id.*

[26]     *Id.*

[27]     *Id.*

17

60.     Prescott concluded about the splicing of President Trump's Speech that:

This was one of the most shocking sets of issues uncovered during my time with the EGSC. If BBC journalists are allowed to edit video in order to make people "say" things they never actually said, then what value are the Corporation's guidelines, why should the BBC be trusted, and where will this all end?[28]

ii.     *The 2022 BBC Newsnight Distortion Demonstrating that the Panorama Documentary Splice is Part of a Defamatory Pattern by the BBC of Falsely Depicting President Trump Through Doctored Footage*

61.     As further revealed by *The Telegraph*, the BBC also aired similarly doctored footage of President Trump's Speech on a 2022 episode of *BBC Newsnight*.[29]

62.     In the doctored Speech clip aired by *BBC Newsnight*, President Trump is falsely, maliciously, and defamatorily depicted as saying: "*We're going to cheer on our brave senators and congressman and women, and we fight, we fight like hell.*"[30]

63.     What President Trump really said was: "*[A]nd we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them.*"[31] (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech).

---

[28]     *Id.*

[29]     Camilla Tominey, Tim Stanley, John Cadigan, Rob Crilly, *BBC Newsnight also doctored Trump speech*, THE TELEGRAPH (Nov. 13, 2025), https://www.telegraph.co.uk/news/2025/11/13/bbc-doctored-trump-speech-second-time-newsnight/ (last visited Dec. 15, 2025).

[30]     *Id.*

[31]     *Id.*

64.     As *The Telegraph* reported: "Spliced footage of the speech, which aired in an episode in 2022, made it appear that Mr. Trump was encouraging his supporters to riot. The edit was much like a version aired in a *Panorama* documentary broadcast last year."[32]

65.     As further reported by *The Telegraph*: "Like *Panorama*, the *Newsnight* edit made it look as if the US President had urged supporters to walk to the Capitol building with him to 'fight like hell' by linking statements made nearly an hour apart in his speech."[33] The harm caused by this doctoring was exacerbated by the BBC intentionally omitting President Trump stating, only one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

66.     Immediately after the *BBC Newsnight* episode aired, Mick Mulvaney, former Acting White House Chief of Staff, and David Chaudoir, former award-nominated graphic designer for *BBC Newsnight* from 2022-24, both individually voiced their concerns regarding the misleading and malicious way *BBC Newsnight* edited the clip to distort reality.[34]

67.     Mr. Chaudoir specifically told *The Telegraph* that he was present for discussions about the *BBC Newsnight* clip the day after it was published, wherein *BBC Newsnight* production team members dismissed any ethical concerns about the *BBC Newsnight* clip.[35]

---

[32]     *Id.*

[33]     *Id.*

[34]     *Id.*

[35]     *Id.*

19

68. Mr. Mulvaney expressed his concern on-air while being interviewed on *BBC Newsnight*, stating:

> Your video actually spliced together the presentation. He said: 'We're going to go down and we're going to cheer on our senators and our house members' and then it actually goes on to say 'And some of them we might not be able to' and that line about 'and we fight and fight like hell' is actually later in the speech yet your video makes it look like those two things came together. [36]

69. The malicious nature of the spliced and edited clip is further underscored by former BBC legal affairs correspondent Clive Coleman's statements in response to the *Panorama* Documentary, stating:

> I really struggle to understand how we got to this place . . . The first lesson almost you're taught as a broadcast journalist is that you do not join two bits of footage together from different times in a way that will make the audience think that it is one piece of footage.[37]

*iii.* *The 2024 BBC News Shooting Hoax Further Demonstrating that the Panorama Documentary Doctoring is Part of an Defamatory Pattern by the BBC of Falsely Depicting President Trump Calling for Violence*

70. As also revealed by *The Telegraph*, the BBC "has admitted misleading viewers by claiming that Donald Trump called for one of his leading critics to be shot in the face."[38]

71. This admission by the BBC, regarding three instances of false statements about

---

[36] *Id.*

[37] Faith Wardwell, *BBC Apologizes to Trump for Documentary Edits, but Pushes Back on Legal Threat*, POLITICO (Nov. 13, 2025) (https://www.politico.com/news/2025/11/13/bbc-trump-apology-documentary-00651451) (last visited Dec. 15, 2025).

[38] Anita Singh, *BBC admits falsely claiming Trump wanted to shoot critic*, THE TELEGRAPH (Dec. 9, 2025), https://www.telegraph.co.uk/news/2025/12/09/bbc-admits-falsely-claiming-trump-wanted-to-shoot-critic/ (last visited Dec. 15, 2025).

President Trump supposedly calling for violence against a political opponent, none of which occurred, is contained in the now-public Memorandum, and yet the BBC has still failed to issue a public correction.[39]

72.     As described by *The Telegraph*:

> In the days before the US presidential election in November last year, a presenter on BBC World News America said that Mr. Trump "appeared to suggest Liz Cheney should face a firing squad for her stance on foreign policy."
>
> On the BBC News Channel, another presenter asked his guest: "He [President Trump] is out there on the campaign trail saying he wants people to shoot Liz Cheney in the face . . . Is that the sort of thing women react well to?"
>
> Speaking on the Six O'Clock News the same night, Sarah Smith, the BBC's North America editor, said Mr. Trump had been "ratcheting up the violent rhetoric."
>
> She added: "In the latest spat, Donald Trump has been accused of being petty, vindictive and a wannabe tyrant because he suggested that one of his political opponents should face guns, have them trained on her face."[40]

73.     All these statements by BBC presenters were false.

74.     "In fact, Mr. Trump had accused Ms. Cheney of being a 'radical war hawk' who wanted to send troops to war while she remained in the safety of Washington DC, saying: 'Let's put her with a rifle standing there with nine barrels shooting at her face. OK? Let's see how she feels about it.'"[41]

75.     This false, defamatory, and malicious coverage of President Trump, broadcast in the same time period as the release of the *Panorama* Documentary, was consistent with the BBC's *modus operandi*, defaming President Trump by fabricating calls for violence allegedly issued by him, that he never actually made.

---

[39]     *Id.*

[40]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis.*

[41]     *Id.*

Case 1:25-cv-25894-XXXX Document 1-2 Entered on FLSD Docket 12/15/2025 Page 22 of 33

iv.     *The Panorama Documentary Was Intentionally One-Sided and Inflammatory, demonstrating that the Doctoring of President Trump's Speech Was Intentional and Part of the BBC's Defamatory Pattern*

76.     The lack of any effort by the BBC to publish content even remotely resembling objective journalism, or to maintain even a slight semblance of objectivity in the *Panorama* Documentary, demonstrates that the BBC had no regard for the truth about President Trump, and that the doctoring of his Speech was not inadvertent, but instead was an intentional component of the BBC's effort to craft as one-sided an impression and narrative against President Trump as possible.

77.     Indeed, by any measure, including the overwhelming ratio of anti-Trump versus pro-Trump commentators in the *Panorama* Documentary, the exceptionally high percentage of time granted to these negative voices in the Documentary versus the positive voices, and the inflammatory content of the negative remarks, all coupled with the BBC's historical unfairness to the President, it is apparent that the BBC fabricated the Documentary to damage President Trump. Doctoring his Speech was consistent with, and part of, the BBC's *modus operandi* of negatively covering President Trump without any pretense of objectivity.

78.     The BBC's aggressively anti-Trump stance is reflected straightaway in the opening scene of the *Panorama* Documentary's introduction, which runs for almost three minutes and begins with noted anti-Trump commentator Rick Wilson—who has written two books criticizing President Trump, *Everything Trump Touches Dies* (2018) and *Running Against the Devil: A Plot to Save America From Trump-and Democrats from Themselves* (2020), and has called the President "the devil" and a "cult leader"—declaring, to the backdrop of ominous cinematic music reaching a dramatic crescendo: "I'm the leading anthropologist of Donald Trump in the, in the

22

world, probably, I've thought about him and studied him more than probably anybody else, and I hate him. I hate what he is, and what he does."

79. Seconds later, Wilson states of President Trump: "When you let the monster escape, it will come back, it is a rule of every damn horror movie in history."

80. Former Clinton Secretary of Labor and current Berkeley Professor Robert Reich, another vocal critic of President Trump, then offers: "Once you've unleashed this anger, this hate, into the blood of America, well, it's very very difficult to stop it."

81. A greater majority of the verbal commentary in the *Panorama* Documentary features negative assertions about President Trump by twelve individuals known to be hostile to the President, all of whom are presented as having some form of relevant expertise and authority about the subject matter presented. Moreover, an overwhelming majority of the overall Documentary, including the non-interview segments depicting political and historical events from recent years, presents President Trump in a negative light.

82. Further demonstrating the BBC's malice and intent to interfere with the 2024 Presidential Election, the *Panorama* Documentary, after lingering at length on the events of January 6, 2021, cuts to a clip from the Democratic National Convention on August 22, 2024, showing Kamala Harris taking the stage with a news anchor breathlessly exclaiming in the background: "And here she is, Kamala Harris. It's hard to describe just how electric the mood is here right now."

83. Toward the end of the *Panorama* Documentary, Reich shockingly compares President Trump to "Adolf Hitler," which rises to defamation itself, while Democrat Congressman Jared Huffman refers to the President as a "cult leader," also a defamatory statement.

23

84. Others then join Reich in delivering hyperbolic warnings about President Trump and the supposedly catastrophic consequences that would ensue if President Trump were to emerge victorious.

85. "The degree to which his pessimism and darkness has infected half this country terrifies me," adds Wilson. "There is no ideology in the Republican party except pain, they want vengeance," he continues.

86. Berkeley Political Science Professor Steven Fish asserts "There's a reason why Xi Jinping and Vladimir Putin and Kim Jong Un and all these despots all over the world are rooting so hard for Trump because what Trump does is he seems to discredit democracy in the land of its stronghold, in the strongest democracy in the world, Trump seems to be proof that democracy doesn't work."

87. Boston College History Professor Heather Cox Richardson offers, "this is the time when we either choose authoritarianism or democracy, and if we choose authoritarianism, there will be no turning back, so I think we better get this one right."

88. Reich delivers a closing remark to punctuate the BBC's parade of bias: "Wish us luck, by us, I mean the United States."

   v.   *Prominent Voices Condemn the BBC and Confirm the BBC's Longstanding Pattern of Actual Malice Against President Trump*

89. The BBC is so institutionally biased against President Trump and so devoid of self-awareness that, in response to the above letter from President Trump's counsel (**Exhibit A**), it

24

published a baseless and meritless article questioning the merits of any lawsuit that the President might bring against the BBC.[42]

90.    No less an authority than the United Kingdom's former Prime Minister, Liz Truss, discussed this bias, the need to hold the BBC accountable, and the BBC's pattern of actual malice.[43]

91.    Remarked Truss: "[The BBC] is a huge problem. They've lied, they've cheated, they've fiddled with footage, especially in the case of President Trump, but also covering up what's happening in Britain whether it's mass migration, whether it's our economic problems, they are always biased towards the left . . . ." She was also asked whether the BBC's tepid apology was sufficient, and responded: "No I don't, because they keep doing it again and again. They have painted a completely false picture of President Trump in Britain over a number of years, they've done the same thing about conservatives in our country . . . ." Lamenting the BBC's lost status as a "paragon" of journalism, she remarked that the BBC's "fake news" has caused immense harm to the public for a long time.[44]

92.    Caroline Dinenage, head of the House of Commons' Culture, Media, and Sport Committee said that Members of Parliament need assurances that the BBC was "taking decisive steps to uphold the corporation's reputation for integrity and public trust." She further remarked:

---

[42]    Kayla Epstein and Madeline Halpert, *Trump vs. the BBC: What hurdles might the President's legal argument face?*, BBC (Nov. 11, 2025), https://www.bbc.com/news/articles/c709y1yx1r0o (last visited Dec. 15, 2025).

[43]    *Former UK prime minister calls out BBC, encourages Trump to continue lawsuit*, FOX NEWS (Nov. 15, 2025), https://www.foxnews.com/video/6385140049112 (last visited Dec. 15, 2025).

[44]    *Id.*

25

"The Corporation must set the benchmark for accurate and fair reporting, especially in a media landscape where it is all too easy to find news presented in a less than impartial way."[45]

93.  Conservative Party leader and Member of Parliament Kemi Badenoch said that the distortion of the Speech by the *Panorama* Documentary was "absolutely shocking," adding: "That is fake news, actually putting different things together to make something look different from what it actually was." She continued: "And I do think heads should roll. Whoever it was who did that should be sacked, that's what Tim Davie should be doing, identifying who put out misinformation, and sacking them." Badenoch added: "The public need to be able to trust our public broadcaster . . . They should not be telling us things that are not true. This is a corporation that needs to hold itself to the highest standards, and that means that when we see people doing the wrong thing, they should be punished, they should be sacked."[46]

94.  Lisa Nandy, Secretary of State for Culture, Media and Sport of the United Kingdom, has similarly expressed concern, stating: "there is a real concern, which I share, that political appointments to the board of the BBC damaged confidence and trust in the BBC's impartiality."[47]

95.  FCC Chairman, Brendan Carr, in a letter addressed to Davie, Paula Kerger, (President and CEO of PBS), and Katherine Maher (CEO of NPR), strongly stated:

> As you know, the BBC was recently caught intentionally distorting a speech that President Trump gave in January of 2021. It did so by splicing together one portion of the speech with an entirely separate portion of the speech that came 54 minutes later. In doing so, the BBC program depicts President Trump voicing a sentence

---

[45]  *BBC has questions to answer over edited Trump speech, MPs say*, BBC (Nov. 4, 2025), https://www.bbc.com/news/articles/ckgzkyk7knzo.amp (last visited Dec. 15, 2025).

[46]  *Id.*

[47]  *'Real Concern' About Political Appointees on BBC Board, Nandy Says*, BBC (Nov. 14, 2025), https://www.bbc.com/news/articles/cdeg0ngnj0yo (last visited Dec. 15, 2025).

that, in fact, he never uttered. That would appear to meet the very definition of publishing a materially false and damaging statement.[48]

96.    Carr continued, highlighting the findings of the Memorandum:

> Indeed, there has now been widespread condemnation of the BBC's decision. A former independent external advisor to the BBC's Editorial Guidelines and Standards Committee, Michael Prescott, told the BBC that its decision "created the impression that Trump said something he did not and, in doing so, materially misled viewers." Likewise the Prescott Report states that the BBC program was "neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance.' In sum, it was a 'distortion of the day's events," the Prescott Report continued.[49]

### *Damages*

97.    Since its publication, the *Panorama* Documentary has gained substantial traction and republication across various media in the United States and elsewhere globally.

98.    Defendants used their false and defamatory publications to maliciously disparage and damage President Trump and impugn his reputation.

99.    Specific, extensive economic harms resulted from these defamatory statements. Defendants timed the publication of the *Panorama* Documentary to be close in time to the 2024 Presidential Election, releasing it only one week before the Election.

100.    The value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal

---

[48]    *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at BCC* (Nov. 19, 2025), https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025), https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/ (last visited Dec. 11, 2025).

[49]    *Id.*

reputation inflicted by these Defendants, and their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist, continue into the present, thereby causing massive economic damage to his brand value and significant damage and injury to his future financial prospects, in addition to continuing to harm his reputation as President of the United States of America.

101.    President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

102.    Exacerbating the damages, Defendants, at and prior to the time of their doctoring of the Speech, knowingly made their false, deceptive, malicious, and defamatory depiction of President Trump in bad faith, motivated by malice and ill-will against President Trump without any regard for the truth, and contrary to information Defendants possessed that showed their depiction to be false

103.    All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

## CLAIMS FOR RELIEF

### COUNT I – DEFAMATION *PER SE*

104.    Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

105.    The following false, deceptive, malicious, and defamatory statements and depictions of and about President Trump, were, intentionally, with actual malice, and without privilege, published in the *Panorama* Documentary to millions of people in the State of Florida

28

and in this District, and elsewhere, by all Defendants, and were defamatory and false, and injured President Trump in his profession, occupation, and trade, thus constituting defamation *per se*:

(a) The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary made it seem that he stated: *"We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore."* (Falsely depicted at 33:53 of the Documentary).

(b) This fabricated depiction of President Trump during the Speech was false and defamatory given that President Trump's actual and full remarks during the Speech were (i) *"Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them."* (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (ii) *"[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore."* (Remarks made on January 6, 2021, 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

(c) Moreover, to further the BBC's intended, false, malicious, and defamatory message and impression that President Trump fomented violence, the BBC intentionally omitted President Trump stating, only one minute after urging supporters to cheer

29

on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

106. Defendants possessed information and had access to information which showed that their statements about, and representation and depiction of President Trump were false.

107. Defendants had no factual basis for this false depiction of President Trump.

108. Defendants' deceptive and defamatory distortion, doctoring, manipulation, and splicing damaged President Trump in his occupation, damaged his professional reputation, and portrayed him as engaging in supposed calls for rioting and violence that he never actually made.

109. The *Panorama* Documentary was not a continuation of a prior broadcast. Instead, it was the result of a separate and distinct decision by Defendants to maliciously disseminate false statements about President Trump in a new medium.

110. As pled *supra*, Defendants knew that their portrayal of the Speech in the *Panorama* Documentary was false, malicious, and defamatory.

111. Defendants' actual malice in publishing the *Panorama* Documentary is evidenced by their intentional splicing and distorting two entirely separate sentences made by President Trump during the Speech nearly 55 minutes apart, while omitting his statement calling for peace made less than one minute after his first statement urging supports to cheer on their senators and congressmen at the Capitol.

112. As a proximate result of the maliciously false and defamatory *per se* publication of a statement and depiction to third parties by Defendants, President Trump has been damaged.

113. Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards President Trump, he seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT II – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

114. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

115. In addition, this action is brought for violation of the Florida Deceptive and Unfair Trade Practices Act as codified in Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

116. Defendants are engaged in the conduct of trade and commerce in the State of Florida.

117. Defendants have violated the FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia*, intentionally and maliciously seeking to completely mislead their viewers by splicing together two separate parts of President Trump's Speech, while omitting other critical parts of the Speech in such a manner as to intentionally, falsely, maliciously, and defamatorily change the meaning of what President Trump said.

118. As a direct, proximate, and foreseeable result of Defendants' violation of FDUTPA, President Trump has suffered and continues to suffer substantial damages.

31

119. Pursuant to Fla. Stat. §501.2105, President Trump is entitled to recover his attorneys' fees and costs from Defendants.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, President Trump, hereby demands a jury trial as to all issues so triable.

Dated: December 15, 2025

Respectfully submitted,

/s/Alejandro Brito
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel: 305-614-4071
Fax: 305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

/s/Edward Andrew Paltzik
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice application forthcoming*)

32

/s/Daniel Zachary Epstein
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*

Case 1:25-cv-25894-RKA Document 1-12 Entered on FLSD Docket 12/15/2025 Page 1 of 4



**Alejandro Brito**

Email abrito@britopllc.com
Phone (305) 614.4071
Address 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

November 9, 2025

**Via Email**

Mr. Samir Shah
Chairman
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**samir.shah@bbc.co.uk**

Ms. Sarah Jones
General Counsel
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**sarah.jones@bbc.co.uk**

|  |  |
|---|---|
| Re: | **Demand to Retract False And Defamatory Statements About The President of the United States of America** |

Dear All:

This law firm serves as litigation counsel for President Donald J. Trump (hereinafter referred to as "President Trump"). Please direct all future correspondence relating to this matter to my attention. This correspondence serves as a demand under Florida Statute § 770.01[1] that you immediately retract the false, defamatory, disparaging, and inflammatory statements made about President Trump, which were published in a *Panorama* documentary that was fabricated and aired by the BBC. Failure to comply will leave President Trump with no choice but to pursue any and all legal rights and remedies available to recover damages for the overwhelming financial and reputational harm that the BBC has caused him to suffer, with all rights and remedies being expressly reserved by President Trump.

In the *Panorama* documentary, titled "Trump: A Second Chance,"[2] which was first broadcast on October 28, 2024—a week before the 2024 United States presidential election—the BBC intentionally sought to completely mislead its viewers by splicing together three separate

---

[1] President Trump does not agree or admit that only Florida law applies to any claims he might have in connection with or arising out of the Article and expressly reserves all rights concerning applicable law.

[2] *See* https://www.bbc.co.uk/programmes/m0024h6r. According to the BBC's website, the defamatory documentary was broadcast three times on October 28, 2024, and a fourth time on November 2, 2024.

1

Case 1:25-cv-25894-RKA Document 1-1 Entered on FLSD Docket 12/15/2025 Page 2 of 4

**BRITO**
P L L C

**Alejandro Brito**

Email abrito@britopllc.com
Phone (305) 614.4071
Address 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

parts of President Trump's speech to supporters on January 6, 2021. The documentary showed President Trump telling supporters: "We're gonna walk down to the Capitol and I'll be there with you and we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore." This fabricated depiction of President Trump was false and defamatory given that President Trump's actual and full remarks were: "We're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down any one of you but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women." Moreover, the BBC edited out President Trump saying, "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Thus, as set forth in an internal whistleblower memorandum, the BBC's segment maliciously made it appear that President Trump "[said] things [he] never actually said," by editing together footage from the start of the speech with a separate quote early an hour later.

Due to their salacious nature, the fabricated statements that were aired by the BBC have been widely disseminated throughout various digital mediums, which have reached tens of millions of people worldwide. Consequently, the BBC has caused President Trump to suffer overwhelming financial and reputational harm.

## A. Applicable law.

Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Statements are defamatory if "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *See Zambrano v. Devanesan*, 484 So. 2d 603, 607 (Fla. 4th DCA 1986).

Even if the BBC attempts to whitewash its conduct as simply an expression of its opinions, Florida law makes clear that such a defense will not absolve its liability. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. ***Simply couching such statements in terms of opinion does not dispel these implications***.") (emphasis added); *see also Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983) ("***[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable***.") (emphasis added).

2

Case 1:25-cv-25894-RKA   Document 1-1   Entered on FLSD Docket 12/15/2025   Page 3 of 4

**BRITO**
P L L C

**Alejandro Brito**
Email  abrito@britopllc.com
Phone  (305) 614.4071
Address  2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

Consequently, the BBC lacks any viable defense to the overwhelming reputational and financial harm it has caused President Trump to suffer.

**B. Demand**.

The above-referenced false, defamatory, malicious, disparaging, and inflammatory statements were published to deliberately denigrate President Trump. The timing of the fabricated documentary is evident. The BBC's reckless disregard for the truth underscores the actual malice behind the decision to publish the wrongful content, given the plain falsity of the statements. Accordingly, President Trump hereby demands that you: (1) immediately issue a full and fair retraction of the documentary and any and all other false, defamatory, disparaging, misleading, and inflammatory statements about President Trump in as conspicuous a manner as they were originally published; (2) immediately issue an apology for the false, defamatory, disparaging, misleading, and inflammatory statements about President Trump; and (3) appropriately compensate President Trump for the harm caused.

Moreover, please allow this letter to serve as notice to you, to your affiliated entities, subsidiaries, to all of their employees, and any other person acting on behalf of or in concert with the BBC, to preserve any and all evidence related in any way to the above-mentioned malicious, false, and defamatory statements the BBC published, and any other statements that the BBC has published regarding President Trump. By way of this letter, the BBC is hereby directed not to destroy, conceal, or alter any paper or electronic files, physical evidence, and/or other data relating in any way, no matter how remote, to your false claims regarding President Trump, and/or the circumstances leading to their dissemination, including, but not limited to: (1) all communications between you and any third party in any way related to your wrongful claims regarding President Trump; (2) all sources for your false claims regarding President Trump; (3) any and all documents and data referring to, reflecting, or relating to communications between you and any such third-parties or sources regarding your false claims regarding President Trump; and (4) any and all documents in any way related to your false claims regarding President Trump. This includes any information alleged to be protected by Florida Statute § 90.5015. *Monarch Air Group, LLC v. Journalism Dev. Network, Inc.*, No. 23-CV-61256, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (interpreting Fla. Stat. § 90.5015 and explaining that the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings.") (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)).

I understand that many records and files are maintained electronically. However, this letter specifically requests that all paper and hard copy originals be maintained and preserved in their original format. By the same token, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists and has been preserved, please preserve and maintain all electronically stored documents in their original native format, including all metadata. This preservation demand specifically encompasses any and all electronic documents,

3

Case 1:25-cv-25894-RKA   Document 1-1   Entered on FLSD Docket 12/15/2025   Page 4 of 4



**Alejandro Brito**
Email   abrito@britopllc.com
Phone   (305) 614.4071
Address   2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

including but not limited to, all word-processed files, emails, spreadsheets, all databases, log files, and any other electronically stored and/or generated documents or files.

If the BBC does not comply with the above by **November 14, 2025, at 5:00 p.m. EST**, President Trump will be left with no alternative but to enforce his legal and equitable rights, all of which are expressly reserved and are not waived, including by filing legal action for no less than $1,000,000,000 (One Billion Dollars) in damages. The BBC is on notice.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

4

# Ballard Spahr
LLP

------------------------------

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel. 202.661.2218
Fax. 202.661.2299
tobinc@ballardspahr.com

November 13, 2025

*Via Email (abrito@britopllc.com) & Federal Express*

Alejandro Brito
Brito PLLC
2121 Ponce de Leon
Suite 650
Coral Gables, FL 33134

Re: November 9, 2025 Letter regarding BBC *Panorama* Documentary

Dear Mr. Brito:

Our office represents the British Broadcasting Corporation ("BBC"). We write regarding your letter to the BBC dated November 9, 2025, which you sent on behalf of President Donald J. Trump. You wrote with respect to the broadcast of the BBC's *Panorama* documentary titled "Trump: A Second Chance" ("the Program") on October 28 and November 2, 2024, depicting his supporters during President Trump's campaign for a second term in office. Please direct all further communication about your letter to my attention.

Your letter, citing Florida law, alleges that in a short clip of excerpts of his speech on January 6, 2021, the BBC "intentionally sought to completely mislead its viewers." President Trump alleges that the Program constituted defamation. The President threatens to bring a $1 billion defamation suit against the BBC.

Our client had no intention of misleading anyone. Indeed, the BBC has publicly expressed its contrition in statements to the Chair of Parliament's Culture, Media, and Sport Committee, on its website, and in the media. We also enclose with this letter a copy of the BBC's personal apology to President Trump, sent by email today to White House Chief of Staff Susie Wiles.

Additionally, the BBC has posted or shortly will post the following retraction:[1]

--------------------

[1] https://www.bbc.co.uk/programmes/m0024h6r and
https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/

Alejandro Brito
November 13, 2025
Page 2

> *This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.*
>
> *During that sequence, we showed excerpts taken from different parts of the speech.*
>
> *However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and that this gave the mistaken impression that President Trump had made a direct call for violent action.*
>
> *The BBC would like to apologise to President Trump for that error of judgement.*
>
> *This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.*

While the BBC sincerely regrets the manner in which the video clip was edited, for the following reasons, we strongly disagree that President Trump would have a basis for a viable defamation claim.

**First**, President Trump has made no allegation that the Program was published in Florida, as he must in order to establish personal jurisdiction over the BBC and to meet the publication requirement for a defamation claim. The BBC did not have contractual rights to, and therefore did not, distribute the Program on U.S. channels. Moreover, the version on its website linked to in your letter was geographically restricted to U.K. viewers. In any event, it ceased to be available even in the U.K. from 12 months after the Program aired. The President therefore has not established that he would have any jurisdictional basis to bring a claim against the BBC in Florida or elsewhere in the United States.[2]

**Second**, President Trump will not be able to prove that the Program caused him any injury, let alone the unspecified "overwhelming reputational and financial harm" he alleges.[3] He won reelection on November 5, 2024, after the Program aired. He carried Florida by a

---

[2] *See, e.g., Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (to be actionable as defamation, "the material . . . must not only be *accessible* in Florida, but also be *accessed* in Florida") (emphasis in original).

[3] *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. Cir. Ct. 2014) (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1997)) (given "negative publicity" from "a litany of news media entities" other than defendant NBC, "the challenged excerpts from and characterization of Zimmerman's statements . . . could not have been the required 'but for' cause of Zimmerman's alleged injuries").

Case 1:25-cv-25894-RKA   Document 1-2   Entered on FLSD Docket 12/15/2025   Page 3 of 7

Alejandro Brito
November 13, 2025
Page 3

commanding 13-point margin, improving over his 2020 and 2016 performances in the state.[4]

Moreover, when the Program aired, the President had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee Report found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[5] Given the extensive allegations prior to the release of the Program regarding his January 6 speech, in criminal and civil cases and among the press and public, the Program could not have caused any incremental harm.

**Third**. President Trump has no basis to allege that the BBC published the Program with actual malice – that is, knowing the Program was false or while entertaining serious doubts as to its truth – as he must.[6] Rather, as the BBC Chair has explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."[7]

Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements. In the course of their prosecutions, numbers of people arrested at the Capitol on January 6 told the courts that they interpreted President Trump's remarks as a call to

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g., Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

[6] *See, e.g., N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020). Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971).

[7] Letter from BBC Chair Samir Shah to Dame Caroline Dinenage MP (Nov. 10, 2025), https://committees.parliament.uk/publications/50118/documents/270340/default.

3

Case 1:25-cv-25894-RKA Document 61-2 Entered on FLSD Docket 12/15/2025 Page 4 of 7
Case 1:25-cv-25894-RKA Document 61-2 Entered on FLSD Docket 06/03/2026 Page 463 of
1223

Alejandro Brito
November 13, 2025
Page 4

action.[8]

Further, the BBC has taken prompt corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," issuing a retraction, and confirming that the Program was not scheduled to be re-broadcast and will not be rebroadcast in that form on any BBC platforms. This further negates any suggestion of actual malice.[9]

**Fourth**, the brief clip, which shows about 15 seconds of President Trump's speech on January 6, is part of an hour-long program containing extensive coverage of his supporters praising President Trump, and presenting balanced coverage of his path to reelection. Courts consider challenged statements in the context of the full publication in which they were made. Accordingly, President Trump cannot create an actionable statement or implication by citing a singular clip but ignoring the remaining, overall context of the Program.[10]

**Fifth**, the Program contains protected expressions of opinion, including many from President Trump's ardent supporters. It depicts hotly contested events related to Presidential elections, including the events of January 6, 2021, which have been the subject of extensive controversy and litigation. In this context, even if the Program is reasonably interpreted to report that President Trump encouraged the crowd to march to the Capitol on January 6, that is an

---

[8] *See, e.g.*, Ryan J. Reilly, *Jan. 6 Rioter Who Said He Wanted Trump's 'Approval' Found Guilty by Jury*, CNBC (Apr. 14, 2022), https://www.cnbc.com/2022/04/14/jan-6-rioter-who-said-he-wanted-trumps-approval-found-guilty-by-jury.html ("A Donald Trump supporter who told jurors that he was 'following presidential orders' when he stormed the U.S. Capitol on Jan. 6 was found guilty on Thursday after he admitted that he stole a coat rack and a bottle of liquor from the building."); Shawna Chen, *Judge: Jan. 6 Rioter Who Broke into Capitol Followed "Trump's Instructions,"* Axios (Jan. 17, 2023), https://www.axios.com/2023/01/18/jan6-capitol-riot-trump-instructions ("A federal judge said Tuesday that a California woman who breached the U.S. Capitol during the Jan. 6 insurrection 'followed then-President Trump's instructions' in breaking the law."); Kyle Cheney, *Jan. 6 Defendant Wants Jurors to Blame Trump, Not Him, for Decision to Breach Capitol*, Politico (Apr. 13, 2022), https://www.politico.com/news/2022/04/13/january-6-defendant-donald-trump-00025019 ("Though dozens of defendants have argued in court filings that they believed Trump had authorized the assault on the Capitol, judges have largely rejected that contention and said rioters should be held to account for their own actions. But whether a jury sees that argument differently will be an important test that could reverberate across hundreds of other cases.").

[9] *See, e.g.*, *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

[10] *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020); *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

4

Case 1:25-cv-25894-RKA Document 1-2 Entered on FLSD Docket 12/15/2025 Page 5 of 7

Alejandro Brito
November 13, 2025
Page 5

opinion on a matter of public concern, heavily protected under defamation law in the United States.[11]

For these reasons, the BBC declines President Trump's claim that the Program constituted defamation and his request for compensation.

We sincerely hope that the BBC's public statements of contrition, and the direct apology that we have given to the President, will suffice to put this matter to rest.

The BBC reserves all further rights and remedies, including those available under Fla. Stats. § 57.105 and § 768.295(2)(a).

Sincerely,

BALLARD SPAHR LLP

By _Charles D. Tobin_
Charles D. Tobin

Enclosure

---

[11] _See, e.g., Trump v. CNN_, 684 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (dismissing defamation case because network's description of President Trump's election challenges as the "Big Lie" was non-actionable opinion, not a statement of fact).

Case 1:25-cv-25894-RKA   Document 61-2   Entered on FLSD Docket 12/15/2025   Page 6 of 7



British Broadcasting Corporation                                                From the Chairman

Broadcasting House, London  W1A 1AA

The President
The White House
1600 Pennsylvania Avenue NW
Washington
D.C. 20500
United States of America

13 November 2025

Dear Mr President,

As the Chair of the BBC I wanted to write to you personally. At the same time the BBC's lawyers have today responded to your legal team. The BBC's overall legal position is as set out in that letter. I should make clear at the outset that what follows is my view as the Chair of the BBC. The organisation is, by Royal Charter, independent of His Majesty's Government and nothing I write should imply approval or disapproval by the United Kingdom Government.

Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement. As it was your speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

Case 1:25-cv-25894-RKA   Document 1-2   Entered on FLSD Docket 12/15/2025   Page 7 of 7

- 2 -

The documentary followed a number of your supporters and campaigners, who told the BBC why they wanted you to be re-elected in the 2024 US Presidential Election. The BBC's intention was to reflect their contributions to the documentary fairly and accurately, including their support for you and your Presidency.

Whilst the documentary was not scheduled to be rebroadcast, the BBC has also made public today that it will not be broadcast again on any BBC platforms in a form that includes the misleading sequence.

That the BBC produces content of the highest editorial quality is of paramount importance to me. As Chair, I take responsibility for personally ensuring that the BBC retains the trust and confidence of our audiences.

I would be happy to discuss this matter, should this be of interest to you.

Yours sincerely,

Samir Shah

BBC Chair

# Ballard Spahr
LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 7, 2026

*Via Certified Mail*

Assistant Archivist for Records Services - Washington, DC
National Archives and Records Administration
8601 Adelphi Road
College Park, MD 20740-6001

Re:   *Touhy* Request for the Production of Documents in *Trump v. BBC*, Case No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Sir/Madam:

This law firm represents defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited in the above-referenced civil action pending in the United States District Court for the Southern District of Florida (the "Action"), located at the Wilkie D. Ferguson United States Courthouse, 400 North Miami Avenue, Miami, Florida 33128.  We submit this request for information, identified below, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and 36 C.F.R. § 1251.1, *et seq.*

## BACKGROUND

On December 15, 2025, Plaintiff President Donald J. Trump filed a two-count lawsuit alleging defamation and violations of the Florida Deceptive and Unfair Trade Practices Act against Defendants, arising from the documentary titled "*Trump: A Second Chance?*" ("the Documentary").  For your reference, we have attached a copy of the complaint to this letter as Exhibit 1.  The Documentary explored for the BBC's U.K. audience the President's continued success with his loyal American voters, following some of his most ardent supporters, known as the "Front Row Joes," and speaking with experts in the run up to the November 2024 U.S. presidential election. Plaintiff alleges that the Documentary defamed him in its depiction of his speech on January 6, 2021 ("the Speech").

The Action puts directly into issue the information that Plaintiff had about the Stop the Steal Rally, what was being communicated about the Stop the Steal Rally, whether Plaintiff knew that violence at the Capitol was likely or possible because of communications received, and any messages that Plaintiff had received or sent out about the planning of the

Assistant Archivist for Records Services - Washington, DC
May 7, 2026
Page 2


Stop the Steal Rally, the Speech, or the violence at the Capitol on January 6, 2021. Accordingly, Plaintiff's Presidential records from his first term, in the information and documents identified below, are paramount to the case that Plaintiff has brought against Defendants.

At the moment, Plaintiff has not provided any such relevant documents or information himself in response to Defendants' written discovery requests propounded on him. Furthermore, as legal custody of Presidential records shifts to NARA on the last day of the administration, NARA is the only source through which Defendants can obtain the documents identified below.

Given that Plaintiff's allegations have placed these documents at the heart of the Action, that Defendants need these documents to adequately defend themselve in court, and that NARA is the sole custodian of these records, the need for these documents outweigh any confidentiality of the information and any burden on NARA to produce these records. As detailed below, the requested records are confined by date and subject matter to limit the intensiveness of any search for responsive documents. Additionally, there is a protective order in place that will limit the exposure of any confidential items beyond the parties involved. Finally, to the extent the privacy of President Trump's records is an issue for production, Defendants note that it is Plaintiff President Trump himself who has put these issues, and therefore risk of disclosure, in front of a court, and Defendants now merely seek to defend themselves.

No previous decisions, orders, or pending motions in the Action bear upon the relevance of the requested records or testimony at this point.

## DEFENDANTS' TOUHY REQUEST SHOULD BE GRANTED

Under 36 C.F.R. § 1251.6, NARA considers several factors in evaluating a *Touhy* request. The following factors favor providing the requested documents to Defendants:

- **Whether allowing such production of records would be necessary to prevent a miscarriage of justice.** Because Plaintiff's allegations place at the heart of litigation issues that occurred during his first Presidential term, the documents Defendants request, which cannot be obtained elsewhere, are essential for their ability to present a full-throated and fully-informed defense in this Action. Accordingly, producing the requested records is essential to prevent a miscarriage of justice.

- **Whether allowing such production of records involves a substantial use of NARA resources**. Because the scope of the requested information is limited to a confined period of time about a single subject matter, and because

Assistant Archivist for Records Services - Washington, DC
May 7, 2026
Page 3

search terms can appropriately confine NARA's search for the requested
records, Defendants do not expect that the request is resource-heavy for
NARA.

- **Whether the records can be obtained from the publicly available records
  of NARA or from other sources.**  The requested records can be obtained
  from the publicly available records of NARA.  Additionally, as stated above,
  because custody of Presidential records are transferred to NARA at the end of
  a President's term, NARA is likely the only source for these records.

- **Whether the demand is unduly burdensome or otherwise inappropriate
  under the applicable rules of discovery or the rules of procedure
  governing the case.** Compliance with this request would not be unduly
  burdensome given that the information and documents sought fall under a
  narrow scope, relating to a narrow date range and specific subject matter.
  Accordingly, Defendants expect that it will not be particularly burdensome
  for NARA to provide documents limited to those topics.  Additionally,
  because the inquiry is limited to a specific event, its preparation, and its
  aftermath, Defendants expect that retrieving any relevant documents should
  be relatively simple, as the event, dates, and individuals involved would be
  the search terms to guide production.  Compliance would likewise not be
  inappropriate under discovery or procedural rules. We stand by for any
  discussions about search strings that would help ensure this is not unduly
  burdensome on the agency.

- **Disclosure would reveal confidential, sensitive, or privileged information,
  trade secrets or similar, confidential commercial or financial
  information, otherwise protected information, or information which
  would otherwise be inappropriate for release.**  Defendants are not aware of
  any trade secrets, commercial, or financial information that would be
  included in their requests.

- **Disclosure would impede or interfere with an ongoing law enforcement
  investigation or proceeding, or compromise constitutional rights.**
  Defendants are not aware of any such ongoing investigation or proceeding.

- **Disclosure would result in NARA appearing to favor one litigant over
  another.**  Nothing about Defendants' request would threaten the impartiality
  of NARA as the relevant documents are equally important to the Plaintiff for
  his affirmative case and the Defendants for their defense.   Defendants'
  request is for the purpose of investigating the allegations that Plaintiff has

Assistant Archivist for Records Services - Washington, DC
May 7, 2026
Page 4

made, which put into dispute communications with him and his knowledge surrounding January 6, 2021.  Accordingly, the documents that are relevant to this litigation are essential to both sides of this case.  Additionally, because Plaintiff's allegations likely implicate his own documents from his first Presidential term, not even he can obtain and share those documents without NARA's production here.

- **Disclosure relates to documents that were created by another agency.**  As the requested documents are Presidential records focusing on communications to and from Plaintiff, Defendants believe their request focuses on documents created by the Plaintiff, not other agencies.

- **The demand is within the authority of the party making it.**  As Defendants in the Action requesting the production of records, Defendants' request is within its authority.

- **The demand is sufficiently specific to be answered.**  As identified below, Defendants' request is confined by date and subject matter such that the documents are readily identifiable and relatively confined.

## LIST OF REQUESTED DOCUMENTS

In the interest of transparency and aiding NARA's evaluation of this request, and in compliance with 36 C.F.R. § 1251.10, below is a specific list of documents Defendants seek, along with a description of how the information sought is relevant to the issues in the Action.

- **Presidential records from November 3, 2020 to January 20, 2021 concerning the events of January 6, 2021:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation what Plaintiff's communications and documentations about the events of January 6, 2021 were because they would reflect his knowledge preceding and in the aftermath of those events.

  o **Presidential records from November 3, 2020 to January 20, 2021 discussing the planning, implementation, or execution of the Stop the Steal Rally:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Because the Stop the Steal Rally preceded the attack on the Capitol on January 6, 2021, the

Assistant Archivist for Records Services - Washington, DC
May 7, 2026
Page 5

substance of the Plaintiff's communications and documents related to those events are highly relevant.

- **Presidential call logs from November 3, 2020 to January 20, 2021**:  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Because the January 6, 2021 attack on the Capitol was linked to challenging the results of the 2020 presidential election, Plaintiff's communications from the 2020 presidential election through inauguration are highly relevant.

- **Presidential calendars, schedules, and daily diaries from November 3, 2020 to January 20, 2021:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that that the Documentary misportrayed his role in the events on January 6, 2021. Because the January 6, 2021 attack on the Capitol was linked to challenging the results of the 2020 presidential election, Plaintiff's activity from the 2020 presidential election through inauguration, as reflected in his calendars, schedules, and daily diaries, are highly relevant.

Defendants seek this information in good faith and reasonably believe that the documents identified above are not available through other discovery or sources available in this Action.

Please contact us if you have any questions about this letter or the proposed subpoena.  As required by 36 C.F.R. § 1251.10, the contact information of counsel to each party in the case is as follows:

- **For Defendants:** Charles D. Tobin, Ballard Spahr LLP, 1909 K Street NW, 12th Floor, Washington, DC 20006, (202) 661-2200

- **For Plaintiff:** Alejandro Brito, Brito, PLLC, 2121 Ponce de Leon Boulevard, Suite 650, Coral Gables, FL 33134, (305) 614-4071

We respectfully ask that you act on this *Touhy* request within 45 days of this request, by June 21, 2026.  Thank you in advance for your attention to this matter.

Assistant Archivist for Records Services - Washington, DC
May 7, 2026
Page 6


Sincerely,

BALLARD SPAHR LLP

Charles D. Tobin

Cc: Counsel for Plaintiff


Encl.: Subpoena, Exhibit 1 (Complaint)

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the

_____ District of _____

| | )  |
|---|---|
| _Plaintiff_ | ) |
| v. | )   Civil Action No. |
| | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❏ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-25894-RKA |
| ) | |
| BRITISH BROADCASTING CORP., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ATTACHMENT A TO SUBPOENA TO THE NATIONAL ARCHIVES AND RECORDS ADMINISTRATION TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Communications" means any manner of receiving or transmitting information, opinions or thoughts, whether orally, in writing, electronically, or otherwise.  The term

"Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

5. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

6. "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

2

7.   "Donald J. Trump" refers to Donald J. Trump, the individual.

8.   "Including" shall be construed as "including but not limited to."

9.   "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

10.   "Presidential" means of or pertaining to the President of the United States.

11.   "Presidential Call Logs" means all records, logs, registers, summaries, or metadata reflecting, referring, or relating to telephone communications to or from the President of the United States, including but not limited to incoming and outgoing calls, missed calls, conference calls, call routing information, dates, times, durations, participants, and originating or receiving numbers.

12.   "Presidential Records" means Documents created or received by the President of the United States, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President.

13.   "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

14.   "You"  and "Your" shall refer to the recipient of these requests, and shall include the National Archives and Records Administration; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

## GENERAL INSTRUCTIONS

3

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

      (a) the type of privilege claimed;

      (b) the type of Document;

      (c) the general subject matter of the Document;

      (d) the date of the Document;

      (e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

      (f) the Request(s) to which the Document is responsive; and

      (g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6. Unless otherwise stated, the relevant time period for all requests is for Documents created or originating on or after November 3, 2020 to January 6, 2021.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Presidential Records of Donald J. Trump Relating to the Events of January 6, 2021, including the Stop the Steal Rally in Washington, D.C. and the certification of the 2020 Presidential Election.

**REQUEST FOR PRODUCTION NO. 2:**  All Presidential Records of Donald J. Trump Relating to the planning, implementation, or execution of the Stop the Steal Rally in Washington, D.C.

**REQUEST FOR PRODUCTION NO. 3:**  All Presidential Call Logs.

**REQUEST FOR PRODUCTION NO. 4:** All Presidential calendars, schedules, and daily diaries.

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BRITISH BROADCASTING CORPORATION a/k/a/ BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED,<br><br>　　　　Defendants. | Case No.<br><br><br><u>**COMPLAINT AND DEMAND FOR JURY TRIAL**</u> |

Plaintiff, PRESIDENT DONALD J. TRUMP ("President Trump"), by and through his counsel, brings this action against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC (the "BBC"), BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED (collectively, "Defendants"), and states as follows:

<u>**INTRODUCTION**</u>

1.　　This action concerns a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump, which was published in a BBC *Panorama* documentary, that was fabricated and aired by the Defendants one week before the 2024 Presidential Election in a brazen attempt to interfere in and influence the Election's outcome to President Trump's detriment.

2. In the BBC *Panorama* documentary titled "Trump: A Second Chance" (the "*Panorama* Documentary," or the "Documentary"),[1] which was first broadcast on October 28, 2024, the BBC intentionally and maliciously sought to fully mislead its viewers around the world by splicing together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech").[2] The *Panorama* Documentary deliberately omitted another critical part of the Speech in such a manner as to intentionally misrepresent the meaning of what President Trump said.

3. The *Panorama* Documentary falsely depicted President Trump telling supporters: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary). President Trump never uttered this sequence of words.

4. This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and then, much later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight*

---

[1] First published by Defendants on October 28, 2024 with a runtime of 57:54. *See* "Trump: A Second Chance?", BBC (Oct. 28, 2024) (https://www.bbc.co.uk/programmes/m0024h6r) (last visited Dec. 15, 2025)

[2] The Speech was 70:53 in length.

*like hell, and if you don't fight like hell, you're not going to have a country anymore*," (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

5.    Moreover, the BBC purposefully omitted President Trump stating, less than one minute after urging supporters to cheer for their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

6.    As set forth in a damning and recently leaked BBC internal whistleblower document, the BBC intentionally used the *Panorama* Documentary to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting, and that he "said something he did not,"[3] by splicing together footage from the start of the Speech with a separate quote that he said nearly 55 minutes later, while omitting his statement calling for peace, made less than one minute after his first statement urging supports to cheer their senators and congressmen at the Capitol. Such distortion of the President's speech by the BBC "materially misled viewers."[4]

7.    Moreover, concerns about the *Panorama* Documentary were raised internally before its dissemination, but the BBC ignored those concerns and did not take corrective action.

8.    This instance of doctoring—in the form of distortion of meaning and splicing of entirely unrelated word sequences—is part of the BBC's longstanding pattern of manipulating

---

[3]    Gordon Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*, THE TELEGRAPH (Nov. 6, 2025), https://www.telegraph.co.uk/news/2025/11/06/read-devastating-internal-bbc-memo-in-full/ (last visited Dec. 15, 2025).

[4]    *Id.*

President Trump's speeches and presenting content in a misleading manner in order to defame him, including fabricating calls for violence that he never made. *See e.g.* ¶¶ 55-87, *infra*.

9. The BBC, faced with overwhelming and justifiable outrage on both sides of the Atlantic, has publicly admitted its staggering breach of journalistic ethics, and apologized, but has made no showing of actual remorse for its wrongdoing nor meaningful institutional changes to prevent future journalistic abuses.

10. Accordingly, President Trump brings this action for compensatory and punitive damages for the extensive reputational harm inflicted upon him by the Defendants.

## **PARTIES**

11. Plaintiff, President Trump, is a citizen of the United States and a citizen of the State of Florida. He served as the 45th President of the United States and currently serves as the 47th President of the United States.

12. Defendant, the BBC, is a British corporation established by royal charter and operating under an agreement with the United Kingdom's Secretary of State for Culture, Media, and Sport, with its principal place of business in London, England. The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films Ltd., and its international distribution partner, Blue Ant Media Corporation.

13. Defendant, BBC Studios Distribution Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

14. Defendant, BBC Studios Productions Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

4

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are completely diverse, as President Trump is a citizen of Florida, while all Defendants are citizens of the United Kingdom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     The Court possesses personal jurisdiction over Defendants pursuant to Florida Statute 48.193(2) because Defendants, during the operative period alleged in this Complaint, engaged in substantial and not isolated business activities in Florida, and more specifically in this District. Defendant BBC publishes online news reports, editorials, and other media content at https://www.bbc.com, which are regularly accessed by individuals in Florida.

17.     The BBC operates in the United States not as an abstract concept but in a constant manner; the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location.

18.     The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web

pages entitled "Florida – BBC News"[5] and "Florida – BBC Weather,"[6] among others. The BBC also offers web pages specific to cities in Florida.[7]

19.     Additionally, the BBC offers subscriptions to individuals in Florida and as a result, has thousands of subscribers in Florida. Any individual in the United States, including Florida, can pay for a subscription to the BBC's content and services.[8]

20.     Individuals in the United States, including Florida, also have another option for consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform.[9] *BritBox* is available in the United States, including in Florida, and has thousands of subscribers in Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount of the BBC's original content—including *Panorama*.

21.     Accordingly, BBC has engaged, and continues to engage in, substantial and not isolated activity in Florida.

---

[5]     *Florida – BBC News*, BBC, https://www.bbc.com/news/topics/c77jz3mdq1jt (last visited Dec. 15, 2025).

[6]     *Florida – BBC Weather*, BBC, https://www.bbc.com/weather/3442585 (last visited Dec. 15, 2025).

[7]     *See, e.g., Miami – BBC News*, BBC, https://www.bbc.com/news/topics/cp7dde75nmlt (last visited Dec. 15, 2025).

[8]     *Get even more from a BBC subscription*, BBC, https://www.bbc.com/subscribe (last visited Dec. 15, 2025).

[9]     *BritBox by BBC*, https://www.britbox.com/us/?gclsrc=aw.ds&&utm_source=google&utm_medium=paid-search&utm_campaign=17444044535-137684208899&utm_content=602709820305&utm_term=g&gad_source=1&gad_campaignid=17444044535&gbraid=0AAAAADMxMXrfBmo_s56m_ZA2aFpeyy6C_&gclid=CjwKCAiA0eTJBhBaEiwA-Pa-hbSItFwaYwfNGsO5WR1trkY2tlU0j8XCZ76_KY4_xRzkIl0Sr6pPBxoCTrkQAvD_BwE (last visited Dec. 15, 2025).

6

22.      In addition, this Court possesses personal jurisdiction over Defendants pursuant to: (a) Florida Statute §48.193(1)(a)(1), because Defendants operate, conduct, engage in, or carry on a business in Florida or have an office or agency in Florida, (b) Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act in Florida (as stated herein), and (c) Florida Statute §48.193(1)(a)(6) because Defendants caused injury to President Trump within Florida arising out of an act or omission committed by Defendants in Florida, while at or about the time of the injury, products and services provided by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

23.      The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie ("Davie") stated in his recent resignation letter: "Despite a hugely competitive market, I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*."[10]

24.      The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC.

25.      In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer.

---

[10]      *Davie and Turness resignations in full*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c1k02vr1my2o (last visited Dec. 15, 2025). (Emphasis added).

26.     According to *vpnMentor*, a VPN research firm, VPN usage in Florida has skyrocketed since 2024, with a 51% increase in demand on December 19, 2024, and an over 1,000% increase in VPN usage at the beginning of 2025.[11]

27.     Florida streamers have opted to use VPNs to increase their "streaming freedom." Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer.[12]

28.     To that end, an article published by *Tom's Guide*, a reputable technology news outlet, revealed that a VPN usage survey showed that approximately 41% of VPN subscribers use the service to stream content, citing BBC iPlayer as an example of what a VPN subscriber could view using a VPN.[13]

29.     The *Panorama* Documentary's publicity, coupled with significant increases in VPN usage in Florida since its debut, establishes the immense likelihood that citizens of Florida accessed the Documentary before the BBC had it removed.

---

[11]     *Floridians Flock to VPNs As Age-Verification Law Takes Effect*, TAMPA FREE PRESS (Jan. 8, 2025) (https://www.tampafp.com/floridians-flock-to-vpns-as-age-verification-law/) (last visited Dec. 15, 2025).

[12]     *Florida VPN Surge: Why VPN Usage Skyrocketed 1,000% in Florida* (2025), TRUSTED TECHSPOT (https://trustedtechspot.com/florida-vpn-surge/) (last visited Dec. 15, 2025).

[13]     *More Than 40% of VPN Subscribers Use Them for Streaming – Here's Why*, TOM'S GUIDE (June 2, 2021) https://www.tomsguide.com/features/more-than-40-of-vpn-subscribers-use-them-for-streaming-heres-why) (last visited Dec. 15, 2025).

8

30. Articles like those published by Tom's Guide[14] and PureVPN[15]—giving a summary of the *Panorama* Documentary's plot, telling users how to view the Documentary, and going as far as to provide links to VPNs that allow a user to view BBC iPlayer—make it overwhelmingly certain that Floridians accessed the Documentary using a VPN during the time the Documentary was available.

31. Further supporting the fact that Floridians accessed the *Panorama* Documentary through a VPN, *The Guardian* reported that research showed that "65 million people from abroad watch the broadcaster's license-fee funded iPlayer service using proxy servers or virtual private networks."[16]

32. As underscored by the Chairman of the FCC, Brendan Carr, "[t]he BBC has stated that it has a number of partnerships with U.S. broadcasters, including PBS and NPR, to distribute BBC programming here in America."[17]

---

[14] *How to Watch 'Trump: A Second Chance?'*, TOM'S GUIDE (Oct. 28, 2024) (https://www.tomsguide.com/entertainment/streaming/how-to-watch-trump-a-second-chance-online-from-anywhere) (last visited Dec. 15, 2025).

[15] *How to Watch 'Trump: A Second Chance in the US'*, PUREVPN https://www.purevpn.com/how-to-watch-trump-a-second-chance-in-the-us (last visited Dec. 15, 2025).

[16] Paul Revoir, *BBC iPlayer 'Watched By More Than 60 Million People Outside the UK for Free'*, THE GUARDIAN (July 21, 2015) (https://www.theguardian.com/media/2015/jul/21/bbc-iplayer-uk-vpn-proxy-server) (last visited Dec. 15, 2025).

[17] *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at* BCC (Nov. 19, 2025) (https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed) (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025) (https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/) (last visited Dec. 15, 2025).

9

33. The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida.

34. Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary,[18] including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025.[19]

35. Blue Ant aggressively advertised its exclusive distribution of the *Panorama* Documentary outside of the United Kingdom, further evidencing the intent of the BBC and its strategic partners to disseminate the Documentary as widely and into as many streams of commerce and channels of distribution as possible, including Florida.[20]

---

[18] Karolina Kaminska, *Blue Ant Studios to shop BBC's 'President Trump: A Second Chance?' In Cannes*, C21 MEDIA (Oct. 10, 2024), https://www.c21media.net/news/blue-ant-studios-takes-october-films-president-trump-a-second-chance-to-cannes/ (last visited Dec. 15, 2025).

[19] Nicholas Sokic, *Blue Ant pulls BBC Trump doc from catalogue*, PLAYBACK (Nov. 12, 2025), https://playbackonline.ca/2025/11/12/blue-ant-pulls-controversial-bbc-trump-doc-from-catalogue/ (last visited Dec. 15, 2025) ("Blue Ant rights has confirmed that it has pulled the BBC *Panorama* documentary on U.S. President Donald Trump from its catalogue amid the controversy surrounding the film.").

[20] *'President Trump: A Second Chance?' Launches at MIPCOM 2024*, BLUE ANT MEDIA CORPORATION (Oct. 10, 2024), https://web.archive.org/web/20250712071622/https://blueantmedia.com/2024/10/president-trump-a-second-chance-launches-at-mipcom-2024/ (last visited Dec. 15, 2025) ("Blue Ant Studios today confirms that the explosive Donald Trump documentary, produced by October Films, has just wrapped production with the working title, President Trump: A Second Chance? Commissioned by BBC's Panorama, and produced by October Films, this hotly anticipated and

10

36. Further, and as explained in greater detail below, the BBC elected to publish the *Panorama* Documentary just one week before the 2024 United States Presidential Election with the express intent of interfering with it and trying to undermine President Trump's odds of winning reelection.

37. Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago, in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary.

38. The BBC explicitly instructed and ordered its producers to travel to Florida and to utilize this forum for the purpose of creating the Documentary and defaming President Trump.

39. The *Panorama* Documentary contains extensive evidence and examples of the BBC's producers gathering original footage specifically for use in the Documentary—not using stock footage—at Mar-a-Lago and nearby in the Palm Beach area on April 4, 2023, as well as on other dates. These examples include, but are not limited to: (a) Between 2023 and 2024, the BBC, or its contractors, filmed (i) a wide angle aerial view of Mar-a-Lago taken from a vantage point in the Lake Worth Lagoon (3:57 into the Documentary), (ii) a wide angle aerial view of Mar-a-Lago from a vantage point just north facing the Atlantic Ocean (4:47), (iii) a wide angle shot of the Mar-a-Lago pool and exterior and added a graphic "Trump Residence, Mar-a-Lago Florida" (5:00); and (b) on April 4, 2023, BBC producers and BBC-contracted crew members filmed (i) supporters of

---

distinctive 1x60 documentary will make its official international debut at MPICOM, where attending buyers will have an exclusive previews.").

President Trump lining the streets as President Trump's motorcade proceeded with President Trump through Palm Beach on the way to Mar-a-Lago (4:03), (ii) Rick Frazier, a supporter of President Trump, in the passenger seat of a vehicle as it followed the motorcade on the approach to Mar-a-Lago (4:09), (iii) The vehicle carrying Frazier as it entered Mar-a-Lago (4:51), (iv) Frazier as he walked in to Mar-a-Lago (5:03), (v) President Trump as he walked in to Mar-a-Lago to deliver a speech (5:11), (vi) Supporters cheering for the President as he prepared to speak inside Mar-a-Lago (5:24), (vii) President Trump as he delivered a speech to supporters inside Mar-a-Lago (5:27), and (viii) Frazier as he interacted with other supporters of President Trump (6:15 and 6:55).

40.     The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida.

41.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: President Trump is a citizen of Florida who was defamed by the BBC while in Florida, the BBC filmed the *Panorama* Documentary in significant part in Florida, and the BBC, in concert with its strategic partners including October Films Ltd. and Blue Ant Media Corporation, distributed the Documentary into Florida.

12

## **FACTUAL ALLEGATIONS**

### ***The BBC's Defamatory and Deceptive Depiction of***
### <u>***President Trump's Speech in the Panorama Documentary***</u>

i.    <u>*The BBC Splices and Distorts President Trump's Speech*</u>

42.    The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary wrongly made it appear that he said: "*We're going to walk down to the Capitol, and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

43.    This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory, given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

44.    Moreover, to further the BBC's intended, false, malicious, and defamatory message that President Trump fomented violence, which he did not, the BBC intentionally omitted President Trump saying, less than one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building*

13

*to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

> ii. *The BBC's Director General and Head of News Resign in Disgrace,*
> *and the BBC, Under Fire, Reluctantly Admits Wrongdoing*

45. On November 9, 2025, Davie and News CEO Deborah Turness resigned in disgrace over their leading roles in the *Panorama* Documentary.[21]

46. Also on November 9, 2025, President Trump's counsel emailed a letter to Samir Shah (Chairman of the BBC) and Sarah Jones (General Counsel) entitled "Demand to Retract False and Defamatory Statements About The President of the United States of America" demanding retraction of the BBC's false depiction of President Trump, an apology for the false depiction of President Trump, and monetary compensation. *See* **Exhibit A**.

47. By letter dated November 13, 2025, the BBC's counsel indicated that the BBC would apologize to President Trump but, somehow, ignoring the resignations of the BBC's leadership, admitting of wrongdoing, and apology, still attempted to deny intentional wrongdoing and declined to pay damages. *See* **Exhibit B**.

48. Enclosed with the letter from counsel was a letter of apology from Chairman Shah, which stated, *inter alia*:

> Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. ***This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement***. As it was your

---

[21] Aleks Phillips and Helen Bushby, *BBC director general and News CEO resign over Trump documentary edit*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c3vn25d5dq7o (last visited Dec. 15, 2025) ("It is unprecedented for both the director general and the head of BBC News to resign on the same day."); *see also Davie and Turness resignations in full*, *supra*.

speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

*Id*. (emphasis added).

49.     The BBC then published the following apology on its "Corrections and Clarifications" page, which was also included in the November 13 letter:

**Panorama – Trump: A Second Chance?**

**28 October 2024**

This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.

During that sequence, we showed excerpts taken from different parts of the speech.

However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and *that this gave the mistaken impression that President Trump had made a direct call for violent action*.

The BBC would like to apologise to President Trump for that *error of judgment*.

This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.[22]

50.     Notably, the BBC did not broadcast a correction, apology, or retraction during a broadcast in a comparable manner as the *Panorama* Documentary, or with a comparable audience.

### *Substantial Evidence of The BBC's Actual Malice*

51.     Contrary to the BBC's claim that its splicing, manipulation, and distortion of the Speech was an unintentional "editorial error," substantial evidence suggests that this was an intentional and malicious effort to falsely and deceptively portray President Trump as having called for violent action on January 6, 2021.

---

[22]     *Corrections and Clarifications*, BBC (Nov. 13, 2025), https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/ (last visited Dec. 15, 2025) (emphasis added).

15

52. As an initial matter of common sense, it would have been impossible for BBC's journalists and producers to splice together two distinct parts of the Speech from nearly 55 minutes apart *unless* they were acting intentionally. Such a dramatic distortion could never have occurred by accident. Two distinct parts of a speech from nearly 55 minutes apart do not inadvertently become spliced or linked together without effort, knowledge, and purpose. In parallel, by definition, an "an error of judgment," as admitted to by the BBC, is not inadvertent, it includes an intentional act.

53. The BBC's actual malice is further compounded by its prior acts that unequivocally demonstrate that the organization has been anything but fair and impartial when it comes to reporting on President Trump. Substantial evidence demonstrates that before the publication of the *Panorama* Documentary, the BBC and its leadership bore President Trump ill will, wanted him to lose the 2024 Presidential Election, and were dishonest in their coverage of him.

54. The BBC, its journalists, and its producers knew at and prior to the time they published the *Panorama* Documentary that the BBC's depiction of President Trump's Speech was false.

    i.    *The Prescott Memorandum*

55. In the early Summer of 2025, Michael Prescott, a journalist who until June 2025 was an independent adviser to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board "expos[ing] a string of incidents that demonstrate serious bias in the corporation's reporting"; following the leak of the Memorandum, *The Telegraph* published the Memorandum in early November 2025.[23]

---

[23] Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

16

56.     Prescott highlighted a litany of disturbing misconduct demonstrating how far the BBC has strayed from accepted standards of journalistic integrity, including, but not limited to, the BBC's tampering with President Trump's Speech in the Documentary.[24]

57.     Notably, Prescott is nonpartisan, as he wrote in the Memorandum:

> I think it is important to state that I have never been a member of any political party and do not hold any hard and fast views on matters such as American politics or disputes in the Middle East. My views on the BBC's treatment of the subjects covered below do not come with any political agenda. Rather, what motivated me to prepare this note is despair at inaction by the BBC Executive when issues come to light. On no other occasion in my professional life have I witnessed what I did at the BBC with regard to how management dealt with (or failed to deal with) serious recurrent problems.[25]

58.     Regarding the *Panorama* Documentary, Prescott wrote:

> I watched the programme and found it to be neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance. Critics of the Republican presidential candidate vastly outnumbered those who argued for him. What examination there was of reasons for Trump's popularity seemed to me insufficient given the overall balance of the programme. Given what I took to be the anti-Trump nature of the programme, I of course assumed there would be a similar, balancing Panorama programme about Democrat presidential candidate Kamala Harris the following week. I remain shocked that there was not.[26]

59.     Prescott was not alone in his assessment:

> I raised my concerns at the EGSC and David Grossman [Senior Editorial Adviser to the EGSC] was asked to review the programme.  He concluded the main contributors to the documentary were heavily weighted against Trump, with just one supporter against ten who questioned his fitness for office. Worse still, David highlighted alarming concerns about how Panorama had edited Trump's speech to his supporters on January 6, 2021 . . . . Examining the charge that Trump had incited protesters to storm Capitol Hill, it turned out Panorama had spliced together two clips from separate parts of his speech. This created the impression that Trump said something he did not and, in doing so, materially misled viewers.[27]

---

[24]     *Id*.

[25]     *Id*.

[26]     *Id*.

[27]     *Id*.

17

60. Prescott concluded about the splicing of President Trump's Speech that:

This was one of the most shocking sets of issues uncovered during my time with the EGSC. If BBC journalists are allowed to edit video in order to make people "say" things they never actually said, then what value are the Corporation's guidelines, why should the BBC be trusted, and where will this all end?[28]

ii. *The 2022 BBC Newsnight Distortion Demonstrating that the Panorama Documentary Splice is Part of a Defamatory Pattern by the BBC of Falsely Depicting President Trump Through Doctored Footage*

61. As further revealed by *The Telegraph*, the BBC also aired similarly doctored footage of President Trump's Speech on a 2022 episode of *BBC Newsnight*.[29]

62. In the doctored Speech clip aired by *BBC Newsnight*, President Trump is falsely, maliciously, and defamatorily depicted as saying: "*We're going to cheer on our brave senators and congressman and women, and we fight, we fight like hell*."[30]

63. What President Trump really said was: "*[A]nd we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*."[31] (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech).

---

[28] *Id.*

[29] Camilla Tominey, Tim Stanley, John Cadigan, Rob Crilly, *BBC Newsnight also doctored Trump speech*, THE TELEGRAPH (Nov. 13, 2025), https://www.telegraph.co.uk/news/2025/11/13/bbc-doctored-trump-speech-second-time-newsnight/ (last visited Dec. 15, 2025).

[30] *Id.*

[31] *Id.*

18

64.     As *The Telegraph* reported: "Spliced footage of the speech, which aired in an episode in 2022, made it appear that Mr. Trump was encouraging his supporters to riot. The edit was much like a version aired in a *Panorama* documentary broadcast last year."[32]

65.     As further reported by *The Telegraph*: "Like *Panorama*, the *Newsnight* edit made it look as if the US President had urged supporters to walk to the Capitol building with him to 'fight like hell' by linking statements made nearly an hour apart in his speech."[33]  The harm caused by this doctoring was exacerbated by the BBC intentionally omitting President Trump stating, only one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

66.     Immediately after the *BBC Newsnight* episode aired, Mick Mulvaney, former Acting White House Chief of Staff, and David Chaudoir, former award-nominated graphic designer for *BBC Newsnight* from 2022-24, both individually voiced their concerns regarding the misleading and malicious way *BBC Newsnight* edited the clip to distort reality.[34]

67.     Mr. Chaudoir specifically told *The Telegraph* that he was present for discussions about the *BBC Newsnight* clip the day after it was published, wherein *BBC Newsnight* production team members dismissed any ethical concerns about the *BBC Newsnight* clip.[35]

---

[32]     *Id.*

[33]     *Id.*

[34]     *Id*.

[35]     *Id*.

19

68. Mr. Mulvaney expressed his concern on-air while being interviewed on *BBC Newsnight,* stating:

> Your video actually spliced together the presentation. He said: 'We're going to go down and we're going to cheer on our senators and our house members' and then it actually goes on to say 'And some of them we might not be able to' and that line about 'and we fight and fight like hell' is actually later in the speech yet your video makes it look like those two things came together. [36]

69. The malicious nature of the spliced and edited clip is further underscored by former BBC legal affairs correspondent Clive Coleman's statements in response to the *Panorama* Documentary, stating:

> I really struggle to understand how we got to this place . . . The first lesson almost you're taught as a broadcast journalist is that you do not join two bits of footage together from different times in a way that will make the audience think that it is one piece of footage.[37]

iii. *The 2024 BBC News Shooting Hoax Further Demonstrating that the Panorama Documentary Doctoring is Part of an Defamatory Pattern by the BBC of Falsely Depicting President Trump Calling for Violence*

70. As also revealed by *The Telegraph*, the BBC "has admitted misleading viewers by claiming that Donald Trump called for one of his leading critics to be shot in the face."[38]

71. This admission by the BBC, regarding three instances of false statements about

---

[36] *Id*.

[37] Faith Wardwell, *BBC Apologizes to Trump for Documentary Edits, but Pushes Back on Legal Threat*, POLITICO (Nov. 13, 2025) (https://www.politico.com/news/2025/11/13/bbc-trump-apology-documentary-00651451) (last visited Dec. 15, 2025).

[38] Anita Singh, *BBC admits falsely claiming Trump wanted to shoot critic*, THE TELEGRAPH (Dec. 9, 2025), https://www.telegraph.co.uk/news/2025/12/09/bbc-admits-falsely-claiming-trump-wanted-to-shoot-critic/ (last visited Dec. 15, 2025).

20

President Trump supposedly calling for violence against a political opponent, none of which occurred, is contained in the now-public Memorandum, and yet the BBC has still failed to issue a public correction.[39]

72.     As described by *The Telegraph*:

> In the days before the US presidential election in November last year, a presenter on BBC World News America said that Mr. Trump "appeared to suggest Liz Cheney should face a firing squad for her stance on foreign policy."
>
> On the BBC News Channel, another presenter asked his guest: "He [President Trump] is out there on the campaign trail saying he wants people to shoot Liz Cheney in the face . . . Is that the sort of thing women react well to?
>
> Speaking on the Six O'Clock News the same night, Sarah Smith, the BBC's North America editor, said Mr. Trump had been "ratcheting up the violent rhetoric."
>
> She added: "In the latest spat, Donald Trump has been accused of being petty, vindictive and a wannabe tyrant because he suggested that one of his political opponents should face guns, have them trained on her face."[40]

73.     All these statements by BBC presenters were false.

74.     "In fact, Mr. Trump had accused Ms. Cheney of being a 'radical war hawk' who wanted to send troops to war while she remained in the safety of Washington DC, saying: 'Let's put her with a rifle standing there with nine barrels shooting at her face. OK? Let's see how she feels about it.'"[41]

75.     This false, defamatory, and malicious coverage of President Trump, broadcast in the same time period as the release of the *Panorama* Documentary, was consistent with the BBC's *modus operandi*, defaming President Trump by fabricating calls for violence allegedly issued by him, that he never actually made.

---

[39]     *Id*.

[40]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

[41]     *Id*.

*iv.*      *The Panorama Documentary Was Intentionally One-Sided and Inflammatory, demonstrating that the Doctoring of President Trump's Speech Was Intentional and <u>Part of the BBC's Defamatory Pattern</u>*

76.      The lack of any effort by the BBC to publish content even remotely resembling objective journalism, or to maintain even a slight semblance of objectivity in the *Panorama* Documentary, demonstrates that the BBC had no regard for the truth about President Trump, and that the doctoring of his Speech was not inadvertent, but instead was an intentional component of the BBC's effort to craft as one-sided an impression and narrative against President Trump as possible.

77.      Indeed, by any measure, including the overwhelming ratio of anti-Trump versus pro-Trump commentators in the *Panorama* Documentary, the exceptionally high percentage of time granted to these negative voices in the Documentary versus the positive voices, and the inflammatory content of the negative remarks, all coupled with the BBC's historical unfairness to the President, it is apparent that the BBC fabricated the Documentary to damage President Trump. Doctoring his Speech was consistent with, and part of, the BBC's *modus operandi* of negatively covering President Trump without any pretense of objectivity.

78.      The BBC's aggressively anti-Trump stance is reflected straightaway in the opening scene of the *Panorama* Documentary's introduction, which runs for almost three minutes and begins with noted anti-Trump commentator Rick Wilson—who has written two books criticizing President Trump, *Everything Trump Touches Dies* (2018) and *Running Against the Devil: A Plot to Save America From Trump-and Democrats from Themselves* (2020), and has called the President "the devil" and a "cult leader"—declaring, to the backdrop of ominous cinematic music reaching a dramatic crescendo: "I'm the leading anthropologist of Donald Trump in the, in the

22

world, probably, I've thought about him and studied him more than probably anybody else, and I hate him. I hate what he is, and what he does."

79.     Seconds later, Wilson states of President Trump: "When you let the monster escape, it will come back, it is a rule of every damn horror movie in history."

80.     Former Clinton Secretary of Labor and current Berkeley Professor Robert Reich, another vocal critic of President Trump, then offers: "Once you've unleashed this anger, this hate, into the blood of America, well, it's very very difficult to stop it."

81.     A greater majority of the verbal commentary in the *Panorama* Documentary features negative assertions about President Trump by twelve individuals known to be hostile to the President, all of whom are presented as having some form of relevant expertise and authority about the subject matter presented. Moreover, an overwhelming majority of the overall Documentary, including the non-interview segments depicting political and historical events from recent years, presents President Trump in a negative light.

82.     Further demonstrating the BBC's malice and intent to interfere with the 2024 Presidential Election, the *Panorama* Documentary, after lingering at length on the events of January 6, 2021, cuts to a clip from the Democratic National Convention on August 22, 2024, showing Kamala Harris taking the stage with a news anchor breathlessly exclaiming in the background: "And here she is, Kamala Harris. It's hard to describe just how electric the mood is here right now."

83.     Toward the end of the *Panorama* Documentary, Reich shockingly compares President Trump to "Adolf Hitler," which rises to defamation itself, while Democrat Congressman Jared Huffman refers to the President as a "cult leader," also a defamatory statement.

84.     Others then join Reich in delivering hyperbolic warnings about President Trump and the supposedly catastrophic consequences that would ensue if President Trump were to emerge victorious.

85.     "The degree to which his pessimism and darkness has infected half this country terrifies me," adds Wilson. "There is no ideology in the Republican party except pain, they want vengeance," he continues.

86.     Berkeley Political Science Professor Steven Fish asserts "There's a reason why Xi Jinping and Vladimir Putin and Kim Jong Un and all these despots all over the world are rooting so hard for Trump because what Trump does is he seems to discredit democracy in the land of its stronghold, in the strongest democracy in the world, Trump seems to be proof that democracy doesn't work."

87.     Boston College History Professor Heather Cox Richardson offers, "this is the time when we either choose authoritarianism or democracy, and if we choose authoritarianism, there will be no turning back, so I think we better get this one right."

88.     Reich delivers a closing remark to punctuate the BBC's parade of bias: "Wish us luck, by us, I mean the United States."

    *v.*    *Prominent Voices Condemn the BBC and Confirm the BBC's Longstanding Pattern of Actual Malice Against President Trump*

89.     The BBC is so institutionally biased against President Trump and so devoid of self-awareness that, in response to the above letter from President Trump's counsel (**Exhibit A**), it

24

published a baseless and meritless article questioning the merits of any lawsuit that the President might bring against the BBC.[42]

90.     No less an authority than the United Kingdom's former Prime Minister, Liz Truss, discussed this bias, the need to hold the BBC accountable, and the BBC's pattern of actual malice.[43]

91.     Remarked Truss: "[The BBC] is a huge problem. They've lied, they've cheated, they've fiddled with footage, especially in the case of President Trump, but also covering up what's happening in Britain whether it's mass migration, whether it's our economic problems, they are always biased towards the left . . . ." She was also asked whether the BBC's tepid apology was sufficient, and responded: "No I don't, because they keep doing it again and again. They have painted a completely false picture of President Trump in Britain over a number of years, they've done the same thing about conservatives in our country . . . ." Lamenting the BBC's lost status as a "paragon" of journalism, she remarked that the BBC's "fake news" has caused immense harm to the public for a long time.[44]

92.     Caroline Dinenage, head of the House of Commons' Culture, Media, and Sport Committee said that Members of Parliament need assurances that the BBC was "taking decisive steps to uphold the corporation's reputation for integrity and public trust." She further remarked:

---

[42]     Kayla Epstein and Madeline Halpert, *Trump vs. the BBC: What hurdles might the President's legal argument face?*, BBC (Nov. 11, 2025), https://www.bbc.com/news/articles/c709y1yx1r0o (last visited Dec. 15, 2025).

[43]     *Former UK prime minister calls out BBC, encourages Trump to continue lawsuit*, FOX NEWS (Nov. 15, 2025), https://www.foxnews.com/video/6385140049112 (last visited Dec. 15, 2025).

[44]     *Id*.

"The Corporation must set the benchmark for accurate and fair reporting, especially in a media landscape where it is all too easy to find news presented in a less than impartial way."[45]

93.     Conservative Party leader and Member of Parliament Kemi Badenoch said that the distortion of the Speech by the *Panorama* Documentary was "absolutely shocking," adding: "That is fake news, actually putting different things together to make something look different from what it actually was." She continued: "And I do think heads should roll. Whoever it was who did that should be sacked, that's what Tim Davie should be doing, identifying who put out misinformation, and sacking them."  Badenoch added: "The public need to be able to trust our public broadcaster . . . They should not be telling us things that are not true. This is a corporation that needs to hold itself to the highest standards, and that means that when we see people doing the wrong thing, they should be punished, they should be sacked."[46]

94.     Lisa Nandy, Secretary of State for Culture, Media and Sport of the United Kingdom, has similarly expressed concern, stating: "there is a real concern, which I share, that political appointments to the board of the BBC damaged confidence and trust in the BBC's impartiality."[47]

95.     FCC Chairman, Brendan Carr, in a letter addressed to Davie, Paula Kerger, (President and CEO of PBS), and Katherine Maher (CEO of NPR), strongly stated:

> As you know, the BBC was recently caught intentionally distorting a speech that President Trump gave in January of 2021. It did so by splicing together one portion of the speech with an entirely separate portion of the speech that came 54 minutes later. In doing so, the BBC program depicts President Trump voicing a sentence

---

[45]     *BBC has questions to answer over edited Trump speech, MPs say*, BBC (Nov. 4, 2025), https://www.bbc.com/news/articles/ckgzkyk7knzo.amp (last visited Dec. 15, 2025).

[46]     *Id.*

[47]     *'Real Concern' About Political Appointees on BBC Board, Nandy Says*, BBC (Nov. 14, 2025), https://www.bbc.com/news/articles/cdeg0ngnj0yo (last visited Dec. 15, 2025).

26

that, in fact, he never uttered. That would appear to meet the very definition of publishing a materially false and damaging statement.[48]

96.     Carr continued, highlighting the findings of the Memorandum:

Indeed, there has now been widespread condemnation of the BBC's decision. A former independent external advisor to the BBC's Editorial Guidelines and Standards Committee, Michael Prescott, told the BBC that its decision "created the impression that Trump said something he did not and, in doing so, materially misled viewers." Likewise the Prescott Report states that the BBC program was "neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance.' In sum, it was a 'distortion of the day's events," the Prescott Report continued.[49]

### ***Damages***

97.     Since its publication, the *Panorama* Documentary has gained substantial traction and republication across various media in the United States and elsewhere globally.

98.     Defendants used their false and defamatory publications to maliciously disparage and damage President Trump and impugn his reputation.

99.     Specific, extensive economic harms resulted from these defamatory statements. Defendants timed the publication of the *Panorama* Documentary to be close in time to the 2024 Presidential Election, releasing it only one week before the Election.

100.    The value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal

---

[48]     *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at BCC* (Nov. 19, 2025), https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025), https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/ (last visited Dec. 11, 2025).

[49]     *Id.*

reputation inflicted by these Defendants, and their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist, continue into the present, thereby causing massive economic damage to his brand value and significant damage and injury to his future financial prospects, in addition to continuing to harm his reputation as President of the United States of America.

101. President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

102. Exacerbating the damages, Defendants, at and prior to the time of their doctoring of the Speech, knowingly made their false, deceptive, malicious, and defamatory depiction of President Trump in bad faith, motivated by malice and ill-will against President Trump without any regard for the truth, and contrary to information Defendants possessed that showed their depiction to be false

103. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

## CLAIMS FOR RELIEF

## COUNT I – DEFAMATION *PER SE*

104. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

105. The following false, deceptive, malicious, and defamatory statements and depictions of and about President Trump, were, intentionally, with actual malice, and without privilege, published in the *Panorama* Documentary to millions of people in the State of Florida

28

and in this District, and elsewhere, by all Defendants, and were defamatory and false, and injured President Trump in his profession, occupation, and trade, thus constituting defamation *per se*:

(a) The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary made it seem that he stated: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

(b) This fabricated depiction of President Trump during the Speech was false and defamatory given that President Trump's actual and full remarks during the Speech were (i) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (ii) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021, 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

(c) Moreover, to further the BBC's intended, false, malicious, and defamatory message and impression that President Trump fomented violence, the BBC intentionally omitted President Trump stating, only one minute after urging supporters to cheer

29

on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

106. Defendants possessed information and had access to information which showed that their statements about, and representation and depiction of President Trump were false.

107. Defendants had no factual basis for this false depiction of President Trump.

108. Defendants' deceptive and defamatory distortion, doctoring, manipulation, and splicing damaged President Trump in his occupation, damaged his professional reputation, and portrayed him as engaging in supposed calls for rioting and violence that he never actually made.

109. The *Panorama* Documentary was not a continuation of a prior broadcast. Instead, it was the result of a separate and distinct decision by Defendants to maliciously disseminate false statements about President Trump in a new medium.

110. As pled *supra*, Defendants knew that their portrayal of the Speech in the *Panorama* Documentary was false, malicious, and defamatory.

111. Defendants' actual malice in publishing the *Panorama* Documentary is evidenced by their intentional splicing and distorting two entirely separate sentences made by President Trump during the Speech nearly 55 minutes apart, while omitting his statement calling for peace made less than one minute after his first statement urging supports to cheer on their senators and congressmen at the Capitol.

112. As a proximate result of the maliciously false and defamatory *per se* publication of a statement and depiction to third parties by Defendants, President Trump has been damaged.

113.     Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards President Trump, he seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT II – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

114.     Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

115.     In addition, this action is brought for violation of the Florida Deceptive and Unfair Trade Practices Act as codified in Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

116.     Defendants are engaged in the conduct of trade and commerce in the State of Florida.

117.     Defendants have violated the FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia,* intentionally and maliciously seeking to completely mislead their viewers by splicing together two separate parts of President Trump's Speech, while omitting other critical parts of the Speech in such a manner as to intentionally, falsely, maliciously, and defamatorily change the meaning of what President Trump said.

118.     As a direct, proximate, and foreseeable result of Defendants' violation of FDUTPA, President Trump has suffered and continues to suffer substantial damages.

31

119. Pursuant to Fla. Stat. §501.2105, President Trump is entitled to recover his attorneys' fees and costs from Defendants.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, President Trump, hereby demands a jury trial as to all issues so triable.

Dated: December 15, 2025

Respectfully submitted,

*/s/Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel: 305-614-4071
Fax: 305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

*/s/Edward Andrew Paltzik*
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice application forthcoming*)

32

/s/Daniel Zachary Epstein
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*



**Alejandro Brito**

Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

November 9, 2025

**Via Email**

Mr. Samir Shah
Chairman
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**samir.shah@bbc.co.uk**

Ms. Sarah Jones
General Counsel
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**sarah.jones@bbc.co.uk**

> **Re: Demand to Retract False And Defamatory Statements
> About The President of the United States of America**

Dear All:

This law firm serves as litigation counsel for President Donald J. Trump (hereinafter referred to as "President Trump"). Please direct all future correspondence relating to this matter to my attention. This correspondence serves as a demand under Florida Statute § 770.01[1] that you immediately retract the false, defamatory, disparaging, and inflammatory statements made about President Trump, which were published in a *Panorama* documentary that was fabricated and aired by the BBC. Failure to comply will leave President Trump with no choice but to pursue any and all legal rights and remedies available to recover damages for the overwhelming financial and reputational harm that the BBC has caused him to suffer, with all rights and remedies being expressly reserved by President Trump.

In the *Panorama* documentary, titled "Trump: A Second Chance,"[2] which was first broadcast on October 28, 2024—a week before the 2024 United States presidential election—the BBC intentionally sought to completely mislead its viewers by splicing together three separate

---

[1] President Trump does not agree or admit that only Florida law applies to any claims he might have in connection with or arising out of the Article and expressly reserves all rights concerning applicable law.

[2] *See* https://www.bbc.co.uk/programmes/m0024h6r. According to the BBC's website, the defamatory documentary was broadcast three times on October 28, 2024, and a fourth time on November 2, 2024.

1

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

parts of President Trump's speech to supporters on January 6, 2021. The documentary showed President Trump telling supporters: "We're gonna walk down to the Capitol and I'll be there with you and we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore."  This fabricated depiction of President Trump was false and defamatory given that President Trump's actual and full remarks were: "We're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down any one of you but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women." Moreover, the BBC edited out President Trump saying, "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Thus, as set forth in an internal whistleblower memorandum, the BBC's segment maliciously made it appear that President Trump "[said] things [he] never actually said," by editing together footage from the start of the speech with a separate quote early an hour later.

Due to their salacious nature, the fabricated statements that were aired by the BBC have been widely disseminated throughout various digital mediums, which have reached tens of millions of people worldwide. Consequently, the BBC has caused President Trump to suffer overwhelming financial and reputational harm.

### A. Applicable law.

Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Statements are defamatory if "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *See Zambrano v. Devanesan*, 484 So. 2d 603, 607 (Fla. 4th DCA 1986).

Even if the BBC attempts to whitewash its conduct as simply an expression of its opinions, Florida law makes clear that such a defense will not absolve its liability. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. ***Simply couching such statements in terms of opinion does not dispel these implications***.") (emphasis added); *see also Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983) ("***[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable***.") (emphasis added).

2

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

Consequently, the BBC lacks any viable defense to the overwhelming reputational and financial harm it has caused President Trump to suffer.

## B. Demand.

The above-referenced false, defamatory, malicious, disparaging, and inflammatory statements were published to deliberately denigrate President Trump. The timing of the fabricated documentary is evident. The BBC's reckless disregard for the truth underscores the actual malice behind the decision to publish the wrongful content, given the plain falsity of the statements. Accordingly, President Trump hereby demands that you: (1) immediately issue a full and fair retraction of the documentary and any and all other false, defamatory, disparaging, misleading, and inflammatory statements about President Trump in as conspicuous a manner as they were originally published; (2) immediately issue an apology for the false, defamatory, disparaging, misleading, and inflammatory statements about President Trump; and (3) appropriately compensate President Trump for the harm caused.

Moreover, please allow this letter to serve as notice to you, to your affiliated entities, subsidiaries, to all of their employees, and any other person acting on behalf of or in concert with the BBC, to preserve any and all evidence related in any way to the above-mentioned malicious, false, and defamatory statements the BBC published, and any other statements that the BBC has published regarding President Trump. By way of this letter, the BBC is hereby directed not to destroy, conceal, or alter any paper or electronic files, physical evidence, and/or other data relating in any way, no matter how remote, to your false claims regarding President Trump, and/or the circumstances leading to their dissemination, including, but not limited to: (1) all communications between you and any third party in any way related to your wrongful claims regarding President Trump; (2) all sources for your false claims regarding President Trump; (3) any and all documents and data referring to, reflecting, or relating to communications between you and any such third-parties or sources regarding your false claims regarding President Trump; and (4) any and all documents in any way related to your false claims regarding President Trump. This includes any information alleged to be protected by Florida Statute § 90.5015. *Monarch Air Group, LLC v. Journalism Dev. Network, Inc.,* No. 23-CV-61256, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (interpreting Fla. Stat. § 90.5015 and explaining that the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings.") (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)).

I understand that many records and files are maintained electronically. However, this letter specifically requests that all paper and hard copy originals be maintained and preserved in their original format. By the same token, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists and has been preserved, please preserve and maintain all electronically stored documents in their original native format, including all metadata. This preservation demand specifically encompasses any and all electronic documents,

3



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

including but not limited to, all word-processed files, emails, spreadsheets, all databases, log files, and any other electronically stored and/or generated documents or files.

If the BBC does not comply with the above by **November 14, 2025, at 5:00 p.m. EST**, President Trump will be left with no alternative but to enforce his legal and equitable rights, all of which are expressly reserved and are not waived, including by filing legal action for no less than $1,000,000,000 (One Billion Dollars) in damages. The BBC is on notice.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

4

# Ballard Spahr
### LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

November 13, 2025

*Via Email ([abrito@britopllc.com](abrito@britopllc.com)) & Federal Express*

Alejandro Brito
Brito PLLC
2121 Ponce de Leon
Suite 650
Coral Gables, FL 33134

Re: November 9, 2025 Letter regarding BBC *Panorama* Documentary

Dear Mr. Brito:

Our office represents the British Broadcasting Corporation ("BBC"). We write regarding your letter to the BBC dated November 9, 2025, which you sent on behalf of President Donald J. Trump. You wrote with respect to the broadcast of the BBC's *Panorama* documentary titled "Trump: A Second Chance" ("the Program") on October 28 and November 2, 2024, depicting his supporters during President Trump's campaign for a second term in office. Please direct all further communication about your letter to my attention.

Your letter, citing Florida law, alleges that in a short clip of excerpts of his speech on January 6, 2021, the BBC "intentionally sought to completely mislead its viewers." President Trump alleges that the Program constituted defamation. The President threatens to bring a $1 billion defamation suit against the BBC.

Our client had no intention of misleading anyone. Indeed, the BBC has publicly expressed its contrition in statements to the Chair of Parliament's Culture, Media, and Sport Committee, on its website, and in the media. We also enclose with this letter a copy of the BBC's personal apology to President Trump, sent by email today to White House Chief of Staff Susie Wiles.

Additionally, the BBC has posted or shortly will post the following retraction:[1]

---

[1] [https://www.bbc.co.uk/programmes/m0024h6r](https://www.bbc.co.uk/programmes/m0024h6r) and
[https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/](https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/)

Alejandro Brito
November 13, 2025
Page 2

> *This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.*
>
> *During that sequence, we showed excerpts taken from different parts of the speech.*
>
> *However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and that this gave the mistaken impression that President Trump had made a direct call for violent action.*
>
> *The BBC would like to apologise to President Trump for that error of judgement.*
>
> *This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.*

While the BBC sincerely regrets the manner in which the video clip was edited, for the following reasons, we strongly disagree that President Trump would have a basis for a viable defamation claim.

**First**, President Trump has made no allegation that the Program was published in Florida, as he must in order to establish personal jurisdiction over the BBC and to meet the publication requirement for a defamation claim. The BBC did not have contractual rights to, and therefore did not, distribute the Program on U.S. channels. Moreover, the version on its website linked to in your letter was geographically restricted to U.K. viewers. In any event, it ceased to be available even in the U.K. from 12 months after the Program aired. The President therefore has not established that he would have any jurisdictional basis to bring a claim against the BBC in Florida or elsewhere in the United States.[2]

**Second**, President Trump will not be able to prove that the Program caused him any injury, let alone the unspecified "overwhelming reputational and financial harm" he alleges.[3] He won reelection on November 5, 2024, after the Program aired. He carried Florida by a

---

[2] *See, e.g.*, *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (to be actionable as defamation, "the material . . . must not only be *accessible* in Florida, but also be *accessed* in Florida") (emphasis in original).

[3] *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. Cir. Ct. 2014) (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1997)) (given "negative publicity" from "a litany of news media entities" other than defendant NBC, "the challenged excerpts from and characterization of Zimmerman's statements . . . could not have been the required 'but for' cause of Zimmerman's alleged injuries").

2

Alejandro Brito
November 13, 2025
Page 3

commanding 13-point margin, improving over his 2020 and 2016 performances in the state.[4]

Moreover, when the Program aired, the President had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee Report found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[5] Given the extensive allegations prior to the release of the Program regarding his January 6 speech, in criminal and civil cases and among the press and public, the Program could not have caused any incremental harm.

**Third**, President Trump has no basis to allege that the BBC published the Program with actual malice – that is, knowing the Program was false or while entertaining serious doubts as to its truth – as he must.[6] Rather, as the BBC Chair has explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."[7]

Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements. In the course of their prosecutions, numbers of people arrested at the Capitol on January 6 told the courts that they interpreted President Trump's remarks as a call to

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g.*, *Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

[6] *See, e.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020). Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971).

[7] Letter from BBC Chair Samir Shah to Dame Caroline Dinenage MP (Nov. 10, 2025), https://committees.parliament.uk/publications/50118/documents/270340/default.

Alejandro Brito
November 13, 2025
Page 4

action.[8]

Further, the BBC has taken prompt corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," issuing a retraction, and confirming that the Program was not scheduled to be re-broadcast and will not be rebroadcast in that form on any BBC platforms. This further negates any suggestion of actual malice.[9]

**Fourth**, the brief clip, which shows about 15 seconds of President Trump's speech on January 6, is part of an hour-long program containing extensive coverage of his supporters praising President Trump, and presenting balanced coverage of his path to reelection. Courts consider challenged statements in the context of the full publication in which they were made. Accordingly, President Trump cannot create an actionable statement or implication by citing a singular clip but ignoring the remaining, overall context of the Program.[10]

**Fifth**, the Program contains protected expressions of opinion, including many from President Trump's ardent supporters. It depicts hotly contested events related to Presidential elections, including the events of January 6, 2021, which have been the subject of extensive controversy and litigation. In this context, even if the Program is reasonably interpreted to report that President Trump encouraged the crowd to march to the Capitol on January 6, that is an

---

[8] *See, e.g.*, Ryan J. Reilly, *Jan. 6 Rioter Who Said He Wanted Trump's 'Approval' Found Guilty by Jury*, CNBC (Apr. 14, 2022), https://www.cnbc.com/2022/04/14/jan-6-rioter-who-said-he-wanted-trumps-approval-found-guilty-by-jury.html ("A Donald Trump supporter who told jurors that he was 'following presidential orders' when he stormed the U.S. Capitol on Jan. 6 was found guilty on Thursday after he admitted that he stole a coat rack and a bottle of liquor from the building."); Shawna Chen, *Judge: Jan. 6 Rioter Who Broke into Capitol Followed "Trump's Instructions,"* Axios (Jan. 17, 2023), https://www.axios.com/2023/01/18/jan6-capitol-riot-trump-instructions ("A federal judge said Tuesday that a California woman who breached the U.S. Capitol during the Jan. 6 insurrection 'followed then-President Trump's instructions' in breaking the law."); Kyle Cheney, *Jan. 6 Defendant Wants Jurors to Blame Trump, Not Him, for Decision to Breach Capitol*, Politico (Apr. 13, 2022), https://www.politico.com/news/2022/04/13/january-6-defendant-donald-trump-00025019 ("Though dozens of defendants have argued in court filings that they believed Trump had authorized the assault on the Capitol, judges have largely rejected that contention and said rioters should be held to account for their own actions. But whether a jury sees that argument differently will be an important test that could reverberate across hundreds of other cases.").

[9] *See, e.g.*, *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

[10] *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020); *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

4

Alejandro Brito
November 13, 2025
Page 5

opinion on a matter of public concern, heavily protected under defamation law in the United States.[11]

For these reasons, the BBC declines President Trump's claim that the Program constituted defamation and his request for compensation.

We sincerely hope that the BBC's public statements of contrition, and the direct apology that we have given to the President, will suffice to put this matter to rest.

The BBC reserves all further rights and remedies, including those available under Fla. Stats. § 57.105 and § 768.295(2)(a).

Sincerely,

BALLARD SPAHR LLP

By _Charles D. Tobin_

Charles D. Tobin

Enclosure

---

[11] *See, e.g.*, *Trump v. CNN*, 684 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (dismissing defamation case because network's description of President Trump's election challenges as the "Big Lie" was non-actionable opinion, not a statement of fact).



British Broadcasting Corporation                                    From the Chairman

Broadcasting House, London  W1A 1AA


The President
The White House
1600 Pennsylvania Avenue NW
Washington
D.C. 20500
United States of America


13 November 2025

Dear Mr President,

As the Chair of the BBC I wanted to write to you personally. At the same time the BBC's lawyers have today responded to your legal team. The BBC's overall legal position is as set out in that letter. I should make clear at the outset that what follows is my view as the Chair of the BBC. The organisation is, by Royal Charter, independent of His Majesty's Government and nothing I write should imply approval or disapproval by the United Kingdom Government.

Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement. As it was your speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

- 2 -

The documentary followed a number of your supporters and campaigners, who told the BBC why they wanted you to be re-elected in the 2024 US Presidential Election. The BBC's intention was to reflect their contributions to the documentary fairly and accurately, including their support for you and your Presidency.

Whilst the documentary was not scheduled to be rebroadcast, the BBC has also made public today that it will not be broadcast again on any BBC platforms in a form that includes the misleading sequence.

That the BBC produces content of the highest editorial quality is of paramount importance to me. As Chair, I take responsibility for personally ensuring that the BBC retains the trust and confidence of our audiences.

I would be happy to discuss this matter, should this be of interest to you.

Yours sincerely,

**Samir Shah**

**BBC Chair**

# Ballard Spahr
### LLP

– – – – – – – – – – – – – – – – – –

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 8, 2026

*Via Certified Mail*

Mr. Jason A. Reding Quiñones
United States Attorney
Office of the United States Attorney
Southern District of Florida
99 N.E. 4th Street
Miami, Florida 33132

Ms. Alicia Cook
Acting Chief, Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

Re:    *Touhy* Request for the Production of Documents in *Trump v. BBC*, Case No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Quiñones and Ms. Cook:

This law firm represents defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited in the above-referenced civil action pending in the United States District Court for the Southern District of Florida (the "Action").  Enclosed please find a subpoena for the production of documents, identified below, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), 28 C.F.R. § 16.21, *et seq.*, and the Justice Manual for the United States Department of Justice, Title 1, 1-6.100, *et seq.*

## BACKGROUND

On December 15, 2025, Plaintiff President Donald J. Trump filed a two-count lawsuit alleging defamation and violations of the Florida Deceptive and Unfair Trade Practices Act against Defendants, arising from the documentary titled "*Trump: A Second Chance?*" ("the Documentary").  For your reference, we have attached a copy of the

Mr. Jason A. Reding Quiñones & Ms. Alicia Cook
May 8, 2026
Page 2

complaint to this letter as Exhibit 1. The Documentary explored for the BBC's U.K. audience the President's continued success with his loyal American voters, following some of his most ardent supporters, known as the "Front Row Joes," and speaking with experts in the run up to the November 2024 U.S. presidential election. Plaintiff alleges that the Documentary defamed him in its depiction of his speech on January 6, 2021 ("the Speech"), which he alleges falsely depicted him as inciting violence at the Capitol that day.

The Action puts directly into issue the factual circumstances of the violence at the Capitol building on January 6, 2021, including whether there were plans of violence ahead of time, the communications about any planned violence, and whether individuals understood the Stop the Steal Rally or Trump's communications about January 6, 2021 as a call to violence. Accordingly, the requested documents and information identified below are paramount to the case that Plaintiff has brought against Defendants.

At the moment, Plaintiff has not provided any such relevant documents or information himself in response to Defendants' written discovery requests propounded on him. Furthermore, the information possessed by the Department of Justice ("DOJ") Counterterrorism Section about the intelligence it gathered regarding the events of January 6, 2021 are in the agency's possession, and accordingly would only be obtainable through this Request.

Given that Plaintiff's allegations have placed these documents in the DOJ Counterterrorism Section's possession at the heart of the Action, and that Defendants need these documents to adequately defend themselves in court, the need for these documents outweigh any confidentiality of the information and any burden on the DOJ to produce these records. As detailed below, the requested records are confined by date and subject matter to limit the intensiveness of any search for responsive documents. Additionally, there is a protective order in place that will limit the exposure of any confidential items beyond the parties involved.

No previous decisions, orders, or pending motions in the Action bear upon the relevance of the requested records or testimony at this point. Production of the requested documents would also comport with the Department of Justice's general policy of "favor[ing] cooperation in state and federal cases in which . . . information obtained by the Department is sought." Justice Manual 1-6.240.

**DEFENDANTS' TOUHY REQUEST SHOULD BE GRANTED**

Under 28 C.F.R. § 16.26, the DOJ considers several factors in evaluating a *Touhy* request. The following factors favor providing the requested documents to Defendants:

- **Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose.** Compliance

Mr. Jason A. Reding Quiñones & Ms. Alicia Cook
May 8, 2026
Page 3

with this request is appropriate under the Federal Rules of Civil Procedure and the local rules of the Southern District of Florida.  Both permit parties to litigation to seek documents through subpoenas to non-parties where the requested information is relevant to the litigation, the requesting party shows need for the documents, and the breadth and time period of the request is not unreasonable.  *See Great. Am. Ins. Co. v. Veteran's Support Org.*, 166 F. Supp. 3d 1303, 1310 (S.D. Fla. 2015).  Here, Defendants' requests would not be unduly burdensome because the information sought is limited to a specific subject matter, falls within a narrow date range, is limited to a section of DOJ, and is relevant to the proceedings and necessary to Defendants' ability to evaluate the merits of Plaintiff's claims for the reasons discussed below.

- **Whether disclosure is appropriate under the relevant substantive law concerning privilege or disclosure of information.**  Defendants do not believe that their requests would involve any privileged materials, such as trade secrets, commercial or financial information, attorney-client communications, attorney work product, documents that would fall under executive privilege, or documents that would impede any ongoing law enforcement investigations.

## LIST OF REQUESTED DOCUMENTS

In the interest of transparency and aiding the DOJ's evaluation of this request, and in compliance with 28 C.F.R. § 16.22(d), below is a summary of documents Defendants seek, along with a description of how the information sought is relevant to the issues in the Action.

- **Intelligence, information, and tips received or collected from December 1, 2020 to January 6, 2021 by the DOJ Counterterrorism Section regarding potential violence in the Washington, D.C. area, protests in the Washington, D.C. area regarding the certification of the 2020 presidential election, and protests at the U.S. Capitol Building on January 6, 2021:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

Mr. Jason A. Reding Quiñones & Ms. Alicia Cook
May 8, 2026
Page 4

- **Email communications with the subject line "Jan 6 reporting" from January 4, 2021 from then-Acting Chief of the DOJ Counterterrorism Section to then-Chief of Staff to the Acting Attorney General John Moran and then-Acting U.S. Attorney for the District of Columbia Michael Sherwin:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

Defendants seek this information in good faith and reasonably believe that the documents identified above are not available through other discovery or sources available in this Action.

Please contact us if you have any questions about this letter or the proposed subpoena. We respectfully ask that you act on this *Touhy* request as promptly as possible. Thank you in advance for your attention to this matter.

Sincerely,

BALLARD SPAHR LLP

Charles D. Tobin

Cc: Counsel for Plaintiff

Encl.: Subpoena, Exhibit 1 (Complaint)

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| _Plaintiff_ | ) ) | |
| v. | ) ) | Civil Action No. |
| _Defendant_ | ) ) ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: 

_(Name of person to whom this subpoena is directed)_

❏ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
|  |  |

❏ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

_CLERK OF COURT_

OR

_____                    _____
_Signature of Clerk or Deputy Clerk_                         _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
_____ , who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) )  ) |
| Plaintiff, | ) )  |
| v. | ) )  Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) )  |
| Defendants. | ) ) ) |

**ATTACHMENT A TO SUBPOENA**
**TO THE DEPARTMENT OF JUSTICE COUNTERTERRORISM SECTION**
**TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Communications" means any manner of receiving or transmitting information, opinions or thoughts, whether orally, in writing, electronically, or otherwise.  The term "Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

5.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

6.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—

2

including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

7.      "Including" shall be construed as "including but not limited to."

8.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

9.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

10.     "Washington, D.C. area" means the Washington—Arlington—Alexandria Metropolitan Statistical Area.

11.     "You"  and "Your" shall refer to the recipient of these requests, and shall include all components and offices under the Department of Justice Counterterrorism Section; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

## **GENERAL INSTRUCTIONS**

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

3

2.     If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.     If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections) for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests is for Documents created or originating on or after December 1, 2020 to January 6, 2021.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents collected and received by the Department of Justice Counterterrorism Section Related to potential violence in the Washington D.C. area, protests in the Washington, D.C. area, and protests at the U.S. Capitol building on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 2:**  All Communications by electronic mail from January 4, 2021 to January 6, 2021 between then-Acting Chief of the DOJ Counterterrorism Section to then-Chief of Staff to the Acting Attorney General John Moran and/or then-Acting U.S. Attorney for the District of Columbia Michael Sherwin, with the subject line "Jan 6 reporting."

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BRITISH BROADCASTING CORPORATION a/k/a/ BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, PRESIDENT DONALD J. TRUMP ("President Trump"), by and through his counsel, brings this action against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC (the "BBC"), BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED (collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1.      This action concerns a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump, which was published in a BBC *Panorama* documentary, that was fabricated and aired by the Defendants one week before the 2024 Presidential Election in a brazen attempt to interfere in and influence the Election's outcome to President Trump's detriment.

1

2.      In the BBC *Panorama* documentary titled "Trump: A Second Chance" (the "*Panorama* Documentary," or the "Documentary"),[1] which was first broadcast on October 28, 2024, the BBC intentionally and maliciously sought to fully mislead its viewers around the world by splicing together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech").[2] The *Panorama* Documentary deliberately omitted another critical part of the Speech in such a manner as to intentionally misrepresent the meaning of what President Trump said.

3.      The *Panorama* Documentary falsely depicted President Trump telling supporters: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary). President Trump never uttered this sequence of words.

4.      This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and then, much later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight*

---

[1]      First published by Defendants on October 28, 2024 with a runtime of 57:54. *See* "Trump: A Second Chance?", BBC (Oct. 28, 2024) (https://www.bbc.co.uk/programmes/m0024h6r) (last visited Dec. 15, 2025)

[2]      The Speech was 70:53 in length.

*like hell, and if you don't fight like hell, you're not going to have a country anymore,*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

5. Moreover, the BBC purposefully omitted President Trump stating, less than one minute after urging supporters to cheer for their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

6. As set forth in a damning and recently leaked BBC internal whistleblower document, the BBC intentionally used the *Panorama* Documentary to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting, and that he "said something he did not,"[3] by splicing together footage from the start of the Speech with a separate quote that he said nearly 55 minutes later, while omitting his statement calling for peace, made less than one minute after his first statement urging supports to cheer their senators and congressmen at the Capitol. Such distortion of the President's speech by the BBC "materially misled viewers."[4]

7. Moreover, concerns about the *Panorama* Documentary were raised internally before its dissemination, but the BBC ignored those concerns and did not take corrective action.

8. This instance of doctoring—in the form of distortion of meaning and splicing of entirely unrelated word sequences—is part of the BBC's longstanding pattern of manipulating

---

[3] Gordon Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*, THE TELEGRAPH (Nov. 6, 2025), https://www.telegraph.co.uk/news/2025/11/06/read-devastating-internal-bbc-memo-in-full/ (last visited Dec. 15, 2025).

[4] *Id.*

3

President Trump's speeches and presenting content in a misleading manner in order to defame him, including fabricating calls for violence that he never made. *See e.g.* ¶¶ 55-87, *infra*.

9. The BBC, faced with overwhelming and justifiable outrage on both sides of the Atlantic, has publicly admitted its staggering breach of journalistic ethics, and apologized, but has made no showing of actual remorse for its wrongdoing nor meaningful institutional changes to prevent future journalistic abuses.

10. Accordingly, President Trump brings this action for compensatory and punitive damages for the extensive reputational harm inflicted upon him by the Defendants.

## **PARTIES**

11. Plaintiff, President Trump, is a citizen of the United States and a citizen of the State of Florida. He served as the 45th President of the United States and currently serves as the 47th President of the United States.

12. Defendant, the BBC, is a British corporation established by royal charter and operating under an agreement with the United Kingdom's Secretary of State for Culture, Media, and Sport, with its principal place of business in London, England. The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films Ltd., and its international distribution partner, Blue Ant Media Corporation.

13. Defendant, BBC Studios Distribution Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

14. Defendant, BBC Studios Productions Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are completely diverse, as President Trump is a citizen of Florida, while all Defendants are citizens of the United Kingdom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     The Court possesses personal jurisdiction over Defendants pursuant to Florida Statute 48.193(2) because Defendants, during the operative period alleged in this Complaint, engaged in substantial and not isolated business activities in Florida, and more specifically in this District. Defendant BBC publishes online news reports, editorials, and other media content at https://www.bbc.com, which are regularly accessed by individuals in Florida.

17.     The BBC operates in the United States not as an abstract concept but in a constant manner; the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location.

18.     The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web

pages entitled "Florida – BBC News"[5] and "Florida – BBC Weather,"[6] among others. The BBC also offers web pages specific to cities in Florida.[7]

19. Additionally, the BBC offers subscriptions to individuals in Florida and as a result, has thousands of subscribers in Florida. Any individual in the United States, including Florida, can pay for a subscription to the BBC's content and services.[8]

20. Individuals in the United States, including Florida, also have another option for consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform.[9] *BritBox* is available in the United States, including in Florida, and has thousands of subscribers in Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount of the BBC's original content—including *Panorama*.

21. Accordingly, BBC has engaged, and continues to engage in, substantial and not isolated activity in Florida.

---

[5] *Florida – BBC News*, BBC, https://www.bbc.com/news/topics/c77jz3mdq1jt (last visited Dec. 15, 2025).

[6] *Florida – BBC Weather*, BBC, https://www.bbc.com/weather/3442585 (last visited Dec. 15, 2025).

[7] *See, e.g., Miami – BBC News*, BBC, https://www.bbc.com/news/topics/cp7dde75nmlt (last visited Dec. 15, 2025).

[8] *Get even more from a BBC subscription*, BBC, https://www.bbc.com/subscribe (last visited Dec. 15, 2025).

[9] *BritBox by BBC*, https://www.britbox.com/us/?gclsrc=aw.ds&&utm_source=google&utm_medium=paid-search&utm_campaign=17444044535-137684208899&utm_content=602709820305&utm_term=g&gad_source=1&gad_campaignid=17444044535&gbraid=0AAAAADMxMXrfBmo_s56m_ZA2aFpeyy6C_&gclid=CjwKCAiA0eTJBhBaEiwA-Pa-hbSItFwaYwfNGsO5WR1trkY2tlU0j8XCZ76_KY4_xRzkIl0Sr6pPBxoCTrkQAvD_BwE (last visited Dec. 15, 2025).

22. In addition, this Court possesses personal jurisdiction over Defendants pursuant to: (a) Florida Statute §48.193(1)(a)(1), because Defendants operate, conduct, engage in, or carry on a business in Florida or have an office or agency in Florida, (b) Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act in Florida (as stated herein), and (c) Florida Statute §48.193(1)(a)(6) because Defendants caused injury to President Trump within Florida arising out of an act or omission committed by Defendants in Florida, while at or about the time of the injury, products and services provided by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

23. The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie ("Davie") stated in his recent resignation letter: "Despite a hugely competitive market, I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*."[10]

24. The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC.

25. In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer.

---

[10] *Davie and Turness resignations in full*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c1k02vr1my2o (last visited Dec. 15, 2025). (Emphasis added).

26. According to *vpnMentor*, a VPN research firm, VPN usage in Florida has skyrocketed since 2024, with a 51% increase in demand on December 19, 2024, and an over 1,000% increase in VPN usage at the beginning of 2025.[11]

27. Florida streamers have opted to use VPNs to increase their "streaming freedom." Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer.[12]

28. To that end, an article published by *Tom's Guide*, a reputable technology news outlet, revealed that a VPN usage survey showed that approximately 41% of VPN subscribers use the service to stream content, citing BBC iPlayer as an example of what a VPN subscriber could view using a VPN.[13]

29. The *Panorama* Documentary's publicity, coupled with significant increases in VPN usage in Florida since its debut, establishes the immense likelihood that citizens of Florida accessed the Documentary before the BBC had it removed.

---

[11] *Floridians Flock to VPNs As Age-Verification Law Takes Effect*, TAMPA FREE PRESS (Jan. 8, 2025) (https://www.tampafp.com/floridians-flock-to-vpns-as-age-verification-law/) (last visited Dec. 15, 2025).

[12] *Florida VPN Surge: Why VPN Usage Skyrocketed 1,000% in Florida* (2025), TRUSTED TECHSPOT (https://trustedtechspot.com/florida-vpn-surge/) (last visited Dec. 15, 2025).

[13] *More Than 40% of VPN Subscribers Use Them for Streaming – Here's Why*, TOM'S GUIDE (June 2, 2021) https://www.tomsguide.com/features/more-than-40-of-vpn-subscribers-use-them-for-streaming-heres-why) (last visited Dec. 15, 2025).

30.     Articles like those published by Tom's Guide[14] and PureVPN[15]—giving a summary of the *Panorama* Documentary's plot, telling users how to view the Documentary, and going as far as to provide links to VPNs that allow a user to view BBC iPlayer—make it overwhelmingly certain that Floridians accessed the Documentary using a VPN during the time the Documentary was available.

31.     Further supporting the fact that Floridians accessed the *Panorama* Documentary through a VPN, *The Guardian* reported that research showed that "65 million people from abroad watch the broadcaster's license-fee funded iPlayer service using proxy servers or virtual private networks."[16]

32.     As underscored by the Chairman of the FCC, Brendan Carr, "[t]he BBC has stated that it has a number of partnerships with U.S. broadcasters, including PBS and NPR, to distribute BBC programming here in America."[17]

---

[14]     *How to Watch 'Trump: A Second Chance?'*, TOM'S GUIDE (Oct. 28, 2024) (https://www.tomsguide.com/entertainment/streaming/how-to-watch-trump-a-second-chance-online-from-anywhere) (last visited Dec. 15, 2025).

[15]     *How to Watch 'Trump: A Second Chance in the US'*, PUREVPN https://www.purevpn.com/how-to-watch-trump-a-second-chance-in-the-us (last visited Dec. 15, 2025).

[16]     Paul Revoir, *BBC iPlayer 'Watched By More Than 60 Million People Outside the UK for Free'*, THE GUARDIAN (July 21, 2015) (https://www.theguardian.com/media/2015/jul/21/bbc-iplayer-uk-vpn-proxy-server) (last visited Dec. 15, 2025).

[17]     *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at* BCC (Nov. 19, 2025) (https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed) (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025) (https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/) (last visited Dec. 15, 2025).

33.     The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida.

34.     Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary,[18] including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025.[19]

35.     Blue Ant aggressively advertised its exclusive distribution of the *Panorama* Documentary outside of the United Kingdom, further evidencing the intent of the BBC and its strategic partners to disseminate the Documentary as widely and into as many streams of commerce and channels of distribution as possible, including Florida.[20]

---

[18]     Karolina Kaminska, *Blue Ant Studios to shop BBC's 'President Trump: A Second Chance?' In Cannes*, C21 MEDIA (Oct. 10, 2024), https://www.c21media.net/news/blue-ant-studios-takes-october-films-president-trump-a-second-chance-to-cannes/ (last visited Dec. 15, 2025).

[19]     Nicholas Sokic, *Blue Ant pulls BBC Trump doc from catalogue*, PLAYBACK (Nov. 12, 2025), https://playbackonline.ca/2025/11/12/blue-ant-pulls-controversial-bbc-trump-doc-from-catalogue/ (last visited Dec. 15, 2025) ("Blue Ant rights has confirmed that it has pulled the BBC *Panorama* documentary on U.S. President Donald Trump from its catalogue amid the controversy surrounding the film.").

[20]     '*President Trump: A Second Chance?' Launches at MIPCOM 2024*, BLUE ANT MEDIA CORPORATION (Oct. 10, 2024), https://web.archive.org/web/20250712071622/https://blueantmedia.com/2024/10/president-trump-a-second-chance-launches-at-mipcom-2024/ (last visited Dec. 15, 2025) ("Blue Ant Studios today confirms that the explosive Donald Trump documentary, produced by October Films, has just wrapped production with the working title, President Trump: A Second Chance? Commissioned by BBC's Panorama, and produced by October Films, this hotly anticipated and

36. Further, and as explained in greater detail below, the BBC elected to publish the *Panorama* Documentary just one week before the 2024 United States Presidential Election with the express intent of interfering with it and trying to undermine President Trump's odds of winning reelection.

37. Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago, in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary.

38. The BBC explicitly instructed and ordered its producers to travel to Florida and to utilize this forum for the purpose of creating the Documentary and defaming President Trump.

39. The *Panorama* Documentary contains extensive evidence and examples of the BBC's producers gathering original footage specifically for use in the Documentary—not using stock footage—at Mar-a-Lago and nearby in the Palm Beach area on April 4, 2023, as well as on other dates. These examples include, but are not limited to: (a) Between 2023 and 2024, the BBC, or its contractors, filmed (i) a wide angle aerial view of Mar-a-Lago taken from a vantage point in the Lake Worth Lagoon (3:57 into the Documentary), (ii) a wide angle aerial view of Mar-a-Lago from a vantage point just north facing the Atlantic Ocean (4:47), (iii) a wide angle shot of the Mar-a-Lago pool and exterior and added a graphic "Trump Residence, Mar-a-Lago Florida" (5:00); and (b) on April 4, 2023, BBC producers and BBC-contracted crew members filmed (i) supporters of

---

distinctive 1x60 documentary will make its official international debut at MPICOM, where attending buyers will have an exclusive previews.").

President Trump lining the streets as President Trump's motorcade proceeded with President Trump through Palm Beach on the way to Mar-a-Lago (4:03), (ii) Rick Frazier, a supporter of President Trump, in the passenger seat of a vehicle as it followed the motorcade on the approach to Mar-a-Lago (4:09), (iii) The vehicle carrying Frazier as it entered Mar-a-Lago (4:51), (iv) Frazier as he walked in to Mar-a-Lago (5:03), (v) President Trump as he walked in to Mar-a-Lago to deliver a speech (5:11), (vi) Supporters cheering for the President as he prepared to speak inside Mar-a-Lago (5:24), (vii) President Trump as he delivered a speech to supporters inside Mar-a-Lago (5:27), and (viii) Frazier as he interacted with other supporters of President Trump (6:15 and 6:55).

40. The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida.

41. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: President Trump is a citizen of Florida who was defamed by the BBC while in Florida, the BBC filmed the *Panorama* Documentary in significant part in Florida, and the BBC, in concert with its strategic partners including October Films Ltd. and Blue Ant Media Corporation, distributed the Documentary into Florida.

**FACTUAL ALLEGATIONS**

***The BBC's Defamatory and Deceptive Depiction of***
***President Trump's Speech in the Panorama Documentary***

 i. *The BBC Splices and Distorts President Trump's Speech*

42. The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary wrongly made it appear that he said: "*We're going to walk down to the Capitol, and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

43. This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory, given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

44. Moreover, to further the BBC's intended, false, malicious, and defamatory message that President Trump fomented violence, which he did not, the BBC intentionally omitted President Trump saying, less than one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building*

13

*to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

      ii.      *The BBC's Director General and Head of News Resign in Disgrace, and the BBC, Under Fire, Reluctantly Admits Wrongdoing*

45.      On November 9, 2025, Davie and News CEO Deborah Turness resigned in disgrace over their leading roles in the *Panorama* Documentary.[21]

46.      Also on November 9, 2025, President Trump's counsel emailed a letter to Samir Shah (Chairman of the BBC) and Sarah Jones (General Counsel) entitled "Demand to Retract False and Defamatory Statements About The President of the United States of America" demanding retraction of the BBC's false depiction of President Trump, an apology for the false depiction of President Trump, and monetary compensation. **See Exhibit A**.

47.      By letter dated November 13, 2025, the BBC's counsel indicated that the BBC would apologize to President Trump but, somehow, ignoring the resignations of the BBC's leadership, admitting of wrongdoing, and apology, still attempted to deny intentional wrongdoing and declined to pay damages. **See Exhibit B**.

48.      Enclosed with the letter from counsel was a letter of apology from Chairman Shah, which stated, *inter alia*:

> Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. ***This gave the mistaken impression that you had made a direct call for violent action***. ***That was an editorial error and it should not have happened***. ***I have stated clearly and publicly that the BBC apologises for that error of judgement***. As it was your

---

[21]    Aleks Phillips and Helen Bushby, *BBC director general and News CEO resign over Trump documentary edit*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c3vn25d5dq7o (last visited Dec. 15, 2025) ("It is unprecedented for both the director general and the head of BBC News to resign on the same day."); *see also Davie and Turness resignations in full*, *supra*.

14

speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

*Id*. (emphasis added).

49.     The BBC then published the following apology on its "Corrections and Clarifications" page, which was also included in the November 13 letter:

> **Panorama – Trump: A Second Chance?**
>
> **28 October 2024**
>
> This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.
>
> During that sequence, we showed excerpts taken from different parts of the speech.
>
> However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, *and **that this gave the mistaken impression that President Trump had made a direct call for violent action***.
>
> The BBC would like to apologise to President Trump for that ***error of judgment***.
>
> This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.[22]

50.     Notably, the BBC did not broadcast a correction, apology, or retraction during a broadcast in a comparable manner as the *Panorama* Documentary, or with a comparable audience.

### *Substantial Evidence of The BBC's Actual Malice*

51.     Contrary to the BBC's claim that its splicing, manipulation, and distortion of the Speech was an unintentional "editorial error," substantial evidence suggests that this was an intentional and malicious effort to falsely and deceptively portray President Trump as having called for violent action on January 6, 2021.

---

[22]     *Corrections and Clarifications*, BBC (Nov. 13, 2025), https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/ (last visited Dec. 15, 2025) (emphasis added).

52.     As an initial matter of common sense, it would have been impossible for BBC's journalists and producers to splice together two distinct parts of the Speech from nearly 55 minutes apart *unless* they were acting intentionally. Such a dramatic distortion could never have occurred by accident. Two distinct parts of a speech from nearly 55 minutes apart do not inadvertently become spliced or linked together without effort, knowledge, and purpose. In parallel, by definition, an "an error of judgment," as admitted to by the BBC, is not inadvertent, it includes an intentional act.

53.     The BBC's actual malice is further compounded by its prior acts that unequivocally demonstrate that the organization has been anything but fair and impartial when it comes to reporting on President Trump. Substantial evidence demonstrates that before the publication of the *Panorama* Documentary, the BBC and its leadership bore President Trump ill will, wanted him to lose the 2024 Presidential Election, and were dishonest in their coverage of him.

54.     The BBC, its journalists, and its producers knew at and prior to the time they published the *Panorama* Documentary that the BBC's depiction of President Trump's Speech was false.

   i.     *The Prescott Memorandum*

55.     In the early Summer of 2025, Michael Prescott, a journalist who until June 2025 was an independent adviser to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board "expos[ing] a string of incidents that demonstrate serious bias in the corporation's reporting"; following the leak of the Memorandum, *The Telegraph* published the Memorandum in early November 2025.[23]

---

[23]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

56. Prescott highlighted a litany of disturbing misconduct demonstrating how far the BBC has strayed from accepted standards of journalistic integrity, including, but not limited to, the BBC's tampering with President Trump's Speech in the Documentary.[24]

57. Notably, Prescott is nonpartisan, as he wrote in the Memorandum:

> I think it is important to state that I have never been a member of any political party and do not hold any hard and fast views on matters such as American politics or disputes in the Middle East. My views on the BBC's treatment of the subjects covered below do not come with any political agenda. Rather, what motivated me to prepare this note is despair at inaction by the BBC Executive when issues come to light. On no other occasion in my professional life have I witnessed what I did at the BBC with regard to how management dealt with (or failed to deal with) serious recurrent problems.[25]

58. Regarding the *Panorama* Documentary, Prescott wrote:

> I watched the programme and found it to be neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance. Critics of the Republican presidential candidate vastly outnumbered those who argued for him. What examination there was of reasons for Trump's popularity seemed to me insufficient given the overall balance of the programme. Given what I took to be the anti-Trump nature of the programme, I of course assumed there would be a similar, balancing Panorama programme about Democrat presidential candidate Kamala Harris the following week. I remain shocked that there was not.[26]

59. Prescott was not alone in his assessment:

> I raised my concerns at the EGSC and David Grossman [Senior Editorial Adviser to the EGSC] was asked to review the programme. He concluded the main contributors to the documentary were heavily weighted against Trump, with just one supporter against ten who questioned his fitness for office. Worse still, David highlighted alarming concerns about how Panorama had edited Trump's speech to his supporters on January 6, 2021 . . . . Examining the charge that Trump had incited protesters to storm Capitol Hill, it turned out Panorama had spliced together two clips from separate parts of his speech. This created the impression that Trump said something he did not and, in doing so, materially misled viewers.[27]

---

24     *Id*.

25     *Id*.

26     *Id*.

27     *Id*.

17

60. Prescott concluded about the splicing of President Trump's Speech that:

This was one of the most shocking sets of issues uncovered during my time with the EGSC. If BBC journalists are allowed to edit video in order to make people "say" things they never actually said, then what value are the Corporation's guidelines, why should the BBC be trusted, and where will this all end?[28]

ii. *The 2022 BBC Newsnight Distortion Demonstrating that the Panorama Documentary Splice is Part of a Defamatory Pattern by the BBC of Falsely Depicting President Trump Through Doctored Footage*

61. As further revealed by *The Telegraph*, the BBC also aired similarly doctored footage of President Trump's Speech on a 2022 episode of *BBC Newsnight*.[29]

62. In the doctored Speech clip aired by *BBC Newsnight*, President Trump is falsely, maliciously, and defamatorily depicted as saying: "*We're going to cheer on our brave senators and congressman and women, and we fight, we fight like hell.*"[30]

63. What President Trump really said was: "*[A]nd we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them.*"[31] (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech).

---

[28] *Id*.

[29] Camilla Tominey, Tim Stanley, John Cadigan, Rob Crilly, *BBC Newsnight also doctored Trump speech*, THE TELEGRAPH (Nov. 13, 2025), https://www.telegraph.co.uk/news/2025/11/13/bbc-doctored-trump-speech-second-time-newsnight/ (last visited Dec. 15, 2025).

[30] *Id.*

[31] *Id.*

64.     As *The Telegraph* reported: "Spliced footage of the speech, which aired in an episode in 2022, made it appear that Mr. Trump was encouraging his supporters to riot. The edit was much like a version aired in a *Panorama* documentary broadcast last year."[32]

65.     As further reported by *The Telegraph*: "Like *Panorama*, the *Newsnight* edit made it look as if the US President had urged supporters to walk to the Capitol building with him to 'fight like hell' by linking statements made nearly an hour apart in his speech."[33]  The harm caused by this doctoring was exacerbated by the BBC intentionally omitting President Trump stating, only one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

66.     Immediately after the *BBC Newsnight* episode aired, Mick Mulvaney, former Acting White House Chief of Staff, and David Chaudoir, former award-nominated graphic designer for *BBC Newsnight* from 2022-24, both individually voiced their concerns regarding the misleading and malicious way *BBC Newsnight* edited the clip to distort reality.[34]

67.     Mr. Chaudoir specifically told *The Telegraph* that he was present for discussions about the *BBC Newsnight* clip the day after it was published, wherein *BBC Newsnight* production team members dismissed any ethical concerns about the *BBC Newsnight* clip.[35]

---

[32]     *Id.*

[33]     *Id.*

[34]     *Id*.

[35]     *Id*.

68. Mr. Mulvaney expressed his concern on-air while being interviewed on *BBC Newsnight,* stating:

> Your video actually spliced together the presentation. He said: 'We're going to go down and we're going to cheer on our senators and our house members' and then it actually goes on to say 'And some of them we might not be able to' and that line about 'and we fight and fight like hell' is actually later in the speech yet your video makes it look like those two things came together. [36]

69. The malicious nature of the spliced and edited clip is further underscored by former BBC legal affairs correspondent Clive Coleman's statements in response to the *Panorama* Documentary, stating:

> I really struggle to understand how we got to this place . . . The first lesson almost you're taught as a broadcast journalist is that you do not join two bits of footage together from different times in a way that will make the audience think that it is one piece of footage.[37]

*iii.* *The 2024 BBC News Shooting Hoax Further Demonstrating that the Panorama Documentary Doctoring is Part of an Defamatory Pattern by the BBC of Falsely Depicting President Trump Calling for Violence*

70. As also revealed by *The Telegraph*, the BBC "has admitted misleading viewers by claiming that Donald Trump called for one of his leading critics to be shot in the face."[38]

71. This admission by the BBC, regarding three instances of false statements about

---

[36]    *Id*.

[37]    Faith Wardwell, *BBC Apologizes to Trump for Documentary Edits, but Pushes Back on Legal Threat*, POLITICO (Nov. 13, 2025) (https://www.politico.com/news/2025/11/13/bbc-trump-apology-documentary-00651451) (last visited Dec. 15, 2025).

[38]    Anita Singh, *BBC admits falsely claiming Trump wanted to shoot critic*, THE TELEGRAPH (Dec. 9, 2025), https://www.telegraph.co.uk/news/2025/12/09/bbc-admits-falsely-claiming-trump-wanted-to-shoot-critic/ (last visited Dec. 15, 2025).

20

President Trump supposedly calling for violence against a political opponent, none of which occurred, is contained in the now-public Memorandum, and yet the BBC has still failed to issue a public correction.[39]

72.     As described by *The Telegraph*:

> In the days before the US presidential election in November last year, a presenter on BBC World News America said that Mr. Trump "appeared to suggest Liz Cheney should face a firing squad for her stance on foreign policy."
>
> On the BBC News Channel, another presenter asked his guest: "He [President Trump] is out there on the campaign trail saying he wants people to shoot Liz Cheney in the face . . . Is that the sort of thing women react well to?
>
> Speaking on the Six O'Clock News the same night, Sarah Smith, the BBC's North America editor, said Mr. Trump had been "ratcheting up the violent rhetoric."
>
> She added: "In the latest spat, Donald Trump has been accused of being petty, vindictive and a wannabe tyrant because he suggested that one of his political opponents should face guns, have them trained on her face."[40]

73.     All these statements by BBC presenters were false.

74.     "In fact, Mr. Trump had accused Ms. Cheney of being a 'radical war hawk' who wanted to send troops to war while she remained in the safety of Washington DC, saying: 'Let's put her with a rifle standing there with nine barrels shooting at her face. OK? Let's see how she feels about it.'"[41]

75.     This false, defamatory, and malicious coverage of President Trump, broadcast in the same time period as the release of the *Panorama* Documentary, was consistent with the BBC's *modus operandi*, defaming President Trump by fabricating calls for violence allegedly issued by him, that he never actually made.

---

[39]     *Id*.

[40]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

[41]     *Id*.

21

*iv.    The Panorama Documentary Was Intentionally One-Sided and Inflammatory, demonstrating that the Doctoring of President Trump's Speech Was Intentional and <u>Part of the BBC's Defamatory Pattern</u>*

76.    The lack of any effort by the BBC to publish content even remotely resembling objective journalism, or to maintain even a slight semblance of objectivity in the *Panorama* Documentary, demonstrates that the BBC had no regard for the truth about President Trump, and that the doctoring of his Speech was not inadvertent, but instead was an intentional component of the BBC's effort to craft as one-sided an impression and narrative against President Trump as possible.

77.    Indeed, by any measure, including the overwhelming ratio of anti-Trump versus pro-Trump commentators in the *Panorama* Documentary, the exceptionally high percentage of time granted to these negative voices in the Documentary versus the positive voices, and the inflammatory content of the negative remarks, all coupled with the BBC's historical unfairness to the President, it is apparent that the BBC fabricated the Documentary to damage President Trump. Doctoring his Speech was consistent with, and part of, the BBC's *modus operandi* of negatively covering President Trump without any pretense of objectivity.

78.    The BBC's aggressively anti-Trump stance is reflected straightaway in the opening scene of the *Panorama* Documentary's introduction, which runs for almost three minutes and begins with noted anti-Trump commentator Rick Wilson—who has written two books criticizing President Trump, *Everything Trump Touches Dies* (2018) and *Running Against the Devil: A Plot to Save America From Trump-and Democrats from Themselves* (2020), and has called the President "the devil" and a "cult leader"—declaring, to the backdrop of ominous cinematic music reaching a dramatic crescendo: "I'm the leading anthropologist of Donald Trump in the, in the

22

world, probably, I've thought about him and studied him more than probably anybody else, and I hate him. I hate what he is, and what he does."

79. Seconds later, Wilson states of President Trump: "When you let the monster escape, it will come back, it is a rule of every damn horror movie in history."

80. Former Clinton Secretary of Labor and current Berkeley Professor Robert Reich, another vocal critic of President Trump, then offers: "Once you've unleashed this anger, this hate, into the blood of America, well, it's very very difficult to stop it."

81. A greater majority of the verbal commentary in the *Panorama* Documentary features negative assertions about President Trump by twelve individuals known to be hostile to the President, all of whom are presented as having some form of relevant expertise and authority about the subject matter presented. Moreover, an overwhelming majority of the overall Documentary, including the non-interview segments depicting political and historical events from recent years, presents President Trump in a negative light.

82. Further demonstrating the BBC's malice and intent to interfere with the 2024 Presidential Election, the *Panorama* Documentary, after lingering at length on the events of January 6, 2021, cuts to a clip from the Democratic National Convention on August 22, 2024, showing Kamala Harris taking the stage with a news anchor breathlessly exclaiming in the background: "And here she is, Kamala Harris. It's hard to describe just how electric the mood is here right now."

83. Toward the end of the *Panorama* Documentary, Reich shockingly compares President Trump to "Adolf Hitler," which rises to defamation itself, while Democrat Congressman Jared Huffman refers to the President as a "cult leader," also a defamatory statement.

23

84. Others then join Reich in delivering hyperbolic warnings about President Trump and the supposedly catastrophic consequences that would ensue if President Trump were to emerge victorious.

85. "The degree to which his pessimism and darkness has infected half this country terrifies me," adds Wilson. "There is no ideology in the Republican party except pain, they want vengeance," he continues.

86. Berkeley Political Science Professor Steven Fish asserts "There's a reason why Xi Jinping and Vladimir Putin and Kim Jong Un and all these despots all over the world are rooting so hard for Trump because what Trump does is he seems to discredit democracy in the land of its stronghold, in the strongest democracy in the world, Trump seems to be proof that democracy doesn't work."

87. Boston College History Professor Heather Cox Richardson offers, "this is the time when we either choose authoritarianism or democracy, and if we choose authoritarianism, there will be no turning back, so I think we better get this one right."

88. Reich delivers a closing remark to punctuate the BBC's parade of bias: "Wish us luck, by us, I mean the United States."

*v.* *Prominent Voices Condemn the BBC and Confirm the BBC's Longstanding Pattern of Actual Malice Against President Trump*

89. The BBC is so institutionally biased against President Trump and so devoid of self-awareness that, in response to the above letter from President Trump's counsel (**Exhibit A**), it

24

published a baseless and meritless article questioning the merits of any lawsuit that the President might bring against the BBC.[42]

90.     No less an authority than the United Kingdom's former Prime Minister, Liz Truss, discussed this bias, the need to hold the BBC accountable, and the BBC's pattern of actual malice.[43]

91.     Remarked Truss: "[The BBC] is a huge problem. They've lied, they've cheated, they've fiddled with footage, especially in the case of President Trump, but also covering up what's happening in Britain whether it's mass migration, whether it's our economic problems, they are always biased towards the left . . . ." She was also asked whether the BBC's tepid apology was sufficient, and responded: "No I don't, because they keep doing it again and again. They have painted a completely false picture of President Trump in Britain over a number of years, they've done the same thing about conservatives in our country . . . ." Lamenting the BBC's lost status as a "paragon" of journalism, she remarked that the BBC's "fake news" has caused immense harm to the public for a long time.[44]

92.     Caroline Dinenage, head of the House of Commons' Culture, Media, and Sport Committee said that Members of Parliament need assurances that the BBC was "taking decisive steps to uphold the corporation's reputation for integrity and public trust." She further remarked:

---

[42]     Kayla Epstein and Madeline Halpert, *Trump vs. the BBC: What hurdles might the President's legal argument face?*, BBC (Nov. 11, 2025), https://www.bbc.com/news/articles/c709y1yx1r0o (last visited Dec. 15, 2025).

[43]     *Former UK prime minister calls out BBC, encourages Trump to continue lawsuit*, FOX NEWS (Nov. 15, 2025), https://www.foxnews.com/video/6385140049112 (last visited Dec. 15, 2025).

[44]     *Id*.

"The Corporation must set the benchmark for accurate and fair reporting, especially in a media landscape where it is all too easy to find news presented in a less than impartial way."[45]

93.     Conservative Party leader and Member of Parliament Kemi Badenoch said that the distortion of the Speech by the *Panorama* Documentary was "absolutely shocking," adding: "That is fake news, actually putting different things together to make something look different from what it actually was." She continued: "And I do think heads should roll. Whoever it was who did that should be sacked, that's what Tim Davie should be doing, identifying who put out misinformation, and sacking them." Badenoch added: "The public need to be able to trust our public broadcaster . . . They should not be telling us things that are not true. This is a corporation that needs to hold itself to the highest standards, and that means that when we see people doing the wrong thing, they should be punished, they should be sacked."[46]

94.     Lisa Nandy, Secretary of State for Culture, Media and Sport of the United Kingdom, has similarly expressed concern, stating: "there is a real concern, which I share, that political appointments to the board of the BBC damaged confidence and trust in the BBC's impartiality."[47]

95.     FCC Chairman, Brendan Carr, in a letter addressed to Davie, Paula Kerger, (President and CEO of PBS), and Katherine Maher (CEO of NPR), strongly stated:

> As you know, the BBC was recently caught intentionally distorting a speech that President Trump gave in January of 2021. It did so by splicing together one portion of the speech with an entirely separate portion of the speech that came 54 minutes later. In doing so, the BBC program depicts President Trump voicing a sentence

---

[45]     *BBC has questions to answer over edited Trump speech, MPs say*, BBC (Nov. 4, 2025), https://www.bbc.com/news/articles/ckgzkyk7knzo.amp (last visited Dec. 15, 2025).

[46]     *Id*.

[47]     *'Real Concern' About Political Appointees on BBC Board, Nandy Says*, BBC (Nov. 14, 2025), https://www.bbc.com/news/articles/cdeg0ngnj0yo (last visited Dec. 15, 2025).

that, in fact, he never uttered. That would appear to meet the very definition of publishing a materially false and damaging statement.[48]

96.     Carr continued, highlighting the findings of the Memorandum:

Indeed, there has now been widespread condemnation of the BBC's decision. A former independent external advisor to the BBC's Editorial Guidelines and Standards Committee, Michael Prescott, told the BBC that its decision "created the impression that Trump said something he did not and, in doing so, materially misled viewers." Likewise the Prescott Report states that the BBC program was "neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance.' In sum, it was a 'distortion of the day's events," the Prescott Report continued.[49]

### *Damages*

97.     Since its publication, the *Panorama* Documentary has gained substantial traction and republication across various media in the United States and elsewhere globally.

98.     Defendants used their false and defamatory publications to maliciously disparage and damage President Trump and impugn his reputation.

99.     Specific, extensive economic harms resulted from these defamatory statements. Defendants timed the publication of the *Panorama* Documentary to be close in time to the 2024 Presidential Election, releasing it only one week before the Election.

100.    The value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal

---

[48]     *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at BCC* (Nov. 19, 2025), https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025), https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/ (last visited Dec. 11, 2025).

[49]     *Id.*

reputation inflicted by these Defendants, and their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist, continue into the present, thereby causing massive economic damage to his brand value and significant damage and injury to his future financial prospects, in addition to continuing to harm his reputation as President of the United States of America.

101. President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

102. Exacerbating the damages, Defendants, at and prior to the time of their doctoring of the Speech, knowingly made their false, deceptive, malicious, and defamatory depiction of President Trump in bad faith, motivated by malice and ill-will against President Trump without any regard for the truth, and contrary to information Defendants possessed that showed their depiction to be false

103. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

## CLAIMS FOR RELIEF

### COUNT I – DEFAMATION *PER SE*

104. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

105. The following false, deceptive, malicious, and defamatory statements and depictions of and about President Trump, were, intentionally, with actual malice, and without privilege, published in the *Panorama* Documentary to millions of people in the State of Florida

28

and in this District, and elsewhere, by all Defendants, and were defamatory and false, and injured President Trump in his profession, occupation, and trade, thus constituting defamation *per se*:

(a) The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary made it seem that he stated: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

(b) This fabricated depiction of President Trump during the Speech was false and defamatory given that President Trump's actual and full remarks during the Speech were (i) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (ii) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021, 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

(c) Moreover, to further the BBC's intended, false, malicious, and defamatory message and impression that President Trump fomented violence, the BBC intentionally omitted President Trump stating, only one minute after urging supporters to cheer

29

on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

106.    Defendants possessed information and had access to information which showed that their statements about, and representation and depiction of President Trump were false.

107.    Defendants had no factual basis for this false depiction of President Trump.

108.    Defendants' deceptive and defamatory distortion, doctoring, manipulation, and splicing damaged President Trump in his occupation, damaged his professional reputation, and portrayed him as engaging in supposed calls for rioting and violence that he never actually made.

109.    The *Panorama* Documentary was not a continuation of a prior broadcast. Instead, it was the result of a separate and distinct decision by Defendants to maliciously disseminate false statements about President Trump in a new medium.

110.    As pled *supra*, Defendants knew that their portrayal of the Speech in the *Panorama* Documentary was false, malicious, and defamatory.

111.    Defendants' actual malice in publishing the *Panorama* Documentary is evidenced by their intentional splicing and distorting two entirely separate sentences made by President Trump during the Speech nearly 55 minutes apart, while omitting his statement calling for peace made less than one minute after his first statement urging supports to cheer on their senators and congressmen at the Capitol.

112.    As a proximate result of the maliciously false and defamatory *per se* publication of a statement and depiction to third parties by Defendants, President Trump has been damaged.

30

113.  Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards President Trump, he seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, and such other relief as this Court may deem just and proper.

<u>**COUNT II – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**</u>

114.  Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

115.  In addition, this action is brought for violation of the Florida Deceptive and Unfair Trade Practices Act as codified in Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

116.  Defendants are engaged in the conduct of trade and commerce in the State of Florida.

117.  Defendants have violated the FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia,* intentionally and maliciously seeking to completely mislead their viewers by splicing together two separate parts of President Trump's Speech, while omitting other critical parts of the Speech in such a manner as to intentionally, falsely, maliciously, and defamatorily change the meaning of what President Trump said.

118.  As a direct, proximate, and foreseeable result of Defendants' violation of FDUTPA, President Trump has suffered and continues to suffer substantial damages.

31

119.    Pursuant to Fla. Stat. §501.2105, President Trump is entitled to recover his attorneys' fees and costs from Defendants.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, President Trump, hereby demands a jury trial as to all issues so triable.

Dated:  December 15, 2025                                       Respectfully submitted,

*/s/Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel:  305-614-4071
Fax:  305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

*/s/Edward Andrew Paltzik*
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice application forthcoming*)

/s/Daniel Zachary Epstein
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*

33



**Alejandro Brito**

Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

November 9, 2025

**Via Email**

Mr. Samir Shah
Chairman
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**samir.shah@bbc.co.uk**

Ms. Sarah Jones
General Counsel
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**sarah.jones@bbc.co.uk**

> **Re:** **Demand to Retract False And Defamatory Statements About The President of the United States of America**

Dear All:

This law firm serves as litigation counsel for President Donald J. Trump (hereinafter referred to as "President Trump"). Please direct all future correspondence relating to this matter to my attention. This correspondence serves as a demand under Florida Statute § 770.01[1] that you immediately retract the false, defamatory, disparaging, and inflammatory statements made about President Trump, which were published in a *Panorama* documentary that was fabricated and aired by the BBC. Failure to comply will leave President Trump with no choice but to pursue any and all legal rights and remedies available to recover damages for the overwhelming financial and reputational harm that the BBC has caused him to suffer, with all rights and remedies being expressly reserved by President Trump.

In the *Panorama* documentary, titled "Trump: A Second Chance,"[2] which was first broadcast on October 28, 2024—a week before the 2024 United States presidential election—the BBC intentionally sought to completely mislead its viewers by splicing together three separate

---

[1] President Trump does not agree or admit that only Florida law applies to any claims he might have in connection with or arising out of the Article and expressly reserves all rights concerning applicable law.

[2] *See* https://www.bbc.co.uk/programmes/m0024h6r. According to the BBC's website, the defamatory documentary was broadcast three times on October 28, 2024, and a fourth time on November 2, 2024.

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

parts of President Trump's speech to supporters on January 6, 2021. The documentary showed President Trump telling supporters: "We're gonna walk down to the Capitol and I'll be there with you and we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore."  This fabricated depiction of President Trump was false and defamatory given that President Trump's actual and full remarks were: "We're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down any one of you but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women." Moreover, the BBC edited out President Trump saying, "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Thus, as set forth in an internal whistleblower memorandum, the BBC's segment maliciously made it appear that President Trump "[said] things [he] never actually said," by editing together footage from the start of the speech with a separate quote early an hour later.

Due to their salacious nature, the fabricated statements that were aired by the BBC have been widely disseminated throughout various digital mediums, which have reached tens of millions of people worldwide. Consequently, the BBC has caused President Trump to suffer overwhelming financial and reputational harm.

## A. **Applicable law**.

Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Statements are defamatory if "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *See Zambrano v. Devanesan*, 484 So. 2d 603, 607 (Fla. 4th DCA 1986).

Even if the BBC attempts to whitewash its conduct as simply an expression of its opinions, Florida law makes clear that such a defense will not absolve its liability. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. ***Simply couching such statements in terms of opinion does not dispel these implications***.") (emphasis added); *see also Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983) ("***[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable***.") (emphasis added).

2

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

Consequently, the BBC lacks any viable defense to the overwhelming reputational and financial harm it has caused President Trump to suffer.

## B. Demand.

The above-referenced false, defamatory, malicious, disparaging, and inflammatory statements were published to deliberately denigrate President Trump. The timing of the fabricated documentary is evident. The BBC's reckless disregard for the truth underscores the actual malice behind the decision to publish the wrongful content, given the plain falsity of the statements. Accordingly, President Trump hereby demands that you: (1) immediately issue a full and fair retraction of the documentary and any and all other false, defamatory, disparaging, misleading, and inflammatory statements about President Trump in as conspicuous a manner as they were originally published; (2) immediately issue an apology for the false, defamatory, disparaging, misleading, and inflammatory statements about President Trump; and (3) appropriately compensate President Trump for the harm caused.

Moreover, please allow this letter to serve as notice to you, to your affiliated entities, subsidiaries, to all of their employees, and any other person acting on behalf of or in concert with the BBC, to preserve any and all evidence related in any way to the above-mentioned malicious, false, and defamatory statements the BBC published, and any other statements that the BBC has published regarding President Trump. By way of this letter, the BBC is hereby directed not to destroy, conceal, or alter any paper or electronic files, physical evidence, and/or other data relating in any way, no matter how remote, to your false claims regarding President Trump, and/or the circumstances leading to their dissemination, including, but not limited to: (1) all communications between you and any third party in any way related to your wrongful claims regarding President Trump; (2) all sources for your false claims regarding President Trump; (3) any and all documents and data referring to, reflecting, or relating to communications between you and any such third-parties or sources regarding your false claims regarding President Trump; and (4) any and all documents in any way related to your false claims regarding President Trump. This includes any information alleged to be protected by Florida Statute § 90.5015. *Monarch Air Group, LLC v. Journalism Dev. Network, Inc.,* No. 23-CV-61256, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (interpreting Fla. Stat. § 90.5015 and explaining that the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings.") (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)).

I understand that many records and files are maintained electronically. However, this letter specifically requests that all paper and hard copy originals be maintained and preserved in their original format. By the same token, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists and has been preserved, please preserve and maintain all electronically stored documents in their original native format, including all metadata. This preservation demand specifically encompasses any and all electronic documents,

3



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

including but not limited to, all word-processed files, emails, spreadsheets, all databases, log files, and any other electronically stored and/or generated documents or files.

If the BBC does not comply with the above by **November 14, 2025, at 5:00 p.m. EST**, President Trump will be left with no alternative but to enforce his legal and equitable rights, all of which are expressly reserved and are not waived, including by filing legal action for no less than $1,000,000,000 (One Billion Dollars) in damages. The BBC is on notice.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

4

# Ballard Spahr
### LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

November 13, 2025

*Via Email (abrito@britopllc.com) & Federal Express*

Alejandro Brito
Brito PLLC
2121 Ponce de Leon
Suite 650
Coral Gables, FL 33134

Re: November 9, 2025 Letter regarding BBC *Panorama* Documentary

Dear Mr. Brito:

Our office represents the British Broadcasting Corporation ("BBC"). We write regarding your letter to the BBC dated November 9, 2025, which you sent on behalf of President Donald J. Trump. You wrote with respect to the broadcast of the BBC's *Panorama* documentary titled "Trump: A Second Chance" ("the Program") on October 28 and November 2, 2024, depicting his supporters during President Trump's campaign for a second term in office. Please direct all further communication about your letter to my attention.

Your letter, citing Florida law, alleges that in a short clip of excerpts of his speech on January 6, 2021, the BBC "intentionally sought to completely mislead its viewers." President Trump alleges that the Program constituted defamation. The President threatens to bring a $1 billion defamation suit against the BBC.

Our client had no intention of misleading anyone. Indeed, the BBC has publicly expressed its contrition in statements to the Chair of Parliament's Culture, Media, and Sport Committee, on its website, and in the media. We also enclose with this letter a copy of the BBC's personal apology to President Trump, sent by email today to White House Chief of Staff Susie Wiles.

Additionally, the BBC has posted or shortly will post the following retraction:[1]

---

[1] https://www.bbc.co.uk/programmes/m0024h6r and
https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/

Alejandro Brito
November 13, 2025
Page 2

> *This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.*
>
> *During that sequence, we showed excerpts taken from different parts of the speech.*
>
> *However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and that this gave the mistaken impression that President Trump had made a direct call for violent action.*
>
> *The BBC would like to apologise to President Trump for that error of judgement.*
>
> *This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.*

While the BBC sincerely regrets the manner in which the video clip was edited, for the following reasons, we strongly disagree that President Trump would have a basis for a viable defamation claim.

**First**, President Trump has made no allegation that the Program was published in Florida, as he must in order to establish personal jurisdiction over the BBC and to meet the publication requirement for a defamation claim. The BBC did not have contractual rights to, and therefore did not, distribute the Program on U.S. channels. Moreover, the version on its website linked to in your letter was geographically restricted to U.K. viewers. In any event, it ceased to be available even in the U.K. from 12 months after the Program aired. The President therefore has not established that he would have any jurisdictional basis to bring a claim against the BBC in Florida or elsewhere in the United States.[2]

**Second**, President Trump will not be able to prove that the Program caused him any injury, let alone the unspecified "overwhelming reputational and financial harm" he alleges.[3] He won reelection on November 5, 2024, after the Program aired. He carried Florida by a

---

[2] *See, e.g.*, *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (to be actionable as defamation, "the material . . . must not only be *accessible* in Florida, but also be *accessed* in Florida") (emphasis in original).

[3] *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. Cir. Ct. 2014) (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1997)) (given "negative publicity" from "a litany of news media entities" other than defendant NBC, "the challenged excerpts from and characterization of Zimmerman's statements . . . could not have been the required 'but for' cause of Zimmerman's alleged injuries").

2

Alejandro Brito
November 13, 2025
Page 3

commanding 13-point margin, improving over his 2020 and 2016 performances in the state.[4]

Moreover, when the Program aired, the President had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee Report found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[5] Given the extensive allegations prior to the release of the Program regarding his January 6 speech, in criminal and civil cases and among the press and public, the Program could not have caused any incremental harm.

**Third**, President Trump has no basis to allege that the BBC published the Program with actual malice – that is, knowing the Program was false or while entertaining serious doubts as to its truth – as he must.[6] Rather, as the BBC Chair has explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."[7]

Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements. In the course of their prosecutions, numbers of people arrested at the Capitol on January 6 told the courts that they interpreted President Trump's remarks as a call to

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g.*, *Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

[6] *See, e.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020). Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971).

[7] Letter from BBC Chair Samir Shah to Dame Caroline Dinenage MP (Nov. 10, 2025), https://committees.parliament.uk/publications/50118/documents/270340/default.

Alejandro Brito
November 13, 2025
Page 4

action.[8]

Further, the BBC has taken prompt corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," issuing a retraction, and confirming that the Program was not scheduled to be re-broadcast and will not be rebroadcast in that form on any BBC platforms. This further negates any suggestion of actual malice.[9]

**Fourth**, the brief clip, which shows about 15 seconds of President Trump's speech on January 6, is part of an hour-long program containing extensive coverage of his supporters praising President Trump, and presenting balanced coverage of his path to reelection. Courts consider challenged statements in the context of the full publication in which they were made. Accordingly, President Trump cannot create an actionable statement or implication by citing a singular clip but ignoring the remaining, overall context of the Program.[10]

**Fifth**, the Program contains protected expressions of opinion, including many from President Trump's ardent supporters. It depicts hotly contested events related to Presidential elections, including the events of January 6, 2021, which have been the subject of extensive controversy and litigation. In this context, even if the Program is reasonably interpreted to report that President Trump encouraged the crowd to march to the Capitol on January 6, that is an

---

[8] *See, e.g.*, Ryan J. Reilly, *Jan. 6 Rioter Who Said He Wanted Trump's 'Approval' Found Guilty by Jury*, CNBC (Apr. 14, 2022), https://www.cnbc.com/2022/04/14/jan-6-rioter-who-said-he-wanted-trumps-approval-found-guilty-by-jury.html ("A Donald Trump supporter who told jurors that he was 'following presidential orders' when he stormed the U.S. Capitol on Jan. 6 was found guilty on Thursday after he admitted that he stole a coat rack and a bottle of liquor from the building."); Shawna Chen, *Judge: Jan. 6 Rioter Who Broke into Capitol Followed "Trump's Instructions,"* Axios (Jan. 17, 2023), https://www.axios.com/2023/01/18/jan6-capitol-riot-trump-instructions ("A federal judge said Tuesday that a California woman who breached the U.S. Capitol during the Jan. 6 insurrection 'followed then-President Trump's instructions' in breaking the law."); Kyle Cheney, *Jan. 6 Defendant Wants Jurors to Blame Trump, Not Him, for Decision to Breach Capitol*, Politico (Apr. 13, 2022), https://www.politico.com/news/2022/04/13/january-6-defendant-donald-trump-00025019 ("Though dozens of defendants have argued in court filings that they believed Trump had authorized the assault on the Capitol, judges have largely rejected that contention and said rioters should be held to account for their own actions. But whether a jury sees that argument differently will be an important test that could reverberate across hundreds of other cases.").

[9] *See, e.g.*, *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

[10] *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020); *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

Alejandro Brito
November 13, 2025
Page 5

opinion on a matter of public concern, heavily protected under defamation law in the United States.[11]

     For these reasons, the BBC declines President Trump's claim that the Program constituted defamation and his request for compensation.

     We sincerely hope that the BBC's public statements of contrition, and the direct apology that we have given to the President, will suffice to put this matter to rest.

     The BBC reserves all further rights and remedies, including those available under Fla. Stats. § 57.105 and § 768.295(2)(a).

<div style="text-align:right">

Sincerely,

BALLARD SPAHR LLP

By _Charles D. Tobin_

Charles D. Tobin

</div>

Enclosure

---

[11] *See, e.g., Trump v. CNN*, 684 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (dismissing defamation case because network's description of President Trump's election challenges as the "Big Lie" was non-actionable opinion, not a statement of fact).



British Broadcasting Corporation                                    From the Chairman

Broadcasting House, London  W1A 1AA

The President
The White House
1600 Pennsylvania Avenue NW
Washington
D.C. 20500
United States of America

13 November 2025

Dear Mr President,

As the Chair of the BBC I wanted to write to you personally. At the same time the BBC's lawyers have today responded to your legal team. The BBC's overall legal position is as set out in that letter. I should make clear at the outset that what follows is my view as the Chair of the BBC. The organisation is, by Royal Charter, independent of His Majesty's Government and nothing I write should imply approval or disapproval by the United Kingdom Government.

Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement. As it was your speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

- 2 -

The documentary followed a number of your supporters and campaigners, who told the BBC why they wanted you to be re-elected in the 2024 US Presidential Election. The BBC's intention was to reflect their contributions to the documentary fairly and accurately, including their support for you and your Presidency.

Whilst the documentary was not scheduled to be rebroadcast, the BBC has also made public today that it will not be broadcast again on any BBC platforms in a form that includes the misleading sequence.

That the BBC produces content of the highest editorial quality is of paramount importance to me. As Chair, I take responsibility for personally ensuring that the BBC retains the trust and confidence of our audiences.

I would be happy to discuss this matter, should this be of interest to you.

Your sincerely,

Samir Shah

BBC Chair

# Ballard Spahr
LLP

———————————————

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 7, 2026

*Via Certified Mail*

Federal Bureau of Investigation
Attn: Initial Processing Operations Unit
Record/Information Dissemination Section
200 Constitution Drive
Winchester, VA 22602

Re:   *Touhy* Request for the Production of Documents in *Trump v. BBC*, Case No. 1:25-cv-
25894-RKA (S.D. Fla.)

Dear Sir or Madam:

This law firm represents defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited in the above-referenced civil action pending in the United States District Court for the Southern District of Florida (the "Action").  We submit this request for information, identified below, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and 28 C.F.R. § 16.21, *et seq.*

## BACKGROUND

On December 15, 2025, Plaintiff President Donald J. Trump filed a two-count lawsuit alleging defamation and violations of the Florida Deceptive and Unfair Trade Practices Act against Defendants, arising from the documentary titled "*Trump: A Second Chance?*" ("the Documentary").  For your reference, we have attached a copy of the complaint to this letter as Exhibit 1.  The Documentary explored for the BBC's U.K. audience the President's continued success with his loyal American voters, following some of his most ardent supporters, known as the "Front Row Joes," and speaking with experts in the run up to the November 2024 U.S. presidential election. Plaintiff alleges that the Documentary defamed him in its depiction of his speech on January 6, 2021 ("the Speech"), which he alleges falsely depicted him as inciting violence at the Capitol that day.

The Action puts directly into issue the factual circumstances of the violence at the Capitol building on January 6, 2021, including whether there were plans of violence ahead of time, the communications about any planned violence, and whether individuals understood the Stop the Steal Rally or Trump's communications about January 6, 2021 as a

Federal Bureau of Investigation
May 7, 2026
Page 2

call to violence.  Accordingly, the requested documents and information identified below are paramount to the case that Plaintiff has brought against Defendants.

At the moment, Plaintiff has not provided any such relevant documents or information himself in response to Defendants' written discovery requests propounded on him.  Furthermore, the information possessed by the FBI about the intelligence it gathered regarding the events of January 6, 2021 are in the agency's possession, and accordingly would only be obtainable through this Request.

Given that Plaintiff's allegations have placed these documents in the FBI's possession at the heart of the Action, and that Defendants need these documents to adequately defend themselves in court, the need for these documents outweigh any confidentiality of the information and any burden on the FBI to produce these records.  As detailed below, the requested records are confined by date and subject matter to limit the intensiveness of any search for responsive documents.  Additionally, there is a protective order in place that will limit the exposure of any confidential items beyond the parties involved.

No previous decisions, orders, or pending motions in the Action bear upon the relevance of the requested records or testimony at this point.  Production of the requested documents would also comport with the Department of Justice's general policy of "favor[ing] cooperation in state and federal cases in which . . . information obtained by the Department is sought."  Justice Manual 1-6.240.

<div align="center">

**DEFENDANTS' TOUHY REQUEST SHOULD BE GRANTED**

</div>

Under 28 C.F.R. § 16.26, the FBI considers several factors in evaluating a *Touhy* request.  The following factors favor providing the requested documents to Defendants:

- **Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose.**  Compliance with this request is appropriate under the Federal Rules of Civil Procedure and the local rules of the Southern District of Florida.  Both permit parties to litigation to seek documents through subpoenas to non-parties where the requested information is relevant to the litigation, the requesting party shows need for the documents, and the breadth and time period of the request is not unreasonable.  *See Great. Am. Ins. Co. v. Veteran's Support Org.*, 166 F. Supp. 3d 1303, 1310 (S.D. Fla. 2015).  Here, Defendants' requests would not be unduly burdensome because the information sought is limited to a specific subject matter, falls within a narrow date range, is limited to certain FBI offices, and is relevant to the proceedings and necessary to Defendants'

Federal Bureau of Investigation
May 7, 2026
Page 3

ability to evaluate the merits of Plaintiff's claims for the reasons discussed below.

• **Whether disclosure is appropriate under the relevant substantive law concerning privilege or disclosure of information.**  Defendants do not believe that their requests would involve any privileged materials, such as trade secrets, commercial or financial information, attorney-client communications, attorney work product, documents that would fall under executive privilege, or documents that would impede any ongoing law enforcement investigations.

### LIST OF REQUESTED DOCUMENTS

In the interest of transparency and aiding the FBI's evaluation of this request, and in compliance with 28 C.F.R. § 16.22(d), below is a summary of documents Defendants seek, along with a description of how the information sought is relevant to the issues in the Action.

• **Intelligence information, including social media, collected and received by the FBI Washington Field Office from December 1, 2020 to January 6, 2021 regarding potential violence or use of weapons in the D.C. area, or about the storming of or violence at the Capitol building on January 6, 2021:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

• **Online tips received by the FBI Washington Field Office from December 1, 2020 to January 6, 2021 regarding potential violence or use of weapons in the D.C. area, or about the storming of or violence at the Capitol building on January 6, 2021:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether

Federal Bureau of Investigation
May 7, 2026
Page 4

        they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **The FBI New Orleans Field Office Intelligence Information Report from January 5, 2021, titled "Communication and Establishment of a Quick Reaction Force by USPERs Related to an Identified Protest in Washington, District of Columbia, on 6 January 2021" and supporting intelligence and information obtained that created the basis for the report:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **The FBI Norfolk Field Office Situational Information Report from January 5, 2021, titled "Potential for Violence in Washington, D.C. Area in Connection with Planned 'StopTheSteal' Protest on 6 January 2021" and supporting intelligence and information obtained that created the basis for the report:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Intelligence, information, and tips received or collected by the National Threat Operations Center from December 1, 2020 to January 6, 2021 about individuals seeking information about the Capitol tunnel system, planning to use the Capitol tunnels to confront members of Congress, planning violent disruptive activity in the D.C. area, arming themselves, or holding members of Congress ransom related to the certification of the 2020 presidential election:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.

Federal Bureau of Investigation
May 7, 2026
Page 5

> Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Intelligence, information, and tips received, collected, or exchanged with law enforcement officers about potential criminal and national security threats in the D.C. area on January 6, 2021:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Assessments from Critical Incident Response Group from January 4, 2021, regarding possible threats of violence in the D.C. area on January 6, 2021:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Documents and communications regarding the Critical Incident Response Group's January 5, 2021 meeting regarding threats of violence on January 6, 2021 in the D.C. area, and potential militia subjects in the D.C. area:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their

Federal Bureau of Investigation
May 7, 2026
Page 6

actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Communications of the National Capital Region Joint Terrorism Task Force regarding the FBI Norfolk Field Office's January 5, 2021 Situational Information Report, titled "Potential for Violence in Washington, D.C. Area in Connection with Planned 'StopTheSteal' Protest on 6 January 2021" and the FBI New Orleans Field Office's Intelligence Information Report, titled "Communication and Establishment of a Quick Reaction Force by USPERs Related to an Identified Protest in Washington, District of Columbia, on 6 January 2021":** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

Defendants seek this information in good faith and reasonably believe that the documents identified above are not available through other discovery or sources available in this Action.

Please contact us if you have any questions about this letter or the proposed subpoena. We respectfully ask that you act on this *Touhy* request as promptly as possible. Thank you in advance for your attention to this matter.

Sincerely,

BALLARD SPAHR LLP

Charles D. Tobin

Cc: Counsel for Plaintiff

Encl.: Subpoena, Exhibit 1 (Complaint)

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
| *Plaintiff* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
| *Defendant* | ) |  |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
|  |  |

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____            _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**ATTACHMENT A TO SUBPOENA TO THE FEDERAL BUREAU OF
INVESTIGATION TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with

the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District

Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the

plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within

the scope of this Subpoena information that might otherwise be considered to be beyond its

scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring

within the scope of this Subpoena information that might otherwise be considered to be beyond

its scope.

4.      "Communications" means any manner of receiving or transmitting information,

opinions or thoughts, whether orally, in writing, electronically, or otherwise.  The term

"Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

5.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

6.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

2

7.    "Including" shall be construed as "including but not limited to."

8.    "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

9.    "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

10.    "Washington, D.C. area" means the Washington—Arlington—Alexandria Metropolitan Statistical Area.

11.    "You" and "Your" shall refer to the recipient of these requests, and shall include all components, offices, and agencies under the Federal Bureau of Investigation; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

## **GENERAL INSTRUCTIONS**

1.    In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.    If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

3

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections) for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

4

(f)  the Request(s) to which the Document is responsive; and

(g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests is for Documents created or originating on or after December 1, 2020 to January 6, 2021.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents collected and received by the FBI Washington Field Office Relating to potential violence or use of weapons in the Washington, D.C. area, or protesting at the U.S. Capitol building on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 2:**  All online Communications received by the FBI Washington Field Office Relating to potential violence or use of weapons in the Washington, D.C. area, or protesting at the U.S. Capitol building on January 6, 2021.

5

**REQUEST FOR PRODUCTION NO. 3:**  The FBI New Orleans Field Office Intelligence Information Report from January 5, 2021, titled "Communication and Establishment of a Quick Reaction Force by USPERs Related to an Identified Protest in Washington, District of Columbia, on 6 January 2021."

**REQUEST FOR PRODUCTION NO. 4:** All Documents referenced by the FBI New Orleans Field Office in its Intelligence Information Report from January 5, 2021, titled "Communication and Establishment of a Quick Reaction Force by USPERs Related to an Identified Protest in Washington, District of Columbia, on 6 January 2021."

**REQUEST FOR PRODUCTION NO. 5:** The FBI Norfolk Field Office Situational Information Report from January 5, 2021, titled "Potential for Violence in Washington, D.C. Area in Connection with Planned 'StopTheSteal' Protest on 6 January 2021."

**REQUEST FOR PRODUCTION NO. 6:**  All Documents referenced by the FBI Norfolk Field Office in its Situational Information Report from January 5, 2021, titled "Potential for Violence in Washington, D.C. Area in Connection with Planned 'StopTheSteal' Protest on 6 January 2021."

**REQUEST FOR PRODUCTION NO. 7:**  All Documents and Communications received or collected by the National Threat Operations Center about Persons seeking information about the U.S. Capitol tunnel system, planning to use the U.S. Capitol tunnels to confront U.S. members of Congress, plans of violent, disruptive activity in the D.C. area, arming themselves, or holding U.S. members of Congress ransom, all Relating to the certification of the 2020 presidential election.

6

**REQUEST FOR PRODUCTION NO. 8:** All Documents and Communications received, collected, or exchanged with other law enforcement agencies Relating to potential criminal and national security threats in the Washington, D.C. area on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 9:**  All Documents from the Critical Incident Response Group from January 4, 2021 providing assessments Related to possible threats of violence in the Washington, D.C. area on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 10:** All Documents and Communications Concerning the Critical Incident Response Group's January 5, 2021 meeting Related to possible threats of violence and potential militia subjects in the Washington, D.C. area on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 11:** All Communications received or sent by the National Capital Region Joint Terrorism Task Force Relating to the FBI Norfolk Field Office Situational Information Report from January 5, 2021, titled "Potential for Violence in Washington, D.C. Area in Connection with Planned 'StopTheSteal' Protest on 6 January 2021," or the FBI New Orleans Field Office Intelligence Information Report from January 5, 2021, titled "Communication and Establishment of a Quick Reaction Force by USPERs Related to an Identified Protest in Washington, District of Columbia, on 6 January 2021."

7

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BRITISH BROADCASTING CORPORATION a/k/a/ BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, PRESIDENT DONALD J. TRUMP ("President Trump"), by and through his counsel, brings this action against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC (the "BBC"), BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED (collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.      This action concerns a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump, which was published in a BBC *Panorama* documentary, that was fabricated and aired by the Defendants one week before the 2024 Presidential Election in a brazen attempt to interfere in and influence the Election's outcome to President Trump's detriment.

2. In the BBC *Panorama* documentary titled "Trump: A Second Chance" (the "*Panorama* Documentary," or the "Documentary"),[1] which was first broadcast on October 28, 2024, the BBC intentionally and maliciously sought to fully mislead its viewers around the world by splicing together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech").[2] The *Panorama* Documentary deliberately omitted another critical part of the Speech in such a manner as to intentionally misrepresent the meaning of what President Trump said.

3. The *Panorama* Documentary falsely depicted President Trump telling supporters: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary). President Trump never uttered this sequence of words.

4. This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and then, much later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight*

---

[1] First published by Defendants on October 28, 2024 with a runtime of 57:54. *See* "Trump: A Second Chance?", BBC (Oct. 28, 2024) (https://www.bbc.co.uk/programmes/m0024h6r) (last visited Dec. 15, 2025)

[2] The Speech was 70:53 in length.

*like hell, and if you don't fight like hell, you're not going to have a country anymore*," (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

5.      Moreover, the BBC purposefully omitted President Trump stating, less than one minute after urging supporters to cheer for their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

6.      As set forth in a damning and recently leaked BBC internal whistleblower document, the BBC intentionally used the *Panorama* Documentary to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting, and that he "said something he did not,"[3] by splicing together footage from the start of the Speech with a separate quote that he said nearly 55 minutes later, while omitting his statement calling for peace, made less than one minute after his first statement urging supports to cheer their senators and congressmen at the Capitol. Such distortion of the President's speech by the BBC "materially misled viewers."[4]

7.      Moreover, concerns about the *Panorama* Documentary were raised internally before its dissemination, but the BBC ignored those concerns and did not take corrective action.

8.      This instance of doctoring—in the form of distortion of meaning and splicing of entirely unrelated word sequences—is part of the BBC's longstanding pattern of manipulating

---

[3]      Gordon Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*, THE TELEGRAPH (Nov. 6, 2025), https://www.telegraph.co.uk/news/2025/11/06/read-devastating-internal-bbc-memo-in-full/ (last visited Dec. 15, 2025).

[4]      *Id.*

President Trump's speeches and presenting content in a misleading manner in order to defame him, including fabricating calls for violence that he never made. *See e.g.* ¶¶ 55-87, *infra*.

9.     The BBC, faced with overwhelming and justifiable outrage on both sides of the Atlantic, has publicly admitted its staggering breach of journalistic ethics, and apologized, but has made no showing of actual remorse for its wrongdoing nor meaningful institutional changes to prevent future journalistic abuses.

10.     Accordingly, President Trump brings this action for compensatory and punitive damages for the extensive reputational harm inflicted upon him by the Defendants.

## **PARTIES**

11.     Plaintiff, President Trump, is a citizen of the United States and a citizen of the State of Florida. He served as the 45th President of the United States and currently serves as the 47th President of the United States.

12.     Defendant, the BBC, is a British corporation established by royal charter and operating under an agreement with the United Kingdom's Secretary of State for Culture, Media, and Sport, with its principal place of business in London, England. The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films Ltd., and its international distribution partner, Blue Ant Media Corporation.

13.     Defendant, BBC Studios Distribution Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

14.     Defendant, BBC Studios Productions Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are completely diverse, as President Trump is a citizen of Florida, while all Defendants are citizens of the United Kingdom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     The Court possesses personal jurisdiction over Defendants pursuant to Florida Statute 48.193(2) because Defendants, during the operative period alleged in this Complaint, engaged in substantial and not isolated business activities in Florida, and more specifically in this District. Defendant BBC publishes online news reports, editorials, and other media content at https://www.bbc.com, which are regularly accessed by individuals in Florida.

17.     The BBC operates in the United States not as an abstract concept but in a constant manner; the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location.

18.     The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web

pages entitled "Florida – BBC News"[5] and "Florida – BBC Weather,"[6] among others. The BBC also offers web pages specific to cities in Florida.[7]

19. Additionally, the BBC offers subscriptions to individuals in Florida and as a result, has thousands of subscribers in Florida. Any individual in the United States, including Florida, can pay for a subscription to the BBC's content and services.[8]

20. Individuals in the United States, including Florida, also have another option for consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform.[9] *BritBox* is available in the United States, including in Florida, and has thousands of subscribers in Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount of the BBC's original content—including *Panorama*.

21. Accordingly, BBC has engaged, and continues to engage in, substantial and not isolated activity in Florida.

---

[5] *Florida – BBC News*, BBC, https://www.bbc.com/news/topics/c77jz3mdq1jt (last visited Dec. 15, 2025).

[6] *Florida – BBC Weather*, BBC, https://www.bbc.com/weather/3442585 (last visited Dec. 15, 2025).

[7] *See, e.g., Miami – BBC News*, BBC, https://www.bbc.com/news/topics/cp7dde75nmlt (last visited Dec. 15, 2025).

[8] *Get even more from a BBC subscription*, BBC, https://www.bbc.com/subscribe (last visited Dec. 15, 2025).

[9] *BritBox by BBC*, https://www.britbox.com/us/?gclsrc=aw.ds&&utm_source=google&utm_medium=paid-search&utm_campaign=17444044535-137684208899&utm_content=602709820305&utm_term=g&gad_source=1&gad_campaignid=17444044535&gbraid=0AAAAADMxMXrfBmo_s56m_ZA2aFpeyy6C_&gclid=CjwKCAiA0eTJBhBaEiwA-Pa-hbSItFwaYwfNGsO5WR1trkY2tlU0j8XCZ76_KY4_xRzkIl0Sr6pPBxoCTrkQAvD_BwE (last visited Dec. 15, 2025).

22.     In addition, this Court possesses personal jurisdiction over Defendants pursuant to: (a) Florida Statute §48.193(1)(a)(1), because Defendants operate, conduct, engage in, or carry on a business in Florida or have an office or agency in Florida, (b) Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act in Florida (as stated herein), and (c) Florida Statute §48.193(1)(a)(6) because Defendants caused injury to President Trump within Florida arising out of an act or omission committed by Defendants in Florida, while at or about the time of the injury, products and services provided by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

23.     The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie ("Davie") stated in his recent resignation letter: "Despite a hugely competitive market, I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*."[10]

24.     The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC.

25.     In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer.

---

[10]     *Davie and Turness resignations in full*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c1k02vr1my2o (last visited Dec. 15, 2025). (Emphasis added).

26. According to *vpnMentor*, a VPN research firm, VPN usage in Florida has skyrocketed since 2024, with a 51% increase in demand on December 19, 2024, and an over 1,000% increase in VPN usage at the beginning of 2025.[11]

27. Florida streamers have opted to use VPNs to increase their "streaming freedom." Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer.[12]

28. To that end, an article published by *Tom's Guide*, a reputable technology news outlet, revealed that a VPN usage survey showed that approximately 41% of VPN subscribers use the service to stream content, citing BBC iPlayer as an example of what a VPN subscriber could view using a VPN.[13]

29. The *Panorama* Documentary's publicity, coupled with significant increases in VPN usage in Florida since its debut, establishes the immense likelihood that citizens of Florida accessed the Documentary before the BBC had it removed.

---

[11] *Floridians Flock to VPNs As Age-Verification Law Takes Effect*, TAMPA FREE PRESS (Jan. 8, 2025) (https://www.tampafp.com/floridians-flock-to-vpns-as-age-verification-law/) (last visited Dec. 15, 2025).

[12] *Florida VPN Surge: Why VPN Usage Skyrocketed 1,000% in Florida* (2025), TRUSTED TECHSPOT (https://trustedtechspot.com/florida-vpn-surge/) (last visited Dec. 15, 2025).

[13] *More Than 40% of VPN Subscribers Use Them for Streaming – Here's Why*, TOM'S GUIDE (June 2, 2021) https://www.tomsguide.com/features/more-than-40-of-vpn-subscribers-use-them-for-streaming-heres-why) (last visited Dec. 15, 2025).

30. Articles like those published by Tom's Guide[14] and PureVPN[15]—giving a summary of the *Panorama* Documentary's plot, telling users how to view the Documentary, and going as far as to provide links to VPNs that allow a user to view BBC iPlayer—make it overwhelmingly certain that Floridians accessed the Documentary using a VPN during the time the Documentary was available.

31. Further supporting the fact that Floridians accessed the *Panorama* Documentary through a VPN, *The Guardian* reported that research showed that "65 million people from abroad watch the broadcaster's license-fee funded iPlayer service using proxy servers or virtual private networks."[16]

32. As underscored by the Chairman of the FCC, Brendan Carr, "[t]he BBC has stated that it has a number of partnerships with U.S. broadcasters, including PBS and NPR, to distribute BBC programming here in America."[17]

---

[14] *How to Watch 'Trump: A Second Chance?'*, TOM'S GUIDE (Oct. 28, 2024) (https://www.tomsguide.com/entertainment/streaming/how-to-watch-trump-a-second-chance-online-from-anywhere) (last visited Dec. 15, 2025).

[15] *How to Watch 'Trump: A Second Chance in the US'*, PUREVPN https://www.purevpn.com/how-to-watch-trump-a-second-chance-in-the-us (last visited Dec. 15, 2025).

[16] Paul Revoir, *BBC iPlayer 'Watched By More Than 60 Million People Outside the UK for Free'*, THE GUARDIAN (July 21, 2015) (https://www.theguardian.com/media/2015/jul/21/bbc-iplayer-uk-vpn-proxy-server) (last visited Dec. 15, 2025).

[17] *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at* BCC (Nov. 19, 2025) (https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed) (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025) (https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/) (last visited Dec. 15, 2025).

33. The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida.

34. Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary,[18] including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025.[19]

35. Blue Ant aggressively advertised its exclusive distribution of the *Panorama* Documentary outside of the United Kingdom, further evidencing the intent of the BBC and its strategic partners to disseminate the Documentary as widely and into as many streams of commerce and channels of distribution as possible, including Florida.[20]

---

[18] Karolina Kaminska, *Blue Ant Studios to shop BBC's 'President Trump: A Second Chance?' In Cannes*, C21 MEDIA (Oct. 10, 2024), https://www.c21media.net/news/blue-ant-studios-takes-october-films-president-trump-a-second-chance-to-cannes/ (last visited Dec. 15, 2025).

[19] Nicholas Sokic, *Blue Ant pulls BBC Trump doc from catalogue*, PLAYBACK (Nov. 12, 2025), https://playbackonline.ca/2025/11/12/blue-ant-pulls-controversial-bbc-trump-doc-from-catalogue/ (last visited Dec. 15, 2025) ("Blue Ant rights has confirmed that it has pulled the BBC *Panorama* documentary on U.S. President Donald Trump from its catalogue amid the controversy surrounding the film.").

[20] *'President Trump: A Second Chance?' Launches at MIPCOM 2024*, BLUE ANT MEDIA CORPORATION (Oct. 10, 2024), https://web.archive.org/web/20250712071622/https://blueantmedia.com/2024/10/president-trump-a-second-chance-launches-at-mipcom-2024/ (last visited Dec. 15, 2025) ("Blue Ant Studios today confirms that the explosive Donald Trump documentary, produced by October Films, has just wrapped production with the working title, President Trump: A Second Chance? Commissioned by BBC's Panorama, and produced by October Films, this hotly anticipated and

10

36.     Further, and as explained in greater detail below, the BBC elected to publish the *Panorama* Documentary just one week before the 2024 United States Presidential Election with the express intent of interfering with it and trying to undermine President Trump's odds of winning reelection.

37.     Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago, in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary.

38.     The BBC explicitly instructed and ordered its producers to travel to Florida and to utilize this forum for the purpose of creating the Documentary and defaming President Trump.

39.     The *Panorama* Documentary contains extensive evidence and examples of the BBC's producers gathering original footage specifically for use in the Documentary—not using stock footage—at Mar-a-Lago and nearby in the Palm Beach area on April 4, 2023, as well as on other dates. These examples include, but are not limited to: (a) Between 2023 and 2024, the BBC, or its contractors, filmed (i) a wide angle aerial view of Mar-a-Lago taken from a vantage point in the Lake Worth Lagoon (3:57 into the Documentary), (ii) a wide angle aerial view of Mar-a-Lago from a vantage point just north facing the Atlantic Ocean (4:47), (iii) a wide angle shot of the Mar-a-Lago pool and exterior and added a graphic "Trump Residence, Mar-a-Lago Florida" (5:00); and (b) on April 4, 2023, BBC producers and BBC-contracted crew members filmed (i) supporters of

---

distinctive 1x60 documentary will make its official international debut at MPICOM, where attending buyers will have an exclusive previews.").

11

President Trump lining the streets as President Trump's motorcade proceeded with President Trump through Palm Beach on the way to Mar-a-Lago (4:03), (ii) Rick Frazier, a supporter of President Trump, in the passenger seat of a vehicle as it followed the motorcade on the approach to Mar-a-Lago (4:09), (iii) The vehicle carrying Frazier as it entered Mar-a-Lago (4:51), (iv) Frazier as he walked in to Mar-a-Lago (5:03), (v) President Trump as he walked in to Mar-a-Lago to deliver a speech (5:11), (vi) Supporters cheering for the President as he prepared to speak inside Mar-a-Lago (5:24), (vii) President Trump as he delivered a speech to supporters inside Mar-a-Lago (5:27), and (viii) Frazier as he interacted with other supporters of President Trump (6:15 and 6:55).

40.     The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida.

41.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: President Trump is a citizen of Florida who was defamed by the BBC while in Florida, the BBC filmed the *Panorama* Documentary in significant part in Florida, and the BBC, in concert with its strategic partners including October Films Ltd. and Blue Ant Media Corporation, distributed the Documentary into Florida.

12

## FACTUAL ALLEGATIONS

### *The BBC's Defamatory and Deceptive Depiction of*
### *President Trump's Speech in the Panorama Documentary*

  i.     *The BBC Splices and Distorts President Trump's Speech*

42.     The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary wrongly made it appear that he said: "*We're going to walk down to the Capitol, and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

43.     This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory, given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

44.     Moreover, to further the BBC's intended, false, malicious, and defamatory message that President Trump fomented violence, which he did not, the BBC intentionally omitted President Trump saying, less than one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building*

13

*to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

    ii.    *The BBC's Director General and Head of News Resign in Disgrace, and the BBC, Under Fire, Reluctantly Admits Wrongdoing*

45.    On November 9, 2025, Davie and News CEO Deborah Turness resigned in disgrace over their leading roles in the *Panorama* Documentary.[21]

46.    Also on November 9, 2025, President Trump's counsel emailed a letter to Samir Shah (Chairman of the BBC) and Sarah Jones (General Counsel) entitled "Demand to Retract False and Defamatory Statements About The President of the United States of America" demanding retraction of the BBC's false depiction of President Trump, an apology for the false depiction of President Trump, and monetary compensation. *See* **Exhibit A**.

47.    By letter dated November 13, 2025, the BBC's counsel indicated that the BBC would apologize to President Trump but, somehow, ignoring the resignations of the BBC's leadership, admitting of wrongdoing, and apology, still attempted to deny intentional wrongdoing and declined to pay damages. *See* **Exhibit B**.

48.    Enclosed with the letter from counsel was a letter of apology from Chairman Shah, which stated, *inter alia*:

> Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. ***This gave the mistaken impression that you had made a direct call for violent action***. ***That was an editorial error and it should not have happened***. ***I have stated clearly and publicly that the BBC apologises for that error of judgement***. As it was your

---

[21]    Aleks Phillips and Helen Bushby, *BBC director general and News CEO resign over Trump documentary edit*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c3vn25d5dq7o (last visited Dec. 15, 2025) ("It is unprecedented for both the director general and the head of BBC News to resign on the same day."); *see also Davie and Turness resignations in full*, *supra*.

speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

*Id*. (emphasis added).

49. The BBC then published the following apology on its "Corrections and Clarifications" page, which was also included in the November 13 letter:

**Panorama – Trump: A Second Chance?**

**28 October 2024**

This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.

During that sequence, we showed excerpts taken from different parts of the speech.

However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and ***that this gave the mistaken impression that President Trump had made a direct call for violent action***.

The BBC would like to apologise to President Trump for that ***error of judgment***.

This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.[22]

50. Notably, the BBC did not broadcast a correction, apology, or retraction during a broadcast in a comparable manner as the *Panorama* Documentary, or with a comparable audience.

### *Substantial Evidence of The BBC's Actual Malice*

51. Contrary to the BBC's claim that its splicing, manipulation, and distortion of the Speech was an unintentional "editorial error," substantial evidence suggests that this was an intentional and malicious effort to falsely and deceptively portray President Trump as having called for violent action on January 6, 2021.

---

[22] *Corrections and Clarifications*, BBC (Nov. 13, 2025), https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/ (last visited Dec. 15, 2025) (emphasis added).

52.     As an initial matter of common sense, it would have been impossible for BBC's journalists and producers to splice together two distinct parts of the Speech from nearly 55 minutes apart *unless* they were acting intentionally. Such a dramatic distortion could never have occurred by accident. Two distinct parts of a speech from nearly 55 minutes apart do not inadvertently become spliced or linked together without effort, knowledge, and purpose. In parallel, by definition, an "an error of judgment," as admitted to by the BBC, is not inadvertent, it includes an intentional act.

53.     The BBC's actual malice is further compounded by its prior acts that unequivocally demonstrate that the organization has been anything but fair and impartial when it comes to reporting on President Trump. Substantial evidence demonstrates that before the publication of the *Panorama* Documentary, the BBC and its leadership bore President Trump ill will, wanted him to lose the 2024 Presidential Election, and were dishonest in their coverage of him.

54.     The BBC, its journalists, and its producers knew at and prior to the time they published the *Panorama* Documentary that the BBC's depiction of President Trump's Speech was false.

i.      *The Prescott Memorandum*

55.     In the early Summer of 2025, Michael Prescott, a journalist who until June 2025 was an independent adviser to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board "expos[ing] a string of incidents that demonstrate serious bias in the corporation's reporting"; following the leak of the Memorandum, *The Telegraph* published the Memorandum in early November 2025.[23]

---

[23]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

56.     Prescott highlighted a litany of disturbing misconduct demonstrating how far the

BBC has strayed from accepted standards of journalistic integrity, including, but not limited to,

the BBC's tampering with President Trump's Speech in the Documentary.[24]

57.     Notably, Prescott is nonpartisan, as he wrote in the Memorandum:

> I think it is important to state that I have never been a member of any political party
> and do not hold any hard and fast views on matters such as American politics or
> disputes in the Middle East. My views on the BBC's treatment of the subjects
> covered below do not come with any political agenda. Rather, what motivated me
> to prepare this note is despair at inaction by the BBC Executive when issues come
> to light. On no other occasion in my professional life have I witnessed what I did
> at the BBC with regard to how management dealt with (or failed to deal with)
> serious recurrent problems.[25]

58.     Regarding the *Panorama* Documentary, Prescott wrote:

> I watched the programme and found it to be neither balanced nor impartial—it
> seemed to be taking a distinctly anti-Trump stance. Critics of the Republican
> presidential candidate vastly outnumbered those who argued for him. What
> examination there was of reasons for Trump's popularity seemed to me insufficient
> given the overall balance of the programme. Given what I took to be the anti-Trump
> nature of the programme, I of course assumed there would be a similar, balancing
> Panorama programme about Democrat presidential candidate Kamala Harris the
> following week. I remain shocked that there was not.[26]

59.     Prescott was not alone in his assessment:

> I raised my concerns at the EGSC and David Grossman [Senior Editorial Adviser
> to the EGSC] was asked to review the programme.  He concluded the main
> contributors to the documentary were heavily weighted against Trump, with just
> one supporter against ten who questioned his fitness for office. Worse still, David
> highlighted alarming concerns about how Panorama had edited Trump's speech to
> his supporters on January 6, 2021 . . . . Examining the charge that Trump had incited
> protesters to storm Capitol Hill, it turned out Panorama had spliced together two
> clips from separate parts of his speech. This created the impression that Trump said
> something he did not and, in doing so, materially misled viewers.[27]

---

[24]     *Id.*

[25]     *Id.*

[26]     *Id.*

[27]     *Id.*

17

60.     Prescott concluded about the splicing of President Trump's Speech that:

This was one of the most shocking sets of issues uncovered during my time with the EGSC. If BBC journalists are allowed to edit video in order to make people "say" things they never actually said, then what value are the Corporation's guidelines, why should the BBC be trusted, and where will this all end?[28]

*ii.     The 2022 BBC Newsnight Distortion Demonstrating that the Panorama Documentary Splice is Part of a Defamatory Pattern by the BBC of Falsely Depicting President Trump Through Doctored Footage*

61.     As further revealed by *The Telegraph*, the BBC also aired similarly doctored footage of President Trump's Speech on a 2022 episode of *BBC Newsnight*.[29]

62.     In the doctored Speech clip aired by *BBC Newsnight*, President Trump is falsely, maliciously, and defamatorily depicted as saying: "*We're going to cheer on our brave senators and congressman and women, and we fight, we fight like hell*."[30]

63.     What President Trump really said was: "*[A]nd we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them.*"[31] (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech).

---

[28]     *Id.*

[29]     Camilla Tominey, Tim Stanley, John Cadigan, Rob Crilly, *BBC Newsnight also doctored Trump speech*, THE TELEGRAPH (Nov. 13, 2025), https://www.telegraph.co.uk/news/2025/11/13/bbc-doctored-trump-speech-second-time-newsnight/ (last visited Dec. 15, 2025).

[30]     *Id.*

[31]     *Id.*

18

64.     As *The Telegraph* reported: "Spliced footage of the speech, which aired in an episode in 2022, made it appear that Mr. Trump was encouraging his supporters to riot. The edit was much like a version aired in a *Panorama* documentary broadcast last year."[32]

65.     As further reported by *The Telegraph*: "Like *Panorama*, the *Newsnight* edit made it look as if the US President had urged supporters to walk to the Capitol building with him to 'fight like hell' by linking statements made nearly an hour apart in his speech."[33]  The harm caused by this doctoring was exacerbated by the BBC intentionally omitting President Trump stating, only one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

66.     Immediately after the *BBC Newsnight* episode aired, Mick Mulvaney, former Acting White House Chief of Staff, and David Chaudoir, former award-nominated graphic designer for *BBC Newsnight* from 2022-24, both individually voiced their concerns regarding the misleading and malicious way *BBC Newsnight* edited the clip to distort reality.[34]

67.     Mr. Chaudoir specifically told *The Telegraph* that he was present for discussions about the *BBC Newsnight* clip the day after it was published, wherein *BBC Newsnight* production team members dismissed any ethical concerns about the *BBC Newsnight* clip.[35]

---

[32]     *Id.*

[33]     *Id.*

[34]     *Id*.

[35]     *Id*.

19

68. Mr. Mulvaney expressed his concern on-air while being interviewed on *BBC Newsnight,* stating:

> Your video actually spliced together the presentation. He said: 'We're going to go down and we're going to cheer on our senators and our house members' and then it actually goes on to say 'And some of them we might not be able to' and that line about 'and we fight and fight like hell' is actually later in the speech yet your video makes it look like those two things came together. [36]

69. The malicious nature of the spliced and edited clip is further underscored by former BBC legal affairs correspondent Clive Coleman's statements in response to the *Panorama* Documentary, stating:

> I really struggle to understand how we got to this place . . . The first lesson almost you're taught as a broadcast journalist is that you do not join two bits of footage together from different times in a way that will make the audience think that it is one piece of footage.[37]

iii. *The 2024 BBC News Shooting Hoax Further Demonstrating that the Panorama Documentary Doctoring is Part of an Defamatory Pattern by the BBC of Falsely Depicting President Trump Calling for Violence*

70. As also revealed by *The Telegraph*, the BBC "has admitted misleading viewers by claiming that Donald Trump called for one of his leading critics to be shot in the face."[38]

71. This admission by the BBC, regarding three instances of false statements about

---

[36] *Id*.

[37] Faith Wardwell, *BBC Apologizes to Trump for Documentary Edits, but Pushes Back on Legal Threat*, POLITICO (Nov. 13, 2025) (https://www.politico.com/news/2025/11/13/bbc-trump-apology-documentary-00651451) (last visited Dec. 15, 2025).

[38] Anita Singh, *BBC admits falsely claiming Trump wanted to shoot critic*, THE TELEGRAPH (Dec. 9, 2025), https://www.telegraph.co.uk/news/2025/12/09/bbc-admits-falsely-claiming-trump-wanted-to-shoot-critic/ (last visited Dec. 15, 2025).

20

President Trump supposedly calling for violence against a political opponent, none of which occurred, is contained in the now-public Memorandum, and yet the BBC has still failed to issue a public correction.[39]

72. As described by *The Telegraph*:

In the days before the US presidential election in November last year, a presenter on BBC World News America said that Mr. Trump "appeared to suggest Liz Cheney should face a firing squad for her stance on foreign policy."

On the BBC News Channel, another presenter asked his guest: "He [President Trump] is out there on the campaign trail saying he wants people to shoot Liz Cheney in the face . . . Is that the sort of thing women react well to?

Speaking on the Six O'Clock News the same night, Sarah Smith, the BBC's North America editor, said Mr. Trump had been "ratcheting up the violent rhetoric."

She added: "In the latest spat, Donald Trump has been accused of being petty, vindictive and a wannabe tyrant because he suggested that one of his political opponents should face guns, have them trained on her face."[40]

73. All these statements by BBC presenters were false.

74. "In fact, Mr. Trump had accused Ms. Cheney of being a 'radical war hawk' who wanted to send troops to war while she remained in the safety of Washington DC, saying: 'Let's put her with a rifle standing there with nine barrels shooting at her face. OK? Let's see how she feels about it.'"[41]

75. This false, defamatory, and malicious coverage of President Trump, broadcast in the same time period as the release of the *Panorama* Documentary, was consistent with the BBC's *modus operandi*, defaming President Trump by fabricating calls for violence allegedly issued by him, that he never actually made.

---

[39] *Id*.

[40] Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

[41] *Id*.

*iv.* *The Panorama Documentary Was Intentionally One-Sided and Inflammatory, demonstrating that the Doctoring of President Trump's Speech Was Intentional and Part of the BBC's Defamatory Pattern*

76. The lack of any effort by the BBC to publish content even remotely resembling objective journalism, or to maintain even a slight semblance of objectivity in the *Panorama* Documentary, demonstrates that the BBC had no regard for the truth about President Trump, and that the doctoring of his Speech was not inadvertent, but instead was an intentional component of the BBC's effort to craft as one-sided an impression and narrative against President Trump as possible.

77. Indeed, by any measure, including the overwhelming ratio of anti-Trump versus pro-Trump commentators in the *Panorama* Documentary, the exceptionally high percentage of time granted to these negative voices in the Documentary versus the positive voices, and the inflammatory content of the negative remarks, all coupled with the BBC's historical unfairness to the President, it is apparent that the BBC fabricated the Documentary to damage President Trump. Doctoring his Speech was consistent with, and part of, the BBC's *modus operandi* of negatively covering President Trump without any pretense of objectivity.

78. The BBC's aggressively anti-Trump stance is reflected straightaway in the opening scene of the *Panorama* Documentary's introduction, which runs for almost three minutes and begins with noted anti-Trump commentator Rick Wilson—who has written two books criticizing President Trump, *Everything Trump Touches Dies* (2018) and *Running Against the Devil: A Plot to Save America From Trump-and Democrats from Themselves* (2020), and has called the President "the devil" and a "cult leader"—declaring, to the backdrop of ominous cinematic music reaching a dramatic crescendo: "I'm the leading anthropologist of Donald Trump in the, in the

22

world, probably, I've thought about him and studied him more than probably anybody else, and I hate him. I hate what he is, and what he does."

79.    Seconds later, Wilson states of President Trump: "When you let the monster escape, it will come back, it is a rule of every damn horror movie in history."

80.    Former Clinton Secretary of Labor and current Berkeley Professor Robert Reich, another vocal critic of President Trump, then offers: "Once you've unleashed this anger, this hate, into the blood of America, well, it's very very difficult to stop it."

81.    A greater majority of the verbal commentary in the *Panorama* Documentary features negative assertions about President Trump by twelve individuals known to be hostile to the President, all of whom are presented as having some form of relevant expertise and authority about the subject matter presented. Moreover, an overwhelming majority of the overall Documentary, including the non-interview segments depicting political and historical events from recent years, presents President Trump in a negative light.

82.    Further demonstrating the BBC's malice and intent to interfere with the 2024 Presidential Election, the *Panorama* Documentary, after lingering at length on the events of January 6, 2021, cuts to a clip from the Democratic National Convention on August 22, 2024, showing Kamala Harris taking the stage with a news anchor breathlessly exclaiming in the background: "And here she is, Kamala Harris. It's hard to describe just how electric the mood is here right now."

83.    Toward the end of the *Panorama* Documentary, Reich shockingly compares President Trump to "Adolf Hitler," which rises to defamation itself, while Democrat Congressman Jared Huffman refers to the President as a "cult leader," also a defamatory statement.

23

84. Others then join Reich in delivering hyperbolic warnings about President Trump and the supposedly catastrophic consequences that would ensue if President Trump were to emerge victorious.

85. "The degree to which his pessimism and darkness has infected half this country terrifies me," adds Wilson. "There is no ideology in the Republican party except pain, they want vengeance," he continues.

86. Berkeley Political Science Professor Steven Fish asserts "There's a reason why Xi Jinping and Vladimir Putin and Kim Jong Un and all these despots all over the world are rooting so hard for Trump because what Trump does is he seems to discredit democracy in the land of its stronghold, in the strongest democracy in the world, Trump seems to be proof that democracy doesn't work."

87. Boston College History Professor Heather Cox Richardson offers, "this is the time when we either choose authoritarianism or democracy, and if we choose authoritarianism, there will be no turning back, so I think we better get this one right."

88. Reich delivers a closing remark to punctuate the BBC's parade of bias: "Wish us luck, by us, I mean the United States."

*v.* *Prominent Voices Condemn the BBC and Confirm the BBC's Longstanding Pattern of Actual Malice Against President Trump*

89. The BBC is so institutionally biased against President Trump and so devoid of self-awareness that, in response to the above letter from President Trump's counsel (**Exhibit A**), it

24

published a baseless and meritless article questioning the merits of any lawsuit that the President might bring against the BBC.[42]

90. No less an authority than the United Kingdom's former Prime Minister, Liz Truss, discussed this bias, the need to hold the BBC accountable, and the BBC's pattern of actual malice.[43]

91. Remarked Truss: "[The BBC] is a huge problem. They've lied, they've cheated, they've fiddled with footage, especially in the case of President Trump, but also covering up what's happening in Britain whether it's mass migration, whether it's our economic problems, they are always biased towards the left . . . ." She was also asked whether the BBC's tepid apology was sufficient, and responded: "No I don't, because they keep doing it again and again. They have painted a completely false picture of President Trump in Britain over a number of years, they've done the same thing about conservatives in our country . . . ." Lamenting the BBC's lost status as a "paragon" of journalism, she remarked that the BBC's "fake news" has caused immense harm to the public for a long time.[44]

92. Caroline Dinenage, head of the House of Commons' Culture, Media, and Sport Committee said that Members of Parliament need assurances that the BBC was "taking decisive steps to uphold the corporation's reputation for integrity and public trust." She further remarked:

---

[42] Kayla Epstein and Madeline Halpert, *Trump vs. the BBC: What hurdles might the President's legal argument face?*, BBC (Nov. 11, 2025), https://www.bbc.com/news/articles/c709y1yx1r0o (last visited Dec. 15, 2025).

[43] *Former UK prime minister calls out BBC, encourages Trump to continue lawsuit*, FOX NEWS (Nov. 15, 2025), https://www.foxnews.com/video/6385140049112 (last visited Dec. 15, 2025).

[44] *Id*.

"The Corporation must set the benchmark for accurate and fair reporting, especially in a media landscape where it is all too easy to find news presented in a less than impartial way."[45]

93. Conservative Party leader and Member of Parliament Kemi Badenoch said that the distortion of the Speech by the *Panorama* Documentary was "absolutely shocking," adding: "That is fake news, actually putting different things together to make something look different from what it actually was." She continued: "And I do think heads should roll. Whoever it was who did that should be sacked, that's what Tim Davie should be doing, identifying who put out misinformation, and sacking them." Badenoch added: "The public need to be able to trust our public broadcaster . . . They should not be telling us things that are not true. This is a corporation that needs to hold itself to the highest standards, and that means that when we see people doing the wrong thing, they should be punished, they should be sacked."[46]

94. Lisa Nandy, Secretary of State for Culture, Media and Sport of the United Kingdom, has similarly expressed concern, stating: "there is a real concern, which I share, that political appointments to the board of the BBC damaged confidence and trust in the BBC's impartiality."[47]

95. FCC Chairman, Brendan Carr, in a letter addressed to Davie, Paula Kerger, (President and CEO of PBS), and Katherine Maher (CEO of NPR), strongly stated:

> As you know, the BBC was recently caught intentionally distorting a speech that President Trump gave in January of 2021. It did so by splicing together one portion of the speech with an entirely separate portion of the speech that came 54 minutes later. In doing so, the BBC program depicts President Trump voicing a sentence

---

[45] *BBC has questions to answer over edited Trump speech, MPs say*, BBC (Nov. 4, 2025), https://www.bbc.com/news/articles/ckgzkyk7knzo.amp (last visited Dec. 15, 2025).

[46] *Id*.

[47] *'Real Concern' About Political Appointees on BBC Board, Nandy Says*, BBC (Nov. 14, 2025), https://www.bbc.com/news/articles/cdeg0ngnj0yo (last visited Dec. 15, 2025).

26

that, in fact, he never uttered. That would appear to meet the very definition of publishing a materially false and damaging statement.[48]

96.     Carr continued, highlighting the findings of the Memorandum:

Indeed, there has now been widespread condemnation of the BBC's decision. A former independent external advisor to the BBC's Editorial Guidelines and Standards Committee, Michael Prescott, told the BBC that its decision "created the impression that Trump said something he did not and, in doing so, materially misled viewers." Likewise the Prescott Report states that the BBC program was "neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance.' In sum, it was a 'distortion of the day's events," the Prescott Report continued.[49]

### *Damages*

97.     Since its publication, the *Panorama* Documentary has gained substantial traction and republication across various media in the United States and elsewhere globally.

98.     Defendants used their false and defamatory publications to maliciously disparage and damage President Trump and impugn his reputation.

99.     Specific, extensive economic harms resulted from these defamatory statements. Defendants timed the publication of the *Panorama* Documentary to be close in time to the 2024 Presidential Election, releasing it only one week before the Election.

100.    The value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal

---

[48]     *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at BCC* (Nov. 19, 2025), https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025), https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/ (last visited Dec. 11, 2025).

[49]     *Id.*

27

reputation inflicted by these Defendants, and their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist, continue into the present, thereby causing massive economic damage to his brand value and significant damage and injury to his future financial prospects, in addition to continuing to harm his reputation as President of the United States of America.

101. President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

102. Exacerbating the damages, Defendants, at and prior to the time of their doctoring of the Speech, knowingly made their false, deceptive, malicious, and defamatory depiction of President Trump in bad faith, motivated by malice and ill-will against President Trump without any regard for the truth, and contrary to information Defendants possessed that showed their depiction to be false

103. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

## CLAIMS FOR RELIEF

## COUNT I – DEFAMATION *PER SE*

104. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

105. The following false, deceptive, malicious, and defamatory statements and depictions of and about President Trump, were, intentionally, with actual malice, and without privilege, published in the *Panorama* Documentary to millions of people in the State of Florida

28

and in this District, and elsewhere, by all Defendants, and were defamatory and false, and injured President Trump in his profession, occupation, and trade, thus constituting defamation *per se*:

(a) The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary made it seem that he stated: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

(b) This fabricated depiction of President Trump during the Speech was false and defamatory given that President Trump's actual and full remarks during the Speech were (i) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (ii) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021, 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

(c) Moreover, to further the BBC's intended, false, malicious, and defamatory message and impression that President Trump fomented violence, the BBC intentionally omitted President Trump stating, only one minute after urging supporters to cheer

29

on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

106. Defendants possessed information and had access to information which showed that their statements about, and representation and depiction of President Trump were false.

107. Defendants had no factual basis for this false depiction of President Trump.

108. Defendants' deceptive and defamatory distortion, doctoring, manipulation, and splicing damaged President Trump in his occupation, damaged his professional reputation, and portrayed him as engaging in supposed calls for rioting and violence that he never actually made.

109. The *Panorama* Documentary was not a continuation of a prior broadcast. Instead, it was the result of a separate and distinct decision by Defendants to maliciously disseminate false statements about President Trump in a new medium.

110. As pled *supra*, Defendants knew that their portrayal of the Speech in the *Panorama* Documentary was false, malicious, and defamatory.

111. Defendants' actual malice in publishing the *Panorama* Documentary is evidenced by their intentional splicing and distorting two entirely separate sentences made by President Trump during the Speech nearly 55 minutes apart, while omitting his statement calling for peace made less than one minute after his first statement urging supports to cheer on their senators and congressmen at the Capitol.

112. As a proximate result of the maliciously false and defamatory *per se* publication of a statement and depiction to third parties by Defendants, President Trump has been damaged.

30

113.  Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards President Trump, he seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT II – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

114.  Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

115.  In addition, this action is brought for violation of the Florida Deceptive and Unfair Trade Practices Act as codified in Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

116.  Defendants are engaged in the conduct of trade and commerce in the State of Florida.

117.  Defendants have violated the FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia,* intentionally and maliciously seeking to completely mislead their viewers by splicing together two separate parts of President Trump's Speech, while omitting other critical parts of the Speech in such a manner as to intentionally, falsely, maliciously, and defamatorily change the meaning of what President Trump said.

118.  As a direct, proximate, and foreseeable result of Defendants' violation of FDUTPA, President Trump has suffered and continues to suffer substantial damages.

31

119.    Pursuant to Fla. Stat. §501.2105, President Trump is entitled to recover his attorneys' fees and costs from Defendants.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, President Trump, hereby demands a jury trial as to all issues so triable.

Dated:  December 15, 2025

Respectfully submitted,

*/s/Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel:  305-614-4071
Fax:  305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

*/s/Edward Andrew Paltzik*
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice application forthcoming*)

32

/s/Daniel Zachary Epstein
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*

33



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

November 9, 2025

<u>**Via Email**</u>

Mr. Samir Shah
Chairman
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**samir.shah@bbc.co.uk**

Ms. Sarah Jones
General Counsel
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**sarah.jones@bbc.co.uk**

  **Re:  Demand to Retract False And Defamatory Statements
     <u>About The President of the United States of America</u>**

Dear All:

  This law firm serves as litigation counsel for President Donald J. Trump (hereinafter referred to as "President Trump"). Please direct all future correspondence relating to this matter to my attention. This correspondence serves as a demand under Florida Statute § 770.01[1] that you immediately retract the false, defamatory, disparaging, and inflammatory statements made about President Trump, which were published in a *Panorama* documentary that was fabricated and aired by the BBC. Failure to comply will leave President Trump with no choice but to pursue any and all legal rights and remedies available to recover damages for the overwhelming financial and reputational harm that the BBC has caused him to suffer, with all rights and remedies being expressly reserved by President Trump.

  In the *Panorama* documentary, titled "Trump: A Second Chance,"[2] which was first broadcast on October 28, 2024—a week before the 2024 United States presidential election—the BBC intentionally sought to completely mislead its viewers by splicing together three separate

---

[1] President Trump does not agree or admit that only Florida law applies to any claims he might have in connection with or arising out of the Article and expressly reserves all rights concerning applicable law.

[2] *See* https://www.bbc.co.uk/programmes/m0024h6r. According to the BBC's website, the defamatory documentary was broadcast three times on October 28, 2024, and a fourth time on November 2, 2024.

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

parts of President Trump's speech to supporters on January 6, 2021. The documentary showed President Trump telling supporters: "We're gonna walk down to the Capitol and I'll be there with you and we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore." This fabricated depiction of President Trump was false and defamatory given that President Trump's actual and full remarks were: "We're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down any one of you but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women." Moreover, the BBC edited out President Trump saying, "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Thus, as set forth in an internal whistleblower memorandum, the BBC's segment maliciously made it appear that President Trump "[said] things [he] never actually said," by editing together footage from the start of the speech with a separate quote early an hour later.

Due to their salacious nature, the fabricated statements that were aired by the BBC have been widely disseminated throughout various digital mediums, which have reached tens of millions of people worldwide. Consequently, the BBC has caused President Trump to suffer overwhelming financial and reputational harm.

**A. Applicable law**.

Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Statements are defamatory if "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *See Zambrano v. Devanesan*, 484 So. 2d 603, 607 (Fla. 4th DCA 1986).

Even if the BBC attempts to whitewash its conduct as simply an expression of its opinions, Florida law makes clear that such a defense will not absolve its liability. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. ***Simply couching such statements in terms of opinion does not dispel these implications***.") (emphasis added); *see also Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983) ("***[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable***.") (emphasis added).

Alejandro Brito
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

Consequently, the BBC lacks any viable defense to the overwhelming reputational and financial harm it has caused President Trump to suffer.

**B. Demand**.

The above-referenced false, defamatory, malicious, disparaging, and inflammatory statements were published to deliberately denigrate President Trump. The timing of the fabricated documentary is evident. The BBC's reckless disregard for the truth underscores the actual malice behind the decision to publish the wrongful content, given the plain falsity of the statements. Accordingly, President Trump hereby demands that you: (1) immediately issue a full and fair retraction of the documentary and any and all other false, defamatory, disparaging, misleading, and inflammatory statements about President Trump in as conspicuous a manner as they were originally published; (2) immediately issue an apology for the false, defamatory, disparaging, misleading, and inflammatory statements about President Trump; and (3) appropriately compensate President Trump for the harm caused.

Moreover, please allow this letter to serve as notice to you, to your affiliated entities, subsidiaries, to all of their employees, and any other person acting on behalf of or in concert with the BBC, to preserve any and all evidence related in any way to the above-mentioned malicious, false, and defamatory statements the BBC published, and any other statements that the BBC has published regarding President Trump. By way of this letter, the BBC is hereby directed not to destroy, conceal, or alter any paper or electronic files, physical evidence, and/or other data relating in any way, no matter how remote, to your false claims regarding President Trump, and/or the circumstances leading to their dissemination, including, but not limited to: (1) all communications between you and any third party in any way related to your wrongful claims regarding President Trump; (2) all sources for your false claims regarding President Trump; (3) any and all documents and data referring to, reflecting, or relating to communications between you and any such third-parties or sources regarding your false claims regarding President Trump; and (4) any and all documents in any way related to your false claims regarding President Trump. This includes any information alleged to be protected by Florida Statute § 90.5015. *Monarch Air Group, LLC v. Journalism Dev. Network, Inc.,* No. 23-CV-61256, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (interpreting Fla. Stat. § 90.5015 and explaining that the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings.") (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)).

I understand that many records and files are maintained electronically. However, this letter specifically requests that all paper and hard copy originals be maintained and preserved in their original format. By the same token, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists and has been preserved, please preserve and maintain all electronically stored documents in their original native format, including all metadata. This preservation demand specifically encompasses any and all electronic documents,

3



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

including but not limited to, all word-processed files, emails, spreadsheets, all databases, log files, and any other electronically stored and/or generated documents or files.

If the BBC does not comply with the above by **November 14, 2025, at 5:00 p.m. EST**, President Trump will be left with no alternative but to enforce his legal and equitable rights, all of which are expressly reserved and are not waived, including by filing legal action for no less than $1,000,000,000 (One Billion Dollars) in damages. The BBC is on notice.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

4

# Ballard Spahr
### LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

November 13, 2025

*Via Email (abrito@britopllc.com) & Federal Express*

Alejandro Brito
Brito PLLC
2121 Ponce de Leon
Suite 650
Coral Gables, FL 33134

   Re: November 9, 2025 Letter regarding BBC *Panorama* Documentary

Dear Mr. Brito:

   Our office represents the British Broadcasting Corporation ("BBC"). We write regarding your letter to the BBC dated November 9, 2025, which you sent on behalf of President Donald J. Trump. You wrote with respect to the broadcast of the BBC's *Panorama* documentary titled "Trump: A Second Chance" ("the Program") on October 28 and November 2, 2024, depicting his supporters during President Trump's campaign for a second term in office. Please direct all further communication about your letter to my attention.

   Your letter, citing Florida law, alleges that in a short clip of excerpts of his speech on January 6, 2021, the BBC "intentionally sought to completely mislead its viewers." President Trump alleges that the Program constituted defamation. The President threatens to bring a $1 billion defamation suit against the BBC.

   Our client had no intention of misleading anyone. Indeed, the BBC has publicly expressed its contrition in statements to the Chair of Parliament's Culture, Media, and Sport Committee, on its website, and in the media. We also enclose with this letter a copy of the BBC's personal apology to President Trump, sent by email today to White House Chief of Staff Susie Wiles.

   Additionally, the BBC has posted or shortly will post the following retraction:[1]

---

[1] https://www.bbc.co.uk/programmes/m0024h6r and
 https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/

Alejandro Brito
November 13, 2025
Page 2

> *This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.*
>
> *During that sequence, we showed excerpts taken from different parts of the speech.*
>
> *However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and that this gave the mistaken impression that President Trump had made a direct call for violent action.*
>
> *The BBC would like to apologise to President Trump for that error of judgement.*
>
> *This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.*

While the BBC sincerely regrets the manner in which the video clip was edited, for the following reasons, we strongly disagree that President Trump would have a basis for a viable defamation claim.

**First**, President Trump has made no allegation that the Program was published in Florida, as he must in order to establish personal jurisdiction over the BBC and to meet the publication requirement for a defamation claim. The BBC did not have contractual rights to, and therefore did not, distribute the Program on U.S. channels. Moreover, the version on its website linked to in your letter was geographically restricted to U.K. viewers. In any event, it ceased to be available even in the U.K. from 12 months after the Program aired. The President therefore has not established that he would have any jurisdictional basis to bring a claim against the BBC in Florida or elsewhere in the United States.[2]

**Second**, President Trump will not be able to prove that the Program caused him any injury, let alone the unspecified "overwhelming reputational and financial harm" he alleges.[3] He won reelection on November 5, 2024, after the Program aired. He carried Florida by a

---

[2] *See, e.g.*, *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (to be actionable as defamation, "the material . . . must not only be *accessible* in Florida, but also be *accessed* in Florida") (emphasis in original).

[3] *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. Cir. Ct. 2014) (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1997)) (given "negative publicity" from "a litany of news media entities" other than defendant NBC, "the challenged excerpts from and characterization of Zimmerman's statements . . . could not have been the required 'but for' cause of Zimmerman's alleged injuries").

2

Alejandro Brito
November 13, 2025
Page 3

commanding 13-point margin, improving over his 2020 and 2016 performances in the state.[4]

Moreover, when the Program aired, the President had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee Report found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[5] Given the extensive allegations prior to the release of the Program regarding his January 6 speech, in criminal and civil cases and among the press and public, the Program could not have caused any incremental harm.

**Third**, President Trump has no basis to allege that the BBC published the Program with actual malice – that is, knowing the Program was false or while entertaining serious doubts as to its truth – as he must.[6] Rather, as the BBC Chair has explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."[7]

Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements. In the course of their prosecutions, numbers of people arrested at the Capitol on January 6 told the courts that they interpreted President Trump's remarks as a call to

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g., Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

[6] *See, e.g., N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020). Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971).

[7] Letter from BBC Chair Samir Shah to Dame Caroline Dinenage MP (Nov. 10, 2025), https://committees.parliament.uk/publications/50118/documents/270340/default.

Alejandro Brito
November 13, 2025
Page 4

action.[8]

Further, the BBC has taken prompt corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," issuing a retraction, and confirming that the Program was not scheduled to be re-broadcast and will not be rebroadcast in that form on any BBC platforms. This further negates any suggestion of actual malice.[9]

**Fourth**, the brief clip, which shows about 15 seconds of President Trump's speech on January 6, is part of an hour-long program containing extensive coverage of his supporters praising President Trump, and presenting balanced coverage of his path to reelection. Courts consider challenged statements in the context of the full publication in which they were made. Accordingly, President Trump cannot create an actionable statement or implication by citing a singular clip but ignoring the remaining, overall context of the Program.[10]

**Fifth**, the Program contains protected expressions of opinion, including many from President Trump's ardent supporters. It depicts hotly contested events related to Presidential elections, including the events of January 6, 2021, which have been the subject of extensive controversy and litigation. In this context, even if the Program is reasonably interpreted to report that President Trump encouraged the crowd to march to the Capitol on January 6, that is an

---

[8] *See, e.g.*, Ryan J. Reilly, *Jan. 6 Rioter Who Said He Wanted Trump's 'Approval' Found Guilty by Jury*, CNBC (Apr. 14, 2022), https://www.cnbc.com/2022/04/14/jan-6-rioter-who-said-he-wanted-trumps-approval-found-guilty-by-jury.html ("A Donald Trump supporter who told jurors that he was 'following presidential orders' when he stormed the U.S. Capitol on Jan. 6 was found guilty on Thursday after he admitted that he stole a coat rack and a bottle of liquor from the building."); Shawna Chen, *Judge: Jan. 6 Rioter Who Broke into Capitol Followed "Trump's Instructions,"* Axios (Jan. 17, 2023), https://www.axios.com/2023/01/18/jan6-capitol-riot-trump-instructions ("A federal judge said Tuesday that a California woman who breached the U.S. Capitol during the Jan. 6 insurrection 'followed then-President Trump's instructions' in breaking the law."); Kyle Cheney, *Jan. 6 Defendant Wants Jurors to Blame Trump, Not Him, for Decision to Breach Capitol*, Politico (Apr. 13, 2022), https://www.politico.com/news/2022/04/13/january-6-defendant-donald-trump-00025019 ("Though dozens of defendants have argued in court filings that they believed Trump had authorized the assault on the Capitol, judges have largely rejected that contention and said rioters should be held to account for their own actions. But whether a jury sees that argument differently will be an important test that could reverberate across hundreds of other cases.").

[9] *See, e.g.*, *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

[10] *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020); *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

Alejandro Brito
November 13, 2025
Page 5

opinion on a matter of public concern, heavily protected under defamation law in the United States.[11]

For these reasons, the BBC declines President Trump's claim that the Program constituted defamation and his request for compensation.

We sincerely hope that the BBC's public statements of contrition, and the direct apology that we have given to the President, will suffice to put this matter to rest.

The BBC reserves all further rights and remedies, including those available under Fla. Stats. § 57.105 and § 768.295(2)(a).

Sincerely,

BALLARD SPAHR LLP

By _Charles D. Tobin_

Charles D. Tobin

Enclosure

---

[11] *See, e.g., Trump v. CNN*, 684 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (dismissing defamation case because network's description of President Trump's election challenges as the "Big Lie" was non-actionable opinion, not a statement of fact).



British Broadcasting Corporation

From the Chairman

Broadcasting House, London  W1A 1AA

The President
The White House
1600 Pennsylvania Avenue NW
Washington
D.C. 20500
United States of America

13 November 2025

Dear Mr President,

As the Chair of the BBC I wanted to write to you personally. At the same time the BBC's lawyers have today responded to your legal team. The BBC's overall legal position is as set out in that letter. I should make clear at the outset that what follows is my view as the Chair of the BBC. The organisation is, by Royal Charter, independent of His Majesty's Government and nothing I write should imply approval or disapproval by the United Kingdom Government.

Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement. As it was your speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

- 2 -

The documentary followed a number of your supporters and campaigners, who told the BBC why they wanted you to be re-elected in the 2024 US Presidential Election. The BBC's intention was to reflect their contributions to the documentary fairly and accurately, including their support for you and your Presidency.

Whilst the documentary was not scheduled to be rebroadcast, the BBC has also made public today that it will not be broadcast again on any BBC platforms in a form that includes the misleading sequence.

That the BBC produces content of the highest editorial quality is of paramount importance to me. As Chair, I take responsibility for personally ensuring that the BBC retains the trust and confidence of our audiences.

I would be happy to discuss this matter, should this be of interest to you.

Your Sincerely,

**Samir Shah**

**BBC Chair**

# Ballard Spahr
###### LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 15, 2026

*Via Certified Mail*

Earl G. Matthews
General Counsel
Department of Defense
1600 Defense Pentagon, Room 3C962
Washington, DC 20301-1600

Re:    *Touhy* Request for the Production of Documents in *Trump v. BBC*, Case No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Matthews:

This law firm represents defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited in the above-referenced civil action pending in the United States District Court for the Southern District of Florida (the "Action"). We submit this request for information, identified below, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and 32 C.F.R. § 97.1, *et seq*.

## BACKGROUND

On December 15, 2025, Plaintiff President Donald J. Trump filed a two-count lawsuit alleging defamation and violations of the Florida Deceptive and Unfair Trade Practices Act against Defendants, arising from the documentary titled "*Trump: A Second Chance?*" ("the Documentary"). For your reference, we have attached a copy of the complaint to this letter as Exhibit 1. The Documentary explored for the BBC's U.K. audience the President's continued success with his loyal American voters, following some of his most ardent supporters, known as the "Front Row Joes," and speaking with experts in the run up to the November 2024 U.S. presidential election. Plaintiff alleges that the Documentary defamed him in its depiction of his speech on January 6, 2021 ("the Speech"), which he alleges falsely depicted him as inciting violence at the Capitol that day.

The Action puts directly into issue the factual circumstances of the violence at the Capitol building on January 6, 2021, including whether there were plans of violence ahead of time, the communications about any planned violence, and whether individuals understood the Stop the Steal Rally or Trump's communications about January 6, 2021 as a

Earl G. Matthews
May 15, 2026
Page 2

call to violence.  Accordingly, the requested documents and information identified below are paramount to the case that Plaintiff has brought against Defendants.

The parties in the Action are currently going through the discovery process with a pending motion to dismiss filed.  At the moment, Plaintiff has not provided any such relevant documents or information himself in response to Defendants' written discovery requests propounded on him.  Furthermore, the information possessed by the Department of Defense (the "Department") about the intelligence it gathered regarding the events of January 6, 2021 are in the agency's possession, and accordingly would only be obtainable through this Request.

Given that Plaintiff's allegations have placed these documents in the Department's possession at the heart of the Action, and that Defendants need these documents to adequately defend themselves in court, the need for these documents outweighs any confidentiality of the information and any burden on the Department to produce these records.  As detailed below, the requested records are confined by date and subject matter to limit the intensiveness of any search for responsive documents.  Additionally, there is a protective order in place that will limit the exposure of any confidential items beyond the parties involved.

No previous decisions, orders, or pending motions in the Action bear upon the relevance of the requested records or testimony at this point.

### DEFENDANTS' TOUHY REQUEST SHOULD BE GRANTED

Under 32 C.F.R. § 97.8, the Department considers several factors in evaluating a *Touhy* request.  The following factors favor providing the requested documents to Defendants:

- **Whether the request is overbroad, unduly burdensome or otherwise inappropriate under the applicable law or court rules.**  Because the scope of the requested information is limited to a confined period of days about a single subject matter, and because search terms can appropriately confine the Department's search for the requested records, Defendants do not expect that the request is resource-heavy and will not impede the Department's ability to conduct official business.  Compliance would likewise not be inappropriate under laws and court rules regarding discovery. We stand by for any discussions about search strings that would help ensure this is not unduly burdensome on the agency.

- **Whether disclosure is improper under the rules of procedure governing the litigation.**  As noted above, because the scope of the requested

Earl G. Matthews
May 15, 2026
Page 3

information is limited to a confined period of days about a single subject matter, and because search terms can appropriately confine the Department's search for the requested records, Defendants believe their request to comply with the Federal Rules of Civil Procedure and is not irrelevant, cumulative or disproportionate to the needs of the case.

- **Whether the information is privileged or otherwise protected from disclosure under the relevant substantive law concerning privilege or disclosure of information.**  Defendants do not believe that their requests would involve any privileged materials, such as trade secrets, commercial or financial information, attorney-client communications, attorney work product, documents that would fall under executive privilege, or documents that would impede any ongoing law enforcement investigations.  Similarly, Defendants do not believe their request to violate any statute, Executive order, regulation, or policy, or interfere with any ongoing enforcement proceedings, compromise any constitutional rights, or expose any sources or informants.

### LIST OF REQUESTED DOCUMENTS

In the interest of transparency and aiding the Department's evaluation of this request, and as requested in 32 C.F.R. § 97.9, below is a description of documents Defendants seek, along with a description of how the information sought is relevant to the issues in the Action and why the information sought is unavailable by any other means.

- **Documents and communications produced, collected, or created by the Department from December 1, 2020 to January 6, 2021 related to planned demonstrations or potential organized violence in the Washington, D.C. area, or protests at the U.S. Capitol Building on January 6, 2021:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

- **Documents and communications produced, collected, or created by the D.C. National Guard related to its January 1 through 3, 2021 mission analysis and recommendation to support the Mayor of Washington, D.C.**

Earl G. Matthews
May 15, 2026
Page 4

**and the Director of the D.C. Homeland Security and Emergency Management Agency's request for the D.C. National Guard to support the D.C. Metropolitan Police Department on January 5 through 6, 2021:** This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021.  Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

Defendants seek this information in good faith and reasonably believe that the documents identified above are not available through other discovery or sources available in this Action.

We respectfully ask that you act on this *Touhy* request as promptly as possible. Thank you in advance for your attention to this matter.

Sincerely,

BALLARD SPAHR LLP

Charles D. Tobin

Cc: Counsel for Plaintiff

Encl.: Subpoena, Exhibit 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

| | |
|---|---|
| *Plaintiff* | ) |
| v. | )    Civil Action No. |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❐ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____     _____
*Signature of Clerk or Deputy Clerk*       *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____ _____ , who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

on *(date)*                                     .

❏ I served the subpoena by delivering a copy to the named person as follows:

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because:

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, ) ) Plaintiff, ) ) v. ) ) BRITISH BROADCASTING CORP., et al., ) ) Defendants. ) ) | Case No. 1:25-cv-25894-RKA |

**ATTACHMENT A TO SUBPOENA TO THE DEPARTMENT OF DEFENSE
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Communications" means any manner of receiving or transmitting information, opinions or thoughts, whether orally, in writing, electronically, or otherwise.  The term

"Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

5.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

6.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

2

7. "Including" shall be construed as "including but not limited to."

8. "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

9. "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

10. "Washington, D.C. area" means the Washington—Arlington—Alexandria Metropolitan Statistical Area.

11. "You" and "Your" shall refer to the recipient of these requests, and shall include all components under the Department of Defense, including the D.C. National Guard; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

## GENERAL INSTRUCTIONS

1. In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2. If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

3

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3. If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections) for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

4

(f)  the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests is for Documents created or originating on or after December 1, 2021 to January 6, 2021.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Communications and Documents Relating to the potential of planned demonstrations or potential organized violence in the Washington D.C. area on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 2**:  All Communications and Documents Relating to the D.C. National Guard's January 1 to 3, 2021 mission analysis and recommendation to support the Mayor of Washington, D.C. and the Director of the D.C. Homeland Security and Emergency

6

Management Agency's request for the D.C. National Guard to support the D.C. Metropolitan

Police Department on January 5 through 6, 2021.

6

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BRITISH BROADCASTING CORPORATION a/k/a/ BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, PRESIDENT DONALD J. TRUMP ("President Trump"), by and through his counsel, brings this action against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC (the "BBC"), BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED (collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.      This action concerns a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump, which was published in a BBC *Panorama* documentary, that was fabricated and aired by the Defendants one week before the 2024 Presidential Election in a brazen attempt to interfere in and influence the Election's outcome to President Trump's detriment.

1

2.      In the BBC *Panorama* documentary titled "Trump: A Second Chance" (the "*Panorama* Documentary," or the "Documentary"),[1] which was first broadcast on October 28, 2024, the BBC intentionally and maliciously sought to fully mislead its viewers around the world by splicing together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech").[2] The *Panorama* Documentary deliberately omitted another critical part of the Speech in such a manner as to intentionally misrepresent the meaning of what President Trump said.

3.      The *Panorama* Documentary falsely depicted President Trump telling supporters: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary). President Trump never uttered this sequence of words.

4.      This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and then, much later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight*

---

[1]      First published by Defendants on October 28, 2024 with a runtime of 57:54. *See* "Trump: A Second Chance?", BBC (Oct. 28, 2024) (https://www.bbc.co.uk/programmes/m0024h6r) (last visited Dec. 15, 2025)

[2]      The Speech was 70:53 in length.

*like hell, and if you don't fight like hell, you're not going to have a country anymore*," (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

5.        Moreover, the BBC purposefully omitted President Trump stating, less than one minute after urging supporters to cheer for their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

6.        As set forth in a damning and recently leaked BBC internal whistleblower document, the BBC intentionally used the *Panorama* Documentary to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting, and that he "said something he did not,"[3] by splicing together footage from the start of the Speech with a separate quote that he said nearly 55 minutes later, while omitting his statement calling for peace, made less than one minute after his first statement urging supports to cheer their senators and congressmen at the Capitol. Such distortion of the President's speech by the BBC "materially misled viewers."[4]

7.        Moreover, concerns about the *Panorama* Documentary were raised internally before its dissemination, but the BBC ignored those concerns and did not take corrective action.

8.        This instance of doctoring—in the form of distortion of meaning and splicing of entirely unrelated word sequences—is part of the BBC's longstanding pattern of manipulating

---

[3]        Gordon Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*, THE TELEGRAPH (Nov. 6, 2025), https://www.telegraph.co.uk/news/2025/11/06/read-devastating-internal-bbc-memo-in-full/ (last visited Dec. 15, 2025).

[4]        *Id.*

3

President Trump's speeches and presenting content in a misleading manner in order to defame him, including fabricating calls for violence that he never made. *See e.g.* ¶¶ 55-87, *infra*.

9. The BBC, faced with overwhelming and justifiable outrage on both sides of the Atlantic, has publicly admitted its staggering breach of journalistic ethics, and apologized, but has made no showing of actual remorse for its wrongdoing nor meaningful institutional changes to prevent future journalistic abuses.

10. Accordingly, President Trump brings this action for compensatory and punitive damages for the extensive reputational harm inflicted upon him by the Defendants.

## PARTIES

11. Plaintiff, President Trump, is a citizen of the United States and a citizen of the State of Florida. He served as the 45th President of the United States and currently serves as the 47th President of the United States.

12. Defendant, the BBC, is a British corporation established by royal charter and operating under an agreement with the United Kingdom's Secretary of State for Culture, Media, and Sport, with its principal place of business in London, England. The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films Ltd., and its international distribution partner, Blue Ant Media Corporation.

13. Defendant, BBC Studios Distribution Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

14. Defendant, BBC Studios Productions Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are completely diverse, as President Trump is a citizen of Florida, while all Defendants are citizens of the United Kingdom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     The Court possesses personal jurisdiction over Defendants pursuant to Florida Statute 48.193(2) because Defendants, during the operative period alleged in this Complaint, engaged in substantial and not isolated business activities in Florida, and more specifically in this District. Defendant BBC publishes online news reports, editorials, and other media content at https://www.bbc.com, which are regularly accessed by individuals in Florida.

17.     The BBC operates in the United States not as an abstract concept but in a constant manner; the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location.

18.     The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web

5

pages entitled "Florida – BBC News"[5] and "Florida – BBC Weather,"[6] among others. The BBC also offers web pages specific to cities in Florida.[7]

19.     Additionally, the BBC offers subscriptions to individuals in Florida and as a result, has thousands of subscribers in Florida. Any individual in the United States, including Florida, can pay for a subscription to the BBC's content and services.[8]

20.     Individuals in the United States, including Florida, also have another option for consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform.[9] *BritBox* is available in the United States, including in Florida, and has thousands of subscribers in Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount of the BBC's original content—including *Panorama*.

21.     Accordingly, BBC has engaged, and continues to engage in, substantial and not isolated activity in Florida.

---

[5]     *Florida – BBC News*, BBC, https://www.bbc.com/news/topics/c77jz3mdq1jt (last visited Dec. 15, 2025).

[6]     *Florida – BBC Weather*, BBC, https://www.bbc.com/weather/3442585 (last visited Dec. 15, 2025).

[7]     *See, e.g., Miami – BBC News*, BBC, https://www.bbc.com/news/topics/cp7dde75nmlt (last visited Dec. 15, 2025).

[8]     *Get even more from a BBC subscription*, BBC, https://www.bbc.com/subscribe (last visited Dec. 15, 2025).

[9]     *BritBox by BBC*, https://www.britbox.com/us/?gclsrc=aw.ds&&utm_source=google&utm_medium=paid-search&utm_campaign=17444044535-137684208899&utm_content=602709820305&utm_term=g&gad_source=1&gad_campaignid=17444044535&gbraid=0AAAAADMxMXrfBmo_s56m_ZA2aFpeyy6C_&gclid=CjwKCAiA0eTJBhBaEiwA-Pa-hbSItFwaYwfNGsO5WR1trkY2tlU0j8XCZ76_KY4_xRzkIl0Sr6pPBxoCTrkQAvD_BwE (last visited Dec. 15, 2025).

6

22. In addition, this Court possesses personal jurisdiction over Defendants pursuant to: (a) Florida Statute §48.193(1)(a)(1), because Defendants operate, conduct, engage in, or carry on a business in Florida or have an office or agency in Florida, (b) Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act in Florida (as stated herein), and (c) Florida Statute §48.193(1)(a)(6) because Defendants caused injury to President Trump within Florida arising out of an act or omission committed by Defendants in Florida, while at or about the time of the injury, products and services provided by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

23. The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie ("Davie") stated in his recent resignation letter: "Despite a hugely competitive market, I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*."[10]

24. The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC.

25. In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer.

---

[10] *Davie and Turness resignations in full*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c1k02vr1my2o (last visited Dec. 15, 2025). (Emphasis added).

7

26.     According to *vpnMentor*, a VPN research firm, VPN usage in Florida has skyrocketed since 2024, with a 51% increase in demand on December 19, 2024, and an over 1,000% increase in VPN usage at the beginning of 2025.[11]

27.     Florida streamers have opted to use VPNs to increase their "streaming freedom." Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer.[12]

28.     To that end, an article published by *Tom's Guide*, a reputable technology news outlet, revealed that a VPN usage survey showed that approximately 41% of VPN subscribers use the service to stream content, citing BBC iPlayer as an example of what a VPN subscriber could view using a VPN.[13]

29.     The *Panorama* Documentary's publicity, coupled with significant increases in VPN usage in Florida since its debut, establishes the immense likelihood that citizens of Florida accessed the Documentary before the BBC had it removed.

---

[11]     *Floridians Flock to VPNs As Age-Verification Law Takes Effect*, TAMPA FREE PRESS (Jan. 8, 2025) (https://www.tampafp.com/floridians-flock-to-vpns-as-age-verification-law/) (last visited Dec. 15, 2025).

[12]     *Florida VPN Surge: Why VPN Usage Skyrocketed 1,000% in Florida* (2025), TRUSTED TECHSPOT (https://trustedtechspot.com/florida-vpn-surge/) (last visited Dec. 15, 2025).

[13]     *More Than 40% of VPN Subscribers Use Them for Streaming – Here's Why*, TOM'S GUIDE (June 2, 2021) https://www.tomsguide.com/features/more-than-40-of-vpn-subscribers-use-them-for-streaming-heres-why) (last visited Dec. 15, 2025).

30. Articles like those published by Tom's Guide[14] and PureVPN[15]—giving a summary of the *Panorama* Documentary's plot, telling users how to view the Documentary, and going as far as to provide links to VPNs that allow a user to view BBC iPlayer—make it overwhelmingly certain that Floridians accessed the Documentary using a VPN during the time the Documentary was available.

31. Further supporting the fact that Floridians accessed the *Panorama* Documentary through a VPN, *The Guardian* reported that research showed that "65 million people from abroad watch the broadcaster's license-fee funded iPlayer service using proxy servers or virtual private networks."[16]

32. As underscored by the Chairman of the FCC, Brendan Carr, "[t]he BBC has stated that it has a number of partnerships with U.S. broadcasters, including PBS and NPR, to distribute BBC programming here in America."[17]

---

[14] *How to Watch 'Trump: A Second Chance?'*, TOM'S GUIDE (Oct. 28, 2024) (https://www.tomsguide.com/entertainment/streaming/how-to-watch-trump-a-second-chance-online-from-anywhere) (last visited Dec. 15, 2025).

[15] *How to Watch 'Trump: A Second Chance in the US'*, PUREVPN https://www.purevpn.com/how-to-watch-trump-a-second-chance-in-the-us (last visited Dec. 15, 2025).

[16] Paul Revoir, *BBC iPlayer 'Watched By More Than 60 Million People Outside the UK for Free'*, THE GUARDIAN (July 21, 2015) (https://www.theguardian.com/media/2015/jul/21/bbc-iplayer-uk-vpn-proxy-server) (last visited Dec. 15, 2025).

[17] *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at* BCC (Nov. 19, 2025) (https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed) (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025) (https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/) (last visited Dec. 15, 2025).

33. The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida.

34. Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary,[18] including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025.[19]

35. Blue Ant aggressively advertised its exclusive distribution of the *Panorama* Documentary outside of the United Kingdom, further evidencing the intent of the BBC and its strategic partners to disseminate the Documentary as widely and into as many streams of commerce and channels of distribution as possible, including Florida.[20]

---

[18] Karolina Kaminska, *Blue Ant Studios to shop BBC's 'President Trump: A Second Chance?' In Cannes*, C21 MEDIA (Oct. 10, 2024), https://www.c21media.net/news/blue-ant-studios-takes-october-films-president-trump-a-second-chance-to-cannes/ (last visited Dec. 15, 2025).

[19] Nicholas Sokic, *Blue Ant pulls BBC Trump doc from catalogue*, PLAYBACK (Nov. 12, 2025), https://playbackonline.ca/2025/11/12/blue-ant-pulls-controversial-bbc-trump-doc-from-catalogue/ (last visited Dec. 15, 2025) ("Blue Ant rights has confirmed that it has pulled the BBC *Panorama* documentary on U.S. President Donald Trump from its catalogue amid the controversy surrounding the film.").

[20] *'President Trump: A Second Chance?' Launches at MIPCOM 2024*, BLUE ANT MEDIA CORPORATION (Oct. 10, 2024), https://web.archive.org/web/20250712071622/https://blueantmedia.com/2024/10/president-trump-a-second-chance-launches-at-mipcom-2024/ (last visited Dec. 15, 2025) ("Blue Ant Studios today confirms that the explosive Donald Trump documentary, produced by October Films, has just wrapped production with the working title, President Trump: A Second Chance? Commissioned by BBC's Panorama, and produced by October Films, this hotly anticipated and

36.     Further, and as explained in greater detail below, the BBC elected to publish the *Panorama* Documentary just one week before the 2024 United States Presidential Election with the express intent of interfering with it and trying to undermine President Trump's odds of winning reelection.

37.     Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago, in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary.

38.     The BBC explicitly instructed and ordered its producers to travel to Florida and to utilize this forum for the purpose of creating the Documentary and defaming President Trump.

39.     The *Panorama* Documentary contains extensive evidence and examples of the BBC's producers gathering original footage specifically for use in the Documentary—not using stock footage—at Mar-a-Lago and nearby in the Palm Beach area on April 4, 2023, as well as on other dates. These examples include, but are not limited to: (a) Between 2023 and 2024, the BBC, or its contractors, filmed (i) a wide angle aerial view of Mar-a-Lago taken from a vantage point in the Lake Worth Lagoon (3:57 into the Documentary), (ii) a wide angle aerial view of Mar-a-Lago from a vantage point just north facing the Atlantic Ocean (4:47), (iii) a wide angle shot of the Mar-a-Lago pool and exterior and added a graphic "Trump Residence, Mar-a-Lago Florida" (5:00); and (b) on April 4, 2023, BBC producers and BBC-contracted crew members filmed (i) supporters of

---

distinctive 1x60 documentary will make its official international debut at MPICOM, where attending buyers will have an exclusive previews.").

President Trump lining the streets as President Trump's motorcade proceeded with President Trump through Palm Beach on the way to Mar-a-Lago (4:03), (ii) Rick Frazier, a supporter of President Trump, in the passenger seat of a vehicle as it followed the motorcade on the approach to Mar-a-Lago (4:09), (iii) The vehicle carrying Frazier as it entered Mar-a-Lago (4:51), (iv) Frazier as he walked in to Mar-a-Lago (5:03), (v) President Trump as he walked in to Mar-a-Lago to deliver a speech (5:11), (vi) Supporters cheering for the President as he prepared to speak inside Mar-a-Lago (5:24), (vii) President Trump as he delivered a speech to supporters inside Mar-a-Lago (5:27), and (viii) Frazier as he interacted with other supporters of President Trump (6:15 and 6:55).

40. The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida.

41. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: President Trump is a citizen of Florida who was defamed by the BBC while in Florida, the BBC filmed the *Panorama* Documentary in significant part in Florida, and the BBC, in concert with its strategic partners including October Films Ltd. and Blue Ant Media Corporation, distributed the Documentary into Florida.

## FACTUAL ALLEGATIONS

### *The BBC's Defamatory and Deceptive Depiction of*
### *President Trump's Speech in the Panorama Documentary*

i.       *The BBC Splices and Distorts President Trump's Speech*

42.     The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary wrongly made it appear that he said: "*We're going to walk down to the Capitol, and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

43.     This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory, given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

44.     Moreover, to further the BBC's intended, false, malicious, and defamatory message that President Trump fomented violence, which he did not, the BBC intentionally omitted President Trump saying, less than one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building*

13

*to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

> ii.   *The BBC's Director General and Head of News Resign in Disgrace,*
> *and the BBC, Under Fire, Reluctantly Admits Wrongdoing*

45.   On November 9, 2025, Davie and News CEO Deborah Turness resigned in disgrace over their leading roles in the *Panorama* Documentary.[21]

46.   Also on November 9, 2025, President Trump's counsel emailed a letter to Samir Shah (Chairman of the BBC) and Sarah Jones (General Counsel) entitled "Demand to Retract False and Defamatory Statements About The President of the United States of America" demanding retraction of the BBC's false depiction of President Trump, an apology for the false depiction of President Trump, and monetary compensation. *See* **Exhibit A**.

47.   By letter dated November 13, 2025, the BBC's counsel indicated that the BBC would apologize to President Trump but, somehow, ignoring the resignations of the BBC's leadership, admitting of wrongdoing, and apology, still attempted to deny intentional wrongdoing and declined to pay damages. *See* **Exhibit B**.

48.   Enclosed with the letter from counsel was a letter of apology from Chairman Shah, which stated, *inter alia*:

> Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. ***This gave the mistaken impression that you had made a direct call for violent action***. ***That was an editorial error and it should not have happened***. ***I have stated clearly and publicly that the BBC apologises for that error of judgement***. As it was your

---

[21]   Aleks Phillips and Helen Bushby, *BBC director general and News CEO resign over Trump documentary edit*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c3vn25d5dq7o (last visited Dec. 15, 2025) ("It is unprecedented for both the director general and the head of BBC News to resign on the same day."); *see also Davie and Turness resignations in full*, *supra*.

14

speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

*Id*. (emphasis added).

49.     The BBC then published the following apology on its "Corrections and Clarifications" page, which was also included in the November 13 letter:

> **Panorama – Trump: A Second Chance?**
>
> **28 October 2024**
>
> This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.
>
> During that sequence, we showed excerpts taken from different parts of the speech.
>
> However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and *that this gave the mistaken impression that President Trump had made a direct call for violent action*.
>
> The BBC would like to apologise to President Trump for that *error of judgment*.
>
> This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.[22]

50.     Notably, the BBC did not broadcast a correction, apology, or retraction during a broadcast in a comparable manner as the *Panorama* Documentary, or with a comparable audience.

### *Substantial Evidence of The BBC's Actual Malice*

51.     Contrary to the BBC's claim that its splicing, manipulation, and distortion of the Speech was an unintentional "editorial error," substantial evidence suggests that this was an intentional and malicious effort to falsely and deceptively portray President Trump as having called for violent action on January 6, 2021.

---

[22]     *Corrections and Clarifications*, BBC (Nov. 13, 2025), https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/ (last visited Dec. 15, 2025) (emphasis added).

15

52.     As an initial matter of common sense, it would have been impossible for BBC's journalists and producers to splice together two distinct parts of the Speech from nearly 55 minutes apart *unless* they were acting intentionally. Such a dramatic distortion could never have occurred by accident. Two distinct parts of a speech from nearly 55 minutes apart do not inadvertently become spliced or linked together without effort, knowledge, and purpose. In parallel, by definition, an "an error of judgment," as admitted to by the BBC, is not inadvertent, it includes an intentional act.

53.     The BBC's actual malice is further compounded by its prior acts that unequivocally demonstrate that the organization has been anything but fair and impartial when it comes to reporting on President Trump. Substantial evidence demonstrates that before the publication of the *Panorama* Documentary, the BBC and its leadership bore President Trump ill will, wanted him to lose the 2024 Presidential Election, and were dishonest in their coverage of him.

54.     The BBC, its journalists, and its producers knew at and prior to the time they published the *Panorama* Documentary that the BBC's depiction of President Trump's Speech was false.

i.     *The Prescott Memorandum*

55.     In the early Summer of 2025, Michael Prescott, a journalist who until June 2025 was an independent adviser to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board "expos[ing] a string of incidents that demonstrate serious bias in the corporation's reporting"; following the leak of the Memorandum, *The Telegraph* published the Memorandum in early November 2025.[23]

---

[23]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

56. Prescott highlighted a litany of disturbing misconduct demonstrating how far the BBC has strayed from accepted standards of journalistic integrity, including, but not limited to, the BBC's tampering with President Trump's Speech in the Documentary.[24]

57. Notably, Prescott is nonpartisan, as he wrote in the Memorandum:

> I think it is important to state that I have never been a member of any political party and do not hold any hard and fast views on matters such as American politics or disputes in the Middle East. My views on the BBC's treatment of the subjects covered below do not come with any political agenda. Rather, what motivated me to prepare this note is despair at inaction by the BBC Executive when issues come to light. On no other occasion in my professional life have I witnessed what I did at the BBC with regard to how management dealt with (or failed to deal with) serious recurrent problems.[25]

58. Regarding the *Panorama* Documentary, Prescott wrote:

> I watched the programme and found it to be neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance. Critics of the Republican presidential candidate vastly outnumbered those who argued for him. What examination there was of reasons for Trump's popularity seemed to me insufficient given the overall balance of the programme. Given what I took to be the anti-Trump nature of the programme, I of course assumed there would be a similar, balancing Panorama programme about Democrat presidential candidate Kamala Harris the following week. I remain shocked that there was not.[26]

59. Prescott was not alone in his assessment:

> I raised my concerns at the EGSC and David Grossman [Senior Editorial Adviser to the EGSC] was asked to review the programme. He concluded the main contributors to the documentary were heavily weighted against Trump, with just one supporter against ten who questioned his fitness for office. Worse still, David highlighted alarming concerns about how Panorama had edited Trump's speech to his supporters on January 6, 2021 . . . . Examining the charge that Trump had incited protesters to storm Capitol Hill, it turned out Panorama had spliced together two clips from separate parts of his speech. This created the impression that Trump said something he did not and, in doing so, materially misled viewers.[27]

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

60.     Prescott concluded about the splicing of President Trump's Speech that:

This was one of the most shocking sets of issues uncovered during my time with the EGSC. If BBC journalists are allowed to edit video in order to make people "say" things they never actually said, then what value are the Corporation's guidelines, why should the BBC be trusted, and where will this all end?[28]

ii.     *The 2022 BBC Newsnight Distortion Demonstrating that the Panorama Documentary Splice is Part of a Defamatory Pattern by the BBC of Falsely Depicting President Trump Through Doctored Footage*

61.     As further revealed by *The Telegraph*, the BBC also aired similarly doctored footage of President Trump's Speech on a 2022 episode of *BBC Newsnight*.[29]

62.     In the doctored Speech clip aired by *BBC Newsnight*, President Trump is falsely, maliciously, and defamatorily depicted as saying: "*We're going to cheer on our brave senators and congressman and women, and we fight, we fight like hell*."[30]

63.     What President Trump really said was: "*[A]nd we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*."[31] (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech).

---

[28]     *Id.*

[29]     Camilla Tominey, Tim Stanley, John Cadigan, Rob Crilly, *BBC Newsnight also doctored Trump speech*, THE TELEGRAPH (Nov. 13, 2025), https://www.telegraph.co.uk/news/2025/11/13/bbc-doctored-trump-speech-second-time-newsnight/ (last visited Dec. 15, 2025).

[30]     *Id.*

[31]     *Id.*

64.     As *The Telegraph* reported: "Spliced footage of the speech, which aired in an episode in 2022, made it appear that Mr. Trump was encouraging his supporters to riot. The edit was much like a version aired in a *Panorama* documentary broadcast last year."[32]

65.     As further reported by *The Telegraph*: "Like *Panorama*, the *Newsnight* edit made it look as if the US President had urged supporters to walk to the Capitol building with him to 'fight like hell' by linking statements made nearly an hour apart in his speech."[33]  The harm caused by this doctoring was exacerbated by the BBC intentionally omitting President Trump stating, only one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

66.     Immediately after the *BBC Newsnight* episode aired, Mick Mulvaney, former Acting White House Chief of Staff, and David Chaudoir, former award-nominated graphic designer for *BBC Newsnight* from 2022-24, both individually voiced their concerns regarding the misleading and malicious way *BBC Newsnight* edited the clip to distort reality.[34]

67.     Mr. Chaudoir specifically told *The Telegraph* that he was present for discussions about the *BBC Newsnight* clip the day after it was published, wherein *BBC Newsnight* production team members dismissed any ethical concerns about the *BBC Newsnight* clip.[35]

---

[32]     *Id.*

[33]     *Id.*

[34]     *Id*.

[35]     *Id*.

68.     Mr. Mulvaney expressed his concern on-air while being interviewed on *BBC Newsnight*, stating:

> Your video actually spliced together the presentation. He said: 'We're going to go down and we're going to cheer on our senators and our house members' and then it actually goes on to say 'And some of them we might not be able to' and that line about 'and we fight and fight like hell' is actually later in the speech yet your video makes it look like those two things came together. [36]

69.     The malicious nature of the spliced and edited clip is further underscored by former BBC legal affairs correspondent Clive Coleman's statements in response to the *Panorama* Documentary, stating:

> I really struggle to understand how we got to this place . . . The first lesson almost you're taught as a broadcast journalist is that you do not join two bits of footage together from different times in a way that will make the audience think that it is one piece of footage. [37]

*iii.    The 2024 BBC News Shooting Hoax Further Demonstrating that the Panorama Documentary Doctoring is Part of an Defamatory Pattern by the BBC of Falsely Depicting President Trump Calling for Violence*

70.     As also revealed by *The Telegraph*, the BBC "has admitted misleading viewers by claiming that Donald Trump called for one of his leading critics to be shot in the face."[38]

71.     This admission by the BBC, regarding three instances of false statements about

---

[36]     *Id*.

[37]     Faith Wardwell, *BBC Apologizes to Trump for Documentary Edits, but Pushes Back on Legal Threat*,  POLITICO (Nov. 13, 2025) (https://www.politico.com/news/2025/11/13/bbc-trump-apology-documentary-00651451) (last visited Dec. 15, 2025).

[38]     Anita Singh, *BBC admits falsely claiming Trump wanted to shoot critic*, THE TELEGRAPH (Dec. 9, 2025), https://www.telegraph.co.uk/news/2025/12/09/bbc-admits-falsely-claiming-trump-wanted-to-shoot-critic/  (last visited Dec. 15, 2025).

20

President Trump supposedly calling for violence against a political opponent, none of which occurred, is contained in the now-public Memorandum, and yet the BBC has still failed to issue a public correction.[39]

72. As described by *The Telegraph*:

> In the days before the US presidential election in November last year, a presenter on BBC World News America said that Mr. Trump "appeared to suggest Liz Cheney should face a firing squad for her stance on foreign policy."
>
> On the BBC News Channel, another presenter asked his guest: "He [President Trump] is out there on the campaign trail saying he wants people to shoot Liz Cheney in the face . . . Is that the sort of thing women react well to?
>
> Speaking on the Six O'Clock News the same night, Sarah Smith, the BBC's North America editor, said Mr. Trump had been "ratcheting up the violent rhetoric."
>
> She added: "In the latest spat, Donald Trump has been accused of being petty, vindictive and a wannabe tyrant because he suggested that one of his political opponents should face guns, have them trained on her face."[40]

73. All these statements by BBC presenters were false.

74. "In fact, Mr. Trump had accused Ms. Cheney of being a 'radical war hawk' who wanted to send troops to war while she remained in the safety of Washington DC, saying: 'Let's put her with a rifle standing there with nine barrels shooting at her face. OK? Let's see how she feels about it.'"[41]

75. This false, defamatory, and malicious coverage of President Trump, broadcast in the same time period as the release of the *Panorama* Documentary, was consistent with the BBC's *modus operandi*, defaming President Trump by fabricating calls for violence allegedly issued by him, that he never actually made.

---

[39]     *Id.*

[40]     Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

[41]     *Id.*

*iv.    The Panorama Documentary Was Intentionally One-Sided and Inflammatory, demonstrating that the Doctoring of President Trump's Speech Was Intentional and Part of the BBC's Defamatory Pattern*

76.    The lack of any effort by the BBC to publish content even remotely resembling objective journalism, or to maintain even a slight semblance of objectivity in the *Panorama* Documentary, demonstrates that the BBC had no regard for the truth about President Trump, and that the doctoring of his Speech was not inadvertent, but instead was an intentional component of the BBC's effort to craft as one-sided an impression and narrative against President Trump as possible.

77.    Indeed, by any measure, including the overwhelming ratio of anti-Trump versus pro-Trump commentators in the *Panorama* Documentary, the exceptionally high percentage of time granted to these negative voices in the Documentary versus the positive voices, and the inflammatory content of the negative remarks, all coupled with the BBC's historical unfairness to the President, it is apparent that the BBC fabricated the Documentary to damage President Trump. Doctoring his Speech was consistent with, and part of, the BBC's *modus operandi* of negatively covering President Trump without any pretense of objectivity.

78.    The BBC's aggressively anti-Trump stance is reflected straightaway in the opening scene of the *Panorama* Documentary's introduction, which runs for almost three minutes and begins with noted anti-Trump commentator Rick Wilson—who has written two books criticizing President Trump, *Everything Trump Touches Dies* (2018) and *Running Against the Devil: A Plot to Save America From Trump-and Democrats from Themselves* (2020), and has called the President "the devil" and a "cult leader"—declaring, to the backdrop of ominous cinematic music reaching a dramatic crescendo: "I'm the leading anthropologist of Donald Trump in the, in the

22

world, probably, I've thought about him and studied him more than probably anybody else, and I hate him. I hate what he is, and what he does."

79.     Seconds later, Wilson states of President Trump: "When you let the monster escape, it will come back, it is a rule of every damn horror movie in history."

80.     Former Clinton Secretary of Labor and current Berkeley Professor Robert Reich, another vocal critic of President Trump, then offers: "Once you've unleashed this anger, this hate, into the blood of America, well, it's very very difficult to stop it."

81.     A greater majority of the verbal commentary in the *Panorama* Documentary features negative assertions about President Trump by twelve individuals known to be hostile to the President, all of whom are presented as having some form of relevant expertise and authority about the subject matter presented. Moreover, an overwhelming majority of the overall Documentary, including the non-interview segments depicting political and historical events from recent years, presents President Trump in a negative light.

82.     Further demonstrating the BBC's malice and intent to interfere with the 2024 Presidential Election, the *Panorama* Documentary, after lingering at length on the events of January 6, 2021, cuts to a clip from the Democratic National Convention on August 22, 2024, showing Kamala Harris taking the stage with a news anchor breathlessly exclaiming in the background: "And here she is, Kamala Harris. It's hard to describe just how electric the mood is here right now."

83.     Toward the end of the *Panorama* Documentary, Reich shockingly compares President Trump to "Adolf Hitler," which rises to defamation itself, while Democrat Congressman Jared Huffman refers to the President as a "cult leader," also a defamatory statement.

84. Others then join Reich in delivering hyperbolic warnings about President Trump and the supposedly catastrophic consequences that would ensue if President Trump were to emerge victorious.

85. "The degree to which his pessimism and darkness has infected half this country terrifies me," adds Wilson. "There is no ideology in the Republican party except pain, they want vengeance," he continues.

86. Berkeley Political Science Professor Steven Fish asserts "There's a reason why Xi Jinping and Vladimir Putin and Kim Jong Un and all these despots all over the world are rooting so hard for Trump because what Trump does is he seems to discredit democracy in the land of its stronghold, in the strongest democracy in the world, Trump seems to be proof that democracy doesn't work."

87. Boston College History Professor Heather Cox Richardson offers, "this is the time when we either choose authoritarianism or democracy, and if we choose authoritarianism, there will be no turning back, so I think we better get this one right."

88. Reich delivers a closing remark to punctuate the BBC's parade of bias: "Wish us luck, by us, I mean the United States."

v. *Prominent Voices Condemn the BBC and Confirm the BBC's Longstanding Pattern of Actual Malice Against President Trump*

89. The BBC is so institutionally biased against President Trump and so devoid of self-awareness that, in response to the above letter from President Trump's counsel (**Exhibit A**), it

24

published a baseless and meritless article questioning the merits of any lawsuit that the President might bring against the BBC.[42]

90. No less an authority than the United Kingdom's former Prime Minister, Liz Truss, discussed this bias, the need to hold the BBC accountable, and the BBC's pattern of actual malice.[43]

91. Remarked Truss: "[The BBC] is a huge problem. They've lied, they've cheated, they've fiddled with footage, especially in the case of President Trump, but also covering up what's happening in Britain whether it's mass migration, whether it's our economic problems, they are always biased towards the left . . . ." She was also asked whether the BBC's tepid apology was sufficient, and responded: "No I don't, because they keep doing it again and again. They have painted a completely false picture of President Trump in Britain over a number of years, they've done the same thing about conservatives in our country . . . ." Lamenting the BBC's lost status as a "paragon" of journalism, she remarked that the BBC's "fake news" has caused immense harm to the public for a long time.[44]

92. Caroline Dinenage, head of the House of Commons' Culture, Media, and Sport Committee said that Members of Parliament need assurances that the BBC was "taking decisive steps to uphold the corporation's reputation for integrity and public trust." She further remarked:

---

[42] Kayla Epstein and Madeline Halpert, *Trump vs. the BBC: What hurdles might the President's legal argument face?*, BBC (Nov. 11, 2025), https://www.bbc.com/news/articles/c709y1yx1r0o (last visited Dec. 15, 2025).

[43] *Former UK prime minister calls out BBC, encourages Trump to continue lawsuit*, FOX NEWS (Nov. 15, 2025), https://www.foxnews.com/video/6385140049112 (last visited Dec. 15, 2025).

[44] *Id.*

"The Corporation must set the benchmark for accurate and fair reporting, especially in a media landscape where it is all too easy to find news presented in a less than impartial way."[45]

93.     Conservative Party leader and Member of Parliament Kemi Badenoch said that the distortion of the Speech by the *Panorama* Documentary was "absolutely shocking," adding: "That is fake news, actually putting different things together to make something look different from what it actually was." She continued: "And I do think heads should roll. Whoever it was who did that should be sacked, that's what Tim Davie should be doing, identifying who put out misinformation, and sacking them." Badenoch added: "The public need to be able to trust our public broadcaster . . . They should not be telling us things that are not true. This is a corporation that needs to hold itself to the highest standards, and that means that when we see people doing the wrong thing, they should be punished, they should be sacked."[46]

94.     Lisa Nandy, Secretary of State for Culture, Media and Sport of the United Kingdom, has similarly expressed concern, stating: "there is a real concern, which I share, that political appointments to the board of the BBC damaged confidence and trust in the BBC's impartiality."[47]

95.     FCC Chairman, Brendan Carr, in a letter addressed to Davie, Paula Kerger, (President and CEO of PBS), and Katherine Maher (CEO of NPR), strongly stated:

> As you know, the BBC was recently caught intentionally distorting a speech that President Trump gave in January of 2021. It did so by splicing together one portion of the speech with an entirely separate portion of the speech that came 54 minutes later. In doing so, the BBC program depicts President Trump voicing a sentence

---

[45]     *BBC has questions to answer over edited Trump speech, MPs say*, BBC (Nov. 4, 2025), https://www.bbc.com/news/articles/ckgzkyk7knzo.amp (last visited Dec. 15, 2025).

[46]     *Id*.

[47]     *'Real Concern' About Political Appointees on BBC Board, Nandy Says*, BBC (Nov. 14, 2025), https://www.bbc.com/news/articles/cdeg0ngnj0yo (last visited Dec. 15, 2025).

that, in fact, he never uttered. That would appear to meet the very definition of publishing a materially false and damaging statement.[48]

96.     Carr continued, highlighting the findings of the Memorandum:

Indeed, there has now been widespread condemnation of the BBC's decision. A former independent external advisor to the BBC's Editorial Guidelines and Standards Committee, Michael Prescott, told the BBC that its decision "created the impression that Trump said something he did not and, in doing so, materially misled viewers." Likewise the Prescott Report states that the BBC program was "neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance.' In sum, it was a 'distortion of the day's events," the Prescott Report continued.[49]

### *Damages*

97.     Since its publication, the *Panorama* Documentary has gained substantial traction and republication across various media in the United States and elsewhere globally.

98.     Defendants used their false and defamatory publications to maliciously disparage and damage President Trump and impugn his reputation.

99.     Specific, extensive economic harms resulted from these defamatory statements. Defendants timed the publication of the *Panorama* Documentary to be close in time to the 2024 Presidential Election, releasing it only one week before the Election.

100.     The value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal

---

[48]     *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at BCC* (Nov. 19, 2025), https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025), https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/ (last visited Dec. 11, 2025).

[49]     *Id.*

reputation inflicted by these Defendants, and their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist, continue into the present, thereby causing massive economic damage to his brand value and significant damage and injury to his future financial prospects, in addition to continuing to harm his reputation as President of the United States of America.

101. President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

102. Exacerbating the damages, Defendants, at and prior to the time of their doctoring of the Speech, knowingly made their false, deceptive, malicious, and defamatory depiction of President Trump in bad faith, motivated by malice and ill-will against President Trump without any regard for the truth, and contrary to information Defendants possessed that showed their depiction to be false

103. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

## CLAIMS FOR RELIEF

## COUNT I – DEFAMATION *PER SE*

104. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

105. The following false, deceptive, malicious, and defamatory statements and depictions of and about President Trump, were, intentionally, with actual malice, and without privilege, published in the *Panorama* Documentary to millions of people in the State of Florida

28

and in this District, and elsewhere, by all Defendants, and were defamatory and false, and injured President Trump in his profession, occupation, and trade, thus constituting defamation *per se*:

(a) The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary made it seem that he stated: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

(b) This fabricated depiction of President Trump during the Speech was false and defamatory given that President Trump's actual and full remarks during the Speech were (i) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (ii) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021, 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

(c) Moreover, to further the BBC's intended, false, malicious, and defamatory message and impression that President Trump fomented violence, the BBC intentionally omitted President Trump stating, only one minute after urging supporters to cheer

29

on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

106.    Defendants possessed information and had access to information which showed that their statements about, and representation and depiction of President Trump were false.

107.    Defendants had no factual basis for this false depiction of President Trump.

108.    Defendants' deceptive and defamatory distortion, doctoring, manipulation, and splicing damaged President Trump in his occupation, damaged his professional reputation, and portrayed him as engaging in supposed calls for rioting and violence that he never actually made.

109.    The *Panorama* Documentary was not a continuation of a prior broadcast. Instead, it was the result of a separate and distinct decision by Defendants to maliciously disseminate false statements about President Trump in a new medium.

110.    As pled *supra*, Defendants knew that their portrayal of the Speech in the *Panorama* Documentary was false, malicious, and defamatory.

111.    Defendants' actual malice in publishing the *Panorama* Documentary is evidenced by their intentional splicing and distorting two entirely separate sentences made by President Trump during the Speech nearly 55 minutes apart, while omitting his statement calling for peace made less than one minute after his first statement urging supports to cheer on their senators and congressmen at the Capitol.

112.    As a proximate result of the maliciously false and defamatory *per se* publication of a statement and depiction to third parties by Defendants, President Trump has been damaged.

113. Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards President Trump, he seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT II – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

114. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

115. In addition, this action is brought for violation of the Florida Deceptive and Unfair Trade Practices Act as codified in Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

116. Defendants are engaged in the conduct of trade and commerce in the State of Florida.

117. Defendants have violated the FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia,* intentionally and maliciously seeking to completely mislead their viewers by splicing together two separate parts of President Trump's Speech, while omitting other critical parts of the Speech in such a manner as to intentionally, falsely, maliciously, and defamatorily change the meaning of what President Trump said.

118. As a direct, proximate, and foreseeable result of Defendants' violation of FDUTPA, President Trump has suffered and continues to suffer substantial damages.

31

119.    Pursuant to Fla. Stat. §501.2105, President Trump is entitled to recover his attorneys' fees and costs from Defendants.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, President Trump, hereby demands a jury trial as to all issues so triable.

Dated:  December 15, 2025                                      Respectfully submitted,

<div style="margin-left:50%">

*/s/Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel:  305-614-4071
Fax:  305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

*/s/Edward Andrew Paltzik*
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice application forthcoming*)

</div>

32

/s/Daniel Zachary Epstein
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*

33



**BRITO**
P L L C

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

November 9, 2025

**Via Email**

Mr. Samir Shah
Chairman
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**samir.shah@bbc.co.uk**

Ms. Sarah Jones
General Counsel
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**sarah.jones@bbc.co.uk**

**Re:** **Demand to Retract False And Defamatory Statements**
**About The President of the United States of America**

Dear All:

This law firm serves as litigation counsel for President Donald J. Trump (hereinafter referred to as "President Trump"). Please direct all future correspondence relating to this matter to my attention. This correspondence serves as a demand under Florida Statute § 770.01[1] that you immediately retract the false, defamatory, disparaging, and inflammatory statements made about President Trump, which were published in a *Panorama* documentary that was fabricated and aired by the BBC. Failure to comply will leave President Trump with no choice but to pursue any and all legal rights and remedies available to recover damages for the overwhelming financial and reputational harm that the BBC has caused him to suffer, with all rights and remedies being expressly reserved by President Trump.

In the *Panorama* documentary, titled "Trump: A Second Chance,"[2] which was first broadcast on October 28, 2024—a week before the 2024 United States presidential election—the BBC intentionally sought to completely mislead its viewers by splicing together three separate

---

[1] President Trump does not agree or admit that only Florida law applies to any claims he might have in connection with or arising out of the Article and expressly reserves all rights concerning applicable law.

[2] *See* https://www.bbc.co.uk/programmes/m0024h6r. According to the BBC's website, the defamatory documentary was broadcast three times on October 28, 2024, and a fourth time on November 2, 2024.

1

Alejandro Brito
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

parts of President Trump's speech to supporters on January 6, 2021. The documentary showed President Trump telling supporters: "We're gonna walk down to the Capitol and I'll be there with you and we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore." This fabricated depiction of President Trump was false and defamatory given that President Trump's actual and full remarks were: "We're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down any one of you but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women." Moreover, the BBC edited out President Trump saying, "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Thus, as set forth in an internal whistleblower memorandum, the BBC's segment maliciously made it appear that President Trump "[said] things [he] never actually said," by editing together footage from the start of the speech with a separate quote early an hour later.

Due to their salacious nature, the fabricated statements that were aired by the BBC have been widely disseminated throughout various digital mediums, which have reached tens of millions of people worldwide. Consequently, the BBC has caused President Trump to suffer overwhelming financial and reputational harm.

**A. Applicable law**.

Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Statements are defamatory if "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *See Zambrano v. Devanesan*, 484 So. 2d 603, 607 (Fla. 4th DCA 1986).

Even if the BBC attempts to whitewash its conduct as simply an expression of its opinions, Florida law makes clear that such a defense will not absolve its liability. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. ***Simply couching such statements in terms of opinion does not dispel these implications***.") (emphasis added); *see also Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983) ("***[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable***.") (emphasis added).

2

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

Consequently, the BBC lacks any viable defense to the overwhelming reputational and financial harm it has caused President Trump to suffer.

**B. Demand**.

The above-referenced false, defamatory, malicious, disparaging, and inflammatory statements were published to deliberately denigrate President Trump. The timing of the fabricated documentary is evident. The BBC's reckless disregard for the truth underscores the actual malice behind the decision to publish the wrongful content, given the plain falsity of the statements. Accordingly, President Trump hereby demands that you: (1) immediately issue a full and fair retraction of the documentary and any and all other false, defamatory, disparaging, misleading, and inflammatory statements about President Trump in as conspicuous a manner as they were originally published; (2) immediately issue an apology for the false, defamatory, disparaging, misleading, and inflammatory statements about President Trump; and (3) appropriately compensate President Trump for the harm caused.

Moreover, please allow this letter to serve as notice to you, to your affiliated entities, subsidiaries, to all of their employees, and any other person acting on behalf of or in concert with the BBC, to preserve any and all evidence related in any way to the above-mentioned malicious, false, and defamatory statements the BBC published, and any other statements that the BBC has published regarding President Trump. By way of this letter, the BBC is hereby directed not to destroy, conceal, or alter any paper or electronic files, physical evidence, and/or other data relating in any way, no matter how remote, to your false claims regarding President Trump, and/or the circumstances leading to their dissemination, including, but not limited to: (1) all communications between you and any third party in any way related to your wrongful claims regarding President Trump; (2) all sources for your false claims regarding President Trump; (3) any and all documents and data referring to, reflecting, or relating to communications between you and any such third-parties or sources regarding your false claims regarding President Trump; and (4) any and all documents in any way related to your false claims regarding President Trump. This includes any information alleged to be protected by Florida Statute § 90.5015. *Monarch Air Group, LLC v. Journalism Dev. Network, Inc.,* No. 23-CV-61256, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (interpreting Fla. Stat. § 90.5015 and explaining that the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings.") (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)).

I understand that many records and files are maintained electronically. However, this letter specifically requests that all paper and hard copy originals be maintained and preserved in their original format. By the same token, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists and has been preserved, please preserve and maintain all electronically stored documents in their original native format, including all metadata. This preservation demand specifically encompasses any and all electronic documents,

3



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

including but not limited to, all word-processed files, emails, spreadsheets, all databases, log files, and any other electronically stored and/or generated documents or files.

If the BBC does not comply with the above by **November 14, 2025, at 5:00 p.m. EST**, President Trump will be left with no alternative but to enforce his legal and equitable rights, all of which are expressly reserved and are not waived, including by filing legal action for no less than $1,000,000,000 (One Billion Dollars) in damages. The BBC is on notice.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

# Ballard Spahr
### LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

November 13, 2025

*Via Email (abrito@britopllc.com) & Federal Express*

Alejandro Brito
Brito PLLC
2121 Ponce de Leon
Suite 650
Coral Gables, FL 33134

Re: November 9, 2025 Letter regarding BBC *Panorama* Documentary

Dear Mr. Brito:

Our office represents the British Broadcasting Corporation ("BBC"). We write regarding your letter to the BBC dated November 9, 2025, which you sent on behalf of President Donald J. Trump. You wrote with respect to the broadcast of the BBC's *Panorama* documentary titled "Trump: A Second Chance" ("the Program") on October 28 and November 2, 2024, depicting his supporters during President Trump's campaign for a second term in office. Please direct all further communication about your letter to my attention.

Your letter, citing Florida law, alleges that in a short clip of excerpts of his speech on January 6, 2021, the BBC "intentionally sought to completely mislead its viewers." President Trump alleges that the Program constituted defamation. The President threatens to bring a $1 billion defamation suit against the BBC.

Our client had no intention of misleading anyone. Indeed, the BBC has publicly expressed its contrition in statements to the Chair of Parliament's Culture, Media, and Sport Committee, on its website, and in the media. We also enclose with this letter a copy of the BBC's personal apology to President Trump, sent by email today to White House Chief of Staff Susie Wiles.

Additionally, the BBC has posted or shortly will post the following retraction:[1]

---

[1] https://www.bbc.co.uk/programmes/m0024h6r and
https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/

Alejandro Brito
November 13, 2025
Page 2

> *This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.*
>
> *During that sequence, we showed excerpts taken from different parts of the speech.*
>
> *However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and that this gave the mistaken impression that President Trump had made a direct call for violent action.*
>
> *The BBC would like to apologise to President Trump for that error of judgement.*
>
> *This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.*

While the BBC sincerely regrets the manner in which the video clip was edited, for the following reasons, we strongly disagree that President Trump would have a basis for a viable defamation claim.

**First**, President Trump has made no allegation that the Program was published in Florida, as he must in order to establish personal jurisdiction over the BBC and to meet the publication requirement for a defamation claim. The BBC did not have contractual rights to, and therefore did not, distribute the Program on U.S. channels. Moreover, the version on its website linked to in your letter was geographically restricted to U.K. viewers. In any event, it ceased to be available even in the U.K. from 12 months after the Program aired. The President therefore has not established that he would have any jurisdictional basis to bring a claim against the BBC in Florida or elsewhere in the United States.[2]

**Second**, President Trump will not be able to prove that the Program caused him any injury, let alone the unspecified "overwhelming reputational and financial harm" he alleges.[3] He won reelection on November 5, 2024, after the Program aired. He carried Florida by a

---

[2] *See, e.g., Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (to be actionable as defamation, "the material . . . must not only be *accessible* in Florida, but also be *accessed* in Florida") (emphasis in original).

[3] *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. Cir. Ct. 2014) (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1997)) (given "negative publicity" from "a litany of news media entities" other than defendant NBC, "the challenged excerpts from and characterization of Zimmerman's statements . . . could not have been the required 'but for' cause of Zimmerman's alleged injuries").

2

Alejandro Brito
November 13, 2025
Page 3

commanding 13-point margin, improving over his 2020 and 2016 performances in the state.[4]

Moreover, when the Program aired, the President had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee Report found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[5] Given the extensive allegations prior to the release of the Program regarding his January 6 speech, in criminal and civil cases and among the press and public, the Program could not have caused any incremental harm.

**Third**, President Trump has no basis to allege that the BBC published the Program with actual malice – that is, knowing the Program was false or while entertaining serious doubts as to its truth – as he must.[6] Rather, as the BBC Chair has explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."[7]

Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements. In the course of their prosecutions, numbers of people arrested at the Capitol on January 6 told the courts that they interpreted President Trump's remarks as a call to

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g., Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

[6] *See, e.g., N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020). Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971).

[7] Letter from BBC Chair Samir Shah to Dame Caroline Dinenage MP (Nov. 10, 2025), https://committees.parliament.uk/publications/50118/documents/270340/default.

Alejandro Brito
November 13, 2025
Page 4

action.[8]

Further, the BBC has taken prompt corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," issuing a retraction, and confirming that the Program was not scheduled to be re-broadcast and will not be rebroadcast in that form on any BBC platforms. This further negates any suggestion of actual malice.[9]

**Fourth**, the brief clip, which shows about 15 seconds of President Trump's speech on January 6, is part of an hour-long program containing extensive coverage of his supporters praising President Trump, and presenting balanced coverage of his path to reelection. Courts consider challenged statements in the context of the full publication in which they were made. Accordingly, President Trump cannot create an actionable statement or implication by citing a singular clip but ignoring the remaining, overall context of the Program.[10]

**Fifth**, the Program contains protected expressions of opinion, including many from President Trump's ardent supporters. It depicts hotly contested events related to Presidential elections, including the events of January 6, 2021, which have been the subject of extensive controversy and litigation. In this context, even if the Program is reasonably interpreted to report that President Trump encouraged the crowd to march to the Capitol on January 6, that is an

---

[8] *See, e.g.*, Ryan J. Reilly, *Jan. 6 Rioter Who Said He Wanted Trump's 'Approval' Found Guilty by Jury*, CNBC (Apr. 14, 2022), https://www.cnbc.com/2022/04/14/jan-6-rioter-who-said-he-wanted-trumps-approval-found-guilty-by-jury.html ("A Donald Trump supporter who told jurors that he was 'following presidential orders' when he stormed the U.S. Capitol on Jan. 6 was found guilty on Thursday after he admitted that he stole a coat rack and a bottle of liquor from the building."); Shawna Chen, *Judge: Jan. 6 Rioter Who Broke into Capitol Followed "Trump's Instructions,"* Axios (Jan. 17, 2023), https://www.axios.com/2023/01/18/jan6-capitol-riot-trump-instructions ("A federal judge said Tuesday that a California woman who breached the U.S. Capitol during the Jan. 6 insurrection 'followed then-President Trump's instructions' in breaking the law."); Kyle Cheney, *Jan. 6 Defendant Wants Jurors to Blame Trump, Not Him, for Decision to Breach Capitol*, Politico (Apr. 13, 2022), https://www.politico.com/news/2022/04/13/january-6-defendant-donald-trump-00025019 ("Though dozens of defendants have argued in court filings that they believed Trump had authorized the assault on the Capitol, judges have largely rejected that contention and said rioters should be held to account for their own actions. But whether a jury sees that argument differently will be an important test that could reverberate across hundreds of other cases.").

[9] *See, e.g.*, *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

[10] *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020); *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

4

Alejandro Brito
November 13, 2025
Page 5

opinion on a matter of public concern, heavily protected under defamation law in the United States.[11]

  For these reasons, the BBC declines President Trump's claim that the Program constituted defamation and his request for compensation.

  We sincerely hope that the BBC's public statements of contrition, and the direct apology that we have given to the President, will suffice to put this matter to rest.

  The BBC reserves all further rights and remedies, including those available under Fla. Stats. § 57.105 and § 768.295(2)(a).

<div align="right">

Sincerely,

BALLARD SPAHR LLP

By _Charles D. Tobin_

Charles D. Tobin

</div>

Enclosure

---

[11] *See, e.g.*, *Trump v. CNN*, 684 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (dismissing defamation case because network's description of President Trump's election challenges as the "Big Lie" was non-actionable opinion, not a statement of fact).



British Broadcasting Corporation

Broadcasting House, London  W1A 1AA

From the Chairman

The President
The White House
1600 Pennsylvania Avenue NW
Washington
D.C. 20500
United States of America

13 November 2025

Dear Mr President,

As the Chair of the BBC I wanted to write to you personally. At the same time the BBC's lawyers have today responded to your legal team. The BBC's overall legal position is as set out in that letter. I should make clear at the outset that what follows is my view as the Chair of the BBC. The organisation is, by Royal Charter, independent of His Majesty's Government and nothing I write should imply approval or disapproval by the United Kingdom Government.

Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement. As it was your speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

- 2 -

The documentary followed a number of your supporters and campaigners, who told the BBC why they wanted you to be re-elected in the 2024 US Presidential Election. The BBC's intention was to reflect their contributions to the documentary fairly and accurately, including their support for you and your Presidency.

Whilst the documentary was not scheduled to be rebroadcast, the BBC has also made public today that it will not be broadcast again on any BBC platforms in a form that includes the misleading sequence.

That the BBC produces content of the highest editorial quality is of paramount importance to me. As Chair, I take responsibility for personally ensuring that the BBC retains the trust and confidence of our audiences.

I would be happy to discuss this matter, should this be of interest to you.

Yours sincerely,

Samir Shah

BBC Chair

# Ballard Spahr
### LLP

– – – – – – – – – – – – – – – – – –

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 15, 2026

*Via Certified Mail*

Orrice W. Brown
Acting Comptroller General of the United States
c/o Records Management and Services Officer
Office of Information Systems and Services
Government Accountability Office
441 G Street NW
Washington, DC 20548

Re:     *Touhy* Request for the Production of Documents in *Trump v. BBC*, Case No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Ms. Brown:

This law firm represents defendants the British Broadcasting Corporation ("the BBC"), BBC Studios Distribution Limited, and BBC Studios Productions Limited in the above-referenced civil action pending in the United States District Court for the Southern District of Florida (the "Action"). We submit this request for information, identified below, pursuant to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and 4 C.F.R. §§ 82.1-82.2.

## BACKGROUND

On December 15, 2025, Plaintiff President Donald J. Trump filed a two-count lawsuit alleging defamation and violations of the Florida Deceptive and Unfair Trade Practices Act against Defendants, arising from the documentary titled "*Trump: A Second Chance?*" ("the Documentary"). For your reference, we have attached a copy of the complaint to this letter as Exhibit 1. The Documentary explored for the BBC's U.K. audience the President's continued success with his loyal American voters, following some of his most ardent supporters, known as the "Front Row Joes," and speaking with experts in the run up to the November 2024 U.S. presidential election. Plaintiff alleges that the Documentary defamed him in its depiction of his speech on January 6, 2021 ("the Speech"), which he alleges falsely depicted him as inciting violence at the Capitol that day.

The Action puts directly into issue the factual circumstances of the violence at the Capitol building on January 6, 2021, including whether there were plans of violence ahead

Orrice W. Brown
May 15, 2026
Page 2

of time, the communications about any planned violence, and whether individuals understood the Stop the Steal Rally or Trump's communications about January 6, 2021 as a call to violence.  Accordingly, the requested documents and information identified below are paramount to the case that Plaintiff has brought against Defendants.

The parties in the Action are currently going through the discovery process with a pending motion to dismiss filed.  At the moment, Plaintiff has not provided any such relevant documents or information himself in response to Defendants' written discovery requests propounded on him.  Furthermore, the information possessed by the Government Accountability Office (the "GAO") about the intelligence it gathered regarding the events of January 6, 2021 are in the agency's possession, and accordingly would only be obtainable through this Request.

Given that Plaintiff's allegations have placed these documents in the GAO's possession at the heart of the Action, and that Defendants need these documents to adequately defend themselves in court, the need for these documents outweighs any confidentiality of the information and any burden on the GAO to produce these records.  As detailed below, the requested records are confined by date and subject matter to limit the intensiveness of any search for responsive documents.  Additionally, there is a protective order in place that will limit the exposure of any confidential items beyond the parties involved.

No previous decisions, orders, or pending motions in the Action bear upon the relevance of the requested records or testimony at this point.

### LIST OF REQUESTED DOCUMENTS

In the interest of transparency and aiding the GAO's evaluation of this request, below is a description of documents Defendants seek, along with a description of how the information sought is relevant to the issues in the Action and why the information sought is unavailable by any other means.

- **Documents and communications used in preparation for the GAO's May 2, 2022 report titled "Capitol Attack: Federal Agencies' Use of Open Source Data and Related Threat Products Prior to January 6, 2021," including open source data shared with or received by the GAO and interviews with agency officials:**  This requested information is relevant to the issues in the legal proceeding because it is relevant to Plaintiff's claim that the Documentary misportrayed his role in the events on January 6, 2021. Therefore, it is highly relevant to this litigation whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of

Orrice W. Brown
May 15, 2026
Page 3

those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally.

Defendants seek this information in good faith and reasonably believe that the documents identified above are not available through other discovery or sources available in this Action.

We respectfully ask that you act on this *Touhy* request as promptly as possible. Thank you in advance for your attention to this matter.

Sincerely,

BALLARD SPAHR LLP

Charles D. Tobin

Cc: Counsel for Plaintiff

Encl.: Subpoena, Exhibit 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

_____ District of _____

|  |  |  |
|---|---|---|
| *Plaintiff* | ) ) ) ) ) ) | Civil Action No. |
| v. | | |
| *Defendant* | | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❏ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
|  |  |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, )<br><br>    Plaintiff, )<br><br>v. )<br><br>BRITISH BROADCASTING CORP., et al., )<br><br>    Defendants. ) | Case No. 1:25-cv-25894-RKA |

**ATTACHMENT A TO SUBPOENA TO
THE GOVERNMENT ACCOUNTABILITY OFFICE
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Communications" means any manner of receiving or transmitting information, opinions or thoughts, whether orally, in writing, electronically, or otherwise.  The term "Communication(s)" includes, but is not limited to, any meeting, conversation, discussion, conference, consultation, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, including e-mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

5.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

6.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—

2

including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

7. "Including" shall be construed as "including but not limited to."

8. "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

9. "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

10. "Washington, D.C. area" means the Washington—Arlington—Alexandria Metropolitan Statistical Area.

11. "You" and "Your" shall refer to the recipient of these requests, and shall include all components under the Government Accountability Office; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

## GENERAL INSTRUCTIONS

1. In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

3

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control;

(g) the Document's current location; and

(h) if the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections) for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

4

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6. Unless otherwise stated, the relevant time period for all requests is for Documents created or originating on or after January 6, 2021 to May 2, 2022.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**: All Documents and Documents used in the preparation and drafting of Your May 2, 2022 report, titled "Capitol Attack: Federal Agencies' Use of Open Source Data and Related Threat Products Prior to January 6, 2021," Relating to the potential of planned demonstrations or potential organized violence in the Washington D.C. area

on January 6, 2021, including data shared with You and interviews with other federal agency officials.

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BRITISH BROADCASTING CORPORATION a/k/a/ BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, PRESIDENT DONALD J. TRUMP ("President Trump"), by and through his counsel, brings this action against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC (the "BBC"), BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED (collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1. This action concerns a false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump, which was published in a BBC *Panorama* documentary, that was fabricated and aired by the Defendants one week before the 2024 Presidential Election in a brazen attempt to interfere in and influence the Election's outcome to President Trump's detriment.

1

2.     In the BBC *Panorama* documentary titled "Trump: A Second Chance" (the "*Panorama* Documentary," or the "Documentary"),[1] which was first broadcast on October 28, 2024, the BBC intentionally and maliciously sought to fully mislead its viewers around the world by splicing together two entirely separate parts of President Trump's speech on January 6, 2021 (the "Speech").[2] The *Panorama* Documentary deliberately omitted another critical part of the Speech in such a manner as to intentionally misrepresent the meaning of what President Trump said.

3.     The *Panorama* Documentary falsely depicted President Trump telling supporters: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary). President Trump never uttered this sequence of words.

4.     This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and then, much later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight*

---

[1]     First published by Defendants on October 28, 2024 with a runtime of 57:54. *See* "Trump: A Second Chance?", BBC (Oct. 28, 2024) (https://www.bbc.co.uk/programmes/m0024h6r) (last visited Dec. 15, 2025)

[2]     The Speech was 70:53 in length.

*like hell, and if you don't fight like hell, you're not going to have a country anymore,*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

5.     Moreover, the BBC purposefully omitted President Trump stating, less than one minute after urging supporters to cheer for their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

6.     As set forth in a damning and recently leaked BBC internal whistleblower document, the BBC intentionally used the *Panorama* Documentary to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting, and that he "said something he did not,"[3] by splicing together footage from the start of the Speech with a separate quote that he said nearly 55 minutes later, while omitting his statement calling for peace, made less than one minute after his first statement urging supports to cheer their senators and congressmen at the Capitol. Such distortion of the President's speech by the BBC "materially misled viewers."[4]

7.     Moreover, concerns about the *Panorama* Documentary were raised internally before its dissemination, but the BBC ignored those concerns and did not take corrective action.

8.     This instance of doctoring—in the form of distortion of meaning and splicing of entirely unrelated word sequences—is part of the BBC's longstanding pattern of manipulating

---

[3]     Gordon Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*, THE TELEGRAPH (Nov. 6, 2025), https://www.telegraph.co.uk/news/2025/11/06/read-devastating-internal-bbc-memo-in-full/ (last visited Dec. 15, 2025).

[4]     *Id.*

President Trump's speeches and presenting content in a misleading manner in order to defame him, including fabricating calls for violence that he never made. *See e.g.* ¶¶ 55-87, *infra*.

9.     The BBC, faced with overwhelming and justifiable outrage on both sides of the Atlantic, has publicly admitted its staggering breach of journalistic ethics, and apologized, but has made no showing of actual remorse for its wrongdoing nor meaningful institutional changes to prevent future journalistic abuses.

10.     Accordingly, President Trump brings this action for compensatory and punitive damages for the extensive reputational harm inflicted upon him by the Defendants.

## **PARTIES**

11.     Plaintiff, President Trump, is a citizen of the United States and a citizen of the State of Florida. He served as the 45th President of the United States and currently serves as the 47th President of the United States.

12.     Defendant, the BBC, is a British corporation established by royal charter and operating under an agreement with the United Kingdom's Secretary of State for Culture, Media, and Sport, with its principal place of business in London, England. The BBC produced and published the *Panorama* Documentary with the other Defendants—its subsidiaries—as well with its production partner, October Films Ltd., and its international distribution partner, Blue Ant Media Corporation.

13.     Defendant, BBC Studios Distribution Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

14.     Defendant, BBC Studios Productions Limited, is a British corporation and a subsidiary of the BBC, which co-produced and published the *Panorama* Documentary.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are completely diverse, as President Trump is a citizen of Florida, while all Defendants are citizens of the United Kingdom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     The Court possesses personal jurisdiction over Defendants pursuant to Florida Statute 48.193(2) because Defendants, during the operative period alleged in this Complaint, engaged in substantial and not isolated business activities in Florida, and more specifically in this District. Defendant BBC publishes online news reports, editorials, and other media content at https://www.bbc.com, which are regularly accessed by individuals in Florida.

17.     The BBC operates in the United States not as an abstract concept but in a constant manner; the BBC has a concrete and continuous presence in the United States, including in Florida, where BBC maintains an office, at 255 Alhambra Circle, Suite 1000, Coral Gables, FL 33134. BBC Studios Americas Inc., a BBC subsidiary, also operates out of this location.

18.     The BBC also intentionally, purposefully, and continuously transmits news content and other information into Florida, through its multiple websites, to avail itself of the Florida market and its millions of subscribers and broader audience. For example, the BBC offers web

5

pages entitled "Florida – BBC News"[5] and "Florida – BBC Weather,"[6] among others. The BBC also offers web pages specific to cities in Florida.[7]

19.     Additionally, the BBC offers subscriptions to individuals in Florida and as a result, has thousands of subscribers in Florida. Any individual in the United States, including Florida, can pay for a subscription to the BBC's content and services.[8]

20.     Individuals in the United States, including Florida, also have another option for consuming content produced by the BBC—the *BritBox* by BBC subscription streaming platform.[9] *BritBox* is available in the United States, including in Florida, and has thousands of subscribers in Florida. *BritBox* offers American subscribers, including Floridians, access to a substantial amount of the BBC's original content—including *Panorama*.

21.     Accordingly, BBC has engaged, and continues to engage in, substantial and not isolated activity in Florida.

---

[5]     *Florida – BBC News*, BBC, https://www.bbc.com/news/topics/c77jz3mdq1jt (last visited Dec. 15, 2025).

[6]     *Florida – BBC Weather*, BBC, https://www.bbc.com/weather/3442585 (last visited Dec. 15, 2025).

[7]     *See, e.g., Miami – BBC News*, BBC, https://www.bbc.com/news/topics/cp7dde75nmlt (last visited Dec. 15, 2025).

[8]     *Get even more from a BBC subscription*, BBC, https://www.bbc.com/subscribe (last visited Dec. 15, 2025).

[9]     *BritBox by BBC*, https://www.britbox.com/us/?gclsrc=aw.ds&&utm_source=google&utm_medium=paid-search&utm_campaign=17444044535-137684208899&utm_content=602709820305&utm_term=g&gad_source=1&gad_campaignid=17444044535&gbraid=0AAAAADMxMXrfBmo_s56m_ZA2aFpeyy6C_&gclid=CjwKCAiA0eTJBhBaEiwA-Pa-hbSItFwaYwfNGsO5WR1trkY2tlU0j8XCZ76_KY4_xRzkIl0Sr6pPBxoCTrkQAvD_BwE (last visited Dec. 15, 2025).

6

22.     In addition, this Court possesses personal jurisdiction over Defendants pursuant to: (a) Florida Statute §48.193(1)(a)(1), because Defendants operate, conduct, engage in, or carry on a business in Florida or have an office or agency in Florida, (b) Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act in Florida (as stated herein), and (c) Florida Statute §48.193(1)(a)(6) because Defendants caused injury to President Trump within Florida arising out of an act or omission committed by Defendants in Florida, while at or about the time of the injury, products and services provided by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

23.     The *Panorama* Documentary was available to be viewed by citizens of Florida and was, in fact, viewed in Florida by citizens of Florida, notwithstanding the BBC's anticipated, and inaccurate claims that the Documentary was unviewable in the United States due to purported geo-locking. As disgraced, and now former BBC Director General Tim Davie ("Davie") stated in his recent resignation letter: "Despite a hugely competitive market, I am proud that the BBC remains the most trusted news brand *globally*. We have continued to ensure that it is used by almost everyone in the UK as well as hundreds of millions of people *globally*."[10]

24.     The *Panorama* Documentary was available to *BritBox* subscribers in Florida and was in fact viewed by these subscribers through *BritBox* and other means provided by the BBC.

25.     In addition to access through various means, including *BritBox*, it is well established that millions of Florida citizens use a virtual private network ("VPN") to view content such as the *Panorama* Documentary, which is aired on foreign streaming platforms like BBC iPlayer.

---

[10]     *Davie and Turness resignations in full*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c1k02vr1my2o (last visited Dec. 15, 2025). (Emphasis added).

7

26.     According to *vpnMentor*, a VPN research firm, VPN usage in Florida has skyrocketed since 2024, with a 51% increase in demand on December 19, 2024, and an over 1,000% increase in VPN usage at the beginning of 2025.[11]

27.     Florida streamers have opted to use VPNs to increase their "streaming freedom." Among the most popular streaming services accessed by viewers using a VPN is BBC's online streaming platform, BBC iPlayer.[12]

28.     To that end, an article published by *Tom's Guide*, a reputable technology news outlet, revealed that a VPN usage survey showed that approximately 41% of VPN subscribers use the service to stream content, citing BBC iPlayer as an example of what a VPN subscriber could view using a VPN.[13]

29.     The *Panorama* Documentary's publicity, coupled with significant increases in VPN usage in Florida since its debut, establishes the immense likelihood that citizens of Florida accessed the Documentary before the BBC had it removed.

---

[11]     *Floridians Flock to VPNs As Age-Verification Law Takes Effect*, TAMPA FREE PRESS (Jan. 8, 2025) (https://www.tampafp.com/floridians-flock-to-vpns-as-age-verification-law/) (last visited Dec. 15, 2025).

[12]     *Florida VPN Surge: Why VPN Usage Skyrocketed 1,000% in Florida* (2025), TRUSTED TECHSPOT (https://trustedtechspot.com/florida-vpn-surge/) (last visited Dec. 15, 2025).

[13]     *More Than 40% of VPN Subscribers Use Them for Streaming – Here's Why*, TOM'S GUIDE (June 2, 2021) https://www.tomsguide.com/features/more-than-40-of-vpn-subscribers-use-them-for-streaming-heres-why) (last visited Dec. 15, 2025).

8

30.     Articles like those published by Tom's Guide[14] and PureVPN[15]—giving a summary of the *Panorama* Documentary's plot, telling users how to view the Documentary, and going as far as to provide links to VPNs that allow a user to view BBC iPlayer—make it overwhelmingly certain that Floridians accessed the Documentary using a VPN during the time the Documentary was available.

31.     Further supporting the fact that Floridians accessed the *Panorama* Documentary through a VPN, *The Guardian* reported that research showed that "65 million people from abroad watch the broadcaster's license-fee funded iPlayer service using proxy servers or virtual private networks."[16]

32.     As underscored by the Chairman of the FCC, Brendan Carr, "[t]he BBC has stated that it has a number of partnerships with U.S. broadcasters, including PBS and NPR, to distribute BBC programming here in America."[17]

---

[14]     *How to Watch 'Trump: A Second Chance?'*, TOM'S GUIDE (Oct. 28, 2024) (https://www.tomsguide.com/entertainment/streaming/how-to-watch-trump-a-second-chance-online-from-anywhere) (last visited Dec. 15, 2025).

[15]     *How to Watch 'Trump: A Second Chance in the US'*, PUREVPN https://www.purevpn.com/how-to-watch-trump-a-second-chance-in-the-us (last visited Dec. 15, 2025).

[16]     Paul Revoir, *BBC iPlayer 'Watched By More Than 60 Million People Outside the UK for Free'*, THE GUARDIAN (July 21, 2015) (https://www.theguardian.com/media/2015/jul/21/bbc-iplayer-uk-vpn-proxy-server) (last visited Dec. 15, 2025).

[17]     *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at* BCC (Nov. 19, 2025) (https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed) (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025) (https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/) (last visited Dec. 15, 2025).

33. The BBC intentionally distributed and placed the *Panorama* Documentary into the stream of commerce in the United States generally, and in Florida specifically, through various third-party distributors who entered into agreements with Defendants to disseminate the Documentary worldwide. One such agreement was with Blue Ant Media Corporation, a Canadian company engaged by the BBC to distribute the Documentary in North America, including Florida.

34. Blue Ant not only distributed the *Panorama* Documentary in North America through an agreement with the BBC, giving Blue Ant the exclusive international licensing rights to the Documentary,[18] including in Florida, but in an action displaying awareness of wrongdoing, Blue Ant pulled the Documentary from its catalogue on or about November 12, 2025.[19]

35. Blue Ant aggressively advertised its exclusive distribution of the *Panorama* Documentary outside of the United Kingdom, further evidencing the intent of the BBC and its strategic partners to disseminate the Documentary as widely and into as many streams of commerce and channels of distribution as possible, including Florida.[20]

---

[18] Karolina Kaminska, *Blue Ant Studios to shop BBC's 'President Trump: A Second Chance?' In Cannes*, C21 MEDIA (Oct. 10, 2024), https://www.c21media.net/news/blue-ant-studios-takes-october-films-president-trump-a-second-chance-to-cannes/ (last visited Dec. 15, 2025).

[19] Nicholas Sokic, *Blue Ant pulls BBC Trump doc from catalogue*, PLAYBACK (Nov. 12, 2025), https://playbackonline.ca/2025/11/12/blue-ant-pulls-controversial-bbc-trump-doc-from-catalogue/ (last visited Dec. 15, 2025) ("Blue Ant rights has confirmed that it has pulled the BBC *Panorama* documentary on U.S. President Donald Trump from its catalogue amid the controversy surrounding the film.").

[20] *'President Trump: A Second Chance?' Launches at MIPCOM 2024*, BLUE ANT MEDIA CORPORATION (Oct. 10, 2024), https://web.archive.org/web/20250712071622/https://blueantmedia.com/2024/10/president-trump-a-second-chance-launches-at-mipcom-2024/ (last visited Dec. 15, 2025) ("Blue Ant Studios today confirms that the explosive Donald Trump documentary, produced by October Films, has just wrapped production with the working title, President Trump: A Second Chance? Commissioned by BBC's Panorama, and produced by October Films, this hotly anticipated and

10

36.     Further, and as explained in greater detail below, the BBC elected to publish the *Panorama* Documentary just one week before the 2024 United States Presidential Election with the express intent of interfering with it and trying to undermine President Trump's odds of winning reelection.

37.     Moreover, as plainly seen in the very beginning of the *Panorama* Documentary, the BBC's producers and a film crew contracted by the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago, in Palm Beach, Florida, spending substantial amounts of time in Florida and capturing extensive footage on and around the grounds of Mar-a-Lago, and surrounding areas, that the BBC ultimately used in the Documentary.

38.     The BBC explicitly instructed and ordered its producers to travel to Florida and to utilize this forum for the purpose of creating the Documentary and defaming President Trump.

39.     The *Panorama* Documentary contains extensive evidence and examples of the BBC's producers gathering original footage specifically for use in the Documentary—not using stock footage—at Mar-a-Lago and nearby in the Palm Beach area on April 4, 2023, as well as on other dates. These examples include, but are not limited to: (a) Between 2023 and 2024, the BBC, or its contractors, filmed (i) a wide angle aerial view of Mar-a-Lago taken from a vantage point in the Lake Worth Lagoon (3:57 into the Documentary), (ii) a wide angle aerial view of Mar-a-Lago from a vantage point just north facing the Atlantic Ocean (4:47), (iii) a wide angle shot of the Mar-a-Lago pool and exterior and added a graphic "Trump Residence, Mar-a-Lago Florida" (5:00); and (b) on April 4, 2023, BBC producers and BBC-contracted crew members filmed (i) supporters of

---

distinctive 1x60 documentary will make its official international debut at MPICOM, where attending buyers will have an exclusive previews.").

11

President Trump lining the streets as President Trump's motorcade proceeded with President Trump through Palm Beach on the way to Mar-a-Lago (4:03), (ii) Rick Frazier, a supporter of President Trump, in the passenger seat of a vehicle as it followed the motorcade on the approach to Mar-a-Lago (4:09), (iii) The vehicle carrying Frazier as it entered Mar-a-Lago (4:51), (iv) Frazier as he walked in to Mar-a-Lago (5:03), (v) President Trump as he walked in to Mar-a-Lago to deliver a speech (5:11), (vi) Supporters cheering for the President as he prepared to speak inside Mar-a-Lago (5:24), (vii) President Trump as he delivered a speech to supporters inside Mar-a-Lago (5:27), and (viii) Frazier as he interacted with other supporters of President Trump (6:15 and 6:55).

40.     The footage gathered by BBC producers and BBC-contracted crew members in Florida was an essential component of the *Panorama* Documentary. Having intentionally dispatched personnel and agents to physically enter Florida for the purpose of gathering this footage, and having extensively availed itself of the benefits of this forum, the BBC is subject to personal jurisdiction in Florida.

41.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: President Trump is a citizen of Florida who was defamed by the BBC while in Florida, the BBC filmed the *Panorama* Documentary in significant part in Florida, and the BBC, in concert with its strategic partners including October Films Ltd. and Blue Ant Media Corporation, distributed the Documentary into Florida.

12

## FACTUAL ALLEGATIONS

### *The BBC's Defamatory and Deceptive Depiction of*
### *President Trump's Speech in the Panorama Documentary*

    *i.*       <u>*The BBC Splices and Distorts President Trump's Speech*</u>

42.    The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary wrongly made it appear that he said: "*We're going to walk down to the Capitol, and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

43.    This fabricated depiction of President Trump during the Speech was false, deceptive, and defamatory, given that President Trump's actual and full remarks during the Speech were (a) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this*, *we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (b) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021 at 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

44.    Moreover, to further the BBC's intended, false, malicious, and defamatory message that President Trump fomented violence, which he did not, the BBC intentionally omitted President Trump saying, less than one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building*

13

*to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

> ii.     *The BBC's Director General and Head of News Resign in Disgrace,*
> *and the BBC, Under Fire, Reluctantly Admits Wrongdoing*

45.     On November 9, 2025, Davie and News CEO Deborah Turness resigned in disgrace over their leading roles in the *Panorama* Documentary.[21]

46.     Also on November 9, 2025, President Trump's counsel emailed a letter to Samir Shah (Chairman of the BBC) and Sarah Jones (General Counsel) entitled "Demand to Retract False and Defamatory Statements About The President of the United States of America" demanding retraction of the BBC's false depiction of President Trump, an apology for the false depiction of President Trump, and monetary compensation. *See* **Exhibit A**.

47.     By letter dated November 13, 2025, the BBC's counsel indicated that the BBC would apologize to President Trump but, somehow, ignoring the resignations of the BBC's leadership, admitting of wrongdoing, and apology, still attempted to deny intentional wrongdoing and declined to pay damages. *See* **Exhibit B**.

48.     Enclosed with the letter from counsel was a letter of apology from Chairman Shah, which stated, *inter alia*:

> Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. ***This gave the mistaken impression that you had made a direct call for violent action***. ***That was an editorial error and it should not have happened***. ***I have stated clearly and publicly that the BBC apologises for that error of judgement***. As it was your

---

[21]     Aleks Phillips and Helen Bushby, *BBC director general and News CEO resign over Trump documentary edit*, BBC (Nov. 9, 2025), https://www.bbc.com/news/articles/c3vn25d5dq7o (last visited Dec. 15, 2025) ("It is unprecedented for both the director general and the head of BBC News to resign on the same day."); *see also Davie and Turness resignations in full*, *supra*.

speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

*Id*. (emphasis added).

49.     The BBC then published the following apology on its "Corrections and Clarifications" page, which was also included in the November 13 letter:

**Panorama – Trump: A Second Chance?**

**28 October 2024**

This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.

During that sequence, we showed excerpts taken from different parts of the speech.

However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and **that this gave the mistaken impression that President Trump had made a direct call for violent action**.

The BBC would like to apologise to President Trump for that **error of judgment**.

This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.[22]

50.     Notably, the BBC did not broadcast a correction, apology, or retraction during a broadcast in a comparable manner as the *Panorama* Documentary, or with a comparable audience.

### *Substantial Evidence of The BBC's Actual Malice*

51.     Contrary to the BBC's claim that its splicing, manipulation, and distortion of the Speech was an unintentional "editorial error," substantial evidence suggests that this was an intentional and malicious effort to falsely and deceptively portray President Trump as having called for violent action on January 6, 2021.

---

[22]     *Corrections and Clarifications*, BBC (Nov. 13, 2025), https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/ (last visited Dec. 15, 2025) (emphasis added).

15

52. As an initial matter of common sense, it would have been impossible for BBC's journalists and producers to splice together two distinct parts of the Speech from nearly 55 minutes apart *unless* they were acting intentionally. Such a dramatic distortion could never have occurred by accident. Two distinct parts of a speech from nearly 55 minutes apart do not inadvertently become spliced or linked together without effort, knowledge, and purpose. In parallel, by definition, an "an error of judgment," as admitted to by the BBC, is not inadvertent, it includes an intentional act.

53. The BBC's actual malice is further compounded by its prior acts that unequivocally demonstrate that the organization has been anything but fair and impartial when it comes to reporting on President Trump. Substantial evidence demonstrates that before the publication of the *Panorama* Documentary, the BBC and its leadership bore President Trump ill will, wanted him to lose the 2024 Presidential Election, and were dishonest in their coverage of him.

54. The BBC, its journalists, and its producers knew at and prior to the time they published the *Panorama* Documentary that the BBC's depiction of President Trump's Speech was false.

### i. *The Prescott Memorandum*

55. In the early Summer of 2025, Michael Prescott, a journalist who until June 2025 was an independent adviser to the BBC's Editorial Guidelines and Standards Committee ("EGSC"), sent an internal memorandum (the "Memorandum") to the BBC Board "expos[ing] a string of incidents that demonstrate serious bias in the corporation's reporting"; following the leak of the Memorandum, *The Telegraph* published the Memorandum in early November 2025.[23]

---

[23] Rayner, *Revealed: the devastating memo that plunged the BBC into crisis*.

56.     Prescott highlighted a litany of disturbing misconduct demonstrating how far the BBC has strayed from accepted standards of journalistic integrity, including, but not limited to, the BBC's tampering with President Trump's Speech in the Documentary.[24]

57.     Notably, Prescott is nonpartisan, as he wrote in the Memorandum:

> I think it is important to state that I have never been a member of any political party and do not hold any hard and fast views on matters such as American politics or disputes in the Middle East. My views on the BBC's treatment of the subjects covered below do not come with any political agenda. Rather, what motivated me to prepare this note is despair at inaction by the BBC Executive when issues come to light. On no other occasion in my professional life have I witnessed what I did at the BBC with regard to how management dealt with (or failed to deal with) serious recurrent problems.[25]

58.     Regarding the *Panorama* Documentary, Prescott wrote:

> I watched the programme and found it to be neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance. Critics of the Republican presidential candidate vastly outnumbered those who argued for him. What examination there was of reasons for Trump's popularity seemed to me insufficient given the overall balance of the programme. Given what I took to be the anti-Trump nature of the programme, I of course assumed there would be a similar, balancing Panorama programme about Democrat presidential candidate Kamala Harris the following week. I remain shocked that there was not.[26]

59.     Prescott was not alone in his assessment:

> I raised my concerns at the EGSC and David Grossman [Senior Editorial Adviser to the EGSC] was asked to review the programme. He concluded the main contributors to the documentary were heavily weighted against Trump, with just one supporter against ten who questioned his fitness for office. Worse still, David highlighted alarming concerns about how Panorama had edited Trump's speech to his supporters on January 6, 2021 . . . . Examining the charge that Trump had incited protesters to storm Capitol Hill, it turned out Panorama had spliced together two clips from separate parts of his speech. This created the impression that Trump said something he did not and, in doing so, materially misled viewers.[27]

---

[24]     *Id.*

[25]     *Id.*

[26]     *Id.*

[27]     *Id.*

17

60.     Prescott concluded about the splicing of President Trump's Speech that:

This was one of the most shocking sets of issues uncovered during my time with the EGSC. If BBC journalists are allowed to edit video in order to make people "say" things they never actually said, then what value are the Corporation's guidelines, why should the BBC be trusted, and where will this all end?[28]

ii.     *The 2022 BBC Newsnight Distortion Demonstrating that the Panorama Documentary Splice is Part of a Defamatory Pattern by the BBC of Falsely Depicting President Trump Through Doctored Footage*

61.     As further revealed by *The Telegraph*, the BBC also aired similarly doctored footage of President Trump's Speech on a 2022 episode of *BBC Newsnight*.[29]

62.     In the doctored Speech clip aired by *BBC Newsnight*, President Trump is falsely, maliciously, and defamatorily depicted as saying: "*We're going to cheer on our brave senators and congressman and women, and we fight, we fight like hell*."[30]

63.     What President Trump really said was: "*[A]nd we're going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them.*"[31] (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech).

---

[28]     *Id.*

[29]     Camilla Tominey, Tim Stanley, John Cadigan, Rob Crilly, *BBC Newsnight also doctored Trump speech*, THE TELEGRAPH (Nov. 13, 2025), https://www.telegraph.co.uk/news/2025/11/13/bbc-doctored-trump-speech-second-time-newsnight/ (last visited Dec. 15, 2025).

[30]     *Id.*

[31]     *Id.*

64.     As *The Telegraph* reported: "Spliced footage of the speech, which aired in an episode in 2022, made it appear that Mr. Trump was encouraging his supporters to riot. The edit was much like a version aired in a *Panorama* documentary broadcast last year."[32]

65.     As further reported by *The Telegraph*: "Like *Panorama*, the *Newsnight* edit made it look as if the US President had urged supporters to walk to the Capitol building with him to 'fight like hell' by linking statements made nearly an hour apart in his speech."[33]  The harm caused by this doctoring was exacerbated by the BBC intentionally omitting President Trump stating, only one minute after urging supporters to cheer on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard*." (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

66.     Immediately after the *BBC Newsnight* episode aired, Mick Mulvaney, former Acting White House Chief of Staff, and David Chaudoir, former award-nominated graphic designer for *BBC Newsnight* from 2022-24, both individually voiced their concerns regarding the misleading and malicious way *BBC Newsnight* edited the clip to distort reality.[34]

67.     Mr. Chaudoir specifically told *The Telegraph* that he was present for discussions about the *BBC Newsnight* clip the day after it was published, wherein *BBC Newsnight* production team members dismissed any ethical concerns about the *BBC Newsnight* clip.[35]

---

[32]     *Id.*

[33]     *Id.*

[34]     *Id.*

[35]     *Id.*

19

68. Mr. Mulvaney expressed his concern on-air while being interviewed on *BBC Newsnight,* stating:

> Your video actually spliced together the presentation. He said: 'We're going to go down and we're going to cheer on our senators and our house members' and then it actually goes on to say 'And some of them we might not be able to' and that line about 'and we fight and fight like hell' is actually later in the speech yet your video makes it look like those two things came together. [36]

69. The malicious nature of the spliced and edited clip is further underscored by former BBC legal affairs correspondent Clive Coleman's statements in response to the *Panorama* Documentary, stating:

> I really struggle to understand how we got to this place . . . The first lesson almost you're taught as a broadcast journalist is that you do not join two bits of footage together from different times in a way that will make the audience think that it is one piece of footage.[37]

iii. *The 2024 BBC News Shooting Hoax Further Demonstrating that the Panorama Documentary Doctoring is Part of an Defamatory Pattern by the BBC of Falsely Depicting President Trump Calling for Violence*

70. As also revealed by *The Telegraph*, the BBC "has admitted misleading viewers by claiming that Donald Trump called for one of his leading critics to be shot in the face."[38]

71. This admission by the BBC, regarding three instances of false statements about

---

[36]   *Id*.

[37]   Faith Wardwell, *BBC Apologizes to Trump for Documentary Edits, but Pushes Back on Legal Threat*, POLITICO (Nov. 13, 2025) (https://www.politico.com/news/2025/11/13/bbc-trump-apology-documentary-00651451) (last visited Dec. 15, 2025).

[38]   Anita Singh, *BBC admits falsely claiming Trump wanted to shoot critic*, THE TELEGRAPH (Dec. 9, 2025), https://www.telegraph.co.uk/news/2025/12/09/bbc-admits-falsely-claiming-trump-wanted-to-shoot-critic/ (last visited Dec. 15, 2025).

President Trump supposedly calling for violence against a political opponent, none of which occurred, is contained in the now-public Memorandum, and yet the BBC has still failed to issue a public correction.[39]

72. As described by *The Telegraph*:

In the days before the US presidential election in November last year, a presenter on BBC World News America said that Mr. Trump "appeared to suggest Liz Cheney should face a firing squad for her stance on foreign policy."

On the BBC News Channel, another presenter asked his guest: "He [President Trump] is out there on the campaign trail saying he wants people to shoot Liz Cheney in the face . . . Is that the sort of thing women react well to?

Speaking on the Six O'Clock News the same night, Sarah Smith, the BBC's North America editor, said Mr. Trump had been "ratcheting up the violent rhetoric."

She added: "In the latest spat, Donald Trump has been accused of being petty, vindictive and a wannabe tyrant because he suggested that one of his political opponents should face guns, have them trained on her face."[40]

73. All these statements by BBC presenters were false.

74. "In fact, Mr. Trump had accused Ms. Cheney of being a 'radical war hawk' who wanted to send troops to war while she remained in the safety of Washington DC, saying: 'Let's put her with a rifle standing there with nine barrels shooting at her face. OK? Let's see how she feels about it.'"[41]

75. This false, defamatory, and malicious coverage of President Trump, broadcast in the same time period as the release of the *Panorama* Documentary, was consistent with the BBC's *modus operandi*, defaming President Trump by fabricating calls for violence allegedly issued by him, that he never actually made.

---

[39] *Id.*

[40] Rayner, *Revealed: the devastating memo that plunged the BBC into crisis.*

[41] *Id.*

21

iv. *The Panorama Documentary Was Intentionally One-Sided and Inflammatory, demonstrating that the Doctoring of President Trump's Speech Was Intentional and Part of the BBC's Defamatory Pattern*

76. The lack of any effort by the BBC to publish content even remotely resembling objective journalism, or to maintain even a slight semblance of objectivity in the *Panorama* Documentary, demonstrates that the BBC had no regard for the truth about President Trump, and that the doctoring of his Speech was not inadvertent, but instead was an intentional component of the BBC's effort to craft as one-sided an impression and narrative against President Trump as possible.

77. Indeed, by any measure, including the overwhelming ratio of anti-Trump versus pro-Trump commentators in the *Panorama* Documentary, the exceptionally high percentage of time granted to these negative voices in the Documentary versus the positive voices, and the inflammatory content of the negative remarks, all coupled with the BBC's historical unfairness to the President, it is apparent that the BBC fabricated the Documentary to damage President Trump. Doctoring his Speech was consistent with, and part of, the BBC's *modus operandi* of negatively covering President Trump without any pretense of objectivity.

78. The BBC's aggressively anti-Trump stance is reflected straightaway in the opening scene of the *Panorama* Documentary's introduction, which runs for almost three minutes and begins with noted anti-Trump commentator Rick Wilson—who has written two books criticizing President Trump, *Everything Trump Touches Dies* (2018) and *Running Against the Devil: A Plot to Save America From Trump-and Democrats from Themselves* (2020), and has called the President "the devil" and a "cult leader"—declaring, to the backdrop of ominous cinematic music reaching a dramatic crescendo: "I'm the leading anthropologist of Donald Trump in the, in the

22

world, probably, I've thought about him and studied him more than probably anybody else, and I hate him. I hate what he is, and what he does."

79. Seconds later, Wilson states of President Trump: "When you let the monster escape, it will come back, it is a rule of every damn horror movie in history."

80. Former Clinton Secretary of Labor and current Berkeley Professor Robert Reich, another vocal critic of President Trump, then offers: "Once you've unleashed this anger, this hate, into the blood of America, well, it's very very difficult to stop it."

81. A greater majority of the verbal commentary in the *Panorama* Documentary features negative assertions about President Trump by twelve individuals known to be hostile to the President, all of whom are presented as having some form of relevant expertise and authority about the subject matter presented. Moreover, an overwhelming majority of the overall Documentary, including the non-interview segments depicting political and historical events from recent years, presents President Trump in a negative light.

82. Further demonstrating the BBC's malice and intent to interfere with the 2024 Presidential Election, the *Panorama* Documentary, after lingering at length on the events of January 6, 2021, cuts to a clip from the Democratic National Convention on August 22, 2024, showing Kamala Harris taking the stage with a news anchor breathlessly exclaiming in the background: "And here she is, Kamala Harris. It's hard to describe just how electric the mood is here right now."

83. Toward the end of the *Panorama* Documentary, Reich shockingly compares President Trump to "Adolf Hitler," which rises to defamation itself, while Democrat Congressman Jared Huffman refers to the President as a "cult leader," also a defamatory statement.

23

84.     Others then join Reich in delivering hyperbolic warnings about President Trump and the supposedly catastrophic consequences that would ensue if President Trump were to emerge victorious.

85.     "The degree to which his pessimism and darkness has infected half this country terrifies me," adds Wilson. "There is no ideology in the Republican party except pain, they want vengeance," he continues.

86.     Berkeley Political Science Professor Steven Fish asserts "There's a reason why Xi Jinping and Vladimir Putin and Kim Jong Un and all these despots all over the world are rooting so hard for Trump because what Trump does is he seems to discredit democracy in the land of its stronghold, in the strongest democracy in the world, Trump seems to be proof that democracy doesn't work."

87.     Boston College History Professor Heather Cox Richardson offers, "this is the time when we either choose authoritarianism or democracy, and if we choose authoritarianism, there will be no turning back, so I think we better get this one right."

88.     Reich delivers a closing remark to punctuate the BBC's parade of bias: "Wish us luck, by us, I mean the United States."

     *v.*     *Prominent Voices Condemn the BBC and Confirm the BBC's Longstanding Pattern of Actual Malice Against President Trump*

89.     The BBC is so institutionally biased against President Trump and so devoid of self-awareness that, in response to the above letter from President Trump's counsel (**Exhibit A**), it

published a baseless and meritless article questioning the merits of any lawsuit that the President might bring against the BBC.[42]

90. No less an authority than the United Kingdom's former Prime Minister, Liz Truss, discussed this bias, the need to hold the BBC accountable, and the BBC's pattern of actual malice.[43]

91. Remarked Truss: "[The BBC] is a huge problem. They've lied, they've cheated, they've fiddled with footage, especially in the case of President Trump, but also covering up what's happening in Britain whether it's mass migration, whether it's our economic problems, they are always biased towards the left . . . ." She was also asked whether the BBC's tepid apology was sufficient, and responded: "No I don't, because they keep doing it again and again. They have painted a completely false picture of President Trump in Britain over a number of years, they've done the same thing about conservatives in our country . . . ." Lamenting the BBC's lost status as a "paragon" of journalism, she remarked that the BBC's "fake news" has caused immense harm to the public for a long time.[44]

92. Caroline Dinenage, head of the House of Commons' Culture, Media, and Sport Committee said that Members of Parliament need assurances that the BBC was "taking decisive steps to uphold the corporation's reputation for integrity and public trust." She further remarked:

---

[42] Kayla Epstein and Madeline Halpert, *Trump vs. the BBC: What hurdles might the President's legal argument face?*, BBC (Nov. 11, 2025), https://www.bbc.com/news/articles/c709y1yx1r0o (last visited Dec. 15, 2025).

[43] *Former UK prime minister calls out BBC, encourages Trump to continue lawsuit*, FOX NEWS (Nov. 15, 2025), https://www.foxnews.com/video/6385140049112 (last visited Dec. 15, 2025).

[44] *Id*.

"The Corporation must set the benchmark for accurate and fair reporting, especially in a media landscape where it is all too easy to find news presented in a less than impartial way."[45]

93.     Conservative Party leader and Member of Parliament Kemi Badenoch said that the distortion of the Speech by the *Panorama* Documentary was "absolutely shocking," adding: "That is fake news, actually putting different things together to make something look different from what it actually was." She continued: "And I do think heads should roll. Whoever it was who did that should be sacked, that's what Tim Davie should be doing, identifying who put out misinformation, and sacking them."  Badenoch added: "The public need to be able to trust our public broadcaster . . . They should not be telling us things that are not true. This is a corporation that needs to hold itself to the highest standards, and that means that when we see people doing the wrong thing, they should be punished, they should be sacked."[46]

94.     Lisa Nandy, Secretary of State for Culture, Media and Sport of the United Kingdom, has similarly expressed concern, stating: "there is a real concern, which I share, that political appointments to the board of the BBC damaged confidence and trust in the BBC's impartiality."[47]

95.     FCC Chairman, Brendan Carr, in a letter addressed to Davie, Paula Kerger, (President and CEO of PBS), and Katherine Maher (CEO of NPR), strongly stated:

> As you know, the BBC was recently caught intentionally distorting a speech that President Trump gave in January of 2021. It did so by splicing together one portion of the speech with an entirely separate portion of the speech that came 54 minutes later. In doing so, the BBC program depicts President Trump voicing a sentence

---

[45]     *BBC has questions to answer over edited Trump speech, MPs say*, BBC (Nov. 4, 2025), https://www.bbc.com/news/articles/ckgzkyk7knzo.amp (last visited Dec. 15, 2025).

[46]     *Id*.

[47]     *'Real Concern' About Political Appointees on BBC Board, Nandy Says*, BBC (Nov. 14, 2025), https://www.bbc.com/news/articles/cdeg0ngnj0yo (last visited Dec. 15, 2025).

that, in fact, he never uttered. That would appear to meet the very definition of publishing a materially false and damaging statement.[48]

96.     Carr continued, highlighting the findings of the Memorandum:

Indeed, there has now been widespread condemnation of the BBC's decision. A former independent external advisor to the BBC's Editorial Guidelines and Standards Committee, Michael Prescott, told the BBC that its decision "created the impression that Trump said something he did not and, in doing so, materially misled viewers." Likewise the Prescott Report states that the BBC program was "neither balanced nor impartial—it seemed to be taking a distinctly anti-Trump stance.' In sum, it was a 'distortion of the day's events," the Prescott Report continued.[49]

### *Damages*

97.     Since its publication, the *Panorama* Documentary has gained substantial traction and republication across various media in the United States and elsewhere globally.

98.     Defendants used their false and defamatory publications to maliciously disparage and damage President Trump and impugn his reputation.

99.     Specific, extensive economic harms resulted from these defamatory statements. Defendants timed the publication of the *Panorama* Documentary to be close in time to the 2024 Presidential Election, releasing it only one week before the Election.

100.     The value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal

---

48      *Letter from FCC Chairman Brendan Carr to Tim Davie and Paula Kerger at BCC* (Nov. 19, 2025), https://www.scribd.com/document/951541771/Chairman-Carr-Letter-FINAL#fullscreen&from_embed (last visited Dec. 15, 2025); *Exclusive—FCC Chairman Brendan Carr Launches Probe Into BBC for 'Intentionally Distorting' Trump Speech'*, BREITBART (Nov. 19, 2025), https://www.breitbart.com/the-media/2025/11/19/exclusive-fcc-chairman-brendan-carr-launches-probe-into-bbc-for-intentionally-distorting-trump-speech/      (last visited Dec. 11, 2025).

49      *Id.*

27

reputation inflicted by these Defendants, and their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist, continue into the present, thereby causing massive economic damage to his brand value and significant damage and injury to his future financial prospects, in addition to continuing to harm his reputation as President of the United States of America.

101. President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

102. Exacerbating the damages, Defendants, at and prior to the time of their doctoring of the Speech, knowingly made their false, deceptive, malicious, and defamatory depiction of President Trump in bad faith, motivated by malice and ill-will against President Trump without any regard for the truth, and contrary to information Defendants possessed that showed their depiction to be false

103. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

### CLAIMS FOR RELIEF

### COUNT I – DEFAMATION *PER SE*

104. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

105. The following false, deceptive, malicious, and defamatory statements and depictions of and about President Trump, were, intentionally, with actual malice, and without privilege, published in the *Panorama* Documentary to millions of people in the State of Florida

28

and in this District, and elsewhere, by all Defendants, and were defamatory and false, and injured President Trump in his profession, occupation, and trade, thus constituting defamation *per se*:

(a) The spliced-together version of President Trump's remarks from the Speech that are depicted in the *Panorama* Documentary made it seem that he stated: "*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore.*" (Falsely depicted at 33:53 of the Documentary).

(b) This fabricated depiction of President Trump during the Speech was false and defamatory given that President Trump's actual and full remarks during the Speech were (i) "*Now it is up to Congress to confront this egregious assault on our democracy. And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women and we're probably not going to be cheering so much for some of them.*" (Remarks made on January 6, 2021, 12:12 p.m. Eastern Standard Time, 14:52 into the Speech), and, nearly 55 minutes later, (ii) "*[B]ut I said 'Something's wrong here, Something's really wrong, can't have happened.' And we fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore.*" (Remarks made on January 6, 2021, 1:07 p.m. Eastern Standard Time, 69:30 into the Speech).

(c) Moreover, to further the BBC's intended, false, malicious, and defamatory message and impression that President Trump fomented violence, the BBC intentionally omitted President Trump stating, only one minute after urging supporters to cheer

29

on their senators and congressmen, "*I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.*" (Remarks made on January 6, 2021, 12:13 p.m. Eastern Standard Time, 15:48 into the Speech).

106. Defendants possessed information and had access to information which showed that their statements about, and representation and depiction of President Trump were false.

107. Defendants had no factual basis for this false depiction of President Trump.

108. Defendants' deceptive and defamatory distortion, doctoring, manipulation, and splicing damaged President Trump in his occupation, damaged his professional reputation, and portrayed him as engaging in supposed calls for rioting and violence that he never actually made.

109. The *Panorama* Documentary was not a continuation of a prior broadcast. Instead, it was the result of a separate and distinct decision by Defendants to maliciously disseminate false statements about President Trump in a new medium.

110. As pled *supra*, Defendants knew that their portrayal of the Speech in the *Panorama* Documentary was false, malicious, and defamatory.

111. Defendants' actual malice in publishing the *Panorama* Documentary is evidenced by their intentional splicing and distorting two entirely separate sentences made by President Trump during the Speech nearly 55 minutes apart, while omitting his statement calling for peace made less than one minute after his first statement urging supports to cheer on their senators and congressmen at the Capitol.

112. As a proximate result of the maliciously false and defamatory *per se* publication of a statement and depiction to third parties by Defendants, President Trump has been damaged.

30

113. Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards President Trump, he seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT II – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

114. Plaintiff, President Donald J. Trump, realleges his allegations contained in paragraphs 1 through 103 as if set forth fully below.

115. In addition, this action is brought for violation of the Florida Deceptive and Unfair Trade Practices Act as codified in Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

116. Defendants are engaged in the conduct of trade and commerce in the State of Florida.

117. Defendants have violated the FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia,* intentionally and maliciously seeking to completely mislead their viewers by splicing together two separate parts of President Trump's Speech, while omitting other critical parts of the Speech in such a manner as to intentionally, falsely, maliciously, and defamatorily change the meaning of what President Trump said.

118. As a direct, proximate, and foreseeable result of Defendants' violation of FDUTPA, President Trump has suffered and continues to suffer substantial damages.

31

119.     Pursuant to Fla. Stat. §501.2105, President Trump is entitled to recover his attorneys' fees and costs from Defendants.

**WHEREFORE**, Plaintiff, PRESIDENT DONALD J. TRUMP, demands judgment against Defendants, BRITISH BROADCASTING CORPORATION a/k/a BBC, BBC STUDIOS DISTRIBUTION LIMITED, and BBC STUDIOS PRODUCTIONS LIMITED, for damages in an amount not less than $5,000,000,000, as well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, President Trump, hereby demands a jury trial as to all issues so triable.

Dated:  December 15, 2025

Respectfully submitted,

*/s/Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel:  305-614-4071
Fax:  305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

*/s/Edward Andrew Paltzik*
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice application forthcoming*)

32

*/s/Daniel Zachary Epstein*
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 510-239-7430
dan@epsteinco.co
(*pro hac vice application forthcoming*)

*Counsel to Plaintiff,*
*President Donald J. Trump*



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

November 9, 2025

**Via Email**

Mr. Samir Shah
Chairman
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**samir.shah@bbc.co.uk**

Ms. Sarah Jones
General Counsel
BBC Studios Productions Limited
1 Television Centre
101 Wood Lane
W12 7FA London, England
**sarah.jones@bbc.co.uk**

> **Re:** **Demand to Retract False And Defamatory Statements
> About The President of the United States of America**

Dear All:

This law firm serves as litigation counsel for President Donald J. Trump (hereinafter referred to as "President Trump"). Please direct all future correspondence relating to this matter to my attention. This correspondence serves as a demand under Florida Statute § 770.01[1] that you immediately retract the false, defamatory, disparaging, and inflammatory statements made about President Trump, which were published in a *Panorama* documentary that was fabricated and aired by the BBC. Failure to comply will leave President Trump with no choice but to pursue any and all legal rights and remedies available to recover damages for the overwhelming financial and reputational harm that the BBC has caused him to suffer, with all rights and remedies being expressly reserved by President Trump.

In the *Panorama* documentary, titled "Trump: A Second Chance,"[2] which was first broadcast on October 28, 2024—a week before the 2024 United States presidential election—the BBC intentionally sought to completely mislead its viewers by splicing together three separate

---

[1] President Trump does not agree or admit that only Florida law applies to any claims he might have in connection with or arising out of the Article and expressly reserves all rights concerning applicable law.

[2] *See* https://www.bbc.co.uk/programmes/m0024h6r. According to the BBC's website, the defamatory documentary was broadcast three times on October 28, 2024, and a fourth time on November 2, 2024.

1

Alejandro Brito

Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

parts of President Trump's speech to supporters on January 6, 2021. The documentary showed President Trump telling supporters: "We're gonna walk down to the Capitol and I'll be there with you and we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore." This fabricated depiction of President Trump was false and defamatory given that President Trump's actual and full remarks were: "We're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down any one of you but I think right here, we're going to walk down to the Capitol and we're going to cheer on our brave senators and congressman and women." Moreover, the BBC edited out President Trump saying, "I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Thus, as set forth in an internal whistleblower memorandum, the BBC's segment maliciously made it appear that President Trump "[said] things [he] never actually said," by editing together footage from the start of the speech with a separate quote early an hour later.

Due to their salacious nature, the fabricated statements that were aired by the BBC have been widely disseminated throughout various digital mediums, which have reached tens of millions of people worldwide. Consequently, the BBC has caused President Trump to suffer overwhelming financial and reputational harm.

## A. Applicable law.

Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Statements are defamatory if "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Further, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *See Zambrano v. Devanesan*, 484 So. 2d 603, 607 (Fla. 4th DCA 1986).

Even if the BBC attempts to whitewash its conduct as simply an expression of its opinions, Florida law makes clear that such a defense will not absolve its liability. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1362 (S.D. Fla. 2021); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. ***Simply couching such statements in terms of opinion does not dispel these implications***.") (emphasis added); *see also Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983) ("***[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable***.") (emphasis added).

2

**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

Consequently, the BBC lacks any viable defense to the overwhelming reputational and financial harm it has caused President Trump to suffer.

**B. Demand**.

The above-referenced false, defamatory, malicious, disparaging, and inflammatory statements were published to deliberately denigrate President Trump. The timing of the fabricated documentary is evident. The BBC's reckless disregard for the truth underscores the actual malice behind the decision to publish the wrongful content, given the plain falsity of the statements. Accordingly, President Trump hereby demands that you: (1) immediately issue a full and fair retraction of the documentary and any and all other false, defamatory, disparaging, misleading, and inflammatory statements about President Trump in as conspicuous a manner as they were originally published; (2) immediately issue an apology for the false, defamatory, disparaging, misleading, and inflammatory statements about President Trump; and (3) appropriately compensate President Trump for the harm caused.

Moreover, please allow this letter to serve as notice to you, to your affiliated entities, subsidiaries, to all of their employees, and any other person acting on behalf of or in concert with the BBC, to preserve any and all evidence related in any way to the above-mentioned malicious, false, and defamatory statements the BBC published, and any other statements that the BBC has published regarding President Trump. By way of this letter, the BBC is hereby directed not to destroy, conceal, or alter any paper or electronic files, physical evidence, and/or other data relating in any way, no matter how remote, to your false claims regarding President Trump, and/or the circumstances leading to their dissemination, including, but not limited to: (1) all communications between you and any third party in any way related to your wrongful claims regarding President Trump; (2) all sources for your false claims regarding President Trump; (3) any and all documents and data referring to, reflecting, or relating to communications between you and any such third-parties or sources regarding your false claims regarding President Trump; and (4) any and all documents in any way related to your false claims regarding President Trump. This includes any information alleged to be protected by Florida Statute § 90.5015. *Monarch Air Group, LLC v. Journalism Dev. Network, Inc.,* No. 23-CV-61256, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (interpreting Fla. Stat. § 90.5015 and explaining that the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings.") (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)).

I understand that many records and files are maintained electronically. However, this letter specifically requests that all paper and hard copy originals be maintained and preserved in their original format. By the same token, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists and has been preserved, please preserve and maintain all electronically stored documents in their original native format, including all metadata. This preservation demand specifically encompasses any and all electronic documents,

3



**Alejandro Brito**
Email: abrito@britopllc.com
Phone: (305) 614.4071
Address: 2121 Ponce de Leon. Suite 650
Coral Gables, FL 33134
www.britopllc.com

including but not limited to, all word-processed files, emails, spreadsheets, all databases, log files, and any other electronically stored and/or generated documents or files.

If the BBC does not comply with the above by **November 14, 2025, at 5:00 p.m. EST**, President Trump will be left with no alternative but to enforce his legal and equitable rights, all of which are expressly reserved and are not waived, including by filing legal action for no less than $1,000,000,000 (One Billion Dollars) in damages. The BBC is on notice.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

4

# Ballard Spahr
#### LLP

------------------

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

November 13, 2025

*Via Email (abrito@britopllc.com) & Federal Express*

Alejandro Brito
Brito PLLC
2121 Ponce de Leon
Suite 650
Coral Gables, FL 33134

       Re: November 9, 2025 Letter regarding BBC *Panorama* Documentary

Dear Mr. Brito:

       Our office represents the British Broadcasting Corporation ("BBC"). We write regarding your letter to the BBC dated November 9, 2025, which you sent on behalf of President Donald J. Trump. You wrote with respect to the broadcast of the BBC's *Panorama* documentary titled "Trump: A Second Chance" ("the Program") on October 28 and November 2, 2024, depicting his supporters during President Trump's campaign for a second term in office. Please direct all further communication about your letter to my attention.

       Your letter, citing Florida law, alleges that in a short clip of excerpts of his speech on January 6, 2021, the BBC "intentionally sought to completely mislead its viewers." President Trump alleges that the Program constituted defamation. The President threatens to bring a $1 billion defamation suit against the BBC.

       Our client had no intention of misleading anyone. Indeed, the BBC has publicly expressed its contrition in statements to the Chair of Parliament's Culture, Media, and Sport Committee, on its website, and in the media. We also enclose with this letter a copy of the BBC's personal apology to President Trump, sent by email today to White House Chief of Staff Susie Wiles.

       Additionally, the BBC has posted or shortly will post the following retraction:[1]

------------------

[1] https://www.bbc.co.uk/programmes/m0024h6r and
    https://www.bbc.co.uk/helpandfeedback/corrections_clarifications/

Alejandro Brito
November 13, 2025
Page 2

> *This programme was reviewed after criticism of how President Donald Trump's 6th January 2021 speech was edited.*
>
> *During that sequence, we showed excerpts taken from different parts of the speech.*
>
> *However, we accept that our edit unintentionally created the impression that we were showing a single continuous section of the speech, rather than excerpts from different points in the speech, and that this gave the mistaken impression that President Trump had made a direct call for violent action.*
>
> *The BBC would like to apologise to President Trump for that error of judgement.*
>
> *This programme was not scheduled to be re-broadcast and will not be broadcast again in this form on any BBC platforms.*

While the BBC sincerely regrets the manner in which the video clip was edited, for the following reasons, we strongly disagree that President Trump would have a basis for a viable defamation claim.

**First**, President Trump has made no allegation that the Program was published in Florida, as he must in order to establish personal jurisdiction over the BBC and to meet the publication requirement for a defamation claim. The BBC did not have contractual rights to, and therefore did not, distribute the Program on U.S. channels. Moreover, the version on its website linked to in your letter was geographically restricted to U.K. viewers. In any event, it ceased to be available even in the U.K. from 12 months after the Program aired. The President therefore has not established that he would have any jurisdictional basis to bring a claim against the BBC in Florida or elsewhere in the United States.[2]

**Second**, President Trump will not be able to prove that the Program caused him any injury, let alone the unspecified "overwhelming reputational and financial harm" he alleges.[3] He won reelection on November 5, 2024, after the Program aired. He carried Florida by a

---

[2] *See, e.g.*, *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (to be actionable as defamation, "the material . . . must not only be *accessible* in Florida, but also be *accessed* in Florida") (emphasis in original).

[3] *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. Cir. Ct. 2014) (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1997)) (given "negative publicity" from "a litany of news media entities" other than defendant NBC, "the challenged excerpts from and characterization of Zimmerman's statements . . . could not have been the required 'but for' cause of Zimmerman's alleged injuries").

Alejandro Brito
November 13, 2025
Page 3

commanding 13-point margin, improving over his 2020 and 2016 performances in the state.[4]

Moreover, when the Program aired, the President had already been indicted by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee Report found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[5] Given the extensive allegations prior to the release of the Program regarding his January 6 speech, in criminal and civil cases and among the press and public, the Program could not have caused any incremental harm.

**Third**, President Trump has no basis to allege that the BBC published the Program with actual malice – that is, knowing the Program was false or while entertaining serious doubts as to its truth – as he must.[6] Rather, as the BBC Chair has explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time."[7]

Indeed, nothing better reflects how President Trump's supporters understood his remarks than their own statements. In the course of their prosecutions, numbers of people arrested at the Capitol on January 6 told the courts that they interpreted President Trump's remarks as a call to

---

[4] *See Florida*, 270 to Win, https://www.270towin.com/states/florida.

[5] *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol* at 5 (Dec. 2022), https://www.jan-6.com/_files/ugd/acac13_ffa28ed6c2694272a265860e447122c7.pdf; *see also, e.g., Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump.").

[6] *See, e.g., N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020). Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971).

[7] Letter from BBC Chair Samir Shah to Dame Caroline Dinenage MP (Nov. 10, 2025), https://committees.parliament.uk/publications/50118/documents/270340/default.

3

Alejandro Brito
November 13, 2025
Page 4

action.[8]

Further, the BBC has taken prompt corrective action, publicly apologizing for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," issuing a retraction, and confirming that the Program was not scheduled to be re-broadcast and will not be rebroadcast in that form on any BBC platforms. This further negates any suggestion of actual malice.[9]

**Fourth**, the brief clip, which shows about 15 seconds of President Trump's speech on January 6, is part of an hour-long program containing extensive coverage of his supporters praising President Trump, and presenting balanced coverage of his path to reelection. Courts consider challenged statements in the context of the full publication in which they were made. Accordingly, President Trump cannot create an actionable statement or implication by citing a singular clip but ignoring the remaining, overall context of the Program.[10]

**Fifth**, the Program contains protected expressions of opinion, including many from President Trump's ardent supporters. It depicts hotly contested events related to Presidential elections, including the events of January 6, 2021, which have been the subject of extensive controversy and litigation. In this context, even if the Program is reasonably interpreted to report that President Trump encouraged the crowd to march to the Capitol on January 6, that is an

---

[8] *See, e.g.*, Ryan J. Reilly, *Jan. 6 Rioter Who Said He Wanted Trump's 'Approval' Found Guilty by Jury*, CNBC (Apr. 14, 2022), https://www.cnbc.com/2022/04/14/jan-6-rioter-who-said-he-wanted-trumps-approval-found-guilty-by-jury.html ("A Donald Trump supporter who told jurors that he was 'following presidential orders' when he stormed the U.S. Capitol on Jan. 6 was found guilty on Thursday after he admitted that he stole a coat rack and a bottle of liquor from the building."); Shawna Chen, *Judge: Jan. 6 Rioter Who Broke into Capitol Followed "Trump's Instructions,"* Axios (Jan. 17, 2023), https://www.axios.com/2023/01/18/jan6-capitol-riot-trump-instructions ("A federal judge said Tuesday that a California woman who breached the U.S. Capitol during the Jan. 6 insurrection 'followed then-President Trump's instructions' in breaking the law."); Kyle Cheney, *Jan. 6 Defendant Wants Jurors to Blame Trump, Not Him, for Decision to Breach Capitol*, Politico (Apr. 13, 2022), https://www.politico.com/news/2022/04/13/january-6-defendant-donald-trump-00025019 ("Though dozens of defendants have argued in court filings that they believed Trump had authorized the assault on the Capitol, judges have largely rejected that contention and said rioters should be held to account for their own actions. But whether a jury sees that argument differently will be an important test that could reverberate across hundreds of other cases.").

[9] *See, e.g., Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987))).

[10] *See, e.g., Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020); *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

Alejandro Brito
November 13, 2025
Page 5

opinion on a matter of public concern, heavily protected under defamation law in the United States.[11]

For these reasons, the BBC declines President Trump's claim that the Program constituted defamation and his request for compensation.

We sincerely hope that the BBC's public statements of contrition, and the direct apology that we have given to the President, will suffice to put this matter to rest.

The BBC reserves all further rights and remedies, including those available under Fla. Stats. § 57.105 and § 768.295(2)(a).

Sincerely,

BALLARD SPAHR LLP

By _Charles D. Tobin_

Charles D. Tobin

Enclosure

---

[11] *See, e.g., Trump v. CNN*, 684 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (dismissing defamation case because network's description of President Trump's election challenges as the "Big Lie" was non-actionable opinion, not a statement of fact).



British Broadcasting Corporation

Broadcasting House, London  W1A 1AA

From the Chairman

The President
The White House
1600 Pennsylvania Avenue NW
Washington
D.C. 20500
United States of America

13 November 2025

*Dear Mr President,*

As the Chair of the BBC I wanted to write to you personally. At the same time the BBC's lawyers have today responded to your legal team. The BBC's overall legal position is as set out in that letter. I should make clear at the outset that what follows is my view as the Chair of the BBC. The organisation is, by Royal Charter, independent of His Majesty's Government and nothing I write should imply approval or disapproval by the United Kingdom Government.

Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologises for that error of judgement. As it was your speech that was edited in a misleading way, and you were the object of that editorial error, I would also like to apologise to you directly for this mistake.

- 2 -

The documentary followed a number of your supporters and campaigners, who told the BBC why they wanted you to be re-elected in the 2024 US Presidential Election. The BBC's intention was to reflect their contributions to the documentary fairly and accurately, including their support for you and your Presidency.

Whilst the documentary was not scheduled to be rebroadcast, the BBC has also made public today that it will not be broadcast again on any BBC platforms in a form that includes the misleading sequence.

That the BBC produces content of the highest editorial quality is of paramount importance to me. As Chair, I take responsibility for personally ensuring that the BBC retains the trust and confidence of our audiences.

I would be happy to discuss this matter, should this be of interest to you.

Yours sincerely,

Samir Shah

BBC Chair

# SUBPOENAS TO OTHER THIRD PARTIES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP,<br><br>    Plaintiff,<br><br>v.<br><br>BRITISH BROADCASTING CORP., et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:25-cv-25894-RKA<br>)<br>)<br>)<br>)<br>) |

### DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM*

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Stephen K. Bannon and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
### LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Stephen K. Bannon
210 A Street, N.E.
Washington, D.C. 20002

Re:    Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Bannon:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Stephen Bannon, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:             Stephen K. Bannon, 210 A Street, N.E. Washington, D.C. 20002

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      05/04/2026

| CLERK OF COURT | | |
|---|---|---|
| | OR | *Charles D. Tobin* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) |
| Defendants. | ) |

**ATTACHMENT A TO SUBPOENA TO STEPHEN K. BANNON
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

    (a) the name of each author, sender, creator, and initiator of such Document;

    (b) the name of each recipient, addressee, or party for whom such Document was intended;

    (c) the date the Document was created;

    (d) the date(s) the Document was in use;

    (e) a detailed description of the content of the Document;

    (f) the reason it is no longer in Your possession, custody, or control; and

    (g) the Document's current location.

    (h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

      (a)  the type of privilege claimed;

      (b)  the type of Document;

      (c)  the general subject matter of the Document;

      (d)  the date of the Document;

      (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

      (f)  the Request(s) to which the Document is responsive; and

      (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.  These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.  All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6. Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

### DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM*

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to the Republican National Committee and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

# EXHIBIT 1

# Ballard Spahr
### LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Republican National Committee
310 1st St SE
Washington, DC 20003

Re:   Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

To Whom It May Concern:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Republican National Committee, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           Republican National Committee, 310 1st St SE, Washington, DC 20003

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      05/04/2026

| CLERK OF COURT | OR | |
|---|---|---|
| _____ | | *Charles D. Tobin* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) |
| Defendants. | ) ) ) |

**ATTACHMENT A TO SUBPOENA TO REPUBLICAN NATIONAL COMMITTEE
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5. "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6. "Including" shall be construed as "including but not limited to."

7. "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8. "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9. "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.    "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.    "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.    "The BBC" means Defendant the British Broadcasting Corporation.

13.    "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.    "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.    "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.    "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.    "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.    "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.    "Special Counsel" means Special Counsel Jack Smith.

**<u>GENERAL INSTRUCTIONS</u>**

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

     (a) the type of privilege claimed;

     (b) the type of Document;

     (c) the general subject matter of the Document;

     (d) the date of the Document;

     (e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

     (f) the Request(s) to which the Document is responsive; and

     (g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.     These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.     All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

5

6.     Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

**REQUEST FOR DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the Defendants in connection with this Action, the Documentary, or President Trump's January 6 Speech.

**REQUEST FOR PRODUCTION NO. 9**:  Documents sufficient to show the daily donation totals that You received for each day between September 1, 2024 and November 6, 2025.  For the avoidance of doubt, this Request is only seeking total daily donation amounts, and not individually identifying donor information.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Jason Miller and is attached as Exhibit 1.

Dated: May 5, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

3

# Ballard Spahr
LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 5, 2026

*Via FedEx and Personal Delivery*

Jason Miller
SHW Partners LLC
4532 Cherry Hill Rd., #571
Arlington, VA 22207

Re:    Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Miller:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Jason Miller, produce certain documents.

The Subpoena requires that, on or before June 4, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

Civil Action No.   1:25-CV-25894-RKA

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          Jason Miller
SHW Partners LLC, 4532 Cherry Hill Rd., #571, Arlington, VA 22207

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/04/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   05/05/2026

| CLERK OF COURT | OR | *Charles D. Tobin* |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-25894-RKA |
| ) | |
| BRITISH BROADCASTING CORP., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ATTACHMENT A TO SUBPOENA TO JASON MILLER
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## <u>GENERAL INSTRUCTIONS</u>

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

      (a) the name of each author, sender, creator, and initiator of such Document;

      (b) the name of each recipient, addressee, or party for whom such Document was intended;

      (c) the date the Document was created;

      (d) the date(s) the Document was in use;

      (e) a detailed description of the content of the Document;

      (f) the reason it is no longer in Your possession, custody, or control; and

      (g) the Document's current location.

      (h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

for any Document, You shall provide the following information with respect to each such Document:

    (a)  the type of privilege claimed;

    (b)  the type of Document;

    (c)  the general subject matter of the Document;

    (d)  the date of the Document;

    (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

    (f)  the Request(s) to which the Document is responsive; and

    (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.    These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.    All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,           )
                                     )
         Plaintiff,                  )
                                     )
v.                                   )   Case No. 1:25-cv-25894-RKA
                                     )
BRITISH BROADCASTING CORP., et al.,  )
                                     )
         Defendants.                 )
                                     )

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Greg Jacob and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
### LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

_Via FedEx and Personal Delivery_

Greg Jacob
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006

Re:   Subpoena in _Trump v. BBC_, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Jacob:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Greg Jacob, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Greg Jacob, O'Melveny & Myers LLP, 1625 Eye Street, NW, Washington, D.C. 20006

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    05/04/2026

| CLERK OF COURT | | |
|---|---|---|
| | OR | *Charles D. Tobin* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-25894-RKA |
| ) | |
| BRITISH BROADCASTING CORP., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ATTACHMENT A TO SUBPOENA TO GREG JACOB
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with

the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District

Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the

plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within

the scope of this Subpoena information that might otherwise be considered to be beyond its

scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring

within the scope of this Subpoena information that might otherwise be considered to be beyond

its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or

constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10. "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11. "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12. "The BBC" means Defendant the British Broadcasting Corporation.

13. "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14. "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15. "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16. "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17. "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18. "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19. "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

      (a)  the type of privilege claimed;

      (b)  the type of Document;

      (c)  the general subject matter of the Document;

      (d)  the date of the Document;

      (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

      (f)  the Request(s) to which the Document is responsive; and

      (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.     These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.     All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,

    Plaintiff,

v.

BRITISH BROADCASTING CORP., et al.,

    Defendants.

Case No. 1:25-cv-25894-RKA

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Matthew E. Morgan and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
### LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Matthew E. Morgan
Barnes & Thornburg LLP
11 S. Meridian Street
Indianapolis, IN 46204-3535

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Morgan:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Matthew E. Morgan, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Matthew E. Morgan, Barnes & Thornburg LLP, 11 S. Meridian Street, Indianapolis, IN 46204-3535

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      05/04/2026

| *CLERK OF COURT* | OR | *Charles D. Tobin* |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited  , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:25-cv-25894-RKA ) |
| BRITISH BROADCASTING CORP., et al., | ) ) |
| Defendants. | ) ) ) |

**ATTACHMENT A TO SUBPOENA TO MATTHEW E. MORGAN
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

**GENERAL INSTRUCTIONS**

1. In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2. If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

   (a) the name of each author, sender, creator, and initiator of such Document;

   (b) the name of each recipient, addressee, or party for whom such Document was intended;

   (c) the date the Document was created;

   (d) the date(s) the Document was in use;

   (e) a detailed description of the content of the Document;

   (f) the reason it is no longer in Your possession, custody, or control; and

   (g) the Document's current location.

   (h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3. If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such

Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena

*duces tecum*, including, where appropriate, the name and title of the author of the

document, the name and title of any recipient, and identification of anyone

providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable

electronic format and with sufficient specificity to enable the undersigned counsel and the Court

to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of

all additional or different Documents or information responsive to these Requests, which You

discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or

these requests must be preserved. Any destruction involving such Documents or data must cease,

even if it is Your normal or routine course of business to delete or destroy such Documents or

data and even if You believe such Documents or data are privileged or otherwise need not be

produced.

5

6.     Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,

     Plaintiff,

v.

BRITISH BROADCASTING CORP., et al.,

     Defendants.

Case No. 1:25-cv-25894-RKA

## DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM*

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Brad Raffensperger and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

3

# EXHIBIT 1

Case 1:25-cv-25894-RKA   Document 61-2   Entered on FLSD Docket 06/03/2026   Page 834 of 1223

# Ballard Spahr
### LLP

------------------

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Brad Raffensperger
214 State Capitol
Atlanta, GA 30334

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Raffensperger:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Brad Raffensperger, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Brad Raffensperger, 214 State Capitol, Atlanta, GA 30334

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    05/04/2026

| CLERK OF COURT | OR | *Charles D. Tobin* |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:25-cv-25894-RKA ) |
| BRITISH BROADCASTING CORP., et al., | ) ) |
| Defendants. | ) ) ) |

**ATTACHMENT A TO SUBPOENA TO BRAD RAFFENSPERGER
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with

the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District

Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the

plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within

the scope of this Subpoena information that might otherwise be considered to be beyond its

scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring

within the scope of this Subpoena information that might otherwise be considered to be beyond

its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or

constituting, in whole or in part, directly or indirectly, the stated subject matter.

5. "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced. The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6. "Including" shall be construed as "including but not limited to."

7. "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8. "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9. "You" and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10. "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11. "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12. "The BBC" means Defendant the British Broadcasting Corporation.

13. "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14. "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15. "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16. "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17. "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18. "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19. "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.     Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:25-cv-25894-RKA ) |
| BRITISH BROADCASTING CORP., et al., | ) ) |
| Defendants. | ) ) ) |

### DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM*

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to William Stepien and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
LLP

——————————————————

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

William Stepien
6283 Benning Rd.
West Falls, NY 14170

Re:   Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Stepien:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, William Stepien, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:             William Stepien, 6283 Benning Rd., West Falls, NY 14170

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:       05/04/2026

| *CLERK OF COURT* | OR | *Charles D. Tobin* |
|---|---|---|
| _____<br>*Signature of Clerk or Deputy Clerk* | | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $       0.00       .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| | ) |
| BRITISH BROADCASTING CORP., et al., | ) |
| | ) |
| Defendants. | ) ) |

**ATTACHMENT A TO SUBPOENA TO WILLIAM STEPIEN
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.     "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.     "Including" shall be construed as "including but not limited to."

7.     "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.     "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.     "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such

Document:

    (a)  the type of privilege claimed;

    (b)  the type of Document;

    (c)  the general subject matter of the Document;

    (d)  the date of the Document;

    (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

    (f)  the Request(s) to which the Document is responsive; and

    (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.    These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.    All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.     Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena

*Duces Tecum* to produce documents, electronically stored information, or tangible things has been

issued to Katrina Pierson and is attached as Exhibit 1.

Dated: May 5, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

3

# EXHIBIT 1

3

# Ballard Spahr
### LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 5, 2026

*Via FedEx and Personal Delivery*

Rep. Katrina Pierson
Texas House of Representatives
Room E2.714
P.O. Box 12910
Austin, Texas 78711-2910
(512) 463-0484

Re:   Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Ms. Pierson:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Katrina Pierson, produce certain documents.

The Subpoena requires that, on or before June 4, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Rep. Katrina Pierson, Texas House of Representatives
Room E2.714, P.O. Box 12910, Austin, Texas 78711-2910
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/04/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      05/05/2026

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
        **(i)** is a party or a party's officer; or
        **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
        **(i)** fails to allow a reasonable time to comply;
        **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
        **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
        **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

        **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        **(i)** expressly make the claim; and
        **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| | ) |
| BRITISH BROADCASTING CORP., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ATTACHMENT A TO SUBPOENA TO REP. KATRINA PIERSON
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.     "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.     "Including" shall be construed as "including but not limited to."

7.     "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.     "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.     "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.    "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.    "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.    "The BBC" means Defendant the British Broadcasting Corporation.

13.    "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.    "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.    "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.    "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.    "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.    "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.    "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1. In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2. If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

    (a) the name of each author, sender, creator, and initiator of such Document;

    (b) the name of each recipient, addressee, or party for whom such Document was intended;

    (c) the date the Document was created;

    (d) the date(s) the Document was in use;

    (e) a detailed description of the content of the Document;

    (f) the reason it is no longer in Your possession, custody, or control; and

    (g) the Document's current location.

    (h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3. If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such

Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena

*duces tecum*, including, where appropriate, the name and title of the author of the

document, the name and title of any recipient, and identification of anyone

providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable

electronic format and with sufficient specificity to enable the undersigned counsel and the Court

to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of

all additional or different Documents or information responsive to these Requests, which You

discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or

these requests must be preserved. Any destruction involving such Documents or data must cease,

even if it is Your normal or routine course of business to delete or destroy such Documents or

data and even if You believe such Documents or data are privileged or otherwise need not be

produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena

*Duces Tecum* to produce documents, electronically stored information, or tangible things has been

issued to Vincent Haley and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

# EXHIBIT 1

# Ballard Spahr
LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Vincent Haley
Domestic Policy Council
The White House
1600 Pennsylvania Ave. N.W.
Washington, D.C. 20502

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Haley:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Vincent Haley, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Vincent Haley, Domestic Policy Council, The White House, 1600 Pennsylvania Ave. N.W., Washington, D.C. 20502

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     05/04/2026

| CLERK OF COURT | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited  , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:25-cv-25894-RKA ) |
| BRITISH BROADCASTING CORP., et al., | ) ) |
| Defendants. | ) ) ) |

**ATTACHMENT A TO SUBPOENA TO VINCENT HALEY
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.  Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.  "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.  "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.  "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5. "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced. The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6. "Including" shall be construed as "including but not limited to."

7. "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8. "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9. "You" and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10. "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11. "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12. "The BBC" means Defendant the British Broadcasting Corporation.

13. "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14. "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15. "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16. "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17. "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18. "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19. "Special Counsel" means Special Counsel Jack Smith.

3

**GENERAL INSTRUCTIONS**

1.       In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.       If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.       If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such

Document:

        (a)  the type of privilege claimed;

        (b)  the type of Document;

        (c)  the general subject matter of the Document;

        (d)  the date of the Document;

        (e)  such other information as is sufficient to identify the Document for a subpoena

            *duces tecum*, including, where appropriate, the name and title of the author of the

            document, the name and title of any recipient, and identification of anyone

            providing legal counsel;

        (f)  the Request(s) to which the Document is responsive; and

        (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.     These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.     All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

**REQUEST FOR DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

# Ballard Spahr
### LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 11, 2026

*Via FedEx and Personal Delivery*

Ms. Sarah Matthews
14018 NE 31st Dr.
Gainesville, FL 32609

Re:    Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Ms. Matthews:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Sarah Matthews, produce certain documents.

The Subpoena requires that, on or before June 10, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:                 Sarah Matthews, 14018 NE 31st Dr., Gainesville, FL 32609

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/10/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      05/11/2026

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| | ) |
| BRITISH BROADCASTING CORP., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ATTACHMENT A TO SUBPOENA TO SARAH MATTHEWS
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with

the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District

Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the

plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within

the scope of this Subpoena information that might otherwise be considered to be beyond its

scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring

within the scope of this Subpoena information that might otherwise be considered to be beyond

its scope.

4. "Concerning" means relating to, referring to, describing, evidencing, or

constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

   (a) the name of each author, sender, creator, and initiator of such Document;

   (b) the name of each recipient, addressee, or party for whom such Document was intended;

   (c) the date the Document was created;

   (d) the date(s) the Document was in use;

   (e) a detailed description of the content of the Document;

   (f) the reason it is no longer in Your possession, custody, or control; and

   (g) the Document's current location.

   (h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.    These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.    All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.     Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

**REQUEST FOR DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| | ) |
| BRITISH BROADCASTING CORP., et al., | ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Roger Stone and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Roger Stone
1045 NE 18th Ave
Apt 101
Ft. Lauderdale, FL 33304

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Stone:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Roger Stone, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

Civil Action No.   1:25-CV-25894-RKA

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Roger Stone, 1045 NE 18th Ave, Apt 11, Ft. Lauderdale, FL 33304

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      05/04/2026

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,  )
                            )
         Plaintiff,         )
                            )
v.                          )   Case No. 1:25-cv-25894-RKA
                            )
BRITISH BROADCASTING CORP., et al.,  )
                            )
         Defendants.        )
                            )

**ATTACHMENT A TO SUBPOENA TO ROGER STONE
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5. "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6. "Including" shall be construed as "including but not limited to."

7. "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8. "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9. "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## **GENERAL INSTRUCTIONS**

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

for any Document, You shall provide the following information with respect to each such Document:

    (a)  the type of privilege claimed;

    (b)  the type of Document;

    (c)  the general subject matter of the Document;

    (d)  the date of the Document;

    (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

    (f)  the Request(s) to which the Document is responsive; and

    (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,

    Plaintiff,

v.

BRITISH BROADCASTING CORP., et al.,

    Defendants.

Case No. 1:25-cv-25894-RKA

## DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM*

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Boris Epshteyn and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

3

# EXHIBIT 1

# Ballard Spahr
LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Boris Epshteyn
2401 N. Ocean Blvd., Apt. 6S
Boca Raton, FL 33431

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Epshteyn:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Boris Epshteyn, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

President Donald J. Trump )
_____ )
*Plaintiff* )
v. ) Civil Action No. 1:25-CV-25894-RKA
British Broadcasting Corporation, BBC Studios Distribution )
Limited, and BBC Studios Productions Limited )
_____ )
*Defendant* )

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS**
**OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Boris Epshteyn, 2401 N. Ocean Blvd., Apt. 6S, Boca Raton, FL 33431

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br>06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/04/2026

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| | ) |
| BRITISH BROADCASTING CORP., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ATTACHMENT A TO SUBPOENA TO BORIS EPSHTEYN
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with

the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District

Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the

plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within

the scope of this Subpoena information that might otherwise be considered to be beyond its

scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring

within the scope of this Subpoena information that might otherwise be considered to be beyond

its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or

constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.        In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.        If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.        If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

      (a)  the type of privilege claimed;

      (b)  the type of Document;

      (c)  the general subject matter of the Document;

      (d)  the date of the Document;

      (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

      (f)  the Request(s) to which the Document is responsive; and

      (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.     Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

**REQUEST FOR DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the Defendants in connection with this Action, the Documentary, or President Trump's January 6 Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| | ) |
| BRITISH BROADCASTING CORP., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM*

Defendants, by and through their counsel of record, hereby give notice that a Subpoena

*Duces Tecum* to produce documents, electronically stored information, or tangible things has been

issued to Michael Flynn and is attached as Exhibit 1.

Dated: May 11, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

/s/ Charles D. Tobin
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

# EXHIBIT 1

# Ballard Spahr
### LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 11, 2026

*Via FedEx and Personal Delivery*

Mr. Michael Flynn
26700 Weiskopf Dr.
Englewood, FL 34223

Re:      Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Flynn:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Michael Flynn, produce certain documents.

The Subpoena requires that, on or before June 10, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:        Michael Flynn, 26700 Weiskopf Dr., Englewood, FL 34223

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/10/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        05/11/2026

| CLERK OF COURT | OR | *[signature]* |
|---|---|---|
| _____<br>*Signature of Clerk or Deputy Clerk* | | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, )<br><br>Plaintiff, )<br><br>v. )<br><br>BRITISH BROADCASTING CORP., et al., )<br><br>Defendants. ) | Case No. 1:25-cv-25894-RKA |

**ATTACHMENT A TO SUBPOENA TO MICHAEL FLYNN
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.     Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.     "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.     "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.     "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5. "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced. The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6. "Including" shall be construed as "including but not limited to."

7. "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8. "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9. "You" and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.        In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.        If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a)  the name of each author, sender, creator, and initiator of such Document;

(b)  the name of each recipient, addressee, or party for whom such Document was intended;

(c)  the date the Document was created;

(d)  the date(s) the Document was in use;

(e)  a detailed description of the content of the Document;

(f)  the reason it is no longer in Your possession, custody, or control; and

(g)  the Document's current location.

(h)  If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.        If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

      (a) the type of privilege claimed;

      (b) the type of Document;

      (c) the general subject matter of the Document;

      (d) the date of the Document;

      (e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

      (f) the Request(s) to which the Document is responsive; and

      (g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

# Ballard Spahr
LLP

--------------------

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 11, 2026

*Via FedEx and Personal Delivery*

Mark Meadows
606 Wind Flower Dr.
Sunset, SC 29685

Re:   Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Meadows:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Mark Meadows, produce certain documents.

The Subpoena requires that, on or before June 10, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                             Mark Meadows, 606 Wind Flower Dr.
                                      Sunset, SC 29685

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/10/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:       05/11/2026

| CLERK OF COURT | OR | |
|---|---|---|
| _____ | | *Charles D. Tobin* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-25894-RKA |
| ) | |
| BRITISH BROADCASTING CORP., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ATTACHMENT A TO SUBPOENA TO MARK MEADOWS
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with

the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District

Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the

plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within

the scope of this Subpoena information that might otherwise be considered to be beyond its

scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring

within the scope of this Subpoena information that might otherwise be considered to be beyond

its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or

constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

    (a) the name of each author, sender, creator, and initiator of such Document;

    (b) the name of each recipient, addressee, or party for whom such Document was intended;

    (c) the date the Document was created;

    (d) the date(s) the Document was in use;

    (e) a detailed description of the content of the Document;

    (f) the reason it is no longer in Your possession, custody, or control; and

    (g) the Document's current location.

    (h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

      (a)  the type of privilege claimed;

      (b)  the type of Document;

      (c)  the general subject matter of the Document;

      (d)  the date of the Document;

      (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

      (f)  the Request(s) to which the Document is responsive; and

      (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6. Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,

      Plaintiff,

v.

BRITISH BROADCASTING CORP., et al.,

      Defendants.

)
)
)
)
)
)  Case No. 1:25-cv-25894-RKA
)
)
)
)
)

## DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM*

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to WinRed and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*

Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

3

# EXHIBIT 1

# Ballard Spahr
### LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

WinRed
4250 Fairfax Dr.
Ste. 600
Arlington, VA 22203

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

To Whom It May Concern:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, WinRed, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          WinRed, 4250 Fairfax Dr, Ste 600, Arlington, VA 22203

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   05/04/2026

| CLERK OF COURT | OR | *[signature]* |
|---|---|---|
| _____<br>*Signature of Clerk or Deputy Clerk* | | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited  , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,  )
                            )
        Plaintiff,          )
                            )
v.                          )   Case No. 1:25-cv-25894-RKA
                            )
BRITISH BROADCASTING CORP., et al.,  )
                            )
        Defendants.         )
                            )

**ATTACHMENT A TO SUBPOENA TO WINRED**
**TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present

and former officers, directors, employees, attorneys, agents, and representatives of any of the

above; and each Person acting or purporting to act on your behalf or on the behalf of any of the

aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British*

*Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees,

agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios

Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28,

2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential

Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered

on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the

January 6th Attack on the United States Capitol and any employees, agents, representatives, or

anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

**GENERAL INSTRUCTIONS**

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a)  the name of each author, sender, creator, and initiator of such Document;

(b)  the name of each recipient, addressee, or party for whom such Document was intended;

(c)  the date the Document was created;

(d)  the date(s) the Document was in use;

(e)  a detailed description of the content of the Document;

(f)  the reason it is no longer in Your possession, custody, or control; and

(g)  the Document's current location.

(h)  If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

> (a) the type of privilege claimed;
>
> (b) the type of Document;
>
> (c) the general subject matter of the Document;
>
> (d) the date of the Document;
>
> (e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;
>
> (f) the Request(s) to which the Document is responsive; and
>
> (g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the Defendants in connection with this Action, the Documentary, or President Trump's January 6 Speech.

**REQUEST FOR PRODUCTION NO. 9**:  Documents sufficient to show the daily donation totals that You received for each day between September 1, 2024 and November 6, 2025.  For the avoidance of doubt, this Request is only seeking total daily donation amounts, and not individually identifying donor information.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) | |
| Defendants. | ) | |

## DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM*

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Jeffrey A. Rosen and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

3

# EXHIBIT 1

# Ballard Spahr
LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Jeffrey A. Rosen
Cravath, Swaine & Moore LLP
1601 K Street NW
Washington, D.C. 20006
jrosen@cravath.com
202-869-7724

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Rosen:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Jeffrey A. Rosen, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Jeffrey A. Rosen
May 4, 2026
Page 2


Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) ) ) |
| *Defendant* | ) |

Civil Action No.   1:25-CV-25894-RKA

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           Jeffrey A. Rosen, Cravath, Swaine & Moore LLP
601 K Street NW, Washington, D.C. 20006

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      05/04/2026

| CLERK OF COURT | OR | |
|---|---|---|
| _____ | | _Charles D. Tobin_ (signature) |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, )<br><br>Plaintiff, )<br><br>v. )<br><br>BRITISH BROADCASTING CORP., et al., )<br><br>Defendants. ) | Case No. 1:25-cv-25894-RKA |

**ATTACHMENT A TO SUBPOENA TO JEFFREY A. ROSEN
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

**GENERAL INSTRUCTIONS**

1. In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2. If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

   (a) the name of each author, sender, creator, and initiator of such Document;

   (b) the name of each recipient, addressee, or party for whom such Document was intended;

   (c) the date the Document was created;

   (d) the date(s) the Document was in use;

   (e) a detailed description of the content of the Document;

   (f) the reason it is no longer in Your possession, custody, or control; and

   (g) the Document's current location.

   (h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3. If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

  (a) the type of privilege claimed;

  (b) the type of Document;

  (c) the general subject matter of the Document;

  (d) the date of the Document;

  (e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

  (f) the Request(s) to which the Document is responsive; and

  (g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.     Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Richard P. Donoghue and is attached as Exhibit 1.

Dated: May 5, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
LLP

––––––––––––––––––––

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com


May 5, 2026


*Via FedEx and Personal Delivery*

Richard P. Donoghue
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019


Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Donoghue:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Richard Donoghue, produce certain documents.

The Subpoena requires that, on or before June 4, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Richard P. Donoghue, Pillsbury Winthrop Shaw Pittman LLP, 31 West 52nd Street, New York, NY 10019

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP | Date and Time: |
|---|---|
| 1909 K Street NW, 12th Floor Washington, DC 20006 | 06/04/2026 6:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      05/05/2026

| CLERK OF COURT | OR | *Charles D. Tobin* |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, <br><br> Plaintiff, <br><br> v. <br><br> BRITISH BROADCASTING CORP., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )  Case No. 1:25-cv-25894-RKA <br> ) <br> ) <br> ) <br> ) <br> ) |

**ATTACHMENT A TO SUBPOENA TO RICHARD P. DONOGHUE
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.     Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.     "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.     "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.     "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present

and former officers, directors, employees, attorneys, agents, and representatives of any of the

above; and each Person acting or purporting to act on your behalf or on the behalf of any of the

aforementioned entities.

10. "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11. "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12. "The BBC" means Defendant the British Broadcasting Corporation.

13. "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14. "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15. "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16. "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17. "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18. "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19. "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

   (a) the name of each author, sender, creator, and initiator of such Document;

   (b) the name of each recipient, addressee, or party for whom such Document was intended;

   (c) the date the Document was created;

   (d) the date(s) the Document was in use;

   (e) a detailed description of the content of the Document;

   (f) the reason it is no longer in Your possession, custody, or control; and

   (g) the Document's current location.

   (h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

      (a)  the type of privilege claimed;

      (b)  the type of Document;

      (c)  the general subject matter of the Document;

      (d)  the date of the Document;

      (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

      (f)  the Request(s) to which the Document is responsive; and

      (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.     These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.     All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena

*Duces Tecum* to produce documents, electronically stored information, or tangible things has been

issued to John C. Eastman and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

3

# EXHIBIT 1

# Ballard Spahr
#### LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

John C. Eastman
Constitutional Counsel Group
444 W. Ocean Blvd. Ste 1403
Long Beach, CA 90802
jeastman@ccg1776.com
(562) 435-9062

Re:  Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Eastman:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, John C. Eastman, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          John C. Eastman, Constitutional Counsel Group
444 W. Ocean Blvd. Ste 1403, Long Beach, CA 90802

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:          05/04/2026

| CLERK OF COURT | OR | *Charles D. Tobin* |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-25894-RKA |
| | ) | |
| BRITISH BROADCASTING CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ATTACHMENT A TO SUBPOENA TO JOHN C. EASTMAN
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with

the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District

Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the

plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within

the scope of this Subpoena information that might otherwise be considered to be beyond its

scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring

within the scope of this Subpoena information that might otherwise be considered to be beyond

its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or

constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.     "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.     "Including" shall be construed as "including but not limited to."

7.     "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.     "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.     "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.     In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.     If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

    (a) the name of each author, sender, creator, and initiator of such Document;

    (b) the name of each recipient, addressee, or party for whom such Document was intended;

    (c) the date the Document was created;

    (d) the date(s) the Document was in use;

    (e) a detailed description of the content of the Document;

    (f) the reason it is no longer in Your possession, custody, or control; and

    (g) the Document's current location.

    (h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.     If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

    (a) the type of privilege claimed;

    (b) the type of Document;

    (c) the general subject matter of the Document;

    (d) the date of the Document;

    (e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

    (f) the Request(s) to which the Document is responsive; and

    (g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena

*Duces Tecum* to produce documents, electronically stored information, or tangible things has been

issued to Jeffrey B. Clark and is attached as Exhibit 1.

Dated: May 11, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

2

# Ballard Spahr
### LLP

– – – – – – – – – – – – – – – – – –

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 11, 2026

*Via FedEx and Personal Delivery*

Mr. Jeffrey B. Clark
8850 Western Hemlock Way
Lorton, VA 22079

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Clark:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Jeffrey B. Clark, produce certain documents.

The Subpoena requires that, on or before June 10, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| President Donald J. Trump | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) ) ) | |
| *Defendant* | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS**
**OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:            Jeffrey B. Clark, 8850 Western Hemlock Way, Lorton, VA 22079

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/10/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    05/11/2026

| CLERK OF COURT | OR | *Charles D. Tobin* |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**ATTACHMENT A TO SUBPOENA TO JEFFREY B. CLARK**
**TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10. "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11. "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12. "The BBC" means Defendant the British Broadcasting Corporation.

13. "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14. "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15. "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16. "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17. "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18. "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19. "Special Counsel" means Special Counsel Jack Smith.

## GENERAL INSTRUCTIONS

1.　　In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.　　If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

   (a) the name of each author, sender, creator, and initiator of such Document;

   (b) the name of each recipient, addressee, or party for whom such Document was intended;

   (c) the date the Document was created;

   (d) the date(s) the Document was in use;

   (e) a detailed description of the content of the Document;

   (f) the reason it is no longer in Your possession, custody, or control; and

   (g) the Document's current location.

   (h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.　　If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:25-cv-25894-RKA ) |
| BRITISH BROADCASTING CORP., et al., | ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena

*Duces Tecum* to produce documents, electronically stored information, or tangible things has been

issued to John McEntee and is attached as Exhibit 1.

Dated: May 11, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

2

# Ballard Spahr
LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 11, 2026

*Via FedEx and Personal Delivery*

Mr. John McEntee
2259 Ladera Vista Dr.
Fullerton, CA 92831

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. McEntee:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, John McEntee, produce certain documents.

The Subpoena requires that, on or before June 10, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| President Donald J. Trump | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) ) ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                    John McEntee, 2259 Ladera Vista Dr., Fullerton, CA 92831

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/10/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        05/11/2026

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | *Charles D. Tobin* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) ) |
| Defendants. | ) ) ) |

**ATTACHMENT A TO SUBPOENA TO JOHN McENTEE
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with

the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District

Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the

plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within

the scope of this Subpoena information that might otherwise be considered to be beyond its

scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring

within the scope of this Subpoena information that might otherwise be considered to be beyond

its scope.

4. "Concerning" means relating to, referring to, describing, evidencing, or

constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

(a) the type of privilege claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document;

(e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

(f) the Request(s) to which the Document is responsive; and

(g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

**REQUEST FOR DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP,<br><br>    Plaintiff,<br><br>v.<br><br>BRITISH BROADCASTING CORP., et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:25-cv-25894-RKA<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM*

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Sidney Powell and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
LLP

- - - - - - - - - - - - - - - - - -

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Sidney Powell
Sidney Powell, P.C.
2911 Turtle Creek Blvd
Ste. 300
Dallas, TX 75219

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mrs. Powell:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Sidney Powell, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

Civil Action No.   1:25-CV-25894-RKA

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Sidney Powell, Sidney Powell, P.C., 2911 Turtle Creek Blvd, Ste 300, Dallas, TX 75219

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   05/04/2026

| CLERK OF COURT | OR | *Charles D. Tobin* |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP,<br><br>    Plaintiff,<br><br>v.<br><br>BRITISH BROADCASTING CORP., et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 1:25-cv-25894-RKA<br>)<br>)<br>)<br>)<br>) |

**ATTACHMENT A TO SUBPOENA TO SIDNEY POWELL
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with

the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District

Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the

plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within

the scope of this Subpoena information that might otherwise be considered to be beyond its

scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring

within the scope of this Subpoena information that might otherwise be considered to be beyond

its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or

constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such

Document:

    (a)  the type of privilege claimed;

    (b)  the type of Document;

    (c)  the general subject matter of the Document;

    (d)  the date of the Document;

    (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

    (f)  the Request(s) to which the Document is responsive; and

    (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.    These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.    All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.     Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

**REQUEST FOR DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Stephen Miller and is attached as Exhibit 1.

Dated: May 5, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 5, 2026

*Via FedEx and Personal Delivery*

Stephen Miller
The White House
1600 Pennsylvania Ave. N.W.
Washington, D.C. 20502

Re:   Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Miller:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Stephen Miller, produce certain documents.

The Subpoena requires that, on or before June 4, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:  Stephen Miller, The White House, 1600 Pennsylvania Ave. N.W., Washington, D.C. 20502

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br>06/04/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  05/05/2026

| CLERK OF COURT | OR | *Charles D. Tobin* |
|---|---|---|
| _____<br>*Signature of Clerk or Deputy Clerk* | | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited  , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**ATTACHMENT A TO SUBPOENA TO STEPHEN MILLER
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1. In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2. If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3. If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

        (a)  the type of privilege claimed;

        (b)  the type of Document;

        (c)  the general subject matter of the Document;

        (d)  the date of the Document;

        (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

        (f)  the Request(s) to which the Document is responsive; and

        (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.     Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

**REQUEST FOR DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,

    Plaintiff,

v.

BRITISH BROADCASTING CORP., et al.,

    Defendants.

Case No. 1:25-cv-25894-RKA

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Eric Herschmann and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*

Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
### LLP

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Eric Herschmann
210 Lavaca Street, Unit 3009
Austin, TX 78701

Re:    Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Herschmann:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Eric Herschmann, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Eric Herschmann, 210 Lavaca Street, Unit 3009, Austin, TX 78701

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP | Date and Time: |
|---|---|
| 1909 K Street NW, 12th Floor Washington, DC 20006 | 06/03/2026 6:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    05/04/2026

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | *[signature]* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited  , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) |
| Defendants. | ) |

**ATTACHMENT A TO SUBPOENA TO ERIC HERSCHMANN
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

## GENERAL INSTRUCTIONS

1.     In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.     If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

   (a) the name of each author, sender, creator, and initiator of such Document;

   (b) the name of each recipient, addressee, or party for whom such Document was intended;

   (c) the date the Document was created;

   (d) the date(s) the Document was in use;

   (e) a detailed description of the content of the Document;

   (f) the reason it is no longer in Your possession, custody, or control; and

   (g) the Document's current location.

   (h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.     If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

    (a)  the type of privilege claimed;

    (b)  the type of Document;

    (c)  the general subject matter of the Document;

    (d)  the date of the Document;

    (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

    (f)  the Request(s) to which the Document is responsive; and

    (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.    These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.    All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.     Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,

       Plaintiff,

v.

BRITISH BROADCASTING CORP., et al.,

       Defendants.

Case No. 1:25-cv-25894-RKA

## **DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Cleta Mitchell and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

# EXHIBIT 1

# Ballard Spahr
LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Cleta Mitchell
139 National Drive
Pinehurst, NC 28374

Re:    Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Ms. Mitchell:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Cleta Mitchell, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) ) ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:               Cleta Mitchell, 139 National Drive, Pinehurst, NC 28374

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    05/04/2026

| CLERK OF COURT | | |
|---|---|---|
| | OR | *Charles D. Tobin* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) ) |
| Defendants. | ) ) ) |

**ATTACHMENT A TO SUBPOENA TO CLETA MITCHELL
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with

the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District

Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the

plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within

the scope of this Subpoena information that might otherwise be considered to be beyond its

scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring

within the scope of this Subpoena information that might otherwise be considered to be beyond

its scope.

4. "Concerning" means relating to, referring to, describing, evidencing, or

constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.  "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.  "Including" shall be construed as "including but not limited to."

7.  "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.  "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.  "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

        (a)  the type of privilege claimed;

        (b)  the type of Document;

        (c)  the general subject matter of the Document;

        (d)  the date of the Document;

        (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

        (f)  the Request(s) to which the Document is responsive; and

        (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.     These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.     All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

**REQUEST FOR DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Kenneth Chesebro and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Kenneth Chesebro
PO Box 9116
San Juan, PR 00908-0116

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Chesebro:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Kenneth Chesebro, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | | |
|---|---|---|
| President Donald J. Trump | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) ) ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                         Kenneth Chesebro
                   PO Box 9116, San Juan, PR 00908-0116
                   *(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      05/04/2026

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | *Charles D. Tobin* |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-25894-RKA |
| | ) |
| BRITISH BROADCASTING CORP., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ATTACHMENT A TO SUBPOENA TO KENNETH CHESEBRO
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with

the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District

Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the

plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within

the scope of this Subpoena information that might otherwise be considered to be beyond its

scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring

within the scope of this Subpoena information that might otherwise be considered to be beyond

its scope.

4. "Concerning" means relating to, referring to, describing, evidencing, or

constituting, in whole or in part, directly or indirectly, the stated subject matter.

5. "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced. The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6. "Including" shall be construed as "including but not limited to."

7. "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8. "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9. "You" and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

      (a)  the type of privilege claimed;

      (b)  the type of Document;

      (c)  the general subject matter of the Document;

      (d)  the date of the Document;

      (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

      (f)  the Request(s) to which the Document is responsive; and

      (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.     Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

**REQUEST FOR DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) | |
| Defendants. | ) | |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena

*Duces Tecum* to produce documents, electronically stored information, or tangible things has been

issued to Marc Short and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

3

# EXHIBIT 1

# Ballard Spahr
### LLP

- - - - - - - - - - - - - - - - - -

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Marc Short
Advance Strategies LLC
3125 N. NELSON STREET
ARLINGTON, VA, 22207
marc@marcshort.com

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Short:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Marc Short, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

Civil Action No. 1:25-CV-25894-RKA

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Marc Short, Advance Strategies LLC
3125 N. Nelson Street, Arlington, VA 22207

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/04/2026

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**ATTACHMENT A TO SUBPOENA TO MARC SHORT
TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

### GENERAL INSTRUCTIONS

1.  In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.  If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

    (a) the name of each author, sender, creator, and initiator of such Document;

    (b) the name of each recipient, addressee, or party for whom such Document was intended;

    (c) the date the Document was created;

    (d) the date(s) the Document was in use;

    (e) a detailed description of the content of the Document;

    (f) the reason it is no longer in Your possession, custody, or control; and

    (g) the Document's current location.

    (h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.  If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such

Document:

      (a)  the type of privilege claimed;

      (b)  the type of Document;

      (c)  the general subject matter of the Document;

      (d)  the date of the Document;

      (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

      (f)  the Request(s) to which the Document is responsive; and

      (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) | |
| Defendants. | ) | |

**DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena

*Duces Tecum* to produce documents, electronically stored information, or tangible things has been

issued to Judd Deere and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
LLP

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Judd Deere
Deputy Chief of Staff, Office of Governor Sarah Huckabee Sanders
State Capitol
500 Woodlane Avenue, Suite 250
Little Rock, AR 72201
judd.deere@governor.arkansas.gov
(501) 682-2345

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Deere:

    We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

    Please find enclosed a Subpoena compelling that you, Judd Deere, produce certain documents.

    The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Judd Deere, Deputy Chief of Staff, Office of Governor Sarah Huckabee Sanders
State Capitol, 500 Woodlane Avenue, Suite 250, Little Rock, AR 72201

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br>06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   05/04/2026

| *CLERK OF COURT* | OR | *(signature)* |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-25894-RKA |
| | ) | |
| BRITISH BROADCASTING CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ATTACHMENT A TO SUBPOENA TO JUDD DEERE
## TO PRODUCE DOCUMENTS IN A CIVIL ACTION

### DEFINITIONS

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10. "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11. "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12. "The BBC" means Defendant the British Broadcasting Corporation.

13. "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14. "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15. "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16. "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17. "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18. "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19. "Special Counsel" means Special Counsel Jack Smith.

## GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

      (a)  the type of privilege claimed;

      (b)  the type of Document;

      (c)  the general subject matter of the Document;

      (d)  the date of the Document;

      (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

      (f)  the Request(s) to which the Document is responsive; and

      (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.      These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.      All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP,<br><br>  Plaintiff,<br><br>v.<br><br>BRITISH BROADCASTING CORP., et al.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:25-cv-25894-RKA<br>)<br>)<br>)<br>)<br>) |

## **DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM***

Defendants, by and through their counsel of record, hereby give notice that a Subpoena *Duces Tecum* to produce documents, electronically stored information, or tangible things has been issued to Pat Cipollone and is attached as Exhibit 1.

Dated: May 4, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

2

# EXHIBIT 1

# Ballard Spahr
LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 4, 2026

*Via FedEx and Personal Delivery*

Pat Cipollone
Torridon Law
801 17th St NW, Suite 1100
Washington DC 20006

Re:     Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Mr. Cipollone:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Pat Cipollone, produce certain documents.

The Subpoena requires that, on or before June 3, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   1:25-CV-25894-RKA |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) |
| *Defendant* | ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:         Pat Cipollone, Torridon Law, 801 17th St NW, Suite 1100, Washington DC 20006

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP<br>1909 K Street NW, 12th Floor<br>Washington, DC 20006 | Date and Time:<br><br>06/03/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      05/04/2026

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited   , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP,<br><br>    Plaintiff,<br><br>v.<br><br>BRITISH BROADCASTING CORP., et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. 1:25-cv-25894-RKA<br>)<br>)<br>)<br>)<br>) |

**ATTACHMENT A TO SUBPOENA TO PAT CIPOLLONE
TO PRODUCE DOUCMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of Florida. Otherwise, as used below:

1. Where appropriate, the use of the singular includes the plural, and the use of the plural includes the singular.

2. "And" and "or" shall be construed conjunctively or disjunctively to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

3. "Any" and "all" shall be construed to mean "any" or "all" as required to bring within the scope of this Subpoena information that might otherwise be considered to be beyond its scope.

4. "Concerning" means relating to, referring to, describing, evidencing, or constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents— including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10.     "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11.     "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12.     "The BBC" means Defendant the British Broadcasting Corporation.

13.     "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14.     "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15.     "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16.     "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17.     "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18.     "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19.     "Special Counsel" means Special Counsel Jack Smith.

3

### GENERAL INSTRUCTIONS

1.      In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.      If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.      If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

> (a) the type of privilege claimed;
>
> (b) the type of Document;
>
> (c) the general subject matter of the Document;
>
> (d) the date of the Document;
>
> (e) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;
>
> (f) the Request(s) to which the Document is responsive; and
>
> (g) any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4. These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5. All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

6

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' NOTICE OF SUBPOENA *DUCES TECUM*

Defendants, by and through their counsel of record, hereby give notice that a Subpoena

*Duces Tecum* to produce documents, electronically stored information, or tangible things has been

issued to Cassidy Hutchinson and is attached as Exhibit 1.

Dated: May 11, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (FBN 816345)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Attorneys for Defendants*

# EXHIBIT 1

# Ballard Spahr
LLP

----------------

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

May 11, 2026

*Via FedEx and Personal Delivery*

Ms. Cassidy Hutchinson
5306 Split Creek Ct.
Alexandria, VA 22312

Re:   Subpoena in *Trump v. BBC*, No. 1:25-cv-25894-RKA (S.D. Fla.)

Dear Ms. Hutchinson:

We represent Defendants the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited in the above-referenced litigation, filed by President Donald J. Trump.

Please find enclosed a Subpoena compelling that you, Cassidy Hutchinson, produce certain documents.

The Subpoena requires that, on or before June 10, 2026, responsive documents be produced at the following address: Ballard Spahr, 1909 K Street NW, Floor 12, Washington, DC 20006. If more convenient, you may instead provide the records to us electronically, at the email address: relyear@ballardspahr.com on or before the due date. If you have any questions about the requested records, the Subpoena, or the requested production deadline, please feel free to contact us.

Thank you.

Sincerely,

Charles D. Tobin

Enclosures: Subpoena and Attachment A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| President Donald J. Trump | ) |
| *Plaintiff* | ) |
| v. | ) |
| British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios Productions Limited | ) ) ) |
| *Defendant* | ) |

Civil Action No. 1:25-CV-25894-RKA

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:         Cassidy Hutchinson, 5306 Split Creek Ct., Alexandria, VA 22312

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ballard Spahr LLP 1909 K Street NW, 12th Floor Washington, DC 20006 | Date and Time: 06/10/2026 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     05/11/2026

| CLERK OF COURT | OR | |
|---|---|---|
| _____ | | *Charles D. Tobin* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  British Broadcasting Corp., BBC Studios Distribution Limited, and BBC Studios Productions Limited  , who issues or requests this subpoena, are:

Charles D. Tobin, Ballard Spahr LLP | tobinc@ballardspahr.com | 202-661-2200 | 1909 K Street NW, 12th Floor, Washington DC 20006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:25-CV-25894-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) | |
| Defendants. | ) | |

**ATTACHMENT A TO SUBPOENA TO CASSIDY HUTCHINSON**
**TO PRODUCE DOCUMENTS IN A CIVIL ACTION**

**DEFINITIONS**

The undefined terms used in the below requests are to be construed in accordance with

the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District

Court for the Southern District of Florida. Otherwise, as used below:

1.      Where appropriate, the use of the singular includes the plural, and the use of the

plural includes the singular.

2.      "And" and "or" shall be construed conjunctively or disjunctively to bring within

the scope of this Subpoena information that might otherwise be considered to be beyond its

scope.

3.      "Any" and "all" shall be construed to mean "any" or "all" as required to bring

within the scope of this Subpoena information that might otherwise be considered to be beyond

its scope.

4.      "Concerning" means relating to, referring to, describing, evidencing, or

constituting, in whole or in part, directly or indirectly, the stated subject matter.

5.      "Document" shall be interpreted in the broadest possible sense and shall include, but not be limited to, all documents and electronically stored information described in Federal Rule of Civil Procedure 34(a) as well as all writings of any kind whether handwritten, typed, printed, in electronic format, or otherwise produced or reproduced.  The term "Document" includes, but is not limited to, letters, memoranda, correspondence, text messages, calendars, address books, date books, diaries, facsimiles, telexes, teletypes, charts, graphs, notes, spreadsheets, schedules, PowerPoint slides, photographs, books, audio transmissions, videos, presentations, compilations, indices, analyses, plans, e-mail, Internet material, discussion group or chat room postings, and all other electronic information or data wherever found, including information stored on network servers, local drives, diskettes, CD-ROM, back-up files, tapes, in your possession, custody or control, including each non-identical copy thereof (whether different because of handwritten notes, amendments, marginal notations, enclosures, attachments, underlining, highlighting, or otherwise). The term "Document" also applies to all Documents—including but not limited to records, e-mails, text messages, or photos—stored in the personal e-mail or social media accounts or personal devices of entities and individuals under Your control.

6.      "Including" shall be construed as "including but not limited to."

7.      "Person(s)" includes without limitation any natural person, entity, individual or group of individuals, partnership, joint venture, unincorporated association, corporation, firm, or estate.

8.      "Relating" means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting.

9.      "You"  and "Your" shall refer to the recipient of these requests, and shall include all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-

2

in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on the behalf of any of the aforementioned entities.

10. "2020 Election" means the U.S. Presidential Election held on November 3, 2020.

11. "Action" means the action styled *President Donald J. Trump v. British Broadcasting Corporation, et al.*, Case No. 1:25-cv-25894-RKA (S.D. Fla.).

12. "The BBC" means Defendant the British Broadcasting Corporation.

13. "Donald J. Trump" refers to Donald J. Trump, the individual, and any employees, agents, representatives, or anyone acting on his behalf.

14. "Defendants" means the British Broadcasting Corporation, BBC Studios Distribution Ltd., and BBC Studios Productions Ltd.

15. "Documentary" or "*Panorama* Documentary" means and refers to the October 28, 2024 *Panorama* documentary at issue in this action, titled "*Trump: A Second Chance?*".

16. "Election Day 2020" means November 3, 2020, when the U.S. Presidential Election was held.

17. "President Trump's January 6 Speech" means President Trump's speech delivered on the afternoon of January 6, 2021 at the Ellipse.

18. "Select Committee" means the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol and any employees, agents, representatives, or anyone acting on its behalf.

19. "Special Counsel" means Special Counsel Jack Smith.

3

## GENERAL INSTRUCTIONS

1.	In responding to these Requests, You are to furnish all available information, including information in the possession, custody, or control of Your agents and all Persons acting on Your behalf. This includes Documents presently in the possession, custody, or control of Your attorney(s) or their investigators and Documents presently in the possession, custody, or control of any third party or parties to whom You have surrendered possession, custody, or control; or who are acting on Your behalf; or who have otherwise obtained possession, custody, or control; or who, upon Your request, would surrender possession, custody, or control to You.

2.	If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document. The description shall include the following:

(a) the name of each author, sender, creator, and initiator of such Document;

(b) the name of each recipient, addressee, or party for whom such Document was intended;

(c) the date the Document was created;

(d) the date(s) the Document was in use;

(e) a detailed description of the content of the Document;

(f) the reason it is no longer in Your possession, custody, or control; and

(g) the Document's current location.

(h) If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.	If You claim the attorney-client privilege, or any other privilege or protection (including any deliberative process, work product, joint defense, or common interest protections)

4

for any Document, You shall provide the following information with respect to each such Document:

    (a)  the type of privilege claimed;

    (b)  the type of Document;

    (c)  the general subject matter of the Document;

    (d)  the date of the Document;

    (e)  such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the name and title of the author of the document, the name and title of any recipient, and identification of anyone providing legal counsel;

    (f)  the Request(s) to which the Document is responsive; and

    (g)  any other information required to be furnished by Fed. R. Civ. P. 26(b)(5).

Provide the information requested in this instruction in a searchable and sortable electronic format and with sufficient specificity to enable the undersigned counsel and the Court to assess the applicability of the claimed privilege or protection.

4.    These Requests shall be deemed continuing in nature so as to require production of all additional or different Documents or information responsive to these Requests, which You discover, receive, or generate between the time of the original production and trial.

5.    All Documents and/or other data which relate to the subject matter of this case or these requests must be preserved. Any destruction involving such Documents or data must cease, even if it is Your normal or routine course of business to delete or destroy such Documents or data and even if You believe such Documents or data are privileged or otherwise need not be produced.

6.      Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**REQUEST FOR PRODUCTION NO. 2**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**REQUEST FOR PRODUCTION NO. 3**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**REQUEST FOR PRODUCTION NO. 4**:  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**REQUEST FOR PRODUCTION NO. 5**:  All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**REQUEST FOR PRODUCTION NO. 6**:  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**REQUEST FOR PRODUCTION NO. 7**:  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

**REQUEST FOR PRODUCTION NO. 8**:  All Documents and Communications Concerning the

Defendants in connection with this Action, the Documentary, or President Trump's January 6

Speech.

# OBJECTIONS TO SUBPOENAS

# JONES DAY

51 LOUISIANA AVENUE, N.W.  •  WASHINGTON, DC  20001.2113

TELEPHONE: +1.202.879.3939 • JONESDAY.COM

Direct Number:  202.879.3866
BRABBITT@JONESDAY.COM

June 1, 2026

Charles D. Tobin, Esq.
Ballard Spahr LLP
1909 K St NW 12th floor
Washington, DC 20006.
TobinC@ballardspahr.com

Re:  *President Donald J. Trump v. British Broadcasting Corp., et al.*, 25-cv-25894-RKA (S.D. Fla.)

Mr. Tobin:

We represent former U.S. Attorney General William P. Barr in connection with the subpoena ("Subpoena") that your client, British Broadcasting Corp., and its affiliates served on Mr. Barr on May 4, 2026, in the above-referenced matter.

As you know, the Subpoena purports to require Mr. Barr to produce certain documents. This letter, and the enclosed Objections and Responses, serve as Mr. Barr's initial response to the Subpoena. As set forth in the Objections and Responses, Mr. Barr reserves all rights and objections as to the Subpoena, including the right to amend and/or supplement his Objections and Responses. In particular, please note that Mr. Barr objects to the Subpoena on the ground that it was not properly served on him in accordance with the Federal Rules of Civil Procedure.

Consistent with the Department of Justice's *Touhy* regulations, 28 C.F.R. § 16.21 et seq., we have notified the U.S. Attorney for the Southern District of Florida about the Subpoena, which could be construed to seek information related to Mr. Barr's service as the 85th Attorney General of the United States. Mr. Barr further reserves his right to amend and/or supplement his Objections and Responses following consultations with and instructions from the Department of Justice.

Please let me know if you have any questions.

Very truly yours,

/s/
Brian C. Rabbitt
Brendan P. Barber

*Counsel to William P. Barr*

Enclosure

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 25-cv-25894-RKA

PRESIDENT DONALD J. TRUMP,

*Plaintiff,*

v.

BRITISH BROADCASTING
CORPORATION, *et al.*,

*Defendants*.

**NON-PARTY WILLIAM P. BARR'S OBJECTIONS AND RESPONSES TO**
**DEFENDANTS' SUBPOENA TO PRODUCE DOCUMENTS**

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), William P. Barr, a non-party to

this matter, through undersigned counsel, objects and responds to the subpoena ("Subpoena")

issued by British Broadcasting Corporation, BBC Studios Distribution Limited, and BBC Studios

Productions Limited (collectively, "Defendants" or "the BBC") on May 4, 2026, in the above-

referenced action. Mr. Barr objects and responds to the Subpoena as follows:

**PRELIMINARY STATEMENT**

1.      Mr. Barr responds to the Subpoena as he interprets and understands the

Definitions, General Instructions, and Request for Documents set forth therein.  If the BBC

subsequently asserts an interpretation of any Definition, General Instruction, or Request for

Documents that differs from Mr. Barr's understanding, Mr. Barr reserves the right to amend,

modify, and/or supplement his objections and/or responses.

2.      Any statement that Mr. Barr will search for and/or produce documents in

response to any Request does not constitute a representation that Mr. Barr in fact has any such

1

documents in his possession, custody, or control, or that any such documents exist at all, and is not to be construed as an admission with respect to any issue in this action.

3.      Mr. Barr's objections and responses are made without waiving his right to object on the grounds of competency, relevance, materiality, privilege, other protection, or admissibility as evidence for any purpose in this action or any other action, and without waiving his right to object on any grounds to other discovery requests involving or relating to the subject matter of these Requests.

4.      Mr. Barr's objections and responses are based on his present knowledge, information, and belief.  Mr. Barr responds without prejudice to his right to produce documents and information subsequently discovered or determined to be responsive and to amend or supplement his production consistent with applicable law. Mr. Barr further reserves the right to amend and/or supplement his objections and responses to the Subpoena at any time and for any reason.

5.      Mr. Barr's objections and responses are made subject to and in consideration of the United States Department of Justice's *Touhy* regulations, *see* 28 C.F.R. § 16.22 *et seq.*, which generally prohibit Mr. Barr from producing or disclosing: any materials or information that he acquired during his tenure as Attorney General and as part of his official duties; any information relating to or based upon material contained in the files of the Department of Justice; or any information or materials acquired as part of the performance of his official duties or because of his official status. Mr. Barr objects to the Subpoena to the extent that it purports to impose obligations inconsistent with the Department's *Touhy* regulations. He accordingly limits his responses herein to any personal documents that are in his personal possession, custody, or control, and that do not implicate the type of materials or information described above. Consistent with the Department's *Touhy* regulations, Mr. Barr, by counsel, has notified the U.S. Attorney for the Southern District of

2

Florida of the Subpoena and reserves the right to amend or supplement his objections and responses following consultations with and instructions from the Department.

<div align="center">**NUMBERED OBJECTIONS APPLICABLE TO MULTIPLE REQUESTS**</div>

Mr. Barr asserts the following objections that are applicable to multiple Definitions, General Instructions, and/or Requests for Documents in the Subpoena:

1.      Mr. Barr objects to the Subpoena on the ground that it was not properly served in accordance with Federal Rule of Civil Procedure 45(b)(1). Rule 45(b)(1) requires that a subpoena be served by "delivering a copy to the named person." Courts have consistently interpreted this requirement to mandate personal service – i.e., hand delivery of the subpoena to the individual named therein. *See United States v. Philip Morris Inc.,* 312 F. Supp. 2d 27, 37–38 (D.D.C. 2004) (holding that leaving subpoenas in a mail room or with support staff failed the personal service requirement of Federal Rule of Civil Procedure 45). Here, the Subpoena was not personally served on Mr. Barr, or otherwise properly served, and he therefore is under no obligation to comply with its demands. Notwithstanding and subject to this objection, and without waiving it, Mr. Barr responds and further objects to the substance of the Subpoena's Requests as set forth below.

2.      Mr. Barr objects to the Subpoena on the grounds that he is a non-party to this matter and that the Subpoena purports to impose an undue and excessive burden on him, including by seeking documents that are not relevant to any claims or defenses in this matter and/or that also could be sought from the parties themselves or other third parties, such as the United States government.

3.      Mr. Barr objects to the Subpoena in its entirety on the grounds that the compliance date of June 3, 2026, which was only 30 days from the date of service of the Subpoena, does not allow Mr. Barr, a non-party, a reasonable amount of time to comply therewith and produce documents, particularly given that trial in this action is not set to begin until February 2027 and

<div align="center">3</div>

discovery will continue until October 2026. Mr. Barr is serving these objections and responses on June 1, 2026, with agreement of the BBC's counsel. Mr. Barr reserves the right to begin a rolling production of responsive documents, if any, at a future date to be agreed upon with BBC's counsel.

4.      Mr. Barr objects to the Subpoena to the extent it seeks documents that are not relevant to any claim or defense in this litigation and/or proportional to the needs of the case. As a general matter, several of the Subpoena's Requests seek documents "concerning the events of January 6, 2021" and related matters. However, Mr. Barr left office as Attorney General on December 23, 2020, and was a private citizen, and not the Attorney General or a government employee, on January 6, 2021. Accordingly, any materials he may have "concerning the events of January 6, 2021" would not be relevant to any claim or defense in this litigation, and the Subpoena's requests for such materials are overbroad and unduly burdensome.

5.      Mr. Barr objects to the Subpoena to the extent it seeks any documents that are not in Mr. Barr's personal possession, custody, or control, but rather are in the possession, custody, or control of the United States Department of Justice, the United States House of Representatives, the United States Senate, or other third parties. As stated in the Preliminary Statement above, Mr. Barr is not authorized to produce documents or information subject to the Department of Justice's *Touhy* regulations, *see* 28 C.F.R. § 16.22(a), including any documents or information that he acquired during or because of his tenure as Attorney General and as part of or related to his official duties. He accordingly limits his responses herein to any documents that are in his personal possession, custody, or control, and that do not implicate the type of information described above.

6.      Mr. Barr objects to the Subpoena as unduly burdensome to the extent any Request seeks documents that the BBC sought or could have sought from Plaintiff President Donald J. Trump, or any other party or non-party. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring the court

4

to limit discovery that is "unreasonably cumulative or duplicative," or that "can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *American Fed'n of State, Cnty. & Mun. Emps. (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 478 (S.D. Fla. 2011) (quashing a Rule 45 subpoena where the party "has been able to obtain similar documents or information from other sources").

7.      Mr. Barr objects to each Definition, General Instruction, or Request for Documents to the extent that it is vague, ambiguous, overbroad, and/or inconsistent with or seeks to impose obligations beyond those imposed by the Federal Rules of Civil Procedure or other applicable law.

8.      Mr. Barr objects to each Request for Documents to the extent it seeks documents protected by the attorney-client privilege, attorney work product protections, or any other applicable privilege, protection, or confidentiality interest, including any Executive Branch confidentiality interests, privileges, and protections, and accordingly will not produce any such documents.

**OBJECTIONS TO DEFINITIONS**

1.      Mr. Barr objects to the definition of "Concerning" as overly broad and unduly burdensome, particularly for a non-party, to the extent it converts each Request into an open-ended demand for any document that bears even a tangential or indirect relationship to the stated subject matter.

2.      Mr. Barr objects to the definition of "Document" as overly broad and unduly burdensome, particularly for a non-party, to the extent it exceeds the scope provided for in the Federal Rules of Civil Procedure and attempts to encompass virtually any type of written or verbal communication that is possible and any document in any form whatsoever. Mr. Barr's response will adhere to applicable law.

3.      Mr. Barr objects to the definition of "You" and "Your" as vague, ambiguous,

5

overly broad, and unduly burdensome, particularly for a non-party, to the extent it incorporates a vague, ambiguous, and ill-defined list of unknown additional individuals and entities. Mr. Barr responds herein as though "You" or "Your" means Mr. Barr personally.

4. Mr. Barr objects to the definition of "2020 Presidential Election" as vague, ambiguous, overly broad, and unduly burdensome, particularly for a non-party, to the extent that it attempts to encompass numerous discrete events that took place across the entire country over a period of several months without describing those events in particular. Mr. Barr responds herein with his most reasonable, common-sense interpretation of "2020 Presidential Election."

5. Mr. Barr objects to the definition of "Donald J. Trump" as vague, ambiguous, overly broad, and unduly burdensome, particularly for a non-party, to the extent it incorporates a vague, ambiguous, and undefined list of additional individuals, staff members, advisors, and "anyone acting on his behalf." Mr. Barr responds herein as though "Donald J. Trump" means President Trump individually.

6. Mr. Barr objects to the definition of "President Trump's January 6 Speech" as vague, ambiguous, overly broad, and unduly burdensome, particularly for a non-party, to the extent it does not define the "speech" and related events with sufficient specificity.

7. Mr. Barr objects to the definition of "Person(s)" as vague, ambiguous, overly broad, and unduly burdensome, particularly for a non-party, to the extent it purports to include undefined individuals, groups, and entities. Mr. Barr will interpret the term "Person(s)" to mean one or more natural persons, as context may require.

8. Mr. Barr objects to the definition of "Select Committee" as overly broad and unduly burdensome, particularly for a non-party, to the extent it incorporates a vague, ambiguous, and ill-defined list of individuals, staff members, and advisors. Mr. Barr responds herein as though "Select Committee" means any individual that Mr. Barr now knows was, at the time of any

6

responsive communication, a Member of Congress serving on the Select Committee or a staff member employed by and acting on behalf of the Select Committee.

## OBJECTIONS TO GENERAL INSTRUCTIONS

1. Mr. Barr objects to General Instruction No. 1 as unduly burdensome and not proportional to the needs of this case because it would require that he produce "*all* available information," without any limitation, and because it seeks documents beyond the possession, custody, or control of Mr. Barr. General Instruction No. 1 is unduly burdensome and not proportional to the needs of the case for the additional reason that it extends to documents in the possession, custody, or control of a vague, ambiguous, and ill-defined list of unknown additional individuals. Mr. Barr will not undertake the obligation to identify any individual who could belong on such a list and then, once identified, conduct a custodial interview to determine what documents may be in their possession, custody, or control. Mr. Barr will include within the scope of any response documents of which he is independently aware and within his possession, custody, and control. Mr. Barr further objects to General Instruction No. 1 on the grounds of attorney-client privilege and/or the work-product doctrine to the extent it seeks documents in the possession, custody, or control of his attorneys and their agents.

2. Mr. Barr objects to General Instruction No. 2 requiring that he prepare a log identifying any documents no longer in his possession, custody, or control. This Instruction is unduly burdensome and unreasonably costly for a non-party, particularly given that it would require Mr. Barr, from memory, to reconstruct and compile a potentially limitless catalogue of every document that could be responsive to the Subpoena's broadly worded Requests but that Mr. Barr no longer possesses. Mr. Barr will not provide a log for each and every responsive document no longer in his possession, if any such documents exist.

3.        Mr. Barr objects to General Instruction No. 3 requiring that he prepare a privilege log identifying any documents withheld under claim of privilege and certain additional information regarding such documents. This Instruction is unduly burdensome and unreasonably costly for a non-party, particularly given that Mr. Barr is an attorney and given that the Subpoena implicates Executive Branch confidentiality interests and First Amendment privileges from discovery and other protections. Mr. Barr will not provide a privilege log for each and every responsive, privileged document, if any such documents exist.

4.        Mr. Barr objects to General Instruction No. 4 as unduly burdensome and not proportional to the needs of this case because it seeks to impose on Mr. Barr, a non-party, a continuing obligation without any limitation as to time or obligations. Mr. Barr assumes no obligation to continually update his response to this Subpoena.

5.        Mr. Barr objects to General Instruction No. 5 as unduly burdensome and unreasonably costly.  He will take reasonable steps to preserve available responsive documents and will produce any documents as he finds them or maintains them in the course of his personal correspondence.

6.        Mr. Barr objects to General Instruction No. 6 to the extent it provides for a relevant time period for the Subpoena that exceeds the relevant time period for this matter.

## OBJECTIONS AND RESPONSES TO SPECIFIC DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**OBJECTION AND RESPONSE:**

In response to this Request, Mr. Barr incorporates Numbered Objections Applicable to Multiple Requests Nos. 1, 2, 3, 4, 5, 6, 7, and 8, and Objections to General Instructions Nos. 1, 2, 3, and 5,

8

as if fully stated herein. Mr. Barr further objects to this Request on the ground that the term "the events of January 6, 2021" is vague, ambiguous, and undefined. Mr. Barr further objects to this Request as unduly burdensome and unnecessarily duplicative on the grounds that any documents provided to, or received from, the Select Committee are not within his possession, custody, or control and are instead publicly available and/or within the possession, custody, or control of the Department of Justice, the Select Committee, or other third parties, from which the BBC could seek the documents. Mr. Barr further objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the attorney work product doctrine, Executive Branch confidentiality interests, and/or other similar protections from discovery or disclosure. Mr. Barr further objects to this Request to the extent that it seeks documents he is not authorized to produce or disclose pursuant to the Department's *Touhy* regulations, *see* 28 C.F.R. § 16.22(a). Mr. Barr further objects to this Request to the extent that it seeks documents that are not relevant to any claim or defense in the Action, including because Mr. Barr was no longer serving as Attorney General, and was a private citizen, as of December 23, 2020, including on and at all times after January 6, 2021.

Subject to and without waiving the foregoing objections, Mr. Barr states that after a reasonable search, he is not currently aware of any documents in his personal possession, custody, and control that are responsive to this Request.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**OBJECTION AND RESPONSE:**

In response to this Request, Mr. Barr incorporates Numbered Objections Applicable to Multiple Requests Nos. 1, 2, 3, 4, 5, 6, 7, and 8, and Objections to General Instructions Nos. 1, 2, 3, and 5, as if fully stated herein.  Mr. Barr further objects to this Request on the ground that the term "the

9

events of January 6, 2021" is vague, ambiguous, and undefined. Mr. Barr further objects to this Request as unduly burdensome and unnecessarily duplicative on the grounds that any documents provided to, or received from, the Special Counsel are not within his possession, custody, or control and are instead within the possession, custody, or control of the Department of Justice, from which the BBC could seek the documents. Mr. Barr further objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the attorney work product doctrine, Executive Branch confidentiality interests, and/or other similar protections from discovery or disclosure. Mr. Barr further objects to this Request to the extent that it seeks documents he is not authorized to produce or disclose pursuant to the Department's *Touhy* regulations, *see* 28 C.F.R. § 16.22(a). Mr. Barr further objects to this Request to the extent that it seeks documents that are not relevant to any claim or defense in the Action, including because Mr. Barr was no longer serving as Attorney General, and was a private citizen, as of December 23, 2020. including on and at all times after January 6, 2021.

Subject to and without waiving the foregoing objections, Mr. Barr states that after a reasonable search, he is not currently aware of any documents in his personal possession, custody, and control that are responsive to this Request.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**OBJECTION AND RESPONSE:**

In response to this Request, Mr. Barr incorporates Numbered Objections Applicable to Multiple Requests Nos. 1, 2, 3, 4, 5, 6, 7, and 8, and Objections to General Instructions Nos. 1, 2, 3, and 5, as if fully stated herein. Mr. Barr further objects to this Request on the ground that the term "the events of January 6, 2021" is vague, ambiguous, and undefined. Mr. Barr further objects to this Request as unduly burdensome and unnecessarily duplicative on the grounds that any documents

10

provided to, or received from, the U.S. Senate Committee on Homeland Security and Government Affairs ("Senate Committee") are not within his possession, custody, or control and are instead publicly available and/or within the possession, custody, or control of the Department of Justice, the Senate Committee, or other third parties, from which the BBC could seek the documents. Mr. Barr further objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the attorney work product doctrine, Executive Branch confidentiality interests, and/or other similar protections from discovery or disclosure. Mr. Barr further objects to this Request to the extent that it seeks documents he is not authorized to produce or disclose pursuant to the Department's *Touhy* regulations, *see* 28 C.F.R. § 16.22(a). Mr. Barr further objects to this Request to the extent that it seeks documents that are not relevant to any claim or defense in the Action, including because Mr. Barr was no longer serving as Attorney General, and was a private citizen, as of December 23, 2020, including on and at all times after January 6, 2021.

Subject to and without waiving the foregoing objections, Mr. Barr states that after a reasonable search, he is not currently aware of any documents in his personal possession, custody, and control that are responsive to this Request.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**OBJECTION AND RESPONSE:**

In response to this Request, Mr. Barr incorporates Numbered Objections Applicable to Multiple Requests Nos. 1, 2, 3, 4, 5, 6, 7, and 8, and Objections to General Instructions Nos. 1, 2, 3, and 5, as if fully stated herein. Mr. Barr further objects to this Request on the grounds that the terms "the events of January 6, 2021" and "any other federal, state, or local agency or official" are vague, ambiguous, overbroad, and undefined. Mr. Barr further objects to this Request as unduly burdensome and unnecessarily duplicative on the grounds that any documents provided to "any

11

other federal, state, or local agency or official" are not within his possession, custody, or control and are instead within the possession, custody, or control of the relevant "federal, state, or local agency or official," from which the BBC could seek the documents. Mr. Barr further objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the attorney work product doctrine, Executive Branch confidentiality interests, and/or other similar protections from discovery or disclosure. Mr. Barr further objects to this Request to the extent that it seeks documents he is not authorized to produce or disclose pursuant to the Department's *Touhy* regulations, *see* 28 C.F.R. § 16.22(a). Mr. Barr further objects to this Request to the extent that it seeks documents that are not relevant to any claim or defense in the Action, including because Mr. Barr was no longer serving as Attorney General, and was a private citizen, as of December 23, 2020, including on and at all times after January 6, 2021.

Subject to and without waiving the foregoing objections, Mr. Barr states that after a reasonable search, he is not currently aware of any documents in his personal possession, custody, and control that are responsive to this Request.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**OBJECTION AND RESPONSE:**

In response to this Request, Mr. Barr incorporates Numbered Objections Applicable to Multiple Requests Nos. 1, 2, 3, 4, 5, 6, 7, and 8, and Objections to General Instructions Nos. 1 and 5, as if fully stated herein.  Mr. Barr further objects to this Request on the ground that the terms "President Trump's efforts to challenge," and "the results of the 2020 Election" are vague, ambiguous, overbroad, and undefined. Mr. Barr further objects to this Request as unduly burdensome on the grounds that it would require an open-ended search for documents concerning terms that are vague, ambiguous, overbroad, and undefined, and such a Request is accordingly not proportional to the

12

needs of this case. Mr. Barr further objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the attorney work product doctrine, Executive Branch confidentiality interests, and/or other similar protections from discovery or disclosure. Mr. Barr further objects to this Request to the extent that it seeks documents he is not authorized to produce or disclose pursuant to the Department's *Touhy* regulations, *see* 28 C.F.R. § 16.22(a). Mr. Barr further objects to this Request to the extent that it seeks documents that are not relevant to any claim or defense in the Action.

Subject to and without waiving the foregoing objections, Mr. Barr states that after a reasonable search, he is not currently aware of any documents in his personal possession, custody, and control that are responsive to this Request.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech. For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**OBJECTION AND RESPONSE:**

In response to this Request, Mr. Barr incorporates Numbered Objections Applicable to Multiple Requests Nos. 1, 2, 3, 4, 5, 6, 7, and 8, and Objections to General Instructions Nos. 1 and 5, as if fully stated herein. Mr. Barr further objects to this Request on the grounds that the terms "'Stop the Steal' rally," "planning," "speeches given at that event," "President Trump's January 6 Speech," and "drafts" are vague, ambiguous, overbroad, and undefined. Mr. Barr further objects to this Request as unduly burdensome and unnecessarily duplicative on the grounds that any responsive documents are not within his possession, custody, or control and are instead within the possession, custody, or control of the Department of Justice, from which the BBC could seek the documents. Mr. Barr further objects to this Request to the extent that it seeks documents protected by attorney-

13

client privilege, the attorney work product doctrine, Executive Branch confidentiality interests, and/or other similar protections from discovery or disclosure. Mr. Barr further objects to this Request to the extent that it seeks documents he is not authorized to produce or disclose pursuant to the Department's *Touhy* regulations, *see* 28 C.F.R. § 16.22(a). Mr. Barr further objects to this Request to the extent that it seeks documents that are not relevant to any claim or defense in the Action, including because Mr. Barr was no longer serving as Attorney General, and was a private citizen, as of December 23, 2020, including on and at all times after January 6, 2021.

Subject to and without waiving the foregoing objections, Mr. Barr states that after a reasonable search, he is not currently aware of any documents in his personal possession, custody, and control that are responsive to this Request.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

**OBJECTION AND RESPONSE:**

In response to this Request, Mr. Barr incorporates Numbered Objections Applicable to Multiple Requests Nos. 1, 2, 3, 4, 5, 6, 7, and 8, and Objections to General Instructions Nos. 1, 2, 4, 5, and 6, as if fully stated herein. Mr. Barr further objects to this Request on the grounds that the terms "'Stop the Steal' rally" and "attack on the U.S. Capitol" are vague, ambiguous, overbroad, and undefined. Mr. Barr further objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the attorney work product doctrine, and/or other similar protections from discovery or disclosure. Mr. Barr further objects to this Request to the extent that it seeks documents that are not relevant to any claim or defense in the Action, including because Mr. Barr was no longer serving as Attorney General, and was a private citizen, as of December 23, 2020 and on and at all times after January 6, 2021.

14

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications Concerning the Defendants in connection with this Action, the Documentary, or President Trump's January 6 Speech.

**OBJECTION AND RESPONSE:**

In response to this Request, Mr. Barr incorporates Numbered Objections Applicable to Multiple Requests Nos. 1, 2, 3, 4, 5, 6, 7, and 8, and Objections to General Instructions Nos. 1, 2, 4, 5, and 6, as if fully stated herein.  Mr. Barr further objects to this Request on the ground that the term "President Trump's January 6 Speech" is vague, ambiguous, overbroad, and undefined. Mr. Barr further objects to this Request on the ground that the direction to produce documents "in connection with" certain things is vague, ambiguous, overbroad, confusing, and not susceptible to reasonable interpretation. Mr. Barr further objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the attorney work product doctrine, and/or other similar protections from discovery or disclosure. Mr. Barr further objects to this Request to the extent that it seeks documents that are not relevant to any claim or defense in the Action, including because Mr. Barr was no longer serving as Attorney General, and was a private citizen, as of December 23, 2020, including and at all times after January 6, 2021, and during the time the Action has been pending.

Subject to and without waiving the foregoing objections, Mr. Barr states that after a reasonable search, he is not currently aware of any documents in his personal possession, custody, and control that are responsive to this Request.

15

Dated:  June 1, 2026

_____
Brian C. Rabbitt
Brendan P. Barber
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
T: 202.879.3866
E: brabbitt@jonesday.com

*Counsel for William P. Barr*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2026, I served the foregoing on the parties via electronic mail:

Charles D. Tobin,
Esq. Ballard Spahr
LLP
1909 K St NW 12th floor
Washington, DC 20006
TobinC@ballardspahr.com

Brian C. Rabbitt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
T: 202.879.3866
E: brabbitt@jonesday.com

*Counsel for William P. Barr*

# BINNALL
## LAW GROUP

P: 703-888-1943 • F: 703-888-1930
717 King Street, Suite 200 • Alexandria, VA 22314

**Jason Greaves**
PARTNER

D: 571-467-0003
E: jason@binnall.com

May 22, 2026

**BY EMAIL**

Mr. Charles D. Tobin, Esq.
BALLARD SPAHR LLP
1909 K Street, NW
Washington, DC 20006-1157
tobinc@ballardspahr.com

RE:   Objections to subpoena in *Trump v. BBC*, No. 1:25-cv-25894 (S.D. Fla.)

Dear Mr. Tobin:

I represent Lt. Gen. Michael T. Flynn, U.S. Army (ret.) ("General Flynn"), and I am in receipt of your subpoena duces tecum in the above captioned matter and object to those requests for documents as detailed below. In the interest of avoiding litigation, for which General Flynn will seek reimbursement of his reasonable attorneys' fees in the Middle District of Florida, I request that you entirely withdraw the subpoena.

### General Objections

General Flynn objects generally to having received and been forced to respond to this subpoena as unduly burdensome. He is a non-party and a non-witness, with no relevant knowledge or documents about the underlying case, which is the BBC's October 28, 2024 documentary that included an *admittedly* deceptive edit to President Donald J. Trump's January 6, 2021 speech. General Flynn was a private citizen, with no role in the President Trump's administration as of January 6, 2021, and had no role in President Trump's speech, other than attending it (along with tens of thousands of other people). There is simply no justification for dragging General Flynn into this lawsuit, other than the prurient and malicious desire to harass him, to fish around in his private communications, to use his name as clickbait in media coverage of this case, and to subject him to yet more expensive and pointless discovery. This is at least the eighth time General Flynn has been subpoenaed to produce documents and testimony in civil defamation cases having nothing to do with him. The Middle District of Florida has looked unfavorably on this type of overly burdensome discovery on its residents and General Flynn has been awarded protective orders in similar cases. General Flynn is one of the biggest victims of lawfare and weaponization of the legal system in the history of this country, and these endless civil subpoenas are a continuation of that abuse.

*Objections and demand to withdraw subpoena of General Flynn*
*May 22, 2026*
*Page 2 of 5*

General Flynn further objects to the grossly overbroad definition of "You" and "Your" which purports to subject to discovery in this matter "all entities in which You have a Financial Interest; your direct and indirect parents, predecessors-in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees; the present and former officers, directors, employees, attorneys, agents, and representatives of any of the above; and each Person acting or purporting to act on your behalf or on behalf of any of the aforementioned entities." General Flynn is a private citizen and a non-party, who should not have to respond to this subpoena, much less everyone affiliated with him. If you believe you can articulate to a judge the basis for a subpoena to any business in which General Flynn has a financial interest, or to anyone "affiliated" with him and his employees and attorneys, you should issue and be prepared to defend those subpoenas.

General Flynn further objects to the purportedly relevant period as being any document created after November 1, 2020, as overly broad and unduly burdensome. This open-ended discovery period is further evidence that this subpoena is a bald fishing expedition.

General Flynn further objects to the place of compliance as being greater than 100 miles from where he resides, is employed, or regularly transacts business in person. As you are aware, General Flynn lives and works in the Middle District of Florida. He also understandably avoids D.C.—where he was subjected to malicious prosecution and unprecedented legal abuse—like the plague.

<u>Specific Objections</u>

**Request No. 1:** All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**OBJECTIONS:** General Flynn incorporates his General Objections above. Additionally, nothing about documents provided to or received from the partisan and corrupt Select Committee (if any) have a thing to do with the BBC's admittedly deceptive edit of President Trump's speech. By definition, this request seeks information gathered or prepared in anticipation of litigation, and General Flynn objects on the grounds of work product and incorporates any confidentiality agreements, protective orders, and legal objections raised in connection with any other litigation. General Flynn further objects to this request as oppressive, unreasonably burdensome, and harassing of a non-party. It is also overly broad, not proportionate to the needs of this case, not reasonably calculated to lead to the discovery of admissible evidence, and is an improper fishing expedition.

*Objections and demand to withdraw subpoena of General Flynn*
*May 22, 2026*
*Page 3 of 5*

**Request No. 2:** All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**OBJECTIONS:** General Flynn incorporates his General Objections above. Additionally, nothing about documents provided to or received from the partisan and corrupt Special Counsel Jack Smith (if any) have a thing to do with the BBC's admittedly deceptive edit of President Trump's speech. By definition, this request seeks information gathered or prepared in anticipation of litigation, and General Flynn objects on the grounds of work product and incorporates any confidentiality agreements, protective orders, and legal objections raised in connection with any other litigation. General Flynn further objects to this request as oppressive, unreasonably burdensome, and harassing of a non-party. It is also overly broad, not proportionate to the needs of this case, not reasonably calculated to lead to the discovery of admissible evidence, and is an improper fishing expedition.

**Request No. 3:** All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**OBJECTIONS:** General Flynn incorporates his General Objections above. Additionally, nothing about documents provided to the U.S. Senate Committee on Homeland Security and Government Affairs (if any) have a thing to do with the BBC's admittedly deceptive edit of President Trump's speech. By definition, this request seeks information gathered or prepared in anticipation of litigation, and General Flynn objects on the grounds of work product and incorporates any confidentiality agreements, protective orders, and legal objections raised in connection with any other litigation. General Flynn further objects to this request as oppressive, unreasonably burdensome, and harassing of a non-party. It is also overly broad, not proportionate to the needs of this case, not reasonably calculated to lead to the discovery of admissible evidence, and is an improper fishing expedition.

**Request No. 4:** All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**OBJECTIONS:** General Flynn incorporates his General Objections above. Additionally, nothing about documents provided to "any other federal, state, or local agency or official" (if any) have a thing to do with the BBC's admittedly deceptive edit of President Trump's speech. By definition, this request seeks information gathered or prepared in anticipation of litigation, and General Flynn objects on the grounds of work product and incorporates any confidentiality agreements, protective orders, and legal objections raised in connection with any other litigation. General Flynn further objects to this request as oppressive, unreasonably burdensome, and harassing of a non-party. It is also overly broad, not

*Objections and demand to withdraw subpoena of General Flynn*
*May 22, 2026*
*Page 4 of 5*

proportionate to the needs of this case, not reasonably calculated to lead to the discovery of admissible evidence, and is an improper fishing expedition.

**Request No. 5:** All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**OBJECTIONS:** General Flynn incorporates his General Objections above. General Flynn further objects on the grounds that this request is wildly and absurdly overbroad, oppressive, burdensome, and harassing of a non-party. The burden of searching for and producing responses to this request is grossly disproportionate to the needs of this case. This is a naked fishing expedition and violation of General Flynn's privacy, utterly untethered to the underlying case, without any limitation on date or recipient, and would require General Flynn to produce every communication with *anyone* having to do with the outcome of the 2020 election, the most controversial and most litigated election of a generation. General Flynn also objects to the extent this request would seek attorney client privileged communications and/or work product.

**Request No. 6:** All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech. For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**OBJECTIONS:** General Flynn incorporates his General Objections above. General Flynn did not speak on January 6, 2021. He did not attend a "Stop the Steal" rally on January 6, 2021. He is not even aware of a "Stop the Steal" rally on January 6, 2021. General Flynn was not part of President Trump's administration, or his speech writing team, nor was he involved in or privy to the drafting of President Trump's speech. To the extent that this request seeks all General Flynn's communications concerning President Trump's speech on January 6, 2021—one of the most litigated and talked-about events in history—he objects to this request as wildly overbroad, oppressive, burdensome, and harassing of a non-party. The burden of searching for and producing responses to this request is grossly disproportionate to the needs of this case. General Flynn also objects to the extent this request would seek attorney client privileged communications and/or work product.

**Request No. 7:** All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

**OBJECTIONS:** General Flynn incorporates his General Objections above. General Flynn further objects on the grounds that this request is wildly and absurdly overbroad,

*Objections and demand to withdraw subpoena of General Flynn*
*May 22, 2026*
*Page 5 of 5*

oppressive, burdensome, and harassing of a non-party. The burden of searching for and producing responses to this request is grossly disproportionate to the needs of this case. This is a naked fishing expedition and violation of General Flynn's privacy, utterly untethered to the underlying case, without any limitation on date or recipient, and would require General Flynn to produce every communication with *anyone* having to do with one of the most controversial events of modern history. General Flynn also objects to the extent this request would seek attorney client privileged communications and/or work product.

**Request No. 8:** All Documents and Communications Concerning the Defendants in connection with this Action, the Documentary, or President Trump's January 6 Speech.

**OBJECTIONS:** General Flynn incorporates his General Objections above. It is mystifying why Defendants in this case, or anyone, would care about General Flynn's thoughts or communications about the BBC. He has nothing to do with this litigation. He has no independent knowledge of the BBC documentary and its deceptive edit to President Trump's speech, other than what he has read or heard in the news. General Flynn objects on the grounds that this request is overbroad, oppressive, burdensome, and harassing of a non-party. The burden of searching for and producing responses to this request is grossly disproportionate to the needs of this case.

Please confirm your withdrawal of this subpoena.


Sincerely,

Jason C. Greaves

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Miami Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP., | |
| *Plaintiff,* | |
| v. | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP et al., | |
| *Defendants.* | |

**NON-PARTY JASON MILLER'S**
**RESPONSES AND OBJECTIONS TO DEFENDANT'S**
**REQUESTS FOR PRODUCTION**

Under Federal Rules of Civil Procedure 26, 34, and 45, Non-Party Jason Miller ("Miller")

objects and responds to Defendant British Broadcasting Corp.'s ("BBC") Requests for Production

dated May 5, 2026 as follows:

**PRELIMINARY STATEMENT**

The following Responses and Objections are made without waiving but, instead, preserving:

(a) the right to raise in any subsequent proceeding or in the trial of this or any other action all

questions of authenticity, foundation, relevance, materiality, privilege, and evidentiary admissibility

of any Documents, Communications, or information provided or identified in these Responses;

(b) the right to object on any ground to the use or introduction into evidence of any Documents,

Communications, or information in any subsequent proceeding or in the trial of this or any other

action on any ground; and (c) the right to object on any ground at any time to additional discovery.

1

An Objection or Response by Miller to a Request for Production is not an admission that Miller accepts or admits the existence of any facts assumed by such Request, nor should an Objection or Response be taken to constitute admissible evidence as to any such assumed facts.

## **GENERAL OBJECTIONS**

The following General Objections apply to each and every one of the Requests for Production and should be considered part of the Response to each and every one of the Requests.  Any Specific Objections provided below are made in addition to these General Objections, and failure to reiterate a General Objection below does not constitute a waiver or limitation of that or any other Objection.

1. Miller objects to each and every Definition, Instruction, and Request to the extent it attempts to alter the scope of discovery or impose obligations that exceed those required by the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the Southern District of Florida, or any other applicable order.

2. Miller objects to each Request to the extent that it calls for the disclosure of Documents or Communications that are already in the possession, custody, or control of BBC or are otherwise available in the public domain. Miller will not re-produce Documents or Communications that BBC already possesses, including Documents or Communications in the public domain.

3. Miller objects to the Requests to the extent they seek information not in his possession, custody, or control.

4. Miller objects to each Request to the extent that it seeks Documents or Communications that contain information that is subject to confidentiality agreements between Miller and his clients, and/or Protective Orders entered by state or federal courts around the country.  Miller further objects to each Request to the extent that it would require counsel to review

2

Documents or Communications that are covered by such confidentiality agreements or Protective Orders. Miller will not violate any confidentiality agreement or Protective Order by which he is bound by making materials available for review by counsel to the extent that doing so would violate any such agreement or court order. To the extent necessary, Miller reserves the right personally to review such materials and to redact protected information before sharing with outside counsel.

5.      Miller objects to each Request to the extent that it seeks Documents or Communications protected by applicable privileges (including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the executive privilege, or the common interest privilege) or otherwise protected under applicable law.  In the event such privileged information is disclosed in response to these Requests, such disclosure is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other applicable ground for protecting such information from disclosure.

6.      Miller objects to the subpoena on the grounds that each Request, which demand "all" Documents and "all" Communications, is overly broad, unduly burdensome, and not proportional to the needs of the case.

7.      Miller objects to the subpoena because the materials sought are available from another source who is a party to this litigation, from whom discovery would be less burdensome. Miller is not a party to this action and should not be unduly burdened by the annoyance and expense of producing the documents sought unless BBC proves that it is unable to discover those documents from a party to the litigation.

8.      Miller objects to the subpoena because it violates FRCP 45(c)'s geographical limitations and is therefore unenforceable on its face.

9.      Miller objects to the subpoena because it is not calculated to lead to the discovery of evidence that is relevant to any party's claim or defense and proportional to the needs of the case.

## OBJECTIONS TO INSTRUCTIONS

The following Objections to BBC's Instructions apply to each and every one of the Requests and should be considered part of Miller's Responses to each and every one of the Requests. Additionally, Miller objects to any Instruction that purports to conflict with any production protocol agreed to by the parties. If and when such a conflict arises, Miller will abide by the agreed-upon protocol(s).

**INSTRUCTION:**   If any responsive Document was, but no longer is, in Your possession, custody, or control, produce a description of each such Document.  The description shall include the following:

(a)  The name of each author, sender, creator, and initiator of such Document;

(b) The name of each recipient, addressee, or party for whom such Document was intended;

(c)  The date the document was created;

(d) The date(s) the document was in use;

(e)  A detailed description of the content of the Document;

(f)  The reason it is no longer in Your possession, custody, or control; and

(g) The document's current location.

(h) If the document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

**OBJECTION TO INSTRUCTION:**

Miller objects to this instruction because it imposes burdens beyond those contemplated by the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for

4

the Southern District of Florida, or any other applicable order.  Miller also objects to this instruction because it is nonsensical and demands mental impressions and recollections beyond what could be expected of anyone, let alone a non-party witness.  Miller also objects to this instruction because it is designed to harass him.  Miller also objects to this instruction because it seeks information outside of his possession, custody, or control.  Miller also objects to this instruction because it seeks Documents or Communications protected by applicable privileges.

**INSTRUCTION:**  Unless otherwise stated, the relevant time period for all requests are for Documents created or originating on or after November 1, 2020.

**OBJECTION TO INSTRUCTION:**

Miller objects to this instruction because its temporal bounds are not narrowly tailored or otherwise proportionate to the needs of the case.

## OBJECTIONS TO DEFINITIONS

The following Objections to BBC's Definitions apply to each and every one of the Requests and should be considered part of Miller's Responses to each and every one of the Requests.

**DEFINITION OF "YOU" OR "YOUR":**

Miller objects to the Definition of "You" or "Your" because it is overbroad in that it seeks to include Miller's "attorneys," which would encompass Documents or Communications subject to various privileges, including work product protections and attorney-client privilege.  Miller further objects to the Definition of "You" or "Your" because it is overbroad in that it seeks to include "all entities in which You have a Financial Interest" and treats Miller as though he were a fictitious entity rather than an individual.

Subject to and without waiving the foregoing objections, Miller will construe "You" and "Your" to mean Jason Miller, only.

5

**DEFINITION OF "DONALD J. TRUMP":**

Miller objects to the Definition of "Donald J. Trump" because it is overbroad in that it seeks to include President Trump's "employees, agents, representatives, or anyone acting on his behalf" which would encompass Documents or Communications subject to various privileges, including work product protections, executive privilege, and attorney-client privilege.

Subject to and without waiving the foregoing objections, Miller will construe "Donald J. Trump" to refer to Donald J. Trump, the Forty-Fifth and Forty-Seventh President of the United States of America.

**DEFINITION OF "SELECT COMMITTEE":**

Miller objects to the Definition of "Select Committee" because it is overbroad in that it seeks to include "employees, agents, representatives, or anyone acting on its behalf."

Subject to and without waiving the foregoing objections, Miller will construe "Select Committee" to refer to that entity, alone.

**SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**   All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION NO. 1:**

Miller incorporates the Objections and Responses above. Miller further objects to this Request because the expression "the events of January 6, 2021" is undefined and unbounded and thus unduly burdensome, oppressive, and disproportionate to the needs of the case, especially for a non-party.

**REQUEST FOR PRODUCTION NO. 2:**   All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

6

**OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION NO. 2:**

Miller incorporates the Objections and Responses above. Miller further objects to this Request because the expression "the events of January 6, 2021" is undefined and unbounded and thus unduly burdensome, oppressive, and disproportionate to the needs of the case, especially for a non-party.

**REQUEST FOR PRODUCTION NO. 3**:   All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION NO. 3:**

Miller incorporates the Objections and Responses above. Miller further objects to this Request because the expression "the events of January 6, 2021" is undefined and unbounded and thus unduly burdensome, oppressive, and disproportionate to the needs of the case, especially for a non-party.

**REQUEST FOR PRODUCTION NO. 4:**   All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION NO. 4:**

Miller incorporates the Objections and Responses above. Miller further objects to this Request because the expression "the events of January 6, 2021" is undefined and unbounded and thus unduly burdensome, oppressive, and disproportionate to the needs of the case, especially for a non-party.

**REQUEST FOR PRODUCTION NO. 5**:   All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

**OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION NO. 5:**

Miller incorporates the Objections and Responses above. Miller further objects to this Request because the expression "efforts to challenge the results of the 2020 election" is undefined

7

and unbounded and thus unduly burdensome, oppressive, and disproportionate to the needs of the case, especially for a non-party.

**REQUEST FOR PRODUCTION NO. 6**:   All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech.  For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION NO. 6:**

Miller incorporates the Objections and Responses above. Miller further objects to this Request because the expression "Stop the Steal rally" is undefined and unbounded and thus unduly burdensome, oppressive, and disproportionate to the needs of the case, especially for a non-party.

**REQUEST FOR PRODUCTION NO. 7:**   All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

**OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION NO. 7:**

Miller incorporates the Objections and Responses above. Miller further objects to this Request because the expression "Stop the Steal rally" is undefined and unbounded and thus unduly burdensome, oppressive, and disproportionate to the needs of the case, especially for a non-party.

**REQUEST FOR PRODUCTION NO. 8:**   All Documents and Communications Concerning the Defendants in connection with this Action, the Documentary, or President Trump's January 6 Speech.

**OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION NO. 8:**

Miller incorporates the Objections and Responses above. Miller further objects to this Request because the expression "Stop the Steal rally" is undefined and unbounded and thus unduly burdensome, oppressive, and disproportionate to the needs of the case, especially for a non-party.

May 19, 2026

Respectfully submitted,

*/s/ Nathan J. Muyskens*

Nathan J. Muyskens
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Tel: (202) 331-3100
Fax: (202) 331-3101
Nathan.muyskens@gtlaw.com

*Counsel for Non-Party Jason Miller*



**Amaobi J. Enyinnia**
**205-581-0714 direct**

**aenyinnia@lightfootlaw.com**

May 29, 2026

***VIA EMAIL***
Charles D. Tobin, Esq.
BALLARD SPAHR LLP
1909 K Street NW, Floor 12
Washington, DC 20006
tobinc@ballardspahr.com
relyear@ballardspahr.com

**RE:** **Subpoena in** ***Trump v. BBC,*** **No. 1:25-cv-25894-RKA (S.D. Fla.)**

Dear Charles:

As you know, my office represents the Office of the Secretary of State of Georgia (the "Secretary") with respect to the May 4, 2026 subpoena issued to it by the British Broadcasting Corporation, BBC Studios Production Limited, and BBC Studios Distribution Limited (collectively, the "BBC Defendants"). The Secretary has reviewed the subpoena, and pursuant to Rule 45 of the Federal Rules of Civil Procedure and our prior stipulation extending the Secretary's time to respond to the subpoena, responds as follows:

## PRELIMINARY STATEMENT

1.      The Secretary's understanding is that the above-referenced defamation action primarily concerns the BBC Defendants' editing of certain portions of a speech that President Donald Trump gave at the Ellipse in Washington, D.C., on January 6, 2021, in a 2024 *Panorama* episode (*i.e.*, the "Documentary" defined in the subpoena, entitled *Trump: A Second Chance?*).

2.      The Secretary is a non-party to this action and, as such, is entitled to significant protection from the burden and expense of compliance under Federal Rule of Civil Procedure 45(d). The Secretary therefore objects to each Request to the extent it imposes undue burden or significant expense on a non-party. The Secretary correspondingly reserves the right to seek cost-shifting or reimbursement for any expenses incurred in responding to this subpoena.

3.      The Secretary objects to this subpoena to the extent that it seeks to compel compliance outside of the geographic scope authorized under Federal Rule of Civil Procedure 45(c).

May 29, 2026
Page 2 of 5

4.      The Secretary additionally objects to each Request to the extent it seeks documents or communications protected by the attorney-client privilege, the work-product doctrine, the deliberative-process privilege, or any other applicable privilege or protection. The Secretary does not waive any privilege by producing documents in response to this subpoena.

5.      The Secretary's responses are based on its understanding of the above-referenced action and its interpretation of each request within the subpoena. The Secretary reserves the right to amend or supplement its responses, including by asserting additional objections, as necessary, including in the event the BBC Defendants formally or informally amend or supplement their requests or provide any alternative interpretations of the requests for the Secretary to evaluate.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.

**RESPONSE:  The Secretary will agree to produce a copy of the documents it provided to the House Select Committee. These documents will be produced via a separately emailed ShareFile link.**

**Otherwise, the Secretary objects to this request as overly broad through its use of the term "all." The Secretary further objects to this request to the extent it seeks materials that are publicly available and for which it should not bear the burden of reproducing. For example, the Select Committee published myriad materials, including reports, hearing records, and supporting materials, concerning its investigation, accessible online at https://www.govinfo.gov/collection/january-6th-committee-final-report?path=/GPO/January%206th%20Committee%20Final%20Report%20and%20 Supporting%20Materials%20Collection. Out of an abundance of caution, the Secretary further objects to this Request to the extent it seeks documents protected by any applicable privilege or protection.**

**REQUEST FOR PRODUCTION NO. 2:**  All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.

**RESPONSE:  The Secretary refers the BBC Defendants to its response to Request for Production No. 1, which contains materials also responsive to this Request.**

**Otherwise, the Secretary objects to this request as overly broad and not proportional to the needs of the case through its use of the term "Concerning." The Special Counsel's investigation was not limited to the events of January 6, 2021 and involved the 2020 Election at large, meaning the vast majority of items**

May 29, 2026
Page 3 of 5

contained in any response to the Special Counsel are most likely either not relevant or have an attenuated relevance to the claims and defenses in the above-referenced action. To search and review documents produced to the Special Counsel to locate documents relevant to the above-referenced action would involve, on its face, the significant diversion of resources from the Secretary's normal duties, including duties related to the upcoming 2026 general election. The Secretary also objects to this Request to the extent it is redundant of Request for Production No. 1; the Secretary's response thereto also contains materials responsive to this Request.

**REQUEST FOR PRODUCTION NO. 3:**  All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

**RESPONSE: The Secretary has conducted a reasonable search and does not believe it possesses documents responsive to this request.**

**REQUEST FOR PRODUCTION NO. 4:**  All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.

**RESPONSE:  The Secretary refers the BBC Defendants to its response to Request for Production No. 1.**

**Otherwise**, **the Secretary objects to this request as overly broad and not proportional to the needs of the case through its use of the term "Concerning" and because it is not reasonably limited in scope or time. As is public knowledge, the 2020 Election generated significant investigatory interest among both federal and state agencies. The vast majority of items contained in any response to federal, state, and/or local officials by the Secretary generally concerned the 2020 Election, not the events of January 6, 2021. Those materials are therefore most likely either not relevant or have an attenuated relevance to the claims and defenses in the above-referenced action. To search and review documents produced to any federal or state agency to locate documents relevant to the above-referenced action would involve, on its face, the significant diversion of resources from the Secretary's normal duties, including duties related to the upcoming 2026 general election, along with the time and cost associated with any such production. The Secretary also objects to this Request to the extent it is redundant of Request for Production No. 1; the Secretary's response thereto also contains materials responsive to this Request.**

**REQUEST FOR PRODUCTION NO. 5:** All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.

May 29, 2026
Page 4 of 5

**RESPONSE:  The Secretary refers the BBC Defendants to its response to Request for Production No. 1 and to publicly or widely available materials, such as Secretary Raffensperger's interview with and testimony before the Select Committee and other publications concerning 2020 election challenges.**

**Otherwise, the Secretary objects to this request as overly broad on its face, including through its use of the term "Concerning" and to the extent this request seeks documents not in the Secretary's possession or that are publicly available, meaning that the Secretary should not bear the burden of reproduction, and because this request lacks a reasonable temporal limitation. The Secretary also objects to this request as lacking particularity and therefore vague. The Secretary relatedly objects to this request as largely not seeking relevant materials and not proportional to the needs of the case, as President Trump made broad efforts to challenge the results of the 2020 election, including many not involving the Secretary or the State of Georgia. The Secretary also objects to this Request to the extent it is redundant of Request for Production No. 1; the Secretary's response thereto also contains materials responsive to this Request.**

**REQUEST FOR PRODUCTION NO. 6:**  All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech. For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.

**RESPONSE: The Secretary has conducted a reasonable search and does not believe it possesses documents responsive to this request.**

**REQUEST FOR PRODUCTION NO. 7:**  All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.

**RESPONSE: The Secretary has conducted a reasonable search and does not believe it possesses documents responsive to this request.**

**REQUEST FOR PRODUCTION NO. 8:**  All Documents and Communications Concerning the Defendants in connection with this Action, the Documentary, or President Trump's January 6 Speech.

**RESPONSE:  The Secretary refers the BBC Defendants to its responses to Request for Production Nos. 1-7. On good faith information and belief, the Secretary does not believe it is in possession of any documents concerning the Documentary or the BBC Defendants.**

**Otherwise, the Secretary objects to this request as overly broad because it is not reasonably limited in scope or time, including through its use of the terms**

May 29, 2026
Page 5 of 5

**"Concerning" and "in connection", as lacking reasonable particularity and therefore vague, and as duplicative of Requests 1-7.**

*       *       *

The Secretary expressly reserves all objections not stated herein. Please feel free to call me if you would like to further discuss this response or any concerns. After receipt of the records previously produced to the Select Committee, please let us know if there are specific documents that the BBC Defendants are seeking from the Secretary, and the Secretary will review the request and respond accordingly.

Sincerely,

Amaobi J. Enyinnia

cc:     Jackson R. Sharman, III, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al. | ) ) | |
| Defendants. | ) ) ) | |

**THE REPUBLICAN NATIONAL COMMITTEE'S RESPONSE AND OBJECTIONS TO DEFENDANTS' *SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION***

Pursuant to Rule 45(d)(2)(B) of the Federal Rules of Civil Procedure (the "Federal Rules"), the Republican National Committee ("RNC"), by and through counsel, hereby submits its Response and Objections to Defendants' *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action*, dated May 4, 2026 (the "Subpoena"). The RNC's objections to any request in the Subpoena should not be construed as an admission that responsive documents exist.

At the outset, the Subpoena is fundamentally misaligned with the narrow issues presented in this lawsuit. This case concerns a discrete and limited question: whether Defendants acted with actual malice in editing and presenting a portion of President Trump's January 6, 2021 speech in a BBC documentary broadcast in October 2024. The Subpoena, by contrast, seeks—from a national political party committee that is not a party to this litigation—expansive discovery regarding the full scope of events surrounding January 6, subsequent governmental investigations, election-related activities, and internal political communications. These sweeping requests bear

little to no relationship to the claims and defenses at issue and impose substantial and unwarranted burdens on the RNC, a non-party. The RNC's objections should be understood in light of this fundamental mismatch between the narrow scope of the case and the breadth of the discovery sought by the Subpoena.

## GENERAL OBJECTIONS

1.      The RNC objects to each and every request for production in the Subpoena, including the "Definitions" and "General Instructions" sections adopted by reference therein (collectively, the "Requests"; each a "Request"), to the extent that the Request seeks to impose any requirements or obligations on the RNC beyond those required by the Federal Rules; the local rules of this Court; any agreement of the parties; any other statute, rule, order of the Court; or to the extent it seeks documents beyond those permitted by the Federal Rules.

2.      The RNC objects to each and every Request as seeking information that is not relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). This case concerns an allegedly defamatory edit of a discrete portion of President Trump's January 6, 2021 speech, as presented in the BBC's *Panorama* documentary. The Subpoena, however, seeks sweeping categories of documents and communications concerning the events of January 6, subsequent government investigations, election-related activities, and internal political communications—matters far removed from the narrow question in this case: whether Defendants acted with actual malice in editing and publishing the Documentary.

3.      The RNC objects to each and every Request as not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

      a.      The Requests are not proportional to the needs of the case because the RNC's documents and communications are of no importance to "resolving the issues" in

this case for the reasons set forth in the General Objection No. 2. Fed. R. Civ. P. 26(b)(1). The proposed discovery is a fishing expedition into the documents and communications of a national political party committee that are of no importance to resolving Plaintiff's claims that statements in the Documentary defamed him. This case presents a narrow and focused issue—whether Defendants acted with actual malice in editing and presenting a discrete portion of President Trump's January 6, 2021 speech in the BBC's *Panorama* documentary—not the broader historical, political, or investigative record surrounding January 6 or political activities of the RNC or private citizens.

b.      The Requests also are not proportional to the needs of this case because "the burden or expense of the proposed discovery outweighs its likely benefit," especially "in light of the parties' resources." Fed. R. Civ. P. 26(b)(1). Many of the Requests are extremely broad in subject matter, time, and potential custodians, and would require the RNC to devote substantial resources to collect, review, and produce. The RNC's resources consist solely of contributions, limited by federal law, which have been made by U.S. citizens exercising their "right to participate in democracy through political contributions." *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014). Forcing the RNC to divert these contributions away from the 2026 midterm elections and toward addressing broad discovery requests amounts to a burden on that constitutional right. The Supreme Court has admonished that courts should "minim[ize] … discovery" in cases involving "political speech." *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 469 (2007) (opinion of Roberts, C.J.).

4.      The RNC objects to each and every Request as imposing an undue burden and expense on the RNC, a non-party. Fed. R. Civ. P. 45(d)(1). As described in General Objection No.

3.b, the Requests are extraordinarily broad in subject matter, time, and potential custodians and would impose unduly burdensome and disproportionate collection, review, and production efforts on the RNC. This is a narrow defamation case about an editorial decision in 2024, not a broad inquiry into the events of January 6 or related—and even unrelated—political activities of the RNC and private citizens.

5.     The RNC objects to each and every one of the Requests to the extent that the Request seeks information or materials protected by the attorney-client privilege, the work product doctrine, the joint-defense or common-interest privilege, or any other applicable privilege, protection, or immunity, including protections afforded by the First Amendment. *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002); *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454-55 (D.D.C. 2002). Inadvertent disclosure of any such document shall not constitute a waiver of any privilege or any other ground for objections to discovery with respect to such document, the subject matter thereof, or other documents, and shall not waive the RNC's right to object to the use of any such documents or information contained therein in this action or in any other proceeding. Nothing in these responses is intended to be, or should be construed as, a waiver of any privilege.

6.     The RNC objects to each and every one of the Requests to the extent that the Request seeks documents or information protected from disclosure by the First Amendment, including the RNC's internal communications, communications with other political groups, and communications with candidates, advisors, vendors, political supporters, and other individuals. "It is crucial to remember . . . the essence of First Amendment freedoms—the freedoms to protest policies and programs to which one is opposed, and the freedom to organize, raise money, and associate with other like-minded persons so as to effectively convey the message of the protest."

- 4 -

*Int'l Action Ctr.*, 207 F.R.D. at 3; *Wyoming*, 208 F.R.D. at 454-59; *see also Knaupf v. Unite Here Local 100*, No. 14-6915, 2015 WL 7451190 at *5 (D.N.J. 2015). This right of free expression and association is particularly vital in the context of political campaigns: an elected official or candidate "ha[s] the right to enter the field of political controversy, particularly where his political life was at stake. The role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." *Wood v. Georgia*, 370 U.S. 375, 394-95 (1962); *see also Thornhill v. Ala.*, 310 U.S. 88, 95 (1940) ("Those who won our independence had confidence in the power of free and fearless reasoning and communication of ideas to discover and spread political . . . truth."). The Supreme Court has recognized that the forced disclosure of political associations raises First Amendment concerns, because the "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958). Compelled disclosure of campaign-related communications in civil discovery can deter activities protected under the First Amendment "by chilling participation and by muting the internal exchange of ideas." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1163 (9th Cir. 2010). Thus, courts "have repeatedly found that compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Id.* at 1160 (citing *AFL-CIO v. FEC*, 333 F.3d 168, 175 (D.C. Cir. 2003)); *see also Black Panther Party v. Smith*, 661 F.2d 1243, 1268 (D.C. Cir. 1981), *vacated on other grounds*, 458 U.S. 1118 (1982); *Knaupf*, 2015 WL at *5. The RNC engages in core First Amendment activities, including political speech, fundraising, and association. Compelled disclosure of internal deliberations and communications regarding such activities threatens protected constitutional rights and risks chilling participation and expression.

7.     The RNC objects to each and every one of the Requests to the extent that the Request is unreasonably cumulative and duplicative or seeks documents that can more readily be obtained from the parties to the case or other sources, including publicly available sources. Fed. R. Civ. P. 26(b)(2)(C)(i).

8.     The RNC objects to each and every one of the Requests to the extent that the Request calls for the production of internal proprietary business materials or information or other private or confidential materials or information of the RNC without the adoption of an appropriate protective order guaranteeing the confidentiality of the RNC's materials or information.

9.     The RNC objects to each and every one of the Requests to the extent that the Request seeks production of documents or information subject to confidentiality or nondisclosure agreements with third parties (or other agreements governing the sharing of information).

10.     The RNC reserves all objections to the relevance, materiality, admissibility, or privileged status of any information provided in response to the Subpoena.

## OBJECTIONS TO DEFINITIONS

1.     The RNC objects to the Subpoena's definitions of "Concerning" (Definition 4) and "Relating" (Definition 8) as overly broad, unduly burdensome, and vague as they are defined to include documents or communications that in any way may "relate to, refer to, describe, evidence, or constitute, in whole or in part, directly or indirectly the stated subject matter" of a Request. This definition improperly expands the scope of the Requests to encompass any document with even a tangential or attenuated connection to the identified topic(s), thereby rendering the Requests effectively limitless in scope. As drafted, this definition would capture documents or communications with merely incidental, passing, or contextual references, far beyond what is proportional to the needs of this case. The definition also is not reasonably tailored to the subject

matter of the litigation and, when combined with the already broad Requests, imposes an undue burden and expense on the RNC, a non-party, in violation of Federal Rule of Civil Procedure 45(d)(1) and exceeds the proportionality limits of Rule 26(b)(1).

2. The RNC objects to the Subpoena's definition of "Document" (Definition 5) as overly broad, unduly burdensome, and disproportionate to the needs of this case. The definition purports to encompass "all" written, recorded, or electronically stored information of any kind, including documents on personal devices, personal email accounts, and social media accounts, as well as "each non-identical copy," without limitation. This definition is improper because it: (i) seeks to include individuals and entities that are not within the control of the RNC and therefore documents that are not within the possession, custody, or control of the RNC, and thereby imposes obligations on the RNC beyond the scope of the Federal Rules; (ii) is not proportional to the needs of the case, which concerns a discrete alleged defamation involving the Documentary, and does not justify broad forensic collection of personal or organizational information; and (iii) imposes undue burden on the RNC, a non-party, by calling for expansive searches across innumerable sources, custodians, and formats, including duplicative and immaterial variations of documents.

3. The RNC objects to the Subpoena's definition of "Person(s)" (Definition 7) as inconsistent with the Federal Rules to the extent it purports to impose obligations on the RNC beyond those permitted under Rule 45. The RNC further objects the definition as overly broad, unduly burdensome, and lacking in particularity because it seeks "any" described individual, entity, or group and to the extent it seeks information or materials not relevant to any claim or defense of any party or to the subject matter involved in this action and/or where the search for, collection of, or production of all such information or materials would be unduly burdensome.

4.       The RNC objects to the Subpoena's definition of "You" and "Your" (Definition 9) as inconsistent with the Federal Rules to the extent it purports to impose obligations on the RNC beyond those permitted under Rule 45. The RNC further objects to the definition on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of the case because it includes persons or entities other than the RNC over whom the RNC has no legal authority or control and whose documents are not within the RNC's possession, custody, or control under Rule 45, including persons or entities "acting or purporting to act on" behalf of the RNC or third parties. The definition is not limited to the RNC's officers and employees. Instead, it is so broadly phrased as to purport to include, for example, all "present and former officers, directors, employees, attorneys, agents, and representatives," as well as any persons "acting or purporting to act on [the RNC's] behalf" or on behalf of entities in which the RNC has a purported "Financial Interest," including any "direct or indirect parents, predecessors-in-interest, affiliates, subsidiaries, divisions, predecessors, successors, and assignees." As a practical matter, it is not reasonably possible for the RNC to frame meaningful responses to discovery requests that utilize this objectionably broad definition, in part because the RNC lacks access to documents in the possession, custody, or control of third parties "acting or purporting to act on behalf of" the RNC. Moreover, to the extent that the definition seeks information and documents from the RNC's affiliates, subsidiaries, divisions, predecessors, successors, or any other entity, the RNC objects because such entities are separate legal entities that are not parties to this action and cannot be subjected to discovery obligations through a subpoena served on the RNC. The RNC further objects that the undefined terms "Financial Interest" and "representatives" are vague and ambiguous, requiring the RNC to speculate as to their scope.

The RNC objects to this definition for the additional reason that it calls for disclosure of

- 8 -

information or documents protected from disclosure by the attorney-client privilege, the work product doctrine, the joint-defense or common-interest privilege, or any other applicable privilege or immunity, including the First Amendment. *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002); *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454-59 (D.D.C. 2002); *Wood v. Georgia*, 370 U.S. 375, 394-95 (1962); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1163 (9th Cir. 2010). The definition purports to encompass a vast range of persons and entities, including RNC "attorneys," as well as other political groups, candidates, advisors, vendors, political supporters, volunteers, and other individuals whose associations with the RNC are protected from disclosure. The Supreme Court has recognized that the forced disclosure of political associations raises First Amendment concerns, because the "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association." *NAACP*, 357 U.S. at 462. Compelled disclosure of campaign-related communications in civil discovery can deter activities protected under the First Amendment "by chilling participation and by muting the internal exchange of ideas." *Perry*, 591 F.3d at 1163. Thus, courts "have repeatedly found that compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Id.* at 1160 (citing *AFL-CIO*, 333 F.3d at 175); *see also Black Panther Party*, 661 F.2d at 1268, *vacated on other grounds*, 458 U.S. 1118 (1982); *Knaupf*, 2015 WL 7451190, at *5. The RNC engages in core First Amendment activities, including political speech, fundraising, and association, and the compelled disclosure of such information would unduly burden those constitutional rights.

5.      The RNC objects to the Subpoena's definition of "Donald J. Trump" (Definition 14) on the basis that it includes "anyone acting on [Donald J. Trump's] behalf." This definition is vague and ambiguous and, therefore, Requests that rely on it violate the requirement to "describe

with reasonable particularity" each item requested. Fed. R. Civ. P. 34(b)(1)(A). Because the RNC is not necessarily in a position to know whether particular persons were acting for or on behalf of Donald J. Trump, the RNC objects to this definition to the extent it applies to any person the RNC does not know to meet such criteria.

6.      The RNC objects to the Subpoena's definition of "President Trump's January 6 Speech" (Definition 17) to the extent the definition is used, particularly in conjunction with the Requests and other expansive Definitions, to encompass materials beyond the publicly delivered speech itself, including drafts, preparatory materials, or internal communications. Such materials would not be relevant to the claims or defenses in this case, would not be proportional to the needs of the case, and would be protected from disclosure under the First Amendment.

7.      The RNC objects to the Subpoena's definition of "Select Committee" (Definition 18) on the basis that it includes "anyone acting on [the Select Committee's] behalf." This definition is vague and ambiguous and, therefore, Requests that rely on it violate the requirement to "describe with reasonable particularity" each item requested. Fed. R. Civ. P. 34(b)(1)(A). Because the RNC is not necessarily in a position to know whether particular persons were acting for or on behalf of the Select Committee, the RNC objects to this definition to the extent it applies to any person the RNC does not know to meet such criteria.

## OBJECTIONS TO GENERAL INSTRUCTIONS

1.      The RNC objects to General Instruction No. 1 as overbroad, unduly burdensome, and inconsistent with the requirements of Federal Rules of Civil Procedure 26 and 45. The instruction improperly expands the scope of the Subpoena beyond documents within the RNC's possession, custody, or control by purporting to require the RNC to produce documents held by its agents, attorneys, "all Persons acting on Your behalf," and even third parties who allegedly could provide such materials upon request. Rule 45 does not permit a subpoena to require a non-party to

obtain documents from independent third parties or to produce materials not within its possession, custody, or control. The Instruction is further improper to the extent it seeks documents presumptively protected by the attorney-client privilege and/or work-product doctrine within the possession of the RNC's attorneys or their agents.

2. The RNC objects to General Instruction 3's request that the RNC, a non-party, produce a detailed privilege log. Producing a detailed privilege log would be unduly burdensome because it would divert the RNC's limited resources and individuals' political contributions away from the 2026 elections and toward compiling a privilege log in connection with responding to overly broad discovery requests. The RNC further objects to the extent a privilege log would require disclosure of information protected by the First Amendment, including the identities of donors or associational information. *See NAACP v. Patterson*, 357 U.S. 449, 463 (1958); *Buckley v. Valeo*, 424 U.S. 1, 74 (1976).

3. The RNC objects to General Instruction No. 4 to the extent it purports to impose a continuing obligation to search for and produce documents beyond the date of its response, if any, to the Subpoena. This instruction is improper as applied to the RNC, a non-party. Federal Rule of Civil Procedure 45 requires a responding non-party to produce documents within its possession, custody, or control as of the time of a response; it does not impose an ongoing duty to monitor for, collect, or produce documents on a continuing basis. The continuing supplementation obligations set forth in Rule 26(e) apply to parties and are not automatically imposed on non-parties through a subpoena. The RNC, as a non-party, is under no obligation to continuously monitor and conduct repeated searches for potentially responsive materials, and to impose such an obligation would be an undue burden and expense in violation of Rule 45(d)(1). This is particularly inappropriate here given the already expansive scope of the Requests and Definitions.

- 11 -

4.      The RNC objects to General Instruction 6, which states that the relevant time period of the Requests is from November 1, 2020 through the present, because the instruction is overly broad, unduly burdensome, and not proportional to the needs of the case. This case concerns an allegedly defamatory edit in the BBC's *Panorama* Documentary that first broadcast on October 28, 2024. Yet this instruction calls for the search and production of documents over a multi-year period, concerning a wide range of political, investigative, and governmental activities unmoored from the specific issues in dispute. As framed, the time period in the instruction: (i) lacks a reasonable nexus to the claims or defenses, as this case turns on Defendants' state of mind and editorial decisions in connection with the Documentary in 2024, not the full historical record of events beginning in 2020; (ii) imposes undue burden on the RNC, a non-party, by requiring expansive searches across multiple custodians and systems over a lengthy period with little relevance to the issues in the case; and (iii) encompasses large volumes of irrelevant material, particularly given the breadth of the Requests and Definitions, which already extend far beyond the subject matter of the case. Moreover, the November 1, 2020 start date is arbitrary and untethered to any element of the claims or defenses and appears designed to capture sweeping categories of politically sensitive material—much of which may be protected from disclosure under the First Amendment (General Objection No. 6)—rather than information relevant to the narrow defamation issues presented in the case.

## OBJECTIONS TO REQUESTS

**REQUEST FOR PRODUCTION NO. 1:** *All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Select Committee.*

**OBJECTIONS AND RESPONSE:**

The RNC incorporates by reference its General Objections, Objections to Definitions, and Objections to General Instructions as if fully set forth herein.

- 12 -

Request No. 1 is overly broad, unduly burdensome, and not relevant to any claims or defenses in this case, as set forth in General Objection No. 2. This case presents a narrow question—whether Defendants acted with actual malice in editing and presenting a portion of President Trump's January 6, 2021 speech. Those issues do not reasonably implicate the activities of the RNC, a non-party, the broader evidentiary record surrounding January 6, the activities, findings, or investigative materials of the Select Committee, or materials exchanged with any governmental entity.

Request No. 1 is also not proportional to the needs of the case, as set forth in General Objection No. 3, particularly in seeking "[a]ll" documents and communications without meaningfully limiting the request to those documents that are "relevant to any party's claim or defense," as required by Federal Rule of Civil Procedure 26(b)(1).

Request No. 1 is also overly broad, unduly burdensome, vague, ambiguous, and lacking in reasonable particularity, and raises First Amendment concerns in light of its use of the terms "Document," for the reasons stated in Objection No. 2 to the Definitions; "You," for the reasons stated in Objection No. 3 to the Definitions; "Concerning," for the reasons stated in Objection No. 1 to the Definitions; and "Communications," which the Subpoena does not define.

Subject to and without waiving these objections, the RNC will not conduct a search for or produce documents responsive to Request No. 1.

**REQUEST FOR PRODUCTION NO. 2:** *All Documents and Communications Concerning the events of January 6, 2021 that You provided to, or received from, the Special Counsel.*

**OBJECTIONS AND RESPONSE:**

The RNC incorporates by reference its General Objections, Objections to Definitions, and Objections to General Instructions as if fully set forth herein.

- 13 -

Request No. 2 is overly broad, unduly burdensome, and not relevant to any claims or defenses in this case, as set forth in General Objection No. 2. This case presents a narrow question—whether Defendants acted with actual malice in editing and presenting a portion of President Trump's January 6, 2021 speech. Those issues do not reasonably implicate the activities of the RNC, a non-party, the broader evidentiary record surrounding January 6, the activities, findings, or investigative materials of the Special Counsel, or materials exchanged with any governmental entity.

Request No. 2 is also not proportional to the needs of the case, as set forth in General Objection No. 3, particularly in seeking "all" documents and communications without meaningfully limiting the request to those documents that are "relevant to any party's claim or defense," as required by Federal Rule of Civil Procedure 26(b)(1).

Request No. 2 is also overly broad, unduly burdensome, vague, ambiguous, and lacking in reasonable particularity, and raises privilege, confidentiality, and First Amendment concerns in light of its use of the terms "Document," for the reasons stated in Objection No. 2 to the Definitions; "You," for the reasons stated in Objection No. 3 to the Definitions; "Concerning," for the reasons stated in Objection No. 1 to the Definitions; and "Communications," which the Subpoena does not define.

Subject to and without waiving these objections, the RNC will not conduct a search for or produce documents responsive to Request No. 2.

- 14 -

**REQUEST FOR PRODUCTION NO. 3:** *All Documents and Communications Concerning the events of January 6, 2021 that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.*

**OBJECTIONS AND RESPONSE:**

The RNC incorporates by reference its General Objections, Objections to Definitions, and Objections to General Instructions as if fully set forth herein.

Request No. 3 is overly broad, unduly burdensome, and not relevant to any claims or defenses in this case, as set forth in General Objection No. 2. This case presents a narrow question—whether Defendants acted with actual malice in editing and presenting a portion of President Trump's January 6, 2021 speech. Those issues do not reasonably implicate the activities of the RNC, a non-party, the broader evidentiary record surrounding January 6, the activities, findings, or investigative materials of the U.S. Senate Committee on Homeland Security and Governmental Affairs, or materials exchanged with any governmental entity.

Request No. 3 is also not proportional to the needs of the case, as set forth in General Objection No. 3, particularly in seeking "[a]ll" documents and communications without meaningfully limiting the request to those documents that are "relevant to any party's claim or defense," as required by Federal Rule of Civil Procedure 26(b)(1).

Request No. 3 is also overly broad, unduly burdensome, vague, ambiguous, and lacking in reasonable particularity, and raises privilege, confidentiality, and First Amendment concerns in light of its use of the terms "Document," for the reasons stated in Objection No. 2 to the Definitions; "You," for the reasons stated in Objection No. 3 to the Definitions; "Concerning," for the reasons stated in Objection No. 1 to the Definitions; and "Communications," which the Subpoena does not define.

Subject to and without waiving these objections, the RNC will not conduct a search for or produce documents responsive to Request No. 3.

**REQUEST FOR PRODUCTION NO. 4:** *All Documents and Communications Concerning the events of January 6, 2021 that You provided to any other federal, state, or local agency or official.*

**OBJECTIONS AND RESPONSE:**

The RNC incorporates by reference its General Objections, Objections to Definitions, and Objections to General Instructions as if fully set forth herein.

Request No. 4 is overly broad, unduly burdensome, and not relevant to any claims or defenses in this case, as set forth in General Objection No. 2. This case presents a narrow issue—whether Defendants acted with actual malice in editing and presenting a portion of President Trump's January 6, 2021 speech. Those issues do not reasonably implicate the activities of the RNC, a non-party, the broader evidentiary record surrounding January 6, or materials exchanged with any federal, state, or local agency or official.

Request No. 4 is also not proportional to the needs of the case, as set forth in General Objection No. 3, particularly in seeking "[a]ll" documents and communications without meaningfully limiting the request to those documents that are "relevant to any party's claim or defense," as required by Federal Rule of Civil Procedure 26(b)(1).

Request No. 4 is also overly broad, unduly burdensome, vague, ambiguous, and lacking in reasonable particularity, as it seeks documents without any meaningful limitation as to agency, subject matter, or scope, and raises privilege, confidentiality, and First Amendment concerns in light of its use of the terms "Document," for the reasons stated in Objection No. 2 to the Definitions; "You," for the reasons stated in Objection No. 3 to the Definitions; "Concerning," for the reasons stated in Objection No. 1 to the Definitions; and "Communications," which the Subpoena does not define.

- 16 -

Subject to and without waiving these objections, the RNC will not conduct a search for or produce documents responsive to Request No. 4.

**REQUEST FOR PRODUCTION NO. 5:** *All Documents and Communications Concerning President Trump's efforts to challenge the results of the 2020 Election.*

**OBJECTIONS AND RESPONSE:**

The RNC incorporates by reference its General Objections, Objections to Definitions, and Objections to General Instructions as if fully set forth herein.

Request No. 5 is overly broad, unduly burdensome, and not relevant to any claims or defenses in this case, as set forth in General Objection No. 2. This case presents a narrow question—whether Defendants acted with actual malice in editing and presenting a portion of President Trump's January 6, 2021 speech. Those issues do not reasonably implicate the activities of the RNC, a non-party, or the broader political, legal, and campaign-related efforts concerning the 2020 Presidential Election.

Request No. 5 is also not proportional to the needs of the case, as set forth in General Objection No. 3, particularly in seeking "[a]ll" documents and communications without meaningfully limiting the request to those documents that are "relevant to any party's claim or defense," as required by Federal Rule of Civil Procedure 26(b)(1). The Request instead seeks expansive categories of political and campaign-related materials that bear no meaningful relationship to the narrow defamation issues presented in this case.

Request No. 5 is also overly broad, unduly burdensome, vague, ambiguous, and lacking in reasonable particularity, and raises privilege, confidentiality, and substantial First Amendment concerns in light of its use of the terms "Document," for the reasons stated in Objection No. 2 to the Definitions; "You," for the reasons stated in Objection No. 3 to the Definitions; "Concerning," for the reasons stated in Objection No. 1 to the Definitions; and "Communications," which the

- 17 -

Subpoena does not define and which sweep in protected internal communications of a national political party committee.

Request No. 5 squarely seeks internal political, campaign, and strategic communications of a national political party committee, including communications concerning electoral strategy, legal challenges, political messaging, and associational activities. Such materials are protected from disclosure by the attorney-client privilege, the work product doctrine, and other applicable protections, including the First Amendment. *Int'l Action Ctr.*, 207 F.R.D. at 3; *Wyoming*, 208 F.R.D. at 454-59; *Wood*, 370 U.S. at 394-95; *Perry*, 591 F.3d at 1163. Such materials lie at the core of the First Amendment's protections of political speech and association. NAACP, 357 U.S. at 462; *Perry*, 591 F.3d at 1163. Compelled disclosure of such materials would reveal not only the substance of political speech, but also the identities and relationships of individuals engaged in protected associational activity, thereby chilling participation and inhibiting the free exchange of ideas. As set forth in General Objection No. 6, courts have repeatedly recognized that discovery directed at political organizations' internal communications and strategies requires heightened scrutiny and must be narrowly tailored to avoid unnecessary infringement on constitutional rights. *See, e.g.*, *Perry*, 591 F.3d at 1160-63. Request No. 5 fails to meet that standard.

Subject to and without waiving these objections, the RNC will not conduct a search for or produce documents responsive to Request No. 5.

**REQUEST FOR PRODUCTION NO. 6:** *All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including President Trump's January 6 Speech. For the avoidance of doubt, this includes planning the "Stop the Steal" rally and President Trump's January 6 Speech, as well as all drafts of President Trump's January 6 Speech and all Communications about those drafts.*

**OBJECTIONS AND RESPONSE:**

The RNC incorporates by reference its General Objections, Objections to Definitions, and Objections to General Instructions as if fully set forth herein.

Request No. 6 is overly broad, unduly burdensome, and not relevant to any claims or defenses in this case, as set forth in General Objection No. 2. This case presents a narrow question—whether Defendants acted with actual malice in editing and presenting a portion of President Trump's January 6, 2021 speech. Those issues do not reasonably implicate the activities of the RNC, a non-party, or the internal planning, drafting, and preparation of a political speech, which are far removed from the narrow issues in this case.

Request No. 6 is also not proportional to the needs of the case, as set forth in General Objection No. 3, particularly in seeking "[a]ll" documents and communications, including drafts and internal communications, without meaningfully limiting the request to those documents that are "relevant to any party's claim or defense," as required by Federal Rule of Civil Procedure 26(b)(1). The Request instead seeks expansive categories of preparatory, internal, and deliberative materials that bear no meaningful relationship to the narrow defamation issues presented in this case. To the extent the Request is directed at the speech itself, that material is publicly available and equally accessible to Defendants, further underscoring the lack of proportionality.

Request No. 6 is also overly broad, unduly burdensome, vague, ambiguous, and lacking in reasonable particularity, and raises privilege, confidentiality, and substantial First Amendment concerns in light of its use of the terms "Document," for the reasons stated in Objection No. 2 to

- 19 -

the Definitions; "You," for the reasons stated in Objection No. 3 to the Definitions; "Concerning," for the reasons stated in Objection No. 1 to the Definitions; and "Communications," which the Subpoena does not define and which sweep in protected internal communications involving a national political party committee.

Request No. 6 expressly seeks drafts of a political speech and communications regarding those drafts, which are quintessential attorney-client privileged and attorney work-product materials, as well as internal political and strategic communications protected by the First Amendment. Drafts of speeches and related communications often reflect legal advice, strategic decision-making, and internal deliberations regarding highly sensitive political and legal issues. Such materials are protected from disclosure by the attorney-client privilege, the work product doctrine, the First Amendment, and other applicable protections. *See Int'l Action Ctr.*, 207 F.R.D. at 3; *Wyoming*, 208 F.R.D. at 454-59.

Moreover, the Request directly targets the internal deliberations and editorial and strategic processes underlying protected political speech. Courts have recognized that compelled disclosure of draft communications and internal deliberations regarding political speech implicates core First Amendment concerns. *See Wood*, 370 U.S. at 394-95; *Perry*, 591 F.3d at 1163. Such materials lie at the heart of the First Amendment's protections of political expression and association. *NAACP*, 357 U.S. at 462; *Perry*, 591 F.3d at 1163. Compelled disclosure of drafts and related communications would intrude upon protected constitutional rights by exposing the internal development of political speech, the exchange of ideas among speakers and advisors, and the relationships among individuals engaged in protected associational activity. Indeed, disclosure of such materials would reveal not only the substance of political expression but also the identities and roles of individuals participating in the development of that expression, thereby chilling

- 20 -

participation and inhibiting the free exchange of ideas. As set forth in General Objection No. 6, discovery directed at internal political communications and deliberative processes of a national political party committee requires heightened scrutiny and must be narrowly tailored to avoid unnecessary infringement on constitutional rights. *See, e.g., Perry*, 591 F.3d at 1160-63. Request No. 6 fails to meet that standard.

Subject to and without waiving these objections, the RNC refers Defendants to the publicly available version of President Trump's January 6, 2021 speech, which is equally accessible to Defendants, and will not conduct a search for or produce additional documents responsive to Request No. 6.

**REQUEST FOR PRODUCTION NO. 7:** *All Documents and Communications Concerning the attack on the U.S. Capitol following the "Stop the Steal" rally on January 6, 2021.*

**OBJECTIONS AND RESPONSE:**

The RNC incorporates by reference its General Objections, Objections to Definitions, and Objections to General Instructions as if fully set forth herein.

Request No. 7 is overly broad, unduly burdensome, and not relevant to any claims or defenses in this case, as set forth in General Objection No. 2. This case presents a narrow question—whether Defendants acted with actual malice in editing and presenting a portion of President Trump's January 6, 2021 speech. Those issues do not reasonably implicate the activities of the RNC, a non-party, or the broader evidentiary record concerning the events of January 6.

Request No. 7 is also not proportional to the needs of the case, as set forth in General Objection No. 3, particularly in seeking "[a]ll" documents and communications without meaningfully limiting the request to those documents that are "relevant to any party's claim or defense," as required by Federal Rule of Civil Procedure 26(b)(1). The Request instead seeks a

sweeping and undefined universe of materials untethered to the narrow defamation issues presented in this case.

Request No. 7 is also overly broad, unduly burdensome, vague, ambiguous, and lacking in reasonable particularity, as it seeks documents without any meaningful limitation as to subject matter, scope, custodians, or categories of information, and raises privilege, confidentiality, and First Amendment concerns in light of its use of the terms "Document," for the reasons stated in Objection No. 2 to the Definitions; "You," for the reasons stated in Objection No. 3 to the Definitions; "Concerning," for the reasons stated in Objection No. 1 to the Definitions; and "Communications," which the Subpoena does not define and which sweep in protected internal communications of a national political party committee.

To the extent the Request seeks internal RNC communications or deliberations concerning political activities or responses to the events of January 6, it targets core associational and expressive conduct protected by the First Amendment as set forth in General Objection No. 6. *Int'l Action Ctr.*, 207 F.R.D. at 3; *Wyoming*, 208 F.R.D. at 454-59; *Wood*, 370 U.S. at 394-95; *Perry*, 591 F.3d at 1163.

Subject to and without waiving these objections, the RNC will not conduct a search for or produce documents responsive to Request No. 7.

**REQUEST FOR PRODUCTION NO. 8:** *All Documents and Communications Concerning the Defendants in connection with this Action, the Documentary, or President Trump's January 6 Speech.*

**OBJECTIONS AND RESPONSE:**

The RNC incorporates by reference its General Objections, Objections to Definitions, and Objections to General Instructions as if fully set forth herein.

Request No. 8 is overly broad, unduly burdensome, and not relevant to any claims or defenses in this case, as set forth in General Objection No. 2, to the extent it seeks documents beyond the narrow issues presented in this case. This case presents a narrow question—whether Defendants acted with actual malice in editing and presenting a portion of President Trump's January 6, 2021 speech. The Request, however, seeks expansive categories of documents concerning broadly defined topics such as "Defendants," the "Documentary," or President Trump's January 6 Speech, many of which bear no reasonable relationship to those issues and are untethered to the claims and defenses in this case.

Request No. 8 is also not proportional to the needs of the case, as set forth in General Objection No. 3, particularly in seeking "[a]ll" documents and communications without meaningfully limiting the request to those documents that are "relevant to any party's claim or defense," as required by Federal Rule of Civil Procedure 26(b)(1). As drafted, the Request would sweep in a wide range of materials, including internal communications, that are far removed from the narrow issues in dispute.

Request No. 8 is also overly broad, unduly burdensome, vague, ambiguous, and lacking in reasonable particularity, and raises privilege, confidentiality, and First Amendment concerns in light of its use of the terms "Document," for the reasons stated in Objection No. 2 to the Definitions; "You," for the reasons stated in Objection No. 3 to the Definitions; "Concerning," for the reasons stated in Objection No. 1 to the Definitions; and "Communications," which the Subpoena does not define and which sweep in protected internal communications of a national political party committee.

To the extent Request No. 8 seeks internal communications or deliberations of the RNC, including communications concerning political activity, messaging, or responses to the

- 23 -

Documentary, such materials are protected from disclosure by the First Amendment, as set forth in General Objection No. 6. *Int'l Action Ctr.*, 207 F.R.D. at 3; *Wyoming*, 208 F.R.D. at 454-59; *Wood*, 370 U.S. at 394-95; *Perry*, 591 F.3d at 1163. To the extent it seeks confidential communications about this case, such materials are protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiving these objections, the RNC will not conduct a search for or produce documents responsive to Request No. 8.

**REQUEST FOR PRODUCTION NO. 9:** *Documents sufficient to show the daily donation totals that You received for each day between September 1, 2024 and November 6, 2025. For the avoidance of doubt, this Request is only seeking total daily donation amounts, and not individually identifying donor information.*

**OBJECTIONS AND RESPONSE:**

The RNC incorporates by reference its General Objections, Objections to Definitions, and Objections to General Instructions as if fully set forth herein.

Request No. 9 is overly broad, unduly burdensome, and not relevant to any claims or defenses in this case, as set forth in General Objection No. 2. This case presents a narrow question—whether Defendants acted with actual malice in editing and presenting a portion of President Trump's January 6, 2021 speech. The RNC's internal financial information, including donation volumes, bears no reasonable relationship to those issues and is untethered to the claims and defenses in this case.

Request No. 9 is also not proportional to the needs of the case, as set forth in General Objection No. 3, particularly in seeking granular financial data over an extended time period without any showing of relevance. The Request seeks sensitive internal financial information of a non-party national political party committee, the burden and sensitivity of which far outweigh any speculative or marginal benefit to the issues in this case.

- 24 -

Request No. 9 is also overly broad, unduly burdensome, vague, ambiguous, and lacking in reasonable particularity, and raises privilege, confidentiality, and substantial First Amendment concerns in light of its use of the terms "Document," for the reasons stated in Objection No. 2 to the Definitions; "You," for the reasons stated in Objection No. 3 to the Definitions; and "Concerning," for the reasons stated in Objection No. 1 to the Definitions.

Request No. 9 seeks internal financial tracking and donor-related information of a national political party committee, the compelled disclosure of which implicates core First Amendment associational rights of both the RNC and donors. *Int'l Action Ctr.*, 207 F.R.D. at 3; *Wyoming*, 208 F.R.D. at 454-59; *Wood*, 370 U.S. at 394-95; *Perry*, 591 F.3d at 1163. Disclosure of such information would risk revealing patterns of political support, donor behavior, and associational activity, thereby chilling participation in protected political processes. Courts have repeatedly recognized that compelled disclosure of information concerning political support and association can significantly burden First Amendment rights and must be subjected to heightened scrutiny as set forth in General Objection No. 6. Request No. 9 fails to meet that standard. The Request thus seeks to impose unnecessary burden on a non-party while intruding upon constitutionally protected associational rights.

In addition, to the extent any financial information is relevant, it is readily available through the RNC's monthly public filings with the Federal Election Commission, which are equally accessible to Defendants. Requiring the RNC to collect and produce duplicative financial information that is available from public sources is unnecessary and not proportional to the needs of the case.

Subject to and without waiving these objections, the RNC will not conduct a search for or produce documents responsive to Request No. 9.

- 25 -

Dated: May 18, 2026

Respectfully submitted,

/s/ *E. Stewart Crosland*
E. Stewart Crosland
John M. Gore
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
scrosland@jonesday.com
jmgore@jonesday.com

*Counsel for the Republican National Committee*

- 26 -

## AFFIRMATION OF SERVICE

I, E. Stewart Crosland, hereby certify that on May 18, 2026, I caused the foregoing THE

REPUBLICAN NATIONAL COMMITTEE'S RESPONSES AND OBJECTIONS TO

DEFENDANTS' *SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS

OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION* to be served by email upon

counsel for the Defendants:

> Charles D. Tobin
> Ballard Spahr LLP
> 1909 K Street NW, 12th Floor
> Washington, DC 20006
> tobinc@ballardspahr.com

Dated: May 18, 2026                    /s/ *E. Stewart Crosland*