UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**BALLARD SPAHR LLP**
1909 K Street, NW
Washington, DC 20006-1157
Tel: (202) 661-2218
Fax: (202) 661-2299

Charles D. Tobin
Fla. Bar No.: 816345
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
Yanni Chen (*pro hac vice*)
Richard W. Miller (*pro hac vice*)
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com
cheny@ballardspahr.com
millerrw@ballardspahr.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT............................................................................................................................2

I.      THE CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL
JURISDICTION OVER DEFENDANTS ..................................................................2

        A.      Plaintiff Has Abandoned His General Personal Jurisdiction Theory.......................2

        B.      Defendants Are Not Subject to Specific Personal Jurisdiction in Florida ..............2

            1.      Exercising personal jurisdiction over Defendants would
violate due process...................................................................................2

                i.      Plaintiff cannot establish personal jurisdiction under
the effects test .................................................................................3

                    a.      Circumventing geoblocking efforts cannot
satisfy the effects test ............................................................3

                    b.      Reporting on U.S. voters does not satisfy the
effects test in *Florida* ...........................................................7

                    c.      Sending a handful of viewing links does not
satisfy the effects test ............................................................9

                ii.      Plaintiff also cannot satisfy the minimum contacts test.................10

                iii.      Plaintiff offers no grounds for jurisdiction over the
Studios Defendants ........................................................................11

            2.      Florida's long-arm statute does not subject Defendants to
personal jurisdiction................................................................................11

            3.      Exercising jurisdiction would offend notions of fair play and
substantial justice...................................................................................12

II.     THE COMPLAINT FAILS TO STATE A CLAIM...........................................................13

        A.      The Complaint Fails to State Any Claim Against the Studios Defendants ...........13

        B.      The Complaint Fails to State a Claim for Defamation .........................................13

        C.      The Complaint Fails to State a Claim for Violations of FDUTPA.......................15

CONCLUSION.......................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Industries v. Superior Court,*
    480 U.S. 102 (1987)...................................................................................................12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................................13

*Basulto v. Netflix,*
    2023 WL 4014741 (S.D. Fl. May 25, 2023)..........................................................8, 9

*Bernardele v. Bonorino,*
    608 F. Supp. 2d 1313 (S.D. Fla. 2009) ....................................................................16

*Bioheart v. Peschong,*
    2013 WL 1729278 (S.D. Fla. Apr. 22, 2013) ..........................................................12

*Bongino v. Daily Beast,*
    477 F. Supp. 3d 1310 (S.D. Fla. 2020) ....................................................................15

*Calder v. Jones,*
    465 U.S. 783 (1984)...............................................................................................9, 11

*Caribbean Cruise Line v. Better Business Bureau of Palm Beach County,*
    169 So. 3d 164 (Fla. 4th DCA 2015) .......................................................................15

*Carsey-Werner Co. v. BBC,*
    2018 WL 1083550 (C.D. Cal. Feb. 23, 2018)...................................................3, 4, 5

*Chaiken v. VV Publishing Corp.,*
    119 F.3d 1018 (2d Cir. 1997)...................................................................................10

*Christian v. Barricade Books,*
    2003 WL 21146168 (D.N.H. May 15, 2003)...........................................................10

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014).....................................................................................................2

*Dunn v. Air Line Pilots Association,*
    193 F.3d 1185 (11th Cir. 1999) ................................................................................14

*Edelstein v. WFTV,*
    798 So. 2d 797 (Fla. 4th DCA 2001) .......................................................................13

*Fielding v. Hubert Burda Media,*
    415 F.3d 419 (5th Cir. 2005) ................................................................................8, 10

*Ford Motor Co. v. Montana Eighth Judicial District Court,*
　　592 U.S. 351 (2021)............................................................................................10

*Harvey v. CNN,*
　　520 F. Supp. 3d 693 (D. Md. 2021)....................................................................13

*Herederos De Roberto Gomez Cabrera, LLC v. Teck Reources.,*
　　43 F.4th 1303 (11th Cir. 2022) .............................................................................2

*J. McIntyre Machinery, Ltd. v. Nicastro,*
　　564 U.S. 873 (2011)............................................................................................10

*Johnson v. Borell,*
　　2026 WL 1077623 (S.D. Fla. Apr. 21, 2026) .......................................................3

*Johnson v. TheHuffingtonPost.com,*
　　21 F.4th 314 (5th Cir. 2021) .................................................................................4

*Karnas v. Cuban,*
　　2025 WL 3759241 (S.D. Fla. Dec. 30, 2025).............................................2, 3, 7, 12

*Klayman v. Judicial Watch,*
　　22 F. Supp. 3d 1240 (S.D. Fla. 2014) .................................................................15

*Madara v. Hall,*
　　916 F.2d 1510 (11th Cir. 1990) .............................................................................3

*Maschinenfabrik Seydelmann v. Altman,*
　　468 So. 2d 286 (Fla. 2d DCA 1985) ...................................................................10

*Masson v. New Yorker Magazine,*
　　501 U.S. 496 (1991)............................................................................................14

*McCall v. Zotos,*
　　2023 WL 3946827 (11th Cir. June 12, 2023) ....................................................3, 9

*Miller v. Gizmodo Media Group,*
　　383 F. Supp. 3d 1365 (S.D. Fla. 2019) .................................................................3

*Moore v. Cecil,*
　　109 F.4th 1352 (11th Cir. 2024) ................................................................3, 4, 7, 9

*Moore v. Cecil,*
　　174 F.4th 862 (11th Cir. 2026) ...........................................................................14

*N.Y. Times v. Sullivan,*
　　376 U.S. 254 (1964)............................................................................................14

iii

*Rae v. Celebrity Cruises*,
  2022 WL 2981868 (S.D. Fla. July 28, 2022)................................................................2

*Rothschild v. Starbucks*,
  2026 WL 717195 (S.D. Fla. Feb. 18, 2026) .............................................................15

