# Agreement between

# BBC

## and

## October Films

---

## Secondment Agreement

---

 **SECONDMENT AGREEMENT**

This Agreement is made the twenty fifth day of April 2024

**BETWEEN**

1)   **British Broadcasting Corporation**, a corporation formed by Royal Charter whose principal place of business is at Broadcasting House, Portland Place, London W1A 1AA ("**the Employer**")

OCTOBER FILMS, ("**the Host**"), BENWELL STUDIOS, 11/13 BENWELL ROAD, LONDON N7 7BL

**WHEREAS**

(A)   The Employer employs  **MATTHEW HILL** as a **PRODUCER**

(B)   The Employer intends to second **MATTHEW HILL** to OCTOBER FILMS in order to provide the Services during the Secondment Period

**IT IS AGREED AS FOLLOWS**

**1       Interpretation**

1.1    The definitions and rules of interpretation in this clause apply in this agreement (unless the context requires otherwise):

| | |
|---|---|
| **Confidential Information** | Information relating to the business, products, affairs and finances of the relevant party for the time being confidential to the relevant party and trade secrets including without limitation, technical data and know-how relating to the business of the relevant party or any of its suppliers, clients, customers, agents, distributors. Shareholders or management, including in particular (by way of illustration only and without limitation) |
| **Start Date** | Shall have the meaning given to the phrase in Clause 2 of this Agreement. |
| **Employment Contract** | Means the terms of employment between the Employer and the Secondee |
| **Expiry Date** | Shall have the meaning given to the phrase in Clause 2 of this Agreement. |
| **IPRs** | Means all rights in patents, trademarks design rights (whether registered or unregistered), copyright, database rights, sui-generis rights, trade secrets, trade or business names and other similar rights |

 **BBC**                             **SECONDMENT AGREEMENT**

| | |
|---|---|
| | or obligations whether registrable or not in any country and applications for any of the foregoing. |
| **Management Issues** | Means all those matters under the Employment Contract requiring action, investigation and/or decisions by the Employer including in particular (by way of illustration only and without limitation) appraisals and performance issues; pay reviews and the award of other payments and benefits under the Employment Contract; period of annual, sick or other leave; absence of the Secondee for any other reason; any complaint about the Secondee (whether or not that would be dealt with under the Employer's disciplinary procedure) and any complaint or grievance raised by the Secondee (whether or not that would be dealt with under the Employer's grievance procedure). |
| **Role of Secondee** | **Producer** |
| **Secondee** | Means the Employer's employee named in Recital (B) above. |
| **Secondment Fees** | Means a fee of ▮▮▮ **for 125 days** (this rate includes NI/Pension payments) as agreed between parties and subject to value added tax at the current rate. |
| **Secondment Period** | Means the duration of the period set out in clause 2. |
| **Services** | The services to be provided by the Secondee as set out in Appendix 1 attached. |
| **Role** | Means the role which the Host requires the Secondee to have the capability to perform as more particularly described in Schedule 1 attached. |

1.2    Unless the context otherwise requires, any reference to the singular shall include the plural and vice versa.

1.3    Any reference to any Clause, sub-clause or Schedule is (save where the context otherwise requires) to a Clause, sub-clause or Schedule (as the case may be) of or to this Agreement.

1.4    The headings to the Clauses of this Agreement are for ease of reference only and shall not affect the interpretation or construction of this Agreement.

1.5    This Agreement constitutes the entire understanding between the parties with respect to the subject matter of this Agreement and supersedes all prior agreements, negotiations and discussions between the parties relating to such subject matter.

 **SECONDMENT AGREEMENT**

**2      Duration**

This Agreement will start on 8th April **2024** ("the Start Date") and subject to the provisions of this Agreement, applies in respect of the Secondment until;

a.    8th November 2024 (inclusive) ("the Expiry Date").

b.   This Agreement is terminated in accordance with clause 7

**3      Employer's Duties**

3.1    The Employment Contract shall remain in force during the duration of the Secondment Period under Clause 2.

3.2    The Employer has made or shall make the necessary changes to the terms of the Employment Contract so that it can second the Secondee to the Host to provide the Services in accordance with the terms of this Agreement (to include to require the Secondee to comply with the Host's procedures, where necessary).

