## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

PRESIDENT DONALD J. TRUMP,
An individual,

*Plaintiff*,

v.

BRITISH BROADCASTING
CORPORATION a/k/a BBC, BBC
STUDIOS DISTRIBUTION LIMITED,
and BBC STUDIOS PRODUCTIONS
LIMITED,

*Defendants*

Case No. 1:25-cv-25894-RKA-EAL

## STATEMENT OF INTEREST BY THE UNITED STATES OF AMERICA

**INTRODUCTION**

This case concerns allegations by President Trump, in his personal capacity, that the editing of a documentary about him produced by the British Broadcasting Company ("BBC") in 2024, while he was a private citizen, constituted defamation or an unfair trade practice under Florida law. The BBC chose, as part of its defense of the lawsuit, to pursue dozens of third-party subpoenas,[1] including ones to numerous Federal Government entities and officials, purportedly in compliance with the relevant agencies' regulatory processes. The Supreme Court recognized in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), that the Federal Government has the authority to regulate the disclosure of information by federal employees in litigation. Pursuant to 28 U.S.C. § 517, the United States of America respectfully submits this statement of interest regarding the BBC's subpoenas, which are the subject of a discovery hearing before this Court set for July 21, 2026. ECF No. 61.

Parties seeking to obtain information from government agencies must explain their need for the information and comply with the agencies' relevant *Touhy* regulations. BBC's subpoenas fail to meet the relevant legal standards. The subpoenas do not adequately explain the BBC's need for the requested documents, and do not reflect consideration of voluminous public releases of materials by federal entities and individuals that would constitute a more convenient, alternative source of information. Should the Court permit any of the subpoenas to proceed in some fashion, it should permit the respondent federal entities to raise issues

---

[1] The subpoenaed Executive Branch agencies are: U.S. Attorney's Office, District of Columbia; Federal Bureau of Investigation (FBI); National Security Division (NSD); National Park Service (NPS) (a component of the Department of the Interior); National Security Agency (NSA); Department of War (DoW); Department of State (DOS); United States Postal Service (USPS); Office of the Chief Postal Inspector; and the National Archives and Records Administration (NARA). In addition, two entities that are organized under Article I, the Architect of the Capitol and the Government Accountability Office (GAO), received documents subpoenas from the BBC. Current and former employees of the Executive Office of the President and Department of Justice (DOJ) also received subpoenas.

specific to the BBC's requests, according to their respective *Touhy* processes, and consistent with whatever limitations this Court imposes on the scope of discovery.

## BACKGROUND

### I.      The *Touhy* Framework

The Supreme Court has long recognized the authority of federal agencies to regulate the disclosure of information by their employees. In *Touhy*, the Supreme Court held that a federal employee could not be held in contempt for refusing to produce subpoenaed documents, where his refusal was based on regulations prohibiting the disclosure of official information without prior authorization. *Touhy*, 340 U.S. at 468. Nor did such regulations invade the courts' authority to determine the admissibility of evidence. *Id.* at 468-70.

Today, regulations implementing *Touhy* govern disclosure of official agency information by federal employees and agencies, including the third-party agencies served with subpoenas in this case. *See, e.g.,* 28 C.F.R. § 16.21 (DOJ's Touhy regulations). The regulations prohibit current and former agency employees from disclosing official information absent express agency authorization. *See, e.g., id.* § 16.22(a).

Litigants must comply with *Touhy* regulations to obtain documents from federal entities in litigation. *See Smith v. Cromer*, 159 F.3d 875, 879-80 (4th Cir. 1998); *United States v. Wallace*, 32 F.3d 921 (5th Cir. 1994); *United States v. Bizzard*, 674 F.2d 1382 (11th Cir. 1982). In responding, agencies must consider whether "disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose"—here, the Federal Rules of Civil Procedure. *See, e.g.,* 28 C.F.R. § 16.26(a)(1) (DOJ Touhy regulation). They must also consider whether:

- Disclosure is appropriate under the substantive law concerning privilege.
- Disclosure would violate a statute . . . or a rule of procedure, such as the grand jury secrecy rule, [Fed. R. Crim. P. 6(e)];
- Disclosure would violate a specific regulation;
- Disclosure would reveal classified information, unless appropriately declassified by the originating agency,
- Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,

- Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,
- Disclosure would improperly reveal trade secrets without the owner's consent.

*See, e.g.*, 28 C.F.R. §16.26(a)(2), (b)(1)–(6). Although there are variations in agencies' *Touhy* regulations, they all fundamentally require a requestor to demonstrate need for the records and show disclosure is consistent with the agency's regulations.

