UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-25894-RKA

PRESIDENT DONALD J. TRUMP,

Miami, Florida

Plaintiff(s),

July 21, 2026

vs.

BRITISH BROADCASTING CORPORATION, *et al.*,

Defendant(s). Pages 1 - 134

------------------------------------------------------------

DISCOVERY HEARING
TRANSCRIBED FROM DIGITAL AUDIO RECORDING
BEFORE THE HONORABLE ENJOLIQUE A. LETT
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S): ALEJANDRO BRITO, ESQ.
IAN M. CORP, ESQ.
JALAINE GARCIA, ESQ.
MICHAEL MENA, ESQ.
BRITO, PLLC
2121 Ponce de Leon Boulevard
Coral Gables, FL 33134
305-614-4071
abrito@britopllc.com
icorp@britopllc.com
jgarcia@britopllc.com
mmena@britopllc.com

APPEARANCES (CONT'D)

FOR THE DEFENDANT(S): CHARLES D. TOBIN, ESQ.
BALLARD SPAHR, LLP
1909 K Street, NW
Washington, DC 20006
202-661-2218
tobinc@ballardspahr.com

SASHA A. DUDDING, ESQ.
BALLARD SPAHR, LLP
1675 Broadway
New York, NY 10019
646-346-8094
duddings@ballardspahr.com

TRANSCRIBED BY: Joanne Mancari, RPR, CRR, CSR
Court Reporter
jemancari@gmail.com

Thereupon,

the following proceedings were held:

THE DEPUTY CLERK: Calling case 25 Civil 25894, Judge Altman. President Donald J. Trump v. British Broadcasting Corporation, *et al.*

Will all parties announce for the record, beginning with the plaintiff.

MR. BRITO: Good morning, your Honor. Alejandro Brito on behalf of the plaintiff, along with my colleagues Ian Corp, Michael Mena, and Jalaine Garcia.

THE COURT: Good morning.

MR. BRITO: And also, just in the interest of disclosure, there is an individual from the Department of Justice by the name of Matthew Feeley that is in the gallery.

THE COURT: Thank you. Good morning.

MR. TOBIN: Good morning, your Honor. Charles Tobin, with the law firm of Ballard Spahr, here on behalf of the British Broadcasting Corporation.

MS. DUDDING: And Sasha Dudding on behalf of the BBC. Thank you.

THE COURT: Good morning, counsel.

So we are here this morning on discovery hearings related to docket entry No. 52, which is the joint motion for discovery hearing related to defendants' subpoena to produce financial records to the nonparty, The Donald J. Trump

Revocable Trust, on docket entry No. 57, the motion for discovery hearing related to plaintiff's responses and objections to defendants' first request for production and interrogatories, docket entry No. 79, which is the joint motion for discovery hearing related to plaintiff's responses and objections to defendants' first set of requests for admissions, as well as docket entry No. 61, which is a joint motion for discovery hearing on defendants' 47 subpoenas to third parties regarding January 6, and we can take those in that order.

You may have noted that I put docket entry No. 61 out of order and last related to the 47 subpoenas because at docket entry No. 96 there was the statement of interest by the United States of America, to which there is a response. So because that argument may contain other interests, we will save that one for last.

If at any point your argument bleeds, because some of this, of course, is related across motions, but most of it still relates to particular requests in each motion, but if you're blending into something else, just let me know.

So we will start with the joint motion for discovery hearing related to the subpoena to The Donald Trump Revocable Trust. That the court construes as the defendants' motion to compel, and so, defendants, you have the floor to argue that motion first.

MR. TOBIN: Thank you very much, your Honor. May it

please the court, Charles Tobin on behalf of the British Broadcasting Corporation.

Your Honor, the BBC is a public service nonprofit broadcaster first established as a public corporation under royal charter by King George V in 1927. It is headquartered in London, in the UK, and is principally funded through a license fee paid by UK households.

I am sure the court is aware, we are pending on a motion to dismiss before Judge Altman.

The first argument in the motion to dismiss is personal jurisdiction based on the fact that the BBC did not broadcast and did not transmit the documentary at issue, which is called President Trump's Second Chance, A Second Chance, did not transmit that broadcast into the United States.

Meanwhile, your Honor, we did move to stay discovery in the case early on. That motion was denied in February. So discovery has been ongoing or should have been ongoing in February. It's been entirely one-sided, just to frame, your Honor, the issues that cut across all of these motions today.

We cooperated fully as soon as Judge Altman denied discovery. We sat for six depositions, as asked, in April and May. We made weekly productions. We are up to production number ten, which will be coming out this week. We produced a total of 6,000 documents, totaling 87,000 pages.

By contrast, the plaintiff, President Trump, has

ignored our calls for documents. They made their first production on July 14. It consisted of 735 pages. Most of them were public, printed off the internet, according to the metadata, the week of July 1st.

Second of all, your Honor, after ignoring our -- they have ignored our request to schedule the President's deposition. I've been making that request for almost two weeks now and I have not been given a date yet.

Third, the President's trust, as the court is aware, has retained the same lawyers, Mr. Brito's firm, who are prosecuting the case for President Trump. They are refusing to provide any documents.

The President himself, number four, refuses to provide any financial records, and now the President has clearly instructed the Department of Justice to assert the United States' interest in preventing us from taking any discovery surrounding the circumstances of January 6, which is framed in the complaint as the event around which the alleged defamation claim has been brought.

so, your Honor, turning to the subpoena for the trust itself, this discussion is timely because just a few weeks ago the President filed his disclosure with the Office of Government Ethics for 2026. That disclosure showed that his income increased by at least $1.6 billion year over year, and we know that the sole beneficiary -- we subpoenaed the sole

beneficiary, who is Donald, Jr., Donald Trump, Jr.. Your Honor, we based our request for the trust disclosures on President Trump's allegations in the complaint. The complaint frames the track of discovery, as we all know, your Honor.

His complaint, at paragraph 100, alleges massive economic damage to his brand value and significant damage and injury to his future financial prospects.

In paragraph 101 he says: Without limitation, the value of his brand, properties, and businesses have diminished.

Your Honor, getting to the issue of bleeding over, obviously that will bleed over into some of the RFP issues that the court will hear next. Ms. Dudding is going to address those for the court.

But the President, in responding to our document request, personally himself refuses to provide any financial records. The OGE form and the SEC Statement of Beneficial Ownership of Securities that the trust files, the two sources we consulted in preparing the subpoena, provide only ranges of income. It doesn't tell you the precise numbers. It has caps on it so that, for example, if an asset is valued at more than 50 million, you only have to list that it is valued at at least 50 million. For income it's capped at 5 million.

So, for example, if the President's income went up from 50 million to 100 million year to year, we would not know that because in each form it would simply say 5 million in

increase in value or increase in income.

The form did give us the entities, the 400 entities, that we listed in the subpoena, and the forms did tell us that those are owned by the trust for the benefit of the President.

So we picked the categories of documents that will help us examine, as his complaint frames it, that, quote, without limitation, the value of the President's brand, properties, and businesses have been diminished by the 12 seconds within this one-hour documentary that was broadcast only by the BBC in the United Kingdom.

So we took his allegations in the complaint. We framed our discovery requests based on public information about where the President's assets and where the President's income derives from. That has been reinforced, our interest has been reinforced by the Office of Government Ethics' filing just a few weeks ago showing that his income went up by over $1 billion.

So, your Honor, we subpoenaed the trust valuations and tax returns, schedules of assets held by the trust, documents showing the change of value of the trust, documents that we can examine about the profits and revenues for the affiliated entities that are held for the President's benefit within the trust, and because the President flagged his brand in the complaint as a category of damages, we asked for the income and value for all of the intellectual property branded in President

Trump's name and held by the trust. And, of course, again, your Honor, we know that those values, we know from his own disclosures, that most of the values of most of those items increase. We just don't know the amounts.

So, your Honor, obviously the President instructed the trust and hired their lawyers to defend the trust on this subpoena with flat refusal, in boilerplate objection after objection, to provide any documents from the trust.

Your Honor, first of all, you should deny their refusal outright because it's a violation of the court's discovery order, which requires specificity in objecting to discovery on grounds of vagueness or overly broadness or unduly burdensomeness. Your order --

THE COURT: Apologies for interrupting. Have you all met and conferred on this and if so, was the vagueness objection raised and did you provide clarity as to what you meant?

MR. TOBIN: We were not asked to provide clarity.

We believe, your Honor, that we were specific enough, and we did discuss that we need items like profit-and-loss statements and income statements from each of these entities in order to turn them over to our own expert to present the court with accurate information about the value of the trust.

We asked them did they have anything more specific that they wanted to object to. For example, is there any

particular company, is there any particular category of request that we can talk about in a principal way and maybe reach some compromise on. We were told our objections speak for themselves; we were told they are specific enough; and we were told that no further narrowing on their end for their objections was going to be forthcoming, your Honor.

So we did make every effort, and we would have been willing to narrow if they had told us what, in particular, that they objected to. We would at least have considered it.

So, your Honor, as to each of the five objections that they referenced, not all of them are in the joint motion. Some of them are in their meet-and-confer letters with us.

First of all, they say that we are premature, and they base their prematureness on their theory that we are not entitled to any information until their expert witness reviews whatever documents the trust chooses to give them, President Trump's expert witness, whatever documents Trump wants to give them, and then issues his report.

Your Honor, the expert witness reports, first of all, are due in roughly six weeks, according to Judge Altman's scheduling order. They are due on September 2nd.

Second of all, I'm aware of no principle and I'm aware of no case law, and they cite no case law, that says that a party may withhold discovery until their expert witness takes a look at it, curates the information, and then opines on it.

Under the way they have articulated it, the only documents that would be made available to us are those that were made available to their expert.

So in other words, if they loaded the deck and gave their expert only documents that showed significant losses by President Trump, we would be utterly unable to take a look at any records that offset or show a vast imbalance.

Indeed, again, your Honor, according to the OGE report, President Trump's income increased in the year since the broadcast in England of over $1 billion.

So, your Honor, they can't cherry-pick some entities as being injured and leave other entities aside that are clearly thriving.  It is the overall economic picture of the plaintiff that is relevant, and no rule authorizes them to hold back on discovery until their expert.

We may want to have an affirmative expert of our own. I will not know that until I see the documents.  And, if I have to wait until September 2nd to see the documents, I will have missed Judge Altman's deadline for an affirmative expert report and only be left with a rebuttal expert.

Your Honor, we rely on, significantly, on one of the cases they cite, which is *Exist v. E.S.Y.*  It is a Southern District of Florida case.  I believe it was Judge Valle, magistrate Judge Valle, who took a look at broad allegations of damages on plaintiff's financial status.

The party resisted. The nonparty, subpoenaed party, resisted. It was basically a trademark infringement claim and it was to their accounting firm, to the party's accounting firm. Very similar to the facts here.

The court noted that there was a broad claim of substantial damages to business as well as general and special damages, including reputation and goodwill. The magistrate judge held that these allegations necessarily put plaintiff's financial status before, during, and after the wrongful conduct at issue, and so the plaintiff's financial information is relevant and generally discoverable in that case.

The court noted: To find otherwise would be to permit the plaintiff to hold defendants liable for the actual damages to its business without affording defendants a reasonable opportunity to explore the factual damages of the claim.

We also rely on *Cayago Americas v. Heinen*, also magistrate Judge Ruiz's case, also from the Southern District of Florida, patent infringement and breach of contract claim.

In their briefing the plaintiff selectively cites the language from the judge's order that says that, quote, a request for any and all documents regarding plaintiff's prior patent enforcement efforts is disproportionate to the needs of the case.

They left out the very next sentence in which the judge ordered that plaintiff shall produce documents sufficient

to identify prior enforcement actions for the two patents at issue, and then the judge left the door open once that discovery was forthcoming to come back and petition the court if they had any followup requests.

We're asking the court only for documents related to President Trump's finances during the interval before and after the broadcast. We're only asking for it in connection with the impact on this single broadcast. In fact, directly on point here in the *Cayago Americas* case -- again, they neglected to point this out to your Honor in their papers -- the judge held, quote, the court finds that the requested financial discovery is relevant to the issue of plaintiff's damages on both its patent infringement and its breach of contract claims.

So the takeaway from that case is discovery was ordered on the issues that were related to the allegations of the complaint on financial damages in the face of a broad discovery, a broad allegation of business losses.

Your Honor, so that takes care of prematureness and it also bleeds into the relevance argument, and, again, we urge the court, we request the court to take a look at paragraphs 100 and 101 in the way they have framed their complaint.

So, your Honor, it is the President's burden to establish that his assets and revenues were diminished by this 12 seconds in a broadcast that was displayed to an audience in the United Kingdom, and we're entitled to meet that evidence

with evidence of what his finances were before and after that broadcast, and we know that the evidence relies within the trust. So it is not only not premature, it is also directly relevant.

It is also not, as they argue, disproportional. Your Honor, again, we are not the ones who pleaded that without limitation the President has been damaged by this UK broadcast.

It is also not disproportional because it is hard to imagine that this would be a very heavy lift for the trust, your Honor. It is logical to assume that with the President's filing deadline for the Office of Government Ethics and having to file a sworn representation with the federal government that the trust had already prepared and has already prepared in 2025 and in 2026 much of the documents in order to fulfill its obligations for that report, and, indeed, as a fiduciary I would imagine that trustee, Donald Trump, Jr., has a duty to maintain the records for each of these entities for transactional auditing and tax purposes.

Moreover, your Honor, we know the President has gone through a number of litigations in the past year. The criminal prosecution in New York arising out of his business entities. He was also ordered to pay a judgment to E. Jean Carroll on the verdict for sexual abuse and defamation.

In both cases I would imagine that his financial managers, including those at the trust, had to compile a lot of

this same information. And again, your Honor, we have cabined our request as narrowly as we could on the basis of the President's own allegation in the complaint. So it is not disproportionate.

Your Honor, they also argue that the time for compliance is unreasonable, that we're requesting tens of thousands of documents, at the time they filed the motion, they said in 30 days.

Your Honor, that is not an appropriate ground for a wholesale refusal. They did not ask us in meet and confer for more time to comply. And now they have had more than 90 days. We requested compliance on this subpoena on April 30th.

Had they done their job appropriately, frankly, your Honor, on February 12, by February 12, when Judge Altman denied the discovery stay, they would have been preparing to prove their case and preparing to turn over obvious documents that we were going to be interested in.

So we were always willing to be flexible on time frames, but at this point, your Honor, we only have until October 20 for our discovery cutoff, and September 2nd is our expert witness deadline.

Again, your Honor, there has been such an imbalance in this case. We have produced 87,000 pages of documents. 6,000 documents themselves, nine productions, and we began our productions just four days after Judge Altman entered the

protective order in this case, which, by the way, we sent them the protective order in February and they ignored it until April.

So, your Honor, there have been delays in this case entirely on President Trump, and they've just dragged their feet. As I mentioned, your Honor, they began a sham production a week ago with 735 pages, that the metadata shows us they pulled from the internet, including articles about this lawsuit.

So, your Honor, at this point the time frame we're focused on is September 2nd for our expert witness deadline and October 20th for the cutoff of all discovery in the case. So whatever pressure results from a ruling of this court in our favor today, that is entirely on the President, the trust, and their counsel.

Finally, your Honor, they argue that this is carte blanche discovery of hundreds of nonparties. It's really wrapped up with their overall fishing expedition and relevancy arguments. We're taking the President at his word, your Honor. He is prosecuting a claim, without limitation for damages to all his brands, properties, and businesses. He framed this claim indiscriminately and he opened that door.

If they had approached discussions with the goal of getting to a narrower set of requests, we would have been happy to comply, with at least our obligations to meet and confer in

detail in the court's discovery order and we might have been able to reach an agreement. But at this juncture, this is hardly carte blanche, is hewed to the President's request without limitation.

If I may just conclude by noting for the court, last night at about 8:00 we received the President's updated initial disclosures in the case. The original initial disclosures were served on us in February. They mirrored the allegations of the complaint in terms of damages.

The President in the new initial disclosures has stated that his damages theory are now reputational repair and mitigation cost -- I'm sorry -- reputational repair and mitigation costs and punitive damages. He claims that any other damages, because he pleads a claim for defamation per se, are presumed, and I think by that he thinks he does not have to establish damages.

First of all, that is wrong as a matter of law. Under *Gertz v. Welch*, Supreme Court case, actual damages must be proven by every defamation plaintiff.

Under *Mid-Florida Television v. Boyles*, in the Florida Supreme Court, Justice Overton, with a concurrence by Justice Ehrlich, held that there is no such thing in a media defamation case as defamation per se as a matter of presumed damages.

So they still have to prove their damages up in any defamation case, especially one involving a public official.

Your Honor, they still say, regardless of any attempt -- and Mr. Brito and company may argue that they have narrowed their damages claim. First of all, the complaint controls. We don't amend our complaint through damages discovery. We amend it through the regular course of process. We would argue it is too late for them to do that.

Second of all, they still say that the damage from this 12-second broadcast in the United Kingdom has caused plaintiff to suffer damages, including, but not limited to, reputational harm, leaving himself the flexibility to argue, essentially, any damages he pleases.

So we are disregarding for purposes of argument today that narrowing. We are paying close attention and have paid close attention to the unbridled allegations of the complaint.

Based on those allegations and based on the way the President has chosen to frame his complaint, we ask that the court deny, if it is a motion to quash, and if it is treated as a motion to compel, we ask the court to compel compliance with our subpoena within a reasonable, fast time frame, and we would propose to the court ten days given where we are in the case.

Your Honor, they keep saying in their disclosure after disclosure and in their discovery responses we are still in the early stages of discovery. We are not. We are in the twilight, heading into the twilight of discovery. So we need this information and we need it timely.

THE COURT: Thank you, counsel.

MR. TOBIN: Thank you, your Honor.

THE COURT: Attorney Brito, are you arguing for the trust?

MR. BRITO: I am, your Honor.

THE COURT: You have the floor.

MR. BRITO: Thank you.

May it please the court, your Honor heard a significant amount of argument with respect to the plaintiff's damages and what documents the plaintiff should be required to provide, yet the discovery motion that is before the court is a subpoena directed to the trust, not to the plaintiff.

There is a distinction that needs to be appreciated, that counsel seemed to have glossed offer in his presentation to the court, as to what documents should be required to be produced for purposes of establishing plaintiff's damages as opposed to the documents that are being sought from the trust, and those are two separate and distinct categories of documents.

The one thing that we have made abundantly clear to the defendants, despite the representation that was made to you that there was no good faith conversations with respect to narrowing some of these requests that have been made in the subpoena to the trust, we have made it clear to them in numerous communications, and we sought to do that with abundant

clarity when we amended our initial disclosures, to make it clear as to what the theory of damages is going to be with respect to what the plaintiff is seeking in this case, and that is entirely separate and distinct from what the trust possesses in its documents.

Your Honor, the subpoena that's been served by the defendants seeks --

THE COURT: Attorney Brito, are you suggesting that what the President claims is damages, starting in paragraph 97 of the complaint going through paragraph 103 of the complaint, under section Damages, the value of President Trump's personal brand alone is reasonably estimated to be worth tens of billions of dollars. Business ventures bearing his name generate hundreds of millions of dollars of annual revenue. Moreover, the injury to President Trump's business and personal reputation inflicted by these defendants in their efforts to falsely, maliciously, and defamatorily portray President Trump as a violent insurrectionist continue into the present, thereby causing massive economic damage to his brand value, and significant damages and injury to his future financial prospects.

Skipping to paragraph 101: President Trump's damages take the form of direct harm to his professional and occupational interests, including, without limitation, the value of his brand, properties, and businesses in severe

diminishment and tarnishment of his reputation as a politician, leader, and businessman in the eyes of the American public and around the world.

So based on these two paragraphs, the complaint framing the discovery, are we not looking at damage to the brand, including business ventures that bear his name, including not only his brand but properties and other businesses?

MR. BRITO: No, your Honor, and I will explain to you why.

THE COURT: OK.

MR. BRITO: The first few statements that you read from the complaint are accurate factual representations and actual accurate factual allegations, but they don't serve as the basis for claim for damages, and I will explain that very succinctly, as we have explained to the defendants.

Under well-established Florida law, there is only one plaintiff in this case. He is an individual. He may not pursue damages on behalf of entities of which he is associated with, owns, or has any interest in, in the current format that this case has been alleged.

THE COURT: Can you give me a case cite for this proposition.

MR. BRITO: *Amoco Oil Company v. Gomez*, your Honor. It is the Eleventh Circuit. The citation is 379 F.3d 1266.

Specifically, on page 6 of the decision, it reads: "Indeed, Florida law, the governing law in this case, does not permit an individual in Gomez's situation to bring an action for damages on behalf of a corporate entity."

It cites to a Florida Second DCA --

THE COURT: Wait. Wait. Wait. I can see that being the law, but here President Trump is bringing damages on behalf of himself. As I read this --

MR. BRITO: Nothing more.

THE COURT: -- it says, the value of his personal brand and all of his business ventures that bear his name and then goes on to talk about his brand, his property, and his businesses. That is him. That is not him on behalf of companies. That is him saying his brand on which he places onto these business and properties that he owns or he owns as beneficiary through his trust are damaged.

So if that is where you all are deriving his damage leading to, I presume, taking into the $5 billion that he is requesting in his complaint, how then, if you as plaintiff has to prove those damages, are you not looking to what you claimed, which is his businesses, his properties, and his brand?

MR. BRITO: I'm not. I'm making that representation to you, as we have made that representation to the defendants in our communications.

It is solely with respect to reputational injury that has been caused as a result of the defendants' conduct. We have made that clear, as clear as we can be.

THE COURT: So how are you proving up reputational damages?

MR. BRITO: We have an expert witness who is going to review the information, and I know much was --

THE COURT: What is the information that your expert is going to review?

MR. BRITO: The information is much about what the defendants were complaining about in terms of the documents that have been produced is, what information has been transmitted to the public as a result of the broadcast engaged in by BBC, in conjunction with those that viewed the BBC splicing of the video of the statements that were made by the president, how did that impact his reputation as an individual since he is the only person that is a party to this action. The trust is not a party to this action.

Again, I want to take a step back when I address the court on this point because this is a subpoena directed at the trust, as opposed to documents being requested of the plaintiff relative to the plaintiff's damages.

So that is why we have had such a disagreement with regard to the subpoena because the subpoena requests information from over 400 entities since 2019 that relate to

tax returns, assets, liabilities. It is not a finite limitation as counsel had argued to you in terms of their efforts to try to reasonably tailor this to the claims in this case.

They are simply taking the words that are in the complaint, which I acknowledge, they are in their, your Honor, but I am making the representation to the court, as I have made to the defendants, that this has been alleged and what it is now in terms of how the case has evolved is different, and they need to recognize that, but they seem unwilling to do so because they want to engage in this --

THE COURT: Well, because you haven't amended the complaint. I mean, the complaint -- can we agree on this point, that the complaint shapes the breadth of discovery and under Federal Rule of Civil Procedure 26, discovery is permitted on any nonprivileged matter that relates to the claims and defenses in the case.

MR. BRITO: I understand that.

THE COURT: No, I'm asking do you agree with that?

MR. BRITO: Yes. When I say I understand that, I meant to say I agree with the court. Yes.

THE COURT: So the claims and defenses of the case specifically in this section Damages talks about the diminishment of President Trump's brand and how that diminishment of his brand has caused extensive economic harms

insofar as it has harmed the properties and businesses that are under his brands.

So my next question is, the 400 entities that these subpoenas go to or that this subpoena goes to that the trust owns, are any of those not falling under the umbrella of his brand, properties, and businesses, and if so, which ones?

MR. BRITO: Well, let me take a step back in answering the court's question.

THE COURT: OK.

MR. BRITO: I appreciate what your Honor is saying with respect to the allegations of the complaint, but I am representing to the court and at this point given the posture of the case, where we are awaiting the court's ruling with respect to a motion to dismiss, we do not want to defer that, upset the schedule with regard to amending it.

I'm happy to amend by interlineation to not break the flow of what has transpired to make it abundantly clear to everyone, as much as we have made it abundantly clear to the defendants, that the damages are limited in a way that is different than when the case was originally filed because it's only going to be with respect to reputational injury.

The "including, but not limited to" language, the question your Honor just posed to me about which entities, none of those are going to be the basis of plaintiff's damages theory. It's going to be reputational injury caused by the

broadcast. That is going to be the extent of it.

If I need to interlineate, I'm happy to do so, your Honor, so we can clarify this, but your Honor's question earlier about the vagueness component and which entities, we explained to them the 400 entities that the trust owned. They know about it because they attached it as part of the subpoena. We said there is no way to limit what you are seeking because we are not traveling under the theory that you are trying to say that we are.

Again, I know they did it based upon what they have represented to the court. I understand your Honor's seeing the language of the complaint. But again, I just want to reiterate, what I have made clear to the defendants and I want to make it abundantly clear to this court, that that is not the theory of damage. So why are we having a conversation about something that will never happen.

That is one of the principal reasons why we have had this impasse with respect to the documentation and why we have argued that it is disproportionate to the case, because we have already told you that that is not what we are doing.

THE COURT: So am I understanding that you are conceding that the reputational damage I think that you're now trying to travel under had no diminishment of his brand, properties, and businesses?

MR. BRITO: I'm not acknowledging that that didn't

happen. I'm acknowledging and I'm admitting to the court --

THE COURT: Then if it did happen and that is still going to be a basis of the effect of this reputational damage, how is that not discoverable?

MR. BRITO: Because what I was going to say, your Honor, is even if there has been a harm to the brand, we are not pursuing that as part of our damages.

So I don't want to acknowledge that the brand has or has not suffered any injury, but I am telling the court that I am not going to leverage any such injury, to the extent it exists, as part of my damage claim. It is simply the reputational injury to the President, full stop.

THE COURT: And are you quantifying that reputational injury?

MR. BRITO: Yes. We have an expert witness, and how you get that is, I think, a question your Honor had posed to me a few minutes ago, which is the expert witness is going to engage in the analysis that a normal defamation expert will employ for purposes of assessing whether or not there was any reputational injury and what is the cost to, the corrective action that needs to be employed in order to correct the harm that was caused. That is how this expert, to my understanding, is going to quantify those damages.

Why is it that we produced documents to the defendants with respect to the reporting about the defendants' conduct,

because that is what was published to the public that caused the injury, and that is one of the grounds upon which the expert is going to rely upon to come up with that theory.

Counsel argued that he feels it is improper for the trust to provide documents to the expert, that those documents are not provided to the defendant. That is completely made out of whole cloth because there are no documents that the trust is going to be providing to the expert.

I am making that representation to you again as well because that was simply an argument that was used to try to leverage a favorable ruling from the court. That is not based on any fact whatsoever. It is simply untrue to argue that the trust is going to be providing documents to the expert. They are not. It is going to be the statements that the BBC made, the splicing of the video, and the reporting that occurred thereafter by the BBC, as well as others that harmed the President's reputation, full stop.

It is a far more narrow scope of what this case is about not only factually, your Honor, we are talking about a very, very limited, 12-second splicing of a 70-minute video and we are talking about damages that are very carefully tailored.

I appreciate your Honor's concern that the complaint doesn't frame it that way, but I am trying to correct that by making the representations that I am, the acknowledgement that I am, as well as the offer to amend by interlineation, but I

don't want to engage in more motion practice to formally amend the complaint and then the process starts anew with respect to a motion to dismiss. I want to keep that on track as best as possible.

THE COURT: OK. You can continue.

MR. BRITO: Thank you, your Honor.

You heard arguments from the defense that the information that they are seeking relates to the President's income, the trust disclosures, the trust. Again, I don't want to belabor the point because I think your Honor understands where I am coming from. None of that is relevant to the damage theory, and the amount that is being sought by the President is not going to be captured by the information that is being sought in any of the trust instruments and the amendments that are being sought by the defendants as well as any documents that value the trust, including their request that the trust produce its tax returns, documents that show all its assets, all the assets that are owned by the trust, all documents relating to the trust's sources of income, all documents that show annual income of each entity owned by the trust, all documents reflecting the trust's ownership interest in contracts. That sweeping nature of the request entirely belies the argument that you heard from counsel that these were carefully tailored requests. They weren't.

Irrespective of the presentation that I have made to

you, your Honor, the way that this subpoena was couched was entirely designed to make it oppressive toward the trust to have to respond in such blanket fashion.

Now that I have really made it clear to, hopefully I have made it clear to your Honor in the way I thought I had made it clear to the defendants, there is no basis under proportionality standards for the subpoena to stand as it is currently drafted.

In addition to what I just mentioned to you, your Honor, the subpoena seeks wholesale production of the trust's financial ownership, income, tax, contractual, and asset information without any specific, obviously temporal scope but, more importantly, without any subject matter restrictions that are related to this particular action. They have asked for it all.

THE COURT: Did I misread the subpoena when I saw that the temporal scope is 2019 through the present?

MR. BRITO: Right. There is no relationship between, beyond that with respect to what they are trying to capture. They simply went back seven years and asked for the production of all of this information that I am recanting to you or recounting to you without any relevance to the fact that these statements were made far later in time and would not be borne or would not have any relevance to the actual harm caused to the President from the moment that they published the broadcast

going forward.

Going back to 2019, I think that temporal net that they've cast is really not one at all. It is very far reaching. It is beyond what would be reasonable. And not only is --

THE COURT: What would you suggest would be a reasonable temporal scope to be able to do a comparison to any reputational -- to do a comparison as to what President Trump's reputation is as the way that you intend to quantify that damage prior to the broadcast and after the broadcast?

MR. BRITO: I think the appropriate inquiry starts with an appropriate request. I don't think a request to the trust, a third party to this action, has any place in the conversation that you're --

THE COURT: But I'm asking about a temporal scope.

If I were to disagree with you and find that a request to the trust, where all of the assets lie, the business ventures, properties, were to be appropriate, but I would agree with you that the temporal scope may be too broad, how would you suggest that that be narrowed? What do you believe is a reasonable temporal scope?

MR. BRITO: I am going to have a very difficult time answering the court's question with a number, and I will explain why.

THE COURT: OK.

MR. BRITO: The damages that are being sought and the defense to those damages will not be captured by any particular time frame for documents relating to the trust since the trust is not seeking to be compensated; it is not claiming that it was harmed in this case. It may have been, but I'm not seeking it. I am not alleging it. I am not pursuing that claim. So establishing an arbitrary date is just that, establishing something for purposes of a subpoena to a nonparty that doesn't have any relevance to the damage claim.

Where this ends up, your Honor, is 400 entities having to marshal information and provide information in response to the subpoena on things that, again, it is disproportionate, it is not relevant. They are going to be arguing and attacking the fact that these entities either profited or didn't profit or had success or didn't have success, when at the end of the day when we get before the court none of that is ever going to see the light of day, none of that is going to be presented to this court or to a jury as to what the damages are being sought.

THE COURT: Because of an amendment that you are going to make.

MR. BRITO: Pardon me?

THE COURT: Because of an amendment that you are going to make.

MR. BRITO: I'm happy to do so, yes.

THE COURT: Not because that is not what was in this original complaint.

MR. BRITO: 100 percent, your Honor. Yes.

In short, your Honor, the defendants are seeking third-party discovery which we believe is untethered to the damage theory that we let them know we intend to employ.

The arguments that you heard from counsel that we are operating under this misimpression that we don't have to prove damages, again, is an argument created out of whole cloth. That is not something we have ever argued to the defendants.

Mr. Tobin presented to you with case law that deals with points that I don't disagree with, but we have never raised. We have never alluded to the fact that we don't believe we have to prove our damages. We know we have to prove our damages. We intend to do so. But the nature of the damages that we intend to prove is different than what they are asking us to do and asking us to produce documents related to.

So because of the extraordinary third-party discovery that they are seeking, your Honor, we believe the issues of proportionality to the needs of this case needs to really be magnified, not only as it relates to this but some of the other arguments that you are going to hear later this morning.

So for those reasons we would ask that the court deny the relief sought by the defendants and allow the plaintiff to proceed with the amendment that I have tried to be as

transparent as I can with the court in terms of what needs to happen and what we would like to happen for purposes of, A, moving the case along and, B, making sure that discovery is properly framed beyond the way that it was initially framed.

THE COURT: I recognize that this joint motion was filed back in May and now we are here in July. On that reason or any others, are you abandoning the premature argument?

MR. BRITO: We are abandoning the premature argument, but really what we have, your Honor, is a major conflict, conceptual conflict in terms of what the scope of discovery should be related to damages as well as to the liability component, which you will hear in just a minute. So we are traveling under primarily this refined damage theory, which we did discuss with the defendants and we believe really should properly frame this dispute given the limited nature of the facts as well as the damage theory.

THE COURT: Thank you.

MR. BRITO: Thank you, your Honor.

THE COURT: Attorney Tobin.

MR. TOBIN: Thank you, your Honor.

Your Honor, the narrowing of damages to a theory of reputational repair costs, the first time I ever read about it or heard about it was in last night's disclosures and at the podium here today. In fact, in the very joint motion we are arguing, at page 4 in plaintiff's portion it says: Plaintiff

indicated that he would rely on expert testimony to quantify his reputational and economic harm. And today, however, he has not retained an expert witness to do so.

So, your Honor, I will ask the court to accept my representation that up until this very moment they have pleaded a full-blown economic damages claim for $10 billion related to the loss of value and profits and revenues from the President's assets and properties, all of which reside or the majority of which now reside in the trust. So, your Honor, the representation counsel just made simply is not true.

Second of all, your Honor, we would oppose any amendment of the complaint at this juncture. That is obviously an argument for another day, but it certainly would be prejudicial this far into discovery, this far into the case, and with us pointing out to the President for months that the subpoena inexorably and logically flowed from the allegations of his complaint.

Third of all, your Honor, the new disclosures themselves say including, but not limited to. So he left the door open, and he refused today to the court, when you asked him the very pointed question, to close that door entirely. So he has left the door open to economics, his business damages coming into this case at some point.

Finally, your Honor, I would just say that even reputational damages, the way he has framed his complaint and,

frankly, because of who President Trump is, logically are wrapped up in his success or failure in his businesses. He ran for President of the United States on the platform of The Art of the Deal, that he is a good deal maker, and he points to his businesses as a measure of his reputational success. You cannot separate the man and his reputation from his operation of his businesses.

The court needs to look no further than www.trumpstore.com, where you can buy his wine, his T-shirts, his golfing equipment, and a host of other various sundries that are branded with President Trump's name. There is even a Wikipedia page that is on President Trump's branded products.

So his business and his political profile and his reputation are all wrapped up in one President, one plaintiff in this case. So even if you were to successfully amend the complaint, even if the court were to credit portions of the representations that he made today and disregard the things he would not concede today, we would argue that his reputation is entirely relevant, at least for discovery purposes.

This is not a motion in limine hearing. We are not close to that kind of an argument yet. But even if the President doesn't want to front his economic losses, we are certainly entitled for discovery purposes to prepare an argument that a gentleman who was elected President of the United States -- and, in fact, he was more successful in

Florida in the election, that he claims that we were trying to scuttle, than he was in prior years. He carried Miami-Dade County by 55.19 percent in 2024. In 2016 when he won, it was only 33.8 percent. And in 2021 when he lost, it was 46 percent. So that is the political side of things.

We know on the business side of things that he has bragged that the value of his assets are in the tens of billions of dollars, and we know from his OGE form that his revenues increased by at least a billion dollars year to year. Your Honor, that is all part and parcel of the reputation of any man, and especially of this man.

So, your Honor, for all those reasons we'd ask the court to grant the motion to compel and deny the motion to quash.

THE COURT: Thank you, counsel.

MR. TOBIN: Thank you.

THE COURT: Because at least, as I believe attorney Brito started to frame it, that that motion about what discovery is going to come from the trust and the motion about what discovery would come from the plaintiff, President Trump himself, may be related, I am going to go ahead and hear argument on document No. 57, which is the motion for discovery hearing related to plaintiff's responses and objections to certain requests for production and interrogatories.

Again, the court will construe this as defendants'

motion to compel.

So, counsel, you have the floor. I believe attorney Dudding is doing this one.

MS. DUDDING: Yes, your Honor.

Good morning, your Honor, and may it please the court. Sasha Dudding for the British Broadcasting Corporation.

Thank you for the opportunity to appear at today's hearing on behalf of the BBC. I will be handling the party discovery motions at dockets 57 on the request for production as well as the interrogatories and as well as the request for admission at docket 79 when we come to that one.

Across the board all of these three motions, including the requests for production, the plaintiff has consistently failed to meet his discovery obligations in this case; instead, responding with sweeping, blanket objections and refusals to meaningfully participate in discovery. His nonparticipation in discovery prejudices the BBC and is against this court's discovery order and the local and federal rules.

Their sole production of just 135 documents came five months into discovery, on July 14th, and consists only of publicly-available news articles and social media posts, that the metadata shows they pulled from the internet in the past two weeks.

In sharp contrast, the BBC has produced over 6,000 documents, 87,000 pages, nine productions and counting in

response to 503 requests for production.

Our discovery requests of the plaintiff are directly relevant and proportionate to President Trump's claims.

As to liability, we are seeking documents related to January 6, 2021 and surrounding events, his challenges to the 2020 election, the attack on the Capitol that day, and the resulting communications and actions taken by the plaintiff, because his core claim in this action is that the BBC's panorama documentary defamed him by editing his January 6th speech in a way that he says falsely implied that he fomented violence that day, and falsity is a core element of any defamation claim. So he has to prove falsity to prevail on this claim. That means he has to show he did not foment violence on January 6.

So documents and communications going to that issue are at the very heart of this litigation. They are certainly directly relevant to his claims and the BBC's defenses. He can't bring a lawsuit over what he claims is a false portrayal of his January 6th speech and then refuse to produce to the BBC documents related to that speech.

THE COURT: I'm sorry to interrupt. What about the argument, and I am sure that attorney Brito will probably state it better, that the false representation is the splicing of two statements made, I think the representation is, 55 minutes apart in creating that portrayal by improperly putting these

statements together, such that everything that he thought about or otherwise said or otherwise did in relation to January 6 is too broad and does not go to the heart of what is claimed here, which is that BBC improperly merged two statements together that shouldn't be merged. So the scope of discovery is pretty much whether or not that happened, what was said at what points in time that day, and nothing more.

MS. DUDDING: Yes, your Honor. So the fact of the edit itself is not what is at issue here because every documentary, every news reel, every time something is on TV, it necessarily has to be edited.

He spoke for over 70 minutes that day. The BBC was not just going to re-air that speech in full, it had to cut it down in order to show the British audiences what happened that day.

He has to show that the way in which the BBC edited it created a false impression. He says that false impression is that he called for violence that day, that he fomented violence. That is the impression he has to show the BBC created.

If at the start of the speech he said good afternoon and at the end of the speech he said thank you for coming, there would be no defamation claim. It's about the impression that the BBC did or did not create with the editing that is at issue here.

The Supreme Court case *Masson v. New Yorker* speaks to that issue directly, showing that it has to be a false impression that was created in order to meet the plaintiff's burden on actual malice.

The BBC strongly disputes that it created any false impression intentionally, and we have to have discovery in order to make out that defense. He has to produce those documents in order to meet his burden on actual malice.

So the core issue here of what he did or did not say in his January 6th speech does bring all of those documents into the scope of relevance for this action.

He said in his complaint that he did not foment violence that day. We are entitled to, and have crafted our discovery requests carefully, to get at that issue.

He has since in the joint motion tried to walk it back and just say it's about the fact that we edited his speech, but every part of that documentary contains an edit. There's only 13 seconds of it that is at issue here, and the question is whether that edit was false, which, again, we strongly dispute, but we need discovery to make out that defense.

We've actually raised seven deficiencies with his written response to the requests for production. They do all stem from the same central issue as to the scope of discovery as to January 6, and also, as my colleague Mr. Tobin discussed, as to the finances.

The first issue is just that he makes the same boilerplate objection a hundred times. This court's discovery order is very clear that it is his burden as the objecting party to show specifically what his issue is with each and every request. We have not seen that.

The second issue we have raised is, again, at the crux of the dispute here, as to overbreadth and relevance. He ignores the sweeping nature of his own complaint when he says that we are not entitled to discovery about January 6. We are entitled to discovery regarding any nonprivileged matter that is relevant to any party's claim, and we have carefully crafted our requests for production and other discovery requests with that in mind.

As to the finances, as your Honor pointed out, the complaint really does frame the scope of discovery. That is the case with the January 6 discovery as well. We need to be able to show whether or not he suffered any reputation. He defines his reputation as his reputation as a businessman, a politician, a leader. We have sought discovery into each of those facets, again, shaped to the operative complaint in this case.

To the extent he had a dispute with one request on that topic but not another, he was required to produce discovery going to that request, to the undisputed scope, but, again, all we have seen to date are news articles, including

articles that we published as the BBC. That does not begin to meet his discovery obligations.

Third, we also take issue with the objections to requests 95 to 115 as speculative. Those are requests going to plaintiff's other defamation lawsuits.

They say that it is speculative to ask for information about his damages allegations in those suits because they concerned different publications on different topics, but that is exactly the point. If he is claiming billions of dollars in damages about reporting on entirely different subjects, that is going to limit his ability to show that this 13-second edit caused him $10 billion in damages. So it is directly relevant for that reason.

He also, fourth, raises vagueness objections, but did not attempt to obtain clarification prior to objecting on this ground.

Your Honor earlier asked about meet-and-confer efforts. Just as an example, when we have had a question about a phrase in their requests for production of us, what we have done is responded by saying, here's what we think you meant, given documents going to that issue, and then met and conferred and, if needed, reshaped the definition, but meaningfully engaged in that process, and we haven't done the same with them. We haven't been able to get them to engage in that way.

Fifth, and I wonder if this one might be abandoned,

but they object that we have documents already. It is not a basis to withhold documents based on claims that we already have them. It is also not clear to me that he is continuing to do so. As to date, he's actually only given us documents that we already have or could easily pull from the internet.

Six, he raises duplicativeness objections, but those objections cannot stand where he's objected to almost every request to begin with, nor is it clear to us if he is withholding documents on that basis or is just saying it in boilerplate fashion. That violates the discovery order that requires the plaintiff to make clear as the objecting party exactly what scope he is objecting to and withholding documents about.

Seventh, and this will likely bleed into the other motions as well, but he raises executive privilege objections as to our request for documents about his actions and communications surrounding the events of January 6. Again, these go to the core of his defamation claim as he pled it.

The RFPs he rejects on executive privilege grounds are found at 40 to 47, documents supporting his claim that he did or did not call for violent action that day, documents he gave to congressional committees, the special counsel's office, any other federal, state, or local agency, call logs, calendars, and related communications and information. But executive privilege is not absolute. It can be overcome with a showing

of compelling need, which the BBC does have in this case.

His claim is that the documentary falsely depicted his speech, and that's tied up with the facts and circumstances surrounding that speech, including his communications with advisors about drafting it and how he expected the crowd to react when they heard it.

His privilege claims are also precluded by rulings in the federal district court in D.C. We are seeking access to those sealing orders to have a better understanding of the exact nature of those rulings, but plaintiff is already fully aware of those rulings as he was party to that dispute in D.C.

There's also been public reporting that the federal court there rejected the claims of privilege as to over a dozen witnesses in January 6th related litigation.

If that reporting is accurate, then he is precluded from exerting executive privilege as to those communications here. We are asking for this court to direct the plaintiff to not make that privilege objection as to documents that have already been litigated and found not to be privileged.

As to any documents where he might have a bona fide privilege claim, we are entitled to a privilege log setting forth the specific nature of that privilege claim, including the date, the recipient of the communication, who it was from, the subject, in order to meaningfully test those claims. Right now, again, like with the other objections, all we have is an

across-the-board denial that renders us unable to test the privilege or to make out our case in the way that we are entitled to do.

The other issue, and it stems directly from these across-the-board objections, is that we've been producing documents consistently, as we've noted, but we didn't get a single document from them until July 14th. We are not sure when we will get the next production, how many documents will be in it, what those documents will consist of, and whether or not there will be documents pulled from a Google search tomorrow.

At this point, with the close of discovery coming up in just a couple of months, it's beginning to prejudice the BBC more and more each day. We would respectfully request that the court direct the plaintiff to make weekly productions of a reasonable number of documents. We think 500 would be reasonable. We have certainly done more than that in many of our own productions, mostly internal documents and communications, not just documents that we published as the BBC or could find online.

Again, we just ask this court's assistance in requiring the plaintiff to meaningfully participate in discovery.

I'd also be happy to address the interrogatories aspect of this motion, if the court would like

THE COURT: Yes, you can move to that. Interrogatories Nos. 10 and 11.

MS. DUDDING: That's correct, your Honor, as well as the verification issue.

So we have raised these two issues with the interrogatory responses. They do remain unverified to date. Their answers were initially served on April 21st, supplemented on May 18th, and just last night, at around 8 p.m., we got another communication from them saying that next Monday they will be able to provide us an update on when we might receive the verification pages. So not even, again, a date certain as to that issue.

THE COURT: Apologies for interrupting. So am I understanding that there has not been a representation that they will not or, rather, that the plaintiff will not verify, it is just a matter that the plaintiff has not verified.

MS. DUDDING: That's correct. The matter that they have not done it and have not been able to tell us specifically when they will do it. They keep saying they will do it, and they have said that a few times, but it has not happened.

Substantively we are raising deficiencies with their answers to interrogatories 10 and 11, which go to who President Trump communicated with regarding the January 6th rally and challenges to the 2020 election result.

The first objection is that these are premature. They

have purportedly abandoned that objection as to the trust. I wonder if they might do so today given that we are now five months into discovery, have just three months left.

We were already two months into discovery when that objection was made, and we do not agree that it was proper at that time, but it is certainly not proper now as the close of discovery looms closer each day.

These requests are also not disproportionate. We are asking, again, about matters at the heart of this case, who he spoke with when he was planning the speech that he is suing us over our depiction of go directly to the heart of this case.

Similarly, with the 2020 election, what he told his supporters, what he discussed with his advisors, what that crowd that day was primed to believe and to hear and to do when they heard the speech all go directly to the way in which he has pled his case as to defamation and falsity.

We are also not seeking privileged information. Again, this privilege, executive privilege, is not absolute. We have a compelling need for this, just as we do for the requests for production and admission.

The D.C. court has also already ruled as to communications with a number of these advisors, finding that they were not privileged, making him precluded from re-raising that already-litigated case here.

As to the interrogatories specifically, the privilege

is not meant to shield general information that regards governmental operations that don't directly call for President's decision making. Our interrogatories just ask for the names of individuals he spoke with. We are not asking him in that interrogatory to describe exactly what they spoke about. We've sought documents related to the planning of the speech and related topics, but the interrogatories simply seek a list of names.

So in conclusion on the interrogatories, your Honor, we would respectfully request, as set out in our proposed order, that the plaintiff be directed to revise his interrogatory responses and provide a verification page within a reasonable amount of time, and we would contend that ten days is reasonable on these as well.

Thank you.

THE COURT: Thank you, counsel.

Attorney Brito.

MR. BRITO: Thank you, your Honor.

Your Honor heard an argument from counsel with respect to the scope of discovery. I think two things became clear. Defendants seek to try to make this discovery a large part of the discovery efforts relating to the events of January 6 and not of the conduct of the defendants.

They argued also to the court that the defendants vehemently deny that the splicing was done with actual malice

or with intent. The problem with that argument, your Honor, is that it is entirely belied by the words of the chairman of the BBC, which we made clear and alleged in paragraph 48 of the complaint, and we attached the letter from the chairman of the BBC to the complaint, where the chairman states: "Let me address immediately your speech of 6 January 2021. The way the speech was edited in the documentary gave a misleading impression of what you said. The editing unintentionally created the impression of a single, continuous section of your speech rather than excerpts from different points in the speech. This gave the mistaken impression that you had made a direct call for violent action. That was an editorial error and it should not have happened. I have stated clearly and publicly that the BBC apologizes for the error of that judgment." The error of judgment. Pardon me.

To now have counsel argue that they dispute that the splicing was done for purposes of anything other than what their own chairman represented to the public --

THE COURT: I may have misheard, but I believe attorney Dudding was saying that it was going to actual intent or malice.

MR. BRITO: Correct.

THE COURT: In the reading that I just heard, and I have read the entire complaint, point me to the part of what you just read to me that gets to actual malice.

51

MR. BRITO: What gets to actual malice, and that is where I was headed, your Honor --

THE COURT: OK.

MR. BRITO: -- is the standard, because what they have argued to this court in this motion -- and just before I forget, I was asked to make sure for purposes of the record that our response was at docket entry 86.

THE COURT: Correct.

MR. BRITO: I just wanted to make sure that that was stated.

THE COURT: Yes. I do have it. That response came following my order.

MR. BRITO: Yes.

THE COURT: Because this was not a joint motion.

MR. BRITO: Correct, your Honor.

THE COURT: And so I have reviewed that response. Thank you.

MR. BRITO: Thank you.

This goes to the issue of falsity and this goes not to the issue of actual malice.

The standard that needs to be employed for purposes of a defamation case is a false statement that's published to third parties with actual malice that caused damages.

They have argued to this court that the plaintiff has to prove that he was not trying to make a direct call for

violent action. They've argued that as some element that they want this court to adopt that is found nowhere under the law relative to the burden that the plaintiff has to prove his defamation claim.

That argument, again, is belied by the statements from the chairman, which he stated that his company's efforts gave the mistaken impression that you had made a direct call for violent action. So there is no need to establish that point, even if such a point or an element of the case was required to be proven by the plaintiff, because the defendant has already acknowledged that issue.

The point your Honor is raising is entirely consistent with where I was headed, which is we now go to actual malice. It doesn't go to falsity. It doesn't go to the intent of the defendant. It goes now to whether or not the defendant engaged in this conduct with actual malice.

So what information did the defendant have at its disposal at the time that it engaged in the splicing. Did it ignore information or did it act with a reckless disregard for the information that it possessed in publishing this information.

Clearly, in splicing the words over a broad span of the speech is going to be directly tied to the issue of actual malice, but the actual malice, your Honor, is the defendants' conduct, not the plaintiff's conduct, not the plaintiff's state

of mind.

The information that they're seeking through their discovery efforts, which I'm sure your Honor has noted, is 126 requests for production of documents, 152 requests for admissions, 47 subpoenas on third parties that go to the issue of the events relating to January 6. Totally unrelated to the issue of actual malice.

That is where the defendants entirely miss the mark with respect to what they are asking this court to find in requiring the production of this information.

The documentary, your Honor, was a deliberate attack to undermine the President's odds at reelection. This was done through multiple efforts against him. This was not a recap of January 6, despite what the defendants would have this court believe.

The issue of actual malice at the end of the day, if that is what is going to be the linchpin to what the court's going to decide relative to the discovery that is being pursued, your Honor, that is a question of law with regard to whether or not the issues that are presented to the court meets the legal threshold of actual malice. That's a judicial determination, not a factual determination as to that initial threshold. Yet the defendants are arguing, well, we need all this information as to what the President was thinking, who he spoke to, the events that occurred on the day of January 6

leading up to it, as well as events that occurred after that.

I am sure your Honor -- and I know you read everything. I know you've read everything they have requested from us. For them to argue that these are narrowly-tailored requests I think is simply not accurate, and I'm trying to not cast aspersions any further than that.

These are wide-ranging requests, not only in terms of number but in terms of content.

The issue that I think I'd like the court to focus on is the fact that they engaged in this intentional splicing and distortion of the plaintiff's own words. It doesn't automatically expand the scope of discovery. It is their actions that led us here, not the plaintiff's thoughts or the plaintiff's actions that have to be established with regard to the issue of actual malice. That's a defendant examination, not an examination of the plaintiff's conduct.

The statements that we have alleged in the complaint clearly were fabricated and were not a consecutive quotation of what the President actually said.

Counsel brought to the court's attention the ruling in *Masson v. New Yorker Magazine*, and that is from the U.S. Supreme Court in 1991. There, your Honor, that dealt with a series of taped interviews that ultimately were published in a book and were done so in a defamatory manner.

The court held the following: We conclude that a

deliberate alteration of the words uttered by a plaintiff does not equate with knowledge of falsity for purposes of *New York Times v. Sullivan*, unless the alteration results in a material change in the meaning conveyed by the statement, and clearly that is what happened here.

The use of quotation -- I continue to read from the *Masson* case, your Honor -- the use of quotations to attribute words not in fact spoken bears in a most important way on that inquiry, but it is not dispositive in every case.

It then goes on in that same decision to say: If the alterations of a petitioner's words gave a different meaning to the statements bearing upon their defamatory character, then the device of quotations might well be critical in finding the words actionable.

With respect to what evidence the jury should consider in that decision in evaluating whether the plaintiff could survive a summary judgment motion, not even a discovery dispute, the court said that the respondents argue that in determining whether petitioner has shown sufficient falsification to survive summary judgment we should consider not only the tape-recorded statements but also Malcolm's typewritten notes. We must decline that suggestion.

So the court in that respect was being asked to consider the notes that were the substance of the quotations that were ultimately found in the book, and the court said we

are not going to do that because what matters is what the defendant did with the information that it possessed and how did it manipulate that information.

For counsel to come and argue to the court that every publication has some variance of editing I think really, really is a very delicate but unsophisticated way to come before the court and say this happens all the time. This doesn't happen all the time.

What happened here is a very significant deviation from journalistic standards. You don't take somebody's words from the beginning and the end of an hour-long speech and put them together and suggest that they came in a consecutive sentence. That is not editing, that is manipulation, and that is what happened here.

So when we get to the issue of manipulation and what documents are relevant to that, it is what did the defendants know for purposes of this actual malice standard, not what the plaintiff knew. That's irrelevant, and that's really why, again, we have this huge conceptual dispute with the defendants with regard to the scope of discovery.

We certainly don't want to try the events of January 6 before this court because we don't think it is relevant. We think it is a deviation from what is important in this case. And, there are additional cases, your Honor, beyond the *Masson* case that support what I am arguing to the court.

In a situation where, in the Western District of Pennsylvania, the decision of *Uhl v. Columbia Broadcasting System*, there was a video of hunters shooting wild geese. Again, it was spliced to suggest that the hunters had actually engaged in unethical conduct of shooting geese while they were on the floor. The suggestion was, you see the hunters walking and then they pan to the next shot and there is a geese on the floor that is dead. That was the impression that was sought to be established.

The court heard testimony and the jury heard testimony about the splicing together, and really at the end of the day what the court focused on was what did the defendant know at the time that it engaged in that splicing. Not what the plaintiff had done, not if the plaintiff before had shot a geese, had shot something else, had engaged in unethical conduct. That is not the examination and the focus of a court's analysis in a defamation case. It is the defendant's state of mind that matters.

THE COURT: Since you are taking a pause, I want to recap to make sure I understand your argument.

MR. BRITO: Yes, your Honor.

THE COURT: So you're saying as to the issue of falsity there need be no discovery on that because the falsity is pretty much determined by the statement of the BBC president that is found in the complaint and the letter attached thereto.

MR. BRITO: In addition to the actual video itself.

THE COURT: And so the issue of falsity needs nothing more from the plaintiff's side of the V.

MR. BRITO: Correct.

THE COURT: With regard to the issue of actual malice, that is all on the defendants' side of the V and there is nothing that is going to be ascertained from any discovery to plaintiff that is going to go to whether or not the defendant with malice intentionally merged two separate statements on this issue.

MR. BRITO: That is correct, and the case law supports it for purposes of establishing a defamation claim.

The burden is on the plaintiff to establish that the defendant acted with actual malice. There is no component of either those elements or the defense that is to be raised by this particular defendant as to whether or not the state of mind of the President was in a particular capacity that would serve as a defense to whether or not the defendant acted with actual malice. That is entirely on the defendant to establish either that it did or did not engage in such conduct with that malice.

What I read to the court, we already have an acknowledgment and an admission from the chairman. Your Honor is absolutely correct that he doesn't take that extra step and talk about actual malice. We can infer that he was suggesting

that, but that is for a different day. But he doesn't take that step to say we did it intentionally. That is not what he says. But he says a lot of other things that go to all the other elements.

The issue of actual malice is something that we will have a conversation about with the defendants over time throughout the course of this case, but it is not something that injects the discovery of January 6 and the scope of all of these requests, your Honor, which I'd like to talk about very briefly, if I may, because it is really remarkable, some of these requests.

THE COURT: In talking about that scope you may hit this, but I still want to hear from your framing, and I think I have it a little bit, but directly as to what attorney Dudding was saying on the falsity component, is that she still needs or the BBC still needs information from the plaintiff's side of the V, because what they have to show or what they have to defend against is whether or not they gave a false impression, not just whether or not putting the two sentences together was false in time when they came together, but whether or not it created a false impression.

So all of the discovery that they are asking for goes to whether or not it was true that President Trump that day was at all trying to foment, incite, be OK with the violence because that is what plaintiff is contending is the impression

that it gave.

So we are not talking about just what the chairman stated about putting two statements together in time that weren't in time. That is not the false. The falsity is the impression.

What is your response to that part of the scope?

MR. BRITO: Twofold, your Honor.

THE COURT: And I'm sure attorney Dudding will correct me if I misapprehended her argument.

MR. BRITO: The first one is going back to the chairman's statements. "This gave the mistaken impression that you had made a direct call for violent action." His words. I think that that issue is foreclosed at this point in light of that statement that was made with regard to the falsity.

The second thing is, I think the way that the argument is being presented to the court with respect to the false impression is based upon the actual words stated by the President, not what he was thinking, not what he said before, not what he said after. It is the publication and what are the words that he used during that speech that would give the impression that he was engaging in a call to violent action, and that's what the focus of the discovery ought to be. It should be limited to that one speech, the way that it was spliced on that one occasion and broadcast. That's it. That is what this case is about.

It is not a propensity type of an argument, which is what I think the defendants are essentially aligning themselves with, but, rather, specifically what was said at that time by the President and what was published by the defendants as a depiction of what he said, which wasn't the case.

That's the first part.

The second part, as I mentioned to the court, is the acknowledgment at this point of the chairman in his apology, his public apology, that he acknowledged the falsity and he gave this false impression. There is really not much more that needs to be said on that point, your Honor. It's been admitted.

The only thing that they are going to be able to try to do, which is what they're trying to accomplish now, is to say, well, the President was thinking that or let's look at other events around it that maybe suggest that he was thinking that, but he never said that, and that's what matters. What matters is what he said relative to what was broadcast that he said. That's it. There's nothing more that needs to be examined at that point, your Honor.

Despite that, as your Honor probably -- I'm sure your Honor knows, the inquiry that is being sought by the defendants not only talks about January 6, but it goes well beyond that. It goes to post-election challenges, government investigations, congressional productions, all call logs, all calendars,

unrelated litigation that talks about things that are simply not at issue in this case, and I will give you some examples, your Honor.

All of your telephone call logs from November 3, 2020 --

THE COURT: I'm sorry to interrupt. Can you give me the exact request number just so I can follow your examples --

MR. BRITO: Very well, your Honor.

THE COURT: -- in my record. If you have it. If you don't have the request number, it is fine.

MR. BRITO: I am going to have somebody get it for me.

THE COURT: I just have it up so I was going to go to it.

It is OK. If you don't have it, that's fine. Just read it to me.

MR. BRITO: I just have them in bullet-point fashion, but I will get those for you, your Honor.

All your telephone call logs from November 3, 2020 to January 2021.

All of your calendars, schedules, and daily diaries for that same time frame.

All documents and communications -- both of those are defined terms -- concerning the events of January 6, 2021 that you provided to any other federal, state, or local agency or official.

All documents and communications concerning the events of January 6, 2021 that you provided to special counsel Jack Smith.

All documents and communications concerning the events of January 6, 2021 that you provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

All documents and communications that you provided to the U.S. Select Committee to investigate the January 6 attack on the U.S. Capitol.

Then you have a huge catchall, which is all documents and communications concerning the Stop the Steal rally on January 26th and the speeches given at that event, including your speech, and then it lists a series of individuals that are sought to be captured by this request.

THE COURT: I'm with you.

MR. BRITO: I will have one of my colleagues get you the specific request numbers just to supplement that.

MR. TOBIN: If I may aid, your Honor. He was citing Nos. 40 through 47.

MR. BRITO: Thank you, counsel.

THE COURT: I was just going to say, my amazing clerk was already on top of it. He sent it to me.

MR. BRITO: Fantastic. Thank you very much, both of you.

To the extent that I didn't make it clear with regard

to the letter that is attached to the complaint, that I keep referring back to the court, not only was that a statement made by the chairman of the BBC, but it was done on BBC letterhead when that letter was circulated to avoid any doubt as to whether or not he was speaking individually or on behalf of the BBC when he made such a concession.

Given the scope of this request, your Honor, or these requests, we believe that not only is the issue of what is relevant to the dispute as framed by the pleadings important, but also the fact that these requests encompass a vast array of individuals and issues that have no relevancy to this action.

For that proposition, your Honor, we would cite to the *Tic Park Center, 9, LLC v. Cabot* case, out of the Southern District of Florida -- that is 2017 WL 3034547 -- as well as *Watkins v. Session*, 2021 WL 663759, which is an opinion from Judge Altman, that discusses an admonition by the magistrate judge in that case that the plaintiff refrain from unnecessary, excessive, and potentially harassing discovery given the fact that Rule 26(g)(1)(B)(ii) was adopted to overcome sort of reluctance to impose sanctions for oppressive discovery violations.

We believe that what has occurred here, not only in terms of the scope of the discovery but the breadth and the number of the requests that have been advanced by the defendant, is oppressive. We do believe it is not appropriate,

it is beyond what discovery contemplates in this limited case based upon a limited, finite set of facts. The discovery that's been sought is well afield from what is relevant, what is permissible, and what is proportional to the records in this case, your Honor.

With respect to -- and that leads me to the interrogatories that I believe, likewise -- there are two interrogatories. The rest were responded to, but two that are the subject of the dispute.

Essentially, I think the proportionality argument that you just heard me raise still applies as well given the fact that it asks for the President to identify every person who he spoke to about certain events. We believe that that is not relevant, again, to the speech that was made because the request is fashioned in a way that falls way outside of the speech.

In addition to that, we have raised an executive privilege issue. With the court's indulgence, if I may, may I have my colleague, Ms. Garcia, briefly address that issue? Is that appropriate?

THE COURT: You may.

Before Ms. Garcia steps up, are you going to finish with regard to other arguments regarding interrogatories Nos. 10 and 11, because before you sit down, I do have questions on that?

MR. BRITO: I'm ready to answer your Honor's questions.

THE COURT: OK. The objection about prematurity, is that abandoned here, as we discussed, in the trust?

MR. BRITO: Yes, your Honor.

THE COURT: And then with regard to the verification, where do we stand with that, and what specifically has become the difficulty in getting these interrogatory responses verified?

It was heartening to hear that there wasn't a refusal because, as we know, the rules require it. So I'm understanding that there is some practical reason that in the past month that they have not been able to be verified.

I am inclined to impose a deadline for that verification, but I want to be sensitive to whatever obstacles you may be encountering. So if you could please illuminate that for me so I can put in a reasonable deadline.

MR. BRITO: Yes, your Honor. In sum or substance, the request on my end is once we have clarity on the court's determination with regard to the interrogatories and whether or not we are required to supplement or not or whether the objections are sustained or overruled, that would trigger my opportunity to get the President to sign one version of the interrogatory answers as opposed to an initial version and then, to the extent that the court modifies what needs to be

responded, I'd have to do it a second time. That just presents logistical problems for me.

To the point that I think your Honor is raising about setting a deadline, if we can do it within a reasonable time after the court makes a determination with regard to whether or not the objections to the two interrogatories are sustained or overruled, that would be my request.

THE COURT: OK. Thank you, counsel. I can now hear the argument concerning the executive privilege.

MS. GARCIA: Good morning, your Honor.

THE COURT: Good morning.

MS. GARCIA: Your Honor, going back to the interrogatories briefly, because it does implicate the executive privilege. One of the issues with those interrogatories --

THE COURT: I'm sorry, counsel. If you can pull the mic a little closer to your mouth so you have a record. There you go.

MS. GARCIA: Thank you, your Honor.

THE COURT: Thank you.

MS. GARCIA: Going back to the interrogatories, if I may, your Honor, because it does implicate the executive privilege.

The interrogatories themselves, they are seeking, essentially, the identification of any number of individuals

that the President communicated with regarding a long list of issues, topics -- the rally, the speech, challenges to the election, the certification -- and it would essentially encompass every communication, every individual given the definition of "you," which includes the President, his agents, his employees, anyone acting on his behalf. So it is essentially seeking a category of every possible person that could have been involved in any capacity.

So I just wanted to flag that for purposes of relevance and proportionality because that also implicates the executive privilege. We are not just talking about the President's communications, but to the extent it implicates communications involving any of the federal agencies, that all falls under that.

So with that in mind, your Honor, I do want to raise a couple of issues with regard to the executive privilege.

Ms. Dudding had glossed over the privilege, but that privilege is an umbrella of several privileges, not just the Presidential privilege, but there are privileges that encompass the federal agencies themselves.

So with regard to that, the case of *Cheney v. U.S. District Court*. It is at 542 U.S. 367. In that case, your Honor, the Supreme Court had essentially directed the following sequence to take place in terms of the executive privilege.

One, determining what information is genuinely

relevant and proportional. Again, that brings us back to trying to understand the proportionality and relevance of all of this information. We need to narrow these interrogatories, we need to narrow the requests. I'll preview, that relates to the subpoenas as well, that we will get to later.

Up until we get to that point --

THE COURT: Have you all engaged in any conversation with the defendants concerning narrowing?

What I understand you to say is that the executive privilege may allow something, but right now in connection with attorney Brito's argument that this is way overbroad given what the complaint raises and how this should be framed, but what I heard earlier as an overarching theme about what just seems to be the plaintiff's barrier to any discovery is that there was no meaningful meet and confers that occurred on the part of plaintiff to get any of plaintiff's responses and objections.

So I hear you if you are saying something needs to be narrowed. Has the plaintiff engaged in discussions to narrow these with defendants?

MS. GARCIA: I think that goes back, your Honor, to the meet and confers that we've had with regard to the scope of what is at issue in this case. So, yes, we have had those conversations.

To the extent we have addressed specific nuances about, for example, the interrogatory, I don't know how we get

there because we have had meet and confers regarding is this going to encompass everything regarding the January 6 rally, is this going to encompass everything regarding the election or the challenges to the election. We haven't gotten to that point, and I think the parties are at a disagreement in that regard.

THE COURT: So you're saying you asked that question is this going to encompass all of this in your meet and confers?

MS. GARCIA: That is what the interrogatory seeks.

THE COURT: OK. So did you meet and confer about what you believe is the broad scope of that interrogatory and say this needs to be narrowed?

So I'm wanting to know, are you coming in and asking the court to do the work or did you attempt to do the work prior to coming in and asking the court to do the work?

Because from what I'm understanding from the defense side, and I may be wrong, that there was never any meaningful meet and confers with regard to defendants' request to plaintiff, which is probably how we have gotten here that now the defense has produced, what is it, 6,000 documents, 80,000 something pages, and the plaintiff just two weeks ago produced a hundred something documents that were publicly available.

Before you're telling me this needs to be narrowed as opposed to this is just a blanket no, I want to know, did you

ever engage in any conversation with the defense about, tell me what it is that you're seeking specifically and I can tell you whether or not that invades this privilege and whether or not this can be narrowed? Did that conversation, per the court's rules, per the local rules, ever occur?

MS. GARCIA: Your Honor, if I may step back for a moment because --

THE COURT: You may after you answer my question. Yes or no -- you can explain, but yes or no, did that ever occur?

MS. GARCIA: Your Honor, I am not sure of the answer to that question.

THE COURT: Who would know the answer to that question?

MS. GARCIA: I was part of some of the meet and confers. So I need to step back in order to understand specifically if we addressed the interrogatories.

THE COURT: You may.

MR. CORP: Your Honor, if I may answer your Honor's question.

THE COURT: You may. Please, on the record.

MR. CORP: Ian Corp on behalf of the President.

THE COURT: Thank you.

MR. CORP: We did have that conversation as to the scope, your Honor, as my colleagues Mr. Brito and Ms. Garcia have articulated to the court. However, because there was an

impasse between the parties, fundamentally, on what the scope of this case should be about and what the discovery should be, there was no opportunity for the parties to meaningfully discuss executive privilege and how it would relate until a resolution between the parties was reached on the scope.

Because that resolution could not be reached given the disparity in the parties' positions, we are here before the court to have your Honor decide that for us.

MR. TOBIN: Your Honor.

THE COURT: Thank you.

MR. TOBIN: May I make a representation for defendants?

THE COURT: You may. I promise I will get back to you upon your reply and ask you that same question.

MR. TOBIN: Thank you.

THE COURT: OK.

MR. CORP: Thank you, your Honor.

THE COURT: Thank you so much for that answer. You may now move on.

MS. GARCIA: Thank you, your Honor.

So if I might go back to the *Cheney* decision, your Honor.

Once we get to the proper scope, that is when we begin to assert the privilege as to what the information is being sought, right.

So, for example, we have a scope and it includes investigative materials, and at that point we can identify those investigative materials, but if the scope of the request does not encompass those materials, then we don't have that issue. But to have to undertake that process in advance with such a broad scope, that is not what the case calls for.

If I may, your Honor.

(Pause)

MS. GARCIA: Additionally, your Honor, regarding Ms. Dudding's comments that they have sought the orders overruling the privilege, that relates to a completely different case. It does not relate to this case and what was needed for this case as opposed to what was needed in that case.

We can't just take the privilege or the overruling of the privilege as to those issues and bring them over here.

THE COURT: I figured you would get here. So my question, the way I interpret attorney Dudding's representation -- and she can correct me if I'm incorrect -- is that the scope, I guess, of documents that are requested in the RFPs, because I believe with regard to the interrogatories there are no documents, no communications that's requested in the interrogatory but names. But some of the documents that would be responsive in their requests have already been the subject of another litigation and certain set of those

documents have been deemed to be without the scope of that privilege.

Are you telling me that that is incorrect, that there is no subset of documents that would be responsive to their request that have also been deemed to be outside of the scope of the executive privilege in another litigation?

MS. GARCIA: I don't know the scope of those documents, your Honor. Ms. Dudding did not identify specifically what documents were subject in that litigation and how they relate to the documents that are here. We heard Ms. Dudding just indicate that the two are the same.

THE COURT: Got it. I'm guessing this never came up in your meet and confers as well because you never endeavored to find out the scope.

MS. GARCIA: It never came up in our meet and confers. They never indicated that they had requested this information.

THE COURT: OK. You can continue.

MS. GARCIA: Thank you, your Honor.

I do want to point out, your Honor, that the executive privilege also applies to the interrogatory responses because, like I had indicated, identifying who the President may have spoken with, the timing, the subject matter, that would invade either the Presidential privilege or any of the other privileges that fall under that umbrella.

To go back to the *Cheney* decision --

75

THE COURT: And what other privileges would fall under that umbrella?

MS. GARCIA: It would include, for example, your Honor the deliberative process privilege, which involves a decision-making process.

It could include the law enforcement privilege, to the extent he had any communications with law enforcement. These are privileges that he may assert or others may assert. They could include any state secrets privilege and any other official legal advice privilege, your Honor. Those would all fall under the umbrella of the executive privilege.

Each privilege has its own requirements, and, again, until we know what the scope is, it is nearly impossible to get there.

If I may, your Honor, going back to the *Cheney* decision. The court stated that a party's need for information is only one facet of the problem. An important factor weighing in the opposite direction is the burden imposed by the discovery orders. This is not a routine discovery dispute. The discovery requests are directed to the Vice President and other senior government officials who served on the NEPDG to give advice and make recommendations to the President. The Executive Branch, at its highest level, is seeking the aid of the courts to protect its constitutional prerogatives. As we have already noted, special considerations control when the

Executive Branch's interest in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated. This court has held, on more than one occasion, that the high respect that is owed to the Office of the Chief Executive is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery, and that the Executive's constitutional responsibilities and status are factors counseling judicial deference and restraint in the conduct of litigation against it.

The court goes on to consider and look at the documents that were requested as examples that they cite as not specifically identified or enumerated. All documents identifying or referring to any staff, personnel, contractors, consultants, or employees of the task force. All documents establishing or referring to any subgroup. All documents identifying or referring to any staff, personnel, contractors, consultants, or employees of any subgroup. I can go on and on.

The scope, the breadth, this is what the court took issue with. We have the same exact thing here today.

So, your Honor, Ms. Dudding had glossed over the executive privilege, but it is something that does require much more attention. We need much more particularity as to what it is that is needed in order to be able to specifically address each of the privileges that could be at issue.

77

Thank you, your Honor.

THE COURT: Thank you.

Before attorney Dudding comes back, attorney Tobin, if you want to address the meet-and-confer question that I raised.

MR. TOBIN: Yes, your Honor. Your Honor, I participated in some of the meet and confers, and there have been several. Personally, Ms. Dudding participated in, I think, most of them. A partner in my office, Max Mishkin, participated in some of the others.

The pattern, as was reported to me and from my own participation, is we came to these calls with the interrogatories, the document requests, the third-party subpoenas in front of us, and we said to plaintiff's counsel, let's go through these one by one.

What we got were the overarching objections to the scope that we're not going to participate in an item-by-item discussion, we have an overall problem with every one of your requests because you're asking for the facts that go to the truth of January 6 and whether the plaintiff fomented the violence, as they pleaded in their own rendition, which the court heard on what that does or does not require them to do in discovery, or that you are invading certain privileges and we are not going to engage in that.

So, your Honor, we respect the court's rules and the local rules that require a particularized item-by-item meet and

confer. We came to the calls prepared to have that discussion, and the calls were pretermitted for having that discussion because plaintiff's counsel would not engage in any particularized discussion from the court, and I think they pretty much told you that today when you asked those questions about the meet-and-confer conferences.

So to the extent that it was represented to your Honor that there was any kind of specificity, granularity, or that we went through individual requests, that is not true. We tried.

THE COURT: Thank you.

Attorney Dudding.

Before you begin, attorney Dudding, would you say that you're probably more familiar with the discovery requests that were propounded by the defendant as well as received by the defendant from the plaintiff in this case?

MS. DUDDING: I'm sorry, your Honor. Would you mind rephrasing the question?

THE COURT: Are you pretty familiar with the discovery requests that the BBC received --

MS. DUDDING: Yes.

THE COURT: -- and that the BBC sent out?

MS. DUDDING: Yes, your Honor.

THE COURT: Not a specific number, because I don't expect you to know that off the top of your head, but can you give me generally about how many interrogatories and about how

many requests that the BBC received from plaintiffs.

MS. DUDDING: It's 503 requests for production that I do know. That is across all defendants. If you look at the BBC specifically, it is about 167 requests for production.

I do not have the number of interrogatories offhand, but it is well in the range of 1 to 200, and I would be happy to provide that number for the court.

THE COURT: And that is requests for production received by the BBC or all of the defendant entities, referring to them collectively as the BBC, although I know that two have since been dismissed, but at the time all of the BBC entities in about 100 to 200 interrogatories.

MS. DUDDING: Yes. I'm less certain on the interrogatories, your Honor. I would have to consult my notes on that, but as to the requests for production, I am confident in that number.

THE COURT: OK. Thank you so much.

You may proceed with your reply.

MS. DUDDING: Your Honor, it's plaintiff's burden to meet each element of the defamation claim that he has brought in this case. That is true of damages, it is true of falsity and actual malice. Nothing is foreclosed.

There is an active, pending motion to dismiss. We think we should prevail, including on jurisdictional grounds, but to the extent we don't, we will find ourselves briefing

summary judgment, there could be a trial, and all of these issues will need discovery, will be the subject of active litigation before the court.

Plaintiff says that the chairman's statement foreclosed actual malice. We strongly disagree with that. The chairman's words were that the documentary gave a misleading impression of what you said because the editing, quote, unintentionally created the impression of a single, continuous section of your speech rather than excerpts from different points, giving the mistaken impression of a direct call for violent action.

THE COURT: Sorry to interrupt. I may now be not stating attorney Brito's words correctly, and I am sure he will correct me if I am not, but I believe that he was saying that the chairman's words foreclosed the issue of falsity. It implied malice, and I think he wants to go there as well, but particularly what he was arguing, at least as my notes reflect, and he can correct me, is that the issue of falsity is foreclosed.

So where he admits that the BBC gave a false impression, any discovery that gets into whether or not a false impression was given is outside of the scope or at least overbroad considering that a representative of the defendant to the defendant itself has already admitted that point.

MS. DUDDING: Your Honor, we disagree with that

argument as well because the chairman's words were that the error wasn't giving the impression of a direct call for violent action. That is not the same as conceding falsity in this case.

A lot of the judges up in D.C. have decided similar issues in sentencing decisions related to January 6, and the words in one case from Judge, I think Bates speak to this exact issue speaking of the President: Although his express words only mention walking down Pennsylvania Avenue to the Capitol, one might conclude that the context implies that he was urging protesters to do something more.

So it is what that implication is, what the speech meant, how it was heard by his supporters, that remains directly at issue.

Whether or not it was a direct call, an indirect call, that is all the subject of ongoing litigation. But those issues remain live in this case.

THE COURT: OK. So tease this out with me. Even based on what Judge Bates said in that case, at least as I'm hearing this quote, we're still talking about the words in the speech itself. So even if I were to agree that the falsity is not foreclosed, why are we going to all congressional documents, all communications? How is that not overbroad in figuring out what impression may have been given from this speech itself?

MS. DUDDING: Your Honor, taking the plaintiff at his own word and describing what the impression of the speech was, he said it gave an impression of fomenting violence. That goes well beyond whether the top of the speech was spliced together with the bottom of the speech. It is broader than that. It is about what impression the speech intended to convey.

He said the BBC intended a false, malicious, and defamatory message that President Trump fomented violence, which he did not. That is at paragraph 44 of the complaint.

Again, of course, the BBC vigorously disputes that, but that puts at issue the impression, what people heard, what he meant to say, what they did. He has to show that he did not foment violence that day. He has directly said the BBC was false in saying that he fomented violence. So we need discovery in order to show whether or not he can meet his burden on that element.

Again, as my colleague Mr. Tobin said, to the extent we asked for documents going back to election day, say they thought December was fair but November wasn't, that is not at all the sort of conversation we have been able to engage in with them.

It is really a short window, between election day and two months later, January 6. We are not seeking unbounded discovery on that issue. It is just a small window of time, and that all goes directly into the speech that day and the

attack on the Capitol that ensued, which is directly related to whether or not the BBC's edit was false, was created with actual malice, damaged the plaintiff, all the elements of his claim. So, again, nothing is foreclosed here.

Stepping back, the logical extension of his statements is that any defamation plaintiff could bring a case and say it's only about what you said, we don't have to give you discovery. We know that is not the law. There are orders throughout this court requiring plaintiffs to give discovery in defamation cases.

One such order is in *Blase v. Simonetti*, a ruling of Judge Altman's, where the defamatory statement at issue was that the plaintiff and his partner were partners in crime, and the defendants in that case were held to be entitled to information about other partnerships the plaintiff had entered into because that is relevant to the subject of partners in crime.

Again, the discovery rules and this court's discovery order entitle us to documents, information, communications related to any claim or defense. The scope of discovery is intentionally broad under the federal rules.

He is entitled to ask us about the filming process. He's done so over hours of depositions, many dozens of document requests. We're providing that information. But on our end we also are entitled to discovery about the subject of the film,

about the January 6 speech itself.

Turning to executive privilege, your Honor. There is, again, extensive reporting in the news, in the Jack Smith special counsel report, public decisions, to the extent we know about them, that these issues have been litigated and denied.

It is true, as Ms. Garcia said, that we don't know exactly what documents were the subject of those rulings. Only plaintiff knows that. Those are sealed. We are seeking to get more information about that. But today only plaintiff, only the Office of the President, DOJ, might have that information. We are in the dark. That is part of the problem we are trying to remedy here with our discovery requests, as well as our access motion.

Part of the issue, and we are bringing it up to this court, not only the court in D.C., is because they have made discovery objections on that basis. They've also indicated in meet and confers that they do not necessarily see the D.C. court's ruling on privilege as binding on them in this litigation. I think we have heard some of that today. But those issues would be squarely precluded.

To the extent they put out a privilege log and we want to dispute row 32 on the privilege log about whether or not that communication is privileged, we are just not there yet. We don't have the information to be able to engage in that sort of discussion, which we would be more than willing to do.

Similarly, Ms. Garcia mentioned various privileges, such as the law enforcement privilege. If he did have a communication with, say, a confidential informant of some sort, that could go on the privilege log, and to the extent we took an issue with it, we would be very willing to meet and confer on that topic. But this is the sort of first order issue where we are seeking this basic information about January 6, in many cases seeking information that's been found not privileged, and we are not able to get any of that information to even engage in these discussions.

I will also mention that plaintiff has requested to only verify the interrogatories once. We would object to that request as well. He is required under the rules to verify interrogatory responses each time, and we would again request that he do so within a reasonable amount of time.

Last, to the extent that we are engaging in further meet and confers, we need to be able to discuss the specific requests. Again, we remain willing to do so. We have tried to do so at each turn. They have said no, the scope of discovery is too broad, and we think that we are entitled to these documents on January 6, on his reputational damages, including as a businessman, to his properties, intellectual property, digital assets, the wide web of entities that make up the President's reputation and net worth.

So we would just conclude, your Honor, by asking that

the President be required to amend his discovery responses to the interrogatories, requests for production, requests for admission, when we get there as well, within approximately ten days and to begin making rolling productions no later than this week or next, on a rolling, timely basis.

Thank you.

THE COURT: Thank you.

Since I have started down this path, let's go ahead, and to the extent that we haven't and there were some specific arguments raised in the document No. 79, which was the joint motion on defendants' first set of requests for admissions, let's go ahead and do argument on that.

Actually, we have now been going about two hours. I am going to give everyone a comfort break for ten minutes and then come back. We will then pick up the RFA argument and then pick up the 47 subpoena argument.

So I will see everyone back at 12:20.

(Recess)

THE COURT: Good afternoon. Everyone may have a seat.

THE DEPUTY CLERK: Recalling case 25 Civil 25894, Judge Altman. President Donald J. Trump v. British Broadcasting Corporation, *et al.*

Parties, please re-announce for the record, beginning with the plaintiff.

MR. BRITO: Good afternoon, your Honor. Alejandro

Brito on behalf of the plaintiff, along with my colleagues Ian Corp, Michael Mena, and Jalaine Garcia.

THE COURT: Thank you.

MR. TOBIN: Good afternoon, your Honor. Charles Tobin for the BBC, defendant BBC, along with Sasha Dudding.

THE COURT: Thank you.

MR. FEELEY: Your Honor, good afternoon. Matt Feeley, AUSA, on behalf of the government.

THE COURT: Thank you.

Since I have started down this road, let's just pick up before I make any overall comments.

We were at docket entry No. 79 on the requests for admission, which, again, the court construes as the defendants' motion to compel better responses.

So, defendants, you have the floor. Attorney Dudding, please come forward.

MS. DUDDING: Thank you, your Honor. Good afternoon.

May it please the court, a lot of the issues that we have seen and the deficiencies with plaintiff's written responses to defendants' requests for admission overlap with what we have already discussed as to relevance, boilerplate objections, so I will be brief, your Honor. But their answers to the requests for admission are deficient for at least the four reasons we have raised in our part of the joint motion.

Again, they repeat over a hundred times these

boilerplate objections, in violation of the discovery order's requirement that they as the objecting party make out their burden to bring specific objections to each request. They have used the exact same wording 114 times out of the 150 or so requests.

The requests for admission, getting to the heart of it, are, again, highly relevant. They object, quote, that we do not specifically -- that the requests do not specifically relate to the precise false and defamatory statements at issue.

That is simply not the standard, your Honor. Under federal Rule 26, we are entitled to discovery regarding any nonprivileged matter relevant to any nonparty's claim.

The repetitive objection also, again, violates the specificity requirements in the discovery order.

It is also not true as a factual matter. Each of these requests is directly relevant to our claims. He again here accuses us of trying to, quote, relitigate the 2020 election or January 6, but it is plaintiff who put those topics at issue when he filed a lawsuit accusing the BBC of defaming him with its portrayal of the events that day.

Again, he has to show, it is his burden as plaintiff, that that implication is false, that there is actual malice involved, that he did not foment violence on January 6, according to the wording of his own complaint.

It is true that the chairman's letter apologized for

unintentionally showing a direct call to violent action. That again doesn't foreclose any issues as to the requests for admission. That is the way the BBC has described it, the special counsel has described it, as their having strong proof that the President incited or, quote, gave aid and comfort to those who attacked the Capitol.

We know from their criminal prosecutions that a number of the supporters who heard the speech and then went to the Capitol that day heard the speech as a call to violent action. Whether that is direct or indirect, that is how they heard it and that's what they did.

So we know from a number of sources that that is how the speech was heard. Whether or not that is the case is what we are all here to litigate, but the subject of discovery, which is intentionally a liberal standard under the federal rules, means that we do need documents related to that issue. We need requests for admission, communications, information related to that issue as well. So that's requests 18 to 104, 107 to 136, 131, 137. Those all get to these relevance issues related to January 6.

He also has raised similar relevance objections as to our requests for admission about his supporters, including their statements in their own criminal prosecutions.

Again, those are relevant because what people heard the speech as saying is directly relevant to what he was saying

that day and to what the impression he gave was and to whether the BBC showed that impression falsely, intentionally falsely, or not. That all is part and parcel of his defamation claim as pled in the complaint.

He also refuses to admit or deny in response to RFAs where he knows the answers. We have asked for, did you communicate with this person, say, Ruddy Giuliani or John Eastman in the day before the January 6 speech. Instead, we are met with these blanket objections. Part of that is relevance. We also know that he does know the answers. It was the President's own communications.

We had also raised disputes as to requests for admission 6 to 9 regarding plaintiff's claims of personal jurisdiction over BBC Studios, but that issue has been resolved. The studio defendants are not dismissed.

He admitted he never had any basis to allege that the documentary, for example, was available on BritBox. That was publicly-available information the whole time. Lots of people have BritBox, but that is now a settled dispute.

So we are really asking the court for rulings regarding the relevance objections and the other objections we've raised in our joint motion.

We think here, too, it would be fair to request revised responses to the requests for admission within approximately ten days, and we would ask for the court's

91

assistance in timely answers on that subject.

Thank you.

THE COURT: Thank you.

Attorney Brito.

MR. BRITO: Thank you, your Honor.

May it please the court again. Your Honor, before I address counsel's argument, I just wanted to make sure we clarified something that I thought maybe I misheard when your Honor had asked the questions before we took a break with respect to the number of discovery requests that were served by the plaintiff.

THE COURT: Yes.

MR. BRITO: I thought I heard counsel say that we served over 100 interrogatories, which not only would it be in violation of the rules, it is simply not the case. Maybe I misheard her, but we have only served five interrogatories on BBC.

With respect to the requests for production, 139 of the 169 that we served dealt with the jurisdictional issue that we were confronted with at the outset of this litigation. 30 requests deal with the merits of the dispute.

Again, maybe I heard her wrong, but I just wanted to make sure we were all operating from the same set of information.

THE COURT: OK. Thank you so much for that

clarification.

MR. BRITO: Thank you, your Honor.

With respect to this particular joint motion, there are just a couple of points, and I don't want to belabor a lot of what you have already heard because I agree with counsel, Ms. Dudding, that there is some duplication with respect to the nature of the arguments.

Here, in particular as it relates to the request for admission, the overwhelming majority of these requests for admission were drawn from the January 6 Select Committee report and the special counsel's report, and so they were lifted from that and then a statement was made, please admit or deny certain statements.

The argument that you heard from counsel is that our objections are boilerplate. I disagree with that, simply by virtue of the fact that the objections are similar, if not identical in large part, is a function of two things.

Number one, we have this fundamental dispute as to the scope of the discovery, and we believe that if one of these requests was advanced or 100 and some odd were advanced, the objections that we interposed are appropriate. We don't believe it to be in violation of the court's rule. It is simply, these are the grounds on upon which why we are objecting that the scope of this request, the breadth of the request, the nature of the request in light of the subject

matter of this dispute is not permissible.

All of these requests, they're plagued with the same defect. Hence, the reason why they got the same response. I don't think because you interpose the same objection that that makes it boilerplate, because I think we have provided with the information to support the reasons for the objections, as opposed to just putting one word in there and saying overbroad and leaving it at that.

Here, because we firmly believe that these requests, despite counsel's argument to the contrary, that these are designed to relitigate the 2020 election and the January 6 events, as opposed to litigating the issues that are actually in dispute in this matter.

The court's questions regarding the meet-and-confer issues have really, and Mr. Corp -- I have not participated in many of those conversations. Mr. Corp has been leading the charge on the plaintiff's front, who I believe has been involved in every single one of those.

The issue has always been, we can't get past the concept and the dispute that we have amongst each other, and the problem is that to the extent that the court or even the defendants would take the position, well, what are you willing to accept that deviates from that conceptual disagreement. I don't know that we can do it, but even if we were to, that presents a huge problem from our perspective, your Honor,

because it is going to infringe on our proportionality arguments now and forever in this case once we open the door to allowing certain inquiry regarding January 6, that we don't believe is relevant at all or proportionate at all to the issues in dispute.

If we get to that horse trading type of a scenario, that is going to adversely impact our ability to raise proportionality arguments before this court because at that point the defendant is going to come and say, well, they agreed to this, and so now that becomes a bit of a moving target and slippery slope with regard to our ability to defend against what we believe to be entirely nonrelevant discovery efforts.

THE COURT: So is it your contention that every single request for production, because at this point, or at least until two weeks ago, that you all had not produced anything.

MR. BRITO: Correct, but we didn't object to everything.

THE COURT: So what is the -- no, you can keep going for now.

MR. BRITO: Just to close the loop, from my perspective, at least -- I know your Honor paused at that point -- to close the loop on my -- we did respond in large part to these requests. To the extent that we believed that we could try to obtain documents, we stated as such.

To close the loop on where I was headed with respect

to this fundamental conceptual dispute that we've had, the information that the defendant is seeking about January 6th and about the election, again, it is not relevant for purposes of establishing liability or damages as it relates to the defamation case that we've alleged, especially, again, going back in light of the BBC's admission as to the falsity of the statement and where we find ourselves once they made such an acknowledgment and an admission.

One of the questions that we spoke about earlier, your Honor, which I also wanted to close the loop on, with regard to the issue of the state of mind and the fact that the defendants' discovery requests have really been focused in large part on establishing the plaintiff's state of mind.

The decision in *Herbert v. Lando*, which is 441 U.S. 153, makes clear that for purposes of this analysis it is the defendants' subjective state of mind as to actual malice that governs the dispute and governs the determination as to what is appropriate for purposes of establishing the claim, and because that is the basis for framing the pleadings, that also should govern the resolution of any discovery disputes because we believe that the requests bear no relationship whatsoever to the documentary, the defendants' state of mind, the depictions of the speech, none of that.

Then finally, your Honor, there is a batch of the requests for admission that -- and those are set forth on page

5 of docket entry 79, and those are requests 105, 135, and 138 through 152 -- that ask the President to admit or deny how certain parties understood or responded to the speech, asks him to admit or deny issues pertaining to criminal prosecutions of those who participated in the January 6 event, the pardons and other things that we believe, again, underscore how irrelevant and far afield we have gotten with respect to the discovery in this case.

So at the risk of again belaboring what I think you understand our position to be conceptually, I don't want to waste any more of the court's time because I think you understand where we are headed on this.

We would ask that the court deny the motion and sustain the objections.

THE COURT: Thank you, attorney Brito.

MR. BRITO: Thank you, your Honor.

Attorney Dudding, if you have a reply.

MS. DUDDING: Thank you, your Honor.

As plaintiff's counsel pointed out, it is true that we did frame the requests for admission based on the January 6 report by the House Select Committee. That is because we are trying to make our requests targeted to the information that is publicly available. We are doing the research that we are able to do based on what is out there. So we are not pulling anything out of thin air. We are consulting the available

sources. That Committee heard many hours of testimony, reviewed many thousands of documents, and we are looking to their report in framing some of the requests that we have. Others are specific to this documentary. They are all relevant.

Again, the *Lando* case cited by plaintiff is not a discovery case. It is not about plaintiff's burden on discovery.

We don't dispute that the BBC's filmmaking process is relevant, but that is not what we are here about today. We have been providing that discovery, but we need discovery from them about the speech at issue in this case as well.

To the extent anything is being relitigated, that is the direct and unavoidable result of a plaintiff filing a defamation claim about the depiction of his January 6 speech and describing the speech broadly in that case as not fomenting violence, describing his defamation damages to the tune of $10 billion. We are targeting our discovery requests to the complaint as framed by the plaintiff.

Last, I apologize for misspeaking about the interrogatory requests. There is no dispute there. I was just thinking of the document requests which are on the order of 167 to the BBC.

Thank you, your Honor.

THE COURT: Thank you, counsel.

OK. Where as these requests go a lot to scope and at least part of the objections are to the 47 subpoenas also go to scope, let's still move forward with that.

So I am going to docket entry No. 61, which is the joint motion for discovery hearing on defendants' 47 subpoenas to third parties, which the court is construing as plaintiff's motion to quash. So we will start with the plaintiff.

Attorney Brito, are you arguing this one as well?

MR. BRITO: I am, your Honor. Thank you.

THE COURT: OK.

MR. BRITO: And consistent with my efforts, your Honor, to be brief, in my last presentation to the court I am going to try to do the same here.

Here, there were 47 subpoenas that were served upon third parties regarding January 6. It is manifestly clear as to what is being sought here. But, again, unlike most defamation cases where you have a situation where a defendant is accused of not stating accurately or stating what the person said, here, in this instance, it concerns the defendants' action in splicing the plaintiff's actual words as opposed to misstating what the plaintiff actually said. That is important, I think, because, again, the framing of the issues and the subpoenas that have followed need to be looked at through that lens in terms of what this case is really, really about.

99

I speak in making this presentation only on behalf of the plaintiff in this case because I understand there has been a statement that's been filed by the United States government in opposition by the defendant. I will call it an accusation of some sort of impropriety or a conflict of interest.

I want to allay any concerns the court may have or any questions that the court may have relating to that right at the outset, because our position is simply on behalf of the plaintiff. We have not coordinated any efforts with the Department of Justice in terms of the statement of interest. I saw the statement of interest at the time that the court and the defendant saw it, when it was filed.

We are not operating jointly in that regard. The government is here to speak on its behalf. I do not speak on behalf of the government. I simply speak on behalf of the plaintiff in relation to this dispute.

In that regard, your Honor, I want to make abundantly clear, again, the fact that these subpoenas have been served, and it really doesn't take a whole lot to facially explain what it is that the defendants are after by virtue of not only who they have subpoenaed but what they have subpoenaed, the subpoenas that have actually been served.

I know an overused term is fishing expedition, and I am always reluctant to use it, but I think this is as appropriate a circumstance there can be with regard to what the

defendants are trying to do here in seeking to essentially harass these 47 parties.

We do believe that these subpoenas, given the fact that they have no direct relationship to the falsity of the defamatory statements, the defendants' publishing of those statements, whether they did so with actual malice or the plaintiff's damages, we believe that these subpoenas were not served for a proper purpose and were served in violation of Rule 26(g); and we believe that the court should sustain the objections that have been interposed relative to these subpoenas because of the fact that, although each of these parties can voice their own objection, the plaintiff still has his standing to assert his own objections with respect to this type of discovery being engaged in by the defendants, especially in light of the issues that are in dispute in this case.

I promised to be brief. I think I am done for now. Thank you, your Honor.

THE COURT: Thank you, attorney Brito.

MR. TOBIN: Your Honor, Charles Tobin for the BBC.

To help the court with the numbers, there are actually 44 requests for information, not 47, at issue in this set. There are 32 third-party subpoenas as such, and then there were a dozen *Touhy* requests, which are in the form of letters to the agencies, with subpoenas behind them, which is the prescribed

101

format in the Code of Federal Regulations, agency by agency.

So as to each of those issues, your Honor, the President, again, has placed directly at issue his role in the violence that began on the heels of his January 6 speech.

You know it is now part of our national tragic history that an armed mob marched directly from the Ellipse to the Capitol, violently assaulted the brave law enforcement officers, stormed through the halls of Congress, with calls to hang Vice President Pence and Speaker Pelosi, and they committed this desecration right after the President told the mob that he would meet them at the Capitol.

We know that the investigations by the Department of Justice, Office of Special Counsel, the House Select January 6 Committee, the Senate, Homeland Security and Governmental Affairs Committee, and at least nine federal judges and a number of the defendants themselves found that the President's words impacted the crowd's behavior that way.

There are a lot of ways to describe the word impact or to tease out what the word impact means. The President chose the word foment in his complaint as one of the words. He also used the words called for violence. He used foment, in paragraphs 44 and 105. Call for violence in paragraph 71.

Your Honor, these various groups and committees have described it in a number of different other terms. The special counsel's final report on the 2020 Presidential election,

Volume I, at page 2, said that the President leveraged rioters' violence to further delay the official tally, the official certification of the slates of electors.

On page 30 of his report, he said that the Capitol -- the crowd had been motivated by Mr. Trump to go, and resisted, who resisted his own advisers' requests to direct them to leave the Capitol.

On page 65, special counsel used the words incited or gave aid and comfort as what the President did to those who attacked the Capitol.

At page 66, it used the word causation. It said that he caused the crowd to riot, and then he made a conscious choice not to stop it and, instead, to leverage it.

The Homeland Committee Security and Governmental Affairs report planned in plain sight a review of intelligence failures in advance of January 6, 2021. At page 104, your Honor, found that former President Trump was the primary cause of the insurrection.

The final report of the U.S. House Select Committee to investigate the January 6 attack found that the central cause of the January 6 attack was one man, former President Donald Trump.

And the special counsel in the superseding indictment in *United States v. Trump*, paragraph 11(d), Manner and Means, said that as violence ensued and his coconspirators, he and his

coconspirators exploited the disruption.

Your Honor, those are what the various investigatory bodies have found, and the court's themselves -- Ms. Dudding quoted to you from one court, Judge Bates.

Judge Contreras, in several sentencings, said that the events of January 6 involved a rather unprecedented confluence of events spurned by then President Trump.

Judge Amit Mehta said that what President Trump did was akin to telling an excited mob that corn-dealers starve the poor in front of the corn-dealer's home.

Judge Amy Berman Jackson said that his incendiary statements amount the rally may be the reason for what happened and may have inspired what happened.

Excuse me, your Honor.

There are a lot of different ways people have used to describe the connection between the President's speech. Some have called it a dog whistle. We have heard that phrase a lot with President Trump. He doesn't actually say something directly, he implies it or he uses a dog whistle.

We are entitled in discovery in this case, your Honor, when his complaint says that he fomented violence, notwithstanding the chairman of the BBC's statement that he did not -- that the documentary misleadingly, unintentionally portrayed it is a direct call for action. We are entitled for discovery purposes to find out the information that was before

these committees, talk to the witnesses who were before these committees to determine the appropriate way to present the truth argument in meeting his obligation to establish falsity.

That is not something that he can whistle past in this case, your Honor, his conduct on January 6 and the connection to the violent mobs' actions on that day.

Your Honor, defamatory meaning is an essential element for the plaintiff to plead and prove. This is not a summary judgment hearing where we are establishing whether the BBC is foreclosed from arguing that, but it remains an essential element under *Jews for Jesus v. Rapp,* in the Florida Supreme Court in 2008.

Moreover, your Honor, they have labeled this a libel per se case, but, your Honor, it is really a defamation by implication claim.

They have used the words in the complaint that we implied, we suggested, we insinuated. Those are words of implication that arise not from what is said but from what is omitted from the broadcast.

You heard Mr. Brito talk about the fact that we cut two different portions. So the case is really a defamation by implication case.

Defamation by implication in Florida arises out of *Jews for Jesus v. Rapp*, and it requires that the plaintiff establish, as a matter of actual malice law, two things.

One is that the implication was actually made in the statement. That is as far as truth or falsity. And then as far as actual malice, it requires that the plaintiff establish as a matter of proof that the defendant knew that the implication was being made and that the defendant intended the implication to be falsely made.

I cite for that authority *Block v. Matesic*, which is a decision of Judge Altman in this court.

So, your Honor, whether it is through false, their burden to prove falsity or their burden to prove actual malice, President Trump's knowledge going up to the stage, his design of the speech itself, his deviation from the speech, his awareness of the Intelligence reports that were coming into the White House, his conversations with people in the White House who told him that the election was not stolen and that, Mr. President, you should not go out into the public and say otherwise; you should get on with the transition of government since President Biden was lawfully elected as President.

Each of these issues, and then the President's own conduct in sitting in the dining room for over two hours without calling off the protesters, despite the urgings of the counsel for the President, despite the urgings of his own daughter, his special advisor, Ivanka Trump, those activities, your Honor, go directly to the issue of whether the President fomented the violence on January 6.

They are significant pieces of evidence and these are significant witnesses for us, your Honor, because they all will testify as to what the President was thinking before he brought this lawsuit, not what Mr. Brito wants to tell you is what the President was thinking when he brought this lawsuit and in the context of this lawsuit. It is very probative information, what people knew, what people said and what people did before this litigation was ever contemplated.

So, your Honor, each of the people that we have subpoenaed for documents are people who either were involved in the stop -- the hatching of the whole myth of the Stop the Steal movement. Those would be people like Sidney Powell and Ruddy Giuliani. They would be people who advised the President that the entire Stop the Steal movement was a farce. Those would be people like Eric Herschmann and Mark Meadows, his counsel and his chief of staff. Those would be people who, like Eric Herschmann, who told Ruddy Giuliani -- this is documented in the Committee reports -- who told Sidney Powell that if you do this, if you bring this information to the President -- forgive me. He said this to John Eastman -- you better have an F'ing criminal defense lawyer because the government is going to come after you.

These are people who were around the President, who encouraged him to make the statements that he made at the Stop the Steal rally.

Then there are the people afterwards, who were running into the dining room, the Oval Office dining room and asking him to please call off the rally, like Ivanka Trump and like some of the other close advisors that he had. And, certainly the people who were involved in drafting the speech and in helping him to revise the speech and in urging him not to deviate from certain portions of the speech, these are all people relevant to the issues in this case as the plaintiff has framed his complaint with the words fomenting.

I would also note that we already have had a number of these witnesses provide us with their documents or attest to us that they have no documents.

So, your Honor, the witnesses themselves, by and large, are not running to courts for motion to quash. None of them are here. None of them have gone to the courts of compliance, locations of compliance. So, your Honor, the witnesses have not spoken up for themselves in the fashion that the President has.

This is just another effort, your Honor, to make sure that we get no discovery in this case, no documents, no witness documents, no witness depositions, not even the President's deposition. Again, they are dragging their feet on giving me a date for the President's deposition.

Your Honor, now they have dragged the Department of Justice -- I wouldn't say dragged. They have brought the

Department of Justice into the fray to argue that the government has an interest in quashing these subpoenas. I can speak some more about that when the court takes up the government's statement of interest, but in summary, it is the President's Department of Justice. We know that. We know that was addressed by Judge Williams in a very recent decision in the IRS proceeding.

The President now is bringing the full force of the federal government to bear to prevent us from getting any discovery as to the truth in this case or to combat their burden to show that it was substantially false.

So for those reasons we would ask that the court simply deny the President any relief on this motion.

THE COURT: Thank you.

Attorney Brito, any reply?

MR. BRITO: Yes, your Honor.

I'd like to start off by addressing what counsel stated at the end because he said "they" have now brought the Department of Justice.

That is such a false statement because the "they" incorporates me and my firm, and, as I represented to the court, I have had actually no involvement with what the government is doing with respect to addressing the subpoenas that have been served.

So I don't appreciate the accusation that is grounded

109

in zero fact and is just designed to try to, again, extract a favorable result on a discovery issue that is based upon no facts, no evidence, and simply just an accusation directed at me and my firm, which is unsupported by anything.

With respect to the actual argument, I appreciate the fact that counsel was so candid in establishing that these subpoenas have nothing to do with this case and have everything to do with January 6.

His recitation of the historical events regarding what happened on January 6 have absolutely no relevance to this dispute, have nothing to do with what happened here.

Although counsel refers to what others have said that relate to January 6, what he seems to continually be ignoring is what BBC said about the speech that was made by the President, and that's the distraction that they are trying to implore here by virtue of their opposition to our motion here with regard to these subpoenas and these *Touhy* requests, is they don't want to limit it to what the BBC said because if we look at that, not only in paragraph 48 do we have the letter of apology from chairman Shah where, his words: This gave the mistaken impression that you had made a direct call for violent action.

His admission is followed up, your Honor, by a publication by the BBC apologizing for what it did, which followed the November 13th letter.

They stated specifically: We accept that our edit unintentionally created the impression that we were showing a single, continuous section of the speech rather than excerpts from different points in the speech and that this gave the mistaken impression that President Trump had made a direct call for violent action.

Their words, your Honor.

So to the extent that now counsel wants to again engage in distraction by trying to recast our complaint and our claim from a per se defamation claim to a defamation by implication, because it suits the defendant for that to be the claim because then it allows them to make the arguments that they are making, but the reality is that that is not the claim. The claim is a defamation per se claim, and it specifically has parameters that discovery now falls into because it is a defamation per se claim and not an implication claim.

The argument that you heard from counsel talking about all the information that describes what others have stated their belief to be with respect to the President's involvement in the events leading up to January 6 clearly demonstrates that the defendant has the information that it now seeks to obtain from other nonparties that are not subject to this action.

As I mentioned to you I think earlier, your Honor, when you deal with the issue of defamatory meaning, because that was something that counsel argued to you here with respect

to the statements and the editing of the video. The defamatory meaning is a question of law for the court to decide. Yet, they're asking the court to provide an abundance of factual information, subpoenas, records from nonparties, and claiming that the reason why they need that is for purposes of establishing the defamatory meaning.

As we heard from counsel, these subpoenas are directed to the January 6 events, not the speech. The speech is what is at issue. The speech is what should dictate the discovery that is being pursued in this case, but it is not. Defendants are going well afield.

They want a January 6 trial. BBC has no standing to seek a January 6 trial in this court, and certainly by virtue of the defenses that we anticipate they are going to raise, inclusive of the defendants that they filed in their motion to dismiss, January 6 as an event, as a day is not what should be tried before this court. It should simply be what the defendant did relative to this speech, your Honor.

So for those reasons I just want to conclude by stating what I already told you twice because I want it to be abundantly clear about this continued attack and accusations brought by BBC and its counsel at me and my firm relating to some sort of conflict of interest. Those are simply untrue and really offensive.

THE COURT: Thank you, attorney Brito.

So in the government's statement of interest -- I believe that was docket entry 91.

AUSA Feeley, you can come on up.

MR. FEELEY: Yes, your Honor.

THE COURT: In the statement of interest -- that was the notice. I'm sorry.

So in the actual statement of interest, which is docket entry 96 -- my apologies.

The government wanted to be heard in the event that I was inclined to compel a response to any of the subpoenas. In that event I am giving the government the opportunity to be heard.

MR. FEELEY: Yes, your Honor, and we appreciate that. Thank you.

I will be --

THE COURT: Just two moments.

MR. FEELEY: Yes, your Honor.

THE COURT: It may not be the best, but my organizational way is to take notes on the actual motion.

OK. Found it.

You may go forward.

MR. FEELEY: Thank you, your Honor.

There's really not much I can add on scope that hasn't been discussed extensively today as far as scope and relevance. I would like to talk just quickly about burden and

proportionality.

The subpoenas in this case that have been issued are, as you've heard, extensive. They basically ask for anything related to January 6.

We would refer you to the *Bogus v. City of Birmingham* case, which is out of the Northern District of Alabama, and I could read, with your indulgence, just a small portion of that case which talks about the court should look to whether the information being sought by the subpoenas is publicly available.

Our position, your Honor, is that the BBC has not undertaken that exercise or certainly hasn't shared that information with the government.

So with your indulgence, I will just read from it quickly.

It says: Additionally, Rule 45(d)(3)(A) requires of the court to quash or modify a subpoena that "subjects a person to undue burden." Part of the undue burden analysis asks whether subpoenaed material are available from another source, such as from public records or from a party in a lawsuit as opposed to the subpoenaed nonparty.

Then it cites a number of cases.

A nonparty should not be burdened with the gathering and producing documents that can be obtained from a public source or from one of the parties in the lawsuit. Where the

same or similar materials can be obtained reasonably and economically from a public source or another litigant, requiring a nonparty to gather and produce them is an undue burden on the nonparty.

The government, your Honor, believes that that is exactly what is happening here.

If you look at the statement of interest that was filed, there's a lot of effort put into identifying the sources, the public sources of the material, that are extremely extensive.

So if these subpoenas are allowed to go forward, they should be modified, they should be more tailored to only seek information that wasn't available publicly to the BBC.

To that extent, your Honor, I want to make clear where DOJ is in the process.

I am not involved with the process. It is being handled by Federal Programs out of D.C., and that is because there are a number of subpoenas that we have learned about, as Mr. Tobin said, to a number of different individuals, many of whom were former government officials, and that implicates the *Touhy* regulations as well as all the agencies that have been served with subpoenas.

So Fed Programs is handling that process.

My understanding, from my colleague Michael Gerardi at Federal Programs, is that he has been in communication with

Mr. Tobin about that process.

We haven't, to my understanding, issued any finalized or formal response to the *Touhy* requests or subpoenas. Those subpoenas, because they have been issued in so many different, or a compliance is required in so many different jurisdictions, there may be motions to quash in those jurisdictions.

I want to make clear that this issue could eventually all come back to this court, although compliance, you are required to file the motion to quash where the compliance is required.

I'm aware of a very recent case that I had with Judge Hunt where we filed a motion to quash a subpoena on my office here in the Southern District of Florida, and he transferred the case to the Southern District of New York where the trial judge sat because he felt that that was most economical from a judicial resource perspective.

So there are a lot of different ways this can work out. I am just sharing this with you because I want you to understand that the process is ongoing and is not completed.

There have not been motions to quashes filed by DOJ, but that is not because we have decided that we shouldn't. It is just because the process has not been completed.

Again, just to provide full candor to the court, I first became aware of these subpoenas in late May. I think they were purported to be issued in early May, maybe May 8th,

but they didn't get to our office until, I think, May 28th.

Again, my understanding -- again, not firsthand knowledge -- is that Mr. Tobin has had discussions first with the civil chief in the District of Columbia but also subsequently with Fed Programs about a time line regarding the government's response to those subpoenas, and, again, just my understanding that it is ongoing.

Regardless, going back to this undue burden issue, it is clear from the government's perspective that the subpoenas as issued are overly broad and unduly burdensome because they have not looked for this material first in publicly-available sources.

I wanted to briefly talk about the accusation that has been raised regarding a conflict. I do think it is interesting. To us, it is a clear red herring.

This is not the *Trump v. IRS* matter. First and primarily, President Trump has not sued a U.S. government entity. He has sued the BBC. So that is the fundamental difference.

Second, the BBC has voluntarily brought in the federal government by issuing the subpoenas to federal government agencies and former federal government employees. Again, another very important distinction.

DOJ employees are statutorily required to defend the interest of the United States government and must get involved

with the *Touhy* process.

So if you took Mr. Tobin's statements or position to its conclusion, any time a President was involved in civil litigation, any President, not just President Trump, and a defendant sought to issue subpoenas issued at any federal employee that somehow a conflict would arise that would, as Mr. Tobin said, would raise grave ethical considerations for any U.S. government lawyer, that was just trying to do their job, and that is simply not the case here, your Honor. I just wanted to stress that.

There is no evidence of collusion or any other evidence to suggest otherwise that there was any type of bad faith. What he seems to be arguing, Mr. Tobin, is for a presumption of collusion simply because of where everyone's situated on the different sides of the V and the fact that the U.S. government, my office, and Fed Programs was drawn into this because Mr. Tobin decided to issue a subpoena.

Again, we have a statutory obligation to protect the interests of the U.S. government. That is why we filed the statement of interest. And we also have a statutory obligation to carry through on the *Touhy* requirements. That's all we are trying to do, your Honor.

THE COURT: Thank you.

AUSA Feeley, before you sit down --

MR. FEELEY: Yes.

THE COURT: -- one of the things that I think has gotten lost in this with regard to the subpoenas, the *Touhy* request, is on behalf of whom, which of these potential subjects of these subpoenas is the DOJ coming in with regard. Am I only looking at the subpoenas directed to the government agencies?

You spoke about a number of the individuals who were prior government employees. Are you saying that your reach extends to them? To whom?

I believe, as the BBC's response noted, it can't be, or at least I don't believe it is literally all of the subpoenas that is the subject of the joint motion.

MR. FEELEY: That's correct, your Honor.

THE COURT: OK.

MR. FEELEY: So the federal agencies that are implicated, absolutely we are involved with those. My understanding -- and, again, I am not a *Touhy* expert -- my basic understanding, and I could offer additional briefing if you think it would be helpful, but my basic understanding -- Mr. Tobin may be able to shed more light on this -- is if it is a former federal government employee, for instance, former Attorney General Barr, I believe that the Federal Programs needs to get involved with that process because the *Touhy* regulations are implicated in that.

Now my understanding is there are other individuals

that had no position in the federal government, and we wouldn't be involved in weighing in on that or involved in the *Touhy* process at all with that.

THE COURT: So I am only looking, as you would say, to former federal employees and then the government agencies.

MR. FEELEY: That's my understanding, your Honor.

THE COURT: Thank you.

MR. FEELEY: Thank you, your Honor.

Just if you give me a moment to review my notes to make sure I didn't miss anything.

(Pause)

MR. FEELEY: Just one other point, your Honor. I think there is discussion because there was a grand jury proceeding in Washington that somehow that should be the venue for any disputes that might arise over whether a subpoena should be quashed. That is inaccurate.

The reason that the grand jury subpoena issue is venued in Washington is because the Federal Rules of Criminal Procedure require it to be venued there.

Civil subpoenas are a totally different animal, and, as I said earlier, Rule 45 requires initially that a motion to quash be filed where compliance is required. And in this case I think there is, gosh, maybe 13 different jurisdictions where compliance would come into issue in different venues.

THE COURT: Thank you.

MR. FEELEY: Thank you, your Honor.

THE COURT: Attorney Tobin, do you want to be heard on the government's notice of interest?

MR. TOBIN: Yes, we would, your Honor. Thank you.

Your Honor, I'm pleased that at least one issue is off the table, that their authority does not reach to standing the challenged subpoenas to private individuals who are not government employees. For example, Sidney Powell or nongovernmental organizations like the RNC. That's exactly what the *Armor Screen v. Storm Catcher* case teaches us.

Your Honor, if I just understood counsel, even a ruling in our favor to unseal the order in the district court in the District of Columbia, even if we are right and we get an unsealing order that shows that certain executive privilege issues have been settled up in that district, the Department of Justice's position is that that will not count as estoppel or precedent or anything in this particular court.

So we are now facing opposition from the Department of Justice at three different levels, if you will -- the unsealing in D.C., the subpoenas here, and the application now of any order that Chief Judge Beryl Howell may have issued up in D.C.

Your Honor, the government is effectively asking the court to again deprive the BBC of any third-party discovery in this case that goes to anything within the realm of government. For all the reasons we discussed in the joint motion regarding,

in the other joint motions, the relevancy lives within the word formulated in paragraph 44 of their complaint in the actions of government officials at that time.

As far as the burden, we are not asking the agencies for records that would pose any greater burden than asking the plaintiff himself, the President, because, after all, it is the exact same burden. The President has control over the Executive branch and, thus, all Executive branch records.

So I would submit, your Honor, the scope of discovery that your Honor determines is going to be what rises, what this motion rises and falls on.

Your Honor, they're essentially asking you to stop discovery or stay discovery, and by "they" I do mean all the parties and the government, to stay discovery on this particular issue.

Even though the President fought us on the motion to stay discovery and was successful back in February, we have an obligation, we have the right to proceed to discover our case, and these are documents that are relevant to aiding our ability to do that and to meet the substantial truth and the actual malice issues.

Your Honor, we've raised this both in the initial response to the government saying it may state an interest and then in our most recent papers, and Mr. Brito and Mr. Feeley addressed it, this statement does raise a serious conflict of

interest issue, and I'm not impugning Mr. Brito. If he says he did not speak to the Department of Justice, I have no reason to dispute that.

Obviously, your Honor, the President runs the government. The President in Executive Order 14215, one four two one five, further exerted the President's supervision and control over the Executive branch. The EO expressly forbids any "employee of the Executive branch acting in their official capacity to contravene the President on any position advanced in litigation."

What that means, your Honor, is even if the agency officials, even if the heads of the agencies, the cabinet secretaries themselves, believe that they were obligated to provide these records, they could not do so under the *Touhy* requests because they are forbidden from any disagreement with the President and what the President says, and the President is the plaintiff in this case.

That kind of helps solve a bit of a mystery. We were caught off guard by the government asserting its statement of interest here. We were having discussions in D.C. with Federal Programs branch, and then this comes into the file.

Your Honor, why did they file this in the first place. Well, by filing their own motion, the President's own motion, he made his position very clear, and the agencies were obligated by operation of the Executive Order to follow his

lead.

So even if Mr. Brito didn't have those conversations, even if President Trump didn't pick up the phone and reach out to the Attorney General and say you have to get in the way of this, the government is obligated to do that, and that is a conflict of interest, just like it was a conflict of interest for the government to be on, both for the President to be on both sides or to exert authority on both sides of the *IRS* case. Judge Williams has spoken about that very forcefully.

I asked the Department of Justice lawyer, Mr. Gerardi -- Mr. Feeley averred to him -- up in Washington, during a meet-and-confer call, if he could assure me that the President and the White House were not involved in calling the shots for the Department of Justice to file this document. He answered to me that he could only make a representation as to his own involvement and that he himself had had no discussions with the White House, and he expressly said I can't speak about what my superiors in the Department of Justice have spoken about.

So, your Honor, at this point we have to presume that they are following the Executive Order and that they are asserting the exact same interest as the President because they are obligated to.

We know that -- I think it is very telling, your Honor -- that in framing relevancy in their statement of

interest they lifted almost word for word the arguments that the President made, that the only thing that is relevant is what the BBC said or did, not anything that the President did. They didn't have to make that argument, but they did raise that argument, and in doing so they lifted directly and parroted directly from the President's own words through Mr. Brito's office.

So, your Honor, for all of these reasons we would just ask the court to simply discount and give no credence and no weight to the government's statement of interest.

THE COURT: Thank you, attorney Tobin.

Let's talk about the statement of interest and its actual, practical implications for me right now.

AUSA Feeley, you will also have an opportunity to respond. I am just going to ask attorney Tobin some questions.

MR. TOBIN: Yes, your Honor.

THE COURT: So at this point I understand that, I guess the government is considering these certain subpoenas and the requests, the *Touhy* requests, in how to respond.

At this stage, and I will pose the same question to AUSA Feeley when he gets back up, what am I to do with the statement of interest?

At this stage there doesn't seem to have been a completed process, where even if I were to compel responses for the subpoena, that they have come in and said that they won't,

based on *Touhy* or anything else. At this point they're just saying, hey, you've gotten subpoenas to federal agencies, to former federal employees, and as the government we have to examine that.

First, am I framing that correctly, in your opinion, and if so, how is that a conflict of the magnitude that Judge Williams identified in the *Trump v. IRS*, *President Trump v. IRS* case?

MR. TOBIN: Well, your Honor, I think a better way, perhaps, if it is not an outright motion-to-quash analogy of what the government is asking to happen here, it's, at the very least, a very strong amicus brief in support of the President.

I think it is more the former because it is in support of the relief that the President wants, which is, essentially, the termination of all of these requests and all of these subpoenas. So it is at worst that and at best a strong amicus brief.

Amicus briefs can be denied. Leave to file amicus briefs can be and are routinely denied for various reasons.

So, your Honor, I think at this point we are just asking for the court to affirmatively state that it will give no credence and no weight, and the basis that we have asserted are the ones that I have just argued.

I will also note, your Honor, some of the former government officials have already provided us with documents.

We have turned those over, as we are obligated to do, to plaintiff's counsel.

One of them, the former Vice President's general counsel, we cited in our papers to the court, Greg Jacobs, has said that he was specifically instructed not to cooperate by the Department of Justice.

So it is ripe for decision because it will remove a roadblock, if the court were to agree with us, that the government's statement of interest was inappropriate to assert in this case and should not be considered.

Then, your Honor, the conflict issue really is a basis or an additional basis to discount and disregard because it really is merely an echo of the President's will and the President's voice by operation of the Executive Order. The Department of Justice is not capable of independently evaluating its interest in this case because the President will not let them.

So, your Honor, that is additional grounds, and that is why what Judge Williams, in her very forceful opinion, is relevant to your consideration.

THE COURT: Thank you.

MR. TOBIN: Thank you.

THE COURT: AUSA Feeley, you have the last word.

MR. FEELEY: Yes, your Honor. Thank you.

Again, very briefly, my understanding about the import

of the statement of interest, first of all, we filed that statement pursuant to 28, U.S.C., Section 517, which says that we have an obligation to attend to the interests of the U.S. in a suit pending in a court in the United States.

So we filed that based upon that statute, based upon our obligation, because there is an interest pending here for federal agencies and former federal employees.

You have the ability to consider it, disregard it, consider part of it. You can do with it pretty much as you wish. But again, regardless of what happens in this court, there may be other motions to quash subsequently. We offered it to you because we thought it might help inform your understanding of the issues and might help you make a reasoned decision here and for nothing more, your Honor.

THE COURT: Go ahead.

MR. FEELEY: As far as the collusion or conflict-of-interest issue, first of all, again, this is a grave allegation. What the BBC is asking for is to really create a new standard, whereby any time during President Trump's presidency or any future presidency where an issue arises that involves both a president and the U.S. government that somehow there is an insurmountable burden, and also Mr. Tobin is suggesting that there should be an evidentiary presumption, without any evidence one way or another, that collusion has taken place. I think that is extremely

dangerous.

For the reasons I stated earlier, there are a lot of factual distinctions between this case and the *Trump v. IRS* case, and I just would implore you to look at those factual distinctions.

Also, Mr. Tobin references Executive Order and he says there is really no difference between President Trump and the federal government. Regardless of that Executive Order, we -- and when I say "we," I mean my office, line AUSAs, lawyers at Federal Programs -- have an obligation to adhere to the *Touhy* requirements, follow the requirements, and process those requests appropriately. It doesn't change decades, if not longer, of jurisprudence and statutory constructions that have led to this system. We have to follow that system and that process has to play out.

THE COURT: Thank you.

MR. FEELEY: Thank you, your Honor.

THE COURT: OK. A written order will follow, but in the interests of time, given where we are standing with discovery and what discovery I may require to be produced, I am going to give some oral orders and then some other guidance, but a full written order will be forthcoming because an argument, which everyone did very well today -- thank you -- you have raised some additional issues with some additional cases that I feel like I must probe. However, there are some

things that are clear at this point.

Starting with docket entry No. 52, the joint motion for discovery hearing related to The Donald J. Trump Revocable Trust, which the court construed as defendants' motion to compel, that motion is granted.

As it stands, it can't be said, given the large scope of damages that is currently in the complaint, that all brand, properties, and businesses that are under President Trump's purview is alleged to have been harmed and diminished. In the same way that the plaintiff has to prove up those damages, the defendant gets to defend against them, and the defendant is not required to accept the statements of plaintiff's expert. The defendant is not even required to only review the evidence that the plaintiff's experts receive. They are able to, on their own, defend against damages.

What I understand from argument is that the scope isn't necessarily broad if we accept the claims that are currently in this complaint. The scope is only broad with this amendment of the complaint and the new damages theory. However, that is not the complaint that is currently before me and, as has been stated several times today, the scope of discovery under federal Rule 26 is anything that is nonprivileged that is related to the claims and damages at issue.

Moreover, the scope of discovery is much broader than

the scope of admissibility, and here where there is a liberal scope under the Federal Rules of Civil Procedure of discovery and all of President Trump's brand, properties, and businesses are impugned or said to have been impugned and result in both economic and reputational damage, all of that is now at issue in the case.

So the motion to compel as to the subpoena to The Donald J. Trump Revocable Trust is granted.

A written order will follow with regard to timing. I want to take another look to see what would be a reasonable time line to begin the production of those documents, to have those documents fully produced in light of both the discovery deadline and what is requested.

With regard to docket entry Nos. 57 and 79, I will let the parties know that the motion to compel that the court construes these motions for discovery will be granted in part and denied in part. A written order will follow to give more guidance.

Overall, I do believe that the scope of the discovery requests propounded by the BBC is overbroad. I also do not believe that the scope within the complaint is limited to the falsity and the timing of the statements.

What is specifically mentioned in the complaint is the impression that the public received and whether or not the impression that the BBC's airing of those statements gave the

false impression that President Trump was fomenting violence. So I do believe that the impression in all of the forms that discovery can illuminate that is at issue.

That said, I do not believe that a full relitigation of January 6 is called for simply because the documentary itself was related to January 6. That takes a more exacting view of the discovery requests.

I am also guided by the fact that I do not believe that a meet and confer in the way that the federal rules and the way that the -- I'm sorry, that the local rules of this court, as well as this court, required. Basically, I feel like the parties are asking the court to do its work of narrowing those discovery requests in a way that the court is refusing to do, especially given the number of requests.

So the court will issue a written order that fully analyzes the case, the cases that come to that conclusion that I just stated, that all of the impressions that were received by President Trump's statements on January 6 are at issue. The full relitigation of January 6 is not at issue.

With that guidance, immediately, not waiting for the actual written order, the parties should begin to meet and confer on which discovery requests will be responded to and which they believe still have issues.

Upon the issuance of the written order, if there still remains an actual, genuine dispute following good faith meet

and confers, the parties should come back and we can then go through request by request. But the court will not undertake to go through request by request and do the work that the parties are obliged under the rules to do.

With regard to the subpoenas, it is the same order. I need to take a further look, but it appears that where the objections are to the fact that the subpoenas were issued and if there is a motion to quash as to the subpoenas themselves, that motion to quash is denied. The subpoenas themselves can be issued.

It is the scope of what is requested under the subpoenas where the analysis lies. But again, especially on behalf of any of the subjects of the subpoenas, I am not sure -- it sounds like some -- but a full meet and confer has been done.

So the court's order will include that scope for further discussion among counsel who actually represent the subjects of the subpoenas, and then the DOJ's work can continue.

Any questions or concerns on behalf of the plaintiff?

MR. BRITO: I don't believe so, your Honor, not at this time. Thank you.

THE COURT: Thank you.

Any questions or concerns on behalf of the defendant?

MR. TOBIN: Bear with me one moment, Judge.

THE COURT: Yes. Go ahead.

And then, AUSA Feeley, I will be asking you the same so you can prepare.

MR. TOBIN: Your Honor, I just wanted to be clear. You're not making any rulings with respect to any amendments to the complaint and the scope that comes out of any amendments to the complaint?

THE COURT: I am not. I am not making any rulings on that, and I would not have the jurisdiction to make the rulings.

Any motion to amend the complaint, which at this point would have to be a motion, would be before Judge Altman. Because counsel for the defendant has stated on the record that they would oppose such motion, I cannot consider a new complaint that is not before me, especially in the event that I do not know whether or not that motion to amend would be granted, as that is solely within the purview of Judge Altman. He rules on all of his motions to amend.

MR. TOBIN: So none of your rulings today go to whatever you have not seen and we do not have before us on an amended complaint.

THE COURT: Right. All of my rulings today and all of the forthcoming rulings, unless somehow there is an amended complaint on the docket before I issue this written order, which I doubt that there would be, considering that any motion

to amend would have to be filed and opposed, I am going based on the complaint, the operative complaint, that is currently on the docket.

MR. TOBIN: Right. One final question, your Honor. The order, your discovery order, requires motion for entry.

Do we need to file anything further for the defense?

THE COURT: No.

MR. TOBIN: OK. Thank you, your Honor.

THE COURT: AUSA Feeley -- and then I will circle back to you, attorney Brito -- is there any questions or concerns?

MR. FEELEY: No, your Honor, just to thank you for the opportunity to be heard.

THE COURT: Thank you.

MR. BRITO: Nothing further. Thank you, your Honor.

THE COURT: Thank you so much. I know I have delayed you-all's lunches. I have heard my stomach growling.

We are now adjourned.

THE DEPUTY CLERK: Court's adjourned.

(Adjourned)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription to the best of my ability of the digital audio recording in the above-entitled matter.

July 23, 2026

s/ Joanne Mancari
Joanne Mancari, RPR, CRR, CSR
Court Reporter
jemancari@gmail.com

MR. BRITO: [63] 3/8 3/12 19/5 19/7 21/9 21/12 21/24 22/9 22/23 23/6 23/10 24/18 24/20 25/7 25/10 26/25 27/5 27/15 29/6 30/18 31/11 31/22 32/1 32/22 32/25 33/3 34/8 34/18 49/18 50/22 51/1 51/4 51/9 51/13 51/15 51/18 57/21 58/1 58/4 58/11 60/7 60/10 62/8 62/11 62/16 63/16 63/20 63/23 66/1 66/5 66/18 86/25 91/5 91/13 92/2 94/16 94/20 96/16 98/9 98/11 108/16 132/21 134/14
MR. CORP: [4] 71/18 71/21 71/23 72/17
MR. FEELEY: [16] 87/7 112/4 112/13 112/17 112/22 117/25 118/13 118/15 119/6 119/8 119/12 120/1 126/24 127/16 128/17 134/11
MR. TOBIN: [22] 3/16 4/25 9/18 19/2 34/20 37/16 63/18 72/9 72/11 72/15 77/5 87/4 100/20 120/4 124/16 125/9 126/22 132/25 133/4 133/19 134/4 134/8
MS. DUDDING: [15] 3/19 38/4 40/8 47/3 47/17 78/16 78/20 78/22 79/2 79/13 79/19 80/25 82/1 87/17 96/18
MS. GARCIA: [15] 67/10 67/12 67/19 67/21 69/20 70/10 71/6 71/10 71/14 72/20 73/9 74/7 74/15 74/18 75/3
THE COURT: [129] 3/11 3/15 3/21 9/14 19/1 19/3 19/6 20/8 21/11 21/22 22/6 22/10 23/4 23/8 24/12 24/19 24/22 25/9 26/21 27/2 27/13 29/5 30/16 31/6 31/15 31/25 32/20 32/23 33/1 34/5 34/17 34/19 37/15 37/17 39/21 47/1 47/13 49/16 50/19 50/23 51/3 51/8 51/11 51/14 51/16 57/19 57/22 58/2 58/5 59/12 60/8 62/6 62/9 62/12 63/15 63/21 65/21 66/3 66/6 67/8 67/11 67/16 67/20 69/7 70/7 70/11 71/8 71/12 71/17 71/20 71/22 72/10 72/13 72/16 72/18 73/17 74/12 74/17 75/1 77/2 78/10 78/18 78/21 78/23 79/8 79/17 80/12 81/18 86/7 86/19 87/3 87/6 87/9 91/3 91/12 91/25 94/13 94/18 96/15 97/25 98/10 100/19 108/14 111/25 112/5 112/16 112/18 117/23 118/1 118/14 119/4 119/7 119/25 120/2 124/11 124/17 126/21 126/23 127/15 128/16 128/18 132/23 133/1 133/8 133/22 134/7 134/9 134/13 134/15
THE DEPUTY CLERK: [3] 3/3 86/20 134/18

$

$1 [2] 8/16 11/10
$1.6 [1] 6/24
$10 [3] 35/6 43/12 97/17
$5 [1] 22/18

1

10 [3] 47/2 47/22 65/24
100 [7] 7/5 7/24 13/21 33/3 79/12 91/14 92/20
10019 [1] 2/9
101 [3] 7/8 13/21 20/22
103 [1] 20/10
104 [2] 89/18 102/16
105 [2] 96/1 101/22
107 [1] 89/19
11 [4] 47/2 47/22 65/24 102/24
114 [1] 88/4
115 [1] 43/4
12 [4] 8/8 13/24 15/14 15/14
12-second [2] 18/8 28/20
126 [1] 53/3
1266 [1] 21/25
12:20 [1] 86/17
13 [2] 41/18 119/23
13-second [1] 43/11
131 [1] 89/19
134 [1] 1/8
135 [2] 38/19 96/1
136 [1] 89/19
137 [1] 89/19
138 [1] 96/1
139 [1] 91/18
13th [1] 109/25
14 [1] 6/2
14215 [1] 122/5
14th [2] 38/20 46/7
150 [1] 88/4
152 [2] 53/4 96/2
153 [1] 95/15
167 [2] 79/4 97/22
1675 [1] 2/8
169 [1] 91/19
18 [1] 89/18
18th [1] 47/8
1909 [1] 2/4
1927 [1] 5/5
1991 [1] 54/22
1st [1] 6/4

2

20 [1] 15/20
200 [2] 79/6 79/12
20006 [1] 2/4
2008 [1] 104/12
2016 [1] 37/3
2017 [1] 64/14
2019 [3] 23/25 30/17 31/2
202-661-2218 [1] 2/5
2020 [8] 39/6 47/24 48/12 62/5 62/18 88/17 93/11 101/25
2021 [9] 37/4 39/5 50/6 62/19 62/23 63/2 63/5 64/15 102/16
2024 [1] 37/3
2025 [1] 14/13
2026 [4] 1/5 6/23 14/14 135/8
20th [1] 16/12
21 [1] 1/5
2121 [1] 1/16
21st [1] 47/7
2218 [1] 2/5
23 [1] 135/8
25 [2] 3/3 86/20
25-CV-25894-RKA [1] 1/2
25894 [2] 3/3 86/20
26 [5] 24/15 64/19 88/11 100/9 129/22
26th [1] 63/12
28 [1] 127/2
28th [1] 116/1
2nd [4] 10/21 11/18 15/20 16/11

3

30 [3] 15/8 91/20 102/4
3034547 [1] 64/14
305-614-4071 [1] 1/17
30th [1] 15/12
32 [2] 84/22 100/23
33.8 [1] 37/4
33134 [1] 1/16
367 [1] 68/22
379 [1] 21/25

4

40 [2] 44/20 63/19
400 [5] 8/2 23/25 25/3 26/5 32/10
4071 [1] 1/17
44 [4] 82/9 100/22 101/22 121/2
441 [1] 95/14
45 [2] 113/16 119/21
46 [1] 37/4
47 [11] 4/8 4/11 44/20 53/5 63/19 86/16 98/2 98/5 98/14 100/2 100/22
48 [2] 50/3 109/19

5

50 [3] 7/21 7/22 7/24
500 [1] 46/16
503 [2] 39/1 79/2
517 [1] 127/2
52 [2] 3/23 129/2
542 [1] 68/22
55 [1] 39/24
55.19 [1] 37/3
57 [4] 4/1 37/22 38/9 130/14

6

6,000 [4] 5/24 15/23 38/24 70/21
61 [3] 4/7 4/10 98/4
646-346-8094 [1] 2/9
65 [1] 102/8
66 [1] 102/11
663759 [1] 64/15
6th [6] 39/9 39/19 41/10 45/14 47/23 95/2

7

70 [1] 40/12
70-minute [1] 28/20
71 [1] 101/22
735 [2] 6/2 16/7
79 [6] 4/4 38/11 86/10 87/12 96/1 130/14

8

80,000 [1] 70/21
8094 [1] 2/9
86 [1] 51/7
87,000 [3] 5/24 15/23 38/25
8:00 [1] 17/6
8th [1] 115/25

9

90 [1] 15/11
91 [1] 112/2
95 [1] 43/4
96 [2] 4/12 112/8
97 [1] 20/9

A

abandoned [3] 43/25 48/1 66/4
abandoning [2] 34/7 34/8
ability [6] 43/11 94/7 94/11 121/19 127/8 135/5
able [16] 17/2 31/7 42/17 43/24 47/10 47/18 61/13 66/13 76/24 82/20 84/24 85/9 85/17 96/23 118/20 129/14
about [100] 8/12 8/21 9/23 10/2 16/8 17/6 22/12 23/10 23/11 24/23 25/23 26/4 26/6 26/15 27/25 28/19 28/19 28/21

A

about... [82] 31/15 34/22 34/23 37/18 37/19 39/21 40/1 40/23 41/16 42/9 43/7 43/10 43/17 43/18 44/13 44/16 45/5 48/9 49/6 57/11 58/25 59/6 59/9 59/12 60/2 60/3 60/25 61/23 62/1 65/13 66/3 67/3 68/11 69/13 69/25 70/11 71/1 72/2 78/6 78/25 78/25 79/4 79/12 81/20 82/6 83/7 83/15 83/22 83/25 84/1 84/5 84/9 84/22 85/7 86/13 89/22 95/2 95/3 95/9 97/7 97/10 97/12 97/15 97/20 98/25 104/20 108/3 109/14 110/17 111/21 112/25 113/8 114/18 115/1 116/5 116/13 118/7 123/9 123/17 123/19 124/12 126/25
above [1] 135/6
above-entitled [1] 135/6
abrito [1] 1/17
absolute [2] 44/25 48/18
absolutely [3] 58/24 109/10 118/16
abundance [1] 111/3
abundant [1] 19/25
abundantly [6] 19/20 25/17 25/18 26/14 99/17 111/21
abuse [1] 14/23
accept [5] 35/4 93/23 110/1 129/12 129/17
access [2] 45/8 84/13
accomplish [1] 61/14
according [4] 6/3 10/20 11/8 88/24
accounting [2] 12/3 12/3
accurate [6] 9/23 21/13 21/14 45/15 54/5 135/4
accurately [1] 98/18
accusation [4] 99/4 108/25 109/3 116/13
accusations [1] 111/21
accused [1] 98/18
accuses [1] 88/17
accusing [1] 88/19
acknowledge [2] 24/6 27/8
acknowledged [2] 52/11 61/9
acknowledgement [1] 28/24
acknowledging [2] 26/25 27/1
acknowledgment [3] 58/23 61/8 95/8
across [6] 4/17 5/19 38/12 46/1 46/5 79/3
act [1] 52/19
acted [2] 58/14 58/18
acting [2] 68/6 122/8
action [24] 22/3 23/17 23/18 27/21 30/14 31/13 39/8 41/11 44/21 50/12 52/1 52/8 60/12 60/21 64/11 80/11 81/3 89/1 89/9 98/20 103/24 109/22 110/6 110/22
actionable [1] 55/14
actions [7] 13/1 39/7 44/16 54/13 54/14 104/6 121/2
active [2] 79/23 80/2
activities [1] 105/23
actual [45] 12/13 17/18 21/14 30/24 41/4 41/8 49/25 50/20 50/25 51/1 51/20 51/23 52/13 52/16 52/23 52/24 53/7 53/16 53/21 54/15 56/17 58/1 58/5 58/14 58/19 58/25 59/5 60/17 79/22 80/5 83/3 88/22 95/16 98/20 100/6 104/25 105/3 105/10 109/5 112/7 112/19 121/20 124/13 131/21 131/25
actually [13] 41/21 44/4 54/19 57/4 86/13 93/12 98/21 99/22 100/21 103/18 105/1 108/22 132/17
add [1] 112/23
addition [3] 30/9 58/1 65/17
additional [6] 56/24 118/18 126/12 126/18 128/24 128/24
Additionally [2] 73/9 113/16
address [8] 7/12 23/19 46/24 50/6 65/19 76/24 77/4 91/7
addressed [4] 69/24 71/16 108/6 121/25
addressing [2] 108/17 108/23
adhere [1] 128/10
adjourned [3] 134/17 134/18 134/19
admissibility [1] 130/1
admission [20] 38/11 48/20 58/23 86/3 87/13 87/20 87/23 88/6 89/3 89/17 89/22 90/13 90/24 92/9 92/10 95/6 95/8 95/25 96/20 109/23
admissions [3] 4/6 53/5 86/11
admit [4] 90/5 92/12 96/2 96/4
admits [1] 80/20
admitted [3] 61/12 80/24 90/16
admitting [1] 27/1
admonition [1] 64/16
adopt [1] 52/2
adopted [1] 64/19
advance [2] 73/5 102/16
advanced [4] 64/24 92/20 92/20 122/9
adversely [1] 94/7
advice [2] 75/10 75/22
advised [1] 106/13
advisers' [1] 102/6
advisor [1] 105/23
advisors [4] 45/5 48/13 48/22 107/4
Affairs [3] 63/6 101/15 102/15
affiliated [1] 8/21
affirmative [2] 11/16 11/19
affirmatively [1] 125/21
affording [1] 12/14
afield [3] 65/3 96/7 111/11
after [16] 6/5 9/7 12/9 13/6 14/1 15/25 18/21 31/10 54/1 60/19 67/5 71/8 99/20 101/10 106/22 121/6
afternoon [6] 40/21 86/19 86/25 87/4 87/7 87/17
afterwards [1] 107/1
again [72] 9/1 11/8 13/9 13/19 14/6 15/1 15/22 23/19 26/10 26/12 28/9 29/9 32/12 33/9 37/25 41/19 42/6 42/20 42/25 44/17 45/25 46/21 47/11 48/9 48/18 52/5 56/19 57/4 65/14 69/1 75/12 82/10 82/17 83/4 83/18 84/3 85/14 85/18 87/13 87/25 88/7 88/13 88/16 88/21 89/2 89/24 91/6 91/22 95/3 95/5 96/6 96/9 97/6 98/16 98/22 99/18 101/3 107/22 109/1 110/8 115/23 116/2 116/2 116/6 116/22 117/18 118/17 120/23 126/25 127/10 127/17 132/12
against [7] 38/17 53/13 59/18 76/9 94/11 129/11 129/15
agencies [13] 68/13 68/20 100/25 114/21 116/22 118/6 118/15 119/5 121/4 122/12 122/24 125/2 127/7
agency [5] 44/23 62/24 101/1 101/1 122/11
agents [1] 68/5
ago [6] 6/21 8/16 16/7 27/17 70/22 94/15
agree [8] 24/13 24/19 24/21 31/18 48/5 81/21 92/5 126/8
agreed [1] 94/9
agreement [1] 17/2
ahead [5] 37/21 86/8 86/12 127/15 133/1
aid [4] 63/18 75/23 89/5 102/9
aiding [1] 121/19
air [2] 40/13 96/25
airing [1] 130/25
akin [1] 103/9
al [3] 1/7 3/5 86/22
Alabama [1] 113/6
ALEJANDRO [3] 1/13 3/8 86/25
aligning [1] 61/2
all [110] 3/6 5/19 6/5 7/4 8/25 9/9 9/14 10/11 10/13 10/19 10/22 12/21 16/12 16/21 17/17 18/3 18/7 22/11 22/17 29/17 29/18 29/18 29/19 29/20 30/15 30/21 31/3 31/17 35/8 35/11 35/18 36/14 37/10 37/12 38/12 41/10 41/22 42/25 45/25 48/15 53/23 56/7 56/8 58/6 59/3 59/8 59/22 59/24 61/25 61/25 62/4 62/18 62/20 62/22 63/1 63/4 63/7 63/10 68/13 69/2 69/7 70/8 75/10 76/13 76/15 76/16 79/3 79/9 79/11 80/1 81/16 81/22 81/23 82/20 82/25 83/3 89/14 89/19 90/3 91/23 93/2 94/4 94/4 94/15 97/4 106/2 107/7 110/18 114/21 115/8 117/21 118/11 119/3 120/25 121/6 121/8 121/13 124/8 125/15 125/15 127/1 127/17 129/7 130/3 130/5 131/2 131/17 133/18 133/22 133/22
all's [1] 134/16
allay [1] 99/6
allegation [3] 13/17 15/3 127/18
allegations [12] 7/3 8/11 11/24 12/8 13/15 17/8 18/14 18/15 21/14 25/11 35/16 43/7
allege [1] 90/16
alleged [7] 6/18 21/21 24/8 50/3 54/17 95/5 129/9
alleges [1] 7/5
alleging [1] 32/6
allow [2] 33/24 69/10
allowed [1] 114/11
allowing [1] 94/3
allows [1] 110/12
alluded [1] 33/13
almost [3] 6/7 44/7 124/1
alone [1] 20/12
along [4] 3/9 34/3 87/1 87/5
already [22] 14/13 14/13 26/20 44/1 44/2 44/5 45/10 45/19 48/4 48/21 48/24 52/10 58/22 63/22 73/24 75/25 80/24 87/21 92/5 107/10 111/20 125/25
already-litigated [1] 48/24
also [48] 3/12 12/16 12/16 12/17 13/19 14/3 14/5 14/8 14/22 15/5 41/24 43/3 43/14 44/3 45/7 45/12 46/24 48/8 48/17 48/21 49/24 55/21 64/10 68/10 74/5 74/20 83/25 84/16 85/11 88/13 88/15 89/21 90/5 90/10 90/12 95/10 95/19 98/2 101/20 107/10 116/4 117/20 124/14 125/24 127/22 128/6 130/20 131/8
alteration [2] 55/1 55/3
alterations [1] 55/11
although [5] 79/10 81/8 100/11 109/12 115/8
Altman [10] 3/4 5/9 5/20 15/14 15/25 64/16 86/21 105/8 133/12 133/17
Altman's [3] 10/20 11/19 83/12
always [3] 15/18 93/19 99/24
am [48] 5/8 19/5 24/7 25/11 26/21 27/9 27/10 28/9 28/23 28/24 28/25 29/11 30/21 31/22 32/6 32/6 37/21 39/22 47/13 54/2 56/25 62/11 66/14 71/10 79/15 80/13 80/14 86/14 98/4 98/9 98/12 99/24

A

am... [16] 100/17 112/11 114/16 115/18 118/5 118/17 119/4 124/15 124/21 125/5 128/20 131/8 132/13 133/8 133/8 134/1
amazing [1] 63/21
amend [11] 18/4 18/5 25/16 28/25 29/1 36/15 86/1 133/11 133/16 133/18 134/1
amended [4] 20/1 24/12 133/21 133/23
amending [1] 25/15
amendment [5] 32/20 32/23 33/25 35/12 129/19
amendments [3] 29/14 133/5 133/6
America [1] 4/13
American [1] 21/2
Americas [2] 12/16 13/9
amicus [4] 125/12 125/16 125/18 125/18
Amit [1] 103/8
Amoco [1] 21/24
among [1] 132/17
amongst [1] 93/20
amount [5] 19/9 29/12 49/13 85/15 103/12
amounts [1] 9/4
Amy [1] 103/11
analogy [1] 125/10
analysis [5] 27/18 57/17 95/15 113/18 132/12
analyzes [1] 131/16
anew [1] 29/2
animal [1] 119/20
announce [2] 3/6 86/23
annual [2] 20/14 29/20
another [11] 35/13 42/23 47/9 73/25 74/6 107/19 113/19 114/2 116/23 127/24 130/10
answer [6] 66/1 71/8 71/10 71/12 71/18 72/18
answered [1] 123/15
answering [2] 25/7 31/23
answers [7] 47/7 47/22 66/24 87/22 90/6 90/10 91/1
anticipate [1] 111/14
any [110] 4/16 6/12 6/14 6/16 7/15 9/8 9/25 10/1 10/15 11/7 12/21 13/4 17/13 17/24 18/1 18/11 21/20 24/16 25/5 27/9 27/10 27/19 28/12 29/14 29/15 30/12 30/13 30/22 30/24 31/7 31/13 32/2 32/9 34/7 35/11 37/11 39/11 41/5 42/10 42/11 42/17 44/22 45/20 54/6 58/7 62/24 64/4 67/25 68/8 68/13 69/7 69/14 69/16 70/18 71/1 74/23 75/7 75/9 75/9 76/14 76/16 76/17 76/18 78/3 78/8 80/21 83/6 83/20 85/9 87/11 88/11 88/12 89/2 90/16 95/20 96/11 99/6 99/6 99/9 108/9 108/13 108/15 112/10 115/2 117/3 117/4 117/5 117/8 117/11 117/12 119/15 120/20 120/23 121/5 122/8 122/9 122/15 127/19 127/20 127/24 132/13 132/20 132/24 133/5 133/5 133/6 133/8 133/11 133/25 134/10
anyone [1] 68/6
anything [14] 9/24 50/17 94/15 96/25 97/13 109/4 113/3 119/10 120/17 120/24 124/3 125/1 129/22 134/6
apart [1] 39/25
apologies [3] 9/14 47/13 112/8
apologize [1] 97/20
apologized [1] 88/25
apologizes [1] 50/14
apologizing [1] 109/24
apology [3] 61/8 61/9 109/20
appear [1] 38/7
APPEARANCES [2] 1/12 1/20
appears [1] 132/6
application [1] 120/20
applies [2] 65/11 74/20
appreciate [5] 25/10 28/22 108/25 109/5 112/13
appreciated [1] 19/13
approached [1] 16/23
appropriate [10] 15/9 31/11 31/12 31/18 64/25 65/20 92/21 95/18 99/25 104/2
appropriately [2] 15/13 128/12
approximately [2] 86/3 90/25
April [4] 5/21 15/12 16/3 47/7
April 21st [1] 47/7
April 30th [1] 15/12
arbitrary [1] 32/7
are [269]
argue [14] 4/23 14/5 15/5 16/16 18/2 18/6 18/10 28/12 36/18 50/16 54/4 55/18 56/4 108/1
argued [10] 24/2 26/19 28/4 33/10 49/24 51/5 51/24 52/1 110/25 125/23
arguing [9] 19/3 32/13 34/25 53/23 56/25 80/17 98/8 104/10 117/13
argument [40] 4/14 4/16 5/10 13/19 18/12 19/9 28/10 29/23 33/9 34/7 34/8 35/13 36/21 36/24 37/22 39/22 49/19 50/1 52/5 57/20 60/9 60/15 61/1 65/10 67/9 69/11 81/1 86/12 86/15 86/16 91/7 92/14 93/10 104/3 109/5 110/17 124/4 124/5 128/23 129/16
arguments [11] 16/19 29/7 33/7 33/22 65/23 86/10 92/7 94/2 94/8 110/12 124/1
arise [3] 104/18 117/6 119/15
arises [2] 104/23 127/21
arising [1] 14/21
armed [1] 101/6
Armor [1] 120/10
around [5] 6/18 21/3 47/8 61/16 106/23
array [1] 64/10
Art [1] 36/3
articles [4] 16/8 38/21 42/25 43/1
articulated [2] 11/1 71/25
as [252]
ascertained [1] 58/7
aside [1] 11/12
ask [18] 15/10 18/16 18/18 33/23 35/4 37/12 43/6 46/21 49/3 72/14 83/22 90/25 96/2 96/13 108/12 113/3 124/9 124/15
asked [16] 5/21 8/24 9/18 9/24 30/14 30/20 35/20 43/17 51/6 55/23 70/7 78/5 82/18 90/6 91/9 123/10
asking [27] 13/5 13/7 24/19 31/15 33/17 33/17 45/17 48/9 49/4 53/9 59/22 70/14 70/16 77/18 85/25 90/20 107/2 111/3 120/22 121/4 121/5 121/12 125/11 125/21 127/18 131/12 133/2
asks [3] 65/12 96/3 113/18
aspect [1] 46/25
aspersions [1] 54/6
assaulted [1] 101/7
assert [6] 6/15 72/24 75/8 75/8 100/13 126/9
asserted [1] 125/22
asserting [2] 122/19 123/22
assessing [1] 27/19
asset [2] 7/20 30/11
assets [10] 8/13 8/19 13/23 24/1 29/17 29/18 31/17 35/8 37/7 85/23
assistance [2] 46/21 91/1
associated [1] 21/19
assume [1] 14/10
assure [1] 123/12
at [148]
attached [4] 26/6 50/4 57/25 64/1
attack [7] 39/6 53/11 63/8 83/1 102/20 102/21 111/21
attacked [2] 89/6 102/10
attacking [1] 32/13
attempt [3] 18/2 43/15 70/15
attend [1] 127/3
attention [4] 18/13 18/14 54/20 76/23
attest [1] 107/11
attorney [31] 19/3 20/8 34/19 37/17 38/2 39/22 49/17 50/20 59/14 60/8 69/11 73/18 77/3 77/3 78/11 78/12 80/13 87/15 91/4 96/15 96/17 98/8 100/19 108/15 111/25 118/22 120/2 123/4 124/11 124/15 134/10
attribute [1] 55/7
audience [1] 13/24
audiences [1] 40/14
audio [2] 1/10 135/5
auditing [1] 14/18
AUSA [8] 87/8 112/3 117/24 124/14 124/21 126/23 133/2 134/9
AUSAs [1] 128/9
authority [3] 105/7 120/6 123/8
authorizes [1] 11/14
automatically [1] 54/12
autonomy [1] 76/1
available [12] 11/2 11/3 38/21 70/23 90/17 90/18 96/23 96/25 113/10 113/19 114/13 116/11
Avenue [1] 81/9
averred [1] 123/11
avoid [1] 64/4
awaiting [1] 25/13
aware [7] 5/8 6/9 10/22 10/22 45/11 115/11 115/24
awareness [1] 105/13

B

back [32] 11/15 13/3 23/19 25/7 30/20 31/2 34/6 41/15 60/10 64/2 67/12 67/21 69/1 69/20 71/6 71/15 72/13 72/21 74/25 75/15 77/3 82/18 83/5 86/15 86/17 95/6 115/8 116/8 121/17 124/21 132/1 134/9
bad [1] 117/12
BALLARD [3] 2/3 2/8 3/17
ballardspahr.com [2] 2/5 2/10
Barr [1] 118/22
barrier [1] 69/14
base [1] 10/14
based [19] 5/11 7/2 8/12 18/15 18/15 21/4 26/10 28/11 44/2 60/17 65/2 81/19 96/20 96/24 109/2 125/1 127/5 127/5 134/1
basic [3] 85/7 118/18 118/19
basically [3] 12/2 113/3 131/11
basis [14] 15/2 21/15 25/24 27/3 30/6 44/2 44/9 84/16 86/5 90/16 95/19 125/22 126/11 126/12
batch [1] 95/24
Bates [3] 81/7 81/19 103/4
BBC [64] 3/19 5/3 5/11 8/10 23/14 23/14 28/14 28/16 38/8 38/17 38/24 39/20 40/4 40/12 40/16 40/19 40/24 41/5 43/1 45/1

B
BBC... [44] 46/13 46/19 50/3 50/5 50/14 57/24 59/16 64/3 64/3 64/6 78/19 78/21 79/1 79/4 79/9 79/10 79/11 80/20 82/7 82/10 82/13 87/5 87/5 88/19 89/3 90/2 90/14 91/17 97/23 100/20 104/9 109/14 109/18 109/24 111/12 111/22 113/11 114/13 116/18 116/20 120/23 124/3 127/18 130/20
BBC's [8] 39/8 39/17 83/2 95/6 97/9 103/22 118/10 130/25
be [173]
bear [5] 21/6 22/11 95/21 108/9 132/25
bearing [2] 20/13 55/12
bears [1] 55/8
became [2] 49/20 115/24
because [111] 4/11 4/13 4/16 6/21 7/25 8/23 9/10 14/8 17/14 23/20 23/24 24/11 24/12 25/20 26/6 26/7 26/19 27/5 28/1 28/7 28/10 29/10 32/20 32/23 33/1 33/18 36/1 37/17 39/8 40/9 43/7 51/4 51/14 52/10 56/1 56/22 57/23 59/10 59/17 59/25 65/14 65/24 66/11 67/13 67/22 68/10 70/1 70/17 71/7 71/25 72/6 73/21 74/13 74/20 77/18 78/3 78/23 80/7 81/1 83/16 84/15 89/24 92/5 93/4 93/5 93/9 94/1 94/8 94/14 95/18 95/20 96/11 96/21 98/22 99/2 99/8 100/11 106/2 106/21 108/18 108/20 109/18 110/11 110/12 110/15 110/24 111/20 114/17 115/4 115/15 115/18 115/21 115/22 116/10 117/14 117/17 118/23 119/13 119/18 121/6 122/15 123/22 125/13 126/7 126/12 126/16 127/6 127/12 128/22 131/5 133/13
become [1] 66/7
becomes [1] 94/10
been [73] 5/17 5/17 5/18 6/7 6/8 6/19 8/8 8/14 8/14 10/7 14/7 15/15 15/22 16/4 16/24 17/1 19/23 20/6 21/21 23/2 23/12 23/12 24/8 27/6 32/5 43/24 45/12 45/19 46/5 47/14 47/18 61/11 64/24 65/3 66/13 68/8 73/24 74/1 74/5 77/7 79/11 81/24 82/20 84/5 85/8 86/13 90/14 93/16 93/17 93/19 95/12 97/11 99/2 99/3 99/18 99/22 100/10 102/5 108/24 112/24 113/2 114/21 114/25 115/4 115/20 115/22 116/14 120/15 124/23 129/9 129/21 130/4 132/15
before [35] 1/11 5/9 12/9 13/6 14/1 19/11 32/16 51/5 56/6 56/22 57/14 60/18 65/22 65/24 70/24 72/7 77/3 78/12 80/3 87/11 90/8 91/6 91/9 94/8 103/25 104/1 106/3 106/7 111/17 117/24 129/20 133/12 133/15 133/20 133/24
began [3] 15/24 16/6 101/4
begin [7] 43/1 44/8 72/23 78/12 86/4 130/11 131/21
beginning [4] 3/6 46/13 56/11 86/23
behalf [23] 3/9 3/17 3/19 5/1 21/19 22/4 22/7 22/13 38/8 64/5 68/6 71/21 87/1 87/8 99/1 99/8 99/14 99/15 99/15 118/3 132/13 132/20 132/24
behavior [1] 101/17
behind [1] 100/25
being [21] 11/12 19/17 22/6 23/21 29/12 29/13 29/15 32/1 32/18 53/18 55/23 60/16 61/22 72/24 97/13 98/16 100/14 105/5 111/10 113/9 114/16
belabor [2] 29/10 92/4
belaboring [1] 96/9
belied [2] 50/2 52/5
belief [1] 110/19
belies [1] 29/22
believe [43] 9/19 11/23 31/20 33/5 33/14 33/19 34/14 37/17 38/2 48/14 50/19 53/15 64/8 64/22 64/25 65/7 65/13 70/12 73/21 80/14 92/19 92/22 93/9 93/17 94/4 94/12 95/21 96/6 100/3 100/7 100/9 112/2 118/10 118/11 118/22 122/13 130/19 130/21 131/2 131/4 131/8 131/23 132/21
believed [1] 94/23
believes [1] 114/5
Beneficial [1] 7/16
beneficiary [3] 6/25 7/1 22/16
benefit [2] 8/4 8/22
Berman [1] 103/11
Beryl [1] 120/21
best [4] 29/3 112/18 125/16 135/5
better [5] 39/23 45/9 87/14 106/21 125/9
between [7] 30/18 72/1 72/5 82/22 103/16 128/3 128/7
beyond [7] 30/19 31/4 34/4 56/24 61/23 65/1 82/4
Biden [1] 105/18
billion [8] 6/24 8/17 11/10 22/18 35/6 37/9 43/12 97/18
billions [3] 20/13 37/8 43/9
binding [1] 84/18
Birmingham [1] 113/5
bit [3] 59/14 94/10 122/18
blanche [2] 16/17 17/3
blanket [4] 30/3 38/15 70/25 90/9
Blase [1] 83/11
bleed [2] 7/11 44/14
bleeding [1] 7/10
bleeds [2] 4/16 13/19
blending [1] 4/19
Block [1] 105/7
blown [1] 35/6
board [3] 38/12 46/1 46/5
bodies [1] 103/3
Bogus [1] 113/5
boilerplate [7] 9/7 42/2 44/10 87/21 88/1 92/15 93/5
bona [1] 45/20
book [2] 54/24 55/25
borne [1] 30/23
both [11] 13/12 14/24 62/22 63/23 121/22 123/7 123/8 123/8 127/21 130/4 130/12
bottom [1] 82/5
Boulevard [1] 1/16
Boyles [1] 17/20
bragged [1] 37/7
branch [6] 75/23 121/8 121/8 122/7 122/8 122/21
Branch's [1] 76/1
brand [21] 7/6 7/9 8/7 8/23 20/12 20/19 20/25 21/6 21/7 22/11 22/12 22/14 22/22 24/24 24/25 25/6 26/23 27/6 27/8 129/7 130/3
branded [3] 8/25 36/11 36/12
brands [2] 16/21 25/2
brave [1] 101/7
breach [2] 12/18 13/13
breadth [4] 24/14 64/23 76/19 92/24
break [3] 25/16 86/14 91/9
brief [5] 87/22 98/12 100/17 125/12 125/17
briefing [3] 12/19 79/25 118/18
briefly [5] 59/10 65/19 67/13 116/13 126/25
briefs [2] 125/18 125/19
bring [7] 22/3 39/18 41/10 73/16 83/6 88/3 106/19
bringing [3] 22/7 84/14 108/8
brings [1] 69/1
BritBox [2] 90/17 90/19
BRITISH [7] 1/6 3/4 3/18 5/1 38/6 40/14 86/21
BRITO [23] 1/13 1/15 3/8 18/2 19/3 20/8 37/18 39/22 49/17 71/24 87/1 91/4 96/15 98/8 100/19 104/20 106/4 108/15 111/25 121/24 122/1 123/2 134/10
Brito's [4] 6/10 69/11 80/13 124/6
britopllc.com [4] 1/17 1/18 1/18 1/19
broad [14] 11/24 12/5 13/16 13/17 31/19 40/3 52/22 70/12 73/6 83/21 85/20 116/10 129/17 129/18
broadcast [18] 5/12 5/14 8/9 11/10 13/7 13/8 13/24 14/2 14/7 18/8 23/13 26/1 30/25 31/10 31/10 60/24 61/18 104/19
broadcaster [1] 5/4
BROADCASTING [7] 1/6 3/4 3/18 5/2 38/6 57/2 86/22
broader [2] 82/5 129/25
broadly [1] 97/16
broadness [1] 9/12
Broadway [1] 2/8
brought [9] 6/19 54/20 79/20 106/3 106/5 107/25 108/18 111/22 116/20
bullet [1] 62/16
bullet-point [1] 62/16
burden [24] 13/22 41/4 41/8 42/3 52/3 58/13 75/18 79/19 82/16 88/3 88/21 97/7 105/10 105/10 108/11 112/25 113/18 113/18 114/4 116/8 121/4 121/5 121/7 127/22
burdened [1] 113/23
burdensome [1] 116/10
burdensomeness [1] 9/13
business [13] 12/6 12/14 13/17 14/21 20/13 20/15 21/6 22/11 22/15 31/17 35/22 36/13 37/6
businesses [15] 7/9 8/8 16/21 20/25 21/8 22/13 22/21 25/1 25/6 26/24 36/2 36/5 36/7 129/8 130/3
businessman [3] 21/2 42/18 85/22
but [125] 4/17 4/18 7/14 15/19 17/2 18/9 21/7 21/14 22/7 24/7 24/10 25/11 25/22 26/3 26/12 27/9 28/23 28/25 30/12 31/15 31/18 32/5 33/12 33/15 33/21 34/9 35/13 35/19 36/21 41/16 41/20 42/23 42/24 43/8 43/14 43/22 44/1 44/6 44/15 44/24 45/10 46/6 47/20 48/6 49/7 50/19 52/24 54/8 55/9 55/21 56/6 59/1 59/1 59/3 59/7 59/13 59/14 59/20 61/3 61/17 61/23 62/17 64/3 64/10 64/23 65/8 66/15 68/12 68/17 68/19 69/10 69/12 71/9 73/3 73/5 73/23 73/23 76/22 78/24 79/6 79/11 79/15 79/25 80/14 80/16 81/16 82/11 82/19 83/24 84/9 84/19 85/6 87/22 88/18 89/14 90/14 90/19 91/16 91/22 93/24 94/16 97/10 97/11 98/16 99/21 99/24 104/10 104/14 104/18 108/4 110/13 111/10 112/18 115/21 116/1 116/4 118/19 124/4 127/10 128/18 128/22 132/2 132/6 132/12 132/14

B
buy [1] 36/9

C
cabined [1] 15/1
cabinet [1] 122/12
Cabot [1] 64/13
calendars [3] 44/23 61/25 62/20
call [24] 44/21 44/23 49/2 50/12 51/25 52/7 60/12 60/21 61/25 62/4 62/18 80/10 81/2 81/15 81/15 89/1 89/9 99/4 101/22 103/24 107/3 109/21 110/5 123/12
called [5] 5/13 40/18 101/21 103/17 131/5
calling [3] 3/3 105/21 123/13
calls [6] 6/1 73/6 77/11 78/1 78/2 101/8
came [8] 38/19 51/11 56/12 59/20 74/12 74/15 77/11 78/1
can [49] 4/9 8/20 10/2 21/22 22/6 23/3 24/13 26/3 29/5 34/1 36/9 44/25 47/1 58/25 62/6 62/7 66/17 67/4 67/8 67/16 71/2 71/4 71/9 73/2 73/19 74/17 76/18 78/24 80/18 82/15 93/24 94/18 99/25 100/12 104/4 108/2 112/3 112/23 113/24 114/1 115/17 125/18 125/19 127/9 131/3 132/1 132/9 132/18 133/3
can't [7] 11/11 39/18 73/15 93/19 118/10 123/17 129/6
candid [1] 109/6
candor [1] 115/23
cannot [3] 36/6 44/7 133/14
capable [1] 126/15
capacity [3] 58/17 68/8 122/9
Capitol [11] 39/6 63/9 81/9 83/1 89/6 89/9 101/7 101/11 102/4 102/7 102/10
capped [1] 7/22
caps [1] 7/19
capture [1] 30/19
captured [3] 29/13 32/2 63/14
care [1] 13/18
carefully [4] 28/21 29/24 41/14 42/11
carried [1] 37/2
Carroll [1] 14/22
carry [1] 117/21
carte [2] 16/16 17/3
case [127] 1/2 3/3 5/16 6/11 10/23 10/23 11/23 12/11 12/17 12/23 13/9 13/14 15/16 15/23 16/1 16/4 16/12 17/7 17/18 17/23 17/25 18/20 20/3 21/18 21/21 21/22 22/2 24/4 24/9 24/17 24/22 25/13 25/20 26/19 28/18 32/5 33/11 33/20 34/3 35/14 35/23 36/15 38/14 41/1 42/16 42/21 45/1 46/2 48/9 48/11 48/16 48/24 51/22 52/9 55/7 55/9 56/23 56/25 57/17 58/11 59/7 60/25 61/5 62/2 64/13 64/17 65/1 65/5 68/21 68/22 69/22 72/2 73/6 73/12 73/12 73/13 73/14 78/15 79/21 81/4 81/7 81/17 81/19 83/6 83/14 86/20 89/13 91/15 94/2 95/5 96/8 97/6 97/7 97/12 97/16 98/24 99/2 100/16 103/20 104/5 104/14 104/21 104/22 107/8 107/20 108/10 109/7 111/10 113/2 113/6 113/8 115/11 115/14 117/9 119/22 120/10 120/24 121/18 122/17 123/8 125/8 126/10 126/16 128/3 128/4 130/6 131/16
cases [9] 11/22 14/24 56/24 83/10 85/8 98/17 113/22 128/25 131/16
cast [2] 31/3 54/6
catchall [1] 63/10
Catcher [1] 120/10
categories [2] 8/5 19/18
category [3] 8/24 10/1 68/7
caught [1] 122/19
causation [1] 102/11
cause [2] 102/17 102/20
caused [10] 18/8 23/2 24/25 25/25 27/22 28/1 30/24 43/12 51/23 102/12
causing [1] 20/19
Cayago [2] 12/16 13/9
Center [1] 64/13
central [2] 41/23 102/20
certain [12] 37/24 47/12 65/13 73/25 77/22 79/13 92/13 94/3 96/3 107/7 120/14 124/18
certainly [9] 35/13 36/23 39/16 46/17 48/6 56/21 107/4 111/13 113/12
certification [2] 68/3 102/3
certify [1] 135/4
chairman [11] 50/2 50/4 50/5 50/18 52/6 58/23 60/2 61/8 64/3 103/22 109/20
chairman's [6] 60/11 80/4 80/6 80/15 81/1 88/25
challenged [1] 120/7
challenges [5] 39/5 47/24 61/24 68/2 70/4
Chance [2] 5/13 5/13
change [3] 8/20 55/4 128/12
character [1] 55/12
charge [1] 93/17
CHARLES [5] 2/3 3/16 5/1 87/4 100/20
charter [1] 5/5
Cheney [4] 68/21 72/21 74/25 75/15
cherry [1] 11/11
cherry-pick [1] 11/11
chief [4] 76/5 106/16 116/4 120/21
choice [1] 102/13
chooses [1] 10/16
chose [1] 101/19
chosen [1] 18/16
circle [1] 134/9
Circuit [1] 21/25
circulated [1] 64/4
circumstance [1] 99/25
circumstances [2] 6/17 45/3
citation [1] 21/25
cite [6] 10/23 11/22 21/22 64/12 76/12 105/7
cited [2] 97/6 126/4
cites [3] 12/19 22/5 113/22
citing [1] 63/18
City [1] 113/5
civil [7] 3/3 24/15 86/20 116/4 117/3 119/20 130/2
claim [42] 6/19 12/2 12/5 12/15 12/18 16/20 16/22 17/14 18/3 21/15 27/11 32/6 32/9 35/6 39/8 39/12 39/13 40/23 42/11 44/18 44/20 45/2 45/21 45/22 52/4 58/12 79/20 83/4 83/20 88/12 90/3 95/18 97/15 104/15 110/10 110/10 110/12 110/13 110/14 110/14 110/16 110/16
claimed [2] 22/21 40/3
claiming [3] 32/4 43/9 111/4
claims [18] 13/13 17/13 20/9 24/3 24/17 24/22 37/1 39/3 39/17 39/18 44/2 45/7 45/13 45/24 88/16 90/13 129/17 129/23
clarification [2] 43/15 92/1
clarified [1] 91/8
clarify [1] 26/3
clarity [4] 9/16 9/18 20/1 66/19
clear [30] 19/20 19/24 20/2 23/3 23/3 25/17 25/18 26/13 26/14 30/4 30/5 30/6 42/3 44/3 44/8 44/11 49/20 50/3 63/25 95/15 98/15 99/18 111/21 114/14 115/7 116/9 116/15 122/24 129/1 133/4
clearly [7] 6/14 11/13 50/13 52/22 54/18 55/4 110/20
clerk [1] 63/21
close [11] 18/13 18/14 35/21 36/21 46/12 48/6 94/20 94/22 94/25 95/10 107/4
closer [2] 48/7 67/17
cloth [2] 28/7 33/9
coconspirators [2] 102/25 103/1
Code [1] 101/1
colleague [4] 41/24 65/19 82/17 114/24
colleagues [4] 3/9 63/16 71/24 87/1
collectively [1] 79/10
collusion [4] 117/11 117/14 127/16 127/25
Columbia [3] 57/2 116/4 120/13
combat [1] 108/10
come [17] 13/3 28/3 37/19 37/20 38/11 56/4 56/6 86/15 87/16 94/9 106/22 112/3 115/8 119/24 124/25 131/16 132/1
comes [3] 77/3 122/21 133/6
comfort [3] 86/14 89/5 102/9
coming [9] 5/23 29/11 35/23 40/22 46/12 70/14 70/16 105/13 118/4
comments [2] 73/10 87/11
committed [1] 101/10
Committee [10] 63/6 63/8 92/10 96/21 97/1 101/14 101/15 102/14 102/19 106/18
committees [4] 44/22 101/23 104/1 104/2
communicate [1] 90/7
communicated [2] 47/23 68/1
communication [6] 45/23 47/9 68/4 84/23 85/3 114/25
communications [24] 19/25 22/25 39/7 39/15 44/17 44/24 45/4 45/16 46/19 48/22 62/22 63/1 63/4 63/7 63/11 68/12 68/13 73/22 75/7 76/3 81/23 83/19 89/17 90/11
companies [1] 22/14
company [3] 10/1 18/2 21/24
company's [1] 52/6
comparison [2] 31/7 31/8
compel [11] 4/23 18/18 18/18 37/13 38/1 87/14 112/10 124/24 129/5 130/7 130/15
compelling [2] 45/1 48/19
compensated [1] 32/4
compile [1] 14/25
complaining [1] 23/11
complaint [68] 6/18 7/3 7/3 7/5 8/6 8/11 8/24 13/16 13/21 15/3 17/9 18/3 18/4 18/14 18/16 20/10 20/10 21/4 21/13 22/19 24/6 24/13 24/13 24/14 25/11 26/12 28/22 29/2 33/2 35/12 35/17 35/25 36/16 41/12 42/8 42/15 42/20 50/4 50/5 50/24 54/17 57/25 64/1 69/12 82/9 88/24 90/4 97/19 101/20 103/21 104/16 107/9 110/9 121/2 129/7 129/18 129/19 129/20 130/21 130/23 133/6 133/7 133/11 133/15 133/21 133/24 134/2 134/2
completed [3] 115/19 115/22 124/24
completely [2] 28/6 73/11
compliance [10] 15/6 15/12 18/18 107/16 107/16 115/5 115/8 115/9 119/22

C
compliance... [1] 119/24
comply [2] 15/11 16/25
component [4] 26/4 34/12 58/14 59/15
compromise [1] 10/3
concede [1] 36/18
conceding [2] 26/22 81/3
concept [1] 93/20
conceptual [4] 34/10 56/19 93/23 95/1
conceptually [1] 96/10
concern [1] 28/22
concerned [1] 43/8
concerning [6] 62/23 63/1 63/4 63/11 67/9 69/8
concerns [5] 98/19 99/6 132/20 132/24 134/10
concession [1] 64/6
conclude [5] 17/5 54/25 81/10 85/25 111/19
conclusion [3] 49/9 117/3 131/16
concurrence [1] 17/21
conduct [15] 12/9 23/2 27/25 49/23 52/16 52/25 52/25 54/16 57/5 57/16 58/20 76/6 76/9 104/5 105/20
confer [14] 10/12 15/10 16/25 43/17 70/11 77/4 78/1 78/6 85/5 93/14 123/12 131/9 131/22 132/14
conferences [1] 78/6
conferred [2] 9/15 43/21
confers [12] 69/15 69/21 70/1 70/9 70/19 71/15 74/13 74/15 77/6 84/17 85/17 132/1
confident [1] 79/15
confidential [1] 85/3
confidentiality [1] 76/2
conflict [12] 34/9 34/10 99/5 111/23 116/14 117/6 121/25 123/6 123/6 125/6 126/11 127/17
confluence [1] 103/6
confronted [1] 91/20
Congress [1] 101/8
congressional [3] 44/22 61/25 81/22
conjunction [1] 23/14
connection [4] 13/7 69/10 103/16 104/5
conscious [1] 102/12
consecutive [2] 54/18 56/12
consider [7] 55/15 55/20 55/24 76/11 127/8 127/9 133/14
consideration [1] 126/20
considerations [2] 75/25 117/7
considered [2] 10/9 126/10
considering [3] 80/23 124/18 133/25
consist [1] 46/9
consisted [1] 6/2
consistent [2] 52/12 98/11
consistently [2] 38/13 46/6
consists [1] 38/20
constitutional [2] 75/24 76/7
constructions [1] 128/13
construe [1] 37/25
construed [1] 129/4
construes [3] 4/22 87/13 130/16
construing [1] 98/6
consult [1] 79/14
consultants [2] 76/15 76/18
consulted [1] 7/18
consulting [1] 96/25
CONT'D [1] 2/1
contain [1] 4/14
contains [1] 41/17
contemplated [1] 106/8
contemplates [1] 65/1
contend [1] 49/13
contending [1] 59/25
content [1] 54/8
contention [1] 94/13
context [2] 81/10 106/6
continually [1] 109/13
continue [5] 20/18 29/5 55/6 74/17 132/19
continued [1] 111/21
continuing [1] 44/3
continuous [3] 50/9 80/8 110/3
contract [2] 12/18 13/13
contractors [2] 76/14 76/17
contracts [1] 29/22
contractual [1] 30/11
contrary [1] 93/10
contrast [2] 5/25 38/24
contravene [1] 122/9
Contreras [1] 103/5
control [3] 75/25 121/7 122/7
controls [1] 18/4
conversation [8] 26/15 31/14 59/6 69/7 71/1 71/4 71/23 82/20
conversations [5] 19/22 69/23 93/16 105/14 123/2
convey [1] 82/6
conveyed [1] 55/4
cooperate [1] 126/5
cooperated [1] 5/20
coordinated [1] 99/9
Coral [1] 1/16
core [4] 39/8 39/11 41/9 44/18
corn [2] 103/9 103/10
corn-dealer's [1] 103/10
corn-dealers [1] 103/9
CORP [6] 1/14 3/9 71/21 87/2 93/15 93/16
corporate [1] 22/4
corporation [7] 1/6 3/5 3/18 5/2 5/4 38/6 86/22
correct [16] 27/21 28/23 47/3 47/17 50/22 51/8 51/15 58/4 58/11 58/24 60/8 73/19 80/14 80/18 94/16 118/13
corrective [1] 27/20
correctly [2] 80/13 125/5
cost [2] 17/12 27/20
costs [2] 17/13 34/22
couched [1] 30/1
could [20] 15/2 44/5 46/20 55/16 66/16 68/8 72/6 75/6 75/9 76/25 80/1 83/6 85/4 94/24 113/7 115/7 118/18 122/14 123/12 123/15
counsel [47] 3/21 16/15 19/1 19/14 24/2 28/4 29/23 33/7 35/10 37/15 38/2 49/16 49/19 50/16 54/20 56/4 63/2 63/20 67/8 67/16 77/13 78/3 84/4 89/4 91/13 92/5 92/14 96/19 97/25 101/13 102/8 102/23 105/22 106/16 108/17 109/6 109/12 110/8 110/17 110/25 111/7 111/22 120/11 126/2 126/4 132/17 133/13
counsel's [5] 44/22 91/7 92/11 93/10 101/25
counseling [1] 76/8
count [1] 120/16
counting [1] 38/25
County [1] 37/3
couple [3] 46/13 68/16 92/4
course [5] 4/17 9/1 18/5 59/7 82/10
court [141]
court's [24] 9/10 17/1 25/8 25/13 31/23 38/17 42/2 46/21 53/17 54/20 57/17 65/18 66/19 71/4 77/24 83/18 84/18 90/25 92/22 93/14 96/11 103/3 132/16 134/18
courts [3] 75/24 107/14 107/15
crafted [2] 41/13 42/11
create [2] 40/24 127/19
created [10] 33/9 40/17 40/20 41/3 41/5 50/9 59/21 80/8 83/2 110/2
creating [1] 39/25
credence [2] 124/9 125/22
credit [1] 36/16
crime [2] 83/13 83/17
criminal [6] 14/20 89/7 89/23 96/4 106/21 119/18
critical [1] 55/13
crowd [4] 45/5 48/14 102/5 102/12
crowd's [1] 101/17
CRR [2] 2/12 135/8
crux [1] 42/6
CSR [2] 2/12 135/8
curates [1] 10/25
current [1] 21/20
currently [5] 30/8 129/7 129/18 129/20 134/2
cut [3] 5/19 40/13 104/20
cutoff [2] 15/20 16/12
CV [1] 1/2

D
D.C [10] 45/8 45/11 48/21 81/5 84/15 84/17 114/17 120/20 120/21 122/20
Dade [1] 37/2
daily [1] 62/20
damage [17] 7/6 7/6 18/7 20/19 21/5 22/17 26/15 26/22 27/3 27/11 29/11 31/10 32/9 33/6 34/13 34/16 130/5
damaged [3] 14/7 22/16 83/3
damages [67] 8/24 11/25 12/6 12/7 12/13 12/15 13/12 13/16 16/20 17/9 17/11 17/13 17/14 17/16 17/18 17/23 17/24 18/3 18/4 18/9 18/11 19/10 19/16 20/2 20/9 20/11 20/20 20/22 21/15 21/19 22/4 22/7 22/20 23/5 23/22 24/23 25/19 25/24 27/7 27/23 28/21 32/1 32/2 32/18 33/9 33/14 33/15 33/16 34/11 34/21 35/6 35/22 35/25 43/7 43/10 43/12 51/23 79/21 85/21 95/4 97/17 100/7 129/7 129/10 129/15 129/19 129/23
dangerous [1] 128/1
dark [1] 84/11
date [8] 6/8 32/7 42/25 44/4 45/23 47/6 47/12 107/23
daughter [1] 105/23
day [29] 32/16 32/17 35/13 39/6 39/11 40/7 40/12 40/15 40/18 41/13 44/21 46/14 48/7 48/14 53/16 53/25 57/11 59/1 59/23 82/13 82/18 82/22 82/25 88/20 89/9 90/1 90/8 104/6 111/16
days [7] 15/8 15/11 15/25 18/20 49/13 86/4 90/25
DC [1] 2/4
DCA [1] 22/5
de [1] 1/16
dead [1] 57/8
deadline [8] 11/19 14/11 15/21 16/11 66/14 66/17 67/4 130/13
deal [4] 36/4 36/4 91/21 110/24

D

dealer's [1] 103/10
dealers [1] 103/9
deals [1] 33/11
dealt [2] 54/22 91/19
decades [1] 128/12
December [1] 82/19
decide [3] 53/18 72/8 111/2
decided [3] 81/5 115/21 117/17
decision [14] 22/1 49/3 55/10 55/16 57/2 72/21 74/25 75/5 75/16 95/14 105/8 108/6 126/7 127/14
decision-making [1] 75/5
decisions [2] 81/6 84/4
deck [1] 11/4
decline [1] 55/22
deemed [2] 74/1 74/5
defamation [32] 6/18 14/23 17/14 17/19 17/22 17/23 17/25 27/18 39/12 40/23 43/5 44/18 48/16 51/22 52/4 57/17 58/12 79/20 83/6 83/10 90/3 95/5 97/15 97/17 98/17 104/14 104/21 104/23 110/10 110/10 110/14 110/16
defamatorily [1] 20/17
defamatory [10] 54/24 55/12 82/8 83/12 88/9 100/5 104/7 110/24 111/1 111/6
defamed [1] 39/9
defaming [1] 88/19
defect [1] 93/3
defend [6] 9/6 59/18 94/11 116/24 129/11 129/15
defendant [38] 1/8 2/3 28/6 52/10 52/15 52/15 52/17 54/15 56/2 57/12 58/8 58/14 58/16 58/18 58/19 64/25 78/14 78/15 79/9 80/23 80/24 87/5 94/9 95/2 98/17 99/4 99/12 105/4 105/5 110/11 110/21 111/18 117/5 129/11 129/11 129/13 132/24 133/13
defendant's [1] 57/17
defendants [45] 4/23 12/13 12/14 19/21 20/7 20/16 21/16 22/24 23/11 24/8 25/19 26/13 27/24 29/15 30/6 33/4 33/10 33/24 34/14 49/21 49/23 49/24 53/8 53/14 53/23 56/16 56/19 59/6 61/2 61/4 61/22 69/8 69/19 72/12 79/3 83/14 87/15 90/15 93/22 99/20 100/1 100/14 101/16 111/10 111/15
defendants' [21] 3/24 4/3 4/6 4/8 4/22 23/2 27/25 37/25 52/24 58/6 70/19 86/11 87/13 87/20 95/12 95/16 95/22 98/5 98/19 100/5 129/4
defense [12] 29/7 32/2 41/7 41/20 58/15 58/18 70/17 70/21 71/1 83/20 106/21 134/6
defenses [4] 24/17 24/22 39/17 111/14
defer [1] 25/14
deference [1] 76/9
deficiencies [3] 41/21 47/21 87/19
deficient [1] 87/23
defined [1] 62/23
defines [1] 42/18
definition [2] 43/22 68/5
delay [1] 102/2
delayed [1] 134/15
delays [1] 16/4
deliberate [2] 53/11 55/1
deliberative [1] 75/4
delicate [1] 56/6
demonstrates [1] 110/20
denial [1] 46/1
denied [8] 5/16 5/20 15/14 84/5 125/18 125/19 130/17 132/9
deny [11] 9/9 18/17 33/23 37/13 49/25 90/5 92/12 96/2 96/4 96/13 108/13
Department [16] 3/13 6/15 99/10 101/12 107/24 108/1 108/5 108/19 120/15 120/18 122/2 123/10 123/14 123/18 126/6 126/15
depicted [1] 45/2
depiction [3] 48/11 61/5 97/15
depictions [1] 95/22
deposition [3] 6/7 107/22 107/23
depositions [3] 5/21 83/23 107/21
deprive [1] 120/23
derives [1] 8/14
deriving [1] 22/17
describe [3] 49/5 101/18 103/16
described [3] 89/3 89/4 101/24
describes [1] 110/18
describing [3] 82/2 97/16 97/17
desecration [1] 101/10
design [1] 105/11
designed [3] 30/2 93/11 109/1
despite [6] 19/21 53/14 61/21 93/10 105/21 105/22
detail [1] 17/1
determination [5] 53/22 53/22 66/20 67/5 95/17
determine [1] 104/2
determined [1] 57/24
determines [1] 121/10
determining [2] 55/19 68/25
deviate [1] 107/7
deviates [1] 93/23
deviation [3] 56/9 56/23 105/12
device [1] 55/13
diaries [1] 62/20
dictate [1] 111/9
did [65] 5/11 5/12 5/13 5/15 8/2 8/3 9/16 9/20 9/24 10/7 15/10 23/16 26/10 27/2 30/16 34/14 39/13 40/2 40/24 40/24 41/9 41/9 41/12 43/14 44/20 44/21 52/17 52/18 52/19 56/2 56/3 56/16 57/12 58/20 58/20 59/2 70/11 70/15 70/25 71/4 71/9 71/23 74/8 82/9 82/12 82/12 85/2 88/23 89/11 90/6 94/22 96/20 100/6 102/9 103/8 103/22 106/7 109/24 111/18 122/2 122/22 124/3 124/3 124/4 128/23
didn't [11] 26/25 32/14 32/15 46/6 63/25 94/16 116/1 119/10 123/2 123/3 124/4
difference [2] 116/19 128/7
different [24] 24/9 25/20 33/16 43/8 43/8 43/10 50/10 55/11 59/1 73/12 80/9 101/24 103/15 104/21 110/4 114/19 115/4 115/5 115/17 117/15 119/20 119/23 119/24 120/19
difficult [1] 31/22
difficulty [1] 66/8
digital [3] 1/10 85/23 135/5
diminished [4] 7/9 8/8 13/23 129/9
diminishment [4] 21/1 24/24 24/25 26/23
dining [3] 105/20 107/2 107/2
direct [18] 20/23 45/17 46/15 50/12 51/25 52/7 60/12 80/10 81/2 81/15 89/1 89/10 97/14 100/4 102/6 103/24 109/21 110/5
directed [8] 19/12 23/20 49/11 68/23 75/20 109/3 111/7 118/5
direction [1] 75/18
directly [24] 13/8 14/3 39/2 39/17 41/2 43/12 46/4 48/11 48/15 49/2 52/23 59/14 81/14 82/13 82/25 83/1 88/16 89/25 101/3 101/6 103/19 105/24 124/5 124/6
disagree [5] 31/16 33/12 80/5 80/25 92/15
disagreement [4] 23/23 70/5 93/23 122/15
disclosure [5] 3/13 6/22 6/23 18/21 18/22
disclosures [9] 7/2 9/3 17/7 17/7 17/10 20/1 29/9 34/23 35/18
discount [2] 124/9 126/12
discover [1] 121/18
discoverable [2] 12/11 27/4
discovery [156]
discuss [4] 9/20 34/14 72/4 85/17
discussed [6] 41/24 48/13 66/4 87/21 112/24 120/25
discusses [1] 64/16
discussion [8] 6/21 77/17 78/1 78/2 78/4 84/25 119/13 132/17
discussions [6] 16/23 69/18 85/10 116/3 122/20 123/16
dismiss [6] 5/9 5/10 25/14 29/3 79/23 111/16
dismissed [2] 79/11 90/15
disparity [1] 72/7
displayed [1] 13/24
disposal [1] 52/18
dispositive [1] 55/9
disproportional [2] 14/5 14/8
disproportionate [5] 12/22 15/4 26/19 32/12 48/8
dispute [28] 34/15 41/19 42/7 42/22 45/11 50/16 55/18 56/19 64/9 65/9 75/19 84/22 90/19 91/21 92/18 93/1 93/13 93/20 94/5 95/1 95/17 97/9 97/21 99/16 100/15 109/11 122/3 131/25
disputes [5] 41/5 82/10 90/12 95/20 119/15
disregard [4] 36/17 52/19 126/12 127/8
disregarding [1] 18/12
disruption [1] 103/1
distinct [2] 19/18 20/4
distinction [2] 19/13 116/23
distinctions [2] 128/3 128/5
distortion [1] 54/11
distraction [2] 109/15 110/9
district [15] 1/1 1/1 11/23 12/17 45/8 57/1 64/14 68/22 113/6 115/13 115/14 116/4 120/12 120/13 120/15
do [83] 18/6 19/25 24/10 24/19 25/14 26/2 31/7 31/8 31/20 32/25 33/15 33/17 35/3 41/22 44/4 46/3 47/6 47/19 47/19 48/2 48/5 48/14 48/19 51/11 56/1 61/14 64/25 65/24 66/7 67/1 67/4 68/15 70/15 70/15 70/16 74/19 77/21 79/3 79/5 81/11 84/17 84/25 85/15 85/18 85/19 86/12 88/8 88/8 89/16 93/24 96/24 98/13 99/14 100/1 100/3 106/19 109/7 109/8 109/11 109/19 116/14 117/8 117/22 120/2 121/13 121/20 122/14 123/5 124/21 126/1 127/9 130/19 130/20 131/2 131/4 131/8 131/12 131/14 132/3 132/4 133/16 133/20 134/6
docket [17] 3/23 4/1 4/4 4/7 4/10 4/11 38/11 51/7 87/12 96/1 98/4 112/2 112/8 129/2 130/14 133/24 134/3
dockets [1] 38/9
document [8] 7/14 37/22 46/7 77/12

D
document... [4] 83/23 86/10 97/22 123/14
documentary [14] 5/12 8/9 39/9 40/10 41/17 45/2 50/7 53/11 80/6 90/17 95/22 97/4 103/23 131/5
documentation [1] 26/18
documented [1] 106/18
documents [105] 5/24 6/1 6/12 8/5 8/19 8/20 9/8 10/16 10/17 11/2 11/5 11/17 11/18 12/21 12/25 13/5 14/14 15/7 15/16 15/23 15/24 19/10 19/15 19/17 19/19 20/5 23/11 23/21 27/24 28/5 28/5 28/7 28/13 29/15 29/17 29/18 29/19 29/21 32/3 33/17 38/19 38/25 39/4 39/15 39/20 41/8 41/10 43/21 44/1 44/2 44/4 44/9 44/12 44/16 44/20 44/21 45/18 45/20 46/6 46/8 46/9 46/10 46/16 46/18 46/19 49/6 53/4 56/16 62/22 63/1 63/4 63/7 63/10 70/21 70/23 73/20 73/22 73/23 74/1 74/4 74/8 74/9 74/10 76/12 76/13 76/15 76/16 81/23 82/18 83/19 84/7 85/21 89/16 94/24 97/2 106/10 107/11 107/12 107/20 107/21 113/24 121/19 125/25 130/11 130/12
does [18] 17/15 22/2 40/3 41/10 42/15 43/1 45/1 55/1 67/13 67/22 73/4 73/12 76/22 77/21 77/21 90/10 120/6 121/25
doesn't [15] 7/19 28/23 32/8 36/22 52/14 52/14 54/11 56/7 58/24 59/1 89/2 99/19 103/18 124/23 128/12
dog [2] 103/17 103/19
doing [5] 26/20 38/3 96/23 108/23 124/5
DOJ [5] 84/10 114/15 115/20 116/24 118/4
DOJ's [1] 132/18
dollars [5] 20/13 20/14 37/8 37/9 43/9
don't [35] 9/4 18/4 21/14 27/8 29/1 29/9 31/12 33/8 33/12 33/13 49/2 56/10 56/21 56/22 62/10 62/14 69/25 73/4 74/7 78/23 79/25 83/7 84/6 84/24 92/4 92/21 93/4 93/24 94/3 96/10 97/9 108/25 109/18 118/11 132/21
DONALD [11] 1/3 3/4 3/25 4/21 7/1 7/1 14/16 86/21 102/21 129/3 130/8
done [14] 15/13 43/20 43/23 46/17 47/18 49/25 50/17 53/12 54/24 57/14 64/3 83/23 100/17 132/15
door [6] 13/2 16/22 35/20 35/21 35/22 94/2
doubt [2] 64/4 133/25
down [6] 40/14 65/24 81/9 86/8 87/10 117/24
dozen [2] 45/13 100/24
dozens [1] 83/23
drafted [1] 30/8
drafting [2] 45/5 107/5
dragged [3] 16/5 107/24 107/25
dragging [1] 107/22
drawn [2] 92/10 117/16
DUDDING [21] 2/7 3/19 7/12 38/3 38/6 50/20 59/14 60/8 68/17 74/8 74/11 76/21 77/3 77/7 78/11 78/12 87/5 87/15 92/6 96/17 103/3
Dudding's [2] 73/10 73/18
duddings [1] 2/10
due [2] 10/20 10/21
duplication [1] 92/6
duplicativeness [1] 44/6
during [5] 12/9 13/6 60/20 123/12 127/19
duty [1] 14/16

E
E.S.Y [1] 11/22
each [22] 4/18 7/25 9/21 10/10 14/17 29/20 42/4 42/19 46/14 48/7 75/12 76/25 79/20 85/14 85/19 88/3 88/15 93/20 100/11 101/2 105/19 106/9
earlier [7] 26/4 43/17 69/13 95/9 110/23 119/21 128/2
early [3] 5/16 18/23 115/25
easily [1] 44/5
Eastman [2] 90/8 106/20
echo [1] 126/13
economic [8] 7/6 11/13 20/19 24/25 35/2 35/6 36/22 130/5
economical [1] 115/15
economically [1] 114/2
economics [1] 35/22
edit [6] 40/9 41/17 41/19 43/11 83/2 110/1
edited [4] 40/11 40/16 41/16 50/7
editing [7] 39/9 40/24 50/8 56/5 56/13 80/7 111/1
editorial [1] 50/12
effect [1] 27/3
effectively [1] 120/22
effort [3] 10/7 107/19 114/8
efforts [11] 12/22 20/16 24/3 43/18 49/22 52/6 53/3 53/13 94/12 98/11 99/9
Ehrlich [1] 17/22
either [5] 32/14 58/15 58/20 74/23 106/10
elected [2] 36/24 105/18
election [15] 37/1 39/6 47/24 48/12 61/24 68/3 70/3 70/4 82/18 82/22 88/18 93/11 95/3 101/25 105/15
electors [1] 102/3
element [7] 39/11 52/1 52/9 79/20 82/16 104/7 104/11
elements [3] 58/15 59/4 83/3
Eleventh [1] 21/25
Ellipse [1] 101/6
else [3] 4/19 57/15 125/1
employ [2] 27/19 33/6
employed [2] 27/21 51/21
employee [3] 117/6 118/21 122/8
employees [10] 68/6 76/15 76/18 116/22 116/24 118/8 119/5 120/8 125/3 127/7
encompass [7] 64/10 68/4 68/19 70/2 70/3 70/8 73/4
encountering [1] 66/16
encouraged [1] 106/24
end [9] 10/5 32/15 40/22 53/16 56/11 57/11 66/19 83/24 108/18
endeavored [1] 74/13
ends [1] 32/10
enforcement [6] 12/22 13/1 75/6 75/7 85/2 101/7
engage [12] 24/11 27/18 29/1 43/24 58/20 71/1 77/23 78/3 82/20 84/24 85/9 110/9
engaged [11] 23/13 43/23 52/15 52/18 54/10 57/5 57/13 57/15 69/7 69/18 100/14
engaging [2] 60/21 85/16
England [1] 11/10
ENJOLIQUE [1] 1/11
enough [2] 9/19 10/4
ensued [2] 83/1 102/25
entered [2] 15/25 83/15
entire [3] 50/24 76/6 106/14
entirely [14] 5/18 16/5 16/14 20/4 29/22 30/2 35/21 36/19 43/10 50/2 52/12 53/8 58/19 94/12
entities [19] 8/2 8/2 8/22 9/21 11/11 11/12 14/17 14/21 21/19 23/25 25/3 25/23 26/4 26/5 32/10 32/14 79/9 79/11 85/23
entitle [1] 83/19
entitled [16] 10/15 13/25 36/23 41/13 42/9 42/10 45/21 46/3 83/14 83/22 83/25 85/20 88/11 103/20 103/24 135/6
entity [3] 22/4 29/20 116/18
entry [15] 3/23 4/1 4/4 4/7 4/10 4/12 51/7 87/12 96/1 98/4 112/2 112/8 129/2 130/14 134/5
enumerated [1] 76/13
EO [1] 122/7
equate [1] 55/2
equipment [1] 36/10
Eric [2] 106/15 106/17
error [4] 50/12 50/14 50/15 81/2
especially [7] 17/25 37/11 95/5 100/15 131/14 132/12 133/15
ESQ [6] 1/13 1/14 1/14 1/15 2/3 2/7
essential [2] 104/7 104/10
essentially [10] 18/11 61/2 65/10 67/25 68/3 68/7 68/23 100/1 121/12 125/14
establish [8] 13/23 17/16 52/8 58/13 58/19 104/3 104/25 105/3
established [4] 5/4 21/17 54/14 57/9
establishing [11] 19/16 32/7 32/7 58/12 76/16 95/4 95/13 95/18 104/9 109/6 111/6
estimated [1] 20/12
estoppel [1] 120/16
et [3] 1/7 3/5 86/22
ethical [1] 117/7
Ethics [2] 6/23 14/11
Ethics' [1] 8/15
evaluating [2] 55/16 126/16
even [24] 27/6 35/24 36/11 36/15 36/16 36/21 47/11 52/9 55/17 81/18 81/21 85/9 93/21 93/24 107/21 120/11 120/13 121/16 122/11 122/12 123/2 123/3 124/24 129/13
event [7] 6/18 63/12 96/5 111/16 112/9 112/11 133/15
events [19] 39/5 44/17 49/22 53/6 53/25 54/1 56/21 61/16 62/23 63/1 63/4 65/13 88/20 93/12 103/6 103/7 109/9 110/20 111/8
eventually [1] 115/7
ever [7] 32/16 33/10 34/22 71/1 71/5 71/9 106/8
every [17] 10/7 17/19 40/9 40/10 40/10 41/17 42/5 44/7 55/9 56/4 65/12 68/4 68/4 68/7 77/17 93/18 94/13
everyone [5] 25/18 86/14 86/17 86/19 128/23
everyone's [1] 117/14
everything [7] 40/1 54/3 54/3 70/2 70/3 94/17 109/7
evidence [10] 13/25 14/1 14/2 55/15 106/1 109/3 117/11 117/12 127/24 129/13
evidentiary [1] 127/23
evolved [1] 24/9
exact [7] 45/10 62/7 76/20 81/7 88/4

E

exact... [2] 121/7 123/22
exacting [1] 131/6
exactly [6] 43/9 44/12 49/5 84/7 114/6 120/9
examination [3] 54/15 54/16 57/16
examine [3] 8/6 8/21 125/4
examined [1] 61/20
example [9] 7/20 7/23 9/25 43/18 69/25 73/1 75/3 90/17 120/8
examples [3] 62/2 62/7 76/12
excerpts [3] 50/10 80/9 110/3
excessive [1] 64/18
excited [1] 103/9
Excuse [1] 103/14
executive [33] 44/15 44/19 44/24 45/16 48/18 65/17 67/9 67/14 67/22 68/11 68/16 68/24 69/9 72/4 74/6 74/19 75/11 75/23 76/1 76/5 76/22 84/2 120/14 121/8 121/8 122/5 122/7 122/8 122/25 123/21 126/14 128/6 128/8
Executive's [1] 76/7
exercise [1] 113/12
exert [1] 123/8
exerted [1] 122/6
exerting [1] 45/16
Exist [1] 11/22
exists [1] 27/11
expand [1] 54/12
expect [1] 78/24
expected [1] 45/5
expedition [2] 16/18 99/23
expert [27] 9/22 10/15 10/17 10/19 10/24 11/3 11/5 11/15 11/16 11/19 11/20 15/21 16/11 23/6 23/8 27/15 27/17 27/18 27/22 28/3 28/5 28/8 28/13 35/1 35/3 118/17 129/12
experts [1] 129/14
explain [5] 21/9 21/15 31/24 71/9 99/19
explained [2] 21/16 26/5
exploited [1] 103/1
explore [1] 12/15
express [1] 81/8
expressly [2] 122/7 123/17
extends [1] 118/9
extension [1] 83/5
extensive [4] 24/25 84/3 113/3 114/10
extensively [1] 112/24
extent [21] 26/1 27/10 42/22 63/25 66/25 68/12 69/24 75/7 78/7 79/25 82/17 84/4 84/21 85/4 85/16 86/9 93/21 94/23 97/13 110/8 114/14
extra [1] 58/24
extract [1] 109/1
extraordinary [1] 33/18
extremely [2] 114/9 127/25
eyes [1] 21/2

F

F'ing [1] 106/21
F.3d [1] 21/25
fabricated [1] 54/18
face [1] 13/16
facet [1] 75/17
facets [1] 42/20
facially [1] 99/19
facing [1] 120/18
fact [26] 5/11 13/8 28/12 30/22 32/14 33/13 34/24 36/25 40/8 41/16 54/10 55/8 64/10 64/18 65/11 92/16 95/11 99/18 100/3 100/11 104/20 109/1 109/6 117/15 131/8 132/7
factor [1] 75/17
factors [1] 76/8
facts [6] 12/4 34/16 45/3 65/2 77/18 109/3
factual [8] 12/15 21/13 21/14 53/22 88/15 111/3 128/3 128/4
factually [1] 28/19
failed [1] 38/14
failure [1] 36/2
failures [1] 102/16
fair [2] 82/19 90/23
faith [3] 19/22 117/13 131/25
fall [3] 74/24 75/1 75/11
falling [1] 25/5
falls [4] 65/15 68/14 110/15 121/11
false [25] 39/18 39/23 40/17 40/17 41/2 41/5 41/19 51/22 59/18 59/20 59/21 60/4 60/16 61/10 80/20 80/21 82/7 82/14 83/2 88/9 88/22 105/9 108/11 108/20 131/1
falsely [6] 20/17 39/10 45/2 90/2 90/2 105/6
falsification [1] 55/20
falsity [24] 39/11 39/12 48/16 51/19 52/14 55/2 57/23 57/23 58/2 59/15 60/4 60/14 61/9 79/21 80/15 80/18 81/3 81/21 95/6 100/4 104/3 105/2 105/10 130/22
familiar [2] 78/13 78/18
Fantastic [1] 63/23
far [11] 28/18 30/23 31/3 35/14 35/14 96/7 105/2 105/3 112/24 121/4 127/16
farce [1] 106/14
fashion [4] 30/3 44/10 62/16 107/17
fashioned [1] 65/15
fast [1] 18/19
favor [2] 16/14 120/12
favorable [2] 28/11 109/2
February [7] 5/16 5/18 15/14 15/14 16/2 17/8 121/17
February 12 [2] 15/14 15/14
Fed [3] 114/23 116/5 117/16
federal [37] 14/12 24/15 38/18 44/23 45/8 45/12 62/24 68/13 68/20 83/21 88/11 89/15 101/1 101/15 108/9 114/17 114/25 116/20 116/21 116/22 117/5 118/15 118/21 118/22 119/1 119/5 119/18 122/20 125/2 125/3 127/7 127/7 128/8 128/10 129/22 130/2 131/9
fee [1] 5/7
feel [2] 128/25 131/11
Feeley [11] 3/14 87/7 112/3 117/24 121/24 123/11 124/14 124/21 126/23 133/2 134/9
feels [1] 28/4
feet [2] 16/6 107/22
felt [1] 115/15
few [5] 6/21 8/16 21/12 27/17 47/20
fide [1] 45/20
fiduciary [1] 14/15
Fifth [1] 43/25
figured [1] 73/17
figuring [1] 81/24
file [7] 14/12 115/9 122/21 122/22 123/14 125/18 134/6
filed [16] 6/22 15/7 25/20 34/6 88/19 99/3 99/12 111/15 114/8 115/12 115/20 117/19 119/22 127/1 127/5 134/1
files [1] 7/17
filing [4] 8/15 14/11 97/14 122/23
film [1] 83/25
filming [1] 83/22
filmmaking [1] 97/9
final [3] 101/25 102/19 134/4
finalized [1] 115/2
finally [3] 16/16 35/24 95/24
finances [4] 13/6 14/1 41/25 42/14
financial [12] 3/25 6/14 7/7 7/15 11/25 12/9 12/10 13/11 13/16 14/24 20/20 30/11
find [8] 12/12 31/16 46/20 53/9 74/14 79/25 95/7 103/25
finding [2] 48/22 55/13
finds [1] 13/11
fine [2] 62/10 62/14
finish [1] 65/22
finite [2] 24/1 65/2
firm [7] 3/17 6/10 12/3 12/4 108/21 109/4 111/22
firmly [1] 93/9
first [27] 4/3 4/6 4/24 5/4 5/10 6/1 9/9 10/13 10/19 17/17 18/3 21/12 34/22 42/1 47/25 60/10 61/6 85/6 86/11 115/24 116/3 116/11 116/16 122/22 125/5 127/1 127/17
firsthand [1] 116/2
fishing [2] 16/18 99/23
five [5] 10/10 38/19 48/2 91/16 122/6
FL [1] 1/16
flag [1] 68/9
flagged [1] 8/23
flat [1] 9/7
flexibility [1] 18/10
flexible [1] 15/18
floor [6] 4/23 19/6 38/2 57/6 57/8 87/15
FLORIDA [14] 1/1 1/4 11/23 12/18 17/20 17/20 21/17 22/2 22/5 37/1 64/14 104/11 104/23 115/13
flow [1] 25/17
flowed [1] 35/16
focus [3] 54/9 57/16 60/22
focused [3] 16/11 57/12 95/12
follow [7] 62/7 122/25 128/11 128/14 128/18 130/9 130/17
followed [3] 98/23 109/23 109/25
following [6] 3/2 51/12 54/25 68/23 123/21 131/25
followup [1] 13/4
foment [7] 39/13 41/12 59/24 82/13 88/23 101/20 101/21
fomented [7] 39/10 40/18 77/19 82/8 82/14 103/21 105/25
fomenting [4] 82/3 97/16 107/9 131/1
forbidden [1] 122/15
forbids [1] 122/7
force [2] 76/15 108/8
forceful [1] 126/19
forcefully [1] 123/9
foreclose [1] 89/2
foreclosed [8] 60/13 79/22 80/5 80/15 80/19 81/22 83/4 104/10
foregoing [1] 135/4
forever [1] 94/2
forget [1] 51/6
forgive [1] 106/20
form [6] 7/16 7/25 8/2 20/23 37/8 100/24
formal [1] 115/3
formally [1] 29/1
format [2] 21/20 101/1
former [12] 102/17 102/21 114/20

F

former... [9] 116/22 118/21 118/21 119/5 125/3 125/13 125/24 126/3 127/7
forms [2] 8/3 131/2
formulated [1] 121/2
forth [2] 45/22 95/25
forthcoming [4] 10/6 13/3 128/22 133/23
forward [5] 31/1 87/16 98/3 112/21 114/11
fought [1] 121/16
found [11] 44/20 45/19 52/2 55/25 57/25 85/8 101/16 102/17 102/20 103/3 112/20
four [4] 6/13 15/25 87/24 122/5
fourth [1] 43/14
frame [11] 5/18 16/10 18/16 18/19 28/23 32/3 34/15 37/18 42/15 62/21 96/20
framed [11] 6/17 8/12 13/21 16/21 34/4 34/4 35/25 64/9 69/12 97/19 107/9
frames [3] 7/4 8/6 15/19
framing [7] 21/5 59/13 95/19 97/3 98/22 123/25 125/5
frankly [2] 15/13 36/1
fray [1] 108/1
front [4] 36/22 77/13 93/17 103/10
fulfill [1] 14/14
full [10] 27/12 28/17 35/6 40/13 108/8 115/23 128/22 131/4 131/19 132/14
full-blown [1] 35/6
fully [4] 5/20 45/10 130/12 131/15
function [1] 92/17
fundamental [3] 92/18 95/1 116/18
fundamentally [1] 72/1
funded [1] 5/6
further [10] 10/5 36/8 54/6 85/16 102/2 122/6 132/6 132/17 134/6 134/14
future [3] 7/7 20/20 127/20

G

Gables [1] 1/16
gallery [1] 3/14
GARCIA [8] 1/14 3/10 65/19 65/22 71/24 84/6 85/1 87/2
gather [1] 114/3
gathering [1] 113/23
gave [19] 11/4 44/21 50/7 50/11 52/6 55/11 59/18 60/1 60/11 61/10 80/6 80/20 82/3 89/5 90/1 102/9 109/20 110/4 130/25
geese [4] 57/3 57/5 57/7 57/15
general [5] 12/6 49/1 118/22 123/4 126/3
generally [2] 12/11 78/25
generate [1] 20/14
gentleman [1] 36/24
genuine [1] 131/25
genuinely [1] 68/25
George [1] 5/5
Gerardi [2] 114/24 123/11
Gertz [1] 17/18
get [32] 27/16 32/16 41/14 43/24 46/6 46/8 56/15 62/11 62/17 63/16 66/23 69/5 69/6 69/16 69/25 72/13 72/23 73/17 75/13 84/8 85/9 86/3 89/19 93/19 94/6 105/17 107/20 116/1 116/25 118/23 120/13 123/4
gets [5] 50/25 51/1 80/21 124/21 129/11
getting [5] 7/10 16/24 66/8 88/6 108/9
Giuliani [3] 90/7 106/13 106/17
give [17] 8/2 10/16 10/17 21/22 60/20 62/2 62/6 75/22 78/25 83/7 83/9 86/14 119/9 124/9 125/21 128/21 130/17
given [20] 6/8 18/20 25/12 34/15 43/21 44/4 48/2 63/12 64/7 64/18 65/11 68/4 69/11 72/6 80/22 81/24 100/3 128/19 129/6 131/14
giving [4] 80/10 81/2 107/22 112/11
glossed [3] 19/14 68/17 76/21
gmail.com [2] 2/13 135/9
go [36] 25/4 37/21 40/3 44/18 47/22 48/11 48/15 52/13 52/14 52/14 53/5 58/8 59/3 62/12 67/18 72/21 74/25 76/18 77/14 77/18 80/16 85/4 86/8 86/12 98/1 98/2 102/5 105/16 105/24 112/21 114/11 127/15 132/1 132/3 133/1 133/19
goal [1] 16/23
goes [14] 22/12 25/4 51/19 51/19 52/15 55/10 59/22 61/23 61/24 69/20 76/11 82/3 82/25 120/24
going [79] 7/12 10/6 15/17 20/2 20/10 23/6 23/9 25/21 25/24 25/25 26/1 27/3 27/5 27/10 27/17 27/23 28/3 28/8 28/13 28/14 29/13 31/1 31/2 31/22 32/13 32/16 32/17 32/20 32/23 33/22 37/19 37/21 39/15 40/13 42/24 43/4 43/11 43/21 50/20 52/23 53/17 53/18 56/1 58/7 58/8 60/10 61/13 62/11 62/12 63/21 65/22 67/12 67/21 70/2 70/3 70/8 75/15 77/16 77/23 81/22 82/18 86/13 86/14 94/1 94/7 94/9 94/18 95/5 98/4 98/13 105/11 106/22 111/11 111/14 116/8 121/10 124/15 128/21 134/1
golfing [1] 36/10
Gomez [1] 21/24
Gomez's [1] 22/3
gone [2] 14/19 107/15
good [17] 3/8 3/11 3/15 3/16 3/21 19/22 36/4 38/5 40/21 67/10 67/11 86/19 86/25 87/4 87/7 87/17 131/25
goodwill [1] 12/7
Google [1] 46/10
gosh [1] 119/23
got [4] 47/9 74/12 77/15 93/3
gotten [5] 70/4 70/20 96/7 118/2 125/2
govern [1] 95/20
governing [1] 22/2
government [50] 6/23 8/15 14/11 14/12 61/24 63/6 75/21 87/8 99/3 99/14 99/15 105/17 106/22 108/2 108/9 108/23 112/9 112/11 113/13 114/5 114/20 116/17 116/21 116/21 116/22 116/25 117/8 117/16 117/19 118/5 118/8 118/21 119/1 119/5 120/8 120/22 120/24 121/3 121/14 121/23 122/5 122/19 123/5 123/7 124/18 125/3 125/11 125/25 127/21 128/8
government's [7] 108/4 112/1 116/6 116/9 120/3 124/10 126/9
governmental [3] 49/2 101/14 102/14
governs [2] 95/17 95/17
grand [2] 119/13 119/17
grant [1] 37/13
granted [4] 129/5 130/8 130/16 133/17
granularity [1] 78/8
grave [2] 117/7 127/18
greater [1] 121/5
Greg [1] 126/4
ground [2] 15/9 43/16
grounded [1] 108/25
grounds [6] 9/12 28/2 44/19 79/24 92/23 126/18
groups [1] 101/23
growling [1] 134/16
guard [1] 122/19
guess [2] 73/20 124/18
guessing [1] 74/12
guidance [3] 128/21 130/18 131/20
guided [1] 131/8

H

had [51] 10/8 13/4 14/13 14/25 15/11 15/13 16/23 23/23 24/2 26/17 26/23 27/16 30/5 32/15 40/13 42/22 43/18 50/11 52/7 57/4 57/14 57/14 57/15 57/15 60/12 68/17 68/23 69/21 69/22 70/1 74/16 74/21 75/7 76/21 83/15 90/12 90/16 91/9 94/15 95/1 102/5 107/4 107/10 108/22 109/21 110/5 115/11 116/3 119/1 123/16 123/16
halls [1] 101/8
handled [1] 114/17
handling [2] 38/8 114/23
hang [1] 101/9
happen [7] 26/16 27/1 27/2 34/2 34/2 56/7 125/11
happened [11] 40/6 40/14 47/20 50/13 55/5 56/9 56/14 103/12 103/13 109/10 109/11
happening [1] 114/6
happens [2] 56/7 127/10
happy [6] 16/24 25/16 26/2 32/25 46/24 79/6
harass [1] 100/2
harassing [1] 64/18
hard [1] 14/8
hardly [1] 17/3
harm [6] 18/10 20/23 27/6 27/21 30/24 35/2
harmed [4] 25/1 28/16 32/5 129/9
harms [1] 24/25
has [101] 5/17 5/25 6/10 6/14 6/19 7/19 8/14 8/14 14/7 14/13 14/16 14/19 15/22 17/10 18/8 18/16 21/20 21/21 22/19 23/2 23/12 24/8 24/9 24/25 25/1 25/17 27/6 27/8 27/9 31/13 35/2 35/22 35/25 37/6 38/13 38/24 39/12 39/13 40/11 40/16 40/19 41/2 41/7 41/15 47/14 47/16 47/20 48/16 48/21 51/24 52/3 52/10 53/3 55/19 56/5 64/22 66/7 69/18 70/21 75/12 76/3 79/20 80/24 82/12 82/13 85/11 88/21 89/3 89/4 89/21 90/14 93/16 93/17 93/19 99/2 100/12 101/3 107/8 107/18 108/2 110/14 110/21 111/12 113/11 114/25 115/22 116/3 116/13 116/17 116/18 116/20 118/1 121/7 123/9 126/4 127/25 128/15 129/10 129/21 132/14 133/13
hasn't [2] 112/23 113/12
hatching [1] 106/11
have [273]
haven't [6] 24/12 43/23 43/24 70/4 86/9 115/2
having [6] 14/11 26/15 32/10 78/2 89/4 122/20
he [184]
he's [3] 44/4 44/7 83/23
head [1] 78/24
headed [4] 51/2 52/13 94/25 96/12
heading [1] 18/24
headquartered [1] 5/5
heads [1] 122/12
hear [9] 7/12 33/22 34/12 37/21 48/14 59/13 66/10 67/8 69/17
heard [38] 19/8 29/7 29/23 33/7 34/23

H

heard... [33] 45/6 48/15 49/19 50/23 57/10 57/10 65/11 69/13 74/10 77/21 81/13 82/11 84/19 89/8 89/9 89/10 89/13 89/24 91/13 91/22 92/5 92/14 97/1 103/17 104/20 110/17 111/7 112/9 112/12 113/3 120/2 134/12 134/16
hearing [13] 1/10 3/24 4/2 4/5 4/8 4/21 36/20 37/23 38/8 81/20 98/5 104/9 129/3
hearings [1] 3/22
heart [5] 39/16 40/3 48/9 48/11 88/6
heartening [1] 66/10
heavy [1] 14/9
heels [1] 101/4
Heinen [1] 12/16
held [10] 3/2 8/19 8/22 9/1 12/8 13/10 17/22 54/25 76/3 83/14
help [4] 8/6 100/21 127/12 127/13
helpful [1] 118/19
helping [1] 107/6
helps [1] 122/18
Hence [1] 93/3
her [4] 60/9 91/16 91/22 126/19
Herbert [1] 95/14
here [55] 3/17 3/22 12/4 13/9 22/7 34/6 34/24 40/3 40/9 40/25 41/9 41/18 42/7 45/17 48/24 54/13 55/5 56/9 56/14 64/22 66/4 70/20 72/7 73/16 73/17 74/10 76/20 83/4 84/12 88/17 89/14 90/23 92/8 93/9 97/10 98/13 98/14 98/16 98/19 99/14 100/1 107/15 109/11 109/16 109/16 110/25 114/6 115/13 117/9 120/20 122/20 125/11 127/6 127/14 130/1
here's [1] 43/20
hereby [1] 135/4
herring [1] 116/15
Herschmann [2] 106/15 106/17
hewed [1] 17/3
hey [1] 125/2
high [1] 76/4
highest [1] 75/23
highly [1] 88/7
him [17] 22/13 22/13 22/14 35/21 39/9 43/12 48/23 49/4 53/13 88/20 96/3 105/15 106/24 107/3 107/6 107/6 123/11
himself [7] 6/13 7/15 18/10 22/8 37/21 121/6 123/16
hired [1] 9/6
his [153]
historical [1] 109/9
history [1] 101/5
hit [1] 59/12
hold [2] 11/14 12/13
home [1] 103/10
Homeland [3] 63/6 101/14 102/14
Honor [239]
Honor's [5] 26/3 26/11 28/22 66/1 71/18
HONORABLE [1] 1/11
hopefully [1] 30/4
horse [1] 94/6
host [1] 36/10
hour [2] 8/9 56/11
hour-long [1] 56/11
hours [4] 83/23 86/13 97/1 105/20
House [7] 96/21 101/13 102/19 105/14 105/14 123/13 123/17
households [1] 5/7
how [27] 22/19 23/4 23/16 24/9 24/24 27/4 27/15 27/22 31/19 45/5 46/8 56/2 69/12 69/25 70/20 72/4 74/10 78/25 78/25 81/13 81/23 89/10 89/12 96/2 96/6 124/19 125/6
Howell [1] 120/21
however [4] 35/2 71/25 128/25 129/20
huge [3] 56/19 63/10 93/25
hundred [3] 42/2 70/23 87/25
hundreds [2] 16/17 20/14
Hunt [1] 115/12
hunters [3] 57/3 57/4 57/6

I

I'd [5] 46/24 54/9 59/9 67/1 108/17
I'll [1] 69/4
I'm [36] 10/22 10/22 17/12 22/23 22/23 24/19 25/16 26/2 26/25 27/1 27/1 31/15 32/5 32/25 39/21 53/3 54/5 60/8 61/21 62/6 63/15 66/1 66/11 67/16 70/14 70/17 73/19 74/12 78/16 79/13 81/19 112/6 115/11 120/5 122/1 131/10
I've [1] 6/7
IAN [4] 1/14 3/9 71/21 87/1
icorp [1] 1/18
identical [1] 92/17
identification [1] 67/25
identified [2] 76/13 125/7
identify [4] 13/1 65/12 73/2 74/8
identifying [4] 74/21 76/14 76/17 114/8
if [91] 4/16 4/18 7/20 7/23 9/15 10/8 11/4 11/17 13/4 16/23 17/5 18/17 18/17 22/17 22/19 25/6 26/2 27/2 27/6 31/16 36/15 36/16 36/21 40/21 43/9 43/22 43/25 44/8 45/15 46/25 48/2 52/9 53/16 55/10 57/14 59/10 60/9 62/9 62/9 62/14 63/18 65/18 66/16 67/4 67/16 67/21 69/17 71/6 71/16 71/18 72/21 73/3 73/7 73/19 75/15 77/3 79/3 80/14 81/21 85/2 92/16 92/19 93/24 94/6 96/17 106/19 106/19 109/18 114/7 114/11 117/2 118/18 118/20 119/9 120/11 120/13 120/19 122/1 122/11 122/12 123/2 123/3 123/12 124/24 125/6 125/10 126/8 128/12 129/17 131/24 132/8
ignore [1] 52/19
ignored [3] 6/1 6/6 16/2
ignores [1] 42/8
ignoring [2] 6/5 109/13
ii [1] 64/19
illuminate [2] 66/16 131/3
imagine [3] 14/9 14/16 14/24
imbalance [2] 11/7 15/22
immediately [2] 50/6 131/20
impact [5] 13/8 23/16 94/7 101/18 101/19
impacted [1] 101/17
impasse [2] 26/18 72/1
implicate [2] 67/13 67/22
implicated [3] 76/3 118/16 118/24
implicates [3] 68/10 68/12 114/20
implication [11] 81/12 88/22 104/15 104/18 104/22 104/23 105/1 105/5 105/6 110/11 110/16
implications [1] 124/13
implied [3] 39/10 80/16 104/17
implies [2] 81/10 103/19
implore [2] 109/16 128/4
import [1] 126/25
important [6] 55/8 56/23 64/9 75/17 98/22 116/23
importantly [1] 30/13
impose [2] 64/20 66/14
imposed [1] 75/18
impossible [1] 75/13
impression [39] 40/17 40/17 40/19 40/23 41/3 41/6 50/8 50/9 50/11 52/7 57/8 59/18 59/21 59/25 60/5 60/11 60/17 60/21 61/10 80/7 80/8 80/10 80/21 80/22 81/2 81/24 82/2 82/3 82/6 82/11 90/1 90/2 109/21 110/2 110/5 130/24 130/25 131/1 131/2
impressions [1] 131/17
improper [1] 28/4
improperly [2] 39/25 40/4
impropriety [1] 99/5
impugned [2] 130/4 130/4
impugning [1] 122/1
in [509]
inaccurate [1] 119/16
inappropriate [1] 126/9
incendiary [1] 103/11
incite [1] 59/24
incited [2] 89/5 102/8
inclined [2] 66/14 112/10
include [4] 75/3 75/6 75/9 132/16
includes [2] 68/5 73/1
including [19] 12/7 14/25 16/8 18/9 20/24 21/6 21/7 25/22 29/16 35/19 38/12 42/25 45/4 45/22 63/12 76/6 79/24 85/21 89/22
inclusive [1] 111/15
income [14] 6/24 7/19 7/22 7/23 8/1 8/13 8/16 8/24 9/21 11/9 29/9 29/19 29/20 30/11
incorporates [1] 108/21
incorrect [2] 73/19 74/3
increase [3] 8/1 8/1 9/4
increased [3] 6/24 11/9 37/9
indeed [3] 11/8 14/15 22/2
independently [1] 126/15
indicate [1] 74/11
indicated [4] 35/1 74/16 74/21 84/16
indictment [1] 102/23
indirect [2] 81/15 89/10
indiscriminately [1] 16/22
individual [6] 3/13 21/18 22/3 23/16 68/4 78/9
individually [1] 64/5
individuals [8] 49/4 63/13 64/11 67/25 114/19 118/7 118/25 120/7
indulgence [3] 65/18 113/7 113/14
inexorably [1] 35/16
infer [1] 58/25
inflicted [1] 20/16
inform [2] 76/5 127/12
informant [1] 85/3
information [62] 8/12 9/23 10/15 10/25 12/10 15/1 18/25 23/7 23/8 23/10 23/12 23/25 29/8 29/13 30/12 30/21 32/11 32/11 43/6 44/24 48/17 49/1 52/17 52/19 52/20 52/21 53/2 53/10 53/24 56/2 56/3 59/16 68/25 69/3 72/24 74/16 75/16 83/15 83/19 83/24 84/9 84/10 84/24 85/7 85/8 85/9 89/17 90/18 91/24 93/6 95/2 96/22 100/22 103/25 106/6 106/19 110/18 110/21 111/4 113/9 113/13 114/13
infringe [1] 94/1
infringement [3] 12/2 12/18 13/13
initial [7] 17/6 17/7 17/10 20/1 53/22 66/24 121/22
initially [3] 34/4 47/7 119/21

I

injects [1] 59/8
injured [1] 11/12
injury [12] 7/7 20/15 20/20 23/1 25/21 25/25 27/9 27/10 27/12 27/14 27/20 28/2
inquiry [4] 31/11 55/9 61/22 94/3
insinuated [1] 104/17
insofar [1] 25/1
inspired [1] 103/13
instance [2] 98/19 118/21
instead [3] 38/14 90/8 102/13
instructed [3] 6/15 9/5 126/5
instruments [1] 29/14
insurmountable [1] 127/22
insurrection [1] 102/18
insurrectionist [1] 20/18
intellectual [2] 8/25 85/22
intelligence [2] 102/15 105/13
intend [4] 31/9 33/6 33/15 33/16
intended [3] 82/6 82/7 105/5
intent [3] 50/1 50/20 52/14
intentional [1] 54/10
intentionally [6] 41/6 58/9 59/2 83/21 89/15 90/2
interest [35] 3/12 4/12 6/16 8/14 21/20 29/21 76/1 99/5 99/10 99/11 108/2 108/4 111/23 112/1 112/5 112/7 114/7 116/25 117/20 120/3 121/23 122/1 122/20 123/6 123/6 123/22 124/1 124/10 124/12 124/22 126/9 126/16 127/1 127/6 127/17
interested [1] 15/17
interesting [1] 116/15
interests [5] 4/14 20/24 117/19 127/3 128/19
interlineate [1] 26/2
interlineation [2] 25/16 28/25
internal [1] 46/18
internet [4] 6/3 16/8 38/22 44/5
interpose [1] 93/4
interposed [2] 92/21 100/10
interpret [1] 73/18
interrogatories [31] 4/4 37/24 38/10 46/24 47/2 47/22 48/25 49/3 49/7 49/9 65/7 65/8 65/23 66/20 67/6 67/13 67/15 67/21 67/24 69/3 71/16 73/21 77/12 78/25 79/5 79/12 79/14 85/12 86/2 91/14 91/16
interrogatory [12] 47/6 49/5 49/12 66/8 66/24 69/25 70/10 70/12 73/23 74/20 85/14 97/21
interrupt [3] 39/21 62/6 80/12
interrupting [2] 9/14 47/13
interval [1] 13/6
interviews [1] 54/23
into [28] 4/19 5/14 7/11 13/19 18/24 20/18 22/18 35/14 35/14 35/23 38/20 41/11 42/19 44/14 48/3 48/4 80/21 82/25 83/16 105/13 105/16 107/2 108/1 110/15 114/8 117/16 119/24 122/21
invade [1] 74/22
invades [1] 71/3
invading [1] 77/22
investigate [2] 63/8 102/20
investigations [2] 61/24 101/12
investigative [2] 73/2 73/3
investigatory [1] 103/2
involved [14] 68/8 88/23 93/18 103/6 106/10 107/5 114/16 116/25 117/3 118/16 118/23 119/2 119/2 123/13
involvement [3] 108/22 110/19 123/16
involves [2] 75/4 127/21
involving [2] 17/25 68/13
irrelevant [2] 56/18 96/6
Irrespective [1] 29/25
IRS [6] 108/7 116/16 123/8 125/7 125/7 128/3
is [610]
isn't [1] 129/17
issuance [1] 131/24
issue [89] 5/12 7/10 12/10 13/2 13/12 39/15 40/9 40/25 41/2 41/9 41/14 41/18 41/23 42/1 42/4 42/6 43/3 43/21 46/4 47/4 47/12 51/19 51/20 52/11 52/23 53/5 53/7 53/16 54/9 54/15 56/15 57/22 58/2 58/5 58/10 59/5 60/13 62/2 64/8 65/18 65/19 69/22 73/5 76/20 76/25 80/15 80/18 81/8 81/14 82/11 82/24 83/12 84/14 85/5 85/6 88/9 88/19 89/16 89/18 90/14 91/19 93/19 95/11 97/12 100/22 101/3 105/24 109/2 110/24 111/9 115/7 116/8 117/5 117/17 119/17 119/24 120/5 121/15 122/1 126/11 127/17 127/20 129/24 130/5 131/3 131/15 131/18 131/19 133/24
issued [9] 113/2 115/2 115/4 115/25 116/10 117/5 120/21 132/7 132/10
issues [34] 5/19 7/11 10/18 13/15 33/19 47/5 53/20 64/11 67/14 68/2 68/16 73/16 80/2 81/6 81/17 84/5 84/20 87/18 89/2 89/19 93/12 93/15 94/5 96/4 98/22 100/15 101/2 105/19 107/8 120/15 121/21 127/13 128/24 131/23
issuing [1] 116/21
it [320]
it's [14] 5/18 7/22 9/10 16/17 25/20 25/25 40/23 41/16 46/13 61/11 79/2 79/19 83/7 125/11
item [4] 77/16 77/16 77/25 77/25
items [2] 9/3 9/20
its [21] 12/14 13/12 13/13 14/14 20/5 29/17 29/17 52/17 75/12 75/23 75/24 76/1 76/2 88/20 99/14 111/22 117/3 122/19 124/12 126/16 131/12
itself [9] 6/21 40/9 58/1 80/24 81/21 81/25 84/1 105/12 131/6
Ivanka [2] 105/23 107/3

J

Jack [2] 63/2 84/3
Jackson [1] 103/11
Jacobs [1] 126/4
JALAINE [3] 1/14 3/10 87/2
January [68] 4/9 6/17 39/5 39/9 39/14 39/19 40/2 41/10 41/24 42/9 42/16 44/17 45/14 47/23 49/22 50/6 53/6 53/14 53/25 56/21 59/8 61/23 62/19 62/23 63/2 63/5 63/8 63/12 70/2 77/19 81/6 82/23 84/1 85/7 85/21 88/18 88/23 89/20 90/8 92/10 93/11 94/3 95/2 96/5 96/20 97/15 98/15 101/4 101/13 102/16 102/20 102/21 103/6 104/5 105/25 109/8 109/10 109/13 110/20 111/8 111/12 111/13 111/16 113/4 131/5 131/6 131/18 131/19
January 2021 [2] 50/6 62/19
January 26th [1] 63/12
January 6 [59] 4/9 6/17 39/5 39/14 40/2 41/24 42/9 42/16 44/17 49/22 53/6 53/14 53/25 56/21 59/8 61/23 62/23 63/2 63/5 63/8 70/2 77/19 81/6 82/23 84/1 85/7 85/21 88/18 88/23 89/20 90/8 92/10 93/11 94/3 96/5 96/20 97/15 98/15 101/4 101/13 102/16 102/20 102/21 103/6 104/5 105/25 109/8 109/10 109/13 110/20 111/8 111/12 111/13 111/16 113/4 131/5 131/6 131/18 131/19
January 6th [6] 39/9 39/19 41/10 45/14 47/23 95/2
Jean [1] 14/22
jemancari [2] 2/13 135/9
Jesus [2] 104/11 104/24
Jews [2] 104/11 104/24
jgarcia [1] 1/18
Joanne [3] 2/12 135/8 135/8
job [2] 15/13 117/9
John [2] 90/7 106/20
joint [18] 3/23 4/4 4/7 4/20 10/11 34/5 34/24 41/15 51/14 86/10 87/24 90/22 92/3 98/5 118/12 120/25 121/1 129/2
jointly [1] 99/13
journalistic [1] 56/10
Jr [3] 7/1 7/1 14/16
judge [36] 1/11 3/3 5/9 5/20 10/20 11/19 11/23 11/24 12/8 12/17 12/25 13/2 13/10 15/14 15/25 64/16 64/17 81/7 81/19 83/12 86/21 103/4 103/5 103/8 103/11 105/8 108/6 115/11 115/15 120/21 123/9 125/6 126/19 132/25 133/12 133/17
judge's [1] 12/20
judges [2] 81/5 101/15
judgment [7] 14/22 50/15 50/15 55/17 55/20 80/1 104/9
judicial [3] 53/21 76/8 115/16
July [7] 1/5 6/2 6/4 34/6 38/20 46/7 135/8
July 14 [1] 6/2
July 14th [2] 38/20 46/7
July 1st [1] 6/4
juncture [2] 17/2 35/12
jurisdiction [3] 5/11 90/14 133/9
jurisdictional [2] 79/24 91/19
jurisdictions [3] 115/5 115/6 119/23
jurisprudence [1] 128/13
jury [5] 32/18 55/15 57/10 119/13 119/17
just [90] 3/12 4/19 5/18 6/21 8/15 9/4 15/25 16/5 17/5 25/23 26/12 30/9 32/7 34/12 35/10 35/24 38/19 40/13 41/16 42/1 43/18 44/9 46/13 46/19 46/21 47/8 47/16 48/3 48/19 49/3 50/23 50/25 51/5 51/9 59/19 60/2 62/7 62/12 62/14 62/16 63/17 63/21 65/11 67/1 68/9 68/11 68/18 69/13 70/22 70/25 73/15 74/11 82/24 84/23 85/25 87/10 91/7 91/22 92/4 93/7 94/20 97/21 107/19 109/1 109/3 111/19 112/16 112/25 113/7 113/14 115/18 115/22 115/23 116/6 117/4 117/8 117/9 119/9 119/12 120/11 123/6 124/8 124/15 125/1 125/20 125/23 128/4 131/17 133/4 134/11
Justice [17] 3/14 6/15 17/21 17/21 99/10 101/13 107/25 108/1 108/5 108/19 120/19 122/2 123/10 123/14 123/18 126/6 126/15
Justice's [1] 120/16

K

keep [5] 18/21 29/3 47/19 64/1 94/18
kind [3] 36/21 78/8 122/18
King [1] 5/5
Kingdom [3] 8/10 13/25 18/8
knew [3] 56/18 105/4 106/7

K
know [49] 4/19 6/25 7/4 7/24 9/2 9/2 9/4 11/17 14/2 14/19 23/7 26/6 26/10 33/6 33/14 37/6 37/8 54/2 54/3 56/17 57/12 66/11 69/25 70/14 70/25 71/12 74/7 75/13 78/24 79/3 79/10 83/8 84/4 84/6 89/7 89/12 90/10 90/10 93/24 94/21 99/23 101/5 101/12 108/5 108/5 123/24 130/15 133/16 134/15
knowledge [3] 55/2 105/11 116/3
knows [3] 61/22 84/8 90/6

L
labeled [1] 104/13
Lando [2] 95/14 97/6
language [3] 12/20 25/22 26/12
large [6] 49/21 92/17 94/22 95/13 107/14 129/6
last [9] 4/11 4/15 17/5 34/23 47/8 85/16 97/20 98/12 126/23
late [2] 18/6 115/24
later [5] 30/23 33/22 69/5 82/23 86/4
law [19] 3/17 10/23 10/23 17/17 21/17 22/2 22/2 22/7 33/11 52/2 53/19 58/11 75/6 75/7 83/8 85/2 101/7 104/25 111/2
lawfully [1] 105/18
lawsuit [8] 16/9 39/18 88/19 106/4 106/5 106/6 113/20 113/25
lawsuits [1] 43/5
lawyer [3] 106/21 117/8 123/10
lawyers [3] 6/10 9/6 128/9
lead [1] 123/1
leader [2] 21/2 42/19
leading [4] 22/18 54/1 93/16 110/20
leads [1] 65/6
learned [1] 114/18
least [18] 6/24 7/21 10/9 16/25 36/19 37/9 37/17 80/17 80/22 81/19 87/23 94/14 94/21 98/2 101/15 118/11 120/5 125/12
leave [3] 11/12 102/6 125/18
leaving [2] 18/10 93/8
led [2] 54/13 128/14
left [6] 11/20 12/24 13/2 35/19 35/22 48/3
legal [2] 53/21 75/10
lens [1] 98/24
Leon [1] 1/16
less [1] 79/13
let [6] 4/19 25/7 33/6 50/5 126/17 130/14
let's [7] 61/15 77/14 86/8 86/12 87/10 98/3 124/12
LETT [1] 1/11
letter [7] 50/4 57/25 64/1 64/4 88/25 109/19 109/25
letterhead [1] 64/3
letters [2] 10/12 100/24
level [1] 75/23
levels [1] 120/19
leverage [3] 27/10 28/11 102/13
leveraged [1] 102/1
liabilities [1] 24/1
liability [3] 34/11 39/4 95/4
liable [1] 12/13
libel [1] 104/13
liberal [2] 89/15 130/1
license [1] 5/6
lie [1] 31/17
lies [1] 132/12
lift [1] 14/9
lifted [3] 92/11 124/1 124/5
light [7] 32/17 60/13 92/25 95/6 100/15 118/20 130/12
like [19] 9/20 34/2 45/25 46/25 54/9 59/9 74/21 106/12 106/15 106/17 107/3 107/3 108/17 112/25 120/9 123/6 128/25 131/11 132/14
likely [1] 44/14
likewise [1] 65/7
limine [1] 36/20
limit [3] 26/7 43/11 109/18
limitation [7] 7/8 8/7 14/7 16/20 17/4 20/24 24/2
limited [10] 18/9 25/19 25/22 28/20 34/15 35/19 60/23 65/1 65/2 130/21
linchpin [1] 53/17
line [3] 116/5 128/9 130/11
list [3] 7/21 49/8 68/1
listed [1] 8/3
lists [1] 63/13
literally [1] 118/11
litigant [1] 114/2
litigate [1] 89/14
litigated [3] 45/19 48/24 84/5
litigating [1] 93/12
litigation [14] 39/16 45/14 62/1 73/25 74/6 74/9 76/9 80/3 81/16 84/19 91/20 106/8 117/4 122/10
litigations [1] 14/20
little [2] 59/14 67/17
live [1] 81/17
lives [1] 121/1
LLC [1] 64/13
LLP [2] 2/3 2/8
loaded [1] 11/4
local [6] 38/18 44/23 62/24 71/5 77/25 131/10
locations [1] 107/16
log [4] 45/21 84/21 84/22 85/4
logical [2] 14/10 83/5
logically [2] 35/16 36/1
logistical [1] 67/2
logs [4] 44/23 61/25 62/4 62/18
London [1] 5/6
long [2] 56/11 68/1
longer [1] 128/13
look [14] 10/25 11/6 11/24 13/20 36/8 61/15 76/11 79/3 109/19 113/8 114/7 128/4 130/10 132/6
looked [2] 98/23 116/11
looking [5] 21/5 22/20 97/2 118/5 119/4
looms [1] 48/7
loop [4] 94/20 94/22 94/25 95/10
loss [2] 9/20 35/7
losses [3] 11/5 13/17 36/22
lost [2] 37/4 118/2
lot [13] 14/25 59/3 81/5 87/18 92/4 98/1 99/19 101/18 103/15 103/17 114/8 115/17 128/2
Lots [1] 90/18
lunches [1] 134/16

M
made [46] 5/22 6/1 11/2 11/3 19/20 19/21 19/23 19/24 22/24 23/3 23/15 24/7 25/18 26/13 28/6 28/14 29/25 30/4 30/5 30/6 30/23 35/10 36/17 39/24 48/5 50/3 50/11 52/7 60/12 60/14 64/2 64/6 65/14 84/15 92/12 95/7 102/12 105/1 105/5 105/6 106/24 109/14 109/21 110/5 122/24 124/2
Magazine [1] 34/21
magistrate [5] 1/11 11/24 12/7 12/17 64/16
magnified [1] 33/21
magnitude [1] 125/6
maintain [1] 14/17
maintaining [1] 76/1
major [1] 34/9
majority [2] 35/8 92/9
make [38] 10/7 20/1 25/17 26/14 30/2 32/21 32/24 41/7 41/20 44/11 45/18 46/2 46/15 49/21 51/6 51/9 51/25 57/20 63/25 72/11 75/22 85/23 87/11 88/2 91/7 91/23 96/22 99/17 106/24 107/19 110/12 114/14 115/7 119/10 123/15 124/4 127/13 133/9
maker [1] 36/4
makes [4] 42/1 67/5 93/5 95/15
making [14] 6/7 22/23 24/7 28/9 28/24 34/3 48/23 49/3 75/5 86/4 99/1 110/13 133/5 133/8
Malcolm's [1] 55/21
malice [35] 41/4 41/8 49/25 50/21 50/25 51/1 51/20 51/23 52/13 52/16 52/24 52/24 53/7 53/16 53/21 54/15 56/17 58/5 58/9 58/14 58/19 58/21 58/25 59/5 79/22 80/5 80/16 83/3 88/22 95/16 100/6 104/25 105/3 105/10 121/21
malicious [1] 82/7
maliciously [1] 20/17
man [4] 36/6 37/11 37/11 102/21
managers [1] 14/25
Mancari [3] 2/12 135/8 135/8
manifestly [1] 98/15
manipulate [1] 56/3
manipulation [2] 56/13 56/15
manner [2] 54/24 102/24
many [12] 46/8 46/17 78/25 79/1 83/23 85/7 93/16 97/1 97/2 114/19 115/4 115/5
marched [1] 101/6
mark [2] 53/8 106/15
marshal [1] 32/11
massive [2] 7/5 20/19
Masson [4] 41/1 54/21 55/7 56/24
material [4] 55/3 113/19 114/9 116/11
materials [4] 73/2 73/3 73/4 114/1
Matesic [1] 105/7
Matt [1] 87/7
matter [17] 17/17 17/23 24/16 30/13 42/10 47/16 47/17 74/22 76/5 88/12 88/15 93/1 93/13 104/25 105/4 116/16 135/6
matters [5] 48/9 56/1 57/18 61/17 61/18
Matthew [1] 3/14
Max [1] 77/8
may [62] 4/10 4/14 4/25 5/22 10/24 11/16 17/5 18/2 19/8 21/18 31/19 32/5 34/6 37/21 38/5 47/8 50/19 59/10 59/12 63/18 65/18 65/18 65/21 66/16 67/22 69/10 70/18 71/6 71/8 71/17 71/18 71/20 72/11 72/13 72/19 73/7 74/21 75/8 75/8 75/15 79/18 80/12 81/24 86/19 87/18 91/6 99/6 99/7 103/12 103/13 112/18 112/21 115/6 115/24 115/25 115/25 116/1 118/20 120/21 121/23 127/11 128/20
May 18th [1] 47/8
May 28th [1] 116/1
May 8th [1] 115/25

M

maybe [7] 10/2 61/16 91/8 91/15 91/22 115/25 119/23
me [42] 4/19 21/22 25/7 25/23 27/16 32/22 44/3 50/5 50/15 50/24 50/25 60/9 62/6 62/11 62/15 63/22 65/6 65/11 66/17 67/2 70/24 71/1 73/19 74/3 77/10 78/25 80/14 80/18 81/18 103/14 106/20 107/22 108/21 109/4 111/22 119/9 123/12 123/15 124/13 129/20 132/25 133/15
Meadows [1] 106/15
mean [3] 24/13 121/13 128/9
meaning [6] 55/4 55/11 104/7 110/24 111/2 111/6
meaningful [2] 69/15 70/18
meaningfully [5] 38/16 43/22 45/24 46/22 72/3
means [5] 39/13 89/16 101/19 102/24 122/11
meant [6] 9/17 24/21 43/20 49/1 81/13 82/12
Meanwhile [1] 5/15
measure [1] 36/5
media [2] 17/22 38/21
meet [35] 10/12 13/25 15/10 16/25 38/14 41/3 41/8 43/2 43/17 69/15 69/21 70/1 70/8 70/11 70/19 71/14 74/13 74/15 77/4 77/6 77/25 78/6 79/20 82/15 84/17 85/5 85/17 93/14 101/11 121/20 123/12 131/9 131/21 131/25 132/14
meeting [1] 104/3
meets [1] 53/20
Mehta [1] 103/8
MENA [3] 1/15 3/10 87/2
mention [2] 81/9 85/11
mentioned [6] 16/6 30/9 61/7 85/1 110/23 130/23
merely [1] 126/13
merged [3] 40/4 40/5 58/9
merits [1] 91/21
message [1] 82/8
met [3] 9/15 43/21 90/9
metadata [3] 6/4 16/7 38/22
Miami [2] 1/4 37/2
Miami-Dade [1] 37/2
mic [1] 67/17
MICHAEL [4] 1/15 3/10 87/2 114/24
Mid [1] 17/20
Mid-Florida [1] 17/20
might [12] 17/1 43/25 45/20 47/11 48/2 55/13 72/21 81/10 84/10 119/15 127/12 127/13
million [6] 7/21 7/22 7/22 7/24 7/24 7/25
millions [1] 20/14
mind [10] 42/13 53/1 57/18 58/17 68/15 78/16 95/11 95/13 95/16 95/22
minute [2] 28/20 34/12
minutes [4] 27/17 39/24 40/12 86/14
mirrored [1] 17/8
misapprehended [1] 60/9
misheard [3] 50/19 91/8 91/16
Mishkin [1] 77/8
misimpression [1] 33/8
misleading [2] 50/7 80/6
misleadingly [1] 103/23
misread [1] 30/16
miss [2] 53/8 119/10
missed [1] 11/19
misspeaking [1] 97/20
misstating [1] 98/21
mistaken [6] 50/11 52/7 60/11 80/10 109/21 110/5
mitigation [2] 17/12 17/13
mmena [1] 1/19
mob [3] 101/6 101/11 103/9
mobs' [1] 104/6
modified [1] 114/12
modifies [1] 66/25
modify [1] 113/17
moment [5] 30/25 35/5 71/7 119/9 132/25
moments [1] 112/16
Monday [1] 47/10
month [1] 66/13
months [7] 35/15 38/20 46/13 48/3 48/3 48/4 82/23
more [31] 7/20 9/24 15/11 15/11 22/9 28/18 29/1 30/13 36/25 40/7 46/14 46/14 46/17 58/3 61/10 61/19 76/3 76/23 76/23 78/13 81/11 84/9 84/25 96/11 108/3 114/12 118/20 125/13 127/14 130/17 131/6
Moreover [4] 14/19 20/15 104/13 129/25
morning [10] 3/8 3/11 3/15 3/16 3/21 3/22 33/22 38/5 67/10 67/11
most [9] 4/17 6/2 9/3 9/3 55/8 77/8 98/16 115/15 121/24
mostly [1] 46/18
motion [71] 3/23 4/1 4/4 4/7 4/18 4/20 4/22 4/24 5/9 5/10 5/16 10/11 15/7 18/17 18/18 19/11 25/14 29/1 29/3 34/5 34/24 36/20 37/13 37/13 37/18 37/19 37/22 38/1 41/15 46/25 51/5 51/14 55/17 79/23 84/13 86/11 87/14 87/24 90/22 92/3 96/13 98/5 98/7 107/14 108/13 109/16 111/15 112/19 115/9 115/12 118/12 119/21 120/25 121/11 121/16 122/23 122/23 125/10 129/2 129/4 129/5 130/7 130/15 132/8 132/9 133/11 133/12 133/14 133/16 133/25 134/5
motions [11] 4/17 5/19 38/9 38/12 44/15 115/6 115/20 121/1 127/11 130/16 133/18
motivated [1] 102/5
mouth [1] 67/17
move [4] 5/15 47/1 72/19 98/3
movement [2] 106/12 106/14
moving [2] 34/3 94/10
Mr [1] 105/15
Mr. [28] 6/10 18/2 33/11 41/24 71/24 82/17 93/15 93/16 102/5 104/20 106/4 114/19 115/1 116/3 117/2 117/7 117/13 117/17 118/20 121/24 121/24 122/1 123/2 123/11 123/11 124/6 127/23 128/6
Mr. Brito [7] 18/2 71/24 104/20 106/4 121/24 122/1 123/2
Mr. Brito's [2] 6/10 124/6
Mr. Corp [2] 93/15 93/16
Mr. Feeley [2] 121/24 123/11
Mr. Gerardi [1] 123/11
Mr. Tobin [12] 33/11 41/24 82/17 114/19 115/1 116/3 117/7 117/13 117/17 118/20 127/23 128/6
Mr. Tobin's [1] 117/2
Mr. Trump [1] 102/5
Ms. [14] 7/12 65/19 65/22 68/17 71/24 73/10 74/8 74/11 76/21 77/7 84/6 85/1 92/6 103/3
Ms. Dudding [8] 7/12 68/17 74/8 74/11 76/21 77/7 92/6 103/3
Ms. Dudding's [1] 73/10
Ms. Garcia [5] 65/19 65/22 71/24 84/6 85/1
much [19] 4/25 14/14 23/7 23/10 25/18 40/6 57/24 61/10 63/23 72/18 76/22 76/23 78/5 79/17 91/25 112/23 127/9 129/25 134/15
multiple [1] 53/13
must [4] 17/18 55/22 116/25 128/25
my [51] 3/9 25/3 27/11 27/22 35/4 41/24 51/12 62/9 63/16 63/21 65/19 66/19 66/22 67/7 71/8 71/24 73/17 77/8 77/10 79/14 80/17 82/17 87/1 94/20 94/22 98/11 98/12 108/21 109/4 111/22 112/8 112/18 114/24 114/24 115/2 115/12 116/2 116/6 117/16 118/16 118/17 118/19 118/25 119/6 119/9 123/18 126/25 128/9 133/22 134/16 135/5
mystery [1] 122/18
myth [1] 106/11

N

name [6] 3/14 9/1 20/13 21/6 22/11 36/11
names [3] 49/4 49/8 73/23
narrow [5] 10/8 28/18 69/3 69/4 69/18
narrowed [6] 18/3 31/20 69/18 70/13 70/24 71/4
narrower [1] 16/24
narrowing [6] 10/5 18/13 19/23 34/21 69/8 131/12
narrowly [2] 15/2 54/4
narrowly-tailored [1] 54/4
national [1] 101/5
nature [8] 29/22 33/15 34/15 42/8 45/10 45/22 92/7 92/25
nearly [1] 75/13
necessarily [4] 12/8 40/11 84/17 129/17
need [27] 9/20 18/24 18/25 24/10 26/2 41/20 42/16 45/1 48/19 52/8 53/23 57/23 69/3 69/4 71/15 75/16 76/23 80/2 82/14 85/17 89/16 89/17 97/11 98/23 111/5 132/6 134/6
needed [4] 43/22 73/13 73/13 76/24
needs [18] 12/22 19/13 27/21 33/20 33/20 34/1 36/8 51/21 58/2 59/15 59/16 61/11 61/19 66/25 69/17 70/13 70/24 118/23
neglected [1] 13/9
NEPDG [1] 75/21
net [2] 31/2 85/24
never [10] 26/16 33/12 33/13 61/17 70/18 74/12 74/13 74/15 74/16 90/16
new [11] 2/9 14/21 17/10 35/18 41/1 54/21 55/2 115/14 127/19 129/19 133/14
news [4] 38/21 40/10 42/25 84/3
next [7] 7/12 12/24 25/3 46/8 47/9 57/7 86/5
night [2] 17/6 47/8
night's [1] 34/23
nine [3] 15/24 38/25 101/15
no [67] 1/2 3/23 4/1 4/4 4/7 4/10 4/12 10/5 10/22 10/23 10/23 11/14 17/22 19/22 21/9 24/19 26/7 26/23 28/7 30/6 30/18 36/8 37/22 40/23 52/8 57/23 58/14 64/11 69/15 70/25 71/9 71/9 72/3 73/22 73/22 74/4 85/19 86/4 86/10 87/12 94/18 95/21 97/21 98/4 100/4 107/12 107/20 107/20 107/20 107/21 108/22 109/2 109/3 109/10 111/12 117/11 119/1 122/2

N


no... [9] 123/16 124/9 124/9 125/22 125/22 128/7 129/2 134/7 134/11
none [8] 25/23 29/11 32/16 32/17 95/23 107/14 107/15 133/19
nongovernmental [1] 120/9
nonparticipation [1] 38/16
nonparties [3] 16/17 110/22 111/4
nonparty [7] 3/25 12/1 32/8 113/21 113/23 114/3 114/4
nonparty's [1] 88/12
nonprivileged [4] 24/16 42/10 88/12 129/23
nonprofit [1] 5/3
nonrelevant [1] 94/12
nor [1] 44/8
normal [1] 27/18
Northern [1] 113/6
Nos [4] 47/2 63/19 65/23 130/14
not [303]
note [2] 107/10 125/24
noted [7] 4/10 12/5 12/12 46/6 53/3 75/25 118/10
notes [6] 55/22 55/24 79/14 80/17 112/19 119/9
nothing [11] 22/9 40/7 58/2 58/7 61/19 79/22 83/4 109/7 109/11 127/14 134/14
notice [2] 112/6 120/3
noting [1] 17/5
notwithstanding [1] 103/22
November [4] 62/4 62/18 82/19 109/25
November 13th [1] 109/25
November 3 [2] 62/4 62/18
now [40] 6/8 6/14 15/11 17/11 24/9 26/22 30/4 34/6 35/9 45/25 48/2 48/6 50/16 52/13 52/15 61/14 67/8 69/10 70/20 72/19 80/12 86/13 90/19 94/2 94/10 94/19 100/17 101/5 107/24 108/8 108/18 110/8 110/15 110/21 118/25 120/18 120/20 124/13 130/5 134/17
nowhere [1] 52/2
nuances [1] 69/24
number [27] 5/23 6/13 14/20 31/23 46/16 48/22 54/8 62/7 62/10 64/24 67/25 78/23 79/5 79/7 79/16 89/7 89/12 91/10 92/18 101/16 101/24 107/10 113/22 114/18 114/19 118/7 131/14
numbers [3] 7/19 63/17 100/21
numerous [1] 19/25
NW [1] 2/4
NY [1] 2/9


O


object [5] 9/25 44/1 85/12 88/7 94/16
objected [2] 10/9 44/7
objecting [7] 9/11 42/3 43/15 44/11 44/12 88/2 92/24
objection [12] 9/7 9/8 9/16 42/2 45/18 47/25 48/1 48/5 66/3 88/13 93/4 100/12
objections [35] 4/3 4/6 10/3 10/6 10/10 37/23 38/15 43/3 43/14 44/6 44/7 44/15 45/25 46/5 66/22 67/6 69/16 77/15 84/16 87/22 88/1 88/3 89/21 90/9 90/21 90/21 92/15 92/16 92/21 93/6 96/14 98/2 100/10 100/13 132/7
obligated [5] 122/13 122/25 123/5 123/23 126/1
obligation [7] 104/3 117/18 117/20 121/18 127/3 127/6 128/10
obligations [4] 14/15 16/25 38/14 43/2
obliged [1] 132/4
obstacles [1] 66/15
obtain [3] 43/15 94/24 110/21
obtained [2] 113/24 114/1
obvious [1] 15/16
obviously [5] 7/11 9/5 30/12 35/12 122/4
occasion [2] 60/24 76/4
occupational [1] 20/24
occur [2] 71/5 71/9
occurred [5] 28/15 53/25 54/1 64/22 69/15
October [2] 15/20 16/12
October 20 [1] 15/20
October 20th [1] 16/12
odd [1] 92/20
odds [1] 53/12
off [7] 6/3 78/24 105/21 107/3 108/17 120/5 122/19
offensive [1] 111/24
offer [3] 19/14 28/25 118/18
offered [1] 127/11
offhand [1] 79/5
office [15] 6/22 8/15 14/11 44/22 76/2 76/5 77/8 84/10 101/13 107/2 115/12 116/1 117/16 124/7 128/9
officers [1] 101/8
official [6] 17/25 62/25 75/10 102/2 102/2 122/8
officials [5] 75/21 114/20 121/3 122/12 125/25
offset [1] 11/7
OGE [3] 7/16 11/8 37/8
Oil [1] 21/24
OK [21] 21/11 25/9 29/5 31/25 51/3 59/24 62/14 66/3 67/8 70/11 72/16 74/17 79/17 81/18 91/25 98/1 98/10 112/20 118/14 128/18 134/8
omitted [1] 104/19
on [212]
once [6] 13/2 66/19 72/23 85/12 94/2 95/7
one [51] 4/15 5/18 8/9 11/21 17/25 19/20 21/17 26/17 28/2 31/3 36/14 36/14 38/3 38/11 42/22 43/25 60/10 60/23 60/24 63/16 66/23 67/14 68/25 75/17 76/4 77/14 77/14 77/17 81/7 81/10 83/11 92/18 92/19 93/7 93/18 95/9 98/8 101/20 102/21 103/4 105/1 113/25 118/1 119/12 120/5 122/5 122/6 126/3 127/24 132/25 134/4
one-hour [1] 8/9
one-sided [1] 5/18
ones [3] 14/6 25/6 125/23
ongoing [5] 5/17 5/17 81/16 115/19 116/7
online [1] 46/20
only [48] 7/18 7/21 8/10 11/1 11/5 11/20 13/5 13/7 14/3 15/19 21/7 21/17 23/17 25/21 28/19 31/4 33/21 37/4 38/20 41/17 44/4 54/7 55/21 61/13 61/23 64/2 64/8 64/22 75/17 81/9 83/7 84/7 84/9 84/9 84/15 85/12 91/14 91/16 99/1 99/20 109/19 114/12 118/5 119/4 123/15 124/2 129/13 129/18
onto [1] 22/15
open [4] 13/2 35/20 35/22 94/2
opened [1] 16/22
operating [3] 33/8 91/23 99/13
operation [3] 36/6 122/25 126/14
operations [1] 49/2
operative [2] 42/20 134/2
opines [1] 10/25
opinion [3] 64/15 125/5 126/19
opportunity [7] 12/15 38/7 66/23 72/3 112/11 124/14 134/12
oppose [2] 35/11 133/14
opposed [10] 19/17 23/21 66/24 70/25 73/13 93/7 93/12 98/20 113/21 134/1
opposite [1] 75/18
opposition [3] 99/4 109/16 120/18
oppressive [3] 30/2 64/20 64/25
or [150]
oral [1] 128/21
order [51] 4/9 4/11 9/11 9/13 9/22 10/21 12/20 14/14 16/1 16/2 17/1 27/21 38/18 40/14 41/3 41/7 41/8 42/3 44/10 45/24 49/11 51/12 71/15 76/24 82/15 83/11 83/19 85/6 88/14 97/22 120/12 120/14 120/21 122/5 122/25 123/21 126/14 128/6 128/8 128/18 128/22 130/9 130/17 131/15 131/21 131/24 132/5 132/16 133/24 134/5 134/5
order's [1] 88/1
ordered [3] 12/25 13/15 14/22
orders [5] 45/9 73/10 75/19 83/8 128/21
organizational [1] 112/19
organizations [1] 120/9
original [2] 17/7 33/2
originally [1] 25/20
other [36] 4/14 11/4 11/12 17/14 21/7 33/21 36/10 42/12 43/5 44/14 44/23 45/25 46/4 50/17 59/3 59/4 61/16 62/24 65/23 74/23 75/1 75/9 75/21 83/15 90/21 93/20 96/6 101/24 107/4 110/22 117/11 118/25 119/12 121/1 127/11 128/21
others [7] 28/16 34/7 75/8 77/9 97/4 109/12 110/18
otherwise [5] 12/12 40/2 40/2 105/17 117/12
ought [1] 60/22
our [64] 6/1 6/5 6/6 7/2 7/14 8/12 8/14 9/22 10/3 11/16 15/2 15/20 15/20 15/24 16/11 16/13 16/25 18/4 18/19 20/1 22/25 27/7 33/14 33/15 39/2 41/13 42/12 44/16 46/2 46/18 48/11 49/3 49/10 51/7 74/15 83/24 84/12 84/12 87/24 88/16 89/22 90/22 92/14 93/25 94/1 94/7 94/11 96/10 96/22 97/18 99/8 101/5 109/16 110/1 110/9 110/9 113/11 116/1 120/12 121/18 121/19 121/24 126/4 127/6
ourselves [2] 79/25 95/7
out [35] 4/10 5/23 12/24 13/10 14/21 28/6 33/9 35/15 41/7 41/20 42/14 46/2 49/10 64/13 74/14 74/19 78/21 81/18 81/24 84/21 88/2 88/4 96/19 96/24 96/25 101/19 103/25 104/23 105/16 113/6 114/17 115/18 123/3 128/15 133/6
outright [2] 9/10 125/10
outset [2] 91/20 99/8
outside [3] 65/15 74/5 80/22
Oval [1] 107/2
over [27] 6/24 7/10 7/11 8/16 9/22 11/10 15/16 23/25 38/24 39/18 40/12 45/13 48/11 52/22 59/6 68/17 73/16 76/21 83/23 87/25 90/14 91/14 105/20 119/15 121/7 122/7 126/1
overall [5] 11/13 16/18 77/17 87/11 130/19
overarching [2] 69/13 77/15
overbreadth [1] 42/7

O

overbroad [5] 69/11 80/23 81/23 93/7 130/20
overcome [2] 44/25 64/19
overlap [1] 87/20
overly [2] 9/12 116/10
overruled [2] 66/22 67/7
overruling [2] 73/11 73/15
Overton [1] 17/21
overused [1] 99/23
overwhelming [1] 92/9
owed [1] 76/4
own [25] 9/2 9/22 11/16 15/3 42/8 46/18 50/18 54/11 75/12 77/10 77/20 82/2 88/24 89/23 90/11 100/12 100/13 102/6 105/19 105/22 122/23 122/23 123/16 124/6 129/15
owned [4] 8/4 26/5 29/18 29/20
ownership [3] 7/17 29/21 30/11
owns [4] 21/20 22/15 22/15 25/5

P

p.m [1] 47/9
page [10] 22/1 34/25 36/12 49/12 95/25 102/1 102/4 102/8 102/11 102/16
pages [8] 1/8 5/24 6/2 15/23 16/7 38/25 47/11 70/22
paid [2] 5/7 18/13
pan [1] 57/7
panorama [1] 39/9
papers [3] 13/10 121/24 126/4
paragraph [11] 7/5 7/8 20/9 20/10 20/22 50/3 82/9 101/22 102/24 109/19 121/2
paragraphs [3] 13/20 21/4 101/22
parameters [1] 110/15
parcel [2] 37/10 90/3
Pardon [2] 32/22 50/15
pardons [1] 96/5
Park [1] 64/13
parroted [1] 124/5
part [26] 26/6 27/7 27/11 37/10 41/17 49/21 50/24 60/6 61/6 61/7 69/15 71/14 84/11 84/14 87/24 90/3 90/9 92/17 94/23 95/13 98/2 101/5 113/18 127/9 130/16 130/17
participate [3] 38/16 46/22 77/16
participated [5] 77/6 77/7 77/9 93/15 96/5
participation [1] 77/11
particular [12] 4/18 10/1 10/1 10/8 30/14 32/2 58/16 58/17 92/3 92/8 120/17 121/15
particularity [1] 76/23
particularized [2] 77/25 78/4
particularly [1] 80/17
parties [21] 3/6 4/8 51/23 53/5 70/5 72/1 72/3 72/5 86/23 96/3 98/6 98/15 100/2 100/12 113/25 121/14 130/15 131/12 131/21 132/1 132/4
parties' [1] 72/7
partner [2] 77/8 83/13
partners [2] 83/13 83/16
partnerships [1] 83/15
party [17] 10/24 12/1 12/1 23/17 23/18 31/13 33/5 33/18 38/8 42/4 44/11 45/11 77/12 88/2 100/23 113/20 120/23
party's [3] 12/3 42/11 75/16
past [5] 14/20 38/22 66/13 93/19 104/4
patent [3] 12/18 12/22 13/13
patents [1] 13/1
path [1] 86/8
pattern [1] 77/10
pause [3] 57/19 73/8 119/11
paused [1] 94/21
pay [1] 14/22
paying [1] 18/13
Pelosi [1] 101/9
Pence [1] 101/9
pending [4] 5/8 79/23 127/4 127/6
Pennsylvania [2] 57/2 81/9
people [18] 82/11 89/24 90/18 103/15 105/14 106/7 106/7 106/7 106/9 106/10 106/12 106/13 106/15 106/16 106/23 107/1 107/5 107/8
per [8] 17/14 17/23 71/4 71/5 104/14 110/10 110/14 110/16
percent [4] 33/3 37/3 37/4 37/5
perhaps [1] 125/10
permissible [2] 65/4 93/1
permit [2] 12/12 22/3
permitted [1] 24/16
person [6] 23/17 65/12 68/7 90/7 98/18 113/17
personal [5] 5/11 20/11 20/15 22/10 90/13
personally [2] 7/15 77/7
personnel [2] 76/14 76/17
perspective [4] 93/25 94/21 115/16 116/9
pertaining [1] 96/4
petition [1] 13/3
petitioner [1] 55/19
petitioner's [1] 55/11
phone [1] 123/3
phrase [2] 43/19 103/17
pick [5] 11/11 86/15 86/16 87/10 123/3
picked [1] 8/5
picture [1] 11/13
pieces [1] 106/1
place [4] 31/13 68/24 122/22 127/25
placed [1] 101/3
places [1] 22/14
plagued [1] 93/2
plain [1] 102/15
plaintiff [81] 1/4 1/13 3/7 3/9 5/25 11/14 12/13 12/19 12/25 17/19 18/9 19/10 19/12 20/3 21/18 22/19 23/21 33/24 34/25 36/14 37/20 38/13 39/2 39/7 44/11 45/10 45/17 46/15 46/22 47/15 47/16 49/11 51/24 52/3 52/10 55/1 55/16 56/18 57/14 57/14 58/8 58/13 59/25 64/17 69/16 69/18 70/20 70/22 77/19 78/15 80/4 82/1 83/3 83/6 83/13 83/15 84/8 84/9 85/11 86/24 87/1 88/18 88/21 91/11 97/6 97/14 97/19 98/7 98/21 99/2 99/9 99/16 100/12 104/8 104/24 105/3 107/8 121/6 122/17 129/10 132/20
plaintiff's [40] 4/2 4/5 11/25 12/8 12/10 12/21 13/12 19/9 19/16 23/22 25/24 34/25 37/23 41/3 43/5 52/25 52/25 54/11 54/13 54/14 54/16 58/3 59/16 69/14 69/16 77/13 78/3 79/19 87/19 90/13 93/17 95/13 96/19 97/7 98/6 98/20 100/7 126/2 129/12 129/14
plaintiffs [2] 79/1 83/9
planned [1] 102/15
planning [2] 48/10 49/6
platform [1] 36/3
play [1] 128/15
plead [1] 104/8
pleaded [3] 14/6 35/5 77/20
pleadings [2] 64/9 95/19
pleads [1] 17/14
please [11] 5/1 19/8 38/5 66/16 71/20 86/23 87/16 87/18 91/6 92/12 107/3
pleased [1] 120/5
pleases [1] 18/11
pled [3] 44/18 48/16 90/4
PLLC [1] 1/15
podium [1] 34/24
point [37] 4/16 13/8 13/10 15/19 16/10 23/20 24/14 25/12 29/10 35/23 43/9 46/12 50/24 52/8 52/9 52/12 60/13 61/8 61/11 61/20 62/16 67/3 69/6 70/5 73/2 74/19 80/24 94/9 94/14 94/22 119/12 123/20 124/17 125/1 125/20 129/1 133/11
pointed [3] 35/21 42/14 96/19
pointing [1] 35/15
points [7] 33/12 36/4 40/6 50/10 80/10 92/4 110/4
political [2] 36/13 37/5
politician [2] 21/1 42/19
Ponce [1] 1/16
poor [1] 103/10
portion [2] 34/25 113/7
portions [3] 36/16 104/21 107/7
portray [1] 20/17
portrayal [3] 39/18 39/25 88/20
portrayed [1] 103/24
pose [2] 121/5 124/20
posed [2] 25/23 27/16
position [9] 93/22 96/10 99/8 113/11 117/2 119/1 120/16 122/9 122/24
positions [1] 72/7
possessed [2] 52/20 56/2
possesses [1] 20/4
possible [2] 29/4 68/7
post [1] 61/24
post-election [1] 61/24
posts [1] 38/21
posture [1] 25/12
potential [1] 118/3
potentially [1] 64/18
Powell [3] 106/12 106/18 120/8
practical [2] 66/12 124/13
practice [1] 29/1
precedent [1] 120/17
precise [2] 7/19 88/9
precluded [4] 45/7 45/15 48/23 84/20
prejudice [1] 46/13
prejudices [1] 38/17
prejudicial [1] 35/14
premature [5] 10/13 14/3 34/7 34/8 47/25
prematureness [2] 10/14 13/18
prematurity [1] 66/3
prepare [2] 36/23 133/3
prepared [3] 14/13 14/13 78/1
preparing [3] 7/18 15/15 15/16
prerogatives [1] 75/24
prescribed [1] 100/25
present [4] 9/22 20/18 30/17 104/2
presentation [4] 19/14 29/25 98/12 99/1
presented [4] 32/17 33/11 53/20 60/16
presents [2] 67/1 93/25
presidency [2] 127/20 127/20
president [128] 1/3 3/4 5/13 5/25 6/11 6/13 6/14 6/22 7/3 7/14 8/4 8/23 8/25 9/5 10/16 11/6 11/9 13/6 14/7 14/19

P

president... [108] 16/5 16/14 16/19 17/10 18/16 20/9 20/11 20/15 20/17 20/22 22/7 23/16 24/24 27/12 29/12 30/25 31/8 35/15 36/1 36/3 36/11 36/12 36/14 36/22 36/24 37/20 39/3 47/22 53/24 54/19 57/24 58/17 59/23 60/18 61/4 61/15 65/12 66/23 68/1 68/5 71/21 74/21 75/20 75/22 81/8 82/8 84/10 86/1 86/21 89/5 96/2 101/3 101/9 101/10 101/19 102/1 102/9 102/17 102/21 103/7 103/8 103/18 105/11 105/16 105/18 105/18 105/22 105/24 106/3 106/5 106/13 106/20 106/23 107/18 108/8 108/13 109/15 110/5 116/17 117/3 117/4 117/4 121/6 121/7 121/16 122/4 122/5 122/9 122/16 122/16 122/16 123/3 123/7 123/13 123/22 124/2 124/3 125/7 125/12 125/14 126/16 127/19 127/21 128/7 129/8 130/3 131/1 131/18
President's [33] 6/6 6/9 7/23 8/7 8/13 8/13 8/22 13/22 14/10 15/3 17/3 17/6 28/17 29/8 35/7 49/3 53/12 68/12 85/24 90/11 101/16 103/16 105/19 107/21 107/23 108/5 110/19 122/6 122/23 124/6 126/3 126/13 126/14
Presidential [3] 68/19 74/23 101/25
pressure [1] 16/13
presume [2] 22/18 123/20
presumed [2] 17/15 17/23
presumption [2] 117/14 127/24
pretermitted [1] 78/2
pretty [5] 40/5 57/24 78/5 78/18 127/9
prevail [2] 39/12 79/24
prevent [1] 108/9
preventing [1] 6/16
preview [1] 69/4
primarily [2] 34/13 116/17
primary [1] 102/17
primed [1] 48/14
principal [2] 10/2 26/17
principally [1] 5/6
principle [1] 10/22
printed [1] 6/3
prior [7] 12/21 13/1 31/10 37/2 43/15 70/16 118/8
private [1] 120/7
privilege [49] 44/15 44/19 44/25 45/7 45/13 45/16 45/18 45/21 45/21 45/22 46/2 48/18 48/18 48/25 65/18 67/9 67/14 67/23 68/11 68/16 68/17 68/18 68/19 68/24 69/10 71/3 72/4 72/24 73/11 73/15 73/16 74/2 74/6 74/20 74/23 75/4 75/6 75/9 75/10 75/11 75/12 76/22 84/2 84/18 84/21 84/22 85/2 85/4 120/14
privileged [5] 45/19 48/17 48/23 84/23 85/8
privileges [8] 68/18 68/19 74/24 75/1 75/8 76/25 77/22 85/1
probably [4] 39/22 61/21 70/20 78/13
probative [1] 106/6
probe [1] 128/25
problem [6] 50/1 75/17 77/17 84/11 93/21 93/25
problems [1] 67/2
Procedure [3] 24/15 119/19 130/2
proceed [3] 33/25 79/18 121/18
proceeding [3] 76/6 108/7 119/14
proceedings [1] 3/2
process [20] 18/5 29/2 43/23 73/5 75/4 75/5 83/22 97/9 114/15 114/16 114/23 115/1 115/19 115/22 117/1 118/23 119/3 124/24 128/11 128/15
produce [8] 3/24 12/25 29/17 33/17 39/19 41/7 42/23 114/3
produced [11] 5/23 15/23 19/16 23/12 27/24 38/24 70/21 70/22 94/15 128/20 130/12
producing [2] 46/5 113/24
production [26] 4/3 5/22 6/2 16/6 30/10 30/20 37/24 38/9 38/13 38/19 39/1 41/22 42/12 43/19 46/8 48/20 53/4 53/10 79/2 79/4 79/8 79/15 86/2 91/18 94/14 130/11
productions [8] 5/22 15/24 15/25 38/25 46/15 46/18 61/25 86/4
products [1] 36/12
professional [1] 20/23
profile [1] 36/13
profit [2] 9/20 32/14
profited [1] 32/14
profits [2] 8/21 35/7
Programs [8] 114/17 114/23 114/25 116/5 117/16 118/22 122/21 128/10
promise [1] 72/13
promised [1] 100/17
proof [2] 89/4 105/4
propensity [1] 61/1
proper [4] 48/5 48/6 72/23 100/8
properly [2] 34/4 34/15
properties [15] 7/9 8/8 16/21 20/25 21/7 22/15 22/21 25/1 25/6 26/24 31/18 35/8 85/22 129/8 130/3
property [3] 8/25 22/12 85/22
proportional [2] 65/4 69/1
proportionality [8] 30/7 33/20 65/10 68/10 69/2 94/1 94/8 113/1
proportionate [2] 39/3 94/4
propose [1] 18/20
proposed [1] 49/10
proposition [2] 21/23 64/12
propounded [2] 78/14 130/20
prosecuting [2] 6/11 16/20
prosecution [1] 14/21
prosecutions [3] 89/7 89/23 96/4
prospects [2] 7/7 20/21
protect [2] 75/24 117/18
protective [2] 16/1 16/2
protesters [2] 81/11 105/21
prove [14] 15/15 17/24 22/20 33/8 33/14 33/14 33/16 39/12 51/25 52/3 104/8 105/10 105/10 129/10
proven [2] 17/19 52/10
provide [17] 6/12 6/13 7/15 7/18 9/8 9/16 9/18 19/11 28/5 32/11 47/10 49/12 79/7 107/11 111/3 115/23 122/14
provided [7] 28/6 62/24 63/2 63/5 63/7 93/5 125/25
providing [4] 28/8 28/13 83/24 97/11
proving [1] 23/4
public [18] 5/3 5/4 6/3 8/12 17/25 21/2 23/13 28/1 45/12 50/18 61/9 84/4 105/16 113/20 113/24 114/2 114/9 130/24
publication [3] 56/5 60/19 109/24
publications [1] 43/8
publicly [8] 38/21 50/14 70/23 90/18 96/23 113/9 114/13 116/11
publicly-available [3] 38/21 90/18 116/11
published [7] 28/1 30/25 43/1 46/19 51/22 54/23 61/4
publishing [2] 52/20 100/5
pull [2] 44/5 67/16
pulled [3] 16/8 38/22 46/10
pulling [1] 96/24
punitive [1] 17/13
purported [1] 115/25
purportedly [1] 48/1
purpose [1] 100/8
purposes [20] 14/18 18/12 19/16 27/19 32/8 34/2 36/19 36/23 50/17 51/6 51/21 55/2 56/17 58/12 68/9 95/3 95/15 95/18 103/25 111/5
pursuant [1] 127/2
pursue [1] 21/19
pursued [2] 53/19 111/10
pursuing [2] 27/7 32/6
purview [2] 129/9 133/17
put [7] 4/10 12/8 56/11 66/17 84/21 88/18 114/8
puts [1] 82/11
putting [4] 39/25 59/19 60/3 93/7

Q

quantify [3] 27/23 31/9 35/1
quantifying [1] 27/13
quash [13] 18/17 37/14 98/7 107/14 113/17 115/6 115/9 115/12 119/22 125/10 127/11 132/8 132/9
quashed [1] 119/16
quashes [1] 115/20
quashing [1] 108/2
question [22] 25/3 25/8 25/23 26/3 27/16 31/23 35/21 41/18 43/18 53/19 70/7 71/8 71/11 71/13 71/19 72/14 73/18 77/4 78/17 111/2 124/20 134/4
questions [11] 65/24 66/2 78/5 91/9 93/14 95/9 99/7 124/15 132/20 132/24 134/10
quickly [2] 112/25 113/15
quotation [2] 54/18 55/6
quotations [3] 55/7 55/13 55/24
quote [8] 8/6 12/20 13/11 80/7 81/20 88/7 88/17 89/5
quoted [1] 103/4

R

raise [7] 65/11 68/15 94/7 111/14 117/7 121/25 124/4
raised [16] 9/16 33/13 41/21 42/6 47/5 58/15 65/17 77/4 86/10 87/24 89/21 90/12 90/22 116/14 121/22 128/24
raises [4] 43/14 44/6 44/15 69/12
raising [4] 47/21 48/23 52/12 67/3
rally [7] 47/23 63/11 68/2 70/2 103/12 106/25 107/3
ran [1] 36/2
range [1] 79/6
ranges [1] 7/18
ranging [1] 54/7
Rapp [2] 104/11 104/24
rather [6] 47/15 50/10 61/3 80/9 103/6 110/3
re [3] 40/13 48/23 86/23
re-air [1] 40/13
re-announce [1] 86/23
re-raising [1] 48/23
reach [5] 10/2 17/2 118/8 120/6 123/3
reached [2] 72/5 72/6
reaching [1] 31/4
react [1] 45/6
read [12] 21/12 22/8 34/22 50/24 50/25

R
read... [7] 54/2 54/3 55/6 58/22 62/15 113/7 113/14
reading [1] 50/23
reads [1] 22/1
ready [1] 66/1
reality [1] 110/13
really [28] 16/17 30/4 31/3 33/20 34/9 34/14 42/15 56/5 56/5 56/18 57/11 59/10 61/10 82/22 90/20 93/15 95/12 98/24 98/24 99/19 104/14 104/21 111/24 112/23 126/11 126/13 127/18 128/7
realm [1] 120/24
reason [8] 34/6 43/13 66/12 93/3 103/12 111/5 119/17 122/2
reasonable [13] 12/14 18/19 31/4 31/7 31/21 46/16 46/17 49/13 49/14 66/17 67/4 85/15 130/10
reasonably [3] 20/12 24/3 114/1
reasoned [1] 127/13
reasons [11] 26/17 33/23 37/12 87/24 93/6 108/12 111/19 120/25 124/8 125/19 128/2
rebuttal [1] 11/20
Recalling [1] 86/20
recanting [1] 30/21
recap [2] 53/13 57/20
recast [1] 110/9
receive [2] 47/11 129/14
received [7] 17/6 78/14 78/19 79/1 79/9 130/24 131/17
recent [3] 108/6 115/11 121/24
Recess [1] 86/18
recipient [1] 45/23
recitation [1] 109/9
reckless [1] 52/19
recognize [2] 24/10 34/5
recommendations [1] 75/22
record [7] 3/6 51/6 62/9 67/17 71/20 86/23 133/13
recorded [1] 55/21
recording [2] 1/10 135/6
records [11] 3/25 6/14 7/16 11/7 14/17 65/4 111/4 113/20 121/5 121/8 122/14
recounting [1] 30/22
red [1] 116/15
reel [1] 40/10
reelection [1] 53/12
refer [1] 113/5
referenced [1] 10/11
references [1] 128/6
referring [5] 64/2 76/14 76/16 76/17 79/9
refers [1] 109/12
refined [1] 34/13
reflect [1] 80/17
reflecting [1] 29/21
refrain [1] 64/17
refusal [4] 9/7 9/10 15/10 66/10
refusals [1] 38/15
refuse [1] 39/19
refused [1] 35/20
refuses [3] 6/13 7/15 90/5
refusing [2] 6/11 131/13
regard [29] 23/24 25/15 53/19 54/14 56/20 58/5 60/14 63/25 65/23 66/6 66/20 67/5 68/16 68/21 69/21 70/6 70/19 73/21 94/11 95/10 99/13 99/17 99/25 109/17 118/2 118/4 130/9 130/14 132/5
regarding [20] 4/9 12/21 42/10 47/23 65/23 68/1 70/1 70/2 70/3 73/9 88/11 90/13 90/21 93/14 94/3 98/15 109/9 116/5 116/14 120/25
regardless [4] 18/1 116/8 127/10 128/8
regards [1] 49/1
regular [1] 18/5
regulations [3] 101/1 114/21 118/24
reinforced [2] 8/14 8/15
reiterate [1] 26/13
rejected [1] 45/13
rejects [1] 44/19
relate [6] 23/25 72/4 73/12 74/10 88/9 109/13
related [31] 3/23 3/24 4/2 4/5 4/11 4/17 4/21 13/5 13/15 30/14 33/17 34/11 35/6 37/21 37/23 39/4 39/20 44/24 45/14 49/6 49/7 81/6 83/1 83/20 89/16 89/18 89/20 113/4 129/3 129/23 131/6
relates [8] 4/18 24/16 29/8 33/21 69/4 73/11 92/8 95/4
relating [6] 29/19 32/3 49/22 53/6 99/7 111/22
relation [2] 40/2 99/16
relationship [3] 30/18 95/21 100/4
relative [6] 23/22 52/3 53/18 61/18 100/10 111/18
relevance [15] 13/19 30/22 30/24 32/9 41/11 42/7 68/10 69/2 87/21 89/19 89/21 90/10 90/21 109/10 112/24
relevancy [4] 16/18 64/11 121/1 123/25
relevant [31] 11/14 12/11 13/12 14/4 29/11 32/13 36/19 39/3 39/17 42/11 43/12 56/16 56/22 64/9 65/3 65/14 69/1 83/16 88/7 88/12 88/16 89/24 89/25 94/4 95/3 97/5 97/10 107/8 121/19 124/2 126/20
relief [3] 33/24 108/13 125/14
relies [1] 14/2
relitigate [2] 88/17 93/11
relitigated [1] 97/13
relitigation [2] 131/4 131/19
reluctance [1] 64/20
reluctant [1] 99/24
rely [4] 11/21 12/16 28/3 35/1
remain [3] 47/6 81/17 85/18
remains [3] 81/13 104/10 131/25
remarkable [1] 59/10
remedy [1] 84/12
remove [1] 126/7
renders [1] 46/1
rendition [1] 77/20
repair [3] 17/11 17/12 34/22
repeat [1] 87/25
repetitive [1] 88/13
rephrasing [1] 78/17
reply [4] 72/14 79/18 96/17 108/15
report [13] 10/18 11/9 11/19 14/15 84/4 92/10 92/11 96/21 97/3 101/25 102/4 102/15 102/19
reported [1] 77/10
Reporter [2] 2/13 135/9
reporting [6] 27/25 28/15 43/10 45/12 45/15 84/3
reports [3] 10/19 105/13 106/18
represent [1] 132/17
representation [14] 14/12 19/21 22/23 22/24 24/7 28/9 35/5 35/10 39/23 39/24 47/14 72/11 73/19 123/15
representations [3] 21/13 28/24 36/17
representative [1] 80/23
represented [4] 26/11 50/18 78/7 108/21
representing [1] 25/12
reputation [14] 12/7 20/18 21/1 23/16 28/17 31/9 36/6 36/14 36/18 37/10 42/17 42/18 42/18 85/24
reputational [19] 17/11 17/12 18/10 23/1 23/4 25/21 25/25 26/22 27/3 27/12 27/13 27/20 31/8 34/22 35/2 35/25 36/5 85/21 130/5
request [49] 4/3 6/6 6/7 7/2 7/15 10/1 12/21 13/20 15/2 17/3 29/16 29/22 31/12 31/12 31/16 38/9 38/10 42/5 42/22 42/24 44/8 44/16 46/14 49/10 62/7 62/10 63/14 63/17 64/7 65/15 66/19 67/7 70/19 73/3 74/5 85/13 85/14 88/3 90/23 92/8 92/24 92/25 92/25 94/14 118/3 132/2 132/2 132/3 132/3
requested [11] 13/11 15/12 23/21 54/3 73/20 73/22 74/16 76/12 85/11 130/13 132/11
requesting [2] 15/6 22/19
requests [96] 4/6 4/18 8/12 13/4 16/24 19/23 23/24 29/24 37/24 38/13 39/1 39/2 41/14 41/22 42/12 42/12 43/4 43/4 43/19 48/8 48/20 53/4 53/4 54/5 54/7 59/9 59/11 64/8 64/10 64/24 69/4 73/24 75/20 77/12 77/18 78/9 78/13 78/19 79/1 79/2 79/4 79/8 79/15 83/24 84/12 85/18 86/2 86/2 86/11 87/12 87/20 87/23 88/5 88/6 88/8 88/16 89/2 89/17 89/18 89/22 90/12 90/24 91/10 91/18 91/21 92/9 92/20 93/2 93/9 94/23 95/12 95/21 95/25 96/1 96/20 96/22 97/3 97/18 97/21 97/22 98/1 100/22 100/24 102/6 109/17 115/3 122/15 124/19 124/19 125/15 128/12 130/20 131/7 131/13 131/14 131/22
require [6] 66/11 76/22 77/21 77/25 119/19 128/20
required [15] 19/10 19/15 42/23 52/9 66/21 85/13 86/1 115/5 115/9 115/10 116/24 119/22 129/12 129/13 131/11
requirement [1] 88/2
requirements [5] 75/12 88/14 117/21 128/11 128/11
requires [7] 9/11 44/11 104/24 105/3 113/16 119/21 134/5
requiring [4] 46/22 53/10 83/9 114/3
research [1] 96/23
reshaped [1] 43/22
reside [2] 35/8 35/9
resisted [4] 12/1 12/2 102/5 102/6
resolution [3] 72/5 72/6 95/20
resolved [1] 90/15
resource [1] 115/16
respect [31] 19/9 19/22 20/3 23/1 25/11 25/14 25/21 26/18 27/25 29/2 30/19 49/19 53/9 55/15 55/23 60/16 65/6 76/4 77/24 91/10 91/18 92/3 92/6 94/25 96/7 100/13 108/23 109/5 110/19 110/25 133/5
respectfully [2] 46/14 49/10
respond [4] 30/3 94/22 124/15 124/19
responded [5] 43/20 65/8 67/1 96/3 131/22
respondents [1] 55/18
responding [2] 7/14 38/15
response [15] 4/13 32/11 39/1 41/22 51/7 51/11 51/16 60/6 90/5 93/3 112/10 115/3 116/6 118/10 121/23
responses [15] 4/2 4/5 18/22 37/23 47/6 49/12 66/8 69/16 74/20 85/14 86/1 87/14

R


responses... [3] 87/20 90/24 124/24
responsibilities [1] 76/8
responsive [2] 73/24 74/4
rest [1] 65/8
restraint [1] 76/9
restrictions [1] 30/13
result [6] 23/2 23/13 47/24 97/14 109/2 130/4
resulting [1] 39/7
results [2] 16/13 55/3
retained [2] 6/10 35/3
returns [3] 8/19 24/1 29/17
revenue [1] 20/14
revenues [4] 8/21 13/23 35/7 37/9
review [5] 23/7 23/9 102/15 119/9 129/13
reviewed [2] 51/16 97/2
reviews [1] 10/15
revise [2] 49/11 107/6
revised [1] 90/24
Revocable [4] 4/1 4/21 129/3 130/8
RFA [1] 86/15
RFAs [1] 90/5
RFP [1] 7/11
RFPs [2] 44/19 73/21
right [11] 30/18 45/24 69/10 72/25 99/7 101/10 120/13 121/18 124/13 133/22 134/4
riot [1] 102/12
rioters' [1] 102/1
ripe [1] 126/7
rises [2] 121/10 121/11
risk [1] 96/9
RKA [1] 1/2
RNC [1] 120/9
road [1] 87/10
roadblock [1] 126/8
role [1] 101/3
rolling [2] 86/4 86/5
room [3] 105/20 107/2 107/2
roughly [1] 10/20
routine [1] 75/19
routinely [1] 125/19
row [1] 84/22
royal [1] 5/5
RPR [2] 2/12 135/8
Ruddy [3] 90/7 106/13 106/17
Ruiz's [1] 12/17
rule [9] 11/14 24/15 64/19 88/11 92/22 100/9 113/16 119/21 129/22
ruled [1] 48/21
rules [17] 38/18 66/11 71/5 71/5 77/24 77/25 83/18 83/21 85/13 89/16 91/15 119/18 130/2 131/9 131/10 132/4 133/18
ruling [7] 16/13 25/13 28/11 54/20 83/11 84/18 120/12
rulings [11] 45/7 45/10 45/11 84/7 90/20 133/5 133/8 133/10 133/19 133/22 133/23
running [2] 107/1 107/14
runs [1] 122/4


S


safeguarding [1] 76/2
said [56] 15/8 26/7 40/2 40/6 40/21 40/22 41/12 47/20 50/8 54/19 55/18 55/25 60/18 60/19 61/3 61/5 61/11 61/17 61/18 61/19 77/13 80/7 81/19 82/3 82/7 82/13 82/17 83/7 84/6 85/19 98/19 98/21 102/1 102/4 102/11 102/25 103/5 103/8 103/11 104/18 106/7 106/20 108/18 109/12 109/14 109/18 114/19 117/7 119/21 123/17 124/3 124/25 126/5 129/6 130/4 131/4
same [24] 6/10 15/1 41/23 42/1 43/23 55/10 62/21 72/14 74/11 76/20 81/3 88/4 91/23 93/2 93/3 93/4 98/13 114/1 121/7 123/22 124/20 129/10 132/5 133/2
sanctions [1] 64/20
SASHA [4] 2/7 3/19 38/6 87/5
sat [2] 5/21 115/15
save [1] 4/14
saw [3] 30/16 99/11 99/12
say [34] 7/25 10/13 18/1 18/7 24/20 24/21 26/9 27/5 35/19 35/24 41/9 41/16 43/6 55/10 56/7 59/2 61/15 63/21 69/9 70/12 78/12 82/12 82/18 83/6 85/3 90/7 91/13 94/9 103/18 105/16 107/25 119/4 123/4 128/9
saying [20] 18/21 22/14 25/10 43/20 44/9 47/9 47/19 50/20 57/22 59/15 69/17 70/7 80/14 82/14 89/25 89/25 93/7 118/8 121/23 125/2
says [17] 7/8 10/23 12/20 22/10 34/25 39/10 40/17 42/8 59/3 59/3 80/4 103/21 113/16 122/1 122/16 127/2 128/6
scenario [1] 94/6
schedule [2] 6/6 25/15
schedules [2] 8/19 62/20
scheduling [1] 10/21
scope [62] 28/18 30/12 30/17 31/7 31/15 31/19 31/21 34/10 40/5 41/11 41/23 42/15 42/24 44/12 49/20 54/12 56/20 59/8 59/12 60/6 64/7 64/23 69/21 70/12 71/24 72/1 72/5 72/23 73/1 73/3 73/6 73/20 74/1 74/5 74/7 74/14 75/13 76/7 76/19 77/16 80/22 83/20 85/19 92/19 92/24 98/1 98/3 112/23 112/24 121/9 129/6 129/16 129/18 129/21 129/25 130/1 130/2 130/19 130/21 132/11 132/16 133/6
Screen [1] 120/10
scuttle [1] 37/2
se [6] 17/14 17/23 104/14 110/10 110/14 110/16
sealed [1] 84/8
sealing [1] 45/9
search [1] 46/10
seat [1] 86/19
SEC [1] 7/16
second [15] 5/13 5/13 6/5 10/22 18/7 18/8 22/5 28/20 35/11 42/6 43/11 60/15 61/7 67/1 116/20
seconds [3] 8/9 13/24 41/18
secretaries [1] 122/13
secrets [1] 75/9
section [6] 20/11 24/23 50/9 80/9 110/3 127/2
Securities [1] 7/17
Security [3] 63/6 101/14 102/14
see [8] 11/17 11/18 22/6 32/17 57/6 84/17 86/17 130/10
seeing [1] 26/11
seek [4] 49/7 49/21 111/13 114/12
seeking [21] 20/3 26/7 29/8 32/4 32/5 33/4 33/19 39/4 45/8 48/17 53/2 67/24 68/7 71/2 75/23 82/23 84/8 85/7 85/8 95/2 100/1
seeks [4] 20/7 30/10 70/10 110/21
seem [2] 24/10 124/23
seemed [1] 19/14
seems [3] 69/13 109/13 117/13
seen [4] 42/5 42/25 87/19 133/20
Select [5] 63/8 92/10 96/21 101/13 102/19
selectively [1] 12/19
Senate [2] 63/5 101/14
senior [1] 75/21
sensitive [1] 66/15
sent [3] 16/1 63/22 78/21
sentence [2] 12/24 56/13
sentences [1] 59/19
sentencing [1] 81/6
sentencings [1] 103/5
separate [4] 19/18 20/4 36/6 58/9
September [4] 10/21 11/18 15/20 16/11
September 2nd [4] 10/21 11/18 15/20 16/11
sequence [1] 68/24
series [2] 54/23 63/13
serious [1] 121/25
serve [2] 21/14 58/18
served [15] 17/8 20/6 47/7 75/21 91/10 91/14 91/16 91/19 98/14 99/18 99/22 100/8 100/8 108/24 114/22
service [1] 5/3
Session [1] 64/15
set [9] 4/6 16/24 49/10 65/2 73/25 86/11 91/23 95/25 100/22
setting [2] 45/21 67/4
settled [2] 90/19 120/15
seven [2] 30/20 41/21
Seventh [1] 44/14
several [4] 68/18 77/7 103/5 129/21
severe [1] 20/25
sexual [1] 14/23
Shah [1] 109/20
shall [1] 12/25
sham [1] 16/6
shaped [1] 42/20
shapes [1] 24/14
shared [1] 113/12
sharing [1] 115/18
sharp [1] 38/24
she [2] 59/15 73/19
shed [1] 118/20
shield [1] 49/1
shirts [1] 36/9
shooting [2] 57/3 57/5
short [2] 33/4 82/22
shot [3] 57/7 57/14 57/15
shots [1] 123/14
should [32] 5/17 9/9 19/10 19/15 34/11 34/14 50/13 55/15 55/20 60/23 69/12 72/2 72/2 76/5 79/24 95/19 100/9 105/16 105/17 111/9 111/16 111/17 113/8 113/23 114/12 114/12 119/14 119/16 126/10 127/23 131/21 132/1
shouldn't [2] 40/5 115/21
show [15] 11/7 29/17 29/20 39/13 40/14 40/16 40/19 42/4 42/17 43/11 59/17 82/12 82/15 88/21 108/11
showed [3] 6/23 11/5 90/2
showing [6] 8/16 8/20 41/2 44/25 89/1 110/2
shown [1] 55/19
shows [3] 16/7 38/22 120/14
side [6] 37/5 37/6 58/3 58/6 59/16 70/18
sided [1] 5/18

S

sides [3] 117/15 123/8 123/8
Sidney [3] 106/12 106/18 120/8
sight [1] 102/15
sign [1] 66/23
significant [7] 7/6 11/5 19/9 20/20 56/9 106/1 106/2
significantly [1] 11/21
similar [5] 12/4 81/5 89/21 92/16 114/1
Similarly [2] 48/12 85/1
Simonetti [1] 83/11
simply [24] 7/25 24/5 27/11 28/10 28/12 30/20 35/10 49/7 54/5 62/1 88/10 91/15 92/15 92/23 99/8 99/15 108/13 109/3 111/17 111/23 117/9 117/14 124/9 131/5
since [10] 11/9 23/17 23/25 32/3 41/15 57/19 79/11 86/8 87/10 105/18
single [7] 13/8 46/7 50/9 80/8 93/18 94/13 110/3
sit [2] 65/24 117/24
sitting [1] 105/20
situated [1] 117/15
situation [3] 22/3 57/1 98/17
six [3] 5/21 10/20 44/6
Skipping [1] 20/22
slates [1] 102/3
slippery [1] 94/11
slope [1] 94/11
small [2] 82/24 113/7
Smith [2] 63/3 84/3
so [178]
social [1] 38/21
sole [3] 6/25 6/25 38/19
solely [2] 23/1 133/17
solve [1] 122/18
some [36] 4/16 7/11 10/2 10/11 11/11 19/23 33/21 35/23 52/1 56/5 59/10 62/2 66/12 71/14 73/23 77/6 77/9 84/19 85/3 86/9 92/6 92/20 97/3 99/5 103/16 107/4 108/3 111/23 124/15 125/24 128/21 128/21 128/24 128/24 128/25 132/14
somebody [1] 62/11
somebody's [1] 56/10
somehow [4] 117/6 119/14 127/22 133/23
something [18] 4/19 26/16 32/8 33/10 40/10 57/15 59/5 59/7 69/10 69/17 70/22 70/23 76/22 81/11 91/8 103/18 104/4 110/25
soon [1] 5/20
sorry [8] 17/12 39/21 62/6 67/16 78/16 80/12 112/6 131/10
sort [7] 64/19 82/20 84/24 85/3 85/6 99/5 111/23
sought [19] 19/17 19/25 29/12 29/14 29/15 32/1 32/19 33/24 42/19 49/6 57/8 61/22 63/14 65/3 72/25 73/10 98/16 113/9 117/5
sounds [1] 132/14
source [3] 113/19 113/25 114/2
sources [7] 7/17 29/19 89/12 97/1 114/9 114/9 116/12
SOUTHERN [6] 1/1 11/22 12/17 64/13 115/13 115/14
SPAHR [3] 2/3 2/8 3/17
span [1] 52/22
speak [9] 10/3 81/7 99/1 99/14 99/14 99/15 108/3 122/2 123/17
Speaker [1] 101/9
speaking [2] 64/5 81/8
speaks [1] 41/1
special [12] 12/6 44/22 63/2 75/25 84/4 89/4 92/11 101/13 101/24 102/8 102/23 105/23
specific [12] 9/19 9/24 10/4 30/12 45/22 63/17 69/24 78/23 85/17 86/9 88/3 97/4
specifically [19] 22/1 24/23 42/4 47/18 48/25 61/3 66/7 71/2 71/16 74/9 76/13 76/24 79/4 88/8 88/8 110/1 110/14 126/5 130/23
specificity [3] 9/11 78/8 88/14
speculative [2] 43/4 43/6
speech [59] 39/10 39/19 39/20 40/13 40/21 40/22 41/10 41/16 45/3 45/4 48/10 48/15 49/7 50/6 50/7 50/10 50/11 52/23 56/11 60/20 60/23 63/13 65/14 65/16 68/2 80/9 81/12 81/21 81/25 82/2 82/4 82/5 82/6 82/25 84/1 89/8 89/9 89/13 89/25 90/8 95/23 96/3 97/12 97/15 97/16 101/4 103/16 105/12 105/12 107/5 107/6 107/7 109/14 110/3 110/4 111/8 111/8 111/9 111/18
speeches [1] 63/12
spliced [3] 57/4 60/24 82/4
splicing [12] 23/15 28/15 28/20 39/23 49/25 50/17 52/18 52/22 54/10 57/11 57/13 98/20
spoke [8] 40/12 48/10 49/4 49/5 53/25 65/13 95/9 118/7
spoken [5] 55/8 74/22 107/17 123/9 123/18
spurned [1] 103/7
squarely [1] 84/20
staff [3] 76/14 76/17 106/16
stage [3] 105/11 124/20 124/23
stages [1] 18/23
stand [3] 30/7 44/7 66/7
standard [6] 51/4 51/21 56/17 88/10 89/15 127/19
standards [2] 30/7 56/10
standing [4] 100/13 111/12 120/6 128/19
stands [1] 129/6
start [4] 4/20 40/21 98/7 108/17
started [3] 37/18 86/8 87/10
starting [2] 20/9 129/2
starts [2] 29/2 31/11
starve [1] 103/9
state [13] 39/22 44/23 52/25 57/18 58/16 62/24 75/9 95/11 95/13 95/16 95/22 121/23 125/21
stated [15] 17/11 50/13 51/10 52/6 60/3 60/17 75/16 94/24 108/18 110/1 110/18 128/2 129/21 131/17 133/13
statement [32] 4/12 7/16 51/22 55/4 57/24 60/14 64/2 80/4 83/12 92/12 95/7 99/3 99/10 99/11 103/22 105/2 108/4 108/20 112/1 112/5 112/7 114/7 117/20 121/25 122/19 123/25 124/10 124/12 124/22 126/9 127/1 127/2
statements [30] 9/21 9/21 21/12 23/15 28/14 30/23 39/24 40/1 40/4 52/5 54/17 55/12 55/21 58/9 60/3 60/11 83/5 88/9 89/23 92/13 100/5 100/6 103/12 106/24 111/1 117/2 129/12 130/22 130/25 131/18
states [11] 1/1 1/11 4/13 5/14 36/3 36/25 50/5 99/3 102/24 116/25 127/4
States' [1] 6/16
stating [4] 80/13 98/18 98/18 111/20
status [3] 11/25 12/9 76/8
statute [1] 127/5
statutorily [1] 116/24
statutory [3] 117/18 117/20 128/13
stay [5] 5/15 15/15 121/13 121/14 121/17
Steal [4] 63/11 106/12 106/14 106/25
stem [1] 41/23
stems [1] 46/4
step [6] 23/19 25/7 58/24 59/2 71/6 71/15
Stepping [1] 83/5
steps [1] 65/22
still [15] 4/18 17/24 18/1 18/7 18/22 27/2 59/13 59/15 59/16 65/11 81/20 98/3 100/12 131/23 131/24
stolen [1] 105/15
stomach [1] 134/16
stop [9] 27/12 28/17 63/11 102/13 106/11 106/11 106/14 106/24 121/12
Storm [1] 120/10
stormed [1] 101/8
Street [1] 2/4
stress [1] 117/10
strong [3] 89/4 125/12 125/16
strongly [3] 41/5 41/19 80/5
studio [1] 90/15
Studios [1] 90/14
subgroup [2] 76/16 76/18
subject [16] 30/13 45/24 65/9 73/25 74/9 74/22 80/2 81/16 83/16 83/25 84/7 89/14 91/1 92/25 110/22 118/12
subjective [1] 95/16
subjects [5] 43/10 113/17 118/4 132/13 132/18
submit [1] 121/9
subpoena [31] 3/24 4/21 6/20 7/18 8/3 9/7 15/12 18/19 19/12 19/24 20/6 23/20 23/24 23/24 25/4 26/6 30/1 30/7 30/10 30/16 32/8 32/12 35/16 86/16 113/17 115/12 117/17 119/15 119/17 124/25 130/7
subpoenaed [8] 6/25 8/18 12/1 99/21 99/21 106/10 113/19 113/21
subpoenas [53] 4/8 4/11 25/4 53/5 69/5 77/13 98/2 98/5 98/14 98/23 99/18 99/22 100/3 100/7 100/11 100/23 100/25 108/2 108/23 109/7 109/17 111/4 111/7 112/10 113/2 113/9 114/11 114/18 114/22 115/3 115/4 115/24 116/6 116/9 116/21 117/5 118/2 118/4 118/5 118/12 119/20 120/7 120/20 124/18 125/2 125/16 132/5 132/7 132/8 132/9 132/12 132/13 132/18
subsequently [2] 116/5 127/11
subset [1] 74/4
substance [2] 55/24 66/18
substantial [2] 12/6 121/20
substantially [1] 108/11
Substantively [1] 47/21
success [4] 32/15 32/15 36/2 36/5
successful [2] 36/25 121/17
successfully [1] 36/15
succinctly [1] 21/16
such [18] 15/22 17/22 23/23 27/10 30/3 40/1 52/9 58/20 64/6 73/6 83/11 85/2 94/24 95/7 100/23 108/20 113/20 133/14
sued [2] 116/17 116/18
suffer [1] 18/9
suffered [2] 27/9 42/17
sufficient [2] 12/25 55/19
suggest [6] 31/6 31/20 56/12 57/4 61/16

S


suggest... [1] 117/12
suggested [1] 104/17
suggesting [3] 20/8 58/25 127/23
suggestion [2] 55/22 57/6
suing [1] 48/10
suit [1] 127/4
suits [2] 43/7 110/11
Sullivan [1] 55/3
sum [1] 66/18
summary [5] 55/17 55/20 80/1 104/8 108/4
sundries [1] 36/10
superiors [1] 123/18
superseding [1] 102/23
supervision [1] 122/6
supplement [2] 63/17 66/21
supplemented [1] 47/8
support [4] 56/25 93/6 125/12 125/13
supporters [4] 48/13 81/13 89/8 89/22
supporting [1] 44/20
supports [1] 58/11
Supreme [6] 17/18 17/21 41/1 54/22 68/23 104/11
sure [18] 5/8 34/3 39/22 46/7 51/6 51/9 53/3 54/2 57/20 60/8 61/21 71/10 80/13 91/7 91/23 107/19 119/10 132/14
surrounding [4] 6/17 39/5 44/17 45/4
survive [2] 55/17 55/20
sustain [2] 96/14 100/9
sustained [2] 66/22 67/6
sweeping [3] 29/22 38/15 42/8
sworn [1] 14/12
system [3] 57/3 128/14 128/14


T


T-shirts [1] 36/9
table [1] 120/6
tailor [1] 24/3
tailored [4] 28/21 29/24 54/4 114/12
take [17] 4/9 11/6 13/20 20/23 23/19 25/7 43/3 56/10 58/24 59/1 68/24 73/15 93/22 99/19 112/19 130/10 132/6
takeaway [1] 13/14
taken [2] 39/7 127/25
takes [4] 10/24 13/18 108/3 131/6
taking [6] 6/16 16/19 22/18 24/5 57/19 82/1
talk [9] 10/2 22/12 58/25 59/9 104/1 104/20 112/25 116/13 124/12
talking [7] 28/19 28/21 59/12 60/2 68/11 81/20 110/17
talks [4] 24/23 61/23 62/1 113/8
tally [1] 102/2
tape [1] 55/21
tape-recorded [1] 55/21
taped [1] 54/23
target [1] 94/10
targeted [1] 96/22
targeting [1] 97/18
tarnishment [1] 21/1
task [1] 76/15
tax [5] 8/19 14/18 24/1 29/17 30/11
teaches [1] 120/10
tease [2] 81/18 101/19
telephone [2] 62/4 62/18
Television [1] 17/20
tell [6] 7/19 8/3 47/18 71/1 71/2 106/4
telling [5] 27/9 70/24 74/3 103/9 123/24
temporal [7] 30/12 30/17 31/2 31/7 31/15 31/19 31/21
ten [6] 5/23 18/20 49/13 86/3 86/14 90/25
tens [3] 15/6 20/12 37/7
term [1] 99/23
termination [1] 125/15
terms [14] 17/9 23/11 24/2 24/9 34/1 34/10 54/7 54/8 62/23 64/23 68/24 98/24 99/10 101/24
test [2] 45/24 46/1
testify [1] 106/3
testimony [4] 35/1 57/10 57/10 97/1
than [18] 7/20 15/11 25/20 33/16 36/8 37/2 46/17 50/10 50/17 54/6 76/4 80/9 82/5 84/25 86/4 110/3 121/5 129/25
thank [78] 3/15 3/20 4/25 19/1 19/2 19/7 29/6 34/17 34/18 34/20 37/15 37/16 38/7 40/22 49/15 49/16 49/18 51/17 51/18 63/20 63/23 67/8 67/19 67/20 71/22 72/10 72/15 72/17 72/18 72/20 74/18 77/1 77/2 78/10 79/17 86/6 86/7 87/3 87/6 87/9 87/17 91/2 91/3 91/5 91/25 92/2 96/15 96/16 96/18 97/24 97/25 98/9 100/18 100/19 108/14 111/25 112/14 112/22 117/23 119/7 119/8 119/25 120/1 120/4 124/11 126/21 126/22 126/24 128/16 128/17 128/23 132/22 132/23 134/8 134/11 134/13 134/14 134/15
that [1142]
that's [26] 20/6 45/3 47/3 47/17 51/22 53/21 54/15 56/18 56/18 60/22 60/24 61/6 61/17 61/19 62/14 65/3 73/22 85/8 89/11 89/18 99/3 109/15 117/21 118/13 119/6 120/9
their [65] 6/1 9/6 9/9 10/5 10/5 10/12 10/14 10/14 10/15 10/24 11/3 11/5 11/15 12/3 12/19 13/10 13/21 15/13 15/16 16/5 16/15 16/18 17/24 18/3 18/21 18/22 20/16 24/2 24/6 29/16 38/19 43/19 47/7 47/21 50/18 53/2 54/12 55/12 73/24 74/4 77/20 87/22 88/2 89/4 89/7 89/23 89/23 97/3 100/12 105/9 105/10 107/11 107/22 108/10 109/16 110/7 110/19 111/15 117/8 120/6 121/2 122/8 122/23 123/25 129/14
them [40] 6/3 9/22 9/24 10/11 10/12 10/16 10/18 11/14 16/1 18/6 19/24 26/5 33/6 43/24 43/24 44/3 46/7 47/9 54/4 56/12 62/16 73/16 77/8 77/21 79/10 82/21 84/5 84/18 97/12 100/25 101/11 102/6 107/15 107/15 110/12 114/3 118/9 126/3 126/17 129/11
theme [1] 69/13
themselves [13] 10/4 15/24 35/19 61/2 67/24 68/20 101/16 103/3 107/13 107/17 122/13 132/8 132/9
then [41] 10/18 10/25 13/2 22/12 22/19 27/2 29/2 39/19 43/21 45/15 55/10 55/12 57/7 63/10 63/13 66/6 66/25 73/4 86/15 86/15 86/15 89/8 92/12 95/24 100/23 102/12 103/7 105/2 105/19 107/1 110/12 113/22 119/5 121/24 122/21 126/11 128/21 132/1 132/18 133/2 134/9
theory [13] 10/14 17/11 20/2 25/25 26/8 26/15 28/3 29/12 33/6 34/13 34/16 34/21 129/19
there [97] 3/13 4/12 4/13 9/25 10/1 12/5 15/22 16/4 17/22 19/13 19/22 21/17 26/7 27/6 27/19 28/7 30/6 30/18 36/11 40/23 45/13 46/10 47/14 52/8 54/22 56/24 57/3 57/7 57/23 58/6 58/14 61/10 65/7 66/10 66/12 67/17 68/19 69/14 70/1 70/18 71/25 72/3 73/22 74/3 75/14 77/6 78/8 79/23 80/1 80/16 83/8 84/2 84/23 86/3 86/9 88/22 92/3 92/6 93/7 95/24 96/24 97/21 97/21 98/14 99/2 99/25 100/21 100/23 100/23 101/18 103/15 107/1 114/18 115/6 115/17 115/20 117/11 117/12 118/25 119/13 119/13 119/19 119/23 124/23 127/6 127/11 127/22 127/23 128/2 128/7 128/25 130/1 131/24 132/8 133/23 133/25 134/10
there's [5] 41/17 45/12 61/19 112/23 114/8
thereafter [1] 28/16
thereby [1] 20/18
thereto [1] 57/25
Thereupon [1] 2/15
these [79] 5/19 9/21 12/8 14/17 19/23 20/16 21/4 22/15 25/3 29/23 30/22 32/14 38/12 39/25 44/18 46/4 47/5 47/25 48/8 48/22 49/14 54/4 54/7 59/9 59/11 64/7 64/10 66/8 69/3 69/19 75/7 77/11 77/14 80/1 84/5 85/10 85/20 87/25 88/16 89/19 90/9 92/9 92/19 92/23 93/2 93/9 93/10 94/23 98/1 99/18 100/2 100/3 100/7 100/10 100/11 101/23 104/1 104/1 105/19 106/1 106/23 107/7 107/11 108/2 109/6 109/17 109/17 111/7 114/11 115/24 118/3 118/4 121/19 122/14 124/8 124/18 125/15 125/15 130/16
they [173]
they're [6] 53/2 61/14 93/2 111/3 121/12 125/1
they've [4] 16/5 31/3 52/1 84/16
thin [1] 96/25
thing [6] 17/22 19/20 60/15 61/13 76/20 124/2
things [12] 32/12 36/17 37/5 37/6 49/20 59/3 62/1 92/17 96/6 104/25 118/1 129/1
think [52] 17/15 26/22 27/16 29/10 31/2 31/11 31/12 39/24 43/20 46/16 49/20 54/5 54/9 56/5 56/22 56/23 59/13 60/13 60/15 61/2 65/10 67/3 69/20 70/5 77/8 78/4 79/24 80/16 81/7 84/19 85/20 90/23 93/4 93/5 96/9 96/11 98/22 99/24 100/17 110/23 115/24 116/1 116/14 118/1 118/19 119/13 119/23 123/24 125/9 125/13 125/20 127/25
thinking [7] 53/24 60/18 61/15 61/16 97/22 106/3 106/5
thinks [1] 17/15
third [14] 4/8 6/9 31/13 33/5 33/18 35/18 43/3 51/23 53/5 77/12 98/6 98/15 100/23 120/23
third-party [5] 33/5 33/18 77/12 100/23 120/23
this [273]
those [80] 4/9 7/13 8/4 9/2 9/3 11/2 14/25 18/15 19/18 22/20 23/14 25/5 25/24 27/23 28/5 32/2 33/23 37/12 41/7 41/10 42/20 43/4 43/7 44/6 45/9 45/10 45/11 45/16 45/24 46/9 58/15 62/17 62/22 67/14 69/22 73/3 73/4 73/16 73/25 74/7 75/10 78/5 81/16 84/7 84/8 84/20 88/18 89/6 89/19 89/24 93/16 93/18 95/25 96/1 96/5 100/5 101/2 102/9 103/2 104/17 105/23 106/12 106/14 106/16 108/12 111/19 111/23 115/3 115/6 116/6 118/16 123/2 126/1 128/4 128/11 129/10

T

those... [4] 130/11 130/12 130/25 131/13
though [1] 121/16
thought [6] 30/5 40/1 82/19 91/8 91/13 127/12
thoughts [1] 54/13
thousands [2] 15/7 97/2
three [3] 38/12 48/3 120/19
threshold [2] 53/21 53/23
thriving [1] 11/13
through [20] 5/6 14/20 18/4 18/5 20/10 22/16 30/17 53/2 53/13 63/19 77/14 78/9 96/2 98/24 101/8 105/9 117/21 124/6 132/2 132/3
throughout [2] 59/7 83/9
thus [1] 121/8
Tic [1] 64/13
tied [2] 45/3 52/23
time [40] 15/5 15/7 15/11 15/18 16/10 18/19 30/23 31/22 32/3 34/22 40/7 40/10 48/6 49/13 52/18 56/7 56/8 57/13 59/6 59/20 60/3 60/4 61/3 62/21 67/1 67/4 79/11 82/24 85/14 85/15 90/18 96/11 99/11 116/5 117/3 121/3 127/19 128/19 130/11 132/22
timely [4] 6/21 18/25 86/5 91/1
times [6] 42/2 47/20 55/3 87/25 88/4 129/21
timing [4] 74/22 76/6 130/9 130/22
TOBIN [22] 2/3 3/16 5/1 33/11 34/19 41/24 77/3 82/17 87/4 100/20 114/19 115/1 116/3 117/7 117/13 117/17 118/20 120/2 124/11 124/15 127/23 128/6
Tobin's [1] 117/2
tobinc [1] 2/5
today [19] 5/19 16/14 18/12 34/24 35/2 35/20 36/17 36/18 48/2 76/20 78/5 84/9 84/19 97/10 112/24 128/23 129/21 133/19 133/22
today's [1] 38/7
together [8] 40/1 40/4 56/12 57/11 59/19 59/20 60/3 82/4
told [12] 10/3 10/4 10/5 10/8 26/20 48/12 78/5 101/10 105/15 106/17 106/18 111/20
tomorrow [1] 46/11
too [5] 18/6 31/19 40/3 85/20 90/23
took [6] 8/11 11/24 76/19 85/4 91/9 117/2
top [3] 63/22 78/24 82/4
topic [2] 42/23 85/6
topics [4] 43/8 49/7 68/2 88/18
total [1] 5/24
totaling [1] 5/24
totally [2] 53/6 119/20
Touhy [14] 100/24 109/17 114/21 115/3 117/1 117/21 118/2 118/17 118/23 119/2 122/14 124/19 125/1 128/10
toward [1] 30/2
track [2] 7/4 29/3
trademark [1] 12/2
trading [1] 94/6
tragic [1] 101/5
transactional [1] 14/18
TRANSCRIBED [2] 1/10 2/12
transcription [1] 135/5
transferred [1] 115/13
transition [1] 105/17
transmit [2] 5/12 5/14
transmitted [1] 23/13
transparent [1] 34/1
transpired [1] 25/17
travel [1] 26/23
traveling [2] 26/8 34/13
treated [1] 18/17
trial [4] 80/1 111/12 111/13 115/14
tried [5] 33/25 41/15 78/9 85/18 111/17
trigger [1] 66/22
true [9] 35/10 59/23 78/9 79/21 79/21 84/6 88/15 88/25 96/19
TRUMP [40] 1/3 3/4 3/25 4/21 5/25 6/11 7/1 10/17 11/6 14/16 16/5 20/17 22/7 36/1 37/20 47/23 59/23 82/8 86/21 102/5 102/17 102/22 102/24 103/7 103/8 103/18 105/23 107/3 110/5 116/16 116/17 117/4 123/3 125/7 125/7 128/3 128/7 129/3 130/8 131/1
Trump's [19] 5/13 7/3 9/1 10/17 11/9 13/6 20/11 20/15 20/22 24/24 31/8 36/11 36/12 39/3 105/11 127/20 129/8 130/3 131/18
trust [53] 4/1 4/22 6/9 6/20 7/2 7/17 8/4 8/18 8/19 8/20 8/23 9/1 9/6 9/6 9/8 9/23 10/16 14/3 14/9 14/13 14/25 16/14 19/4 19/12 19/17 19/24 20/4 22/16 23/18 23/21 25/4 26/5 28/5 28/7 28/13 29/9 29/9 29/14 29/16 29/16 29/18 29/20 30/2 31/13 31/17 32/3 32/3 35/9 37/19 48/1 66/4 129/4 130/8
trust's [3] 29/19 29/21 30/10
trustee [1] 14/16
truth [5] 77/19 104/3 105/2 108/10 121/20
try [8] 24/3 28/10 49/21 56/21 61/13 94/24 98/13 109/1
trying [18] 26/8 26/23 28/23 30/19 37/1 51/25 54/5 59/24 61/14 69/2 84/11 88/17 96/22 100/1 109/15 110/9 117/8 117/22
tune [1] 97/17
turn [3] 9/22 15/16 85/19
turned [1] 126/1
turning [2] 6/20 84/2
TV [1] 40/10
twice [1] 111/20
twilight [2] 18/24 18/24
two [29] 6/7 7/17 13/1 19/18 21/4 38/23 39/23 40/4 47/5 48/4 49/20 58/9 59/19 60/3 65/7 65/8 67/6 70/22 74/11 79/10 82/23 86/13 92/17 94/15 104/21 104/25 105/20 112/16 122/6
Twofold [1] 60/7
type [4] 61/1 94/6 100/14 117/12
typewritten [1] 55/22

U

U.S [14] 54/21 63/5 63/8 63/9 68/21 68/22 95/14 102/19 116/17 117/8 117/16 117/19 127/3 127/21
U.S.C [1] 127/2
Uhl [1] 57/2
UK [3] 5/6 5/7 14/7
ultimately [2] 54/23 55/25
umbrella [5] 25/5 68/18 74/24 75/2 75/11
unable [2] 11/6 46/1
unavoidable [1] 97/14
unbounded [1] 82/23
unbridled [1] 18/14
under [30] 5/4 11/1 17/17 17/20 20/11 21/17 24/15 25/2 25/5 26/8 26/23 30/6 33/8 34/13 52/2 68/14 74/24 75/1 75/11 83/21 85/13 88/10 89/15 104/11 122/14 129/8 129/22 130/2 132/4 132/11
undermine [1] 53/12
underscore [1] 96/6
understand [13] 24/18 24/20 26/11 57/20 69/2 69/9 71/15 96/10 96/12 99/2 115/19 124/17 129/16
understanding [17] 26/21 27/22 45/9 47/14 66/12 70/17 114/24 115/2 116/2 116/7 118/17 118/18 118/19 118/25 119/6 126/25 127/13
understands [1] 29/10
understood [2] 96/3 120/11
undertake [2] 73/5 132/2
undertaken [1] 113/12
undisputed [1] 42/24
undue [4] 113/18 113/18 114/3 116/8
unduly [2] 9/12 116/10
unethical [2] 57/5 57/15
unintentionally [5] 50/8 80/8 89/1 103/23 110/2
UNITED [14] 1/1 1/11 4/12 5/14 6/15 8/10 13/25 18/8 36/3 36/25 99/3 102/24 116/25 127/4
unless [2] 55/3 133/23
unlike [1] 98/16
unnecessary [1] 64/17
unprecedented [1] 103/6
unreasonable [1] 15/6
unrelated [2] 53/6 62/1
unseal [1] 120/12
unsealing [2] 120/14 120/19
unsophisticated [1] 56/6
unsupported [1] 109/4
untethered [1] 33/5
until [14] 10/15 10/24 11/15 11/17 11/18 15/19 16/2 35/5 46/7 69/6 72/4 75/13 94/15 116/1
untrue [2] 28/12 111/23
unverified [1] 47/6
unwilling [1] 24/10
up [37] 5/22 7/23 8/16 16/18 17/24 23/4 28/3 32/10 35/5 36/2 36/14 45/3 46/12 54/1 62/12 65/22 69/6 74/12 74/15 81/5 84/14 85/23 86/15 86/16 87/11 105/11 107/17 108/3 109/23 110/20 112/3 120/15 120/21 123/3 123/11 124/21 129/10
update [1] 47/10
updated [1] 17/6
upon [13] 26/10 28/2 28/3 55/12 60/17 65/2 72/14 92/23 98/14 109/2 127/5 127/5 131/24
upset [1] 25/15
urge [1] 13/19
urging [2] 81/10 107/6
urgings [2] 105/21 105/22
us [38] 6/16 8/2 8/3 8/6 10/8 10/12 11/2 15/10 16/7 17/8 33/17 33/17 35/15 43/19 44/4 44/8 46/1 47/10 47/18 48/10 54/4 54/13 69/1 72/8 77/13 83/19 83/22 88/17 106/2 107/11 107/11 108/9 116/15 120/10 121/16 125/25 126/8 133/20
use [3] 55/6 55/7 99/24
used [9] 28/10 60/20 88/4 101/21 101/21 102/8 102/11 103/15 104/16
uses [1] 103/19
uttered [1] 55/1
utterly [1] 11/6

V


Valle [2] 11/23 11/24
valuations [1] 8/18
value [14] 7/6 7/9 8/1 8/7 8/20 8/25 9/23 20/11 20/19 20/25 22/10 29/16 35/7 37/7
valued [2] 7/20 7/21
values [2] 9/2 9/3
variance [1] 56/5
various [5] 36/10 85/1 101/23 103/2 125/19
vast [2] 11/7 64/10
vehemently [1] 49/25
ventures [4] 20/13 21/6 22/11 31/18
venue [1] 119/14
venued [2] 119/18 119/19
venues [1] 119/24
verdict [1] 14/23
verification [5] 47/4 47/11 49/12 66/6 66/15
verified [3] 47/16 66/9 66/13
verify [3] 47/15 85/12 85/13
version [2] 66/23 66/24
very [33] 4/25 12/4 12/24 14/9 21/15 28/20 28/20 28/21 31/3 31/22 34/24 35/5 35/21 39/16 42/3 56/6 56/9 59/9 62/8 63/23 85/5 106/6 108/6 115/11 116/23 122/24 123/9 123/24 125/11 125/12 126/19 126/25 128/23
Vice [3] 75/20 101/9 126/3
video [6] 23/15 28/15 28/20 57/3 58/1 111/1
view [1] 131/7
viewed [1] 23/14
vigorously [1] 82/10
violates [2] 44/10 88/13
violation [5] 9/10 88/1 91/15 92/22 100/8
violations [1] 64/21
violence [21] 39/11 39/14 40/18 40/19 41/13 59/24 77/20 82/3 82/8 82/13 82/14 88/23 97/17 101/4 101/21 101/22 102/2 102/25 103/21 105/25 131/1
violent [14] 20/18 44/21 50/12 52/1 52/8 60/12 60/21 80/11 81/2 89/1 89/9 104/6 109/21 110/6
violently [1] 101/7
virtue [4] 92/16 99/20 109/16 111/13
voice [2] 100/12 126/14
Volume [1] 102/1
voluntarily [1] 116/20


W


wait [4] 11/18 22/6 22/6 22/6
waiting [1] 131/20
walk [1] 41/15
walking [2] 57/6 81/9
want [34] 11/16 23/19 24/11 25/14 26/12 26/13 27/8 29/1 29/3 29/9 36/22 52/2 56/21 57/19 59/13 66/15 68/15 70/25 74/19 77/4 84/21 92/4 96/10 99/6 99/17 109/18 111/12 111/19 111/20 114/14 115/7 115/18 120/2 130/10
wanted [10] 9/25 51/9 68/9 91/7 91/22 95/10 112/9 116/13 117/10 133/4
wanting [1] 70/14
wants [5] 10/17 80/16 106/4 110/8 125/14
was [166]
Washington [4] 2/4 119/14 119/18 123/11
wasn't [5] 61/5 66/10 81/2 82/19 114/13
waste [1] 96/11
Watkins [1] 64/15
way [38] 10/2 11/1 13/21 16/1 18/15 25/19 26/7 28/23 30/1 30/5 31/9 34/4 35/25 39/10 40/16 43/24 46/2 48/15 50/6 55/8 56/6 60/15 60/23 65/15 65/15 69/11 73/18 89/3 101/17 104/2 112/19 123/4 125/9 127/24 129/10 131/9 131/10 131/13
ways [3] 101/18 103/15 115/17
we [436]
we'd [1] 37/12
we're [9] 13/5 13/7 13/25 15/6 16/10 16/19 77/16 81/20 83/24
we've [9] 41/21 46/5 46/6 49/6 69/21 90/22 95/1 95/5 121/22
web [1] 85/23
week [4] 5/23 6/4 16/7 86/5
weekly [2] 5/22 46/15
weeks [7] 6/7 6/21 8/16 10/20 38/23 70/22 94/15
weighing [2] 75/17 119/2
weight [2] 124/10 125/22
Welch [1] 17/18
well [47] 4/7 12/6 21/17 24/12 25/7 28/9 28/16 28/25 29/15 34/11 34/16 38/10 38/10 42/16 44/15 47/3 49/14 53/23 54/1 55/13 61/15 61/23 62/8 64/14 65/3 65/11 69/5 74/13 78/14 79/6 80/16 81/1 82/4 84/12 85/13 86/3 89/18 93/22 94/9 97/12 98/8 111/11 114/21 122/23 125/9 128/23 131/11
well-established [1] 21/17
went [5] 7/23 8/16 30/20 78/9 89/8
were [79] 3/2 6/3 9/18 9/19 10/3 10/4 10/4 11/3 13/15 13/23 14/1 15/17 15/18 17/7 23/11 23/15 29/23 30/23 31/16 31/18 36/15 36/16 37/1 47/7 48/4 48/23 54/18 54/18 54/23 54/24 55/24 55/25 57/5 65/8 70/23 74/9 76/12 77/15 78/2 78/14 80/6 81/1 81/21 83/13 83/14 84/7 86/9 87/12 91/10 91/20 91/23 92/10 92/11 92/20 93/24 98/14 98/14 100/7 100/8 100/23 104/1 105/13 106/10 106/23 107/1 107/5 110/2 114/20 115/25 118/7 122/13 122/18 122/20 122/24 123/13 124/24 126/8 131/17 132/7
weren't [2] 29/24 60/4
Western [1] 57/1
what [220]
whatever [5] 10/16 10/17 16/13 66/15 133/20
whatsoever [2] 28/12 95/21
when [38] 15/14 20/1 23/19 24/20 25/20 30/16 32/15 32/16 35/20 37/3 37/4 38/11 42/8 43/18 45/6 46/8 47/10 47/19 48/4 48/10 48/14 56/15 59/20 64/4 64/6 72/23 75/25 78/5 86/3 88/19 91/8 99/12 103/21 106/5 108/3 110/24 124/21 128/9
where [43] 8/13 8/13 18/20 22/17 25/13 29/11 31/17 32/10 36/9 44/7 45/20 50/5 51/2 52/13 53/8 57/1 66/7 80/20 83/12 85/6 90/6 94/25 95/7 96/12 98/1 98/17 98/17 104/9 109/20 113/25 114/14 115/9 115/12 115/14 117/14 119/22 119/23 124/24 127/20 128/19 130/1 132/6 132/12
whereby [1] 127/19
whether [41] 27/19 40/6 41/19 42/17 46/9 52/15 53/20 55/16 55/19 58/8 58/16 58/18 59/18 59/19 59/20 59/23 64/5 66/20 66/21 67/5 71/3 71/3 77/19 80/21 81/15 82/4 82/15 83/2 84/22 89/10 89/13 90/1 100/6 104/9 105/9 105/24 113/8 113/19 119/15 130/24 133/16
which [77] 3/23 4/4 4/7 4/13 5/12 5/23 6/17 6/18 9/11 11/22 12/24 16/1 21/19 22/14 22/21 24/6 25/6 25/23 26/4 27/17 28/2 33/5 34/12 34/13 35/8 35/9 37/22 40/4 40/16 41/19 45/1 47/22 48/15 50/3 52/6 52/13 53/3 59/9 61/1 61/5 61/14 63/10 64/15 68/5 70/20 75/4 77/20 82/9 83/1 84/25 86/10 87/13 89/15 91/14 92/23 95/10 95/14 97/22 98/4 98/6 100/24 100/25 105/7 109/4 109/24 112/7 113/6 113/8 118/3 125/14 127/2 128/23 129/4 131/22 131/23 133/11 133/25
while [1] 57/5
whistle [3] 103/17 103/19 104/4
White [4] 105/14 105/14 123/13 123/17
who [37] 6/10 7/1 11/24 14/6 23/6 36/1 36/24 45/23 47/22 48/9 53/24 65/12 71/12 74/21 75/21 88/18 89/6 89/8 93/17 96/5 99/20 102/6 102/9 104/1 105/15 106/10 106/13 106/16 106/17 106/18 106/23 106/23 107/1 107/5 118/7 120/7 132/17
whole [5] 28/7 33/9 90/18 99/19 106/11
wholesale [2] 15/10 30/10
whom [3] 114/20 118/3 118/9
why [15] 21/10 23/23 26/15 26/17 26/18 27/24 31/24 56/18 81/22 92/23 93/3 111/5 117/19 122/22 126/19
wide [2] 54/7 85/23
wide-ranging [1] 54/7
Wikipedia [1] 36/12
wild [1] 57/3
will [71] 3/6 4/14 4/20 5/23 7/11 7/12 8/5 11/17 11/18 21/9 21/15 26/16 27/18 31/23 32/2 34/12 35/4 37/25 38/8 39/22 44/14 46/8 46/8 46/9 46/10 47/10 47/15 47/15 47/19 47/19 59/5 60/8 62/2 62/17 63/16 69/5 72/13 79/25 80/2 80/2 80/13 85/11 86/15 86/17 87/22 98/7 99/4 106/2 112/15 113/14 120/16 120/19 124/14 124/20 125/21 125/24 126/7 126/13 126/16 128/18 128/22 130/9 130/14 130/16 130/17 131/15 131/22 132/2 132/16 133/2 134/9
Williams [4] 108/6 123/9 125/7 126/19
willing [6] 10/8 15/18 84/25 85/5 85/18 93/22
window [2] 82/22 82/24
wine [1] 36/9
wish [1] 127/10
withhold [2] 10/24 44/2
withholding [2] 44/9 44/12
within [13] 8/9 8/22 14/2 18/19 49/12 67/4 85/15 86/3 90/24 120/24 121/1 130/21 133/17
without [13] 7/8 8/7 12/14 14/6 16/20 17/4 20/24 30/12 30/13 30/22 74/1 105/21 127/24
witness [12] 10/15 10/17 10/19 10/24 15/21 16/11 23/6 27/15 27/17 35/3 107/20 107/21
witnesses [6] 45/14 104/1 106/2 107/11 107/13 107/17
WL [2] 64/14 64/15
won [1] 37/3

W

won't [1] 124/25
wonder [2] 43/25 48/2
word [11] 16/19 82/2 93/7 101/18 101/19 101/20 102/11 121/1 124/1 124/1 126/23
wording [2] 88/4 88/24
words [31] 11/4 24/5 50/2 52/22 54/11 55/1 55/8 55/11 55/14 56/10 60/12 60/17 60/20 80/6 80/13 80/15 81/1 81/7 81/8 81/20 98/20 101/17 101/20 101/21 102/8 104/16 104/17 107/9 109/20 110/7 124/6
work [7] 70/15 70/15 70/16 115/17 131/12 132/3 132/18
world [1] 21/3
worst [1] 125/16
worth [2] 20/12 85/24
would [96] 7/24 7/25 10/7 10/9 11/2 11/6 12/12 14/9 14/16 14/24 15/15 16/24 18/6 18/19 30/23 30/24 31/4 31/6 31/6 31/18 31/19 33/23 34/2 35/1 35/11 35/13 35/24 36/18 36/18 37/20 40/23 46/14 46/16 46/25 49/10 49/13 53/14 58/17 60/20 64/12 66/22 67/7 68/3 71/12 72/4 73/17 73/24 74/4 74/22 75/1 75/3 75/10 78/3 78/12 78/16 79/6 79/14 84/20 84/25 85/5 85/12 85/14 85/25 90/23 90/25 91/14 93/22 96/13 101/11 106/12 106/13 106/15 106/16 107/10 108/12 112/25 113/5 117/6 117/6 117/7 118/19 119/4 119/24 120/4 121/5 121/9 124/8 128/4 130/10 133/9 133/12 133/12 133/14 133/16 133/25 134/1
wouldn't [2] 107/25 119/1
wrapped [3] 16/18 36/2 36/14
written [10] 41/22 87/19 128/18 128/22 130/9 130/17 131/15 131/21 131/24 133/24
wrong [3] 17/17 70/18 91/22
wrongful [1] 12/9
www.trumpstore.com [1] 36/9

Y

year [8] 6/24 6/24 7/24 7/24 11/9 14/20 37/9 37/9
years [2] 30/20 37/2
yes [30] 24/20 24/21 27/15 32/25 33/3 38/4 40/8 47/1 51/11 51/13 57/21 66/5 66/18 69/22 71/8 71/9 77/5 78/20 78/22 79/13 91/12 108/16 112/4 112/13 112/17 117/25 120/4 124/16 126/24 133/1
yet [6] 6/8 19/11 36/21 53/23 84/23 111/2
York [4] 2/9 14/21 55/2 115/14
Yorker [2] 41/1 54/21
you [270]
you're [10] 4/19 26/22 31/14 57/22 70/7 70/24 71/2 77/18 78/13 133/5
you've [3] 54/3 113/3 125/2
you-all's [1] 134/16
your [274]

Z

zero [1] 109/1