**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual,<br><br>       Plaintiff,<br><br>    v.<br><br>BRITISH BROADCASTING CORPORATION a/k/a BBC,<br><br>       Defendant. | Case No. 1:25-cv-25894-RKA |

**NON-PARTY THE DONALD J. TRUMP REVOCABLE TRUST'S**
**OBJECTIONS TO AND APPEAL OF MAGISTRATE JUDGE'S ORDER**

Non-party, The Donald J. Trump Revocable Trust (the "Trust"), by and through undersigned counsel and pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Rule 4(a)(1) of the Magistrate Judge Rules of the Southern District of Florida, respectfully objects to and appeals from the written Order entered July 27, 2026 (ECF 104) by the Honorable Enjoliqué A. Lett, United States Magistrate Judge, granting in part Defendants' motion to compel compliance with their Rule 45 subpoena to the Trust (the "Order"), and states:

**INTRODUCTION**

After demanding a shockingly broad amount of information based on clearly political motivations, the BBC has obtained an order under which, as of August 6, 2026, the Trust is technically required to begin turning over the tax returns, ownership and governance instruments, deeds, appraisals, financial statements, licensing records, and digital asset histories of the Trust and hundreds of affiliated entities. The BBC's motive could not be more transparent—to wrongly exploit this litigation for its own political benefit, as well as that of President Trump's other political opponents.

This case concerns the BBC's deliberate doctoring and distortion of President Trump's January 6, 2021, speech. The BBC extracted two passages from President Trump's January 6, 2021, speech spoken nearly fifty-five minutes apart, deceptively joined them into a single

continuous sequence, omitted his express direction to march "peacefully and patriotically," and falsely broadcast the result as though President Trump had directly called for violent action, which he never did. The BBC itself later admitted that the edit created that "mistaken impression" which "should not have happened." Its Chairman apologized to President Trump in writing, the program was withdrawn from rebroadcast in that form, and the BBC's Director General and Head of News resigned amid the controversy. The claim is focused: the BBC knew what the full speech said, yet it nevertheless distorted President Trump's words, and published a materially false depiction of the speech.

Rather than seek discovery tethered to the narrow defamation claim and particularized evidence bearing on liability and damages, the BBC has sought to turn this case into a sweeping investigation of January 6, President Trump's political activity, and the complete financial affairs of the Trust and hundreds of separate entities. The BBC served 126 document requests and approximately 150 requests for admission on President Trump; subpoenaed forty-seven family members, former officials, political associates, and federal agencies for largely identical January 6 materials; demanded records produced to congressional committees and Special Counsel Jack Smith; and sought every instance since 2000 in which President Trump claimed reputational injury. The subpoena to the Trust is the financial arm of that same sweeping politically-charged, improper discovery campaign.

The subpoena does not seek a defined body of evidence tied to a particular alleged loss. It is a seven-year financial dragnet across approximately 400 entities: *every* Trust instrument and amendment; *every* asset and income stream; *every* deed, title policy, survey, appraisal, and closing statement; *every* ownership and governance agreement; *every* annual and quarterly balance sheet, income statement, profit-and-loss statement, and cash-flow statement; *every* licensing and royalty record; *every* appraisal and insurance rider for vehicles, jewelry, art, antiques, and collectibles; *every* digital-asset wallet statement and transaction history; and *every* federal and state return, schedule, K-1, amendment, and workpaper. Even accepting the current operative Complaint's allegations of harm to President Trump's brand value, future financial prospects, properties, and businesses, the subpoena is not tailored to those injuries. It is not limited to entities, assets, transactions, or categories of records bearing on whether the Documentary caused the alleged harm. Instead, it requires the Trust to produce its entire financial universe without explaining how such a sweeping body of material could measure the damages alleged.

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

The timing confirms the BBC's tactic. The BBC served broad financial requests on President Trump on March 5, 2026, and then subpoenaed the Trust twenty-five days later—before President Trump's responses were due, and before the BBC could identify any gap in party discovery. The BBC thus imposed overlapping financial demands on a party and a non-party without first determining what relevant information remained unavailable to BBC. Rules 26 and 45 do not permit a litigant to multiply the same burden across party and non-party discovery, demand everything from everyone, and call the result proportional because a complaint uses the words "brand, properties, and businesses." Yet, the Order incorrectly accepted those words as sufficient to compel every category demanded, without requiring the BBC to connect the subpoena's separate requests to a particular alleged injury, and without meaningfully balancing the BBC's speculative need against the burden imposed on the Trust.

