UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-25894-RKA-EAL |
| ) | |
| BRITISH BROADCASTING CORP., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO
NON-PARTY THE DONALD J. TRUMP REVOCABLE TRUST'S
EMERGENCY MOTION TO STAY ENFORCEMENT OF
THE JULY 27, 2026 ORDER PENDING REVIEW**

Defendant the British Broadcasting Corporation ("the BBC"), by and through counsel, respectfully submits this Memorandum of Law in opposition to the emergency motion ("Mot.") (ECF 112) filed by The Donald J. Trump Revocable Trust ("the Trump Trust") to stay enforcement of this Court's Order Following Discovery Hearing on Joint Motion for Discovery Hearing Related to Defendants' Subpoena to Produce Financial Records to Non-Party The Donald J. Trump Revocable Trust (ECF 104) (the "July 27 Order") pending resolution of the Trump Trust's objections (ECF 111) and Plaintiff President Donald J. Trump's motion for leave to amend (ECF 108).[1]

**INTRODUCTION**

The Trump Trust's emergency motion is a transparent effort to evade this Court's clear and direct order and to continue to avoid the discovery obligations that Plaintiff took on when he chose to file this lawsuit. In fact, this is just the latest in Plaintiff's months-long refusal to provide documents,

---

[1] The BBC also intends to file a response to the Trump Trust's objections.

sworn answers to interrogatories, deposition dates—any meaningful information to support his pursuit of $10 billion from the BBC for a documentary the BBC never aired in the United States.

On July 27, 2026, following a lengthy July 21 hearing at which this Court announced its ruling, the Court entered its written Order granting the BBC's Motion to Compel Production of the Trump Trust's documents responsive to the BBC's subpoena from January 1, 2023 to the present. *See* July 21, 2026 Hr'g Tr. at 129:2-25, 130:1-8 (ECF 102); July 27 Order at 5-9.  The Court should reject Plaintiff's eleventh-hour effort—filed more than two weeks after the Order, and on the eve of the Court-ordered deadline for disclosure—and deny the emergency motion.

Indeed, the Trump Trust's motion is only an "emergency" insofar as the Trump Trust has waited until the day before its required production to seek relief, despite the weeks that have passed since the oral and written orders.  Moreover, a stay of its discovery obligations is not warranted here under the governing standards.  The Trump Trust faces no irreparable harm and is unlikely to succeed on the merits of its objections.  Conversely, granting the stay would prejudice the BBC and would not serve the public interest, which necessitates an efficient, meaningful discovery process and wards against such strategic stalling tactics.

For these reasons, and those discussed below, the Trump Trust's motion should be denied.

## **ARGUMENT**

### I.  **THE TRUMP TRUST'S REQUEST FOR A STAY IS NOT AN EMERGENCY.**

As a threshold matter, the Trump Trust's motion for a stay is hardly an emergency.  As the Trump Trust frames the issue, its motion is an emergency because "[o]nce the Trust were to begin handing those records over to the BBC, that disclosure could not be undone, and the Trust's pending objections could not restore what the BBC will have already seen."  Mot. at 2.  But "bona fide emergencies involve the health and safety of individuals, the impending departure of a witness with no plans to return to the jurisdiction, the imminent destruction of a building or

1

other property, the imminent deportation of an individual to another country, the need to give critical medical treatment to a patient in a hospital, the threatened loss of civil rights, the immediate, threatened loss of an entire business, or when someone is at risk of being denied an essential service." *Companhia Energetica Potiguar v. Caterpillar Inc.*, 2016 WL 7469993, at *3 (S.D. Fla. Apr. 13, 2016) (Goodman, M.J.) (denying emergency motion to stay enforcement of Magistrate Judge's discovery order).  By contrast, a deadline arriving after two weeks' notice to produce non-privileged documents—which may be designated "Confidential" or "Attorneys' Eyes Only" under the Court's Protective Order—does not justify the rare invocation of the Court's emergency procedures.

