**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

PRESIDENT DONALD J. TRUMP,
an individual,

       Plaintiff,

   v.

BRITISH    BROADCASTING    CORPORATION
a/k/a/ BBC,

       Defendant.

Case No.: 1:25-cv-25894-RKA

**DECLARATION OF ALAN GARTEN, GENERAL COUNSEL OF**
**THE DONALD J. TRUMP REVOCABLE TRUST, IN SUPPORT OF THE TRUST'S**
**OBJECTIONS TO AND APPEAL OF THE MAGISTRATE JUDGE'S JULY 27, 2026**
**ORDER AND EMERGENCY MOTION TO STAY ENFORCEMENT OF ORDER**

I, Alan Garten, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am General Counsel of The Donald J. Trump Revocable Trust (the "Trust"). I submit this Declaration in support of the Trust's Objections to and Appeal of the Magistrate Judge's Order entered July 27, 2026 (ECF No. 104) (the "Order"), and the Trust's related Emergency Motion to Stay Enforcement of that Order, which are being contemporaneously filed with this Declaration.

2.     The statements in this Declaration are based on my personal knowledge and on my review of the Trust's books, records, organizational documents, and the Rule 45 Subpoena the BBC served on the Trust and the twelve categories of documents it demands.

3.     In my role, I am familiar with the structure of the Trust, the approximately 400 affiliated entities identified in the Subpoena, and what responding to the Subpoena would require in terms of time, resources, and costs.

4.  The Subpoena defines "Trump Affiliated Entities" to include approximately 400 separate businesses and entities. These entities are legally distinct from one another and from the Trust. They include, but are not limited to, operating companies, holding companies, member companies, single-purpose real estate entities, licensing entities, and other affiliated entities, organized under the laws of multiple jurisdictions.

5.  Certain of these entities are also owned by other non-parties that have no connection to the Trust, the Trust's Trustee, the Trust's beneficiaries, the Trump Organization, or President Trump.

6.  As I understand it, the Subpoena, as narrowed by the Order, requires the Trust to produce responsive records for the Trust and each of the approximately 400 affiliated entities for the period of January 1, 2023, through the present, together with continuing productions on a weekly basis thereafter.

7.  The categories of records the Subpoena demands are extensive. They include, among other things: every Trust instrument and amendment; documents concerning every asset and income stream; every deed, title policy, survey, appraisal, and closing statement for real property; every operating agreement, shareholder agreement, buy-sell agreement, corporate resolution, and security instrument; every annual and quarterly balance sheet, income statement, profit-and-loss statement, and cash flow statement for every listed entity; licensing and royalty records; appraisals and insurance riders for vehicles, jewelry, art, antiques, and collectibles; digital asset wallet statements and transaction histories; and every federal and state tax return, schedule, Schedule K-1, attachment, amendment, and workpaper for the Trust and every affiliated entity. Taken together, the categories call for substantially the entire financial, ownership, and tax records of the Trust and of approximately 400 separate entities.

8.      Locating and gathering the records the Subpoena demands would be an extraordinary undertaking. Because the responsive records span the Trust and approximately 400 separate entities and are not maintained in any single or centralized location, the Trust would be required to locate, collect, and assemble responsive records relating to each of those entities, across multiple categories and multiple years, from the various sources where such records are held.

9.      The records gathered would then have to be reviewed before production, including for responsiveness, privilege, and sensitive personal, commercial, and third-party information. Many of the records demanded contain confidential and commercially sensitive financial information, including information concerning persons and entities that are not parties to this litigation. Moreover, certain records may implicate and/or reveal the private, confidential, and sensitive financial information of third parties that have no connection to or affiliation with the Trust, the Trust's Trustee, the Trust's beneficiaries, the Trump Organization, or President Trump beyond their ownership interest in the entity controlled by the Trust.

10.     The scale of that effort would be considerable. Based on my familiarity with the volume of records at issue, that work would require the sustained efforts of numerous people over a period of many months.

11.     The Order requires the Trust to make a substantial initial production within ten days and to make further productions on a weekly basis thereafter. Given the enormous scope of the documents requested, the Trust could not complete the initial production within ten days, or sustain full weekly productions afterward, by any ordinary means.

12.     The open-ended nature of the required production compounds the Trust's burden. Because the Order requires continuing weekly productions with no fixed end date, each new

quarter, tax filing, valuation, transaction, and account statement across the affiliated entities would generate a further collection, review, and production obligation on an ongoing basis.

13.    Complying with the Subpoena as compelled by the Order would impose a substantial and, in significant part, undue burden and expense on the Trust, a non-party to this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 5, 2026.

_____
Alan Garten
General Counsel
The Donald J. Trump Revocable Trust