UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

|  |  |  |
|---|---|---|
| PRESIDENT DONALD J. TRUMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-25894-RKA |
| BRITISH BROADCASTING CORP., | ) ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Defendant the British Broadcasting Corporation ("the BBC"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in opposition to Plaintiff's Motion for Leave to File First Amended Complaint (ECF 108) ("Mot.").

**INTRODUCTION**

The Court should deny Plaintiff's belated motion to amend the Complaint, which was filed over four months after the Court's deadline for amending pleadings, and which represents a transparent effort to avoid the imminent court-ordered deadline to begin producing financial discovery. Plaintiff principally seeks to amend his Complaint to omit references to his business damages, in an effort to sidestep the July 27, 2026 order requiring the production of financial records from the Trump Trust by August 6, 2026. His other proposed amendments consist entirely of information that Plaintiff has had for months, or even years, and which are already fully briefed before the Court on the pending motion to dismiss.

Because the March 31, 2026 deadline set in the operative scheduling order for the addition of claims or parties is now months in the past, Plaintiff must meet the Rule 16 requirement to show good cause for his delay. He cannot do so. Plaintiff could have limited his damages to reputational harm when he filed the Complaint eight months ago, and he has been on notice of the other proposed amendments for months as well, which dooms any effort to meet the requisite good-cause standard. Even under the more permissive Rule 15 standard, Plaintiff's

motion to amend should be rejected on numerous grounds, as his motion is untimely, wholly futile, and would severely prejudice the BBC.  Plaintiff's motion should be denied.

**ARGUMENT**

I.     **PLAINTIFF HAS FAILED TO DEMONSTRATE GOOD CAUSE FOR THE AMENDMENT OF HIS COMPLAINT**

Plaintiff must, but cannot, show good cause to amend the Complaint four months after the deadline to do so has elapsed.  *See* ECF 27 at 2.  "[W]here (as here) a 'motion to amend [is] filed after the scheduling order's deadline,' the plaintiff 'must first demonstrate good cause under Rule 16(b) before [the Court] will consider whether amendment is proper under Rule 15(a).'"  *Doe v. Fenix Int'l, Ltd.*, 2025 WL 336741, at *10 (S.D. Fla. Jan. 30, 2025) (Altman, J.) (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)).  The Scheduling Order in this action, entered on February 12, 2026, provides that "[t]he parties shall file all motions to amend pleadings or to join parties" by March 31, 2026.  *See* ECF 27 at 2.  Because that deadline passed over four months ago, the more demanding standard of Rule 16 applies, as Plaintiff concedes.  *See* Mot. at 2.

Plaintiff fails to make the required good-cause showing on this untimely motion.  Although, as discussed below, the proposed amendments cannot save Plaintiff's case and would have been futile if brought at any time, *see infra* Part II.B, his strategically motivated delay is reason alone to deny the motion.  Because Rule 16 "precludes modification [of the scheduling order] unless the schedule cannot 'be met despite the diligence of the party seeking the extension,'" the movant's "diligence is the key to satisfying the good cause requirement."  *Zhang v. Royal Caribbean Cruises, Ltd.*, 2020 WL 1472302, at *2 (S.D. Fla. Mar. 26, 2020) (citing *Sosa*, 133 F.3d at 1418, and denying motion to amend filed four months after deadline in scheduling order); *Fenix Int'l, Ltd.*, 2025 WL 336741, at *10; *cf.* Mot. at 5 (admitting Plaintiff must meet this standard).

