UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  1:25-cv-25894-ALTMAN/LETT

PRESIDENT DONALD J. TRUMP,

      Plaintiff,

v.

BRITISH BROADCASTING CORP.,

      Defendant.

_____/

## OMNIBUS ORDER FOLLOWING DISCOVERY HEARING ON JOINT MOTIONS FOR DISCOVERY HEARING

THIS CAUSE comes before the Court upon 1) the Motion for Discovery Hearing Related to Plaintiff's Responses and Objections to Defendants' First Requests for Production and Interrogatories [ECF No. 57], which the Court construes as Defendant's Motion to Compel Responses to Defendants' First Requests for Production and Interrogatories [ECF No. 117]; 2) the Joint Motion for Discovery Hearing on Defendants' Forty-Seven Subpoenas to Third Parties Regarding January 6, 2021 [ECF No. 61], which the Court construes as Defendant's Motion to Overrule Plaintiff's Objections to the Third Party Subpoenas [ECF No. 118], and 3) the Joint Motion for Discovery Hearing Related to Plaintiff's Responses and Objections to Defendants' First Set of Requests for Admissions [ECF No. 79], which the Court construes as Defendant's Motion to Compel Responses to Defendants' First Set of Requests for Admissions [ECF No. 119], (collectively the "Motions to Compel or

Overrule"). The Parties appeared for hearing on July 21, 2026 [ECF No. 101]. The Court, having reviewed the Motions to Compel or Overrule, the Response in Opposition to the Motion for Hearing Related to Plaintiffs' Responses and Objections to Defendants' First Requests for Production and Interrogatories [ECF No. 86], the relevant authority, argument of counsel, and otherwise being fully advised in the premises, hereby states as follows:

## BRIEF BACKGROUND

Plaintiff Donald J. Trump ("Plaintiff" or "President Trump") is seeking $5 billion[1] in damages against Defendant, the British Broadcasting Company ("Defendant" or "BBC"), arising from a documentary the Defendant broadcasted in the U.K. that allegedly caused him reputational and financial injury. *See* Compl., ECF No. 1. Specifically, Plaintiff alleges Defendant intentionally omitted part of President Trump's January 6, 2021 speech to further Defendant's "intended, false, malicious, and defamatory message and impression that President Trump fomented violence." Compl. ¶¶ 29-30. Specifically, Plaintiff alleges the "spliced-together version of President Trump's remarks…made it seem that he stated: '*We're going to walk down to the Capitol and I'll be there with you. And we fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore,"*, when in fact those statements were approximately 55 minutes apart. Compl. ¶ 105.

At issue in this discovery dispute are Defendants'[2] First Request for

---

[1] President Trump now estimates that his damages are "approximated to be $10 billion." Pl.'s First. Supp. Resp. to Interrog. No. 12, ECF No. 57.-2.

[2] On July 16, 2026, the parties filed a Stipulation of Dismissal dismissing BBC

Production, Interrogatories, and Request for Admissions on Plaintiff (the "Discovery Requests"), Mot. for Disc. at 1, ECF No. 57; Joint Mot. at 2, ECF No. 79, as well as the subpoenas Defendants propounded on forty-seven (47) third parties. Joint Mot. at 2, ECF No. 61 (the "Subpoenas"). The parties fundamentally disagree on the proper scope of the Discovery Requests (*see generally* Mot. for Disc., ECF No. 57; Joint Mot., ECF No. 79; Resp. to Mot. for Disc., ECF No. 86) and whether any privilege applies to the Subpoenas (*see generally* Joint Mot., ECF No. 61).

## LEGAL STANDARD

Discovery is governed by the principles of relevance and proportionality, as Federal Rule of Civil Procedure 26(b)(1) explains:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The scope of discovery is determined by the pleadings and is broad, allowing each party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." *Id.; see also Onemata Corp. v. Rahman*, No. 20-62002-CIV, 2021 WL 5175657, at *2 (S.D. Fla.

---

Studios Distribution Limited and BBC Studios Productions Limited from this action. *See* Stipulation, ECF No. 97. However, because the parties agree "[n]o issues raised in [the Motions] are moot" the undersigned will refer to the now dismissed parties' Discovery Requests and Subpoenas still at issue. *See* Joint Notice, ECF No. 100.

