UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP,<br><br>Plaintiff,<br><br>v.<br><br>BRITISH BROADCASTING CORP.,<br><br>Defendant. | Case No. 1:25-cv-25894-JTK |

**DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**WITH INCORPORATED MEMORANDUM OF LAW**

**BALLARD SPAHR LLP**
1909 K Street, NW
Washington, DC 20006-1157
Tel: (202) 661-2218
Fax: (202) 661-2299

Charles D. Tobin
Fla. Bar No.: 816345
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
Yanni Chen (*pro hac vice*)
Richard W. Miller (*pro hac vice*)
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com
cheny@ballardspahr.com
millerrw@ballardspahr.com

*Attorneys for Defendant*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

FACTUAL BACKGROUND ..... 1

ARGUMENT ..... 3

I. THE COURT SHOULD DISMISS FOR LACK OF PERSONAL JURISDICTION ..... 3

A. The BBC Is Not Subject to Specific Personal Jurisdiction in Florida ..... 4

1. The Court lacks "causing injury" jurisdiction under Fla. Stat. § 48.193(1)(a)(6) ..... 4

2. The Court lacks "arising from" jurisdiction under Fla. Stat. § 48.193(1)(a)(1) ..... 4

3. The Court lacks "committing a tortious act" jurisdiction under Fla. Stat. § 48.193(1)(a)(2) and as a matter of due process ..... 5

i. Plaintiff cannot show the BBC purposefully aimed the Documentary at Florida ..... 5

a. The BBC did not broadcast the Documentary in the U.S ..... 6

b. The BBC took active steps to prevent viewers outside the U.K. from streaming BBC content (including the Documentary) ..... 7

c. The allegation that the BBC streamed the Documentary 34 times to Florida is incorrect, irrelevant, and insufficient to establish personal jurisdiction ..... 8

d. Third-party producers cannot create personal jurisdiction over the BBC ..... 11

ii. Exercising jurisdiction would offend notions of fair play and substantial justice ..... 11

B. The BBC Is Not Subject to General Personal Jurisdiction in Florida ..... 12

1. The BBC is not "at home" in Florida, as it is not incorporated or headquartered here ..... 12

2. As precedent uniformly holds, a BBC subsidiary's office in Florida, which had no involvement in the Documentary, does not confer general jurisdiction ....................13

3. The allegations about BBC.com are wrong and inapt ....................14

II. THE COMPLAINT FAILS TO STATE A CLAIM ....................14

A. The Complaint Fails to State a Claim for Defamation ....................15

1. Plaintiff has not pleaded, and will not be able to prove, actual harm ....................15

2. The Complaint fails to plausibly plead actual malice ....................16

3. The Documentary contains protected expressions of opinion ....................19

B. The Complaint Fails to State a Claim for Violations of FDUTPA ....................20

CONCLUSION ....................20

REQUEST FOR HEARING ....................21

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alt. Energy v. Redstone*,
328 F. Supp. 2d 1379 (S.D. Fla. 2004) ....................5

*Am. Dental Ass'n v. Cigna*,
605 F.3d 1283 (11th Cir. 2010) ....................1

*Anheuser-Busch v. Philpot*,
317 F.3d 1264 (11th Cir. 2003) ....................15

*Asahi Metal Indus. v. Super. Ct.*,
480 U.S. 102 (1987)....................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................14

*Berisha v. Lawson*,
973 F.3d 1304 (11th Cir. 2020) ....................17

*Bioheart v. Peschong*,
2013 WL 1729278 (S.D. Fla. Apr. 22, 2013) ....................9, 12

*Blassingame v. Trump*,
87 F.4th 1 (D.C. Cir. 2023)....................16

*Block v. Matesic*,
789 F. Supp. 3d 1131 (S.D. Fla. 2025) ....................16, 17, 19

*BNSF Ry. v. Tyrrell*,
581 U.S. 402 (2017)....................14

*Bongino v. Daily Beast*,
477 F. Supp. 3d 1310 (S.D. Fla. 2020) ....................20

*Brown v. Showtime Networks*,
394 F. Supp. 3d 418 (S.D.N.Y. 2019)....................13

*Calder v. Jones*,
465 U.S. 783 (1984)....................6, 11

*Carmouche v. Tamborlee Mgmt.*,
789 F.3d 1201 (11th Cir. 2015) .................... *passim*

*Carroll v. Trump*,
663 F. Supp. 3d 380 (S.D.N.Y. 2023)....................16

*Carsey-Werner v. BBC*,
2018 WL 1083550 (C.D. Cal. Feb. 23, 2018) ........ 7, 9

*Chaiken v. VV Publ'g*,
119 F.3d 1018 (2d Cir. 1997) ........ 10

*Corsi v. Newsmax Media*,
519 F. Supp. 3d 1110 (S.D. Fla. 2021) ........ 15

*Courboin v. Scott*,
596 F. App'x 729 (11th Cir. 2014) ........ 4

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........ 12, 13, 14

*Doe (V.H.) v. Hyatt Hotels*,
2024 WL 3859882 (11th Cir. Aug. 19, 2024) ........ 4, 5

*Don King Prods. v. Walt Disney*,
40 So. 3d 40 (Fla. 4th DCA 2010) ........ 17

*Dunn v. Air Line Pilots Ass'n*,
193 F.3d 1185 (11th Cir. 1999) ........ 19

*Edelstein v. WFTV*,
798 So. 2d 797 (Fla. 4th DCA 2001) ........ 15

*Fielding v. Hubert Burda Media*,
415 F.3d 419 (5th Cir. 2005) ........ 10

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ........ 10

*Fraser v. Smith*,
594 F.3d 842 (11th Cir. 2010) ........ 14

*Fridovich v. Fridovich*,
598 So. 2d 65 (Fla. 1992) ........ 20

*Guarino v. Mandel*,
327 So. 3d 853 (Fla. 4th DCA 2021) ........ 7

*Harrington v. Veritext*,
2025 WL 1591614 (S.D. Fla. May 1, 2025) ........ 15

*Head Kandy v. McNeill*,
2023 WL 7323284 (S.D. Fla. Nov. 7, 2023) ........ 7

*Herederos De Roberto Gomez Cabrera v. Teck Res.*,
43 F.4th 1303 (11th Cir. 2022) ..........5, 11

*Hit Bound Music v. BBC Films*,
2017 WL 5640543 (C.D. Cal. June 28, 2017) ..........13

*Hustler Mag. v. Falwell*,
485 U.S. 46 (1988)..........20

*Imerys Talc Am. v. Ricketts*,
262 So. 3d 799 (Fla. 4th DCA 2018) ..........4

*Internet Sols. v. Marshall*,
39 So. 3d 1201 (Fla. 2010)..........5

*J. McIntyre Mach. v. Nicastro*,
564 U.S. 873 (2011)..........3, 10

*Jews for Jesus v. Rapp*,
997 So. 2d 1098 (Fla. 2008)..........15

*Johnson v. Borell*,
2026 WL 1077623 (S.D. Fla. Apr. 21, 2026) ..........10

*Karnas v. Cuban*,
2025 WL 3759241 (S.D. Fla. Dec. 30, 2025) .......... *passim*

*Kendall v. Daily News Publ'g*,
716 F.3d 82 (3d Cir. 2013)..........16

*Klayman v. City Pages*,
650 F. App'x 744 (11th Cir. 2016) ..........16

*Klayman v. Deluca*,
2016 WL 1045851 (S.D. Fla. Mar. 16, 2016)..........4

*Klayman v. Jud. Watch*,
22 F. Supp. 3d 1240 (S.D. Fla. 2014) ..........20

*Louis Vuitton Malletier v. Mosseri*,
736 F.3d 1339 (11th Cir. 2013) ..........3, 5, 6

*Lovingood v. Discovery Commc'ns*,
2015 WL 5719169 (N.D. Ala. Sept. 30, 2015)..........13

*Madara v. Hall*,
916 F.2d 1510 (11th Cir. 1990) ..........3, 10

*Maschinenfabrik Seydelmann v. Altman*,
468 So. 2d 286 (Fla. 2d DCA 1985) ....................10

