# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP,<br><br>Plaintiff,<br><br>v.<br><br>BRITISH BROADCASTING CORP.,<br><br>Defendant. | Case No. 1:25-cv-25894-JTK-EAL |

**LIST OF DEFENDANT'S WRITTEN DISCOVERY REQUESTS STILL IN DISPUTE**

- **Defendant's Interrogatory No. 10.**
  - **No. 10:** Identify all Persons with whom You have communicated regarding any aspect of the January 6, 2021 "Stop the Steal" rally, including planning the event, Your January 6, 2021 speech at the event, and discussions about the event after the fact.
- **Defendant's Requests for Admission Nos. 62-64, 66, 68-73, 75-80, 86-88, 93-96, 104, 106, 109, 110, 120, 121, and 124-152.**[1]
  - **No. 62:** Admit that when You published the Tweet at 1:42 am on December 19, 2020 saying, "Statistically impossible to have lost the 2020 Election. Big protest in Washington, D.C. Be there, will be wild!," Your intent was for protestors to convince Vice President Pence to decline to certify President Biden as the winner of the 2020 Election on January 6, 2021. Jan. 6 Rep't at 499-501.
  - **No. 63:** Admit that after You published the Tweet at 1:42 am on December 19, 2020 saying, "Statistically impossible to have lost the 2020 Election. Big protest in Washington, D.C. Be there, will be wild!," members of armed groups such as the Proud Boys and Oath Keepers began planning to attack the Capitol on January 6, 2021. Jan. 6 Rep't at 499-501.

[1] Additionally, on August 26, 2026, Plaintiff stated that he would provide answers to previously objected-to Requests for Admission Nos. 15, 83-85, 89-92, 101, 103, 105, and 107-108, but he has not yet provided those answers. *See* ECF 144-1 at 3.

- **No. 64:** Admit that at a dinner on December 27, 2020, You spoke with Roger Stone regarding Your plans for Your January 6 Speech. Jan. 6 Rep't at 519.

- **No. 66:** Admit that, when the Senate met to certify the results of the 2020 Election on January 6, 2021, Your aim was for Vice President Pence to count the votes of the groups of people calling themselves electors in the seven states that You lost in the 2020 Election who purported to vote for You (e.g., in Arizona, Georgia, Michigan, Nevada, New Mexico, Pennsylvania, and Wisconsin) instead of the electors who voted for President Biden. Jan. 6 Rep't at 341-42.

- **No. 68:** Admit that on January 4, 2021, You held a meeting in the Oval Office with Vice President Pence and John Eastman, during which You and Eastman encouraged Vice President Pence not to certify President Biden's victory in the 2020 Election when Congress met on January 6, 2021. Jan. 6 Rep't at 428.

- **No. 69:** Admit that during the January 4, 2021 Oval Office meeting You had with Vice President Pence and John Eastman, Eastman admitted in front of You that if Vice President Pence refused to certify the 2020 Election results for President Biden on January 6, 2021, Vice President Pence would be in violation of the Electoral Count Act of 1887. Jan. 6 Rep't at 428, 447.

- **No. 70:** Admit that You repeatedly made public statements, including during speeches and on social media, saying that Vice President Pence had the power to deliver You a victory in the 2020 Election on January 6, 2021. Jan. 6 Rep't at 428.

- **No. 71:** Admit that You met with Vice President Pence in the Oval Office on January 5, 2021 and again asked him to refuse to certify the 2020 Election results for President Biden on January 6, 2021. Jan. 6 Rep't at 452.

- **No. 72:** Admit that prior to and on the day of January 6, 2021, Vice President Pence repeatedly rejected your demands that he not certify the 2020 Election results for President Biden on January 6, 2021. Jan. 6 Rep't at 428.

- **No. 73:** Admit that when You published the Tweet at 11:06 am on January 5, 2021 stating, "The Vice President has the power to reject fraudulently chosen electors," Vice President Pence had already told You that he would not reject the lawfully chosen electors, and John Eastman had already told You this would violate the Electoral Count Act. Jan. 6 Rep't at 449.

- **No. 75:** Admit that when You published the Tweet at 9:58 pm on January 5th, 2021, stating that You and Vice President Pence were "in total agreement that the Vice President has the power to act" to block the certification of the 2020 Election results on January 6, 2021, Vice President Pence had not in fact told You that he agreed he had the power to act, and instead told You he disagreed. Jan. 6 Rep't at 35, 454.

