**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

PRESIDENT DONALD J. TRUMP,
an individual,

Plaintiff,

v.

BRITISH BROADCASTING CORPORATION,

Defendant.

Case No. 1:25-cv-25894-JTK

**JOINT MOTION FOR DISCOVERY HEARING ON DEFENDANT'S SUBPOENA TO NON-PARTY MAR-A-LAGO CLUB, LLC**

Plaintiff President Donald J. Trump ("Plaintiff" or "President Trump") and Defendant British Broadcasting Corporation (the "BBC" or "Defendant" and, together with Plaintiff, the "Parties") file this Joint Motion for Discovery Hearing on Defendant's Subpoena to Non-Party Mar-a-Lago Club, LLC ("Joint Motion"). In support thereof, the Parties state as follows:

**RELEVANT FACTUAL BACKGROUND**

Plaintiff filed this action alleging that the BBC published false and defamatory statements about him in violation of Florida's Unfair and Deceptive Trade Practices Act. *See generally* ECF No. 124, ¶¶ 128-132, 145-146, 161. Plaintiff alleges that the statements consist of edits to a speech that he made on January 6, 2021, which the BBC published in the Documentary that is defined in the Amended Complaint.

On September 25, 2026, Defendant served its Notice of Subpoena *Duces Tecum* (the "Subpoena") to non-party Mar-a-Lago Club, LLC ("MAL"). A true and correct copy of the Subpoena is attached to **Exhibit B**. Across 13 requests, the subpoena seeks two categories of information: Documents sufficient to identify the total number of applications for MAL membership from January 6, 2020, through January 6, 2026, and documents sufficient to identify the total cost of membership and initiation fees for a new MAL applicant from January 6, 2020, through January 6, 2026. This Joint Motion addresses the Parties' countervailing positions on the Subpoena.

**DISCOVERY DISPUTES REQUIRING RESOLUTION**

**A. Plaintiff's Position.**

In Plaintiff's conferral efforts in order to avoid bringing this Joint Motion, Defendant conceded that it "is not asking Mar-a-Lago to produce the names of any applicants or members, the reasons any applications were granted or denied, or any other personally identifiable information of any kind[.]" True and correct copies of the Parties' conferral emails are part of the source materials in **Exhibit B**. Instead, Defendant claims that the Subpoena seeks information to answer two questions: "(1) how many people applied to become a member at Mar-a-Lago each year from 2020 through 2026, and (2) how much money did those applicants who were approved pay to become members?" *Id*. However, none of this information would prove or disprove any of the disputed issues between the Parties. The membership at MAL has no bearing on whether the challenged statements are false, malicious, and defamatory (which they are), whether Defendant published them with actual malice (which is the case), or whether they damaged President Trump

(which they did).

Indeed, President Trump seeks to recover damages to his personal reputation *only*. *See* ECF No. 124, ¶¶ 128-132, 145-146, 161. He does not seek to recover economic harm that his entities, or entities that reflect his name, image, and likeness, might have sustained. *See id*. As the Court has previously held, "the operative Complaint's allegations control." *Trump v. British Broad. Corp.,* 2026 WL 2149449, at *4 (S.D. Fla. July 27, 2026). Because the First Amended Complaint does not allege harm beyond President Trump's personal reputation, whether MAL suffered a decline in membership will not prove or disprove whether President Trump has suffered any harm. *Sanchez v. Victoria Secret Stores, LLC*, 2022 WL 22863354, at *2 (S.D. Fla. Sept. 23, 2022) ("The scope of discovery is determined by the allegations of the pleadings and issues in the case."); *see also Carfagna v. Fisher Island Club, Inc.,* 796 F. Supp. 3d 1178, 1189 (S.D. Fla. 2025) (recognizing the distinction between defamatory statements that harm an individual's personal reputation and statements that injure their economic interests). Thus, the Subpoena is irrelevant under Rule 26(c). *See Continuum on S. Beach Condo. v. QBE Ins. Corp.,* 338 F.R.D. 668, 669 (S.D. Fla. 2021) ("Regardless of its Rule 45 standing, Plaintiff has standing to invoke Federal Rule of Civil Procedure 26. Therefore, the Undersigned is going to treat Plaintiff's motion as a motion for a protective order under Rule 26(c)."); *see also Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.,* 303 F.R.D. 673, 676 (S.D. Fla. 2014) ("The court may grant a party's request for a protective order if a subpoena served on a third party requests irrelevant information.").

