**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

PRESIDENT DONALD J. TRUMP,
an individual,

Plaintiff,

v.

BRITISH BROADCASTING CORPORATION,

Defendant.

Case No. 1:25-cv-25894-JTK-EAL

**PLAINTIFF PRESIDENT DONALD J. TRUMP'S OMNIBUS OBJECTIONS TO AND APPEAL OF MAGISTRATE JUDGE'S ORDERS AT ECF NOS. 198, 200, AND 202**

Plaintiff, President Donald J. Trump ("Plaintiff" or "President Trump"), by and through undersigned counsel and pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Rule 4(a)(1) of the Magistrate Judge Rules of the Southern District of Florida, respectfully objects to and appeals from three paperless orders entered on October 27, 2026, by the Honorable Enjoliqué A. Lett, United States Magistrate Judge, following the October 22, 2026, discovery hearing ("Hearing"): (1) the Paperless Order Following Discovery Hearing (ECF No. 198) (the "Production Order"); (2) the Paperless Order Denying Plaintiff's Ore Tenus Motion for Protective Order Regarding Subpoena to Non-Party Mar-a-Lago Club, LLC (ECF No. 200) (the "MAL Order"); and (3) the Paperless Order Granting Defendant's Ore Tenus Motion to Compel Plaintiff's Deposition (ECF No. 202) (the "Deposition Order") (collectively, the "Orders"). In support, President Trump states:

## INTRODUCTION

This case concerns a twelve-second wrongful edit. The BBC deceptively, maliciously, and defamatorily spliced together two passages of President Trump's January 6, 2021, speech that were delivered nearly fifty-five minutes apart, omitted his express call to march "peacefully and patriotically," and broadcast the result as though the President had directly called for violence, which he never did. The BBC has since admitted that the edit created a "mistaken impression,"

and "should not have happened." After President Trump amended his complaint, the only compensatory injury in this case is the harm to his personal reputation. *See* Am. Compl. ¶¶ 128–132 (ECF No. 124).

The Orders wrongly depart from that framework in three respects. *First*, the MAL Order erroneously permits the BBC to obtain six years of membership-application counts and initiation-fee data from Mar-a-Lago Club, LLC ("MAL")—a separately organized, non-party private club that appears nowhere in the operative pleading—on the flawed theory that, because the President meets with foreign leaders at the property, the club's commercial performance measures injury to his "profession, occupation, and trade." That reasoning improperly revives, through a non-party, the entity-level economic-harm theory that the First Amended Complaint removed from this case. It also mistreats a relevance objection as a mere admissibility objection. It improperly authorized financial discovery from an entity affiliated with The Donald J. Trump Revocable Trust (the "Trust") at the same Hearing at which the Magistrate Judge reserved, for further briefing, whether the First Amended Complaint permits financial discovery from the Trust at all (it does not), and it cannot be reconciled with this Court's order quashing the BBC's subpoena to non-party Cassidy Hutchinson, which correctly explained that "this case is about a documentary aired by the BBC and, specifically, an allegation that the BBC 'spliced' two statements together," and found the non-party testimony that the BBC sought "largely irrelevant to the narrow issue in this lawsuit" (ECF No. 175 at 4).

*Second*, the Deposition Order does not merely require the President to sit for his deposition—an obligation he has never disputed. It warns of sanctions, "including dismissal of the lawsuit," if the sitting President of the United States does not appear by December 11, 2026, even though he has committed to a defined deposition window of January 11 through January 22, 2027, and even though the only obstacle to that window is a scheduling deadline that the Magistrate Judge acknowledged she has no authority to move.

*Third*, the Production Order makes a wrongful finding that Plaintiff's search for documents was inadequate, and attaches the same threat of dismissal "for failure to prosecute." It does so without any evidentiary basis, after counsel represented that a search was conducted, and after the Magistrate Judge rejected the BBC's request for a search audit.

Predetermined warnings of dismissal, announced before any non-compliance has occurred, and without any finding of willfulness, bad faith, or the inadequacy of lesser measures, are contrary


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

to law. They are especially inappropriate where, as here, the scheduling question is one that the Supreme Court has instructed must be informed by "[t]he high respect that is owed to the office of the Chief Executive." *Clinton v. Jones*, 520 U.S. 681, 707 (1997). Consistent with the representations that Plaintiff made in his written response and at the Hearing, Plaintiff is in the process of filing a motion to extend the discovery deadline, the dependent pretrial deadlines, and the trial date, together with an expedited motion to stay enforcement of the MAL Order and the December 11, 2026 deposition deadline pending the resolution of these Objections.[1] The Court should sustain these Objections, set aside the MAL Order, and vacate the sanction provisions and adverse findings of the Production Order and the Deposition Order.

## BACKGROUND

### A. The Claim and the Operative Pleading.

1. This is a defamation and FDUTPA action arising from the BBC's Panorama documentary, broadcast on October 28, 2024 (the "Documentary"), which deceptively, maliciously, and defamatorily spliced together two sentences of President Trump's January 6, 2021, speech, spoken nearly fifty-five minutes apart, and wrongly omitted his statement that "everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." *See generally* Am. Compl. (ECF No. 124). The BBC itself has described the challenged material as a "12-second cut" from a speech lasting more than seventy minutes (ECF No. 36 at 9, 12).

