UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PRESIDENT DONALD J. TRUMP,

Plaintiff,

v.

BRITISH BROADCASTING CORP.,

Defendant.

Case No. 1:25-cv-25894-JTK-EAL

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S OMNIBUS OBJECTIONS TO AND APPEAL OF MAGISTRATE JUDGE'S ORDERS AT ECF NOS. 198, 200, AND 202**

Defendant the British Broadcasting Corporation (the "BBC"), by and through its undersigned counsel, respectfully submits this Opposition to Plaintiff President Donald J. Trump's Omnibus Objections to and Appeal of the Magistrate Judge's Orders at ECF 198, 200, and 202 (the "Objections" or "Obj.," ECF 210). For the reasons below, the Court should adopt those Orders as the full opinions of this Court, to the degree they do not conflict with this Court's subsequent extension rulings.

**INTRODUCTION**

Plaintiff objects to three discovery orders issued by the Magistrate Judge in the wake of a full-day, wide-ranging discovery hearing. Together, those three orders (1) direct Plaintiff to produce documents responsive to long-pending, undisputed requests for production; (2) authorize a subpoena to a non-party closely associated with Plaintiff for records relevant to Plaintiff's alleged reputational damages; and (3) order Plaintiff to sit for a deposition in his own lawsuit and caution that non-compliance with court orders could result in sanctions. Plaintiff claims that these orders are beyond the Magistrate Judge's authority and encroach on Executive Branch prerogatives, but the orders are

standard discovery rulings, the bread-and-butter of federal magistrate judges overseeing civil discovery disputes. In any other lawsuit, these three orders would be remarkable only for the fact that a court order—or, here, multiple court orders—was needed to compel a plaintiff to testify in his own case.

The Magistrate Judge's Orders appropriately compel action to keep discovery moving forward and authorize relevant non-party discovery that goes directly to Plaintiff's damages claim. In a recent order extending the discovery deadline, *see* ECF 223, this Court reiterated the Magistrate Judge's direction that Plaintiff schedule and sit for a deposition. Because Plaintiff's objections merely protest proper exercises of the Magistrate Judge's authority or relitigate the same arguments heard by the Magistrate Judge, they should be overruled.

## BACKGROUND

Plaintiff filed this action against the BBC on December 15, 2025, alleging that the BBC defamed him and violated Florida's Unfair and Deceptive Trade Practices Act. *See generally* Am. Compl., ECF 124. Discovery began on February 11, 2026, *see* ECF 26, and, after multiple extensions, is now set to close on January 29, 2027, *see* ECF 141, 223.

On October 22, 2026, the Magistrate Judge held a nearly full-day hearing on an array of discovery issues, including Plaintiff's continued deficient response to undisputed discovery requests; the numerous pending disputes over requests for production ("RFPs"); Plaintiff's persistent delay in sitting for a deposition; and the BBC's subpoenas to non-parties Mar-a-Lago Club, LLC ("MAL" or the "Club"), and former Special Counsel Jack Smith. *See* ECF 197. As relevant here, the Magistrate Judge issued three orders as a result of that hearing.[1] Plaintiff has objected to all three orders, on somewhat narrowed grounds given the intervening developments in the litigation. Plaintiff also filed

[1] The Magistrate Judge also ordered further briefing on the BBC's Motion to Compel documents from The Donald J. Trump Revocable Trust (the "Trust"), a Motion that had been previously granted but stayed after Plaintiff amended his Complaint to reframe his damages. *See* ECF 205.

an expedited motion seeking a stay of these enforcement orders pending the Court's decision on his objections, which is fully briefed and before the Court. *See* ECF 211, 214, 228. Plaintiff requested a decision on that stay motion on or before November 20, 2026.

First, the Magistrate Judge ordered Plaintiff to produce a privilege log by November 5 and any remaining documents responsive to undisputed RFPs by November 23, and noted that "[f]ailure to comply with this order may result in sanctions, including but not limited to, dismissal of this action for failure to prosecute this case." *See* ECF 198 (the "Production Order"). Plaintiff has produced a privilege log – which, as the BBC has already noted, is deficient. *See* ECF 208. Plaintiff also indicated he would "complete any supplemental production on or before November 23, 2026," Obj. at 8, but he produced no additional documents by that deadline. Plaintiff asks this Court to "set aside the Production Order's finding concerning the adequacy of Plaintiff's search [and] vacate its sanction provision[.]" *Id.* at 9.