*Safex Foundation v. SafeLaunch Ventures*,
  694 F. Supp. 3d 1 (D.D.C. 2023)................................................................................7

*Sovereign Offshore Services v. Shames*,
  2017 WL 7798664 (S.D. Fla. Aug. 3, 2017)..............................................................4

*Thane International v. Braden*,
  2008 WL 11399575 (S.D. Fla. Jan. 22, 2008) .........................................................10

*Thompson v. Trump*,
  590 F. Supp. 3d 46 (D.D.C. 2022)........................................................................1, 15

*Triple Up v. Youku Tudou*,
  235 F. Supp. 3d 15 (D.D.C. 2017)..............................................................................4

*Walden v. Fiore*,
  571 U.S. 277 (2014).........................................................................................6, 10, 11

**Statutes**

Commc'ns Act 2003, c. 21, § 363 ...................................................................................4

Fla. Stat. § 48.193 ....................................................................................................11, 12

Fla. Stat. § 501.204 .......................................................................................................15

## PRELIMINARY STATEMENT

In his Opposition to Defendants' Motion to Dismiss ("Opp."), Plaintiff tries out four fanciful theories, none of which supports jurisdiction in Florida. With each, Plaintiff ignores the facts: all Defendants are at home in the U.K., not Florida; the BBC only broadcast "*Trump: A Second Chance?*" (the "Documentary") on its U.K. TV channels and its geofenced streaming service iPlayer for U.K. TV license holders, with no rights to broadcast in the U.S.; the uncontradicted record shows that the non-party U.S. rights-holder decided not to broadcast the Documentary here; and the version prepared for distribution outside the U.K. did not even contain the January 6 clip at issue. The Court should decline Plaintiff's invitation to ignore the jurisdictional facts and well-established due process law, and dismiss Plaintiff's Complaint.

**First**, Plaintiff claims the Court can exercise jurisdiction because a few Floridians *might* – or might not, Plaintiff does not actually know – have used an unauthorized VPN, in violation of the BBC's Terms of Use and evading its U.K.-only geoblocking measures. Plaintiff's theory of jurisdiction-by-circumvention is without precedent and does not withstand scrutiny. To establish jurisdiction, Plaintiff must show that these U.K. Defendants *purposefully* aimed the Documentary at Florida, not that someone in Florida might have jumped a geofence to watch it.

**Second**, Plaintiff urges this Court to find jurisdiction because the Documentary touched on a U.S. election and included video that others (not the Defendants) filmed earlier in Florida and later licensed for the Documentary. But jurisdiction must be based only on Defendants' contacts with Florida specifically, not the U.S. generally, or others' prior work in the state.

**Third**, Plaintiff asks the Court to exercise jurisdiction because he has alleged that Defendants defamed a Florida resident. The law is clear, however, that Plaintiff's own residence cannot be the link between Defendants and the forum state that creates personal jurisdiction.

**Fourth**, Plaintiff invokes jurisdiction over both Studios Defendants because one of them, BBC Studios Distribution ("BBCSD"), was approached about purchasing rights to air the Documentary and *declined*. BBCSD's decision *not* to act cannot possibly create jurisdiction. Plaintiff makes no independent argument at all as to BBC Studios Productions ("BBCSP").

Plaintiff also fails to state a claim as a matter of law. The Opposition further demonstrates that President Trump has not plausibly alleged the disputed edit caused him actual harm, that Defendants published it with actual malice, or that the implication the edit allegedly conveys is a statement of fact rather than a protected expression of opinion. For these reasons as

1

well, the Court should grant the motion to dismiss.

**ARGUMENT**

Plaintiff's Opposition only confirms that the Court lacks personal jurisdiction over Defendants, and that the Complaint fails to state a claim for defamation or violating FDUPTA.

## I. THE CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANTS

Plaintiff fails to meet his burden to show any basis for this Court to exercise general or specific personal jurisdiction over Defendants.

### A. Plaintiff Has Abandoned His General Personal Jurisdiction Theory

Plaintiff fails entirely to respond to Defendants' arguments that they are not subject to general personal jurisdiction in Florida, and therefore abandoned this claim. *Compare* Compl. ¶ 16 (alleging general jurisdiction), *with* Opp. at 4-17 (arguing only specific jurisdiction); *see Rae v. Celebrity Cruises*, 2022 WL 2981868, at *2 n.2 (S.D. Fla. July 28, 2022). Nor could Plaintiff argue otherwise, as Defendants' places of incorporation and principal places of business are indisputably London. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up); Compl. ¶¶ 12-14; Burgess Decl. ¶ 5; Freeman Decl. ¶¶ 7-8.

### B. Defendants Are Not Subject to Specific Personal Jurisdiction in Florida

The undisputed record developed in discovery confirms that the BBC aimed the Documentary only at U.K. viewers, broadcast it only on U.K. TV channels, and streamed it only on BBC's iPlayer under legal, contractual, and technical restrictions designed to limit access to the U.K. Defendants did not create, produce, or broadcast the Documentary in Florida. Plaintiff's core argument – that someone may have used VPNs to hack through iPlayer's territorial restrictions – is irrelevant. As this Court has made clear, "[i]f digital streaming alone sufficed for personal jurisdiction, then a federal court's reach would have no end." *Karnas v. Cuban*, 2025 WL 3759241, at *11 (S.D. Fla. Dec. 30, 2025) (Altman, J.). That reasoning applies more forcefully here because Defendants took extensive measures to prevent such streaming.