3.3    The Employer shall use its reasonable endeavours to procure that the Secondee:

3.3.1    provides the Services at such other place within as the Host may reasonably require for the proper performance and exercise of the Services;

3.3.2    performs the Services as per the Secondee's normal working hours (and such additional hours as are reasonable and necessary for the proper performance of the services);

3.3.3    reports to and acts in accordance with the reasonable and lawful requests and directions of the Host;

3.4    The Employer warrants that the Secondee is eligible to work in the United Kingdom.

3.5    The Employer shall continue to pay the Secondee's salary and any allowances, provide any benefits due to the Secondee or their dependants, make any payments to third parties in relation to the Secondee and make any deductions that it is required to make from the Secondee's salary and other payments.

3.6    The Secondee may be required to undertake normal BBC work during the secondment when not with OCTOBER FILMS during the Secondment Period.

3.7    The Employer shall use its reasonable endeavours to ensure that the Secondee shall notify Manager at Host (NEIL BREAKWELL) and Manager at BBC (LEO TELLING) if the Secondee identifies any actual or potential conflict of interest between the Host and the Employer during the Secondment Period.

3.8    The Employer shall use its reasonable endeavours to procure that the Secondee shall provide the Services with reasonable skill and care.

 **SECONDMENT AGREEMENT**

**4      Host's Duties**

4.1      The Host confirms that it has had the opportunity to interview the Secondee or review their CV and therefore assessed the Secondee's suitability for the Role.

4.2      The Host shall not, and shall not require the Secondee to do anything that shall, breach the Employment Contract and shall have no authority to vary the terms of the Employment Contract or make any representations to the Secondee in relation to the terms of the Employment Contract.

4.3      The Host shall be responsible for (i) providing appropriate direction and instructions to the Secondee during the Secondment; and (ii) supervising the work performed by the Secondee.

4.4      The Secondee may be required to travel on the Host's business to such places (whether within or outside the United Kingdom) by such means and on such occasions as the Host may from time to time require.

4.5      The Secondee shall not be required to work outside the United Kingdom for more than one month during the Secondment Period.

4.6      During the Secondment Period the Host shall fulfil all duties relating to the Secondee's health, safety and welfare as if it was their employer and shall comply with the Employer's reasonable requests in connection with the Employer's duties in relation to the Secondee.

**5      Liability**

5.1      The Host shall indemnify the Employer fully and keep the Employer indemnified fully at all times against any loss, injury, damage or costs suffered, sustained or incurred by:

5.1.1      The Secondee in relation to any loss, injury, damage or costs arising out of any act or omission by the Host or its employees or agents during the Secondment Period; or

5.1.2      A third party, in relation to any loss, injury, damage or costs arising out of any act or omission of the Secondee during the Secondment Period.

5.2      The Host shall indemnify the Employer fully and keep the Employer indemnified fully at all times against any claim or demand by the Secondee arising out of their employment by the Employer or its termination during the Secondment Period (save for any claim that the Employer has failed to pay the Secondee's salary and any allowances, provide any benefits due to the Secondee or their dependants, make any payments to third parties in relation to the Secondee or make any deductions that it is required to make from the Secondee's salary and other payments).

**6      Payment to the Employer**

6.1      The Host shall refund the Secondee all reasonable travel, accommodation and other expenses wholly, exclusively and necessarily incurred by the Secondee during the Secondment Period in or in connection with the exercise of the Services, if such expenses are evidenced in such manner as the Host may specify from time to time.

   SECONDMENT AGREEMENT

6.2    The Employer shall invoice the Host for costs.

6.3    On expiry or termination of the Secondment any sum paid in advance in respect of the Secondee and not earned by the said Secondee on termination of the Secondment or on termination of this Agreement shall be repaid to the Host.