## II.   Publicly Available Records Regarding January 6, 2021

The events of January 6, 2021 have been the subject of extensive investigation and inquiry. As a result, many agencies have published records related to January in their FOIA Reading Rooms, as noted in Table 1, below.

**Table 1: Examples of Government Releases of January 6 Records**

| Agency | Link |
|--------|------|
| FBI | https://vault.fbi.gov/united-states-capitol-violence-and-related-events-of-january-6-2021 |
| DOJ | https://www.justice.gov/oip/available-documents-oip#recent  (multiple links available under 2020 and 2021 tabs) |
| DHS | https://www.dhs.gov/sites/default/files/publications/fps_jan_6_released_records.pdf |
| NPS | https://www.nps.gov/aboutus/foia/foia-frd.htm |

Moreover, third parties have also made documents produced by the Federal Government in response to FOIA requests available in the public domain. *See, e.g.*, Just Security, *January 6 Clearinghouse*, https://perma.cc/ZPE3-F7MA ("Government Documents" tab).[2] Finally, the inspectors general of multiple agencies, including DHS and DoW, issued reports about their agencies' responses to January 6. Dep't of War Off. of the Inspector General, "Review Of The DoD's Role, Responsibilities, And Actions To Prepare for And Respond To The Protest

---

[2] Not all information provided through third-party websites are authentic government documents, and the Federal Government reserves the right to contest the authenticity of documents purportedly released by the Federal Government and posted on the Internet.

And Its Aftermath At The U.S. Capitol Campus on January 6, 2021" *available at* https://media.defense.gov/2021/Nov/19/2002896088/-1/-1/1/DODIG-2022-039%20V2%20508.pdf; Dep't of Homeland Security Off. of the Inspector General, "I&A Identified Threats Prior to January 6, 2021, But Did Not Issue Any Intelligence Products Before The U.S. Capitol Breach," *available at* https://perma.cc/7DCE-NQLU.

Congress also assembled extensive collections of materials regarding January 6. In particular, the January 6 Select Committee sought records from eight different Executive Branch agencies as part of its investigation. *See* Press Release, *Select Committee Issues Sweeping Demand for Executive Branch Records*, Aug. 25, 2021, https://perma.cc/7H27-DDUF. The House Select January 6 Committee publicly released many materials the Committee relied upon in its final report. GovInfo, *Select January 6 Committee Final Report and Supporting Materials Collection* (Dec. 22, 2022), https://www.govinfo.gov/collection/january-6th-committee-final-report ("Select Committee Collection"). The collection includes materials from the Departments of War, Justice, Interior, and Homeland Security, as well as the National Archives and nine of the subpoenaed individuals. Congressional reports also rely on disclosures to the Select Committee and public disclosures through FOIA. *See, e.g.*, U.S. Senate Comm. on Homeland Sec'y & Gov. Affairs, *Hidden in Plain Sight* (June 2023), https://perma.cc/68MR-9DSV.

### III.    The Complaint in This Case

Plaintiff Donald Trump, proceeding in his personal capacity, filed the operative Complaint on December 15, 2025. Compl., ECF No. 1. The Complaint concerns the editing of remarks made by President Trump on January 6, 2021, by the producers of a BBC *Panorama* documentary released before the 2024 general election. Compl. ¶ 105(a)–(c); *see also* "Trump: A Second Chance?", *IMDB*, https://perma.cc/6WBN-ANFK (noting release date of October 28, 2024). Plaintiff alleges that roughly one year after the release of the *Panorama* documentary, a British newspaper published an internal BBC whistleblower document that accused the BBC of "intentionally" editing the President's speech to "make it appear that [he]

4

explicitly called for violent action and rioting, and that he 'said something he did not.'" Compl. ¶ 6. The Complaint further alleges that after senior leadership at the BBC resigned over their role in the documentary, *id.* ¶ 45, the BBC issued a written apology to Plaintiff, stating that the editing "unintentionally created the impression of a single, continuous section of your speech, rather than excerpts from different points in the speech," that "gave the mistaken impression that you had made a direct call for violent action." *Id.* ¶ 48 & Ex. B.

The Complaint asserts claims under Florida common law for defamation *per se* and for a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Compl. ¶¶ 104–19. "[F]alse statements which suggest that someone has committed a dishonest or illegal act are defamatory per se." *Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1541–42 (M.D. Fla. 1993) (citation omitted); *see also Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 457 (Fla. Dist. Ct. App. 1999) (*per se* doctrine applies to "conduct or a condition incompatible with the proper exercise" of a person's responsibilities). FDUTPA claims require "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985–86 (11th Cir. 2016); *accord City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008).