Developments since the hearing further undermine immediate enforcement. Indeed, President Trump has filed a motion for leave to amend the Complaint. The proposed First Amended Complaint adds numerous allegations that have been learned through the discovery engaged thus far, and replaces the express allegations of harm to brand value, future financial prospects, properties, and businesses on which the BBC and the Order relied, instead identifying reputational harm as the alleged compensatory injury. Those developments materially narrow the premise for the subpoena, and, at a minimum, require that enforcement be stayed until the Court resolves the pending motion for leave to amend.

The Order, as a whole, should be set aside. It compels grossly overbroad and disproportionate financial discovery from a non-party; requires wholesale production of complete tax returns, schedules, and workpapers without explaining why each category is necessary or proportionate; authorizes substantially overlapping party and non-party discovery before any need for duplication was established; and gives no meaningful effect to the BBC's affirmative duty under Rule 45(d)(1) to avoid unnecessary burden and expense. The Court should sustain these Objections, set aside the Order, and quash the subpoena. Because the Order requires an initial production within ten days and weekly production thereafter, the Trust has also filed a separate emergency motion to stay enforcement of the Order, summarized below.

## BACKGROUND

1.       This is a defamation and FDUTPA action arising from the BBC's deceptive editing

of President Trump's January 6, 2021 speech in the BBC's Panorama documentary, broadcast on October 28, 2024. The Documentary wrongly, maliciously, and deceptively spliced together two sentences spoken nearly fifty-five minutes apart, and omitted the President's statement, made less than a minute after the first passage, that "everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard," creating the false impression that President Trump delivered a single, continuous call to march to the Capitol and "fight like hell" (ECF 1 ¶¶ 42–44). Defendants' own Motion to Dismiss described the challenged material as a "12-second cut" from a speech lasting more than seventy minutes (ECF 36, at 9, 12).

2.      The BBC's own post-publication statements confirm the distortion. The BBC's Chairman wrote that the edit "gave the mistaken impression that [President Trump] had made a direct call for violent action." He acknowledged that the edit "should not have happened." The BBC repeated that admission on its Corrections and Clarifications page, and stated that the Documentary would not be rebroadcast in that form. The BBC's Director General and Head of News resigned over the episode (ECF 1 ¶¶ 104–122).

3.      Rather than litigate that narrow claim, the BBC launched sweeping collateral discovery. It served forty-seven subpoenas on third parties — including the President's family members, former cabinet officials, and federal agencies such as the FBI, NSA, DOD, DHS, and DOJ — seeking substantially identical categories of documents concerning January 6, 2021, the "Stop the Steal" rally, the events at the Capitol, and challenges to the 2020 election. The BBC expressly sought records gathered in the Special Counsel's investigation. Several subpoena recipients objected that the demands were an improper fishing expedition (Joint Mot. for Discovery Hearing on Defendants' Forty-Seven Subpoenas, June 3, 2026).

4.      As part of the same effort, on March 5, 2026, the BBC served 126 requests for production on the Plaintiff. The requests demand all documents concerning the planning of the January 6 rally and speech, and communications with sixteen named political figures (Req. 47); telephone logs, calendars, schedules, and diaries from November 3, 2020, through January 20, 2021 (Reqs. 45–46); all materials supplied to the January 6 Select Committee, the Senate Homeland Security Committee, Special Counsel Jack Smith, and any other federal, state, or local agency (Reqs. 41–44); every instance since January 1, 2000, in which President Trump alleged defamation or reputational injury (Req. 93); and extensive materials concerning unrelated criminal cases, civil findings, and other publications (Reqs. 77–86, 95–116).

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

5.      The same improper requests reach nearly every aspect of President Trump's finances: all tax returns and attachments from every jurisdiction (Req. 117); every source and amount of income (Req. 118); all financial holdings and their values (Req. 119); the asserted value of his personal brand (Req. 120); every asset, liability, gift, or item worth $100,000 or more (Reqs. 121–123); every claimed financial loss of President Trump or any business resulting from the Documentary (Req. 124); and licensing agreements, offers, royalties, revenues, and quality-control records concerning his name, marks, and affiliated entities (Reqs. 68–76, 87–92).