It is not even clear from the Trump Trust's briefing what the purported emergency is here.  *See id.* ("But the mere fact that [the movant] did not obtain all the relief it wanted hardly means that this situation is an *emergency*.") (emphasis in original).  Simply because the Trump Trust faces an obligation it does not agree with, and is confronted with an imminent deadline of its own making by waiting to file its stay motion until the day before its first Court-ordered disclosure day, does not make its request an emergency.  *See Privitera v. Amber Hill Farm, LLC*, 2012 WL 1900559, at *2 (M.D. Fla. May 24, 2012) (criticizing emergency motion for a protective order as not based on a true emergency and explaining that "[i]t is fundamentally wrong to characterize a matter as an emergency when it obviously is not an emergency").  Obviously, Plaintiff is free to dismiss this lawsuit if the Court's enforcement of the discovery process is unpalatable to him.[2]  But the Trump Trust's characterization of its motion as an

---

[2] While the Trump Trust, a non-party to this litigation, is an entity separate from Plaintiff, the legal fiction of the distinction between the two in this instance is muddied, where Plaintiff is the sole beneficiary of his Trust, where Plaintiff and the Trump Trust share counsel, and where Plaintiff and the Trump Trust are acting in concert in this litigation to prevent the disclosure of Plaintiff's financial documents, as ordered by this Court.  *See generally* July 27 Order; *see also*

"emergency," under circumstances of its own creation, can and should be ignored.[3]

**II.     THE TRUMP TRUST CANNOT CARRY ITS BURDEN TO ESTABLISH THAT A STAY IS WARRANTED.**

To obtain a stay of a Magistrate Judge's Discovery Order while filing objections to the District Court, the Trump Trust must show: "(1) likelihood of success on the merits of the appeal/objection, (2) irreparable injury to [the Trump Trust] absent a stay, (3) lack of substantial prejudice to [the BBC], and (4) the stay would serve the public interest." *Companhia Energetica Potiguar*, 2016 WL 7469993, at *4 (quoting *Ameritox, Ltd. v. Millennium Labs, Inc.*, 2015 WL 1169403, at *2 (M.D. Fla. Mar. 13, 2015) (denying motion to stay Magistrate Judge's order awarding costs pending a resolution of the appeal)).  Decisions in this District have made clear that these requirements "are difficult hurdles to clear, and federal courts often deny motions to stay a magistrate judge's discovery orders." *Id.* (citing *United States v. Certain Real Prop.*, 444 F. Supp. 2d 1265, 1266 (S.D. Fla. 2006) (rejecting appeal and a stay request concerning Magistrate Judge's order compelling claimant to provide tax records for the previous six years)); *see also Manno v. Healthcare Revenue Recovery Grp.*, 2012 WL 4192987, at *1 n.1 (S.D. Fla. Sept. 18, 2012); *In re MTS Bank*, 2018 WL 3145806, at *2 (S.D. Fla. June 27, 2018).  The Trump Trust cannot make any of these required showings.

    **A.     The Trump Trust Faces No Irreparable Injury.**

---

Mot. at 8 (the Trump Trust referring to itself as "Plaintiffs" when discussing potential compliance expenses).

[3] Indeed, the Trump Trust's laundry list of compliance efforts it must "immediately" meet underscores how it has created its own emergency.  See Mot. at 5.  The Trump Trust has had weeks of notice of its discovery obligations, and implicitly acknowledged in its filing that it has not taken a single step towards compliance during that time, relying instead on a last ditch effort to prevent enforcement.

Not only is the instant motion before the Court a non-emergency, but also the Trump Trust fails to articulate any irreparable harm that would occur absent a stay. "Simply showing some possibility of irreparable injury . . . fails to satisfy" this factor. *Robinson v. Att'y Gen.*, 957 F.3d 1171, 1177 (11th Cir. 2020). Rather, the movant must show that the harm "'must be neither remote nor speculative, but actual and imminent,' and it must be genuinely irreparable." *Vasallo TV Grp., LLC v. America-CV Station Grp., Inc.*, 2025 WL 856954, at *2 (S.D. Fla. Mar. 19, 2025).

The Trump Trust cannot meet this standard. The Trump Trust claims harms in the form of the BBC "having seen information it was likely never entitled to demand" in an effort to "wrongly exploit this litigation for its own political benefit"[4] and of production costs. Mot. at 5. But there is no irreparable harm to the BBC viewing documents that this Court has ruled it is entitled to, based on Plaintiff's allegations in his Complaint, merely because the Trump Trust disagrees with the outcome. If that were the case, Magistrate Judge discovery orders would be automatically stayed upon the filing of objections—and that is decidedly not the standard in this District, and such stay requests are often denied. *See Rance v. Jenn*, 2007 WL 9701591, at *2 (S.D. Fla. July 19, 2007) ("Filing an objection to a discovery order does not operate as a stay of the Order"); *Companhia Energetica Potiguar*, 2016 WL 7469993, at *4. And courts in the Eleventh Circuit have rejected the notion that the "time and cost associated with compliance" of producing documents alone constitutes irreparable injury. *Delta Air Lines, Inc. v. Marriott Int'l, Inc.*, 2021 WL 5033481, at **3-4 (N.D. Ga. July 20, 2021) (also noting that claims of irreparable