Plaintiff utterly lacked such diligence here.  *Cf.* Mot. at 6-9.  At every turn, the record wholly undercuts *any* claim that "Plaintiff has been diligent throughout" discovery.  *Id.* at 8.  Plaintiff has sought last-minute extensions of nearly every deadline, often reaching key junctures unprepared because of his own delay-inducing actions, as has occurred yet again.  As relevant

2

here, on February 27, 2026, Defendants[1] sent a draft proposed protective order to Plaintiff to facilitate the commencement of document productions.  Although Plaintiff was on notice that Defendants intended to challenge personal jurisdiction since before he filed the Complaint on December 15, 2025, he did not seek any jurisdictional discovery until March 30, 2026, *one day* before his deadline to amend the pleadings.  After ignoring – for 7 weeks – the draft protective order Defendants sent on February 27, and after Defendants again raised the topic during April depositions, Plaintiff did not respond with comments on Defendants' draft protective order until April 17, 2026.  The Court entered the protective order on April 24, 2026, *see* ECF 51, and Defendants served their first document production, of nearly 2,500 pages, promptly on April 28 (whereas Plaintiff did not serve a single production until July 14, consisting only of 755 pages of publicly available documents, *see* ECF 100 at 2).  At *no point* during this discovery process did Plaintiff seek to amend the Complaint.

Nor did Plaintiff seek to amend the Complaint when Defendants filed the Motion to Dismiss on March 16, 2026, two weeks before the deadline for amendments.  *See* MTD Br. (ECF 36); *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 2021 WL 3054908, at *4 (S.D. Fla. July 20, 2021) (no good cause where defendant's "motion to dismiss put [plaintiff] on notice of the deficiencies of its complaint").  Plaintiff did not move to extend the deadline to amend the pleadings before March 31, 2026, even as he sought repeated extensions of other deadlines.  *See Hammer v. Lee Mem'l Health Sys.*, 2019 WL 5874070, at *5 (M.D. Fla. Aug. 5, 2019) (no good cause where "despite repeated motions to modify or extend certain deadlines . . . Plaintiff never asked the Court to extend the pleading amendment deadline"), *R&R adopted*, 2019 WL 4233762 (Sept. 6, 2019).  Plaintiff did not move to amend the Complaint for months after Defendants produced the documents he proposes attaching in April and May 2026.  *Cf.* Mot. at 3, 8 (claiming August 4 motion is timely because he received the documents by May 27).  He did not move to amend it for months after deposing the BBC's corporate representatives on May 29, 2026, when the BBC testified about the very documents and topics Plaintiff proposes including in the amended pleading.  *See* ECF 94-2; *Sosa*, 133 F.3d at 1419 (no good cause where Plaintiff "took no oral depositions until nearly three months after the deadline for amending the

---

[1] The BBC is now the sole remaining Defendant, after the claims against Defendants BBC Studios Distribution Limited and BBC Studios Productions Limited were dismissed with prejudice on July 16, 2026.  ECF 97.

complaint"); *De Varona v. Disc. Auto Parts, LLC*, 285 F.R.D. 671, 673 (S.D. Fla. 2012) (same, where plaintiff "was not diligent in" seeking amendment to include discovery "that had been made available to her").  Plaintiff did not move to amend when opposing Defendants' motion to dismiss on June 8, 2026, or after receiving Defendants' reply brief on June 19, 2026, which further outlined the deficiencies in the Complaint.  *See* Pl.'s Opp. to Mot. to Dismiss ("MTD Opp.") (ECF 94-18); Defs.' Reply (ECF 84).[2]

So why now? Plaintiff's motion arrives on the eve of the court-ordered deadline to produce financial discovery, and is a futile and transparent effort to avoid complying with that order.  *See* July 27, 2026 Order ("July 27 Order") (ECF 104).  "This is not diligence, it is gamesmanship."  *Triolo v. United States*, 2019 WL 13189621, at *3 (M.D. Fla. Nov. 5, 2019).