Oct. 26, 2021); *Rep. of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013) ("the Federal Rules of Civil Procedure strongly favor full discovery whenever possible") "Information within this scope of discovery need not be admissible in evidence to be discoverable," Fed. R. Civ. P. 26(b)(1), given that the scope of discovery is much broader than the scope of admissibility.

When seeking disclosure, "[a] party may move for an order compelling discovery from the opposing party." *Goodloe Marine, Inc. v. B.C. Towing, Inc.*, No. 8:20-cv-679, 2021 WL 4133736, at *1 (M.D. Fla. Sept. 10, 2021); Fed. R. Civ. P. 37(a). A district court has broad discretion to compel or deny discovery. *Ray v. Bridgestone Retail Operations, LLC*, No. 3:20-cv-857, 2021 WL 3371494 (M.D. Fla. Aug. 3, 2021) (citing *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011)). "The party moving to compel discovery has the initial burden of proving the requested discovery is relevant and proportional." *Id.* (citing *Douglas v. Kohl's Dept. Stores, Inc.*, No. 6:15-CV-1185-Orl-22TBS, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016)). "The responding party must then specifically show how the requested discovery is unreasonable or unduly burdensome." *Id.* (citing *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559-60 (11th Cir. 1985)).

It has long been established that "the courts must employ a liberal standard in keeping with the purpose of the discovery rules." *Off. Depot, Inc. v. Elementum Ltd.*, No. 9:19-CV-81305, 2020 WL 5506445, at *3 (S.D. Fla. Sept. 14, 2020); *see also In re: Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (quoting Chief Justice John Roberts, 2015 Year–End Report on the

4

Federal Judiciary 6 (2015)).

## ANALYSIS

Since the scope of discovery is determined by the pleadings, *see* Fed. R. Civ. P. 26(b)(1), a discussion of the law governing Plaintiff's claims is warranted in order to appreciate the outer bounds of permissible discovery.

### A. *Defamation*

1. <u>Defamation Generally</u>

Because it is alleged that the defamation was published in Florida (Compl. ¶¶ 22-25, 29, 33, 41), Florida law controls. *See Alan. v. Wells Fargo Bank, N.A.*, 604 F.App'x 863, 865 (11th Cir. 2015) ("Because the alleged defamation was published in Florida, Florida state law is controlling."). "Defamation is 'the unprivileged publication of false statements which naturally and proximately result in injury to another.'" *Betternoi, LLC* v. *Stavros Aloizos*, No. 0:25-CV-60090, 2026 WL 1181121, at *4 (S.D. Fla. Jan. 29, 2026) (citation omitted). Under Florida law, "[d]efamation has the following five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Id*. (citing to *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). If a public figure brings a defamation claim, he/she must demonstrate "actual malice" by the person publishing the statement. *See Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1250 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015) (citing to *N.Y. Times Co. v. Sulivan*, 376 U.S. 254, 279-80,

84 S. Ct. 710, 11 L. Ed. 2d 686 (1964)). "[A] public figure plaintiff must establish that the disseminator of the information either knew the alleged defamatory statements were false, or published them with reckless disregard despite awareness of their probable falsity." *Klayman*, 22 F. Supp. 3d at 1250.

2. Defamation Per Se

"Defamation claims can be proven in either of the following ways: (1) defamation *per quod*, which 'requires an additional explanation of, or an interpretation of innuendo suggested by the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement[,]' or (2) defamation per se, which 'does not require any additional explanation in order to prove the defamatory nature of the statement.'" *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1259 (S.D. Fla. Aug. 30, 2021) (quoting *Scobie v. Taylor*, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013). A claim for defamation per se may proceed under a theory of libel per se (written statements) or slander per se (spoken words). *See Klayman,* 22 F. Supp. 3d at 1247.