*McCall v. Zotos*,
2023 WL 3946827 (11th Cir. June 12, 2023) ....................6, 11

*Michel v. NYP Holdings*,
816 F.3d 686 (11th Cir. 2016) ....................14, 15, 18, 19

*Mid-Fla. Television v. Boyles*,
467 So. 2d 282 (Fla. 1985)....................15

*Moore v. Cecil*,
109 F.4th 1352 (11th Cir. 2024) ....................9, 19

*N.Y. Times v. Sullivan*,
376 U.S. 254 (1964)....................14, 16, 18

*Nelson Auto Ctr. v. Multimedia Holdings*,
951 F.3d 952 (8th Cir. 2020) ....................19

*Nunes v. CNN*,
2023 WL 2468646 (M.D. Fla. Mar. 1, 2023) ....................9, 10

*Parekh v. CBS*,
820 F. App'x 827 (11th Cir. 2020) ....................1

*Patt v. Volkswagen Grp. of Am.*,
2023 WL 7523912 (S.D. Fla. Nov. 14, 2023)....................4

*Prunty v. Arnold & Itkin*,
753 F. App'x 731 (11th Cir. 2018) ....................5

*Raymond v. LSM Trading USA*,
2026 WL 279102 (S.D. Fla. Feb. 3, 2026) ....................5

*Smith v. Cuban Am. Nat'l Found.*,
731 So. 2d 702 (Fla. 3d DCA 1999) ....................17

*Sovereign Offshore Servs. v. Shames*,
2017 WL 7798664 (S.D. Fla. Aug. 3, 2017)....................10

*In re Takata Airbag Prods. Liab. Litig.*,
396 F. Supp. 3d 1101 (S.D. Fla. 2019) ....................3

*Thane Int'l v. Braden*,
2008 WL 11399575 (S.D. Fla. Jan. 22, 2008) ....................10

*Tobinick v. Novella*,
848 F.3d 935 (11th Cir. 2017) ....................20

*Triple Up v. Youku Tudou*,
235 F. Supp. 3d 15 (D.D.C. 2017) ....................8, 11

*Trump v. CNN*,
2025 WL 3213203 (11th Cir. Nov. 18, 2025) ....................15, 19, 20

*Trump v. United States*,
603 U.S. 593 (2024) ....................16

*Turner v. Wells*,
879 F.3d 1254 (11th Cir. 2018) ....................15, 18

*Universal Express v. SEC*,
177 F. App'x 52 (11th Cir. 2006) ....................18

*Vision Media TV Grp. v. Forte*,
724 F. Supp. 2d 1260 (S.D. Fla. 2010) ....................12

*Walden v. Fiore*,
571 U.S. 277 (2014) ....................5, 9

*Wood v. Netflix*,
2025 WL 918078 (M.D. Fla. Mar. 26, 2025) ....................14

*Zamora Radio v. Last.fm*,
2011 WL 2580401 (S.D. Fla. June 28, 2011) ....................11, 12

*Zimmerman v. Allen*,
2014 WL 3731999 (Fla. 18th Cir. Ct. June 30, 2014) ....................15

**Statutes**

Commc'ns Act 2003, c. 21, § 363 (U.K.) ....................7

Fla. Stat. § 48.193 ....................4, 5, 6, 7, 12

Fla. Stat. § 501.204 ....................20

**Other Authorities**

Fed. R. Civ. P. 12 ....................1, 14

Fed. R. Evid. 201 ....................1, 18

*Final Report: Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol* (Dec. 22, 2022), https://www.govinfo.gov/content/pkg/GPO-J6-REPORT/pdf/GPO-J6-REPORT.pdf ..... 16

U.S. Const. amend. I ..... 14, 20

Plaintiff President Donald J. Trump brings this lawsuit against U.K.-based Defendant British Broadcasting Corporation ("the BBC") over a documentary ("the Documentary") that was produced in London, that the BBC did not air in the U.S., and that the BBC undertook significant effort to *stop* people from viewing there. Because the Court lacks personal jurisdiction over the BBC and the First Amended Complaint ("FAC") fails to plead valid claims as a matter of law, the Court should dismiss this case with prejudice under Rules 12(b)(2) and 12(b)(6).

***First***, exercising jurisdiction based on the mere possibility of unauthorized access via VPN—which no court has done—would upend personal jurisdiction jurisprudence and have massive implications for foreign companies with online presences. ***Second***, Plaintiff's defamation claim fails to plausibly plead the Documentary harmed him or that the BBC published it with actual malice, and the Documentary contains protected opinion. ***Third***, the FDUTPA claim fails because it is duplicative of the defamation claim and the Documentary is not "trade or commerce." Because Plaintiff cannot cure these defects, the Court should dismiss the FAC with prejudice.

## FACTUAL BACKGROUND[1]

The BBC is the U.K.'s main public service provider of news and entertainment media. *See* Decl. of Richard Burgess ("Burgess Decl.") ¶ 4. Its program *Panorama* is the world's longest-running current affairs program and focuses on wide-ranging topics of interest to British audiences. *See* Decl. of Leo Telling ("Telling Decl.") ¶ 4. The BBC is a non-profit entity, funded by license fee payments by the U.K. public. Burgess Decl. ¶ 6. The BBC was established in the U.K. through a Royal Charter and is headquartered in London, England, which is its principal place of business. *See id.* ¶ 5; FAC ¶ 12. U.S. employees are employed by nonparty BBC News USA, Inc., a separate legal entity that is registered, and has its principal place of business in Washington, D.C. Burgess Decl. ¶ 9. BBC News USA, Inc. did not create or distribute the Documentary. *Id.* ¶ 10.

On October 28, 2024, the BBC aired the Documentary. FAC ¶ 2 & n.1. The Documentary focused on President Trump's 2024 reelection campaign, aiming to explain to U.K. audiences the bases for his support. *See generally* Telling Decl. Ex. 3 ("Doc."). It followed some of his most

---

[1] The BBC assumes the FAC's factual allegations are true solely for purposes of this motion, except where controverted by the BBC's jurisdictional affidavits and deposition testimony collected during jurisdictional discovery. *See Am. Dental Ass'n v. Cigna*, 605 F.3d 1283, 1290 (11th Cir. 2010). The Court can consider the Documentary as it is incorporated by reference. *See* FAC ¶ 2 & n.1; *Parekh v. CBS*, 820 F. App'x 827, 830 n.1 (11th Cir. 2020) (per curiam). Cited public records are judicially noticeable. *See* Fed. R. Evid. 201(b)(2).

devoted supporters, the "Front Row Joes," as they attended his rallies across the country. *See id.* These supporters explained that, while President Trump was facing criminal charges at the time, they felt it was "criminal what [the President's opponents have] done to [him]." *See id.* at 1:16-18. The Documentary also featured interviews with commentators, including academics and political figures. *See* FAC ¶¶ 88-98. Some voiced support for the President, saying "many people want to get back to that strong leadership." Doc. at 0:51-55. Others voiced sharply critical opinions, including by calling him a "cult leader." *Id.* at 52:16; FAC ¶ 93.

Those statements are not at issue. Instead, over a year after the Documentary aired, and after his re-election, President Trump challenged a 12-second segment that showed excerpts of his speech at the White House Ellipse on January 6, 2021 ("the Speech"). *See* Doc. at 33:53-34:05; FAC ¶¶ 2, 52-54. President Trump spoke for over 70 minutes that day, *see* FAC ¶ 2 n.2, and the attack on the Capitol lasted hours. But in examining for its U.K. audience his appeal as a candidate for re-election, the Documentary spent only three minutes on the topic. The FAC does not contest that Plaintiff spoke the words shown; rather, it alleges that by editing together parts of his speech occurring around 54 minutes apart, the Documentary defamed him by creating the "false . . . message that [he] fomented violence." *Id.* ¶ 135(c). The clips included were, "[w]e're going to walk down to the Capitol," "and I'll be there with you," "[a]nd we fight, we fight like hell[,] and if you don't fight like hell, you're not going to have a country anymore." *Id.* ¶ 135(a).