- **No. 76:** Admit that in the 24-hour period before Your January 6 Speech, Roger Stone, Rudy Giuliani, Bernard Kerik, Boris Epshteyn, John Eastman, Michael

Flynn, and others gathered at the Willard Hotel in Washington, D.C. to discuss plans for the January 6 rally. *See* Jan. 6 Rep't at 518; Jacqueline Alemany et al., *Ahead of Jan. 6, Willard Hotel in Downtown D.C. Was a Trump Team 'Command Center' for Effort to Deny Biden the Presidency*, Wash. Post (Oct. 23, 2021), https://www.washingtonpost.com/investigations/willard-trump-eastman- giuliani-bannon/2021/10/23/c45bd2d4-3281-11ec-9241-aad8e48f01ff_story.html.

- **No. 77:** Admit that You spoke with Rudy Giuliani within the 24-hour period before Your January 6 Speech and discussed ways to prevent the 2020 Election certification, when Giuliani was at the Willard Hotel. *See id.*

- **No. 78:** Admit that You spoke with Steve Bannon within the 24-hour period before Your January 6 Speech and discussed ways to prevent the 2020 Election certification, when Bannon was at the Willard Hotel. *See id.*

- **No. 79:** Admit that You spoke with Roger Stone within the 24-hour period before Your January 6 Speech and discussed ways to prevent the 2020 Election certification, when Stone was at the Willard Hotel. *See id.*

- **No. 80:** Admit that You spoke with John Eastman within the 24-hour period before Your January 6 Speech and discussed ways to prevent the 2020 Election certification, when Eastman was at the Willard Hotel. *See id.*

- **No. 86:** Admit that when You spoke with Vice President Pence by phone at approximately 11:20 am on January 6, 2021, You again told Vice President Pence to block the certification of the 2020 Election results and Vice President Pence again refused to do so. Jan. 6 Rep't at 457-58, 583.

- **No. 87:** Admit that at approximately 11:30 am on January 6, 2021, after You spoke with Vice President Pence and he again refused to block the certification of the 2020 Election results, You directed Stephen Miller to reinsert lines mentioning Vice President Pence into Your January 6 Speech. Jan. 6 Rep't at 583-84.

- **No. 88:** Admit that You spoke with Rudy Giuliani on the morning of Your January 6 Speech, before his own speech at the Ellipse. Jan. 6 Rep't at 433.

- **No. 93:** Admit that when You were in Your vehicle departing from the Ellipse after You concluded Your January 6 Speech, at approximately 1:17 pm on January 6, 2021, the members of the U.S. Secret Service in the vehicle told You that You could not go to the Capitol because it was not safe. Jan. 6 Rep't at 587.

- **No. 94:** Admit that You became angry when You were told by Secret Service at approximately 1:17 pm on January 6, 2021 that that You could not go to the Capitol because it was not safe. Jan. 6 Rep't at 587.

- **No. 95:** Admit that after You were told by Secret Service at approximately 1:17 pm on January 6, 2021 that that You could not go to the Capitol because it was

not safe, You tried to grab the wheel of the vehicle to steer it toward the Capitol. Jan. 6 Rep't at 588.

- **No. 96:** Admit that You continued to request to go to the Capitol to join your supporters even after returning to the White House on the afternoon of January 6, 2021. Jan. 6 Rep't at 588.

- **No. 104:** Admit that the Select Committee found that there were more than 100 times during Your January 6 Speech in which You falsely claimed that the 2020 Election had been stolen from You, including by voter fraud. Jan. 6 Rep't at 232.

- **No. 106:** Admit that prior to January 6, 2021, the meetings of the U.S. Congress to certify the results of Presidential elections pursuant to the Electoral Count Act of 1887 had operated in a peaceful and orderly manner for more than 130 years. Special Counsel Rep't at 15.

- **No. 109:** Admit that, on January 6, 2021, after You learned the Capitol was being attacked, You did not call Vice President Pence to ask whether he was safe. Jan. 6 Rep't at 466.

- **No. 110:** Admit that on January 6, 2021, after You learned the Capitol was being attacked, You did not call law enforcement or military officials to direct them to stop the attack. Jan. 6 Rep't at 577.

- **No. 120:** Admit that on the afternoon of January 6, 2021, for hours after returning to the White House at approximately 1:21 pm, you watched Fox News's coverage of the attack on the Capitol from the Presidential Dining Room. Jan. 6 Rep't at 593.

- **No. 121:** Admit that on the afternoon of January 6, 2021, after returning to the White House at approximately 1:21 pm and after learning an attack on the Capitol was underway, You made calls to Members of Congress asking them to object to the certification of the 2020 Election results. Jan. 6 Rep't at 593-94.

- **No. 124:** Admit that on January 6, 2021, after You published a Tweet at 4:17 pm, telling Your supporters "you're very special" and asking them to "go home," Your supporters listened to You and began leaving the Capitol within minutes. Jan. 6 Rep't at 579, 606.