Moreover, the Subpoena is yet another example of Defendant's improper, overreaching discovery tactics that the Court has previously rejected. *Trump v. British Broad. Corp.,* 2026 WL 2267438, at *4 (S.D. Fla. Aug. 6, 2026) ("The Court agrees with Plaintiff that the scope of discovery is not unlimited in nature. As has been said, the scope is limited to the framing of the pleadings."); *see also Trump v. British Broad. Corp.,* No. 1:25-CV-25894, 2026 WL 2873874, at *2 (S.D. Fla. Sept. 24, 2026) (quashing Defendant's subpoena to non-party Cassidy Hutchinson: "The parties should not turn the discovery in this lawsuit into a fishing expedition. Nor one that unnecessarily burdens a non-party such as Ms. Hutchinson. And that it definitively does."). When the Parties conferred, Defendant inquired if Plaintiff had a proposal to narrow the Subpoena. Because the Subpoena bears no connection as to the disputed issues framed by the First Amended Complaint, there is nothing to narrow. Narrowing presupposes a legitimate purpose, and the Subpoena has none.

Accordingly, the Subpoena was not served for a proper purpose, and was thus served in violation of Rule 26(g). *See Fernandez v. CMA CGM S.A.,* 2024 WL 6468420, at *3 (S.D. Fla. May 24, 2024) ("Rule 26(g) is the correct avenue for an imposition of sanctions relating to the instant dispute. Rule 26(g) provides that, by signing a discovery request, an attorney certifies that to the best of his or her knowledge, information, and belief formed after a reasonable inquiry, the discovery request is … (2) '***not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation***[.]'") (emphasis added); *see also Watkins v. Session*, 2021 WL 663759, at *4 (S.D. Fla. Feb. 19, 2021) (overruling objection that the discovery requests at issue were not "unnecessary, excessive and potentially harassing" and citing Rule 26(g) as the basis to overrule).

Consequently, the Subpoena should be quashed, and Defendant should be proportionally sanctioned for violating this Court's prior orders and Rule 26(g).

**B. Defendant's Position**.

Nearly a year into this litigation, Plaintiff still does not accept that he bears the burden of proving actual damages to maintain a defamation claim, or that the permissible scope of discovery includes records relevant to that element of his claim. Indeed, other than himself, Plaintiff has not disclosed a single witness to support any aspect of his claim, other than witnesses associated with the BBC or the making of the Documentary. The BBC's Subpoena is proper because it seeks the application numbers and fees at Mar-a-Lago—Plaintiff's signature membership club and base of social power—which are relevant to proving or disproving his thus-far unsubstantiated allegation of ***$10 billion*** in supposed reputational harm, and imposes a modest burden in doing so.

<u>**First**</u>, a defamation plaintiff must *prove* actual damages. *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). Plaintiff suggests that his claim for "reputational" damages removes that requirement, but that is incorrect. *See id.* at 1265-66 (no actual damages where plaintiff "had not presented any evidence of harm to its reputation at a consumer or distributor level, of loss of value, or of a need to engage in corrective advertising"); *see also* Robert D. Sack, Sack on Defamation § 10:5.1 & n.210 (5th ed. 2017) ("something beyond the plaintiff's own expressions of hurt or grief is—or should be—required" to prove reputational injury). Yet Plaintiff has thus far not produced *any* evidence to support his claim for $10 billion in reputational damages. Instead, he seeks to stop the BBC from obtaining concrete data on that very issue.

<u>**Second**</u>, the membership application numbers and fees at Mar-a-Lago are a uniquely

effective litmus test of Plaintiff's reputation. To prove reputational harm, Plaintiff must demonstrate that the challenged portion of the BBC's Documentary "deter[red] third persons from associating or dealing with him." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 139 (1951) (quoting Restatement of Torts § 559); *see also Mile Marker, Inc. v. Petersen Publ'g, LLC*, 811 So. 2d 841 (Fla. 4th DCA 2002). In most defamation cases, measuring the degree to which third persons have stopped associating with the plaintiff may be an abstract exercise. Not so for this Plaintiff. Mar-a-Lago possesses records reflecting the exact number of people who have applied to pay for the privilege of associating with Plaintiff and the exact amounts of money those applicants are willing to pay to do so. If those numbers have only gone up before and after the Documentary, as reporting indicates, that is probative of Plaintiff suffering no reputational injury.[1]

Plaintiff does not simply own Mar-a-Lago — the property is inextricably tied to his persona, as a place where people pay to associate with him. Plaintiff himself has gone so far as to call it the "center of the universe."[2] The proposition that Mar-a-Lago reflects Plaintiff's reputation is thus far from novel. *See, e.g.*, Antonio Fins, *Trump's Private Club Is Ground Zero For A Disruption-Themed Second Term: Inside Mar-A-Lago*, USA TODAY (Dec. 7, 2024) (reporting that the "Unite the Right" rally in Charlottesville in August 2017 "led more than two dozen charitable organizations to boycott Mar-a-Lago" and that "[c]lub revenues saw a 14% drop through 2019").