2. On August 10, 2026, with leave of Court (ECF No. 123), Plaintiff filed his First Amended Complaint, which replaced the original pleading's allegations of economic harm to President Trump's brand value, businesses, properties, and future financial prospects, and identifies personal reputational harm as the compensatory injury. Am. Compl. ¶¶ 128–132 (ECF No. 124). Those removed allegations were the sole basis for the Magistrate Judge's July 27, 2026, order compelling the non-party Trust to produce the financial records of approximately 400 affiliated entities. ECF No. 104 at 5, 7-8 (reasoning that "the operative Complaint's allegations control" and "open the door to the discovery at issue"). Judge Altman stayed that order because

[1] The Parties are conferring over the contents of the motion to extend, and may present it as a joint motion. However, if the Parties are unable to reach an agreement to do so, President Trump shall file his own motion seeking similar relief.


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

the amendment could eliminate its premise (ECF No. 116 at 3), which is what happened, and kept the stay in place pending a further discovery hearing (ECF No. 123 at 6). At the Hearing – the same hearing at which she wrongly authorized the MAL subpoena – the Magistrate Judge ordered briefing on whether the First Amended Complaint obviates the Trust subpoena, which it does, and ruled that Judge Altman's stay remains in effect until she decides the question (Tr. 157:21-158:15). Her paperless order memorializing that ruling sets briefing for November 10 and November 17, 2026 (ECF No. 205). That question remains pending. The Court has repeatedly held that discovery in this action is bounded by the pleadings. The Magistrate Judge's August 6, 2026, Omnibus Order held that "the scope of discovery is not unlimited in nature," and "is limited to the framing of the pleadings" (ECF No. 120 at 9), and that the complaint "does not extend so far as to entitle Defendants to re-litigate and discover every aspect of the events of January 6, 2021" (*id.* at 11).

3. On September 24, 2026, this Court quashed the BBC's subpoena to non-party Cassidy Hutchinson. Citing the Magistrate Judge's conclusion that "the scope of discovery is not unlimited in nature," this Court found that the testimony the BBC sought "seems largely irrelevant to the narrow issue in this lawsuit," explained that "this case is about a documentary aired by the BBC and, specifically, an allegation that the BBC 'spliced' two statements together that were actually made more than 55 minutes apart," and directed that "[t]he parties should not turn the discovery in this lawsuit into a fishing expedition. Nor one that unnecessarily burdens a non-party such as Ms. Hutchinson." (ECF No. 175 at 4–5). Discovery is currently set to close on December 18, 2026 (ECF No. 141).

**B. The Production Order (ECF No. 198).**

4. On October 9, 2026, the Magistrate Judge ordered Plaintiff to verify his interrogatory responses, and to produce documents responsive to the requests for production that the BBC had identified as no longer in dispute (ECF Nos. 176, 180). Plaintiff verified his interrogatory responses (Oct. 22, 2026 Hr'g Tr. ("Tr.") 4:18–22), and served his production. At the Hearing, counsel represented that, apart from what had been produced, "there are no additional documents to produce" in response to those requests (Tr. 5:8–23); that a search had been conducted and no further non-privileged responsive documents existed (Tr. 9:15–23; 12:13–16); and that the search was conducted through inquiry with the President's internal legal team on each request (Tr. 13:4–6). Counsel offered to provide custodian information upon request, noting that the BBC had

never asked for it before the hearing (Tr. 16:9–18:5).

5. The Magistrate Judge nonetheless stated, without any evidentiary basis, that it "strains credulity that a thorough search has been done," while expressly "not suggesting that that is any fault on behalf of counsel and counsel's team" (Tr. 18:17–22). The Magistrate Judge reasoned that a pre-suit letter produced in response to one request "would have had drafts" and "other communications about who's writing it" (Tr. 19:8–10). Those communications, by their nature, involve counsel. The Magistrate Judge then declined the BBC's request for an order requiring Plaintiff to disclose custodians, search terms, and date ranges, directing the parties instead to confer (Tr. 20:18–21:17).

6. The written Production Order requires Plaintiff to serve a privilege log by November 5, 2026, and any remaining responsive documents by November 23, 2026, recites the Court's "concerns about whether an adequate search for all responsive documentation occurred," and warns that "[f]ailure to comply with this order may result in sanctions, including but not limited to, dismissal of this action for failure to prosecute this case" (ECF No. 198).