Second, the Magistrate Judge approved the BBC's subpoena to MAL, which seeks the total number of applications for MAL membership each year from January 6, 2020, through January 6, 2026, and the total cost of membership and initiation fees for a new MAL applicant for each year over that period. *See* ECF 200 (the "MAL Order"). Plaintiff asks this Court to set aside the Magistrate Judge's MAL Order in full or, in the alternative, to narrow the relevant time period.

Third, the Magistrate Judge ordered Plaintiff to sit for his deposition before December 11 – barring an extension, which has now been granted, ECF 223 – and noted that "[f]ailure to do so may result in sanctions, including dismissal of the lawsuit." *See* ECF 202 (the "Deposition Order"). Plaintiff asks this Court to "vacate the sanction provision of the Deposition Order" and, after granting the extension motion, "direct that President Trump's deposition proceed on a date between January 11 and January 22, 2027." Obj. at 18. Upon extending the discovery deadline, this Court specifically

ordered that "[t]he deposition shall be scheduled to occur, and shall be completed, on or before January 22, 2027," and that "[t]he Parties shall file with the court the date and time of the deposition on or before November 20, 2026, at 12:00pm ET." ECF 223 at 4. Plaintiff, however, ignored the Court's order and instead stated only that he would sit for a deposition sometime between January 11 and 22, 2027. *See* ECF 229.

## ARGUMENT

To overturn the Magistrate Judge's Orders, this Court must find that those Orders are "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Plaintiff's objections to the Magistrate Judge's Orders must be "specific enough or clear enough to permit the district court to 'effectively review' the magistrate judge's ruling." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). Here, however, Plaintiff's objections to the Magistrate Judge's Orders fail because they underestimate both the scope of discovery and the Magistrate Judge's statutory authority to determine non-dispositive matters.

### A. The Magistrate Judge's decision on the Mar-a-Lago subpoena falls well within the boundaries of permissible discovery recognized by this Court.

Plaintiff's objections to the MAL Order fail to address the Magistrate Judge's ruling or reasoning, instead repeating the same arguments that failed below. In allowing the BBC's subpoena to MAL to issue, the Magistrate Judge found that it represented a "permissible basis of inquiry" due to "MAL's relationship with [President Trump's] profession and professional persona." ECF 200. "As Chief Executive of the United States, it is publicly known that President Trump often carries out his presidential duties in MAL." *Id.* In other words, given the close relationship between Plaintiff and MAL, the Club's financial success is probative of how he is publicly perceived (i.e., his reputation – his sole remaining basis of asserted damages). *See* Oct. 22, 2026 H'rg Tr. ("Tr.") at 61:17-62:3, ECF

197 ("I believe, at least to the public, it is undeniable that President Trump does conduct his profession, being president, at that location. I think it is intertwined with his profession, therefor, and so any harm that may be alleged under this complaint to his profession, trade and occupation would be reflected in how he conducts business at Mar-a-Lago, at least for discovery purposes."); *see also* ECF 228 at 6 (noting that the Plaintiff's expert report includes a "survey question asking viewers how likely they would be to buy a hypothetical product that the President endorsed").

To prove up his damages, Plaintiff must demonstrate that the challenged portion of the BBC's Documentary "deter[red] third persons from associating or dealing with him." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 139 (1951) (quoting Restatement of Torts § 559); *see also Mile Marker, Inc. v. Petersen Publ'g, LLC*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002). While, in most defamation cases, this measurement may be an abstract exercise, MAL possesses records reflecting the exact number of people who have applied to pay for the privilege of associating with Plaintiff and the exact amounts of money those applicants are willing to pay to do so. If those figures continued to increase before, during, and after the publication of the Documentary, therefore, that would provide highly relevant evidence that the Documentary did not, in fact, cause Plaintiff any reputational harm.