#### 1. *Exercising personal jurisdiction over Defendants would violate due process.*

The Court lacks specific personal jurisdiction over Defendants because Plaintiff "fail[s] to overcome the federal due-process standard." *Id.* at *7. To satisfy due process, Plaintiff must establish, among other things, that the defendant "purposefully availed" itself of the privilege of conducting activities within the forum. *See Herederos De Roberto Gomez Cabrera, LLC v. Teck Res.*, 43 F.4th 1303, 1310 (11th Cir. 2022) (citation omitted). There are two tests for purposeful

2

availment: "the [*Calder*] effects test and the traditional minimum contacts test." *Miller v. Gizmodo Media Grp.*, 383 F. Supp. 3d 1365, 1373 (S.D. Fla. 2019) (citations omitted). Plaintiff only "invokes . . . the *Calder* effects test," (Opp. at 4), but he cannot satisfy either.

> ### i.   *Plaintiff cannot establish personal jurisdiction under the effects test.*

The effects test requires Plaintiff to establish that the Documentary was "directly aimed at the forum" – that Florida "was the focal point." *Moore v. Cecil*, 109 F.4th 1352, 1364 (11th Cir. 2024) (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)). The facts here demonstrate the opposite. The record shows the BBC aimed the Documentary at the U.K. (not Florida) and took extensive steps to bar non-U.K. access. This case illustrates the rule that "[p]osting information on the internet is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed." *McCall v. Zotos*, 2023 WL 3946827, at *4 (11th Cir. June 12, 2023) (cleaned up). Plaintiff's arguments – as to unauthorized VPN use, U.S. filming, and a few copies sent to U.S.-based contributors – do not militate a different result.

> ### a.   **Circumventing geoblocking efforts cannot satisfy the effects test.**

Plaintiff's contention that someone in Florida may have used VPN technology to circumvent iPlayer's territorial restrictions is both legally irrelevant and unsupported by the record. ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Tal Lavian Deposition Tr. ("Lavian Tr.") (attached as Ex. A) at ████████████  Any bad actors' unilateral contacts would not create jurisdiction as a matter of law. *See Moore*, 109 F.4th at 1364; *Carsey-Werner Co. v. BBC*, 2018 WL 1083550, at *6 (C.D. Cal. Feb. 23, 2018).

Factually, there is no dispute that the BBC intended to *avoid* non-U.K. viewers. ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████  Where "there is no evidence that the defendants posted" the content "hoping to reach [that] state . . . *specifically*, then the *Calder* effects test is not satisfied." *Karnas*, 2025 WL 3759241, at *8 (quoting *Moore*, 109 F.4th at 1364) (emphasis in original).[1]

---

[1] *See also, e.g.*, *Madara v. Hall*, 916 F.2d 1510, 1519 (11th Cir. 1990) ("mere awareness . . . that a small number of copies of the magazine might find their way to Florida is not enough"); *Johnson v. Borell*, 2026 WL 1077623, at *4 (S.D. Fla. Apr. 21, 2026) ("Nor is it enough, absent evidence that Defendant manifested an intent to target and focus on Florida readers, that Plaintiff

At its core, Plaintiff's jurisdictional theory is that because bad actors in Florida can use technology to circumvent the BBC's geoblocking efforts – even though the BBC's Terms of Use expressly prohibit it – jurisdiction is proper in Florida.  This argument is without merit.  Plaintiff does not identify a single decision exercising personal jurisdiction over a foreign defendant based on unauthorized access over the internet.  Indeed, another District Court has rejected Plaintiff's precise theory as to BBC's iPlayer, holding that "[u]nauthorized viewers outside of the United Kingdom do not provide a basis for personal jurisdiction." *Carsey-Werner*, 2018 WL 1083550, at *6; *accord Triple Up v. Youku Tudou*, 235 F. Supp. 3d 15, 25 (D.D.C. 2017) (noting that "affirmative geoblocking efforts should weigh *against* the exercise of personal jurisdiction" and that "equat[ing] a failure to geoblock with purposeful availment" would upend due process) (emphasis in original), *aff'd*, 2018 WL 4440459 (D.C. Cir. July 17, 2018).

The record is clear: the BBC was ███████████████████████████ ████████████████████████████, because it was "hoping to reach" only audiences in the U.K. with the Documentary.  *See Moore*, 109 F.4th at 1364.  The BBC's Director of Digital Distribution, Richard Cooper,[2] identified five steps—two legal and three technical—the BBC uses to try to achieve that complete block.  Contractually, the BBC 1) limits iPlayer use to registered BBC.co.uk users, who must affirmatively agree not to use a VPN to watch iPlayer abroad, and 2) requires potential viewers to affirm they have paid for a U.K. TV License (a license that is available only to U.K. residents). Cooper Tr., Opp. Ex. J, at 21:10-22:25. Indeed, it is a crime in the U.K. to watch iPlayer without paying the license fee.  *See* Commc'ns Act 2003, c. 21, § 363 (U.K.).

Although these legal safeguards should be enough to defeat any claim that personal

---

suffered harm in Florida by virtue of some individuals' potential access to the defamatory statements in Florida."); *Sovereign Offshore Servs. v. Shames*, 2017 WL 7798664, at *3 (S.D. Fla. Aug. 3, 2017) (same); *see also Johnson v. TheHuffingtonPost.com*, 21 F.4th 314, 326 (5th Cir. 2021) (rejecting request to assert "power over HuffPost because it erected a website where Texans can visit," as "more is needed to protect due process").

[2] Plaintiff's attacks on Mr. Cooper's bonafides are baseless.  *Cf.* Opp. at 9.  Mr. Cooper leads the department that enforces iPlayer's geofencing.  Cooper Tr. at 15:21-24, 16:19-17:1.  He has worked as a BBC engineer since 1983.  *Id*. at 122:24-134:3.  He is a trained engineer with a deep working knowledge of iPlayer, and helped build its geofencing tools.  *Id*. at 133:4-6, 134:21-135:10, 139:20-24. ████████████████████████████████████ ████████████████████████████████████████████████████████████ .

jurisdiction is proper, the BBC's belt-and-suspenders approach to trying to prevent unauthorized access also includes at least three technical measures. **First**, the BBC checks the IP address of the viewer to determine if they are outside the U.K. or are using a VPN. If either is detected, the user is prevented from navigating the iPlayer site. **Second**, if a viewer gets through the initial screen, iPlayer does the same check again when they try to play any content. Even after getting through these screens, the content delivery network (CDN) that delivers the content performs a **third** check before sending any video. A viewer must clear all three technical hurdles to access streaming content on iPlayer. Cooper Tr. at 21:10-22:25, 114:11-18.