**7      Termination**

7.1    If at any time during the continuance of this Agreement and/or the Secondment:

7.1.1    the Secondee commits any act or makes any omission (whether or not in connection with the Secondment) which would entitle the Employer to dismiss him under his Employment Contract and/or entitle the Host to dismiss him summarily if he were employed by the Host on the terms and conditions under which he is employed by the Employer; or

7.1.2    the Secondee's employment with the Employer has been terminated, including but without limiting the generality of the foregoing, by reason of the Secondee's gross misconduct, redundancy, resignation or retirement; or

7.1.3    the Secondee wishes to ends the secondment and provides not less than 1 month written notice; or

7.1.4    the Secondee conducts himself in a manner prejudicial to the business of the Host and/or Employer (whether or not in connection with the Secondment); or

7.1.5    the Secondee is guilty of dishonesty or is convicted of an offence (whether or not in connection with the Secondment); or

7.1.6    the Secondee has a period of sickness absence of three weeks or more; or

7.1.7    a conflict of interest arises which cannot be resolved by the Employer and the Host; or

7.1.8    if the Host becomes bankrupt or makes any arrangement or composition with or for the benefit of its creditors; or

7.1.9    the Host no longer requires the services of the Secondee

then notwithstanding any other provision of this Agreement either party to this Agreement shall be entitled to terminate this Agreement with immediate effect by giving written notice to the other.

7.2    If either party hereto commits any material breach of their obligations under this Agreement and fails to remedy such breach within 14 days of receiving written notice then the other shall be entitled to terminate this Agreement forthwith by giving written notice to the other.

7.3    Either party may terminate this Agreement at any time by giving not less than 1 month written notice to the other.

7.4    Upon termination of this Agreement for whatever reason the Secondment shall immediately terminate and, without prejudice to any other rights or remedies it may have.

 **SECONDMENT AGREEMENT**

7.5     Upon termination of the Secondment howsoever arising the Employer shall use its reasonable endeavours to procure that the Secondee shall:

7.5.1   deliver to the Host all documents (including but not limited to correspondence, lists of suppliers , employees or any such information, plans, drawings, accounts and other documents of whatsoever nature and all copies thereof, whether on paper, computer disc or otherwise) made, compiled or acquired by them during the Secondment and relating to the business or affairs of the Host or its or their clients, customers or suppliers and any other property of the Host which is in its possession, custody , care or control;

7.5.2   irretrievably delete any information relating to the business of the Host stored on any magnetic or optical disc or memory and all matter derived from such sources which is in their possession, custody, care or control;

7.5.3   confirm in writing and produce such evidence as is reasonable to prove compliance with their obligations under this Clause 7.5.

8       **DATA PROTECTION**

8.1     For the purposes of this clause 8, the following terms shall have the following meanings: "Data Protection Laws" shall mean the Data Protection Act 2018, the General Data Protection Regulation ("GDPR") and any legislation replacing or amending such legislation; "controller", "data subject", "processing", "personal data, "personal data breach", "processor" and "supervisory authority" shall bear the meanings given to them in the Data Protection Laws. A reference to an "Article" is a reference to an article in the GDPR.

8.2     The parties acknowledge and agree that the Host will process personal data relating to the Secondee ("**Secondee Personal Data**") for its own purposes and as such will be a controller in its own right of Secondee Personal Data. For the avoidance of doubt, the parties are not joint data controllers and Article 26 of the GDPR shall not apply.

8.3     The Host shall comply with all Data Protection Laws and shall not process Secondee Personal Data for any other purpose or in any other manner except to the extent set forth in this clause and as otherwise may be required by the Data Protection Laws. The Host will process Secondee Personal Data for legal, personnel, administrative and management purposes as reasonably required to ensure that Secondee can provide the Services during the Secondment Period (the "**Stated Purpose**").

8.4     The Host warrants and represents, on behalf of itself, its employees, sub-contractors and/or agents: (i) it shall comply with all Data Protection Laws, including in relation to transfers of personal data to third countries; (ii) it shall not, without BBC's prior specific written authorisation, retain or otherwise process any Secondee Personal Data in its capacity as a controller beyond that described in the Stated Purpose; (iii) it shall limit its processing as a controller to only the Secondee Personal Data that is necessary for the Stated Purpose; and (iv) it shall retain Secondee Personal Data only as long as necessary to fulfil the Stated Purpose and shall thereafter, at the discretion of the BBC, permanently destroy or put beyond use all such Secondee Personal Data or return it to the BBC.