## IV.   The BBC Serves Dozens Of Subpoenas In This Case While Its Motion to Dismiss Is Pending

The United States is aware of forty-eight[3] third-party subpoenas that the BBC served in this matter between May 5 and May 20, all seeking documents related to the events of January 6, 2021. Several of the subpoenas are directed to current or former employees of the Executive Office of the President or the Department of Justice. Eleven of the subpoenas were addressed to government entities, including nine Executive Branch agencies or components thereof, and two Legislative Branch entities. The subpoenas broadly seek documents relevant to the agencies' consideration of security issues during the lead up to January 6, 2021.

---

[3] Although the pending motion concerns forty-seven subpoenas, the parties' accounting of the subpoenas appears to omit a subpoena served on former Attorney General Barr.

For example, the BBC subpoenaed from the Department of the Interior, which includes the National Park Service, "All Communications or Documents created or sent by" the Park Service or its law-enforcement arm, the U.S. Park Police, "Related to the potential of planned demonstrations, potential organized violence, or protests in the Washington, D.C. area on January 6, 2021." NPS Subpoena, ECF No. 61-2, pg. 115.[4] FBI's 11-request subpoena seeks all documents and communications from the Washington Field Office about violence and the use of weapons on January 6; all documents and communications referenced in reports prepared by field offices in New Orleans and Norfolk about protest planning activities, as well as communications related to these reports involving the Washington DC area's Joint Terrorism Task Force; documents and communications from the National Threat Center about plans "to use the U.S. Capitol tunnels to confront U.S. members of Congress"; documents and communications received from other law enforcement agencies; and documents and communications from FBI's Critical Incident Response Group.  ECF No. 61-2 at pgs. 598–600. All requests define terms such as "Communications," "Documents," and "Related" or "Relating to" broadly. *Id.* at pg. 113 ("'Relating' means concerning, relating to, referring to, describing, showing, evidencing, reflecting, containing, identifying, involving, and constituting."); *id.* at pg. 112 ("'Document' shall be interpreted in the broadest sense possible . . . ."); *id.* at pg. 111–12 ("'Communications' means any matter of receiving or transmitting information . . . .").

## V.     The Parties' Joint Motion for a Hearing Regarding the Subpoenas

On June 3, the parties to this case filed a joint motion seeking a hearing on the issue of the BBC's third-party subpoenas. ECF No. 61. Plaintiff seeks a protective order, pursuant to Fed. R. Civ. P. 26(c), from the subpoenas, as well as sanctions against the BBC. *Id.* The BBC opposes the relief sought. *Id.* at 4–5. The Court has set a hearing on the motion for July

---

[4] Because the versions of the subpoenas filed with the Court are in a single, 1,223 page attachment, this Statement will refer to the pleading by using the pagination in the upper right-hand corner of the ECF filing.

21. The United States filed a Notice of Potential Participation in this matter on June 26, 2026.[5] ECF No. 91. Because the United States has an interest in the Court's determination of whether the BBC's subpoenas are proper, it sets forth here its views on the BBC's subpoenas.

## DISCUSSION

Plaintiff has moved for a protective order from the BBC's subpoenas. "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending," and, "for good cause," the Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," by "forbidding" or otherwise limiting the disclosure, or by "prescribing a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P. 26(c). In addition, the Court "must limit the frequency or extent of discovery otherwise allowed by these rules" if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* 26(b)(2)(C)(ii).

**VI.      The BBC Cannot Demonstrate That Its Subpoenas Are Relevant and Proportional to the Needs of this Case**

A showing of relevance is among the threshold requirements of a proper *Touhy* request. For instance, the Department of the Interior requires requestors to "[d]escribe the relevance of the desired testimony or records to your proceeding." *See, e.g.,* 43 C.F.R. § 2.284(b) (Interior). Other agencies have similar requirements.[6] Some agencies assess relevance by looking to the governing standard in the court where the subpoena issued—here, Federal Rule

---

[5] The BBC wrongly suggests the United States has a conflict of interest in filing this statement. *See* ECF No. 93. Plaintiff is suing a non-U.S. government entity in his personal capacity over a documentary the BBC released while Plaintiff was still a private citizen. *See* Compl. § 105. It was the BBC, not Plaintiff, that chose to seek third-party discovery from the Federal Government.