6.      Twenty-five days later, on March 30, 2026 — before Plaintiff's responses and objections were due — the BBC served a Rule 45 subpoena on the non-party Trust. The subpoena defined "Trump Affiliated Entities" to include approximately 400 businesses and demanded twelve categories covering the Trust's structure, assets, income, ownership, real property, tangible property, intellectual property, digital assets, tax records, and the complete financial statements and returns of every affiliated entity, originally from January 1, 2019, through the present (ECF 52-2).

7.      The Trust served detailed, request-by-request written objections asserting irrelevance, disproportionality, undue non-party burden, fishing-expedition overbreadth, an unreasonable compliance period, duplication of party and public sources, confidentiality, and the special concerns implicated by tax returns (ECF 52-2 at 25–27).  In the May 15, 2026, Joint Motion, the BBC answered with one proposition: paragraphs 100 and 101 of the operative Complaint referred to President Trump's "brand, properties, and businesses," so the complete financial records of the Trust and every listed entity were fair game (ECF 52). The BBC did not tailor the subpoena to entities, transactions, licensing arrangements, or categories of Trust records bearing on the injuries alleged. It instead treated those general allegations as authorization to obtain comprehensive financial records for the Trust and every listed entity, regardless of their connection to the alleged harm.

8.      At the July 21, 2026, hearing, Plaintiff made his damages position unequivocal. Counsel represented that none of the approximately 400 entities would form the basis of Plaintiff's damages theory; that Plaintiff would not seek any entity-level loss or diminution in business value; that the damages expert would assess personal reputational injury and corrective or mitigation costs; and that the Trust would provide no documents to that expert (Tr. 23:5–29:4.). Counsel offered to amend the Complaint by interlineation to remove any contrary implication. The

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Magistrate Judge, nevertheless, ruled on the operative Complaint and granted the motion to compel, reasoning that the existing references to all of President Trump's "brand, properties, and businesses" placed the full financial picture at issue (Tr. 129:2–130:8).

9.      The Court then turned to the BBC's party discovery and January 6 subpoenas, and found that "the scope of the discovery requests propounded by the BBC is overbroad," rejecting the BBC's attempt to conduct "a full relitigation of January 6" simply because the Documentary concerned January 6 (Tr. 130:14–132:19.). Although those findings addressed separate discovery, the same defect pervades the Trust subpoena. The BBC again takes a broad allegation—here, alleged harm to President Trump's "brand, properties, and businesses"—and treats it as a license to demand every category of financial record maintained by the Trust and approximately 400 entities. The subject is different, but the method is the same: substitute a general connection to the case for the tailoring that Rules 26 and 45 require.

10.     On July 27, 2026, the Court entered a written Order compelling the Trust to produce all responsive records from January 1, 2023, through the present, requiring a substantial initial production within ten days, and weekly productions thereafter (ECF 104). Plaintiff has since moved for leave to file a First Amended Complaint that replaces the express allegations of economic harm to his brand value, businesses, properties, and future financial prospects—the allegations on which the BBC principally relied to justify the subpoena. The proposed pleading instead identifies personal reputational harm as the compensatory injury and seeks punitive damages (Proposed First Am. Compl. ¶¶ 124–128, 141–142; Pl.'s Mot. for Leave, ECF 108). The proposed amendment thus eliminates the premise for compelling the sweeping Trust-wide production ordered here.

### STANDARD OF REVIEW

A magistrate judge's order on a non-dispositive pretrial matter is subject to review by the district judge, who "must … modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); S.D. Fla. Mag. J. R. 4(a); *Jordan v. Comm'r, Miss. Dep't of Corr.,* 947 F.3d 1322, 1327-28 (11th Cir. 2020). A factual finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. An order is contrary to law when it fails to apply or misapplies governing statutes, rules, or precedent. *See Crosby v. BASF Corp.,* 2024 WL 6954420, at *1-2

(S.D. Fla. Jan. 11, 2024); *Malibu Media, LLC v. Doe,* 923 F. Supp. 2d 1339, 1347 (M.D. Fla. 2013). Deference does not excuse the failure to ask whether the particular records ordered actually bear on the damages alleged and whether their likely value justifies the burden imposed on a non-party. Here, the Order erroneously moved directly from the Complaint's general references to President Trump's "brand, properties, and businesses," to compelling *every* category in the subpoena—without separately addressing the relevance and burden of Trust instruments, title records, governance agreements, personal-property appraisals, digital-asset histories, and complete tax files. *See Howard v. Hartford Life & Accident Insurance Co.,* 2012 WL 3069384, at *2, 4–5 (M.D. Fla. July 26, 2012) (sustaining Rule 72 objections where the ordered discovery had no bearing on the issue to be decided).