---

[4] While the Trump Trust repeatedly throws unwarranted jabs at the BBC for its purported "political motivations" in pursuing its subpoena, the BBC maintains that its request is part of its ability to mount a defense against Plaintiff's allegations. It is Plaintiff who has brought the BBC into court and has defined the contours of this lawsuit. Additionally, the BBC notes that the Trump Trust's accusations are simply name-calling supported by zero evidence.

4

injury are "undercut" where the movant waited two weeks to request a stay of the order).

And contrary to the Trump Trust's claims, no irreparable harm would flow from requiring the disclosure of non-privileged documents that would be subject to the Protective Order in this case. *See* Protective Order at 1-2 (ECF 51) ("This Protective Order shall be applicable to and govern all . . . discovery taken pursuant to the Federal Rules of Procedure, as well as other information hereafter furnished, directly or indirectly, by or on behalf of any party or non-party in connection with this action."). No likely, actual, and imminent risk of irreparable injury exists in such circumstances. *See Chamber of Com. v. Legal Aid Soc'y of Alameda Cnty.*, 423 U.S. 1309, 1312 (1975) ("Applicant will not suffer irreparable injury from disclosure of the documents because the District Court has entered a protective order permitting only attorneys for the Legal Aid Society to examine the assertedly privileged documents."); *see also Trump v. United States*, 2022 WL 4366684, at *8 (11th Cir. Sept. 21, 2022) (declining to find irreparable injury to same plaintiff from government's retention of documents, where plaintiff argued that he could be harmed by the disclosure of sensitive information, finding that the retention of documents did not mean the documents would be released, and expressing doubt of any irreparable injury from the disclosure of privileged information where plaintiff had not asserted any privilege of the documents).

The Trump Trust offers no reason to doubt that the BBC would adhere to its obligations under the Protective Order, and there is no basis for any doubt. After all, the BBC has designated certain documents as "Confidential" or "Attorneys' Eyes Only" in its own disclosure, to date, of 88,855 pages of documents,[5] and it has cast no doubt that Plaintiff and his counsel

---

[5] To date, President Trump's production remains the same as it was at the July 21 discovery hearing. He has not produced a single document since his sole, July 14, production of just 735 pages, most of which were downloaded from the internet during the month of July 2026.

will likewise obey the Protective Order. Additionally, both parties have relied on the Protective Order's parameters, making motions to seal, where appropriate, to protect the confidentiality of disclosed material designated as such under the Protective Order. *See, e.g.*, ECF 67, ECF 75, ECF 83, ECF 106.

### B. The Trump Trust Is Unlikely to Succeed on the Merits.

The Trump Trust claims that it need not demonstrate likelihood of success on the merits, one of the "most critical factors" when analyzing a motion for a stay, instead arguing that it only need to present a substantial case on the merits. Mot. at 6. But the case that the Trump Trust cites, evaluating a stay motion outside of the Rule 72 context, makes clear that this lesser showing may be sufficient only when the other three factors weigh heavily in favor of granting the stay. *See Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). For the reasons above and below, that condition is not met in this case.

Regardless, the Trump Trust fails to meet either bar. In its motion, the Trump Trust argues that the subpoena is untethered and disproportionate, that the tax documents were improper, and that the Order does not balance considerations of "protection to Plaintiffs [sic]." Mot. at 7-8. Additionally, the Trump Trust argues that a stay is warranted because Plaintiff's motion to amend puts the relevance of the Trump Trust documents back in question. *Id.* at 8. Under any of these theories, the Trump Trust cannot demonstrate a substantial case, or any likelihood of success.

### 1. The Trump Trust's Objections to the July 27 Order Neither Present a Substantial Case on the Merits Nor Are Likely to Succeed.