On July 27, 2026, the Court ordered the Trump Trust to begin producing financial records by August 6, 2026, citing the Complaint's allegations of harm to "the value of [Plaintiff's] brand, properties, and businesses" in rejecting the Trust's effort to block this discovery.  *See* July 27 Order at 5 (citing Compl. ¶ 101 (ECF 1)), 9. The Court will also shortly decide Defendants' pending motion to compel financial discovery from Plaintiff regarding his businesses and other holdings.  *See* ECF 57.  Rather than participate in this discovery in good faith—like Defendants have done all along, with around 90,000 pages of records produced to date, notwithstanding their strong arguments that the Court lacks jurisdiction over them—Plaintiff now seeks to circumvent the ruling by amending his damages allegations to omit references to his business.  Plaintiff's counsel has openly admitted to this rationale, and it shows a lack of good cause that dooms his motion.  *See* July 21, 2026 Hr'g Tr. ("Hr'g Tr.") at 25:16-21 ("I'm happy to amend by interlineation to not break the flow of what has transpired," with the pending motion to dismiss, "to make it abundantly clear . . . that the damages are limited . . . to reputational injury").  The Court should reject such blatant gamesmanship.  *See, e.g.*, *Butts v. Cnty. of Volusia*, 222 F.3d 891, 892 n.2 (11th Cir. 2000) (affirming denial of leave to amend where movant's own "strategic decision" in litigation "before attempting to amend caused much of the delay"); *Fenix Int'l*, 2025

---

[2] Although Plaintiff notes that his opposition to Defendants' motion to dismiss requested, in the alternative, leave to amend if the Court dismissed the Complaint, *see* Mot. at 3, "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009).

WL 336741, at *10 n.11 (no good cause where "[t]he Plaintiff admits that she filed her Motion to Amend *in direct response* to Magistrate Judge Strauss's unfavorable R&R"); *Taveras v. Fla. Dep't of Transp.*, 2024 WL 3384995, at *3 (S.D. Fla. July 12, 2024) (same), *aff'd*, 2026 WL 472064 (11th Cir. Feb. 19, 2026); *Triolo*, 2019 WL 13189621, at *3 (no good cause where movant "unilaterally decided" not to participate in discovery "and now seeks to substantially delay the proceedings because this strategy proved unavailing"); *Hammer*, 2019 WL 5874070, at *6 (same, where "the timing of Plaintiff's motion is suspect and strongly suggestive of gamesmanship").

Plaintiff's motion is all the more untimely because he could have limited his damages claims to reputational injury in the Complaint he filed on December 15, 2025, which claimed harm from an October 28, 2024 *Panorama* Documentary.[3]  He had no good cause to wait eight months to make that allegation.  Indeed, *both* the operative and proposed amended Complaints allege "extensive reputational harm" to Plaintiff from this nearly two-year-old broadcast.  *See* Compl. ¶ 10; Proposed Am. Compl. ("PAC") ¶ 10 (ECF 108-1); *see Sosa*, 133 F.3d at 1419 (no good cause where "the information supporting the proposed amendment to the complaint was available to [plaintiff] even before she filed suit").  As discussed further below, Plaintiff's additional proposed allegations have also long been available to him, such as discussion of a 2021 BBC article or the BBC Chair's November 2025 letter to Plaintiff.  *See* PAC ¶¶ 107-22.

Plaintiff's cases are not to the contrary, and instead only highlight the ways in which *this* motion to amend is untimely.  For example, in *Iqris Technologies*, the Court found good cause for plaintiff's motion to amend because the defendants had waited 133 days to respond to the relevant discovery request, and the plaintiff notified defendants it would be amending the complaint just three weeks after receiving that discovery.  *Iqris Techs. LLC v. Point Blank Enters., Inc*., 2022 WL 3154165, at *2 (S.D. Fla. Aug. 8, 2022) (cited in Mot. at 6-8); *see also id.* at *4 (denying motion in part where certain proposed amendments were futile).  Here, the BBC has been diligently producing documents on a rolling basis starting just days after the protective order was entered in April 2026 – an order that itself was entered at that juncture only because

---

[3] As also discussed below, *see infra* Part II.B, Plaintiff's proposed amendments to his damages claims—like his other proposed amendments—are also futile under Rule 15 because Plaintiff's personal and business reputation are inextricably linked, such that the BBC would still be entitled to full financial discovery into Plaintiff even under the proposed amended Complaint.