Under Florida law, slander is actionable per se if Plaintiff proves Defendant's statements charge Plaintiff with (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office, or (d) acts of unchastity if the plaintiff is a woman. *Id*. (citing to *Campbell v. Jacksonville Kennel Club, Inc.,* 66 So. 2d 495, 497 (Fla.1953)); s*ee also Akai Custom Guns, LLC v. KKM Precision, Inc.*, 707 F. Supp. 3d

1273, 1295 (S.D. Fla. 2023); *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)).

Proof of general or special damages is not necessary in a defamation per se action because once defamation per se is established, plaintiff is awarded general damages without proof of actual pecuniary loss. *See Campbell*, 66 So.2d 497 (proof of general or special damages is unnecessary where the words are actionable per se); *see also Open Sea Distrib. Corp. v. Artemis Distrib., LLC,* 692 F.Supp.3d 1151, 1202 (S.D. Fla. Sept. 19, 2023) ("If a jury finds a party liable for defamation per se, the jury must be instructed that nominal damages are established as a matter of law"); *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 734 (Fla. 4th DCA 2010); *cf. Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (stating "the Florida Supreme Court's decision in Mid-Fla. Television Corp. makes clear that a plaintiff suing a media defendant must nevertheless plead malice and damages.") That is because normally in a defamation *per se* action, the damages are nominal and/or punitive only; not actual. *See Campbell*, 66 So.2d at 497; *see also Roque v. Swezy*, 429 So. 3d 107, 110 (Fla. Dist. Ct. App. 2026) (stating punitive damages may be awarded for defamation per se "*even though the amount of actual damages is neither found nor shown*") (emphasis added); *cf. Corsi*, 519 F. Supp. 3d at 1119 ("a plaintiff suing a media defendant must nevertheless plead…damages.").

3.  Defamation by Implication

Defamation by implication "is a well-recognized species of defamation that is subsumed within the tort of defamation." *Jews For Jesus*, 997 So. 2d at 1108. Defamation by implication "applies in circumstances where literally true statements

are conveyed in such a way as to create a false impression." *Id.* "Defamation by implication, in other words, 'arises not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts.'" *Block v. Matesic*, 789 F. Supp. 3d 1131, 1155 (S.D. Fla. 2025) (citation omitted) (Altman, J.), *appeal dismissed*, No. 25-12540, 2026 WL 810430 (11th Cir. Mar. 24, 2026). "Simply put, if the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct." *Id.* "All of the protections of defamation law that are afforded to the media and private defendants are extended to the tort of defamation by implication." *Id.* "[S]pecial damages are not required to be pled in an action for defamation by implication." *Anderson v. Smith*, 2020 WL 10058207, at \*5 (M.D. Fla. Mar. 24, 2020).

### B. Permissible Scope of Discovery

In the instant action, Defendant seeks much of the discovery at issue to establish Plaintiff's knowledge, intent, and state of mind at the time he delivered his speech. Joint Mot. at 3, ECF No. 79. Defendant argues the Discovery Requests and Subpoenas will assist Defendant in attacking Plaintiff's claims of falsity, an element that must be established in any defamation claim. Joint Mot. at 4, ECF No. 61. Specifically, Defendant argues that knowing President Trump's mindset or subjective intent in giving his speech will determine whether Defendant's clipping of President

8

Trump's speech is defamatory insofar as it created the "false implication that he 'fomented [the] violence' that ensued at the Capitol." *Id.* (quoting Compl. ¶ 4). Otherwise stated, if President Trump intended to foment the violence, so argues the Defendant, then its clipping of the speech does not constitute defamation.

President Trump argues that his mindset prior to or while giving the speech is irrelevant and not necessary to prove or disprove his defamation claim. Joint Mot. at 3 ("The requests in the Subpoenas do not facially explain what relevance the documents would have to proving or disproving whether the Defamatory Statements were published by Defendants, were true or false, or whether they were published with actual malice, or establish Plaintiff's damages."). Plaintiff goes on to argue that Defendant is "not entitled to carte-blanche discovery to try to substantiate [its] truth defense" and the falsity analysis is obsolete in light of the apology from Samir Shah, Chairman of the BBC. *Id.*; *see also* Compl. ¶¶ 46-49.