The Documentary was not produced or aired in Florida. *See* Telling Decl. ¶¶ 9-18, 24-26. The BBC aired it on its U.K. TV channels and U.K. iPlayer streaming service. *Id.* ¶¶ 16-17. Despite the FAC's attempt to use unreliable data reflecting 34 unconfirmed, unauthorized attempts to play the Documentary from Florida, the BBC never broadcast it in the U.S. and never even had rights to do so. *Id.* ¶¶ 18, 25. Third parties acquired the international distribution rights from non-parties October Films and Blue Ant Media Corporation ("Blue Ant"), although they never aired it in the U.S. And that shorter international version, created before the distributor decided not to distribute the Documentary in the U.S., did not even contain the challenged edit. *Id.* ¶¶ 21-25.

Plaintiff won re-election in 2024, eight days after the Documentary aired. FAC ¶¶ 11, 50. He carried Florida with 56.1% of the vote.[2] The following year, on November 9, 2025, Plaintiff's counsel wrote to the BBC, arguing that the Documentary's edit of his speech defamed him and

---

[2] *See November 5, 2024 General Election*, Fla. Div. of Elections, https://results.elections.myflorida.com/Index.asp?ElectionDate=11/5/2024&DATAMODE=

threatening a $1 billion suit. FAC ¶ 56, Ex. J. On November 13, 2025, the BBC responded by publishing a retraction and apologizing to Plaintiff. The BBC added that it "strongly disagree[s] that President Trump would have a basis for a viable defamation claim." *Id*. ¶¶ 57-59, Ex. K. Despite the retraction and apology, and despite notice that the Documentary was not broadcast in Florida, on December 15, 2025, Plaintiff filed his initial Complaint, alleging that the edit of his January 6 speech defamed him and violated FDUTPA, and demanding $5 billion in damages on each count. Compl. (ECF 1) ¶¶ 104-19, pp. 31-32. The FAC reflects the same claims and demands an identical $10 billion in damages in each count (sought in the alternative), now based only on alleged reputational harm. FAC ¶¶ 134-63, pp. 34-36.

**ARGUMENT**

The Court lacks personal jurisdiction over the BBC, and the FAC fails to state a claim for defamation or violations of FDUTPA on multiple independent grounds.

## I. THE COURT SHOULD DISMISS FOR LACK OF PERSONAL JURISDICTION

The BBC is not at home in Florida, nor did it create sufficient contacts to satisfy Florida law or due process. Based on the clear record established in robust jurisdictional discovery, Plaintiff lacks any good-faith basis to ask this Court to exercise jurisdiction over the BBC.

A federal court "generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant." *Karnas v. Cuban*, 2025 WL 3759241, at *5 (S.D. Fla. Dec. 30, 2025). The court ***first*** "determine[s] whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute," and ***second***, "decide[s] whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Id.* Any doubts "must be resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1140 (S.D. Fla. 2019). "[T]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach. v. Nicastro*, 564 U.S. 873, 881 (2011) (finding no personal jurisdiction over U.K. company).

Plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction," which a defendant may then challenge "by submitting affidavit evidence in support of its position," after which "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton Malletier v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

A defendant can be subject to personal jurisdiction under Florida's "long-arm statute in two ways: . . . *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida; and . . . *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida." *Carmouche v. Tamborlee Mgmt.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015) (cleaned up) (emphasis in original). This Court lacks jurisdiction over the BBC on either basis.

**A. The BBC Is Not Subject to Specific Personal Jurisdiction in Florida**

Plaintiff alleges specific jurisdiction under three provisions of Florida's long-arm statute: Fla. Stat. § 48.193(1)(a)(6), "[c]ausing injury to persons or property within this state"; § 48.193(1)(a)(1), for "any cause of action arising from . . . carrying on a business or business venture in this state"; and § 48.193(1)(a)(2), "[c]ommitting a tortious act within this state." *See* FAC ¶ 19. Plaintiff has not met his burden to plead or prove that *any* of these provisions apply.

***1. The Court lacks "causing injury" jurisdiction under Fla. Stat. § 48.193(1)(a)(6).***

"[E]conomic injury, unaccompanied by physical injury or property damage" does not satisfy Fla. Stat. § 48.193(1)(a)(6). *Karnas*, 2025 WL 3759241, at *5 (quoting *Courboin v. Scott*, 596 F. App'x 729, 734 (11th Cir. 2014)). Because Plaintiff now alleges only "reputational harm" FAC ¶¶ 10, 129-32, 139, not physical or property injury, "Subsection (1)(a)(6) cannot confer personal jurisdiction here." *Karnas*, 2025 WL 3759241, at *5 (dismissing FDUTPA case where "Plaintiffs claim to have sustained *monetary* damages" (emphasis in original)); *see also Klayman v. Deluca*, 2016 WL 1045851, at *11 (S.D. Fla. Mar. 16, 2016), *aff'd*, 712 F. App'x 930 (11th Cir. 2017) (same, in case bringing defamation claim); *see also Patt v. Volkswagen Grp. of Am.*, 2023 WL 7523912, at *5 (S.D. Fla. Nov. 14, 2023) (jurisdiction under § 48.193(1)(a)(6)(b) requires actions of defendant to be "directly connected" to forum state (citing *Imerys Talc Am. v. Ricketts*, 262 So. 3d 799, 802, 803-06 (Fla. 4th DCA 2018) (Kuntz, J.) (also finding a consumer's unilateral act of bringing defendant's product into forum state insufficient to exercise personal jurisdiction))).

***2. The Court lacks "arising from" jurisdiction under Fla. Stat. § 48.193(1)(a)(1).***

Nor does the Court have specific jurisdiction under Fla. Stat. § 48.193(1)(a)(1), as "Plaintiff[] fail[s] to demonstrate that the [BBC] 'carr[ies] on a business or business venture in Florida.'" *Karnas*, 2025 WL 3759241, at *6. He cannot establish that the Documentary "aris[es] from" business in Florida, as this provision requires. "And while the [FAC] details [alleged] connections between the [BBC] and Florida," "it comes nowhere close to establishing 'a direct

affiliation, nexus, or substantial connection . . . between the basis for the cause of action and the business activity.'" *Id.* (quoting *Doe (V.H.) v. Hyatt Hotels*, 2024 WL 3859882, at *1 (11th Cir. Aug. 19, 2024)). The BBC is incorporated and headquartered in the U.K. *See* FAC ¶ 12. The BBC never made the Documentary available on BBC.com, *see* Telling Decl. ¶ 25, nor did the BBC create, produce, or air the Documentary in Florida or with any assistance from the Coral Gables office, *id.* ¶¶ 14-18; Burgess Decl. ¶ 12. Floridians' access to BBC.com, FAC ¶ 14, which again did not post the documentary, *see* Telling Decl. ¶ 25, is irrelevant, as, by themselves, "electronic communications from out-of-state offices into Florida do not establish conducting business in Florida." *Karnas*, 2025 WL 3759241, at *6 (quoting *Prunty v. Arnold & Itkin*, 753 F. App'x 731, 735 (11th Cir. 2018)); *see also Alt. Energy v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004) (provision did not apply to Nevada-based website with Florida subscribers).

***3. The Court lacks "committing a tortious act" jurisdiction under Fla. Stat. § 48.193(1)(a)(2) and as a matter of due process.***

The remaining long-arm provision Plaintiff cites, Fla. Stat. § 48.193(1)(a)(2), applies to "any cause of action arising from . . . [c]ommitting a tortious act within this state." *See* FAC ¶ 19. Even accepting *arguendo* Plaintiff's allegations, he "still fail[s] to overcome the federal due-process standard" to establish personal jurisdiction. *Karnas*, 2025 WL 3759241, at *7. Due process is not satisfied where, as here, Plaintiff has not shown that the BBC has "*purposeful* contacts with Florida *from which his claims arise*." *Raymond v. LSM Trading USA*, 2026 WL 279102, at *3 (S.D. Fla. Feb. 3, 2026) (emphasis in original); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) (defendant's "relationship [with the forum state] must arise out of contacts that the defendant *himself* creates" (cleaned up) (emphasis in original)). Because the BBC's alleged, relevant conduct took place outside Florida and the BBC never purposefully broadcast the Documentary in Florida, Plaintiff cannot meet his burden to show specific jurisdiction.