- **No. 125:** Admit that on January 6, 2021, when You published a Tweet at 6:01 pm, saying "These are the things and events that happen when a sacred landslide election victory is so unceremoniously & viciously stripped away from great patriots who have been badly & unfairly treated for so long. Go home with love & in peace. Remember this day forever!," You were aware of the violent attack that had occurred at the Capitol. Jan. 6 Rep't at 580, 607.

- **No. 126:** Admit that on January 6, 2021, when You were departing to the Executive Residence at the White House at around 6:27 pm, You said to a member of Your staff, "Mike Pence let me down." Jan. 6 Rep't at 580, 607.

- **No. 127:** Admit that an estimated 250 law enforcement officers were injured and five people died in connection with the events of January 6, 2021, within days of the attack. Jan. 6 Rep't at 711.

- **No. 128:** Admit that on January 6, 2021, the aim of law enforcement officers within the U.S. Capitol Police and other law enforcement agencies was to quell the violence and permit the certification process to continue—not to intentionally escalate the violence or harm civilians. Jan. 6 Rep't at 6.

- **No. 129:** Admit that, in the early morning hours of January 7, 2021, after a delay of several hours due to the attack on the Capitol, Vice President Pence lawfully certified President Biden as the winner of the 2020 Election. Jan. 6 Rep't at 469.

- **No. 130:** Admit that U.S. District Judge David Carter described the efforts of You and Eastman to prevent the certification of President Biden as the winner of the 2020 Election on January 6, 2021 as "a campaign to overturn a democratic election, an action unprecedented in American history," "a coup in search of a legal theory," and as an effort that "would have permanently ended the peaceful transition of power, undermining American democracy and the Constitution," and that likely violated at least two Federal laws. Jan. 6 Rep't at 430 (quoting Order Re Privilege of Documents Dated January 4-7, 2021 at 44, *Eastman v. Thompson*, 594 F. Supp. 3d 1156 (C.D. Cal. Mar. 28, 2022)).

- **No. 131:** Admit that on January 7, 2021, when Your staff asked You to give a speech denouncing the January 6 attack on the Capitol, You wanted to include in the speech that You would pardon individuals who faced charges related to their participation in the attack, but omitted that statement at Your lawyers' direction. Jan. 6 Rep't at 581.

- **No. 132:** Admit that on August 1, 2023, a federal grand jury in the District of Columbia charged You with four felony offenses arising from Your efforts to unlawfully retain power by using fraud and deceit to overturn the 2020 election results. *See* Special Counsel Rep't at 9; *United States v. Trump*, No. 23-cr-257 (D.D.C.).

- **No. 133:** Admit that the Special Counsel found, following the investigation, that "the evidence established that the violence was foreseeable to Mr. Trump, that he caused it, that it was beneficial to his plan to interfere with the certification, and that when it occurred, he made a conscious choice not to stop it and instead to leverage it for more delay." *See* Special Counsel Rep't at 74.

- **No. 134:** Admit that after the Supreme Court held in 2024 that You were immune from prosecution for certain misuse of official power alleged in the indictment against You, a second grand jury found probable cause to return a superseding indictment charging the same offenses based on Your non-immunized conduct. *See* Special Counsel Rep't at 9; Superseding Indictment, ECF 226, *United States v. Trump*, No. 23-cr-257 (D.D.C.).

- **No. 135:** Admit that more than 1,500 individuals were charged with crimes related to their participation in events that occurred at or near the Capitol on January 6, 2021.

- **No. 136:** Admit that more than 1,200 individuals were convicted of crimes related to their participation in events that occurred at or near the Capitol on January 6, 2021.

- **No. 137:** Admit that on January 20, 2025, You commuted the sentences of 14 individuals and pardoned all of the remaining individuals who were convicted of criminal offenses related to events that occurred at or near the Capitol on January 6, 2021.

- **No. 138:** Admit that on May 4, 2023, a jury found Dominic Pezzola guilty of six felonies related to his participation in events that occurred at or near the Capitol on January 6, 2021, including obstruction of an official proceeding, conspiracy to prevent members of Congress or federal officers from discharging their duties, and assaulting, resisting, or impeding officers.

- **No. 139:** Admit that on September 1, 2023, Dominic Pezzola was sentenced to 120 months' imprisonment and 36 months' probation after being convicted of six felonies related to his participation in events that occurred at or near the Capitol on January 6, 2021.

- **No. 140:** Admit that Dominic Pezzola, a member of the Proud Boys, was one of the first rioters to physically breach the Capitol on January 6—including by breaching barricades, tearing down fencing, and smashing a Capitol window with a stolen police riot shield—and led members of the crowd into the Capitol.

- **No. 141:** Admit that Dominic Pezzola stated in court filings that on January 6, 2021, he "acted out of the delusional belief that he was a 'patriot' protecting his country," and "was responding to the entreaties of the then commander in chief, President Trump," who "maintained that the election had been stolen and it was the duty of loyal citizens to 'stop the steal.'" Def.'s Mot. for Modification of Bond at 13, *United States v. Pezzola*, No. 1:21-cr-00052-TJK (D.D.C. Feb. 10, 2021), ECF No. 15.