Even the expert for Plaintiff's namesake social media company, which is also represented by Plaintiff's counsel in a separate litigation,[3] has asserted that, to evaluate purported reputational harm to a politician, one must look at his political allies and supporters. *See* Sameer Somal & William Choslovsky, *Deconstructing Defamation Damages: A Three-Ring Look at Reputation*, 35 Midwest L.J. 69, 86 (2025) (noting reputational harm can "play[] out within the network of acquaintances and political colleagues" and "[f]or politicians," the analysis "includes voters"). The

---

[1] *See* Casey Tolan et al., *Soaring Revenue At Mar-A-Lago Shows How Trump's Business Interests And Politics Intersect*, CNN (July 1, 2026), https://www.cnn.com/2026/07/01/us/trump-financial-disclosure-mar-a-lago-doral-income-invs; Karen Yourish et al., *At Mar-a-Lago, Extremism Is Good for Business*, N.Y. Times (July 10, 2024), https://www.nytimes.com/interactive/2024/07/10/us/politics/mar-a-lago-republicans-trump.html.

[2] Adriana Gomez Licon & Michelle L. Price, *Trump Calls It The 'Center Of The Universe.' Mar-A-Lago Is A Magnet For Those Seeking Influence*, L.A. Times (Dec. 31, 2024), https://www.latimes.com/world-nation/story/2024-12-31/trump-calls-it-the-center-of-the-universe-mar-a-lago-is-a-magnet-for-those-seeking-influence.

[3] Mr. Somal served as an expert for Trump Media & Technology Group Corporation in *Trump Media & Tech. Group Corp. v. WP Co. LLC*, No. 8:23-cv-01535 (M.D. Fla. July 10, 2023).

same expert has emphasized the value of an objective measure of reputational damage. *See id.* at 89 ("As both state and federal courts have recognized, the path forward lies in evidence-based frameworks[.]"). Mar-a-Lago's membership application numbers and fees are highly probative of Plaintiff's reputation, and any purported damage thereto, within that very framework.

**Third**, the burden on Mar-a-Lago is indisputably minor. As Plaintiff's counsel concedes, the BBC seeks just two pieces of information from the club: (1) how many people applied to become a member at Mar-a-Lago each year from 2020 through 2026, and (2) how much money those applicants paid to become members. Indeed, as the BBC noted while conferring over this Subpoena, Plaintiff and Mar-a-Lago have *voluntarily* disclosed those membership fees. Despite this narrow scope and modest burden, the BBC inquired during the meet-and-confer with Plaintiff's counsel whether Plaintiff had a proposal to further narrow the Subpoena in a way that would alleviate Plaintiff's concerns while ensuring the BBC obtains the evidence it needs for this litigation. Plaintiff declined to provide such a proposal.

**Fourth**, Plaintiff's request for sanctions is meritless – and frankly ironic given his own non-compliance with the minimum requirements of discovery. On one hand, the BBC's Subpoena seeks relevant and probative information as to Plaintiff's asserted damages, an essential element of Plaintiff's defamation claim that he has yet to support in any capacity. On the other hand, Plaintiff has wholly flouted *his* discovery obligations, refusing to schedule his deposition; producing no documents of substance; and escalating each discovery dispute to impasse. *That* behavior, not the BBC's Subpoena, is grounds for sanctions. *Adana Investing, Inc. v. Wells Fargo Bank, N.A.*, 2017 WL 3668553, at *1 (S.D. Fla. Apr. 10, 2017) (granting sanctions where party failed to timely set a deposition and disclosed relevant documents after the close of discovery).

## CERTIFICATE OF CONFERRAL

On October 9, 2026, the Parties conferred over the phone to discuss the Subpoena but could not reach an agreement. Accordingly, the Parties seek opposing forms of relief related to the Subpoena. True and correct copies of the Parties' proposed orders regarding this Joint Motion are attached as **Exhibit A**.

## CONCLUSION

Based on the foregoing, the Parties respectfully request that the Court schedule a discovery hearing to resolve these disputes and award any other relief that the Court deems proper.

Dated: October 16, 2026

Respectfully submitted,

*/s/ Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
Jalaine Garcia
Florida Bar No. 58632
Ian Michael Corp
Florida Bar No. 1010943
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel: 305-614-4071
Fax: 305-440-4385
abrito@britopllc.com
jgarcia@britopllc.com
icorp@britopllc.com
apiriou@britopllc.com

Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*Admitted Pro Hac Vice*)

*Counsel to Plaintiff,*
*President Donald J. Trump*

*/s/ Charles D. Tobin*
Charles D. Tobin
Florida Bar No. 816345
Maxwell S. Mishkin (*pro hac vice*)
Yanni Chen (*pro hac vice*)
Ballard Spahr LLP
1909 K Street, NW
12th Floor
Washington, DC 20006
Tel: 202-661-2218
Fax: 202-661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
cheny@ballardspahr.com

Sasha Dudding (*pro hac vice*)
Ballard Spahr LLP
1675 Broadway
19th Floor
New York, NY 10019
Tel: 646-346-8094
duddings@ballardspahr.com

*Counsel to Defendant*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 16, 2026, the foregoing was served via the Court's CM/ECF System upon all counsel of record.

*/s/ Alejandro Brito*