**C. The MAL Order (ECF No. 200).**

7. On September 25, 2026, the BBC served notice of a subpoena to non-party MAL improperly seeking, across thirteen requests, documents sufficient to identify (1) the total number of applications for MAL membership, and (2) the total cost of membership and initiation fees for new applicants, each from January 6, 2020, through January 6, 2026 (ECF No. 187 at 1). Plaintiff sought a protective order under Rule 26(c) on the grounds that a non-party private club's membership and pricing data do not bear on whether President Trump's personal reputation was injured, and that the subpoena wrongly seeks to revive the entity-level damages theory that the First Amended Complaint removed (*id.* at 1–4; Tr. 42:24–54:20). In the alternative, Plaintiff asked that any discovery be limited to the January 2023-to-present window that the Magistrate Judge had previously found sufficient to compare conditions before and after the Documentary (Tr. 54:4–12).

8. The BBC's own conferral exhibit reflects that MAL's pricing is driven by scarcity: in a July 16, 2024 interview – more than three months before the BBC broadcast at issue here – MAL's manager stated that fees would rise because the club had only "four memberships to sell" (ECF No. 187-2 at 2). At the Hearing, the BBC made clear that its defense theory is that President


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

Trump's net worth "increased by at least $1.5 billion" after the Documentary (Tr. 56:18–21), and that he was "enriched by magnitudes" (Tr. 40:14–16).

9. The Magistrate Judge erroneously denied the protective order. She acknowledged that Plaintiff's position was "a fantastic argument with regard to admissibility" (Tr. 61:13–16), and the written order states that Plaintiff's argument "may be well taken as it relates to the admissibility of the sought-after evidence" (ECF No. 200). The MAL Order nonetheless held that, because "it is publicly known that President Trump often carries out his presidential duties in MAL," citing a White House web page that is not part of the record, MAL's "relationship with the profession and professional persona of President Trump" made the subpoena "a permissible basis of inquiry" (*id.*). The Magistrate Judge also allowed the full six-year period stated in the subpoena (Tr. 62:7–14). The MAL Order does not cite or distinguish this Court's order quashing the Hutchinson subpoena, on which Plaintiff relied in the Joint Motion and at the Hearing (ECF No. 187 at 2; Tr. 44:18–45:12; 54:17–20).

**D. The Deposition Order (ECF No. 202).**

10. In July 2026, Plaintiff agreed to sit for his deposition on October 16, 2026 (ECF No. 181 at 1–2). On September 28, 2026, more than two weeks in advance, counsel advised the BBC that "the President is no longer available for his deposition on October 16 due to other matters of national importance," and that counsel would provide a replacement date (ECF No. 181-2 at 3). On October 9, 2026, Plaintiff's counsel proposed that the parties jointly seek a limited extension of the discovery period so that the President could sit for deposition during the second or third week of January 2027 (ECF No. 181 at 2–3; Tr. 26:20–27:3). The BBC did not respond to that proposal, unilaterally terminated the parties' conferral efforts, and instead filed its motion (Tr. 27:4–9; ECF No. 192 at 2).

11. In his response, Plaintiff explained the constitutional considerations that govern the timing of a sitting President's deposition, committed to sit for deposition in January 2027, at a location designated in consultation with the United States Secret Service, and stated that he had no objection to an extension of the pretrial deadlines and, if necessary, a continuance of the trial date to accommodate that window (ECF No. 192 at 3–5). At the Hearing, counsel explained that the location and security arrangements for the deposition are dictated by the Secret Service, not by counsel, and that a defined range of dates allows those arrangements to be finalized as the date


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

approaches (Tr. 28:2–29:19). The BBC acknowledged that it "might be inclined . . . to ask Judge Kuntz to move the entire trial calendar and pretrial proceedings" (Tr. 25:1–3), and that if the discovery schedule were extended, "[t]he urgency will be lifted" (Tr. 35:13–16).

12. The Magistrate Judge stated that "there is no dispute that the plaintiff is refusing to sit for a deposition" (Tr. 31:21–22), but recognized that the dispute was "all about . . . timing" and that she did "not have jurisdiction to alter Judge Kuntz's scheduling order" (Tr. 31:23–32:7). The written Deposition Order states that "Plaintiff does not dispute that he must sit for a deposition; the only point of contention is the timing," wrongly finds that the President "unilaterally cancelled the deposition and did not offer alternative dates within the discovery period," orders him to sit for deposition on or before December 11, 2026, and warns that "[f]ailure to do so may result in sanctions, including dismissal of the lawsuit." The Order further notes that "another extension of the discovery deadline may be sought" and that, if Judge Kuntz grants one, the parties "may agree to a mutually convenient date" for the President's deposition within the extended period (ECF No. 202).

## STANDARD OF REVIEW

A magistrate judge's order on a non-dispositive pretrial matter is subject to review by the district judge, who "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); S.D. Fla. Mag. J. R. 4(a); *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1327–28 (11th Cir. 2020). A factual finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. An order is contrary to law when it fails to apply or misapplies governing statutes, rules, or precedent. *See Cole v. BASF Corp.*, 2024 WL 6954420, at *1–2 (S.D. Fla. Jan. 11, 2024); *Malibu Media, LLC v. Does 1, 2, 4–7, 11, 16, 17, & 21*, 923 F. Supp. 2d 1339, 1347 (M.D. Fla. 2013); *Howard v. Hartford Life & Accident Ins. Co.*, 2012 WL 3069384, at *2, 4–5 (M.D. Fla. July 26, 2012) (sustaining Rule 72 objections where the ordered discovery had no bearing on the issue to be decided). A magistrate judge may not "hear and determine" a motion "to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A). Any such disposition is reserved to the district judge, who reviews it *de novo*. *Id.* § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(3).