Plaintiff responds with the dubious assertion that "[t]he MAL Order's only alleged support for the supposed connection is a White House web page that, at most, establishes where a meeting *occurred*" and that Mar-a-Lago is, to him, merely "**[a] location at which official business is *conducted***" – and thus irrelevant to his reputation. Obj. at 10. This argument ignores the powerful and well-known association between Plaintiff and MAL. *See* Tr. at 50:5-7 ("THE COURT: . . . Are you saying that the president, himself, has no bearing on Mar-A-Lago's success or failure?"); Adriana Gomez Licon & Michelle L. Price, *Trump Calls It the 'Center of the Universe.' Mar-A-Lago Is a Magnet for Those Seeking Influence*, L.A. Times (Dec. 31, 2024), https://www.latimes.com/world-

nation/story/2024-12-31/trump-calls-it-the-center-of-the-universe-mar-a-lago-is-a-magnet-for-those-seeking-influence. MAL is not merely a venue where he happens to conduct business, but a nucleus of Plaintiff's political and social capital, as it has been for years.

Plaintiff also wrongly attempts to equate the BBC's subpoena to MAL – a resort that Plaintiff has owned for decades and continues, as President, to use as a base of power – with its previous subpoena to former White House aide Cassidy Hutchinson. Specifically, Plaintiff cites to this Court's Order quashing the subpoena to Ms. Hutchinson on the basis that the testimony was not sufficiently relevant and that it posed an undue burden on Ms. Hutchinson, who was at the time under investigation by a grand jury. Obj. at 9-10. In doing so, Plaintiff attempts to argue that all third-party discovery is inherently and unduly burdensome. But the comparison is inapt for at least two reasons.

First, Plaintiff is attempting to take an order on discovery relating to the issue of falsity and graft it onto discovery relating to the distinct issue of damages. This Court's Order on the BBC's Motion to Dismiss explicitly recognizes that damages are a key issue to be adjudicated with the benefit of more fulsome discovery, observing that "[t]he linchpin for Trump's claim of actual harm is the reputational harm he allegedly suffered because of BBC's portrayal in the Documentary"; that the "BBC correctly asserts that Florida requires defamation plaintiffs to plead and prove actual damages"; and that "[w]hether President Trump can prove these claims and establish he sustained damages at summary judgment or trial is left for another day," – i.e., for a juncture where sufficient discovery has been taken to fully adjudicate the issue. ECF 209 at 2, 7. The MAL subpoena is proper because it attempts to obtain evidence relevant to precisely those damage-related questions.

Second, Plaintiff's implicit argument equating all third-party subpoenas ignores this Court's robust analysis as to the undue burden placed on Ms. Hutchinson. In quashing the BBC's subpoena to Ms. Hutchinson, this Court emphasized that a deposition would "unnecessarily burden" Ms.

Hutchinson because she was, at the time, "facing a potential criminal investigation." ECF 175 at 4-5. MAL's burden of compliance is not merely lighter than Ms. Hutchinson's – it is virtually non-existent, and Plaintiff has not even attempted to articulate one.[2] *See* Tr. at 62:4-6 ("I did not hear and there does not seem to be a real argument that the subpoena is, in itself, burdensome, and I do not find that it is.").

Third, to the degree the MAL subpoena overlaps with the BBC's pending subpoena seeking information from the Trump Trust, this overlap is inconsequential in adjudicating the MAL subpoena independently. Plaintiff objects to the BBC's subpoena to the Trump Trust, in part because he asserts the request is overly broad and burdensome. *See* ECF 212 at 6-8. He cannot now turn around and object to a separate subpoena on the basis that it is too narrow.

Fourth, Plaintiff requests that, if the Court does not quash the BBC's subpoena to MAL, it instead limit the relevant time period. *See* Obj. at 14. Currently, the subpoena seeks relevant documents spanning January 6, 2020, through January 6, 2026; Plaintiff proposes narrowing the window to January 1, 2023, through January 6, 2026, on the basis that the broader window "adds nothing to a before-and-after comparison; it sweeps in the 2020 election, January 6, 2021, itself, and the 2024 campaign." *Id.* at 14. In fact, the full date range is required to allow the BBC to comparatively analyze how MAL's membership numbers and fees increased during Plaintiff's presidency (the "control" group) as compared to how those figures fared (reportedly by increasing) after the Documentary. Such a control group is necessary to isolate what impact, if any, the Documentary had on MAL's membership and fees, which serve as a proxy for people's willingness to associate with

---

[2] Indeed, in other contexts, Mar-a-Lago has *voluntarily* disclosed its membership fees, eliminating any argument that doing so for the purpose of this litigation would be in any way burdensome. *See, e.g.*, *The Donald Trump Interview Transcript*, Bloomberg Businessweek (July 16, 2024), https://www.bloomberg.com/features/2024-trump-interview-transcript/ (noting, in 2024, MAL's $700,000 membership fees, which were shortly set to increase to $1 million).