The BBC enforces territorial restrictions with the help of its geoblocking vendor, GeoComply. *See* Cooper Tr. at 44:1-5. Rights holders as protective as ██████ *require* the BBC to use GeoComply to block non-U.K. access to their content so "they can sell the content to other territories," and the BBC has "satisfied their needs." Cooper Tr. at 23:5-13, 137:22-139:4. Other content distributors, including U.K. competitor ITV, Amazon Prime Video, and content distribution networks ("CDNs") such as Akamai also use GeoComply. *Id.* at 44:3-13, 135:1-12. GeoComply is so well regarded, it is used in the U.S. by online gaming providers that must ensure that anyone using their service complies with the laws in their state, which requires significant diligence, considering the legal "risks." *Id.* at 111:16-112:9.

Plaintiff's arguments do not change the result. Plaintiff points to legally irrelevant data showing 34 out of 570,000 play-starts, by 10 unique visitors, *may* have been in Florida; the rate of failed access attempts; alleged unauthorized access to German soccer broadcasts (from Germany); and Dr. Lavian's own unauthorized circumvention of the BBC's geoblocking. *Cf.* Lavian Decl. ¶¶ 32-36; *Carsey-Werner*, 2018 WL 1083550, at *6 (unauthorized iPlayer access cannot create jurisdiction). The systems the BBC relies on for geoblocking show *no* U.S. access; they would have blocked users detected to be in the U.S. *See* Cooper Tr. at 39:18-25.[3]

---

[3] Contrary to Plaintiff's unfounded attacks on Mr. Cooper, there is no inconsistency. *Cf.* Opp. at 9; Lavian Decl. at App'x E. The BBC has not claimed its geoblocking is 100% effective (though 99.1% is obviously very close). Rather, what the BBC has claimed – ████████████████ ████████ – is that the BBC aims to block users outside the U.K. from using iPlayer. *See* Cooper Decl. ¶ 9 ("Where the IP geo-location feature detects unauthorised use outside of the United Kingdom, it prevents access to video content via the iPlayer service."); Cooper Tr. at 31:14-17 ("[W]here we detect someone is from the US, we do not deliver the content to them."); ████ ████████████████████████████████████████████████. That is the opposite of

5

Finally, on the facts, assuming *arguendo* that a user in Florida had used a VPN to circumvent the BBC's geoblocking efforts to watch the Documentary, it would have been the VPN provider—not the BBC—that directed the Documentary at Florida. This cannot be a basis for jurisdiction because a third party's delivery of a publisher's content into the forum, against the publisher's wishes and efforts to the contrary, cannot establish personal jurisdiction over the publisher in the forum. *See Walden v. Fiore*, 571 U.S. 277, 291 (2014) (the "unilateral activity of a third party . . . cannot satisfy the requirement of contact with the forum State") (cleaned up).

**First**, . Dr. Lavian concedes iPlayer refused service "exactly as the BBC describes." Lavian Decl. ¶ 78.

**Second**, Even if the Documentary at issue reached Florida through the actions of users like Dr. Lavian who used VPNs to circumvent

purposeful availment in Florida. Regarding the one document showing 34 attempted play-starts in Florida, as Mr. Cooper testified and Plaintiff's expert does not contradict, that data is "not reliable" for geolocation. It is used by a different BBC team for audience analytics, not geoblocking; those metrics do not use up-to-date geolocation data; and on Mr. Cooper's analysis, some of those attempts appeared to be in the U.K. Cooper Tr. at 39:22-41:8, 101:5-103:17.

the BBC's geoblocking efforts, the BBC transmitted those streams hoping to reach the U.K., not Florida.  Thus, "there is no evidence that the defendants posted the . . . information hoping to reach the forum state . . . *specifically.*"  *Karnas*, 2025 WL 3759241, at *8 (emphasis in original); *cf. Safex Found. v. SafeLaunch Ventures*, 694 F. Supp. 3d 1, 13-15 (D.D.C. 2023) (unauthorized access "only underscore[s] what [defendant's] own policies and practices already suggest – that the company seeks to avoid doing business with U.S. consumers, despite the fact that its website is accessible in the United States").

At bottom, Plaintiff and Dr. Lavian offer a theory of personal jurisdiction based on unauthorized third-party access in violation of the BBC's efforts.  *See* Opp. at 4-14; Ex. K.  If this were enough, anyone who posts content online anywhere in the world, even if they work as diligently as the BBC does to block U.S. access, could be pulled into court in any state.  As this Court has recognized, such an exercise of jurisdiction does not comport with due process.  *Karnas*, 2025 WL 3759241, at *11.

### b.  Reporting on U.S. voters does not satisfy the effects test in *Florida.*

Plaintiff's argument that specific jurisdiction arises in Florida because the Documentary was aimed at a "global, unrestricted U.S. audience," Opp. at 4-8, errs both legally and factually.  Legally, Plaintiff must show that Florida, not the U.S., "was the focal point of" the film.  *Moore*, 109 F.4th at 1364.  He cannot.  As the facts show, it was aimed at U.K. audiences, not Floridians.

***Commissioning documents.***  Plaintiff argues that commissioning documents show the Documentary was "conceived, timed, and structured around the U.S. presidential election."  True enough, as this was newsworthy for U.K. viewers.  That the production agreement states the film "*could* be seen in" the U.S. is also unremarkable, as are emails noting *possible* international distribution.  *See* Opp. Ex. D at 6 (emphasis added), Exs. G-H.  Blue Ant, an unrelated company that contracted with the Documentary's owner October Films, had the international distribution rights, so any U.S. distribution could not have been via the BBC.  Opp. Ex. D at 1.  Nor does anything in the record support that international distribution would have been targeted at Florida.