8.5     The Host shall and shall ensure that its employees, sub-contractors and/or agents comply with the following obligations:

8.5.1   process Secondee Personal Data securely at all times, including, as appropriate through the use of pseudonymisation and/or encryption technologies;

8.5.2   ensure the ongoing confidentiality, integrity, availability and resilience of processing systems and services; and

 **SECONDMENT AGREEMENT**

8.5.3   regularly test, assess and evaluate the effectiveness of physical, technical and organisational measures and disaster recovery processes.

8.6     The Host shall promptly provide at no charge such necessary and reasonable assistance and co-operation to the BBC and to any supervisory authority, in connection with:

8.6.1   any investigations, audits or enquiries made by a supervisory authority in relation to the processing of Secondee Personal Data;

8.6.2   the BBC being able to comply and respond to a request, query or complaint from a Secondee in relation to their personal data,

8.6.3   the BBC being able to comply with any other obligation as imposed on it by the Data Protection Laws; or

8.6.4   the BBC carrying out a data protection impact assessment, in relation to the processing of Secondee Personal Data for the Stated Purpose.

8.7     The Host shall notify the BBC immediately if it becomes aware of, or reasonably suspects the occurrence of, any potential or actual personal data breach affecting Secondee Personal Data and, in any event, within twenty-four (24) hours of identification to enable the BBC to consider whether to report the personal data breach in its own capacity as separate controller of the Secondee Personal Data. Nothing in this clause shall prevent the Host from submitting its own report to the supervisory authority as the controller of the Secondee Personal Data. The Host shall provide reasonable assistance to the BBC to facilitate the handling of any personal data breach in an expeditious and compliant manner and for the parties to consider what action may be required to respond to the personal data breach, including in relation to notification to any applicable supervisory authority guidance. Such notice shall, at a minimum:

8.7.1   describe the nature of the personal data breach including, where possible, the categories and approximate number of (a) affected data subjects, and (b) data records, and (c) whether personal data was de-identified, pseudonymised, anonymised or encrypted;

8.7.2   communicate the name and contact details of the Host's data protection officer or other contact point in relation to the personal data breach;

8.7.3   describe the likely consequences of the personal data breach; and

8.7.4   describe the measures taken or proposed to be taken by the Host to address the personal data breach including where appropriate, to mitigate its adverse effects.

8.8     In the event of a personal data breach affecting Secondee Personal Data, the Host shall:

8.8.1   not make any public announcements relating to the personal data breach that may adversely affect the BBC;

8.8.2   take all reasonable and appropriate corrective action;

8.8.3   permit the BBC to participate in any investigation, corrective action, and remediation process relating to the personal data breach;

8.8.4   co-operate with the BBC in relation to any data breach notification to a supervisory authority and take all such steps as may be required by a supervisory authority; and

8.8.5   promptly provide, at no charge, such assistance and additional information to the BBC to enable it to assess whether it has any obligations to communicate the personal data breach to affected data subjects.

## 9      FOIA & Confidentiality

9.1     The Employer shall, use its reasonable endeavours to procure that the Secondee shall not:

9.1.1    (except in the proper course of the Role, as required by law or as authorised by the Host) during the Secondment or after its termination (howsoever arising) use or communicate to any person, company or other organisation whatsoever (and shall use his best endeavours to prevent the use or communication of) any Confidential Information relating

 SECONDMENT AGREEMENT

to the Host that the Secondee creates, develops, receives or obtains during the Secondment. This restriction does not apply to any information that is or comes in the public domain other than through the Secondee's unauthorised disclosure; or

9.1.2 Make (other than for the benefit of the Host) any record (whether on paper, computer memory, disc or otherwise) containing Confidential Information relating to the Host or use such records (or allow them to be used) other than for the benefit of the Host. All such records (and any copies of them) shall be the property of the Host and shall be handed over to NEIL BREAKWELL, Manager at the Host by the Secondee on the termination of the Secondment or at the request of the Host at any time during the Secondment.