[6] For the *Touhy* regulations of other entities, *see* 32 C.F.R. § 97.1, *et seq.* (DoW); 22 C.F.R. § 172.1, *et seq.* (State); 39 C.F.R. § 265.11, *et seq.* (USPS); 6 C.F.R. § 5.41, *et seq.* (DHS); 36 C.F.R. § 1251.1, *et seq.* (NARA); Architect Of the Capitol Order 38-2 (Aug. 14, 2015), https://perma.cc/D73A-TYJ3. GAO follows rules of court in responding to subpoenas, *see* 4 C.F.R. § 82.1–2, but also has unique litigation interests such as the Speech and Debate Privilege, U.S. Const. Art. 1, § 6, Cl. 1, that may impact its responses to subpoenas.

of Civil Procedure 26(b)(2). *See, e.g.*, 28 C.F.R. § 16.26(a)(1) (DOJ).

*Touhy* regulations also require agencies to balance burden on their operations with the requestor's need for the information at issue. *See* 43 C.F.R. § 2.288(c)(7) (Interior). Similarly, the rules of this Court require discovery to be both relevant and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Proportionality concerns include the importance of the requested discovery, the parties' relative access to the information, and 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Taylor v. Farm Credit of N. Fla. ACA*, No. 21-13807 (non-argument calendar), 2022 WL 4493044, at *3 (11th Cir. Sept. 28, 2022) (quoting Fed. R. Civ. P. 26(b)(1)); *see also Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Jordan v. Commissioner*, 947 F.3d 1322, 1337 (11th Cir. 2020) (discussing *Wiwa* with approval). The Court may limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

BBC argues that Plaintiff "must prove that he did not foment or incite the January 6 Capitol riot" in order to prevail on his claims, ECF No. 61 at 4 (citing Compl. ¶ 44), and that he "cannot now prevent Defendants from seeking records that would shed light on his true knowledge, intent, and state of mind in delivering his speech at the Ellipse." *Id.* In cover letters attached to the subpoenas, the BBC explains its defense is based on the contention that the BBC did not "misportray[] [President Trump's] role in the events of January 6, 2021." *See, e.g.*, FBI *Touhy* Request, ECF No. 61-2 at pg. 587. As such, BBC argues "it is highly relevant . . . whether the government was aware of credible threats of violence tied to the events, including the certification of the election and the Stop the Steal rally, what the nature of those threats were, how individuals communicated those threats, and whether they associated their actions with Plaintiff or any statements he made leading up to the Stop the Steal rally." *Id.*

On the contrary, defamation law requires proof that the defendant made a false statement that injures the plaintiff's reputation. *Shaw*, 818 F. Supp. at 1541–42. Here, the allegedly false statement is the BBC's editing of the Plaintiff's speech that, as BBC has

conceded, portrayed him as making a "direct call for violent action." Compl. ¶ 48. Although truth is a defense in defamation litigation, discovery "should be 'directly relevant to establishing a truth defense,' and a defendant should not be allowed to engage in a 'fishing expedition'" beyond what is needed to advance such a defense. *Blasi v. Simonetti*, No. 05-80231, 2005 WL 8156013, at *2 (S.D. Fla. Nov. 10, 2005) (quoting *Perrone v. CBS, Inc.*, No. Civ. A. 96-110, 1997 WL 863266, at *2 (D.N.J. Mar. 20, 1997)).

Moreover, even if the requests have some marginal relevance to the question of whether the BBC made false and defamatory statements about the Plaintiff, the burdens they impose are disproportionate to the needs of this case. BBC's subpoenas task a dozen federal entities and nearly three dozen individuals with searching for and producing materials related to January 6, 2021 that have little bearing on the Complaint's allegations. Instead, the BBC has cast a wide net for all documents "relating" to the actual subject matter of the requests, thereby making it difficult to set reasonable parameters on any search. *See TIC Park Ctr. 9, L.L.C. v. Cabot*, No. 16-24569-cv, 2017 WL 3034547, at *5 (S.D. Fla. July 18, 2017) (collecting cases where courts have held the terms "concerning" or "relating to" in discovery requests are inappropriate). Moreover, because the requests were made without regard to what information each respondent agency or official might possess or has already published on January 6, the subpoenas are cumulative and duplicative, both individually and collectively. Finally, the requests fail to account for pending motion practice in this Court, including the BBC's motion to dismiss and many other unresolved discovery disputes, that will shape the contours of relevant and proportional discovery in this case.