## ARGUMENT

**I.      The BBC's Financial Dragnet Is Untethered to the Claims and Defenses and Disproportionate to the Needs of the Case.**

Rule 26 permits discovery only when the particular material sought is relevant to a claim or defense and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). The party seeking to compel discovery bears the initial burden of showing that the material requested bears on an issue in the case. *Costa v. Metropolitan Life Insurance Co.*, 2018 WL 1635642, at *3 (M.D. Fla. Apr 5, 2018). Relevance alone is not enough. When the scope, importance, and likely benefit of a request are challenged, the requesting party must explain why the breadth of its demand is justified, while the responding party must substantiate any claimed burden or expense. *In re Zantac (Ranitidine) Products Liability Litigation*, 2020 WL 5585137, at *3 (S.D. Fla. Sept. 16, 2020). Rule 45 applies those same limits to non-party subpoenas, requires the issuing party to avoid burden and expense, and directs courts to quash or modify a subpoena that imposes an undue burden. Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv); *Jordan*, 947 F.3d at 1330, 1334–38. Such is the situation here.

The BBC failed to identify the precise document or the loss it expected to uncover before taking the discovery. The  BBC also made no meaningful effort to tailor the subpoena to categories of information reasonably capable of testing the damages alleged. Instead, the BBC wrongly relied on the amount demanded and the operative Complaint's references to President Trump's "brand, properties, and businesses" as some sort of justification for obtaining sweeping financial and

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

ownership records from the Trust and approximately 400 affiliated entities. Those allegations may, at best, identify a general subject for discovery, but they do not explain why the BBC needs Trust amendments, deeds and surveys, governance agreements, quarterly financial statements, personal property appraisals, digital asset transaction histories, and complete tax files. Such discovery would be highly improper.

The BBC still had to connect the categories that it demanded to the alleged injury and explain why their likely value justified the scope. It did neither. The BBC never explained how the subpoena's separate categories—including Trust instruments, deeds and surveys, ownership and governance agreements, quarterly financial statements, personal property appraisals, digital asset transaction histories, and complete tax files—bear on the injuries alleged. It never explained why narrower financial summaries would be inadequate, why quarterly records were needed for every entity, or why complete tax returns, attachments, and workpapers were necessary. Nor did it address the substantial overlap with financial discovery already served on President Trump, or whether the same information could be obtained from party discovery, public filings, or less burdensome sources.

The subpoena's individual requests expose the absence of the BBC's tailoring. The BBC demands *every* amendment to *every* covered Trust; *every* document concerning *every* asset and income stream; *every* deed, title policy, survey, appraisal, and closing statement; *every* operating agreement, shareholder agreement, buy-sell agreement, corporate resolution, and security instrument; *every* annual and quarterly financial statement for *every* listed entity; appraisals and insurance riders for vehicles, jewelry, art, antiques, and collectibles; complete digital wallet and cryptocurrency transaction histories; and *every* tax return, schedule, K-1, attachment, amendment, and workpaper. Yet, the BBC never explained how surveys, title policies, corporate resolutions, jewelry riders, or digital wallet histories would measure the injuries pleaded. The subpoena is broad not because an identified damages theory requires all those materials, but because the BBC, with ulterior, political, motive seeks to inspect the Trust's entire financial universe before deciding what evidence might be useful.

The amount of damages claimed does not cure that defect. Although the amount in controversy is one Rule 26 factor, it does not make every financial record of the Trust and approximately 400 entities fair game. A substantial damages demand may justify substantial discovery, but the BBC still had to explain why it needed the particular records demanded, and

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

why narrower records would not suffice. Fed. R. Civ. P. 26(b)(1). The BBC clearly did not do so. The possibility that some financial information may bear on damages does not justify demanding all financial information.

Courts routinely reject non-party subpoenas framed in this manner. In *State Farm Mutual Automobile Insurance Co. v. Physicians Injury Care Center, Inc.*, the court denied broad requests for payment and referral records, because they were not limited to the claims and transactions at issue, and would have permitted the requesting party to search a non-party's business records in the hope of finding useful evidence. 2008 WL 11338612, at *2–4 (M.D. Fla. July 29, 2008). The BBC's subpoena has the same defect on a far greater scale: it reaches financial, ownership, tax, and asset records across approximately 400 entities without identifying which entities, records, or transactions bear on the injuries alleged.