Under the deference that District Judges afford to Magistrate Judges' discovery orders, the Trump Trust cannot establish that it has a substantial case or that it is likely to succeed on its objections to the July 27 Order. "[B]y statute and rule," the District Court will reverse the

Magistrate Judge's non-dispositive order "only if it is 'clearly erroneous or contrary to law." *SEC v. Merkin*, 283 F.R.D. 699, 700 (S.D. Fla. 2012) (quoting 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)).  Under this standard, District Judges give "broad discretion" to Magistrate Judges on discovery issues. *Companhia Energetica Potiguar*, 2016 WL 7469993, at *4; *see also Manno v. Healthcare Revenue Recovery Grp., LLC*, 2012 WL 4192987, at *2 (S.D. Fla. Sept. 18, 2012) (noting that a District Court's "highly deferential standard of review" for a Magistrate Judge's non-dispositive order has been described as "a very difficult one to meet" (cleaned up)).

An order is "clearly erroneous" only when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," *Anderson v. City of Bessemer City North Carolina*, 470 U.S. 564, 573 (1985) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)), and is "contrary to law" if "it fails to apply or misapplies relevant statutes, case law or rules of procedure," *TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 929 F. Supp. 2d. 1255, 1259-60 (M.D. Fla. 2013) (quoting *SEC v. Kramer,* 778 F. Supp. 2d 1320, 1326-27 (M.D. Fla. 2011)). Furthermore, when a District Court reviews a Magistrate Judge's decision on a motion to compel, it "applies an abuse of discretion standard."  *Palmer v. Johnson*, 2011 WL 161805, at *1-2 (M.D. Fla. Jan. 19, 2011) (citing *Holloman v. Mail-Well Corp.,* 443 F.3d 832, 837 (11th Cir. 2006)).  Under that standard, an abuse of discretion is present only if the Magistrate Judge "applies an incorrect legal standard, follows improper procedures in making the determination, makes findings of fact that are clearly erroneous, misconstrues its proper role, ignores or misunderstands the relevant evidence, bases its decisions upon considerations having little factual support, or makes a clear error of judgment."  *Id.* (citing *Morgan v. Family Dollar Stores,*

7

*Inc.,* 551 F.3d 1233, 1260 (11th Cir. 2008)).  Absent those situations, the Magistrate Judge "should not be second-guessed." *Id.*

Courts in this District have upheld Magistrate Judges' discovery orders where, as here, the Magistrate Judge has supported their conclusions by the record in the case and the relevant case law.  *See, e.g.*, *Certain Real Prop.*, 444 F. Supp. 2d at 1266; *Rance*, 2007 WL 9701591, at *1.  In this case, the Magistrate Judge's Order conforms to both the record and the law.  The Magistrate Judge correctly found the operative Complaint asserts a "broad array of damages" including to Plaintiff's "brand, properties, and businesses," and therefore "the information the Trust possesses is relevant and material to any damages analysis Defendant may elect to conduct."  July 27 Order at 7-8.  In making this finding, the Magistrate Judge carefully considered the Trump Trust's and the BBC's arguments during the July 21 Discovery Hearing, and the finding that the requested Trust records were not improper was rooted in, and accords with, the Federal Rules of Civil Procedure.  *See id.* (citing Fed. R. Civ. P. 26 and Plaintiff's Complaint as grounds for the decision). This finding fully supports, under decisions from this District and elsewhere, the order compelling the Trump Trust to produce records.  *See Fla. State Conf. of Branches & Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1306 (S.D. Fla. 2021) (granting motion to compel non-parties where evidence "may bear" on Plaintiffs' claims); *Mazur v. Lampert*, 2006 WL 8431627, at **2-3 (S.D. Fla. May 23, 2006) (rejecting argument that a non-party "subpoena requests information far beyond the scope of, and not relevant to, Plaintiff's claims as alleged in the complaint, both in terms of the subject of the documents sought and the time period from which such documents are derived" where "Plaintiff's claims are broader than Defendants admit," "the definition of 'relevant information' for purposes of discovery is broad," and where "[c]ourts construe discovery rules liberally to serve the purposes of discovery:

providing parties with information essential to the proper litigation of all relevant facts, eliminating surprise, and promoting settlement"); *Briggs v. City of Daytona Beach*, 2025 WL 305840, at *2 (M.D. Fla. Jan. 27, 2025) (tax returns discoverable where finances are at issue).