Plaintiff failed to respond to Defendants' February 2026 draft – yet Plaintiff waited until August to seek amendment.  In *American General Life Insurance*, the Court "reluctantly" found good cause where the facts supporting plaintiff's proposed amendments were learned during depositions in "late January and early February of 2007" and the motion to amend was filed shortly after, on February 12, 2007.  *Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, 2007 WL 1752471, at *2 (N.D. Ga. June 15, 2007) (cited in Mot. at 8).  Here, the relevant depositions occurred in May.  In *Hayes*, the Court found good cause because the proposed amendments were *not* "based on facts the plaintiff could have timely discovered with due diligence."  *Hayes Healthcare Servs., LLC v. Meacham*, 331 F.R.D. 441, 443 (S.D. Fla. 2019) (cited in Mot. at 6, 8).  Again, Plaintiff in this case has failed to exercise diligence throughout, and seeks to recast his damages in a way he could have done from the start, and to add other allegations about years-old events.

Plaintiff made a deliberate decision in pleading his damages claim when he filed the Complaint eight months ago, made no timely effort to alter his claim, and he has been on notice of the other proposed amendments for months as well, which dooms any effort to meet the requisite good-cause standard.  Because Plaintiff has failed to show good cause, his motion should be denied.

## II.   THE MOTION IS ALSO FUTILE, UNDULY DELAYED, AND WOULD CAUSE SIGNIFICANT PREJUDICE TO DEFENDANTS

Plaintiff's motion to amend fails to meet even the more lenient requirements of Rule 15.  Under that rule, "there are important limitations on the right to amend.  [A] district court "need not . . . allow an amendment [under Rule 15] (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  *Fenix Int'l*, 2025 WL 336741, at *10 (citations omitted).  Plaintiff's motion fails on all three grounds.

### A.  The Proposed Amendment Is Unduly Delayed

Plaintiff has acted with undue delay in pursuing this motion to amend.  *Cf.* Mot. at 9.  Courts routinely find undue delay and deny "leave to amend where a party had knowledge of facts before or at the time of filing a pleading, yet did nothing to assert those facts," or where the party learns of facts after filing the initial pleading but "fail[s] to incorporate these allegations at numerous turns in th[e] litigation."  *Yule v. Ocean Reef Cmty. Ass'n*, 2020 WL 5216993, at **4-5

6

(S.D. Fla. Sept. 1, 2020) (collecting cases).  Courts also find undue delay where, as here, the movant fails to provide a viable reason for the late amendment.  *Id.* at \*2 (considering "the reason offered for the delay").  This Court should do the same.

Plaintiff could have alleged only reputational harm—the amendment at the core of this motion—when he filed the Complaint *eight months* ago, claiming $10 billion in harm caused by a documentary that aired *21 months* ago.  Only now, just *one day* before facing the inevitable and obvious fact that pleading harm to business and professional interests would require providing financial discovery, *see* July 27 Order at 9, does Plaintiff seek to scuttle his damages allegations. Plaintiff has also been in possession of the other facts and documents in his additional proposed allegations for months—throughout discovery, depositions, and briefing on the motion to dismiss.  For example, he proposes new allegations about a BBC article from February 2021, PAC ¶¶ 115-18, the BBC's alleged failure to contact Plaintiff before publishing the Documentary in October 2024, *id.* ¶ 108, and the BBC Chair's letter to Plaintiff from November 2025, *id.* ¶¶ 110-12.  Again, the "reason offered for the delay," *Yule*, 2020 WL 5216993, at \*2, is plain.  Plaintiff does not want to provide discovery into his finances, despite electing to bring a $10 billion case against foreign defendants regarding a program never broadcast in the U.S., and he is throwing motion after motion at the Court to hope that one sticks.  *See* ECF Nos.108, 111, 112.  Plaintiff is not seeking amendment eight months into litigation because he has just discovered crucial new facts, or because the law underlying his claims has changed.  Plaintiff's factual and legal claims are more deficient than ever.  *See infra* Part II.B.  Rather, Plaintiff is transparently seeking amendment to recast his damages allegations in hopes of avoiding his discovery obligations.  *See* Hr'g Tr. at 28:25-29:4.  The Court should not reward this gamesmanship by granting the delayed motion to amend.