The Court agrees with Plaintiff that the scope of discovery is not unlimited in nature. As has been said, the scope is limited to the framing of the pleadings. In light of Plaintiff's averments that the BBC intended to create a "false, malicious, and defamatory message and impression that President Trump fomented violence," (Compl. ¶ 105(c)), Defendant is entitled to discover the contours of the message and impression. For example, whether that impression was given or received; if that impression was given or received, whether President Trump gave it intentionally or otherwise; the breadth of the audience of the message and impression; and the extent of any resulting injury or harm, among some examples. *Klayman,* 22 F. Supp. 3d at

1250. Although Plaintiff argues that only the statement itself must be analyzed and meriting discovery, Plaintiff's Complaint is not so circumscribed.

For example, the complaint alleges defamation per se, a cause of action that normally is "actionable on its face" and "does not 'require[] additional explanation of the words used to show that they have a defamatory meaning or that the person defamed in the plaintiff'". *See Mac Isaac*, 557 F. Supp. 3d at 1259. Under such a cause of action, the argument can be made that an in-depth analysis as to the speaker's mindset is unnecessary giving the concise nature of a defamation per se analysis (i.e. the focus on the statement itself and not "additional explanation[s] of the words used"). *Id*. However, as currently pled, Plaintiff also asserts, at best in the alternative, a claim for defamation/defamation by implication because (1) he seeks damages which one would not allege under defamation per se, *compare* Compl. (alleging "massive economic damage" and seeking $5 billion dollars in damages) with *Campbell*, 66 So.2d 497 (proof of general or special damages is unnecessary where the words are actionable *per se*), and (2) Plaintiff does not dispute that the words the broadcast played are actually his literal true statements, but that they were conveyed in such a way as to create a false impression. *Tremino v. Crowley Maritime Corp.*, 707 F. Supp. 3d 1234, 1249 (M.D. Fla. Dec. 13, 2023) ("Courts do not look to the label attached to the pleadings to determine the nature of the cause of action, but rather to the facts pled."); *see also Paramo v. IMICO Brickell, LLC*, No. 08-20458-CIV, 2008 WL 4360609, at *7 (S.D. Fla. Sept. 24, 2008) (stating the "Court looks beyond the

captions and labels in a complaint to the content and substance of the allegations…").

With this framework in mind, a general defamation claim requires a plaintiff to establish, and permits a defendant to demonstrate the lack of, whether the statement was false, whether defendant acted with knowledge or reckless disregard as to the falsity of the statement, and whether the statement was defamatory, amongst other things. *See Betternoi, LLC*, 2026 WL 1181121 at *4. Because the scope of discovery is broad, allowing each party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." (Fed. R. Civ. P. 26(b)(1)), here, Defendant is entitled to discover Plaintiff's intention behind the speech and anything that bears on the impression his audience could have reasonably obtained in listening to the speech. *See generally Block*, 789 F. Supp. 3d at 1155. That said, the Complaint does not extend so far as to entitle Defendant to relitigate and discover every aspect of the events of January 6, 2021 and seek discovery from any and all individuals who may have  knowledge regarding the day's events. *See generally Dr. Chago Prods., LLC In Da House Digital Prods., Inc. v. Figuereo*, No. 1421161-CV-COOKETORRES, 2015 WL 11216749, at *2 (S.D. Fla. Dec. 9, 2015) ("while the scope of discovery is broad, it is not without limits") (citing to *Wash. v. Brown & Williamson Tobacco*, 959 F.2d 1566, 1570 (11th Cir. 1992)).

To give some guidance, and by way of example only, requests such as Request for Admission No. 44 seeking to have Plaintiff "[a]dmit that in November and December 2020, [y]ou were aware that courts were consistently rejecting Your

campaign team's claims of fraud in the 2020 Election," are overboard and outside the scope of permissible discovery. Joint Mot. at Ex. B, ECF No. 79-2. The same can be said for Request for Admissions No.45 and Request for Production No. 41 which state:

> 45. Admit that leaders in the U.S. Department of Justice—including Bill Barr, Jeffrey Rosen, and Richard Donoghue—told You in November and December 2020 that Your allegations of fraud in the 2020 Election had no merit and were not supported by evidence.