To comport with due process, ***first***, "plaintiff's claim 'must arise out of or relate to' one of the defendant's contacts in the forum," ***second***, "defendant must have 'purposefully availed' itself of the privilege of conducting activities within the forum," and ***third***, "jurisdiction must comport with 'traditional notions of fair play and substantial justice.'" *See Herederos De Roberto Gomez Cabrera v. Teck Res.*, 43 F.4th 1303, 1310 (11th Cir. 2022) (quoting *Louis Vuitton*, 736 F.3d at 1355). This constitutional inquiry is even "more restrictive" than the long-arm statute. *Internet Sols. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010).

***i. Plaintiff cannot show the BBC purposefully aimed the Documentary at Florida.***

This case fails at the outset, as "Plaintiff[] cannot clear the purposeful-availment prong." *Karnas*, 2025 WL 3759241, at *7. To meet his burden, Plaintiff must either satisfy the "effects test" of *Calder v. Jones*, 465 U.S. 783, 787-89 (1984), or show that the BBC has the traditional minimum contacts with the forum. *McCall v. Zotos*, 2023 WL 3946827, at *4 (11th Cir. June 12, 2023). The effects test is satisfied only "when the tort was intentional, *aimed* at the forum state, and caused harm that the defendant *should have anticipated* would be suffered in the forum state." *Id.* (emphasis added). Similarly, the minimum contacts test asks if defendant's forum contacts "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. Under either test, "[p]osting information on the internet is not sufficient by itself to subject that person to personal jurisdiction." *McCall*, 2023 WL 3946827, at *4 (cleaned up).

**a. The BBC did not broadcast the Documentary in the U.S.**

The BBC did not have rights to broadcast the Documentary in the U.S. and did not do so. *See* Telling Decl. ¶ 18. Nor did it air or advertise the Documentary in Florida. *Id.* ¶¶ 16-17, 25.[3] It aired the Documentary only on its U.K. TV channels and via its U.K. streaming service, iPlayer.

Nor did the BBC act "in concert" with non-parties October Films and Blue Ant to distribute the Documentary in Florida. *See* FAC ¶ 51. This allegation is untrue—no third-party distributor aired the Documentary in the U.S. October Films prepared an international version *without the edit of Plaintiff's January 6, 2021 speech*. *See* Telling Decl. ¶ 21. The distribution-rights holder, October Films, licensed the international distribution rights to Blue Ant, which is incorporated and has its principal place of business in Toronto, Ontario. *Id.* ¶ 22. Blue Ant sublicensed the U.S. distribution rights to London-based Little Dot Studios, which *never published the Documentary in the U.S. Id.* ¶¶ 23-24. Once Plaintiff threatened to sue the BBC, on November 10, 2025, Little Dot restricted its system to prevent any future broadcast or distribution of the Documentary. *Id.*

In fact, the FAC does not establish that the BBC specifically intended to reach Florida residents at all. Rather, it alleges that the BBC intended to reach Florida because the Documentary

[3] While citing FCC Chair Brendan Carr's letter to the BBC and U.S. broadcasters PBS and NPR, FAC ¶ 29, Plaintiff omits that the BBC told Chairman Carr, on November 26, 2025, that it did *not* air this Documentary through any U.S. partnerships. Burgess Decl. Ex. 2. This fact is uncontested.

focused on the U.S. President, who "is a Florida resident," as its subject matter,[4] and that the Documentary was released before the 2024 U.S. election. FAC ¶¶ 31, 33-37. These allegations, however, do not tie the Documentary's broadcast to Florida specifically. *Compare id.* ¶ 35 (arguing that the pitch documents "expressly referred to the 2024 United States Presidential election and several key battleground states, which would likely sway the election results, including Florida"); *with id.* Ex. B at 21-22 (pitch stating that the 2024 election would likely be close and "decided by small swings" in battleground states, such as "Wisconsin," but not mentioning Florida, where the election was not close).

**b. The BBC took active steps to prevent viewers outside the U.K. from streaming BBC content (including the Documentary).**

It was not possible to gain authorized access to the Documentary in Florida through iPlayer. iPlayer is available *legitimately* only in the U.K. to U.K. residents, who must pay an annual license fee for access.[5] *See* Decl. of Richard Cooper ("Cooper Decl.") ¶¶ 6-7. Before receiving access, users must agree to iPlayer's Terms of Use ("Terms"), which prohibit watching iPlayer from outside the U.K., and prohibit using technological circumvention tools (such as VPNs) to do so. *Id.* ¶¶ 7-11.[6] Any use of iPlayer outside of the U.K. is unauthorized and cannot create personal jurisdiction over the BBC. *Carsey-Werner v. BBC*, 2018 WL 1083550, at *6 (C.D. Cal. Feb. 23, 2018) (no personal jurisdiction over the BBC because "[u]nauthorized viewers outside of the United Kingdom do not provide a basis for personal jurisdiction; rather, Defendants' relationship with [the forum] must arise out of contacts that they themselves created with the state.").

To prevent unauthorized access, the BBC does not merely rely on agreements. It uses a service called GeoGuard to help perform three technical checks to identify and block any attempts

[4] The allegation that the Documentary focused on Plaintiff as a Florida resident "with the intent that it would cause [him] harm in Florida," FAC ¶ 31, is also unavailing because Fla. Stat. § 48.193(1)(a)(2) does not confer jurisdiction over nonresident defendants based on "[m]ere injury in Florida resulting from a tort committed elsewhere." *Head Kandy v. McNeill*, 2023 WL 7323284, at *9 (S.D. Fla. Nov. 7, 2023) (quoting *Guarino v. Mandel*, 327 So. 3d 853, 861 (Fla. 4th DCA 2021) (unanimous decision of Forst, Kuntz, & Artau, JJ.)).

[5] It is a crime in the U.K. to watch iPlayer without paying the U.K. license fee. *See* Commc'ns Act 2003, c. 21, § 363 (U.K.).

[6] *See also id.* Ex. 1 (iPlayer Terms include, "Don't stream or download iPlayer TV shows when you're outside the UK," and a prohibition on "using a VPN service so you can watch BBC iPlayer when you're outside the UK"); *id.* Ex. 2 ("Programmes cannot be streamed outside the UK, even on holiday," or "if we detect you might be using a VPN or proxy.").

to access iPlayer from outside the U.K. ***First***, the BBC checks the IP address of the user to determine if they are outside the U.K. or are using a VPN. If either is detected, the user is prevented from accessing iPlayer. ***Second***, if a viewer gets through the initial screen, iPlayer repeats the check when they try to play any content. Even after getting through these screens, the content delivery network (CDN) that delivers the content performs a ***third*** check before sending any video. A viewer must clear all three technical hurdles to access streaming content on iPlayer. FAC Ex. H ("Cooper Tr.") at 21:10-22:25, 114:11-18.

These measures—all in effect when the Documentary was on iPlayer, Cooper Decl. ¶ 11—reflect the BBC's efforts to *not* purposefully publish it in Florida, or anywhere in the U.S. [redacted] Like any technical measure, the BBC's geoblocking can on occasion be circumvented by bad actors willing to violate iPlayer's Terms (and U.K. law), but geoblocking efforts that are not 100% effective still weigh *against* the exercise of personal jurisdiction. *Triple Up v. Youku Tudou*, 235 F. Supp. 3d 15, 25 (D.D.C. 2017) (noting that "affirmative geoblocking efforts should weigh *against* the exercise of personal jurisdiction" and that "equat[ing] a failure to geoblock with purposeful availment" would upend due process (emphasis in original)), *aff'd*, 2018 WL 4440459 (D.C. Cir. July 17, 2018).