- **No. 142:** Admit that Dominic Pezzola yelled "Trump won!" as he left court following his sentencing hearing.

- **No. 143:** Admit that on January 20, 2025, You commuted the sentence of Dominic Pezzola to time served.

- **No. 144:** Admit that on January 18, 2021, Emmanuel Jackson was charged with assault on a federal officer and four other criminal offenses related to his participation in events that occurred at or near the Capitol on January 6, 2021.
- **No. 145:** Admit that Emmanuel Jackson was one of the first rioters to enter the Capitol on January 6, 2021 and repeatedly struck law enforcement officers, including with a metal baseball bat.

- **No. 146:** Admit that Emmanuel Jackson stated in court filings that "President Trump invited Americans to attend his January 6, 2021, 'Stop the Steal' rally and declared 'we fight, we fight like hell because if you don't fight like hell you're not going to have a country anymore. You'll never take back our country with weakness '[y]ou have to show strength,''" that Jackson's "behavior at the Capitol is indicative of an individual incited by the President," and that "on January 6, 2021, the President made 'statements that encouraged—and foreseeably resulted in—imminent lawless action at the Capitol.'" Def.'s Mot. for Review and Revocation of Detention Order at 2-3, 6, *United States v. Jackson*, No. 1:21-cr-00395-TJK (D.D.C. Feb. 22, 2021), ECF No. 10.

- **No. 147:** Admit that on January 20, 2025, You pardoned Emmanuel Jackson.

- **No. 148:** Admit that on September 3, 2021, Jacob Anthony Chansley, also known as Jake Angeli, pleaded guilty to obstruction of an official proceeding, related to his participation in events that occurred at or near the Capitol on January 6, 2021.

- **No. 149:** Admit that on November 17, 2021, Jacob Chansley was sentenced to 41 months' imprisonment related to his participation in events that occurred at or near the Capitol on January 6, 2021.

- **No. 150:** Admit that Jacob Chansley, often called the "QAnon Shaman," was one of the first rioters to enter the Capitol on January 6, 2021, carried a six-foot spear into the Capitol, scaled the Senate dais, sat in Vice President Pence's seat, and called Vice President Pence a "fucking traitor."

- **No. 151:** Admit that Jacob Chansley stated in court filings that "Defendant has been consistent in his assertion that but for the actions and words of the President, he would not have appeared in Washington, DC to support the President and, but for the specific words of the then-President during his January 6, 2021 speech, the Defendant would not have walked down Pennsylvania Avenue and would not have gone into the U.S. Capitol Building." Def.'s Mot. for Pretrial Release at 10, *United States v. Chansley*, No. 1:21-cr-00003-RCL (D.D.C. Feb. 23, 2021), ECF No. 12.

- **No. 152:** Admit that on January 20, 2025, You pardoned Jacob Chansley.

- **Defendant's Requests for Production Nos. 3, 16, 22, 37-47, and 56-125.**[2]

  - **No. 3:** All Documents and Communications Concerning the BBC, from October 28, 2024 to the filing of this Action.

  - **No. 16:** All Documents and Communications between You and Federal Communications Commission Chair Brendan Carr regarding Defendants and/or the Documentary.

  - **No. 22:** All Documents and Communications Concerning Your claim in Paragraph 51 of the First Amended Complaint that "October Films Ltd . . . distributed the Documentary into Florida."

  - **No. 37:** All Documents and Communications Concerning October Films Ltd.

  - **No. 38:** All Documents and Communications Concerning Blue Ant Media.

  - **No. 39:** All Documents and Communications Concerning Little Dot Studios.

  - **No. 40:** All Documents and Communications Concerning Your claim that you did not explicitly or implicitly call for violent action on January 6, 2021.

  - **No. 41:** All Documents and Communications, Concerning your Speech and/or the subsequent unrest at the Capitol, that You provided to the U.S. House Select Committee to Investigate the January 6th Attack on the U.S. Capitol.

  - **No. 42:** All Documents and Communications, Concerning your Speech and/or the subsequent unrest at the Capitol, that You provided to the U.S. Senate Committee on Homeland Security and Government Affairs.

  - **No. 43:** All Documents and Communications, Concerning your Speech and/or the subsequent unrest at the Capitol, that You provided to Special Counsel Jack Smith.

  - **No. 44:** All Documents and Communications, Concerning your Speech and/or the subsequent unrest at the Capitol, that You provided to any other federal, state, or local agency or official.

  - **No. 45:** All of Your telephone call logs from January 1, 2021 to January 20, 2021.