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

## ARGUMENT

### I. The Production Order's Adverse Finding Regarding Plaintiff's Search Is Clearly Erroneous.

Plaintiff does not object to serving a privilege log for responsive pre-suit communications, consistent with Local Rule 26.1(e)(2)(C) and the Magistrate Judge's ruling (Tr. 19:16–20), and has done so. Plaintiff served his privilege log on November 5, 2026, and will complete any supplemental production on or before November 23, 2026. Plaintiff's compliance with the Production Order is without waiver of these Objections, and without any waiver overall. Plaintiff objects to the Production Order's finding that his search may have been inadequate, and to the predetermined warning of dismissal that the Order attaches to that finding.

The finding has no evidentiary basis. Counsel represented, as an officer of the Court and subject to the certification obligations of Rule 26(g)(1), that a search was conducted, that each request was reviewed with the President's internal legal team, and that no further non-privileged responsive documents exist (Tr. 5:8–23; 12:13–16; 13:4–6). The BBC offered no evidence to the contrary. The Magistrate Judge expressly declined to attribute any fault to counsel (Tr. 18:21–22), and declined the BBC's request to order disclosure of custodians, search terms, and date ranges (Tr. 21:7–17). The Production Order could not, consistent with the record, enter a finding that casts doubt on the adequacy of the search, and then attach a warning of dismissal to it.

The three grounds on which the finding rests do not support it. The first is volume: Plaintiff's production is relatively small compared with the BBC's. However, the asymmetry is inherent in a defamation action. The BBC created, edited, and published the Documentary; the documents concerning its creation, publication, and the BBC's state of mind are the BBC's. *See Herbert v. Lando*, 441 U.S. 153, 160 (1979) (actual-malice inquiry focuses on the defendant's state of mind). The President's role was to deliver a speech that the BBC later wrongly, deceptively, maliciously, and defamatorily doctored (Tr. 17:9–18:5). Under these factual circumstances, the size of a production is not evidence that responsive documents may have been withheld. Rather, it simply reflects the obvious disparity in the volume of relevant documents held by the parties that arise from the BBC's actions.

The second ground is speculation that a pre-suit letter "would have had drafts" and "other communications about who's writing it" (Tr. 19:8–10). Those are communications with, and work

product of, counsel which would be addressed by the privilege log. Their potential existence says nothing about whether a reasonable search for non-privileged documents was conducted.

The third ground is "the steps counsel undertook to ensure that all responsive documents were collected" (ECF No. 198). The only step described in the record is counsel's request-by-request inquiry with the President's legal team (Tr. 13:4–6). Nothing in the record suggests that inquiry overlooked a custodian or repository (Tr. 21:7–17). A party cannot be compelled to produce documents that do not exist or are not within its possession, custody, or control. Fed. R. Civ. P. 34(a)(1); *Panchoosingh v. Gen. Labor Staffing Servs., Inc.*, 2009 WL 10667884, at *2 (S.D. Fla. July 20, 2009); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2019 WL 11648461, at *6 (M.D. Fla. Nov. 19, 2019). An order that requires production of "any remaining responsive documents" on pain of dismissal, while the Court has recorded its belief that more documents should exist, wrongly places Plaintiff in the untenable position of being sanctioned for failing to produce what he does not have in his possession.

The Court should set aside the Production Order's finding concerning the adequacy of Plaintiff's search, vacate its sanction provision for the reasons herein and those set out in Part IV below, and clarify that Plaintiff will have complied by serving the privilege log and producing any additional non-privileged responsive documents located after another reasonable search.

## II. The MAL Order Is Clearly Erroneous and Contrary to Law.

### A. The MAL Order Cannot Be Reconciled With This Court's Order Quashing the Hutchinson Subpoena.

One month before the Hearing, this Court defined this case and the limits of discovery within it. That ruling applied the Magistrate Judge's own Omnibus Order, and found that the BBC was attempting to do exactly what that order forbade. ECF No. 175 at 4 (citing ECF No. 120 at 9, 11). Contrasting the Hutchinson subpoena, which was "directed to the events of January 6, 2021," this Court explained that "this case is about a documentary aired by the BBC and, specifically, an allegation that the BBC 'spliced' two statements together that were actually made more than 55 minutes apart." *Id.* Measured against that "narrow issue," the Court found the non-party testimony that the BBC sought "largely irrelevant," and directed that "[t]he parties should not turn the discovery in this lawsuit into a fishing expedition. Nor one that unnecessarily burdens a non-party such as Ms. Hutchinson." *Id.* at 4–5; *see also id.* at 4 ("[D]istrict courts should not neglect their


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

power to restrict discovery . . . .” (quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979))). Plaintiff relied on that ruling in the Joint Motion and at the Hearing (ECF No. 187 at 2; Tr. 44:18–45:12; 54:17–20). The MAL Order, however, does not cite it, does not distinguish it, and does not explain how six years of a private club’s application counts and membership fees bear on the narrow issue that the Court identified.