Plaintiff. *See also* ECF 225 at 6-7 (discussing how Plaintiff's own damages expert agrees with the BBC on the relevance of this information); ECF 219 at 2 (same).

**B. The findings of deficiency and caution regarding possible sanctions are well within the Magistrate Judge's authority.**

The remainder of Plaintiff's Objections take issue with the Magistrate Judge's discussion of Plaintiff's continued discovery non-compliance. In doing so, Plaintiff misapprehends the authority of the Magistrate Judge to manage discovery and, if necessary, authorize and recommend sanctions.

***1. The Magistrate Judge has both the expertise and the authority to address Plaintiff's deficient productions.***

Plaintiff's objection to the Magistrate Judge's "finding that his search may have been inadequate" fails to respond to any of the Magistrate Judge's concerns. Obj. at 8. Plaintiff argues that his "production is relatively small compared with the BBC's" because "the asymmetry is inherent in a defamation action." *Id.* But this response mischaracterizes the nature of the Magistrate Judge's concern about search adequacy. In fact, the Magistrate Judge expressly acknowledged that possible asymmetry, and nevertheless found the Plaintiff's search deficient:

> BBC may still have the majority of the volume to produce. But, to say that this is a disparate simply because the of claims that need – I mean, we are talking about 155 documents. And, it is not the volume. It is the nature of whether or not the requests have been responded to. And, I tend to agree with the defendant, that it just kind of strains credulity that a thorough search has been done in order to determine that all of these requests have been responded to.

Tr. at 18:11-20. Plaintiff's response to this point is simply to ignore it.

Plaintiff's other arguments as to the Magistrate Judge's deficiency finding are similarly inapposite. For example, Plaintiff challenges the Magistrate Judge's so-called "speculation that a pre-suit letter 'would have had drafts' and 'other communications about who's writing it'" based on the fact that such documents "would be addressed by the privilege log." Obj. at 8-9. This argument is undermined by the deficiency of Plaintiff's own privilege log. *See* ECF 208 at 2 ("Every entry logged

was a communication within Plaintiff's counsel's law firms in this matter, withheld as attorney work-product. The log, like Plaintiff's two document productions to date, does not contain a single communication with Plaintiff or his advisors."). In this way, Plaintiff's arguments as to the Magistrate Judge's deficiency finding are, themselves, deficient.

**2. *The Magistrate Judge has the authority to impose non-dispositive sanctions and to recommend dismissal.***

Plaintiff also errs in asking this Court to vacate the "sanction provision[s]" of both the Production Order and the Deposition Order. Obj. at 9, 18 (citing ECF 198, 202). Those sanctions "provisions" are mere expressions of caution that "[f]ailure to comply with this order may result in sanctions, including but not limited to, dismissal of this action for failure to prosecute this case," ECF 198, and "[f]ailure to do so may result in sanctions, including dismissal of the lawsuit," ECF 202. Plaintiff ignores the plain text of these two warnings in arguing that "[b]y announcing dismissal as an available consequence before any non-compliance has occurred, the Orders . . . wrongly prejudge the sanction without regard to the reasons for any future non-compliance, including, in the case of the deposition, the demands of the Presidency." Obj. at 17. That is not what the Orders say. Instead, they appropriately caution that continued non-compliance ***may*** result in sanctions ***including*** (but not exclusive to) dismissal.