***Pitches.***  While a pitch mentioned "revelation[s] from DC, Florida, New York or Georgia," where Plaintiff was facing trial, this reflects a general plan to track voters' reactions to "events/trial verdicts," not to focus the Documentary on Florida.  Ex. F. at 7; *cf.* Opp. at 5.  This is evident in the film.  It shows just one brief clip of a Mar-a-Lago rally.  *See* Telling Decl. Ex. 3.  Overall, the film aimed to explain to its "audience in the UK why Trump retains such popularity

7

and why he might be elected for a second time." Burgess Tr. (Opp. Ex. B) at 41:21-42:1.

***U.S. Filming.*** Plaintiff mentions the U.K.-based production team's sole, two-week filming trip to D.C. and Ohio. *See* Opp. at 6. Yet it is undisputed that no one went to Florida for this Documentary. *See* Telling Tr. (Opp. Ex. A) at 78:13-20, 80:12-13; Burgess Tr. at 23:3-15.

***Non-parties' Florida Footage.*** Plaintiff abandons the false claim that the BBC "traveled to Florida to film" at Mar-a-Lago – one example of many where Plaintiff made bald allegations of false fact without any basis, and from which he has since retreated with no acknowledgment. Compl. ¶¶ 37-39; *cf.* Opp. at 13-14. It is undisputed that the Mar-a-Lago footage in the Documentary was not filmed by the BBC but was licensed from third parties or was publicly available, and was filmed, by others, before the Documentary was even commissioned. *See* Telling Decl. ¶¶ 12-14 & Exs. 1-2; Telling Tr. at 96:21-102:25, 130:7-131:2.[5] The clip ran just three minutes out of the hour-long film that featured a number of gatherings elsewhere, and it is not the edit Plaintiff's suit challenges. This cannot satisfy the effects test. *See, e.g.*, *Fielding v. Hubert Burda Media*, 415 F.3d 419, 426-27 (5th Cir. 2005) (test not met where "references to [forum] were merely collateral to the focus of the article").

***Air date.*** Plaintiff's arguments about the BBC's plan to air the Documentary ahead of the U.S. election are also misplaced. *Cf.* Opp. at 5. That is when *Panorama's* U.K. viewers would find it newsworthy. *See* Burgess Tr. at 87:21-88:1. This shows no Florida-specific aiming, just basic principles of news and current affairs programming.

***Non-party distribution.*** Plaintiff's note that the "international rights ran from October Films to Blue Ant to Little Dot Studios" further undermines his jurisdictional claims. *Cf.* Opp. at 6. The BBC *never* had the international distribution rights; only U.K. rights. *See id.* at 24:5-9; Opp. Ex. D at 1. Little Dot, never aired the Documentary in the U.S., and October Films' international version *did not even have the edit at issue*. *See* Telling Decl. ¶¶ 21, 24. Critically, this licensing chain shows *no* aiming by the BBC at *Florida*. *See Basulto v. Netflix*, 2023 WL 4014741, at *13 (S.D. Fl. May 25, 2023) (no jurisdiction where non-party "had the exclusive discretion on when/where to publish the Film in the United States," "(which would include Florida – along with 49 other states)").

---

[5] Plaintiff's fixation on the date of the Getty Images license for Mar-a-Lago footage is confusing; the point is that the BBC did not film it. Opp. at 13-14; *see* Telling Tr. at 95:12-98:5 (explaining licenses are commonly signed after broadcast, so the producer only pays for footage it uses).

*X post.* The BBC's sole social media post about the Documentary also was not aimed at Florida. Even Plaintiff refers to it, diffusely, as "international-facing." *See* Opp. at 6. In fact, it was aimed at the U.K.: the post provided the U.K. airtime for *Panorama* on the BBC's U.K. TV channel or U.K. streaming service, which would, if it detected a user was not in the U.K., block the content from being viewed. *See* Opp. Ex. I. Again, the possibility that someone in Florida breached the BBC's geofencing does not show the BBC aimed *at Florida*, but the opposite. *Cf. Moore*, 109 F.4th at 1364 (no jurisdiction given "no evidence that the four tweets in question were directed at Alabama . . . as opposed to his followers or a national audience").

Neither precedent nor logic supports Plaintiff's arguments that the BBC should be subject to Florida's jurisdiction because it contracted a U.K. company's U.K.-based team to make a film about the U.S. election, broadcast it in the U.K., and allegedly defamed one Florida resident. *See McCall*, 2023 WL 3946827, at *4-5 ("The mere fact that [defendant] knew that the plaintiffs resided in Florida is not sufficient to show that Florida was targeted as the focal point of the statements,"); *Basulto*, 2023 WL 4014741, at *13 (that foreign defendants "produced a film which a Florida resident claims was defamatory. . . is insufficient"). The effects test is not met.

### c. Sending a handful of viewing links does not satisfy the effects test.

Plaintiff's argument that an "October Films producer" "emailed at least six U.S.-based" contributors, just one of whom may have been in Florida, about how to watch the Documentary on iPlayer via VPN, and that a "download link" was sent to the one Florida resident, who may never have seen it, *see* Opp. at 11-13, Ex. P, is also unavailing. Plaintiff has offered no evidence that any of them used an undetected VPN and accessed iPlayer. If they had, they would have been breaching the BBC's Terms of Use and geoblocking measures. *See* Burgess Tr. at 61:11-62:4. As to viewing links, BBC's News Director Richard Burgess explained it is "standard practice," as "contributors want to see their contribution." *Id.* at 58:8-13. Viewing links went to D.C. "congressional staff" and "a University of California professor." Opp. at 11.[6] One viewing link sent as a courtesy to one contributor who may have been in Florida and who may have never seen it does not make Florida the focal point of the Documentary, which had hundreds of thousands of views by U.K. license holders, under *Calder*'s effects test. *Compare Calder*, 465 U.S. at 790 (finding jurisdiction in state with publisher's "largest circulation"), *with, e.g., McCall*, 2023 WL 3946827, at *5 (claims "that the review was accessible and accessed in

---

[6] Plaintiff offers no argument or evidence that this contributor watched the film in Florida.