Nothing in this Agreement shall prevent the Secondee from disclosing information that they are entitled to disclose under the Public Interest Disclosure Act 1998, provided that the disclosure is made in accordance with the provisions of that Act and the Secondee has complied with the Employer's OR Host's policies from time to time in force with regard to such disclosure.

9.2 Where the Host has obtained any confidential information from any third party under an agreement which includes any restriction on disclosure known to the Employer or the Secondee, the Employer shall not, and shall use reasonable endeavours to procure that the Secondee shall not, without the prior consent in writing of the Host at any time (whether during or after the term of this Agreement) infringe such restrictions.

9.3 The Host recognises that, if FOIA is applicable, the Employer may be required to release information whether it is held by the Host, the Employer or by another person on behalf of the Employer. If the Employer receives a FOIA request for information and requires assistance in obtaining such information, the Host at their own cost ensure (and procure that any of its agents and sub-contractors so ensure) that the Employer's reasonable request for assistance is responded to promptly and in any event within 10 days of receipt.

9.4 The Employer shall:

9.4.1 keep any Confidential Information relating to the Host that it obtains as a result of the Secondment secret;

9.4.2 not use or directly or indirectly disclose any such Confidential Information (or allow it to be used or disclosed), in whole or in part, to any person without the prior written consent of the Host;

9.4.3 use its best endeavours to ensure that no person gets access to the Confidential Information from it, its officers, employees or agents unless authorised to do so; and

9.4.4 inform the Host immediately upon becoming aware, or suspecting, that an unauthorised person has become aware of such Confidential Information.

9.5 The Host shall:

9.5.1 keep any Confidential Information relating to the Employer that it obtains as a result of the Secondment secret;

 SECONDMENT AGREEMENT

9.5.2 not use or directly or indirectly disclose any such Confidential Information (or allow it to be used or disclosed), in whole or in part, to any person without the prior written consent of the Employer;

9.5.3 use its best endeavours to ensure that no person gets access to such Confidential Information from it, its officers, employees or agents unless authorised to do so; and;

9.5.4 inform the Employer immediately upon becoming aware, or suspecting, that an unauthorised person has become aware of such Confidential Information.

## 10 Non-Competition

Each party agrees not to offer employment to or solicit the other's employees (except where an individual responds directly to a general recruitment campaign) nor use the services of any of the other's employees (either independently or via a third party) for a period of six months following the termination of the Secondment for whatever reason.

## 11 Management during the Secondment

11.1 The Employer shall continue to deal with any Management Issues concerning the Secondee during the Secondment Period, where relevant following consultation with the Host.

11.2 The Host shall provide any information, documentation, access to its premises and employees and assistance (including but not limited to giving witness evidence) to the Employer to deal with any Management Issues concerning the Secondee whether under the Employer's internal procedures or before any court of tribunal.

11.3 The Host shall have day-to-day control of the Secondee's activities but shall immediately refer any Management Issues concerning the Secondee that come to its attention to the Employer.

11.4 Both parties shall inform the other as soon as reasonably practicable of any other significant matter that may arise during the Secondment Period relating to the Secondee or their employment.

11.5 The Secondee shall continue to be eligible for sick pay, holiday pay and any absence entitlements in accordance with the Employment Contract, and shall remain subject to the Employer's approval and notification procedures. The Secondee is to take all accrued holiday (15.12 days) within the period of the Secondment and by the Expiry Date.

11.6 The Employer shall notify the Host of any dates on which the Secondee shall take holiday.

11.7 The Employer shall notify the Host if the Secondee is or shall be absent from work for any reason as soon as reasonably practicable.

## 12 Intellectual Property

12.1 The Employer hereby agrees that all IPRs in any work made or produced by the Secondee, whether alone or with anybody else, in connection with and during the Secondment Period,

                                         **SECONDMENT AGREEMENT**

upon payment of the Secondment Fees, shall be the property of the Host. In consideration of payment by the Host of the Secondment Fee to the Employer the Employer hereby assigns to the extent to which it is able and otherwise agrees to assign to the Host absolutely and with full title guarantee, and warrants that the Secondee has assigned and/or agreed to assign to the Employer absolutely and with full title guarantee, all IPRs (both existing at the date hereof and in the future) in any work made or produced by the Secondee, whether alone or with anybody else, in connection with and during the Secondment Period in all languages throughout the universe for the full period of such rights (including all rights to renewals and extensions thereof).