II.   **The BBC Did Not Properly Consider Other Sources Of Discovery, Particularly Documentation Already In The Public Domain**

Non-parties "have a different set of expectations" than parties, and "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" for a particular form of discovery. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). Agency *Touhy* regulations reflect this concern by

requiring consideration of a requestor's "ability to obtain the testimony or records from another source." *See, e.g.,* 43 C.F.R. § 2.288. The question of "whether subpoenaed materials are available from another source, such as from public records or from a party in the lawsuit, as opposed to the subpoenaed non-party," is an important consideration in determining "undue burden" under Civil Rule 45(d)(3)(A)(iv). *Bogus v. City of Birmingham*, No. 2:17-cv-00827, 2019 WL 13268139, at *3 (N.D. Ala. Mar. 7, 2019).

The BBC contends the documents it seeks "would only be obtainable through this Request." ECF No. 61-2, pg. 586 (FBI request cover letter). But there is no evidence in the BBC's requests that it considered public sources of information prior to issuing the subpoenas. For instance, the BBC's FBI subpoena seeks two memoranda prepared by field offices in New Orleans and Norfolk, ECF No. 61-2 at pgs. 599–600, but these memoranda have long been publicly available as part of Congress's release of materials. *See* GovInfo, "Potential for Violence in Washington, D.C. Area in Connection with Planned 'StopTheSteal' Protest on 6 January 2021," https://perma.cc/9E4V-4QHF; GovInfo, "Communication and Establishment of a Quick Reaction Force by USPERs Related to an Identified Protest in Washington, District of Columbia, on 6 January 2021," https://perma.cc/S4TD-ZQZB. The BBC apparently did not review the many different sources of FBI records that are already in the public domain. Likewise, the BBC requested NPS communications and documents related to January 6, but again did not tailor that request after accounting for the internal emails and permit approvals related to January 6 that are published on NPS's website. *See* Table 1, link for National Park Service (scroll to "National Mall & Memorial Parks"). The January 6 Select Committee also posted four Interior Department productions in connection with its report, totaling 72 pages. *See Select Committee Collection* (under "Supporting Materials – Documents on File with the Select Committee" tab, CTRL0000008398, CTRL0000008399, CTRL0000010872, CTRL0000050086).

The BBC's clear failure to account for these prior public disclosures means its requests impose an undue burden on the non-party Federal Government respondents. The BBC should

have examined and exhausted those sources of information before subpoenaing non-party federal entities and officials.

### III.   The Agencies Reserve The Right To Individually Respond To Subpoenas And Protect Privileged Or Sensitive Information If Plaintiff's Motion Is Denied

As explained above, the BBC has failed to show a need for the records requested proportional to the burdens its requests impose, in light of the voluminous disclosures about January 6 government agencies have already made and which the BBC failed to consider prior to lodging these requests. Nonetheless, should any subpoenas move forward, the federal agency respondents must have some opportunity to (1) assess what aspects, if any, of the BBC's requests are properly within the scope of discovery once the Court rules on this motion and the pending motion to dismiss; (2) collect and review documents potentially responsive to those requests; (3) apply any available privileges to that set of documents; and (4) produce any non-privileged, responsive documents in a format acceptable to the BBC. The BBC and the federal entities may also need the Court to issue a protective order to protect their sensitive, non-privileged information. *See, e.g.*, ECF No. 51 (protective order between the President and the BBC). Such a process is required by federal regulation. *See, e.g.*, 28 C.F.R. § 16.26(a) (DOJ attorneys must determine whether disclosure is appropriate under both procedural rules of court and "the relevant substantive law regarding privilege"); *id.* § 16.26(b) (noting types of demands that "in response to which disclosure will not be made by any Department official," including disclosures that violate a statute or regulation, disclose classified information, and disclose confidential sources). Agencies may also have unique statutory equities to invoke. *See, e.g.*, 44 U.S.C. § 2205(2) (restrictions on obtaining presidential records from NARA through judicial process).

These concerns will be specific to each federal agency or official respondent. In advance of a determination of what documents are potentially responsive to a properly scoped request, it is not possible for the Court to determine how the subpoenas ought to be adjudicated. As such, if the Court permits any subpoenas to move forward in some fashion,

it should provide the federal respondents sufficient time to respond to the BBC's requests such as fourteen days after resolution of this motion. Thereafter, and consistent with the *Touhy* process, each federal agency respondent and the BBC can endeavor to negotiate a resolution of the subpoena without further involvement of the Court, taking into account all relevant privileges and statutory protections.

DATED: July 14, 2026

Respectfully Submitted,

JASON A. REDING QUIÑONES
United States Attorney

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

MATTHEW JAMES FEELEY
Civil Chief
United States Attorney's Office for the
Southern District of Florida

*/s/ Michael J. Gerardi*
MICHAEL J. GERARDI
Senior Trial Counsel
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: 202-616-0680
E-mail: Michael.J.Gerardi@usdoj.gov

*Attorneys for the United States*