The Eleventh Circuit's decision in *Progressive EMU Inc. v. Nutrition & Fitness, Inc.* reinforces the point. There, the court affirmed the quashing of, and sanctions arising from, a third-party subpoena seeking "any and all" documents across numerous categories and a ten-year period. 785 F. App'x 622, 629–30 (11th Cir. 2019). The breadth and timing of the subpoena reflected the issuer's failure to comply with Rule 45's duty to avoid undue burden. *Id.* The BBC followed the same approach here: it demanded the full universe of Trust and affiliated-entity records without identifying the narrower categories that could actually test the damages alleged.

Other federal courts have rejected similarly unrestricted financial demands. The court in *Patel v. Snapp* quashed a subpoena seeking extensive bank and financial records because the possibility that relevant evidence might appear somewhere among them did not justify wholesale production. 2013 WL 5876435, at *9–10 (D. Kan. Oct. 31, 2013). *American Federation of Musicians v. Skodam Films, LLC* narrowed a 51-category subpoena seeking essentially every document concerning a non-party's business project to records directly bearing on the claims. 313 F.R.D. 39, 53–59 (N.D. Tex. 2015). *Ennis v. Alder Protection Holdings, LLC* quashed demands for years of complete account, transaction, loan, and credit records, and barred discovery into the finances of entities not involved in the action. 2022 WL 4290099, at *7–9 (D. Utah Sept. 16, 2022). And *Rule v. Braiman* limited discovery from a non-party LLC to records sufficient to show financial activity relating to the plaintiff, but excluding the LLC's independent financial affairs and tax returns. 2026 WL 1329612, at *5-6 (N.D.N.Y. May 13, 2026). Each decision applies the same basic rule: a party may obtain records bearing on the issues in dispute, but it may not use

9

litigation as an occasion to open every book and account of a non-party and its affiliated businesses.

The Order did not correct the subpoena's defects. It moved directly from the Complaint's references to President Trump's "brand, properties, and businesses" to wrongly compelling every category demanded, subject only to a shorter time period. It did not address why the BBC needed Trust amendments, property title records, governance agreements, personal property appraisals, digital asset histories, and complete tax files. It did not consider whether narrower records could answer any legitimate damages inquiry or whether the likely value of each category justified the burden imposed on a non-party. Rule 72 deference does not insulate an order that fails to apply those required limits. See *Howard*, 2012 WL 3069384, at *2, 4–5 (sustaining objections where the ordered discovery had no bearing on the issue to be decided).

Nor does the operative Complaint justify opening the books of every affiliated entity. President Trump is the plaintiff. The Trust and the approximately 400 entities listed in the subpoena are not. No claim seeks recovery for injuries sustained independently by those entities. *See Amoco Oil Co. v. Gomez*, 379 F.3d 1266, 1277 (11th Cir. 2004). The BBC was required to explain how the records of particular entities would prove or disprove President Trump's own alleged injuries. The BBC instead treated the existence of some relationship or connection with the Trust as sufficient to obtain every entity's financial records.

Developments since the hearing further undermine immediate enforcement. The proposed First Amended Complaint replaces the express allegations of economic harm to President Trump's brand value, businesses, properties, and future financial prospects—the language the BBC principally invoked to justify the subpoena and that the Court relied on—with identified personal reputational harm as the primary compensatory injury. The proposed amendment thus eliminates the stated premise for the sweeping Trust-wide production ordered here. At a minimum, the Court should resolve the pending motion for leave before requiring a non-party to undertake a burdensome production that the amended pleading would materially narrow or render unnecessary. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367–68 (11th Cir. 1997).

The Order should, therefore, be set aside. The BBC showed, at most, that some financial information might relate generally to the operative Complaint's damages allegations. It did not show that its sweeping demand for financial, ownership, tax, and asset records across approximately 400 entities is relevant and proportional to the needs of this case.

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

**II.      The Order Compelled the Trust's Tax Returns Without the Heightened Showing Tax Return Discovery Requires.**

Requests 2, 6, 7, and 12 seek the *complete tax files* of the Trust and the 400 affiliated entities, including federal and state income tax returns, fiduciary returns, Schedules K-1, schedules, attachments, amendments, and workpapers. Courts in this District have required a party seeking tax returns to establish both that the returns are relevant and that a compelling need exists because the information is not readily obtainable elsewhere. *Pendlebury v. Starbucks Coffee Co.*, 2005 WL 2105024, at *1–2 (S.D. Fla. Aug. 29, 2005). The Trust raised that standard in its written objections. The Order did not address it, find a compelling need for the returns, or explain why the information could not be obtained from other sources.