The Trump Trust, in objecting to the July 27 Order, makes the same arguments that it did in the Joint Motion, and at the July 21 Discovery Hearing. *See* Joint Mot. for Discovery Hr'g at 4-5 (ECF 52) (Trump Trust arguing that the subpoena was untethered, burdensome, and disproportionate and objecting to the disclosure of tax documents); July 21, 2026 Hr'g Tr. at 29:7-25, 30:1-15. But this is woefully insufficient to overcome the high review standard here, as mere disagreement cannot suffice as grounds to overrule Magistrate Judge Lett's order and findings. *See Rance*, 2007 WL 9701591, at *1 ("Plaintiff fails to assert any new arguments of fact or law which would justify overruling the Magistrate's Order to Compel. Rather, Plaintiff simply reasserts the same arguments he made to the Magistrate Judge.").

**2.      Even if Plaintiff Were Permitted to Amend His Compliant, the Trump Trust Is Unlikely to Succeed on the Merits.**

The Trump Trust also notes that late on August 4, 2026, Plaintiff filed a motion seeking leave to amend his Complaint, which, the Trump Trust erroneously argues, would remove the Trump Trust's records from relevance because the Amended Complaint would not allege specific financial damages. This theory fails to support a stay for three reasons.

**First**, until the District Court rules on Plaintiff's motion for leave to amend, the original Complaint remains the operative pleading, and its allegations control. *See* July 27 Order at 8; Hr'g Tr. at 133:22-25, 134:1-3. Accordingly, Plaintiff's pending motion for leave to amend, which the BBC opposes, does not change the Trump Trust's obligations under the current Complaint and the July 27 Order, nor does it render the July 27 Order erroneous in any way. The Trump Trust thus cannot halt the discovery process at this improper juncture, where the

9

Magistrate Judge has not made a reversible error and Plaintiff's motion to amend has not been granted.[6]

**Second**, even if Plaintiff's Complaint were amended to claim only reputational harm, the Magistrate Judge's order for the Trump Trust to produce documents would still be appropriate because Plaintiff's financial information would remain relevant to his allegations that the BBC injured his reputation and that he suffered "overwhelming reputational harm." Proposed Am. Compl. ("PAC") ¶ 131 (ECF 108-1).  For example, where a defamation plaintiff alleges that he has suffered reputational harm as a result of a publication, financial records—indicating that individuals stopped, continued, or began doing business with plaintiff—would all be probative in testing Plaintiff's claims.  Even if Plaintiff's allegations morph from specific allegations against his "brand, properties, and businesses," Compl. ¶ 101 (ECF 1), into a general claim of reputational harm, information about the former still is highly relevant to a determination of the latter.  *See Edmondson v. Caliente Resorts, LLC*, 2016 WL 7206111, at **2-3 (M.D. Fla. June 9, 2016) (plaintiffs' allegations of harm to professional reputation in defamation case allowed defendant a broad radius of discovery, including into "how the alleged actions by Defendants have affected them economically").

**Third**, as the BBC noted at the July 21 Discovery Hearing, the specific circumstances surrounding this particular Plaintiff mean that the Trump Trust's *financial* records are critically

---

[6] Additionally, the Trump Trust's citation to *Chudasama v. Mazda Motor Corporation*, 123 F.3d 1353 (11th Cir. 1997), to advocate for a stay in discovery while threshold questions could moot such discovery is jarring when the Trump Trust's counsel opposed the BBC on this very point, as Plaintiff's counsel, after the BBC moved to stay, or alternatively sequence, discovery pending the resolution of the motion to dismiss.  *See* Pl.'s Opp. to Mot. to Stay Discovery  at 16 (ECF 24) (Plaintiff arguing that "in a case involving reputational harm and time-sensitive proof, delay is itself prejudicial: evidence becomes harder to collect, witnesses' recollections fade, and relevant data and records become more difficult to preserve and retrieve").

relevant to assessing *reputational* harm.  Plaintiff "ran for President of the United States on the platform of The Art of the Deal . . . and he points to his businesses as a measure of his reputational success."  July 21, 2026 Hr'g Tr. at 36:2-5.  As "[y]ou cannot separate the man and his reputation from his operation of his businesses," *id.* at 36: 5-7, and the Trump Trust owns multiple brands in Plaintiff's name, the President's financial interests as reflected in the Trump Trust's records are highly probative for purposes of the allegations of reputational harm in the amended Complaint.  *See also Edmonson*, 2016 WL 7206111, at **1-2 ("[T]here is no bright-line demarcation between an individual's reputation and their professional reputation, especially when a plaintiff's personal and professional lives are inextricably intertwined.").  The Trump Trust's records therefore would still have been correctly compelled even under the proposed Amended Complaint.[7]