### B.  The Proposed Amendment Is Futile

Plaintiff's proposed amended Complaint should also be denied as futile because, like the operative Complaint, it fails to establish personal jurisdiction over the BBC and fails to state a claim for defamation or violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  *See generally* MTD Br.; Reply Br.; *cf.* Mot. at 10-11.  Courts deny motions to amend as futile when the proposed amended complaint would still be dismissed.  *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004).

***First***, Plaintiff's proposed amendments to his jurisdictional allegations are futile because

7

they only underscore the Court's *lack* of personal jurisdiction over the BBC.  As the BBC explained in its briefing on the motion to dismiss, Plaintiff must establish that the Documentary was "directly aimed at the forum" – that Florida "was the focal point."  *Moore v. Cecil*, 109 F.4th 1352, 1364 (11th Cir. 2024) (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)).  Yet Plaintiff's latest motion again shows he cannot avoid the well-documented fact that "the BBC aimed the Documentary only at U.K. viewers, broadcast it only on U.K. TV channels, and streamed it only on BBC's iPlayer under legal, contractual, and technical restrictions designed to limit access to the U.K.  Defendants did not create, produce, or broadcast the Documentary in Florida."  Reply Br. at 7.  "Plaintiff's core argument – that someone may have used VPNs to hack through iPlayer's territorial restrictions – is irrelevant.  As this Court has made clear, '[i]f digital streaming alone suffced for personal jurisdiction, then a federal court's reach would have no end.'"  *Id.* (quoting *Karnas v. Cuban*, 2025 WL 3759241, at *11 (S.D. Fla. Dec. 30, 2025) (Altman, J.)).

Amending the Complaint to allege that the BBC's geoblocking "measures were not guaranteed to work 'every single time,'" PAC ¶ 44, and "that its geo-blocking software was malfunctioning and was not precluding individuals from watching the Documentary in Florida and throughout the United States" via VPN, *id.* ¶ 49, is futile because such unauthorized, unilateral contacts cannot create jurisdiction as a matter of law.  *See Moore*, 109 F.4th at 1364; *Carsey-Werner Co. v. BBC*, 2018 WL 1083550, at *6 (C.D. Cal. Feb. 23, 2018) (holding, as to BBC iPlayer, that "[u]nauthorized viewers outside of the United Kingdom do not provide a basis for personal jurisdiction").  These proposed amendments are also futile in the face of contradictory evidence that the systems the BBC relies on for geoblocking show *no* U.S. access to the Documentary; they would have blocked users detected to be in the U.S.  *See* Reply Br. at 10 (citing Cooper Tr. at 39:18-25).

Plaintiff's allegation that the Court has jurisdiction because the Documentary was "exclusively about President Trump, who is a Florida resident" is equally futile.  PAC ¶ 31.  Plaintiff's own residence cannot be the link to Florida that creates personal jurisdiction.  *See* Reply Br. at 14 (citing *McCall v. Zotos*, 2023 WL 3946827, at *5 (11th Cir. June 12, 2023) ("The mere fact that [defendant] knew that the plaintiffs resided in Florida is not sufficient to show that Florida was targeted as the focal point of the statements."); *Basulto v. Netflix, Inc.*, 2023 WL 4014741, at *13 (S.D. Fl. May 25, 2023) (that foreign defendants "produced a film

8

which a Florida resident claims was defamatory. . . is insufficient")).  Nor is this allegation accurate, as the Documentary covered both presidential candidates and their supporters.