*Id.*

> 41. All Documents and Communications that You provided to the U.S. House Select Committee to Investigate the January 6th Attack on the U.S. Capitol.

Mot. for Disc. Hearing, ECF No. 57-2. The above-mentioned examples are not exhaustive, but merely a sample of the overbroad requests the Parties will need to tailor in a later conferral.

### C. *Executive Privilege & Government's Statement of Interest*

"Executive privilege is an extraordinary assertion of power 'not to be lightly invoked." *United States v. Navarro*, No. 24-3006, 2026 WL 2093909, at *2 (D.C. Cir. July 21, 2026) (quoting *Trump v. Thompson*, 20 F.4th 10, 25 (D.C. Cir. 2021). "The presidential communications privilege arises implicitly 'from the supremacy of the Executive Branch within its assigned area of constitutional responsibilities[.]'" *Id.* (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 447, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977)). "The confidentiality afforded by the presidential communications privilege protects 'the public interest in candid, objective, and even blunt or harsh opinions in Presidential decisionmaking [sic].'" *Id.* (citation omitted). "Without such

protection, '[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking [sic] process.'" *Id*. (citation omitted).

This privilege, however, is not absolute, and its protection may be outweighed by competing interests. *Id*. The privilege also applies narrowly to "records solicited and received by the President or the President's immediate White House advisers who have broad and significant responsibility for advising the President." *Id*.  If the privilege is overcome, however, "any disclosure must be limited to the materials relevant to those [constitutional] needs." *In re Search of Info. Stored at Premises Controlled by Twitter, Inc.*, No. 23-5044, 2024 WL 158766, at *3 (D.C. Cir. Jan. 16, 2024).

In the instant case, the Court acknowledges the Plaintiff's argument regarding the potential implication of the executive privilege and the Government's statement of interest pursuant to 28 U.S.C. § 517. *See generally* Joint Mot., ECF No. 61; *see also* Stmt. of Interest, ECF No. 96. The statement of interest notified the Court that the Department of Justice is reviewing the Subpoenas in connection with their obligations under the applicable law. *Id*. Neither the Plaintiff nor the Government, however, presented argument that the executive privilege expressly bars any of the Subpoenas/document requests at this time. Furthermore, the Court is unwilling, at this juncture, to rule on the issue of executive privilege in light of the parties' upcoming conferral conference(s) and tailoring of the remaining disputed requests.

Accordingly, the Court gives no further effect to the Statement of Interest as the Government has sought no formal relief at this time. *Id.* Should Plaintiff or the Government seek to assert the executive privilege or any formal request for relief at a later date, the Court will address that request in due order. However, at this juncture, the Court is not persuaded that the entirety of the Subpoenas or discovery requests are overbroad or improper on these grounds.

## CONFERRAL REQUIREMENT

With a framework of the scope of discovery now provided, the Parties shall participate in a meaningful meet and confer, working towards a resolution of the discovery requests that remain in dispute. *See* Local R. 7.1(a)(3). As revealed during the hearing, the Parties did not "cooperate and act in good faith in attempting to resolve the dispute." That conferral will occur now. Because the Court has informed the Parties of the scope of discovery, any obstacle preventing a meaningful conferral is now resolved. The Court acknowledges the Defendant's arguments regarding Plaintiff's allegedly improper objections. However, given the Court's leniency in allowing the Parties to meet and confer in accordance with this Order, any issues not resolved during the Parties' meet and conferral(s) can be set forth in a subsequent joint motion to be heard by the Court at a later date.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. The Court **DENIES** *without prejudice* the Motions to Compel or Overrule [ECF Nos. 117, 118, 119].

14

2. The Parties shall confer, in good faith and in accordance with Local Rule 7.1(a)(2) regarding all remaining discovery disputes at issue.

3. If the Parties are unable to resolve any issues related to discovery, they shall file the appropriate motion for resolution by the Court.

**DONE AND ORDERED** in Chambers in Miami, Florida on this 6th day of August, 2026.

_Enjoliqué A. Lett_
_____
**ENJOLIQUÉ A. LETT**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record