**c. The allegation that the BBC streamed the Documentary 34 times to Florida is incorrect, irrelevant, and insufficient to establish personal jurisdiction.**

Straining to manufacture specific jurisdiction, Plaintiff points to 34 unauthorized alleged play-starts by viewers using a VPN[7] in Florida. FAC ¶¶ 42, 46, 49. Plaintiff's evolving theory of jurisdiction-by-circumvention fails because unauthorized play-starts in Florida are irrelevant to the

[7] The record demonstrates that to the extent the alleged 34 successful play-starts—which originated from just 10 users, Cooper Tr. at 131:23-132:5—came from Florida, the requests used a VPN to circumvent the BBC's geoblocking efforts. The data Plaintiff relies on is from the BBC's audience analytics system, which does not deliver content and is not designed for enforcement. *Id.* at 101:11-12, 103:5-17. Mr. Cooper compared some of the data from the analytics system with the more reliable GeoComply data from the BBC's CDNs, and determined that from the perspective of the BBC, the requests were coming from the U.K., which indicates VPN use. *Id.* at 101:11-103:4. [redacted]

personal jurisdiction analysis, particularly in the face of the BBC's clear efforts to prevent them.

***First***, it is incorrect to attribute any alleged streams of the Documentary in Florida to the BBC because when a viewer uses a VPN to circumvent the BBC's security measures, it is the VPN provider that directs the Documentary to Florida, not the BBC. [redacted] This unauthorized redirection of the Documentary cannot support personal jurisdiction. [redacted] *Walden*, 571 U.S. at 291 (the "unilateral activity of a third party . . . cannot satisfy the requirement of contact with the forum State" (cleaned up)).

Unilateral activity from a third party to circumvent the BBC's geoblocking cannot create personal jurisdiction because due process requires the relationship with the forum state to "arise out of contacts that the defendant *himself* creates." *Id.* at 285 (cleaned up). [redacted] Bad actors' unilateral contacts do not create jurisdiction as a matter of law. *See Moore v. Cecil*, 109 F.4th 1352, 1364 (11th Cir. 2024); *Carsey-Werner*, 2018 WL 1083550, at *6.

***Second,*** Plaintiff's allegation of 34 instances of unauthorized VPN access, "attributed solely to Florida," is irrelevant to both the effects and minimum-contacts tests because there is no evidence (or even an allegation) that the BBC hoped a Florida audience would violate its Terms and use a VPN to hack into iPlayer. *Moore*, 109 F.4th at 1364 (effects test not satisfied where "there is no evidence that the defendant posted the allegedly defamatory information *hoping* to reach the forum state or an audience in the forum state specifically." (emphasis added)). In the context of internet publications where, as here, there is no evidence of purposeful direction at Florida, exercising specific personal jurisdiction violates due process. *See Bioheart v. Peschong*, 2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013) (due process not satisfied absent "evidence that [the website] generally, or [out-of-state defendant's] comments in particular, were purposefully

directed at a Florida audience"); *Nunes v. CNN*, 2023 WL 2468646, at *4 (M.D. Fla. Mar. 1, 2023) (no jurisdiction absent "evidence that [defendants] aimed the Segment at Florida"). Indeed, "[a] media defendant's nationwide circulation of a publication is insufficient to confer personal jurisdiction over that defendant in every forum." *Nunes*, 2023 WL 2468646, at *4. The same rule applies to FDUTPA claims. *Karnas*, 2025 WL 3759241, at *8 ("no evidence that the Defendants *took aim* at a Florida audience *specifically*" (emphasis added)).

Absent any specific intent to target Florida, which no evidence supports, the alleged 34 instances of unproven Florida access are irrelevant. *See Madara*, 916 F.2d at 1519 ("mere awareness . . . that a small number of copies of the magazine might find their way to Florida is not enough"); *Johnson v. Borell*, 2026 WL 1077623, at *4 (S.D. Fla. Apr. 21, 2026) ("Nor is it enough, absent evidence that Defendant manifested an intent to target and focus on Florida readers, that Plaintiff suffered harm in Florida by virtue of some individuals' potential access to the defamatory statements in Florida."); *Sovereign Offshore Servs. v. Shames*, 2017 WL 7798664, at *3 (S.D. Fla. Aug. 3, 2017) (same).

***Third***, Plaintiff's alleged handful of isolated, unauthorized viewings are insufficient to establish personal jurisdiction. The Supreme Court "ha[s] long treated isolated or sporadic transactions differently from continuous ones," and held they do not create jurisdiction. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 366 n.4 (2021); *see also McIntyre*, 564 U.S. at 888, 892 (Breyer and Alito, JJ., concurring) ("None of [the Supreme Court's] precedents finds that a single isolated sale . . . is sufficient."); *Fielding v. Hubert Burda Media*, 415 F.3d 419, 426 (5th Cir. 2005) (no jurisdiction over German publisher with in-state "distribution of seventy issues per week"); *Chaiken v. VV Publ'g*, 119 F.3d 1018, 1029 (2d Cir. 1997) (same, where Israeli publisher sent "four copies per day"); *Thane Int'l v. Braden*, 2008 WL 11399575, at *8 (S.D. Fla. Jan. 22, 2008) (same, where Hong Kong company sold up to 5% of products in Florida); *Maschinenfabrik Seydelmann v. Altman*, 468 So. 2d 286, 289-90 (Fla. 2d DCA 1985) (same, where German defendant sold 23 meat grinders into Florida). The 34 play-starts (from ten total users) that Plaintiff alleges came from Florida represent 0.006% of the 570,000 successful requests of the Documentary. Cooper Tr. at 99:17-20; 131:23-132:5.

***Fourth***, allegations that the BBC was aware of malfunctions in its geoblocking measures, [redacted] FAC ¶¶ 42, 47, are similarly irrelevant. Even a complete failure to geoblock cannot create

jurisdiction, and thus an allegedly malfunctioning effort cannot either. *See Triple Up*, 235 F. Supp. 3d at 25. The allegation is also untrue—there is no evidence of malfunction, or that the BBC was on notice of such. [redacted] Accordingly, Plaintiff's allegation that the "BBC was on notice," FAC ¶ 49, is irrelevant and is contradicted by the record.

***Finally***, subjecting the BBC to personal jurisdiction based on Plaintiff's allegations of unauthorized third-party access—despite the BBC's efforts to geoblock non-U.K. access—would drastically extend personal jurisdiction jurisprudence. Any international business with an online presence, even if it also diligently worked to block U.S. access, could be haled into court in any state, so long as a handful of third-party efforts to circumvent that geoblocking using a VPN are alleged. No court that has found jurisdiction on the theory Plaintiff urges here. For all the reasons described above, such a finding would not comport with the law.

**d. Third-party producers cannot create personal jurisdiction over the BBC.**

Plaintiff argues that two producers—both working for October Films—"guided multiple individuals and organizations throughout the United States," including one Florida resident, on how to watch the Documentary on iPlayer via VPN, and that a "download link" was sent to the one Florida resident. FAC ¶¶ 38-41. But Plaintiff offers no evidence or allegation that any of the recipients actually accessed iPlayer, let alone saw the Documentary. Additionally, even sending a single viewing link to one contributor who *may* have been in Florida—and who is not even alleged to have accessed that link—does not make Florida the focal point of the Documentary. *Compare Calder*, 465 U.S. at 790 (finding jurisdiction in state with publisher's "largest circulation"), *with, e.g.*, *McCall*, 2023 WL 3946827, at *5 (claims "that the review was accessible and accessed in Florida and that [plaintiffs] resided in Florida are not sufficient to confer personal jurisdiction").

***ii. Exercising jurisdiction would offend notions of fair play and substantial justice.***

Requiring the BBC to litigate in Florida would also offend notions of fair play and substantial justice. *Teck Res.*, 43 F.4th at 1310. In this analysis, courts consider: "(1) "the burden

on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief," *Zamora Radio v. Last.fm*, 2011 WL 2580401, at *10 (S.D. Fla. June 28, 2011), and, for foreign defendants, (4) "the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction by the [U.S.] court," *Asahi Metal Indus. v. Super. Ct.*, 480 U.S. 102, 115 (1987). "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at 114.