---

[2] For the Requests for Production, the BBC offered during a meet-and-confer with opposing counsel to provide revised paragraph numbers that correspond to the First Amended Complaint, since the paragraph numbers in these discovery requests, as originally propounded, corresponded to the initial Complaint. Opposing counsel accepted that offer, and BBC has provided those updated revised paragraph numbers here as well.

- **No. 46:** All of Your calendars, schedules, and daily diaries from January 1, 2021 to January 20, 2021.

- **No. 47:** All Documents and Communications Concerning the "Stop the Steal" rally on January 6, 2021 and the speeches given at that event, including Your speech. For the avoidance of doubt, this includes planning the "Stop the Steal" rally and Your speech, and includes all Communications with any of the following persons: Stephen Bannon; Christina Bobb; Jeffrey Clark; John Eastman; Boris Epshteyn; Michael Flynn; Rudy Giuliani; Preston Haliburton; Bernard Kerik; William Ligon; Ed McBroom; Stephen Miller; Russell Ramsland; Roger Stone; Phil Waldron; and Kelli Ward, as well as all drafts of Your January 6, 2021 speech and all Communications about those drafts.

- **No. 56:** All Documents and Communications Concerning Your claim in Paragraph 131 of the First Amended Complaint that "President Trump's damages take the form of . . . severe diminishment and tarnishing of his reputation as a politician."

- **No. 57:** All Documents and Communications analyzing, assessing, evaluating, or attributing the cause of the "severe diminishment and tarnishing of his reputation as a politician" alleged in Paragraph 131 of the First Amended Complaint.

- **No. 58:** All Documents and Communications Concerning the monetary value of Plaintiff's "reputation as a politician."

- **No. 59:** All Documents and Communications quantifying or attempting to quantify the amount of the "severe diminishing and tarnishing of his reputation as a politician" alleged in Paragraph 139 of the First Amended Complaint.

  **No. 60:** All Documents and Communications Concerning Your claim in Paragraph 139 of the First Amended Complaint that "President Trump's damages take the form of . . . severe diminishment and tarnishing of his reputation as a . . . leader."

- **No. 61:** All Documents and Communications analyzing, assessing, evaluating, or attributing the cause of the "severe diminishment and tarnishing of his reputation as a . . . leader" alleged in Paragraph 139 of the First Amended Complaint.

- **No. 62:** All Documents and Communications Concerning the monetary value of Plaintiff's "reputation as a . . . leader."

- **No. 63:** All Documents and Communications quantifying or attempting to quantify the amount of the "severe diminishing and tarnishing of his reputation as a . . . leader" alleged in Paragraph 135 of the First Amended Complaint.

- **No. 64:** All Documents and Communications Concerning Your claim in Paragraph 135 of the First Amended Complaint that "President Trump's damages take the form of . . . severe diminishment and tarnishing of his reputation as a . . . businessman in the eyes of the American public and around the world."

- **No. 65:** All Documents and Communications analyzing, assessing, evaluating, or attributing the cause of the "severe diminishment and tarnishing of his reputation as a . . . businessman in the eyes of the American public and around the world" alleged in Paragraph 135 of the First Amended Complaint.

- **No. 66:** All Documents and Communications Concerning the monetary value of Plaintiff's "reputation as a . . . businessman in the eyes of the American public and around the world."

- **No. 67:** All Documents and Communications quantifying or attempting to quantify the amount of the "severe diminishing and tarnishing of his reputation as a . . . businessman in the eyes of the American public and around the world" alleged in Paragraph 135 of the First Amended Complaint.

- **No. 68:** A copy of any license agreement wherein Plaintiff licensed the right to use his name to any third party between 2020 and the present.

- **No. 69:** All Documents and Communications Concerning any agreement wherein Plaintiff licensed the right, offered to license the right, or received an offer to license the right, to use Plaintiff's name to or from any third party.

- **No. 70:** A copy of any license agreement wherein Plaintiff licensed to any third party the right to use any Trademark owned by Plaintiff between 2020 and the present.
- **No. 71:** All Documents and Communications Concerning any license, offer to license the right, or receipt of an offer to license the right, to use any Trademark owned by Plaintiff to or from any third party.

- **No. 72:** Documents sufficient to demonstrate the amount of revenue Plaintiff received from licensing his name for each year between 2020 and the present.

- **No. 73:** Documents sufficient to demonstrate the amount of revenue Plaintiff received from licensing any Trademark he owns between 2020 and the present.

- **No. 74:** Documents sufficient to demonstrate the amount of revenue received by Plaintiff or Plaintiff's Affiliated Entities from licensing any Trademark owned by any Affiliated Entities between 2020 and the present.

- **No. 75:** All Documents and Communications Concerning the royalty or other monetary compensation requested or that should be requested in connection with

the licensing of Plaintiff's name and/or Trademarks and/or Trademarks owned by Plaintiff's Affiliated Entities from 2020 to the present.