They do not. If a subpoena “directed to the events of January 6, 2021” reached too far, a subpoena directed to a private club’s membership and fees reaches further still. In addition, if the testimony that the BBC sought from Ms. Hutchinson was “largely irrelevant to the narrow issue in this lawsuit,” a private club’s membership and fees, which concern neither the speech, the edit, the broadcast, nor the BBC’s state of mind, are even more remote. The BBC’s own attempted justification confirms the point. It seeks the data to show that the President was “enriched by magnitudes” after the Documentary (Tr. 40:14–16), which is a question about the President’s finances, not about the twelve-second edit that this Court identified as the subject of this case.

### B. The MAL Order’s Premise That Official Business at a Location Makes a Private Club’s Membership Data a Measure of the President’s Reputation Is Unsupported.

The MAL Order’s erroneous reasoning proceeds in three steps: the First Amended Complaint alleges injury to President Trump’s “profession, occupation, and trade” and “professional reputation” (Am. Compl. ¶¶ 135, 139); the President “often carries out his presidential duties in MAL”; therefore, MAL’s membership applications and fees are a “permissible basis of inquiry” into that injury. The conclusion does not follow from the premise.

President Trump’s current profession is the Presidency of the United States (Tr. 50:11–14). The subpoena does not seek any record concerning official business conducted at the MAL property. It seeks the commercial data of a separately organized limited liability company: how many people applied to join a private club, and what the club charged them. Whether foreign leaders meet with the President at Mar-a-Lago says nothing about how many private individuals applied for club membership, and nothing about the President’s standing in the community or in his office. The MAL Order’s only alleged support for the supposed connection is a White House web page that, at most, establishes where a meeting *occurred*. **A location at which official business is *conducted* is not a business whose sales measure the reputation of the official**. The MAL Order has no limiting principle: if the venue of presidential meetings converts that venue’s

commercial data into a reputational metric, every hotel, resort, or property at which the President has conducted official business becomes a target for damages discovery, which would be untenable.

Nor can a private club's application counts and pricing isolate any effect of the twelve-second edit depicted in the Documentary. Membership demand and pricing are driven by variables that have nothing to do with the Documentary: the club's capacity, its amenities, its own pricing decisions, and other commercial factors. (Tr. 53:15–54:3). The BBC's own exhibit confirms the point: MAL's manager attributed a fee increase to the fact that the club had only "four memberships to sell" (ECF No. 187-2 at 2). Data shaped by a fixed membership cap and scarcity pricing cannot tend to prove or disprove whether third parties were deterred from associating with the President because of the Documentary. Rule 26(b)(1) requires the Court to weigh "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." The MAL Order performed no such analysis; it found only that the subpoena was not burdensome to MAL (Tr. 62:4–6). The MAL subpoena must be reversed.

### C. The MAL Order Applied a Relevance Standard That Rule 26(b)(1) No Longer Recognizes.

The Magistrate Judge acknowledged that Plaintiff's argument—that MAL's commercial performance does not measure President Trump's personal reputation—"may be well taken as it relates to the admissibility of the sought-after evidence," and described it at the hearing as "a fantastic argument with regard to admissibility" (ECF No. 200; Tr. 61:13–16). The MAL Order then wrongly treated that concession as immaterial because "the scope of discovery is broader than the scope of admissibility." (ECF No. 200). That is legal error.

Rule 26(b)(1)'s statement that information "need not be admissible in evidence to be discoverable" does not relax the threshold requirement that the information must be "relevant to any party's claim or defense." Inadmissible information remains discoverable only "so long as it is otherwise within the scope of discovery." The 2015 amendments eliminated the former standard permitting discovery of information "reasonably calculated to lead to the discovery of admissible evidence," because that phrase had been used, "incorrectly, to define the scope of discovery." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. Plaintiff's argument was not


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

that the MAL data is relevant but excludable; it was that the data does not tend to prove or disprove *any* fact of consequence to the claim. If that argument is "well taken," the data is not relevant, and is not discoverable. The MAL Order did not find that MAL's membership data would tend to prove or disprove reputational harm; it found only that MAL is associated with the President's "professional persona." Association is not relevance. *See Herbert*, 441 U.S. at 177 ("[T]he requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied . . . .").

### D. The MAL Order Is Irreconcilable With the Operative Pleading and the Court's Prior Rulings.

Discovery is defined by the claims and defenses framed in the operative pleading. *Sanchez v. Victoria Secret Stores, LLC*, 2022 WL 22863354, at *2 (S.D. Fla. Sept. 23, 2022); ECF No. 120 at 9; ECF No. 104 at 8. The First Amended Complaint removed any claim for economic harm to the President's businesses, properties, or their commercial brand, and seeks recovery for injury to his personal reputation. Am. Compl. ¶¶ 128–132. The "actual injury" recoverable in defamation is not limited to out-of-pocket loss; its "more customary types" include "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974). Plaintiff will prove that substantial injury through, among other channels, expert survey and audience analysis, but not through the financial performance of any entity (Tr. 51:25–52:18). Nor does the amount of damages being sought change the analysis. The size of a demand for reputational injury does not make a non-party's sales data relevant to that injury; it bears on proportionality only *after* relevance is shown.