Plaintiff cannot dispute that the Magistrate Judge has the authority either to impose a sanction that does not dismiss the case – of which there are many – or to recommend a sanction that would dismiss the case. Fed. R. Civ. P. 72. Indeed, "[a]n Article I judge has the inherent authority to impose sanctions upon an attorney representing a party in a case." *Eldredge v. EDCare Mgmt., Inc.*, 2015 WL 13666059, at *2 (S.D. Fla. July 30, 2015) (citing *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008) (noting federal courts "have the inherent power to impose sanctions on parties and lawyers"), *aff'd*,

766 F. App'x 901 (11th Cir. 2019). The Magistrate Judge's three challenged Orders accurately reflect that scope of authority.

Plaintiff also contends that the Deposition Order "does not weigh the President's constitutional responsibilities" and "does not account for the security considerations that the Magistrate Judge herself acknowledged," Obj. at 16. That is entirely a red herring – no one in this proceeding has ever minimized the interest in the President's personal safety – and is entirely unfair to the Magistrate Judge. Both the Magistrate Judge and this Court have acknowledged that the Plaintiff here is the President, and nevertheless, rightfully, have held that he must sit for his deposition in a timely manner in a case he brought. *See, e.g.*, Tr. at 31:18-22 ("There is no dispute that a plaintiff has to engage in discovery, has to sit for his deposition."). Moreover, as part of the oral ruling preceding the Deposition Order, the Magistrate Judge specifically directed that "the Secret Service must coordinate with counsel for plaintiff to get the details [and] the location," all of which would "be determined by President Trump and his security team." *Id.* at 33:1-5.

Plaintiff further criticizes the Deposition Order because it "does not cite *Clinton*, *Cheney*, or *In re United States*," but this Court's subsequent Extension Order, which relied in part on *Clinton v. Jones*, 520 U.S. 681, 707 (1997), reiterated the Magistrate Judge's conclusion that Plaintiff must timely sit for a deposition:

> The Court acknowledges that "high respect" is owed to the office of the President, and such respect should inform the "timing and scope of discovery." *Clinton v. Jones*, 520 U.S. 681, 707 (1997). . . . At the same time, Trump "is a willing participant in the [ ] proceedings" and the high respect owed to the Executive Branch that was discussed in *Clinton v. Jones* "protects the Executive from undue burdens imposed by other[s]…, not burdens which the Executive willingly accepts." *Alexander v. Trump*, 413 So. 3d 795, 799-800 (Fla. 4th DCA 2025) (Klingensmith, C.J.). It is Trump's case, so he should expect to be deposed.

ECF 223 at 2-3. That Order not only directed Plaintiff to sit for a deposition on or before January 22, 2027 (one week before the close of discovery, the same timeframe as imposed by the Magistrate Judge's Deposition Order), but also required that "[t]he Parties shall file with the court the date and time of the deposition on or before November 20, 2026, at 12:00pm ET," just three days after that Order issued. *Id.* at 4. This Court's ruling was an effort to facilitate Plaintiff's compliance with the most basic discovery requirement. Unfortunately, that effort did not yield a date certain for the deposition—instead, Plaintiff defied the order and provided only the same eleven-day window. *See* ECF 229. That recent experience alone illustrates why both District Judges and Magistrate Judges should and do have significant authority to warn of the consequences of non-compliance, and to follow through when, as here, a party remains noncompliant.

## **CONCLUSION**

For the foregoing reasons, the Court should reject Plaintiff's Omnibus Objections to and Appeal of the Magistrate Judge's Production Order, ECF 198; Mar-a-Lago Order, ECF 200; and Deposition Order, ECF 202, and should adopt those Orders in full as the opinions of this Court, to the degree they do not conflict with this Court's subsequent extension rulings.

Dated: November 24, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**
1909 K Street, NW
Washington, DC 20006-1157
Tel: (202) 661-2218
Fax: (202) 661-2299

By: */s/ Charles D. Tobin*
Charles D. Tobin
Fla. Bar No.: 816345
Richard W. Miller (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
Sasha Dudding (*pro hac vice*)
Yanni Chen (*pro hac vice*)

Maya D. Gandhi
Florida Bar No. 1075387
tobinc@ballardspahr.com
millerrw@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com
cheny@ballardspahr.com
gandhim@ballardspahr.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket on November 24, 2026, and served the same electronically upon all counsel of record via email.

*/s/ Charles D. Tobin*
Charles D. Tobin