9

Florida and that [plaintiffs] resided in Florida are not sufficient to confer personal jurisdiction").

### ii.   *Plaintiff also cannot satisfy the minimum contacts test.*

Plaintiff does not even attempt to satisfy minimum contacts – the second test for purposeful availment – nor could he.  *See* Opp. at 4.  "The contacts must be the defendant's own choice and not random, isolated, or fortuitous."  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (internal marks omitted).  Unauthorized VPN use (if any) and other stray, isolated contacts cannot satisfy that standard.

Plaintiff's claim that some Florida bad actors might have watched the Documentary using an unauthorized VPN also fails the minimum contacts test because, here too, due process means that a defendant's "relationship [with the forum state] must arise out of contacts that the defendant *himself* creates."  *Walden*, 571 U.S. at 285 (emphasis in original) (internal marks omitted).  It is "precisely the sort of unilateral activity of a third party that cannot satisfy the requirement of contact with the forum State."  *Id.* at 291 (cleaned up).

Plaintiff's arguments as to the alleged potential views of the Documentary from Florida, whether via VPN or the one contributor viewing link, also fail because they are "isolated."  The Supreme Court "ha[s] long treated isolated or sporadic transactions differently from continuous ones," and held they do not create jurisdiction.  *Ford Motor*, 592 U.S. at 366 n.4; *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 888, 892 (2011) (Breyer, Alito, JJ., concurring) ("None of [the Supreme Court's] precedents finds that a single isolated sale . . . is sufficient."); *Fielding*, 415 F.3d at 426 (no jurisdiction over German publisher with in-state "distribution of seventy issues per week"); *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1029 (2d Cir. 1997) (same, where Israeli publisher sent "four copies per day"); *Thane Int'l v. Braden*, 2008 WL 11399575, at *8 (S.D. Fla. Jan. 22, 2008) (same, where Hong Kong company sold up to 5% of products in Florida); *Christian v. Barricade Books*, 2003 WL 21146168, at *3 (D.N.H. May 15, 2003) (same, where "two people who purchased the . . . book in New Hampshire" and the publisher "shipped one copy of the book to" the state); *Maschinenfabrik Seydelmann v. Altman*, 468 So. 2d 286, 289-90 (Fla. 2d DCA 1985) (same, where German defendant sold 23 meat grinders into Florida).  Plaintiff's claims that a handful of viewers may have watched the Documentary in Florida thus fail to satisfy the minimum-contacts test under black-letter law.  *Cf.* Opp. at 4-14.  For the reasons described above, his allegations about the Documentary's specific U.S. connections also fail.  He cannot satisfy either jurisdictional test.

### iii.     *Plaintiff offers no grounds for jurisdiction over the Studios Defendants.*

Plaintiff offers no basis whatsoever for the Court to exercise jurisdiction over the Studios Defendants. *Cf.* Opp. at 16-17.  "Each defendant's contacts with the forum State must be assessed individually." *Calder*, 465 U.S. at 790.  The Complaint made the (additional) false claims that these U.K.-based entities "co-produced and published" the Documentary, aired it on BritBox, and that subsidiary BBC Studios Americas, Inc. has a Coral Gables office.  Compl. ¶¶ 13-14, 17.  Yet the record has established that there was never any basis for making any of these claims, and they are flatly wrong.[7]  *See* Freeman Decl. ¶¶ 9-10 (neither Studios Defendant "had any role in the creation or production of," nor "had the contractual rights to, and therefore did not, distribute" the film); *id.* ¶¶ 17-18 (BBC Studios Americas "is a separate legal entity," which "does not have an office in Florida" and "had no role in" the Documentary); BBCSP Tr. (attached as Ex. B) at 63:17-21 ("[T]here is no evidence of [BBCSP] having been involved in the production or distribution[.]"); BBCSD Tr., Opp. Ex. S at 93:1-4 (same, as to BBCSD), 95:3-13 ("[T]his title did not air on BritBox[.]").

Now, Plaintiff ignores BBCSP entirely, waiving any claim to jurisdiction over it. *Cf.* Opp. at 16-17.  As to BBCSD, he proffers only that Blue Ant, a non-party with the film's international distribution rights, "approached" its streaming platform BBC Select to ask if it would be interested in airing the film.  *Id*.  The outcome is undisputed, and is consistent with Defendants' prior testimony: BBC Select "didn't acquire the documentary," so BBCSD also did not air it in Florida.  BBCSD Tr. at 40:4; *see also id.* at 25:15-26:25 ("[T]here is no record of that program having been acquired[.]").  Plaintiff does not even claim that this "approach" occurred in Florida, nor could he.  *Cf. id*. at 18:19-24 (BBC Select "operate[s] out of" New York); Compl. ¶ 33 (Blue Ant is "Canadian").  Again, as "unilateral activity of a third party" cannot create jurisdiction, *Walden*, 571 U.S. at 291, Blue Ant's outreach is irrelevant.  As Plaintiff concedes, "personal jurisdiction turns on whether *the defendant* reached into the forum."  Opp. at 16 (emphasis added).  BBCSD did not reach into Florida, and it is not subject to jurisdiction here.

### 2.     *Florida's long-arm statute does not subject Defendants to personal jurisdiction.*

Plaintiff also fails to show that the exercise of personal jurisdiction comports with Florida's long-arm statute, as he must.  *See* Compl. ¶ 22; Opp. at 14-16; *cf.* Br. at 18-20.