12.2   During the Secondment Period, the Employer hereby to the extent permissible by law waives irrevocably and undertakes to procure the same waiver from the Secondee, the benefits of any provision of law known as "moral rights" (including without limitation any right of the Employer or the Secondee under sections 77 to 85 inclusive of the Copyright, Designs and Patents Act 1988 and under any resale right arising from EU law) or any similar laws of any jurisdiction in which waiver is permissible.

12.3   The Employer hereby grants the Host a non-exclusive, royalty-free, non-transferable licence to use any agreed IPR of the Employer in any work made or produced by the Secondee which is in connection with and during the course of the Secondment.

12.4   Notwithstanding anything in this Clause 12 other than the licence in respect of any agreed IPR pursuant to Clause 12.3 the Host shall not have or obtain any rights in the IPR or other proprietary products, materials and methodologies of the Employer or its third party licensors.

12.5   The Host will not associate the name of the Employer with any work or of the Secondee in any oral or written communication with a third party without the Employer's prior written consent.

## 13   No Partnership

This Agreement shall constitute a contract for services between the parties and nothing in this Agreement shall constitute a partnership between the Employer and the Host, nor create the relationship of employer and employee between the Host and the Secondee.

## 14   Notices

All notices which are required to be given pursuant to this Agreement shall be in writing and shall be sent to the address of the recipient set out below in this Agreement or such other address in England as the recipient may designate by notice given in accordance with this Clause 14. Any such notice may be delivered by hand, by first class pre-paid letter, by fax confirmed by first class post or by email which has been received, as evidenced by receipt by the sender of a read receipt and any such notice shall be deemed to have been received when delivered or, if by first class post, 48 hours after posting.

BBC
Portland Place
London W1A 1AA



SECONDMENT AGREEMENT

And OCTOBER FILMS, BENWELL STUDIOS, 11/13 BENWELL ROAD, LONDON N7 7BL

## 15 Amendments, Waivers and Unenforceability

15.1 The failure of either party to exercise or enforce any right conferred upon it by this Agreement  shall not be deemed to be a waiver of any such right or operate so as to bar the exercise or enforcement of such right at any time thereafter, as a waiver or another or constitute a continuing waiver.

15.2 Any amendment or variation of this Agreement shall only be made by written agreement of both parties.

15.3 The unenforceability of any single provision of this Agreement shall not affect any other provision.  Where such a provision is held to be unenforceable, the parties shall use their best endeavours to negotiate and agree upon an enforceable provision which achieves to the greatest extent possible the economic, legal and commercial objectives of the unenforceable provision.

## 16 Rights of Third Parties

This Agreement shall not create, or infer any rights under the Contracts (Rights of Third Parties) Act 1999 which are enforceable by any person who is not a party to the Agreement.

## 17 Counterparts

This Agreement may be executed in any number of counterparts, each of which, when executed, shall be an original, and all the counterparts together shall constitute one and the same instrument.

## 18 Governing Law

This Agreement shall be governed by and construed in accordance with the laws of England and each of the parties hereto submits to the exclusive jurisdiction of the English courts as regards any claim or matter arising under this Agreement.

## 19 Entire Agreement

Each party on behalf of itself acknowledges and agrees with the other party that this Agreement and any documents referred to in it, constitute the entire agreement and understanding between the Employer and the Host and supersede any previous agreement between them relating to a Secondment.

**Signed by**

**Signature**…………………………..

**Name**……………..………….

**For and on behalf of**

**B B C**                              SECONDMENT AGREEMENT

the British Broadcasting Corporation



Signed by

Signature.............................................

Name……………………………………..

For and on behalf of

OCTOBER FILMS



**Appendix 1**

**Role of Secondee and Services to be provided:  Producer, "Panorama: Trump"**