Nor do the authorities that the BBC cited in the Joint Motion support the sweeping production ordered here. *Maddow v. Procter & Gamble Co.* reviewed an order compelling the ADEA plaintiffs to produce their own tax returns—records bearing on the plaintiffs' earnings in an employment case—and held only that the district court did not abuse its discretion because the records were "arguably relevant." 107 F.3d 846, 853 (11th Cir. 1997). It did not involve a Rule 45 subpoena to a non-party, the tax records of affiliated businesses, or a demand for complete returns, schedules, attachments, amendments, and workpapers across hundreds of entities. *Erenstein v. SEC* is further removed. It arose from an NASD disciplinary investigation governed by a regulatory rule requiring registered members to provide information and permit inspection of their books and records. The request concerned Erenstein's own returns and a single, identified $10,000 payment; whether he reported that payment as income directly tested his claim that it was compensation he had earned rather than client funds entrusted to him for investment. 316 F. App'x 865, 867–70 (11th Cir. 2008). The court therefore addressed a specific record tied to a specific disputed transaction—not wholesale tax discovery in civil litigation. And *Jacobi v. Experian Information Solutions, Inc.* involved the plaintiff's own returns after he alleged and testified that credit denials caused financial hardship, reduced income, and difficulty paying his accounts. 2020 WL 13389310, at *2–3 (S.D. Fla. Dec. 23, 2020). Even with that direct connection, the court found the seven-year request in the subpoena to be overbroad, limited production to three years corresponding to the alleged misconduct, and recognized both the sensitivity of the records and the substantial justification for resisting the broader demand. *Id.* None of these cases authorizes complete tax files from a non-party trust and hundreds of affiliated entities without identifying the

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650⎸ Coral Gables, Florida 33134
Telephone: (305) 614-4071

entity, income stream, transaction, or alleged loss to which the records relate.

*Nancy's Home of the Stuffed Pizza, Inc. v. Freedman* is also deeply instructive because it addressed tax returns involving parties with multiple business interests and limited production to the particular business and intellectual property at issue. Applying the same "arguably relevant" standard that the BBC invokes, the court ordered production only of the portions of the returns and related financial records concerning Nancy's restaurant and the disputed marks, while excluding information about unrelated ventures. 2023 WL 4186417, at *2–3 (S.D. Fla. June 26, 2023). The operative Complaint may have supported some financial discovery concerning the alleged harm to President Trump's brand, properties, and businesses, but it did not make the complete tax files of the Trust and every affiliated entity discoverable. The BBC still had to explain why the returns of each entity, and every schedule, attachment, amendment, and workpaper, bore on the damages alleged and why narrower records would not suffice. It offered no such explanation and imposed none of the limitations approved in *Nancy's Home*, which confined tax discovery to the particular business interests in dispute rather than permitting complete returns for every affiliated venture.

The subpoena's tax return requests also fail even under ordinary relevance and proportionality principles. The BBC never explained why it needed complete tax files and workpapers rather than targeted schedules, annual summaries, or records concerning a particular entity or alleged loss. Nor did it show that the relevant information was unavailable elsewhere. The BBC has already relied on public OGE and SEC disclosures identifying entities and financial ranges, and it separately, improperly demanded President Trump's own tax returns and financial records through party discovery (See Pl.'s RFP Resp. No. 117). Rule 45 did not permit the BBC to duplicate those efforts through a non-party subpoena—much less to expand them to hundreds of separate entities—without explaining why the existing, less burdensome sources were inadequate.

The Court therefore need not choose between *Pendlebury*'s compelling-need standard, and the "arguably relevant" standard invoked by the BBC. The subpoena satisfies neither. It lacks the compelling need and unavailability findings required by *Pendlebury*, and it is far broader than the targeted tax-return discovery permitted under *Maddow*, *Erenstein*, *Jacobi*, and *Nancy's Home*. The portion of the Order compelling production under Requests 2, 6, 7, and 12 should be set aside.