### C.  Permitting the Stay Would Substantially Prejudice the BBC.

The Trump Trust's delay in filing its motion does not render its request an emergency, but it does prejudice the BBC.  The BBC served its subpoena on the Trump Trust in March 2026, requesting responsive documents months in advance of the relevant deadlines set in this matter's Scheduling Order (ECF 27).  By filing this stay motion less than a month before the September 2 deadline under the Scheduling Order for affirmative expert witness reports, two months before any rebuttal expert witness reports would be due, and just shy of three months before the close of discovery, the Trump Trust seeks to further stall the BBC's ability to receive any meaningful

---

[7] Additionally, as discussed below, *infra* Section II.D, Plaintiff's proposed abandonment of his financial damages claims, while maintaining the very same $10 billion damages amount for reputational harm, further belies the fiction that his financial and reputational harms are distinct. Plaintiff's proposed amendment necessarily suggests that financial and reputation loss are one and the same when it comes to Plaintiff, lest he suggest that he suffered no financial loss and has abandoned a claim that he accepts was baseless.

discovery in this case before the close of multiple discovery deadlines.  Further delay in receiving these relevant documents, where the BBC has received *no* non-public, responsive documents from Plaintiff or the Trump Trust to date, greatly prejudices the BBC's ability to defend itself in this litigation.  Bafflingly, the Trump Trust complains of "overlapping financial requests to President Trump" and argues that the BBC will not suffer material prejudice because "a party can obtain the same information through pending party discovery."  Mot. at 6, 8.  However, as Plaintiff and the Trump Trust share counsel, both are aware that no such discovery has been provided by either, and that Plaintiff continues to object to such discovery.  *See* Defs.' Mot. for Discovery Hr'g Ex. B (ECF 57-2), Pl.'s Resp. to Mot. for Discovery Hr'g (ECF 86).  This motion should therefore also be denied because of the significant prejudice that BBC would suffer as a result of a stay.

### D.       Any Stay Would Be Contrary to the Public Interest.

Courts in the Eleventh Circuit have recognized the important reasons why objections to a Magistrate Judge's discovery order do not automatically stay those orders.  Those reasons are even more heightened in this particular case.  Plaintiff, his Trust, and their counsel have obstructed any meaningful document production against the interests of judicial economy and efficient and cooperative discovery.

In explaining why filing objections to a Magistrate Judge's discovery order does not automatically stay the order, courts in the Eleventh Circuit have noted that "allowing the automatic stay of [a] magistrate [judge]'s orders would not only encourage the filing of frivolous appeals, but would grind the magistrate [judge] system to [a] halt." *Rance*, 2007 WL 9701591, at *2 (quoting *Litton Indus., Inc. v. Lehman Brothers Kuhn Loeb Inc.*, 124 F.R.D. 75, 79 (S.D.N.Y. 1989)); *TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 929 F. Supp. 2d 1255, 1260 (M.D. Fla. 2013) ("all orders and judgments of court must be complied with promptly.  If a person to

12

whom a court directs an order believes that order is incorrect the remedy is to appeal, but absent a stay, to comply promptly with the order pending appeal." (citing *Maness v. Meyers*, 419 U.S. 449, 458 (1975)).  This concern against strategic objections miring an efficient discovery process is shared nationwide.  *See, e.g.*, *Nat'l Excess Ins. Co. v. Civerolo, Hansen & Wolf, P.A.*, 139 F.R.D. 401, 404 (D.N.M. 1991) ("Discovery matters have been delegated to the magistrate judges in order to promote judicial efficiency and speedy resolution of pre-trial disputes . . . . Ill-considered 'strategic' objections to a magistrate judge's orders threatens to undermine these goal."); *Esparza v. Bridgestone/Firestone, Inc.*, 200 F.R.D. 654, 657 (D. Colo. 2001) ("Otherwise . . . parties could use the objection process simply as a device to further delay discovery and to derail the preparation of a case for trial, regardless of the merits of the objection.  Such misuse of the objection process would further burden district judges and, in this time of congested dockets, enormously delay bringing cases to trial.").