Plaintiff's allegations that "the BBC's decision to commission the Documentary was conceived, timed, and structured around the 2024 United States Presidential election," as reflected in commissioning and pitch documents, are likewise unavailing.  *See* PAC ¶¶ 32-37. As the BBC addressed in the motion to dismiss briefing, "[t]hat is when *Panorama's* U.K. viewers would find it newsworthy.  This shows no Florida-specific aiming, just basic principles of news and current affairs programming."  Reply Br. at 13 (citing Burgess Tr. at 87:21-88:1).

Additionally, Plaintiff cannot salvage the jurisdictional defects by alleging that BBC producers sent one Florida-based contributor information on how to watch the Documentary via VPN or a link to watch it.  *See* PAC ¶¶ 38-41.  Critically, Plaintiff does not even allege that this individual, Rick Wilson, *actually watched* the Documentary.  *Id.*  Nor, eight months into litigation, does Plaintiff name a single confirmed Florida viewer.  *Id.* ¶¶ 26-27 (alleging an "overwhelming *likelihood* that citizens of Florida accessed the Documentary before the BBC removed it" and that it is "*reasonably certain* that Floridians accessed the Documentary using a VPN during the time the Documentary was available") (emphases added); *cf.* Compl. ¶ 27 (claiming it was "certain," not just "reasonably certain," that Floridians accessed the Documentary on VPN).  The proposed amended Complaint is subject to dismissal on this basis alone.  *See Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir. 2018) (affirming dismissal for lack of personal jurisdiction where plaintiffs failed to show "the statements were accessed in Florida"); *Johnson v. Borell*, 2026 WL 1077623, at *4 (S.D. Fla. Apr. 21, 2026) ("Nor is it enough, absent evidence that Defendant manifested an intent to target and focus on Florida readers, that Plaintiff suffered harm in Florida by virtue of some individuals' potential access to the defamatory statements in Florida."); *Mar. Exec., LLC v. Larson Elecs., LLC*, 2018 WL 2938376, at *4 (S.D. Fla. June 11, 2018) (dismissing where plaintiff "does not identify a single third-party who it contends accessed the alleged defamatory material within Florida").

Plaintiff's proposed jurisdictional amendments are also notable not only for what they propose to add, but also for what they propose to subtract: all claims that the BBC actually entered Florida in connection with the Documentary or distributed it in Florida.  For example, the still-operative Complaint claims that the "*Panorama* Documentary was available to *BritBox*

9

subscribers in Florida." Compl. ¶ 24.  Plaintiff could have known from the outset that this allegation was false simply by visiting BritBox.  He now concedes as much and removes this allegation.  Similarly, the proposed amended Complaint no longer claims that "the BBC's producers traveled to Florida to film significant portions of the Documentary at and around President Trump's home, Mar-a-Lago," *Id*. ¶ 37, which never happened.  *See* Telling Decl. ¶¶ 12-14 (ECF 36-1); Reply Br. at 13.  Absent these false allegations, Plaintiff's jurisdictional claims hinge on legally futile speculation about VPN use, and the proposed amended Complaint is even more deficient than the first.

*Second*, Plaintiff's proposed amended Complaint is futile because it fails to state a defamation claim.  Despite adding pages of allegations purportedly speaking to the BBC's actual malice in publishing the Documentary, these new allegations, like those in the operative Complaint, still fail to plausibly allege actual malice.  PAC ¶¶ 107-22.  Plaintiff now alleges that the BBC "failed to contact President Trump" before broadcasting the Documentary.  *Id.* ¶ 109.  Yet a claim that "Defendants did not contact Plaintiff before publishing the articles" does not establish actual malice as a matter of law.  *Klayman v. City Pages*, 2015 WL 1546173, at *16 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F. App'x 744 (11th Cir. 2016), *and aff'd*, 650 F. App'x 744 (11th Cir. 2016).  Plaintiff next adds an allegation that the BBC Chair's letter to him is "proof positive of actual malice and defamation."  PAC ¶ 110.  This pleading is belied by the Chair's actual words, stating that the edit "*unintentionally* created the impression of a single, continuous section of [Plaintiff's] speech."  This apology contradicts actual malice, rather than plausibly supporting it.  *See Nelson Auto Ctr. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs against 'malice.'" (quoting *Zerangue v. TSP Newspapers*, 814 F.2d 1066, 1071 (5th Cir. 1987))).  Plaintiff's allegations that the publication's timing shows actual malice are also futile.  *Cf.* PAC ¶¶ 113-14.  Again, that the BBC released a documentary about the 2024 election in the run-up to that election, when viewers were paying attention, shows only good news judgment, not malice.  And, alleging that other BBC journalists published an article in 2021 which Plaintiff believes more accurately excerpted his January 6 speech, *id.* ¶¶ 116-18, is also futile given that actual malice "ha[s] to be brought home to the persons in [the] organization having responsibility for the publication."  *N.Y. Times v. Sullivan*, 376 U.S. 254, 287 (1964).