These factors all support dismissal. It would be unduly burdensome for the BBC to defend itself in Florida. The BBC, its relevant employees, and its documents are in the U.K. *See* Burgess Decl. ¶ 5. Nor would it be fair to require the BBC to litigate in Florida where the BBC took active measures to block Americans from viewing this Documentary, *see* Cooper Decl. ¶¶ 9-11, and Plaintiff cannot point to a single person who viewed the Documentary in Florida. These burdens are not outweighed by Florida's minimal interests in overseeing a dispute about a U.K. entity's role in a Documentary aimed at U.K. viewers, who fund the BBC by paying the U.K. license fee, and brought by a plaintiff challenging the portrayal of events in Washington, D.C. *See* Burgess Decl. ¶ 6; *Asahi*, 480 U.S. at 115; *Bioheart*, 2013 WL 1729278, at *5 ("Even if [plaintiff] established that [defendant] had minimum contacts with Florida, the exercise of jurisdiction over him would not comport with traditional notions of fair play and substantial justice[,]" where defendant's "alleged tortious actions took place" elsewhere "and there is no showing that any of the evidence in this case would be located in Florida"); *Vision Media TV Grp. v. Forte*, 724 F. Supp. 2d 1260, 1267 (S.D. Fla. 2010) (similar).

For each of these reasons, this case should be dismissed at the outset for lack of specific personal jurisdiction over this foreign Defendant.

## B. The BBC Is Not Subject to General Personal Jurisdiction in Florida

### *1. The BBC is not "at home" in Florida, as it is not incorporated or headquartered here.*

The BBC is not subject to general personal jurisdiction in Florida because it does not "engage[] in substantial and not isolated activity within this state." Fla. Stat. § 48.193(2); *cf.* FAC ¶ 14. To confer jurisdiction over a corporation, its Florida contacts must be "so continuous and systematic as to render them essentially at home in the forum State." *Carmouche*, 789 F.3d at 1204 (cleaned up). "[T]he place of incorporation and principal place of business are paradigm bases for

general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up). Here, the BBC is not "essentially at home" in Florida. Plaintiff himself alleges that the BBC "is a British corporation" that has its "principal place of business in London, England." FAC ¶¶ 12. He is right. *See* Burgess Decl. ¶ 5. The BBC does not have its principal place of business in Florida, nor is it incorporated there. *See* Burgess Decl. ¶ 11.

**2. *As precedent uniformly holds, a BBC subsidiary's office in Florida, which had no involvement in the Documentary, does not confer general jurisdiction.***

Plaintiff cannot show that this is the "exceptional case" where a foreign defendant could otherwise be subject to general jurisdiction in Florida—the only other basis for general jurisdiction. *Carmouche*, 789 F.3d at 1204. Even accepting for argument's sake Plaintiff's allegation that the "BBC maintains an office" in Coral Gables, *see* FAC ¶ 15, such an office would not establish general jurisdiction over the BBC. *See Carmouche*, 789 F.3d at 1204 (court lacked general jurisdiction over foreign corporation alleged to have Florida address). Indeed, all three U.S. courts to look at the issue in claims against the BBC refused to find general jurisdiction on the basis that a related company has an office in the forum. *See Brown v. Showtime Networks*, 394 F. Supp. 3d 418, 434 (S.D.N.Y. 2019) (no general jurisdiction based on "the mere facts that BBC airs television programming in New York and has a subsidiary in New York"); *Hit Bound Music v. BBC Films*, 2017 WL 5640543, at *2 (C.D. Cal. June 28, 2017) (no general jurisdiction over BBC in California, despite subsidiary having Los Angeles office); *see also Lovingood v. Discovery Commc'ns*, 2015 WL 5719169, at *8 (N.D. Ala. Sept. 30, 2015) (same, where "BBC is not incorporated in Alabama, and it does not have its principal place of business in Alabama").

Moreover, the employees in the Coral Gables office are *not* employed by Defendant, but by BBC News USA, Inc., a separate entity. *See* Burgess Decl. ¶¶ 9-10, 12. Most perform services for BBC Mundo, the Spanish language service of the BBC's World Service, and the rest perform services for BBC Monitoring, BBC World Service business development, and BBC News' international operations. *Id.* ¶ 12. None of the people who work in the Coral Gables office had any connection to the Documentary. *Id.* Likewise, while Plaintiff alleges that "BBC Studios Americas Inc. ["BBCSA"], a BBC subsidiary, also operates out of" the Coral Gables office, FAC ¶ 15, that is false, *see* Decl. of Martyn Freeman ("Freeman Decl.") ¶ 17. BBCSA does not have any office in Florida. *Id.* BBCSA is incorporated in Delaware and has its principal place of business in New York. *Id.* BBCSA is a separate legal entity from the BBC, it had no connection to the Documentary, and it was not involved in marketing or promotion of the Documentary. *Id.* ¶¶ 17-18.

### *3. The allegations about BBC.com are wrong and inapt.*

Plaintiff also cannot base general jurisdiction on the fact that BBC.com publishes news coverage of Florida or that BBC.com has subscribers in Florida. FAC ¶¶ 16-17. As set forth below, the BBC did not even distribute the Documentary on BBC.com. *See* Telling Decl. ¶ 25. Moreover, the simple facts that BBC.com "maintain[s] a website accessible from Florida" and sells subscriptions in Florida do not suffice to confer jurisdiction over anyone, let alone the BBC in this case. *Carmouche*, 789 F.3d at 1204-05 (citing *Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010); *Daimler*, 571 U.S. at 139); *see also, e.g.*, *Wood v. Netflix*, 2025 WL 918078, at *11 (M.D. Fla. Mar. 26, 2025) (no general jurisdiction over Netflix, which is not incorporated or based in Florida, but has Florida subscribers). Otherwise, jurisdiction "would presumably be available in every other State," which would be an "exorbitant exercise[] of all-purpose jurisdiction" violating due process. *Daimler*, 571 U.S. at 139. Indeed, BBC.com is "the BBC's international-facing website," Freeman Decl. ¶ 13, with news on every state and many countries.[8]

Likewise, while Floridians can subscribe to BBC.com, so can residents of any state. *Cf., e.g.*, *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 414 (2017) (Montana courts lacked general jurisdiction over Texas-based railway despite having 2,000 miles of track and 2,000 employees in Montana). Overall, Plaintiff cannot meet his burden to show that Defendant is "essentially at home" in Florida. The BBC is not subject to general personal jurisdiction here.

## II. THE COMPLAINT FAILS TO STATE A CLAIM

If the Court agrees it lacks jurisdiction, it can and should proceed no further. However, dismissal also is warranted as the Complaint fails to state a defamation or FDUTPA claim.

When ruling on a Rule 12(b)(6) motion, the Court need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Eleventh Circuit has held that where, as here, First Amendment defenses are raised, early dismissal is favored given the "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation," which "would constrict" the "'breathing space' needed to ensure robust reporting on public figures and events." *Michel v. NYP Holdings*, 816 F.3d 686, 702 (11th Cir. 2016) (quoting *N.Y. Times v. Sullivan*, 376 U.S. 254, 271-72 (1964)). All the more so when Plaintiff is among the most powerful

[8] *See, e.g.*, *Nebraska*, BBC.com, https://www.bbc.com/news/topics/c40rjmqdw1mt; *Mongolia*, BBC.com, https://www.bbc.com/news/topics/cjnwl8q4qm2t.

and high-profile individuals in the world, on whom the BBC reports every day. The chilling effect here is clear, where Plaintiff repeatedly sues the news media over coverage of his political career. Federal courts in Florida frequently dismiss defective defamation claims like this one at the pleading stage. *See*, *e.g.*, *Trump v. CNN*, 2025 WL 3213203, at *2 (11th Cir. Nov. 18, 2025) (per curiam); *Turner v. Wells*, 879 F.3d 1254, 1259-60 (11th Cir. 2018); *Michel*, 816 F.3d at 706.

**A. The Complaint Fails to State a Claim for Defamation**

To state a defamation claim, Plaintiff must plausibly allege "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official . . .; (4) actual damages; and (5) the statement [was] defamatory." *Turner*, 879 F.3d at 1262 (citing *Jews for Jesus v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). Plaintiff's defamation claim fails as a matter of law for several independent reasons.