- **No. 76:** All Documents and Communications Concerning the monetary compensation received or obtained by Plaintiff or one of Plaintiff's Affiliated Entities in connection with the licensing of Plaintiff's name and/or Trademarks and/or Trademarks owned by Plaintiff's Affiliated Entities from 2020 to the present.

- **No. 77:** All Documents and Communications Concerning the impact to Plaintiff's "brand" and/or reputation as a politician and/or reputation as a leader and/or reputation as a businessman and/or Trademarks as a result of Plaintiff's conviction on thirty-four felony counts for falsifying business records in the case captioned *The People of the State of New York vs. Donald J. Trump*.

- **No. 78:** All Documents and Communications Concerning the impact to Plaintiff's "brand" and/or reputation as a politician and/or reputation as a leader and/or reputation as a businessman and/or Trademarks as a result of the allegation that Plaintiff mishandled classified documents as set forth in the indictment in the case captioned *United States of America v. Donald J. Trump, et al.* in the United States District Court for the Southern District of Florida.

- **No. 79:** All Documents and Communications Concerning the impact to Plaintiff's "brand" and/or reputation as a politician and/or reputation as a leader and/or reputation as a businessman and/or Trademarks as a result of the allegation that Plaintiff conspired to defraud the United States under Title 18 of the United States Code, obstructed an official proceeding and conspired to obstruct an official proceeding under the Sarbanes–Oxley Act of 2002, and conspired against rights under the Enforcement Act of 1870 as alleged in the indictment in the case captioned *United States of America v. Donald J. Trump* in the United States District Court for the District of Columbia.

- **No. 80:** All Documents and Communications Concerning the impact to Plaintiff's "brand" and/or reputation as a politician and/or reputation as a leader and/or reputation as a businessman and/or Trademarks as a result of Plaintiff being found liable for sexual abuse against Ms. E. Jean Carroll.

- **No. 81:** All Documents and Communications Concerning the impact to Plaintiff's "brand" and/or reputation as a politician and/or reputation as a leader and/or reputation as a businessman and/or Trademarks as a result of Plaintiff being found liable for the defamation of Ms. E. Jean Carroll.

- **No. 82:** All Documents and Communications Concerning the impact to Plaintiff's "brand" and/or reputation as a politician and/or reputation as a leader and/or reputation as a businessman and/or Trademarks as a result of Plaintiff's alleged connection to Mr. Jeffrey Epstein.

- **No. 83:** To the extent not otherwise requested, all Documents and Communications Concerning any analysis, evaluation, assessment, evaluation, or consideration of the impact that any act that Plaintiff took, could take, or refrained from taking as President of the United States had or could have on Plaintiff's personal financial interests and/or the value of Plaintiff's "brand" and/or reputation as a politician and/or reputation as a leader and/or reputation as a businessman and/or Trademarks.

- **No. 84:** All Documents and Communications Concerning the refusal of any third party to provide or offer provide monetary compensation to Plaintiff as a result of Defendants' alleged conduct.

- **No. 85:** To the extent not otherwise requested, all Documents and Communications Concerning the impact to Plaintiff's "brand" and/or reputation as a politician and/or reputation as a leader and/or reputation as a businessman and/or Trademarks as a result of Defendants' alleged conduct.

- **No. 86:** All Documents and Communications Concerning the impact to Plaintiff's "brand" and/or reputation as a politician and/or reputation as a leader and/or reputation as a businessman and/or Trademarks as a result of Plaintiff's conduct following his loss in the 2020 United States Presidential Election.

- **No. 87:** All Documents relating to the prosecution and/or maintenance of any Trademark application or registration that Plaintiff alleges was harmed by Defendants' alleged conduct.

- **No. 88:** All Documents relating to the validity of Plaintiff's Trademarks, including Documents sufficient to demonstrate that Plaintiff has continuously used each Trademark in connection with each good or service for which it is registered or for which Plaintiff claims to possess common law rights.

- **No. 89:** All Documents to the quality control measures Plaintiff has conducted with respect to each licensee of any of Plaintiff's Trademarks or the Trademarks owned by Plaintiff's Affiliated Entities from 2020 to the present.

- **No. 90:** All Documents and Communications Concerning the quality of any good or service bearing any of Plaintiff's Trademarks or any Trademark owned by Plaintiff's Affiliated Entities.

- **No. 91:** All Documents and Communications Concerning any quality control issues relating to any good or service bearing any of Plaintiff's Trademarks or any Trademark owned by Plaintiff's Affiliated Entities.

- **No. 92:** All Documents and Communications with any licensee of any Trademark owned by Plaintiff or Plaintiff's Affiliated Entities Concerning the BBC or Defendants' alleged conduct.