Pleading the trade-or-profession category of defamation *per se* does not change the analysis, and the Magistrate Judge has already drawn this line. In compelling the Trust's financial records, she noted that defamation *per se* "normally does not require an allegation of damages," looked past that label to "the facts pled," and tied the damages at issue to paragraphs 100 and 101 of the original Complaint, which alleged economic harm to Plaintiff's brand, properties, and businesses (ECF No. 104 at 6 n.6). The original Complaint pleaded defamation *per se* also, and that label did not open the Trust's books. The economic harm allegations did. Those allegations are gone. The same label cannot now improperly open MAL's books.

The BBC's stated purpose confirms that the subpoena is aimed at the abandoned theory.


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

Its attempted defense, as articulated at the Hearing, is that the President's net worth increased, and that he was "enriched by magnitudes" after the Documentary (Tr. 40:14–16; 56:18–21). That is an argument about past economic performance, not personal reputation. That is the same entity-level financial theory on which the BBC relied to obtain the Trust subpoena, and which the First Amended Complaint eliminated. The MAL Order thus wrongly permits, through a non-party, what the amendment removed from the case, contrary to the Omnibus Order's instruction that discovery is "limited to the framing of the pleadings," (ECF No. 120 at 9) and to this Court's admonition that discovery in this case must not become "a fishing expedition" that "unnecessarily burdens a non-party." ECF No. 175 at 5.

The overlap with the Trust subpoena is not merely conceptual. The Trust subpoena reaches every "Business owned, directly or indirectly, legally or beneficially, by The Donald J. Trump Revocable Trust" (ECF No. 52-2 at 8, ¶ 13), and its Appendix expressly lists Mar-A-Lago Club, L.L.C. among those entities (*id.* at 14, 17). Request No. 7 demands each entity's "annual and quarterly income statements, balance sheets, profit and loss statements, cash flow statements, and federal and state tax returns" (*id.* at 12)—the records that reflect MAL's membership and initiation-fee revenue. That demand has been stayed since August 6, 2026, and remains stayed until the Magistrate Judge rules on the pending briefing (ECF Nos. 116, 123; Tr. 158:4–15), and whether the First Amended Complaint permits it at all (it does not) is the question now being briefed under ECF No. 205. While that stay was in effect, the BBC served a notice of subpoena on MAL for a slice of the same entity's financial information (ECF No. 187 at 1), and BBC counsel conceded at the Hearing that the justification for the Trust subpoena is "pretty much the same" as the justification for the MAL subpoena (Tr. 153:4–23). The MAL Order thus improperly lets the BBC obtain through a second subpoena what it cannot obtain under the stayed one, and wrongly answers for one Trust-owned entity the very question the Magistrate Judge, at the same Hearing, reserved for the Trust as a whole. That is unjust and unlawful.

Finally, the Order's observation that MAL "has neither moved to quash the subpoena nor raised any burdensome objections" does not cure the defect. Nor does it distinguish the Hutchinson ruling. This Court first held that the BBC was attempting to do what the Omnibus Order forbade, and that the testimony was "largely irrelevant to the narrow issue in this lawsuit"; only then did the Court note that Ms. Hutchinson "has other reasons to avoid the deposition." ECF No. 175 at 4. That relevance holding does not depend on whether the recipient of a subpoena objects. As the


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

Magistrate Judge has confirmed (*see* ECF No. 205), a party has standing under Rule 26(c) to seek protection from a non-party subpoena that seeks irrelevant information, regardless of whether the non-party objects. *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 303 F.R.D. 673, 676 (S.D. Fla. 2014); *Continuum on S. Beach Condo. v. QBE Ins. Corp.*, 338 F.R.D. 668, 669 (S.D. Fla. 2021). A non-party's silence does not make irrelevant information relevant.

Consequently, the Court should set aside the MAL Order.

### E. Alternatively, the Temporal Scope Should Be Limited Consistent With the Magistrate Judge's Prior Ruling.

Even if some MAL discovery were permissible, which it should not be, the MAL Order's six-year period cannot be reconciled with the Magistrate Judge's own prior determination. In compelling financial discovery from the Trust, the Magistrate Judge limited production to January 1, 2023, forward, reasoning that the period would capture conditions immediately before and after the October 28, 2024, publication (ECF No. 104). Plaintiff asked that any MAL discovery be limited to that same window (Tr. 54:4–12). The MAL Order instead wrongly allowed the full period from January 6, 2020, through January 6, 2026, reasoning that "just having information after the airing of the broadcast does not give an adequate comparison basis" (Tr. 62:7–11). That reasoning does not reach Plaintiff's proposal. A window beginning January 1, 2023, includes nearly twenty-two months before the October 28, 2024, broadcast, which is the same pre-publication baseline the Magistrate Judge found sufficient in July, 2026 (ECF No. 104). The longer window adds nothing to a before-and-after comparison; it sweeps in the 2020 election, January 6, 2021, itself, and the 2024 campaign, events that would overwhelm any effect attributable to the Documentary and invite the very re-litigation of January 6 that the Omnibus Order prohibited (ECF No. 120 at 11).