**First**, as to Fla. Stat. § 48.193(1)(a)(6), for "injury to persons or property within this

---

[7] In fact, the Opposition abandons any arguments based on these false allegations.

11

state," Plaintiff ignores the law that "economic injury" alone cannot satisfy this provision. *Karnas*, 2025 WL 3759241, at *5 (citation omitted); *cf.* Opp. at 16.  Yet "reputational" and "economic harms" are all he alleges.  Compl. ¶¶ 10, 99-102.

**Second**, as to Fla. Stat. § 48.193(1)(a)(1), for claims based on "carrying on a business or business venture in this state," Plaintiff cites only *unrelated* business.  The Coral Gables office had no role in the Documentary; U.S. employees work for BBC News USA, Inc., which did not create or broadcast it; it was not shared via "partnerships distributing BBC content" in the U.S., and it was never on BBC.com or BritBox – another false allegation previously made by Plaintiff. *Cf.* Opp. at 15-16; *see* Burgess Decl. ¶¶ 8-12; Freeman Decl. ¶¶ 14-16.  The Florida news and weather pages on BBC.com are not unique; the site has pages for all 50 U.S. states, countries globally, and topics from sports to music.  BBCSD Tr. at 72:14-74:1.  Plaintiff thus "comes nowhere close to establishing 'a direct affiliation, nexus, or substantial connection . . . between the basis for the cause of action and the business activity.'"  *Karnas*, 2025 WL 3759241, at *6.

**Third**, Plaintiff cites Fla. Stat. § 48.193(1)(a)(2), which encompasses "[c]ommitting a tortious act within this state."  Even crediting, *arguendo*, Plaintiff's defamation allegations, he cannot invoke this provision because he "still fail[s] to overcome the federal due-process standard" to establish jurisdiction, as set forth above.  *Karnas*, 2025 WL 3759241, at *7.

### 3.    *Exercising jurisdiction would offend notions of fair play and substantial justice.*

Asserting jurisdiction here despite the lack of connection between these U.K. Defendants and Florida would also offend notions of fair play and substantial justice.  *See* Br. at 23-25; *Asahi Metal Indus. v. Super. Ct.*, 480 U.S. 102, 114 (1987) (emphasizing "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system"); *Bioheart v. Peschong*, 2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013).  Plaintiff's response improperly conflates general U.S. contacts with Documentary-related Florida contacts.  Opp. at 17.  None of it is sufficient.  Again, the Coral Gables office of non-party BBC News USA, Inc. had no role in the Documentary; U.S. employees work for BBC News USA, Inc., which did not create or broadcast the Documentary; the BBC did not distribute it via "U.S. broadcaster partnerships" or to "U.S. subscribers"; and "logs" showing that ten Florida visitors *may* have unauthorizedly viewed the Documentary cannot justify haling these U.K. Defendants into a Florida court.  *Id.*; *see* Burgess Decl. ¶¶ 8-12; Freeman Decl. ¶¶ 14-16.  Under this Circuit's due process test, Defendants are not subject to jurisdiction in Florida, and the Complaint should be dismissed.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM

In addition to these jurisdictional failures, Plaintiff's Opposition further reflects that he fails to state any claim against the Studios Defendants, for defamation, or under FDUPTA.

### A.  The Complaint Fails to State Any Claim Against the Studios Defendants

To defend his conclusory assertion that the Studios Defendants "co-produced and published" the Documentary, Plaintiff throws a Hail Mary, claiming BBCSD had "involvement" because it was once approached about purchasing rights to air it and *declined* to do so.  Opp. at 27.  BBCSD's decision to decline is not just fatal jurisdictionally, but also on the merits. "Publication requires that 'the *defendant* made a defamatory statement to a third person.'  In other words, the plaintiff 'must establish that the defendant made the allegedly defamatory statement in issue.'"  *Harvey v. CNN*, 520 F. Supp. 3d 693, 714 (D. Md. 2021) (cleaned up) (quoting Robert D. Sack, Sack on Defamation § 2:5.1 (5th ed. 2017)).  Plaintiff cannot plausibly allege that the Studios Defendants "published" the Documentary, while also acknowledging that BBCSP had nothing to do with it and BBCSD declined to license or air it.  Plaintiff's only attempt at a response is to argue that, because he *claims* the Studios Defendants "co-produced and published" the film, their involvement is now "a merits question."  Opp. at 27.  A naked assertion that a defendant in a libel case "published" the challenged speech is precisely the type of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, [that] do[es] not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court should grant dismissal as to the Studios Defendants.

### B.  The Complaint Fails to State a Claim for Defamation

In moving to dismiss, Defendants identified three separate and independent reasons why Plaintiff failed to state a claim for defamation, as he does not adequately plead: (1) damages; (2) actual malice; and (3) that the challenged edit constitutes a statement of fact rather than a protected expression of opinion.  Plaintiff's Opposition has not rebutted any of these points.

**First**, Plaintiff refuses to accept that under *Edelstein v. WFTV*, he is required to "plead and prove actual injury" because he is suing a media defendant, and makes no effort to do so.[8] 798 So. 2d 797, 798 (Fla. 4th DCA 2001) (per curiam); *cf.* Opp. at 23-25.

**Second**, Plaintiff continues to misapprehend what the Supreme Court and the Eleventh

---

[8] Plaintiff cannot possibly have alleged "actual injury" because he instead asserted, last month, that he has not yet been able "to quantify his reputational and economic harm."  *See* ECF 52 at 4.