**III.     The Order Compelled Sweeping Non-Party Discovery Without the Balance *Jordan* Requires.**

Under *Jordan*, relevance alone does not make a non-party subpoena enforceable. The Court must weigh the requesting party's need for the records against the subpoena's breadth, the work and expense of compliance, and the recipient's non-party status. 947 F.3d at 1334–38. The Order did not undertake that comparison. It relied on the Complaint's general references to President Trump's "brand, properties, and businesses," and wrongly compelled every category demanded, subject only to a shorter time period.

The BBC tried to justify the subpoena by vaguely asserting a need for President Trump's "overall economic picture." On that basis, it demanded years of ownership records, deeds and title documents, tax returns and workpapers, accounting and licensing records, personal-property appraisals, and digital-asset histories involving the Trust and approximately 400 affiliated entities. The Order, in error, left every substantive category intact, required a substantial production within ten days, and ordered weekly productions thereafter. The Order, however, did not explain why each category was important to the BBC's defense, why that need justified requiring a non-party to collect, review, and produce records across hundreds of entities, and, importantly, it did not answer the question that *Jordan* required the Court to decide: whether the BBC's need for the records justified the burden of producing them. The BBC still had to establish why it needed Trust instruments, title records, governance agreements, personal-property appraisals, digital-asset histories, and complete tax files across all of the listed entities. The Court then had to weigh that need against the subpoena's scope and the Trust's non-party status. *Jordan*, 947 F.3d at 1334–38. Moving directly from the Complaint's general damages allegations to compelling every category demanded did not satisfy that analysis, in fact, it failed the analysis completely.

The Protective Order does not cure the omission. It governs how documents may be used after production; it does not reduce the work required to identify custodians, locate records maintained by hundreds of entities, review them for responsiveness and privilege, protect third-party commercial information, and prepare continuing productions. Those burdens arise before any document receives confidential treatment, and therefore had to be considered before production was ordered.

Rule 45 also provides that an order compelling production over a non-party's objections "must protect" the non-party from significant expense resulting from compliance. Fed. R. Civ. P.

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

45(d)(2)(B)(ii). The Order neither addressed the expense of the production nor provided any protection against it. *State Farm* confirms the error: the court rejected broad financial discovery from a non-party where the requests were not confined to the transactions at issue and responsive information could be pursued from the parties. 2008 WL 11338612, at *2–4. The BBC's general interest in President Trump's financial condition did not justify compelling years of records across approximately 400 entities without the balancing and expense protections Rule 45 requires.

**IV.     The Trust Subpoena Was Designed to Burden, Not to Fill an Evidentiary Gap.**

Rules 26 and 45 prohibit discovery designed to harass, needlessly increase litigation costs, or impose avoidable burdens on a non-party. Fed. R. Civ. P. 26(g)(1)(B)(ii)–(iii), 45(d)(1). The Trust subpoena was not an isolated request for evidence unavailable elsewhere. It was part of a wave of forty-seven non-party subpoenas, many served at the same time, while extensive discovery directed to President Trump remained pending.

On March 5, 2026, the BBC demanded from President Trump his tax returns, income, holdings, brand value, assets, liabilities, claimed losses, licensing agreements, royalty revenues, and affiliated-entity records (RFPs 68–76, 117–124). Twenty-five days later—before those responses were due—the BBC served the Trust with broader demands for corresponding records from the Trust and approximately 400 affiliated entities. It also subpoenaed President Trump's family members, political associates, former officials, and federal agencies. The BBC thus improperly imposed simultaneous demands reaching President Trump's personal, political, and financial affairs before the party discovery had produced a single response.

The BBC also possessed public OGE and SEC filings, which identified affiliated entities, and disclosed ranges of assets and income. Those filings gave the BBC the information needed to identify particular entities and formulate requests tied to a defined damages issue. Instead, the BBC used them as a directory for wrongly demanding every category of financial and ownership record from the Trust and hundreds of entities. Because President Trump's responses were not yet due, the BBC could not know what party discovery would provide, or what relevant information would remain unavailable. The BBC expanded the discovery first and left necessity and tailoring for later, if at all. That was wrong.

*State Farm* confirms why that sequence matters. The court rejected broad non-party requests where responsive information had been or could be obtained from the parties and the

requests were not confined to the transactions at issue. 2008 WL 11338612, at *3–4. Here, the BBC sought substantially overlapping financial information from President Trump and the Trust, broadened the non-party demand to approximately 400 entities, and acted before President Trump's response deadline. That timing and breadth cannot be reconciled with Rules 26 and 45's requirements that discovery be proportional, and that the issuing party take reasonable steps to avoid unnecessary non-party burdens.