From the protracted seven-week delay in obtaining any feedback on a draft protective order in this matter from February to April of this year, to today, Plaintiff has embodied the concerns identified above.  The BBC has most recently made its tenth document production on July 23, 2026, its productions totaling 88,855 pages.  Plaintiff, despite repeated assurances to begin making regular productions, has still made only a single production, on July 14, of 735 pages, consisting mostly of publicly accessible news reports and social media that metadata indicates were downloaded from the internet that same month.

Additionally, counsel for Plaintiff and his Trust ignored the BBC's requests to meet and confer following the July 21, 2026 discovery hearing, despite clear instructions from Magistrate Judge Lett to "immediately" meet and confer on existing discovery disputes.  July 21, 2026 Hr'g Tr. at 131:21-23.  Specifically:

13

- Plaintiff's counsel has delayed or altogether ignored repeated meet-and-confer requests from BBC counsel, and Plaintiff would not provide a date for his deposition until the BBC asked five times over a three-week period.

- When Plaintiff's counsel finally agreed to a meet-and-confer discussion on July 29, 8 days after the Court ordered the parties to begin discussions "immediately," Plaintiff's counsel refused, as the Court further ordered, to inform the BBC's counsel "which discovery requests will be responded to," July 21, 2026 Hr'g Tr. at 131:21-23. As of today, Plaintiff's counsel still has not told the BBC that Plaintiff will answer *any* of the disputed requests.

- Plaintiff's counsel also informed the BBC's counsel that they would not provide the long-overdue verification of Plaintiff's interrogatory responses[8] until the Court issues a written order, and even then, Plaintiff's counsel insists that Plaintiff need not swear to the responses that he already has served.

- Plaintiff's counsel also has declined to specify when the BBC could expect to receive a production of documents from the Trump Trust. And again, Plaintiff himself has made no further productions since his fig leaf of a July 14 production of fewer than 1,000 pages of documents downloaded from the internet.

Put together, an overall picture becomes increasingly clear of Plaintiff's enduring effort to resist producing anything of substance despite his discovery obligations. This has included the delay after delay described above, and further extends to the conduct of the Trump Trust, which—under the same legal counsel as the Plaintiff—seeks to run away from its own discovery obligations by coordinating with Plaintiff to attempt to evasively amend the Complaint.

The bad faith underscoring this recent tactic is plainly transparent, as Plaintiff first sought $10 billion in damages for both reputational and economic damages, *see* Compl. ¶¶ 98-101, is now moving to amend the Complaint to remove his economic damages allegations, and yet is somehow still claiming that his damages total to $10 billion. *See* PAC at 34. Plaintiff and his Trust's bid to remove his financial records from disclosure (after Magistrate Judge Lett has

---

[8] Plaintiff served unsworn interrogatory responses on April 21, 2026, and supplemental responses, also unsworn, on May 18, 2026. When asked in Court at the July 21 hearing whether there were any practical obstacles preventing Plaintiff from signing sworn responses, as Federal Rule of Civil Procedure 33 requires at the time of service, Plaintiff's counsel identified none.

adjudicated the issue) is part of Plaintiff's broader resistance to discovery, which starkly contrasts with the BBC's diligent and steadfast efforts to meet its discovery obligations (notwithstanding the BBC's position that Plaintiff's claim is improperly before this Court, as the Documentary was never broadcast in Florida or the United States).  This latest effort reeks of unclean hands, which under general equity principles should further weigh against granting a stay.  *Cf. De Gracas v. Running Billboard Corp.*, 2006 WL 8432507, at *4 (S.D. Fla. Apr. 12, 2006) ("The unclean hands doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" (quoting *ABF Freight Sys. Inc. v. NLRB*, 510 U.S. 317, 329-30 (1994))).

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny the Trump Trust's emergency motion to stay enforcement of the July 27 Order.

Dated:  August 5, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**
1909 K Street, NW
Washington, DC 20006-1157
Tel: (202) 661-2218
Fax: (202) 661-2299

By: */s/ Charles D. Tobin*
Charles D. Tobin
Fla. Bar No.: 816345
Richard W. Miller (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
Yanni Chen (*pro hac vice*)

tobinc@ballardspahr.com
millerrw@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com
cheny@ballardspahr.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket on August 5, 2026, and served the same electronically upon all counsel of record via email.

/s/ Charles D. Tobin
Charles D. Tobin