*Third*, Plaintiff's proposed amended Complaint is futile because he still fails to state a

FDUTPA claim.  *See* PAC ¶¶ 147-63.  This claim, too, is premised on the "publication and distribution of the Documentary."  *Id.* ¶ 159.  Under Florida's single-action rule, the FDUPTA claim cannot proceed where, as here, it is duplicative of the defamation claim.  *See Bongino v. Daily Beast*, 477 F. Supp. 3d 1310, 1320 (S.D. Fla. 2020).  Plaintiff's added allegations that the Documentary is "'trade or commerce' under the FDUPTA," PAC ¶ 159, are futile both because the Documentary is not purely "commercial speech," *Bongino*, 477 F. Supp. 3d at 1321, and because they are wholly conclusory.  *See JCW Software, LLC v. Embroidme.com, Inc.*, 2011 WL 13225174, at *11 (S.D. Fla. July 26, 2011) (court need not accept conclusory amendments), *R&R adopted*, 2011 WL 13225175 (Sept. 8, 2011).[4]

*Fourth*, Plaintiff need not file an amended complaint in order to remove the Studios Defendants from the case.  *Cf.* Mot at 5.  He has already done that with the stipulation of dismissal filed on July 16, 2026.  *See* Stip. of Dismissal (ECF 97).  Moreover, this proposed amendment, too, reflects what Plaintiff should have known before filing the initial Complaint, and what discovery has long since confirmed: that there was never any basis to pursue claims against the Studios Defendants.  *Cf.* Compl. ¶¶ 13-14 (alleging only that the Studios Defendants "co-produced and published the *Panorama* Documentary," without factual support); MTD Br. at 25-26; Reply Br. at 16, 18.

*Fifth*, Plaintiff's proposed amended Complaint is futile because it cannot even secure him the goal he seeks: avoidance of financial discovery.  *Cf.* Mot. at 11-12 (claiming amendments would reshape scope of such discovery).  Plaintiff seeks to amend the complaint to cast his damages exclusively as "injury to President Trump's personal reputation" and "overwhelming reputational harm," amounting to $10 billion.  PAC ¶¶ 131, 161.  Yet Plaintiff's financial records are directly relevant to assessing his purported reputational damages.  Plaintiff "ran for President of the United States on the platform of The Art of the Deal . . . and he points to his businesses as a measure of his reputational success."  Hr'g Tr. at 36:2-5; *see Edmondson v. Caliente Resorts, LLC*, 2016 WL 7206111, at *2 (M.D. Fla. June 9, 2016) ("[T]here is no bright-line demarcation between an individual's reputation and their professional reputation, especially when a plaintiff's personal and professional lives are inextricably intertwined.").  Nor do

---

[4] Plaintiff's allegations stating that the Documentary is not a statement of opinion and is not privileged are likewise bare legal conclusions that the Court need not credit on a motion to amend.  *Id.*; *see* PAC ¶¶ 120-23.