***1. Plaintiff has not pleaded, and will not be able to prove, actual harm.***

First, Plaintiff failed to plead, and will not be able to prove, that the Documentary caused him any cognizable injury. Plaintiffs suing media companies for defamation must plead and prove actual damages, even where, as here, they purport to claim defamation *per se*. *Corsi v. Newsmax Media*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (Florida "eliminate[d] presumed damages for defamation *per se* actions against media defendants" (citing *Mid-Fla. Television v. Boyles*, 467 So. 2d 282, 283 (Fla. 1985)); *see Edelstein v. WFTV*, 798 So. 2d 797, 798 (Fla. 4th DCA 2001) (per curiam) ("[A] plaintiff suing a media defendant must . . . plead and prove actual injury."). Here, because Plaintiff failed to plead actual damages, claiming only vague, conclusory "injury to [his] personal reputation," FAC ¶ 131, his claim fails as a matter of law. *See Anheuser-Busch v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to show actual damages); *Zimmerman v. Allen*, 2014 WL 3731999, at *9 (Fla. 18th Cir. Ct. June 30, 2014) (noting that Florida requires defamation plaintiffs to "plead and prove" actual damages and holding that because "a litany of news media entities" other than defendant created "negative publicity" about plaintiff, "the challenged . . . statements . . . could not have been the required 'but for' cause of [plaintiff's] alleged injuries"), *aff'd*, 212 So. 3d 376 (Fla. 5th DCA 2015); *Harrington v. Veritext*, 2025 WL 1591614, at *21 (S.D. Fla. May 1, 2025) (dismissal proper where plaintiff "fails to plausibly allege . . . actual damages"), *R&R adopted*, 2025 WL 3282698 (Oct. 24, 2025), *aff'd*, 2026 WL 2151073 (11th Cir. July 27, 2026).

The outcome of the 2024 election also will not support a plausible allegation of damages

here. President Trump won re-election on November 5, 2024, *after* the Documentary aired. He carried Florida by a commanding 13-point margin, improving over his 2020 and 2016 results.[9] Moreover, when the Documentary aired, Plaintiff had already been charged by a grand jury on four counts stemming from his alleged efforts to overturn the 2020 election, in an "indictment contain[ing] various allegations regarding Trump's conduct in connection with the events of January 6 itself," including that he "allegedly 'directed the crowd in front of him to go to the Capitol,'" where they "eventually 'broke into the building.'" *Trump v. United States*, 603 U.S. 593, 628-29 (2024). Similarly, in 2022 the U.S. House of Representatives January 6 Committee found that "Donald Trump instructed [supporters] to march to the Capitol on January 6th to 'take back' their country."[10] Given the many allegations prior to the Documentary's release regarding Plaintiff's Speech, the fact that the Documentary was never broadcast in the U.S.—and that after its release, the President won reelection and carried Florida by a wide margin—Plaintiff cannot plausibly claim that the Documentary harmed his reputation.

***2. The Complaint fails to plausibly plead actual malice.***

Plaintiff also fails to plausibly allege, as he must, that Defendant published the Documentary with actual malice—that is, knowing the Documentary was false or while entertaining serious doubts as to its truth. *See Sullivan*, 376 U.S. at 279-80. Because Plaintiff claims the Documentary carried a defamatory implication, "to show actual malice," he must plausibly allege "*not only* that the [BBC] knew the defamatory meaning was false, but *also* 'that the [BBC] either intended to communicate the defamatory meaning or knew of the defamatory meaning and w[as] reckless in regard to it.'" *Block v. Matesic*, 789 F. Supp. 3d 1131, 1167-68 (S.D. Fla. 2025) (quoting *Kendall v. Daily News Publ'g*, 716 F.3d 82, 90 (3d Cir. 2013) (emphasis in original)); *see also Klayman v. City Pages*, 650 F. App'x 744, 749-50 (11th Cir. 2016). This requirement applies

[9] *See Fla. Div. of Elections*, *supra* n.2.

[10] *Final Report: Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol* at 5 (Dec. 22, 2022), https://www.govinfo.gov/content/pkg/GPO-J6-REPORT/pdf/GPO-J6-REPORT.pdf; *see also, e.g.*, *Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) ("According to the plaintiffs," a group of Capitol Police officers, "President Trump's actions, including ultimately his speech on January 6, sparked the ensuing riot at the Capitol."); *Carroll v. Trump*, 663 F. Supp. 3d 380, 381 (S.D.N.Y. 2023) ("[S]ome individuals charged with crimes in connection with the January 6, 202[1] events at the United States Capitol have argued that their actions were attributable to what the individuals perceived, rightly or wrongly, as incitement by Mr. Trump."); *infra* n.11 (collecting cases in which defendants facing January 6-related charges attributed their acts to Plaintiff).

to allegations that "literally true statements are conveyed in such a way as to create a false impression," such as by "juxtapos[ing] a series of facts so as to imply a defamatory connection between them" or "creat[ing] a defamatory implication by omitting facts." *Block*, 789 F. Supp. 3d at 1155. Plaintiff's theory of liability tracks a defamation-by-implication claim in charging that the BBC's editing of his words and "omitting" others created the "false . . . message that President Trump fomented violence." FAC ¶¶ 135(b)-(c), 142. Accordingly, he must plausibly allege both that the BBC *knew* the Documentary was false and *intended* to create that false impression.

Additionally, Plaintiff cannot, as the FAC tries to, create an actionable statement or implication by citing one clip but ignoring the rest of the Documentary. Courts consider challenged statements in the context of the full publication. *See, e.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1315-16 (11th Cir. 2020); *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999). The lack of actual malice is underscored by the fact that the brief clip, which shows 12 seconds of Plaintiff's speech on January 6 as context to remind U.K. audiences of the investigations and other challenges faced by Plaintiff, is part of an hour-long film with extensive coverage of his supporters and balanced coverage of his path to reelection. His claim that the Documentary is "overwhelming[ly]" "negative," FAC ¶ 91, is irrelevant, because even taking his allegations as true, "[a]n intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood." *Don King Prods. v. Walt Disney*, 40 So. 3d 40, 44-46 (Fla. 4th DCA 2010). This is especially so for this Plaintiff, the most public of figures.

Plaintiff falls well short of actual malice. He fails to plausibly allege facts showing that Defendant knowingly intended to create a false impression. Rather, as the BBC Chair explained in an open letter to the U.K. Parliament, "the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters and what was happening on the ground at that time." FAC Ex. K at 3 & n.7. Indeed, nothing better reflects how Plaintiff's supporters understood his remarks than their own statements, and over 100 defendants charged with offenses related to January 6 told the courts that they interpreted Plaintiff's remarks as a call to action.[11]

[11] *See, e.g.*, Def.'s Mot. for Modification of Bond at 13, *U.S. v. Pezzola*, No. 21-cr-52 (D.D.C. Feb. 10, 2021), ECF 15 (Proud Boys member who breached barricades and smashed Capitol window said he "was responding to the entreaties of the then commander in chief, President Trump . . . to

Allegations that the Documentary was edited "intentionally, with actual malice," *e.g.*, FAC ¶ 135, are "'mere conclusory statements' . . . insufficient to support a cause of action." *Michel*, 816 F.3d at 704; *Turner*, 879 F.3d at 1273 (allegations that defendants "knowingly and recklessly" ignored or deliberately avoided learning information are insufficient to plead actual malice when "the complaint [does] not set forth facts demonstrating that the [d]efendants acted in these ways").

Plaintiff's claims about the BBC's independent adviser, the creators of a 2022 BBC *Newsnight* episode, Liz Cheney, and various British politicians are also unavailing. FAC ¶¶ 65-85, 99-106. Actual malice "ha[s] to be brought home to the persons in the . . . organization having responsibility for the publication," *Sullivan*, 376 U.S. at 287, yet Plaintiff never claims that any of these individuals made the Documentary. Nor does he plausibly allege that anyone who *did* make the Documentary said the BBC *intended* a false and defamatory depiction. *See, e.g.*, FAC ¶¶ 65-70 (describing former independent adviser Michael Prescott's criticism of the Documentary but not alleging that he created it or said its creators intended a false depiction); *id.* ¶¶ 115-18 (arguing that the BBC previously reported on the exact words of the Speech but not alleging that the reporters of that article had anything to do with the Documentary).