- **No. 93:** All Documents and Communications, from January 1, 2000, to present, in which You have alleged that You were defamed, libeled, slandered, cast in a false light, or suffered reputational injury of any kind.

- **No. 94:** Documents sufficient to identify every civil and criminal case, active at any point from January 1, 2000, to present, in which You have been named as a party in your individual capacity.

- **No. 95:** All Documents and Communications Concerning Your claims in Paragraph 30 of the complaint in the action styled *Donald J. Trump v. Timothy L. O'Brien, et al.*, Case No. L 545 06 (N.J. Super. Ct.), that the defendants' publications "undermined the public's association of Trump with the pinnacle of success in business and the luxury lifestyle, and the financial community's confidence in Trump's considerable financial resources and success" and that "Defendants' false and defamatory statements concerning Trump's net worth have thus inflicted severe injury to Trump's reputation and his ability to successfully carry out his business."

- **No. 96:** All Documents and Communications Concerning Your claim in Paragraph 38 of the complaint in the action styled *Donald J. Trump v. Timothy L. O'Brien, et al.*, Case No. L 545 06 (N.J. Super. Ct.), that the defendants' publications "[i]nflicted severe damage on [Your] business and reputation."

- **No. 97:** All Documents and Communications Concerning Your claim in Paragraph 42 of the complaint in the action styled *Donald J. Trump v. Timothy L. O'Brien, et al.*, Case No. L 545 06 (N.J. Super. Ct.), that "[a]s a proximate result of defendants' publication of the false and defamatory statements," You "suffered injury to [Your] personal and professional reputation in an amount . . . no less than $2.5 billion."

- **No. 98:** All Documents and Communications Concerning Your claim in Paragraph 12 of the Answer to Plaintiff's First Amended Complaint, Affirmative Defenses, and Counterclaim in the action styled *E. Jean Carroll v. Donald J. Trump*, Case No. 1:20-cv-7311 (S.D.N.Y.), that You have "been the subject of significant harm to [Your] reputation, which, in turn, has yielded an inordinate amount of damages sustained as a result."

- **No. 99:** All Documents and Communications Concerning Your claims in Paragraphs 36, 43, 45, 64 of the complaint in the action styled *Donald J. Trump v. Cable News Network, Inc.*, Case No. 0:22-cv-61842 (S.D. Fla.), that CNN caused harm to Your reputation and interfered with Your political career.

- **No. 100:** All Documents and Communications Concerning Your claim in Paragraph 43 of the complaint in the action styled *Donald J. Trump v. Cable News Network, Inc.*, Case No. 0:22-cv-61842 (S.D. Fla.), that the "[i]njury to [Your] reputation is readily apparent."

- **No. 101:** All Documents and Communications Concerning Your claim in Paragraph 4 of the complaint in the action styled *President Donald J. Trump v. American Broadcasting Companies, Inc., et al.*, Case No. 1:24-cv-21050 (S.D. Fla.), that You have "suffered and will continue to suffer harm as a direct result of Defendants' conduct" in that matter.

- **No. 102:** All Documents and Communications Concerning Your claim in Paragraph 74 of the complaint in the action styled *President Donald J. Trump v. American Broadcasting Companies, Inc., et al.*, Case No. 1:24-cv-21050 (S.D. Fla.), that the "articles, posts, and statements" listed in the complaint "have resulted in damages to [You] due to the false and misleading statements made" by the defendants in that matter.

- **No. 103:** All Documents and Communications Concerning the calculation of Your claim for compensatory damages in the action styled *President Donald J. Trump v. American Broadcasting Companies, Inc., et al.*, Case No. 1:24-cv-21050 (S.D. Fla.).

- **No. 104:** All Documents and Communications Concerning Your claim in Paragraph 16 of the complaint in the action styled *President Donald J. Trump v. CBS Broadcasting Inc.*, Case No. 2:24-cv-00236 (N.D. Tex.), that "immense harm" was caused to You personally and "to [Your] campaign" by "CBS's deceptive broadcasting conduct."

- **No. 105:** All Documents and Communications Concerning Your claim in Paragraph 64 of the complaint in the action styled *President Donald J. Trump v. CBS Broadcasting Inc.*, Case No. 2:24-cv-00236 (N.D. Tex.), that You "sustained damages in an amount . . . reasonably believed to be at least $10,000,000,000," in part because "CBS's distortion of the *60 Minutes* Interview damaged [Your] fundraising and support values by several billions of dollars."

- **No. 106:** All Documents and Communications Concerning Your claim in the "Nature of the Action" section of the complaint in the action styled *President Donald J. Trump v. Dow Jones & Company, Inc., et al.*, Case No. 1:25-cv-23232-DPG (S.D. Fla.), that You suffered "overwhelming financial and reputational harm" because of the article at issue there.