Thus, if the Court is not inclined to set aside the MAL Order, which it absolutely should do, then, at a minimum, the Court should limit any production by MAL to January 1, 2023, through the present.

## III. The Deposition Order's Sanction Provision Rests on a Clearly Erroneous Premise and Disregards the Deference Owed to the Office of the President.

### A. The Record Does Not Show a Refusal to Sit.

Plaintiff does not object to sitting for his deposition. The Deposition Order itself recognizes


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

that "Plaintiff does not dispute that he must sit for a deposition" and that "the only point of contention is the timing" (ECF No. 202). Yet, the wrongful sanction provision rests on the contradictory premise, stated at the Hearing, that "there is no dispute that the plaintiff is refusing to sit for a deposition" (Tr. 31:21–22), and on the Deposition Order's incorrect finding that the President "unilaterally cancelled the deposition and did not offer alternative dates within the discovery period." The premise cannot be reconciled with the Deposition Order's own recognition that timing is "the only point of contention," and that the finding omits the facts that make it immaterial.

The President agreed to an October 16, 2026 date. More than two weeks before that date, the President's counsel notified the BBC that matters of national importance required the President to postpone his deposition, and committed to provide a replacement date (ECF No. 181-2 at 3). Counsel then proposed a defined window and a joint request for a limited extension of the discovery period (ECF No. 181 at 2–3; Tr. 26:20–27:3), to which the BBC never responded (Tr. 27:4–9). Plaintiff then committed, in writing, to sit for deposition between January 11 and January 22, 2027, with logistics to be coordinated with the Secret Service (ECF No. 192 at 4–5). That is the opposite of a refusal. The only reason that the committed window falls outside the current discovery period is the December 18, 2026, deadline, which the Magistrate Judge correctly recognized only this Court may alter (Tr. 32:1–7). The decision on which the Deposition Order relies holds that a plaintiff may not "stymie discovery, ignore his discovery obligations, and violate court orders." *Turner v. Trans Union, LLC*, 2019 WL 3484465, at *3 (S.D. Fla. July 26, 2019), *amended in part*, 2019 WL 5102451 (S.D. Fla. Oct. 11, 2019). However, the President is not engaging in any of those actions referenced in *Turner*, and *Turner* did not concern a President of the United States, nor a member of the Executive Branch, which are afforded special deference to their schedule. *See infra* § (III)(B). A plaintiff who offers a firm window and asks the presiding judge for a schedule that accommodates it has done none of the things referenced in *Turner*.

**B. The Order Did Not Account for the Constitutional Considerations That Govern a Sitting President's Deposition.**

The Supreme Court has instructed that "[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Clinton*, 520 U.S. at 707. The Court assumed that a President's


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

testimony would be taken "at a time that will accommodate his busy schedule," *id.* at 691–92, and expressed confidence that district courts would give "the utmost deference to Presidential responsibilities," *id.* at 709 (citation omitted). *See also Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 385 (2004) (the Executive's "constitutional responsibilities and status" are "factors counseling judicial deference and restraint" in the conduct of litigation against it (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 753 (1982))); *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) ("High ranking government officials have greater duties and time constraints than other witnesses."). Those considerations attach to the office, not to the President's position in the caption.

The Deposition Order does not cite *Clinton*, *Cheney*, or *In re United States*, and it does not weigh the President's constitutional responsibilities against the BBC's interest in a December deposition date rather than a January one. It also does not account for the security considerations that the Magistrate Judge herself acknowledged—that the details and location of the deposition are "going to be determined by President Trump and his security team" (Tr. 33:1–5)—or counsel's explanation that the Secret Service, not counsel, controls when that information can be provided (Tr. 28:2–22; 34:1–6). The failure to apply controlling Supreme Court guidance on the timing of a President's deposition is itself contrary to law.

### C. Plaintiff Intends to Move to Extend the Discovery Deadline, Pretrial Deadlines, and Trial.

Consistent with his written response (ECF No. 192 at 5) and with counsel's representations at the Hearing that Plaintiff would seek relief from the discovery deadline to accommodate the committed window (Tr. 26:25–27:3; 31:4–11; 34:7–21), Plaintiff is in the process of filing a motion to extend the discovery deadline, the dependent pretrial deadlines, and the trial date. Such motion shall be filed upon completion of the Parties' related conferral efforts, which are nearly complete. The Deposition Order anticipated precisely that motion (ECF No. 202), and the BBC acknowledged both that it might itself seek to move the entire calendar (Tr. 25:1–3; 26:7–9) and that an extension would lift any urgency (Tr. 35:13–16). The BBC will suffer no cognizable prejudice from a deposition taken in January rather than December if the schedule is adjusted to accommodate it. The Magistrate Judge's oral ruling likewise tied the December 11, 2026, deposition deadline date to the existing schedule, directing that the deposition proceed by that date


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

"unless Judge Kuntz determines otherwise" (Tr. 32:14–15; *see also id.* 32:9–11; 36:15–17).