Circuit require to plausibly allege actual malice.  For one, Plaintiff claims it can be inferred because BBC's Chair issued an apology, *see* Opp. at 22-23, but the apology for an edit that "unintentionally created the impression of a single, continuous section of [Plaintiff's] speech" contradicts actual malice, rather than plausibly supporting it, *see id.*  And because actual malice in a defamation-by-implication claim like this one requires the plaintiff to both plead and prove that that defendant "intended" to convey the allegedly false and defamatory meaning, *see Moore v. Cecil*, 174 F.4th 862, 883 (11th Cir. 2026), the apology for "unintentionally creat[ing] the impression" fails to support actual malice.  For another, Plaintiff suggests that edit was, by definition, a knowing falsehood because "[o]ne cannot accidentally falsely assemble a sentence the speaker never spoke from a transcript one already possesses."  Opp. at 22.  That defies the central holding in *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991), where the Supreme Court concluded that "a deliberate alteration of the words uttered by a plaintiff does *not* equate with knowledge of falsity for purposes of *New York Times Co. v. Sullivan* and *Gertz v. Robert Welch* unless the alteration results in a material change in the meaning conveyed by the statement." (emphasis added and citations omitted).  Because Plaintiff fails to plausibly allege that the edit resulted in a "material change in the meaning" of his speech, the mere fact of the edit does not plausibly allege actual malice.  Next, Plaintiff's claims about BBC staff who did *not* make the Documentary, such as the producers of a 2022 *Newsnight* episode, are irrelevant, because actual malice "ha[s] to be brought home to the persons in [the] organization having responsibility for the publication."  *N.Y. Times v. Sullivan*, 376 U.S. 254, 287 (1964); *cf.* Compl. ¶¶ 55-75, 89-96.  And finally, Plaintiff continues to insist that he has alleged actual malice by baldly pleading that BBC's "leadership bore [him] ill will," Opp. at 22 (cleaned up), even though the Eleventh Circuit has been crystal clear that "[i]ll-will . . . plays no role in determining whether a defendant acted with 'actual malice.'" *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999).  Plaintiff thus fails to plausibly allege actual malice, as he must.

**Third**, Plaintiff misses the forest for the trees on the question of whether the edit conveys a statement of fact or an expression of opinion.  Defendants have argued that, to the extent the edit can be interpreted to convey the implication that Plaintiff incited the violence that occurred on January 6, that implication is an expression of opinion on a matter of public concern, entitled to the fiercest protections of the First Amendment.  Plaintiff responds with the non sequitur that it is "a binary question of historical fact" whether he "spoke the continuous sentence that the

14

Documentary attributed to him." Opp. at 25. That is not the question at hand in this motion: what matters for purposes of the fact/opinion distinction is whether the implication that Plaintiff alleges the edit conveys – that Plaintiff incited violence on January 6 – is too subjective to be proven true or false. Because this issue is so subjective, it is not actionable as fact. Noteworthy here is the holding of another District Court that found, in an action against President Trump and January 6 Capitol riot participants, that it is plausible to interpret his January 6 speech and its aftermath as the President's incitement of the day's events. *Thompson v. Trump*, 590 F. Supp. 3d 46, 115 (D.D.C. 2022), *aff'd sub nom. Blassingame v. Trump*, 87 F.4th 1 (D.C. Cir. 2023).

### C. The Complaint Fails to State a Claim for Violations of FDUTPA

Plaintiff's argument that his FDUTPA claim survives under Florida's single-action rule because it "is not a duplicative defamation claim repackaged under another label" fails at the outset. Opp. at 3. That is exactly the nature of this claim. It, too, is premised on the alleged "manipulation and dissemination of the Documentary." *Id.*; *see* Compl. ¶ 117. As Plaintiff accepts, it fails "'[i]f the defamation count fails.'" Opp. at 27 (quoting *Bongino v. Daily Beast*, 477 F. Supp. 3d 1310, 1320 (S.D. Fla. 2020)). But he errs in claiming that is the "only" effect of the single-action rule. *Id.* Even if a defamation claim proceeds, "a plaintiff may not proceed on multiple counts for . . . the same defamatory publication." *Klayman v. Jud. Watch*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014). The FDUTPA claim also should be dismissed regardless.

Moreover, the Documentary is not "trade or commerce" under FDUPTA because it is not purely "commercial speech." *Bongino*, 477 F. Supp. 3d at 1321 (citation omitted); *see* Fla. Stat. § 501.204(1); *cf.* Opp. at 28. Plaintiff's cited case is not to the contrary, as it involved commerce: a company's accreditation methods. *Caribbean Cruise Line v. Better Bus. Bureau of Palm Beach Cnty.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015) (cited in Opp. at 28). Here, Plaintiff targets a Documentary "about the 2024 United States Presidential Election," Opp. at 28 – clearly not "solely" "economic interest[s]." *Bongino*, 477 F. Supp. 3d at 1321; *cf. Rothschild v. Starbucks*, 2026 WL 717195, at *4 (S.D. Fla. Feb. 18, 2026) (news article not "trade or commerce"), *R.&R. adopted*, 2026 WL 714494 (Mar. 13, 2026). The FDUTPA claim fails.

### CONCLUSION

For each and all of the foregoing reasons and those set forth in their opening brief, Defendants respectfully request that the Court dismiss the Complaint with prejudice for lack of personal jurisdiction and failure to state a claim.

**RESPONSE TO PLAINTIFF'S REQUEST FOR EVIDENTIARY HEARING**

The Court should deny Plaintiff's request for an evidentiary hearing.  *Cf.* Opp. at 29. There is no genuine dispute of any material jurisdictional fact.  *See, e.g.*, *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009) (disputed facts "must be sufficiently material to warrant . . . an evidentiary hearing").  Witnesses sat for dozens of hours of depositions, and their testimony is in the record.  If the Court determines oral argument would help its review, that would be sufficient to address any questions the Court may have.

Dated:  June 19, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**
1909 K Street, NW
Washington, DC 20006-1157
Tel: (202) 661-2218
Fax: (202) 661-2299

By: */s/Charles D. Tobin*
Charles D. Tobin
Fla. Bar No.: 816345
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
Yanni Chen (*pro hac vice*)
Richard W. Miller (*pro hac vice*)
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com
cheny@ballardspahr.com
millerrw@ballardspahr.com

*Attorneys for Defendants*

16