Viewed together, the timing, duplication, and cumulative scope support the conclusion that the Trust subpoena was calculated to increase the cost, disruption, and pressure of the litigation, rather than fill a demonstrated evidentiary gap. The BBC burdened President Trump, the Trust, his family, his political associates, and others connected to him before determining what evidence was actually missing. That conduct bears the hallmarks of the harassment and needless expense prohibited by Rule 26(g), and disregards Rule 45(d)(1)'s duty to avoid undue burden and expense.

## V.       The Temporal Scope Is Independently Overbroad.

The Order shortened the original 2019 start date, but still requires production from January 1, 2023, through the present, wrongly reasoning that the period would capture Plaintiff's financial position immediately before and after the October 28, 2024, publication. The selected period does not accomplish that purpose. It begins twenty-two months before publication and has no fixed end date. Because the Order requires continuing weekly productions, the post-publication period will continue to expand. The result is neither immediate nor symmetrical comparison. It instead sweeps in years of intervening market conditions, political events, transactions, and business developments that cannot rationally be attributed to the Documentary.

The open-ended period also compounds the subpoena's other defects. Every new quarter, tax filing, valuation, transaction, and digital asset statement creates another production obligation across hundreds of entities, regardless of whether the information bears any identified connection to the publication. The subpoena should be quashed. Shortening the date range cannot cure requests that remain untethered to any identified entity, category, or alleged loss. Any proper production would require both a fixed period closely bracketing October 28, 2024, and corresponding substantive limits—neither of which the Order imposed.

## VI.      Enforcement Should Be Stayed Pending Review.

Because the Order requires an initial production within ten days and weekly productions thereafter, the Trust has concurrently filed a separate Emergency Motion to Stay Enforcement

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

before the Magistrate Judge, which the Trust incorporates by reference. As that motion explains, each traditional stay factor favors relief: these Objections raise substantial questions going to the propriety of the ordered discovery; compelled disclosure of a non-party's confidential financial records cannot be undone, and would render Rule 72(a) review meaningless; a brief stay cause no cognizable prejudice to the BBC, which has ample time in the discovery period and alternative access to the same information; and the public interest favors preserving the integrity of the review process. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019); *Maness v. Meyers*, 419 U.S. 449, 460 (1975). If the Magistrate Judge denies the stay or does not rule before production begins, the Trust respectfully requests that this Court stay enforcement, or enter an administrative stay, until fourteen days after it resolves these Objections and Plaintiff's motion for leave to amend, and the final completion of any and all appeals.

## CONCLUSION

For these reasons, the Trust respectfully requests that the Court sustain the Objections, set aside the Order, and quash the subpoena. The BBC has not tied its sweeping demands to any identified entity, transaction, record, or loss caused by the Documentary, yet wrongly seeks years of confidential financial records from the Trust and approximately 400 affiliated entities. Alternatively, the Court should require request-by-request and entity-specific tailoring, exclude unrelated financial materials, impose a fixed and narrow time period, and protect the Trust from significant expense. Enforcement should be stayed pending resolution, including any and all appeals, of these Objections and Plaintiff's motion for leave to amend. The Trust requests all further relief the Court deems just and proper.

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Dated: August 5, 2026

Respectfully submitted,

**BRITO, PLLC**
2121 Ponce de Leon Blvd.
Suite 650
Coral Gables, FL 33134
Tel:  305-614-4071
Fax:  305-440-4385

*/s/Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
abrito@britopllc.com
apiriou@britopllc.com
Michael O. Mena
Florida Bar No. 010664
mmena@britopllc.com
Jalaine Garcia
Florida Bar No. 58632
jgarcia@britopllc.com
Ian Michael Corp
Florida Bar No. 1010943
icorp@britopllc.com

Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice admitted*)

*Counsel to Plaintiff,*
*President Donald J. Trump, and*
*Non-Party, The Donald J. Trump*
*Revocable Trust*

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

## <u>CERTIFICATE OF SERVICE</u>

       **I HEREBY CERTIFY** that on August 5, 2026 the foregoing was served via the Court's

CM/ECF System upon:

Charles D. Tobin, Esq.
Ballard Spahr, LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tobinc@ballardspahr.com

*Counsel for Defendant British Broadcasting*
*Corporation*

                                                       */s/Alejandro Brito*

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071