Plaintiff's vague, conclusory new damages allegations plausibly allege the actual harm that he must show to state a defamation claim. *See* MTD Br. at 26-27; *Edelstein v. WFTV*, 798 So. 2d 797, 798 (Fla. 4th DCA 2001) (per curiam) ("[A] plaintiff suing a media defendant must . . . plead and prove actual injury."). In fact, claiming $10 billion in harm while purporting to disclaim damage to Plaintiff's business and professional interests renders it all the more *im*plausible that Plaintiff will ever be able to show such damages. Moreover, Plaintiff's failure to even to try to justify this amendment other than by saying it was raised at the July 21 hearing, *see* Mot. at 11, only highlights its futility.

Because, for all of these reasons, an amendment would be futile, Plaintiff's motion should be denied. Indeed, the sheer futility of these amendments only underscores that the operative Complaint should be dismissed with prejudice, as Plaintiff cannot fix it through amendment.

### C. The Proposed Amendment Would Prejudice the BBC

Permitting amendment at this stage of the litigation would also prejudice the BBC. *Cf.* Mot. at 9-10. Courts in this District have found prejudice where, as here, defendants have already "expended large amounts of time and resources in drafting the motions to dismiss," since allowing amendment could "moot the motions to dismiss" and require restarting motion practice. *Cordova v. Lehman Bros.*, 237 F.R.D. 471, 477 (S.D. Fla. 2006). The amendment threatens to derail the motion to dismiss which has been pending for almost five months and fully briefed for nearly three, and which raises strong arguments that these foreign Defendants should never have been haled into this Court to begin with. *See Asahi Metal Indus. v. Super. Ct.*, 480 U.S. 102, 115 (1987) (recognizing "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system").

Although Plaintiff now claims amendment would not prejudice the BBC because it would not "expand the scope of the case," he ignores the fact that it would certainly expand the length of the case and expense involved. Mot. at 9. Plaintiff's counsel has already recognized the delay his motion causes, telling the Court at the discovery hearing, "I don't want to engage in more motion practice to formally amend the complaint and then the process starts anew with respect to a motion to dismiss. I want to keep that on track as best as possible." *See* Hr'g Tr. at 28:25-29:4; *see also id. at* 25:12-15 ("[A]t this point given the posture of the case, where we are awaiting the court's ruling with respect to a motion to dismiss, we do not want to defer that,

upset the schedule with regard to amending it."). Now that Plaintiff has lost his bid to entirely avoid financial discovery, however, his calculus has changed. The Court's should not; this amendment would prejudice Defendant and unduly delay the resolution of this case, in contravention of the Federal Rules. The Court should keep the motion to dismiss "on track." Plaintiff's delayed amendment also cuts against "the interest of judicial economy." *Id.*; *see also Triolo*, 2019 WL 13189621, at *3 n.4 (denying amendment that would "undermine efficient judicial administration"). Because Plaintiff's proposed amendments are also wholly futile, allowing these amendments to cause further delay and derail the pending motion to dismiss is especially prejudicial. *See infra* Part II.B.

The Court should deny the motion to amend for these additional reasons. In the alternative, the BBC requests that the Court deny the motion to amend without prejudice while it decides the pending motion to dismiss. *See, e.g.*, *Martyak v. McSorley*, 2006 WL 8433426, at *1 (S.D. Fla. Nov. 22, 2006) (denying motion to amend without prejudice while the Court "dispose[d] of the aforementioned Motions To Dismiss before granting the relief requested therein," since due to "the seriousness of the Defendants arguments in favor of dismissal, there is the possibility that any amendment Plaintiff would make to his Complaint would be futile").

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's motion to for leave to amend his Complaint.

Dated: August 5, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**
1909 K Street, NW
Washington, DC 20006-1157
Tel: (202) 661-2218
Fax: (202) 661-2299

By: */s/ Charles D. Tobin*
Charles D. Tobin
Fla. Bar No.: 816345
Richard W. Miller (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
Yanni Chen (*pro hac vice*)

13

tobinc@ballardspahr.com
millerrw@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com
cheny@ballardspahr.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket on August 5, 2026, and served the same electronically upon all counsel of record via email.

/s/ Charles D. Tobin
Charles D. Tobin