Plaintiff's allegation that "the BBC has strayed from accepted standards of journalistic integrity," *id.* ¶ 66, also does not suffice. "Actual malice requires more than a departure from reasonable journalistic standards." *Michel*, 816 F.3d at 703. Plaintiff's allegations that the BBC failed to contact him for comment before publishing the Documentary, even if assumed true at this stage, are thus insufficient to establish actual malice. *See id.* ("[A] failure to investigate, standing

---

'stop the steal'"); Def.'s Mot. for Review and Revocation of Detention Order at 2-3, 6, *U.S. v. Jackson*, No. 21-cr-395 (D.D.C. Feb. 22, 2021), ECF 10 (stating that his "behavior at the Capitol is indicative of an individual incited by the President"); Def.'s Mot. for Pretrial Release at 10, *U.S. v. Chansley*, No. 21-cr-3 (D.D.C. Feb. 23, 2021), ECF 12 ("[B]ut for the specific words of the then-President during his January 6, 2021 speech, the Defendant [the QAnon Shaman] would not have walked down Pennsylvania Avenue and would not have gone into the U.S. Capitol Building."); Def's Letter in Supp. of Sentencing Mem. at 4, *U.S. v. Mattice*, No. 21-cr-657 (D.D.C. July 2, 2022), ECF 62-2 (defendant who pulled down barricades and sprayed chemical at police said he "hear[d] President Trump tell the crowd that everyone was going to march on Capitol Hill, to fight for our country"); Def.'s Resp. to Gov't Mot. at 4, 6-7, Def.'s Mot. for Variance/Downward Departure at 6, *U.S. v. Southard-Rumsey*, No. 21-cr-387 (D.D.C. July 7, 2023), ECF 59 (defendant who pushed officers down stairs and grabbed officers' batons and a metal stanchion to threaten other officers stated that "she was following the directive [of] then President Trump, Commander in Chief"). These court records are judicially noticeable. *See* Fed. R. Evid. 201; *Universal Express v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (per curiam).

on its own, does not indicate the presence of actual malice."). Neither would allegations that the BBC omitted portions of Plaintiff's Speech (as it would have to do to condense an hour-long speech into twelve seconds), FAC ¶ 119-20, absent any material change of meaning, *see Moore*, 174 F.4th at 886. Similarly, not disclosing every instance in which a video clip has been edited or "not a carbon copy" of what was said does not amount to actual malice. FAC ¶ 109.

The BBC also publicly apologized for the unintentional result "that the way the speech was edited did give the impression of a direct call for violent action," and issued a retraction on its website and iPlayer. *See* FAC ¶¶ 58-59 & Ex. K. While Plaintiff wields the BBC's public apology as "proof positive of actual malice," *id.* ¶¶ 110-11, the opposite is true: the BBC's apology for any unintentional, mistaken impression that the Documentary may have created militates *against* a finding of actual malice. *See Nelson Auto Ctr. v. Multimedia Holdings*, 951 F.3d 952, 959 (8th Cir. 2020) ("[R]eadiness to print a retraction weighs *against* malice."(emphasis added) (cleaned up)).

Finally, allegations of the BBC's "ill-will," *e.g.*, FAC ¶¶ 63, 132, speak to "express or 'ordinary' common-law malice—not *actual* malice," and therefore are misplaced. *Block*, 789 F. Supp. 3d at 1171; *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999) ("Ill-will . . . plays no role in determining whether a defendant acted with 'actual malice.'").

***3. The Documentary contains protected expressions of opinion.***

The Documentary contains protected expressions of opinion, including from Plaintiff's ardent supporters. *Cf.* FAC ¶¶ 87-98. It depicts hotly contested events tied to Presidential elections, including January 6, 2021, which have been the subject of extensive controversy and litigation. Plaintiff alleges that the Documentary is not privileged as opinion because it does not contain an exact copy of what Plaintiff said verbatim during his Speech. *Id.* ¶¶ 124-25. But this misunderstands what the opinion of that portion of the Documentary is. The Documentary, in featuring and condensing the 70-minute-long Speech into about twelve seconds, conveys an opinion of what the audience understood Plaintiff to say. *See id.* Ex. K at 3 and n.7 ("the purpose of editing the clip was to convey the message of the speech made by President Trump so that Panorama's audience could better understand how it had been received by President Trump's supporters."). Even if the Documentary is reasonably interpreted to report that Plaintiff encouraged the crowd to violently storm the Capitol on January 6, that is an opinion on a matter of public concern, heavily protected under defamation law. *See, e.g.*, *CNN*, 2025 WL 3213203, at *2 (affirming dismissal of President Trump's defamation case because network's description of his

election challenges as the "Big Lie" "is not readily capable of being proven true or false").

**B. The Complaint Fails to State a Claim for Violation of FDUTPA**

Plaintiff's FDUTPA claim also fails under the single-action rule. Because "a single publication sustains a single cause of action," plaintiffs cannot "elude the constitutional safeguards that are part and parcel of defamation law by 'simply renaming the cause of action and repleading the same facts.'" *Bongino v. Daily Beast*, 477 F. Supp. 3d 1310, 1320 (S.D. Fla. 2020) (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992)). Thus, "[i]f the defamation count fails, the other counts based on the same publication must fail as well." *Id.*; *see also Klayman v. Jud. Watch*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014) (same). The sole allegedly "deceptive" or "unfair" practice here is broadcasting the Documentary. FAC ¶¶ 157-58. Because Plaintiff's FDUTPA claim arises from the same publication as his defamation claim, it must be dismissed.

Nor can Plaintiff show that FDUTPA even applies here. FDUTPA covers acts "in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). In claims against publications, "the statute applies only to commercial speech—or, 'expression related solely to the economic interests of the speaker and its audience.'" *Bongino*, 477 F. Supp. 3d at 1321 (quoting *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017)). Yet Plaintiff contests the Documentary's editing and distribution. FAC ¶¶ 157-58. He does not and cannot allege that it was purely commercial speech: as the Eleventh Circuit has held, "magazines and newspapers often have commercial purposes, but those purposes do not convert the individual articles within these editorial sources into commercial speech." *Tobinick*, 848 F.3d at 952. Indeed, Plaintiff's allegation that the Documentary violated FDUTPA because "it solicited viewers of the Documentary not to vote for [Plaintiff]" underscores the non-economic nature of Plaintiff's claims. FAC ¶ 158. At bottom, Plaintiff cannot salvage his deficient defamation claim with a deficient FDUTPA claim. *See Hustler Mag. v. Falwell*, 485 U.S. 46, 53 (1988) (First Amendment protections apply to non-defamation claims targeting speech on public figures); *Fridovich*, 598 So. 2d at 69 ("[A] plaintiff is not permitted to make an end-run around a successfully invoked defamation privilege" by bringing another type of claim). The FDUTPA claim is plainly ancillary and the Court should not permit it to proceed.

**CONCLUSION**

For each and all of the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint with prejudice for lack of personal jurisdiction and failure to state a claim, and grant all such other and further relief as the Court deems just and proper.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), the BBC requests that the Court set a hearing on this motion. A hearing would permit the parties to address the BBC's arguments on the threshold issue for the Court of personal jurisdiction, including the flatly incorrect allegations of the FAC as reflected in the BBC's evidentiary submissions, as well as Plaintiff's failure to state a claim for defamation or FDUTPA violations stemming from the Documentary. The BBC estimates that the time required for argument would be one hour.

Dated: August 24, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**
1909 K Street, NW
Washington, DC 20006-1157
Tel: (202) 661-2218
Fax: (202) 661-2299

By: *<u>/s/ Charles D. Tobin</u>*
Charles D. Tobin
Fla. Bar No.: 816345
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
Yanni Chen (*pro hac vice*)
Richard W. Miller (*pro hac vice*)
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com
cheny@ballardspahr.com
millerrw@ballardspahr.com

*Attorneys for Defendant*