- **No. 107:** All Documents and Communications Concerning Your claim in Paragraph 42 of the complaint in the action styled *President Donald J. Trump v. Dow Jones & Company, Inc., et al.*, Case No. 1:25-cv-23232-DPG (S.D. Fla.), that the "above-referenced articles, posts, and false statements have resulted in

overwhelming financial and reputational damages to President Trump, expected to be in the billions of dollars."

- **No. 108:** All Documents and Communications Concerning Your claim in Paragraphs 55 and 65 of the complaint in the action styled *President Donald J. Trump v. Dow Jones & Company, Inc., et al.*, Case No. 1:25-cv-23232-DPG (S.D. Fla.), that You "ha[ve] been damaged" as "a proximate result of the" article at issue there.

- **No. 109:** All Documents and Communications Concerning the calculation of Your claim for compensatory damages in the action styled *President Donald J. Trump v. Dow Jones & Company, Inc., et al.*, Case No. 1:25-cv-23232-DPG (S.D. Fla.).

- **No. 110:** All Documents and Communications Concerning Your claim in Paragraph 150 of the amended complaint in the action styled *President Donald J. Trump v. Elizabeth Alexander, et al.*, Case No. 22-CA-000246 (Fla. Cir. Ct.), that "Defendants have inflicted inordinate harm" on You by publishing the statements at issue in that action.

- **No. 111:** All Documents and Communications Concerning Your claim in Paragraph 175 of the amended complaint in the action styled *President Donald J. Trump v. Elizabeth Alexander, et al.*, Case No. 22-CA-000246 (Fla. Cir. Ct.), that "Plaintiff's reputation, profession, and business have been damaged by the Pulitzer Statement" at issue in that action.

- **No. 112:** All Documents and Communications Concerning Your claim in Paragraphs 73-74 of the amended complaint in the action styled *President Donald J. Trump v. N.Y. Times Co., et al.*, Case No. 8:25-cv-02487-SDM-NHA (M.D. Fla.), that "discrete economic harms resulted from these defamatory statements," including "massive economic damage to his brand value and significant damage and injury to his future financial prospects."

- **No. 113:** All Documents and Communications Concerning Your request on page 139 of the amended complaint in the action styled *President Donald J. Trump v. N.Y. Times Co., et al.*, Case No. 8:25-cv-02487-SDM-NHA (M.D. Fla.), for $15 billion in compensatory damages.

- **No. 114:** All Documents and Communications Concerning Your claim in Paragraph 92 of the complaint in the action styled *President Donald J. Trump v. JPMorgan Chase Bank, N.A., et al.*, Case No. 2026-001356-CA-01 (Fla. Cir. Ct.), that You "have suffered and continue to suffer overwhelming financial and reputational harm."

- **No. 115:** All Documents and Communications Concerning Your request on pages 21, 23, and 26 of the complaint in the action styled *President Donald J. Trump v.*

*JPMorgan Chase Bank, N.A., et al.*, Case No. 2026-001356-CA-01 (Fla. Cir. Ct.), for $5 billion in compensatory damages.

- **No. 116:** All Documents and Communications sufficient to show any favorability, approval, opinion, or popularity polls or ratings for or about You, from January 1, 2021, to present.

- **No. 117:** All of Your tax returns, from all jurisdictions, including all attachments, schedules, and worksheets, for tax years 2021 to the present.

- **No. 118:** Documents sufficient to show all sources of Your income, including but not limited to the dollar figure attributable to each source, from January 1, 2021 to present. For the avoidance of doubt, income includes earned and unearned income.

- **No. 119:** Documents sufficient to show all of Your financial holdings, including but not limited to the financial value of each holding, from January 1, 2021 to present.

- **No. 120:** Documents sufficient to show the value of Your personal brand, including but not limited to the financial value of Your personal brand, from January 1, 2021 to present.

- **No. 121:** Documents sufficient to show all compensation, gifts, or items of $100,000 or more in value given to You from January 1, 2021 to present.

- **No. 122:** Documents sufficient to show all assets, including but not limited to the financial value of each asset, held by You, from January 1, 2021 to present.

- **No. 123:** Documents sufficient to show all of Your financial liabilities, including but not limited to the financial value of each financial liability, from January 1, 2021 to present.

- **No. 124:** All Documents and Communications Concerning any financial losses You or any of Your businesses have allegedly incurred as a result of the Documentary.

- **No. 125:** The "voluminous and comprehensive financial information made available" to the defendants in *Donald J. Trump v. Timothy L. O'Brien, et al.*, Case No. L 545 06 (N.J. Super. Ct.), as referenced in Paragraph 2 of the complaint in that action. *See also id.* ¶ 19 ("Trump directed that O'Brien be given complete access to comprehensive information … detailing his holdings, assets and ownership thereof.").