Therefore, the Court should vacate the sanction provision of the Deposition Order. In the alternative, the Court should hold that provision in abeyance pending resolution of Plaintiff's motion to extend and, upon granting that motion, direct that the deposition proceed on a future date, to be fixed by the parties, at a location designated in consultation with the United States Secret Service.

## IV. The Predetermined Warnings of Dismissal in the Production Order and the Deposition Order Are Contrary to Law.

Both Orders wrongly warn that non-compliance "may result in sanctions," including dismissal. The Production Order specifies dismissal for "failure to prosecute." Those provisions should be vacated for three independent reasons.

**First**, dismissal is the most severe sanction available and may be imposed only on a finding of willful or bad-faith disregard of a court order, and a determination that lesser sanctions would not suffice, none of which is applicable here. *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993); *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337–38 (11th Cir. 2005) (dismissal under Rule 41(b) requires a clear pattern of delay or willful contempt and a specific finding that lesser sanctions would not suffice); *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006); *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985) (dismissal is a sanction of last resort). A failure to comply that results from inability, misunderstanding, or circumstances beyond the party's control does not support dismissal. *Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958); *Malautea*, 987 F.2d at 1542. Any sanction must also be "just." Fed. R. Civ. P. 37(b)(2)(A). Neither Order makes any of the required findings to demonstrate why any sanctions at all are fitting, or, at worst, why lesser sanctions, would not be appropriate. By announcing dismissal as an available consequence before any non-compliance has occurred, the Orders invert the inquiry: they wrongly prejudge the sanction without regard to the reasons for any future non-compliance, including, in the case of the deposition, the demands of the Presidency.

**Second**, the "failure to prosecute" framing has no footing in the record. Plaintiff opposed the BBC's request to stay discovery (Tr. 25:8–9), has taken seven depositions of BBC witnesses (*see* ECF No. 181 at 3), verified his interrogatory responses, and served his productions. A plaintiff


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

who is actively litigating his claim is not failing to prosecute it. The BBC's authorities underscore the point: *Navarro v. Cohan*, 856 F.2d 141, 141–42 (11th Cir. 1988), affirmed dismissal only after years of neglect and the failure of lesser sanctions, and *Samadi v. Bank of America, N.A.*, 476 F. App'x 819, 821–22 (11th Cir. 2012), involved a monetary sanction against a plaintiff who refused to appear after proper notice unless his own discovery demands were first met (*see* ECF No. 192 at 4). None of these circumstances are present here.

**Third**, a magistrate judge may not determine a motion "to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A). Any such sanction would be dispositive, would require a report and recommendation, and would be subject to *de novo* review by this Court. *Id.* § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(3). To the extent the Orders forecast that dismissal may follow from non-compliance, they should be clarified to reflect that any request for sanctions must be brought by properly noticed motion, decided on a developed record, and, if dispositive relief is sought, determined by the District Judge.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court sustain these Objections and: (1) set aside the MAL Order (ECF No. 200), and grant Plaintiff's motion for protective order, or, alternatively, if the MAL Order is not set aside, which it should be, limit any production to the period from January 1, 2023, through the present; (2) vacate the sanction provision of the Deposition Order (ECF No. 202), or, alternatively, hold it in abeyance pending resolution of Plaintiff's soon-to-be filed motion to extend and, upon granting that motion, direct that President Trump's deposition proceed on a date between January 11 and January 22, 2027, at a location designated in consultation with the United States Secret Service; (3) set aside the Production Order's (ECF No. 198) finding concerning the adequacy of Plaintiff's search and vacate its sanction provision; and (4) grant such further relief as the Court deems just and proper.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Undersigned counsel certifies that, on November 5, 2026, counsel for Plaintiff conferred with counsel for the BBC regarding the relief sought in this Objection, and the BBC noted that it opposes the requested relief.

Dated: November 10, 2026

Respectfully submitted,

**BRITO, PLLC**
2121 Ponce de Leon Blvd.
Suite 650
Coral Gables, FL 33134
Tel: 305-614-4071
Fax: 305-440-4385

*/s/Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
abrito@britopllc.com
apiriou@britopllc.com
Michael O. Mena
Florida Bar No. 010664
mmena@britopllc.com
Jalaine Garcia
Florida Bar No. 58632
jgarcia@britopllc.com
Ian Michael Corp
Florida Bar No. 1010943
icorp@britopllc.com

Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice admitted*)

*Counsel to Plaintiff,*
*President Donald J. Trump*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 10, 2026 the foregoing was served via the Court's CM/ECF System upon:

Charles D. Tobin, Esq.
Ballard Spahr, LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tobinc@ballardspahr.com

*Counsel for Defendant British Broadcasting Corporation*

*/s/ Alejandro Brito*